1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
2

3   IN RE:  EPIPEN                         Docket No. 17-md-2785
    (Epinephrine Injection, USP)
4   Marketing, Sales Practices
    and Antitrust Litigation
5                                          Kansas City, Kansas
                                           Date:  10/3/2017
6

7   .........................

                 TRANSCRIPT OF SCHEDULING CONFERENCE
8

9                              BEFORE

                   THE HONORABLE DANIEL D. CRABTREE
10              UNITED STATES DISTRICT COURT JUDGE

11                 THE HONORABLE TERESA J. JAMES
                UNITED STATES MAGISTRATE JUDGE
12

13  APPEARANCES:

    For the Class Plaintiffs:
14

    Rex A. Sharp                    Lynn L. Sarko
15  Ryan C. Hudson                  Gretchen F. Cappio
    Rex A. Sharp, PA                Keller Rohrback
16  5301 W. 75th Street             1201 3rd Avenue
    Prairie Village, KS 66208       Suite 3200
17                                  Seattle, WA 98101
    Warren T. Burns
18  Burns Charest, LLP              Damien J. Marshall
    900 Jackson Street              Boies, Schiller
19  Suite 500                        & Flexner, LLP
    Dallas, TX 75202                575 Lexington Avenue
20                                  7th Floor
    Spencer Cox                     New York, NY 10022
21  Burns Charest, LLP
    500 North Akard Street
22  Suite 2810
    Dallas, TX 75201
23

24

25

```
 1   APPEARANCES (continued):

 2   For Sanofi-Aventis US, LLC Plaintiffs:

 3   Eric S. Hochstadt
     Yehuda L. Buchweitz
 4   Weil, Gotshal & Manges, LLP
     767 Fifth Avenue
 5   New York, NY 10153

 6   For Local 282 Welfare Trust Fund Plaintiffs:

 7   Paul J. Geller
     Stuart A. Davidson
 8   Robins Geller Rudman & Dowd LLP
     120 East Pametto Park Road
 9   Suite 500
     Boca Raton, FL 33432
10
     For the Mylan Defendants:
11
     Brian C. Fries            Mitchell E. Zamoff
12   James Moloney             Hogan Lovells US LLP
     Lathrop & Gage, L.C.      80 South Eighth Street
13   2345 Grand Boulevard      Suite 1225
     Suite 2800                Minneapolis, MN 55402
14   Kansas City, MO 64108
                               Adam K. Levin
15   Jeffrey S. Soos           Hogan Lovells US LLP
     Saiber, LLC               555 Thirteenth Street, NW
16   One Gateway Center        Washington, DC 20004
     10th Floor
17   Newark, NJ 07102

18   For the King Pharmaceuticals, Inc., Meridian Medical
     Technologies, Inc. and Pfizer Defendants:
19
     Raj Gandesha
20   White & Case LLP
     1221 Avenue of the
21   Americas
     New York, NY 10020
22
     Joseph M. Rebein
23   Shook, Hardy & Bacon LLP
     2555 Grand Boulevard
24   Kansas City, MO 64108

25
```

1                              INDEX

2    Scheduling Discussion                          7

3    Protective Orders, ESI Protocol,              30
     Document Preservation

4
     Filing Amended Class Complaint                51

5
     Motions to Compel                             58

6
     Expert Disclosures                            63

7
     Filing Amended Class Complaint                68

8
     Document 85 and 111 Ruled Moot                83

9
     Decisions by the Court                        85

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (Court called to order.)

 2          JUDGE CRABTREE:  All right.  We're here in

 3  Case No. 17-2785, which is captioned In re:  EpiPen,

 4  Marketing Sales Practice and Antitrust Litigation.  Good

 5  morning, everyone.  I have your attendance check-in

 6  sheet.  I just want to check signals because I'm still

 7  working on learning which faces go with which names.

 8          So let me start and just have those -- and I

 9  don't know if Mr. Burns or Mr. Sharp, somebody wants to

10  take the lead and talk -- identify for me who you plan

11  from your group might speak this morning and identify

12  them so I can start to sort out names and faces.

13          MR. SHARP:  Your Honor, Rex Sharp on behalf

14  of the class.  Paul Geller may speak.  I'll probably do

15  most of the talking today.  Warren Burns may also speak,

16  and Lynn Sarko may speak as well.

17          JUDGE CRABTREE:  All right.  Thank you very

18  much.

19          Mr. Geller, glad to see you survived the

20  hurricane and returned safely.

21          And then for the Sanofi plaintiffs, I remember

22  there are two of you.  I'm not sure I could if I had to

23  if my life depended on it, but I think you're

24  Mr. Hochstadt; right?

25          MR. HOCHSTADT:  Yes, Your Honor.
```

 1                JUDGE CRABTREE:  Am I pronouncing it

 2   correctly?

 3                MR. HOCHSTADT:  You are.

 4                JUDGE CRABTREE:  All right.  And you are --

 5   so Miss Sullivan is not here but you're joined by --

 6                MR. HOCHSTADT:  By my partner, Yehuda

 7   Buchweitz.

 8                JUDGE CRABTREE:  Okay.

 9                MR. HOCHSTADT:  And to his right is our

10   client, Chris Liwski.

11                JUDGE CRABTREE:  All right.  I remember.

12   Good morning, gentlemen.

13        And then for the Mylan defendants who apparently

14   sit on the right side of the aisle.

15                MR. ZAMOFF:  Groom side.  Bride side.

16        Mitch Zamoff, Your Honor, Hogan Lovels.  My

17   partner, Adam Levin, will also be a speaker this

18   morning, and it's possible that Jeff Soos from the

19   Saiber law firm might also participate.

20                JUDGE CRABTREE:  All right.  Good morning to

21   all of you.  Did you let Mr. Fries come with you?

22                MR. ZAMOFF:  He seems a little tired from

23   last night's festivities at Arrowhead.

24                JUDGE CRABTREE:  I did manage to make the

25   game -- I did not realize, when I scheduled this, that I

1    was stepping on those who were Chiefs fans.

2         And then for the Pfizer defendants.

3         MR. GANDESHA:  Hi.  Good morning, Your

4    Honor.  It's Raj Gandesha of White & Case.

5         JUDGE CRABTREE:  All right.  And,

6    Mr. Rebein, I see you.  Good morning.

7         MR. REBEIN:  Good morning, judge.

8         JUDGE CRABTREE:  Good morning to all of you.

9    You know, Judge James and I are trying to figure

10   out how to work through the various topics that we

11   wanted to hear from you about and ask questions that we

12   had about the kind of competing proposals that you

13   submitted, or partially competing proposals.

14        I think what I'd like to do, though we obviously

15   have spent some time with your submissions and I think

16   we know a lot of the driving rationale for why you are

17   where you are, I'm going to give all three of, or I

18   guess four, I don't know whether Mr. Zamoff and the

19   Pfizer defendants want to be heard separately, but just

20   maybe hear from you for about two minutes a shot or

21   three minutes, I'm not going to put a clock on it, but

22   sort of the -- the driving ideas behind this schedule

23   you're asking for the court to put in place.  And I am

24   really interested in kind of the end game how we get

25   these cases ready for decision and why your schedule

1    sort of produces that result.

2         So I'm going to probably start with the class

3    plaintiffs most of the time.  If you all sorted it out

4    differently between you, I don't have strong feelings

5    about that.  But, Mr. Sharp, maybe I can recognize you

6    to provide the opener -- the opening gravamen on that

7    and then I'll go through and hear from all the other

8    groups.

9              MR. SHARP:  Your Honor, on behalf of the

10   class, we tried to coordinate a little bit with Sanofi

11   as well as defense counsel in this case.  And I would

12   start with plaintiffs' proposed first scheduling order

13   and just go down through it and give you some idea of

14   what we were trying to do.

15        We were trying to get the case moving by having

16   the motions to dismiss decided so that the case could

17   move on with whatever claims continued to exist, to get

18   the protective order in place, the ESI protocol,

19   document preservation order, the usual things that you

20   need as discovery begins.

21        And then we wanted to start with -- because we

22   knew defendants were reticent about moving the case

23   forward, at least on the discovery side, we wanted to

24   get the easy initial discovery out on the table first,

25   those things that might matter to us and might matter to

1   the court; the patent settlements, the four government

2   investigations, those things that they've already

3   produced before that are simple and easy to produce,

4   again would give us some ability to have some other

5   facts in front of us and the court when we plead again.

6        And so, although we didn't really want to plead

7   again, we sense that the court might perhaps want us to

8   plead again and we also wanted to move the case forward

9   and do a little bit of compromise with the defendants.

10  Didn't turn out that way.  But we had hoped that by

11  moving for a consolidated complaint, even though it's

12  not going to change an awful lot of what we already had,

13  that we could move the case forward, get some initial

14  discovery, begin to move the case forward and get that

15  discovery rolling.

16       That's really the critical part of this case is

17  to get the discovery moving.  The case has been on file

18  for over a year against Mylan in this court and so --

19  and we don't have any discovery to show for it.  We'd

20  like to move on.

21       We know that there's going to be some amendments

22  to the complaint as we go along.  As tag-alongs come on,

23  as they always do in MDLs, or as we gain additional

24  information through discovery, we're going to have

25  continual changes to the complaint as we continue to

1   grow in that discovery process.  So we knew that was

2   going to happen.  We'd like to get on with that.  And

3   that was really the driving force I think for getting

4   this moving so that we can get the class certification.

5        If we don't do that, we're going to end up

6   another six months down the road with no discovery and

7   nothing else really being done other than a few more

8   briefs written.

9            JUDGE CRABTREE:  Just remind me, the -- the

10  briefing schedule that's set before the JPML on what

11  I'll call the ERISA cases, do you have an estimate of

12  when we all might hear whether those cases are coming

13  here?

14           MR. SHARP:  Yes.  The ERISA case, I don't

15  believe it has been set on the -- by the panel yet.  It

16  could come up at the end of November.  That hearing is

17  going to be, I believe, November 30th in St. Louis.  If

18  that's possible, if it makes that hearing, then we might

19  find out whether that's going to come in mid-December,

20  they might make a ruling on whether the case is going to

21  come here or not.  And if it does, then all of the cases

22  will eventually get to this court by mid to late

23  December.

24       Then we would have to -- if you pursued the

25  defendants' logic, then they would want even that case

1    consolidated and even though it appears to be that that

2    would -- case would go on a separate at least pleading

3    track similar to what Sanofi has.  But if we wait for

4    all tag-along cases to come here, I don't know what may

5    get filed in the next month or two that relates to this.

6    It is a -- it's an issue that's been festering for a

7    long time and it's probably going to continue until the

8    -- until this case is resolved.

9         So we would ask that the case continue to be

10   poured forward.  Because if we don't -- if the ERISA

11   case comes in December -- or does not make that November

12   date of the hearing, then it's probably going to be

13   January or February before the ERISA cases come here if

14   they come here.  We hope that they do.  But if they

15   don't, then we would be waiting for nothing.

16        And then consolidation and another three or --

17   three months or so for briefing, and of course if you're

18   receiving hundred-page briefs we have to expect the

19   court's going to take some time to read through those

20   briefs and make a decision, so that's going to take a

21   little bit of time as well.

22        So we would like to get discovery at least

23   initially started this calendar year rather than middle

24   of next calendar year.

25             JUDGE CRABTREE:  All right.  Do you have a

 1    question?

 2              JUDGE JAMES:  I do have one question.  And

 3    not to get down in the weeds too quickly but, Mr. Sharp,

 4    I think your language was that the patent settlements

 5    and the investigations and things they've -- such that

 6    they've already produced you want to get.  How --  have

 7    the defendants already produced in these cases, in

 8    *Serrano*, for example, the -- the patent settlement

 9    documents?

10              MR. SHARP:  We haven't received anything

11    yet, Your Honor.  Those are the things they have

12    produced to others but have not to produced to us.

13              JUDGE JAMES:  Okay.  "Others" being?

14              MR. SHARP:  Being to the government, or in a

15    patent settlement obviously there's someone on the other

16    side of that patent settlement.  So they would be easy

17    documents to obtain and -- and to produce to us but yet

18    that hasn't happened.

19              JUDGE JAMES:  And the same for the

20    investigation documents?

21              MR. SHARP:  Yes.

22              JUDGE JAMES:  Thank you.

23              JUDGE CRABTREE:  All right.  Thank you,

24    Mr. Sharp.

25          Mr. Buchweitz.

1              MR. BUCHWEITZ:  Thank you, Your Honor.  So

2   as you know we've been working with the class plaintiffs

3   and the committee and we were able to submit a joint

4   scheduling order.  I know we appreciated that in your

5   submission -- or your order setting a conference you

6   allowed for the possibility that we have some consensus.

7   We managed to work together, which I thought was

8   terrific.

9         Here's where we are in Sanofi.  They're filing a

10  reply brief on Friday.  You know that.  And, you know,

11  you'll take whatever time you need, but, you know, we

12  don't think it's going to be that difficult.

13        But, in any event, the -- you know, what we did

14  with the class was we came up with a proposal that

15  follows the way you're supposed to go in these types of

16  cases.  We said, okay, we're on two tracks but we've got

17  a lot of common work to do.  How do we get it so that

18  the common work comes in first efficiently and then we

19  separate off, we go off and do what we need to do

20  afterwards in New Jersey and they continue and do all

21  their class stuff in the non-common discovery here until

22  they're finished with their case?

23        And we think we came up with something.  We spent

24  a lot of time trying to figure it out.  And we think

25  that if we start the discovery now and, you know, we

1    work together with them, and we can even, on the Sanofi

2    side, you know, really take the lead on a lot of that

3    and get all the discovery that we'll need, which all of

4    which will be applicable and helpful to the class, we

5    can get that done during this year-period that we talked

6    about between now and the end of November of '18.  And

7    then we go off for expert discovery, summary judgment,

8    trial back to New Jersey and they continue on and do all

9    the stuff about patent settlements and class and

10   everything that has nothing to do with our case.  So we

11   thought that that was logical and that made a lot of

12   sense.

13          We tried to engage with our friends at the Saiber

14   firm who represent Mylan in our case.  They disagreed

15   with us.  They think that the case should -- you should

16   have your reply brief on Friday and then nothing should

17   happen for over a year while things meander along in the

18   class action with the amended complaints, the motions to

19   dismiss and all that stuff and we should do nothing.  We

20   obviously disagree and we think that doesn't make any

21   sense and we don't think that that's consistent with

22   the, you know, guidance and the case law, you know,

23   that's -- that's out there now.

24          And one of the things I found most interesting

25   is, you know, when I was briefing in this, you know, the

 1   remand issues, in both the submissions we put in in

 2   connection with this hearing and the prior hearing, we

 3   cited a lot of cases because that's what I think you're

 4   supposed to do.  You're supposed to cite cases.  So we

 5   cited cases about expert discovery and we cited cases

 6   about summary judgment and all kinds of things that were

 7   there as suggestions of remand which cases get sent back

 8   for those reasons.

 9        Mylan cited the draft Duke report.  Okay, fine.

10   They think the Duke report's good.  That's okay.  Here's

11   the problem:  The Duke report's a draft, okay.  The

12   final actually has dynamite language for us and exactly

13   what we wanted.

14        The final Duke report says increasingly -- on

15   page 2, "Increasing, judges and counsel are not only

16   recognizing that remand is a viable option when pretrial

17   matters are complete and no resolution has been reached,

18   but that it may be on the table from the first days of

19   the MDL, with judges setting end-dates for resolution

20   and working backwards to set the case-management

21   schedule.  This is unsurprising given that many judges

22   believed that they are clearly given the message they

23   are there to move as quickly as possible, in contrast to

24   only a few years ago when the common view was that cases

25   should go through their own pace."

1           And on page 5, again not in the draft but in the

2    final, "Both judges and counsel strongly supported the

3    emerging practice of setting an end-date for an MDL,

4    then working back into a trial schedule.  The end-date

5    of course should be set after the transferee judges

6    become educated about the case and consulted with

7    counsel about their understandings and expectations.

8           So, Your Honor, when we were here last time, you

9    said you wanted to set a target date for remanding these

10   cases back to their own districts.  We submitted a lot

11   of information to you about that.  They've submitted a

12   draft Duke report which is contradicted by the final

13   report.  And we think that we should have a remand date

14   set.  We should do all the common discovery in

15   conjunction with the class plaintiffs until then and

16   then we'll each go our own ways.

17           JUDGE CRABTREE:  One thing I'm curious

18   about, and it's obviously not a decision for today, but

19   as we start to think about putting the *Sanofi* case in a

20   position to go back for a trial if it survives that

21   long, is -- I'm -- I'm puzzled about your -- puzzled is

22   probably not the right term -- I'm curious about the --

23   the efficiencies that might be gained or lost from

24   sending your case back to New Jersey before dispositive

25   motion briefing and decision.

1                MR. BUCHWEITZ:  Right.  So, Your Honor, I

2      think one of the most important parts of that is what

3      you heard from Mylan the last time we were here, which

4      is that Sanofi has different damages kinds of requests

5      than other plaintiffs do.

6            And a number of the cases that we've cited talk

7      about how expert discovery on damages issues, which is

8      really the primary expert discovery that we're going to

9      have in our case --

10           We already have our experts.  We're ready to go

11     with that --

12           -- if there are -- because the judge will

13     ultimately rule on admissibility at trial where there

14     are separate damages issues than fact issues, it's

15     important for the expert discovery to be at the -- at

16     the transferor court.  Because while they give deference

17     to the transferee court, the MDL judge, I'm not sure

18     Judge Hochberg would give -- not -- Judge Wolfson would

19     give deference to you.  She doesn't have to.  So -- so

20     there are efficiencies there.  Because if we have

21     ultimately trial and there are issues about experts,

22     she's going to be resolving those.

23           So absolutely everything common with the class

24     plaintiffs, we're here.  We're ready to go.  We love

25     coming here.  I like the Hilton Presidential.  It's a

1    nice hotel, okay.  I like mashugana bagels.  It makes me

2    feel like I'm in New York.  And but -- but, you know, at

3    that point that's when we think it's time to go.

4                   JUDGE CRABTREE:  Thank you very much.

5                   JUDGE JAMES:  Can I have a last one?

6                   JUDGE CRABTREE:  I apologize, yes.

7                   JUDGE JAMES:  Just to be sure I'm clear as

8    to what plaintiffs are proposing as far as this concept

9    of doing common discovery and getting that wrapped up so

10   you can move on, plaintiffs aren't suggesting, are they,

11   that discovery be limited exclusively to common

12   discovery in its early stage?

13                   MR. BUCHWEITZ:  No, certainly not.

14   Certainly not.  It's just a matter of, you know, we're

15   -- that's what we're focused on and we're happy to drive

16   the ship and make that happen quickly.  And if there are

17   other things that need to be done later, fine.  If they

18   can get them done earlier, good for Warren and his team.

19                   JUDGE JAMES:  All right.  Thank you.

20                   JUDGE CRABTREE:  I apologize.  All right.

21                   MR. ZAMOFF:  Mr. Levin.

22                   JUDGE CRABTREE:  Mr. Levin is going to speak

23   from your side of the aisle.  Good morning, Mr. Levin.

24                   MR. LEVIN:  Good morning, Your Honors.  Adam

25   Levin on behalf of Mylan defendants.

1          So, Your Honor, there is an elephant in the room

2     here that nobody on the groom's or bride's side of the

3     aisle wants to seem to talk about, and that is that

4     we've been down this path before, and two very wise

5     jurists heard briefing and argument on these issues in

6     the underlying *Serrano* case.  And both Judges Lungstrum

7     and Gale held rather clearly that discovery in this case

8     should be stayed for all purposes because it is more

9     efficient for the parties to first see what claims will

10    be left after the motion to dismiss briefing and then

11    for the parties to have a meaningful Rule 26(f)

12    conference, develop initial disclosures, develop the

13    concise plan and do this in a coordinated and organized

14    way.

15         Judge Gale issued that ruling in a hearing in

16    April of 2017 and then Judge Lungstrum chimed in and

17    said, look, you know, in case anybody plans to object to

18    this ruling, I want to let you know I would deny that

19    objection.  And here's what he said:  He said, "I think

20    it makes sense to see if all of these claims, some of

21    which are perhaps more creative than others, how they

22    all set out at the end of the day.  When it's all said

23    and done, I think you'll have a better idea of what

24    discovery should be focused on.  I am not convinced that

25    there's anything truly to be gained in the grand

1    circumstances of things to move discovery any faster."

2    And that's at page 50 of the transcript from the April

3    25th, 2017 hearing.

4        Your Honor, the defendants respectfully submit

5    that there is no reason whatsoever to depart from that

6    ruling in the circumstances of the case as it currently

7    stands.

8        If anything, the reasons to stay discovery now

9    are even stronger.  Look, this case five months ago at

10   the time that ruling was issued was already a big case.

11   It already had lots of the same claims.  Now here we are

12   five months later.  The case has gotten bigger.  The

13   parties have grown.  The idea that somehow adding more

14   parties and more claims to a case that Judge Lungstrum

15   and Judge Gale already thought would be best served by a

16   brief stay of discovery now merits lifting that stay is

17   nonsensical from an organizational standpoint in terms

18   of the way this case should proceed.

19       And there's also sort of a late-breaking

20   development here that I want to make sure, because it's

21   not reflected in our submissions, the court is aware of.

22   Judge Crabtree, I'm sure you're aware of it because it

23   falls on your desk in a separate case.  So late

24   Friday --

25            JUDGE CRABTREE:  These moments always scare

1   me.

2           MR. LEVIN:  I shouldn't be presumptuous.

3   That's a fair point.

4           So late Friday without, I should add, notice to

5   the defendants in this case, and still without notice of

6   the defendants, we picked it up because of the docket

7   order, the same lawyers in this case representing the

8   class plaintiffs filed a motion to amend their complaint

9   in the *Brannon* case, which is the Kansas PBM case, to

10  add the Mylan parties as defendants to that PBM case.

11          So if already we had a bigger case with more

12  parties and more claims and more uncertainty, that has

13  now been magnified by the plaintiffs' lawyers' filing

14  last Friday in the *Brannon* case.  Now, there is real

15  uncertainty I think as to whether those PBM cases are

16  coming in.  And whether or not those cases end up on a

17  separate track I think is immaterial for the present

18  question which is what's best in terms of case

19  efficiency to get this case moving.

20          I have to respectfully take issues with -- with

21  Mr. Sharp's comment that these cases have been on file

22  for more than a year and nothing has happened.  That of

23  course isn't true.  The *Serrano* case amended complaint

24  wasn't filed until February.  And it wasn't teed up for

25  discovery decision before Judges Lungstrum and Gale

1    until April.

2         And of course the reason we're here today is not

3    because of anything the defendants did, it's because the

4    plaintiffs kept filing more cases and it's because the

5    plaintiffs in *Nordstrum* moved for the creation of an

6    MDL.  That process put everything on hold.  You know, we

7    ultimately supported it.  We came here.  It got

8    transferred to Your Honor.  That's why there has been

9    this break.  Otherwise, the *Serrano* case was teed up for

10   a decision by Judge Lungstrum on a motion to dismiss as

11   of July 4th of this year.  It has been -- the MDL

12   process has simply put things on hold.  But so it's not

13   the defendants to blame here.  It's the plaintiffs

14   having multiplied the proceedings.

15        I think, in light of that, especially when you

16   look back and really read the transcript of what

17   Judge Lungstrum was signaling that there -- you know, he

18   looked at that motion to dismiss, he looked at the

19   underlying complaint and he decided that case efficiency

20   would be best served by staying discovery in this

21   instance.

22             JUDGE JAMES:  Excuse me, Mr. Levin, can I

23   jump in?  Sorry to interrupt.

24             MR. LEVIN:  No, please, Your Honor.

25             JUDGE JAMES:  I reviewed that transcript

 1  too, and just -- just to kind of pursue this issue about

 2  the timing and delay, Judge Gale also noted, didn't he,

 3  that only a short delay was anticipated by allowing the

 4  stay at that time because Judge Lungstrum would act

 5  quickly and that issue would be decided by mid-July.

 6  And now we're in early October.  And if we allow the

 7  stay for the ruling on the motion to dismiss and all the

 8  things you're talking about, we'd be talking about a

 9  delay until many, many months down the road.  So aren't

10  we in a different position now than what Judge Gale and

11  Judge Lungstrum were contemplating in *Serrano*?

12          MR. LEVIN:  Well, two things, Your Honor.  I

13  would respectfully disagree that we are in a different

14  position now.  It is true, of course, that under the

15  current posture as the plaintiffs have now set it up

16  there is going to be a new amended complaint.  There's

17  going to be a motion to dismiss briefing.  That briefing

18  is not set to conclude until February of next year.

19          But in the grand circumstances of things, what

20  was really driving that decision, in our view from what

21  we can tell from Judges Lungstrum and Gale, was a case

22  efficiency determination.  And it wasn't whether because

23  we were going to have to wait a month or two months or

24  four months or six months.  Remember, he made this

25  decision at the end of April.  So even from April to

1  July we're talking about a three-month period from the

2  time when he made that decision going out.

3        And, you know, at that point what the judges were

4  saying -- because there was discussion too about initial

5  disclosures and do we need to get a side order.  And

6  every time that issue got raised, Judge Gale said the

7  same thing time and again, "The way the local rules are

8  structured here in the District of Kansas" -- I don't

9  have to tell Your Honor this of course -- "are designed

10  to promote collaboration and cooperation among counsel."

11        I mean, look at Section 9, for example, of the

12  ESI protocol of this district's rules.  You require the

13  parties to get together and to identify what the

14  material factual issues are for discovery.  Well, how

15  can we do that in a situation where the court believed

16  that some of the plaintiffs' claims are creative?

17  Judge Lungstrum said that and had an eye towards trying

18  to narrow or dismiss some of those claims in connection

19  with the motion to dismiss.

20        And I don't -- you know, there sort of seems to

21  be this attitude by the plaintiffs' side, when we talk

22  and meet and confer, that, well, of course the motion to

23  dismiss isn't going to be granted, right.  We're going

24  to be in discovery for the next, you know, year or two

25  years.  I mean, it shouldn't be a fait accompli that

 1   those issues are not going to be granted on a motion to

 2   dismiss.  There are clear questions of law.  These are

 3   not just Rule 9(b) *Twombly*-type questions.  Clear

 4   questions of law of why we think whole sets of claims,

 5   if not the entire complaints, are going to fall out on

 6   the plaintiffs' side.

 7          And so those, in our opinion, are really the

 8   reasons that were driving Judge Lungstrum and Judge Gale

 9   to defer discovery.  They wanted the parties to level

10   set.  They wanted the court to weigh in and give its

11   views on what claims should survive in this case and

12   then move forward in a coordinated and efficient way.

13          And, look, based upon the quote I just read from

14   Judge Lungstrum, "in the grand circumstances of things"

15   a four- to six-month delay in a case where we're going

16   to be together, if that motion to dismiss is denied, for

17   quite some time, we're going to have a lot of bagels and

18   spend a lot of nights at the Hilton.  "In the grand

19   circumstances of things," this is an MDL.  And in our

20   view, to be efficient, to get those issues right and

21   then proceed forward in an efficient way.

22          JUDGE CRABTREE:  Let me do this:  We're

23   probably to a point where you guys need some -- you need

24   some -- maybe an official to make a call.  I mean, I can

25   only do so much replay.

1          Here's what I'd like to do on this motion to

2   stay:  Your motion came in late last week.  I'm going to

3   ask, Mr. Hudson, can you circle your troops and get a

4   response to that on file by close of business Friday?

5   I'm going to make a decision on that.  I'm going to go

6   ahead -- I mean, I want to hear from them.  I don't want

7   to make this on the spot.

8          I will tell you that having read the complaint

9   and then having read at least the attack on it, it's

10  hard for me to imagine that some of the consumer

11  protection claims even on your best day don't survive.

12  So I think you're behind on the scoreboard but I don't

13  want to prejudge the issue.  I want to go back.

14         Judge James went ahead of me, so I want to go

15  back and look at the comments you cited and I'd like to

16  see the plaintiffs' response to this.  If you can get

17  that to me quickly, it doesn't need to be 50 pages.

18              MR. SHARP:  Yes, Your Honor.  It will not be

19  50 pages and we'll get it to you soon.  Friday is fine.

20              JUDGE CRABTREE:  All right.  Thank you.

21  We'll get that and I'll make a decision on that.  Often

22  the magistrate judge makes a decision on stays but I'm

23  going to take this one and turn it around so we get

24  something out on that next week.

25              MR. LEVIN:  I very much appreciate it, Your

1   Honor.  If I may, judge, just 30 more seconds?

2            JUDGE CRABTREE:  And let me just say, I'm

3   going to go ahead with the discussion of the whole

4   schedule without -- I mean, if I'm persuaded at the end

5   of the day that it should be stayed, then we'll just

6   have planned ahead.  So without -- but since we're all

7   here, I'm going to go ahead and talk about all the

8   issues.

9            MR. LEVIN:  Sure.  I completely understand

10  and I appreciate that approach and I appreciate the

11  court expediting the decision on these matters.

12           Just -- just one other, if I may, 30 more seconds

13  just on the investigation documents and patent

14  settlements?  Of course the reason the defendants

15  haven't produced those is because they asked for them

16  and Judge Gale and Judge Lungstrum granted our motion,

17  so we didn't have to produce them.  So that's why they

18  haven't been produced.

19           And I won't -- I won't belabor the point.  It's

20  in our papers.  But suffice it to say that we

21  respectfully disagree with Mr. Sharp's view that that

22  would be a simple or easy process to produce those

23  documents, particularly the investigation documents.

24  There are investigations that have been publicly

25  disclosed that have nothing to do with this case.  We

1    cite one in our papers.  Another example would be an SEC

2    investigation where Mylan is currently defending against

3    certain SEC allegations related to the EpiPen

4    auto-injector.  There's a whole separate SEC securities

5    class action pending in the Southern District of New

6    York.  So it's our view we shouldn't just have to turn

7    those documents over for purposes of this case.

8          The general point being that it's not just an

9    easy process to say, hey, it's on a hard drive

10   somewhere, here you go.  We're going to have to go

11   through those documents one by one, do a relevance

12   review on all the rest.  And that's going to take time

13   and it's going to be burdensome, an additional reason

14   why we support the stay of discovery.

15               JUDGE CRABTREE:  All right.  Thank you very

16   much.

17               MR. LEVIN:  Thank you, Your Honors.

18               JUDGE CRABTREE:  Do you have something else?

19               JUDGE JAMES:  No.

20               JUDGE CRABTREE:  All right.  Mr. Soos, did

21   you want to be heard?

22               MR. SOOS:  If I might just respond briefly

23   on the issue of remand in the *Sanofi* case, since that

24   more directly affects the matter I'm handling.  Our

25   position is not to do nothing, which is what

1    Mr. Buchweitz said.  Our position is that we let the

2    motion to dismiss process play out.  The motion to

3    dismiss hasn't even yet been fully briefed.  And I know

4    at the last hearing Your Honor indicated, at least in

5    the District of Kansas, a remand date is viewed somewhat

6    akin to a trial date.  Well, why would we be setting a

7    trial date before a motion to dismiss has even been

8    fully briefed?

9           So our position is let the motion to dismiss

10   process play out and then we can see what claims, if

11   any, are still left and what efficiencies might be

12   gained in remand at some appropriate time down the road.

13   But that's a discussion, we would submit, for a later

14   date, not for today.

15           JUDGE CRABTREE:  All right.  Thank you very

16   much.  So thank you for that overview.  What I'd like to

17   do is move -- Judge James and I have organized, mostly

18   Judge James, our thinking and questions about -- about

19   the increments that are proposed.

20           I'll just say this to the defendants' side of the

21   aisle:  I know we're all still figuring out who we are

22   and what our preferences are.  It's helpful for me to

23   get data points.  And as we decide what this schedule

24   ought to look like, I would -- I would encourage you in

25   the future even on -- I can -- I can process the idea

```
 1   that you all, look, this is a premature discussion, it

 2   shouldn't happen, we shouldn't have set a discovery

 3   schedule because we don't know whether these claims are

 4   going to survive.  But for me not to get back an

 5   alternative and "if we lose that fight here's what we

 6   think is a realistic schedule," that's useful

 7   information for me to get.  And right now I just am left

 8   with two data points, what the plaintiffs propose and my

 9   own judgment -- our own judgment about what is

10   realistic.

11        So I encourage you, even on points where there is

12   a basic disagreement about a fundamental question, to go

13   ahead and participate and submit dates so if you lose

14   that argument, here's where you come out.  It's not

15   going to mean "where you lose."  I got to hold that in

16   my head.

17        All right.  So I -- here's the way I'll organize

18   it.  I just have a couple of pieces of very small

19   business on the motion to dismiss and the Sanofi

20   complaint.  So we've got the deadlines set for the

21   closing of briefing that rolls up I think at the end of

22   this week.

23        There is a discussion about oral argument.  I'm

24   not -- I'm not going to decide at this point whether

25   oral argument ought to be set.  What I've tried to do,
```

1    I've done it more than some judges on our court, it

2    sometimes helps me learn but sometimes it's a waste of

3    time, and I never know which it's going to be until we

4    jump into the briefs.  And so I'm just going to -- I'm

5    going to defer that issue.  While I enjoy seeing you

6    all, I don't enjoy adding to your clients' expenses

7    coming in, so we'll just postpone that.

8         So then moving beyond that Sanofi lane to the

9    broader discussion about a proposed protective order,

10   protocol, document preservation, and other things, this

11   is Judge James' side of the hall and I'm going to be

12   quiet for a while and let you run the show.  Please, I

13   hope you will.

14              JUDGE JAMES:  Well, I'd like to hear from

15   the defendants first kind of, as Judge Crabtree has

16   suggested, as far as wanting to hear data points.  And I

17   -- I understand from the pleadings that I've read that

18   plaintiffs have provided a draft protective order and

19   ESI protocol and document preservation order to

20   defendant.

21         So, Mr. Levin, for defendants, I presume that is

22   true.  Can you give us an idea how long it might -- if

23   there's no stay, and again we don't know if that's going

24   to be the situation or not, how soon or how long it

25   might take defendants to respond with regard to those

1   documents?

2           MR. LEVIN:  Not long.  It is true they did

3   send us drafts of those.  In compliance with what

4   Judges Lungstrum and Gale said before, we deferred

5   responding to that and wanting to await the court's

6   direction on these issues in the discovery stay.

7           Of course if the court is inclined to go forward

8   on those issues, we'll be cooperative on that.  We're

9   prepared to engage in a discussion.  I mean, I think --

10  I think within 14 days for certain we can engage in a

11  meaningful meet and confer and exchange drafts.  And

12  what we would propose for this issue, Your Honor, is

13  that the parties try to agree.  And if we can't, we can

14  tee it up for a decision by Your Honor.  And I don't

15  even think we have to come back.  We can probably submit

16  competing proposals on areas of disagreement and the

17  court can decide what's best for those orders.

18          JUDGE JAMES:  Do you have a sense,

19  Mr. Levin, whether maybe an agreed protective order can

20  be submitted or do you think you're going to be at

21  loggerheads?  Do you have a sense of that?

22          MR. LEVIN:  I'm hopeful that the protective

23  order is something we can agree to.  I mean, it has the

24  standard kind of terms one would expect in an agreed

25  upon protective order, clawback provisions, that sort of

1    thing as well.  So I'm hopeful that that -- the ESI

2    order, we have to look at a little more carefully in

3    light of this district's guidelines and the point that I

4    mentioned earlier about Section 9.  But again there, I

5    mean, we're -- we're familiar with our clients' ESI

6    systems, as you might imagine, from having lived with

7    these for quite a while.  And we will engage

8    cooperatively with the plaintiffs if that's the court's

9    direction.

10              JUDGE JAMES:  And same time frame on that,

11   do you think?

12              MR. LEVIN:  I think so.  That one may be a

13   little bit harder.  I guess we have to interface with

14   our clients' technology people and all the rest and make

15   sure we have that down.  So maybe 21 days for ESI.  But

16   I would think we can get started on that.  Again, we'll

17   work with the plaintiffs to get that in as efficiently

18   as possible.

19              JUDGE JAMES:  All right.  And what about the

20   document preservation order?

21              MR. LEVIN:  Probably same time frames, 14 to

22   21 days if one is even needed.  I mean, there is, of

23   course, a litigation hold, there has been for quite some

24   time, in place by our clients.  So documents are being

25   preserved.

```
 1              JUDGE JAMES:  Okay.  As far as a procedure
 2    for that, of course best case scenario would be if you
 3    could all submit an agreed -- agreed documents on those
 4    three items.  But if that is not the case, I would
 5    contemplate a situation where the parties could submit
 6    red line versions showing their differences.  Does that
 7    -- is that an approach that you would find reasonable?
 8              MR. LEVIN:  Yes, that's what I was
 9    contemplating as well.  So we'll narrow down our
10    disagreements, if there are any, and we will just
11    present those areas of disagreement to Your Honor for
12    decision on that on the papers.
13              JUDGE JAMES:  Okay.  On those anything,
14    Judge Crabtree?
15              JUDGE CRABTREE:  No.
16              JUDGE JAMES:  Okay.  Well, while I have you,
17    let's proceed along down the list.  And I'll hear from
18    plaintiffs also, any of you, but these questions, we
19    want to get an idea from defendants if the stay does not
20    go forward.  Let me proceed with that on this issue of
21    did defendants -- plaintiffs request that defendants
22    produce kind of all initial disclosures, these
23    government settlement -- the settlement agreements and
24    government investigation documents.  Since -- since I
25    gave you a hard time about Judge Gale's -- the basis for
```

 1   the stay, I'll throw you a softball here and say I'm

 2   presuming it's defendants' position that those sort of

 3   documents should be subject to routine -- typical

 4   discovery requests and your right to object to those

 5   requests and respond that way?

 6            MR. LEVIN:  Absolutely.  And there's a

 7   reason I'm a softball, not a baseball, fan.  But, yes,

 8   that is our position.  And I'm glad Your Honor raised

 9   that because there's actually something that Mr. Sharp

10   said as well but I don't want it to be lost on the court

11   here and it's reflected in our papers as well.  He said

12   that they are -- plaintiffs are requesting these

13   documents as well as others so the defendants can give

14   the facts to us before we plead again, and they say

15   that.  They all but concede that in their position

16   statement from last week.  They want to get discovery

17   first and then be able to rely on that discovery to file

18   their amended complaint.

19            JUDGE JAMES:  You don't take issue with

20   that?

21            MR. LEVIN:  We might just a smidgeon as you

22   might imagine.  I mean, look, we all know that that's

23   backwards, right.  That's not the ways it's supposed to

24   work.  You have to plead viable claims first and then --

25   if you do that, then you're entitled to discovery.  We

1   cite cases -- a Tenth Circuit case on that issue in our

2   papers and so we think that's the better way to proceed.

3        It should be in the ordinary course if there's

4   going to be discovery.  That will give us time to go

5   through the documents, to respond to requests they have,

6   to make relevance and privilege and all sorts of other

7   determinations, get ESI protocols in place, get

8   protective orders in place and do this in the ordinary

9   course.

10        JUDGE JAMES:  All right.  And, plaintiffs,

11  I'll give you a chance to respond on this issue, but let

12  me go on down this line again as far as early discovery

13  and talk about Rule 26 initial disclosures.  Frankly, it

14  seems to me like these cases have been around for a

15  while.  I'm sure defendants have been gathering

16  documents.  So it seems to me initial disclosures, if

17  there's no stay, should happen -- the exchange should

18  happen very quickly.  So I'd like defendants' thoughts

19  on how soon -- let's play "Name That Tune" how soon

20  could you make your initial disclosures?

21        MR. LEVIN:  Well, I think I can try to give

22  an answer off the top of my head, but let me -- let me

23  offer perhaps a different solution because, of course,

24  we -- we would welcome the opportunity to talk about

25  these issues with the plaintiffs and our co-defendant,

1  Pfizer, and our client.

2        Reacting to Judge Crabtree's statement earlier

3  about it would be helpful for the court to have dates,

4  it might be more efficient perhaps to give us the time

5  to really think about these issues more.  Given what

6  we're hearing this morning, if we could have an

7  opportunity to go back and talk with our client and the

8  plaintiffs and think about these dates.  And I'm glad to

9  offer up a full schedule in terms of things like initial

10 disclosures and discovery cutoff dates and all the rest,

11 class cert deadlines, if that's what the court would

12 prefer.  Then the court can have these competing

13 proposals in front of it with the benefit of our

14 thinking.

15       I will say that, on initial disclosures, yes,

16 it's true we've been -- we've been gathering these

17 documents and have been living with these issues for

18 quite some time.  But that doesn't mean we've ever sat

19 down and decided, okay, for example, what witnesses are

20 we going to disclose in initial disclosures, what

21 categories of documents do we think are relevant to

22 these particular claims.  And of course also keep in

23 mind the plaintiffs are going to amend their complaint

24 on November 3rd.

25       So at the very least we would say we should not

1    have to do those disclosures until we have the benefit

2    of seeing their amended complaint.  They may add new

3    claims.  They may drop claims.  They may add new

4    parties.  They added us to a new case three days ago.

5    But I would think within a reasonable period of time

6    after that amended complaint, if that's the court's

7    direction, we would be able to provide those

8    disclosures.

9                 JUDGE JAMES:  And -- go ahead.

10                MR. LEVIN:  Just one other point as well.

11   We keep talking about initial disclosures.  I know in

12   these MDL proceedings, the plaintiffs are familiar with

13   this as well, very often, in addition to initial

14   disclosures, the parties will be asked to provide

15   so-called fact sheets from the plaintiffs.  Plaintiffs'

16   fact sheets, that was done in the *Syngenta* case.  It's

17   very common in, you know, sort of mass tort litigation.

18   And no one's been talking about that, so I just want to

19   put that on the court's radar as well.  That may be

20   something that we would find a benefit as well.  And to

21   the extent that we're being asked to do initial

22   disclosures, to perhaps come up with an agreed upon form

23   for plaintiff fact sheets and proceed down that path as

24   well.

25                JUDGE JAMES:  I'm glad you brought that up

1  because I -- that has kind of been a conspicuously

2  absent issue.  And I -- in thinking about it, I wondered

3  if in this case fact sheets would really -- what would

4  they address?  So if you could talk -- I mean, are there

5  specific topics or questions that you think plaintiffs

6  should provide fact sheets information on?

7          MR. LEVIN:  Yes.  I mean, just off the top

8  of my head we don't even have basic facts about their

9  purchases, the alleged purchases they made of their

10  EpiPen auto-injector products.  I mean, if the court has

11  had the benefit of reading our *Serrano* motion to

12  dismiss, you'll see some of the plaintiffs don't even

13  allege they bought the EpiPen auto-injector, don't

14  allege what price they bought the EpiPen auto-injector

15  at, don't say when they bought it.

16      And so all these issues, for example, go to

17  defenses like statute of limitations, standing,

18  certainly will go to class certification issues as we

19  get into the individualized effect of what the

20  plaintiffs are alleging, reliance, which we think is

21  going to be a very major obstacle to them achieving

22  class certification in this case.

23      So, yeah, I think there are facts about their

24  individual circumstances and the purchases they allege

25  that would be useful to advancing the case.

 1              JUDGE JAMES:  All right.  Now, circling

 2  back.  You -- you skirted my question about the initial

 3  disclosures and --

 4              JUDGE CRABTREE:  But very artfully.

 5              JUDGE JAMES:  Yeah, well done.  Well done.

 6  I'd like to kind of get an idea from you today, you

 7  know, from the time this case is filed, do you think

 8  within 10 days you could do your initial disclosures?

 9              MR. LEVIN:  That is probably a little

10  aggressive just because I think we need the time -- I'm

11  presuming this is not going to be a five-page complaint.

12  It's going to be a lengthy complaint, probably a couple

13  hundred pages, if I had to guess, with 50 or 60 causes

14  of action.  So I think somewhere in the neighborhood of

15  30 days perhaps would allow us to assess the complaint,

16  talk to our client, figure out who the potential

17  witnesses are and what the proper categories of

18  documents are and I think that would be -- that's

19  something we could work towards.

20              JUDGE JAMES:  All right.  And then a related

21  issue, would defendants be willing to produce documents

22  identified in their Rule 26 disclosures without normal

23  discovery requests?

24              MR. LEVIN:  Yes.  I mean, of course subject

25  to relevance and privilege and protective orders, all

1    that stuff, the answer is yes.  In other words, if what

2    Your Honor is getting at is are we going to demand

3    formal RFPs under Rule 34, the answer is no.  We're

4    going to be cooperative on that so long as there is a

5    recognition that discovery is mutual, okay.  I mean, if

6    the court is going to lift the stay, we're going to go

7    on the offensive too.  And so we want the ability to be

8    able to take discovery of the plaintiffs in this case to

9    try and move it along as efficiently as possible as

10   well.

11            JUDGE JAMES:  Okay.  One final question from

12   me, and Judge Crabtree may have follow-up before we move

13   to plaintiffs, but one kind of interim position might be

14   if -- if the stay is lifted to continue the stay as to

15   depositions to limit -- limit initially to written

16   discovery.  I presume defendants would be in favor of

17   that.

18            MR. LEVIN:  We would.  And again I'm glad

19   Your Honor raised this because there are a couple of

20   interim steps here actually if the court is inclined to

21   deny the motion to stay.

22        So one would be for us to do things like the ESI

23   protocol, the protective order, perhaps initial

24   disclosures and then, you know, stop at that and we'd

25   exchange information.  The parties have gone down that

1    path.  We'll have a ruling from the court on the motion

2    to dismiss shortly thereafter and we can proceed after

3    that.

4          Another step, if the court wants to go beyond

5    that, would be what Your Honor was talking about.  In

6    fact, that's exactly what Judge Lungstrum did, as you're

7    probably aware, in the *Syngenta* case.  If you stay

8    discovery in terms of depositions and all the rest but

9    required what he called highly targeted discovery.

10          And I should be clear, even in *Syngenta* he did

11   not require production of wholesale categories of

12   documents to my understanding.  I could be wrong but I

13   believe he did not require production of wholesale

14   categories of documents for initial disclosures, for

15   example, but set out three very specific categories of

16   documents from the scheduling order that I saw that he

17   required the defendants to produce.  And those are akin

18   to what the plaintiffs are asking the court here, the

19   investigation documents, the patent settlements.  So

20   that's another interim step as well, require the

21   production of those materials but not go full on with,

22   you know, complete -- complete document discovery.

23          So there are a couple of stages and interim steps

24   we can go to.  We obviously start at the first one and

25   go down the line.  But at the very least, Your Honor,

1   yes, we clearly agree we should not be doing deposition

2   discovery at any point before we have a motion to

3   dismiss ruling.

4            JUDGE JAMES:  All right.  As to what we've

5   talked about so far and only that, anything you'd like

6   to add?

7            MR. LEVIN:  I don't think so.  I think we

8   covered that.  And just to circle back and complete the

9   offer, would it benefit the court if we, you know,

10  within the next seven days submitted a proposed schedule

11  based on -- based on this morning's discussion?

12           JUDGE JAMES:  I think Judge Crabtree and I

13  will talk about that and let you know if -- if we think

14  that would be useful and how that might happen.

15           MR. LEVIN:  Because I do want the court to

16  have the benefit of the defendants' views and some of

17  these longer term deadlines we're not talking about.

18  So, for example, how long should discovery --

19           JUDGE JAMES:  Class certification issue.

20           MR. LEVIN:  How long should the class cert

21  discovery period be.  You know, the Sanofi plaintiffs

22  have said it should be about 12 months for common

23  discovery.  The class plaintiffs have said it should be

24  somewhere around 15-16 months.  And I think we'd like to

25  give the court the benefit of our views on that.

1          JUDGE JAMES:  All right.  Judge Crabtree?

2      Okay.  Okay.  Thank you, Mr. Levin.

3          MR. LEVIN:  Thank you, Your Honor.

4          JUDGE JAMES:  Plaintiffs Sanofi.

5          MR. HOCHSTADT:  Good morning, Your Honors.

6  If I may, just in a little bit of a different order, on

7  the government investigation point, the suggestion has

8  been made that the plaintiffs here, both the Sanofi

9  plaintiffs and the class plaintiffs, are seeking the SEC

10 government investigation documents.  We've been very

11 clear we're not seeking the SEC government investigation

12 documents.

13         At pages 9 through 10 of our submission, we

14 identified four government investigations that Mylan's

15 publicly disclosed or that are otherwise public.  One

16 involves the U.S. Department of Justice fraud

17 investigation that was prompted by a complaint by Sanofi

18 that resulted in a $465 million settlement last -- in

19 August and that's public now.  Sanofi was the

20 whistleblower.

21         And as part of the settlement that was reached in

22 that case between the United States, Sanofi and Mylan,

23 Mylan has agreed to give to the United States upon

24 request complete and unredacted copies of all

25 non-privileged documents, reports, memoranda of

1    interviews and records in its possession, custody or

2    control concerning any investigation of the covered

3    conduct, which is the underpayment of rebates to

4    Medicaid for EpiPen that has been undertaken or has been

5    performed by another on its behalf.  So the idea that

6    there's some gross undue burden in turning over

7    documents that they've already agreed to produce upon

8    the government's request is just -- it's meritless.

9    The --

10                JUDGE JAMES:  Are there -- are there

11    documents though in your -- what you've requested that

12    are not -- have not been publicly available?

13                MR. HOCHSTADT:  Well, these documents are

14    not -- they haven't been produced publicly in the sense

15    that they've been produced to regulators as part of

16    investigations.  And so, for example, they disclosed a

17    civil investigative demand, which is a formal subpoena

18    from the Federal Trade Commission.  And they disclosed

19    in the public filings that the subject matter of that

20    CID is potential anti-competitive practices in the

21    market for epinephrine auto-injectors.  They disclosed

22    that last fall.

23          I can tell you and represent I've been on

24    conversations with the FTC and the New York Attorney

25    General's Office both before and after our lawsuit was

1    filed.  They initiated that conversation to Sanofi.  The

2    investigations that they're pursuing relates to the very

3    core conduct that's alleged in Sanofi's complaint.  I

4    can't speak to how broad it goes beyond that but they

5    certainly were covering the issues that we've alleged

6    misconduct about.

7         So the idea that we're seeking government

8    investigation documents of information that they've

9    already produced that's not relevant, we only want the

10   information that's relevant.  We're not interested in

11   SEC securities documents.  That's why we haven't sought

12   that.

13        We've only sought civil antitrust investigation

14   documents that they've turned over to the Federal Trade

15   Commission, the New York Attorney General's Office, the

16   West Virginia Attorney General's Office and in

17   connection with the United States Department of Justice

18   fraud investigation that we -- we initiated with our

19   complaint to the government.  So four investigations,

20   just to set the record straight on that.

21             JUDGE JAMES:  All right.  Thank you for that

22   clarification.

23        But further to my colloquy a moment ago with

24   Mr. Levin, why shouldn't the plaintiffs be required to

25   go through the ordinary steps through discovery to

17-md-2785    In re: EpiPen    10.3.2017                    46

1    obtain that information, allow the defendants an

2    opportunity to object to the extent that they claim

3    privileges or work product or whatever, why shouldn't

4    that process be followed?

5                MR. HOCHSTADT:  Your Honor, it's a fair

6    question.  Just I've been on the other side of these

7    cases and the -- the -- it's almost routine now nowadays

8    that -- these documents exist on CD or in a database and

9    this process of us serving a formal request, then

10   serving objections, meet and conferring, there's no

11   question those four investigations are relevant.

12   There's no question about that.

13        In terms of privilege, they can redact for

14   privilege if they like.  We'll agree that they're

15   produced under a protective order, which candidly we

16   would have liked to have negotiated already.  So they'll

17   all be -- they'll all be subject to a protective order

18   and confidential.  So that's -- candidly that's going to

19   be just a lot of inefficient work when the standard

20   practice in antitrust cases, and we pointed this out in

21   our submission, is for -- not just in criminal cases but

22   in civil antitrust cases for, you know, you've got the

23   productions for the government.  That's easy.  That

24   should be turned over very quickly.

25        And, frankly, any burden of review is on the

1    plaintiffs.  But we're willing to do that, right.  So

2    they can't manufacture a burden just based on conclusory

3    assertions of it.  We're willing to do the review.

4        So beyond the government investigations that

5    we're seeking, in terms of the allegations, there's a

6    lot of references to plaintiffs.  And I understand we're

7    in a MDL and we're trying to figure this all out.  But

8    Mr. Levin made a number of references to plaintiffs and

9    wanting this discovery to amend.  The Sanofi complaint,

10   we didn't amend.  We saw their motion to dismiss.  As

11   Your Honors know, they're filing their reply.  We want

12   this discovery so we can get this case moving.  We want

13   to proceed efficiently consistent with Rule 1.  That's

14   the reason why we want to get this moving long.  In

15   terms of --

16        JUDGE JAMES:  But could I -- excuse me.  To

17   focus this discussion a little bit, why should

18   plaintiffs, as you've suggested in your scheduling

19   order, receive the initial disclosures and all the

20   documents you contemplate in your schedule prior to

21   filing your amended complaint?

22        MR. HOCHSTADT:  So Sanofi's not filing any

23   -- any amended complaint.  The class plaintiffs, I

24   understand, have agreed to do that.

25        JUDGE JAMES:  Right.

1           MR. HOCHSTADT:  And I understand -- and

2    Mr. Sharp can correct me -- I understand that part of

3    the reason why that may be beneficial is it might help

4    them amend, potentially narrow their amended complaint,

5    it would be efficient, potentially beneficial to some

6    defendants.  But in terms of Sanofi --

7           JUDGE JAMES:  Did you ask Mr. Sharp --

8           MR. HOCHSTADT:  In terms of Sanofi --

9           JUDGE JAMES:  -- on that?

10          MR. HOCHSTADT:  Mr. Sharp will address that.

11   But in terms of Sanofi, we're not needing this discovery

12   or wanting it to amend.

13          JUDGE JAMES:  Yeah and I'll -- right.  I

14   understand that.  I'll direct that to Mr. Sharp then.

15          MR. HOCHSTADT:  And just lastly then, in

16   terms of the fact sheet, Your Honor, I didn't hear

17   anything that they required was warranted of Sanofi.

18   Our complaint was 67 pages.  It was fairly detailed.  I

19   don't believe they need to know any of that information

20   as to the -- beyond what's in the complaint already.

21          As to the initial disclosures, candidly, Your

22   Honor, they know who the relative witnesses are for

23   Sanofi.  They've been through these highly relevant

24   government investigations.  They've done internal

25   investigations.  They've had to respond to the

1    government inquiry.  I've been on the other side of

2    these federal investigations.  "How many people at Mylan

3    were involved in targeting Sanofi's product?"  There are

4    a certain number of folks who deal with the commercial

5    payers, the Medicaid agencies, and the people that do

6    the marketing and the relevant executives.  It -- I

7    mean, unless they're going to say the whole company was

8    devoted to killing Auvi-Q, it's going to be a fairly

9    discrete universe of folks.

10              JUDGE JAMES:  And you would suggest -- the

11   plaintiffs would suggest somewhere along the order of

12   10 days to two weeks after filing the amended complaint

13   the initial disclosures?

14              MR. HOCHSTADT:  Well, but with what I just

15   said, I would agree with you on the short time frame of

16   two weeks or so or 10 days we had in our proposal but

17   not on the filing amended complaint because that --

18   we're not going to be doing that for Sanofi.

19              JUDGE JAMES:  Right.  Right.

20              MR. HOCHSTADT:  Okay.

21              JUDGE JAMES:  Anything further?

22              MR. HOCHSTADT:  Unless you have anything

23   else for me, that's it.  Thank you.

24              JUDGE JAMES:  Your position on a stay of

25   depositions pending further order of the court?

1            MR. HOCHSTADT:  Your Honor, I respectfully

2    submit that we don't need that kind of a formal order.

3    My -- my -- for the most part, with the exception of a

4    rare certain early deposition on, you know, sort of

5    corporate organizational structure, you know, it's the

6    normal case where you get some documents first and take

7    a deposition.  So I don't think we need a formal sort of

8    bright-lined sort of stay in terms of depositions even

9    though that might be the way it, in fact, plays out.

10        But, you know, I just would add, sort of beyond

11   that, my understanding of what I'm hearing and what's

12   been -- what we've had trouble understanding is Mylan's

13   position is discovery should be stayed, right.  But if

14   discovery is not stayed, the Sanofi complaint will be

15   fully briefed as of Friday.  Is the case supposed to sit

16   on ice while the class plaintiffs' claim gets amended,

17   ERISA claims get thrown in?  And I just don't understand

18   what their proposal is for -- if a continuation of a

19   stay is not granted, do we just sit and hang around for

20   a year-plus?  It just doesn't make sense to us.

21        Thanks, Your Honor.

22            JUDGE JAMES:  All right.  Thank you.

23   Mr. Sharp, can you address this issue about the timing

24   of the filing of the amended complaint versus the

25   initial disclosures and all of that document production?

1           MR. SHARP:  I'll be happy to, Your Honor,

2    and I think this comes back to perhaps no good deed goes

3    unpunished.  We agreed to -- to do a consolidated

4    complaint in an effort to move this case forward in

5    hopes that we would move a little bit towards the

6    defendants and they would come back to us and say, okay,

7    let's get on with a little bit of discovery and move the

8    case forward.

9           Here's what the consolidated complaint is going

10   to look like.  It's going to look like the old

11   complaint.  There's nothing significantly different.

12   Let's look at it.  We're going to add the third-party

13   payers because the third-party payers have come into the

14   MDL.  That's just a matter of adding another party to

15   the class definition, no big thing.  All of the same

16   claims that exist except of course for the consumer

17   protection claims the third-party payers won't have.

18          Then we're going to probably add a Sherman Act

19   injunction claim.  But there's no mystery about the fact

20   that indirect purchasers can recover under the Sherman

21   Act for an injunctive relief.  They can't for damages.

22   We realize that.  But for a Sherman Act injunctive

23   claim, there's no mystery here.  This case has been

24   going on for a long time.

25          And then we'll add a Alabama consumer claim.

1          So essentially the net result of our agreement to

2     file a consolidated complaint at this point is we're

3     going to add two plaintiffs to the already 50 that exist

4     before this court and have existed before this court for

5     many, many months.

6               JUDGE CRABTREE:  This is more likely to be

7     consolidated than amended.

8               MR. SHARP:  It's going to be consolidated

9     and amended, but essentially we're going to add two

10    plaintiffs and we're going to add two claims out of

11    where there are essentially 80 claims.  We're going to

12    add another Alabama Consumer Protection Act claim.

13         So there's not going to be any massive changes.

14    That's why we're encouraging the court to go forward

15    with the motions to dismiss in the first place is

16    because they are ready.  There's not -- sure, the

17    complaint's long.  Sure, the motions to dismiss are

18    long.  They already were and they're going to be pretty

19    much the same because everybody's word processor works

20    the same.

21         So I don't want the court to be hung up on the

22    fact that there's going to be massive changes here.

23    There just isn't.  There isn't any need for it.  We

24    think we've pled viable claims in all of these issues.

25              I understand the defendants think, oh, they're

1    going to beat us on class certification already because

2    of reliance, but we didn't plead hardly anything that

3    requires reliance.  RICO doesn't require it.  Antitrust

4    doesn't require it.  Most of the consumer complaint --

5    consumer issues don't require it.  Sherman Act antitrust

6    doesn't require it.

7          So these things are ready and I think we can get

8    moving on it.  So there's no mystery here about why

9    would we have a protective order, why would we get on

10   with the discovery in this case.  This case isn't really

11   going to change that much with the consolidated amended

12   complaint.  So that's the reason we think we should just

13   get on with this.

14         With respect to your schedule, Your Honor,

15   protective order, if the defendants can do that in

16   14 days.  If we can't reach an agreement, we'll file a

17   motion with red lines and I would -- I would ask for

18   expedited briefing within five days on each side.  I

19   don't think that should be any problem.  These cases --

20   protective orders are in every single case anymore, so

21   it shouldn't be any -- any big deal I don't think.

22         The same thing is true with the ESI protocol.

23   This isn't our first ESI protocol on either side of the

24   "V" in this case.  If they want to do it in 21 days,

25   that's not a problem.  Because after all, even if we

1    started doing discovery right now, the court would be

2    able to rule on an ESI protocol within the time frame we

3    actually are getting e-mails and all that other kind of

4    stuff that you find with ESI.  So 21 days is fine,

5    again, with expedited briefing, say five days.

6         Let me take something off the court's schedule.

7    And I haven't discussed this with Sanofi but I'm going

8    to lay it out there.  The document preservation order,

9    we've issued document preservation letters.  You've

10   heard defendants say things have been on hold.  You've

11   heard everyone talk about the government investigations.

12   We shouldn't need a document preservation order.  We

13   should be able to proceed with the document preservation

14   letters that we've already sent to Mylan and to the

15   defendants.

16        And also we have this spoliation law.  We're

17   comfortable with that.  And on the plaintiffs' side we

18   don't need to envelop the court in a document

19   preservation order unless the court wishes to engage in

20   that.  And if so, then, again, the 21 days or 14 days

21   with expedited briefing is fine with us.

22        With respect to initial discovery, I don't need

23   to go over, I don't think, what Sanofi already said.  We

24   think we should get that immediately.  What's the point

25   of asking for a 30-day -- 30 days will you give it to us

1    instead of now even though you've had this for many,

2    many months?  What's the point of having an extra

3    30 days?  They say, well, some of it might not be

4    relevant.  Relevance is not a privilege.  They don't get

5    to withhold because they think it's not relevant and we

6    think it is relevant.  We are asking for things that are

7    relevant.

8            And as Sanofi's counsel pointed out, if it's not

9    relevant, then that's our burden to go through all this

10   irrelevant stuff.  We're not here to look at irrelevant

11   things.

12           JUDGE JAMES:  Well, let me stop you there.

13   Under Rule 26 doesn't it have to be relevant and

14   proportional to be discoverable?

15           MR. SHARP:  It does have to be relevant and

16   proportional.  And we believe it's relevant.  The fact

17   they don't believe it's relevant is a different issue.

18           So certainly the court could get involved in that

19   kind of an issue over relevancy and irrelevancy and

20   those kind of issues.  But these are government

21   investigations that drive to the very heart of EpiPen.

22           And the other thing that I'd like to address is

23   these are not novel issues.  These never were novel

24   issues that we brought here.  There's been four

25   government investigations -- actually five.  One of them

1    we're not asking for information about right now by the

2    SEC.  This is not something that just I dreamt up and

3    said, hey, I'd like to sue EpiPen.  This has been all

4    over the news.  There's been government investigations.

5    Professor Michael Carrier has written at least one, I

6    think two law review articles about this issue.  Already

7    had them published.  And there's dozens of cases that

8    have been filed across the country that are now MDL

9    before this court.  These are not novel issues.  These

10   are things that both sides know about and we've been

11   proceeding for literally a year.

12        And I would address the "literally a year"

13   because the first filed case against Mylan was back in

14   August of 2016.  Now, granted that case wasn't filed

15   right here in Kansas, but those cases all ended up

16   getting consolidated in the original *Serrano* case.  In

17   any event, we're prepared to go forward with initial

18   disclosures.

19        If they want to discuss fact sheets, we're more

20   than happy to do that, Your Honor.  If they would just

21   provide us what they think needs to be on a fact sheet,

22   we'll negotiate with them on that in good faith and see

23   if we can't address not only what needs to be on it but

24   when it needs to be provided.  We're happy to move on

25   with that case.  We know discovery's going both ways.

1    We may think things aren't relevant on our side and they

2    may think things aren't relevant on their side.  We'll

3    be happy to discuss those issues with them.

4          So with respect to initial disclosures, yes, we

5    would both do initial disclosures as the court suggested

6    and we would provide the documents that we said in our

7    initial disclosures, because in that way we know those

8    are issues that we find relevant because they're in our

9    initial disclosures and they find relevant they're in

10   their initial disclosures, and so there's really no

11   question about the issue.  And so we would certainly go

12   forward with that.

13         The class certification schedule that we've put

14   forth we think is a solid one, one that would work.  We

15   have tried with -- with Sanofi's effort -- and we tried

16   to engage with defense counsel.  But with Sanofi's

17   effort we tried to put it in the case so that it would

18   meld well with the class case so that when they got done

19   with their discovery that they could get on with their

20   remand motion and this court would be considering that

21   remand motion as the parties on the class side are

22   briefing the class certification issue so as not to just

23   load the court up with issue after issue after issue

24   that the court has to decide all at the same time.

25         So we tried to stagger that so -- respecting the

1  court's time to consider each of these issues in turn.

2  And then we knew that the class case would go longer

3  than the *Sanofi* case.  Everyone knew that from the very

4  beginning.  And Sanofi, whether the court remands this

5  case after experts and *Daubert* and summary judgment or

6  whether it does something else, that would be an issue

7  for the court to decide later on down the line.  But

8  we've tried to stay out of each other's way and make an

9  orderly progression of this case so that the MDL can be

10  concluded.

11       So if there's anything else the court would like

12  us to address on this schedule, I'd be happy to do so,

13  but I think the -- the initial disclosures in 30 days

14  starting from today is fine.

15            JUDGE JAMES:  One thing I forgot to raise

16  with defendants, and I'll come back to Mr. Levin or

17  whoever wants to on the other side, and, Mr. Sharp, I'll

18  hear from plaintiffs, is the Rule 37.2, 30-day rule on

19  filing motions to compel with regard to objections to

20  discovery requests.  Let me tell you where I am at on

21  that.  This goes back to early in my time on the bench

22  and allowing this no time limit on motions to compel

23  when there's rolling production, which sounds like a

24  grand idea, resulted in a huge mess with a spoliation

25  motion.  And so I am adverse to not having a deadline

 1   even when there's a rolling production and I realize

 2   that complicates things.

 3        But I want to hear from both sides of the "V"

 4   about what your suggestions might be to make me feel

 5   comfortable with it if it's workable for you all.  I

 6   know in *Syngenta* that Judge Lungstrum did impose the

 7   30-day rule under Rule 37.2.  I'd love to do that.  And

 8   I will unless you all can convince me of some other

 9   mechanism that groups these issues to my attention on

10   discovery that makes me comfortable.  So do you have

11   thoughts on that, Mr. Sharp?

12             MR. SHARP:  Yes, two.  One, of course, would

13   be if you are going to impose that rule, have -- have

14   the parties indicate rolling production is concluded and

15   then 30 days after that rolling production, rather than

16   here's our response and we've provided some documents

17   and we're going to roll documents out over the next

18   90 days to continue to have orders from the court and

19   invoke motions after order after order while that

20   production is still rolling, I would suggest let's have

21   that 30 days run from the end of the rolling production

22   on that particular discovery.

23             JUDGE JAMES:  You mean on each time there's

24   a request for production, is that what you mean?

25             MR. SHARP:  Each time there's a request for

1    production, have the other -- the side that receives

2    that request for production certify we're done with that

3    production, no more rolling production on that, we're

4    done with it.  Thirty days from now you need to then

5    decide whether you're going to move to compel.  That's

6    one option.

7         The other option I know that has been done in

8    this -- in this district is to have scheduled

9    conferences every three months or thereabouts on

10   discovery disputes so that any discovery disputes that

11   are outstanding can be raised to the court at that time.

12        I am happy with either or both of those

13   scenarios.  That would help us proceed with discovery,

14   yet, when we can't -- when we get at loggerheads, we can

15   bring it to the court's attention in a timely manner and

16   not just leave it until the end of the case where it

17   just all gets dumped in your lap that, you know, here's

18   a 50-page motion on a motion to compel and it impacts

19   all the rest of the schedule.  Because if you grant

20   something, then we can't get on to the dispositive

21   motions.

22             JUDGE JAMES:  All right.  That's helpful.

23   Thank you.

24             MR. SHARP:  Thank you.

25             JUDGE JAMES:  Mr. Levin, or -- would you

1    like to address that issue?  I'm open to other

2    suggestions.

3             MR. LEVIN:  Sure, Your Honor.  I think from

4    the defendants' side -- I just conferred briefly with

5    Pfizer, so I believe they agree with this as well.  We'd

6    be fine with a 30-day roll that Your Honor expressed and

7    that Judge Lungstrum did in *Syngenta* as well.

8         I have no concerns about what Mr. Sharp said

9    about, practically speaking, having to get to the end of

10   a certain production before the issue becomes ripe and

11   the 30-day clock starts ticking.  That makes sense,

12   right.  We have to all acknowledge when certain

13   discovery requests have been closed out and the clock

14   would start running.  That's fine.  You know, we're open

15   to the court's preferences on this.  I don't think we

16   have to burden the court by coming back every couple

17   months unless you'd like to see us to be here.

18             JUDGE JAMES:  We would always like to see

19   you.

20             MR. LEVIN:  But it seems to me we could do

21   this in a 30-day roll.  It keeps things moving.  It

22   keeps things efficient.  It doesn't let issues get stale

23   and we'd be fine with that if that's the court's

24   preference.

25             JUDGE JAMES:  Okay.  Thank you.

1              JUDGE CRABTREE:  All right.  Thank you very

2    much, Judge James, for -- I hate to miss a good ESI

3    discussion.  I'm glad I was here for that.

4         So I have some questions just to -- sort of

5    trying to understand the mind-set of at least the

6    approach that plaintiffs took, and so I think these are

7    questions for the plaintiffs side.  Mr. Sharp, so I'll

8    assume you and Mr. Hochstadt are going to field these.

9         I just want to understand, because there are in

10   effect in your proposal as I -- at least as I understand

11   it, sort of two discovery closing dates.  There is the

12   discovery closing date of November 30 of '18 that I

13   think closes out the coordinated fact discovery that

14   includes the Sanofi, and then there is the later one.

15   I'm trying to remember when it is -- it's August of '19.

16   And so that's for the class plaintiffs.

17        And I really if -- in a perfect world, if your

18   dates were adopted, the discovery that includes both the

19   class plaintiffs' claims and the Sanofi plaintiff

20   claims, that would end in the -- at the November '18

21   date and then you all would continue on any additional

22   discovery you need.  Am I understanding of the approach

23   at least correctly?

24             MR. HOCHSTADT:  That is correct, Your Honor,

25   for Sanofi.

1          MR. SHARP:  That is correct, Your Honor.

2          JUDGE CRABTREE:  So let me ask you one thing

3  that is -- is -- what are you thinking about how the

4  expert disclosure dates fit into the schedule that you

5  have proposed?  I suspect these are going to be

6  different answers on what you told me already, but I

7  just didn't -- I didn't find the discussion about

8  disclosure dates on experts.  And if I overlooked it,

9  please correct me, but be diplomatic.

10          MR. SHARP:  Your Honor, actually, there

11 would be -- with respect to Sanofi, I'll let them

12 address that issue, because I don't believe that's

13 within their schedule.  I believe they would like to go

14 back to New Jersey I believe --

15          JUDGE CRABTREE:  That's what I thought.

16          MR. SHARP:  -- to do that.  With respect --

17 is that correct?

18          MR. HOCHSTADT:  All I would add is we're

19 happy to disclose before then to Mylan who the expert is

20 and the basis -- consistent with Rule 26 disclosures the

21 basis for the damages calculation and so forth.  But in

22 terms of the expert reports, our proposed schedule would

23 be to have that done in New Jersey.

24          JUDGE CRABTREE:  Okay.

25          MR. SHARP:  Then with respect to the class,

1  if you'll see on the class -- on the third page on class

2  certification --

3          JUDGE CRABTREE:  Of your submission?

4          MR. SHARP:  -- of our submission, the class

5  certification motion would be filed with all supporting

6  evidence including expert disclosures.  So we would do

7  expert disclosures there on January 31.  Defendants

8  would then file whatever evidence they want the court to

9  consider during class certification, including any

10  expert disclosures they have, on March 30.  And then if

11  we have any rebuttal to what they would put in, we would

12  do that on April 30th.

13          JUDGE CRABTREE:  I did miss it.  Thanks for

14  redirecting me.

15          MR. SHARP:  So that would be for class

16  certification.

17      And then with respect to after discovery closes,

18  we would just follow the usual of presenting our experts

19  at that point and then we would have *Daubert* motions and

20  motions for summary judgment.

21      We're happy to put in after the -- either before

22  or after the discovery ends, whatever the court's

23  feeling is on that, expert disclosures on the merits.

24  It's not unusual for us to find that the class

25  certification experts have a little additional

1   information through discovery that you end up with

2   additional merits discovery or merits opinions from

3   those class certification experts as you go into

4   *Daubert*, but that will be the issue.

5         So if the court would like formal designations of

6   merits experts, we would propose those to be somewhere

7   in that time frame in early August so that the court

8   would be in a position to have that motion for *Daubert*

9   and/or summary judgment in September.

10              JUDGE CRABTREE:  Early August of '19?

11              MR. SHARP:  Of 2019.  So plaintiffs --

12   plaintiffs and everyone would designate.  We can either

13   do it simultaneous or plaintiffs can designate and

14   defendants can designate after that.

15              JUDGE CRABTREE:  I suspect I'm going to hear

16   from them.

17              MR. SHARP:  They always want to do it one

18   after another after another.  And if you do that, then

19   you need to back it up not to early August but probably

20   the month before just to get that here's our

21   designation, here's their designation, here's our

22   rebuttal.  Same kind of situation that we do in class

23   certification.  But since most of that's already out on

24   the table, it shouldn't take too long on the merits

25   issue.

1           JUDGE CRABTREE:  All right.  I'd like to

2    hear from the defendant on the subject of where expert

3    disclosures -- I'm concerned about how they fit into --

4    I think they've addressed the role that experts might

5    play in the certification dispute if they survive that

6    long.  But I'm concerned about what I might hear some

7    day from you all on the role of experts in the

8    dispositive motion process.  So maybe -- I get it you

9    don't probably want to just throw a date out off the top

10   of your head, but I just kind of want to appreciate your

11   view of the role that the experts might play in the

12   dispositive motion process.

13           MR. LEVIN:  We would anticipate experts

14   would play a role in both the class certification and

15   the dispositive motions process.

16           We -- I mean, these kinds of consumer class

17   actions happen all the time, right, you may have experts

18   who are opining on issues that touch on whether, for

19   example, damages could be proven class-wide but that's a

20   different analysis necessarily from whether there was an

21   antitrust violation or, you know, whether there was what

22   the market is for antitrust purposes, all the kinds of

23   things that truly go solely to the merits side of the

24   house that would not necessarily affect the class

25   certification decision.  So we -- we definitely

 1  anticipate having experts in both of those areas.

 2          JUDGE JAMES:  Is Mr. -- sorry to jump in

 3  here.  Mr. Levin, that -- with that thought process, and

 4  again I don't expect you to give specific dates on a

 5  lark here, but if these expert designations that are

 6  provided for in plaintiffs' proposal really deal with

 7  just class certification, would it be defendants'

 8  feeling those disclosures should come earlier in the

 9  process?

10          MR. LEVIN:  No, because I -- I think

11  candidly they're already leaving a pretty truncated

12  period for discovery overall.

13      I think what we would probably envision is a

14  separate period for expert discovery on the merits

15  following class certification decision and/or Rule 23(f)

16  appeal if a class were to be certified.

17      You remember, there's going to -- they don't have

18  this built into their schedule, but one of two things

19  happens based on the class certification decision.

20  Either class cert is denied, in which case, let's be

21  honest, the case is over.  They may take an appeal, but

22  for all purposes the case is over at this level --

23          JUDGE CRABTREE:  Except for those guys.

24          MR. LEVIN:  -- at least with respect to the

25  class plaintiffs.  And if class certification is

1    granted, in which case we're going to take -- we'll

2    likely take a 23(f) appeal, that's going to take some

3    time, you know, if it's granted and it goes up.  Even if

4    it -- even if the appeal were to be overruled, we got a

5    class notice period, right.  You got the whole process

6    of notifying the class before you get down the path.

7            So there's going to be a lot of extra time in

8    here that I think they're not accounting for that I

9    think is going to have to occur.  Even after a decision

10   on class cert, I think that would allow plenty of

11   opportunities for the parties to, during that period or

12   thereafter, engage in a period of expert merits

13   discovery with respect to whatever cases remain in the

14   MDL at that time.

15           JUDGE JAMES:  Thank you.

16           JUDGE CRABTREE:  All right.  Thanks very

17   much for humoring me on that.

18           Let me switch subjects a little bit and talk

19   about the timing of this consolidated amended class

20   complaint.  Mr. Sharp, can't we advance that date?  My

21   recollection is back in early September you all were

22   ready to go with that.  You thought two weeks from that

23   conference and now you've -- now you're proposing

24   November 3rd.  I'm inclined to say let's get this on

25   file.  Can you get that done in, say, two weeks from

1    today?

2              MR. SHARP:  Your Honor, we can do that and

3    within two weeks if the -- if the court pleases.

4         Our effort was there to -- to coordinate a little

5    bit with the *Sanofi* case and move the discovery along.

6    But with respect to the consolidated complaint, we also

7    agreed with defendants as to the staggering of the dates

8    on all of those.  So if the court were to move those up

9    to two weeks, I'd just suggest the court maybe move all

10   of the dates forward.

11             JUDGE CRABTREE:  Yeah, I was thinking about

12   that last night and I'm -- I'm trying to figure out how

13   the holiday months factor into this.

14             MR. SHARP:  It does.

15             JUDGE CRABTREE:  It's a lousy time to get

16   here.  I mean, it's just I'm not sure I'm going to be of

17   a mind to do violence to the way you have sorted out

18   that process.  But I think so much of what we've heard

19   is about what's going to be in this consolidated

20   complaint.  I get your point.  It's not going to be

21   breaking news for the most part, but I do think having

22   it yet on file sooner as opposed to later and so that's

23   my inclination to redirect that.

24             MR. SHARP:  I'm fine with that, Your Honor.

25   We can do that within two weeks.  And if you want to

1    shorten the schedule, in terms of the briefing, between

2    30 days or whatever since the motions to dismiss are

3    going to be very similar as a result of the complaint

4    being very similar, we're happy with that as well.

5                  JUDGE CRABTREE:  Okay.  While I got you

6    there, I just got a couple of questions through the --

7    what really becomes the back half of the schedule.  I'm

8    a little bit at sea now about whether -- and defendants

9    this is a classic example of really, at least I need you

10   to help me think, is I'm not sure that I had thought in

11   earnest about if you lose the certification battle what

12   that timeline does to the larger timeline.

13       And so then again that's why I'd encourage you

14   that, even if you have sort of a "we don't negotiate

15   with terrorists" view about some issues, that if you go

16   ahead and say but if the court makes us negotiate with

17   terrorists, here's what we would say.  I just -- that's

18   an interesting point.  It's a bit of a conundrum and I'm

19   glad you raised it.  I urge you to raise it in the

20   future.

21       I was curious, as I get to the back half of the

22   schedule, and I'm not sure I'm ready to try to chop that

23   up and swallow it at this point -- but there was a

24   provision, and I just frankly haven't seen, and that was

25   the plaintiffs were proposing a sort of "deemed as

1   authenticated except those that are objected to" sort of

2   provision.  I haven't seen that before.  And in a case

3   with a production as large as I suspect this is going to

4   be, I'm not clear on how that would work.

5        MR. SHARP:  That would work just as an

6   authentication issue for purposes of class certification

7   so that both our experts and defendants' experts can

8   rely on the documents that are produced.  Otherwise, you

9   have to take so many different depositions to get the

10  business records information before the court.  Whether

11  that's done by request for admissions is not so hard

12  against the parties, but it is against non-parties, and

13  then it's a little bit more difficult task.

14       So those, if you do it this way, and I've done it

15  this way in a number of cases without any problem or

16  objection, if there are particular issues that they say

17  we don't think that's an authentic document, the

18  following 7 or 20 or whatever it may be, we're not going

19  to agree that those are authenticated.

20       JUDGE CRABTREE:  This was to do that

21  against, as you envision this process, the entirety of

22  their productions?

23       MR. SHARP:  The entirety of their production

24  is going to be for the most part business records.  And

25  so it's not going to be very unusual for most of those

1    documents to be considered authentic.  If they don't

2    believe that's the case from an authentication

3    standpoint, then they can point out those ones that they

4    have particular heartburn about.  That has worked well

5    in all my other cases and it hasn't presented any kind

6    of a problem.

7         With respect to the other issue you raised about

8    the Rule 23(f) appeal, Rule 23(f) appeal does not stay

9    the case.  So the case continues on.

10            JUDGE CRABTREE:  Unless the Circuit says

11   it's stayed.

12            MR. SHARP:  Unless the Circuit says it's

13   stayed.  And then of course if it's stayed, that always

14   blows the schedule.  Whether -- whether that's a

15   Rule 23(f) appeal or an interlocutory appeal in a

16   regular case where the Rule 26(f) conference has been

17   held and you've scheduled the case all the way through

18   trial and somebody raises an interlocutory appeal and

19   gets a stay, that blows the schedule.

20            JUDGE CRABTREE:  Do you have any visibility

21   on what that timeline looks in the Circuit?  I've only

22   been around that horn once.

23            MR. SHARP:  Yes, I do.  They have 10 days to

24   appeal under Rule 23(f) and then there's expedited

25   briefing on that issue.  And then the Tenth Circuit

1   usually rules on whether they're going to take that

2   appeal or not take that appeal within about 30 days.  So

3   in about 40 days --

4              JUDGE CRABTREE:  Is the stay decision

5   embedded within that 40 days?

6              MR. SHARP:  It is not unless specifically

7   requested.  And I have not seen -- I can't recall a

8   Tenth Circuit stay order coming out on that issue.

9   That's not to say it didn't happen.  I just don't recall

10  it.  So I don't know that that's been a specific request

11  for a stay.

12             If the district court didn't grant the stay, I

13  haven't seen that issue being taken up to the Tenth

14  Circuit with the 23(f) appeal.  It may have been done

15  but I haven't seen it done.  So it would be really --

16  first off, whether either party -- at that point

17  defendants' counsel may say, you know, we really don't

18  want the stay, we still think we'd like to have the

19  23(f) but we don't want the stay because we think we can

20  win at summary judgment and that will move the entire

21  appeal or whatever.  So there may be --

22             JUDGE CRABTREE:  I'm going to take -- I'm

23  going to take the under on that one.

24             MR. SHARP:  I understand but at the same

25  time things may change that they do or do not want the

1    stay or we may want the stay.  We may agree, hey, let's

2    have -- there's a significant issue here, let's have a

3    stay.  Again, you may want to take the under on that one

4    as well because we're probably not going to do that.

5    Nonetheless --

6              JUDGE CRABTREE:  Yeah, I guess just sort of

7    looking ahead to longer term efficiency problems, let's

8    just say your case survives.  Let's say I certify a

9    class.  Let's say they take a 23(f) appeal and the

10   Circuit takes it.  Now you're left with a decision on an

11   investment of significant publication costs while the

12   Circuit decides whether I was crazy to certify a class.

13             MR. SHARP:  That's correct, Your Honor.  And

14   so that would be one of those things that we'll have to

15   address with Your Honor at that point.

16             JUDGE CRABTREE:  Postponing it.  You say

17   build it in.  And if the problem comes to pass, fix it

18   later?

19             MR. SHARP:  Well, we don't know whether that

20   problem's going to come to pass or not.  And so I hate

21   to anticipate, in terms of a schedule, thinking

22   everything is going to go awry, everything is going to

23   go wrong and so we can't have trial for another three

24   years or five years or whatever.  So I think if the case

25   progresses as 90 percent of the class actions progress,

1    we should be able to get to the pretrial conference and

2    then set trial at the pretrial conference.

3              JUDGE CRABTREE:  Let me just look at my list

4    while I've got you up there.  And I -- defendants, I'll

5    let you have a general omnibus response time to some of

6    these issues.  I'm probably -- whatever we do in this

7    scheduling order, I'm probably not going to try to

8    figure out when the pretrial conference is going to be.

9              MR. SHARP:  That's fine, Your Honor.

10             JUDGE CRABTREE:  That seems a little -- so

11   on the -- I think it's implicit in your position, your

12   position is the discovery would be -- discovery, it

13   would not be in any way bifurcated between merits and

14   class?

15             MR. SHARP:  That's correct because it's so

16   difficult to know where that line is drawn and it just

17   ends up with a lot more discovery disputes of whether

18   that's class or whether that's not class related.  And

19   since we have the overlap of merits coming into the

20   class certification issue, it's difficult to discern

21   where that line's drawn, especially before the class

22   certification briefing.

23             JUDGE CRABTREE:  All right.  And then I

24   think, as I look at the things I wanted to just get your

25   -- get a reading on, so what's your -- what's your

1    wisdom and experience about the -- the usefulness of

2    periodic "let's come together" sessions either with

3    Judge James or with both of us as we figure out each

4    other out over the next, say, six months?  And let's

5    just assume you wouldn't have to travel to do these,

6    that they were -- they were phone oriented.

7              MR. SHARP:  It really depends on the case as

8    well as -- as well as defense counsel and how well they

9    work with plaintiffs' counsel whether you can work those

10   issues out without having to involve the court.  There

11   are a number of creative solutions that are available to

12   both sides if they're willing to engage in them that can

13   -- everything from quick peek to produce the documents.

14   And if they turn out not to be of any value, then you

15   can return them back.  There's all kinds of things in

16   which you can do to try to work out discovery disputes.

17        On the other hand, when there are lots of

18   discovery disputes, it's useful to have a known date by

19   which everybody has to either agree or disagree and tell

20   the court about it.  So I've seen it work both ways.

21   And when we have set them I think in the past, even with

22   Judge James occasionally.  We'll present issues and

23   Judge James will decide those issues.  And often times

24   it would be we have nothing further to present at this

25   time and the whole thing just gets passed.

1          JUDGE CRABTREE:  I'm on the back page of

2    your materials.  You want to talk -- we had a note to

3    each other about, as in common standalone cases, in the

4    district there is a make or break on Rule 26

5    certification, Rule 26 voluntary disclosures.  We're

6    finished disclosing.  If it's not in here, we bear the

7    consequences.  That's not in anybody's proposal that I

8    saw.  In a case like this, do you think it ought to be?

9    And, if so, where should it be?

10         MR. SHARP:  Yeah, I think it's true in

11   almost every case I've been involved in, if you don't

12   fess up at the very beginning what you think is going to

13   be part of your case, then you can't present it later.

14   And I think that's something that -- I don't know that

15   it needs to be within a document here.  I think it's a

16   local rule and I think it's also in the federal rules

17   that that's what you're supposed to do.  So we wouldn't

18   propose any change to that.

19         Occasionally things get amended on those initial

20   disclosures as you go through discovery and that -- I

21   don't think that's terribly unusual as long as that's

22   done on a timely fashion so that both sides are aware.

23   I don't see any problem with that either.

24         JUDGE CRABTREE:  All right.  Maybe we can

25   hear from the defendants on this consolidated session.

1    Take a moment and talk with one another.  I know it's

2    been kind of random-question-hour here.

3              MR. HOCHSTADT:  Your Honor, if I may, for

4    Sanofi, just on the two points you mentioned.  On the

5    periodic status conferences, we find that productive in

6    most cases.  So we support that consistent with Rule 1.

7         On the Rule 26 make or break, you know, as I

8    mentioned before, I think from our perspective Mylan

9    knows who the relevant people are, we know who the

10   relevant people are.  But with that said, I mean, I

11   think so long as there's Rule 26(e) supplementation

12   based on information that, you know, sort of carve out,

13   we'd support that.

14             JUDGE CRABTREE:  I'm sorry to overlook you.

15   Thanks for speaking up.  All right.  Mr. Levin.

16             MR. LEVIN:  Your Honor --

17             JUDGE CRABTREE:  Let us huddle just a

18   second.  You all got to huddle.

19             (Judges conferring.)

20             JUDGE CRABTREE:  Okay.  Did you guys work it

21   all out here?

22             MR. LEVIN:  We did.  We did.  I told him for

23   the record I like him a lot better than terrorists, so

24   we're on good stead.

25        So I think I wrote down the topics Your Honor

1    asked about.  Let me see if I can run through these.

2    And if I miss any, please, let me know.

3          First, generally speaking about the Rule 23(f)

4    process and all of the rest, let me offer a suggestion

5    here from defendants' side.  I would say that in

6    probably 90 percent, maybe 95 percent of the consumer

7    class actions that we litigate, the court stops the

8    schedule after the class certification stage.  And it's

9    for exactly the reasons that Your Honor is saying,

10   because we don't know what's going to happen after that

11   moment.  If the class is certified, it may go up on

12   appeal.  It may be stayed.  If the class is denied, the

13   case is effectively over subject to whatever appeals may

14   be taken, again, with respect to the consumer class

15   action claims here.  So I think that is an easy solution

16   here.

17         Let's not be talking about trial dates and

18   pretrial conferences two-plus years from now.  That's

19   just sort of pie in the sky stuff right now.  Let's --

20   if there's going to be a schedule now, let's take it out

21   through class certification briefing, including experts

22   on class certification, and then we'll see.  We'll be

23   together in a year and a half, two years.  We'll see

24   where the case stands.  And if the case is going

25   forward, there will be plenty of opportunities to set

1   deadlines for everything that would come after that,

2   including dispositive motions.

3        I mean, for example, if the class is certified,

4   the plaintiffs are going to have to set a whole new

5   schedule for class notice, right.  I mean, we're going

6   to have motions practice about all these various things

7   and talk about how those deadlines figure in.  We, of

8   course, can't plug those into the schedule now.  So to

9   me that's an elegant solution to the problem is take it

10   out through class cert and then we can reconvene later

11   on to talk about those other issues.

12        With respect to authentication of documents,

13   defendants are fine with that proposal, the proposal

14   that's in the -- that's in the plaintiffs' scheduling

15   order.  You know, the parties will preserve all of their

16   rights and object to whatever documents they may have

17   authenticity questions about.  But at least for purposes

18   of the class certification proceeding, we're fine with

19   that proposal.

20        Your Honor touched on the issue of bifurcation.

21   Our position on that candidly is that we're not ready to

22   take a position on that today and so we just want to

23   reserve all rights as to bifurcation issues.  Among

24   other reasons, Your Honor, the reason I say that is

25   because that depends on a lot of unknowns that we have

1    as we stand here now.  What parties are going to be in

2    the case?  Are the ERISA claims going to be in the case?

3    What the claim's going to be in the amended complaint?

4         So until the record is developed more with

5    respect to all those issues, we would just put a marker

6    down to reserve our rights as to whether or not merits

7    and class certification should be bifurcated.  And if we

8    decide at the appropriate moment we think it should be,

9    and of course we will bring the right, proper motion to

10   bifurcate, and we can have full briefing and discussion

11   of that at that time if that's acceptable to the court.

12        Your Honor asked about regular status

13   conferences.  I think on that score we would just defer

14   to the court's preferences.  Really just depends whether

15   the court thinks those would be useful as the case

16   proceeds to keep us on track and guided.  We're fine

17   either way and we'll defer to the court's preferences on

18   that.

19        On Rule 26 disclosures, we also are fine with

20   respect to the requirements of the local rule and

21   applicable federal rules.  As Sanofi's counsel just

22   said, there is the obligation to supplement your

23   disclosures and to amend your disclosures as the case

24   goes on.  So long as we have that ability as the factual

25   record develops and changes and witnesses and documents

1    come out and are able to put those on the table in a

2    timely and appropriate way, that's fine.

3          I don't want to have a deadline that's too soon

4    given the magnitude of this case, but whatever the local

5    rules and federal rules provide.  And so long as we can

6    always supplement if new information arises thereafter,

7    that's fine with the defendants.

8          I think I've hit on everything.  I would make the

9    offer again just if it would -- if it would help for the

10   court for us to offer up an alternative schedule that

11   sort of comports with all the things I've just said.

12   But unless the court has further questions I think...

13          JUDGE CRABTREE:  I got just a couple.  You

14   got a couple of motions to stay pending back in the

15   original Kansas collection of cases pre-MDL.  I'm

16   inclined to get those off the books and take the motion

17   to stay up on the one you filed now in the consolidated

18   cases.  Any problem with that?

19          MR. LEVIN:  No, not at all.  Is there one

20   still -- still pending, because I don't --

21          JUDGE CRABTREE:  Documents 85 and 111 in

22   that case are still pending.  They're both motions to

23   stay.  Actually, I -- they're your motions, Mr. Sharp.

24   They're first filed -- first filed plaintiffs motions.

25   I'm sorry to direct that question to you.  It sounds

1    like the subject of the song you would sing, actually

2    he's singing it at this time.  I'm inclined to get those

3    off the books because we're going to face this issue in

4    the MDL.  Do you have any problem with that?

5                MR. SHARP:  No, Your Honor.

6                JUDGE CRABTREE:  All right.  Then we'll go

7    ahead and deny 85 and 111 in the original Kansas case as

8    moot.

9          And then on your motions to dismiss 96 and 98,

10   since we're going to roll that forward in the

11   consolidated complaint, I'm inclined to leave those open

12   until they do what they say they're going to do and then

13   deny those as moot and rule it on the merits.  Any

14   problem with that?

15               MR. LEVIN:  No problem with that.  We agree

16   they should be denied as moot once the consolidated

17   complaint is filed.

18               JUDGE CRABTREE:  Mr. Levin, I look mostly to

19   you -- to your side of the fence.  I don't mean to keep

20   anyone quiet that is yearning to say something.  If

21   there is such a thing, we'll hear it.  If not, I think

22   what Judge James and I talked about -- first of all,

23   we've been going coming up on two hours.  The court

24   reporter probably needs a break.  I know I need a break.

25               What I'd like to do is take about 20 minutes and

1   visit with Judge James about some of these sort of

2   overarching themes and see if we can give you a preview

3   of some things that maybe will help us with this task of

4   the initial scheduling foray into the case, come back

5   and give you some of those general parameters and then

6   give you a prediction on when a written order might come

7   out and then we'll call it a day and get Mr. Zamoff --

8         Mr. Zamoff you have an important baseball game in

9   your city?

10            MR. ZAMOFF:  It's not in our city but of

11   relevance to our city.

12            JUDGE CRABTREE:  It's of relevance to your

13   city.  You need another, what, eight or nine wins to get

14   in your city.  I want to get you home in time for first

15   pitch.

16        So let's go ahead and we'll take a recess and

17   come back and so let's aim for 10:40.  If we're five

18   minutes late, please don't fire us.  Okay.

19            (Recess.)

20            JUDGE CRABTREE:  Thank you for the interval.

21   It was really useful to have a little bit of time to

22   consolidate your insights.  And I'll say this, the

23   promises that were -- or the predictions that were made

24   to me about the competing vagaries of being involved in

25   one of these along with benefits was right.  I mean, it

1   was -- the lawyering is excellent.  I appreciate your

2   preparation.  I think it has helped me to understand

3   much better than when I came into this room this

4   morning.

5         So I think what -- we're going to follow this up,

6   of course, memorialize it in a written order.  But no

7   surprise, Mr. Sharp, you and your class plaintiffs get

8   your consolidated amended class action complaint on file

9   two weeks from today, the 17th of October.

10        I really thought about whether I wanted to try to

11  play with the schedule.  I concluded the holidays were

12  too big of an obstacle, and secondly it had the benefit

13  of being something that you all actually agreed on.  So

14  your schedule for the motion to dismiss action, on that

15  we'll adopt and put in that order.

16        That leaves kind of the back half of the case, or

17  most the rest of the case; the certification, the

18  discovery, the remand issues.  So one of my favorite

19  movies is the *Hunt for Red October*.  Remember Sean

20  Connery, "One ping only."  This doesn't fit perfectly

21  but I like that scene.  So, Mr. Levin, Mr. Zamoff, this

22  is your one ping only.  I'll give you until the end of

23  the week to send me the competing dates you recommend

24  with client approval.

25        In an ideal world, you would take what the

1   plaintiffs filed and you would handwrite any differences

2   by interlineation so that we don't have to read a new

3   workbook.  We can, in quick effort, understand the

4   competing positions.

5          And we'll do one of two things with those.  We'll

6   take a look at that and decide what we're going to adopt

7   and we'll impose it on you and you will pretend to like

8   it, or at least in our presence you'll pretend to like

9   it.  Or if I conclude, look, Judge James and I have

10  talked about it, we just can't figure this out, if we

11  need to talk with you again, we'll probably do it by

12  phone conference because the issue will be narrow.

13         So get me -- get us those dates by Friday and we

14  will likely issue what will become a second scheduling

15  order that will adopt really the substantive meat and

16  potatoes part of the case on class certification,

17  remand, discovery, dispositive motion briefing.

18         On more immediate controversies, I'm going to

19  defer to Judge James on sort of the front half of the

20  case and she -- again, we'll memorialize this but she

21  can give that to you so that you leave here with some

22  understanding of what you're facing.  Please.

23             JUDGE JAMES:  All right.  As to the front

24  half of the case, Judge Crabtree and I talked about the

25  suggestions all of you made earlier this morning which

1    were very helpful.  Thank you.  And in working from the

2    filing of that class action amended complaint -- class

3    amended complaint on October 17th -- again, we'll

4    confirm this in a written order -- but I'll tell you now

5    our deadlines will be two weeks later, October 31

6    deadline for parties to submit either an agreed

7    protective order or as we discussed red line versions

8    showing where you have disputes and submit those just by

9    e-mail to my chambers.

10          Same procedure, November 7 deadline as to ESI

11   protocol and document preservation order suggestions.

12   Hopefully you can agree.  So either an agreed -- agreed

13   orders on those or again red line submissions.

14          Then I'm going to go ahead and set, as Mr. Sharp

15   indicated I have a tendency to do in some of these

16   cases, a November 15th phone conference hearing date.

17   Judge Crabtree may participate in that if he's available

18   but I will be available.  I guess maybe I should have

19   you all look at your calendars.  And if that is

20   problematic, if you have your calendars today, let me

21   know and we can move that a day or two one way or the

22   other.  But I'm looking at the afternoon of November

23   15th for that phone hearing to address any disputes over

24   the protective order and/or ESI protocol and/or document

25   preservation order.  I suggest 1:30 or -- 1:30 that

```
 1   afternoon.  Does anybody have a problem, not able to

 2   make it?

 3              MR. ZAMOFF:  I have a -- Your Honor, I have

 4   a hearing that begins at 3:00 p.m. Central that day but

 5   1:30 --

 6              JUDGE JAMES:  How about we start at 1:00.

 7   Could we start at 1:00 --

 8              MR. ZAMOFF:  Yeah.

 9              JUDGE JAMES:  -- and surely we should be

10   done?

11              MR. ZAMOFF:  That's agreeable.  Thank you.

12   Appreciate that.

13              MR. BURNS:  Your Honor, I have -- my new son

14   is due to be born the day after that.

15              JUDGE CRABTREE:  He won't mind waiting.

16              MR. BURNS:  And given the vagaries of that

17   whole process -- but there are four co-leads obviously.

18   If I'm unable to make it, I just beg the court's

19   understanding in that circumstance.

20              JUDGE JAMES:  What do you think,

21   Judge Crabtree, is that a good excuse?

22              JUDGE CRABTREE:  It's a close call.

23              MR. BURNS:  I think that beats the

24   hurricane.

25              JUDGE CRABTREE:  If you are in the delivery
```

1    room at that moment.

2              JUDGE JAMES:  Congratulations.  Good luck.

3              MR. BURNS:  Thank you.

4              JUDGE JAMES:  So November 15th at

5    one o'clock.  If everything is going swimmingly and we

6    don't have any disputes, we will cancel that hearing.

7    But if there are any disputes at issue on those three

8    documents, we'll all gather around the phone and I'll

9    decide on the 15th.

10        Then we'll set November 21st, which is

11   approximately 30 days after filing of the amended

12   complaint, for exchange of initial disclosures.

13        All right.  Any questions about those deadlines

14   or that procedure?  All right.  I think that covers it.

15             JUDGE CRABTREE:  That's -- that, at least in

16   my mind, is probably as much as we can get done this

17   morning.  I think it's been a useful morning.  Anybody

18   have a yearning desire to raise something else that they

19   see that we've overlooked?

20        Mr. Sharp, thank you so much.

21             MR. SHARP:  I'll be brief, Your Honor.

22        I think we have an agreement on all counsel to

23   schedule discovery conferences by telephone every

24   60 days just because we know the court's calendar gets

25   busy and all of our calendars get busy if the court's so

 1    inclined.

 2              JUDGE CRABTREE:  And again it has the

 3    advantage of you having agreed to it, so I want to make

 4    sure you know how happy and grateful we are for things

 5    you agree to.  And so we'll likely adopt a convention

 6    like that and establish it in probably this -- first

 7    we'll be setting some dates out in the future.  And then

 8    if your behavior shows that more frequent trips to the

 9    principal's office are warranted, we'll accelerate it.

10    All right.

11              JUDGE JAMES:  We'll note October 3rd in red

12    on the calendar that everybody agreed.

13              JUDGE CRABTREE:  Record this time and

14    moment.

15              JUDGE JAMES:  Yes.

16              JUDGE CRABTREE:  I neglected to say that the

17    issue of investigative documents and settlement

18    materials, we were silent on when we came back, I plan

19    to take that up in the stay order that will follow next

20    week.  So I will be watching for the plaintiffs.  If you

21    can make that a combined written response as you've done

22    several times, great.  If you can't, that's fine, too.

23              MR. HOCHSTADT:  We'll combine them, Your

24    Honor.

25              JUDGE CRABTREE:  Yeah, and there's not --

1    there's not a page minimum on that.  All right.

2            So anything else before we adjourn for today?

3            Mr. Fries, Mr. Hudson, you want to say anything

4    to our guests from Washington about the NFL or football

5    game?

6                    MR. HUDSON:  Go Chiefs.

7                    MR. FRIES:  Typical Monday night.  No big

8    deal.

9                    JUDGE CRABTREE:  Again.  Thank you very much

10   for your presentations and your travel here.  Look

11   forward to talking to you in the future.  Good luck.

12   Thanks.

13                   (Proceedings adjourned.)

14

15                        CERTIFICATE

16        I certify that the foregoing is a correct

17   transcript from the record of proceedings in the

18   above-entitled matter.

19      DATE:  October 6, 2017

20

21                   /s/Kimberly R. Greiner
                     KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
22                   United States Court Reporter

23

24

25