**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

In re EPIPEN (EPINEPHRINE
INJECTION, USP) MARKETING,
SALES PRACTICES AND
ANTITRUST LITIGATION

**This Document Relates To Consumer
Class Cases**

Case No. 2:17-md-02785-DDC-TJJ
MDL 2785

**PFIZER DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.      PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM ............................................2

     A.     Plaintiffs Must Plead Facts to State a Claim...........................................................2

     B.     Plaintiffs Fail to Plead Facts to Make Plausible that Pfizer Caused Their Purported Injuries..................................................................................................3

     C.     Plaintiffs Fail to Plead Facts to Make Their Reverse Payment Claims Plausible..................................................................................................................6

     D.     Plaintiffs May Not Use Their Opposition to Impute Conduct That is Not Alleged as to Pfizer in the Complaint ....................................................................10

II.     PLAINTIFFS FAIL TO STATE A RICO CLAIM AGAINST PFIZER .........................11

III.    PLAINTIFFS' CLAIMS ARE TIME-BARRED..............................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Floral Servs., Inc. v. Florists' Transworld Delivery Assoc.*, 633 F. Supp. 201 (N.D. Ill. 1986)................................................................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................8

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013) ...........................2

*Clark v. Dunlap*, No. 14-mc-00018-BNB, 2014 U.S. Dist. LEXIS 36013 (D. Colo. Mar. 19, 2014)........................................................................................................7

*Cowell v. Palmer Twp.*, 263 F.3d 286 (10th Cir. 2001)........................................14, 15

*FTC v. AbbVie Inc.*, 107 F. Supp. 3d 428, 437 (E.D. Pa. 2015) .................................6, 7

*FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013) .............................................................1, 7

*Gilbert v. Steed*, No. 07-3213, 2008 U.S. Dist. LEXIS 90507 (D. Kan. Nov. 6, 2008) ................................................................................................................10

*In re Asacol Antitrust Litig.*, 2016 U.S. Dist. LEXIS 94605 (D. Mass. July 20, 2016) ..............................................................................................................3, 5

*In re Avandia Mktg.,* 804 F.3d 633 (3d Cir. 2015) ......................................................12

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..............................................................................................................3, 6

*In re Flonase Antitrust Litig.*, 798 F. Supp. 2d 619 (E.D. Pa. July 14, 2011) ............................4, 5

*In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 742 (D.N.J. 2016)................................................................................................14

*In re Lidoderm Antitrust Litig.*, No. 14-MD-02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ........................................................................................................12

*In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 51 (1st Cir. 2013).................................12

*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757 (E.D. Pa. Sept. 8, 2014) ..........................4

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2015 U.S. Dist. LEXIS 125999 (D. Mass. Aug. 14, 2015) ...................................3, 7

*In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121 (E.D.N.Y. 2003) ............................3

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial
Proceedings*, 159 F. Supp. 3d 898, 903 (N.D. Ill. 2016) .........................................................12

*Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995) ..............................................................................10

*Kaw Valley v. Kansas Electric Power Coop.*, 872 F.2d 931 (10th Cir. 1989) ..............................14

*Pac. Bell Tel. Co. v. LinkLine Commc'ns*, 555 U.S. 438 (2009) ....................................................11

*Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008) ....................2, 11

*Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis, U.S.
LLP*, 806 F.3d 71 (2d Cir. 2015)................................................................................................12

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ................................................................................2

*Tennant v. Miller*, 589 F. App'x 884 (10th Cir. 2014) ....................................................................7

*United Cities Gas Co. v. Brock Expl. Co.*, 984 F. Supp. 1379 (D. Kan. 1997) ..............................14

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ....................................................11

*Weckhorst v. Kan. State Univ.*, No. 16-CV-2255, 2017 U.S. Dist. LEXIS 36757
(D. Kan. Mar. 13, 2017)...............................................................................................................2

## STATUTES AND RULES

18 U.S.C. § 1341...............................................................................................................................12

18 U.S.C. § 1343...............................................................................................................................12

18 U.S.C. § 1512.........................................................................................................................12, 13

18 U.S.C. § 1962...................................................................................................................... passim

Fed. R. Civ. P. 27 ..............................................................................................................................7

## INTRODUCTION

All of Plaintiffs' claims against Pfizer are predicated on the allegation that Pfizer delayed competition for EpiPen® Auto-Injector ("EpiPen") through patent litigations against and settlements with three potential competitors:  Teva, Intelliject, and Sandoz.  But Plaintiffs fail to allege sufficient facts to render their competitive delay claims plausible.  Plaintiffs cannot plausibly plead that Pfizer's settlement with Teva delayed entry because, as Plaintiffs concede, Teva still has not obtained FDA approval for its product despite being permitted to enter the market in June 2015 under the settlement.  Plaintiffs similarly concede that Sandoz never obtained FDA approval despite being free and clear to do so.  Nor do Plaintiffs plausibly plead that, absent a license from Pfizer, Intelliject could have entered the market earlier than its actual November 2012 entry date without infringing Pfizer's EpiPen Patents, which are independent legal bars to market entry by all three competitors.

Plaintiffs' failure to plausibly plead that Pfizer's alleged anticompetitive conduct caused competitive delay warrants dismissal of all of Plaintiffs' claims against Pfizer.  Moreover, even if Plaintiffs somehow could plausibly plead a causal link between Pfizer's settlements and delayed competitive entry (they cannot), Plaintiffs' claims fail for the separate reason that Plaintiffs do not plausibly plead the existence of "large" "unexplained" "reverse payments" in the settlements, a necessary element of any claim under *FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013).  These pleading deficiencies are fatal not only to Plaintiffs' antitrust claims against Pfizer but also to their myriad of state law and RICO claims, which are based on the same alleged misconduct.  Those claims are also subject to dismissal on independent grounds, including failure to plead predicate RICO acts and failure to timely bring their claims within the statute of limitations.

In response to Pfizer's arguments, Plaintiffs mischaracterize the applicable pleading standard, ignore relevant authority, and ask the Court to accept speculative and conclusory allegations, many of which do nothing more than parrot legal standards.  Plaintiffs also contend that dismissal at the pleadings stage is premature because they should have the opportunity to develop their claims through discovery, effectively bypassing their obligations to satisfy

*Twombly/Iqbal* pleading standards.   Finally, Plaintiffs improperly seek to impute to Pfizer conduct that is not actually alleged as to Pfizer in the Complaint.   As explained further below, these arguments fail as a matter of law and do not salvage Plaintiffs' claims.   Among other things, this is not a case that requires factual exploration before reaching a determination. Rather, the facts alleged in the Complaint and conceded by Plaintiffs make clear that Plaintiffs cannot state a claim.  Plaintiffs' claims against Pfizer should be dismissed in their entirety.

## ARGUMENT

## I.     PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM

### A.     Plaintiffs Must Plead Facts to State a Claim

Pfizer does not, as Plaintiffs argue, ask the Court to apply a "heightened standard" or require Plaintiffs to establish "plus factors" in support of their claims.  Opp'n at 29.   Rather, Pfizer's motion to dismiss is premised on the well-settled rule that Plaintiffs must plead *facts* that make their claims and inferences plausible; Plaintiffs may not disguise legal conclusions or speculation as facts.   *See* Mylan Br. at 8-9.  Plaintiffs' cited cases reinforce this standard.  *See, e.g.*, *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) ("[T]he tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions;" the "complaint must offer sufficient factual allegations to raise a right to relief above the speculative level."); *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) ("[c]onclusory allegations are insufficient [and] the use of antitrust 'buzz words' does not supply the factual circumstances necessary to support . . . conclusory allegations") (citation omitted).[1]

Plaintiffs have not met their pleading burden.  Their threadbare allegations fall far short of the requirement for pleading unlawful patent litigation or reverse payment settlements under

---

[1] *See also Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (affirming dismissal of all claims, explaining that pleadings involving "complex claims against multiple defendants" are more likely to fail because the "*Twombly* standard may have greater bite in such contexts"); *Weckhorst v. Kan. State Univ.*, No. 16-CV-2255, 2017 U.S. Dist. LEXIS 36757, at *524 (D. Kan. Mar. 13, 2017) (dismissing claim supported by a "single conclusory allegation").

*Actavis*, *Twombly* and *Iqbal*.   Among other things, the Complaint fails to allege that any allegedly unlawful conduct caused injury to Plaintiffs, and lacks any factual allegations regarding the nature or magnitude of the alleged reverse payments.  Plaintiffs' antitrust claims as to Pfizer are implausible and must be dismissed.

### B.   Plaintiffs Fail to Plead Facts to Make Plausible that Pfizer Caused Their Purported Injuries[2]

Plaintiffs contend that the issue of causation is not properly decided on a Rule 12(b)(6) motion to dismiss.  Opp'n at 52 & n.240, 87.  But they studiously ignore the numerous cases in which courts did not hesitate to dismiss reverse payment claims on a motion to dismiss for lack of causation, where, as here, the lack of FDA approval and/or a valid patent breaks the causal chain.  *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2015 U.S. Dist. LEXIS 125999, at *40-41 (D. Mass. Aug. 14, 2015) (dismissing reverse payment claims for lack of causation where FDA approval was the "limiting factor" on competitive entry); *In re Asacol Antitrust Litig.*, 2016 U.S. Dist. LEXIS 94605, at *24 (D. Mass. July 20, 2016) (granting motion to dismiss because "the lack of FDA approval today remains 'the limiting factor' in [the generic's] ability to bring its generic drug to market"); *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 137 (E.D.N.Y. 2003) (granting motion to dismiss because "[t]he injury here (higher prices for tamoxifen) resulted from the existence of the '516 patent and not the Settlement Agreement, and because the purported injury flowed from the result of a lawful patent monopoly, no antitrust injury can exist")[3]; *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 201 (E.D.N.Y. 2003) (granting motion to

---

[2] Plaintiffs assert, incorrectly, that the Court already rejected causation as a ground for dismissal in its Sanofi Order.  Opp'n at 30, 34.  The Sanofi Order did not address causation as it relates to Plaintiffs' reverse payment allegations because Sanofi makes no such allegations in their complaint against Mylan.

[3] Plaintiffs do not attempt to distinguish this case and instead assert only that the "Second Circuit's affirmance of that decision was abrogated by" *Actavis*.  Opp'n at 55 n.251.  But *Actavis* did not abrogate or otherwise change the pleading requirements for causation, which were an independent basis for dismissal before the district court.  The district court's dismissal on causation grounds in *Tamoxifen* remains good law.  277 F. Supp. 2d at 137.

dismiss because "without a showing of patent invalidity, all that the complaints contain is conjecture" that the generic would have succeeded in the patent litigation, which is "too speculative and is insufficient to state a claim under the antitrust laws").

Instead, Plaintiffs rely on inapposite cases that are easily distinguishable and, if anything, confirm why dismissal is warranted here.  *See* Opp'n at 52 n.240 & 56 n.253 (citing *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757 (E.D. Pa. Sept. 8, 2014)); *id.* at 54-55 & nn. 248, 251 (citing *In re Flonase Antitrust Litig.*, 798 F. Supp. 2d 619, 629 (E.D. Pa. July 14, 2011)).   In *Niaspan*, the FDA had tentatively approved the generic product prior to the settlement, and Plaintiffs' complaint alleged that the generic company expected to receive final approval imminently and planned to launch "at risk" while the patent litigation was ongoing.  42 F. Supp. at 743.  The parties settled the day before the "at risk" launch, with the generic company agreeing not to launch for several years.  *Id.* at 743-44.  In other words, the *Niaspan* complaint plead facts making it plausible that the generic competitor was ready, willing, and able to launch, and that but for the settlement agreement, generic competition would have occurred earlier.  *See id.* at 756.  Here, by contrast, Plaintiffs do not plead that Teva's launch was imminent prior to the settlement, or that Teva was otherwise ready, willing and able to launch when it entered into the settlement.  Nor could they; unlike the generic in *Niaspan*, Teva did not have even tentative approval in 2012 at the time of the settlement and still does not.

In *Flonase* (which involved a citizen petition, not an alleged reverse payment settlement), the complaint alleged that the brand firm delayed generic competition because it had threatened the FDA with litigation if the generic's product was approved.  798 F. Supp. 2d at 630.  The Complaint contains no such plausible allegation here as to Pfizer.[4]  Further, the *Flonase* plaintiffs plead facts showing that the generic firm ultimately obtained final approval, and that it

---

[4] Plaintiffs assert that Mylan's Citizen Petition somehow slowed the FDA approval process.  First, Plaintiffs do not assert any allegations against Pfizer relating to their Citizen Petition claims.  Second, the Citizen Petition claims fail for the same reasons as discussed in Mylan's Brief, including the fact that Teva still has not obtained approval years after the Citizen Petition was denied.  *See* Mylan Br. § I.F.

"anticipated an imminent product launch [and] began to manufacture units for sale" prior to approval. *Id*. at 624. No such allegations could plausibly be made here given Teva's lack of FDA approval to this day.

Plaintiffs assert, in conclusory fashion, that "[t]he factual allegations plausibly establish that generic manufacturers Teva and Sandoz intended and were prepared to obtain FDA approval for competition to the EpiPen and that, but for Defendants' unlawful, reverse-payment settlements, they would have obtained such approval much sooner." Opp'n at 52-53. But, unlike the complaints in *Niaspan* and *Flonase*, the Complaint here does not include any such "factual allegations" to support an inference of imminent launches that were delayed by the patent litigations or settlements, and Plaintiffs' concession that Teva and Sandoz have never obtained tentative approval supports the opposite inference. Indeed, as Plaintiffs themselves argue, Teva has had every economic incentive to obtain approval and launch its product. That nearly three years have passed since the licensed entry date and Teva still has not entered (as Plaintiffs concede) confirms the utter implausibility that the settlement delayed Teva's entry. Absent plausible factual allegations supporting a causal link between the settlements and Plaintiffs' purported injuries, dismissal is appropriate. *Asacol*, 2016 U.S. Dist. LEXIS 94605, at *24 ("Although Plaintiffs suggested at oral argument that [the generic] did not aggressively push for FDA approval . . . the amended complaint contains no plausible allegation that [the brand or the generic] has sought to delay or sabotage FDA approval of [the generic's] application.").

Separately, Plaintiffs argue that "Defendants cannot rely on their patent rights to contest causation, given the Complaint's well-pleaded factual allegations that Defendants' patents were likely to be found invalid and that, even if the patents were valid, the generic products likely would not have been infringing." Opp'n at 53. They further assert, without support or explanation, that the "generics had strong arguments of non-infringement" and invalidity. Opp'n at 55-56. But the allegation in the Complaint that Teva would have won the patent case is an unsupported conclusion. Opp'n at 53 n.243. Plaintiffs' only basis for the assertion is a supposedly "favorable" *Markman* hearing for Teva. In reality, the district court at the *Markman*

hearing *rejected* two of Teva's proposed claim constructions.  Pfizer Br. at 10.  Plaintiffs make no effort to explain why the '432 patent would have been found invalid, or why Teva's proposed product did not infringe.  Nor do Plaintiffs make any effort to explain why, absent a license from Pfizer, Sandoz and Intelliject would have been able launch their products without infringing the EpiPen Patents.  Pfizer Br. at 7; Mylan Br. at 23-24.  Plaintiffs' claim that the EpiPen Patents were not a bar to competitive entry is pure speculation, unsupported by factual allegations, which is insufficient to withstand a motion to dismiss.  *See FTC v. AbbVie Inc.*, 107 F. Supp. 3d 428, 437 (E.D. Pa. 2015) (dismissing reverse payment claim because plaintiff's "allegations that the court would likely rule in favor of Teva [in the patent litigation] is merely speculation"); *Cipro*, 261 F. Supp. 2d at 202 ("[P]laintiffs cannot avoid dismissal based on a claim of injury-in-fact that relies on the hope that [the generic] would have prevailed in its suit against [the brand].").

Plaintiffs concede that causation may and should be determined on a 12(b)(6) motion where the "outcome is clear."  Opp'n at 55.  For the reasons discussed above and in Pfizer's opening brief, the outcome here is clear.  The Court should dismiss Plaintiffs' competitive delay claims for failing to plead the necessary element of causation.

**C.    Plaintiffs Fail to Plead Facts to Make Their Reverse Payment Claims Plausible**

As explained in Pfizer's opening brief, even if Plaintiffs could plausibly plead causation (they cannot), Plaintiffs' reverse payment claims fail because, *inter alia*, Plaintiffs fail to plead the threshold elements for such a claim, namely the existence of a "large" "reverse payment."  Pfizer Br. § I.B.  Failure to plead these necessary elements warrants dismissal.  *Id.*[5]

Plaintiffs' main rebuttal to Pfizer's arguments is that it is too early to dismiss their threadbare reverse payment claims, arguing that all reverse payment claims must be analyzed under a rule of reason analysis that takes place solely "***after*** the motion-to-dismiss stage."  Opp'n at 47 (citing *Actavis*).  This argument misconstrues *Actavis* and its progeny.  As the passage from

---

[5]  Pfizer produced the Teva Settlement Agreement and Intelliject Settlement Agreement to Plaintiffs on December 5, 2017.

*Actavis* on which Plaintiffs purport to rely itself makes clear, the rule of reason analysis applies only to settlements that contain a reverse payment. *See Actavis*, 133 S. Ct. at 2236 ("Where a *reverse payment* reflects traditional settlement considerations . . . .  In such cases, the parties may have provided for a *reverse payment* without having sought or brought about . . . anticompetitive consequences . . . .") (emphasis added); *see also id.* at 2237 ("In sum, a *reverse payment*, where large and unjustified, can bring with it the risk of significant anticompetitive effects; one who makes such a payment may be unable to explain and to justify it . . .") (emphasis added).  *Actavis* is clear that patent settlements that do *not* contain reverse payments are not subject to further inquiry.  *Id.* at 2237 ("[T]he fact that a large, unjustified reverse payment risks antitrust liability does not prevent litigating parties from settling their lawsuit.  They may, as in other industries, settle in other ways . . . . for example, by allowing the generic manufacturer to enter the patentee's market prior to the patent's expiration, without the patentee paying the challenger to stay out prior to that point"); *id.* at 2233 (holding that "commonplace" settlements are not "subject to antitrust liability").

Thus, Plaintiffs have "an initial burden . . . to *allege plausibly* a large and unjustified payment" from the patentee to the accused infringer in order for a reverse payment settlement claim to survive a motion to dismiss.  *Solodyn*, 2015 U.S. Dist. LEXIS 125999, at *32 (analyzing *Actavis* and citing cases) (emphasis added); *see Abbvie*, 107 F. Supp. 3d at 436 (dismissing patent settlement claim because patentees "did not make any payment, reverse or otherwise, to the claimed infringer").  Plaintiffs' argument effectively eviscerates *Actavis*, *Twombly*, and *Iqbal*, and implies that all patent litigation settlements would be subject to costly and burdensome antitrust scrutiny and discovery regardless of whether Plaintiffs could plausibly allege a threshold reverse payment at the pleadings stage.[6]

---

[6] Subjecting all settlements to such scrutiny (and the discovery accompanying it) amounts to an end-run around the strong proscription against pre-complaint discovery reflected in the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 27; *Tennant v. Miller*, 589 F. App'x 884, 886 (10th Cir. 2014); *Clark v. Dunlap*, No. 14-mc-00018-BNB, 2014 U.S. Dist. LEXIS 36013, at *7 (D. Colo. Mar. 19, 2014) ("Fed. R. Civ. P. 27 is not designed to allow pre-complaint discovery . . . nor is it designed as a means of ascertaining facts for drafting a complaint.").

Plaintiffs are likewise incorrect that Defendants require Plaintiffs to offer "very precise and particularized estimates of fair value and anticipated litigation costs [that] may require evidence in the exclusive possession of the defendants," Opp'n at 47, or that they seek dismissal because Plaintiffs have not provided sufficient detail as to the "amount of the reverse payment." Opp'n 48-49. This misses the point. Plaintiffs' reverse payment claims fail because they offer no facts to make plausible that a reverse payment occurred in the first place. In particular:

**Teva Litigation**. Plaintiffs' Complaint alleges no actual facts showing any "large" and "unexplained" payment from Pfizer to Teva. Instead, the Complaint alleges that the settlement must contain a reverse payment because (i) Teva obtained a favorable *Markman* ruling in the litigation; (ii) at the time of settlement, trial had been completed, so any remaining litigation costs would have been marginal; and (iii) "[n]o rational economic actor with a viable product (and who had spent millions of dollars developing it) would refrain from entering a lucrative 'blockbuster' market for 36 months unless it received compensation in exchange." Compl ¶ 265. Plaintiffs further allege that the Teva settlement must contain a reverse payment because in 2012, the FTC reported that a majority of patent settlement agreements with first-filers involved reverse payments, and Cephalon and Mylan settled entirely separate litigation as to a separate product, to which Pfizer was not a party. *Id.* ¶¶ 266-76. These purported "facts" are insufficient to "nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Pfizer Br. at 10-11.

Plaintiffs' assertion that Teva would have won the patent litigation, and so presumably had no incentive to settle without a reverse payment, Opp'n at 48, is unsupported by any facts showing that the EpiPen Patents are invalid or that Teva's product would not have infringed. *Supra* at 5-6. Plaintiffs' separate argument that, absent a reverse payment, "no rational economic actor with a viable product" would have settled and foregone the lucrative prospect of entering the EpiPen device market as early as possible actually underscores the implausibility of their reverse payment claim. Opp'n at 13, 48. As Plaintiffs concede, *Teva did not have a viable*

*product at the time of settlement*.  On Plaintiffs' own theory, no reverse payment would have been needed to induce Teva to agree to a 2015 entry date.

Nor does the 2012 FTC Report, which reported on settlements on an aggregate basis, lend plausibility to Plaintiffs' claim.  Opp'n at 13, 49.   Under Plaintiffs' theory, every patent settlement from that year would be subject to an antitrust claim, even those the FTC determined did not contain a reverse payment, merely because of the possibility they fell into the other category.  That falls far short of the *Twombly/Iqbal* plausibility standard.  Pfizer Br. at 10-11. Finally, Plaintiffs' conclusory assertion that the *Nuvigil* settlement (to which Pfizer was not a party) somehow forms part of a reverse payment as to *EpiPen* litigation fails because Plaintiffs have pled no facts to plausibly connect that litigation to the settlement of the Teva litigation (to which Mylan was not a party).   Pfizer Br. at 11.   Plaintiffs' theory here is premised on their faulty overall conspiracy theory, which itself lacks plausible factual support.  Mylan Br. § I.D. Thus, Plaintiffs' reverse payment claims regarding the Teva Settlement must be dismissed.[7]

**Intelliject Litigation**.   Plaintiffs plead no facts in the Complaint to support their conclusion that the Intelliject litigation was settled "in exchange for valuable consideration." Compl. ¶ 299.  Plaintiffs' Opposition only parrots the conclusory allegations in the Complaint. Opp'n at 16, 50.  Plaintiffs reiterate their argument that it is too soon to address their Intelliject reverse payment claim, but that argument fails for the reasons discussed above.  *Supra* at 6-7. The Intelliject reverse payment settlement claim must be dismissed.  Pfizer Br. at 12-13.

**Sandoz Litigation**.  Plaintiffs assert, without basis, that "valuable consideration" was exchanged to induce Sandoz to stay the Sandoz Litigation.  Opp'n at 16.  But the purported "facts" that Plaintiffs allege establish only that the patent litigation was stayed.  Compl. ¶¶ 302-03.  Plaintiffs allege no facts to plausibly infer an agreement between Pfizer and Sandoz, let

---

[7] Plaintiffs' allegation that the Teva Settlement "effectively eliminated all generic competition," Opp'n at 14, 18, is implausible and incorrect as a matter of law because Teva's failure to timely obtain FDA approval meant that, by law, Teva had forfeited its 180 day exclusivity period prior to entering the settlement.  Pfizer Br. at 6 n.5.  Thus, the settlement did not create any purported "bottleneck."

alone one involving a payment to Sandoz in exchange for delay.  As such, Plaintiffs' fatally flawed "stay-for-delay" claim must be dismissed.  Pfizer Br. at 13.

> **D.    Plaintiffs May Not Use Their Opposition to Impute Conduct That is Not Alleged as to Pfizer in the Complaint**

All of Plaintiffs' claims against Pfizer are predicated on the allegations in the Complaint that Pfizer asserted certain EpiPen device-related patents against Teva, Intelliject, and Sandoz and entered into settlements with Teva and Intelliject.  Aware, no doubt, of the deficiencies in their pleadings, Plaintiffs attempt in their Opposition improperly to amend and expand their claims against Pfizer by attributing to it conduct not otherwise alleged in the Complaint, such as participation in the decision to make an alleged "hard-switch" to the EpiPen device two-pack, Opp'n at 1, purported "aggressive" rebating and contracting practices with PBMs, Opp'n at 6, and involvement in the alleged "Exclusive School Access Scheme," Opp'n at 9.  This tactic is improper and should not be permitted; whether a plaintiff has sufficiently plead a claim to withstand a Rule 12(b)(6) motion to dismiss must be assessed based on the allegations in the complaint, not those belatedly asserted in a plaintiff's opposition brief.  *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *Gilbert v. Steed*, No. 07-3213, 2008 U.S. Dist. LEXIS 90507, at *5 (D. Kan. Nov. 6, 2008) ("A brief in response to a motion to dismiss is not the proper place to bolster allegations made in a complaint.").  For the reasons set forth in Mylan's opening and reply briefs, Plaintiffs' claims based on this conduct fail as a general matter, *see* Mylan Br. §§ I-II; Mylan Reply Br. § I, but they are especially deficient insofar as Plaintiffs now purport to assert them against Pfizer because the Complaint lacks any allegation whatsoever that Pfizer engaged in the alleged conduct.  For example, the Complaint includes no allegations regarding *Pfizer's* supposed role in the "hard switch"—indeed none of the Pfizer Defendants are even mentioned in that section of the Complaint (*see* Compl. ¶¶ 325-347)—and Plaintiffs cannot now add allegations on this issue against Pfizer in their Opposition.  The same is true for the other new issues that Plaintiffs try to

impute onto Pfizer (*see, e.g.*, Compl. ¶¶ 129-146, 151-235, 304-318). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Robbins*, 519 F.3d at 1248 (citation omitted). The Court should not permit Plaintiffs now to impute to Pfizer allegations that are not plead as to Pfizer in the Complaint.[8]

## II.   PLAINTIFFS FAIL TO STATE A RICO CLAIM AGAINST PFIZER

Plaintiffs' RICO claims against Pfizer, which are predicated on the same alleged sham patent litigation and reverse payment settlements as Plaintiffs' antitrust claims, should be dismissed for the same reason their antitrust claims should be dismissed – failure to plead causation or plausibly to allege an unlawful settlement. Plaintiffs' RICO claims against Pfizer are also subject to dismissal for the same reasons the RICO claims fail as to Mylan. *See Mylan* Br. § II; Mylan Reply § 1. Finally, Plaintiffs' RICO claims fail because Plaintiffs fail to allege that Pfizer engaged in any of the requisite predicate acts for a RICO claim. Pfizer Br. at 15-16.

In a half-hearted effort to salvage their RICO claims as to Pfizer, Plaintiffs assert that "[n]umerous courts have held that RICO claims may be asserted [against] pharmaceutical racketeers engaged in wire and mail fraud. Pfizer was tagged as a pharmaceutical racketeer in three 2013 decisions alone." Opp'n at 74 & nn.353-57. But, Plaintiffs ignore key differences between those cases and this one. Those cases are "marketing fraud" cases that were premised

---

[8] Plaintiffs' attempt to salvage their deficient conspiracy claims fails for the reasons set forth in Mylan's reply brief, which Pfizer joins and incorporates by reference. Mylan Reply § I.D. Plaintiffs similarly cannot save their claims against Pfizer by arguing that the deficiently pled competitive delay claims are actually part of some kind of catch-all overarching anticompetitive scheme claim. Opp'n at 29, 43 n.203. The only claims brought against Pfizer involve the alleged reverse payments. If those claims fail, an overall anticompetitive scheme theory against Pfizer also fails. *Pac. Bell Tel. Co. v. LinkLine Commc'ns*, 555 U.S. 438, 457 (2009) ("Two wrong claims do not make one that is right."); *Am. Floral Servs., Inc. v. Florists' Transworld Delivery Assoc.*, 633 F. Supp. 201, 215 n.23 (N.D. Ill. 1986) ("[I]t requires no sophistication in mathematical theory to recognize that zero plus zero still equals zero."); *United States v. Microsoft Corp.*, 253 F.3d 34, 78 (D.C. Cir. 2001) (reversing liability finding where only acts identified were "not in themselves unlawful" and finding it unnecessary to rule on plaintiff's "cumulative effect" theory).

on alleged fraudulent misrepresentations as to a drug's efficacy and/or safety.[9]  Plaintiffs make no such allegation here as to Pfizer, nor could they.  Moreover, unlike in marketing fraud cases, Plaintiffs here do not and cannot claim to have received something other than what they paid for; they received the benefit of their bargain.  Overpayment for a pharmaceutical absent marketing fraud is not a cognizable RICO injury.  Mylan Br. at 50-51.  Plaintiffs' reliance on *Neurontin* and other similar cases is, therefore, far off the mark.  Strikingly, Plaintiffs do not attempt to address the cases cited by Defendants on this issue.  Mylan Br. at 50-51.

Plaintiffs assert that "Pfizer incorrectly insists the conduct element requires that each defendant (not just the enterprise) directly commit two predicate acts."  Opp'n at 79.  But, Pfizer's point is that Plaintiffs have not alleged *any* predicate acts by Pfizer.  Pfizer Br. 15-16.  Plaintiffs ambiguously allege that "Defendants" engaged in the predicate acts of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and tampering with a witness, victim, or an informant in violation of 18 U.S.C. § 1512.  Compl. ¶ 653.  But they do not allege that *Pfizer* engaged in any of these predicate acts, which they must to state a RICO claim against Pfizer.  Pfizer Br. at 15-16.  Plaintiffs admittedly do not allege that Pfizer engaged in *any* type of fraud.[10]  Opp'n at 88 ("Here, standing depends on *Mylan's fraud* in forcing U.S.

---

[9] *See, e.g.*, *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 51, 54 (1st Cir. 2013) (alleging fraudulent marketing of Neurontin for off-label indications); *Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis, U.S. LLP*, 806 F.3d 71, 84, 98 (2d Cir. 2015) (RICO claim based on defendants allegedly misrepresenting scope of  drug's regulatory approval during marketing efforts); *In re Avandia Mktg.*, 804 F.3d 633, 636 (3d Cir. 2015) (alleging failure to disclose Avandia's significant heart-related risks in violation of RICO); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898, 903 (N.D. Ill. 2016) (alleging a fraudulent marketing scheme that mischaracterized replacement therapy drugs as a safe and effective treatment for various "off label" conditions). Plaintiffs also cite to *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521, 2017 WL 679367, at *22 n.32 (N.D. Cal. Feb. 21, 2017), but that case did not involve any RICO claims.

[10] Thus, Plaintiffs' argument that "Pfizer relies primarily on obsolescent and out-of-Circuit lower Court decisions" and pre-*Bridge* cases, Opp'n at 64 n.289, is unpersuasive and misses the point. Plaintiffs do not address the cases Pfizer cites that have nothing to do with the reliance/fraud pleading issues addressed in *Bridge*.  For example, Plaintiffs do not address the fact that settlement of patent litigation is not a predicate act under the RICO statute.  Pfizer Br. at 15.  Nor do they address the fact that a plaintiff cannot collectivize fraud-based claims against defendants

customers to purchase the EpiPen 2-Pak at an inflated price . . . .") (emphasis added).  They also do not allege any facts to suggest that Pfizer tampered with a witness, victim, or an informant in violation of 18 U.S.C. § 1512.  *See* Compl. ¶ 654; Pfizer Br. at 15 n.16.  Nor do Plaintiffs address the point that predicate acts as to one defendant may not be attributed to another defendant.  Pfizer Br. at 16 (citing cases).

Plaintiffs argue that Pfizer played "more than a 'bit part'" in the alleged RICO enterprise, Opp'n at 79-82, but the only conduct by Pfizer that Plaintiffs identify is the entirely lawful activity of a pharmaceutical manufacturer carrying out its routine business affairs: manufacturing an FDA-approved, life-saving medical device, which it sells, pursuant to an arms-length agreement, to a downstream distributor, and enforcing patents that protect its valuable intellectual property in the product.  The mere fact that Pfizer has a financial interest in the EpiPen device franchise as part of a legitimate business relationship is not sufficient to state a RICO claim.  Mylan Br. at 40-41.  Plaintiffs' attempt to analogize this legitimate business activity to illicit drug dealing is baseless.  Opp'n at 81 & n.191.  Plaintiffs RICO claims against Pfizer fail and must be dismissed.

## III.    PLAINTIFFS' CLAIMS ARE TIME-BARRED

As explained in Pfizer's opening brief, the vast majority of Plaintiffs' competitive delay claims are time-barred because Plaintiffs brought those claims more than four years after they accrued.  Pfizer Br. § III.  Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs argue that "the unlawful actions giving rise to Plaintiffs' claims continued late into 2016, if not beyond."  Opp'n at 93.  That is simply not true for the competitive delay claims (which are the only claims against Pfizer).  The latest action in time relating to those claims was execution of the Teva Settlement on April 26, 2012, which is the date on which the claims accrued.  Plaintiffs' competitive delay claims are, therefore, time-barred under the federal

without identifying what fraudulent acts each defendant committed to serve as the basis of the RICO claim.  *Id*. at 15-16.  These principles were not changed by *Bridge*.

antitrust and RICO statutes and laws of 30 of the 33 states under which Plaintiffs purport to bring their claims, which are subject to a statute of limitations of four years or less.  *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 742 (D.N.J. 2016) ("The Court agrees . . . [that the] claims accrued on August 30, 2006, when the settlement agreement began to prevent generic competition.  This is well outside the four- and three-year limitations periods for those claims."); *see* Pfizer Br. at Appendix 3 (listing statute limitations periods for Plaintiffs' state law claims).

Plaintiffs' reliance on *K-Dur*, *Nexium* and *Niaspan* (Opp'n at 91 n.451, n.454) is misplaced.  Those cases applied a lenient continuing violations standard, which courts in the Tenth Circuit have declined to apply to circumstances such as those here, and failed to recognize the distinction between ongoing conduct (such as ongoing meetings among members of a cartel to readjust fixed prices) and a discrete act that results in ongoing alleged harm.  In the Tenth Circuit, the continuing violations doctrine is "a narrow concept that must be limited to a distinct group of cases" and is "applied very infrequently outside the Title VII employment discrimination context."  *United Cities Gas Co. v. Brock Expl. Co.*, 984 F. Supp. 1379, 1388-89 (D. Kan. 1997); *see also* Pfizer Br. at 20 n.23 (noting many states do not recognize the doctrine).  Thus, the Tenth Circuit has found that the continuing violations doctrine was not available because the alleged continuing injury was the result of a prior anticompetitive act that was final and required no further action (as opposed to a non-final act subject to change).  *Kaw Valley v. Kansas Electric Power Coop.*, 872 F.2d 931, 934 (10th Cir. 1989).[11]  The same is true here.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (10th Cir. 2001) (cited at Opp'n at 92 n.459), supports Pfizer's position.  Unlike the alleged "continuing campaign of affirmative acts" alleged in *Cowell*, the *only* anticompetitive conduct alleged as to Pfizer ended with the execution of the Teva Settlement.  The *Cowell* court noted that the doctrine is usually applicable only to employment discrimination claims.  *Id.* at 292.  Moreover, the court rejected the plaintiffs'

---

[11] Plaintiffs also ignore entirely the cases cited by Defendants in which courts held that reverse payment claims like those here were time-barred.  *See* Pfizer Br. at 17.

theory that liens placed on their real estate property caused an ongoing injury and thus were a basis to apply the continuing violations doctrine. *Id.* at 292-93. Instead, the court held that it was the original imposition of the lien that mattered for statute of limitations purposes. *Id.* at 293.[12] Just as in *Kaw Valley* and *Cowell*, Plaintiffs' alleged injury here stems from conduct that ended in time with Pfizer's execution of the Teva Settlement. There is no ongoing violation for statute of limitations purposes.

Plaintiffs' arguments that the "discovery rule" and doctrine of fraudulent concealment should apply here is specious because they concede that the settlements were publicly announced at the same time they were entered. Compl. ¶ 270. None of the alleged conduct they contend was fraudulently concealed or undiscoverable has anything to do with their reverse payment claims. *See* Opp'n at 94-95. These doctrines plainly do not apply to those reverse payment claims. Pfizer Br. at 18-19. And, contrary to Plaintiffs, courts do not hesitate to dismiss claims as time-barred under Rule 12(b)(6) in circumstances such as these. Pfizer Br. at 16-17.

Finally, even if the Court accepts all of Plaintiffs' statute of limitations arguments (it should not), Plaintiffs would be entitled to recover, at the very most, overcharge damages for only the four years before Plaintiffs filed their Complaint against Pfizer. Opp'n at 91 (arguing Plaintiffs may recover "any overcharges paid *within* the previous four years"). In other words, Plaintiffs' damages period against Pfizer cannot begin on January 1, 2009 as alleged. Compl. ¶ 516. The earliest possible recovery period would begin on February 3, 2013.[13]

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Pfizer's opening brief, Plaintiffs' claims as to Pfizer should be dismissed with prejudice.

---

[12] Notably, the Court agreed with other circuits that "a continuing violation is occasioned by *continual unlawful acts*, <u>not</u> *continual ill effects* from an original violation." *Id.* (emphasis added).

[13] Similarly, although Plaintiffs allege no end date as to their damages period, Plaintiffs cannot, as to Pfizer, allege any anticompetitive injury beyond the date of generic entry provided in the Teva Settlement (June 22, 2015).

Dated: February 16, 2018    SHOOK, HARDY & BACON L.L.P.

By:  /s/ *Joseph Rebein*
    Joseph Rebein, #25912
    Angel D. Mitchell, #20110
    Ashley Harrison, D. Kan. #78667
    2555 Grand Boulevard
    Kansas City, MO 64108-2613
    Telephone:   (816) 474-6550
    Facsimile:    (816) 421-5547
    jrebein@shb.com
    amitchell@shb.com
    aharrison@shb.com

    AND

    Dimitrios T. Drivas*
    Robert A. Milne*
    Brendan G. Woodard*
    Raj S. Gandesha*
    Sheryn George*
    Edward Thrasher*
    WHITE & CASE LLP
    1221 Avenue of the Americas
    New York, NY 10020
    Telephone: (212) 819-8200
    Fax: (212) 354-8113
    ddrivas@whitecase.com
    rmilne@whitecase.com
    bwoodard@whitecase.com
    rgandesha@whitecase.com
    sgeorge@whitecase.com
    edward.thrasher@whitecase.com

    *Admitted Pro Hac Vice*

    *COUNSEL FOR DEFENDANTS*
    *Pfizer Inc., King Pharmaceuticals LLC,*
    *and Meridian Medical Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2018, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will serve electronic notice of same upon all attorneys of record.

By:  */s/ Joseph Rebein*

COUNSEL FOR DEFENDANTS
*Pfizer Inc., King Pharmaceuticals LLC, and Meridian Medical Technologies, Inc.*