# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation**<br><br>**(This Document Applies to All Cases)** | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## ORDER REGARDING ESI CUSTODIANS

The Court previously ordered Sanofi and Mylan, at the February 28, 2018 in-person status conference, to make further efforts to reach agreement on their lists of custodians for electronically stored information ("ESI") and to report on the status of their efforts. On March 1, 2018, Sanofi and Mylan reported they had not resolved their dispute regarding whether three individuals—Mylan's Robert Coury ("Coury"), and Sanofi's Christopher Viehbacher ("Viehbacher") and Olivier Brandicourt ("Brandicourt")—should be designated as custodians. On March 6, 2018, the Court conducted a telephone status conference, during which counsel for Mylan and Sanofi presented thorough arguments regarding their respective positions on the disputed custodians.[1] This order memorializes and supplements the Court's oral rulings from the March 6, 2018 conference,[2] that Coury and Viehbacher shall be designated as custodians, but not Brandicourt.

---

[1] Class Plaintiffs appeared through counsel, Gretchen Freeman Cappio, Stuart A. Davidson, Ryan C. Hudson, and Brian O. O'Mara. Sanofi appeared through counsel, Yehudah L. Buchweitz and Chris Liwski. Mylan Defendants appeared through counsel, David M. Foster, Brian C. Fries, Adam K. Levin, and Philip A. Sechler.

[2] At the beginning of the March 6, 2018 teleconference, counsel for Mylan requested that portions of the

## I.     Standards Applied in the Court's ESI Custodian Decisions

Fed. R. Civ. P. 26(b)(1) provides the general limits on the scope of discovery, limiting discovery to information, including ESI, that is "relevant to any party's claim or defense and proportional to the needs of the case." This proportionality standard requires consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[3] Discovery of ESI—especially in cases where the parties anticipate a large amount of ESI to be searched, reviewed, and produced—makes proportionality considerations particularly significant.[4] Recognizing this, early in the case the parties agreed, with respect to the review and production of ESI, they would confer in good faith regarding the identities of ESI custodians.[5]

Relatively little legal authority exists on the standards a court should apply when parties are unable to agree on designated ESI custodians and a party seeks to compel another party to designate an additional ESI custodian or custodians.[6] Thus, after reviewing the limited legal authority that does exist and *The Sedona Principles, Third Edition: Best Practices,*

---

transcript be sealed because counsel would be discussing information designated as highly confidential under the protective order. The Court granted the unopposed request and ordered the entire transcript of the March 6, 2018 telephone status conference be sealed.

[3] Fed. R. Civ. P. 26(b)(1).

[4] *See The Sedona Principles*, *Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, Principle 2, 51 (2018) (courts and parties should apply the proportionality standard embodied in Fed. R. Civ. P. 26(b)(1) when balancing the cost, burden, and need for ESI).

[5] Stipulated ESI Protocol § C.5., ECF No. 70.

[6] Notably, the Court has found no Tenth Circuit authority addressing this issue.

*Recommendations & Principles for Addressing Electronic Document Production*,[7] the Court sets forth the following general principles which it applies in ruling on Mylan and Sanofi's respective requests that the Court compel designation of the disputed individuals as ESI custodians.

First, "determining what is relevant and proportional under the circumstances for each matter often requires a highly fact-specific inquiry."[8] Second, absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems "most likely to possess responsive information and to search the files of those individuals."[9] Third, unless the party's choice is "manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient," the court should not dictate the designation of ESI custodians.[10] Fourth, the party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case.[11] This is because the party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case.[12]

---

[7] 19 SEDONA CONF. J. 1 (2018).

[8] *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 6.a., 119 (2018).

[9] *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) (quoting *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293(LTS)(JCF), 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017)).

[10] *Firefighters' Ret. Sys.*, 2018 WL 276941, at *4.

[11] *See MariCal, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-CV-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016) (plaintiffs established that ESI of defendants' CEO likely included information that was relevant to a claim or defense as contemplated by Rule 26(b)(1)).

[12] *See Enslin v. Coca-Cola Co.,* No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel a party to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information . . . .").

Fifth, mere speculation that one's position as a senior executive might increase the relevance of that individual's files is not a basis for designating that individual as a custodian.[13]

One case in the District of Kansas has addressed a similar custodian dispute. In that case,[14] Magistrate Judge O'Hara found good cause to increase the number of designated custodians from five to fifteen upon a showing that they were "fairly high level managers with direct knowledge about important aspects of [that] case."[15] Other cases addressing the issue of whether to compel inclusion of a senior executive as an ESI custodian have considered the senior executive's level of involvement in discussions and decisions serving as the basis for the claims at issue in the case.[16] Other factors courts have considered when evaluating whether a senior executive should be designated as a custodian include whether the executive's relevant ESI is unique and would not be available from other designated custodians.[17]

---

[13] *Mortgage Resolution*, 2017 WL 2305398, at *3. *See also Enslin*, 2016 WL 7042206, at *3 (rejecting the argument that specific individuals must be included as custodians by virtue of the fact that they occupied senior roles in the company's information technology groups).

[14] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-02591-JWL-JPO (D. Kan. June 23, 2015), ECF No. 861.

[15] *Id.*

[16] *See MariCal,* 2016 WL 9459260, at *2 (compelling inclusion of defendants' CEO as ESI custodian based upon CEO's position of prominence in defendants' management and likelihood of his involvement in discussions regarding prior licenses for the subject patents); *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781 (SRN/JSM), 2013 WL 12139425, at *9 (D. Minn. Aug. 15, 2013) (denying request to compel designation of individual who was president, chairman of the board, and chief investment officer because he had no involvement with the administration of the Plan or the selection of the Plan options, which were the focus of the claims at issue in the case).); *Mt. Hawley Ins. Co. v. Felman Prod., Inc.,* 269 F.R.D. 609, 617 (S.D. W. Va. 2010) (compelling designation of nine representatives as custodians, all of whom were affiliated with the entities that owned the defendant company and who were intimately involved in decisions regarding sales and pricing of the defendant's production, and thereby directly affected its business interruption claim and net profits).

[17] *See MariCal,* 2016 WL 9459260, at *2 (court was not convinced all of CEO's relevant information would be included in the ESI maintained by the other designated custodians); *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (party moving to compel additional proposed custodians "must demonstrate that the additional requested custodians would provide

## II.   ESI Custodian Rulings

### A.   Coury

Sanofi requests that the Court compel Mylan to designate Coury, a former CEO of Mylan, Inc., as an ESI custodian. Mylan objects to such designation. Coury served as the CEO of Mylan, Inc. until January 1, 2012, when he became chairman of the board of Mylan NV, which Mylan's counsel refers to as the ultimate parent company of the Mylan organization. Coury was replaced as CEO of Mylan, Inc. by Heather Bresch, who remains in that position to date. Mylan has agreed to provide Bresch as an ESI custodian but objects to Sanofi's request that Coury be designated as an additional custodian. Mylan argues that Coury has not held a managerial or operational role in the company since 2012. Mylan contends that Coury, in his current role as board chairman of the parent Mylan entity, is far removed from the allegations that form the bases for the claims and defenses in this case.

Sanofi argues Coury has relevant information because he was CEO when Mylan raised the price of its EpiPen products by ten percent three times over a 50-month period ending in 2011. Mylan does not dispute Coury was Mylan, Inc.'s CEO during this time frame, which includes the time when Class Plaintiffs allege Mylan began significant EpiPen price increases.[18] Sanofi also cites a Mylan SEC filing indicating that even in his position as chairman of the board of the Mylan parent entity, Coury was actively involved in material transactions including those that involved Mylan's EpiPen, which constituted a substantial percent of Mylan's prescription drug business, and provided important guidance to senior management during the relevant time

---

unique relevant information not already obtained").

[18] Class Plaintiffs allege Mylan raised the price of EpiPen multiple times since late 2009. *See* Consolidated Class Action Compl., 99–101, ECF No. 60.

period. Sanofi also references a press release about the EpiPen4Schools program that Coury edited while chairman of the board, and an interview in which Coury mentioned a significant opportunity in 2017 for better pricing of the EpiPen as many contracts "come off." Sanofi contends the contracts Coury referenced were Mylan's contracts giving massive rebates so that Mylan could obtain an exclusive position and lock out competing products like Sanofi's Auvi-Q product.

Applying the standards set forth above, the Court finds Sanofi has met its burden of showing that Coury is likely to have unique information and ESI, not available through other Mylan custodians, relevant to the claims and defenses in this case. Sanofi presented exhibits and information[19] which appear to indicate that Coury, in his role as Mylan, Inc.'s CEO and in his subsequent position as a senior executive in the parent Mylan entity, was involved in discussions and decisions regarding EpiPen price increases, the EpiPen4Schools program, and other relevant issues in the case. Coury shall therefore be designated as an ESI a custodian in this case.

### B.  Viehbacher

Mylan requests the Court compel Sanofi to designate Viehbacher, a former Sanofi CEO, as an ESI custodian. Viehbacher was the CEO of Sanofi from the end of 2008 through October 2014, during the time when many of the facts asserted in this case allegedly occurred. Mylan presented an exhibit showing that Viehbacher was part of a small team making decisions regarding the Auvi-Q product launch, media outreach efforts, and other Auvi-Q-related issues relevant to this case. Mylan referenced two additional exhibits—a PMLiVE.com news article and transcript of Sanofi's 2013 first quarter earnings call—in which Viehbacher made public

---

[19] In making its findings herein, the Court gives little weight to the New York Times article mentioning Coury.

statements about the progress and early launch of Auvi-Q. Sanofi objects to designating Viehbacher as a custodian, arguing that it has already designated lower level employees who were directly involved and have access to information relevant to the claims and defenses in the case. Sanofi basically makes a proportionality argument, namely that the twenty-three custodians it has already designated should be a sufficient number.

Applying the same standards as above, the Court finds Mylan has met its burden of showing that Viehbacher is likely to have unique information and ESI, not available through other Sanofi custodians, relevant to the claims and defenses in this case. The Court finds Sanofi's proportionality argument unpersuasive, especially given that Mylan has designated executive-level custodians from its parent company (and, at Sanofi's urging, by this Order the Court is ordering Mylan to produce another such custodian) while Sanofi has designated no such custodians. Viehbacher shall therefore be designated as an ESI custodian in this case.

### C.   Brandicourt

Mylan also requests that Brandicourt be designated as a custodian in this case. Sanofi objects to the requested designation. Again applying the same standards as above, the Court finds in this instance that Mylan has not met its burden of showing that Brandicourt is likely to have unique information and ESI, not available through other Sanofi custodians, relevant to the claims and defenses in this case. The level of involvement by Brandicourt appears much less significant than Coury and Viehbacher, as Brandicourt first came on board as Sanofi's CEO in April 2015, which was well after many of the alleged facts and key events in this case. Brandicourt's relevant information seems to be very limited in nature and any relevant documents in his possession or control can likely be obtained from already designated custodians. From a proportionality standpoint, the Court also considers significant the fact that Brandicourt resides in France and, as

a result, there may be additional issues that make it unduly burdensome and expensive to search, review, and produce ESI within his custody.[20] Brandicourt therefore shall not be designated as an ESI custodian in this case.

**IT IS SO ORDERED.**

Dated this 15th day of March 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[20] *See Moore v. Publicis Groupe*, 287 F.R.D. 182, 186 (S.D.N.Y. 2012), adopted sub nom. *Moore v. Publicis Groupe SA*, No. 11 CIV. 1279 ALC AJP, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) (CEO located in France was not included as a "first-phase custodian" given that his emails were mostly written in French, would be gathered from emails with the New York based executive staff, and likely would be covered by French privacy and blocking laws).