IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No:  2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on The Mylan Defendants' Motion to Compel Discovery from Plaintiffs (ECF No. 285).[1]  Pursuant to Fed. R. Civ. P. 37, Mylan seeks an order requiring Plaintiff Sanofi-Aventis U.S., LLC to (1) produce information on rebates Sanofi offered pharmacy benefit managers and third-party payors on branded pharmaceuticals that Sanofi sold in the United States, in response to Request No. 24 in Mylan's First Set of Document Requests to Sanofi and Interrogatory Nos. 15 and 16 in Mylan's First Set of Interrogatories to Sanofi, and (2) identify the formularies Sanofi alleges excluded its Auvi-Q® device by reason of Mylan's conduct, in response to Interrogatory No. 2.[2]  As set forth below, the Court grants in part and denies in part Mylan's motion.

---

[1] The Mylan Defendants include Mylan N.V., Mylan Inc., Mylan Pharmaceuticals, Inc., Heather Bresch, and Defendant/Counterclaim Plaintiff Mylan Specialty L.P. As in its earlier orders, the Court will refer to them collectively as Mylan.

[2] Mylan's motion also asks the Court to order Class Plaintiffs to produce additional discovery, but in its reply Mylan indicates this Court's order dated March 1, 2018 (ECF No. 303) effectively grants the relief Mylan sought.

## I.    Relevant Background

On November 21, 2017, Mylan served its First Set of Interrogatories and First Set of Requests for Production on Sanofi.[3]  Sanofi objected and responded to both sets of discovery, and the parties subsequently engaged in extensive written and oral communication in an attempt to resolve their differences.  Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II.    Summary of the Parties' Arguments

*Sanofi Rebates*

Mylan argues it is entitled to show that its EpiPen® rebates were pro-competitive and common in the pharmaceutical industry when Auvi-Q® was being sold.  To that end, Mylan propounded three discovery requests seeking information on rebates Sanofi has paid.  In RFP 24, Mylan seeks documents "relating to any contract, agreement, bid or offer" under which Sanofi offered rebates to any PBM or Payor for any of its products.  Interrogatory 15 seeks a description of contracts and bid grids in which Sanofi offered a PBM or Payor "a rebate greater than or equal to 30% for any of [its] products."  Finally, Interrogatory 16 seeks a description of contracts or bid grids in which Sanofi offered a PBM or Payor a rebate contingent on exclusivity or competing products being restricted.

Sanofi argues that Mylan's requests are overbroad and not proportional to the needs of this case.  Sanofi points out it has provided discovery showing rebates Sanofi was forced to offer

---

[3] *See* ECF No. 74.

on other products to get Auvi-Q® access to the market, and contends that an appropriate limit is other pharmaceutical products where Sanofi had most of the sales in a given drug class.

Both Mylan and Sanofi offered compromises, which the Court considers to be the statement of their current positions regarding Sanofi rebates.  Sanofi offered to provide discovery on rebates for the products where it had 85% or more of sales in a given year for a class of prescription drugs.[4]  Mylan rejected that suggestion and proposes "that Sanofi produce rebate documents only for *12 products* in the U.S. over a ***five-year period*** (2012-2016)."[5]  Sanofi has likewise rejected Mylan's proposal.[6]

*Formularies*

Mylan also challenges Sanofi's answer to Interrogatory 2, which asks Sanofi to identify all formularies maintained by PBMs or third-party payors from which Sanofi contends Auvi-Q® was excluded or disadvantaged as a result of Mylan's conduct.  Specifically, Mylan complains that although Sanofi identified which Payors excluded Auvi-Q®, it has not identified which Payors made that decision based on Mylan's conduct.  Sanofi contends it has appropriately responded by producing business records as contemplated by Fed. R. Civ. P. 33(d), and that it has committed to supplementing based on its rolling document production.

**III.   Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery and provides as follows:

---

[4] ECF No. 323 at 10.

[5] ECF No. 371 at 8 & n.5.

[6] *Id.* at 8.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[7]

Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[8] Information still "need not be admissible in evidence to be discoverable."[9] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[10] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[11] Relevancy determinations are generally made on a case-by-case basis.[12]

---

[7] Fed. R. Civ. P. 26(b)(1).

[8] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[9] Fed. R. Civ. P. 26(b)(1).

[10] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[11] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[12] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

Conditional objections occur when "a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections."[13]

## IV.    Analysis

### A.    Sanofi Rebates

The Court finds the relevancy of the discovery called for in RFP 24 and Interrogatories 15 and 16 relating to rebates is apparent on its face.  Although Sanofi strenuously argues that rebates it offered on other products in non-EAI markets under different circumstances and different market conditions is irrelevant, the Court disagrees.  At a minimum, the requested discovery relates to the exclusive dealing claim Sanofi asserts.  In his order ruling on Mylan's motion to dismiss, Judge Crabtree concluded that Sanofi's complaint "does not rely 'solely on the exclusionary effect of [Mylan's] prices' to support its exclusive dealing claim based on Mylan's rebate program."[14]   Instead, in describing Sanofi's allegations in the light most favorable to Sanofi, Judge Crabtree wrote:  "The *Sanofi* Complaint alleges that Mylan leveraged its greater than 90% market share by offering unprecedented rebates to third-party payors (30% or higher) but expressly conditioned those rebates on excluding Auvi-Q®."[15]  Based in part on

---

[13] *Westlake v. BMO Harris Bank N.A.*, No. 13-2300-CM-KGG, 2014 WL 1012669, *3 (D. Kan. March 17, 2014) (citing *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC,* Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 1569963 (D. Kan. April 18, 2014) ("*Sprint II*")).

[14] Memorandum and Order (ECF No. 98) at 13 (citation omitted).

[15] *Id.  See also id*. at 18-19 (repeating Sanofi allegations that Mylan offered unprecedented rebates to third-party payors and "specifically targeted Auvi-Q® for exclusion from the market by expressly conditioning the large rebates on excluding Auvi-Q® from third-party payors' drug formularies").

these allegations, Judge Crabtree concluded that Sanofi states a plausible exclusive dealing claim under the Sherman Act.[16]

It is not the undersigned Magistrate Judge's province to weigh the relevant factors to determine whether Mylan's rebate program involved exclusionary conduct that substantially foreclosed competition. Instead, the issue presently before the Court begins with whether rebates Sanofi paid—in light of its allegation that Mylan paid unprecedented rebates—are relevant for purposes of discovery. The Court concludes the requested discovery is relevant.

The Court next considers Sanofi's objections. In its brief, Sanofi repeats language from its discovery responses about its offer to provide additional targeted discovery "subject to and without waiver of its objections."[17] The language Sanofi employs is that of a conditional objection, which this Court finds invalid and unsustainable.[18] Among the reasons is that objections followed by an answer "preserve nothing and serve only to waste the time and resources of both the Parties and the Court."[19] "[A]nswering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not."[20] Rules 33 and 34 demand an answer to an interrogatory, a statement that inspection or production

---

[16] *Id.* at 20.

[17] ECF No. 323 at 10.

[18] *See Sprint v. Comcast Cable Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 545544 (D. Kan. Feb. 11, 2014) ("*Sprint I*")).

[19] *Id.* at *2 (quoting *Consumer Elecs. Ass'n v. Compras and Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008)).

[20] *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *1 (M.D. Fla. April 29, 2011).

will be permitted as requested, or an objection.  The discovery rules contemplate no other response.

The conditional nature of Sanofi's objections provides ample reason to overrule the objections as invalid.  The Court will not rely on that ground, though, but instead puts the parties on notice of its view on conditional objections.  Moreover, Sanofi has abandoned all but its relevance and proportionality objections by failing to argue in favor of the others in its response to Mylan's motion to compel.  The Court already has concluded that the requests are relevant, and next considers Sanofi's proportionality argument.

Sanofi contends a proportional request would have been limited to "Sanofi's epinephrine products, or anti-anaphylactic products, or even products in which Sanofi has a similar market share as Mylan's EpiPen®."[21]  This view explains the compromise position Sanofi offered, which is to provide discovery of rebate agreements for products where Sanofi had 85% or more of sales in a given year.[22]  But this does not address proportionality so much as it does overbreadth, which Sanofi mentions only in passing.

The Court finds instructive the analysis in *J.B.D.L. Corporation v. Wyeth-Ayerst Laboratories, Inc.*,[23] an antitrust case alleging Sherman Act Section 2 violations cited by both Mylan and Sanofi.  The product at issue was Premarin, an estrogen drug sold by defendant.  The rebate information at issue in *J.B.D.L.* was subpoenaed by defendant from non-parties Rite Aid and CVS, both of which resisted producing rebate information on all products they sold as

---

[21] ECF No. 323 at 9.

[22] *Id*. at 10.

[23] No. C-1-01-704, 2004 WL 7081790 (S.D. Ohio June 7, 2004).

overbroad. While the court agreed with the non-parties' argument, "to the extent it deals with grocery products, hardware, etc.,"[24] the court also noted that "whether or not a practice is anti-competitive is a question of law, but a factual baseline on the subject of acceptable industry practice would be helpful to the fact finders."[25] And though the allowed requests in *J.B.D.L.* were limited to those related to estrogen or hormone replacement products, the Court finds that "acceptable industry practice" in this case should not be defined by product. The discovery request at issue seeks to explore the factual underpinnings of a significant allegation that Mylan offered "unprecedented" rebates. Mylan should be allowed to conduct discovery related to rebates Sanofi has offered to determine whether it has offered comparable rebates on drug products.

As the Court previously mentioned, it considers the party's proposals as statements of their current positions. Sanofi proposes to limit discovery into its rebate practices to rebates paid on products where Sanofi has 85% or more of sales in a given year for a class of prescription drugs. Sanofi argues it is "irrelevant to look at exclusive dealing involving other Sanofi products (or any other pharmaceutical company) in circumstances where they do not have monopoly power."[26] The only law Sanofi offers in support of this assertion comes from Judge Crabtree's discussion of exclusive dealing arrangements in his order on Mylan's motion to dismiss, which includes the following quotation: "Exclusive dealing arrangements are of special concern when

---

[24] *Id.* at *6.

[25] *Id.*

[26] ECF No. 23 at 6.

imposed by a monopolist."[27]  Sanofi reads too much into the statement.  Judge Crabtree has yet to create law of the case regarding the alleged exclusive dealing in this case.  The dicta Sanofi quotes does not take into account the allegation that Mylan's rebates are "unprecedented," nor does it provide a framework to determine the scope of the requested discovery.  While the Court stands by its earlier guidance that Mylan's original request was way too broad, Sanofi does not solve the problem by suggesting an alternative that uses an arbitrary percentage to define monopolistic sales.  The Court rejects Sanofi's position.

Mylan has significantly narrowed its original request by proposing that Sanofi produce rebate documents for twelve products it sold in the United States between 2012 and 2016.[28] Mylan argues the proposal would provide relevant information concerning the structure and circumstances of the industry, as well as discovery of the rebate agreements Sanofi claims constitute lawful, procompetitive competition.[29]  With respect to four of the named Sanofi products, the Court is able to discern from other submissions the likely reason Mylan included them is that each is the subject of one or more government investigations relating to pricing and trade practices.[30]  Mylan does not explain how it arrived at the other eight products or how they may be relevant to the rebate issue here.

---

[27] ECF No. 98 at 16 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012)).

[28] ECF No. 371-6 at 3.

[29] *Id.*

[30] Mylan listed the government agencies and products in its most recent discovery requests, which Sanofi attached as Exhibit A to its March 28, 2018 Status Report.  The four products are Apidra, Lantus, Soliqua, and Toujeo.  In addition, Mylan represents that Sanofi is defending a class action alleging it pays unlawful rebates on Apidra, Lantus, and Toujeo.  *See* ECF. No. 371 at 7.

The Court finds Mylan has sufficiently shown it is entitled to limited additional discovery into Sanofi's rebate practices beyond what Sanofi has produced.   The Court grants Mylan's motion to compel in part and will require Sanofi to produce documents relating to rebates it has offered for Apidra, Lantus, Soliqua, and Toujeo.

### B.    Formularies

Mylan complains that Sanofi has answered only half of Interrogatory 2 by identifying which Payors excluded Auvi-Q®, but not which Payors did so because of Mylan's conduct.  In its response, Sanofi describes the responsive documents it has produced, including "a sworn narrative by a Sanofi business person detailing numerous third-party payors who did not cover Auvi-Q® due to Mylan's conduct."[31] Moreover, Sanofi commits to supplement the interrogatory answer during its rolling production, which it must do as required by Fed. R. Civ. P. 26(e).  The Court finds Sanofi has demonstrated its good faith compliance with the discovery request, and denies Mylan's motion to compel regarding Interrogatory 2.

Based on the foregoing, the Court grants in part and denies in part The Mylan Defendants' Motion to Compel Discovery from Plaintiffs (ECF No. 285).  The Court grants the motion insofar as no later than April 30, 2018, Sanofi is ordered to produce rebate information relating to Apidra, Lantus, Soliqua, and Toujeo in the United States from 2012 to 2016.  The Court denies the motion in all other respects.

---

[31] ECF No. 323 at 12.

**IT IS SO ORDERED.**

Dated this 2nd day of April, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge