IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>**(This Document Applies to All Cases)** | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |
| IN RE: EpiPen Epinephrine Injection, USP Marketing, Sales Practices and Antitrust Litigation | Case No. 18-mc-206-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on (1) Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Optum Rx, Inc. (ECF No. 198) in Case No. 17-md-2785-DDC-TJJ, and (2) Non-Party OptumRx, Inc.'s Motion to Quash Plaintiff's Rule 45 Subpoena (ECF No. 1) in Case No. 18-mc-206-DDC-TJJ. Pursuant to Fed. R. Civ. P. 45, Class Plaintiffs seek an order requiring non-party Optum Rx, Inc. ("Optum") to search for and produce documents responsive to Plaintiffs' subpoena served on December 11, 2017. Optum opposes the motion. Also pursuant to Rule 45, Optum seeks an order quashing Class Plaintiffs' subpoena. Class Plaintiffs oppose Optum's motion. As set forth below, the Court will grant Plaintiffs' motion subject to certain limitations, and will grant in part and deny in part Optum's motion.

I.      **Relevant Background**

On December 8, 2017, Plaintiffs issued a Rule 45 subpoena to Optum and served it three days later. The date specified in the Subpoena for compliance was January 9, 2018. Under Rule 45(d)(2)(b), Optum's deadline for objections was 14 days after service of the subpoena.[1] Optum neither served objections nor produced documents in accordance with the subpoena. Instead, on February 2, 2018, Optum served objections on Plaintiffs' counsel, and on February 7, 2018, Optum filed a motion to quash the subpoena in the U.S. District Court for the Central District of California.[2] On February 12, 2018, Plaintiffs filed the instant motion. Pursuant to the parties' stipulation, on March 9, 2018, Optum's motion to quash was transferred to this district.[3] The parties have engaged in extensive written and oral communication regarding the subpoena. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

II.     **Summary of the Parties' Arguments**

The parties raise symmetrical issues and arguments in Optum's motion to quash and in Plaintiffs' motion to compel.[4] Plaintiffs contend that Optum's failure to serve written objections within 14 days of service of the subpoena waives Optum's objections, thereby warranting an order to Optum to produce documents responsive to the subpoena.

---

[1] An objection to a subpoena must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2).

[2] Case No. 8:18-mc-00003-AG-DFM.

[3] Case No. 18-mc-206-DDC-TJJ.

[4] Because the two motions raise the same issues, the Court will also enter an order denying Optum's motion to quash for the reasons stated in this order.

Optum challenges service of the subpoena; objects that complying with the subpoena would impose undue burden and expense on Optum, the latter of which should be remedied by requiring Plaintiffs to pay Optum's cost of compliance; and objects to the subpoena as premature and unnecessary.[5]

## III. Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[6]  Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[7]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.  Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents.  If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash.  Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver

---

[5] Optum originally objected to this Court's authority to enforce the subpoena because this is not the district in which compliance is sought.  Optum waived the argument with respect to its motion to quash by stipulating to the transfer of the motion to this district.  As the Court presiding over the MDL, this Court has authority to decide the motion to compel. *E.g., In re Asbestos Prod. Liab. Litig.*, 256 F.R.D. 151, 153-55 (E.D. Penn. 2009).

[6] Fed. R. Civ. P. 45(d)(1).

[7] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

applies," and when the subpoena "subjects a person to undue burden."[8] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[9]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[10] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[11] Information still "need not be admissible in evidence to be discoverable."[12] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the

---

[8] Fed. R. Civ. P. 45(d)(3)(A).

[9] Fed. R. Civ. P. 45(d)(3)(B).

[10] *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[11] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[12] Fed. R. Civ. P. 26(b)(1).

[13] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

burden to show the relevancy of the request.[14]  Relevancy determinations are generally made on a case-by-case basis.[15]

## IV.     Timeliness of objections and waiver

Optum and Plaintiffs devote many pages to describing counsel's communications after service of the subpoena but before Optum served objections.  Plaintiffs do so to make their case that Optum waived its objections, while Optum seeks to avoid waiver and demonstrate improper service of the subpoena.  Based on the parties' briefs and exhibits they submit for factual support, the Court finds Plaintiffs have demonstrated that they accomplished service on Optum by going first to Optum's principal executive office and then following directions received there to deliver the subpoena to another Optum facility.  Once the process server arrived at the second facility (where Optum's principal counsel is located), he handed the subpoena to a woman who stated she was authorized to accept it.  Optum counters that the address is not its registered address nor its corporate headquarters, and the woman who signed for receipt is not an employee of OptumRX, Inc.  However, Optum does not deny the truth of the recipient's statement that she was authorized to accept service of the subpoena.  It is quite plausible that someone who is not an employee of OptumRX, Inc. would be authorized to accept service on the company's behalf.  Optum's brief devotes substantial space to describing its counsel's communications in response to Class Plaintiffs' subpoena served on United HealthCare Service, Inc. ("United"), Optum's parent company, implying if not suggesting that Plaintiffs' counsel should have known to ask

---

[14] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[15] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

*United's* counsel why *Optum* had not responded to the subpoena. Optum's protestations aside, the Court finds that Optum was properly served.

However, because non-party Optum took seriously its obligations and promptly served objections once counsel learned of the subpoena, the Court will not find waiver. Instead, the Court will consider the service date to be January 30, 2018, the date on which Optum's counsel states he first learned of the existence of the subpoena. Using that date, Optum's objections were timely when filed three days later.

**V.     Relevancy**

Although Optum does not object to any of the requests on the basis of relevancy, the Court finds it appropriate to examine the relevancy of the requests to afford Optum the heightened protection a non-party deserves. Construing relevancy broadly, as the standard directs, the Court finds Plaintiffs' document requests clearly encompass matters that bear on their claims in this case. Plaintiffs allege Defendants created and exploited an EpiPen monopoly by providing aggressive rebates and incentives to pharmacy benefits managers (PBM), including Optum, to exclude EpiPen competitors from drug formularies. Plaintiffs describe PBMs as the gatekeepers between drug and medical supply manufacturers on the one hand, and health insurers and patients on the other. Plaintiffs allege Mylan paid to keep other epinephrine auto-injector (EAI) competitors out, with the result being harm to the competitive process to the detriment of both competitors and consumers.

Given Plaintiffs' allegations, the Court finds relevant the categories of requests included in Plaintiffs' subpoena. As Plaintiffs describe them, the categories are as follows:

> (i) EAI-related incentives and rebates, EAI formulary placement and decisions, and attendant EAI-related incentive, consideration and cost data and EAI related budgeting, plans and forecasting (Req. Nos. 1, 4, 7, 8, 10, 13 and 14); (ii) the EAI market, and EAI

>competitive conditions and demand (Req. Nos. 5 and 6); (iii) EAI-related marketing and other presentation materials (Req. No. 11); (iv) and documents sufficient to identify Optum's employees and divisions with responsibility concerning EAI-related decisions (Req. No. 9). The Subpoena also seeks documents provided to any governmental entity investigating or conducting an EAI or EAI market-related inquiry (including documents concerning Mylan's misclassification of its EAI devices as non-innovator/generic drugs under Medicaid's Medical Drug Rebate Program) (Req. Nos. 2, 3 and 12).[16]

Having found the document requests facially relevant, the Court turns to Optum's objections.

## VI.   Optum's objection that the requests are overbroad and unduly burdensome

Citing Rule 45's directive that courts must enforce the serving party's obligation to take "reasonable steps to avoid imposing undue burden or expense,"[17] Optum argues it should be protected from responding to the subpoena. First, Optum contends the subpoena is premature because Plaintiffs may obtain the subpoenaed information during discovery between the parties to this lawsuit, thereby obviating the need for Rule 45 discovery. The Court rejects Optum's characterization of the subpoena as calling for discovery that "will likely duplicate evidence" Plaintiffs will receive from parties.[18] To the extent Plaintiffs seek Optum's internal communications and deliberations, as well as documents, agreements, and communications with non-party manufacturers, there would be no duplication. In addition, Optum is not in a position to know what other parties will produce, nor whether a particular document may differ in version

---

[16] ECF No. 198 at 10.

[17] Fed. R. Civ. P. 45(d)(1).

[18] ECF No. 209 at 27.

or have additions or omissions when coming from two different sources. As a result, the authority Optum cites is inapposite.

Optum's second argument is similar, suggesting it would suffer undue burden by having to respond to a subpoena that seeks information the parties to the litigation possess. Again, Optum has no way of knowing whether documents in different entities' possession are identical, nor can it know what documents other entities possess.[19] Rule 45 does not require a party to conduct party discovery before seeking information from third parties.

Optum next argues that the subpoena is overbroad by virtue of its definitions, which it asserts "would require OptumRX to identify and search at least 500 corporate entities (including legacy entities and acquisitions for which gathering electronic information can be difficult) for vast amounts of epinephrine-related information from an eleven-year period."[20] Optum also objects to each individual request, repeatedly stating that the requested information is more readily available from the parties to the litigation, and that the requests are overly broad, unduly burdensome, vague, ambiguous, prohibitively expense, and excessively time-consuming.[21] In addition, Optum objects that the following words and phrases are vague and ambiguous: "actual or potential demand," "competitive conditions," "understanding," "other data," "presentation(s)," "educational material," "marketing material," "classification," "misclassification," "budgets,"

---

[19] Optum's argument also presumes knowledge Plaintiffs do not have, i.e. what documents Optum might possess. *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005) ("[I]f a party resists discovery on the grounds that providing the information would be too burdensome, the [party moving to compel] often has no knowledge as to how the information sought is maintained in the ordinary course of business.").

[20] ECF No. 209 at 31.

[21] ECF No. 209-11.

"projections," "forecasts," "plans," "agreements," "guidelines," "policies," "standards," and "clinical or financial analysis or recommendations."[22]

"Whether a subpoena imposes an undue burden upon a respondent raises a case-specific inquiry. It turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[23] A court is to balance the relevance of the information sought against the burden imposed.[24] The *Goodyear Tire & Rubber Co.* case goes on to describe the concept of relevancy:

> Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request.[25]

---

[22] *Id.*

[23] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D. Kan. 2003).

[24] *Id.; In re Coordinated Pretrial Proceedings in Petroleum Products Litig,* 669 F.2d 620, 623 (10th Cir. 1982); *In re Subpoena Duces Tecum Directed To RCA Group,* No. 06–MC–230–JWL–GLR, 2006 WL 3844791, at *3 (D. Kan. Dec. 28, 2006).

[25] 211 F.R.D. at 663 (internal citations omitted).

As the Court has noted, the scope of discovery under a subpoena is the same as party discovery permitted by Rule 26.[26] Thus, while the Court recognizes that "[c]ompliance with a subpoena inevitably involves some measure of burden to the producing party, . . . the court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[27] As with Rule 26 discovery, one objecting to a subpoena has the burden to show compliance would cause undue burden, typically by presenting an affidavit or other evidentiary proof of the time and expense involved in responding to the subpoena.[28] The affidavit Optum provides contains nothing more than generalities and truisms (e.g., review "could take weeks," "document reviews can generate significant costs"),[29] and does not demonstrate that Optum will suffer burden and expense complying with the subpoena. Likewise, the affidavit provides no information to persuade the Court that Optum will suffer an undue burden in identifying the affiliated and related entities with responsive documents.

Neither does the Court find the words and phrases quoted above are vague and ambiguous, nor is a request for documents "concerning" or "relating to" a topic (even if the request is for "all" documents) facially overbroad or unduly burdensome, if otherwise limited.

---

[26] *In re Syngenta*, 2017 WL 1106257, at *16 (citing *Schneider*, 2014 WL 4749181, at *2).

[27] *Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 WL 566988, at *3 (D. Kan. Feb. 11, 2015) (citations omitted).

[28] *Id.*

[29] ECF No. 209-19 (Declaration of David Yerich, Director of eDiscovery for UnitedHealth Group, Incorporated). To be fair, the declarant may be unable to provide more specific information when Optum also stated in response to every request that it will not search for or produce documents. See ECF No. 209-11.

Optum's objections to the individual requests are boilerplate; they state an objection without offering an explanation.

In response to Optum's boilerplate objection that requests seeking "all" documents are facially overbroad, Plaintiffs assert two of their fourteen requests are limited to Optum's internal documents,[30] one specifically requests documents sufficient to identify Optum personnel and department,[31] and three of the remaining requests ask Optum to produce documents it has previously searched for, reviewed, and produced to various governmental entities.[32] As evidenced by these examples, Optum's boilerplate objections lack support and do not adequately provide a basis for the Court to grant them.[33]

## VII. Court review

Although Plaintiffs state they tried to discuss with Optum limitations on their requests through the meet-and-confer process, at no point did Plaintiffs make a concrete offer to narrow or limit their requests. As such, both sides of this discovery dispute have staked out absolutist positions, with Plaintiffs demanding documents to the subpoena as drafted and Optum refusing to produce responsive documents. The Court has reviewed the individual requests to determine relevancy based on the claims and defenses in this action, and to assess whether Plaintiffs have taken reasonable steps to avoid imposing undue burden or expense as required by Rule 45(d)(1).

---

[30] *See* ECF No. 311 at 27 (referring to Request Nos. 1 and 11).

[31] *See id.* at 25 (referring to Request No. 9).

[32] *See id.* at 28 (referring to Request Nos. 2, 3, and 12).

[33] *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625-26 (D. Kan. 2014) (party asserting unduly burdensome objection has burden to show facts justifying objection by demonstrating time or expense involved is unduly burdensome).

The Court finds the relevant time period designated by Plaintiffs of January 1, 2007 to the present to be reasonable, as it is coextensive with when Mylan acquired and continues to hold the rights to EpiPen. The Court finds Plaintiffs' definition of "you" and "your" overbroad to the extent it includes United HealthCare Services, Inc., because Plaintiffs have served an identical subpoena on United. The Court will exclude United HealthCare Services, Inc. from the definition of entities to produce responsive documents. The Court finds no deficiency in each of the fourteen individual requests as written. With the modification to the definition of which entities Optum is to consider when searching for responsive documents, the Court will enforce the subpoena as written.

## VIII. Costs

Finally, Optum asks the Court to order Plaintiffs to pay the costs of compliance if the Court rules that Optum must produce documents in response to the subpoena. Although the declaration Optum submitted in support of the request does not contain specific enough information for the Court to determine the precise costs, the Court is cognizant that compliance with the subpoena may require searches across a significant number of document custodians within Optum and related entities. The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party. In this instance, because the subpoena is not limited to Optum but instead extends to additional entities as included in the subpoena's definition,[34] the Court finds it appropriate for

---

[34] "'You' and 'Your' shall refer to Optum RX, Inc., and each of its predecessors, subsidiaries, parents, affiliates, and other organizational and operating units of each of them, all past and present directors, officers, employees, agents, representatives, employees, consultants, and attorneys of any of them, all entities acting in joint-venture or partnership relationships with each of them, and others acting on the behalf of each of them." ECF No. 198-1 at 5. While the Court understands Plaintiffs seek only "documents sufficient to identify *Optum* personnel and

Class Plaintiffs to share in the cost of production. Accordingly, the Court will require Class Plaintiffs to bear 50% of the costs Optum incurs in timely producing documents responsive to the subpoena.

## IX.    Motion to Quash

In its motion to quash the subpoena, Optum relies on the subsections of Rule 45 which require the court to quash or modify a subpoena that (1) fails to allow a reasonable time to comply or (2) subjects a person to undue burden.[35]  The Court has ruled that compliance with the subpoena, modified to exclude United as a responding party, will not subject Optum to undue burden.

On the issue of time, the extent of Optum's argument is that 29 days (the time designated for compliance in the subpoena) is insufficient to respond "to requests that cover more than a decade, apply to hundreds of different unnamed entities, and seek information in every imaginable form."[36]  The Court does not find the argument compelling.   Accordingly, the Court will deny in part and grant in part Optum's motion to quash.

**IT IS HEREBY ORDERED** that Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Optum Rx, Inc. (ECF No. 198) in Case No. 17-md-2785-DDC-TJJ, *In Re: Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* is granted as modified to exclude United HealthCare Services, Inc. as a responding

---

departments responsible for EAI-related decisions," ECF No. 311 at 25, Plaintiffs concede that responsive documents may come from Optum's subsidiaries or affiliated entities, *id.* at 26.

[35] Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).

[36] Case No. 18-mc-206-DDC-TJJ, Non-Party OptumRx, Inc.'s Memorandum in Support of its Motion to Quash Plaintiff's Rule 45 Subpoena (ECF No. 1-1 at 20 n.7).

entity. Optum shall produce documents responsive to the subpoena within **21 days** of the date of this order. Class Plaintiffs shall bear 50% of the costs of Optum's timely production.

**IT IS FURTHER ORDERED** that Non-Party OptumRx, Inc.'s Motion to Quash Plaintiff's Rule 45 Subpoena (ECF No. 1) in Case No. 18-mc-206-DDC-TJJ, *In Re: EpiPen Epinephrine Injection USP Marketing, Sales Practices and Antitrust Litigation* is granted to the extent that United HealthCare Services, Inc. is excluded as a responding entity, and denied in all other respects.

**IT IS SO ORDERED.**

Dated this 31st day of May, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge