IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No:  2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Class Plaintiffs' Motion to Compel Compliance with the Subpoena Directed to Non-Party MedImpact Healthcare Systems, Inc. (ECF No. 276). Pursuant to Fed. R. Civ. P. 26 and 45, Class Plaintiffs seek an order requiring non-party MedImpact Healthcare Systems, Inc. Inc. to search for and produce documents responsive to Plaintiffs' subpoena served on December 11, 2017.  MedImpact opposes the motion.   As set forth below, the Court will grant in part and deny in part Plaintiffs' motion.

## I.      Relevant Background

On December 11, 2017, Plaintiffs served a Rule 45 subpoena on MedImpact.  Under Rule 45(d)(2)(b), MedImpact's deadline for objections was 14 days after service of the subpoena.[1]  On January 9, 2018, counsel for MedImpact served responses and objections to the subpoena, and twenty-two days later MedImpact served its first rolling production of documents.[2]

---

[1] An objection to a subpoena must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2).

[2] Plaintiffs granted MedImpact's request for these extensions (ECF No. 276 at 2-3).

Counsel held two meet and confer telephone sessions on January 23 and February 20, 2018. In addition to the January 31 production, MedImpact agreed to provide Plaintiffs a reasonable timeline in which it would complete production, and to produce remaining Committee Minutes no later than February 27, 2018. With a February 23 deadline to file a motion to compel, Class Plaintiffs and MedImpact discussed a possible agreement to extend the date. MedImpact agreed not to oppose an extension of time for Plaintiffs to challenge MedImpact's actual production, but would not agree to an extension of Plaintiffs' deadline regarding MedImpact's objections.[3]

In their motion, Plaintiffs state their hope that MedImpact's forthcoming production would resolve the parties' disputes. MedImpact takes the position that the instant motion is not ripe because they have continued to produce documents, yet they stand by their objections. Since the time briefing on this motion concluded, MedImpact and Plaintiffs have not resolved their differences, as evidenced by Plaintiffs' repeated unopposed motions to extend their deadline to seek to compel MedImpact's production.[4] The Court finds it appropriate to rule on the instant motion without further delay. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II.     Summary of the Parties' Arguments

Because this motion is limited to challenges to MedImpact's objections, Plaintiffs' argument focuses only on MedImpact's response to the subpoena. Plaintiffs assert MedImpact's

---

[3] ECF No. 276 at 3-4.

[4] *See* ECF Nos. 488, 505, 594, and 686 (orders granting motions for extension of time, with the current deadline being June 28, 2018).

objections contain boilerplate and overly broad objections. MedImpact contends this Court lacks jurisdiction to decide this motion. Regarding the merits, MedImpact stands by its objections, arguing that collectively they demonstrate the subpoena imposes undue burden and expense on MedImpact.

### III.    Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[5] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[6]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[7] Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[8] The rule also allows a

---

[5] Fed. R. Civ. P. 45(d)(1).

[6] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[7] MedImpact has not filed a motion to quash the subpoena in this or any other federal district court.

[8] Fed. R. Civ. P. 45(d)(3)(A).

court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[9]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[10]  In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena.  Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[11]  Information still "need not be admissible in evidence to be discoverable."[12]  When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[14]  Relevancy determinations are generally made on

---

[9] Fed. R. Civ. P. 45(d)(3)(B).

[10] *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[11] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[12] Fed. R. Civ. P. 26(b)(1).

[13] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[14] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

a case-by-case basis.[15]

## IV.    Jurisdiction

Plaintiffs assert that as the MDL transferee court, this Court has jurisdiction to rule on their motion to compel.  MedImpact disagrees and relies on arguments made by other subpoenaed non-parties that have challenged this Court's jurisdiction absent transfer from the district in which compliance is sought.  Presumably, MedImpact relies on changes to Federal Rule of Civil Procedure 45 brought about by the 2013 amendment to the rule.  Prior to the amendment, Rule 45 required that subpoenas issue from the district where compliance was required.[16]  The issuing court retained the authority to modify or quash the subpoena.[17]  After the 2013 amendment, however, subpoenas must be *issued* from the court where the action is pending,[18] but the authority to *quash* or modify the subpoena remains with "the court for the district where compliance is required."[19]  Although transfer of a motion to quash or other subpoena-related motion from the court where compliance is required to the issuing court is permitted in certain circumstances, any such transfer is not initiated by the issuing court.[20]

---

[15] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[16] *See* Fed. R. Civ. P. 45(a)(2) (2011) (stating that subpoenas "must issue as follows . . . for production or inspection, . . . from the court for the district where the production or inspection is to be made").

[17] *See* Fed. R. Civ. P. 45(c)(3) (2011) (stating that the "issuing court must quash or modify" subpoenas).

[18] Fed. R. Civ. P. 45(a)(2).

[19] Fed. R. Civ. P. 45(d)(3)(A), (B).

[20] *See* Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court.").

The language in Rule 45 which assigns enforcement to "the court for the district where compliance is required" refers only to orders quashing or modifying a subpoena.[21]  It is no surprise that Rule 45 makes no mention of where a party must file a motion to compel compliance with a Rule 45 document subpoena, as that is determined by another rule.  Rule 37(a), which applies to motions for an order compelling disclosure or discovery, directs that "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken."[22]  This language is not new, but has been part of Rule 37 since its inception.  Were the Court to decide this issue by looking only to the Federal Rules of Civil Procedure, the Court would deny Plaintiffs' motion without prejudice to its refiling in the district in which compliance is requested.

However, the basis for ruling that an MDL transferee court has authority to rule on a motion to compel in this situation (where a Rule 45 subpoena is issued by the MDL court but compliance is sought in another district) is not Rule 45 or Rule 37.  Instead, courts find authority in 28 U.S.C. § 1407, the statute authorizing the MDL Panel to transfer civil actions involving one or more common questions of fact for coordinated pretrial proceedings.[23]  Section 1407(b) expressly empowers an MDL court to "exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions."[24]  The statute's remedial purpose of eliminating

---

[21] Fed. R. Civ. P. 45(d)(3).
[22] Fed. R. Civ. P. 37(a)(2).

[23] *E.g., In re Asbestos Prod. Liab. Litig.*, 256 F.R.D. 151, 153-55 (E.D. Penn. 2009); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 485-86 (E.D. Penn. 2005); *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.*, 238 F. Supp. 2d 270, 273-75 (D.D.C. 2002)

[24] 28 U.S.C. § 1407(b).  *See also U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) (describing MDL court's broad powers over nonparty

the potential for conflicting contemporaneous pretrial rulings would be frustrated if the MDL court could not entertain motions to compel.  In this case, Class Plaintiffs have served subpoenas on numerous non-parties, each containing the same requests.  To enable this Court to fully exercise its power under § 1407, it is necessary to assume enforcement powers in relation to these subpoenas.  Doing so is also consistent with the transfer order in this case wherein the MDL panel noted that "centralization . . . will eliminate duplicative discovery [and] prevent inconsistent pretrial rulings."[25]  As the Court presiding over the MDL, this Court has authority to decide the motion to compel.

## V.    Relevancy

MedImpact objects to several requests on relevance grounds, arguing Plaintiffs have the burden to demonstrate how the requests are not objectionable.  Construing relevancy broadly, as the standard directs, the Court finds Plaintiffs' document requests clearly encompass matters that bear on their claims in this case.  This is an antitrust, civil RICO, and consumer-protection class action brought on behalf of those who purchased or used the EpiPen, an epinephrine auto-injector ("EAI"). The Complaint's allegations make relevant a number of topics for discovery, including the EAI market, EAI device coverage and formulary placement or exclusion, usage, claims, consumer costs, demand and competitive conditions, and EAI-related payments and costs along the distribution and pharmaceutical supply chain.[26]  As Plaintiffs point out, Mylan has also

---

discovery and noting MDL judge acts as judge of deposition or discovery district when using § 1407(b) authority)).

[25] ECF No. 1 at 3.

[26] *See, e.g.*, ECF No. 60, ¶¶152-198.

issued a subpoena to MedImpact, indicating Mylan's belief that MedImpact possesses documents relevant to claims and/or defenses in this case. MedImpact is a pharmacy benefit manager (PBM), entities which Plaintiffs allege entered into rebate and kickback agreements with Mylan to corner the U.S. market for EAI devices and defraud the public regarding the pricing of the EpiPen. Plaintiffs contend "[t]hese PBMs exerted influence in their role as insurance-industry middle-men to dictate the success or failure of certain drugs, including EpiPen and harmed the competitive process to the detriment of competitors and consumers alike who are entitled to the benefits of robust and fair competition."[27] Accordingly, Plaintiffs argue, MedImpact possesses documents relevant to the claims and defenses in this case.

Given Plaintiffs' allegations, the Court finds relevant the categories of requests included in Plaintiffs' subpoena. As Plaintiffs describe these identical requests in arguing another motion to compel, the categories are as follows:

> (i) EAI-related incentives and rebates, EAI formulary placement and decisions, and attendant EAI-related incentive, consideration and cost data and EAI related budgeting, plans and forecasting (Req. Nos. 1, 4, 7, 8, 10, 13 and 14); (ii) the EAI market, and EAI competitive conditions and demand (Req. Nos. 5 and 6); (iii) EAI-related marketing and other presentation materials (Req. No. 11); (iv) and documents sufficient to identify [United]'s employees and divisions with responsibility concerning EAI-related decisions (Req. No. 9). The Subpoena also seeks documents provided to any governmental entity investigating or conducting an EAI or EAI market-related inquiry (including documents concerning Mylan's misclassification of its EAI devices as non-innovator/generic drugs under Medicaid's Medical Drug Rebate Program) (Req. Nos. 2, 3 and 12).[28]

---

[27] ECF No. 361 at 3-4.

[28] Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Optum RX, Inc., ECF No. 198 at 10.

Having found the document requests facially relevant, the Court turns to MedImpact's objections.

## VI.    MedImpact's Objections

Citing Rule 45's directive that courts must enforce the serving party's obligation to take "reasonable steps to avoid imposing undue burden or expense,"[29] MedImpact argues that its objections to the subpoena's definitions and instructions, as well as its general and specific objections to document requests, reveal how complying with the subpoena would cause undue burden.  In response to Plaintiffs' contention that its objections are boilerplate, MedImpact points to two objections it posed to Plaintiffs' definitions which are not conclusory but contain explanation.  The first is MedImpact's objection to the definition of "you" and "your," which MedImpact states is so broadly written that it cannot identify all the individuals and entities within the definition's scope.  The second is the same objection raised in response to Plaintiffs' definition of "Amedra," "Mylan," "Pfizer," "Sanofi," and "Shionogi."

Plaintiffs do not address these two objections, nor do they indicate they have conferred with MedImpact about this issue.  The Court agrees that the definition of "you" and "your" is overly broad insofar as it "purport[s] to bind persons and entities other than MedImpact Healthcare Systems, Inc., and . . . seek[s] documents not within MedImpact's possession, custody or control."[30]  Likewise, the definitions of the five named companies are overly broad by purporting to include within their scope other entities and persons that MedImpact would have no means of being able to identify.  The Court sustains MedImpact's objections that these

---

[29] Fed. R. Civ. P. 45(d)(1).

[30] ECF No. 276-5 at 3.

definitions are overly broad. When the words appear in the subpoena requests, "you" and "your" shall refer to MedImpact Healthcare Systems, Inc.; "Amedra" shall refer to Amedra Pharmaceuticals LLC; "Mylan" shall refer to Mylan, N.V., Mylan Inc., and Mylan Specialty, L.P.; "Pfizer" shall refer to Pfizer, Inc., King Pharmaceuticals, Inc., and Meridian Medican Technologies, Inc.; "Sanofi" shall refer to Sanofi-Aventis U.S. LLC; and "Shionogi" shall refer to Shionogo Inc.

Putting aside for the moment that MedImpact has produced documents responsive to five of the fourteen requests, confirmed it has no documents responsive to two others, and made four supplemental productions after filing its response to the instant motion, the Court is not persuaded by MedImpact's remaining objections on grounds that Plaintiffs' requests are overly broad, unduly burdensome, vague, and ambiguous. The Court agrees that MedImpact's objections on those grounds are boilerplate; they state an objection without offering an explanation. The Court finds MedImpact's boilerplate objections lack support and do not adequately provide a basis for the Court to grant them.[31]

MedImpact also argues that the subpoena would cause undue burden. "Whether a subpoena imposes an undue burden upon a respondent raises a case-specific inquiry. It turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[32] A court is to balance the relevance of the information sought against

---

[31] See *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625-26 (D. Kan. 2014) (party asserting unduly burdensome objection has burden to show facts justifying objection by demonstrating time or expense involved is unduly burdensome).

[32] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D. Kan. 2003).

the burden imposed.[33]  The *Goodyear Tire & Rubber Co.* case goes on to describe the concept of

relevancy:

> Relevancy is broadly construed, and a request for discovery should be
> considered relevant if there is "any possibility" that the information sought
> may be relevant to the claim or defense of any party. A request for
> discovery should be allowed "unless it is clear that the information sought
> can have no possible bearing" on the claim or defense of a party. When
> the discovery sought appears relevant on its face, the party resisting the
> discovery has the burden to establish the lack of relevance by
> demonstrating that the requested discovery (1) does not come within the
> broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such
> marginal relevance that the potential harm the discovery may cause would
> outweigh the presumption in favor of broad disclosure. Conversely, when
> relevancy is not apparent on the face of the request, the party seeking the
> discovery has the burden to show the relevancy of the request.[34]

As the Court has noted, the scope of discovery under a subpoena is the same as party

discovery permitted by Rule 26.[35]  Thus, while the Court recognizes that "[c]ompliance with a

subpoena inevitably involves some measure of burden to the producing party, . . . the court will

not deny a party access to relevant discovery because compliance inconveniences a nonparty or

subjects it to some expense."[36]  As with Rule 26 discovery, one objecting to a subpoena has the

burden to show compliance would cause undue burden, typically by presenting an affidavit or

---

[33] *Id.; In re Coordinated Pretrial Proceedings in Petroleum Products Litig.,* 669 F.2d 620, 623
(10th Cir. 1982); *In re Subpoena Duces Tecum Directed To RCA Group,* No. 06–MC–230–
JWL–GLR, 2006 WL 3844791, at *3 (D. Kan. Dec. 28, 2006).

[34] 211 F.R.D. at 663 (internal citations omitted).

[35] *In re Syngenta*, 2017 WL 1106257, at *16 (citing *Schneider,* 2014 WL 4749181, at *2).

[36] *Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 WL 566988, at *3 (D. Kan.
Feb. 11, 2015) (citations omitted).

other evidentiary proof of the time and expense involved in responding to the subpoena.[37]
MedImpact offers an affidavit from in-house counsel who describes with specificity the logistics
of obtaining claims data and its client, pharmacy and other contract documents relating to drug
and device rates.[38]  Although the affidavit does not provide any cost information, the Court can
infer that identifying and collecting the data would impose additional costs on MedImpact.  The
Court finds the burden on MedImpact can be ameliorated by requiring Plaintiffs to share in the
cost of production.

Next, MedImpact objects that certain words and terms are vague and ambiguous,
including "concerning," "Pharmacy Benefit Manager," "related to," "pricing," "production,"
"marketing," "competing," and "potential."  Once again, these objections are boilerplate.  The
Court finds MedImpact's boilerplate objections lack support and do not adequately provide a
basis for the Court to grant them.[39]

MedImpact also objects to producing documents that Plaintiffs can obtain from
elsewhere.  In addition to this being an improper objection to a subpoena, the Court rejects
MedImpact's unsupported assertion that the subpoena calls for discovery Plaintiffs can otherwise
obtain.  To the extent Plaintiffs seek MedImpact's internal communications and deliberations, as
well as documents, agreements, and communications with non-party manufacturers, there would
be no duplication.  In addition, MedImpact is not in a position to know what other parties will

---

[37] *Id.*

[38] Affidavit of Victoria Wu, ECF No. 309-2 at 2.

[39] *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625-26 (D. Kan. 2014) (party asserting
unduly burdensome objection has burden to show facts justifying objection by demonstrating
time or expense involved is unduly burdensome).

produce, nor whether a particular document may differ in version or have additions or omissions when coming from two different sources.

MedImpact asserts the relevant period designated by Plaintiffs of January 1, 2007 to the present has been recognized by courts as unacceptable. The Court rejects the argument, as the time period covered by requests is fact-specific to each case. MedImpact provides no basis for assessing what length of time would be reasonable, nor does it provide a reason why the period Plaintiffs chose is unreasonable. The Court finds the relevant time period to be reasonable, as it is coextensive with when Mylan acquired and continues to hold the rights to EpiPen.

The Court overrules MedImpact's objections with the exception of the overbroad definitions described above.

## VII.    Court review

The Court has reviewed the individual requests to determine relevancy based on the claims and defenses to this action, and to assess whether Plaintiffs have taken reasonable steps to avoid imposing undue burden or expense as required by Rule 45(d)(1).

The Court notes that in response to each request, MedImpact's ultimate sentence began with the phrase "[s]ubject to and without waiving its general and specific objections, . . . ." The language MedImpact employs is that of a conditional objection, which this Court finds invalid and unsustainable.[40] Among the reasons is that objections followed by an answer "preserve nothing and serve only to waste the time and resources of both the Parties and the Court."[41]

---

[40] *See Sprint v. Comcast Cable Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684-JWL, 11-2685-JWL, 11-2686-JWL, 2014 WL 545544 (D. Kan. Feb. 11, 2014).

[41] *Id.* at *2 (quoting *Consumer Elecs. Ass'n v. Compras and Buys Magazine, Inc.*, No. 08-21085, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008)).

"[A]nswering subject to an objection lacks any rational basis.  There is either a sustainable objection to a question or request or there is not."[42]  Rules 33 and 34 demand an answer to an interrogatory, a statement that inspection or production will be permitted as requested, or an objection.  The discovery rules contemplate no other response.  While the Court recognizes the discovery tool at issue is a Rule 45 subpoena with document requests directed to a nonparty, there is no apparent reason to treat conditional objections any more favorably than when they are made in response to interrogatories or document requests between parties.  The Court already ruled on MedImpact's objections, so while the Court notes its rejection of conditional objections, it is not the basis of the Court's holding.  With the exception of Plaintiffs' definitions of "you" and "your," and of "Amedra," "Mylan," "Pfizer," "Sanofi," and "Shionogi," the Court finds no deficiency in each of the fourteen individual requests as written and will enforce the subpoena.

## VIII.  Costs

Finally, MedImpact asks the Court to order Plaintiffs to pay the costs of compliance if the Court grants the motion to compel.  Although the affidavit MedImpact submitted in support of the request does not contain specific enough information for the Court to determine the precise costs, the Court is cognizant that compliance with the subpoena may require – and likely has required – searches across a number of databases and locations.  The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party.  "[T]he court will not deny a party access to relevant

---

[42] *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 1627165, at *1 (M.D. Fla. April 29, 2011).

discovery because compliance inconveniences a nonparty or subjects it to some expense."[43]  In this instance, the Court infers from MedImpact's in-house counsel's affidavit that the search and production will entail significant expense.  Accordingly, the Court finds it appropriate for Class Plaintiffs to share in the cost of production and will require Class Plaintiffs to bear 50% of the costs MedImpact has incurred and will incur in timely producing documents responsive to the subpoena.

**IT IS HEREBY ORDERED** that Class Plaintiffs' Motion to Compel Compliance with the Subpoena Directed to Non-Party MedImpact Healthcare Systems, Inc. (ECF No. 276) is granted in part and denied in part.  The motion is granted with the exception of MedImpact's objection to the definitions of "you" and "your," and of "Amedra," "Mylan," "Pfizer," "Sanofi," and "Shionogi."  MedImpact Healthcare Systems, Inc. shall produce all documents, not previously produced, that are responsive to the subpoena within **21 days** of the date of this order.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[43] *Booth v. Davis,* No. 10-4010, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F. 2d 1036, 1040 (10th Cir. 1993)).