# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Parties Highmark, Inc., Health Care Service Corporation, Anthem, Inc. and Anthem Insurance Companies, Inc., and Amerigroup Corporation (ECF No. 400). Class Plaintiffs seek an order requiring Non-Parties Anthem, Inc. and Anthem Insurance Companies, Inc. (collectively "Anthem") and Amerigroup Corporation, to produce two categories of documents responsive to Plaintiffs' subpoenas served on December 11, 2017.[1] The Non-Parties oppose the motion. As set forth below, the Court will grant Plaintiffs' motion.

### I.  Relevant Background

Plaintiffs and the Non-Parties agree that following extensive conferring, the Non-Parties have produced documents responsive to the subpoenas with the exception of two categories. The Non-Parties have withheld these documents but offered to produce them if the protective order in

---

[1] Contrary to their inclusion in Plaintiffs' motion, Plaintiffs no longer seek relief against Highmark, Inc. or Health Care Service Corporation. *See* ECF No. Accordingly, the Court finds Plaintiffs' motion moot with respect to those two entities.

this case were modified to specify that only outside counsel could view the documents, with certain redactions. Plaintiffs were not satisfied with those conditions and filed the instant motion. Plaintiffs and the Non-Parties represent, and the Court finds, that they have complied with the requirements of D. Kan. R. 37.2.

## II.     Summary of the Parties' Arguments

Plaintiffs argue the Non-Parties are improperly withholding relevant documents that, if produced, would be adequately protected under the terms of the existing protective order in this case.[2]

The Non-Parties argue they should not be required to disclose the two categories of documents they have withheld, both of which concern the processes and particulars of the Non-Parties' decision-making surrounding EAI formulary inclusion, exclusion, and placement. The categories are as follows: (1) "Anthem's clinical review summaries and value assessment committee reports, which contain Anthem's internal reasoning regarding which EAI devices to place on Anthem's formularies;" and (2) "Anthem and Amerigroup spreadsheets containing their proprietary internal financial projections of the costs of offering particular EAI devices on their formularies."[3] The Non-Parties describe the documents in these categories as highly sensitive trade secrets because they reveal the Non-Parties' financial projections, internal methodology, and decision-making process.

## III.    Legal Standard

---

[2] Since this motion was filed, the Court has twice amended the protective order. The current version, the Third Amended Stipulated Protective Order, is ECF No. 556.

[3] ECF No. 426 at 3.

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[4] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[5]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[6] Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[7] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[8]

"The scope of discovery under a subpoena is the same as party discovery permitted by

---

[4] Fed. R. Civ. P. 45(d)(1).

[5] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[6] The Non-Parties have not filed a motion to quash the subpoena in this or any other federal district court.

[7] Fed. R. Civ. P. 45(d)(3)(A).

[8] Fed. R. Civ. P. 45(d)(3)(B).

Fed. R. Civ. P. 26."[9] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[10] Information still "need not be admissible in evidence to be discoverable."[11] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[12] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[13] Relevancy determinations are generally made on a case-by-case basis.[14]

Trade secrets and similar confidential information are not afforded absolute privilege.[15] However, under Federal Rule of Civil Procedure 26, for good cause shown a court may "issue an

---

[9] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[10] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[11] Fed. R. Civ. P. 26(b)(1).

[12] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[13] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[14] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[15] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007).

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."[16] A person seeking to resist disclosure must (1) establish that the information sought is a trade secret or other confidential research, development, or commercial information, and (2) demonstrate that its disclosure might be harmful.[17] If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.[18] Finally, the court must balance the need for the trade secrets against the claim of injury resulting from disclosure.[19] If the requesting party demonstrates both relevancy and need, the trade secrets should be disclosed unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.[20]

**IV.    Relevancy**

The Non-Parties argue that because Plaintiffs have not explained why the Non-Parties' internal projections are relevant to their antitrust claims, Plaintiffs' motion should be denied. The Court disagrees with this statement of the relative burdens. The relevancy of the requested information is readily apparent, and indeed the Non-Parties implicitly acknowledge as much in

---

[16] Fed. R. Civ. P. 26(c)(1).

[17] *MGP*, 245 F.R.D. at 500.

[18] *Id*.

[19] *Centurion Indust., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).

[20] *Id.* at 326.

their description of the documents they are withholding.  In their words, "the Non-Parties, directly, or through pharmacy benefit managers, negotiate the prices of the EAI devices with the EAI Manufacturers.  The documents the Non-Parties are withholding include their internal projected costs and savings with respect to the EAI devices."[21]  Even more to the point, the Non-Parties assert the "documents disclose the Non-Parties' internal financial projections, deliberations, and strategies concerning the very EAI devices at issue in this litigation."[22]  The Court finds the requested documents are relevant to Plaintiffs' claims.

## V.     The Non-Parties' Claimed Trade Secrets

Under the applicable standard, a person seeking protection must first establish that the information sought is indeed a trade secret and that disclosure of the information could be harmful.  The latter requires demonstration that disclosure "would 'result in a clearly defined and very serious injury,' such as showing the competitive harm that would befall it by virtue of the disclosure."[23]  To establish such injury, the person seeking protection must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[24]

The Non-Parties assert that Mylan and Syngenta could use the Non-Parties' trade secrets "to negotiate higher prices from the Non-Parties for their products, which would be passed along

---

[21] ECF No. 426 at 6.

[22] *Id.* at 2.

[23] *In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1106257, at *12 (D. Kan. Mar. 24, 2017) (quoting *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 249 (D. Kan. 2010)).

[24] *Syngenta*, 2017 WL 1106257, at *12 (quoting *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

to the Non-Parties' members."[25]  Although they recognize their documents would be subject to attorneys' eyes only review, the Non-Parties object to the inclusion of those Mylan and Sanofi in-house counsel designated to participate in such reviews.  The Non-Parties assert that "in-house counsel tend to have fluid, general practices, and there is no guarantee that these in-house counsel would not in the future, negotiate, or assist in negotiating contracts based on the highly sensitive business information obtained from the Non-Parties."[26]  Finally, the Non-Parties argue that Plaintiffs' motion should be denied because they "face a serious risk that their trade secrets will be disclosed at trial."[27]

The Court finds the Non-Parties assertions lack the specificity required to demonstrate harm, and are instead conclusory and stereotyped.  The Non-Parties offer no detailed explanation of how their information could be used against them to negotiate higher prices, and the conditional nature of this assertion does not support a finding that disclosure would likely result in harm to the Non-Parties.  Regarding the veiled accusations against in-house counsel, the Court does not share the Non-Parties' skepticism. Moreover, the Court presumes these lawyers' compliance with their respective oaths and adherence to their ethical obligations.  And finally, the Non-Parties' conclusory statement regarding the introduction of evidence at trial is bereft of any information demonstrating the likelihood of a clearly defined, serious injury.  In sum, the Non-Parties have not met their burden to show a particularized, clearly defined, and serious

---

[25] ECF No. 426 at 5.

[26] *Id.* at 6.

[27] *Id.* at 8.

injury that would befall them through disclosure of the two categories of documents they have withheld.

## VI.   Costs

The Non-Parties ask the Court to order Plaintiffs to pay the costs of compliance if the Court grants the motion to compel.[28]  Although the Non-Parties have not submitted an affidavit in support of their request, they state they have incurred at least $25,447 in costs and fees through March 1, 2018, and if the Court grants their request for costs, they will file a separate application with supporting documentation.[29]  The Court is cognizant that compliance with the subpoenas has required the Non-Parties to search for a variety of information spanning a number of years.  The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party.  "[T]he court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[30]  In this instance, the Court will hold in abeyance its ruling on

---

[28] The Non-Parties also filed a Cross-Motion for Costs and Fees Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(ii) (ECF No. 427).  Their Cross-Motion is nearly identical to their response to the instant motion, and neither attaches an affidavit setting forth the expenses the Non-Parties have incurred or are likely to incur in producing the subpoenaed documents.  Because the Court will address the issue of costs in connection with this motion, the Court will enter an order finding the Non-Parties' Cross-Motion moot.

[29] In the reply filed in support of their Cross-Motion, the Non-Parties state they incurred another $19,255.22 in fees and costs in March, bringing the total costs of compliance with the subpoenas to $44,672 (ECF No. 450 at 5 n.3).  There is no indication the Non-Parties produced any additional documents during March, so the additional amount incurred must consist of attorneys' fees related to the instant motion and the cross-motion.  If the Court does order Plaintiffs to share in the response and production costs, the Court will not require Plaintiffs to pay any of those fees.

[30] *Booth v. Davis,* No. 10-4010, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993)).

costs until the Non-Parties submit an affidavit setting forth the time and expense they have incurred in responding to the subpoenas.

**IT IS HEREBY ORDERED** that Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Parties Highmark, Inc., Health Care Service Corporation, Anthem, Inc. and Anthem Insurance Companies, Inc. and Amerigroup Corporation (ECF No. 400) is granted against Non-Parties Anthem, Inc., Anthem Insurance Companies, Inc., and Amerigroup Corporation. The motion is moot against Non-Parties Highmark, Inc. and Health Care Service Corporation. Anthem, Inc., Anthem Insurance Companies, Inc., and Amerigroup Corporation shall produce documents responsive to the subpoenas within **21 days** of the date of this order.

**IT IS FURTHER ORDERED** that if Non-Parties Anthem, Inc., Anthem Insurance Companies, Inc., and Amerigroup Corporation intend to pursue their request for costs in connection with responding to the subpoenas, they shall submit an appropriate affidavit with supporting documents no later than **10 business days** after entry of this order.

**IT IS SO ORDERED.**

Dated this 15th day of June, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge