**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation** | **MDL No: 2785**<br><br>**Case No. 17-md-2785-DDC-TJJ** |
| **(This Document Applies to All Cases)** | |

## MEMORANDUM AND ORDER

This matter is before the Court on Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party CVS Health Corporation (ECF No. 429). Class Plaintiffs seek an order requiring Non-Party CVS to produce documents responsive to Plaintiffs' subpoena served on December 11, 2017. CVS opposes the motion. As set forth below, the Court will grant in part and deny in part Plaintiffs' motion.

### I.   Relevant Background

On January 12, 2018, CVS served its objections and responses to Plaintiffs' subpoena, and on January 31 made a limited production of 28 responsive documents. Plaintiffs and CVS agree their counsel met and conferred on five occasions, four of which followed CVS's document production. Each side made one final proposal before Plaintiffs filed the instant motion. The Court finds that Plaintiffs and CVS have complied with the requirements of D. Kan. R. 37.2.

### II.   Summary of the Parties' Arguments

While having agreed to many of CVS's proposed limitations, Plaintiffs contend CVS has made improper boilerplate and blanket objections that should be overruled.  CVS describes the outstanding disagreements as relatively narrow, but argues it would suffer undue burden if forced to produce everything Plaintiffs demand.  CVS also objects to producing documents that predate 2014; objects to producing custodial emails and the full extent of requested data regarding rebates CVS has paid to its clients; seeks to redact certain identities and materials; seeks access limited to outside counsel for certain documents; and asks the Court to require Plaintiffs to pay its costs of compliance.

### III.  Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[1]  Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[2]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[3]  Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents.  If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash.  Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the

---

[1] Fed. R. Civ. P. 45(d)(1).

[2] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[3] CVS has not filed a motion to quash the subpoena in this or any other federal district court.

subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[4] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[5]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[6] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[7] Information still "need not be admissible in evidence to be discoverable."[8] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the

---

[4] Fed. R. Civ. P. 45(d)(3)(A).

[5] Fed. R. Civ. P. 45(d)(3)(B).

[6] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

burden to show the relevancy of the request.[10]  Relevancy determinations are generally made on a case-by-case basis.[11]

## IV. Relevancy

CVS maintains two narrow objections on relevancy grounds.  The first relates to the time period covered by the subpoena, which CVS argues should be limited to 2013 to 2017. CVS points out that Plaintiffs' consolidated amended complaint alleges CVS's PBM subsidiary Caremark began excluding EAIs from its formulary in 2014, and first excluded a drug of any kind from its formulary in 2013.  In their reply, Class Plaintiffs assert CVS selected 2014 as an arbitrary cutoff and did not deny making EAI formulary placement or incentive decisions prior to that year.  Although the Court has found 2007 to be a reasonable starting point with respect to subpoenas Plaintiffs have served on other non-parties with identical requests, in this instance the Court finds CVS has made the better argument.  As a non-party, CVS has no obligation to demonstrate when it began making formulary placement or incentive decisions.  Neither the allegations of Plaintiffs' consolidated amended complaint nor Plaintiffs' arguments in this motion support a compelling basis for CVS to produce documents in response to the subpoena that predate 2013.

CVS's second relevancy objection relates to (1) the identities of CVS's external Pharmacy and Therapeutics ("P&T") Committee members, and (2) material concerning drugs other than EAI devices.  CVS represents, through an affidavit of an in-house lawyer, that

---

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

4

members of the Caremark National P&T Committee are not employees of CVS but comprise an external advisory board of experts whose identity CVS guards for the purpose of avoiding conflicts of interest.[12] In fact, within Caremark fewer than twenty employees know the committee members' identity. Plaintiffs offer no argument in reply. The Court finds the identity of the external P&T Committee members is not relevant on its face, and Plaintiffs have not otherwise demonstrated its relevancy.

CVS argues it should be allowed to redact information about products other than EAIs from the documents it has agreed to produce. Because Plaintiffs make no claims concerning any other class of drug, CVS contends any of its internal discussions regarding other products is irrelevant. The Court disagrees with CVS's assessment, which is unsupported by anything other than its conclusory statement. The similarity or dissimilarity in CVS's handling of EAI devices and other products is clearly relevant to Plaintiffs' claims. And as Plaintiffs point out, CVS has the option of designating material as "Highly Confidential" pursuant to the Third Amended Stipulated Protective Order.

With these two exceptions, the relevancy of the remaining requested information is readily apparent. Plaintiffs allege CVS is a PBM conspirator in the alleged scheme described in their consolidated amended complaint. As such, the subpoena requests documents in four categories, relevant to the core allegations at issue and within CVS's possession. The categories include the following: (1) EAI-related incentives and rebates, formulary placement and decisions, attendant EAI-related incentive, consideration and cost data, and EAI-related budgeting plans and forecasting; (2) EAI market, competitive conditions, and demand; (3) EAI-

---

[12] *See* ECF No. 472-3 at 2-3.

5

related marketing and other presentation materials; and (4) identification of CVS personnel and departments responsible for EAI-related decisions. The Court finds the requested documents are relevant to Plaintiffs' claims.

## V.     Compromise positions

Following a series of meet and confer discussions, CVS offered to produce several additional categories of documents for a four-year time period with the redactions discussed above. Plaintiffs agreed with much of the proposal except for the five categories CVS refers to as the "Disputed Materials." Although Plaintiffs' motion asks the Court to overrule CVS's objections to the subpoena and compel CVS to produce all documents responsive to each subpoena request, such an all-or-nothing request ignores the progress counsel made during their meet and confer sessions, progress which Plaintiffs highlight in a letter they attach to their motion.[13] Neither CVS nor Plaintiffs disavow their willingness to abide by their respective proposals. In its response, CVS sets forth the basis for its disagreement with Plaintiffs regarding the Disputed Materials. The Court finds CVS's more targeted discussion presents a better approach, and will address the remaining issues as set forth in CVS's response.

### A.     Custodial emails

Plaintiffs want CVS to produce all communications dealing with the internal decision-making process with respect to EAI drug device formulary placement from 2007 to the present. In response to CVS's objection, Plaintiffs agreed to narrow the search by allowing CVS to designate three specific positions or roles (i.e. chairperson, secretary, etc.) on the P&T Committee and Formulary Placement Committee who play a substantial role in the internal

---

[13] *See* ECF No. 429-5.

decision-making process for formulary placement or exclusion of particular EAI drug devices. Plaintiffs also proposed search terms for CVS to run for these custodial roles.[14]

CVS contends Plaintiffs have failed to articulate what information they may obtain from this search that would not be revealed in searching non-email documents. The answer is self-evident: emails reveal direct internal communications not found elsewhere. CVS further states that Plaintiffs' compromise proposal would cost CVS at least $100,000.[15] While this seems a remarkably high cost to conduct the search, the Court finds Plaintiffs' proposal to be a reasonable and proportional approach to obtaining relevant information. If Plaintiffs maintain their interest in these documents to the extent they are willing to pay a share of the actual reasonable costs CVS incurs in producing them,[16] the Court orders CVS to search for and produce the documents according to Plaintiffs' proposal.

### B. "Client-facing" rebate data

CVS asserts burdens associated with searching for data about rebates CVS pays to its insurance plan clients, which it refers to as "client-facing" rebates, will require CVS to limit the search to its ten largest insurance plan clients. CVS contends that in 2017 its top ten clients accounted for more than 31 million covered lives, or nearly half of the approximately 64 million total covered lives for whom Caremark administered benefits including a rebate component and

---

[14] The search terms are EpiPen*, Epi-Pen, epinephrine, EAI, autoinject*, auto-inject*, Auvi, Auvi-Q, e-cue, Twinject, Adrenaclick, and Allerject. *Id.* at 7.

[15] *See* ECF No. 472 at 7, 472-1 at 3.

[16] The Court suspects CVS's costs will be less than projected because their search has been narrowed to begin in 2013.

processed at least one prescription drug claim.[17]  CVS further explains that designing and effectuating searches for the remainder of its clients would require several people to work full-time for at least six months on nothing but that endeavor.[18]  In their reply, Plaintiffs offer no reason why CVS's proposal does not strike a reasonable balance between Plaintiffs' need for information and the cost and burden to CVS.  The Court therefore will permit CVS to limits its production of client-facing rebate data as proposed in its response.

### C. Outside attorneys' eyes only

CVS objects to the inclusion of designated in-house counsel as persons allowed to review attorneys' eyes only documents covered by the protections of the Third Amended Stipulated Protective Order.  CVS does not make its own argument, but adopts the argument offered by non-party Anthem.  The Court has rejected that argument[19] and likewise does so again.

## VI. Costs

CVS asks the Court to order Plaintiffs to pay the costs of compliance if the Court grants the motion to compel.  CVS has submitted an affidavit showing it has spent more than $20,000 producing documents, and negotiating and litigating the scope of the subpoena.  CVS also projects the costs it will incur if forced to search for and produce additional documents.  The Court is cognizant that compliance with the subpoena requires CVS to search for a variety of

---

[17] ECF No. 472-2 at 3.

[18] *Id.* at 4.  This estimate is for a search covering 2009-2017.  Although the Court has narrowed the production period to begin in 2013, the Court assumes for the purpose of argument that CVS would have to devote the resources of several people working full-time for at least three months.  This shortened time does not change the Court's view of the burden imposed on CVS.

[19] *See* Memorandum and Order, ECF No. 695 at 6-8.

information spanning a number of years.  The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party.  "[T]he court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[20]  In this instance, because CVS has provided detailed information describing the precise burdens and costs it will incur to which Plaintiffs offer no rejoinder, the Court finds it appropriate for Class Plaintiffs to share in the cost of production.  Accordingly, the Court will require Class Plaintiffs to bear 50% of the reasonable costs CVS incurs in timely producing documents responsive to the subpoena as ordered herein.

**IT IS HEREBY ORDERED** that Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party CVS Health Corporation (ECF No. 429) is granted in part and denied in part as described herein.  The documents at issue are those CVS identified as "Disputed Materials."  CVS shall produce the Disputed Materials with the following modifications.  CVS shall produce documents for the period 2013 to 2017; may redact from its production the identities of its external Pharmacy and Therapeutics Committee members; and may limit data it produces regarding "client-facing" rebates to its top ten insurance plan clients for each of the years 2013 to 2017, inclusive.  CVS shall produce documents responsive to the subpoenas within **21 days** of the date of this order.

**IT IS FURTHER ORDERED** that Class Plaintiffs shall bear 50% of the reasonable costs of CVS's timely production.

---

[20] *Booth v. Davis,* No. 10-4010, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993)).

**IT IS SO ORDERED.**

Dated this 20th day of June, 2018 in Kansas City, Kansas.

                                             Teresa J. James
                                             U. S. Magistrate Judge