IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: EpiPen (Epinephrine
      Injection, USP) Marketing,
      Sales Practices and Antitrust
      Litigation

MDL No: 2785

Case No. 17-md-2785-DDC-TJJ

(This Document Applies to All Cases)

## MEMORANDUM AND ORDER

This matter is before the Court on Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Express Scripts Holding Company (ECF No. 430). Class Plaintiffs seek an order requiring Non-Party Express Scripts to produce documents responsive to Plaintiffs' subpoena served on December 11, 2017. Express Scripts opposes the motion. As set forth below, the Court will grant in part and deny in part Plaintiffs' motion.

**I.    Relevant Background**

On January 9, 2018, Express Scripts served its objections and responses to Plaintiffs' subpoena, and later made a limited production of six documents totaling fifteen pages. Plaintiffs and Express Scripts agree their counsel met and conferred on five occasions, and each side made one final proposal before Plaintiffs filed the instant motion. The Court finds that Plaintiffs and Express Scripts have complied with the requirements of D. Kan. R. 37.2.

**II.    Summary of the Parties' Arguments**

In spite of the compromise positions each side has taken, in this motion Plaintiffs contend Express Scripts has made improper boilerplate and blanket objections that should be overruled.

Express Scripts describes the outstanding disagreements as relatively narrow, but argues the subpoena requests are facially irrelevant and disproportional as written and defends the specificity and appropriateness of its objections. Express Scripts also argues the existing protective order in this case does not adequately protect its confidential documents. Finally, Express Scripts asks the Court to require Plaintiffs to pay its costs of compliance.

**III.     Legal Standard**

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[1] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[2]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[3] Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[4] The rule also allows a

---

[1] Fed. R. Civ. P. 45(d)(1).

[2] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[3] Express Scripts has not filed a motion to quash the subpoena in this or any other federal district court.

[4] Fed. R. Civ. P. 45(d)(3)(A).

2

court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[5]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[6] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[7] Information still "need not be admissible in evidence to be discoverable."[8] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[10] Relevancy determinations are generally made on

---

[5] Fed. R. Civ. P. 45(d)(3)(B).

[6] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

a case-by-case basis.[11]

## IV. Relevancy

Express Scripts maintains two narrow objections on relevancy grounds. The first relates to the time period covered by the subpoena, which Express Scripts argues should be limited to 2013 to 2017. Express Scripts points out that Plaintiffs' consolidated amended complaint alleges that Mylan began to proactively pitch large rebates to PBMs in 2013, and that Express Scripts began excluding EAIs from its formulary in 2014. In their reply, Class Plaintiffs address only the allegations stated in their complaint against Mylan for conduct dating back to 2007, and make no additional factual allegations regarding Express Scripts. Although the Court has found 2007 to be a reasonable starting point with respect to subpoenas Plaintiffs have served on other non-parties with identical requests, in this instance the Court finds Express Scripts has made the better argument. As a non-party, Express Scripts has no obligation to demonstrate when it began making formulary placement or incentive decisions. Neither the allegations of Plaintiffs' consolidated amended complaint nor Plaintiffs' arguments in this motion support a compelling basis for Express Scripts to produce documents in response to the subpoena that predate 2013.

Express Scripts' second relevancy objection relates to emails Plaintiffs seek regarding formulary placement, which Express Scripts claims it should not have to produce because "[f]ormulary placement is decided in committee meetings–not emails–so an email search is unwarranted."[12] The Court is not persuaded by this argument. Internal communications concerning formulary placement are relevant and discoverable.

---

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] ECF No. 468 at 9.

With the exception of the objection to pre-2013 documents, the relevancy of the remaining requested information is readily apparent. Plaintiffs allege Express Scripts is a PBM conspirator in the alleged scheme described in their consolidated amended complaint. As such, the subpoena requests documents in four categories, relevant to the core allegations at issue and within Express Scripts' possession. The categories include the following: (1) EAI-related incentives and rebates, formulary placement and decisions, attendant EAI-related incentive, consideration and cost data, and EAI-related budgeting plans and forecasting; (2) EAI market, competitive conditions, and demand; (3) EAI-related marketing and other presentation materials; and (4) identification of Express Scripts personnel and departments responsible for EAI-related decisions. The Court finds the requested documents are relevant to Plaintiffs' claims.

V.     **Compromise positions**

Following a series of meet and confer discussions, Plaintiffs proposed to limit the subpoena as follows: (1) non-redacted committee meeting minutes and documents related thereto for Express Scripts committees involved in formulary placement of EAI-Devices from 2009 to the present, (2) internal communications of three committee member positions relating to the internal decision making process with respect to EAI Drug Device formulary placement from 2007 to the present, (3) claims data from 2007 to the present, (4) rebate agreements between Express Scripts and certain non-party manufacturers from 2007 to the present,[13] and (5) rebate data for EAI Devices from 2009 to the present.[14] In a counter proposal Express Scripts describes

---

[13] Express Scripts states that the only non-party rebate documents Plaintiffs request in their compromise offer are those agreements Express Scripts has with Amedra and Shionigi. ECF No. 468 at 8-9. Plaintiffs do not dispute the limitation.

[14] *See* ECF No. 430 at 3.

5

as "largely mirror[ing]" the compromise Plaintiffs suggested,[15] Express Scripts offered to produce only redacted minutes and related documents, rebate agreements between Express Scripts, Inc. or Express Scripts Senior Care Holdings, Inc. and two non-party manufacturers, and "claims level data that correspond to related data fields."[16] Although Plaintiffs' motion asks the Court to overrule Express Scripts' objections to the subpoena and compel Express Scripts to produce all documents responsive to each subpoena request, such an all-or-nothing request ignores the progress counsel made during their meet and confer sessions, progress which Plaintiffs frankly discuss in their motion. Neither Express Scripts nor Plaintiffs disavow their willingness to abide by their respective proposals.[17] In its response, Express Scripts defends its objections in the context of its proposal. The Court finds Express Scripts' more targeted discussion presents a better approach, and will address the remaining issues as set forth in Express Script's response.

### A. Custodial emails

Plaintiffs want Express Scripts to produce all communications dealing with the internal decision-making process with respect to EAI drug device formulary placement from 2007 to the present. In response to Express Scripts' objection, Plaintiffs agreed to narrow the search by allowing Express Scripts to designate three specific committee positions or roles (i.e.

---

[15] ECF No. 468 at 7.

[16] ECF No. 430 at 3.

[17] Thus, although Express Scripts objects the subpoena is facially overbroad by seeking materials from entities other than Express Scripts, Inc. (*see* ECF No. 468 at 10), the Court will consider the objection overridden by Express Scripts' offer to produce rebate documents from Express Scripts, Inc. and Express Scripts Senior Care Holdings, Inc. *See* ECF No. 430 at 3.

chairperson, secretary, etc.) on the P&T Committee, TAC, and VAC Committee who play a substantial role in the internal decision-making process for formulary placement or exclusion of particular EAI drug devices.[18] Plaintiffs also proposed search terms for Express Scripts to run for these custodial roles.[19]

Express Scripts contends Plaintiffs have failed to articulate what information they may obtain from this search that would not be revealed in searching non-email documents. The answer is self-evident: emails reveal direct internal communications not found elsewhere. Express Scripts further states that conducting the email search would cost Express Scripts at least $75,000.[20] While this seems a remarkably high cost to conduct the search, the Court finds Plaintiffs' proposal to be a reasonable and proportional approach to obtaining relevant information. If Plaintiffs maintain their interest in these documents to the extent they are willing to pay a share of the actual reasonable costs Express Scripts incurs in producing them,[21] the Court orders Express Scripts to search for and produce the documents according to Plaintiffs' proposal.

---

[18] Although in its response Express Scripts does not fully articulate its position with respect to its P &T Committee members, an affidavit it submits explains those individuals are outside independent board members whose identity Express Scripts keeps from virtually all of its employees. *See* ECF No. 468-1 at 4-5. The Court finds the identity of the external P & T Committee members is not relevant on its face, and Plaintiffs have not otherwise demonstrated its relevancy.

[19] The search terms are EpiPen*, Epi-Pen, epinephrine, EAI, autoinject*, auto-inject*, Auvi, Auvi-Q, e-cue, Twinject, Adrenaclick, and Allerject. ECF No. 430-5 at 4-5.

[20] *See* ECF No. 468 at 12, 468-1 ¶16.

[21] The Court suspects Express Scripts' costs will be less than projected because their search has been narrowed to begin in 2013.

### B. Outside attorneys' eyes only

Express Scripts objects to the inclusion of designated in-house counsel as persons allowed to review attorneys' eyes only documents covered by the protections of the Third Amended Stipulated Protective Order. Express Scripts states, in conclusory fashion, that it would suffer competitive harm if it had to share its highly confidential information with in-house counsel "as they may use the information to gain an unfair advantage in contract negotiations with Express Scripts."[22]

The Court finds Express Scripts' assertion lacks the specificity required to demonstrate harm, and is instead conclusory and stereotyped. Express Scripts offers no detailed explanation of how its information could be used against it to negotiate higher prices, and the conditional nature of this assertion does not support a finding that disclosure would likely result in harm to Express Scripts. Regarding the concerns raised about in-house counsel, the Court does not share Express Scripts' skepticism.[23] Moreover, the Court presumes these lawyers' compliance with their respective oaths and adherence to their ethical obligations. In sum, Express Scripts has not met its burden to show a particularized, clearly defined, and serious injury that would befall it through disclosure of documents pursuant to the Third Amended Protective Order.

## VI. Costs

---

[22] ECF No. 468 at 11.

[23] The Court has also reviewed the affidavit of Adam K. Fuemmeler, attached to Express Scripts' response (ECF No. 468-1), and finds that it lacks a factual basis to support the affiant's conclusory statements about the competitive harm the company would suffer if documents are disclosed to the Sanofi and Mylan in-house counsel identified in the Third Amended Protective Order.

Express Scripts asks the Court to order Plaintiffs to pay the costs of compliance if the Court grants the motion to compel. Express Scripts has submitted an affidavit showing it has spent more than $20,000 in legal fees and costs to serve objections, produce documents, negotiate and otherwise respond to the subpoena.[24] Express Scripts also projects costs in the range of $75,000 to $250,000 to search for and produce additional documents.[25] The Court is cognizant that compliance with the subpoena requires Express Scripts to search for a variety of information spanning a number of years. The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party. "[T]he court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[26] In this instance, Express Scripts has provided detailed information describing the precise burdens and costs it will incur. Plaintiffs object that Express Script's declaration is speculative, premature, and does not address the reasonableness of its projected costs. While the Court finds it appropriate for Class Plaintiffs to share in the cost of production, such payment will of course be limited to Express Script's actual and reasonable costs in producing documents pursuant to this order.[27] Accordingly, the Court will require Class Plaintiffs to bear 50% of the reasonable costs Express Scripts incurs in timely producing documents responsive to the subpoena as ordered herein.

---

[24] ECF No. 468-2 at 2.

[25] ECF No. 468-1 at 7.

[26] *Booth v. Davis,* No. 10-4010, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993)).

[27] As the Court has pointed out, Plaintiffs may choose to further modify their requests to lessen their payment.

**IT IS HEREBY ORDERED** that Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Express Scripts Holding Company (ECF No. 430) is granted in part and denied in part as described herein. The documents at issue are those described in Class Plaintiffs' proposal, modified as follows: (1) non-redacted committee meeting minutes and documents related thereto for Express Scripts committees involved in formulary placement of EAI-Devices from 2013 to the present, except that Express Scripts may redact from its production the identities of its independent Pharmacy and Therapeutics Committee members, (2) internal communications of three committee member positions relating to the internal decision making process with respect to EAI Drug Device formulary placement from 2013 to the present, (3) claims data from 2013 to the present, (4) rebate agreements between Express Scripts, Inc. and Express Scripts Senior Holdings, Inc. and Amedra Pharmaceuticals, LLC or Shinogi, Inc. from 2013 to the present, and (5) rebate data for EAI Devices from 2013 to the present. Express Scripts shall produce documents responsive to the subpoenas within **21 days** of the date of this order.

**IT IS FURTHER ORDERED** that Class Plaintiffs shall bear 50% of the reasonable costs of Express Scripts' timely production.

**IT IS SO ORDERED.**

Dated this 3rd day of July, 2018 in Kansas City, Kansas.

*Teresa James*
Teresa J. James
U. S. Magistrate Judge