<pre>
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF KANSAS
 2

 3   IN RE:  EPIPEN                 Docket No. 17-md-2785
     (Epinephrine Injection, USP)
 4   Marketing, Sales Practices
     and Antitrust Litigation
 5                                  Kansas City, Kansas
                                    Date:  08/09/2018
 6

 7   ..........................

 8        TRANSCRIPT OF TELEPHONE STATUS CONFERENCE

 9                       BEFORE

10        THE HONORABLE DANIEL D. CRABTREE
          UNITED STATES DISTRICT COURT JUDGE
11                  (listen in only)

12        THE HONORABLE TERESA J. JAMES
          UNITED STATES MAGISTRATE JUDGE
13

14   APPEARANCES:

15   For the Class Plaintiffs:

16   Rex A. Sharp                   Warren Burns
     Ryan C. Hudson                 Amanda Klevorn - LA
17   Rex A. Sharp, PA               Burns Charest, LLP
     5301 W. 75th Street            900 Jackson Street
18   Prairie Village, KS 66208      Suite 500
                                    Dallas, TX 75202
19   Matthew S. Tripolitsiotis
     Bois Schiller Flexner, LLP     Alison Chase
20   575 Lexington Avenue           Keller Rohrback
     New York, NY 10022             1129 State Street
21                                  Suite 8
                                    Santa Barbara, CA
22                                  93101

23   For Sanofi-Aventis US, LLC Plaintiffs:

24   Yehuda L. Buchweitz
     Eric S. Hochstadt
25   Weil, Gotshal & Manges, LLP
     767 Fifth Avenue
     New York, NY 10153
</pre>

APPEARANCES (continued):

For Local 282 Welfare Trust Fund Plaintiffs:

Stuart A. Davidson
Brian O. O'Mara - CA
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432


For the Mylan Defendants:

Brian C. Fries                 Adam K. Levin
James Moloney                  David M. Foster
Lathrop & Gage, L.C.           Carolyn A. DeLone
2345 Grand Boulevard           Hogan Lovells US LLP
Suite 2800                     555 Thirteenth Street, NW
Kansas City, MO 64108          Washington, DC 20004

Philip A. Sechler
Ralph C. Mayrell
Robbins, Russell, Englert, Orseck, Untereiner
 & Sauber LLP
1801 K Street, N.W.
Suite 411L
Washington, D.C. 20006

For the King Pharmaceuticals, Inc., Meridian Medical
Technologies, Inc. and Pfizer Defendants:

Raj Gandesha
White & Case LLP
1221 Avenue of the
Americas
New York, NY 10020

Joseph M. Rebein
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108

1                           INDEX

2    Motion for Protective Order Quashing          8
     Coury's Deposition

3    Brandicourt Deposition                        13

4    Briefing Schedule on Motions to Compel        17
     Mylan's Board Documents

5    Nuvigil                                        21

6    Deposition Update                             28

7    Mylan 30(B)(6) Deposition Objections          44

8    Briefing Schedule for Motion for Extended     54
     Hours for Bresch Deposition

9    Class Plaintiffs' Issues With Mylan           63
     Privilege Log

10   RFP 75                                         79

11   RFP 31 and Fair Competition Policies          83

12   Interrogatory Responses                       91

13   Confidentiality Designations                  92

14   Mylan's Issues With Sanofi Discovery          94

15   Motions for Remand                            94

16   Third Party Discovery Motions                 95

```
 1                    (Court called to order.)
 2               MS. KUHL:  All right.  Everyone, this is
 3    Carol Kuhl with Judge James' chambers.  I'm just going
 4    to call out who I have listed to speak and then we'll go
 5    from there, please.  Mr. Levin.
 6               MR. LEVIN:  Good morning.
 7               MS. KUHL:  Mr. Foster.
 8               MR. FOSTER:  Good morning.
 9               THE COURT:  Good morning.  Ms. DeLone.
10               MS. DELONE:  Good morning.
11               MS. KUHL:  Hello.  Mr. Sechler.
12               MR. SECHLER:  Yes, I'm here, good morning.
13               MS. KUHL:  Thank you.  Good morning.
14               Mr. Mayrell.
15               MR. MAYRELL:  Good morning.
16               MS. KUHL:  Good morning.  Mr. Burns, you're
17    on the line.
18               Brian O'Mara.
19               MR. O'MARA:  I'm here.  Thank you.
20               MS. KUHL:  Thank you.  Alison Chase.
21               MS. CHASE:  I'm here.  Good morning.
22               MS. KUHL:  Good morning.  Ryan Hudson.
23               MR. HUDSON:  Hi, Carol.  Good morning.
24               MS. KUHL:  Good morning.  Stuart, you're on.
25               Tripolitsiotis.
```

```
 1                   MR. TRIPOLITSIOTIS:  That was beautiful.
 2    Thank you.  Good morning, Carol.
 3                   CAROL KUHL:  Oh, good.  Thank you.
 4                   Amanda, are you on, Klevorn?
 5                   MS. KLEVORN:  Yes, I'm here.
 6                   MS. KUHL:  Thank you.  Eric, you're on and,
 7    Mr. Buchweitz, you're on.
 8                   All right.  Is there anyone else that's
 9    going to speak?  All right.  Anyone else that just wants
10    to say you're here, you can.
11                   MR. GANDESHA:  Carol, this is Raj Gandesha
12    from White & Case on behalf of the Pfizer defendants.  I
13    don't plan to speak but happy to answer any questions if
14    the magistrate has any for me.
15                   MS. KUHL:  All right.  Thank you.
16                   MR. REBEIN:  Good morning.  Also Joe Rebein,
17    Shook, Hardy & Bacon.
18                   MR. FRIES:  Brian Fries and James Moloney
19    for the Mylan defendants also.
20                   MS. KUHL:  Good morning.  Thank you.
21                   MR. SHARP:  Rex Sharp on behalf of the
22    plaintiffs.  I don't intend to speak.
23                   MS. KUHL:  All right.  Thank you so much.
24    All right.  We're ready for the judge.  Thank you.
25                   THE COURT:  Good morning, everyone.
```

1    Judge James here and also my law clerk, Terese Schuele,

2    is here.  Thank you all for your good work on the status

3    reports which we have worked over, Terese and I have,

4    and I think we are up to speed on the issues and

5    concerns that the parties have wanted to bring before

6    the court.

7              I know we have a lot of folks on the line

8    here.  I have -- Carol, my courtroom deputy, was asking

9    you all to enter your appearances.  So I will just ask,

10   obviously you all have been through this before, so you

11   know that it's so critical, when we're doing these

12   things by phone conference, that everyone identify him

13   or herself before speaking.  And also I'd ask that you

14   conduct yourselves as if being deposed and have a

15   thinking pause before responding to any questions to

16   allow me to jump in if there's anything I want to raise.

17             Also, I do want to note that Judge Crabtree

18   is on the line.  He's in his Topeka office.  So he is on

19   the line remotely as well and may have some comments

20   too, and I have spoken with him about some of the issues

21   that we will talk about today.  So I think we're all

22   teed up.

23             I have reviewed your agenda and -- and I

24   will follow that agenda.  I think it's helpful to have

25   that.  But if you will allow me just to maybe short

1  circuit some unnecessary arguments that I don't think I

2  need, I want to, in the order that they are listed in

3  your agenda, go ahead and rule on those items in the

4  order they appear in the agenda. So -- and then we'll

5  get back on track on the agenda and start with the first

6  issue which is the deposition update.

7          But as I said, I am prepared to rule on a

8  few things and let's go ahead and get those out of the

9  way so you all who are involved in those issues don't

10 have to be worrying about arguing those and we'll just

11 get them out of the way.

12         The first -- the first of those issues is

13 the Coury deposition, Robert Coury. Of course, the

14 court is familiar with issues related to Mr. Coury from

15 back at the time that there was argument, and ultimately

16 I entered an order designating him as the custodian in

17 the -- ESI custodian in the case.

18         The court has read the arguments in both

19 Sanofi's status report and Mylan's status report

20 regarding this issue and is aware that Sanofi has

21 noticed the Coury deposition. I'm aware of Mylan's

22 objections asserted in their status report. And the

23 court has reviewed Mylan's motion for a protective order

24 quashing Coury's deposition and memo in support of the

25 motion, Docket Entries 855 and 857. I have reviewed

1    thoroughly the memorandum, which is Docket 857, and I am

2    prepared to rule on the issue.  There's no need for the

3    filing of a response to the motion.

4              The motion -- Mylan's motion for protective

5    order quashing Coury's deposition is denied.  The court

6    finds that Coury is a named ESI custodian in the case.

7    He was CEO of Mylan at the time of many of the alleged

8    facts in the complaint and he's currently chairman of

9    the board.

10             The court finds that the e-mail cited in

11   footnote one to Sanofi's status report as well as

12   documents noted by the court in its order naming Coury

13   ESI custodian in this case -- in this case that Coury

14   does appear to have personal knowledge about facts

15   pertinent to the issues in this case that are not merely

16   duplicitous of information other witnesses in the case

17   may provide.

18             The court does not find Mylan's arguments

19   that plaintiffs' noticing of the Coury deposition is

20   intended to harasses Mr. Coury or create an undue burden

21   on Mr. Coury persuasive.  Accordingly, the motion to

22   quash is denied and the Coury deposition shall proceed

23   on August 29th as previously noticed by Sanofi -- by

24   plaintiffs.

25             The second --

1          MR. SECHLER:  Your Honor --

2          THE COURT:  Yes.

3          MR. SECHLER:  Hi, this is Phil Sechler on

4    behalf of Mylan.  If I may just make a couple comments

5    in response to Your Honor's ruling?

6          THE COURT:  Sure.

7          MR. SECHLER:  The first is I believe the

8    parties did discuss that the August 29th date was a

9    placeholder and, therefore, we would need to hopefully

10   work with Mr. Coury and plaintiffs to arrange something

11   that works for -- for everyone.  And I think that was

12   acknowledged between the parties in communications on

13   the side.

14          Moreover, Your Honor, I think, you know, we

15   do believe that this deposition is premature.  And I

16   know you saw that in our motion, so I don't mean to

17   argue anything that you've already considered and

18   disregarded.  But, you know, we did cite cases in our

19   motion that defer depositions of people like the

20   chairman until after, for instance, the CEO is deposed

21   or written interrogatories are served.

22          And yesterday there was a pretty major

23   announcement by Mylan that was very public, very big,

24   and that is that Mylan announced it is undertaking a

25   strategic review evaluating a wide range of alternatives

1    to kind of unlock the value of its global platform.

2    That was announced and it had a lot of press and it's

3    going to require a lot of Mr. Coury's time --

4    significant time in the very, very short term.

5            So, anyway, Your Honor, I would ask that

6    this decision be deferred until after further

7    depositions because we do not believe, as you know, Your

8    Honor, that there is a basis to find that Mr. Coury has

9    any kind of unique personal knowledge of key issues.

10           THE COURT:  Well, that request that the

11   decision be deferred is denied.  I've ruled and I'm not

12   going to reconsider that ruling.

13           As to the timing of the deposition, did

14   plaintiffs agree that August 29th was merely a

15   placeholder date?

16           MR. BUCHWEITZ:  Your Honor, this is Yehuda

17   Buchweitz from Weil for Sanofi.  That's true.  And --

18   and we're certainly willing to work with Mr. Sechler, or

19   whoever is designated on the Mylan side, as long as this

20   has -- and it must happen before the close of

21   coordinated fact discovery.  We've had some trouble, as

22   you know, with some scheduling issues and -- and I'm

23   very, very happy to talk to them about dates as long as

24   we get actual dates that work and that is within the

25   period for coordinated fact discovery.

```
 1              THE COURT:  All right.  And --
 2              MR. DAVIDSON:  Your Honor, this is Stu
 3   Davidson.  Can I just ask a question?  I hate to do
 4   this.  It's kind of a question to Mr. Sechler through
 5   Your Honor.
 6              So my question was:  My understanding, Phil,
 7   from the transcript of the earnings call was that a
 8   strategic review committee was formed of independent
 9   directors, that they are going to be guiding Mylan's
10   efforts at looking at strategic alternatives.  Is
11   Mr. Coury a member of that committee?
12              MR. SECHLER:  I can tell you that I talked
13   to Mr. Coury yesterday.  And because of that
14   announcement, he's going to be very, very busy.  I
15   cannot answer, Mr. Davidson, the details about who's on
16   the committee and who's not, but I can tell you that it
17   is a big deal for the chairman of the board.
18              THE COURT:  All right.  Well, I appreciate
19   Mr. Buchweitz's acknowledgement that August 29th is just
20   a placeholder.  I trust counsel to get together and
21   discuss a date for Coury's deposition.  But
22   Mr. Buchweitz accurately anticipated what the court was
23   intending to rule, which is Coury's deposition will be
24   taken in advance of that October 31st deadline for the
25   coordinated fact discovery.
```

1          You know, it's been known for a long time

2    that his deposition was desired in this case.  It's been

3    bounced around.  This cannot be a surprise.  I

4    understand he's a very busy man and there's a lot on his

5    plate, but this also is an important case and he's

6    somebody whose name has appeared and the court has

7    determined that he does have -- appears to have relevant

8    knowledge to the facts alleged in this case.  So he is

9    going to be deposed and he will be deposed before

10   October 31st.  So that will be my ruling.

11         Furthermore, I -- I -- I love that counsel

12   are going to confer and that you're willing to work

13   together on a deposition date, but that needs to happen

14   sooner rather than later.  So I want you to confer and

15   get back to me with your deposition dates at the

16   earliest possible time.  Let's set a deadline for that.

17         How soon, Phil and Buchweitz, can you -- or

18   whoever needs to be involved, can confer and agree on a

19   date before October 31st for Coury's deposition?

20         MR. SECHLER:  Your Honor, I will undertake

21   to do this at my very first priority after this

22   conference and get back to Mr. Buchweitz certainly

23   today.  I just -- the only question will be whether or

24   not I can get a hold of Mr. Coury, and I don't know

25   right now whether I'll be able to do that but -- but I

1   certainly --

2                THE COURT:  I appreciate that.  Good.

3                MR. SECHLER:  I won't hesitate at all.

4                THE COURT:  Okay.  Well, I will give you

5   until a week from today to get back to me or re-notice

6   the deposition, set a firm date for Coury's deposition.

7   If you get at loggerheads or if Mr. Coury does not

8   cooperate -- I shouldn't say that -- if Mr. Coury is not

9   able to visit with you all and set a date, contact my

10  chambers.  We'll set up a phone conference and I'll

11  order a date for a deposition.  So either notice of

12  that, of an agreed date for his deposition, and file

13  that notice by the 16th or contact my chambers and we'll

14  set up a conference call and I'll set the date.  All

15  right.

16               MR. SECHLER:  Thank you, Your Honor.

17               MR. BUCHWEITZ:  Thank you, Your Honor.

18               THE COURT:  Next issue I'm ready to rule on

19  conditionally I guess or not -- not fully resolve the

20  issue but to make a ruling is the Brandicourt

21  deposition.  With regard to Brandicourt, the court has

22  reviewed the status reports of Sanofi and Mylan on this

23  issue.  The court does note that the deposition is

24  noticed for September 24th and Sanofi's motion for a

25  protective order has been filed.  That's Docket Entry

1   846.   That docket entry -- that motion does not request

2   that the motion be quashed, although obviously the

3   filing of the motion stays the taking of the deposition.

4   That motion, though, was just filed two days ago on

5   August 7th.

6           Unlike Coury at Mylan, Brandicourt did not

7   come on the board as Sanofi's CEO until well after many

8   of the alleged facts and key events in this case.   And

9   he has not been designated as an ESI custodian in this

10  case.   The court will, therefore, wait to receive and

11  review Mylan's response to Sanofi's motion for

12  protective order before ruling on Sanofi's motion, which

13  is Docket 846.

14          However, I would like to expedite Mylan's

15  response deadline.   Again, that motion was filed on

16  August 7th.   Phil, or whoever's speaking on behalf of

17  Mylan, I presume that wouldn't be a lengthy response.

18  Would you all be able to file your response by August

19  15th?

20          MR. SECHLER:   That's -- yes, Your Honor.

21          THE COURT:   Okay.   The response will be due

22  then August 15th and no replies will be considered.

23          MR. SECHLER:   Your Honor, there's one thing

24  that happened fairly recently that I think affects what

25  you just said that if you wouldn't mind me having a

1    minute.  It's a very recent development.

2              THE COURT:  Go ahead.

3              MR. SECHLER:  Thank you, Your Honor.  So on

4    the Brandicourt issue and the timing issue that you

5    pointed out, Sanofi, on July 31st, increased the damages

6    they claim in this case from a billion dollars to two

7    and a half billion dollars without -- that's before

8    trebling.

9              And that astronomical figure is based on a

10   theory that Sanofi's decision to return the rights to

11   Auvi-Q, which was made in November of 2015 right after

12   the total recall, right after a budget review and by the

13   European executive committee, their whole theory is it

14   was all Mylan and that's why it returned rights to

15   Sanofi.  It didn't have anything to do with our high

16   cost of goods sold, our low profit margin or the total

17   recall that cost us over a hundred million dollars.

18   This was all a decision that was made in Europe by

19   Mr. Brandicourt in the executive committee in the period

20   when he was on board.

21             So their statement in their paper which I

22   saw that all the damage was done by 2014 is completely

23   false according to their own theory of the case.  And I

24   think it would be patently unfair not to be able to get

25   discovery into the European decision-makers who made the

1    decision that is such a big part -- it's probably the

2    most significant single critical decision in this case

3    that was made.  And that's what our response will be

4    focused on, Your Honor, is the importance of that along

5    with all the other things we know Mr. Brandicourt was

6    involved in, none of which we knew, Your Honor, when we

7    had the discussion in March about him being a custodian.

8              THE COURT:  Okay.  Thank you, Phil.

9              Well, definitely I will consider whatever

10   you put in your response.  I appreciate the -- the

11   argument you're making.  And given that, Phil, does

12   August 15th give you enough time to put together your

13   response?

14             MR. SECHLER:  Well, Your Honor, I am just

15   sitting here next to my associate who looked at me with

16   funny eyebrows, so if we could have until Friday, that

17   would be appreciated.

18             THE COURT:  The 17th?

19             MR. SECHLER:  Yes.

20             THE COURT:  Okay.  Sold.

21             MR. BUCHWEITZ:  Your Honor --

22             THE COURT:  Yeah, and we may need a reply on

23   this one but -- if that's what you were going to raise,

24   Mr. Buchweitz.

25             MR. BUCHWEITZ:  That's what I was going to

1    raise, Your Honor.

2            THE COURT:  All right.  Let's do that in

3    short order though.  How quickly -- let's do name that

4    tune.  How quickly can you reply to the August 17th

5    response?

6            MR. BUCHWEITZ:  Let's see, the 17th is a

7    Friday.  One week?

8            THE COURT:  Okay.  August 24th then for

9    Sanofi's reply.

10           MR. BUCHWEITZ:  And just for the record, we

11   disagree with everything he just said and so does the

12   record, but we don't need to get --

13           THE COURT:  I'm sure you do.  All right.

14   That's why we have briefing.

15           MR. BUCHWEITZ:  Thank you, Your Honor.

16           THE COURT:  All right, guys, sure.

17           Okay.  All right.  The next thing I'm ready

18   to rule on is on plaintiffs' list of issues.  It's their

19   request for briefing schedule for motions to compel

20   having to do with Mylan's board documents, the Bresch

21   documents, and Coury documents.  I'd like to go ahead

22   and set a briefing schedule.  And I know that

23   plaintiffs' request in their status report was that we

24   set that status report -- or set that briefing schedule

25   so that any argument necessary could be heard at our

 1    September status conference.  So in order to accomplish

 2    that, I -- I'm going to have to set an early -- a

 3    relatively early motion to compel deadline for

 4    plaintiffs because also Judge Crabtree and I have talked

 5    about a date for our next status conference.  We want to

 6    have that in the first of two weeks of September, in

 7    early September.

 8              The only time Judge Crabtree and I both have

 9    available, I think, during that time period is September

10    13th in the afternoon.  So I hope that works for most

11    people.  We are going to set that date because that's

12    the only date available.  I'm presuming that there are

13    enough counsel involved for each party in this case that

14    everybody can either have somebody present or arrange

15    their schedule to have somebody participate that day.

16    So we will set that next status conference, the

17    September status conference, for September 13th at 1:30.

18              I suspect we will need to have it in person.

19    We will do like we did for this status conference and

20    schedule it for in-person.  In the unlikely event that

21    things go swimmingly and there aren't issues where I

22    need to hear argument in person or think that will be

23    helpful, then if that happens we can switch it to a

24    phone conference.  But, as I said, with regard to

25    today's conference, you should plan as if it's going to

1    be in person.  All right.  Questions regarding that?

2         Okay.  Then backing up from that, I am aware

3    that in Docket Entry 831 we granted the parties' joint

4    request to extend a deadline for filing any motions to

5    compel on outstanding discovery or with regard to

6    privilege log issues to August 31st.  In order to get

7    these issues that plaintiffs have raised with regard to

8    these three categories of documents, I think we're going

9    to have to set plaintiffs' motion to compel deadline a

10   little earlier -- a few days earlier.  For plaintiffs,

11   could you file any motion to compel with respect to

12   those documents by August 27th?

13        MS. CHASE:  Yes.  I'm sorry, this is Alison

14   Chase from Keller Rohrback.  That August 27th date works

15   for us --

16        THE COURT:  Very good.

17        MS. CHASE:  -- the class plaintiffs.

18        THE COURT:  Okay.  Great.  And then we will

19   have defendants' response due September 5th.  Then your

20   status reports for the September 13 conference we will

21   set September 7th for that deadline for all status

22   reports, and then September 11th for your agenda to us

23   for items on the September 13th status conference.

24        All right.  Any questions or concerns about

25   that scheduling?

1              MR. LEVIN:  Your Honor, this is Mr. Levin

2    for Mylan.

3              THE COURT:  Yes, hello.

4              MR. LEVIN:  Good morning.  Just a brief

5    clarifying question:  Because there are a number of

6    topics on the agenda for today's conference that relate

7    to briefing schedules, what topics is the court

8    envisioning for the briefing schedule that Your Honor

9    just set?

10             THE COURT:  Well, we're going to talk about

11   various of them individually I think, Adam, as we come

12   to them on the schedule, but you're contemplating

13   accurately.  But for some of the others I'm also going

14   to ask counsel if they can follow the same sort of

15   briefing schedule that we are for this one.

16             Yeah, this is just my current ruling though

17   on the motion to compel just has to do with plaintiffs'

18   request for a briefing schedule as to the motion to

19   compel with regard to Mylan's board documents, the

20   Bresch documents, and the Coury documents.

21             MR. LEVIN:  Great.  Thank you.

22             THE COURT:  Make sense?

23             MR. LEVIN:  It does.

24             THE COURT:  Okay.  All right.  And I guess

25   maybe now is a good time to drop this footnote, which is

1    I know Judge Crabtree and I both are -- are continuing

2    to respect and apply and intend to go with the October

3    31st coordinated fact discovery deadline, and you can

4    tell that from my rulings already so far today.  So we

5    will be proceeding on that basis and that's why counsel

6    should expect the briefing on any motions to compel

7    going forward to be expedited in order to get those

8    issues resolved so that documents and privilege logs and

9    relevant information is produced in time to comply with

10   the October 31st discovery cutoff.

11           All right.  The next issue that I'm prepared

12   to rule on has to do with Nuvigil, am I saying that

13   correctly, the Nuvigil documents?

14           MR. SECHLER:  Yes, Your Honor.

15           THE COURT:  This one is an easy one.

16   Plaintiffs, the status reports indicate, had agreed to

17   waive production of these documents until after a ruling

18   on defendants' motion to dismiss claims involving those

19   alleged in the complaint pay -- Mylan's pay for delay

20   settlement with Teva and the consideration for that

21   settlement allegedly being the delay of entry of Teva's

22   generic drug Nuvigil.

23           I have it on very good authority that that

24   claim or those claims will survive the motion to

25   dismiss, and that in the not too distant future an order

1    will be coming down to that effect.  So given that,

2    Mylan should proceed with producing responsive Nuvigil

3    documents that have been requested.

4              What is the status -- has there been a

5    response -- written response to a request for production

6    and are we ready for the production of those documents?

7    Where are we on that?

8              MR. FOSTER:  Your Honor, this is David

9    Foster for the Mylan defendants.  Good morning.

10             THE COURT:  Good morning.

11             MR. FOSTER:  So we have provided a written

12   response to the requests for production relating to

13   Nuvigil-related documents.  And I don't have it right in

14   front of me, but essentially we have agreed to produce

15   documents responsive to the request possibly subject to

16   some objections.  I would have to refresh my

17   recollection of that.  We have not produced those

18   documents to-date.  I think we -- we could -- we could

19   complete production of those documents within 30 days.

20             THE COURT:  Well, it will need to be sooner

21   than that because we'll want to have these issues before

22   us at the status conference on September 13th if there

23   are issues about withheld documents.  So --

24             MR. FOSTER:  Your Honor, if I may just

25   interject, this issue relates entirely to issues that

1   are non-coordinated class discovery issues.  And so

2   those issues are not subject to the October 31st

3   deadline.  Instead the deadline for that is June, 2019.

4   So there should be -- if we need to clear out our

5   schedules to accommodate the massive volume of work it

6   sounds look we all have ahead of us in the next couple

7   of months, this may be a good one to allow to play out

8   or over a more, you know, extended time frame.

9            THE COURT:  All right.

10           MR. FOSTER:  And thirty days --

11           THE COURT:  That sounds like a good point.

12           Do plaintiffs agree that this does not go to

13  the coordinated fact discovery, that the deadline is

14  October 31st?

15           MS. CHASE:  Your Honor, this is Alison

16  Chase.  It is a non-coordinated issue, but a number of

17  witnesses are going to be deposed before October 31st,

18  and so we would want the documents for those depositions

19  prior to October 31st.  And so it does seem like an

20  issue that does need to be resolved given the amount of

21  depositions.  I believe it was 11 over the next two to

22  three months that we have coming up.

23           THE COURT:  All right.  Well, I don't know

24  -- I mean, I've seen your noticed depositions.  I don't

25  know who's involved, who's in play.  But if we gave --

1    if we did give Mylan 30 days from today, say to

2    September 10th to produce those documents, could you

3    work around the depositions that you need to to get

4    those done after the documents are received?

5             MS. CHASE:  I would need to look, honestly,

6    a little more at specifically who's scheduled for when.

7    I think that August 31 would give them over three weeks.

8    Until the end of the month would be enough time to get

9    these done because these have been in -- under

10   discussion for months.  And I think that we have -- they

11   know the volume and I don't think it's a huge volume --

12            THE COURT:  Okay.

13            MS. CHASE:  -- but...

14            MR. FOSTER:  Your Honor --

15            THE COURT:  You all have been aware of this

16   for a long time.  Can you do it by -- can you produce

17   these documents by August 31st?

18            MR. FOSTER:  Your Honor, we could produce

19   them by October 31st but I would respectfully --

20            THE COURT:  August 31st.

21            MR. FOSTER:  I'm sorry, did I say -- I don't

22   know what I said.  But I think, you know, Your Honor, we

23   have been aware of this issue for a long time.  And we

24   were also relying on the class plaintiffs'

25   representations in a filing made with the court that

1   they would defer production of these until the motion to

2   dismiss ruling.  So, you know, it's not like we've been

3   sitting around reviewing these documents and analyzing

4   them.  We've been kind of setting that issue to the side

5   while we have been proceeding with everything else.

6           So I think October 31st is -- I'm sorry,

7   August 31st is a rather aggressive time to get, you

8   know, a whole set of documents that relate, frankly, to

9   a completely different settlement than the -- than what

10  has already been at issue here out.  But if that's -- if

11  you think that's important, we can make that happen.

12          MS. CHASE:  Your Honor, if I could add

13  one -- I'm sorry.

14          THE COURT:  Go ahead.

15          MS. CHASE:  I was just going to add that

16  it's not only that we have these depositions on all

17  issues occurring before October 31.  It's also we have a

18  very early class certification deadline.  And so June --

19  when we talk about June, the deadline that is, we have

20  settings coming very quickly in the next two months and

21  that's why we would ask for August 31.

22          MR. BURNS:  Your Honor, this is Warren

23  Burns.  If I may, and it sounds like the -- the

24  defendants can produce by August 31st, so I think that's

25  doable and we can make that happen.

1            But if, as we heard today, there are

2      discrete documents or types of documents, category of

3      documents that they are going to withhold, then why

4      don't we have that discussion now so that we can tee

5      that up indeed before the September status conference

6      because, you know, that's something where we can just be

7      notified and we can either agree or not.

8            THE COURT:  Well, that's really my concern

9      is -- is, you know, to the extent there are objections

10     and then we have to brief it, then we start getting

11     late.

12            So, David Foster, can we arrange something

13     where if you're going to have objections that you make

14     those objections or get those teed up so that they can

15     be addressed at the September 13th conference?

16            MR. FOSTER:  Certainly, Your Honor.  And I

17     think what I would point out there is I -- I do not

18     anticipate that that's going to be an issue in part

19     because we have made our responsive objections to these

20     requests already.

21            The only issue was an issue of timing.  And

22     so the plaintiffs haven't raised any issues with respect

23     to our responses and objections on that.  So my -- my

24     thinking is that it must have been satisfactory to them.

25     And sitting here right now I actually can't think of

1   what limitations we had on that response.  So my

2   anticipation is that this is really more of an issue of

3   just actually executing the production than anything

4   else.

5              THE COURT:  Okay.  Good.

6              MR. BURNS:  Your Honor, we'll take a fresh

7   look.  And if there are any issues, we'll raise them

8   with defense counsel.  But if there are discrete

9   categories -- and there may not be.  Maybe I just

10  misheard.  But if there are discrete categories of

11  documents that are claim -- subjected to some claimed

12  privilege or some other objection, then hopefully in a

13  meet and confer process in the next week we can figure

14  that out and decide whether it's a fight we want to take

15  on or not.

16             THE COURT:  All right.  Well, I do want you

17  to meet and confer within the next week, so do that

18  about any -- any objections or issues with the

19  production.  So do that by a week from today.

20             And then, David, I will give you until

21  August 31st to produce the responsive documents.  That

22  won't really allow time for briefing if there are a --

23  motion to compel issues, but I will expect you to -- if

24  there are any issues, and I hope there aren't, with the

25  production of those documents, I will expect the parties

1    to raise them in detail in the status reports and expect

2    that, even without full briefing, they will be discussed

3    and probably I will rule on them at the September 13th

4    status conference.  All right.

5                    MR. BURNS:  Thank you, Your Honor.

6                    MS. CHASE:  Thank you, Your Honor.

7                    MR. FOSTER:  Thank you, Your Honor.

8                    THE COURT:  Very good.  All right.  I think

9    then that takes care of the -- out of the two in the

10   beginning here.  So now we can go back and start through

11   the agenda with the remaining items listed.  I know the

12   first 1(a) in your agenda is a deposition update.  I

13   have reviewed what you provided in your status reports

14   which updates me on depositions that have been taken and

15   are scheduled.  Also, Terese has given me a very nice

16   summary and list of noticed depositions by each of the

17   -- each side.  And so I think I'm pretty up-to-date on

18   that.  I don't know we need to spend a lot of time on

19   updating me about deposition status.  But, you know,

20   each side can have a couple minutes if you'd like to

21   inform the court about status of depositions and we'll

22   start with class plaintiffs.

23                    MR. TRIPOLITSIOTIS:  Good afternoon, Your

24   Honor, Matt Tripolitsiotis on behalf of the class

25   plaintiffs.  From our point of view, as far as the

1   defendants taking a deposition of class plaintiffs,

2   what -- we've put up 20 or so of our class plaintiffs

3   to-date and each of them have shown to be excellent

4   class representatives who have been affected by the

5   defendants' conduct.  We've detailed some of their

6   testimony in the status reports.  I am not going to

7   burden the court with some of the quotes that are in

8   there but you can read them yourself.

9           I'll defer to some of my colleagues about

10  some of the offensive discovery that we've taken, but I

11  don't think there's a need to kind of go into each of

12  it.  We don't have any scheduling disputes that need to

13  be arisen.  And I'll just defer to the court unless you

14  have any questions.

15          THE COURT:  All right.  No.  Thank you,

16  Matt.  Very good.

17          Sanofi?

18          MR. BUCHWEITZ:  Thank you, Your Honor.  We

19  laid everything out that we wanted you to be aware of

20  regarding the status in our reports and we thank you for

21  reviewing it.  So we don't think that there's anything

22  that we need relief from you at this time.  Unless you

23  have questions, we're happy to move on.

24          THE COURT:  All right.  Very good.  Thank

25  you.  And then --

1            MR. DAVIDSON:  Your Honor, this is Stu

2   Davidson, if I could just interject for just a minute

3   just to let the court know that we are starting to kind

4   of tee up some of those non-coordinated issues with

5   Mylan.  Given our November 16th class certification

6   deadline, we're going to be kind of under a very tight

7   time frame to do some, clearly not all, non-coordinated

8   discovery between October -- the end of October -- end

9   of October and middle of November.

10           So what we have done is sent a draft

11  30(b)(6) notice to Mr. Sechler with our proposed topics

12  so that at least, you know, now in the beginning of

13  August Mylan can start thinking about which witnesses

14  they're going to put up, maybe try to figure out if

15  there are objections that we can resolve and hopefully

16  get those 30(b)(6) depositions done in those first two

17  weeks of November given the schedule that's in place.

18           And we're going to be doing the same thing

19  with Pfizer very soon, just so Mr. Gandesha knows that

20  that's coming down the pipeline.

21           THE COURT:  All right.  Phil, have you

22  received the missive that Stuart is mentioning?

23           MR. SECHLER:  I did, Your Honor.

24           THE COURT:  All right.  I'm sure you've been

25  thinking about that, laying awake at night thinking

 1   about that.

 2            MR. SECHLER:  I always enjoy getting e-mails

 3   from Mr. Davidson.

 4            THE COURT:  Okay.  Good.  All right.  Okay,

 5   Mylan.

 6            MR. SECHLER:  Yes, Your Honor, this is Phil.

 7            THE COURT:  No, go ahead.

 8            MR. SECHLER:  Thank you.  So this is Phil

 9   Sechler.  I have two points of update with respect to

10   depositions and then one very respectful request for

11   Your Honor.

12            In terms of the first update, I did want to

13   address the allegation in Sanofi's report that Mylan is

14   engaging in discovery abuse by dropping 30(b)(6) topics.

15   Your Honor, I personally have taken three of the four

16   30(b)(6) witnesses at deposition and so I take obviously

17   some personal issue with that statement because we're

18   working very hard to leave no stone unturned and doing

19   all the discovery we need.  It's quite grueling,

20   frankly.

21            And as you know, from the last hearing, we

22   had started out with a request that we get 21 hours for

23   30(b)(6) time.  We ended up compromising at 17 for all

24   our topics.  Even Mr. Buchweitz noted in the argument

25   before Your Honor last month that probably won't need

1    that much corporate testimony because we'll be deposing

2    people with knowledge in their individual capacity.  And

3    so that's exactly what we're doing.

4              We have seven depositions, 17 hours, and an

5    internal chart of how we're going to allocate it.  We

6    have four of the 30(b)(6) depositions down and 10 hours

7    down.  So we have three left with seven hours.  So we're

8    on track and we're doing as best we can.

9              But, you know, where we get individual

10   testimony from somebody like Mr. Borneman on the

11   prevalence of rebates in the industry, then we save the

12   30(b)(6) time.

13             Some witnesses are harder to control.  So

14   last week I took the deposition of Bryan Downey who

15   literally never answered a question or very rarely

16   answered a question without going on for a page or two

17   in his answer.  So I couldn't -- I was prepared to ask a

18   lot more of him than I ended up being able to because of

19   the style of the testimony that was presented.  But we

20   are working very hard.

21             And, finally, I should say one of the things

22   that Sanofi represented in that status report is just

23   false, that is that we somehow withdrew our damages

24   topic.  I put this on the record.  I had a discussion

25   with Mr. Buchweitz at the Patrick Barry deposition.

 1   Because of the witness's schedule, we agreed he would

 2   not be the damages witness.  And then I'm glad I did

 3   this on the record of that deposition.

 4            At page 6 it says, "MR. SECHLER:" -- that's

 5   me and Mr. Buchweitz -- "I just want it on the record

 6   that we had a conversation earlier that Sanofi would be

 7   designating another witness to cover Topic 22; correct?"

 8            "MR. BUCHWEITZ:  Yes."

 9            So we didn't withdraw that.  We are waiting

10   for a witness on that.  We are working very hard, and I

11   just don't think it helps to make those kinds of

12   accusations against each other.  That's point one.

13            Point two, Your Honor --

14            MR. BUCHWEITZ:  I'm sorry, can we -- we lost

15   a line for a couple minutes during what Phil said and

16   then we just got back on.  I just wanted to let everyone

17   know that.  And when he's done, we want to respond.

18            THE COURT:  Well, Phil, do you want to just

19   repeat that, the last -- well, I have notes here.  And

20   Phil is taking issue with you in your status report

21   basically claiming bad faith on Mylan's part with regard

22   to the 30(b)(6) deposition.  He's updated me on the four

23   that have been done.  The two now, there are times on

24   those 30(b)(6) depositions.  Phil says he's been doing

25   those as efficiently as he can and has been adjusting.

1   For example, witnesses like Mr. Downey gave extended

2   answers and so he had to cut back on some of the

3   questions he was going to ask him.  And he's saying he

4   doesn't think it's fruitful for those sorts of bad faith

5   sorts of arguments or statements to be made in status

6   reports.  And he also says that your statement about

7   withdrawing the damages witness is false and that he

8   quoted some deposition -- well, a deposition exchange

9   between you and Phil where basically you acknowledged

10  that they would be naming a different damage witness.

11          MR. HOCHSTADT:  Your Honor, this is Eric

12  Hochstadt from Weil.  I'm prepared to address that very

13  briefly for the court.

14          THE COURT:  Well, very briefly, yes.  Go

15  ahead.

16          MR. HOCHSTADT:  Very briefly.  I defended

17  James Borneman's 30(b)(6) deposition on the other

18  products Sanofi issue that Mylan obtained discovery on

19  and for pharmaceutical rebates generally in the

20  industry.  I prepared Mr. Borneman on that topic.

21  Mr. Sechler did not take that deposition.  At the end of

22  that 30(b)(6) deposition, those two topics on other

23  products and rebates generally in the pharmaceutical

24  industry were not asked about.  And I made a point on

25  the record that we deem those withdrawn because we

1    designated and took time to prepare this executive from

2    Sanofi on this topic.  And I'm happy to submit the end

3    of that transcript to the court if the court would like.

4              And then on damages, we updated our initial

5    disclosures before Mr. Downey's 30(b)(6) deposition,

6    which I defended, and Mr. Sechler chose not to ask any

7    questions about that topic and that was their choice.

8    But we certainly updated our initial disclosures before

9    Mr. Downey's 30(b)(6) and they had every opportunity to

10   ask that.

11             MR. BUCHWEITZ:  The other thing, Your Honor,

12   on this, what Phil said is true, that for Mr. Barry we

13   chose to defer Topic 22, but then we designated Bryan

14   Downey on that topic.

15             THE COURT:  All right.  Well --

16             MR. SECHLER:  And, Your Honor, I'll just

17   tell you, you guys will have -- I'm sorry.  Phil Sechler

18   here for Mylan.  And just responding to that last point,

19   Your Honor, Mr. Downey, as far as I know, was not

20   designated on the topic of damages in any of the

21   extensive communications we had by e-mail about that

22   deposition before that deposition.  So we didn't

23   withdraw it.  We don't believe we ever got a designee.

24             THE COURT:  Okay.  All right, guys, well,

25   look, it sounds like there may be some miscommunication,

1    there may be some misunderstanding about what deposition

2    topics are for 30(b)(6), what's been withdrawn, what's

3    on the table.  You know, I don't have enough in front of

4    me to make any decisions about that.

5               But I can say this:  You all are very

6    capable and I think you're honest and have integrity,

7    all of you involved in this matter.  I believe

8    everybody's trying to act in good faith.  But you need

9    to talk about these issues.

10              Just some of the brief discussion I have

11   heard here it sounds like there are some bubbling

12   concerns about what topics are to be covered or should

13   have been covered or are to be covered and what are not

14   and by which witnesses.  And the best thing to do is for

15   you all to get on the phone together and talk and get

16   those things nailed down so there aren't

17   miscommunications.

18              And, please, be careful in your status

19   reports.  To make that kind of accusations about

20   opposing counsel, I -- I mean, I don't want to see

21   veiled allegations without substance to them without

22   real evidence that there's bad faith involved.  You all

23   know to pick up the phone and talk to each other and try

24   to resolve these issues.  All right.

25              MR. SECHLER:  Your Honor, this is Phil

 1   Sechler.

 2              THE COURT:  You have a second -- yeah, you

 3   have a second point I think, Phil.

 4              MR. SECHLER:  Thank you, Your Honor, I did,

 5   yes.  So the other thing I just wanted to update the

 6   court on is we didn't use the status report to kind of

 7   update Your Honor on how the testimony has been.  Sanofi

 8   used one and a half pages to do that.  So I just have

 9   three quick points I wanted to make for the court to

10   describe the testimony that we believe we're getting

11   from the Sanofi depositions.

12              The first thing we've established is that

13   shortly after the launch of their product Auvi-Q, Sanofi

14   embarked on what they called an opportunistic premium

15   strategy where they kept the Auvi-Q price at a premium

16   to the EpiPen.

17              And I actually asked the head of the

18   business unit at the deposition:  "Why didn't you ever

19   set the WAC price of Auvi-Q lower than the price of the

20   EpiPen?"

21              And he looked at me and he said, "Why would

22   I do that?"

23              So that's point one.

24              Point two, Auvi-Q had very high cost of

25   goods sold and royalties which gave it a very low profit

1    margin.  So Sanofi --

2              THE COURT:  Yeah, that's --

3              MR. HOCHSTADT:  Confidential information on

4    a public line.

5              THE COURT:  Let Phil finish his statement.

6              MR. SECHLER:  Your Honor, I'll keep it very

7    general.  I'm not giving away anything specific other

8    than we believe the testimony is showing that Sanofi

9    knew they couldn't compete with Mylan in a price war.

10   And, in fact, there are slides, e-mails and all sorts of

11   things that show that.

12             Finally, I asked the 30(b)(6) witness from

13   Sanofi on the issue of rebates whether he could identify

14   a single rebate offer that was ever made by Sanofi to a

15   payor that was bigger than Mylan's and yet Sanofi lost

16   the contract, and he couldn't.

17             And so the bottom line, Your Honor, is we

18   believe the testimony is establishing that, to the

19   extent Auvi-Q was excluded from formularies, it was

20   entirely exclusion based on price.  It is not

21   anti-competitive conduct and, therefore, we do believe

22   this case should be and will be determined as a matter

23   of law.

24             So I just wanted to take that moment, Your

25   Honor.

1          And then for my last -- I did say I had one
2    respectful request for the court and it really arises
3    from the announcement of Mylan yesterday.  I know Your
4    Honor has ruled with respect to Mr. Coury.  We
5    understand that.  We will get back to the court very,
6    very quickly.
7          But I would like to request that in the
8    initial instance the deposition be limited to three
9    hours.  We don't think there's much they need to ask
10   Mr. Coury.  If the three hours that the court sets aside
11   is insufficient, of course that would be without
12   prejudice for an extension.  But I am concerned about an
13   entire day out of Mr. Coury's schedule and therefore
14   that's the request I have for the court.
15         THE COURT:  Do plaintiffs object to the
16   three-hour limit?
17         MR. BUCHWEITZ:  Yes, Your Honor, we do
18   object.  First of all --
19         THE COURT:  I don't want to hear argument on
20   that on the phone.  But in the same -- at the same time
21   you're discussing when the deposition will be held, I
22   want you to discuss whether something less than seven
23   hours can be agreed upon.  And if there's a dispute
24   about that, the same deadline will apply to you
25   notifying me so I can address it.

1        I do know that there is a deposition

2   protocol in this case that sets a general seven-hour

3   limit for witnesses.  So -- I think it will be Mylan's

4   burden to show that something less than that will be

5   sufficient for Mr. Coury and it should be limited to

6   something less than that.

7        But I want you all to confer about that and

8   see if -- if there is a limit of less than seven hours

9   that would be agreeable to everyone, recognizing that --

10  you know, everybody should keep in mind that they may

11  have a CEO or chairman of the board who is going to be

12  deposed at some point that they might not want to have

13  deposed for an extended period of time.  You know,

14  what's good for the goose is good for the gander.  So

15  think about it and confer.  All right.

16        MR. SECHLER:  We will, Your Honor.  Thank

17  you.

18        THE COURT:  Okay.  Does Pfizer want to say

19  anything about depositions?

20        MR. GANDESHA:  Your Honor, this is Raj

21  Gandesha.  No.  I'll just note that I think Mylan's

22  status report accurately conveys the defendants'

23  perspective on how the class plaintiffs depositions are

24  proceeding.  And I will add that I look forward to

25  receiving an e-mail from Mr. Davidson.  I appreciate his

1    heads-up.  Thank you.

2            THE COURT:  All right.  Thank you.  And kind

3    of while we're on that topic, it's my understanding

4    there are no -- no issues in dispute -- dispute with

5    regard to Pfizer that need to be addressed today.  Does

6    anybody disagree with that?  Okay.  Good.

7            You get a gold star today, Raj.

8            MR. GANDESHA:  Thank you, Your Honor.

9            THE COURT:  All right.

10           MR. LEVIN:  Your Honor, this is Mr. Levin,

11   if I may.  Just to pick up on the one, I think, open

12   deposition update issue we haven't talked about yet that

13   Mr. Gandesha just referenced, that's the deposition of

14   the named plaintiffs.  Not much to say here, but I do

15   think it's worth putting a marker down since we have

16   been taking upwards of 30 to 40 of those depositions

17   over the last couple of months.

18           To-date nearly one-third of the named

19   plaintiffs have now dropped their claims in this case.

20   Almost 18 plaintiffs were unwilling to be deposed or had

21   other issues and so dropped out of the case.  And I do

22   think that's -- that's just a point of information the

23   court should be aware of.

24           And I also just wanted to note, as we said

25   in our status report, without -- you know, we're not

1    going to make too much of this obviously at this time.

2    You know, the next big substantive issue that's on the

3    horizon for the class action case is, of course, class

4    certification, as Mr. Davidson mentioned before.  And I

5    just -- I didn't want to lose sight of that because we

6    spend all these status conferences talking so much about

7    substantive issues of liability and all the rest while

8    all these named plaintiff depositions are going on in

9    the background.

10            And, Your Honor and Your Honor, since I know

11   Judge Crabtree is on the line as well, suffice it to say

12   we think we're gathering substantial evidence on

13   individualized issues from damages to causation and

14   reliance and all the rest, clear showings of lack of

15   standing, lack of injury in the class that we think will

16   make it impossible for this case to ever be certified as

17   a class action.

18            So we don't really want to spend a lot of

19   time talking about that, but that's going to be a very,

20   very major issue on the horizon in this case depending

21   what happens with the motion to dismiss ruling.  And I

22   just wanted to take this opportunity to update the court

23   on what's going on in that regard.

24            MR. BURNS:  Your Honor, this is Warren

25   Burns, if I may.  We obviously are looking forward to

1    responding to whatever arguments the defendants may

2    throw at us but obviously are not unexpected.

3           I will just note, on behalf of our many

4    class representatives, this is a very unique case. This

5    is a case where, you know, basically the vast majority

6    of our witnesses or class reps are having to leave their

7    home. They're often sick people or are dealing with

8    sick people. They've put in an extraordinary amount of

9    time and energy and effort into this case. So I'm not

10   sure where these comments come about the number that

11   have withdrawn. And, Your Honor, knows this is a class

12   action. It's not unusual for class plaintiffs to

13   withdraw for various reasons.

14          But I just want to actually say that our

15   class representatives have done, you know, one heck of a

16   job and have put a lot of their time and energy into

17   this case and monitored its proceedings and are very

18   committed to it. And they're very committed to it

19   because they know that they represent people who have

20   been significantly injured by defendants' conduct.

21          And we look forward to responding to

22   defendants in whatever motion briefing they want to put

23   before us and we will do so aggressively and in the best

24   interests of our clients.

25          THE COURT: All right. Thank you, Adam and

1   Mr. Burns.

2            All right.  I think I've heard from

3   everybody on the deposition update.  So I -- the next

4   thing I show on the agenda, skipping down since I've

5   ruled on (b) -- 1(b) and (c), is 1(d), Mylan 30(b)(6)

6   deposition objections.  The plaintiffs, is that -- is

7   there an issue to be addressed today about this?  What's

8   the status of this issue?

9            MR. HOCHSTADT:  Your Honor, this is Eric

10  Hochstadt from Weil.  I'm happy to address it.  The one

11  discrete issue is with all the Mylan 30(b)(6)

12  depositions that are coming up for the second half of

13  August and September, Mylan's objected to producing

14  witnesses to give testimony from the company beyond

15  August 23, 2016, and the plaintiffs -- class plaintiffs'

16  and Sanofi's position is there's no basis for that

17  arbitrary cutoff.

18            Mylan itself, as is noted in the class

19  plaintiffs' status report in footnote two, had elsewhere

20  said how the 2016 to the present period is highly

21  relevant to this case in their motion to compel that

22  they filed against kaléo before the court.  And we think

23  this is very relevant to show the change in Mylan's

24  behavior after they were no longer competing in the EAI

25  market with Sanofi and to show what the market would

1    have looked like if Mylan had not bullied Sanofi out of

2    the marketplace and there continued to be competition

3    between them.

4          And just to give the court a quick example

5    of this arbitrary cutoff, you know, one topic common to

6    the -- coordinated to the class in Sanofi's case is the

7    school -- EpiPen4Schools programs where Mylan had an

8    express exclusivity provision in its contract.  In

9    September of 2016, the New York Attorney General

10   launched an investigation, and in that Mylan withdrew

11   that provision from their contract.  We would like to

12   know the circumstances in which Mylan withdrew that

13   provision.  And that arbitrary cutoff of August 23 would

14   prevent us from getting at that information which we

15   believe we're entitled to, just to give the court an

16   example.

17         And Mylan's position, as far as I understand

18   it, is that they tried to tie it to, well, Sanofi had to

19   produce its corporate witnesses for information from

20   2016 -- August 2016 to the present on the other four

21   products issue.  And as we've told Mylan, this is not

22   reciprocal because we're talking about the epinephrine

23   auto-injector market.  And we're happy if you want to

24   talk about Sanofi and Auvi-Q from 2016 to the present we

25   can, to the extent it's relevant, even though the rights

1   were returned to kaléo or Intelliject in early 2016.

2              And we reminded them that the court's order

3   in this case already limited the additional other

4   products discovery to 2012 to 2016.  And I won't rehash,

5   but the issue of, you know, we already put James

6   Borneman up as a witness -- company witness on this

7   topic and it wasn't addressed, and most -- two-thirds of

8   the Sanofi 30(b)(6) time is done already.

9              So we don't see a basis to tie or link these

10  two company depositions on this issue and we think there

11  is a real need for -- for this from the plaintiffs' side

12  and we'd be prejudiced without this current information.

13  There's no basis for Mylan's objection.

14              THE COURT:  Well, has this issue come up in

15  these depositions to-date?

16              MR. HOCHSTADT:  No, Your Honor, because the

17  Mylan 30(b)(6) depositions were all scheduled by Mylan

18  for the second half of August and September.  So we have

19  not taken any -- any company time yet -- well, with one

20  exception --

21              MR. SECHLER:  That's actually incorrect.

22              MR. HOCHSTADT:  -- with one exception, I was

23  just correcting the record, I forgot last week Mr. York

24  on one -- on one topic, the counterclaim allegation.  So

25  wasn't -- wasn't relevant to the -- the offensive side

1   of the case against Mylan.

2            THE COURT:   Okay.   Well, when are these

3   other Mylan -- 30(b)(6) depositions of Mylan witnesses

4   scheduled?

5            MR. HOCHSTADT:   Sure, Your Honor.   So they

6   are scheduled for -- we have Patrick Zinn is August 22,

7   Roger Graham is August 29.   So they're coming up in the

8   second half of August.   And then Jeff May, September 21.

9   But I would -- as Your Honor may recall from the prior

10  status conference on this, Roger Graham is the designee

11  on August 29 for the bulk of the 30(b)(6) topics.

12            THE COURT:   All right.   Well, you know,

13  there are a lot of issues raised in your comments, Eric.

14  I mean, a lot of new mutations with this issue.   So as

15  to what may or may not be relevant, it's impossible for

16  me to give you any guidance not knowing what -- what is

17  being sought, what is being -- what you're wanting to

18  ask.   You know, I can't rule on this day.   It's

19  impossible for me to do that, and really impossible for

20  me to give you any meaningful guidance.

21            I mean, there's a lot of difference between

22  August 2016, 2018, 2023.   There's a lot of difference

23  depending upon what the topic is.   So --

24            MR. HOCHSTADT:   Your Honor --

25            THE COURT:   -- if there are issues to be --

1   that are going to come up in these depositions, you're

2   going to have to file a motion to ask me to -- and we're

3   going to have to brief these issues about what the

4   specific issues and areas and topics are before I can

5   rule on what may or may not be allowed.

6                MR. HOCHSTADT:  Understood, Your Honor.

7   Given the dates that have taken some time to get

8   scheduled here, is it possible that we could submit

9   short letter briefs in sort of a one-week time?

10               THE COURT:  Well, if you intend to proceed

11  with the depositions on August 22nd and 29th, then, yes,

12  I think -- I think the parties should.  I mean, if it

13  were just going to be one or two issues, then you could

14  call me during the deposition.  But it sounds -- these

15  are going to be, it sounds like a lot of questions that

16  -- that you all want to ask that Mylan is going to

17  object to.  So, yeah, I mean, I hate to put more on your

18  plates, everybody, but --

19               MR. HOCHSTADT:  We're prepared to do it for

20  the plaintiffs, Your Honor.  And since we would like the

21  witness to be prepared, calling -- calling the court --

22  if it's possible to get the court's guidance in advance

23  so the witness could be prepared on whatever the court's

24  guidance is on the particular topic, we'd appreciate

25  that.

1           THE COURT:  All right.  Mylan, are you

2    prepared to -- I mean, does that sound like a reasonable

3    approach from your standpoint too?

4           MR. LEVIN:  This is Mr. Levin.  It does,

5    Your Honor.  That letter approach seems fine with us,

6    Your Honor.  I do think that a lot of these issues, like

7    a lot of the other 30(b)(6) objection issues, we've been

8    talking about with the plaintiffs are the kinds of

9    issues that candidly should just be reserved for

10   resolving at the deposition.  Questions will be asked

11   and the deponent will answer those questions or not and

12   then we can have disputes about those or not.  But to

13   the extent we can resolve some of these bigger picture

14   issues in advance of the deposition, I agree that's

15   helpful for Mylan as well, in terms of preparing its

16   witness appropriately to be examined.  So we are -- we

17   are fine with that approach.

18            I do, Your Honor, just need to correct the

19   record on one point that Mr. Hochstadt made which is

20   factually incorrect.  Just so the record is clear, his

21   comment about the EpiPen4Schools program is simply not

22   true.  The language that he's talking about actually was

23   withdrawn in July of 2016, which therefore would fall

24   within the discovery period for which we've offered

25   testimony and had absolutely nothing to do with the

1   New York Attorney General's investigation.

2            So I just wanted to make the record clear

3   and also let the court know that we've offered a

4   compromise on this issue.  We did offer to provide

5   certain post-August 2016 testimony.  Plaintiffs rejected

6   that compromise, but we'll be glad to continue

7   discussing those issues with them.  And if we can't

8   resolve the issue, to brief it for the court.

9            THE COURT:  All right.  Well, can we do

10  simultaneous letters to the court?

11           MR. HOCHSTADT:  That works.

12           THE COURT:  I think we need to, in order to

13  get them to me, so I can rule before your August 22nd

14  deposition.  So I guess let's be early if the parties

15  can send it in.  Can you limit it to three pages?  I

16  don't want treatises.

17           MR. HOCHSTADT:  This is Eric -- this is Eric

18  Hochstadt, Your Honor.  Yes, we can limit to three

19  pages.

20           MR. LEVIN:  Same for us, although there is

21  one other issue that may make sense to fold in here that

22  Mr. Sechler was going to talk about later, it's Item

23  4(b) I think actually on the agenda.  So maybe we can

24  just, if Your Honor is okay with that, talk about that

25  too then.

1          MR. SECHLER:  Yes, Your Honor, this is Phil

2    Sechler.

3          THE COURT:  Wait a minute.  4(b) and -- hang

4    on just a second.  Yeah, are those -- are they the same

5    issue?

6          MR. SECHLER:  Kind of.  In our opinion,

7    they're the flip side of the same issue and that is

8    post-August 2016 information.  So the reason this is on

9    the agenda, Your Honor, frankly, it was not in the

10   status report, so we totally understand that Your Honor

11   has not had any information on this, wouldn't have any

12   basis to rule or really understand the issue.  But --

13         THE COURT:  So I have reviewed the kaléo

14   briefing, so I am a bit aware of the issue I think.

15         MR. SECHLER:  Okay.

16         THE COURT:  Have the parties conferred about

17   this issue?

18         MR. SECHLER:  So that's the issue, Your

19   Honor.  We kind of felt like the meet and confer process

20   wasn't finished on either of the post-2016 issues.  But

21   then, when we saw Sanofi's status report that included

22   this, we thought that we should put this on the agenda

23   because we think this is kind of a goose-gander issue,

24   and that is we agreed -- or if we agree to produce

25   information post August 2016, we think it should be

1    reciprocal with respect to the other drugs.  You heard

2    Mr. Hochstadt state Sanofi's position that the court's

3    already ruled that the cutoff is August 2016.  But with

4    all due respect, Your Honor, that was not an issue that

5    was really presented to the court.  At that point in

6    time all the parties were operating on an August 2016

7    cutoff date.

8              So we do think it's relevant.  If they're

9    going to get information on rebates and other things

10   that happened post August 2016, we don't think that

11   information should be in a vacuum.  We think this other

12   drug information is important to put everything in

13   context and, therefore, we wanted to get some

14   information.

15             But I do think the parties still need to

16   meet and confer.  And so maybe what I would suggest,

17   Your Honor, is that we conclude that process.  And then

18   if appropriate include in this letter to Your Honor the

19   simultaneous letters our position on that as well.

20             THE COURT:  Well, they're related but

21   different issues I think.  Regardless, I think all of

22   this needs to get resolved so that the discovery that's

23   appropriate can be done.  So why don't we just set -- I

24   do want you to confer before -- before any of you write

25   to me about the Item 4(b) on the agenda.

1              So do plaintiffs have any objection to a

2    letter briefing process that includes both the Mylan

3    30(b)(6) objections based upon post August 2016

4    documents and the 4(b) item on production of post 2016

5    documents with regard to Sanofi discovery?

6              MR. HOCHSTADT:  Your Honor, this is Eric

7    Hochstadt.  No objection.  We'll address it in the same

8    -- same submission.

9              THE COURT:  Okay.  And maybe three pages is

10   not sufficient.  I'll give you up to five pages each

11   side to address those two topics.  I need to give you

12   time to confer and then get me a letter in time for me

13   to give you guidance before August 22nd.  So tell me how

14   soon you all can confer and get me a letter -- letters.

15   Okay?

16             MR. SECHLER:  Your Honor --

17             MR. LEVIN:  We're looking at calendars.

18             MR. HOCHSTADT:  Can we have a week, Your

19   Honor?

20             THE COURT:  How about August 15th?

21             MR. LEVIN:  Okay.

22             MR. HOCHSTADT:  For Sanofi that's fine.

23   Thank you, Your Honor.

24             THE COURT:  Okay.  And I think that was Adam

25   Levin who said "okay."  Was that you Adam?

```
 1                   MR. LEVIN:  It was.  Thank you, Your Honor.

 2                   THE COURT:  Okay.  Then what about class

 3      plaintiffs, do class plaintiffs want to weigh in on

 4      these issues?

 5                   MR. DAVIDSON:  This is Stu Davidson, judge.

 6      We'll confer with Sanofi on this and we'll probably be

 7      able to submit it jointly.

 8                   THE COURT:  I think you should.  I don't

 9      want -- yeah.  Plaintiffs total can have five pages to

10      letter brief the issue.  So I'll leave it, Stu, to you

11      and Eric and others to put together that reply.

12                   MR. DAVIDSON:  Sounds good.

13                   MR. HOCHSTADT:  Thank you, Your Honor.

14                   THE COURT:  All right.  So that will be due

15      August 15th to chambers.  Just e-mail to chambers and I

16      will get you some guidance before the August 22nd

17      deposition.  Okay.

18                   I think that gets us down to Item 1(e), the

19      request for a briefing schedule for motion for extended

20      hours for Bresch deposition.  I'm not going to allow

21      that.  We'll decide that now.  You all don't need to be

22      wasting your time briefing an issue like that with all

23      these other issues.  So I'll hear from plaintiffs --

24      Sanofi and/or class plaintiffs.  How much time are you

25      wanting for Bresch and why more than seven hours?
```

1           MR. DAVIDSON:  Your Honor, this is Stu

2    Davidson, and thank you for the opportunity.  As Your

3    Honor recalls, you had indicated at the last status

4    conference that while you were not inclined to agree to

5    something like this that you would allow us to file a

6    motion and that's why we suggested this in our -- why we

7    suggested this in our status report.

8           So, you know, ordinarily, judge, and I think

9    the case law bears this out very strongly, which we

10   would have submitted to the court if we were allowed, is

11   that, you know, when you have -- if we had one case --

12   if the class plaintiffs had one case before Your Honor,

13   we would be entitled to seven hours.  And now simply

14   because this case has been consolidated as an MDL we are

15   limited to essentially three and a half hours unless we

16   can agree otherwise with Sanofi.  And I don't think

17   Sanofi has any interest in giving up any of their time

18   just like we don't have any interest in giving them any

19   of our time.

20           And from our standpoint with a witness who

21   has testified before Congress, who has stated publicly

22   that the EpiPen was her baby, and I can go on as to the

23   importance of Ms. Bresch, the documents themselves that

24   have been produced by Mylan unquestionably speak to her

25   importance in the decision-making regarding assuring

1   that Mylan and the EpiPen had exclusive preference on

2   formularies and were doing everything in their power to

3   block Auvi-Q and any -- any competition whatsoever,

4   including, and I think this is quite -- tells the story

5   quite starkly -- any generic epinephrine auto-injector

6   that was going to be coming to market.  And they had a

7   significant plan in place to -- not only to block Auvi-Q

8   but any competitor that was coming -- that they knew

9   were huge threats to their entire business and were

10  coming down the pipeline.  And she was critically

11  involved in all of those decisions.

12           So from our standpoint, you know, having two

13  full days with her, I can see why that may be a little

14  too much.  But getting 10 hours with her and at least

15  having each side on the plaintiffs, the class plaintiffs

16  side and Sanofi, get five hours each, I think is not

17  asking for too much respectfully.

18           You know, this -- I also would like to

19  remind the court that Your Honor has placed a

20  significant limit on -- on the plaintiffs insofar as if

21  a witness is being presented and that witness -- during

22  the coordinated discovery period and that witness has

23  knowledge that we want to depose that witness on both

24  coordinated and non-coordinated topics, we need to do it

25  during the coordinated discovery period.

1           There is no question that a CEO of Mylan,

2    Heather Bresch, is going to have a substantial amount of

3    information regarding the -- the pay for delay

4    allegations, regarding EpiPen4Schools, all issues that

5    are -- in regarding Mylan's marketing and advertising.

6           So, you know, we have such a limited amount

7    of time with her as it is, we are just respectfully

8    requesting some additional amount of time to ensure that

9    we are able to get the information that we need to prove

10   our case.  We would normally have seven hours, Your

11   Honor, but for Sanofi's involvement in this case.  And I

12   think that if each plaintiff were entitled to five

13   hours, and which we could split over the course of two

14   days to make it not a terribly long day for Ms. Bresch,

15   I think that would be appropriate.

16           THE COURT:  All right.  Thank you, Stuart.

17           Somebody for Mylan want to respond or did

18   somebody -- Eric or Buchweitz, do you want to add

19   anything for plaintiffs?

20           MR. BUCHWEITZ:  We don't -- we don't need to

21   add anything.  Thank you.

22           THE COURT:  Okay.  Thank you.  Then Mylan?

23           MR. LEVIN:  Thank you, Your Honor.  This is

24   Mr. Levin.  Your Honor, I think the starting point for

25   this is us all being mindful of the court's admonition

1    at the last status conference in June that we should not

2    set any sort of precedent that the CEO for one of these

3    parties be deposed for more than seven hours.  And that

4    as Your Honor said, barring some phenomenally persuasive

5    motion for additional time, Heather Bresch's deposition

6    will be limited to seven hours.

7            I'm also mindful of the court's admonition

8    about 30 minutes ago in connection with Robert Coury's

9    deposition where Your Honor rightly noted that what's

10   good for the goose is good for the gander and the

11   parties here should even be meeting and conferring about

12   whether there's any way to take less than seven hours

13   for the depositions of senior executives.

14            So with that background in mind, Your Honor,

15   we think the plaintiffs would -- would need to make some

16   phenomenally persuasive showing that Ms. Bresch should

17   be deposed for more than seven hours.  And,

18   respectfully, what Mr. Davidson just said doesn't even

19   come close to meeting that standard.

20            What's really going on here, Your Honor, and

21   it's apparent from the comments from the plaintiffs'

22   side, is an inability to coordinate, an inability to

23   cooperate with Sanofi in conducting its discovery issues

24   in this case.

25            As Mr. Davidson said, you know, he said

1    simply because the case is an MDL, we should get more

2    time.  Well, actually that's exactly the opposite.  That

3    would defeat the whole purpose of making the case an MDL

4    and undermine the entire reason why the JPML rightfully

5    decided that both the Sanofi complaint and the class

6    action complaint should be combined into a single

7    proceeding for purposes of efficiency.

8             And Your Honor will also recall that

9    Judge Crabtree carefully considered these issues at the

10   very start of the case and issued a ruling that while

11   there would be two separate tracks for pleadings

12   purposes there would only be one track for discovery

13   purposes in this case because that's the most efficient

14   way to do it, that is the way to address coordinated,

15   non-coordinated issues, and that is the way to avoid

16   inefficiencies and to keep the case moving, which I

17   know, Your Honor, has been on top of like a hawk with

18   all these discovery rulings the last few months.  And it

19   would seriously undermine all of those goals and,

20   frankly, the whole sort of basis upon which this MDL was

21   formed and has been coordinated since day one to now say

22   that somehow for this witness we ought -- we ought to do

23   something different.

24            The reality, Your Honor, is the plaintiffs

25   are deposing people like the former president of Mylan

1    Specialty, the division that oversaw the EpiPen.  The

2    former CFO of Mylan Specialty, the account

3    representatives who dealt with the country's largest

4    PBMs and third-party payors on a day-to-day basis for

5    years, the head of EpiPen marketing, and the list goes

6    on and on.  These are people that had way more

7    responsibility for the daily affairs of EpiPen, and

8    plaintiffs have had no problem whatsoever deposing each

9    of those witnesses for seven hours.

10              So for them to come back now and ask for

11   more briefing and more time for Ms. Bresch, candidly,

12   especially after what Your Honor said about this issue

13   in June, we think it is sort of Exhibit A for why this

14   -- this is really just harassment and an inability to

15   abide by the coordination precepts of the MDL and why

16   the request should be denied.

17              Ms. Bresch is the CEO of the company.

18   Dividing her deposition time over two days would

19   undoubtedly be an undue burden.  We've already agreed to

20   put Ms. Bresch up for a deposition.  They'll have an

21   opportunity to depose her and they should abide by the

22   coordination limits the court has required for every

23   other deposition in this case and rightfully limit her

24   deposition to the time that's required by the federal

25   rules.

1          THE COURT:  All right.

2          MR. DAVIDSON:  Your Honor, if I could just

3    have maybe 30 seconds to respond.

4          THE COURT:  All right.  Go.

5          MR. DAVIDSON:  I knew you would, that's why

6    I said 30 seconds.  No. 1, she is -- it's not like we

7    need permission to depose Ms. Bresch.  She is a named

8    defendant in this case, let's not forget that.

9          No. 2 is, you know, the defendants deposed

10   one single individual class plaintiff, a single mother

11   whose daughter was sexually abused by her ex-husband,

12   and all she did was go to this pharmacy and buy the

13   EpiPen.  They deposed her for almost seven full hours.

14   And so to say that a named defendant who was intimately

15   involved in the critical decision-making in this case

16   does not need a little bit more than what they took for

17   an individual mom who bought an EpiPen I think defies

18   credulity.

19          You know, Your Honor, Magistrate Judge

20   Rushfelt has previously held that additional deposition

21   time for a key witness in a consolidated multi-party

22   case where each party would have the opportunity to

23   spend their own seven hours had the case not been

24   consolidated was appropriate.  And there's -- I have

25   other District of Kansas case law holding the same.  I

1    simply don't believe for a named defendant who was

2    involved in the key decision-making for this company and

3    called the EpiPen her baby, I don't believe that a

4    little bit of additional time is inappropriate.  But

5    thank you for allowing me that extra time.

6            THE COURT:  All right.  Thank you.  And

7    thank you, Adam, as well.

8            Well, I think I've heard what I need to

9    hear.  I don't think that plaintiffs' request for

10   10 hours is an attempt to harasses Ms. Bresch.  It does

11   seem that she -- she has been involved in ways that

12   are -- justify exploring by plaintiffs in this case.

13           However, having said that, I'm not convinced

14   that plaintiffs should be allowed 10 hours to depose

15   Ms. Bresch and that she should be required to appear for

16   two days for her deposition.  I'm not convinced by

17   anything plaintiffs have argued that -- that there's a

18   significant amount more than the stipulated protocol

19   seven-hour limit at this point for Ms. Bresch.

20           So I am going to allow a little additional

21   time, given that we do have Sanofi and class plaintiffs

22   both -- both of those counsel for those parties are

23   going to have some independent questions they want to

24   ask and should be allowed a little additional time

25   beyond what seven hours total would allow.

1          So I'm going to allow eight hours, both for

2    Sanofi and class plaintiffs, to depose on Ms. Bresch.

3    That's eight hours total split between Sanofi and class

4    plaintiffs counsel however they wish to split that time.

5    And it will be Ms. Bresch's call -- I presume she'll

6    want to have her deposition taken in one day and not

7    split between two days -- but Mylan, you and Ms. Bresch

8    can inform class plaintiffs whether she wants to do that

9    in one day or split it in two.  All right.  Any

10   questions?

11          MR. DAVIDSON:  No, Your Honor.  Thank you.

12          THE COURT:  And, again, I will say, a large

13   part of my rationale for that ruling is that I don't

14   want to set a precedent for the CEO of a large entity is

15   just routinely required to set for more than what our

16   rules establish and what the parties have stipulated to

17   in litigation such as this.  And I'm mindful that next

18   month or next year the same people will be arguing for

19   additional time now may be back here arguing Mylan's

20   position to protect a CEO that they -- of the clients

21   they represent.  So today's ruling will inure to

22   everyone's benefit in the future.

23          All right.  Moving on.  I think we covered

24   Items 2(a) and (b) on the agenda.  So that gets us to

25   2(c) which is class plaintiffs' issues with Mylan

1   discovery, specifically the privilege log, unless I've

2   missed something above that in the agenda.  So let's

3   take that up.

4              MS. KLEVORN:  Yes.  Good morning, Your

5   Honor.  This is Amanda Klevorn for the class plaintiffs.

6   In the interest of time, I'm happy to just skip to

7   answer any questions the court may have about what we

8   put in the status report, but I thought it might be

9   helpful to provide a brief overview of where we started

10  on the privilege log issues with Mylan two months ago

11  and where we are today.

12             THE COURT:  All right.  Briefly go ahead.

13             MS. KLEVORN:  All right.  So Mylan did

14  produce its privilege log on June 8th.  The log has

15  22,640 entries.

16             We got a letter out to Mylan only six days

17  later, that was on June 14th, describing the major

18  deficiencies that we identified after an initial review.

19  Obviously we weren't able to look at all 22,000 entries

20  in detail at that point, but it was fairly clear to us

21  right off the bat what the major problems were going to

22  be.  And so the three issues we included in our status

23  report for the court today were also included in that

24  original June 14th letter.

25             And briefly the first issue is entries with

1    unidentified third parties, that is individuals included
2    in the log who don't have a Mylan e-mail address.
3              Second issue is documents withheld pursuant
4    to the attorney-client privilege where an attorney is
5    not identified on the log.
6              And then, finally, documents with one or
7    three boilerplate descriptions that to us indicate the
8    communications predominantly pertain to non-privileged
9    topics, including business and strategy, media and
10   public relations issues and marketing and advertising.
11             Since Mylan produced the log, we have had
12   two meet and confers.  We exchanged additional
13   correspondence.  So we have been communicating regularly
14   about these issues.  But I think the closest we have
15   come to making any meaningful progress is actually this
16   week.  On Tuesday Mylan informed us that they will
17   provide an amended privilege log by the end of this
18   week.  Mylan acknowledged that third party waiver did,
19   in fact, occur on some communications in the log and
20   Mylan is going to produce those.  And Mylan also
21   acknowledged that some of the documents we cited in that
22   original June 14th letter are not privileged and must be
23   produced.
24             And I think that's important because we only
25   cited around 200 entries in that letter.  They were just

1    for the purpose of illustration.  And it has taken Mylan

2    two full months to complete that review and get us an

3    answer on that limited set.  So we at this point are

4    concerned about time constraints and the volume of

5    documents that are at issue.

6              Our position moving forward for the

7    unidentified third parties, it's the same.  We think

8    Mylan should be compelled to provide us sufficient

9    identifying information for every individual on the log

10   with a non-Mylan e-mail address.

11             Entries without identified attorneys, we

12   need something from Mylan, even if it's just an

13   explanation, for each of those as to why it's not

14   possible to identify an attorney.  But if it is

15   possible, then we -- we think we're entitled to know who

16   the attorney was.

17             And then on the final issue as to business,

18   media, marketing documents, our position here again is

19   that Mylan hasn't met its burden of establishing

20   privilege with those descriptions.  They are

21   boilerplate, vague.  They're identical.  And on their

22   face they indicate that the communications primarily

23   concern non-privileged topics.

24             We discussed the possibility of Mylan

25   revising those entries.  And at our July 30th meet and

1    confer Mylan indicated that they didn't see how it was

2    possible to revise those descriptions.  I advised Mylan

3    to look at the Pfizer log description.  To be clear,

4    we've also taken issue with certain aspects of the

5    Pfizer log.  But overall those descriptions do a better

6    job of indicating that the communications are

7    predominantly legal in nature.

8              So our view really is that Mylan should be

9    required to revise all of those entries.  But as the

10   court probably noticed, we did propose a limited in

11   camera review as an alternative in our status report.

12   We are proposing that only, again, because of the number

13   of documents we're dealing with here and the pending

14   discovery deadlines.  We don't want to burden the court

15   with that request.  But if it's something the court is

16   amenable to, we would certainly limit the number of

17   documents submitted to whatever percentage or amount the

18   court thinks is manageable and reasonable.

19             THE COURT:  How many -- how many documents

20   are in that third category in dispute?

21             MS. KLEVORN:  Yes, Your Honor.  So for the

22   business strategy documents it's approximately 5,400.

23   For the marketing documents, it's approximately 3,400.

24   And for the media, public relations documents it's

25   approximately 1,600.

1          THE COURT:  All right.  Thank you.  Okay.

2          MS. KLEVORN:  I'm sorry.

3          THE COURT:  All right.  Are we -- are you

4    done or...

5          MS. KLEVORN:  I just had one more note to

6    make.  On Mylan -- on Tuesday Mylan did also offer to

7    review another set of sample documents itself but that

8    offer is predicated on Sanofi doing the same.  And so I

9    just wanted to say, you know, I'm obviously only

10   speaking on behalf on the class plaintiffs on this

11   issue.  Myself and my co-counsel don't represent Sanofi

12   and we're not willing to tie our position on these

13   issues to what Sanofi will or will not do.

14          I think, you know, if Mylan has issues with

15   Sanofi's log, those issues need to be pursued on their

16   own merits.

17          And, secondly, we're not really inclined to

18   wait for Mylan to do another review solely because it

19   has taken, again, two months for Mylan to get through

20   the 200 documents that were in our original letter.  I

21   think if this proposal had come earlier in the meet and

22   confer process, maybe we could have worked with that.

23   But we are -- we now have a motion to compel deadline at

24   the end of August.  We haven't made a lot of progress

25   and we're concerned about the time constraints.

 1              And so with that we just wanted to put those

 2    issues on the -- on the judge's radar.

 3              THE COURT:  Okay.  Thank you.  All right.

 4    As to Mylan, you've agreed to amend the privilege log by

 5    this Friday.  Is that as to Categories 1 and 2 only?

 6    What would the amendment involve?

 7              MR. FOSTER:  Yes, Your Honor.  This is David

 8    Foster for Mylan.  So the amendment that we would

 9    provide will include a few things.

10              One is that it will remove certain entries

11    that were included in the class plaintiffs' letter.

12              The second thing it would do is it would

13    revise certain descriptions of some documents that

14    actually don't relate to the issues that -- that the

15    class plaintiffs have raised here but relate to other

16    issues that we discussed and productively move forward

17    through the meet and confer process.

18              And the other thing that we would do is we

19    would remove certain documents where we've concluded

20    that third parties did, in fact, break privilege.

21    Because, you know, our approach to this, Your Honor, is

22    to -- is to negotiate this in good faith and to make the

23    right call on these documents.  So that's what the

24    amended privilege log would do.

25              I will say that I think Ms. Klevorn

1    mentioned at the end that we made a substantial proposal

2    to the class plaintiffs this week for moving this

3    dispute forward and it was not some un- -- you know,

4    unlimited by time type of proposal.  We offered to get

5    back to the class plaintiffs by one week from today with

6    respect to a review of a random sampling of documents

7    related to the three different categories -- actually,

8    two of the three categories that they raise.

9         The one that we would not do a sampling for

10   is the third party issue.  And there what we offered to

11   do is to provide them with a list of the third parties

12   and an explanation of their relationship to Mylan.

13        Now, we did make this offer contingent on

14   Sanofi doing the same thing on the goose and gander

15   point that seems to be a common theme today.  I'm not

16   personally prepared to talk about Sanofi's privilege

17   log.  Our colleagues at Robbins Russell are handling

18   that issue.  But suffice it to say, my understanding

19   from talking to them is that Sanofi's log presents all

20   of the same issues that class plaintiffs have raised

21   with our log.

22        In addition, one thing that I would say,

23   Your Honor, is that -- the -- this suggestion that there

24   are large-scale substantial deficiencies of Mylan's log,

25   I really have to take issue with.  And I can take issue

1   with it and point you to the statement that

2   Ms. Klevorn's colleague, Mr. Cox, made on the record at

3   the last hearing when he said, "Other than the

4   litigation hold, which sounds like we've got an answer

5   on, the others are purely, I think, common issues that

6   arise in any large privilege log."

7             So what you're hearing now is the class

8   plaintiffs backing off of that position and coming in

9   and basically saying we can't trust Mylan to make the

10  right calls on its log; we need the court to look at

11  these documents.  That request, Your Honor, is way

12  premature because you can tell from what we're saying

13  here, you can tell from the fact that we are providing

14  an amended log this week we are committed to making the

15  right call on these documents.

16            And I'll give you one case in point.  With

17  respect to this privilege log, Your Honor, this is not a

18  situation where, like in one of the cases that the

19  plaintiffs have cited to us, Mylan simply instructed its

20  lawyers to withhold every document on which lawyers were

21  copied whether it was business or legal advice that was

22  being sought.  Far from it.

23            Your Honor, we have produced in this case

24  approximately 25,000 documents on which lawyers are

25  copied, 25,000 documents.  That is actually more

1    documents than appear on our privilege log.  And so the

2    idea that we're not making fine distinctions or at least

3    making our best effort to make fine distinctions between

4    what documents are seeking legal advice versus documents

5    seeking business advice, frankly, just doesn't apply

6    here.

7              THE COURT:  Mute your phone, please.  We're

8    hearing rattling and I don't think it's rocks in

9    anybody's head.  I think it's rattling papers or

10   something.

11             MR. FOSTER:  Right.  So, Your Honor, just to

12   wrap this up, I think the bottom line here is that the

13   meet and confer process just hasn't played out.  We've

14   moved things forward.  We've made progress.  We're

15   addressing issues.  We have offered to do random

16   sampling to guide further -- further discussions here.

17   So we've offered to do that within the next week

18   provided, of course, that Sanofi be required to do the

19   same thing.

20             Now, to be clear, we did not put issues

21   regarding privilege log in our status report, whether

22   it's respect to Sanofi's log or the class -- or, I'm

23   sorry, the Mylan log.  And the reason for that was we

24   just didn't think this issue was ripe for discussion at

25   this hearing.  We don't think it's ripe for the -- for

1   the class plaintiffs to be seeking to burden the court

2   with conducting an in camera review when, in fact, you

3   know, we are still looking at the documents pursuant to

4   what we've offered the class plaintiffs.

5           THE COURT:  All right.  Thank you.  Well,

6   perhaps Mylan is working on this and working in good

7   faith, but you're doing it too slowly.  The fact that

8   documents identified in the June 14th letter, Mylan is

9   given until next week to amend its privilege log with,

10  which is two months later, is not good.  You know, these

11  sorts of deficiencies that have been identified and

12  apparently Mylan is acknowledging now some of them are

13  truly deficiencies are pretty simple things that should

14  have been provided in the privilege log early on.

15          And the suggestion in the status reports

16  that the burden should be on class plaintiffs to figure

17  out who these third parties are, for example, if there's

18  an e-mail that does not appear to have Mylan's name in

19  it anywhere, is wrong.  I will refer counsel to a recent

20  opinion having to do with privilege logs and what they

21  shall require, *Hopkins versus Board of County*

22  *Commissioners of Wilson County, Kansas*, 2018 Westlaw

23  3536247 at page 6.  And not only does it provide a

24  description about what and -- what should be included

25  and what party providing the privilege log shall

1    include, but on that page at the end of that list is

2    this statement by the court.

3              "At the very least, a privilege log should

4    contain sufficient information so that the opposing

5    party and the court can evaluate the claimed privilege.

6    If a party fails to carry its burden of establishing

7    that any documents withheld are subject to privilege,

8    the court may conclude that the privilege is waived."

9              So it's Mylan's responsibility to provide

10   the identification of those authors, recipients, and

11   copyees on e-mails when it's not apparent to support its

12   privilege claim.

13             And, likewise on the second category of

14   documents, if it is not apparent from the entry that any

15   of the parties are an attorney where an attorney-client

16   privilege is being asserted, it's Mylan or the party

17   providing the privilege log's burden to explain why the

18   attorney-client privilege applies and/or who the

19   attorney is in that e-mail chain.

20             So Mylan has some work to do and it should

21   have been done before now.  So -- and, likewise, the

22   random sampling in that third category, you know, that

23   work should be done before.

24             So I'm going to set a short deadline here

25   for Mylan to either identify, correct its privilege log

1    to support all of the entries on the privilege log where

2    plaintiffs have raised questions and there's not

3    sufficient information to identify why the documents,

4    the e-mails listed on the privilege log, those items in

5    the first two categories, or produce the documents if

6    they determine it's not privileged, or to file a motion

7    for protective order if you think it's warranted.

8              But these documents need to get produced or

9    you need to establish that they are privileged and/or

10   file a motion for protective order.  And so I want you

11   to move forward with an amendment that you've agreed to

12   provide by this Friday.  And, furthermore, any

13   additional work shall be concluded by August 17th as I

14   said.  And after that date, if there's not a resolution

15   on the third category, I will provide some guidance for

16   a sampling of documents withheld based upon the

17   privilege in the third category for my review in camera.

18             So, again, August -- you shall amend by this

19   Friday as you have already said you will.  But then any

20   further either clarification, supplementation of your

21   privilege log, production of documents you determine are

22   not privileged, and/or filing of a protective order

23   shall occur by August 17th.

24             MR. MAYRELL:  Your Honor, I wanted to note

25   that Sanofi revised its privilege log only yesterday.

1    And from a preliminary review we believe it continues to

2    have some issues.  And Sanofi has also taken the

3    position, as to some of the issues that class plaintiffs

4    just raised, that Sanofi's log was sufficient as it

5    stands even though it has the same problems that class

6    plaintiffs are complaining about now and that Your Honor

7    is suggesting -- or is ordering that Mylan should have

8    to resolve in its log.  So we would ask that the court

9    also instruct that Sanofi shall have to revise its log

10   in accordance with the order you just provided for

11   Mylan.

12            THE COURT:  Okay.  Can you identify yourself

13   for the record.

14            MR. MAYRELL:  This is Ralph Mayrell from

15   Robbins Russell.

16            THE COURT:  Okay.  Thank you.  All right.

17            MR. HOCHSTADT:  Your Honor, this is Eric

18   Hochstadt from Weil from Sanofi.

19            THE COURT:  Have you all conferred about

20   this, Sanofi?

21            MR. HOCHSTADT:  Well, that's what I was just

22   going to say is we had agreed to have a meet and confer

23   with Mylan's counsel for this coming Monday and they

24   pushed it off in light of the extension of the local

25   rule deadline.  We have amended, as counsel noted, and

1    we finished producing documents off our log.  So we're

2    happy to have a further conversation with Mylan, but we

3    finished our amendments and finished producing the

4    additional documents off our log as part of that

5    process.

6              THE COURT:  All right.  Well, it sounds like

7    their needs to be some additional conferring in light of

8    the recent amendments by Sanofi.

9              Mr. Mayrell, have you had a chance to review

10   that very recent production by Sanofi?

11             MR. MAYRELL:  Your Honor, I have already

12   gotten to review the log.  Though it is a 32,000 entry

13   privilege log, we've already been able to determine that

14   it still does contain some third parties such as kaléo

15   which we question whether those could be covered by

16   privilege as well as certain PBMs, so the pharmaceutical

17   benefit managers such as Prime Therapeutics.  So we

18   think that they continue to have issues that they said

19   they resolved.

20             And also there are other issues such as

21   their descriptions of documents that sounds like

22   business advice, I believe that's category three from

23   what the class plaintiffs brought up earlier.  And those

24   issues are the ones where Sanofi has said it will not

25   revise its log and that the revised log yesterday did

1    not attempt to change the descriptions for those

2    documents.

3            So we are willing to continue to meet and

4    confer with Sanofi as Your Honor suggests, but we are

5    concerned that Sanofi will not revise its log unless the

6    court orders it to do so with respect to, for example,

7    documents that its description looks like business

8    advice.

9            THE COURT:  All right.  Well, it sounds like

10   you should confer now in light of the deficiencies that

11   you feel there are in this recent amendment.  So

12   Mr. Mayrell and Mr. Hochstadt, as soon as possible I'd

13   like for you to confer about that.  Can you follow the

14   same sort of brief -- expedited schedule with regard to

15   Sanofi privilege documents that I just described for

16   Mylan, that is August 17th for a deadline to --

17           MR. HOCHSTADT:  Sure, Your Honor.  This is

18   Eric Hochstadt.

19           THE COURT:  Okay.  All right.  Well, I hope

20   you all can resolve it, but -- but we'll apply the same

21   ruling with regard to Sanofi's privileged -- privilege

22   log and claimed privilege documents that I just

23   discussed with regard to Mylan with an August 17th

24   deadline.  Is that satisfactory, Mr. Mayrell, with you?

25   Hello?

```
 1            MR. MAYRELL:  Thank you, Your Honor.

 2            THE COURT:  Okay.  Very good.  All right.

 3   And as to Sanofi, please, also Mylan, Sanofi, all

 4   parties, I highly recommend that you review the Hopkins

 5   case that I cited a moment ago and conduct yourselves

 6   accordingly.

 7            All right.  Next I think we're on to Sanofi

 8   issues with Mylan, and 3(a) is -- involves document

 9   productions categories.  Have -- I guess I need an

10   update.  Have those -- have any of those been resolved?

11   A couple of them -- apparently there's been some

12   indication that Mylan is taking them under advisement.

13   So where are we on those documents submissions?

14            MR. HOCHSTADT:  Your Honor, this is Eric

15   Hochstadt from Weil for Sanofi.  I'm happy to tick

16   through them fairly quickly.  RFP 75, that was a request

17   for documents from Mylan sufficient to show their

18   projected rebates and market shares for EAI devices

19   through 2025.  It's a targeted request related to

20   damages and experts.  It could be one document

21   encompassing a five-year -- a current five-year strategy

22   plan for Mylan.

23            As I understand it, Mylan's objection to

24   this is it's tied to, well, if you -- if we have to

25   produce something current, you have to give us other
```

1    product information unrelated to Auvi-Q that's current.

2    So we discussed that already, Your Honor.  They're

3    linking the two issues on RFP 75.

4              Unless Your Honor has anything further on

5    that discrete request, that's kind of standard for, you

6    know, antitrust cases for damages.  I'm happy to move on

7    to RFP 31.

8              THE COURT:  What's the -- what's the time

9    frame on RFP 75?  Has the -- is there -- has a written

10   response and objection been served?

11             MR. HOCHSTADT:  Yes, they have served, Your

12   Honor, and we've exchanged sort of the meet and confer

13   correspondence and we're -- we're at loggerheads on the

14   issue of it being tied to Sanofi producing more recent

15   information on Lantus, Apidra, Toujeo and Soliqua.

16             THE COURT:  And when is the motion to compel

17   filing deadline on that?

18             MR. HOCHSTADT:  On that request, Your Honor,

19   I don't have that offhand.  But the meet and confer

20   didn't get complete until within the last couple of

21   weeks.

22             THE COURT:  Okay.  Well, I mean, if you're

23   done conferring, let's expedite the briefing on any

24   motion to compel.  So we should get that on file if

25   there's -- the conferring is done and there's no

1    resolution.

2            MR. HOCHSTADT:  Your Honor, I'm certainly

3    prepared to put it as part of the five-page submission

4    next week if Your Honor would like that.

5            THE COURT:  You mean file a separate motion

6    to compel with regard to this?

7            MR. HOCHSTADT:  Just a simultaneous letter

8    briefing.

9            THE COURT:  Okay.  You'll need to do it in

10   the form of a motion to compel.  But, yeah, if that

11   timing works, then we'll set that deadline.  Is that

12   okay?

13           MR. HOCHSTADT:  It is for Sanofi, Your

14   Honor.

15           MR. LEVIN:  Your Honor, this is Mr. Levin,

16   if I could just be heard for a moment for Mylan.  Just

17   for efficiency purposes, I wonder whether we could

18   actually just throw this issue into the mix with that

19   same five-page letter brief rather than doing it as a

20   stand alone motion.

21           Mr. Hochstadt is correct that part of our

22   objection to RFP 75 relates to the production by Sanofi

23   of post 2016 information for those other products.  But

24   he's incorrect in stating that that is the entirety of

25   our objection.  In fact, the main thrust of our

1    objection is relevance.  And I'm prepared to talk about

2    that today, but I think it's probably more efficient for

3    the court if we brief that issue.  Suffice it to say

4    that we disagree that projected market rebates that are

5    made after August 2016 can possibly be relevant to

6    plaintiffs' damages model.  And suffice it to say we

7    have already produced reams of documents on the very

8    kind of projections prior -- that were created prior to

9    August of 2016 that plaintiffs are now seeking.  So

10   there is some more complexity to this issue.  And,

11   again, just for efficiency purposes, it might be easiest

12   if we throw that in if Your Honor is okay with that with

13   the five-page brief.

14            THE COURT:  And maybe that's what you were

15   suggesting, Mr. Hochstadt.  Is that what you were

16   intending?

17            MR. HOCHSTADT:  Yes, Your Honor.  And just

18   to briefly respond, I mean, we want the most current

19   projections because Mylan will criticize our expert for

20   not using their most current projections.  So they can't

21   have it both ways, and that's what they're trying to do.

22            THE COURT:  All right.  We'll include that

23   issue in this letter briefing.

24            I'm wondering though, Terese, if we should,

25   given that this is getting to be more substantial, maybe

1  we should have you file these rather than doing informal
2  letter briefs.  Terese is nodding her head.  We're in
3  agreement.
4          So put -- instead of sending a letter brief,
5  class plaintiffs and Sanofi, your combined letter brief,
6  submit it to us in the form of a filing to the court
7  addressing these issues and, likewise, Mylan, you as
8  well.  And, again, limit the e-mail -- the substantive
9  part of the filings to five pages.  All right.
10         MR. HOCHSTADT:  Okay.  Thank you.
11         THE COURT:  Everything we talked about
12  earlier for the letter briefing and now adding this
13  issue about RFP 75.
14         MR. HOCHSTADT:  Thank you, Your Honor.
15         THE COURT:  Okay.  Then RFP 31 and fair
16  competition policies, has Mylan -- has Mylan decided its
17  position on those?
18         MR. HOCHSTADT:  So this is Eric Hochstadt,
19  Your Honor, for Sanofi.  On RFP 31 Mylan has refused to
20  identify or tell us that, you know, the documents are
21  either in the production or not.  We've told them we
22  can't find them.  They admitted in their answer that
23  these communications existed between Mylan and
24  Intelliject.  And in response to the RFP they said they
25  occurred in 2008.  There was less than 50 documents that

1   were produced for this specific search for this

2   particular request.  We've looked at them.  They're not

3   the relevant documents.  So I'm sure some fact

4   investigation was done for that answer.  Not all those

5   communications were oral, certainly not based on

6   Sanofi's subsequent licensing with Intelliject.  There's

7   going to be written correspondence on it.

8           My understanding from Mylan, the latest

9   correspondence, they want to go back to the drawing

10  board, come up with a more detailed search proposal that

11  they're going to tell us next week.  And the issue is

12  that this is a topic that Roger Graham has been

13  designated to testify on at the end of the month and we

14  would like to know before we -- you know, have the

15  documents before we question Roger Graham about who at

16  Mylan and how high up they were involved in these

17  discussions with Intelliject and what documents were

18  provided where they got this first look at this

19  innovative epinephrine auto-injector device.

20          THE COURT:  All right.  Mylan, it sounds

21  like this is something that shouldn't be difficult to

22  track down if you said there was such a document or

23  documents.  You ought to be able to track down whether

24  there is, in fact, and where it is.  What's the problem

25  with that?

1          MS. DELONE:  Good afternoon, Your Honor.
2   This is Carrie DeLone for Mylan.  So we said in our last
3   letter that we have produced -- that we ran the search
4   terms that we discussed with plaintiffs on this and we
5   did produce documents on this, at least, you know, what
6   we had for during that time period.
7          Plaintiffs got back to us a couple weeks ago
8   and asked us to run targeted search terms, and that's
9   what we agreed to do earlier this week.
10         The issue here is just that this is going
11  back nearly a decade and, honestly, there really -- it
12  just wasn't that big of an issue for Mylan.  And so it's
13  been a little bit tough to track it down, honestly, to
14  find anyone who knows anything about this issue.
15         So, you know, needless to say, we have been
16  trying to reach out to people to see what there might be
17  and just haven't found much.  But we have agreed to look
18  for custodians and try to run some search terms and see
19  if there's anything else that we could produce.  And
20  we've agreed to do that within -- you know, to do that
21  within the next week.
22         THE COURT:  By what date?
23         MS. DELONE:  I think by Thursday, August
24  16th, to let them know, you know, exactly what
25  custodians and search terms we might be able to run and

1   if there's much there.  But, again, just to be clear, we

2   did produce documents on this.

3              THE COURT:  But you agree that what you said

4   existed is not included in what was produced?

5              MS. DELONE:  No, we don't agree.  We did

6   include -- we did produce documents on this.

7              THE COURT:  All right.  Well, I don't know

8   where the parties -- there seems to be an inconsistency

9   in what the parties are reporting.  Mylan you need to

10  run the targeted search and identify if there are other

11  responsive documents that you've indicated there are and

12  get them produced.  So run that -- run the additional

13  searches, make good faith effort to locate what is out

14  there responsive to RFP 31 that you've indicated you did

15  before and get that produced to them by August 16th.

16             MS. DELONE:  Yes, Your Honor.  And just to

17  be clear, we don't know -- actually know whether there

18  is anything.  You know, it's not like we're just holding

19  documents.  We're not sure whether there is anything

20  from earlier, but we're happy to run that search and do

21  that.

22             MR. HOCHSTADT:  Your Honor, this is Eric

23  Hochstadt.  That's fine with us.  All we're going on is

24  their answer to paragraph 44 of our complaint that

25  admits they had communications with Intelliject and they

1    subsequently told us they were in 2008.  So there must

2    be something there.

3                THE COURT:  All right.  Well, let's drill

4    down and get to the bottom of that and by August 16th.

5                MS. DELONE:  Yes, Your Honor.

6                THE COURT:  Is that also true for the fair

7    competition policies?  Where are we on that?

8                MR. HOCHSTADT:  Your Honor, on that some

9    progress has been made.  I can report, after we

10   submitted our status report, Mylan confirmed that the

11   fair competition policy that we have was the only one

12   that was in effect during the time period that the

13   parties have been focusing on here.

14                The issue where we're at an impasse is that

15   the reference documents, there are two of them, Mylan's

16   code of business conduct and ethics and Mylan's policy

17   on reporting and investigating compliance related

18   matters, which is a referenced document in the fair

19   competition policy, they were not produced.  And Mylan's

20   position is that they didn't produce them to the

21   government regulators in response to our request for

22   those documents and so they're not giving them to us in

23   this case even though they're explicitly referenced two

24   documents in this policy.

25                THE COURT:  Does Mylan have the two

1    referenced documents?

2          MS. DELONE:  We can -- we've talked to some

3    folks at Mylan and, you know, the two referenced

4    documents certainly are part of their policies.  Your

5    Honor, our issue here is that the request that

6    plaintiffs made that the fair competition policy was

7    responsive to was a request for documents that were

8    produced to the government.  And so the fair competition

9    policy was produced to the government and so we produced

10   it here.  Those two additional documents aren't

11   responsive to any of their other requests and, you know,

12   frankly, aren't relevant to this case.  They don't have

13   anything to do with EpiPen or Auvi-Q or, you know,

14   epinephrine auto-injectors.

15         THE COURT:  Well, have you objected to

16   producing them?

17         MS. DELONE:  We responded to plaintiffs'

18   letter request and said in our letters that, you know,

19   any additional documents aren't responsive to their

20   requests.

21         THE COURT:  All right.

22         MS. DELONE:  If they'd like to serve a

23   request these would be responsive to, then we can

24   certainly, you know, take a look at it and object to the

25   extent necessary and produce if there are responsive

1    documents.

2              THE COURT:  So when you said -- when Mylan

3    said they were taking this one under advisement, are you

4    telling us now you've taken it under advisement and

5    you're not going to produce the referenced documents?

6    Is that what you're saying?

7              MS. DELONE:  So I think our response where

8    we said we would take it under advisement was just

9    responding we had just gotten their letter asking for

10   this document.  So we were looking into whether there

11   were any other fair competition policies.  You know, it

12   was in response to this whole issue.  So we did take it

13   under advisement and confirmed that there were no

14   additional fair competition policies, you know, related

15   to the specific one we had produced and also looked into

16   -- at the time we didn't know what the other referenced

17   documents even were that they were referring to or if

18   they might have been produced to the government.  So we

19   were -- we were looking into that in response to their

20   letter.

21             THE COURT:  All right.  Well, it sounds like

22   possibly the parties need to confer further or instruct

23   that if you believe there's something out there that

24   they have not produced that's responsive, you're going

25   to have to file a motion to compel.

1          MR. HOCHSTADT:  Your Honor, if we need to

2   add this to the motion to compel that we're going to be

3   filing, we're happy to.  Just so the record is clear,

4   this is -- we sent a letter on this on July 24th.  So it

5   wasn't like it was sent right before the status report.

6   And we did have a Request for Production No. 19 that

7   asks for all documents concerning competition in the

8   sale for EAI devices.  And, you know, as we've been

9   proving up in this case, Mylan was supposed to but

10  didn't engage in lawful conduct to act with integrity in

11  a truthful and accurate manner.  So that's what these

12  documents go to and we want to cross-examine their

13  witnesses with it.  That's why they don't want to give

14  it.

15         THE COURT:  It sounds like the parties have

16  not discussed this as they need to and you need to

17  confer further.  You know, I'm concerned this -- this

18  letter brief -- what started as a letter briefing is

19  turning into a dumping to assert all kinds of issues,

20  and I'm not willing to expand it further.

21         This issue, I think, is something that seems

22  minor and the parties have not conferred.  So I want you

23  all to go back and confer and see if you can resolve it.

24  And if you need to file a motion, you'll have to file a

25  separate motion to compel.

```
1              MR. HOCHSTADT:  Thank you, Your Honor.

2              MS. DELONE:  Thank you, Your Honor.

3              THE COURT:  All right.  Then we're down to

4    interrogatory responses to Sanofi.

5              MR. HOCHSTADT:  Your Honor, Eric Hochstadt

6    again from Weil.

7              THE COURT:  Yes.

8              MR. HOCHSTADT:  Just very briefly on this.

9    This is just an issue -- really a supplementation.

10   Mylan had asked us to supplement our interrogatory

11   responses back in June and we did it by the end of June

12   so that they had them in advance of our first 30(b)(6)

13   witness and certainly now in advance of the four

14   30(b)(6) witnesses they've had.

15             And with Mylan's 30(b)(6) witnesses

16   upcoming, Mylan told us on July 20 they intend to amend

17   their interrogatory response within the next few weeks.

18   It's been a few weeks and we still have nothing.  We

19   just need to get those before the 30(b)(6) depositions

20   start.

21             THE COURT:  Mylan, how soon can you get

22   those amended interrogatory responses to Sanofi?

23             MR. FOSTER:  Your Honor, this is David

24   Foster.  I think we could get them to them by the end of

25   next week by the 17th.
```

1            THE COURT:  And that's before the 30(b)(6).

2     Is that sufficient, Mr. Hochstadt?

3            MR. HOCHSTADT:  No, that's not before the

4     30(b)(6) I believe.  I believe -- excuse me, right, the

5     first one coming -- next one coming up is August 22, so

6     that would be sufficient.

7            THE COURT:  Okay.  All right.  David, get

8     the written responses to Sanofi to the interrogatory --

9     these interrogatory responses three through six no later

10    than -- what date did you say?  17th?

11           MR. FOSTER:  Yes, Your Honor.

12           THE COURT:  Okay.  August 17th.

13           MR. HOCHSTADT:  Thank you, Your Honor.

14           THE COURT:  Okay.  Confidentiality

15    designations or D designations perhaps.  It looks like

16    maybe the parties have not conferred on that, is that --

17    is this teed up or the parties need to confer?

18           MR. HOCHSTADT:  Your Honor, this is Eric

19    Hochstadt from Weil.  We have met and conferred several

20    times on this.  We're at an impasse on Mylan's

21    designations for documents, and so we're planning to

22    file a motion to de-designate next week on that subject.

23           THE COURT:  Okay.  Good.  So you will file

24    that by --

25           MR. HOCHSTADT:  Next week.  We'll get it

1    there by next Friday, Your Honor.

2         THE COURT:  Okay.  By August 17th.

3         MR. LEVIN:  Your Honor, this is Mr. Levin,

4    just one brief point on that.  Obviously they're free to

5    file whatever motion they think they need to file.  I

6    will note that the from our point of view the process

7    was not complete on this issue.  The last -- the last

8    thing that happened on this was Mr. Hochstadt sent us a

9    letter requesting that we de-designate certain

10   documents.  We did.  And I think there are something

11   like five documents where we declined to change the

12   designations.  We sent that letter on July 13th and

13   haven't heard a word since -- from the plaintiff since

14   then and this issue then popped up for the first time on

15   the status report.

16         So I don't candidly know, Eric, what exactly

17   you're even planning to move on next week.  But from our

18   point of view, if we're talking about five documents

19   here, it may be worth meeting and conferring further.

20         THE COURT:  All right.  You guys talk to

21   each other before you file anything, Eric.  Okay.

22         MR. HOCHSTADT:  Sure.  Will do.

23         THE COURT:  Have another conversation.  Make

24   sure you've touched -- covered all the bases and you --

25   I mean, I don't want you to file anything unless you've

1   exhausted your efforts to resolve.

2             MR. HOCHSTADT:  Understood.

3             THE COURT:  All right.  Okay.

4             All right.  Then I think we're down to

5   Mylan's issues with Sanofi discovery under 4(a) and (b)

6   and I think those are going to be in the briefing you do

7   for us next week; is that correct?

8             MR. SECHLER:  Yes, Your Honor.  We covered

9   those issues already.

10            THE COURT:  All right.  Five is Sanofi

11  motions for remand.  Sanofi is that kind of

12  informational?

13            MR. BUCHWEITZ:  Yes, Your Honor.  We just

14  wanted to flag that, you know, we're -- as you know,

15  we're ordered by -- this is Yehuda Buchweitz, sorry --

16  by November 30 to move for suggestion of remand and

17  propose an expert schedule.  We have met and conferred

18  with Mylan.  They are not going to stipulate to the --

19  to the suggestion of remand, so there will be a motion

20  on that.  I expect that it won't be November 30 but it

21  will be earlier, probably on -- as soon after August 31

22  as we can.  Hopefully November 1 just because the

23  schedule is -- is going to be a challenge if there's

24  going to be a contested motion for a suggestion of

25  remand, and then it needs to be ruled on and then it

1    needs to go to the JPML.

2              THE COURT:  Right.

3              MR. BUCHWEITZ:  Potentially be objected and

4    ruled on.  So we're going to try to get that as quick as

5    we can.

6              The other issue is just in that, the expert

7    schedule pending the motion for remand but that is set

8    out in Scheduling Order No. 2, we've made a proposal on

9    that.  Mylan has -- has suggested to us that they would

10   like to tie it up to the class schedule.  We don't agree

11   to that, the class doesn't agree to that, and we're --

12   we're, you know, awaiting a counter proposal from Mylan

13   and we hope to be able to come to some agreement on that

14   and submit something.  But if we're not, then that will

15   have to go into the same application.

16             THE COURT:  Okay.  All right.  Well, I

17   appreciate you're targeting to file early on the motion

18   to remand and related issue.  So that will be helpful if

19   you can do that.

20             MR. BUCHWEITZ:  Thank you.

21             THE COURT:  Then the last item on the agenda

22   is third party discovery motions.  Terese and I are

23   mindful of the remaining outstanding third party

24   motions.  The kaléo order will be out later today or

25   tomorrow.  So that one will come off the list, and the

1    other stay tuned.  We're aware they are there and we

2    will be getting orders out relatively soon.

3              So -- and I will also note that, let's see,

4    resolved today ECF 855, that's the Coury -- Mylan's

5    motion for protective order with regard to Robert Coury,

6    and we set a briefing schedule for 846, which is the

7    Brandicourt deposition, Sanofi's motion for protective

8    order.  So we're getting those moving.

9              And I have a list of the other pending third

10   party motion to compel issues.  So, as I said, we need

11   some briefing with those.  Is there anything in

12   particular you all want to highlight for us with regard

13   to those third party discovery motions?

14             MR. O'MARA:  Your Honor, this is Brian

15   O'Mara.  I'm sorry, Phil, go ahead.  I can follow up at

16   the end.

17             MR. SECHLER:  No, go ahead, Mr. O'Mara.

18   This is Phil Sechler and I'm happy to go after you.

19             MR. O'MARA:  Yeah, this is Brian O'Mara for

20   the class plaintiffs.  I just have one update on two of

21   the orders that the -- that the court had issued with

22   respect to Anthem and Humana.  Anthem -- Anthem produced

23   its documents by the court-ordered deadline with one

24   further production of data that was made earlier this

25   week.

1            And with respect to Humana, the court's

2    aware that there was a July 2nd production deadline.

3    They did not complete production by that date.  They

4    asked for an additional -- an extension to produce

5    documents beyond that date.  The court granted them

6    until July 23rd; however, the -- they didn't meet that

7    date either and 73 percent of the documents that -- that

8    Humana produced in response to that order were produced

9    after the July 23rd deadline.  But we've now received

10   confirmation that they believe their production is now

11   complete.

12            THE COURT:  Is not complete?

13            MR. O'MARA:  It is now complete after --

14   after I think the --

15            THE COURT:  Okay.

16            MR. O'MARA:  -- the last -- on July 27th

17   they sent the last production of the majority of the

18   documents and -- and they indicated at that time that

19   the production is complete.

20            THE COURT:  Okay.  Good.  Thank you, Brian,

21   for that update.

22            MR. SECHLER:  Your Honor, this is Phil

23   Sechler.  I just wanted to also point out that, you

24   know, we are working with the third parties, PBMs and

25   the payors.  Given the allegations that plaintiffs have

1   made in this case, they are very important witnesses,

2   but we can't schedule their depositions until we get the

3   documents which we're really working hard to do.

4              So, in any event, we have a lot of work cut

5   out for us in the remaining months of the discovery

6   period because those are really important depositions.

7   So we're doing what we can to get the documents from the

8   PBMs and the payors.  I just wanted to point out, Your

9   Honor, that that was happening and it's been a little

10  bit of a challenge.

11             THE COURT:  All right.  Thank you for that.

12  Okay.  Terese, anything else you can think of?  Okay.

13             All right.  Anything else?  Anybody for the

14  good of the order?  Okay.

15             MR. LEVIN:  Not.

16             MR. DAVIDSON:  Not on behalf of the class

17  plaintiffs, judge.

18             THE COURT:  All right.  Thank you all for

19  your attention and perseverance.  I know this is a long

20  call and know there's a lot to be done in the case and

21  I'm sure it feels a bit stressful.  So good luck with

22  everything and we will try and move quickly on the

23  filings that you all make and we'll look forward to

24  probably seeing you and at least talking to you on

25  September 13th.  Okay.  Take care.  Thank you.

1          (Proceedings adjourned.)

2

3                  CERTIFICATE

4      I certify that the foregoing is a correct

5  transcript from the record of proceedings in the

6  above-entitled matter.

7      DATE:  August 10, 2018

8
                    /s/Kimberly R. Greiner
9                   KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
                    United States Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25