# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION<br><br>**This Document Relates to All Cases** | Case No. 2:17-md-02785-DDC-TJJ (MDL 2785)<br><br>Hon. Daniel D. Crabtree<br><br>Hon. Teresa J. James |

**THE MYLAN DEFENDANTS' BRIEF REGARDING SANOFI'S PRODUCTION OF POST-AUGUST 2016 MATERIALS, OBJECTION TO PLAINTIFFS' NOTICE OF 30(b)(6) DEPOSITION, AND OBJECTION TO REQUEST FOR PRODUCTION 75**

Pursuant to the Court's August 10, 2018 Order (Dkt. 872), the Mylan Defendants (collectively "Mylan") submit this brief regarding three outstanding discovery issues discussed during the August 9, 2018 status conference.

## I. SANOFI SHOULD BE COMPELLED TO PRODUCE POST-AUGUST 2016 DISCOVERY.

Plaintiffs have demanded that Mylan produce post-August 2016 information, but Sanofi improperly refuses to produce *any* reciprocal discovery on its four insulin drugs (Apidra, Lantus, Soliqua, and Toujeo) that the Court deemed relevant. On June 28, 2018, when Mylan responded to Plaintiffs' request for certain post-August 2016 discovery, its counsel asked for "Sanofi's assurance that it similarly will produce" documents dated after August 2016 relating to these four drugs, including final rebate agreements and documents sufficient to show formulary coverage, rebates, and market share in 2017.[1] But Sanofi has steadfastly refused to produce any such discovery—even refusing on August 10 to produce 2017 rebate and formulary information for these drugs limited to the Top 20 payors. Sanofi should not be permitted to have it both ways.[2]

First, unlike with EpiPen-related allegations, the Court has not previously considered the appropriate cut-off date for discovery on Sanofi's four insulin drugs. At the time of the Court's April 2 Order (Dkt. 435) requiring Sanofi to produce "documents relating to rebates it has offered for Apidra, Lantus, Soliqua, and Toujeo," the parties had mutually agreed to a discovery cutoff of August 2016—a parameter that framed the parties' meet-and-confer discussions on all issues then under discussion, including Mylan's request for discovery into non-EAI products. Plaintiffs reneged on this agreement one month later on May 14, 2018, when they served their

---

[1] *See* Ex. E (June 28, 2018 letter from P. Sechler to Y. Buchweitz) at 1. Mylan's June 28, 2018 letter also sought post-August 2016 financial statements for Sanofi Aventis U.S. LLC and Lantus, Toujeo, Apidra, and Soliqua, but Mylan has agreed to drop this request in exchange for Plaintiffs' agreement to drop their RFP No. 76. *See* Ex. F (July 6, 2018 letter from E. Hochstadt to P. Sechler) at 2 (proposing to drop RFP No. 76 in exchange for Mylan dropping its request for post-2016 financial information).

[2] Although Sanofi has questioned whether all the requested post-August 2016 information was encompassed by Mylan's previous document requests, Mylan's counsel on June 28, 2018 requested this information in writing and expressly asked: "If you require formal service of additional document requests before agreeing to produce this information, then please let us know." No request for formal service was thereafter made.

Second Set of Coordinated Requests for the Production of Documents expressly seeking information after August 2016.  Thus, at the time of the Court's Orders regarding Sanofi's insulin drugs (Dkt. 435 & 455), no issue had been presented to the Court as to the appropriate end date for discovery into Sanofi's non-EAI products.

<u>Second</u>, information on rebates that Sanofi offered on its insulin drugs (and the effect of those rebates on formulary coverage and market share) after August 2016 is relevant for the same reasons the Court ordered such discovery in the first place—to "provide relevant information concerning the structure and circumstances of the industry," and "discovery of the rebate agreements that Sanofi claims constitute lawful, procompetitive competition." Dkt. 435 at 9.  Indeed, such discovery is even more important given that Plaintiffs now seek discovery on EpiPen® products after August 2016.  *See infra.* §§ II. & III.  Any evidence on Mylan's post-August 2016 rebates must be put into context, and the requested discovery will provide "a factual baseline" of common and acceptable industry practice after August 2016.  *JBDL Corp. v. Wyeth-Ayerst Laboratories, Inc.,* No. C-1-01-704, 2004 WL 7081790, at *6-7 (S.D. Ohio Jan. 7, 2004).  Application of the goose/gander rule here would assure not only reciprocity but also that evidence of the parties' post-August 2016 rebates could be readily compared.

<u>Third</u>, Sanofi has not at this point deliberately produced or even searched for post-August 2016 information concerning its four insulin drugs.  Thus, although Sanofi claims that some documents from the 2017 timeframe were produced, the selection of those documents was, at best, happenstance and incomplete.  Only a complete and intentional production of post-August 2016 information would serve the purpose of providing representative information "concerning the structure and circumstances of the industry."  Dkt. 435 at 9.

**II.    THE COURT SHOULD SUSTAIN MYLAN'S POST-2016 OBJECTIONS TO PLAINTIFFS' 30(b)(6) DEPOSITION NOTICE.**

Mylan objects to Plaintiffs' Rule 30(b)(6) deposition notice insofar as it requests deposition testimony "for January 1, 2009 to the present." Ex. A (Third Am. 30(b)(6) notice) at 4.  Although the parties previously agreed to limit search terms for ESI discovery to January 1,

2

2009 through August 23, 2016, Plaintiffs now request limitless deposition testimony beyond this time period. Mylan has offered a good faith compromise to provide the requested testimony for several 30(b)(6) topics, contingent on Sanofi providing proportional discovery for the same time period. *See* Ex. B (June 28, 2018 letter from A. Levin to R. Hudson).[3] Plaintiffs nonetheless have rejected Mylan's offer, demanding the absence of any date limits on the referenced topics plus two more. *See* Ex. C (July 11, 2018 letter from N. White to P. Sechler ("July 11 Letter") at 1).[4] Plaintiffs' request goes too far. The Court should adopt Mylan's proposed compromise.

The additional testimony Plaintiffs seek for time periods after August 2016 is irrelevant, and Mylan should not be required to provide it. It is *Plaintiffs* who assert that their claims against Mylan are based on alleged misconduct that occurred prior to Sanofi exiting the market in October 2015. Indeed, while Mylan disagrees, Plaintiffs' own position is that "[t]he core allegations of Sanofi U.S.'s complaint against Mylan—largely confirmed by discovery to date—center around events that occurred before *2014*." Dkt. 846 (Sanofi's Mot. for Prot. Order) at 3 (emphasis added). This is among the reasons why Plaintiffs have accepted the limit on ESI productions to a period before August 2016. Plaintiffs have provided no basis for certain deposition testimony about later periods now.

In their status report, Plaintiffs made only one unpersuasive argument in response: namely, that Mylan supposedly conceded the relevance of all post-2016 discovery in its motion to compel documents from kaléo. *See* Class Plaintiffs' Status Report (Aug. 2, 2018) at 2. But Mylan's argument in that earlier filing was that specific post-2016 kaléo documents were "relevant because those materials provide a distinct opportunity to rebut Sanofi's allegations that Mylan is responsible for Auvi-Q's competitive struggles." Dkt. 559 (Reply In Supp. of kaléo

---

[3]   Mylan offered testimony for Topic 2 (negotiation and execution of agreements with Third Party Payors) "[t]hrough a reasonable period prior to the June 22, 2018 service date of the Second Amended Notice of Deposition," and for Topics 5 (market share) and 6 (financial statements) "[t]hrough December 31, 2017 with respect to actual market share and financial statements (if any)."

[4]   Plaintiffs want no date limits for Topics 2 (Third Party Payors), 5 (market share), and 6 (financial statements), and also want no date limits on Topics 3 (research, business, and strategy plans concerning the competitive landscape) and 8 (Mylan's EpiPen4Schools® program.)

3

Mot. to Compel) at 2. Mylan did not somehow claim that *all* post-2016 discovery was relevant; rather, it claimed that kaléo's specific conduct was relevant because kaléo's potential successes with Auvi-Q could rebut Sanofi's claim that Mylan, rather than Sanofi, caused Sanofi's failure.

To be sure, certain data and related testimony after August 2016 could be relevant, such as actual market share information. In fact, what *actually* happened after Sanofi stopped selling Auvi-Q disproves Plaintiffs' antitrust theory, because it shows (among other things) that Mylan's market share declined while prices remained flat—exactly the opposite of what one would expect if Mylan had engaged in anticompetitive exclusionary conduct. Mylan has agreed to provide testimony on topics such as these, contingent on Sanofi providing reciprocal testimony.

Plaintiffs' request for more should be denied. Plaintiffs have not explained why topics like 2018 business plans or EpiPen4Schools® documents created *years* after Sanofi stopped selling Auvi-Q are relevant to their claims or defenses.[5] Additionally, Mylan should not have to provide testimony after August 2016 unless Sanofi provides reciprocal discovery. *See* § I., *supra*. As such, the Court should sustain Mylan's date range objections to the 30(b)(6) notice.

### III. THE COURT SHOULD SUSTAIN MYLAN'S OBJECTION TO RFP 75.

RFP 75 seeks "[d]ocuments sufficient to show projected rebates and market shares for EAI Drug Devices through 2025, including, but not limited to, the EpiPen® and Auvi-Q®." On June 20, Mylan objected to RFP 75 on various grounds, but offered to produce material showing "actual rebates and market shares for EAI Drug Devices in 2017." Ex. D (Mylan RFP Resps.) at 7-8. Plaintiffs rejected this approach and insisted that the requested projections are relevant to a damages model in which Sanofi would still be competing in the EAI market. *See, e.g.*, Sanofi Status Report (Aug. 2, 2018). Plaintiffs' request is flawed and should be denied.

---

[5] To the extent Plaintiffs contend that these topics are relevant to their damages analyses, Mylan incorporates by reference its discussion of this issue below in connection with RFP 75. Plaintiffs also have argued that Mylan's alleged later conduct is relevant because Mylan supposedly changed the language of certain schools forms after "the New York Attorney General launched its investigation into the EpiPen4Schools program in September 2016." July 11 Letter. As noted during the August 9 hearing, this assertion is false. Given that Mylan changed the language at issue both before the NYAG launched its investigation and the August 23, 2016 ESI cut-off, this cannot be a basis for seeking 30(b)(6) testimony later in time.

4

As a threshold matter, Mylan has already produced numerous documents containing the kinds of projections that Plaintiffs seek following extensive ESI searches within the ESI time frame. For example, document MYEP00510647, created in June 2016, includes retail market share projections for every epinephrine auto-injector through 2021. It also projects potential generic competition and the percentage of market growth over that time. *Id*. at 124, 128. Thus, this dispute is *only* about projections that Mylan first created after August 2016—nearly six months after Sanofi left the marketplace, and nearly ten months after Sanofi recalled Auvi-Q.

"[W]hen the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request." Dkt. 869 at 4-5. Plaintiffs have not met their burden. Plaintiffs say they need projections created after 2016 for a damages model that would show Sanofi still competing in the market. But any post-2016 projections are premised on reality—namely, Sanofi *not* competing in the market, and in turn, a changed marketplace. Sanofi has not sold Auvi-Q for nearly three years and kaléo now sells the product for nearly $4,500. Sanofi did not, as far as Mylan knows, engage in this type of pricing. Therefore, the inputs and assumptions for any real-world projections made by Mylan after August 2016 are irrelevant to some hypothetical world where Sanofi is still in the industry.

In fact, this Court recently articulated that discovery cannot be premised on an assumption that today's marketplace is the same as it was when Sanofi sold Auvi-Q. *See id*. at 11 (rejecting discovery from kaléo which "presumes that 'industry practices' were the same while Sanofi was in the industry as they are now"). Mylan produced pre-2016 projections because they reflected business assumptions based on reality. Any later projections would be predicated entirely in a world absent Sanofi, and Plaintiffs have not met their burden to show that such documents could be relevant or proportional to the needs of the case.

Given that Mylan has already produced numerous responsive documents created before August 2016, and has made a contingent offer to produce actual rebate and market share data through 2017, the Court should sustain Mylan's objections to Plaintiffs' RFP 75.

5

Dated: August 15, 2018          Respectfully submitted,

/s/ Philip A. Sechler
Philip A. Sechler
Kathryn S. Zecca
Lee Turner Friedman
Jessica Arden Ettinger
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street NW, Suite 411 L
Washington, District of Columbia 20006
Telephone:  (202) 775-4500
Fax:  (202) 775-4510
psechler@robbinsrussell.com
kzecca@robbinsrussell.com
lfriedman@robbinsrussell.com
jettinger@robbinsrussell.com

/s/ Adam K. Levin
Adam K. Levin
David M. Foster
Carolyn DeLone
Kathryn M. Ali
HOGAN LOVELLS US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
adam.levin@hoganlovells.com
david.foster@hoganlovells.com
carrie.delone@hoganlovells.com
kathryn.ali@hoganlovells.com

/s/ Brian C. Fries
Brian C. Fries (15889)
James Moloney (23786)
LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Facsimile: (816) 292-2001
bfries@lathropgage.com
jmoloney@lathropgage.com

*Counsel for the Mylan Defendants*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on August 15, 2018 on counsel of record through Liaison Counsel and electronically filed with the clerk of the court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Philip A. Sechler*
Philip A. Sechler