# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF KANSAS**

| | |
|---|---|
| In Re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | C.A. No. 17-md-2785-DDC-TJJ |

**NON-PARTY TEVA PHARMACEUTICAL USA, INC.'S**
**RESPONSES AND OBJECTIONS TO PLAINTIFFS' SUBPOENA**

Pursuant to Federal Rule of Civil Procedure 45, and, as agreed, Non-Party Teva Pharmaceuticals USA, Inc. ("Teva USA") hereby objects and responds to the Subpoena dated August 13, 2018 (the "Subpoena"), for which Teva USA accepted service after the close of business on August 15, 2018, issued by the Plaintiffs in 17-md-2785-DDC-TJJ (D. Kansas) (the "Action"), and all categories of Document Requests (the "Requests"), Definitions, and Instructions as follows:

**GENERAL OBJECTIONS**

Teva USA makes the following General Objections to each and every Definition, Instruction, Topic, and Request made in the Subpoena, and these General Objections are hereby incorporated into Teva USA's Response to each and every Request. To the extent that any General Objection is not raised in any particular Response, Teva USA does not waive that General Objection.

1.  Teva USA objects to each Definition, Instruction, and Request to the extent it seeks documents and/or information irrelevant and immaterial to the claims and/or defenses of any party in this Action.

2.      Teva USA further objects to each Definition, Instruction, and Request to the extent it seeks discovery of issues other than the timing of FDA's approval of Teva USA's EpiPen ANDA.  On August 20, 2018, the Court issued a Memorandum and Order addressing, among many other issues, what the Tenth Circuit describes as the "threshold inquiry" of Plaintiffs' antitrust standing to assert antitrust claims based on allegations concerning the settlements of the EpiPen patent litigation and the Nuvigil patent litigation.  The topic relevant to Teva USA was the Court's analysis of Defendants' argument that Plaintiffs have not alleged plausibly that Defendants caused, through allegedly improper patent settlements or otherwise, any delay in the sale of potential competitors' epinephrine auto-injector ("EAI") because Teva USA had not been able to secure FDA approval for its EpiPen ANDA product, which is required before Teva USA could lawfully market that product in the United States.  In its decision, the Court analyzed the question solely based on the pleadings and determined that whether Defendants' alleged reverse payment settlements with Teva USA and others caused Teva USA to delay securing FDA approval was a factual question not appropriate to dismiss at the pleading stage because factual evidence could demonstrate that Teva USA could have received FDA approval sooner than it did.  Dkt. No. 896 at 36-37.

For purposes of discovery, however, the Court properly can and should sequence discovery to address the discrete "threshold inquiry" prior to requiring non-party Teva USA to undertake burdensome, expensive, and disproportionate discovery that is almost certain to be irrelevant.  The primary question to determining whether the factual evidence supports Plaintiffs' claim that Defendants caused delay in Teva USA's securing of FDA approval for its EpiPen ANDA is whether Teva USA indeed delayed securing such approval and/or whether there is sufficient evidence to support a finding that FDA would have approved Teva USA's EpiPen

2

ANDA prior to the licensed entry date for Teva's ANDA in the settlement of the EpiPen patent litigation. Based on the Court's analysis, if Teva USA did not delay securing FDA approval of its EpiPen ANDA product, and/or if the evidence does not support a finding that FDA would have approved Teva's EpiPen ANDA prior to the licensed entry date, Plaintiffs' claims related to patent settlement agreements between Defendants and Teva USA caused that alleged delay fail for lack of antitrust standing.

As it relates to this subpoena, if the evidence defeats such a showing, then each Definition, Instruction, and Request, to the extent it seeks documents and/or information beyond this threshold issue, is irrelevant and immaterial, and requiring production of any documents on other topics would be unduly burdensome and disproportionate. Teva USA has produced and will produce documents comprising its entire correspondence with the FDA concerning its EpiPen application and other related documents, which demonstrate that Teva actively pursued FDA approval for its EpiPen ANDA product both before and after the licensed entry date of the alleged reverse settlement payments, and that FDA still did not approve Teva's ANDA until August 16, 2018. Teva USA objects to producing any further documents in response to this Subpoena until after the Court determines, based on the record relating to the timing of FDA approval of Teva's EpiPen ANDA, that further discovery is warranted.

2. Teva USA objects to each Definition, Instruction, and Request to the extent it is overly broad, unduly burdensome, and/or intended to cause annoyance, embarrassment, undue expense, and/or oppression. At this time, each Definition, Instruction, and Request not relevant to Teva USA's securing approval for its EpiPen ANDA product is unduly burdensome in that it seeks over a decade's worth of irrelevant competitively sensitive information.

3.      Teva USA objects to each Definition, Instruction, and Request to the extent it seeks to impose obligations on Teva USA that are broader and/or more burdensome than, and/or otherwise inconsistent with, the Federal Rules of Civil Procedure, the local rules of the United States District Court for the District of Kansas, and/or the rules of Judge Crabtree.  Unless instructed otherwise, Teva USA shall interpret each Definition, Instruction, Topic, and Request according to its ordinary and plain meaning, to the extent not inconsistent with any applicable rules.

4.      Teva USA objects to each Definition, Instruction, and Request (a) to the extent it seeks documents and/or information already in the possession of, made available to, or otherwise equally available to Plaintiff from other sources that are more convenient, less burdensome, and/or less expensive than Teva USA, and (b) because Plaintiff has not shown that it is unable to obtain these documents and/or information from parties to the litigation or other readily-available sources before requesting such documents from Teva USA, a non-party.

5.      Teva USA objects to each Definition, Instruction, and Request as overly broad, unduly burdensome, and unnecessarily costly to the extent it purports to require Teva USA, a non-party, to search its electronic documents and/or communications.

6.      Teva USA objects to each Definition, Instruction, and Request to the extent it is not proportional to the needs of the case, including (a) in light of Plaintiffs' need for—and access to—the documents and information, and (b) in light of the facts that Teva USA is not a party and that the documents and information sought are of, at most, marginal relevance.

7.      Teva USA objects to each Definition, Instruction, and Request to the extent it seeks electronically-stored documents and/or information not reasonably accessible by Teva USA because of undue burden or cost, or any other reason.  Teva USA will not search archived

4

electronic data or back-up tapes, or otherwise endeavor to restore any electronic medium, on the grounds that such searches would be unduly burdensome and costly, particularly for a non-party.

8. Teva USA objects to each Definition, Instruction, Topic, and Request to the extent it seeks documents and/or information outside of Teva USA's possession, custody, or control, including but not limited to documents and/or information in the possession, custody, or control of Teva USA's affiliates.

9. Teva USA objects to each Definition, Instruction, and Request to the extent it is vague, ambiguous, and/or otherwise incapable of reasonable ascertainment.

10. Teva USA objects to each Definition, Instruction, and Request to the extent it seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, the common interest privilege, the joint defense privilege, and/or any other applicable privilege or immunity. Inadvertent or mistaken disclosure of any privileged or otherwise protected information shall not constitute a waiver of any claim of privilege, protection, exemption, or immunity.

11. Teva USA objects to each Definition, Instruction, and Request to the extent it seeks documents and/or information subject to any order of confidentiality, protective order, privacy interest, contractual obligation, or other confidentiality obligation owed to any third party.

12. Teva USA objects to the definition of the terms "You" and "Your" in Definition No. 9 as overly broad and unduly burdensome to the extent that it includes persons and/or entities having no relevance to this action and/or over which Teva USA has no control. Teva USA will interpret any Request referencing "You" or "Your" as meaning Teva Pharmaceuticals USA, Inc., Teva Parenteral Medicines, Inc., and each of their officers, directors, and employees.

13. Teva USA objects to the definition of "Document" to the extent it includes data that is not reasonably accessible, and is overly broad, unduly burdensome, duplicative, and disproportionate to any marginal relevance, if any. Teva USA also objects to the definition to the extent it includes text and/or voice messages. Retrieval of such data involves substantial cost, is overly broad, unduly burdensome, duplicative, and disproportionate to any marginal relevance, if any.

14. Teva USA objects to the definition of the Relevant Time Period as January 1, 2007 to the present as overly broad, and any obligation on Teva USA to search for, collect, and review documents over that entire period would be unduly burdensome and disproportionate.

15. None of the objections and responses contained herein is an admission as to the truth or accuracy of any statement or characterization contained in the Subpoena, or an admission of relevance, materiality, admissibility, or existence of the discovery sought or produced. Further, no response in whole or in part to any Definition, Instruction, Topic, and Request shall be deemed to waive any applicable right, privilege, or objection.

**SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**

Subject to and without waiving the foregoing General Objections, which are incorporated by reference as if set forth fully in each and every Response, Teva USA also specifically Responds and Objects to the Requests set forth in Schedule A as follows:

**REQUEST NO. 1:**

All documents concerning Nuvigil's actual or projected market share, sales, revenues, or profits.

**RESPONSE TO REQUEST NO. 1:**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. Teva USA's

documents concerning Nuvigil's actual or projected market share, sale, revenues, or profits contain highly confidential competitively sensitive information and are irrelevant to the question of whether Teva USA delayed securing FDA approval for its EpiPen ANDA product.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 2:**

All documents showing any projections of the potential date of generic or competitor entry into the Nuvigil market.

**RESPONSE TO REQUEST NO. 2:**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. Teva USA's projections of the potential date of generic or competitor entry into the Nuvigil market are highly

confidential competitively sensitive information and are irrelevant to the question of whether Teva USA delayed securing FDA approval for its EpiPen ANDA product.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

To the extent such documents are contained in the documentation Teva USA will produce related to its efforts to secure FDA approval of its EpiPen ANDA product, Teva USA will produce them, but based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce additional documents in response to this request at this time.  By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 3:**

All documents concerning the likelihood of competitor or generic entry into the Nuvigil market.

**RESPONSE TO REQUEST NO. 3:**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit.  Teva USA's

8

documents concerning the likelihood of competitor or generic entry into the Nuvigil market contain highly confidential competitively sensitive information and are irrelevant to the question of whether Teva USA delayed securing FDA approval for its EpiPen ANDA product.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 4**

All documents concerning the potential impact of competitor or generic entry on Nuvigil market share, revenues, sales, or profits.

**RESPONSE TO REQUEST NO. 4**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. Teva USA's documents concerning the potential impact of competitor or generic entry on Nuvigil market

share, revenues, sales, or profits contain highly confidential competitively sensitive information and are irrelevant to the question of whether Teva USA delayed securing FDA approval for its EpiPen ANDA product.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 5**

All documents concerning the projected market share, sales, revenues, or profits of Mylan's Armodafinil tablets.

**RESPONSE TO REQUEST NO. 5**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. Teva USA's documents concerning the projected market share, sales, revenues, or profits of Mylan's

Armodafinil tablets contain highly confidential competitively sensitive information and are irrelevant to the question of whether Teva USA delayed securing FDA approval for its EpiPen ANDA product.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 6**

All documents concerning actual litigation costs incurred by you in connection with the litigation captioned *Cephalon, Inc. v. Mylan Pharms., Inc*., No. 09-cv-00954-GMS (D. Del. Dec. 11, 2009).

**RESPONSE TO REQUEST NO. 6**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. The request

11

seeks documents concerning litigation between Cephalon, an affiliate of Teva USA, and Mylan concerning Mylan's proposed generic version of Cephalon's Nuvigil product. As stated in the General Objections, the threshold issue is whether Mylan caused Teva USA to delay securing FDA approval for its EpiPen ANDA product. Teva USA will produce documents demonstrating that it actively pursued FDA approval both before and after the licensed entry date. Therefore, the Nuvigil litigation and/or settlement cannot have had any effect on the timing of Teva USA's entry with its proposed EpiPen ANDA product, meaning that neither the litigation nor the settlement are relevant to any issue in this case.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 7**

All documents concerning your projected litigation costs in connection with the litigation captioned *Cephalon, Inc. v. Mylan Pharms., Inc.*, No. 09-cv-00954-GMS (D. Del. Dec. 11, 2009).

**RESPONSE TO REQUEST NO. 7**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. The request seeks documents concerning litigation between Cephalon, an affiliate of Teva USA, and Mylan concerning Mylan's proposed generic version of Cephalon's Nuvigil product. As stated in the General Objections, the threshold issue is whether Mylan caused Teva USA to delay securing FDA approval for its EpiPen ANDA product. Teva USA will produce documents demonstrating that it actively pursued FDA approval both before and after the licensed entry date. Therefore, the Nuvigil litigation and/or settlement cannot have had any effect on the timing of Teva USA's entry with its proposed EpiPen ANDA product, meaning that neither the litigation nor the settlement are relevant to any issue in this case.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not

believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

### **REQUEST NO. 8**

All documents analyzing or opining on the potential outcome of the litigation captioned *Cephalon, Inc. v. Mylan Pharms., Inc*., No. 09-cv-00954-GMS (D. Del. Dec. 11, 2009).

### **RESPONSE TO REQUEST NO. 8**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit.  The request seeks documents concerning litigation between Cephalon, an affiliate of Teva USA, and Mylan concerning Mylan's proposed generic version of Cephalon's Nuvigil product.  As stated in the General Objections, the threshold issue is whether Mylan caused Teva USA to delay securing FDA approval for its EpiPen ANDA product.  Teva USA will produce documents demonstrating that it actively pursued FDA approval both before and after the licensed entry date.  Therefore, the Nuvigil litigation and/or settlement cannot have had any effect on the timing of Teva USA's entry with its proposed EpiPen ANDA product, meaning that neither the litigation nor the settlement are relevant to any issue in this case.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time.  By way of

14

further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

**REQUEST NO. 9**

All documents concerning the settlement of the litigation captioned *Cephalon, Inc. v. Mylan Pharms., Inc*., No. 09-cv-00954-GMS (D. Del. Dec. 11, 2009), including, but not limited to, analyses of settlement proposals, settlement strategies and considerations, analyses of potential effects of settlement on your business, and communications between you and Mylan concerning the settlement.

**RESPONSE TO REQUEST NO. 9**

Specific Objections: Teva USA objects to this request on the ground that it seeks documents that are not relevant to any claim or defense of any party to this lawsuit. The request seeks documents concerning litigation between Cephalon, an affiliate of Teva USA, and Mylan concerning Mylan's proposed generic version of Cephalon's Nuvigil product. As stated in the General Objections, the threshold issue is whether Mylan caused Teva USA to delay securing FDA approval for its EpiPen ANDA product. Teva USA will produce documents demonstrating that it actively pursued FDA approval both before and after the licensed entry date. Therefore, the Nuvigil litigation and/or settlement cannot have had any effect on the timing of Teva USA's

15

entry with its proposed EpiPen ANDA product, meaning that neither the litigation nor the settlement are relevant to any issue in this case.

Teva USA further objects to this request on the ground that it is unduly burdensome, overbroad, and disproportionate, particularly to the extent that it seeks to impose significant burden and expense on Teva USA, a non-party to this action.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request at this time. By way of further response, and based on the evidence Teva USA has produced and will produce concerning Teva USA's efforts to obtain FDA approval for its generic EpiPen product and the undisputed fact that FDA did not grant final approval to Teva's EpiPen ANDA until August 16, 2018, more than three years after the licensed entry date in June of 2015, Teva USA does not believe that it is – or should be – required to produce any further discovery unless and until the Court has assessed on the factual record the threshold issue of whether Plaintiffs plausibly can show antitrust standing in connection with their claims concerning Nuvigil. Teva USA reserves all rights to propound additional objections to this request if or when the Court determines that further discovery on this issue should proceed.

Based on the foregoing general and specific objections and without waiving them, Teva USA will not search for or produce documents in response to this request. Rather, Teva USA will produce documents relevant to the threshold question of whether Defendants' caused Teva USA to delay obtaining FDA approval for its EpiPen ANDA product.

Respectfully submitted,

/s/ Christopher T. Holding
Christopher T. Holding
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts  02210
Tel.:  617.570.1000
Fax.:  617.523.1231

*Counsel for Teva Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2018, I caused a copy of the foregoing Responses and Objections to be served on Arthur L. Shingler III, Esq., counsel for Plaintiffs, by email:

/s/ Christopher T. Holding
Christopher T. Holding