IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on (1) Mylan Defendants' Motion to Compel Compliance with Subpoenas Directed to Horizon Blue Cross and Blue Shield of New Jersey, Blue Cross and Blue Shield of Massachusetts, Inc., and CareFirst, Inc. (ECF No. 697) ("BCBS motion") and on (2) Mylan's Motion to Compel Compliance with Subpoenas Directed to Non-Parties Humana Inc., Humana Pharmacy Solutions, Inc., Aetna Inc. and Coventry Health Care, Inc. (ECF No. 701) ("Aetna motion"). In the BCBS motion, Defendants Mylan Inc. and Mylan Specialty L.P. seek an order requiring non-parties Horizon Blue Cross and Blue Shield of New Jersey ("Horizon"), Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS-Mass."), and CareFirst, Inc. to produce documents responsive to Mylan's subpoenas served in early March 2018. In the Aetna motion, Defendants Mylan N.V., Mylan Inc., Mylan Pharmaceuticals, Inc., and Heather Bresch, along with Defendant/Counterclaim Plaintiff Mylan Specialty L.P. seek an order requiring non-parties Aetna Inc. and Coventry Health Care, Inc. to produce documents

responsive to Mylan's subpoenas served in February 2018.[1]  The non-parties oppose the motion.

As set forth below, the Court will grant Mylan's motion.

I.      **Relevant Background**

In early March, 2018, Mylan served subpoenas on Horizon, BCBS-Mass., and CareFirst

pursuant to Fed. R. Civ. P. 45.[2]  Similarly, in February, 2018, Mylan served Rule 45 subpoenas

on both Humana entities, Aetna, and Coventry.[3]  Counsel conferred and corresponded a number

of times, and the non-parties produced additional materials.  Ultimately, two areas of

disagreement remain and are the subject of the instant motion. Counsel for Mylan and the non-

parties have communicated at length regarding their clients' respective positions on the

subpoena.  The Court finds they have complied with the requirements of D. Kan. R. 37.2.

II.     **Summary of the Parties' Arguments**

Mylan argues that Horizon, BCBS-Mass., CareFirst, Aetna, and Coventry should be

compelled to produce information responsive to Request No. 10, categories (o), (p), and (q),

which seeks data or documents of claims and other information about EAI devices related to

factors that influence subscriber premiums, the actual subscriber insurance premiums, and any

amount of the premiums paid by employers.  Mylan refers to this collective request as "Premium

Information."  Mylan has offered to narrow its request by (1) accepting the Premium Information

in whatever format each non-party keeps that information in the ordinary course of its business,

and (2) agreeing to a shorter timeframe of January 1, 2012 to present.

---

[1] Humana Inc. and Humana Pharmacy Solutions, Inc. are no longer included in the relief Mylan seeks in this motion.  *See* ECF No. 746.

[2] *See* ECF Nos. 698-2 to 698-7.

[3] *See* ECF Nos. 701-3 to 701-6.

Mylan argues that CareFirst should be compelled to produce information responsive to Request Nos. 5, 6, and 7, which seek information about the rebates that those in the pharmaceutical industry offered or received for other products, the formulary placement of those other products, and any communications discussing them. Mylan refers to this collective request as "Other Products Information." Mylan has offered to narrow these requests to seek information about four Sanofi products (Lantus, Apidra, Toujeo, and Soliqua) and to limit the responsive documents to (1) rebate agreements with Sanofi relating to those products, (2) affiliated bids, quotes, proposals, prices, rebates, discounts, incentives, price protections, reimbursements, and payments to Sanofi, and (3) any internal CareFirst communications concerning those products in the form of formulary committee meeting minutes and underlying documents from those committee meetings.

Mylan contends their requests, particularly as narrowed, seek relevant information tailored to the claims in this case, all of which can be protected under the Third Amended Protective Order.

The non-parties argue the Premium Information Mylan seeks is not available, but even if it were it is irrelevant and producing it would be extraordinarily burdensome.[4] CareFirst also argues that as a non-party absent class member, it is protected from discovery. That is the extent of CareFirst's argument in response to Mylan's effort to obtain Other Products Information.

## III.     Legal Standard

---

[4] Non-parties Aetna, BCBS-Mass., Coventry, and Horizon also object to Mylan having filed their motions in this court, as opposed to filing motions in the districts in which compliance with the subpoenas is required. The Court has consistently held that jurisdiction to rule on challenges to Rule 45 subpoenas served in this case properly resides in this district. *See, e.g.,* ECF No. 980 at 5-7 & n.23.

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[5] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[6]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[7] Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[8] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[9]

---

[5] Fed. R. Civ. P. 45(d)(1).

[6] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[7] Non-parties Aetna, BCBS-Mass., Coventry, and Horizon also object to Mylan having filed their motions in this court, as opposed to filing motions in the districts in which compliance with the subpoenas is required. The Court has consistently held that jurisdiction to rule on challenges to Rule 45 subpoenas served in this case properly resides in this district. *See, e.g.,* ECF No. 980 at 5-7 & n.23. No non-party filed a motion to quash the subpoenas in this or any other federal district court.

[8] Fed. R. Civ. P. 45(d)(3)(A).

[9] Fed. R. Civ. P. 45(d)(3)(B).

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[10] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[11] Information still "need not be admissible in evidence to be discoverable."[12] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[14] Relevancy determinations are generally made on a case-by-case basis.[15]

**IV. Analysis**

---

[10] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[11] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[12] Fed. R. Civ. P. 26(b)(1).

[13] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[14] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[15] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

The non-parties devote much of their opposition to arguing the information Mylan seeks is simply not available because they do not operate in the same manner as other Pharmacy Benefit Managers whose subpoenas the Court has examined. They assert the Premium Information is not available because their customers that are self-funded plans do not pay premiums, and their Employer Group customers set their own premiums. The non-parties argue that forcing them to create a file that links EAI device transactions to aggregate Employer Group premium amounts would go beyond the bounds of Rule 45 by requiring them to create records not kept in the ordinary course of business. Mylan demonstrates its understanding of the non-parties' customer base and offers a modification of its request to create a better fit.

      A.      **Relevance**

The non-parties argue the Premium Information is irrelevant to Mylan's defense because they do not set their premiums based solely on the cost of any particular drug product. As set out in their supporting affidavits, the non-parties set premiums based on a variety of factors, and no one can assign one particular cause to any amount of premium increase.

Mylan counters that it seeks the information not in support of a "premium pass on" defense, but to counter Class Plaintiffs' damages claims resting on allegations that consumers were injured because their insurance premiums were raised as a result of Mylan's conduct. Clearly, the Premium Information is relevant for the reasons Mylan offers.

Although CareFirst does not address the relevance of the Other Products Information, consistent with the Court's rulings in motions related to other non-party subpoenas, the Court finds rebate and formulary information related to the four Sanofi products is relevant.

      B.      **Scope of requests and burden**

Mylan has narrowed the scope of the Premium Information it seeks in response to Request No. 10, categories (o), (p), and (q) based on what it learned from the non-parties during their meet and confer sessions and through written communication. Although the non-parties continue to assert that Mylan seeks information the non-parties do not possess and documents they do not keep in the ordinary course of business, their argument is premised on the notion that the non-parties would be required to create a file that links group coverage payments to any specific EAI device transaction.

Mylan denies that it seeks to force the non-parties to create anything other than what they admittedly possess. Instead, Mylan requests the following responsive materials. For Request No. 10(o), Mylan seeks the information the non-parties detail in affidavits they filed under seal describing how they calculate premiums. The Court finds such information would be responsive to Mylan's request and should be produced.

For Request No. 10(p), Mylan asks for premium data for the non-parties' respective insured businesses through production of subscriber identification numbers and the corresponding annual premium amount (or the annual premium amount for the subscriber's employer group), in the manner maintained in the ordinary course of the non-parties' businesses. The Court likewise finds such information would be responsive to Mylan's request and should be produced.

With respect to Request No. 10(q), Mylan acknowledges that if the non-parties do not possess data regarding the amount of subscriber premiums paid by employers, as the non-parties claim, they cannot produce it. The Court takes the non-parties at their word and will not require anything further in response to this category.

The Court's order will not require the non-parties to undertake any sort of linking operation as they predicted. Accordingly, their objection that undertaking such operation would be unduly burdensome is moot.

### C. Rule 23 objection

The non-parties object to Mylan's motion on the additional ground that Mylan has not established a need for discovery that satisfies Fed. R. Civ. P. 23's limit on the scope of discovery to pre-certification absent class members. CareFirst identifies itself as a TPP that purchased, paid and/or provided reimbursement for EpiPen products, thereby making it a non-party member of the putative class whose representative is Local 282 Welfare Trust Fund. According to CareFirst, the burdens of discovery in a class action are intended to be shouldered by the class representative, while discovery requests to absent class members are generally disfavored.

CareFirst asks the Court to deny Mylan's motion as premature, and alternatively seeks a protective order halting further non-party discovery as to CareFirst.[16] The other non-parties suggest a stay of discovery might be appropriate pending the District Judge's ruling on the motions to dismiss. Those motions have been ruled, and the Court therefore declines to enter a stay.[17]

The Court is not persuaded by the non-parties' Rule 23 objection. The information Mylan seeks is relevant, and the non-parties are uniquely able to provide their own responses. Local 282's premium information is no substitute for or analog of any other third-party payors.

---

[16] ECF No. 769.

[17] ECF No. 896.

8

The Court will not deny Mylan's motions on the basis of Rule 23, nor will the Court enter a protective order as CareFirst requests.

The Rule 23 objection is the only one CareFirst raises with respect to Mylan seeking Other Products Information in Request Nos. 5, 6, and 7. Having overruled that objection, the Court will grant Mylan's motion with respect to Other Products Information.

**IT IS HEREBY ORDERED** that (1) Mylan Defendants' Motion to Compel Compliance with Subpoenas Directed to Horizon Blue Cross and Blue Shield of New Jersey, Blue Cross and Blue Shield of Massachusetts, Inc., and CareFirst, Inc. (ECF No. 697) and (2) Mylan's Motion to Compel Compliance with Subpoenas Directed to Non-Parties Humana Inc., Humana Pharmacy Solutions, Inc., Aetna Inc. and Coventry Health Care, Inc. (ECF No. 701) are granted. Non-parties Horizon Blue Cross and Blue Shield of New Jersey, Blue Cross and Blue Shield of Massachusetts, Inc., CareFirst, Inc., Aetna Inc., and Coventry Health Care, Inc. shall produce data or documents responsive to Request No. 10, categories (o) and (p), by producing the Premium Information in whatever format each non-party keeps that information in the ordinary course of its business (without creating a file that links group coverage payments to any specific EAI device transaction) for the period January 1, 2012 to present. Non-party CareFirst, Inc. shall produce data or documents responsive to Request Nos. 5, 6, and 7 by producing the Other Products Information about Sanofi products Lantus, Apidra, Toujeo, and Soliqua consisting of (1) rebate agreements with Sanofi relating to those products, (2) affiliated bids, quotes, proposals, prices, rebates, discounts, incentives, price protections, reimbursements, and payments to Sanofi, and (3) any internal CareFirst communications concerning those products in the form of formulary committee meeting minutes and underlying documents from those committee

meetings. The non-parties shall produce the responsive data or documents within **14 days** of the date of this order.

**IT IS FURTHER ORDERED** that Non-Party CareFirst, Inc.'s Alternative Motion for Protective Order (ECF No. 769) is denied.

**IT IS SO ORDERED**.

Dated this 4th day of October, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge