IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Prime Therapeutics, LLC (ECF No. 926). Class Plaintiffs seek an order preventing Non-Party Prime Therapeutics, LLC ("Prime") from redacting the identities of its Pharmacy and Therapeutics ("P&T") and Business Committee members from documents Prime produces in response to Plaintiffs' subpoena served on May 21, 2018. Prime opposes the motion. As set forth below, the Court will deny Plaintiffs' motion.

### I.  Relevant Background

On June 18, 2018, Prime served its objections and responses to Plaintiffs' subpoena, and thereafter Plaintiffs and Prime conducted eight meet and confer telephonic conferences and exchanged additional correspondence. Ultimately, Plaintiffs and Prime reached a document production agreement except for the issue raised in this motion. Prime objects to revealing the identities of its P&T and Business Committee members. Following Prime's confirmation that it would redact the identities in any documents it produced, Plaintiffs filed the instant motion. The Court finds that Plaintiffs and Prime have complied with the requirements of D. Kan. R. 37.2.

## II. Summary of the Parties' Arguments

Class Plaintiffs argue that Prime's P&T and Business Committee members are percipient witnesses in this action, and that any confidentiality concerns Prime has should be allayed by the protection of the Third Amended Stipulated Protective Order entered in this case.[1] Prime argues the identities of the non-employee members of these committees are irrelevant and are kept confidential for important reasons, including protecting the members' independence and preventing drug manufacturers from attempting to influence them. Prime further argues that the Protective Order in this case may not protect against the harm of disclosing identities.

## III. Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[2] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[3]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[4] Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets

---

[1] ECF No. 556.

[2] Fed. R. Civ. P. 45(d)(1).

[3] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[4] Prime has not filed a motion to quash the subpoena in this or any other federal district court.

forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[5] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[6]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[7] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[8] Information still "need not be admissible in evidence to be discoverable."[9] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[10] Conversely, when the relevancy of the

---

[5] Fed. R. Civ. P. 45(d)(3)(A).

[6] Fed. R. Civ. P. 45(d)(3)(B).

[7] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[8] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[9] Fed. R. Civ. P. 26(b)(1).

[10] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

3

discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[11] Relevancy determinations are generally made on a case-by-case basis.[12]

## IV. Relevancy

Prime objects that the identities of its P&T and Business Committee members are irrelevant. Prime represents, through a declaration of its Senior Director of Clinical Formulary Development,[13] that no member of Prime's P&T or Business Committees is an employee of Prime. Both committees are independent. The former is charged with functions that include the clinical threshold list development and maintenance, formulary development and maintenance, and other oversight and advisory tasks. The primary function of the latter is the design of formularies that Prime develops and recommends to its clients.

Prime takes significant steps to promote and maintain the independence of these committee members, as well as to protect the members from requests and questions from those outside the company. For instance, participation in P&T and Business Committee meetings is limited to those who have a need-to-know basis to attend, and those individuals must sign a confidentiality agreement before attending any meetings. In addition, the rules governing each Committee require that the identity of its members be kept confidential and expressly prohibit its

---

[11] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[12] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[13] ECF No. 988-2.

4

members from disclosing their or any other member's membership in the committee other than as necessary or as required by law.

Each member of the P&T Committee is required to annually sign a Potential Conflict of Interest Disclosure and Confidentiality Statement acknowledging the proprietary and non-public nature of the information they receive and consider during committee meetings. These Statements are reviewed for compliance with federal and state regulatory requirements for conflict of interest and industry accreditation standards.

Similarly, members of the Business Committee are subject to signing a nondisclosure agreement at each meeting acknowledging the proprietary and non-public nature of the information they receive and consider, and they do sign a Statement of Disclosure prior to beginning Business Committee activity. Prime reviews these Statements to determine whether a member has a significant conflict of interest that would preclude committee membership.

In their opening motion and in their reply, Plaintiffs offer the single argument that they may need to obtain deposition or trial testimony of the individuals directly responsible for making EAI-device formulary placement and rebate-related decisions. Prime spells out some of the categories of documents it has agreed to produce, which include (1) its P&T and Business Committee meeting minutes related to EAI drug devices and documents presented during those meetings, with members' names redacted; (2) documents sufficient to identify Prime employees with primary responsibility for negotiations with EAI drug device manufacturers; (3) Prime's national commercial formularies; (4) claims data related to EAI devices; and (5) rebate data related to EAI devices. It appears Prime will be producing information from which Class Plaintiffs will be able to discern the identities of Prime employees who have knowledge of EAI-device formulary placement and rebate-related decisions.

5

With respect to confidentiality, Prime states that when preparing documents such as minutes of P&T and Business Committee meetings, the restricted group of Prime employees who know the committee members' identities distribute blinded minutes that remove all members' names and, in some instances, replace them with generic identifiers such as "physician member" or "plan sponsor member."[14] In reply, Plaintiffs merely assert that confidentiality is not a basis for withholding information from discovery. The Court does not question Plaintiffs' assertion as a matter of law, but notes the uncontroverted facts Prime presents demonstrate the protective order in this case may be ineffective to assure confidentiality. Moreover, the basis for the Court's ruling is not confidentiality, but lack of relevance.

Consistent with this Court's prior ruling on this issue,[15] the Court finds the identity of the external P&T and Business Committee members is not relevant on its face, nor have Plaintiffs otherwise demonstrated its relevancy.

**IT IS HEREBY ORDERED** that Class Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Non-Party Prime Therapeutics, LLC (ECF No. 926) is denied.

Dated this 5th day of October, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[14] *Id.*

[15] *See* ECF No. 717.