```
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF KANSAS
 2

 3  IN RE:  EPIPEN                    Docket No. 17-md-2785
    (Epinephrine Injection, USP)
 4  Marketing, Sales Practices
    and Antitrust Litigation
 5                                    Kansas City, Kansas
                                      Date:  10/10/2018
 6
    .........................
 7
                TRANSCRIPT OF STATUS CONFERENCE
 8
                          BEFORE
 9
            THE HONORABLE DANIEL D. CRABTREE
10          UNITED STATES DISTRICT COURT JUDGE

11            THE HONORABLE TERESA J. JAMES
              UNITED STATES MAGISTRATE JUDGE
12

13  APPEARANCES:

14  For the Class Plaintiffs:

15  Rex A. Sharp                  Gretchen F. Cappio
    Ryan C. Hudson                Keller Rohrback
16  Rex A. Sharp, PA              1201 3rd Avenue
    5301 W. 75th Street           Suite 3200
17  Prairie Village, KS 66208     Seattle, WA 98101

18  Warren Burns
    Amanda Klevorn - LA
19  Burns Charest, LLP
    900 Jackson Street
20  Suite 500
    Dallas, TX 75202
21

22

23

24

25
```

```
 1   APPEARANCES (continued):

 2   For Sanofi-Aventis US, LLC Plaintiffs:

 3   Yehuda L. Buchweitz
     Eric S. Hochstadt
 4   Weil, Gotshal & Manges, LLP
     767 Fifth Avenue
 5   New York, NY 10153

 6   For Local 282 Welfare Trust Fund Plaintiffs:

 7   Stuart A. Davidson
     Brian O. O'Mara - DC
 8   Robbins Geller Rudman & Dowd LLP
     120 East Palmetto Park Road
 9   Suite 500
     Boca Raton, FL 33432

10

11   For the Mylan Defendants:

12   Brian C. Fries               Adam K. Levin
     James Moloney                David M. Foster
13   Lathrop & Gage, L.C.         Carolyn A. DeLone
     2345 Grand Boulevard         Kathryn M. Ali
14   Suite 2800                   Hogan Lovells US LLP
     Kansas City, MO 64108        555 Thirteenth Street, NW
15                                Washington, DC 20004

16   Philip A. Sechler
     Ralph C. Mayrell
17   Robbins, Russell, Englert, Orseck, Untereiner
      & Sauber LLP
18   1801 K Street, N.W.
     Suite 411L
19   Washington, D.C. 20006

20

21   For the King Pharmaceuticals, Inc., Meridian Medical
     Technologies, Inc. and Pfizer Defendants:

22   Raj Gandesha                 Joseph Rebein
     White & Case LLP             Shook, Hardy & Bacon LLP
23   1221 Avenue of the           2555 Grand Boulevard
     Americas                     Kansas City, MO 64108
24   New York, NY 10020

25
```

1                          INDEX

2    Motion to Compel Mylan's Privilege Log          7

3    Sanofi's Motion for Protective Order and        14
     Mylan's Cross-Motion to Compel Sanofi
4
     Class Plaintiffs' Motion for Compel             21
5    Production of Documents From Mylan

6    Class Plaintiffs' Discovery Issues With         30
     Mylan
7
     Motion to Compel Local 282 Deposition and       35
8    Document Production/PFS Responses

9    Class Plaintiffs' Motion for Relief for         58
     Mylan's violations
10
     Dismissal of Class Plaintiffs' West            62
11   Virginia Claims

12   Third Party Discovery Issues                   65

13   Expert Schedule in the Sanofi Case             72

14   September 21st Order Issues                    78

15   Page Limits for the Certification              79
     Briefing
16

17

18

19

20

21

22

23

24

25

```
 1               (Court called to order.)
 2               JUDGE CRABTREE:  All right.  We're on the
 3   record in Case No. 17-md-2785.  It's captioned In re:
 4   EpiPen, Marketing Sales Practices and Antitrust
 5   Litigation.  Let me start by hearing the appearances for
 6   the class plaintiffs of those people who anticipate
 7   talking today.
 8               MR. BURNS:  Warren Burns with Burns Charest,
 9   Your Honors.
10               MS. CAPPIO:  Good afternoon, Your Honors.
11   Gretchen Cappio of Keller Rohrback.
12               MR. O'MARA:  Good afternoon, Your Honors.
13   Brian O'Mara of Robbins, Geller, Rudman & Dowd.
14               MS. PRITZKER:  Also Elizabeth Pritzker of
15   Pritzker Levine.
16               MS. KLEVORN:  Good afternoon.  Amanda
17   Klevorn of Burns Charest.
18               MR. DAVIDSON:  Good afternoon, Your Honors.
19   Stuart Davidson from Robbins Geller on behalf of the
20   class plaintiffs.
21               MR. SHARP:  Good afternoon, Your Honors.
22   Rex Sharp.
23               JUDGE CRABTREE:  Last chance.  Okay.
24   Thanks.  And good afternoon to all of you.
25               And then for the Sanofi plaintiff.
```

1              MR. BUCHWEITZ:  Good afternoon, Your Honors.

2     Yehuda Buchweitz of Weil, Gotshal & Manges.  Eric

3     Hochstadt from Weil is with me, and Chris Liwski, our

4     client.

5              JUDGE CRABTREE:  All right.  Good afternoon.

6          And then we'll go with the Mylan defendants in

7     whatever order you see fit.

8              MR. SECHLER:  Good afternoon, Your Honors.

9     Phil Sechler here on behalf of the Mylan defendants.

10             MR. LEVIN:  Good afternoon, Your Honors.

11    Adam Levin on behalf of the Mylan defendants.

12             MR. FRIES:  Good afternoon.  Brian Fries on

13    behalf of the Mylan defendants.

14             MS. DELONE:  Good afternoon.  Carrie Delone

15    for the Mylan defendants.

16             MR. FOSTER:  Good afternoon, Your Honors.

17    David Foster for the Mylan defendants.

18             MS. ALI:  Good afternoon.  Katie Ali for the

19    Mylan defendants.

20             MR. MAYRELL:  Ralph Mayrell for the Mylan

21    defendants.

22             JUDGE CRABTREE:  All right.  Thank you.

23         And then for the Pfizer defendants.

24             MR. REBEIN:  Good afternoon.  Joe Rebein

25    Shook Hardy for Pfizer.

1            MR. GANDESHA:  Good afternoon, Your Honors.

2     Raj Gandesha with White & Case for Pfizer.

3            JUDGE CRABTREE:  Miss anyone?  Good

4     afternoon everyone on the defendants' side of the

5     caption.

6            Before turning to the agenda that you all were

7     kind enough to assemble and submit, thank you very much

8     for getting that in and for your reports, let me just

9     give you a brief commercial message on behalf of the

10    court securities officers about court security

11    procedures that they would have requested me to remind

12    you of and to redouble your efforts to comply with.

13           So the local rule and the security procedure for

14    this courthouse is no phones, no computers unless you're

15    a member of the bar.  They don't allow people to

16    self-authenticate as members of the bar; they have to be

17    carrying something.

18           UNIDENTIFIED TELEPHONE PARTICIPANT:  Hello?

19           JUDGE CRABTREE:  Hello.

20           UNIDENTIFIED TELEPHONE PARTICIPANT:  I

21    believe it's the wrong number.

22           JUDGE CRABTREE:  Bye-bye.  It's not a wrong

23    number you want to dial.

24           So you can't self-authenticate your way in with

25    the machinery.  You can enter the courthouse.  It's a

1   public building.  But if you want to bring in a smart

2   rectangle or a laptop computer, an iPad, some other sort

3   of electronic device, you got to have a bar card.

4        I think they were more forgiving in their

5   application of that rule today, but they've asked me to

6   remind you that they don't intend to be forgiving in the

7   future, and so please comply with that.

8        I think we'll just go down the order of the

9   agenda you submitted.  Thank you very much for the

10  reports and the agenda.  As my unusual practice is, I'm

11  going to turn off my mic and be quiet for a while and

12  let Judge James do as much of the heavy lifting as

13  possible.  Your Honor.

14        JUDGE JAMES:  Good afternoon.  We will go

15  down your agenda, but I do want to first rule on a

16  number of the motions that are outstanding.  Outstanding

17  as to not ruled on and outstanding in your briefing too.

18  So before we get into the agenda, I am going to rule,

19  and I guess then we should be able to remove from the

20  agenda Items 1B, 2A, 3A and 3C.  And I'm going to change

21  up the order of my ruling and not rule -- rule on those

22  in the order in which they are docketed, but I think it

23  makes more sense to take them a bit out of order.

24        So I'm going to first rule on class plaintiffs'

25  motion to compel regarding the Mylan defendants'

1    privilege log and other privilege related issues.

2    That's Docket Entry 983 and the related responses and

3    reply -- response and reply.  The court has read and

4    carefully considered class plaintiffs' motion to compel,

5    Docket Entry 983, and all of the related briefing and is

6    ready to rule.

7         Class plaintiffs asked the court to find that

8    deficiencies in Mylan's privilege log warrant finding

9    that Mylan has waived privilege with respect to the

10   3,822 business media, public relations, marketing, and

11   advertising documents shown in Exhibit A to their

12   motion.  The court does not find Mylan engaged in bad

13   faith or misconduct of any kind that would justify

14   imposing the severe result of waiver.

15        However, the court is persuaded that Mylan has

16   not met its burden with respect to its privilege log.

17   The court cannot determine whether the documents listed

18   on the log involve predominantly legal advice as opposed

19   to legal advice that is merely incidental to business

20   advice.  And the court would refer the parties to cases

21   that were cited, to the *Burton v. RJ Reynolds*, *Tobacco

22   Case*, *Williams v. Sprint*, and other authorities cited in

23   the footnotes on page 9 of class plaintiffs' motion.

24        Class plaintiffs also raised the lack of symmetry

25   between Pfizer's and Mylan's privilege log.  Pfizer's

1    logging communications involving Mylan employees but

2    those same communications do not appear on Mylan's log

3    is the argument.   Based upon plaintiffs' reply, Docket

4    Entry 1,034, at page 8, note 32, it's my understanding

5    that this issue has been resolved, so the court will not

6    address that issue.

7         After reading the parties' briefs and reviewing

8    the voluminous exhibits, the court concludes class

9    plaintiffs' motion should be granted in part and will

10   grant class plaintiffs' request for alternative relief,

11   that is the court will conduct an in camera review of a

12   sample of communications listed on Exhibit A to the

13   motion.

14        Class plaintiffs suggest that the court review

15   the 200 documents they list on Exhibit 1 to their reply.

16   The court is inclined to allow class plaintiffs to

17   choose 25 of those documents and to allow Mylan to

18   choose an equal number for the court to review in

19   camera.   The court will hear from counsel regarding this

20   issue -- issue in a moment.

21        The final issue in this motion relates to slip

22   sheets.   Following meet and confer sessions between all

23   plaintiffs and Mylan, both Mylan and Sanofi agree to

24   re-review a subset of their own non-responsive

25   documents.   Mylan ultimately produced 1,043 documents it

1    determined to be responsive.  In their motion class

2    plaintiffs complained that Mylan took an excessive

3    amount of time to review its non-responsive documents,

4    and for that reason alone class plaintiffs asked the

5    court to order Mylan to produce all of its slip-sheeted

6    documents.

7          In their reply, class plaintiffs highlighted the

8    relevance of seven of the documents Mylan produced

9    following its re-review and essentially asked the court

10   to infer that every document Mylan had slip-sheeted is

11   relevant and should be produced.  The court will not

12   make that inference.  The court denies plaintiffs'

13   motion to compel with regard to the slip sheets.

14         Then returning to the issue of the in camera

15   inspection, is it agreeable to plaintiffs -- class

16   plaintiffs and to Mylan that the in camera review be

17   limited to 25 documents by each side selected by each

18   party?

19         MS. KLEVORN:  Your Honor, it is agreeable to

20   the class plaintiffs.

21         JUDGE JAMES:  Very good.

22         MR. FOSTER:  May I come to the podium?

23         JUDGE JAMES:  Sure.

24         MR. FOSTER:  It's just to avoid the awkward

25   bending over.  So, Your Honor, I guess the proposal for

1   25 does seem agreeable to us and I just wanted to

2   clarify what the 25 documents are to come from, what set

3   of documents.  I think the class plaintiffs --

4           JUDGE JAMES:  The documents that are the --

5   I'm sorry, to cut you off.

6           MR. FOSTER:  No, go ahead.

7           JUDGE JAMES:  The 3,800-some documents that

8   are business advice, legal advice documents.

9           MR. FOSTER:  Yes, in that case, Your Honor,

10  that is agreeable to us.  Thank you.

11          JUDGE JAMES:  Very good.  How soon can you

12  all produce those documents for my review?

13          MR. FOSTER:  Well, I guess it depends on how

14  long the class plaintiffs take to get to us and we could

15  take a few days to -- to identify which 25 we think

16  would be instructive.  I think one of the things that I

17  would mention is in the *Syngenta* case, which involved an

18  in camera review of I think 40 documents, something

19  close to this, the approach that the court took was the

20  court ordered the parties to meet and confer in order to

21  -- to develop a list of documents that would be

22  instructive in terms of, you know, the court's rulings

23  on particular documents would be able to be extrapolated

24  to cover a wide array of issues in the log.  And so I

25  think it would be -- I think it would be helpful to --

```
 1    for us to take some time to figure out representative
 2    documents so that the 25 helps us get as much
 3    information from you and guidance from you and your
 4    review.
 5              JUDGE JAMES:  All right.  I'm not sure my
 6    ruling is clear.  I was going to allow Mylan to select
 7    25 from any of the 3,822 documents.
 8              MR. FOSTER:  Correct.
 9              JUDGE JAMES:  And the list of 200 is what
10    plaintiffs would choose their 25 from.
11              MR. FOSTER:  I see.  I understand.
12              JUDGE JAMES:  If you all want to confer
13    about it, that's fine.  I would never deny you all the
14    opportunity to confer --
15              MR. FOSTER:  Right.
16              JUDGE JAMES:  -- but each of you can choose
17    your 25 best to submit to me.
18              MR. FOSTER:  Okay.
19              JUDGE JAMES:  So --
20              MR. FOSTER:  We could do that within --
21    within a week I would -- I would think.
22              JUDGE JAMES:  Okay.  Is that agreeable to
23    class plaintiffs as well?
24              MS. KLEVORN:  Yes, Your Honor.
25              JUDGE JAMES:  All right.  I'm bidding
```

17-md-2785   In re: EpiPen  10.10.18                    13

1    against myself.  Can you do it quicker?

2           MR. FOSTER:  There's a lot going on, Your

3    Honor, and 3,800 documents is a lot.  And I think the

4    point that I was making about the *Syngenta* case was we

5    would like to take care to select documents so that the

6    information that you provide us through your review and

7    your rulings on the documents could be extrapolated to

8    resolve as many disputes as quickly as possible.  So we

9    would like to take some time to carefully pick the 25

10   documents.

11          MS. KLEVORN:  May I?

12          JUDGE JAMES:  Yes.

13          MS. KLEVORN:  Your Honor, Mr. Coury's

14   deposition is coming up in just a few weeks and he

15   appears prominently throughout these entries.  We would

16   really like to expedite this process as much as possible

17   at this point to ensure that we can hopefully get some

18   of these things reviewed and produced before that

19   deposition, and so we can make our picks in less than a

20   week.

21          JUDGE JAMES:  All right.  Well, let's have

22   them do October 16th.

23          MR. FOSTER:  Yes, Your Honor.

24          JUDGE JAMES:  October 16th submitted to my

25   chambers.

1          MR. FOSTER:  All right.  Thank you.

2          JUDGE JAMES:  Thank you, counsel.

3      All right.  Next motion that is related I will

4  take up next actually are Sanofi's motion for protective

5  order, that's Docket Entry 903, and Mylan's cross motion

6  to compel Sanofi, which is Docket Entry 946.

7      Sanofi seeks protection and Mylan challenges

8  Sanofi's production regarding the same four categories

9  of documents on Sanofi's privilege log.  The court again

10 has reviewed all of the pertinent briefing and is

11 prepared to rule.  The court makes the following rulings

12 for each of the four categories at issue:

13     1.  As to Sanofi's legal department and in-house

14 counsel documents in its privilege log, Sanofi

15 identifies "legal department" or "Sanofi in-house

16 counsel" as the attorney supporting the privilege claim

17 as to this category of documents.  The court grants

18 Sanofi's motion for a protective order regarding these

19 documents as opposed -- as unopposed and to the extent

20 applicable pertinently -- pertinent denies Mylan's cross

21 motion to compel.

22     In its memorandum in support of its cross motion,

23 Mylan states that it opposes granting Sanofi protection

24 only to the extent that class plaintiffs' identical

25 objections to Mylan's log are sustained.  As the court

1  will discuss, class plaintiffs do not make identical

2  objections to Mylan's log.  But even if Mylan maintained

3  its objection, the court finds Sanofi has met its burden

4  to show the documents in this category are entitled to

5  privilege protection.

6       As to the "legal department" documents, Sanofi

7  uses that term only in the "from" field in sent e-mails

8  regarding litigation holds.  It is a system-generated

9  e-mail address managed by Sanofi's in-house counsel

10 which cannot receive replies.

11      As to the "in-house counsel" category of

12 documents, Sanofi also has demonstrated its entries in

13 that category as the legal source reflect legal advice

14 provided by or sought from counsel even though attorneys

15 are not parties to the communication.  Mylan cites no

16 legal authority for its opposition but merely relies on

17 what it anticipated class plaintiffs would argue.  Class

18 plaintiffs did not argue as Mylan expected, instead they

19 made a more nuanced argument.

20      2.  Descriptions referencing legal advice

21 regarding business issues:  Communications regarding

22 public relations and business issues that give only

23 incidental legal advice are not privileged.  See the

24 authorities cited by class plaintiffs in their motion at

25 Docket Entry 983, pages 9 to 11.  Here too Mylan relies

1   on what it expected class plaintiffs to argue in their

2   motion to compel.  Although the court does not rule on

3   that basis, the court concludes it does not have

4   sufficient information to determine whether the

5   documents in this category on Sanofi's log are

6   privileged.  Consistent with the court's treatment of

7   this issue in class plaintiffs' motion, the court will

8   conduct an in camera review of Sanofi's documents.

9   Mylan asserts there are more than 13,000 documents in

10  this category.  Again, the court will hear from counsel

11  in a few minutes regarding the number of documents to be

12  reviewed in camera in a moment.

13      3.  As to the "legal source" documents, the court

14  finds Sanofi has met its burden of proof -- burden to

15  show its privilege log is sufficient with respect to

16  these documents.  Mylan cites specific Sanofi privilege

17  log entries as support for its motion to compel.  But as

18  Sanofi points out, specific entries -- points out, Mylan

19  has included specific entries on its privilege log with

20  very similar language.  The court is not persuaded by

21  Mylan's argument on the issue.

22      The "legal source" field in Sanofi's log names

23  the Sanofi attorney whose involvement forms the basis of

24  the privilege claim and together with entries in the

25  remaining fields sufficient information exists to enable

1    the court to assess the privilege.  The phrase "e-mail

2    providing legal advice" frequently appears in the

3    entries in this category.  The court, therefore, grants

4    Sanofi's motion for a protective order and denies

5    Mylan's cross motion to compel regarding this category

6    of privilege log entries.

7          4.  As to that category of documents identified

8    as information provided to counsel for purpose of

9    obtaining legal advice, Mylan suggests that some or all

10   of the 940 documents identified in Exhibit E to its

11   response to Sanofi's motion may contain pre-existing

12   non-privileged information.  Sanofi indicates in its

13   reply that this issue may be resolved.

14         So a question for counsel:  Are these documents

15   in dispute?

16               MR. MAYRELL:  Your Honor, may I approach?

17               JUDGE JAMES:  Yes.

18               MR. MAYRELL:  Your Honor, Sanofi produced,

19   we believe, approximately 420 documents in this category

20   as part of the re-review they mentioned in their brief.

21   And our understanding, though it is somewhat -- we're

22   not entirely sure about, but 500 documents are remaining

23   that they did not produce.  And it appears that what

24   Sanofi has done is rewritten the remaining 500 entries

25   to no longer describe documents providing information.

17-md-2785   In re: EpiPen  10.10.18                          18

```
 1              (Conference phone interruption.)

 2              JUDGE CRABTREE:  Hold on just a second.

 3    Somebody that's on the phone that doesn't have their

 4    phone muted, will you please double-check and make sure

 5    you can mute it for us.  Thank you.  Sorry.

 6              JUDGE JAMES:  Go ahead.  You might want to

 7    back up a bit.

 8              MR. MAYRELL:  So it appears that Sanofi, in

 9    a revised log, has indicate -- has changed the log

10    entries for the remaining 500 to make it where they no

11    longer say that is providing information to counsel and

12    that leaves Mylan in a position where we're simply not

13    sure what's going on.  Is that change accurately

14    representing what's going on in the documents or is that

15    a change designed to not attract our attention as to

16    potential pre-existing underlying factual information?

17    So this may be another circumstance, simply because we

18    don't have insight what the documents say --

19              JUDGE JAMES:  So you all have not conferred

20    about this since the revised privilege log?

21              MR. MAYRELL:  No, we have not.

22              JUDGE JAMES:  When was that produced?

23              MR. MAYRELL:  I believe September 26th.  So

24    we can confer about that again.

25              JUDGE JAMES:  Okay.  All right.  Thank you.
```

1    Mr. Hochstadt, were you wanting to respond to that?

2              MR. HOCHSTADT:  That's what I was going to

3    add, Your Honor.  We provided supplemental descriptions

4    from that remaining set.  We haven't heard from Mylan

5    since we produced it.  We are happy to hear further if

6    they have questions on that remaining universe.

7              JUDGE JAMES:  All right, well, you do need

8    to confer.  I suggest you get high behind it.  Time's a

9    wasting, as they say.

10             MR. MAYRELL:  Yes, Your Honor.

11             JUDGE JAMES:  You'll let the court know if

12   there are still disputes as to the, what, four or five

13   hundred documents?

14             MR. HOCHSTADT:  Yes, Your Honor.

15             MR. MAYRELL:  Yes, Your Honor.

16             JUDGE JAMES:  Okay.  Very good.

17        The next category of documents at issue in the

18   motion are -- I guess we're just calling it additional

19   issue raised in Mylan's motion.  This came up in the

20   cross motion to compel.  Mylan raises an issue regarding

21   Sanofi's claim that it shares a common interest with a

22   number of third parties, including kaléo, and I believe

23   this issue has been resolved according to the status

24   report.

25             MR. MAYRELL:  Yes, Your Honor.

1          MR. HOCHSTADT:  That's correct, Your Honor.

2          JUDGE JAMES:  All right.  Very good.  Then

3   those will be my rulings as to Docket Entries 903 and

4   946.

5          Backing up to the in camera review, I think we'll

6   follow the same procedure as with the previous in camera

7   review as far as each side selecting a certain number of

8   documents to submit to me for in camera review.  The

9   question is how many of 13,000 documents I need to

10  review.  Looking at kind of the same pro rata basis as

11  I'm going to be reviewing on the earlier motion, class

12  plaintiffs' motion, I'm going to suggest that I review

13  50 to 75 documents from each side, but I'll hear from

14  the parties on that.

15         MR. HOCHSTADT:  Your Honor, for Sanofi we're

16  fine with 50.  That would be beneficial for the court.

17         JUDGE JAMES:  Okay.  Thank you.

18         MR. MAYRELL:  Yes, Your Honor, that's fine

19  for us.

20         JUDGE JAMES:  All right.  Then if each side

21  will select 50 of the disputed 13,000 documents and

22  submit them to my chambers.  Can counsel do that also by

23  the 16th?

24         MR. HOCHSTADT:  For Sanofi, yes, Your Honor.

25         MR. MAYRELL:  For Mylan, yes, Your Honor.

1          JUDGE JAMES: All right. Very good. So

2    ordered.

3          Then the next motion to be ruled is class

4    plaintiffs' motion to compel production of documents

5    from Mylan, that's Docket Entry 931 and the related

6    briefing. Again, the court has reviewed all the

7    briefing, is ready to rule.

8          First of all, plaintiffs request that Mylan be

9    compelled to conduct additional ESI searches with regard

10   to two custodians, Ms. Bresch and Mr. Coury. Plaintiffs

11   argue that Bresch and Coury were "central figures who

12   provided important guidance to management throughout the

13   relevant time period."

14         Plaintiffs express disbelief that such central

15   figures as Bresch and Coury could have authored so few

16   documents or been provided such few documents as Mylan

17   has produced with its ESI searches to-date. But

18   plaintiffs cite to deposition testimony or documents

19   produced in this case to support their suspicion that

20   there must be more documents authored or received than

21   have been produced with respect to Bresch or Coury that

22   are relevant to this litigation.

23         The parties negotiated and agreed upon search

24   terms and custodians more than six months ago. The

25   parties have conducted discovery in this case based in

1    part upon those agreed search terms and custodians.  The

2    court will not require Mylan to run additional searches

3    with the requested additional search terms at this late

4    date in the discovery process based merely upon

5    plaintiffs' suspicions and disbelief that Bresch and

6    Coury authored or received a relatively small number of

7    documents relevant to this litigation.  Plaintiffs'

8    motion to compel Mylan to run additional ESI searchs

9    with three additional search terms for the custodians,

10   Bresch and Coury, is therefore denied.

11          I will drop a footnote here that I have reviewed

12   -- received and reviewed the e-mail correspondence from

13   last evening between counsel about some testimony given

14   by Ms. Bresch and some testimony indicating that others

15   had sent e-mails on behalf of Bresch and Coury.  It's

16   clear to me counsel have not conferred about that issue

17   and I'm not going to alter my ruling today that was

18   prepared before those letters came in based upon that

19   e-mail exchange where counsel have differing views of

20   the situation and the facts.  And if there is any merit

21   to the issue raised by plaintiffs based upon

22   Ms. Bresch's testimony, then I'm sure I'll be hearing

23   about that.  But my ruling is as it is based upon the

24   briefing and record I have before me to-date.

25          Just one little anecdote about that, and this

1    goes to both sides involved in the e-mail change.  A

2    little story about a good friend of mine who, when he

3    was a young lawyer 35 years ago probably, attended a

4    docket call where there were a lot of lawyers, a lot of

5    little motions were taken up by the judge, each one

6    taking just a relatively few minutes.

7         My friend, the young lawyer, made an argument and

8    won his motion, was quite pleased with himself, felt

9    that he had really whooped up on opposing counsel.

10        A lawyer, who at the time was much older and

11   senior, who knew the young lawyer called him to the side

12   after the docket hearing.  This young -- older lawyer

13   had not been involved in the motion but observed what

14   had happened.  My friend, the young lawyer, went over to

15   hear what the senior lawyer had to say thinking that the

16   senior lawyer was going to congratulate him on a job

17   well done, but instead what he said was, "You should

18   remember that your clients come and go but your

19   colleagues you're going to deal with throughout your

20   entire career.  Treat them better."

21        And so I remind you all of that and it's

22   revealing to me that my friend recounted this story to

23   me just a couple of months ago and it -- that event

24   occurred 35 years ago.  It's good advice.  So let's be

25   polite.  I didn't like the tenor of either letter and we

1    need to deal professionally and treat our colleagues in

2    a respectful manner.  So...

3                MS. CAPPIO:  Your Honor --

4                JUDGE JAMES:  Yeah.

5                MS. CAPPIO:  -- with some trepidation I just

6    stand up and say those words are taken to heart.  This

7    is Gretchen Cappio.

8                JUDGE JAMES:  Yes.

9                MS. CAPPIO:  But I would just add one thing,

10   and that is we had met and conferred and we had asked

11   that very question that Ms. Bresch addressed in her

12   deposition about whether or not other people wrote

13   e-mails on her behalf and we have been told the

14   opposite, that they had not.  And Ms. Bresch yesterday

15   said they were often sent on her behalf, and since then

16   we worked overnight and found some more examples.

17            So I appreciate that Your Honor is leaving the

18   door open to our explaining further why we're concerned

19   here.  And if you'd be interested, we even found a

20   document that was sent by her executive assistant where

21   it's not sent on her behalf but it says "we," apparently

22   referring to Ms. Bresch and the executive assistant.

23   And it's further proof of why we need Ms. Marquis, her

24   name specifically is Laurie Marquis, as a custodian in

25   this matter because she sent e-mails on Ms. Bresch's

1   behalf.  In fact, we have now a whole list of custodians

2   who sent e-mails on Ms. Bresch's behalf.

3        So, again, we asked this question in a meet and

4   confer months ago.  We first raised this problem of the

5   dearth of e-mails at the status conference, again last

6   month's status conference, and again, not to be a broken

7   record, we really think there's a "there" there and

8   we're trying to be respectful both how we raise this

9   issue with the court and the colleagues on the other

10  side.

11       JUDGE JAMES:  Thank you, Ms. Cappio.  My

12  point goes to there should have been some conferring

13  before the letter was sent to the court last night.  And

14  conferring about if there is a "there" there, how do we

15  address the issue and what needs to be done.  So I want

16  you all to talk about (1) is there a legitimate problem

17  here?  Were things missed -- without casting aspersions

18  at Mylan, were things missed and there's another

19  category or custodian or additional searches need to be

20  done?  Let's talk about how we deal with this in an

21  efficient way if something does need to be done.  So...

22       MS. CAPPIO:  Yes, Your Honor.  If the motion

23  hadn't been ripe, we would not have bothered the court

24  with it.  Thank you, Your Honor.

25       JUDGE JAMES:  All right.  Thank you.

1        All right.  The second part of this motion; in

2    the second part, plaintiffs request that Mylan be

3    compelled to produce unredacted board of directors

4    materials for 12 documents.  Plaintiffs' motion to

5    compel on this basis is granted.  Mylan shall produce

6    the board of directors materials in the 12 referenced

7    documents without redactions by October 17th, 2018.

8        Mylan does not dispute that the redactions on

9    these documents are based on irrelevancy or

10   non-responsiveness grounds rather than on

11   confidentiality grounds.  Mylan's only argument in

12   opposition is the redactions were made pursuant to an

13   express agreement with plaintiffs citing the transcript

14   of the June 21st, 2018 hearing before this court.

15       However, the statements of plaintiffs' counsel on

16   the record that day do not support the conclusion that

17   plaintiffs agreed to all redactions except the headers

18   of the documents.  To the contrary, plaintiffs' counsel

19   stated on the record that day that the agreement with

20   Mylan was that the board of directors documents would be

21   produced with unredacted headers in one week and then

22   "we will learn more about whether we can discern what

23   the documents are and whether the redactions are proper

24   at that time," page 33 of the transcript.

25       So the redactions within the documents were not

1    agreed to by plaintiffs.  Instead plaintiffs wanted to

2    receive and review the documents with unredacted headers

3    and then determine whether the redactions were proper.

4         The court agrees with plaintiffs' contention that

5    Mylan, as the party redacting information on otherwise

6    discoverable documents, had the burden to show why its

7    relevancy-based redactions were proper.  The *McNabb* case

8    and cases cited therein inform the court's decision.

9         Mylan has failed to meet its burden and Mylan

10   shall produce unredacted copies of the documents

11   requested by plaintiffs and shown on the table, page 15

12   of Docket Entry 931.

13        Next motion to be ruled is Mylan's motion to

14   compel responses from class plaintiffs to Mylan's second

15   request for production.  That's Docket Entry 960.

16   Again, the court has reviewed all the briefing with

17   regard to this motion and is prepared to rule.

18        Mylan has narrowed its request and notes in its

19   reply that it now seeks only to compel responses to

20   Request for Production 1 and 2.  As limited to those two

21   requests for production, the court overrules class

22   plaintiffs' boilerplate relevance, overbreadth and

23   vagueness objections.  However, the court sustains class

24   plaintiffs' objections to Mylan's Request for

25   Production 1 and 2 to the extent they seek to obtain

1    documents or materials from class plaintiffs' counsel.

2         The requested documents, specifically advertising

3    materials and related communications, were created and

4    maintained by counsel.  Class plaintiffs' counsel state

5    that these documents exist independent of class

6    counsel's representation of class plaintiffs in this

7    action.  Given that the documents Mylan seeks from

8    plaintiffs' counsel are advertisements and solicitations

9    of clients for this case, class plaintiffs' argument

10   that many of the requested documents would predate the

11   retention of class counsel by any plaintiff -- any of

12   plaintiffs rings true.

13        It is therefore clear that the requested

14   materials are not in the custody, possession, or control

15   of class plaintiffs.  They are not the documents of a

16   party to this litigation.  And Federal Rule of Civil

17   Procedure 34, upon which Mylan relies which requires

18   production of documents under the possession, custody or

19   control of a party, cannot be used to require production

20   from class plaintiffs' counsel who are not parties in

21   this case.  Rule 34 and the authorities cited by class

22   plaintiffs support this conclusion.

23        The only authorities Mylan cites in support of

24   its argument that plaintiffs' counsel should be required

25   to produce the requested documents pursuant to Rule 34

1    are non-binding cases from other jurisdictions that are

2    distinguishable from this case.  Mylan's argument that

3    it could subpoena the requested documents and that

4    requiring -- and that prohibiting Mylan from obtaining

5    the documents through its Rule 34 request for production

6    is form over substance and is unpersuasive.  Rule 34

7    simply does not provide a process or procedure for

8    obtaining documents from a non-party.

9         Mylan's motion to compel class plaintiffs'

10   responses to Mylan's second Request for Production 1 and

11   2 is therefore denied insofar as seeking material --

12   materials and documents from class plaintiffs' counsel.

13        I will note, however, if individual class

14   plaintiffs has not responded completely to Request for

15   Production 1 and 2 consistent with the offer by class

16   plaintiffs, they shall do so and supplement with any

17   responsive documents.

18        All right.  Those are my rulings on the pending

19   motions, and I think now we go back to the agenda.

20              (Conference phone interruption.)

21        JUDGE CRABTREE:  Okay.  If you're on the

22   line, you need to mute your phone.  So everybody who is

23   connecting by telephone should check and make sure their

24   mute button is pushed.  Thank you.

25        JUDGE JAMES:  All right.  So ready now for

1   Item 1A on the agenda, class plaintiffs' discovery

2   issues with Mylan.  And the first -- first item has to

3   do, as I understand it, with class plaintiffs' request

4   for information regarding international sales of Mylan.

5   Are the second RFPs to Mylan in dispute?

6            MS. CAPPIO:  Your Honor, good news.  These

7   status conferences are really helping move us along and

8   there's even space between what we filed in our status

9   reports and where we are now.  So we've made progress.

10            JUDGE JAMES:  Good.

11            MS. CAPPIO:  So I'm pleased to say that the

12   only thing we need at this point is a date of

13   production, keeping in mind that class certification is

14   fast approaching, which I think is our theme today, and

15   that it's important data, and Mylan sought the same sort

16   of data from Sanofi.  So we would love it sooner than

17   October 17th if possible.

18            JUDGE JAMES:  All right.

19            MS. DELONE:  Just to clarify:  Are you

20   talking about the second RFPs with the international

21   data or third RFPs for the domestic?

22            JUDGE JAMES:  I think we're on the second.

23            MS. CAPPIO:  On the second right now, the

24   second RFPs, but we would love the same date for the

25   third RFPs actually as well.

```
 1              MS. DELONE:  And so we just came to the
 2   agreement relating to the international data in the past
 3   week and we're working to collect it but it's all
 4   different entities.  Basically we agreed to collect data
 5   from a couple of different countries and each of those
 6   countries is a different entity.  So we haven't
 7   discussed timing of it at all.  And I think we were
 8   hoping to meet and confer with plaintiffs about that so
 9   that we can come to an agreement.  But it's not probably
10   going to be possible for us to collect it before October
11   17th from nine different entities and, you know, a
12   variety of data.
13              JUDGE JAMES:  Can you produce it piecemeal
14   as you get it?
15              MS. DELONE:  Yes, absolutely.
16              JUDGE JAMES:  And you will do that?
17              MS. DELONE:  What's that?
18              JUDGE JAMES:  You will agree to do that?
19              MS. DELONE:  Yes.
20              JUDGE JAMES:  I guess my order will be that
21   it be produced, all the responsive international sales
22   information responsive to the second RFP, be produced as
23   you locate it and in no event later than October 17th.
24   All right.
25              MS. DELONE:  Sorry.  Would I -- so even
```

1   October 17th is going to be pretty difficult.  I don't

2   know that we can from, you know, New Zealand and Germany

3   to actually get it.  We're happy -- we are certainly

4   producing it as soon as we possibly can and do it on a

5   rolling basis but I'm not sure that we'll be able to

6   have all of it in the next week.

7           JUDGE JAMES:  I'm sorry, I misunderstood

8   you.

9           MS. DELONE:  Yeah, no, my apologies.

10          JUDGE JAMES:  Well, I'm going to go ahead

11  and set that deadline and try your best to meet it.  And

12  if you can't, you need to confer and get back to me and

13  we'll see if we grant additional time.

14          MS. DELONE:  Okay.

15          JUDGE JAMES:  But time is of the essence.

16  We're late -- late in this process with the October 31st

17  fact discovery deadline and coordinated discovery.

18  So...

19          MS. DELONE:  This is -- this is

20  non-coordinated discovery.  So this isn't governed by

21  the actual --

22          JUDGE JAMES:  Is that correct?

23          MS. CAPPIO:  Class certification is right

24  around the corner, Your Honor.  So we are very riveted

25  on the November 16th, as you can imagine, and we don't

17-md-2785   In re: EpiPen  10.10.18                    33

1  want this to be delayed in any way.  We think October

2  17th is fair because they've had these RFPs for a long

3  time.

4          JUDGE JAMES:  Well, my order is make your

5  best efforts to have all of it by the 17th and produce

6  it piecemeal as you get it.

7          MS. DELONE:  We will certainly do what we

8  can to do it as soon as possible.

9          JUDGE JAMES:  All right.  The third request

10  for production, where are we on that?

11          MS. CAPPIO:  We're in the same place and

12  we're hoping for the same deadline, Your Honor.

13          JUDGE JAMES:  All right.

14          MS. DELONE:  As relates to the third RFPs,

15  we're now talking about domestic data and it is a much,

16  much bigger set of data that we've been talking about.

17  We served data requests on Sanofi and about two weeks

18  later.  We got requests from class plaintiffs which were

19  essentially the same requests.  To be clear, we are in

20  complete agreement as to what we are producing and I

21  don't think that's ever been an issue, the scope of the

22  requests, but it is very involved data.  We're talking

23  about each individual transaction.  And so the costs and

24  the sales and the rebates and discounts for every single

25  transaction and customer information.

17-md-2785   In re: EpiPen  10.10.18                    34

1      So we have been working to do everything that we

2  can to collect this data since we received the requests

3  in the last, you know, month or two, but it's just --

4  it's taking a lot of time.  So this is another one where

5  we are doing everything we can to get it to plaintiffs

6  as soon as possible.  It's just that, you know, as -- as

7  we indicated, I think we're in the same boat as Sanofi

8  here, they're trying to get us basically the same data

9  and it's just I think we need a couple more weeks.

10      JUDGE JAMES:  All right.  Same ruling, I'll

11  give you until the 17th.  And if you need more time,

12  confer and come back to the court.

13      MS. DELONE:  Okay.  Yes, Your Honor.

14      MS. CAPPIO:  Thank you, Your Honor.

15      JUDGE JAMES:  All right.  Anything further

16  then on that issue about class plaintiffs' second and

17  third request for production?

18      MS. CAPPIO:  No, Your Honor.

19      JUDGE JAMES:  All right.  Very good.

20      Then let's see, I've already addressed 1B in my

21  ruling and I've addressed 2A.  So I think we're down to

22  2B which is the Local 282 motion.  I am not prepared to

23  rule on that motion today.  I have read all of the

24  briefing and you can expect an order very soon.  I know

25  that class plaintiffs had requested oral argument on the

```
 1    motion.  Mr. O'Mara --
 2              MR. O'MARA:  Yes.
 3              JUDGE JAMES:  -- it looks like you're ready
 4    to do that.
 5              MR. O'MARA:  I am, Your Honor.
 6              JUDGE JAMES:  I'll allow you to briefly
 7    address issues.  You don't need to regurgitate what's in
 8    the briefing --
 9              MR. O'MARA:  Okay.
10              JUDGE JAMES:  -- but I'll give you a few
11    minutes to highlight for me what it is I should be
12    considering.
13              MR. O'MARA:  Okay.  Fair enough.  Why don't
14    I -- why don't I update the court since the last status
15    conference and then respond to a couple knits that were
16    in the reply and let the briefing speak for itself on
17    everything else.
18              JUDGE JAMES:  All right.  Thank you.
19              MR. O'MARA:  So when we came away from the
20    last hearing, the court gave us two instructions.  The
21    first was get together with counsel who was at the
22    deposition and try to work this out.  On the second
23    instruction was counsel better watch themselves and
24    follow this court's deposition guidelines.
25         Now, on the first instruction on the meet and
```

1    confer, I reached out to Mr. Edelman who was the

2    individual who deposed Local 282's witness in an attempt

3    to work out a time to meet and confer on this.  We ended

4    up setting up a date.  And when we got on the call, I

5    was surprised to find that Mr. Edelman was not available

6    for the call.  He was on vacation for two weeks.  We

7    were not told when we were scheduling the call; that he

8    was not going to be available for those -- that two-week

9    period.

10            And, in any event, on the e-mail exchange with

11   Mr. Edelman and during the meet and confer with Ms. Ali,

12   I suggested, again as I had done before the last status

13   conference, that Mylan should let me know whether any of

14   these topics could be addressed through written

15   questions.  They didn't get back to me on the first

16   request.  They didn't get back to me on the e-mail

17   request to Mr. Edelman.  They didn't get back to me

18   following the meet and confer.

19            And then I sent another e-mail with a follow-up

20   saying we're ready to discuss this as soon as you have

21   Mylan's response to our proposal on the written

22   questions.  I still have not heard back from Mylan on

23   this point.  That was two weeks ago.

24            (Conference phone interruption.)

25            JUDGE JAMES:  Sorry, Mr. O'Mara.

1            MR. O'MARA:  That's okay.  Now, on the

2    second point, which was the instruction that counsel

3    better behave themselves in the depositions, plaintiffs'

4    counsel took it very serious when we were here on

5    September 13th.

6            I personally provided copies of that transcript

7    from the status conference and the deposition guidelines

8    to all plaintiffs' counsel who would be involved in the

9    depositions and specifically noted the court's

10   instructions in that transcript.  We were all here last

11   time.  We all heard Your Honors' instructions and, on my

12   side, we received the guidelines and instructions and

13   what not.

14           On the defendants' side, they also had the

15   instructions.  They read my brief where I had identified

16   that I had done this.  And they had the examples of

17   Mr. Levin's similar speaking objections that I had cited

18   in the brief.

19           So the irony of all this is yesterday, during

20   Ms. Bresch's deposition, Mr. Levin, who authored the

21   August 29th letter to me complaining about the conduct

22   at the deposition who was in the courtroom during the

23   last status conference and in my opposition, was the

24   individual who was cited as making the speaking

25   objections.  Essentially Mr. Levin told everybody at the

1   deposition yesterday that the guidelines really aren't

2   applicable, and this is -- this is one of the exchanges.

3   Mr. Lanier says, "Yeah, I would think that we're taking

4   this under the rules where objections except as form and

5   responsiveness are preserved."

6          And Mr. Levin responds, "No, I'm going to make my

7   objections as appropriate for each question or exhibit.

8   That's how we've been doing all the depositions in this

9   case."

10          Later on, after an additional speaking objection

11  and interruption, Mr. Buchweitz -- Mr. Buchweitz chimes

12  in and states, "I just want to make a very brief record

13  that the Kansas rules that you've just cited are very

14  clear we're supposed to be objecting to the form and

15  nothing else.  Let's move along."

16          And Mr. Levin responds, "That's actually not

17  true.  If it's irrelevant, if it's harassing, I have the

18  right to make the objection."

19          And ultimately Mr. Lanier at one point had to

20  read the guidelines to Mr. Levin on the record.

21          And I have copies of the -- the rough draft of

22  the deposition transcripts if Your Honors would like and

23  I have some to pass out to everybody.

24          In any event, Your Honors, I raise this to

25  highlight that this motion is not about getting relief

1    for some wrong that defendants feel has occurred.

2    Defendants are not prejudiced or disadvantaged by any of

3    this, as Mr. Levin essentially said it himself

4    yesterday.  And there's no interest in resolving this

5    issue from defendants.  That's why Mylan has shown such

6    a half-hearted attempt to meet and confer on this issue.

7    And that is why over several weeks I still have not

8    received an answer to my proposal on the written

9    questions.  This is just a tactical motion brought

10   simply to attack my client and there's no basis for any

11   of defendant -- the relief that defendants seek.

12        Now, if -- if Your Honor were inclined to grant

13   it, it can't be because of anything that Local 282 did.

14   They were prepared.  The witness answered the questions

15   that -- I think that's sufficiently addressed in the

16   briefing.  And so if Your Honor was to grant it, it

17   would have to be a sanction for counsel's conducts.  And

18   two things on that:  A sanction for -- for counsel's

19   conduct shouldn't be forcing Local 282 to travel to DC

20   to sit for another three hours of deposition time in

21   Mr. Levin's office because of less than 10 minutes of

22   total record time, three and a half which was

23   Mr. Levine's interactions.

24        And if there is a sanction that's awarded, we

25   would expect that the court would also grant several

1  additional hours of testimony of Mrs. Bresch because

2  Mr. Levin's outburst yesterday -- because of Mr. Levin's

3  outburst yesterday, which was -- which was after the

4  court instructed everybody at the September 13th hearing

5  with the benefit of -- of -- of the additional

6  guidelines, and given the nature of the statements

7  and -- made during the depositions that the guidelines

8  essentially don't apply to Mr. Levin.

9        Now, on two points in the reply that I need to

10  address, the first is on Topic 15 and that's at page 5

11  of the reply brief.  There's a complaint that because

12  Mr. Bulding admitted that he never reviewed the original

13  complaint that was the subject of Topic 15, defense

14  counsel ceased this line of questioning.  Now that's not

15  just misleading, that's false for two reasons:

16  Mr. Bulding explicitly testified that he saw the

17  complaint before it was filed in August of 2017, and

18  that's at page 105, lines 20 to 24 of the transcript.

19  He also testified that he had a role in assisting

20  counsel drafting the complaint, and that's at pages 107

21  and 109 of that transcript.  So the statement that

22  Mr. Bulding admitted that he never saw the complaint is

23  false.

24        Second, the claim that once Mr. Bulding

25  purportedly admitted that he never saw the complaint

1    counsel ceased the line of questioning is also false.

2    After Mr. Bulding stated that he did not review the

3    complaint specifically in preparation for that

4    deposition, Mr. Edelman then answered (sic) and the

5    witness answered questions regarding Local 282's role in

6    drafting the complaint.  Mr. Edelman asked and the

7    witness answered questions about the factual allegations

8    as related to Local 282 in that complaint, specifically

9    paragraph 14 of the complaint.  And Mr. Edelman asked

10   and the witness answered questions about whether he had

11   reviewed the complaint before it was filed and the

12   witness confirmed that he had reviewed the complaint

13   before it was filed in August of 2017.

14        But to get to the point on this, there is no

15   requirement that Mr. Bulding needs to review a document

16   to testify on a topic just like he would not be required

17   to review an org chart to testify who was going to be on

18   the board of trustees.

19        The second point relates to a footnote defendants

20   dropped in their brief, an excuse why they didn't feel

21   necessary to meet and confer on plaintiffs' objections

22   on the 30(b)(6) notice.  The first excuse was because I

23   was on vacation.  The second one was because it was, at

24   least in defendants' mind, clear that Local 282 had

25   agreed to testify on everything.  But one only need to

1   look at the record and the objections to know neither

2   one is true.  First, the parties found a time to meet

3   and confer on the objections.  And I, on my way back

4   from vacation, had made myself available.  It wasn't

5   that we couldn't find the time; it was that defendants

6   canceled the meet and confer.  Second, no rational

7   reader of the objections could come to the conclusion

8   that it was clear that Local 282 would essentially

9   testify on all of the topics.

10          I objected to narrow 14 of the 15 topics, and

11  this is -- Defendant's Exhibit 7 is -- are my

12  objections.  For example, specifically objected to

13  Topic 7 because it included the phrase "including, but

14  not limited to."  And as the court, in *Reed versus*

15  *Bennett* found, "Including that phrase, 'including, but

16  not limited to,' renders the request for the topic

17  overbroad and defective because the deponent or the

18  designee is unable to identify the outer limits of the

19  areas of inquiry in the notice and compliant designation

20  is not feasible."  And those are the words, and that's

21  *Reed versus Bennett*, 193 F.R.D. 689, the District of

22  Kansas case from 2000.

23          Throughout the objections also made clear that

24  Local 282 would testify only as to its own knowledge of

25  the payments and discounts, rebates, formularies, things

1   of that nature and objected long before the deposition

2   that its designee would not testify to the mental

3   impressions, thought processes or reliance of

4   Local 282's advisors.  So they failed to follow up on

5   the meet and confer and now they think that we didn't

6   explain to them the parameters of Local 282's testimony.

7       And that's pretty much all I have, Your Honor.

8   I'm happy to answer any questions that you have, but I

9   think the briefing covers most of it.

10      JUDGE JAMES:  Is it -- is -- is it

11  Local 282's position that it -- it's not to going to get

12  information that's requested from its PBM?

13      MR. O'MARA:  The information it has access

14  to, it has provided, Your Honor.  Anything more it would

15  require Local 282, like it would require defendants, to

16  issue a subpoena.

17      JUDGE JAMES:  So are you saying that

18  Local 282 has requested the information that's the

19  subject of the fact sheets, that sort of information,

20  from its PBM?

21      MR. O'MARA:  No, Your Honor.  It would take

22  a subpoena to get that information.

23      JUDGE JAMES:  So it is your position,

24  Local 282's position, that it's not going to request

25  information from its PBM to respond to these requests?

1              MR. O'MARA:  They're not entitled to that

2    information under the relationship -- the type of

3    relationship they have.  For example, they don't get --

4    I mean, this -- as Your Honor has seen over the last six

5    months, every PBM has objected and with -- and refused

6    to produce documents and they've all required a motion

7    to compel to get them to do anything.  That's no

8    different.

9         They protect all of these rebate agreements.

10   They protect how rebates are calculated.  They protect

11   what individual drugs are -- what rebates are applied to

12   individual drugs.  So what Local 282 gets and what

13   they're entitled to get is an aggregate rebate amount

14   for all of their drugs cumulatively, so they don't see a

15   document.

16              And this is -- this goes back to the meet and

17   confer that we've had on these documents several weeks

18   ago where we discussed and we agreed that if a document

19   doesn't refer to an EAI device or epinephrine or EpiPen,

20   it doesn't -- by the terms of the request, it doesn't

21   relate to that -- to that request.  And they don't --

22   Local 282 didn't get, nor is it entitled to get,

23   documents that break out either on a per transaction

24   basis or on a drug basis or by a category the EAI drug

25   device category.

1              JUDGE JAMES:  All right.  Getting back to my

2    question though:  In the reply on page 12, the last

3    paragraph, I have some questions I'd like to know what

4    the status is.  It says Mr. Bulding testified under oath

5    that although Local 282 may not have had all of the

6    necessary information when it first completed its

7    plaintiff fact sheet in January, "as of this time

8    Local 282 does have all the information we need to

9    answer [questions 4H through I]."  Is that a true

10   statement?

11             MR. O'MARA:  I'm sorry, Your Honor, I'm

12   struggling to find page 2 here.  The document is not

13   marked with the ECF numbers and there's no page numbers.

14             JUDGE JAMES:  It's 9/25/18 filed, Mylan and

15   Pfizer joint reply.

16             MR. O'MARA:  Can you tell me what the first

17   word or two is on the page you're looking at?

18             JUDGE JAMES:  "Local 282 refusal to answer

19   questions 4H through M."

20             MR. O'MARA:  Okay.

21             JUDGE JAMES:  The paragraph on the bottom of

22   that page.

23             MR. O'MARA:  Yes, Your Honor.

24             JUDGE JAMES:  And I just read you the first

25   sentence.  And my question is:  Do you not deny the

1   quoted statement there from the deposition?

2           MR. O'MARA:  Your Honor, I -- I -- I've

3   confirmed with Ms. Ali that the information -- any

4   information that Local 282 has in its possession has

5   been provided.

6           JUDGE JAMES:  All right.  Well, do you see

7   the question there and the answer, "As of this time,

8   Local 282 does have all the information we need to

9   answer [questions 4H through I]"?  Is that true?

10          MR. O'MARA:  That's not true, Your Honor.

11  This is Ms. Ali's meet and confer language that's cited

12  in there during that meet and confer.

13          JUDGE JAMES:  Wait a minute.  It says

14  Bulding testified under oath, and it cites an Exhibit 6

15  to motion at 148-4 through 150-22.  All right.  Well,

16  that's something I'm going to be interested in.  And I

17  guess I'm still trying to understand -- the page I'm

18  referring to in the reply talks about availability of

19  some of this information requested in the fact sheets.

20  And I guess I'm not clear, after reading the reply,

21  whether Local 282 has the information --

22          MR. O'MARA:  Do not.

23          JUDGE JAMES:  -- and if it has hasn't

24  provided it.

25          MR. O'MARA:  We have provided all the

1    information we have and the -- the --

2              JUDGE JAMES:  All right.

3              MR. O'MARA:  -- promise we made during the

4    meet and confer, we would go back and look at this and

5    try to gather information to answer it.  And we went

6    back and we spoke with the client and we went over the

7    information that Local 282 has and they do not have

8    answer -- information that is responsive to those

9    topics.

10             JUDGE JAMES:  All right.  All right.  Well,

11   I'll hear from Mylan then or defendants.  Thank you,

12   Mr. O'Mara.

13             MS. ALI:  Good afternoon, Your Honor.

14             JUDGE JAMES:  Go right ahead.

15             MS. ALI:  I'll try to address the points

16   that Mr. O'Mara raised.  I know that we discussed these

17   issues at some length at the last status conference, so

18   I'll try not to waste the court's time and readdress the

19   issues.

20             JUDGE JAMES:  Please address the issue of

21   Mylan's apparent refusal to confer about these issues,

22   which concerns me.

23             MS. ALI:  So that's not an accurate

24   statement about what happened.  I think there are --

25   Mr. O'Mara raised two instances where we supposedly

1    refused to meet and confer.  So I'll start sort of

2    chronologically, which was -- the first was prior to the

3    deposition plaintiffs served objections to our 30(b)(6)

4    notice on Local 282.

5        We had scheduled a meet and confer in advance of

6    the deposition.  And Mr. O'Mara is correct that I

7    canceled that meet and confer after having reviewed

8    their letter in which, while it's true they made some

9    boilerplate objections like the ones that Mr. O'Mara

10   just read to the court such that they won't testify as

11   to mental impressions of other people and only will

12   testify to information within their possession, custody

13   and control or knowledge, it was clear that they hadn't

14   actually objected to providing testimony on any one of

15   the topics that were in our notice.  And so there was no

16   reason to meet and confer.

17       It seemed we had been meeting and conferring

18   about 30(b)(6) notices with respect to Mylan witnesses

19   and Sanofi witnesses.  We had all sort of tried to agree

20   to be reasonable about what would be expected of

21   witnesses in terms of preparation and what they would be

22   expected to know.

23       So, yes, it's true that we canceled the meet and

24   confer not because we were unwilling to do so, because

25   it seemed completely unnecessary in light of the

1   representations made in the objections letter.  And

2   Mr. O'Mara said the letter speaks for itself.  I agree.

3   And I think, you know, the court can read the letter and

4   review that on its own and determine it's very clear.

5           To give an example, Mr. O'Mara raised Topic 7

6   which requested "services provided by PBMs to Local 282

7   and/or health benefit plans offered by Local 282,

8   including, but not limited to, negotiated payment

9   amounts, discounts and rebate or discount amounts for

10  EAI products."  And what they said in their letter was

11  that the Local 282 designee would testify about services

12  provided by its PBMs during the class period, about

13  Local 282's knowledge of the negotiated payment amounts,

14  discounts and rebate or discount amounts for EAI

15  products if any.  That's agreeing to provide testimony

16  on the entire topic that was requested.

17          So the idea that somehow they made objections to

18  testify -- that they wouldn't testify about this

19  information is just wrong.  And Mr. Bulding testified on

20  the record that he couldn't answer questions relating to

21  literally any of that information, not negotiated

22  payment amounts, not discounts, not rebate or discount

23  amounts.  I'm happy to provide the transcript citations

24  to Your Honor if that's helpful.  They're in our brief.

25  That's page 311 to 313 of the deposition transcript, 205

1    to 214, 286 to 298, 317 to 325, and 338 to 348.  That's

2    one example of many.  But if you look at the letter,

3    Your Honor, there's no objections where they actually

4    stood on an objection and said they were not planning to

5    provide testimony on any of the topics.

6         In terms of a meet and confer, after the last

7    status conference, I will take the blame for Mr. Edelman

8    not being on that conference.  We were going back and

9    forth trying to schedule a time.  Mr. O'Mara was not

10   available.  I think -- not to get too into weeds here,

11   but we first talked about trying to schedule a time on a

12   Wednesday.  Mr. O'Mara was not available on Thursday or

13   and Friday.  Mr. Edelman was leaving for vacation on

14   Friday and was going to be gone for two weeks.  So I

15   took it upon myself to talk to Mr. Edelman.

16        I had had many conversations with him about what

17   happened at this deposition.  I've watched the video.

18   I've read the transcript.  I'm very familiar with what

19   happened.  Kate Swisher from -- representing Pfizer was

20   also present at the deposition as was James Moloney for

21   a big part of it.  I have spoken at length to both of

22   them who were not -- neither of them copied on

23   Mr. O'Mara's e-mail trying to set up the meet and

24   confer.  So I made the executive decision not to ask

25   Mr. Edelman to interrupt his vacation to be on that meet

1   and confer.  In hindsight, maybe that was a mistake.

2          When Mr. O'Mara expressed displeasure that he was

3   not on the phone, I offered to reschedule it and I would

4   reach out to Mr. Edelman and make him available -- ask

5   him to make himself available at any point during his

6   vacation.

7          JUDGE JAMES:  But was there an agreement

8   that they were going to have a call at the specified

9   time and Edelman didn't show up?

10         MS. ALI:  No, Your Honor.  So Mr. O'Mara

11  reached out to Mr. Edelman.  I was copied on that.  I

12  had gone back -- we couldn't find a time where all of us

13  could meet.  I should have communicated to Mr. O'Mara

14  that Mr. Edelman was not going to be on the call.  I

15  took over the e-mail correspondence trying to schedule

16  this call because Mr. Edelman left on vacation.  That's

17  what happened.

18         There was no agreement that we were all going to

19  be in a place at a particular time.  We set a meet and

20  confer.  I had been the one meeting and conferring on

21  this issue three or four times.

22         JUDGE JAMES:  What happened after the call

23  didn't occur and Mr. Edelman was out of the country or

24  out of town?

25         MS. ALI:  I offered to set up a time we

1    could all meet, Mr. Edelman could meet and confer.  We

2    could all do it.  Mr. O'Mara wouldn't -- didn't take me

3    up on that offer, so we haven't met and conferred again.

4           The only issue, we did discuss the fact sheet

5    response and the documents.  It seems we're at an

6    impasse.

7                   JUDGE JAMES:  So there's not been material

8    conferring about this motion?

9                   MS. ALI:  There has been, Your Honor.  So we

10   did meet.  We had a meet and confer without Mr. Edelman,

11   but, again, many of the -- I mean, basically what

12   plaintiffs have offered here is to provide written

13   testimony on -- or written answers to certain questions,

14   interrogatory responses.  We have that already.  We have

15   their plaintiff fact sheet response.  And while they

16   have focused really almost exclusively on Mr. Levine's

17   conduct during the deposition, as we made clear in our

18   reply, the main issue here was that the witness was just

19   completely unprepared to testify.  Yes, Mr. Levine's

20   interjections, you know, were disruptive.  They changed

21   the tenor of the deposition.  It was unfortunate that

22   that happened.  It shouldn't have happened.  It was

23   inappropriate.  But the bottom line is that, even if

24   that hadn't happened, we think we would be entitled to

25   the additional time of a deposition because the witness

1   was unprepared on basically on half -- completely

2   unprepared on half of the topics in the notice.

3                JUDGE JAMES:  All right.  And can you

4   clarify for me on the part of the reply that I was

5   talking to Mr. O'Mara about on page 12 where there's

6   discussion about the fact sheet information --

7                MS. ALI:  Yes.

8                JUDGE JAMES:  -- it's not been provided.

9   Has anything been provided?

10                MS. ALI:  No, Your Honor.

11                JUDGE JAMES:  Do you need to update since

12   this reply was written?

13                MS. ALI:  No.  And the question -- Your

14   Honor hit the nail on the head.  We asked this question

15   to plaintiffs also:  Have you tried to get this

16   information from your PBM?  And the answer is no.  So

17   they're claiming that they need a subpoena.  Maybe

18   that's true.  I don't know.  But we don't know because

19   they've never asked the PBM for this information.

20        And I think it's important also to take a step

21   back and remember that the questions on the plaintiff

22   fact sheet were developed collaboratively.  This was not

23   traditional interrogatories where one party unilaterally

24   comes up with a question, serves them on the other side,

25   the other side objects.  These were questions that we

1   came up with together and they're now claiming that they

2   don't have this information to really what are some of

3   the most critical questions on the fact sheet.

4       And so perhaps it's true that they need a

5   subpoena to get this information.  And if they could get

6   that in writing from their PBM saying we've asked them

7   for this information, the PBM refused and said serve a

8   subpoena, we can take it from there.  They can serve a

9   subpoena.  We can serve a subpoena.  We can decide what

10  to do.

11      But the fact of the matter is they have an

12  obligation to answer those questions in good faith the

13  same way they would interrogatory responses.  We don't

14  know that information isn't within their possession,

15  custody, or control.  They've taken a very narrow view

16  of what possession, custody, or control is without even

17  having asked the PBM.  So maybe -- you know, if they go

18  to the PBM and ask and it's clear they can't get the

19  information, we can take it from there, but that hasn't

20  even happened here.

21          JUDGE JAMES:  All right.  Okay.

22          MS. ALI:  Okay.

23          JUDGE JAMES:  Thank you.  Thank you,

24  Mr. O'Mara.

25          Judge Crabtree.

1            MR. FRIES:  Judge, if I may?

2            JUDGE CRABTREE:  Please.

3            MR. FRIES:  I'd like to address the comments

4    with Ms. Bresch's deposition that came up in the

5    Local 282 discussion.  I think it's important to respond

6    to those.  Ms. Bresch, as you know, is a defendant in

7    the case and is a CEO for the Mylan defendants.  Her

8    deposition is something that we've talked about quite a

9    bit in this case.  She was deposed yesterday in

10   Pittsburgh.  The deposition started at 8:00 a.m.  There

11   were several lawyers in the room here today who were at

12   that deposition.

13           JUDGE JAMES:  Were you there, Mr. Fries?

14           MR. FRIES:  I was there, Your Honor.

15   Mr. Sechler and Mr. Levin were there as well for the

16   defendants producing Ms. Bresch.  Mr. Hudson was there.

17   Mr. Buchweitz was there.  Mr. Burns was there.  I

18   apologize if there's anybody else, but there were

19   certainly plenty of lawyers who were there in the room

20   and very experienced attorneys who were certainly aware

21   of the deposition guidelines, Rule 30, and the court's

22   comments previously at the last status conference -- or

23   the previous status conferences about the deposition

24   guidelines.

25           Mr. Lanier took the deposition to begin with on

1   behalf of class plaintiffs.  They had split their time

2   between Mr. Lanier and Mr. Buchweitz on behalf of

3   Sanofi.  He spent about half the day.  They split it in

4   half basically.  We started with Mr. Lanier's questions.

5   And as you would expect there's very experienced counsel

6   in the room and present there and there were obviously

7   some things that the other attorneys may not have liked

8   about the questioning or the conduct of counsel or the

9   way things were going.  But at the end of the day,

10  nobody called the court.

11       We certainly knew that the court had given us

12  that opportunity to call either one of the honors if we

13  had any issues that we thought need to be addressed in

14  the deposition.  I have a long list of things that I was

15  keeping track of that I might want to raise if we got

16  into a discussion, but nobody thought there was any need

17  to call the court to talk about anything that was

18  happening in the deposition.

19            JUDGE JAMES:  I was waiting.  I was so

20  disappointed.

21            MR. BUCHWEITZ:  I did have your number

22  ready.

23            MR. FRIES:  I think we all did.  I think we

24  all did but nobody had to use it.  At the end,

25  Mr. Lanier had time left.  He didn't use his complete

1    time.  He left the deposition in the afternoon while

2    Mr. Buchweitz questioned the witness on behalf of

3    Sanofi.  At the end of the day, his associate who was

4    there with him asked a few questions as well and they

5    finished the deposition with time to spare.  And

6    everybody left the room at the end of the day and walked

7    out and moved on.

8         As we know from the court's reference to the

9    letters that have been sent last night, we certainly

10   were available if we wanted to hear something.  I

11   received no e-mails.  Nobody had any e-mails or any

12   discussion about anything that happened in Ms. Bresch's

13   deposition.

14        JUDGE CRABTREE:  Let me ask this:  This

15   is -- the excerpts that have been submitted here were

16   chosen by one side of the caption from an uncertified

17   transcript I'm guessing but I imagine somebody ordered a

18   quick turnaround transcript; is that right?

19        MR. FRIES:  I think it was live-streamed and

20   there was a rough draft at the time, Your Honor.

21        JUDGE CRABTREE:  Do you know when a finished

22   transcript will be available to the parties?

23        MR. FRIES:  I do not.  I don't know if

24   anybody else there knows.

25        MR. DAVIDSON:  Your Honor, good afternoon,

1   Stuart Davidson.  I actually watched the deposition

2   through the live stream, which is fantastic technology

3   because I was on a plane.  So the fact you could stream

4   it on the plane was quite interesting.

5       I think that we did order an expedited

6   transcript.  We were able to get the rough draft in

7   preparation for today's hearing, but I believe an

8   expedited transcript is -- turnaround is in a few days.

9       JUDGE CRABTREE:  All right.  So here's what

10  I'm going to ask:  I'm troubled enough by what I've seen

11  here to request lead counsel from both sides of the

12  caption to submit on its first availability a transcript

13  of that deposition to me at my chambers' address.  I

14  will make sure that Judge James is furnished a copy of

15  it.  I will look at it and we'll see where we go here.

16      I don't know how to say this more bluntly, we are

17  not messing around with these guidelines.  And this

18  conduct, if it's representative of what went on at the

19  deposition, troubles me a lot.  So I'll wait for that

20  submission and we'll see what, if anything, needs to be

21  done next.  All right.

22      MR. FRIES:  Thank you, Your Honor.

23      JUDGE JAMES:  Thank you.  Next item on the

24  agenda is -- let's see 3A, I ruled on that motion.

25      3B, class plaintiffs' motion for relief for

1   Mylan's violations, basically sanctions motions.  I

2   don't know if we need to hear anything.  I am going to

3   be ruling on that.  So...

4                MS. PRITZKER:  I was very hesitant to call

5   it a sanctions motion because I think there's a remedy

6   specified by the rules that result in waiver if the

7   procedures in substantive -- mechanics of the rule --

8                JUDGE JAMES:  Is there anything briefly you

9   want to add or...

10               MS. PRITZKER:  I think that the motion

11  speaks for itself.  I mean, this is -- you know, in the

12  midst of today's hearing, this is actually a motion that

13  actually cries out for the procedures that request that

14  the parties, you know, give notice and meet and confer

15  in advance of making these privilege designations

16  specifically to avoid the confusion and delay that arose

17  as a result of -- as a result of this sort of behind the

18  scenes or just, you know, instructions to non-parties

19  that we had -- we were not aware of.

20          But I'm certainly -- the motion -- our motion is

21  before the court.  Obviously Mylan has not had an

22  opportunity to file its opposition or response.

23               JUDGE JAMES:  Right.

24               MS. PRITZKER:  It has not yet been briefed.

25  But if the court has any questions, I'm prepared to

17-md-2785   In re: EpiPen  10.10.18                    60

1   answer them.

2           JUDGE JAMES:  All right.  I think we'll just

3   wait and see the response.  Let's see, that response is

4   due October 15th.  I think class plaintiffs wanted to

5   expedite the briefing?

6           MS. PRITZKER:  If possible.

7           JUDGE JAMES:  How soon does Mylan expect to

8   file its response, Mr. Foster?

9           MR. FOSTER:  Your Honor, we have a lot to

10  say about this motion.  And I think, frankly, to echo

11  and flip a little bit about what Ms. Pritzker said, this

12  is a motion in which Mylan is basically being accused of

13  all kinds of misconduct, in fact, surreptitiously and in

14  clandestine fashion and just when tons of just very

15  overheated rhetoric is being hurled at us for simply

16  interacting with consultants and agents of Mylan who

17  received subpoenas who had privileged information

18  contained in them, and I felt the need to respond to

19  that comment.  I think this is a motion that does cry

20  out, frankly, for some of the guidelines and some of the

21  professionalism norms that we should be following here.

22          JUDGE JAMES:  I guess you'll take your full

23  time to file a response October 15th?

24          MR. FOSTER:  Yes, Your Honor.  And we'll be

25  submitting evidence with our response, and I do

1   respectfully request that normal time for the response.

2           JUDGE JAMES:  All right.  I think that's

3   fine, given the gravity of the motion.  So and if you

4   want to expedite your reply.

5           MS. PRITZKER:  I would be happy to do that,

6   Your Honor, and I was very careful in my language.  I

7   really tried not to be over the top.  I was very much

8   aware of the court's guidelines in this area and was

9   very careful.  The real concern here is that a lot of

10  these actions were done without notice or us even

11  knowing that they were going on.  And with instructions

12  to non-parties to withhold documents on bases that we

13  weren't -- we were unclear on, it caused a real problem,

14  confusion and delay on our part.

15          And so, again, I was very -- I didn't label it a

16  sanctions motion.  I do think that the waiver is the

17  remedy that the rules provide for.  I know a lot of the

18  cases talk about it as a sanction, but here it's really,

19  you know, the failing to preserve the privilege

20  appropriately results in a waiver.  And, unfortunately,

21  the cases called it a sanction.  I was very careful not

22  to call it that.

23          JUDGE JAMES:  Okay.  Thank you.

24          MS. PRITZKER:  I will get my reply in as

25  soon as I can.  If the court wants to order it on

1    shortened time, I'm happy to do that.

2            JUDGE JAMES:  All right.  Thank you,

3    counsel.  We'll wait to see the briefing.

4        All right.  3C has been ruled.  That get us to

5    Item 4.

6            JUDGE CRABTREE:  All right.  Let's turn to

7    the claims -- asserting claims that are West Virginia

8    law, that's Item 4 on your agenda.  I read the status

9    reports about that and the cross reference to the

10   holding announced in Document 896, the order on the

11   motion to dismiss, so the class plaintiffs' complaint or

12   consolidated complaint, and I'm interested to hear from

13   the plaintiffs specifically trying to understand why

14   there is the reluctance to dismiss the West Virginia

15   claims and understand that --

16           MR. DAVIDSON:  Sure.  Your Honor, I can

17   speak loud or I can come down to the podium.

18           JUDGE CRABTREE:  I predict Miss Greiner can

19   hear you from there.

20           MR. DAVIDSON:  Saying I am loud?

21           JUDGE CRABTREE:  Loud enough.

22           MR. DAVIDSON:  In any event, Your Honor, as

23   I think we laid out in our status reports, the West

24   Virginia plaintiff had essentially what can only be

25   termed a panic attack at the deposition.  His heart was

1   racing and he wasn't feeling well and for that reason

2   the deposition was canceled.

3          In our view, in light of Your Honor's order,

4   there's -- we will likely amend the complaint, Your

5   Honor, left open that opportunity for us in our -- in

6   Your Honor's motion to dismiss order to essentially try

7   to cure any deficiencies, whether we didn't have a named

8   plaintiff or a particular state or that particular

9   state's claims was not -- were not sufficiently pled.

10  And so we have planned to address that West Virginia

11  issue along with other issues both at the class

12  certification stage and in a forthcoming amended

13  complaint.

14         If we come forward with the class certification

15  motion and we do not have a West Virginia class

16  representative at the time, then the -- really the issue

17  there's no rush, there's no real issue with the fact

18  that this individual wasn't able to be deposed.  But if

19  we are able to --

20         JUDGE CRABTREE:  I thought this individual

21  had been dismissed.

22         MR. DAVIDSON:  I don't believe this

23  individual has been dismissed.  But defense counsel,

24  Carrie, can correctly --

25         MS. DELONE:  They have.  Docket 1046 they

1   were dismissed.

2              MR. DAVIDSON:  So --

3              JUDGE CRABTREE:  That's the way I read the

4   status report.

5              MR. DAVIDSON:  So I take that back then.

6   But -- so but we do intend to come forward -- if we do

7   get retained by additional West Virginia class members,

8   then we do intend to pursue those claims.

9              JUDGE CRABTREE:  All right.  Well, here's

10  the deal:  I don't grant oral motions to dismiss in this

11  sort of situation.  If you want to file a motion to

12  dismiss at this stage on the issue, that's your call.

13  I'd take it up on a short-term basis.  What's your

14  pleasure?

15             MS. DELONE:  Yes, Your Honor.  I think that

16  we -- we can file a very short motion.  Based on your

17  previous order, you addressed the question of whether

18  they could amend in your previous order.

19             JUDGE CRABTREE:  I know you got a lot going

20  on.  Ten days enough?

21             MS. DELONE:  I think ten days would be fine.

22             JUDGE CRABTREE:  Ten-days for response from

23  the plaintiffs.  No replies.  We'll get it ruled on

24  where that case stands in the case.  If the pieces

25  change, they change.  Okay.  That's issue No. 4 as I see

1    it.  No dissent, please.  I take the easy ones for

2    myself.

3              JUDGE JAMES:  All right.  No. 5 has to do

4    with third party discovery issues.  I'd like to short

5    circuit this as much as we can.  I mean, this is -- I --

6    I see that there's a proposal in class plaintiffs'

7    status report.  Mylan's status report then says, wait a

8    minute, we've been operating on three and a half hours

9    each side and certain parameters, now class plaintiffs

10   are wanting to change this.  So which -- I mean, I guess

11   I'm curious as to why we would change midstream if, in

12   fact, that is the case.

13             MS. CAPPIO:  Your Honor, Gretchen Cappio

14   again and with more good news.  I'm pleased to say that

15   we have met and conferred and we have reached a

16   resolution on this point too, and I'd be happy to

17   explain to the court what we agreed on if that would be

18   helpful for the record.

19             JUDGE JAMES:  That would probably be a good

20   idea.  Why don't you give us bullet points of the

21   parameters.

22             MS. CAPPIO:  Your Honor, my apologies, I

23   don't like to read at the podium but to get this just

24   right, I'm sure defendants would agree to it if I read

25   our agreement.

17-md-2785    In re: EpiPen   10.10.18                    66

1         JUDGE JAMES:  That's fine.  How long is it?

2         MS. CAPPIO:  That long, one page.

3         JUDGE CRABTREE:  Just remember the court

4   reporter has to keep up with you.

5         JUDGE JAMES:  Yeah.  And if you can

6   summarize parts of it, let's keep it as brief as

7   possible.

8         MS. CAPPIO:  Got it.  We have reached

9   agreement on how to split the seven hours.  For all

10  third-party depositions that are cross noticed, the side

11  going first will have four hours to question the

12  witness.  The second side will have three hours.  If

13  either side does not use its full time, any remaining

14  time of the seven hours would revert to the other party.

15       For depositions that are not cross noticed,

16  15 minutes of the seven hours would be reserved for the

17  other side to ask any questions in situations where

18  there's no cross notice.

19       The next issue we agreed on is how to count a

20  deposition for purposes of the 20 deposition limit per

21  side.  If a deposition is cross noticed, then it would

22  count half against each side for purposes of the 20

23  deposition limit that applies to both coordinated and

24  non-coordinated discovery combined.  If the deposition

25  is not cross noticed, then it would count as one full

17-md-2785   In re: EpiPen  10.10.18                    67

1   deposition for the side that noticed it.

2            JUDGE JAMES:  I can't tell you how glad I am

3   we're not getting into sevenths.

4            MS. CAPPIO:  Me too.  The next issue we

5   agreed on is who gets to ask the questions first at each

6   cross noticed deposition.  I think this will be your

7   favorite part.  We're going to have a draft.  It's going

8   to be next Tuesday.

9            JUDGE CRABTREE:  For real?

10           MS. CAPPIO:  For real.

11           JUDGE JAMES:  Judge Crabtree will really

12   like that.

13           MS. CAPPIO:  As someone asked, "Who's

14   serving the drinks?"  We'll have a draft next Tuesday

15   where the sides can pick who goes first at each cross

16   noticed third-party deposition.  One side will pick

17   first, then the other side, then the first side and so

18   on.  We are alternating.  So that's our creative

19   solution.

20           JUDGE JAMES:  Okay.  Very good.  Any

21   objection, any correction, revision?

22           MR. SECHLER:  No, that is absolutely

23   accurate, Your Honor.  We are having a draft on Tuesday.

24   The first deposition is Thursday -- tomorrow, Humana.  I

25   think the class plaintiffs are going to take the first

17-md-2785   In re: EpiPen  10.10.18                    68

```
 1   one tomorrow.  And the draft, I think it's agreed, that
 2   defendants would have the first pick, actually the
 3   second pick but the first one of the draft.
 4              JUDGE JAMES:  All right.
 5              MS. CAPPIO:  That's my --
 6              MR. BURNS:  Your Honor, should we need to
 7   live stream this draft?
 8              JUDGE JAMES:  Yes, probably.
 9              JUDGE CRABTREE:  This is -- keep going.
10   This is fascinating.
11              MS. CAPPIO:  Okay.  As to the other
12   third-party deposition scheduling, I'm pleased to say
13   we're four down, 15 or so to go.  We're making steady
14   progress.  We're working toward the October 31st
15   deadline and we may need some help making that deadline.
16   We have 15 remaining, like I said, and we have agreed
17   dates on nine of the third parties.  So bear with me a
18   moment and I'll get into some of the numbers.
19              We've reached agreements on dates and scope of
20   the deposition with many third parties but we're going
21   to need to file some motions to compel, and you saw one
22   come in I believe it was yesterday at --
23              JUDGE JAMES:  Yes, I don't believe you saw,
24   we entered an order expediting the briefing on that
25   first one and you can expect that same sort of response
```

1  to any others filed.

2          MS. CAPPIO:  Thank you, Your Honor.  That's

3  what I was going to ask for.  And I have some dates in

4  mind if you would like to hear them for when we're

5  planning to file them, but, if not, we can wait for

6  you --

7          JUDGE JAMES:  I think we'll wait and see

8  what happens.  You can surprise us.

9          MS. CAPPIO:  Okay.  Well, we appreciate the

10 expedited briefing and we'll certainly be as efficient

11 as we possibly can be.

12         JUDGE JAMES:  All right.

13         MR. SECHLER:  Your Honor, on the scheduling

14 issue:  So we have been talking to counsel for some of

15 the PBMs.  They have told us what they've talked about

16 with class plaintiffs' counsel and some of the

17 scheduling issues have been kind of challenging.  So,

18 for instance, ESI is represented by Quinn Emanuel, a

19 lawyer by the name of John Cooper.  We have talked to

20 him.  They have been noticed for October 22nd.  They

21 can't make that.  They could make November 7th.  That

22 was a date they told us they could make.  They asked if

23 we would agree to that.  We said we could agree to it

24 but, of course, the court would have to approve it.  But

25 that's -- they're doing what they can do.

1        Prime is represented by Dorsey in Minnesota.

2   They told us that they have been noticed for October

3   30th, a date they did not agree to and they cannot agree

4   to.  They can't agree to be able to be ready.  We want

5   to get these done as well as anyone, but I think there

6   is going to be some issue getting them all scheduled by

7   October 31st given the number.

8        And so we would ask the court perhaps for a

9   little flexibility for some of the PBMs who need a week

10  or two to produce somebody.  So I know ESI would

11  appreciate that, Prime, and I don't know if there are

12  others who Ms. Cappio has talked to also can't make the

13  31st.  But it seems to me that this is -- we're at the

14  point now we should talk about this.

15               JUDGE JAMES:  Well, the parties are going to

16  have to agree to take any of them outside the discovery

17  deadline or request an extension of the discovery

18  deadline.  So, you know, if everybody wants to agree,

19  then you can do these things outside the discovery

20  deadline.  But, otherwise, you'll have to file a motion

21  and persuade me that you need an extension of the

22  discovery deadline.

23               MR. SECHLER:  Yeah, I guess I'm just afraid

24  motions to compel a party to come October 22nd when

25  they've given us November 7th doesn't make sense, but

1    I'll talk with Ms. Cappio and hopefully we can get it

2    resolved.

3              JUDGE JAMES:   Hopefully you all can agree.

4              MS. CAPPIO:   Your Honor, we're anticipating

5    having to file probably four motions to compel and we

6    may need your help on the order to comply with the

7    coordinated discovery deadline because we are intent on

8    taking these depositions before October 31st.  And those

9    third parties that we intend filing additional motions

10   on are CVS, ESI, Prime and Optum.

11             JUDGE JAMES:   Okay.  All right.

12   Judge Crabtree and I are willing to allow until November

13   14th to get those specific third-party depositions

14   discovery done that you just referenced, Ms. Cappio.  So

15   which ones were they?  CVS?

16             MS. CAPPIO:   CVS, ESI, Prime and Optum.

17             JUDGE JAMES:   We'll allow until November

18   14th to complete those, but that extension applies only

19   to those four.  No other -- no other extensions at this

20   point.

21             MS. CAPPIO:   We appreciate that, Your Honor,

22   because we've been meeting and conferring a really long

23   time and it's time to get the show on the road.  Thanks.

24             JUDGE JAMES:   Mr. Sechler, does that help

25   you?

1           MR. SECHLER:  I think that does.  I think it
2    helps the third parties more than it does us.  But thank
3    you, Your Honor.
4           JUDGE JAMES:  Okay.  That takes care of five
5    then.  Six.
6           JUDGE CRABTREE:  So this is Item 6 on your
7    agenda is the expert schedule that would apply in the
8    Sanofi case.  This is something of a conundrum because
9    it seems to pit two of Rule 1's fundamental values
10   against one another, one side leaning on the inexpensive
11   and the other side leaning heavily on the speedy factor.
12   Both argue -- make persuasive arguments.
13          Defendants' argument would be less costly and
14   thus in-- more inexpensive to sync the expert's schedule
15   to that with the class plaintiffs and Sanofi's counsel
16   argues just as effectively that there is no sufficient
17   reason to idle the case it brought while work gets
18   completed on the case that's not their problem.
19          I'll just be direct with you, there aren't any
20   boxes of magic dust given out at judge's school.  In the
21   law, as in life, the calendar's the calendar, and so in
22   the end I have to pick some outcome to this.  I think --
23   I think my conclusion, after reading and rereading --
24   and I didn't just start thinking about this problem
25   following your submission of your reports.  I actually

 1    took it with me last time and had thought about adopting

 2    something in the interim to get this behind us and then

 3    a criminal sentencing came along that was problematic

 4    and you know what happens.

 5         Look, I think in the end, Sanofi has the better

 6    of the argument but it's not a shutout.  I think there

 7    -- I'm not persuaded that the schedule that Sanofi has

 8    advocated ought to be the schedule.  I think it's more

 9    the approach that's inherent in their proposal that

10    persuades me.

11         So here's the schedule that I'm planning to adopt

12    in an amended scheduling order.  I have tried to make

13    sure that it takes into mind the spring holiday

14    calendars and the like.  So under this schedule Sanofi's

15    expert disclosures will be due on February 4th, and the

16    defendants' expert disclosures as they apply to the

17    Sanofi case due on March 25th, Sanofi's rebuttal due

18    April 18th, and expert discovery as it applies to the

19    Sanofi case would conclude -- must conclude by May 31st.

20         If you sit down and look at those dates in the

21    broad comparison to other things that will be going on

22    in the case, I think you'll see that everybody's ox gets

23    gored at least somewhat and there isn't going to be a

24    shutout on this issue.  I think it's a fair outcome.

25    It's the schedule I'm planning to adopt.

1           Before you try to talk me out of that, this

2    really just sets the table for a second issue and that

3    is what's the dispositive briefing will look like in the

4    Sanofi case, an issue that we pushed down the road,

5    maybe unwisely at the time.  I know there is the

6    forthcoming motion activity on remand.  I guess I'll be

7    interested to hear from you about how you would like to

8    establish the dates that will apply to the Sanofi claim

9    on the substantive briefing, whether that is ruled here

10   ultimately or in New Jersey.  It seems to me the parties

11   need some target dates to work from.  So do you have --

12   is this something you've talked about and been waiting

13   for me to raise or what's the state of play among you,

14   counsel, about it?

15           MR. BUCHWEITZ:  We haven't talked about a

16   dispositive briefing schedule but we're happy to do so.

17   I think that the way we've anticipated it, it would be

18   staged, you know, at some period of time after experts.

19   So I think the -- now that we have the expert schedule,

20   I think that we could try to work that out.  And if we

21   don't agree, I think maybe we could submit something to

22   Your Honor.

23           JUDGE CRABTREE:  What do you think about

24   that?

25           MR. SECHLER:  Yes, Your Honor, I think we

1    should probably talk and come up with something that's

2    agreeable.  There are a lot of issues that are going to

3    be at issue in both the summary judgment motion and

4    Sanofi -- well, Sanofi responds to and that we file and

5    the one that the class plaintiffs will have to deal with

6    as well because they overlap almost more than half, I

7    would say.

8         So I don't know.  I guess we're going to have to

9    talk among ourselves as to how we present that to the

10   court.  I don't think the court would want to hear the

11   same motion twice and I would think the class plaintiffs

12   would want to have a say in issues that would affect

13   part of their claims the court's going to rule on.  So I

14   think it probably makes sense for the parties to have a

15   discussion.

16         JUDGE CRABTREE:  Yeah, that seems to me --

17   and I'm not quite sure.  Whenever you talk in this kind

18   of case about what the dispositive motion schedule is

19   going to look like, of course you've got the unspoken

20   partner of what the *Daubert* issues are going to do.

21         Here's what I'd like to do:  I'd like to

22   commission the two of you to put your brain -- look,

23   anybody who can come up with a Fantasy Football League

24   draft of non-party witnesses can solve this problem and

25   then you're off to our next -- North Korea's next for

 1   you guys.  You've solved big problems in the case.

 2       But how long would you like to do that?  What I'd

 3   like to get from you in a perfect world is an agreed,

 4   adopt this, we're done with it.  If you don't, I'm going

 5   to ask you each to submit one and I'm likely going to

 6   view it as a baseball arbitration, I'm going to pick one

 7   or the other.

 8               MR. BUCHWEITZ:  Fine.

 9               JUDGE CRABTREE:  How long do you want to

10   have that?  I know you got some other things going on.

11               MR. SECHLER:  We do have a lot going on in

12   the next couple weeks.  I would say maybe by the end of

13   the month, Your Honor.

14               MR. BUCHWEITZ:  I don't think -- I don't see

15   any reason to wait that long.

16               JUDGE CRABTREE:  I figured he would say

17   that.

18               MR. SECHLER:  The motion for remand is due a

19   couple weeks later.

20               JUDGE CRABTREE:  This is fairly far out past

21   the schedule we've already set.  So I don't think in

22   fairness October 31st you said or November 1st?

23               MR. SECHLER:  I was thinking November 1st

24   because that's the --

25               JUDGE CRABTREE:  I'm going to give him the

1   October 31st for the deadline for that report.

2          MR. BUCHWEITZ:  Thank you.  I appreciate it.

3          JUDGE CRABTREE:  You can submit whatever

4   form appropriate to chambers.  If you've got one

5   proposal, submit it.  If you've got two, make it clear

6   who's who and somebody -- somebody will pick the lucky

7   winner in all likelihood.

8          MR. BUCHWEITZ:  One follow-up on the

9   experts, so they do have counterclaims.  You said

10  Sanofi's affirmative report February 4th.  Their

11  response -- I just wanted to clarify, they may be filing

12  an affirmative report.  I don't know.

13          JUDGE CRABTREE:  I wondered about that a

14  little bit, not to sound like the judge who always says

15  "I thought of that."  I wondered -- I wondered if

16  actually those disclosure deadlines should -- should be

17  stated in this context of expert to be offered in

18  support of a claim or defense on which that party bears

19  the burden of proof.  So that if it's your -- if it's

20  going to be your expert on your counterclaim, you get

21  the February 4th date with the -- with that.

22          MR. SECHLER:  That makes sense, Your Honor.

23          MR. BUCHWEITZ:  Yeah.  Thank you, Your

24  Honor.

25          JUDGE CRABTREE:  I'll use that language.

1    That way if you have problems with the language, you

2    think it's not self-executing, you know where I work.

3                MR. BUCHWEITZ:  Thank you, Your Honor.

4                JUDGE CRABTREE:  All right.

5                MR. SECHLER:  Thank you, Your Honor.

6                JUDGE CRABTREE:  Thank you both.  I think

7    that's issue six.

8                JUDGE JAMES:  All right.  Next September

9    21st order, some scheduling issues.  Sanofi says parties

10   are continuing to meet and confer.  Are you continuing

11   to meet and confer?

12               MR. HOCHSTADT:  Yes, Your Honor.  Eric

13   Hochstadt for Sanofi.  And I'll speak on behalf of

14   Sanofi and the class plaintiffs that this is the

15   coordinated 30(b)(6) deposition of Mylan, the remaining

16   19 minutes.  We've been working with the Mylan

17   defendants up to right before the conference and I can

18   report as follows:

19               I've been conferring with David Foster, and Mylan

20   has agreed that we will get a designee on Topics 5 and 6

21   before the end of coordinated fact discovery on

22   October 31.  We don't have the identity of the designee

23   yet, whether it will be Patrick Zinn on Topics 5 and 6,

24   as he was the designee, or somebody else and the actual

25   date.  But I have the commitment that that deposition

1   will take place by October 31st or before.  And I will

2   know from Mr. Foster, the Mylan defendants, the date and

3   identity of that witness by the end of this week.

4   Fair --

5                JUDGE JAMES:  Okay.

6                MR. HOCHSTADT:  -- David?

7                MR. FOSTER:  Yes.

8                MR. HOCHSTADT:  Great.  And then we are

9   working with respect to Topic 3 of the 30(b)(6).  We're

10  working to see if we can resolve that by an exchange of

11  documents that will be in sort of admissible form so

12  there's no disputes in terms of admissibility down the

13  road.  And we don't need a designee for that and

14  Mr. Foster and I have had an exchange of that last night

15  and we're going to be working in good faith to get that

16  resolved with documents to be done by October 22.

17  Correct?

18                MR. FOSTER:  Yes, again.

19                MR. HOCHSTADT:  Okay.  And that's the update

20  for now, Your Honor.

21                JUDGE JAMES:  All right.  Very good.

22                MR. HOCHSTADT:  Thank you.

23                JUDGE JAMES:  Okay.

24                JUDGE CRABTREE:  Leaves one final stanza

25  that is agenda Item No. 8 which is the page limits for

1    the certification briefing which were proposed in what

2    is called a joint report on that subject, Document 1094.

3    Normally I would not look a gift horse in the mouth but

4    I read the fine print on this one and I'm not sure this

5    agreement goes far enough.

6         The 190 pages of argument and authorities, I'm

7    fine with that.  It's a lot.  You know, you don't have

8    to use it all and you all are good lawyers.  You can

9    figure out whether 160 pages is more effective than 190

10   pages.  So that part of the deal I can live with.

11        It's the blue sky that comes on the rest of it.

12   And each side could probably write six or seven hundred

13   pages before they get to argument and authority.  I

14   don't think that's going to help inform me and my

15   understanding of the issues I've got to decide.  So I'm

16   not going to adopt the joint report at this point.  I'm

17   going to send you back and look for an all-in number and

18   have that submitted in the same fashion that you

19   submitted Document 1094.

20        So how long do you want to do that class

21   plaintiffs?  Mr. Sharp?

22             MR. SHARP:  Your Honor -- a week is fine,

23   Your Honor.

24             JUDGE CRABTREE:  Okay.  From your side

25   there, defendants.

1          MR. LEVIN:  That's fine, Your Honor.  One

2    week is fine.

3          JUDGE CRABTREE:  All right.  I'll look for

4    it in a week and we can go from there.

5          JUDGE JAMES:  All right.  I think the only

6    other thing is Judge Crabtree and I talked a little bit

7    about whether we need to have another -- set another

8    monthly status conference like this or hearing like

9    this.  I'm thinking maybe we don't need it, but

10   Judge Crabtree and I decided maybe we should set a

11   placeholder about a month out given that there are a lot

12   of issues still resolving.  So we were thinking of

13   November 19th, that afternoon, thinking that will get

14   you all back home if you need to come so you can get

15   ready for the Thanksgiving holiday and that afternoon

16   works for our schedules.  So would the afternoon of

17   November 19th as kind of a placeholder date in case we

18   need to reconvene work for, is there anybody that would

19   not work for?

20         MR. SECHLER:  Your Honor, I'm sorry to say I

21   wouldn't be able to make it.  I'm not sure that matters

22   significantly to the cause but I have something I really

23   can't miss.

24         JUDGE JAMES:  Okay.  Well, Mylan, is there

25   -- do you feel comfortable or do you have others who can

 1    cover?

 2              MR. SECHLER:  Yeah, we can probably make

 3    that work.

 4              JUDGE JAMES:  We'll miss you, Mr. Sechler.

 5              MR. SECHLER:  I'll miss being here.

 6              MR. SHARP:  I will miss that date.  I'm

 7    already set for a hearing in the Eastern District of

 8    Oklahoma on that date in another class certification

 9    issue.

10              JUDGE CRABTREE:  Muskogee?

11              MR. SHARP:  I get to go to all the good

12    places.

13              JUDGE JAMES:  Tell them you have something

14    more important here.

15              MR. SHARP:  They don't think so, Your Honor.

16              JUDGE CRABTREE:  If you're going to tell

17    them that, quote her.

18              MR. SHARP:  I'll do that.

19              JUDGE JAMES:  Mr. Sharp, are you comfortable

20    with us proceeding with other plaintiffs counsel or --

21              MR. SHARP:  You know, it always depends on

22    what comes up.  I have so many able counsel, the

23    answer's got to be yes.

24              JUDGE JAMES:  All right.  We'll go ahead and

25    set November 19th at 1:30 for a hearing back here but it

1    will be a tentative date.  So let's do this, if anybody

2    sees a burning issue that you feel you need to be heard

3    on and have a hearing, notify the court of that just by

4    e-mail or call and let's try and do that by two weeks

5    before, so by November 5th.  And then if there's an

6    issue, we'll talk about reconvening here at that time.

7    All right.

8              JUDGE CRABTREE:  Anything else before we

9    close the record?  Any Yankee fans in the room?

10             MR. BUCHWEITZ:  Very disappointed.

11             JUDGE CRABTREE:  All right.  It's hard when

12   your team loses.  My condolences.  There's always next

13   year.

14             MR. DAVIDSON:  Go Red Sox.

15             JUDGE CRABTREE:  For you Red Sox fans,

16   congratulations, but a very tough team awaits you in

17   Houston.  Thanks very much, Your Honor.

18             (Proceedings adjourned.)

19                      CERTIFICATE

20       I certify that the foregoing is a correct

21   transcript from the record of proceedings in the

22   above-entitled matter.

23       DATE:  October 11, 2018

24

25                   /s/Kimberly R. Greiner
                     KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
                     United States Court Reporter