IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | Case No. 2:17-md-02785-DDC-TJJ (MDL Docket No. 2785) |

**NON-PARTY OPTUMRX, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
UNDER FEDERAL RULE OF CIVIL PROCEDURE RULE 45(d)(3) TO QUASH CLASS
PLAINTIFFS' DEPOSITION SUBPOENA, OR IN THE ALTERNATIVE, FOR A
<u>PROTECTIVE ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1)</u>**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND......................................................................................... 7

III. LEGAL STANDARD ................................................................................................... 9

IV.  ARGUMENT AND AUTHORITY............................................................................... 11

    A.   Class Plaintiffs Should Disclose Documents to be Used at the Deposition................... 11

    B.   Presence of Counsel Representing Plaintiffs in Both the Kansas MDL Action and the Minnesota ERISA Action Prejudices OptumRx. ............................................... 13

    C.   Topic Nos. 1 and 2 are Impermissibly Overbroad. ...................................................... 14

    D.   Topic Nos. 3 and 4 Seek Information Not Relevant to this Litigation. .......................... 17

    E.   Topic No. 5 Seeks Irrelevant Information Unrelated to this Case. ................................ 19

    F.   Topic Nos. 6 and 7 are Overly Broad, Vague, and Ambiguous. .................................. 20

    G.   Topic No. 8 Seeks Information that Should Be Obtained from Mylan, a Party to this Litigation. ................................................................................................................ 22

V.   COST RECOVERY ...................................................................................................... 23

VI.  CONCLUSION .............................................................................................................. 23

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baldi Bros., Inc. v. United States*,
  No. 15-300, 2016 WL 5462448 (Fed. Cl. Sept. 27, 2016)....................................................3, 14

*Berwick v. Hartford Fire Ins. Co., Inc.*,
  No. 11-cv-01384-MEH-KMT, 2012 WL 573939 (D. Colo. Feb. 21, 2012) ...........................4

*Bizarro v. First Am. Title Co., LLC*,
  No. 2:15-cv-00320, 2016 WL 2939146 (D. Utah May 19, 2016) ...........................................4

*Bowers v. Mortg. Electr. Registration Sys., Inc.*,
  No. 10-cv-4141-JTM, 2011 WL 6013092 (D. Kan. Dec. 2, 2011) (Waxse,
  Mag. J.) ....................................................................................................................3, 11, 17

*Cotton v. Costco Wholesale Corp.*,
  No. 12-2731-JWL, 2013 WL 3819975 (D. Kan. July 24, 2013) .............................................11

*Digital Equip. Corp. v. Micro Tech. Inc.*,
  142 F.R.D. 488 (D. Colo. 1992) .............................................................................................14

*Hartford Fire Ins. Co. v. P&H Cattle Co.*,
  No. 05-2001-DJW, 2009 WL 2951120 (D. Kan. Sept. 10, 2009) ....................................15, 16

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
  No. 05-2164-MLB-DWB, 2007 WL 1054279 (D. Kan. April 9, 2007)...........................16, 17

*Hefley v. Textron, Inc.*,
  713 F.2d 1487 (10th Cir. 1983) .............................................................................................11

*Hofer v. Mack Trucks, Inc.*,
  981 F.2d 377 (8th Cir. 1992) .................................................................................................10

*In re EpiPen ERISA Litig.*,
  Case No. 17-cv-01884-PAM-SER (D. Minn.)........................................................................2

*In re Modern Plastics Corp.*,
  890 F.3d 244 (6th Cir. 2018) .................................................................................................24

*Legal Voice v. Stormans Inc.*,
  738 F.3d 1178 (9th Cir. 2013) ...............................................................................................24

ii

*Linder v. Calero-Portocarrero*,
    251 F.3d 178 (D.C. Cir. 2001) ...............................................................................24

*Lipari v. U.S. Bancorp.*,
    No. 07-cv-2146-CM-DJW, 2008 WL 4642618 (D. Kan. Oct. 16, 2008)
    (Waxse, Mag. J.) ......................................................................................................4

*McBride v. Medicalogies, Inc.*,
    250 F.R.D. 581 (D. Kan. 2008)...............................................................................21

*Nat'l. R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*,
    No. 16-cv-1094-JTM-TJJ, 2017 WL 5970848 (D. Kan. Dec. 1, 2017) (James,
    Mag. J.) ....................................................................................................................4

*Parker v. Delmar Gardens of Lenexa, Inc.*,
    No. 16-2163-JWL-GEB, 2017 WL 1650757 (D. Kan. May 2, 2017) ..............10, 23

*Reed v. Bennett*,
    193 F.R.D. 689 (D. Kan. 2000) (Murguia, J.)............................................... passim

*Schneider v. CitiMortgage, Inc.*,
    No. 13-4094-SAC-KGS, 2016 WL 362488 (D. Kan. Jan. 28, 2016) .....................22

*Sullivan v. USAA Gen. Indem. Co.*,
    No. 05-cv-855-M, 2006 WL 8436242 (W.D. Okla. May 10, 2006).........................4

*Tomelleri v. Zazzle*,
    No. 13-cv-02576-EFM-TJJ, 2014 WL 7071573 (D. Kan. Dec. 12, 2014).............19

*Versata Software v. Internet Brands, Inc.*,
    2011 WL 4905665 (E.D. Mich. Oct. 14, 2011) ....................................................23

*XPO Logistics Freight, Inc. v. YRC, Inc.*,
    No. 16-mc-220-JAR-TJJ, 2016 WL 6822661 (D. Kan. Nov. 18, 2016) ...................11, 20, 23

## RULES

Fed. R. Civ. P. 26(b)(1)....................................................................................................10

Fed. R. Civ. P. 45(d)(1)..............................................................................................5, 10

Fed. R. Civ. P. 45(d)(2)(B)(ii) ......................................................................................24

Fed. R. Civ. P. 45(d)(3)(A)(iv) ......................................................................................10

Local Rule 26.2(b) .............................................................................................................7

Local Rule 37.2..................................................................................................................10

Rule 26 ........................................................................................................................10

Rule 26(b) ...................................................................................................................23

Rule 26(b)(2)(C)(i) ......................................................................................................23

Rule 26(c) .....................................................................................................................7

Rule 26(c)(1) ...............................................................................................................11

Rule 30(b)(6) ......................................................................................................... passim

Rule 30(b)(6) ...............................................................................................................11

Rule 45 ................................................................................................................... passim

Rule 45(d)(2)(B) ..........................................................................................................24

Rule 45(d)(3) .................................................................................................................7

Rules 26, 30(b)(6), and 45 ............................................................................................3

## I.   <u>INTRODUCTION</u>

On October 2—less than two weeks ago—Class Plaintiffs served a Rule 45 subpoena on OptumRx seeking a 30(b)(6) deposition on October 31.  Class Plaintiffs did so even though the parties had not fully met and conferred about the draft deposition topics that Class Plaintiffs sent OptumRx in September: Class Plaintiffs cut short the one pre-subpoena meet-and-confer call with OptumRx's counsel on September 20 once it appeared that a conflict might prevent Sanofi's counsel (Weil, Gotshal & Manges LLP) from participating in the contemplated OptumRx deposition.[1]  For more than a week after that call, OptumRx's counsel didn't hear from Class Plaintiffs' counsel, so on October 1, OptumRx's counsel emailed Class Plaintiffs' counsel to schedule a time to resume the meet-and-confer process.  The next day, Class Plaintiffs served the subpoena on OptumRx.

Since receiving the subpoena on October 2, OptumRx has met and conferred with Class Plaintiffs through three telephone conversations and multiple letters and emails.  Through those exchanges, the parties' disagreements have crystallized:

1.  Class Plaintiffs refuse to comply with this Court's Deposition Guidelines, which explain that if a "witness is going to be asked to review numerous or lengthy documents, copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the witness to read them prior to the deposition."  *See* U.S. District Court, District of Kansas, Deposition Guidelines ("Deposition Guidelines"), ¶ 6(c).[2]  OptumRx is not a party to the MDL, does not have access to the MDL parties' discovery (which is likely voluminous), and itself produced more than 24,000 documents under a Rule 45 document subpoena.  Requiring OptumRx to prepare its corporate designee to testify about Class Plaintiffs' overbroad topics

---

[1] Sanofi's counsel later informed OptumRx that Sanofi will not attend any OptumRx deposition.

[2] Available at http://ksd.uscourts.gov/index.php/deposition-guidelines/.

(more on that later) without having any clue which documents Class Plaintiffs plan to ask about would subject OptumRx to undue burden and expense, violating Rules 45(d)(1) and 26.   And Deposition Guidelines aside, Class Plaintiffs' refusal to identify ahead of time the documents that they plan to use with a non-party is unfortunate gamesmanship that will likely mean that OptumRx's designee will spend much of the deposition's seven hours reading documents that the designee has not seen before.

2.   Under the protective orders in this case (Dkt. 556), MDL counsel may not use confidential information from the MDL for any purpose other than litigating in the MDL.   On top of that, MDL counsel may not disclose, summarize, describe, characterize, or otherwise communicate confidential information designated as Highly Confidential to any unauthorized person or entity—which would include parties or counsel in other non-MDL-2785 proceedings. OptumRx has voiced its concern to Class Plaintiffs that any MDL lawyer who also represents plaintiffs in the Minnesota ERISA litigation, *In re EpiPen ERISA Litig.*, Case No. 17-cv-01884-PAM-SER (D. Minn.) (the "Minnesota ERISA Litigation") or other similar litigations around the country could not attend the contemplated OptumRx deposition without violating the protective orders governing the Kansas MDL.   To be clear, OptumRx is not implying or predicting improper conduct by Class Plaintiffs' counsel.   Practically speaking, however, there is no way for an MDL lawyer who attends the contemplated OptumRx deposition to unlearn Confidential or Highly Confidential information learned through that deposition.   If the MDL lawyer also represents plaintiffs in the Minnesota ERISA Litigation (or other related litigation), it is hard to see how that lawyer could sequester in his or her mind the designated material from the MDL deposition and not use it in the related litigation or otherwise (even if unintentionally) communicate it to unauthorized recipients.   *See Baldi Bros., Inc. v. United States*, No. 15-300,

2

2016 WL 5462448, at *3 (Fed. Cl. Sept. 27, 2016) ("Even if [the court] were to accept that plaintiff would make a conscious and sustained effort to comply with the terms of the protective order, the fallibility of the human brain is paramount. It is simply impossible for a human being to segregate or 'unlearn' certain pieces of knowledge.") (internal quotation marks omitted).

Class Plaintiffs have suggested that one possible solution would be for plaintiffs' counsel from the Minnesota ERISA Litigation or other related litigation to agree not to attend the OptumRx deposition in this case. That is a good first step, but it is not enough to alleviate OptumRx's concern about Class Plaintiffs' counsel using designated material from the MDL deposition in other proceedings. OptumRx requests that Class Plaintiffs' counsel take appropriate steps to "wall off" the information obtained through the MDL depositions to ensure that it is not used, even inadvertently, in the Minnesota ERISA Litigation.

3. The proposed deposition topics are overbroad. Collectively, Rules 26, 30(b)(6), and 45 require Class Plaintiffs "to designate, with *painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Bowers v. Mortg. Electronic Registration Sys., Inc.*, No. 10-cv-4141-JTM, 2011 WL 6013092, at *4 (D. Kan. Dec. 2, 2011) (Waxse, Mag. J.) (internal quotation marks omitted) (quashing 30(b)(6) subpoena because topics were "not described with the reasonable particularity required by Rule 30(b)(6)" or "if sufficiently reasonably particular, [were] otherwise so overly broad that they subject [the witness] to an undue burden"); *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (Murguia, J.) (quashing 30(b)(6) notice as "overbroad" because plaintiff failed to designate topics with required specificity); *Nat'l. R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM-TJJ, 2017 WL 5970848, at *4–*6 (D. Kan. Dec. 1, 2017) (James, Mag. J.) (denying in part motion to compel plaintiff to produce a Rule 30(b)(6) corporate

3

designee because many of the topics were "overly broad"); *Bizarro v. First Am. Title Co., LLC*, No. 2:15-cv-00320, 2016 WL 2939146, at *3-*4 (D. Utah May 19, 2016) (granting in part third-party and cross-claim defendant's motion for protective order because topics were "facially overbroad" and "completely lacking in particularity"); *Lipari v. U.S. Bancorp.*, No. 07-cv-2146-CM-DJW, 2008 WL 4642618, at *7 (D. Kan. Oct. 16, 2008) (Waxse, Mag. J.) (granting defendant's motion for protective order from Rule 30(b)(6) deposition because notice was "overly broad and [did] not define the topics of inquiry with 'reasonable particularity' as required by Rule 30(b)(6)"); *Berwick v. Hartford Fire Ins. Co., Inc.*, No. 11-cv-01384-MEH-KMT, 2012 WL 573939, at *6 (D. Colo. Feb. 21, 2012) (denying in part motion to compel 30(b)(6) deposition because certain topics were "overbroad"); *Sullivan v. USAA Gen. Indem. Co.*, No. 05-cv-855-M, 2006 WL 8436242, at *4 (W.D. Okla. May 10, 2006) (granting motion to quash 30(b)(6) deposition notice because it was overly broad and unduly burdensome).

"When the [30(b)(6)] notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible." *Id.*; *see also Reed*, 193 F.R.D. at 692 ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task . . . [and w]here, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.") (citations omitted); *Lipari*, 2008 WL 4642618, at *5 (same).

As described in greater detail below, Class Plaintiffs' proposed topics—which on their face are not limited to a particular timeframe—are so broad and unspecific that they make it impossible for OptumRx to prepare a representative to testify about them. To give one example, Class Plaintiffs' Topic 7 calls for testimony about OptumRx's "knowledge of any surveys, feedback or complaints from pharmacies, physicians, or consumers related to the availability or

4

unavailability of any non-EpiPen EAI device." The term "feedback" is extremely broad, and given the number of daily interactions between OptumRx employees and pharmacies, physicians and consumers, there is no practicable way for OptumRx to prepare its designee to testify about "any" feedback or complaints from third parties about the availability of non-EpiPen EAI devices.

The other proposed topics are cut from the same cloth and would subject OptumRx to undue burden and expense under Rules 45 and 26. Class Plaintiffs have agreed to limit the notice's timeframe to 2012-2017, but a six-year time period for topics that do not specify particular contracts, negotiations, or events is still too long. On top of that, Class Plaintiffs are unwilling to shoulder any of the significant costs that OptumRx (a nonparty) would incur in preparing for the deposition. *See* Fed. R. Civ. P. 45(d)(1) (serving party must take reasonable steps to avoid imposing undue burden or expense on nonparty).

4. OptumRx has worked in good faith to identify its 30(b)(6) representative, as well as the numerous OptumRx employees who will need to be involved to help prepare the representative to testify. But until the disputes about Class Plaintiffs' proposed topics are resolved (either by the parties or the Court), OptumRx cannot finalize its selection of its 30(b)(6) representative, let alone prepare that person to testify. Complicating matters, OptumRx understands that Mylan plans to cross-notice the OptumRx deposition and expects that Mylan's topics will differ from those of the Class Plaintiffs. OptumRx will designate one representative for a total of seven hours for one 30(b)(6) deposition—Class Plaintiffs and Mylan will have to separately work out how to split the available seven hours—but OptumRx cannot identify or adequately prepare its representative until the parties (Class Plaintiffs and Mylan) finalize their deposition topics.

5

OptumRx is prepared to work with counsel for Class Plaintiffs and Mylan to set a mutually agreeable date for the deposition. Given the remaining disagreements over Class Plaintiffs' topics, however, the likelihood that OptumRx will need to negotiate with Mylan over its proposed topics once Mylan does serve its subpoena, and the schedule of the likely witness, OptumRx will not have a reasonable opportunity to select and appropriately prepare its corporate representative to testify at a 30(b)(6) deposition before November 12.   As OptumRx has explained to both Class Plaintiffs and Mylan, Kent Rogers—the person whom OptumRx expects to designate as its representative for the 30(b)(6) deposition—is out of the country and/or out of the office between November 12 to November 23.   (Ex. H).   Accordingly, OptumRx has proposed to Class Plaintiffs that we set a firm date now for the deposition that falls shortly after Mr. Rogers returns to the office in late November.   Class Plaintiffs have refused to discuss scheduling the deposition for a mutually agreeable date in this time period.

* * *

In light of those and other problems with Class Plaintiffs' deposition subpoena, OptumRx moves under Rule 45(d)(3) to quash the subpoena.[3]   Alternatively, OptumRx moves under Rule 26(c) for a protective order shielding OptumRx from unreasonable discovery, requiring Class Plaintiffs to narrow the proposed topics, and providing OptumRx with adequate time to prepare its corporate representative.   OptumRx also moves under Rule 45 for an order requiring Class Plaintiffs to bear all, or at least share a significant percentage of, the significant costs and undue expense that OptumRx will incur in preparing for the deposition.

---

[3]   A properly-noticed deposition is automatically stayed upon the timely filing of a motion to quash or modify a deposition subpoena.  D. Kan. Local Rule 26.2(b).

## II.   <u>FACTUAL BACKGROUND</u>

On September 11, 2018, Class Plaintiffs' counsel e-mailed OptumRx's outside counsel a revised draft of proposed topics for a 30(b)(6) deposition of OptumRx.  (Ex. A).[4]

On September 20, 2018, the parties convened a meet-and-confer call about the proposed topics.  Before OptumRx's counsel had an opportunity to raise most of OptumRx's objections to the proposed topics, Class Plaintiffs' counsel cut the call short once it appeared that Sanofi's counsel (also on the call) might have a conflict.  The parties agreed to end the call to allow Sanofi to resolve the potential conflict.  Later that same day, Sanofi's counsel confirmed to OptumRx's counsel that Sanofi would not participate in any OptumRx deposition.

Before the shortened call ended, OptumRx's counsel previewed certain of OptumRx's global objections to the proposed deposition topics.  (Ex. B).  OptumRx's counsel explained that the list of proposed topics was unworkable because, among other reasons, Class Plaintiffs included no date limitation, failed to specify the non-EpiPen EAI drugs or devices that it wanted to discuss at the deposition, impermissibly used catchall phrases such as "including, but not limited to," and otherwise neglected to provide the specificity that Rules 45 and 30(b)(6) mandate. OptumRx's counsel offered to continue the call later that afternoon.

On October 1, 2018, having heard nothing from Class Plaintiffs' counsel since the truncated September 20 call, OptumRx's counsel emailed Class Plaintiffs' counsel to inquire about rescheduling the meet-and-confer call.  (Ex. B).  OptumRx's counsel emphasized that OptumRx needed to resolve questions about the proposed topics' scope before it could identify an appropriate witness and schedule the deposition.  *Id.*

---

[4] Class Plaintiffs had sent a different draft earlier, but before OptumRx's counsel had an opportunity to confer with Class Plaintiffs' counsel about that original draft, Class Plaintiffs sent the revised draft on September 11.

Class Plaintiffs' counsel responded later that afternoon that they planned to serve a "placeholder subpoena" the following day but that they would make themselves available for a follow-up meet-and-confer call to discuss OptumRx's objections.  *Id.*  The follow-up call was scheduled for Friday, October 5, 2018.

In the meantime, Class Plaintiffs served their Rule 45 subpoena on October 2, 2018.  (Ex. C).  Class Plaintiffs made no effort to address any of the concerns that OptumRx had raised on the shortened September 20 call.

On October 5, 2018, less than an hour before the rescheduled meet-and-confer was to begin, Class Plaintiffs' counsel emailed OptumRx's counsel a letter rejecting all of OptumRx's previously described objections.  (Ex. D).

Nevertheless, the parties convened their October 5 meet-and-confer call and discussed OptumRx's objections at length.  Class Plaintiffs' counsel declined to budge on most of OptumRx's objections, although Class Plaintiffs' counsel did suggest that they could limit the topics' date range to 2012-2017.  OptumRx's counsel memorialized the results of the call in a letter to Class Plaintiffs' counsel.  (Ex. E).  Class Plaintiffs' counsel said that they would get back to OptumRx's counsel on a few issues by October 8.  On October 8, Class Plaintiffs' counsel emailed to say that it would take them another day to respond.

On October 9, OptumRx's counsel emailed Class Plaintiffs' counsel emphasizing that given the press of time and the significant remaining disputes between the parties, Class Plaintiffs' counsel needed to respond soon.  Later that day, Class Plaintiffs' counsel emailed OptumRx's counsel to clarify two topics raised in the deposition notice:  (i) issue 2(c), involving contract negotiations between OptumRx and non-EpiPen EAI producers, and (ii) issue 5,

8

involving the impact, if any, on OptumRx's formulary coverage decisions of EpiPen price increases at (unspecified) locations along the distribution channel.  (Ex. F).

On October 12, the parties met and conferred again by phone in an effort to resolve as many differences as possible and to clarify their remaining disagreements.  Although some issues were resolved on the call, there remained disagreements on the matters at issue in this motion.  (Ex. G).

On October 15, 2015, the parties met and conferred again.  Counsel for Class Plaintiffs confirmed that they would limit the topics' date range to 2012-2017 but otherwise declined to clarify or narrow their scope.  They also reaffirmed their refusal to follow the Deposition Guidelines by providing OptumRx with copies of the documents they expect to use in the deposition.  OptumRx identified its likely corporate designee as Kent Rogers, Senior Vice President of Industry Relations at OptumRx, and offered to schedule the deposition for a firm date in late November, the first date on which Mr. Rogers will be available after having had a reasonable opportunity to prepare for the deposition.  Counsel for Class Plaintiffs declined to do so.  The parties agreed that OptumRx had satisfied its obligation under Local Rule 37.2 to undertake all reasonable efforts to confer with Class Plaintiffs about possibly resolving this discovery dispute before bringing it to the Court.

### III.  LEGAL STANDARD

Under Rule 26—which applies to all discovery, including Rule 45 subpoenas—discovery must, as an initial matter, be "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Accordingly, the party seeking discovery must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of

information which does not reasonably bear on the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

But showing relevance is only the first step. The party seeking discovery must also show that the requested discovery is

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 45 presents yet another hurdle:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). This Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). A subpoena that is overbroad or seeks irrelevant information necessarily causes an undue burden on the responding party. *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2163-JWL-GEB, 2017 WL 1650757, at *4 (D. Kan. May 2, 2017).

A person from whom discovery is sought may also seek a protective order under Rule 26(c)(1). A protective order is required upon a showing of good cause to protect a person from annoyance, embarrassment, oppression, or undue burden and expense. The Court, under Rule 26(c)(1), may issue a protective order entirely forbidding the challenged discovery or limiting the discovery to certain matters. "In the context of a protective order seeking to limit or prohibit the deposition of an organization or business entity, the court must be mindful of Rule 30(b)(6)'s requirements." *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 WL 3819975, at *1

10

(D. Kan. July 24, 2013).  That is, the Court must hold the requesting party to its legal obligation "to designate, with *painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."  *Bowers*, 2011 WL 6013092, at *4 (emphasis added).  If the requesting party fails to do so, the subpoenaed party is subjected "to an impossible task," and the Court must quash the subpoena or otherwise limit the sought discovery. *Reed*, 193 F.R.D. at 692.

Non-parties like OptumRx generally receive heightened protection from discovery abuses in responding to Rule 45 subpoenas.  *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-220-JAR-TJJ, 2016 WL 6822661, at *4 (D. Kan. Nov. 18, 2016).  For good reason: "[D]iscovery from non-parties is often more inconvenient and expensive than it is from parties."  *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1497 n.2 (10th Cir. 1983).

## IV.   ARGUMENT AND AUTHORITY

The Rule 30(b)(6) deposition subpoena that Class Plaintiffs served on OptumRx lacks the "painstaking specificity" required by law.  Generally speaking, the temporal limits of the requests are too broad, the requests are open-ended, and information is sought that falls outside the scope of this litigation.  Unless the subpoena is narrowed or clarified with respect to the matters described below, OptumRx not only will be forced to suffer an undue burden in responding to Class Plaintiffs' requests, but it will also be significantly challenged in meaningfully preparing a corporate representative to testify on such issues.

### A.   Class Plaintiffs Should Disclose Documents to be Used at the Deposition.

Before addressing the specific language in the notice of deposition, OptumRx objects to Class Plaintiffs' refusal to provide OptumRx's witness with any of the documents that it intends to use during the deposition.  Counsel for Class Plaintiffs' October 5 letter suggests that

11

disclosure of these documents prior to the deposition would "interfere with the integrity" of the deposition.   (Ex. D at 2).   Class Plaintiffs appear, however, to be engaging in a game of "Gotcha!"   This is unfair and directly contrary to the Deposition Guidelines of the District of Kansas.

This Court's Deposition Guidelines state quite clearly that, if a "witness is going to be asked to review numerous or lengthy documents, copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the witness to read them prior to the deposition."   *See* Deposition Guidelines, ¶ 6(c).   During each of the "meet and confer" telephone conferences, Class Plaintiffs have insisted that this provision is not in any way obligatory and that they will not abide by it.

The need for this pre-deposition sharing of information is particularly acute in the case of a Rule 30(b)(6) organizational deponent, as opposed to a traditional fact witness.   After all, a corporate witness typically is not testifying to factual incidents, but rather the broad policies and procedures of an organization.   This is why the rule directs the noticing party to describe with specificity the issues on which the deponent's testimony is sought.   The rule does not envision "cat and mouse" tactics, and this Court's deposition guidelines effectuate the rule's underlying purposes.

Furthermore, because OptumRx is not a party to the MDL, it lacks access to the discovery in the case.   Class Plaintiffs' unwillingness to provide any documents sufficiently in advance of the deposition to allow for meaningful review will make it exceedingly difficult for OptumRx to identify and prepare a witness for the deposition.   Class Plaintiffs' game of "hide the ball" is counter-productive and benefits neither side.   To the extent that Class Plaintiffs refuse to identify documents to be used, OptumRx's designee will need a reasonable opportunity to

12

review documents during the deposition, making the deposition less efficient. To stave off such pointless eventualities, the Court should order Class Plaintiffs to adhere to this District's Deposition Guidelines and, prior to the deposition, disclose to OptumRx's witness any documents to be used therein.

### B. Presence of Counsel Representing Plaintiffs in Both the Kansas MDL Action and the Minnesota ERISA Litigation Prejudices OptumRx.

OptumRx is also deeply concerned that a number of the law firms representing the Class Plaintiffs in this MDL action are simultaneously representing the plaintiffs in the Minnesota ERISA Litigation. OptumRx is not in any way suggesting the counsel would intentionally violate the Protective Order entered in this case. It is difficult to understand, however, how a lawyer representing plaintiffs in both cases could participate in the deposition of OptumRx's Rule 30(b)(6) representative in the MDL without later communicating (or at least using or relying on his or her knowledge of) Confidential or Highly Confidential Information to people or entities in the Minnesota ERISA Litigation who are not authorized to access this information under the protective order. Indeed, an attorney cannot unlearn something that he or she has learned in another proceeding. *See generally Digital Equip. Corp. v. Micro Tech. Inc.*, 142 F.R.D. 488, 492 (D. Colo. 1992) ("Once [plaintiff's] confidential and proprietary data is reviewed by [defendant's expert witness,] it will become part of his general acquired knowledge, which cannot be 'unlearned' or utilized only on a selective basis.") (internal citation omitted); *Baldi Bros., Inc.*, 2016 WL 5462448, at *3.

While rejecting OptumRx's concerns, counsel for Class Plaintiffs has tentatively agreed that no counsel participating in the Minnesota ERISA Litigation will also attend the deposition of OptumRx in the Kansas MDL. OptumRx requests that the Court issue a protective order: (i)

13

confirming that agreement, and (ii) requiring counsel participating in or sitting in on the OptumRx deposition in this case to refrain from sharing—directly indirectly—any Confidential or Highly Confidential Information developed in the deposition with counsel in the Minnesota ERISA Litigation.[5]

### C.   Topic Nos. 1 and 2 are Impermissibly Overbroad.

Topic No. 1 of Class Plaintiffs' subpoena (Ex. C) seeks testimony regarding the following information, with emphasis added in italics:

1.   Your contract negotiations with Mylan regarding EpiPen, *including, but not limited to*:

    a.   *All rebates, refunds, credits, or other financial incentives* offered or received.

    b.   *All requirements* that non-EpiPen EAIs be placed in a less favorable position than EpiPen, including disfavored tier placement, step-edit requirements, physician pre-authorization requirements, or *any other requirement* that applies to non-EpiPen EAIs that do not apply to EpiPen.

    c.   All requirements that the generic version of EpiPen be placed in a less favorable position than EpiPen, including disfavored tier placement, step-edit requirements, physician pre-authorization requirements, or *any other requirement* that applies to the generic version of EpiPen that do not apply to EpiPen.

    d.   *Any suggestions, proposals, or terms* that connected the sales of EpiPen, EpiPen pricing, or EpiPen rebates to *any other Mylan product*;

    e.   *Any suggestions, proposals, or terms* that connected the sales of EpiPen, EpiPen pricing, or EpiPen rebates to EpiPen's market share or the coverage decisions of *other Third-Party payors*.

    f.   *Any suggestions, proposals, or terms* that connected the sales of EpiPen, EpiPen pricing, or EpiPen rebates to the sales of Auvi-Q, Auvi-Q pricing, or Auvi-Q rebates, including disfavored tier placement, step-edit requirements, or physician pre-authorization requirements.

---

[5] On multiple occasions during the meet and confer discussions, OptumRx's counsel proposed that Class Plaintiffs' counsel voluntarily agree to these terms to ensure compliance with the Protective Order.  These efforts were met with disinterest; this Motion is therefore necessary.

Topic No. 2 is structurally similar to Topic No. 1.  Whereas Topic No. 1 seeks information related to OptumRx's negotiations with Mylan, Topic No. 2 seeks information related to OptumRx's negotiations with an unknown number of unidentified "producers of any non-EpiPen EAI device."  Both inquiries use the phrase "including but not limited to" and list vague examples of the sort of information sought.

Under controlling law, these requests are facially overbroad.  A Rule 30(b)(6) notice is overly broad "[i]f the noticed organization cannot identify the outer limits of the areas of inquiry noticed."  *Hartford Fire Ins. Co. v. P&H Cattle Co.*, No. 05-2001-DJW, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009).  That is precisely the case here.  For starters, consider Class Plaintiffs' request for testimony on all of OptumRx's "contract negotiations" with Mylan or any number of unnamed producers of EAI devices "regarding EpiPen."  OptumRx and Mylan have had a business relationship for years, and have engaged in countless negotiations regarding the EpiPen, among other things.  Further, OptumRx has engaged with numerous other producers of EAI devices.  It would be unduly burdensome to compel OptumRx to prepare a witness to testify about all of its contract negotiations with an undefined group of producers during the time period at issue.  This is particularly true given that Class Plaintiffs have had access to OptumRx's contracts with Mylan, its various formularies, and thousands of pages of the company's internal documents, in addition to whatever discovery it has received from Mylan and other manufacturers.  Armed with this information, Class Plaintiffs should be able to identify the specific negotiations or time period on which they are focused, to enable OptumRx's corporate designee to adequately prepare.  Class Plaintiffs' request is a textbook example of a Rule 30(b)(6) notice in which the responding party is unwilling to identify the limits of the information sought. *See Hartford Fire*, 2009 WL 2951120, at *10; *Reed*, 193 F.R.D. at 692.

15

This Court has found a Rule 30(b)(6) deposition notice to be impermissibly overbroad "when the notice lists topics, but then indicates that the listed topics are not exclusive." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1054279, at *3 (D. Kan. April 9, 2007). This is particularly true where the requesting party "broadens the scope of the designated topics by indicating that the areas of inquiry will include, but not be limited to the areas specifically enumerated." *Reed*, 193 F.R.D. at 692 (internal quotation marks and alterations omitted). Class Plaintiffs do just that in Topic Nos. 1 and 2, seeking contract negotiations "including but not limited to" a subset of examples.

While this Court has held that the "included but not limited to" language is not fatal, *per se*, to a Rule 30(b)(6) notice if the language is followed with "an extensive example list of the records and reports for which information is sought," the example list must "very specifically list[] the information sought." *Heartland Surgical*, 2007 WL 1054279, at *4. The example lists articulated by Class Plaintiffs in Topic Nos. 1 and 2 fail to do so; rather, they suggest a definition of "contract negotiations" that is unlimited in scope. Each category from the example lists uses the expansive words "all" or "any." Meanwhile, the examples contain vague and ambiguous phrases such as "suggestions," "proposals," "terms," "other financial incentives," and "any other product." The use of vague, undefined terms and reference to unidentified entities falls short of the "painstaking specificity" required by Rule 30(b)(6). *See Bowers*, 2011 WL 6013092, at *6-*7 (finding that undefined phrases such as "authority," "quality assurance," "data inquiry," "transactions," and "terms and conditions" were impermissibly vague under Rule 30(b)(6)). The outer limits of the areas of inquiry must be identified, and here they are simply not. *See Reed*, 193 F.R.D. at 692.

16

Even if limited to the period from 2012-2017,[6] these requests are extraordinarily broad. They seek testimony about every communication OptumRx has had with any EAI device producer—including but not limited to Mylan—regarding anything having to do with any negotiations or the sale, marketing, or pricing of EpiPen or any other EAI device over a six-year period. During that time numerous individuals at OptumRx have had various responsibilities for negotiating, drafting, and implementing OptumRx's contracts with Mylan. To enable OptumRx to appropriately prepare its designee, Class Plaintiffs should be required to identify with more particularity the specific contracts or contract negotiations about which they seek testimony. This is something Class Plaintiffs should be well positioned to do. For months, Class Plaintiffs have had copies of OptumRx's rebate contracts with Mylan and other EAI device manufacturers, copies of the standard OptumRx formularies, and tens of thousands of internal documents, including many relating to communications with EAI device manufacturers. And these are just the documents obtained from OptumRx. But rather than identify particular contracts, negotiations, or other events, Plaintiffs have instead chosen to impermissibly broaden the topics by the use of the phrase "included but not limited to."

Topics 1 and 2 do not provide OptumRx the detail needed to identify the responsive information and adequately prepare an organizational witness. The Court thus should grant the Motion and quash the subpoena as to Topic Nos. 1 and 2, or require Class Plaintiffs to revise the subpoena to identify with more particularity the specific negotiations, incidents or time periods about which they seek deposition testimony.

### D.      Topic Nos. 3 and 4 Seek Information Not Relevant to this Litigation.

Topic Nos. 3 and 4 seek:

---

[6] Plaintiffs have agreed to limit the scope of the deposition to the 2012-2017 time period.

3.    The internal deliberative process that You employ when making formulary coverage decisions, including but not limited to the people and/or committees involved therein.

4.    The factors You consider when making formulary coverage decisions, including but not limited to those related to manufacturer rebates, market share, purchase price, efficacy, ease-of-use, and the willingness of physicians and consumers to transition from one EAI device to another.

These requests lack relevance and are facially overbroad. First, neither request is limited to the issues raised in this litigation. This case is about EAI devices, but Topic Nos. 3 and 4 request information relating to *all* formulary coverage decisions, whether related to EAI devices or other pharmaceutical products. Those requests are not reasonably tailored to fit the needs of the instant case.

In *Tomelleri v. Zazzle*, No. 13-cv-02576-EFM-TJJ, 2014 WL 7071573 (D. Kan. Dec. 12, 2014), the plaintiff (an artist) sued a website that sold the plaintiff's illustrations for violating copyright laws. *Id.* at *1. The plaintiff served a Rule 30(b)(6) deposition notice on the defendant, seeking, among other things, testimony regarding the defendant's "use of redirected advertising and metadata tags or fields in any non-sale aspect of [defendant's] business." *Id.* at *2 (internal quotation marks and alterations omitted). The defendant objected, arguing that the lawsuit was related to its sale of the plaintiff's illustrations, and, therefore, inquiries about other, non-sale aspects of the defendant's business were irrelevant. *Id.* at *3. The Court agreed, holding:

> [T]he allegations in [the plaintiff's] complaint provide no basis for the Court to find that information about "any other aspect of [the defendant's] business is a proper topic for a Rule 30(b)(6) deposition. The Court finds that such a request is overly broad, encompasses matters irrelevant to the claims and defenses in this case, and would constitute an undue burden on Defendant.

18

*Id.* The same is true here. OptumRx's deliberative processes and formulary coverage decisions that in no way relate to EpiPen or other EAI devices are irrelevant. Like the plaintiff in *Tomelleri*, Class Plaintiffs are seeking information about "other aspects" of OptumRx's business. Although such inquiries would be out of bounds even for a party, OptumRx, as a non-party, is entitled to even greater protection from such discovery abuses and should not be required to respond to the broad requests contained in Topic Nos. 3 and 4. *See XPO Logistics*, 2016 WL 6822661, at *4.

Further, like Topic Nos. 1 and 2, Topic Nos. 3 and 4 also use the phrase "including but not limited to" and rely on vague terms for which no definition is provided. The use of undefined terms like "deliberative process," "formulary coverage decisions," and "factors" fail to identify the particular subject areas for which OptumRx must prepare its corporate witness to testify. The requests are also impermissibly expanded with language suggesting that the request is not exhaustive. For these reasons, the Court should relieve OptumRx of its obligation to prepare a corporate designee to testify as to Topic Nos. 3 and 4 or else require Class Plaintiffs to narrow the topics to focus only on matters related to EAI devices and to identify with more particularity the EAI device-related subjects about which they want the designee to be prepared to testify.

**E.      Topic No. 5 Seeks Irrelevant Information Unrelated to this Case.**

Topic No. 5 requests testimony regarding:

The effect of EpiPen price increases on Your formulary coverage decisions for regions both inside and outside of the United States.

This request is exceptionally broad and its use of vague and undefined terms renders it unduly burdensome. There are numerous different "prices" at various levels of the distribution

19

chain, including prices paid by wholesalers, pharmacies, plans, and patients.  In the absence of further clarification, OptumRx cannot meaningfully respond.

Class Plaintiffs have refused OptumRx's request to clarify which "price" is being referred to by this request.  In the October 12 telephone conference, Class Plaintiffs suggested that the inquiry is sufficiently narrow because it focuses only on how price increases at any level of the distribution chain impacts *OptumRx's* formulary coverage decisions.  But this explanation reflects a misunderstanding of how OptumRx operates.  It is OptumRx's *clients* – not OptumRx itself – who ultimately approve their own formularies and determine whether price increases for a particular drug or device will lead to the inclusion or omission of that drug or device.[7]  Thus, combined with the fact that the term "formulary coverage decisions" is also undefined, when read as a whole, Topic No. 5 lacks the kind of specificity that Rule 30(b)(6) requires.

Topic No. 5's overbreadth is magnified further by the fact that it seeks information related to regions outside of the United States.  All named plaintiffs in this matter are American citizens, and all of the claims turn on federal or state statutes.  OptumRx's international conduct has no bearing on this lawsuit.  For all of these reasons the request is overly broad and irrelevant and the Court should quash the subpoena as to Topic No. 5.

**F.      Topic Nos. 6 and 7 are Overly Broad, Vague, and Ambiguous.**

Topic Nos. 6 and 7 seek:

---

[7] Moreover, OptumRx's internal decision-making processes have nothing to do with Class Plaintiffs' claims.  Where relevance of a discovery request is not relevant on its face, the requesting party has the burden of establishing relevancy. *McBride v. Medicalogies, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).  As a non-party to this litigation, the relevance of a vague request relating to OptumRx's decisional processes, especially with regard to its international business, is not readily apparent and the subpoena should be quashed as to Topic 5 on this basis alone.

6.      The effect of Mylan's switch to EpiPen 2-Paks, including any reasons Mylan offered for the switch and any feedback You received from pharmacies, physicians, or consumers.

7.      Your knowledge of any surveys, feedback, or complaints from pharmacies, physicians, or consumers related to the availability or unavailability of any non-EpiPen EAI device.

Both of these topics are impermissibly overbroad in that they seek "any feedback" that Optum has received from "pharmacies, physicians, or consumers."

As noted above, OptumRx has contractual relationships with more than **67,000 pharmacies**. The physicians and consumers that OptumRx served in the 2012-2017 time period would number in the millions.   Requests for testimony about "any" feedback, survey, or complaint about the switch to EpiPen 2-Paks, and especially about "the availability or unavailability of" any other EAI devices, are tremendously broad.  This is doubly true when one considers that the word "feedback" is undefined and could include basically any communication received by any of  OptumRx's thousands of employees over that period related to EpiPens or the availability of any number of unnamed "non-EpiPen EAI devices."

When pressed on these points during our October 12 telephone conference, Class Plaintiffs acknowledged that they did not intend that these topics be given their clear meaning. Rather they suggested that perhaps OptumRx maintains a centralized system for tracking feedback from pharmacies, physicians or consumers.   Counsel for OptumRx agreed to investigate whether such a system exists.  But during the subsequent meet-and-confer call on October 15, Class Plaintiffs would not commit to narrowing the request to information contained in a centralized complaint system.   OptumRx should not be unduly burdened with trying to prepare a witness to testify in response to a request that is so facially overbroad.  *Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC-KGS, 2016 WL 362488, at *2 (D. Kan. Jan. 28, 2016)

21

("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task."). OptumRx respectfully asks the Court to grant its Motion and quash the subpoena as to Topic Nos. 7 and 8, or direct Class Plaintiffs to appropriately narrow those requests.

### G. Topic No. 8 Seeks Information that Should Be Obtained from Mylan, a Party to this Litigation.

Finally, in Topic No. 8, Class Plaintiffs seek testimony regarding:

8. Your knowledge of any federal, state, or local investigation into Mylan's rebates or practices, including but not limited to Mylan's $465 million settlement with the Department of Justice for alleged violations of the False Claims Act.

As noted above, in considering a motion to quash under Rule 45, the Court must be mindful of the scope of discovery under Rule 26(b). *Parker*, 2017 WL 1650757, at *3. Rule 26(b)(2)(C)(i) provides that the Court must limit discovery if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Topic No. 8 seeks information about Mylan—a named defendant in the instant action. Information as to any investigations into Mylan's business practices and any settlements reached by Mylan is easily obtainable from Mylan itself. There is no good reason for requiring OptumRx—a non-party—to prepare to provide secondhand testimony about an investigation that involved an actual party to this litigation. Such information truly "can be obtained from some other source." That source should not be OptumRx, which, in this litigation, is entitled to heightened protection from unreasonable discovery burdens. *See XPO Logistics Freight*, 2016 WL 6822661, at *4; *see also Versata Software v. Internet Brands, Inc.*, 2011 WL 4905665, at *2 (E.D. Mich. Oct. 14, 2011) (quashing Rule 30(b)(6) subpoena because the information plaintiff sought could be obtained from the defendant in the litigation).

Because Topic 8 is a request that should be directed to Mylan, the Court should quash that request from Class Plaintiffs to OptumRx.

## V.   <u>COST RECOVERY</u>

The Federal Rules of Civil Procedure require the Court to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(ii).  Because the subpoena is overbroad at every point, the cost to comply with the subpoena would be significant by any definition.  Rules 45(d)(1) and 45(d)(2)(B)(ii) require the district court to shift a non-party's costs of compliance with a subpoena if those costs are significant.  *In re Modern Plastics Corp.,* 890 F.3d 244, 250 (6th Cir. 2018) (affirming award of "significant and reasonable costs" under Rule 45(d)(2)(B)); *Legal Voice v. Stormans Inc.,* 738 F.3d 1178, 1184 (9th Cir. 2013) ("we have no trouble concluding that $20,000 is 'significant'"); *Linder v. Calero-Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001) ("The [plaintiffs] claim the court erred in concluding that fee shifting was mandatory.  But Rule 45 requires precisely that— the district court 'shall protect' a non-party from 'significant expense.'"). Just like complying with a broad and burdensome document subpoena, meeting its obligations to prepare a corporate designee to testify regarding unreasonably broad topics contained within a deposition subpoena will impose significant expense on OptumRx.  OptumRx respectfully requests that the Court enter an order requiring Class Plaintiffs to reimburse OptumRx, a non-party, for those significant costs.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, OptumRx respectfully requests that the Court either quash Class Plaintiffs' subpoena or, alternatively, enter a protective order limiting discovery consistent with the objections set forth in this motion.

23

Respectfully Submitted,

By: /s/ Bradley J. Schlozman
Bradley J. Schlozman, KS Bar # 17621
Mitchell L. Herren, KS Bar # 20507
HINKLE LAW FIRM LLC
1617 North Parkway, Suite 400
Wichita, Kansas 67206
E-mail: bschlozman@hinklaw.com
E-mail: mherren@hinklaw.com
Telephone: (316) 267-2000
Facsimile: (316) 630-8466

*Attorneys for OptumRx, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October, 2018, I electronically filed the foregoing Memorandum in Support of OptumRx's Motion to Quash Subpoena, or in the Alternative, For Protective Order, with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record in this case.

/s/ Bradley J. Schlozman

24