# Exhibit B

# ALSTON & BIRD

Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC  28280-4000
704-444-1000 | Fax: 704-444-1111

**Brian D. Boone**     Direct Dial: 704-444-1106     Email: brian.boone@alston.com

October 8, 2018

**BY EMAIL**

Sharon S. Almonrode, Esq.
Devon P. Allard
The Miller Law Firm, P.C.
950 West University Drive, Suite 300
Rochester, MI 48307
ssa@millerlawpc.com
dpa@millerlawpc.com

Re:   In re EpiPen Marketing, Sales and Antitrust Litigation (No. 17-md-2785)

Dear Sharon and Devon:

I write to memorialize our efforts to meet and confer with you on October 5 about Class Plaintiffs' Rule 45 notice of a 30(b)(6) deposition of OptumRx, Inc.

As you know, you cut short our September 20, 2018 meet-and-confer call to allow Sanofi's counsel to attempt to resolve a possible conflict.  Although we offered to continue the meeting that day, your team indicated that they wanted to hold off to permit Sanofi's counsel to participate in the meet-and-confer process (if possible). Sanofi's counsel later informed us that Sanofi will not participate in any OptumRx deposition.

Before the September 20 call ended, we briefly previewed certain global objections to the draft list of 30(b)(6) topics that you had provided, but we didn't get an opportunity to talk through our objections to particular topics. Still, in the short space that we had on that September 20 call, we explained that your list of proposed topics was unworkable and deficient because (among other reasons) it included no date limitation, did not specify the non-EpiPen EAI drugs or devices that you wish to discuss at the deposition, impermissibly uses catchall phrases like "including, but not limited to," and otherwise doesn't provide the specificity that Rule 30(b)(6) requires. *See, e.g.*, *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (quashing 30(b)(6) notice and explaining that the phrase "including, but not limited to" is overbroad because it doesn't enable the defendant to "identify the outer limits of the areas of inquiry notice"). Unfortunately, because your side ended the call pretty quickly after it started, we didn't get meaningful feedback from you on those or other issues.

Alston & Bird LLP                                                                                                                                www.alston.com

Atlanta  |  Beijing  |  Brussels  |  Charlotte  |  Dallas  |  Los Angeles  |  New York  |  Raleigh  |  San Francisco  |  Silicon Valley  |  Washington, D.C.

October 8, 2018
Page 2

Fast-forward to October 1. Because we had not heard from you about rescheduling our meet-and-confer call about the proposed topics, I emailed you that day to schedule a follow-up call. In my email, I made clear that we needed to make progress on our meet-and-confer process before we could proceed to identify an appropriate witness and discuss scheduling the deposition. You responded later that day to inform us that you would be serving a placeholder subpoena the following day, and you said that your side would be available for a follow-up call to discuss our objections. We scheduled that call for Friday (October 5).

When you served the deposition subpoena on October 2, 2018, we were disappointed to learn that you made no effort to address any of the concerns that we had raised during our September 20 call. Then Friday (October 5), less than an hour before our follow-up call was to begin, you sent us a letter mischaracterizing the history of our discussions about the proposed deposition and rejecting our concerns with little or no explanation.

Below, I confirm what we discussed on our Friday (October 5) call. As I mentioned on that call, we don't want to get into a letter-writing battle over the proposed deposition. I wouldn't be sending you this letter if you hadn't sent the letter on Friday miscasting past events. :

1. We objected to the Notice because it contains no date limitation. After some discussion, you agreed to consider limiting the Notice's timeframe to 2012 to 2017. We likewise agreed to consider that period and to confer with OptumRx about the same, but we explained that even that period is too long.

2. You refused to identify the unnamed "non-EpiPen EAIs" mentioned in the Notice, responding that the Notice refers to all the non-EpiPen EAIs that OptumRx listed on its formularies.

3. You reiterated that Class Plaintiffs will not provide to OptumRx ahead-of time the documents that you plan to use at the deposition. We explained that because OptumRx, a non-party to the MDL, does not have access to the discovery in the MDL, your unwillingness to provide documents ahead-of time will hamstring OptumRx in its efforts to identify and prepare a witness for the deposition. Consider this from the Deposition Guidelines for the District of Kansas: "If the witness is going to be asked to review numerous or lengthy documents, copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the witness to read them prior to the deposition." Your refusal to comply with the Guidelines means that OptumRx's designee will likely need to spend much of the deposition's 7 hours—and the deposition will be limited to 7 hours—reading documents that the designee had not seen before. We ask you to reconsider.

4. We reiterated our concern that, practically speaking, MDL counsel who attend any OptumRx deposition find it difficult to abide by the protective orders in the Kansas MDL while simultaneously representing plaintiffs in the ERISA action pending in Minnesota against OptumRx and others. We don't understand how an MDL lawyer who also represents plaintiffs in the Minnesota litigation could sit in on the 30(b)(6) deposition in Kansas without later communicating any Confidential or Highly Confidential information learned in the MDL deposition to people or entities unauthorized to learn that information. If you're willing to stipulate that the Miller Law Firm will be the sole counsel

October 8, 2018
Page 3

handling the deposition for Class Plaintiffs and that you will not share Confidential or Highly Confidential information with counsel in the Minnesota ERISA action, we should be able to resolve the issue.

5. We also explained that Mylan has indicated that it plans to cross-notice the same deposition and that OptumRx will not be able to identify its designee for the deposition until it and the MDL parties (Mylan, Class Plaintiffs, and anyone else planning to cross-notice the deposition) resolve their disputes over the proposed topics. You acknowledged the scheduling difficulties that lie ahead.

6. Topic 2(c): "Your contract negotiations with the producers of any non-EpiPen EAI device, including but not limited to: . . . any suggestions, proposals, or terms that connected the sale of non-EpiPen EAI devices to the sale of any other product." You agreed to propose clearer language for the topic and to clarify what "connected" means.

7. Topic 5: "The effect of EpiPen price increases on Your formulary coverage decisions for regions both inside and outside of the United States." As we explained, there are numerous different "prices" at various levels of the distribution chain, including "prices" paid by wholesalers, pharmacies, plans, and patients. Without clarification, the term "price increases" is vague and ambiguous, and OptumRx cannot meaningfully respond.

8. Topic 6: "The effect of Mylan's switch to EpiPen 2-Paks. . . ." We explained that we cannot prepare a witness on this topic without knowing whom or what purportedly experienced the "effect of Mylan's switch." You indicated that the Topic seeks (a) the reasons (if any) that Mylan offered OptumRx for the switch to EpiPen 2-Paks and (b) any feedback that OptumRx received about the switch from physicians, consumers, or pharmacies. OptumRx also objects to the Topic because it asks for information about third parties (physicians, consumers, pharmacies) that Class Plaintiffs can get directly from those third parties.

9. Topic 7: "Your knowledge of any surveys, feedback or complaints from pharmacies, physicians, or consumers related to the availability or unavailability of any non-EpiPen EAI device." As we noted, OptumRx has hundreds of employees that regularly interact with pharmacies, consumers, and physicians. It is unreasonable to expect OptumRx to investigate whether any of those employees received feedback from or complaints about the availability of any non-EpiPen EAI device. You did not agree to narrow the topic but suggested that if we identified and searched a centralized database containing formal surveys or complaints, that might suffice.

10. Topic 8: "Your knowledge of any federal, state, or local investigation into Mylan's rebates or practices, including but not limited to Mylan's $465 million settlement with the Department of Justice for alleged violations of the False Claims Act." We objected to this Topic because you can ask Mylan about its interactions with federal and state governments.

* * *

October 8, 2018
Page 4

Even beyond what we discussed on Friday, OptumRx objects to the Notice because its topics are overbroad on their face and subject OptumRx to undue burden—violating Federal Rules of Civil Procedure 26 and 45. Rule 45(d)(1) requires the "party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." And "to allow [Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Bombardier Recreational Prods., Inc. v. Artic Cat, Inc.*, 2014 WL 10714011, at *10 (D. Minn. Dec. 5, 2014)(Brisbois, Mag. J.); *see also Bowers v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 6013092, at *4 (D. Kan. Dec. 2, 2011) (Waxse, Mag. J.)(requiring a party seeking a 30(b)(6) deposition to designate topics "with painstaking specificity" ). Instead of doing that, you have painted with a broad brush, asking OptumRx in many cases to testify about unnamed drugs or devices or what countless third parties (physicians, consumers, pharmacies) thought—and at this point, without formally agreeing to limit the topics in temporal scope.

You seek information related to an unspecified (and unnamed) number of EAI devices and their producers. You also impermissibly seek information unrelated to OptumRx's formulary services for EAI devices. Prepping a witness to provide testimony on such broad topics would subject OptumRx to undue burden.

Adding to that undue burden, OptumRx (a non-party) does not have access to the parties' discovery in the MDL.

We'd also note that preparing a witness to testify to all the broad topics in your Notice would require lots of time and expense—for OptumRx and its counsel. Class Plaintiffs are obligated to take reasonable steps to avoid imposing undue burden or expense on OptumRx, so we ask that you share in the significant expense that the proposed deposition would impose on OptumRx. *See* Rule 45.

And here are other objections to particular topics:

- OptumRx also objects to Topic 1 because it refers to unnamed non-EpiPen EAIs. For example, in Topic 1(b), you refer to "requirements" that might apply to non-EpiPen EAIs. You must state with particularity the issues for which you seek testimony, which include identifying the unnamed non-EpiPen EAIs. OptumRx also objects to certain words because they are vague and ambiguous. For example, in Topics 1(d) through 1(f), you request information related to "suggestions," "proposals," or "terms." Those terms, without more, make the topics overly broad and vague. You must designate with particularity the "suggestions," "proposals," or "terms for which you seek testimony.

- OptumRx also objects to Topic 3 because it is not limited to formulary coverage decisions for EAI devices.

- OptumRx also objects to Topic 4 because it seeks information about third parties' (physicians' and consumers') decisional processes.

October 8, 2018
Page 5

- OptumRx also objects to Topic 5 because seeks information relating to regions outside the United States. All the named plaintiffs are American citizens, and the claims involve federal and state statutes.

- OptumRx also objects to Topic 6 because preparing a designee to testify about "feedback" (undefined) received from countless third parties (pharmacies, physicians, and consumers) would subject OptumRx (a non-party) to undue burden.

- OptumRx also objects to Topic 7 because it is incredibly overbroad, covering countless interactions with third parties who are in a better position to provide the information that you seek. The topic also uses the vague term "feedback" and on its face covers surveys, feedback, or complaints unrelated to OptumRx's management of formularies. OptumRx cannot possibly prepare a witness to testify about the topic as written.

We continue to review the October 2 deposition Notice and will likely have additional objections to the Notice. We reserve our right to raise additional objections and to seek relief from the Court.

Sincerely,

//s//

Brian D. Boone

CC: Bill Jordan, John Snyder, Liz Broadway Brown, Mitch L. Herren