# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re: EpiPen (Epinephrine Injection USP) Marketing, Sales, Practices & Antitrust Litigation** | MDL No. 2785; Case No. 17-md-2785-DDC-TJJ |

## NON-PARTY CVS HEALTH CORPORATION'S MOTION FOR A PROTECTIVE ORDER TO MODIFY THE SUBPOENA DIRECTED TO NON-PARTY CVS HEALTH CORPORATION OR, IN THE ALTERNATIVE, TO QUASH

COMES NOW Non-Party CVS Health Corporation ("CVS"), by and through its undersigned attorneys, and hereby moves the Court for an order modifying, or in the alternative quashing, a Rule 45 subpoena served on CVS, a non-party to this matter, served by Plaintiffs on October 2, 2018 commanding CVS to appear for a deposition on October 23, 2018 ("Plaintiffs' Subpoena").[1]  This Motion is brought pursuant to Fed. R. Civ. P. 26, 30(b)(6), and 45(d) and in compliance with D. Kan. Rules 7.1, 37.1, and 37.2.  The Memorandum in Support of this Motion below is incorporated herein by reference.

## MEMORANDUM IN SUPPORT

### I.     Introduction and Statement of Matters Before the Court

The parties to this matter chose to wait until there was less than a month remaining before the close of fact discovery to serve CVS, a non-party, with two deposition subpoenas that would obligate CVS to prepare a corporate designee to testify on a total of **seventeen topics**.  Many of the noticed topics are very broad.  Absent modification, CVS would be required to prepare one or more of its employees to testify on several disparate aspects of CVS's business over a period of many years.  The burden would be extraordinary, and the time required for CVS to adequately prepare the witness would be commensurate: a matter of months, not weeks.

In an effort to reduce the burden to a manageable level, CVS approached the parties and made four requests.  ***First***, CVS proposed a number of common-sense modifications to the topics that would narrow and clarify the topics so as to provide clear, workable guidance as to what

---

[1] CVS is also subject to another subpoena commanding CVS to appear for a deposition on the same day (October 23, 2018) that was served by Mylan on October 10, 2018 ("Mylan's Subpoena," and collectively with Plaintiffs' Subpoena, the "Deposition Subpoenas").  Counsel for CVS and Mylan have met and conferred regarding that subpoena, and the issues CVS's counsel raised with Mylan have been resolved.  *See infra* at § III.D.  Accordingly, this Motion does not seek any relief regarding Mylan's Subpoena.

CVS would prepare a witness to testify about while ensuring that CVS's preparation efforts would focus on the subject matter most central to the case. **Second**, CVS proposed that the parties provide CVS with copies of documents (or, as to documents produced by CVS itself, simply identify them) so that CVS could avoid wasting time and concentrate preparation on the material that the parties actually want to cover in the deposition. **Third**, CVS asked that the parties agree to share CVS's deposition preparation costs, consistent with this Court's prior order regarding Plaintiffs' earlier document subpoena to CVS. This would mitigate the financial burden to CVS and also incentivize the parties to cooperate with CVS on issues that could render preparation more efficient. **Fourth**, CVS requested agreement that once the scope of the topics was set—by agreement, if possible, or by the court, if necessary—the deposition would be rescheduled to a date that would permit CVS sufficient time to prepare a witness adequately.

Mylan and CVS met, conferred, and were able to resolve the issues that CVS raised with Mylan. Plaintiffs, however, never even responded to CVS's compromise proposals. CVS therefore respectfully moves the Court for an order pursuant to Rules 26(c) and 45(d)(3) that will modify Plaintiffs' Subpoena to appropriately limit the burden on CVS. CVS appreciates that the modifications requested would require the deposition to occur outside the schedule that this Court set for the parties. But CVS is not a party to this case, and had no control over the schedule, the timing of the subpoenas, or the parties' decision to seek Rule 30(b)(6) testimony rather than individual fact witness testimony. To the extent the Court concludes that the impending discovery and other deadlines in this case do not permit the deposition to be rescheduled so as to allow reasonable time for CVS to prepare a corporate witness, CVS would respectfully request that the Court to quash the Plaintiffs' Subpoena.

## II.  <u>Questions Presented</u>

The Motion presents the following legal issues:

a.  Whether the deposition topics set forth in the Plaintiffs' Subpoena should be either modified to render them sufficiently clear, particular and proportionate, or else be set aside?

b.  Whether the Plaintiffs should be required to identify and, if necessary, produce to CVS documents they intend to use at the deposition so as to reduce CVS's preparation burden?

c.  Whether the Plaintiffs should reimburse CVS for a share of the costs CVS will bear in complying with Plaintiffs' Subpoena?

d.  Whether the Plaintiffs should be required to coordinate with CVS to reschedule the deposition for a date after this Motion is resolved that permits CVS to prepare a corporate designee adequately and without undue burden?

e.  Whether, in the absence of the relief sought, it is appropriate to quash the Plaintiffs' Subpoena?

## III.  <u>Statement of Facts</u>

### A.   **Discovery Previously Provided by CVS**

Plaintiffs previously served CVS with a Rule 45 subpoena requesting the production of documents in December 2017.  On March 29, 2018, Plaintiffs filed a motion in this Court seeking to compel CVS to produce documents in response to that subpoena as written.  (Doc. 429)  CVS responded by identifying to this Court the reasonable compromise proposals that CVS had offered to Plaintiffs during the meet & confer process, and asked that the Court enter an order limiting CVS's production obligations accordingly.  (Doc. 472)  On June 20, 2018, the Court entered an Order that largely adopted the compromise proposals that CVS had offered.

Memorandum and Order (Doc. 717).  Among the proposals that the Court found appropriate and ordered was a requirement that Plaintiffs share half of CVS's costs of production.  *Id.* at 8–9.  CVS subsequently produced the ordered documents and data to Plaintiffs.

> ### B.   Communications Regarding a Potential Future Subpoena

On July 18, 2018, Plaintiffs' counsel wrote to CVS's counsel inform that they wanted to discuss scheduling a potential future 30(b)(6) deposition for CVS, but did not provide CVS's counsel any draft list of topics.  Declaration of Daniel Dockery ("Dockery Decl.") ¶ 3.   On August 6, 2018, counsel discussed the matter by phone.   CVS's counsel communicated the following:

1) Before CVS could even discuss scheduling of any potential future Rule 30(b)(6) deposition, CVS would need to know the full list of topics on which testimony would be required so that it could select a designee and then evaluate that designee's availability for preparation and deposition.

2) From a timing perspective, Plaintiffs needed keep in mind that Rule 30(b)(6) topics sometimes require narrowing (sometimes via motion practice) and then preparation.

3) Written discovery or deposition of current/former CVS employees in an individual capacity could be accomplished more quickly, would be less burdensome to CVS, and could provide whatever information Plaintiffs genuinely needed.

4) Although CVS was willing to keep talking with Plaintiffs prior to issuance of a Rule 45 subpoena, CVS as a non-party could not (and was not obligated to) formally "meet and confer," make commitments, or seek relief regarding potential future subpoena terms that remained purely hypothetical until served.

Dockery Decl. ¶ 4.

On August 17, 2018, Plaintiffs' counsel provided CVS's counsel with a draft list of twenty-one proposed deposition topics. *Id.* ¶ 5 & Ex. 1. On August 22, 2018, counsel for CVS and Plaintiffs spoke by phone for approximately an hour. During that call, counsel for CVS outlined the preliminary concerns CVS had regarding those draft topics. *Id.* ¶ 6. CVS's counsel also reiterated the same points they had previously communicated during the August 6, 2018 call. *Id.*

On August 28, 2018, Plaintiffs filed a "notice of deposition" with the Court indicating that they intended to serve a Rule 45 deposition subpoena on CVS. (Doc. 928) The next day, Plaintiffs unilaterally withdrew that filing. (Doc. 939) Counsel for Mylan subsequently informed CVS's counsel that Plaintiffs had withdrawn the notice and subpoena because they had failed to consult with Mylan prior to filing the notice, as required by the Stipulated Deposition Protocol Order in this matter. Dockery Decl. ¶ 7.

On August 31, 2018, Plaintiffs' counsel provided CVS's counsel with a draft list of eight proposed topics and additional sub-topics that was substantially different from the previous draft list. *Id.* ¶ 8 & Ex. 2. On September 10, 2018, counsel for CVS and Plaintiffs spoke by phone for approximately an hour. *Id.* ¶ 9. Counsel for CVS again outlined their preliminary concerns regarding the new draft list of topics and suggested ways in which those topics might be appropriately limited (reserving the right to object in greater detail if and when a subpoena were ever served). Counsel for CVS also explained that it had learned that Mylan also intended to subpoena CVS and that Plaintiffs had failed to coordinate with Mylan as required by the Deposition Protocol Order. Counsel for CVS requested that Plaintiffs immediately begin coordinating with Mylan to ensure that CVS would have access to a full set of the deposition topics on which its corporate designee would be expected to testify before selecting and

preparing that designee.  Counsel for CVS flagged other areas of concern that it had previously raised that could affect the amount of time required to prepare a corporate designee (and thus affect scheduling), including whether Plaintiffs would agree to identify (and if necessary provide) documents they intended to use at the deposition in advance thereof so as to permit CVS to prepare most efficiently.  Counsel for CVS also requested confirmation that in light of the Court's order awarding CVS half of its costs associated with Plaintiffs' earlier document subpoena, Plaintiffs would agree to a similar cost-sharing with respect to the burden CVS would incur in preparing a corporate designee pursuant to Rule 30(b)(6).  *Id.*

On September 14, 2018, Plaintiffs' counsel sent a letter to CVS's counsel that for the most part refused to limit the draft list of topics that they had provided on August 31, 2018.  *Id.* ¶ 11 & Ex. 3.  Plaintiffs also refused to share the costs that CVS would be required to incur in preparing for a corporate deposition or to identify or provide documents in advance of the deposition that would reduce the burden.  *Id.*

### C.    Plaintiffs' Rule 45 Deposition Subpoena to CVS

On October 2, 2018, Plaintiffs served on CVS's registered agent a deposition subpoena commanding CVS to appear for a corporate deposition on October 23, 2018.  *Id.* ¶ 12 & Ex. 4. An exhibit to the subpoena set forth the same list of eight topics that Plaintiffs on August 31, 2018 had provided in draft form, and on September 14, 2018 had refused to modify.  *Id.*

On October 10, 2018, counsel for CVS e-mailed Plaintiffs and communicated that CVS had multiple concerns regarding Plaintiffs' subpoena.  *Id.* ¶ 13 & Ex. 5.  CVS's counsel outlined a plan to meet and confer with Plaintiffs, and told Plaintiffs that if the meet and confer process was unsuccessful, CVS would file a motion to modify or quash the subpoena.  *Id.* On October 11, 2018, counsel for CVS sent a more detailed letter to Plaintiffs, explaining specific issues on

which CVS wanted to meet and confer in advance of filing any motion under Rule 45(d)(3).  *Id.* ¶ 14 & Ex. 6.

On October 12, 2018, counsel for CVS and the Plaintiffs met and conferred by telephone for the first and only time since the Plaintiffs' Rule 45 subpoena had actually filed.  *Id.* ¶ 15. During the meet and confer, CVS' counsel proposed modifications to Plaintiffs' topics substantially identical to those requested in this motion.  Plaintiffs' counsel replied that they did not have authority to respond to CVS's proposals (or to any of the issues raised by CVS in its October 11, 2018 letter) but that they would confer with their colleagues and then get back to CVS with a response.  CVS's counsel requested that Plaintiffs try to do so by early the following week, and again reminded them that CVS would file a Rule 45 motion for a protective order if the parties were unable to reach resolution.  *Id.*

Plaintiffs' counsel never responded to CVS's counsel.  *Id.* ¶ 16.  On Tuesday, October 16, 2018, CVS's counsel e-mailed Plaintiffs to remind them that CVS was still awaiting a response on the proposed modifications to the subpoena.  *Id.* ¶ 17 & Ex. 7.  CVS' counsel reminded them again that if no agreement could be reached, CVS intended to file a motion pursuant to Rule 45(d)(3), and that pursuant to CVS's interpretation of Local Rule 26(b)(2), the October 23 deposition would automatically be stayed as long as CVS filed a Local Rule 45(d)(3) motion within fourteen days of Mylan's October 10 deposition.  CVS noted that this would allow the Plaintiffs more time to respond to CVS's proposals and potentially narrow the issues CVS would have to raise in any motion, as well as enable CVS to present a single motion regarding both Deposition Subpoenas if necessary.  *Id.* ¶ 18.  Again, Plaintiffs' counsel never responded to CVS's counsel.  *Id.*

As of the date of this motion, CVS has never received the Plaintiffs' promised response to the proposals CVS offered on October 12, 2018, nor any other communication from Plaintiffs' counsel since then except for a cursory e-mail attaching a copy of a motion to compel filed by Plaintiffs on October 17, 2018.[2]  *Id.* ¶ 19.

### D.    Mylan's Rule 45 Deposition Subpoena to CVS

On October 10, 2018, Mylan served their deposition subpoena on CVS.  *Id.* ¶ 20 & Ex. 8. An exhibit to that subpoena set forth nine deposition topics.  *Id.*  Thereafter, counsel for Mylan and CVS met and conferred regarding CVS's concerns with respect to Mylan's Subpoena.  On the evening of October 19, 2018, counsel for CVS and Mylan agreed that they had reached agreement and that it was unnecessary for CVS to seek relief from the Court regarding Mylan's Subpoena.  *Id.* ¶ 21.

### IV.    Law and Argument

### A.    Legal Standard

A party that issues a subpoena is obligated "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  Federal Rule of Civil Procedure 45 provides that a court "must quash or modify a subpoena that . . . subjects a person to undue burden, Fed. R. Civ. P. 45(d)(3), while Rule 26(c) states that, upon showing of "good cause," a court may "issue an order to protect a party or person from undue burden or expense," Fed. R. Civ. P. 26(c)(1).  Such an order may, *inter alia*, "forbid[] the disclosure or discovery," specify the terms of the discovery, "including time and place or the allocation of expenses," or "limit[] the scope of disclosure or discovery to certain matters."  Fed.

---

[2] Following the filing of this motion, CVS will request that Plaintiffs withdraw their motion to compel.  If Plaintiffs do not do so, CVS will respond to that motion on the expedited schedule as set by the Court.

R. Civ. P. 26(c)(1)(A), (B), (D).  The decision to enter a protective order is within the Court's discretion.  *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 482 (10th Cir. 1995).

Parties may seek discovery only of information that is both (1) "relevant to [a] party's claim or defense" and (2) "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). "Although proportionality has long been a factor in ruling on discovery motions, the recent amendment to Rule 26 requires courts to be vigilant to concerns of proportionality."  *Arenas v. Unified Sch. Dist. No. 223*, No. 15-CV-9359-JWL-TJJ, 2016 WL 6071802, at *4 (D. Kan. Oct. 17, 2016) (James, M.J.).  Specifically, a court can limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000) (same).  Among other factors that a court can and should consider when evaluating proportionality is the "necessity of the discovery."  *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010).

Depositions pursuant to Rule 30(b)(6), for which a "noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice," *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000), are subject to special requirements beyond those applicable to discovery in general or third-party discovery in particular.  "For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."  *Arenas*, 2016 WL 6071802, at *4 (quotation marks omitted).  A notice that "is not so constrained but is instead overly broad subjects the noticed party to an impossible task."  *Id.*  Accordingly, courts in this District "have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices."  *Lipari v. U.S. Bancorp, N.A*, No. CIVA 07-2146-CM-DJW, 2008 WL 4642618, at *6 (D. Kan. Oct. 16, 2008); s*ee also,*

*e.g.*, *Arenas*, 2016 WL 6071802, at *5–*6 (applying various limits to topics where defendants had "tak[en] a reasonable position"); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 585–86 (D. Kan. 2008) (limiting topics to a particular facility and time period).

    **B.**    **The Court Should Modify the Plaintiffs' Subpoena to Protect CVS From Undue Burden.**

        **1.**    **The Plaintiffs' deposition topics should be narrowed or set aside.**

Although the phrases used to articulate the level of specificity that is required as to deposition topics can vary—"painstaking specificity," "reasonably particularized," etc.—the essential question is one of practicality. The topics must be specific enough "[t]o allow Rule 30(b)(6) to **effectively function**." *Arenas*, 2016 WL 6071802, at *4 (D. Kan. Oct. 17, 2016) (emphasis added). In the real world, the attorneys assisting with the preparation of a witness must be able to predict with some reasonable degree of certainty what questions a witness will face; the witness must be able to fathom what exactly to read and who exactly to talk to for purposes of preparing to answer those questions; the answers must be within the capacity of a human being to learn, retain, and then testify about; and scope of the subject matter must be such that the foregoing tasks can be accomplished within a reasonable time frame.

CVS has proposed modifications to the Plaintiffs' topics intended to bring them within the realm of what will enable a Rule 30(b)(6) deposition—and CVS's preparation for it—to "effectively function." As a general matter, the modifications that CVS requests the Court to apply serve three purposes, which are addressed in greater detail on a topic by topic basis below:

***Level of Generality.*** Nearly all of the topics that the Plaintiffs have proposed are framed at an extremely high level of generality, to be applied over the course of several years. They are generally devoid of reference to actual events, transactions, communications, documents or similar factual anchors that would assist CVS in preparing a corporate representative to testify as

to any particular details.  CVS can prepare a witness to respond to questions at the same level of generality as the topics themselves, but what CVS cannot do is read the Plaintiffs' minds regarding what more specific issues within those subject matter areas the Plaintiffs may wish to inquire about.

This is less of a concern when a Rule 30(b)(6) deponent is a party to a case, because parties that are actively participating in litigation with one another will often have a fairly clear sense of what precise issues the other party is interested in.  But as a non-party, CVS has no idea what types of questions the parties have been asking at depositions, what documents they have typically used with witnesses, what documents have even been <u>produced</u> by the parties, or any other information that would enable CVS to predict where the Plaintiffs might plan to drill down. The modifications CVS requests herein will clarify that CVS has no obligation to play that guessing game; it will be required to prepare a witness <u>at the same level of generality as the Plaintiffs chose to frame their topics</u>.  CVS's proposed modifications also allow for the Plaintiffs to provide advance notice to CVS if they plan to inquire into more specific areas with respect to a general topic, in which case CVS will prepare the witness accordingly.

***Clarity.***  In several cases, the Plaintiffs have used language in framing their topics that is subject to multiple interpretations.  CVS has proposed language that is precise so that there will be no confusion regarding what CVS is preparing a witness to testify about.

***Proportionality***.  As this Court has noted, Rule 26 requires courts to be "vigilant to concerns of proportionality."  *Arenas*, 2016 WL 6071802, at *4 (D. Kan. Oct. 17, 2016).  Some of the topics Plaintiffs have proposed would require CVS to prepare a witness on issues that are at best of marginal relevance to the central claims in the case, yet would at the same time expand the scope of a designee's preparation well beyond the people and documents directly related to

11

rebates and/or formulary placement decisions concerning EAI devices.  The burden to CVS of preparing on those core issues will be significant on its own; it is disproportional to ask CVS to also prepare regarding peripheral issues.

CVS requests that the Court enter an order modifying Plaintiffs' topics as follows.

**Plaintiffs' Topic # 1**

Plaintiffs' first topic addresses CVS's "contract negotiations with Mylan regarding EpiPen" over a five year period.  The topic states that it "include[es] but [is] not limited" to six lengthy and unhelpful sub-topics, none of which actually address anything concrete that would focus the preparation of a witness; instead, each subtopic is of the "any and all" variety that expands rather than focuses the scope of the topic.  *See, e.g.*, *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) ("including but not limited to" does not provide reasonable particularity).  At this stage in the litigation, Plaintiffs presumably should be able to be more specific regarding what particular terms or agreements (all of which they have) that they want CVS to prepare a witness to testify about.   CVS's reasonable proposed modification to the topic, to which Plaintiffs never responded, would ensure that the level of generality at which CVS is required to prepare its witness is proportional to the level of specificity provided by the Plaintiffs regarding what they want to know.  CVS therefore respectfully requests the Court to modify Topic #1 as follows:

> CVS will offer a designee to provide high-level testimony regarding (1) CVS's general business practice regarding the negotiation of rebate contracts with pharmaceutical manufacturers and (2) the contracts CVS has produced between CVS and Mylan that specifically relate to EpiPen and the negotiation thereof, to the extent information is reasonably available to the company.  If Plaintiffs intend to ask questions regarding any specific terms of any specific contract, or any documents/communications external to any specific contract, CVS will prepare the designee to answer questions only to the extent Plaintiffs specifically identify the terms/documents/communications to CVS at least ten days in advance of the deposition.

### Plaintiffs' Topic # 2

Plaintiffs' second topic addresses CVS's "contract negotiations with the producers of any non-EpiPen EAI device" over a five year period.  Although this might seem at first glance to be the "non-Mylan" mirror of Topic #2, there is a crucial difference—Topic #2 limits the scope of the producers but not the devices.  In other words, if a drug company produces hundreds of drugs, one of which is an EAI device, Plaintiffs' topic as stated would require CVS to prepare a witness regarding every contract negotiation as to every drug—even the non-EAI devices.  The mere fact that a company produces EAI drugs (among many others) does not render every unrelated negotiation or contract between CVS and that manufacturer relevant to the claims in this matter.  *Cf. Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2014 WL 7071573, at *3 (D. Kan. Dec. 12, 2014) (James, M.J.) (setting aside topic that "encompasse[d] matters irrelevant to the claims and defenses in this case").   And even if there were some arguable relevance, this topic as stated would increase the burden on CVS by orders of magnitude as compared to a topic that is properly limited to EAI Devices, and thus would be disproportional.  Separately, the topic also suffers the same "level of generality" issue as does Topic 1.   CVS's proposed modification to the topic is the same as CVS's proposal with respect to Topic 1, except limited to "the contracts CVS has produced between CVS and manufacturers of non-EpiPen EAI devices that specifically relate to those non-EpiPen EAI devices and the negotiation thereof, to the extent information is reasonably available to the company."  Plaintiffs never responded to this proposal, and CVS respectfully requests that the Court modify this topic accordingly.

### Plaintiffs' Topic # 3

Plaintiffs' third topic addresses "[t]he internal deliberative process You employ when making formulary coverage decisions, including but not limited to the people and/or committees

involved therein."  CVS explained to Plaintiffs that its non-defined use of the term "formulary coverage decisions" can be subject to a wide range of interpretations.  A reasonable and appropriate clarification would be to focus on decisions regarding formulary placement on CVS's national, standard commercial Performance Drug Lists, which are the formularies that CVS has produced in this matter.  Dockery Decl. ¶ 22.  Furthermore, for the same reasons that this Court permitted CVS to redact the names of external P&T committee members from its documents, *see* Memorandum and Order at 4–5 (Doc. 717), this topic should be clarified to confirm that CVS will not be required to disclose those identities via testimony.  Finally, the level of generality at which CVS is required to prepare for this topic should be keyed to the extremely general nature of the topic itself.  CVS can prepare a witness to provide testimony regarding its general business practices, but to the extent Plaintiffs were to begin delving into particular formulary coverage decisions for non-EAI devices,[3] the burden of this topic would become disproportionate for the same reasons as outlined in connection with Topic 2.  CVS proposed to Plaintiffs, and respectfully requests this Court now order, a modification that would clarify Topic 3 accordingly:

> CVS will offer a designee to provide high-level testimony regarding CVS's general business practice regarding how decisions are made as to formulary placement with respect to its standard Performance Drug Lists, including the key personnel and committees that participate in those decisions (with the exception that external P&T Committee Members will not be identified by name).

**Plaintiffs' Topic # 4**

Plaintiffs' fourth topic addresses "[t]he factors You consider when making formulary coverage decisions, including but not limited to those related to manufacturer rebates, market share, purchase price, efficacy, ease-of-use, and the willingness of physicians and consumers to

---

[3] Formulary placement decisions concerning EAI devices are addressed in connection with Topic #4.

transition from one EAI device to another."  As with Topic #3, the term "formulary coverage

decisions" is ambiguous, and CVS proposed the following modification (to which Plaintiffs

never responded) intended to clarify that ambiguity and the level of generality at which it would

be required to prepare a witness:

> CVS will offer a designee to provide high-level testimony regarding (1) the factors that
> CVS most commonly considers, as a matter of general business practice, when making
> decisions as to formulary placement with respect to its standard Performance Drug Lists
> and (2) the factors that CVS considered when making decisions as to the formulary
> placement of EpiPen and other EAI devices with respect to its standard Performance
> Drug Lists, to the extent information is reasonably available to the company. To the
> extent Plaintiffs intend to ask questions regarding specific formulary decisions, or any
> specific documents or communications related thereto, CVS will prepare the designee to
> answer questions only to the extent Plaintiffs specifically identify the
> decisions/documents/communications to CVS at least ten days in advance of the
> deposition. CVS will not offer a designee to testify regarding factors that CVS
> considered when making decisions regarding any specific drugs other than EAI devices
> in connection with the standard Performance Drug Lists (or for any other purpose).

**Plaintiffs' Topic # 5**

Plaintiffs' fifth topic addresses "[t]he effect of EpiPen price increases on Your formulary

coverage decisions for regions both inside and outside of the United States."  As with Topic #4,

the term "formulary coverage decisions" is ambiguous, and the phrase "price increases" is also

subject to several interpretations.  Furthermore, Plaintiffs have never explain what they expected

CVS to testify about regarding "formulary coverage decisions . . . outside of the United States,"

given that CVS offers PBM services only to clients within the United States.  Dockery Decl. ¶

23.  In any event, that aspect of this Topic is plainly disproportionate, given that the claims in

this matter are limited to EpiPen sales within the United States.  Consolidated Class Action

Complaint (Doc. 60) ¶¶ 460, 516.  Accordingly, to the extent the Topic seeks testimony

regarding decisions external to the United States, it should be set aside.  *See McBride*, 250

F.R.D. at 585 ("limit[ing] the geographic scope of discovery").  With that limit applied, this

Topic addresses a specific subset of Topic #4, and CVS therefore proposed the following

modification (to which Plaintiffs never responded) intended to clarify the various ambiguities and defects outlined above and to clarify the level of generality at which CVS would be required to prepare a witness:

> In connection with Topic #4, CVS will prepare the designee to address the extent to which the benchmark prices of a drug (AWP and/or WAC) are considered as a factor, as a matter of general business practice, when making decisions regarding formulary placement with respect to its standard Performance Drug Lists. Furthermore, to the extent Plaintiffs identify the specific "EpiPen price increases" they wish to inquire about at least ten days in advance of the deposition, CVS will prepare the designee to answer questions about them in connection with our proposal for Topic #4. CVS does not service clients outside of the United States, and therefore will not offer a designee regarding "formulary coverage decisions for regions . . . outside of the United States."

### Plaintiffs' Topic # 6

Plaintiffs' sixth topic addresses "[t]he effect of Mylan's switch to EpiPen 2-Paks, including any reasons Mylan offered for the switch and any feedback." The topic is ambiguous in that it fails to explain what is meant by "Mylan's switch to EpiPen 2-Paks" and fails to provide any clarity as to what particular areas the term "effect" is intended to cover. Furthermore, Plaintiffs failed to agree to limit the request to the specific contexts of rebate contract negotiation and formulary placement decisions. Without those anchors, the scope of this topics explodes: any "feedback" from any plan, pharmacy, beneficiary, or anyone else becomes fair game. It would not be possible for CVS to prepare a witness to testify regarding all interactions anyone at CVS may have had with Mylan, pharmacies, physicians, or consumers regarding an undefined "switch" over a period of five years, or all "effects" thereof, and even if it were possible the burden of doing so would certainly outweigh any likely benefit. CVS proposed the following modification (to which Plaintiffs never responded) intended to provide Plaintiffs an opportunity to clarify:

> To the extent Plaintiffs identify the specific "switch to EpiPen 2-paks" being referred to at least ten days in advance of the deposition, CVS will prepare the designee to answer questions about them in connection with our proposal for Topic #4. CVS will not offer a

designee to testify regarding feedback received from pharmacies, physicians, or consumers.

**Plaintiffs' Topic # 7**

Plaintiffs' seventh topic addresses "Your knowledge of any surveys, feedback, or complaints from pharmacies, physicians, or consumers related to the availability or unavailability of any non-EpiPen EAI device." The problem with this topic is twofold. First, Plaintiffs refused to give any further definition of what they meant by "knowledge"; the PBM Business of CVS alone employs more than 20,000 people. Declaration of Andrea Zollett, ¶ 3. A corporate designee simply could not ascertain or meaningfully speak to those employees' collective "knowledge." Second, the subject matter of the topic—"communications with pharmacies, physicians, or consumers"—would implicate vast volume of information. To put matters in perspective, between 2013 and 2017, CVS processed over four million claims for EAI Devices, filled for over 2.3 million unique members, out of more than 68,000 different pharmacies. Dockery Decl. ¶ 24. Asking a designee to hunt through all of the communications that may have resulted from those transactions for "complaints" related specifically "to the availability or unavailability of any non-EpiPen EAI device," and then attempting to memorize and testify regarding them, is disproportionate and would impose an undue burden on CVS. CVS therefore respectfully requests the Court set aside Plaintiffs' Topic #7.

**Plaintiffs' Topic # 8**

Plaintiffs' eighth topics addresses "Your knowledge of any federal, state, or local investigation into Mylan's rebates or practices, including but not limited to Mylan's $465 million settlement with the Department of Justice for alleged violations of the False Claims Act." To begin with, this topics suffers the same issue regarding the term "knowledge" as does Topic #7. CVS's counsel asked Plaintiffs' counsel if they had any basis to believe that anyone at CVS had

ever had any <u>non-public</u> information responsive to this topic; Plaintiffs were unable to do so. Nevertheless, Plaintiffs suggested that CVS could "start" by asking "everyone in the legal and compliance departments" whether they had such knowledge.  Dockery Decl. ¶ 10.  Plaintiffs further told CVS that it should prepare a witness to testify regarding knowledge CVS employees had regarding the settlement <u>after it was publicly announced</u>.  *Id.*  It is entirely unclear how CVS's knowledge on these matters could be relevant; what is clear is that preparation of a witness to testify regarding this topic would require CVS to shoulder an burden that is totally disproportionate to any possible benefit.   CVS therefore respectfully requests the Court set aside Plaintiffs' Topic #8.

> **2.   Plaintiffs Should Produce or Identify to CVS Any Documents On Which They Intend To Question CVS Prior to the Deposition.**

In keeping with the requirement that a party seeking a 30(b)(6) deposition must provide notice sufficient to allow a corporation to properly prepare its witness(es), *see McBride*, 250 F.R.D. at 284, CVS has requested that the Plaintiffs provide it with copies of the documents on which they intend to question CVS prior to the deposition.[4]  Plaintiffs have contended that doing so would "interfere with the integrity of the deposition," *see* Ex. 3, but that is contradicted by the Deposition Guidelines in this District, which specifically recommend such disclosure in circumstances where it would avoid undue burden.  *See* Rule 6(c), Deposition Guidelines of the United States District Court for the District of Kansas (recommending that "[i]f the witness is going to be asked to review numerous or lengthy documents, copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the witness to read them prior to the deposition.").

---

[4] As to documents produced by CVS, identification of the documents by Bates Number would suffice.

Such disclosure is particularly appropriate here, where Plaintiffs seek to take a Rule 30(b)(6) deposition of a non-party. Plaintiffs' contention that disclosure to CVS of documents in advance would "interfere with . . . the primary goal of eliciting information known and/or in the possession of CVS," *see* Ex. 3, simply makes no sense in the context of a Rule 30(b)(6) deposition; CVS is specifically required to prepare a witness in advance, not simply have them testify on personal recollection. If Plaintiffs intend to ask CVS's designee questions about a document, then CVS should prepare the designee in advance. Hiding the ball as to what documents CVS should prepare a witness on means only that CVS's designee would likely waste time preparing on documents the Plaintiffs will not use, and while devoting time to those unnecessary documents the witness might very well overlook a document that Plaintiffs do want to ask questions about (and thus be unable to answer those questions when surprised with the document at the deposition). That represents a massive waste of time for everyone involved. This is why "[e]very court that has considered the issue of producing documents in advance of a [Rule 30(b)(6)] deposition has come to the conclusion" that advance notice of documents is proper. *Charleswell v. Chase Manhattan Bank, N.A.*, 277 F.R.D. 277, 284 (D.V.I. 2011); *see also Phillips v. Philip Morris Cos.*, 2013 WL 2297079, at *9 (N.D. Ohio May 24, 2013) (collecting cases); *E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11CV44, 2013 WL 4400506, at *3 (D. Neb. Aug. 15, 2013).

The need for advance disclosure is amplified here because CVS is a non-party. CVS lacks access to the documents produced by the parties or other third parties in discovery in this matter. A party to a case preparing a Rule 30(b)(6) witness would likely prepare the witness using prior deposition exhibits and testimony. *See, e.g., Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (Rule 30(b)(6) requires that corporation responding to

notice "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits").  As a non-party, however, CVS is unable to do any of that.  Furthermore, CVS has no idea what lines of questioning Plaintiffs have been pursuing at other depositions, what interrogatories they have posed, or any of the other information a party might use to help predict what questions could reasonably arise at a Rule 30(b)(6) deposition.

Plaintiffs have pointed out that the Federal Rules of Civil Procedure do not on their face obligate Plaintiffs to produce or identify anything to CVS in advance of the deposition.  That is true.  It is also true that Plaintiffs have an obligation "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), and that to the extent Plaintiffs are unwilling to do so, the Court has the discretion modify the subpoena or otherwise issue an order that would relieve an undue burden.  Fed. R. Civ. P. 26 (c), 45(d)(3).  Here, forcing CVS to engage in a guessing game as to what it should prepare on poses an undue burden that can easily be relieved by providing CVS with advance notice (and, if necessary copies) of what it should prepare on.  Accordingly, CVS respectfully requests the Court order the Plaintiffs to identify and, if necessary, provide documents on which they intend to question CVS's designee at least ten days prior to the deposition.

### 3.      Plaintiffs Should Be Required to Pay a Third of CVS's Costs of Compliance.

Rule 45 requires that the Court "must protect" CVS "from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(ii).  The Rule thus "requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant."  *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).  Even with the limits CVS proposes herein, preparation of a witness or witnesses to testify on behalf of the company will plainly impose a substantial burden on CVS in terms of attorney's fees and lost employee time.

It is difficult to estimate the scope of this burden, but it will certainly be well in excess of $20,000.  Dockery Decl. ¶ 25.  *See Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("we have no trouble concluding that $20,000 is 'significant'"); *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982) (affirming cost-shifting of $8,782.98 for non-party); *G & E Real Estate, Inc. v. Avison Young–Washington, D.C., LLC*, 317 F.R.D. 313, 321 (D.D.C. 2016) ($3,148,44 paid by nonparty to comply with subpoena was "significant").

This Court previously awarded cost-sharing to relief in connection with the subpoena for documents that Plaintiffs served on CVS.  Memorandum and Order (Dkt. 717) (requiring Plaintiffs to pay half of CVS's costs).  Such relief is even more appropriate here, considering that Plaintiffs chose to pursue a deposition strategy that imposes greater burdens on CVS than would other strategies that were available to them, such as issuing subpoenas to current or former CVS employees in their individual capacities.  In view of the fact that Plaintiffs and Mylan have both issued subpoenas to CVS in connection with the deposition, Plaintiffs should be ordered to pay 33% of CVS's reasonable costs.

### 4.    CVS Should Be Provided Adequate Time to Prepare Its Corporate Witness.

Once the Court issues an order settling the various issues raised by this motion, CVS will need adequate time to prepare a corporate witness to testify on whatever final set of topics the Court's order produces.  CVS expects that it will designate Joseph Anderson as its corporate designee.[5]  Declaration of Joseph Anderson, ¶ 3.  Mr. Anderson expects to devote multiple days to the preparation, *id.* ¶ 5, but also has other work commitments in October and November which

---

[5] Although CVS does not expect to do so, CVS reserves the right to modify its selection during the preparation process if necessary.

cannot be deferred, including critical work related to the merger between CVS and Aetna recently approved by the Department of Justice, *id.* ¶ 6.  Assuming the Court grants the relief set forth in this motion, and assuming the Order issues in October, we and Mr. Anderson's believe that the first date he would be available for deposition (taking into account the need to prepare on several prior days) would be November 29, 2018.  *Id.* ¶ 7.  CVS respectfully submits that the Court should not order CVS to appear for a deposition prior to that date, because doing so would impose precisely the kind of undue burden on CVS that Rule 45 is intended to avoid.

### 5.    Absent Modification, the Court Should Quash the Subpoena As Overly Burdensome.

If the Court concludes that the impending discovery deadlines in this case do not allow reasonable time for CVS to prepare a corporate witness, CVS respectfully submits that CVS should not be punished for that.  CVS is not a party to this case, and it had no control over the timing of discovery or Plaintiffs' strategic choice to wait until there was less than a month remaining before the close of discovery to serve CVS with a deposition subpoena seeking Rule 30(b)(6) corporate testimony on topics which Plaintiffs <u>knew</u> to be disputed.  The more appropriate course, if the Court concludes that a deposition on November 29 or later is unacceptable, would be to quash the deposition subpoena altogether.  Accordingly, in the alternative to a protective order modifying the Subpoena, CVS respectfully requests that the Court quash the Subpoena pursuant to Rule 45.

### <u>CONCLUSION</u>

For the reasons above, CVS respectfully requests that Plaintiffs' Subpoena be modified or, in the alternative, quashed, as described herein.

Dated:  October 20, 2018        By:     **SPENCER FANE, LLP**
                                        /s/ J. Nick Badgerow
                                        J. Nick Badgerow #9138
                                        9401 Indian Creek Parkway, Suite 700
                                        Overland Park, KS 66210
                                        Telephone: 913.327.5134
                                        Facsimile: 913.345.0736
                                        nbadgerow@spencerfane.com

                                        **WILLIAMS & CONNOLLY LLP**
                                        725 Twelfth Street, N.W.
                                        Washington, DC 20005
                                        Telephone: 202.434.5000
                                        Facsimile: 202.434.5029
                                        Paul Boehm (*pro hac vice admission pending*)
                                        pboehm@wc.com
                                        Daniel M. Dockery (*pro hac vice admission pending*)
                                        ddockery@wc.com

                                        *Attorneys for Non-Party CVS Health Corporation*

## CERTIFICATE OF SERVICE

This will certify that a true copy of the foregoing pleading was served via this Court's CMC/ECF system on this 20th day of October, 2018, which will in turn serve all counsel of record.

/s/ J. Nick Badgerow

*Attorney for Non-Party CVS Health Corporation*