IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## ORDER

During the October 10, 2018 discovery status conference, the Court granted in part Class Plaintiffs' Motion to Compel Regarding the Mylan Defendants' Privilege Log and Other Privilege-Related Issues (ECF No. 983), and directed Class Plaintiffs and Mylan each to submit 25 documents for *in camera* review. The parties made timely submissions. The Court has reviewed the documents and rules as follows.

**I.     Legal Standards**

The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[1] Under the law of this circuit, an attorney's communication to a client is also protected if it is "related to the rendition of legal services and advice."[2]

---

[1] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).

[2] *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July

Although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.[3] The communication is protected from disclosure only if a connection exists between the subject of the communication and the rendering of legal advice,[4] and legal advice "must predominate for the communication to be protected."[5] Legal advice that is incidental to business advice is not privileged.[6]

## II.     Analysis

Class Plaintiffs and Mylan have each submitted 25 documents. The Court discusses each set in turn.

### A.     Documents Submitted by Class Plaintiffs

After review, the Court finds Document Nos. 1-10 and 13-25 are not entitled to the protection of attorney-client privilege and shall be produced. Document Nos. 1-5 are email chains with messages sent to and from non-lawyers Heather Bresch (Mylan's CEO) and Lauren Kashtan (Mylan's Director of Specialty Communications). Although two or three lawyers are included on the lengthy lists of people copied on the email messages, simply copying lawyers on emails between non-lawyer business representatives that deal primarily with business and/or marketing issues does not render the messages privileged. Nor does noting, as some of these

---

25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").

[3] *IMC Chemicals, Inc. v. Niro, Inc.*, No. 98-2348, 2000 WL 1466495, at *8-9 (D. Kan. July 19, 2000).

[4] *Burton v. R.J. Reynolds Tobacco Co.,* 175 F.R.D. 321, 328 (D. Kan. 1997) *("Burton II")*.

[5] *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (*"Burton I"*).

[6] *Id.*

email messages do, that a lawyer has viewed the message or attachments cloak them with privilege. To any limited extent that legal advice may have been sought or rendered through these emails, it was merely incidental.

Document Nos. 6 and 7 are appointments for "EpiPen Pricing Calls" with attached lists of required attendees. These documents are not entitled to protection under the attorney-client privilege, as they do not contain legal advice. "[G]eneral topics of attorney-client discussions" are not protected.[7]

Document Nos. 8, 9, and 13-23 are emails from non-lawyer business representatives to other non-lawyer business representatives, plus a few lawyers, and attached documents, slides, and scripts of business and/or marketing presentations. These documents are predominantly business/marketing materials. Although Mylan describes them as documents seeking or giving legal advice, the contents suggest otherwise. On their face, these documents either do not seek or do not include legal advice, or they include legal advice that is merely incidental to business planning and marketing presentations.

Document No. 10 is an email string beginning with an announcement that proposed legislation had passed the state senate in Oregon and ending with a message from a non-lawyer reporting an issue Heather Bresch had mentioned during a meeting. Although in-house lawyers were included as recipients, nothing in the emails reflects receipt or solicitation of legal advice.

Document Nos. 11 and 12 are privileged. They contain an email chain including a message from Mylan attorney Haggerty with attached draft statement and questions and answers. These attachments address some legal issues and include statements regarding legal matters.

---

[7] *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2684, 11-2685, 11-2686, 2014 WL 545544, at 6 (D. Kan. Feb. 11, 2014).

Document Nos. 24 and 25 are purportedly attachments, but the Court was unable to identify parent documents on Mylan's privilege log. The documents appear to be slides entitled "Project Access ESC Update September 21, 2015" (Document No. 24) and "Rx.com EpiPen Auto-Injector Quality Limit Program MARC Concept Review" (Document No. 25). The Court sees no indication either document was prepared by a lawyer. Instead, the documents appear to be business and marketing materials.

### B. Documents Submitted by Mylan

Document Nos. 1-24 are entitled to attorney-client privilege protection. Document No. 25 is not, and it shall be produced.

Although the email string that comprises Document No. 25 includes a message from a Mylan lawyer forwarding an EpiPen auto-injector Fact Sheet, it includes no legal advice. The email string provides input from nonlawyer business representatives with a subject line of "Proposed Email to Field," which does not relate to the rendition of legal services and advice.

## III. Conclusion

The Court is aware that the 50 documents it has reviewed represent a small portion of the 3,822 documents at issue. Although the Court has searched for a satisfactory manner of extrapolating its findings to the whole body of documents in an effort to relieve the parties of further litigation on this issue, none has emerged. Accordingly, the Court orders as follows. No later than **October 30, 2018**, Mylan shall produce documents to Class Plaintiffs as directed herein. With the benefit of the Court's reasoning, the parties are strongly encouraged to confer in a cooperative spirit within that time to try to finally resolve the disputed privilege log issue. If they are able to do so, Mylan shall produce any additional agreed-upon documents by the same deadline. If they are unable to do so, also by **October 30, 2018**, each side shall submit an

additional **ten documents** from the same pool of documents.  The Court will randomly select five documents to review.  The dispute over Mylan's privilege log has spanned several months, and Mylan bears the burden of demonstrating privilege.  Accordingly, if the Court finds that fewer than four of the documents are entitled to attorney-client protection, the Court will order Mylan to produce all remaining documents exclusive of Class Plaintiffs' Document Nos. 11 and 12 and Mylan's Document Nos. 1-24.

**IT IS SO ORDERED.**

Dated this 24th day of October, 2018 in Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge