# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## ORDER

During the October 10, 2018 discovery status conference, the Court ruled on Sanofi's Motion for Protective Order (ECF No. 903) and on Mylan's Cross Motion to Compel Sanofi (ECF No. 946). But with respect to the category of documents referencing legal advice regarding business issues, the Court did not have sufficient information to determine whether the documents on Sanofi's log are privileged. Accordingly, the Court directed Sanofi and Mylan each to submit 50 documents for *in camera* review. The parties made timely submissions. The Court has reviewed each of the documents and rules as follows.[1]

## I.      Legal Standards

The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except

---

[1] Although the parties provided a key to indicate which party submitted each document, the Court conducted its review without knowing which party had chosen to include each document.

if the protection is waived.[2]  Under the law of this circuit, an attorney's communication to a client is also protected if it is "related to the rendition of legal services and advice."[3]

Although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.[4]  The communication is protected from disclosure only if a connection exists between the subject of the communication and the rendering of legal advice,[5] and legal advice "must predominate for the communication to be protected."[6]  Legal advice that is incidental to business advice is not privileged.[7]

## II.    Analysis

Sanofi and Mylan have each submitted 50 documents from Sanofi's privilege log.  Of those, the Court has determined that 30 are not privileged.  The Court discusses the non-privileged documents according to shared characteristics that separate them into groups.

### A.    Documents Nos. 16, 21, 25, 33, 46, 52 and 69

These seven documents appear to be slides used in presentations regarding Auvi-Q pricing, marketing, sales and potential sales growth, costs, strategies, and projections.  Some of

---

[2] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).

[3] *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").

[4] *IMC Chemicals, Inc. v. Niro, Inc.*, No. 98-2348, 2000 WL 1466495, at *8-9 (D. Kan. July 19, 2000).

[5] *Burton v. R.J. Reynolds Tobacco Co.,* 175 F.R.D. 321, 328 (D. Kan. 1997) *("Burton II").*

[6] *Burton v. R.J. Reynolds Tobacco Co*., 170 F.R.D. 481, 484 (D. Kan. 1997) ("*Burton I*").

[7] *Id.*

these documents have been labeled "proprietary and confidential" or for internal use only. However, "[i]t is well settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that the they are confidential."[8]  In the same vein, merely describing a document as providing or requesting legal advice does not establish privilege.  These documents contain no indication that a lawyer authored them or offered legal advice on the contents, nor do they reflect having been submitted to a lawyer for legal review.  It is not enough to name a lawyer as the legal source of the document without demonstrating what input the lawyer had.  The Court concludes these seven documents are primarily business and/or marketing materials.  To the extent that legal advice may have been sought or rendered through these documents, it was merely incidental.

### B.      Document Nos. 22, 26, 48 and 67

Each of these documents contains an email chain between non-lawyer Sanofi business representatives.  The authors, senders, direct and cc recipients are not lawyers.  The emails do not appear to seek or convey legal advice.  Even if the mere mention of seeking legal input could inject legal advice into the documents, it would be incidental to the predominantly business and/or marketing information the documents convey.

### C.      Document Nos. 28 and 49

The privilege log does not identify the author(s) of these two non-email documents. Document No. 28 provides an overview of and an update to a page of the Auvi-Q Consumer website.  Document No. 49, entitled "Auvi-Q Opportunities – 2014," includes bullet points on pharmacist awareness, consumer awareness, and future considerations.  The documents reveal

---

[8] *Sonnino v. U. Kansas Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004).

nothing about any legal advice that might have helped shape them. The documents appear to be predominantly business related.

### D.     Document Nos. 62 and 75

These documents include eleven draft reports to the FDA concerning Sanofi (Document 62) and a letter from an FDA regulatory lawyer to Sanofi (Document 75). The privilege log identifies the author of Document 62 as "Oracle Reports," which the Court presumes is a reference to the company Oracle with whom Sanofi contracted to provide services for certain FDA-required reports. Each is a draft FDA Medwatch report of a separate adverse event. Although counsel may well have been involved in preparing these draft reports, it is not apparent from the face of the documents. If Sanofi's position is that marking a document "draft" implicitly indicates a request for legal advice, the Court finds that falls short of establishing the document is privileged.

Document 75 consists of a letter from an FDA regulatory lawyer, with attachments, sent to Sanofi's director of regulatory affairs. The document contains no handwritten notations or other marking that would support a finding that Sanofi was seeking legal advice or that its attorney was conveying such advice.

### E.     Document Nos. 32, 36, 45, 47, 55, 64 and 65

These documents include emails from non-attorney Sanofi business representatives, directed to and sometimes copying other Sanofi business representatives and a lawyer or two. The documents do not appear to seek or convey legal advice. That they involve or discuss proprietary information and the privilege log identifies a legal source for the documents does not cloak them with privilege. The documents appear to be predominantly business related.

### F.     Document Nos. 41 and 42

These documents are an appointment request to participate in a telephone conference and the agenda for the conference entitled "Auvi-Q Deep Dive." Most of the required and optional attendees are non-lawyers and, with the exception of an "Update from Legal (limited audience for 20-30 min)" agenda item, the agenda is devoted to updates on brand performance, sales and marketing, sales force deployment, and market access. Although the privilege log characterizes these documents as requests for legal advice, nothing in the documents supports that characterization. These documents are business related and contain no legal advice or request for such.

### G. Document Nos. 43, 66, 68 and 73

These documents are an email cover sheet to meeting minutes that are not included (Document 43), meeting minutes regarding a Market Research Update (Document 66), minutes from a July 18, 2014 meeting reporting up or down decisions on certain items and the attendees' votes (Document 68), and minutes from an Allerject recall situation (Document 73). Each document reports on various matters but none appears to seek or convey legal advice. The attendees, participants, and voting members identified on the meetings are almost exclusively non-lawyers. These documents are predominantly, if not wholly, business related rather than legal in nature.

### H. Document Nos. 91 and 92

These documents are a template report of an audit Sanofi performed of Medivative Technologies, LLC (Document 91), and Medivative's response to the on-site audit (Document 92). The privilege log does not identify the author of either document, nor does it indicate to whom the documents were distributed. Although the log describes the basis of the privilege as a document reflecting legal advice (Document 91) or a request for legal advice (Document 92)

regarding recall of Auvi-Q, neither is apparent from the face of the document.  Moreover, the purpose of the audit does not appear to relate to recall.  Document 91 states the audit "was conducted in order to evaluate the GMP compliance of Medivative related to those activities performed in the final assembly of the Auvi-Q device (known as Allerject in Canada)."  The documents are not privileged.

## III.    Conclusion

The Court is aware that the 100 documents it has reviewed represent a small portion of the roughly 13,000 documents at issue.  Although the Court has searched for a satisfactory manner of extrapolating its findings to the whole body of documents in an effort to relieve the parties of further litigation on this issue, none has emerged.  In fashioning the following order, the Court attempts to balance the parties' need for fair review with the Court's intention (consistent with Federal Rule of Civil Procedure 1) to bring this privilege log dispute to a quick and final resolution.  Accordingly, the Court orders as follows.  No later than **November 12, 2018**, Sanofi shall produce documents to Mylan as directed herein.  And with the benefit of the Court's reasoning, Sanofi should largely be able to determine which remaining privilege log documents fall within the categories the Court has directed Sanofi to produce.  To that end, and also by **November 12, 2018**, the parties shall jointly report via email to Judge James whether any documents remain in dispute and if so, how many.  Sanofi shall produce any additional agreed-upon documents by **November 19, 2018.**

Upon hearing from the parties whether and how many documents remain at issue, the Court will determine the next step.  The Court puts the parties on notice that the next step may be to require them to submit an additional limited number of documents, from which the Court would randomly select ten documents to review and from there would extrapolate its ruling to

the remaining documents.  The dispute over Sanofi's privilege log has spanned several months, and Sanofi bears the burden of demonstrating privilege.

**IT IS SO ORDERED.**

Dated this 2nd day of November, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge