# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Non-Party Express Scripts Holding Company's Motion for Protective Order and to Modify Plaintiffs' Subpoena for 30(b)(6) Deposition (ECF No. 1136). Pursuant to Fed. R. Civ. P. 26 and 45, Express Scripts seeks an order (1) modifying the terms of a Rule 30(b)(6) deposition subpoena served by Class Plaintiffs, (2) requiring Class Plaintiffs to provide Express Scripts at least five business days in advance of the deposition any documents they intend to use at the deposition; and (3) requiring Class Plaintiffs to pay half of Express Scripts' reasonable expenses in responding to the deposition subpoena. Class Plaintiffs oppose the motion. As set forth below, the Court will grant in part and deny in part Express Scripts' motion, and will modify the subpoena in one respect.

## I.     Relevant Background

The Court briefly summarizes the events leading to this motion. Class Plaintiffs first provided Express Scripts with proposed 30(b)(6) topics on August 17, 2018. The parties met and conferred on September 4, September 18, and October 3, and corresponded on various other dates. While they were able to resolve some of Express Scripts' objections to the list of topics,

others remain. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II. Summary of the Parties' Arguments

Express Scripts asserts six of the topics Class Plaintiffs include in their 30(b)(6) deposition notice are overbroad, and they contend Class Plaintiffs are obligated by this court's Deposition Guidelines to provide advance copies of lengthy or numerous documents the witness may be asked to review. Express Scripts also wants Class Plaintiffs to share in the costs of responding to the subpoena.

Class Plaintiffs contend their topics are clear, unambiguous, and narrowly tailored, and fall within topics the Court already has found relevant in this action. They further contend they are under no obligation to provide Express Scripts with copies of documents they may use in the deposition, nor should they be required to pay any share of Express Scripts' cost of compliance.

## III. Legal Standard

Express Scripts invokes the "undue burden" language contained in both Federal Rule of Civil Procedure 26(c) regarding a protective order, and Federal Rule of Civil Procedure 45(d) with respect to modifying the deposition subpoena, but suggests no legal standard to apply under either rule. While Rule 45 provides the authority to quash or modify a deposition subpoena,[1] most of the relief Express Scripts seeks is available under Rule 26(c).[2]

---

[1] *See* Fed. R. Civ. P. 45(d)(3)(A) (describing when subpoena must be quashed or modified); 45(d)(3)(B) (describing when court may quash or modify subpoena).

[2] "[A]ny person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).

Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[3] The decision to enter a protective order is within the court's broad discretion.[4] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[5] In addition, the party seeking a protective order bears the burden of establishing good cause.[6] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[7] If in its discretion the court determines a protective order is warranted, the court has substantial latitude to devise an appropriate order after fairly weighing the parties' competing needs and interests.[8]

## IV. Analysis

Express Scripts argues that six of the deposition topics are overbroad and preparing a witness to testify about them would cause undue burden; that Class Plaintiffs must provide in advance documents they may use at the deposition; and that Class Plaintiffs should bear one-half the cost of Express Scripts' compliance. The Court considers each in turn.

---

[3] Fed. R. Civ. P. 26(c)(1).

[4] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir.1995); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[5] *Herrera v. Easygates, LLC*, No. 11–CV–2558–EFM–GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan.2003)).

[6] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[7] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[8] *Seattle Times Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

### A. Topics

#### 1. Formulary Coverage Decisions

Express Scripts urges the Court to modify Topic Nos. 3-5, all of which focus on its formulary coverage decisions, by limiting the scope of the topics to issues related to its National Preferred Formulary. As Express Scripts describes it, the National Preferred Formulary is one it developed for its clients' use, as opposed to custom formularies that its clients develop and customize for themselves. Express Scripts complains it cannot feasibly prepare a witness to testify about hundreds of different custom formularies developed over multiple years by hundreds of third parties, but acknowledges it is able to produce a witness prepared to discuss the National Preferred Formulary. Class Plaintiffs respond by pointing out that in its ruling regarding these parties' dispute over a document subpoena, the Court found the issue of formulary placement relevant and discoverable without limiting it to a National Preferred Formulary. In addition, Class Plaintiffs have clarified that for these topics, they are seeking information relating to EAI devices.[9]

In support of its request and through an affidavit from in-house counsel, Express Scripts states that it currently has approximately 221 active custom formularies.[10] The affidavit references a declaration Express Scripts earlier submitted as containing a "comprehensive overview of formulary development at Express Scripts [that] is provided by the white paper" attached to the declaration.[11] The declaration states that each year Express Scripts publishes its

---

[9] *See* ECF No. 1136-2 at 39.

[10] ECF No. 1136-1 at 2-3.

[11] *Id.* at 2 (citing ECF No. 468-1).

National Preferred Formulary developed through using a four-step process involving the work of three committees.[12] The white paper offered as providing a comprehensive overview largely discusses Express Scripts' development of its "variety of standard formulas" (with no mention of a National Preferred Formulary), from which "[p]lan sponsors, based on their own unique situation, can select a formulary that is most appropriate for their members."[13] The paper further describes how Express Scripts plan sponsors manage their formularies: "Express Scripts' plan sponsors often adopt Express Scripts-developed formularies as their own or use them as the foundation for their own custom formularies."[14] The paper goes on to describe a spectrum of formulary control levels from an "open" formulary at one end, where the plan sponsor pays a portion of the cost for all drugs regardless of formulary status, to a "closed" formulary at the other end where non-formulary drugs are not covered unless approved.[15]

With respect to the burden Express Scripts would suffer if custom formularies are within the scope of Topic Nos. 3-5, the affidavit states only that "the requisite preparation will need to be even more extensive, and the corresponding preparation costs greater as well."[16]

Express Scripts has not provided sufficient facts to support a finding that it would suffer undue burden by complying with the subpoena as written for Topic Nos. 3-5. Not only is the support for what burden it would suffer insufficient, but neither does the description of its

---

[12] ECF No. 468-1 at 4.

[13] *Id.* at 12.

[14] *Id.* at 14.

[15] *Id.* at 15.

[16] ECF No. 1136-1 at 5.

formulary development explain why it cannot offer testimony on the formulary coverage decision issues sought in those topics. Class Plaintiffs ask only for the internal deliberative process Express Scripts employs (Topic No. 3), the factors Express Scripts considers (Topic No.4), and Express Scripts' own formulary coverage decisions (Topic No. 5). While the Court understands that plan sponsors can select and adapt a formulary to fit their own needs, Express Scripts has offered no evidence to distinguish between the internal deliberative process it uses for its National Preferred Formulary and custom formularies. Accordingly, the Court denies the motion insofar as it seeks to modify Topic Nos. 3 -5 regarding Express Scripts' formulary coverage decisions relating to EAI devices.

### 2. Outside of the United States

Express Scripts objects to Topic No. 5 to the extent it seeks information related to formulary coverage decisions Express makes for regions outside the United States, arguing such regions are not relevant to this case. No Class Plaintiff resides outside the United States, and Express Scripts contends Class Plaintiffs' claim that decisions made outside the United States may have impacted decisions made for domestic distribution is highly speculative and attenuated. As for burden, the declaration Express Scripts relies on states the company would "need to canvass business units outside of the United States, which would require significant time and effort under a short deadline."[17]

Class Plaintiffs argue that Express Scripts' international formulary decision-making likely had an effect on its decisions within the United States, citing Canada as an example because Auvi-Q competed against EpiPen in that country and Express Scripts operates in the

---

[17] *Id.* at 3.

Canadian market. Class Plaintiffs have offered to limit the topic to any country in which Express Scripts performed formulary management during the applicable time period.[18]

Here, too, Express Scripts failed to provide sufficient facts to support a finding that it would suffer undue burden by providing testimony on Topic No. 5 for regions outside the United States. It offers no explanation why electronic and telephonic communications would be more difficult, expensive, or otherwise burdensome. Moreover, the Court is not swayed by an argument that Express Scripts is operating on a short deadline, as nearly three months have passed since Class Plaintiffs first proposed the topic.[19] Accordingly, the Court denies the motion with respect to the inclusion of "outside of the United States" in Topic No. 5, but limits the scope to any country in which Express Scripts performed formulary management involving EAI devices.

### 3. Any Surveys, Feedback, or Complaints

Express Scripts urges the Court to (1) modify Topic No. 6 to eliminate reference to "any feedback" Express Scripts received from pharmacies, physicians, or consumers regarding the effect of Mylan's switch to EpiPen 2-Packs, and (2) quash Topic No. 7, which asks for Express Scripts' "knowledge of any surveys, feedback, or complaints from pharmacies, physicians, or consumers related to the availability or unavailability of any non-EpiPen EAI device." Its declaration states that member and physician contacts are tracked in a Customer Claim Detail ("CCD") file kept for that specific member, each of which would have to be manually reviewed. In addition, if a member instead submits a complaint or feedback to the member's health plan,

---

[18] *See* ECF No. 1136-2 at 39.

[19] *See id.* at 18.

the comment eventually makes its way to an Express Scripts account manager, and the company would need to research the files of hundreds of its account managers.[20] As for pharmacies, when a network pharmacy contacts the Help Desk, that information is listed in a file for that specific pharmacy and finding it would require Express Scripts to manually search through individual pharmacy's records.[21]

In addition, Express Scripts challenges the material importance of complaints or feedback from consumers it has received about Mylan, EpiPen or non-EpiPen EAI devices.

Plaintiffs express skepticism that Express Scripts has no means other than manual review to search for feedback, surveys, or complaints from pharmacies, consumers, or physicians, and argues in favor of the relevance of the information. The Court does not question the relevance of this information, but finds that Express Scripts has provided sufficient information to demonstrate undue burden. The Court will not require Express Scripts to undergo manual review of its CCD files or the files of its account managers to respond to Topic Nos. 6 and 7. If any of these files are searchable electronically, however, Express Scripts shall perform a search using the plain meaning of the terms in Topic Nos. 6 and 7. Accordingly, the Court grants the motion to the extent it requires Express Scripts to manually search files for feedback, complaints, or surveys regarding complaints as described in Topic Nos. 6 and 7.

### 4. Knowledge of Investigations Into Mylan's Rebates and Practices

In Topic No. 8, Class Plaintiffs address Express Scripts' "knowledge of any federal, state, or local investigation into Mylan's rebates or practices, including but not limited to Mylan's

---

[20] ECF No. 1136-1 at 3-4.

[21] *Id.* at 4.

$465 million settlement with the Department of Justice for alleged violations of the False Claims Act."[22] Express Scripts contends the description of any investigation is vague and open-ended, that its knowledge is irrelevant, and that it would have to examine records from 2012 to 2017 in multiple departments to be responsive. Express Scripts asks the Court to quash Topic No. 8 or modify it to cover only its knowledge of Mylan's $465 million settlement with the Department of Justice for alleged violations of the False Claims Act.

Plaintiffs argue the information they seek, which is limited to Express Scripts' knowledge, is highly probative of Mylan's alleged improper use of rebates.

Clearly, the issue of Mylan's rebates or practices is central to this case, and Topic No. 8 is not vague or open-ended in its description. Express Scripts provides no means for the Court to measure the burden Express Scripts claims of examining records in various departments for the period 2012-2017. Accordingly, the Court denies the motion insofar as it seeks to modify or quash Topic No. 8.

### B. Advance Copies of Documents

Express Scripts seeks an order requiring Class Plaintiffs to identify and produce, at least five business days before the deposition, copies of documents it intends to use at the 30(b)(6) deposition. Express Scripts argues that, as a non-party, it is at an unfair advantage because it does not have access to the documents that have been produced to the parties. In addition, Express Scripts points to the provision in this district's Deposition Guidelines which states that "[i]f the witness is going to be asked to review numerous or lengthy documents, copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the

---

[22] ECF No. 1136-2 at 36.

witness to read them prior to the deposition."[23] What is markedly absent from the argument, however, is a claim that such order is necessary to protect a deponent from "annoyance, embarrassment, oppression, or undue burden or expense."[24]

Class Plaintiffs oppose the request, pointing out that this district's Deposition Guidelines are permissive and not mandatory. Both parties cite to the same case from this district that discusses the issue, *In re Urethane Antitrust Litigation*, Case No. 04-MD-1616, 2011 WL 13074295 (D. Kan. Dec. 22, 2011). In that case, four non-party witnesses were to be deposed by certain defendants. The witnesses argued that common courtesy required advance production of documents to be used at the deposition, and doing so would avoid needless waste of time during the deposition. Defendants did not expect to show the witnesses lengthy or numerous documents, and expressed concern that if they disclosed the documents in advance, the witnesses could strategize with counsel to frame their responses. Magistrate Judge O'Hara found the movants had not met their burden to show the need for the "unorthodox approach" of a protective order, and he denied the motion.[25]

The Court likewise finds that Express Scripts has not met – or even attempted to meet – its burden to demonstrate entitlement to a protective order on one of the enumerated grounds of Rule 26. In terms of proportionality, the Court notes it has not imposed this restriction for any other non-party deposition. However, having reminded and even admonished the parties to this

---

[23] District of Kansas Deposition Guidelines 6(c), http://ksd.uscourts.gov/index.php/deposition-guidelines/.

[24] Fed. R. Civ. P. 26(c)(1).

[25] 2011 WL 13074295, at *1.

action to be attentive to this district's Deposition Guidelines, the Court directs Class Plaintiffs to fully consider whether the deposition might be more efficiently conducted and disputes could be avoided by providing copies of numerous or lengthy documents in advance.

### C. Costs

Express Scripts seeks to have Class Plaintiffs pay one-half of its reasonable costs for the deposition, asserting preparation will be a significant undertaking of time and effort. Class Plaintiffs oppose the request. The Court finds no basis for cost-shifting and denies the request.

**IT IS HEREBY ORDERED** that Non-Party Express Scripts Holding Company's Motion for Protective Order and to Modify Plaintiffs' Subpoena for 30(b)(6) Deposition (ECF No. 1136) is granted in part and denied it part. The motion is granted to the extent it requires Express Scripts to manually search files for feedback, complaints, or surveys regarding complaints as described in Topic Nos. 6 and 7; in Topic No. 5, the scope is limited to any country in which Express Scripts performed formulary management during the relevant time period; and the motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated this 9th day of November, 2018 in Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge