IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Non-Party OptumRx, Inc.'s Motion Under Fed. R. Civ. P. 45(d)(3) to Quash Class Plaintiffs' Deposition Subpoena, or in the Alternative, for a Protective Order Under Fed. R. Civ. P. 26(c)(1) (ECF No. 1137). OptumRx seeks (1) an order quashing Class Plaintiffs' Rule 45(d)(3) deposition subpoena or, in the alternative, (2) a protective order narrowing the proposed topics and extending the time for compliance, and (3) an award of costs and expenses. Class Plaintiffs oppose the motion. As set forth below, the Court will deny OptumRx's motion.

I. **Relevant Background**

The Court briefly summarizes the events leading to this motion.[1] Class Plaintiffs first provided Optum with proposed 30(b)(6) topics on August 17, 2018. The parties met and conferred on September 6, September 20, October 5, October 12, and October 15, and

---

[1] The Court also notes that Class Plaintiffs moved to compel Optum to comply with its records subpoena and Optum filed a motion to quash that subpoena. *See* ECF No. 198; ECF No. 1 in Case No. 18-mc-206-DDC-TJJ. The Court granted Plaintiffs' motion subject to certain limitations, and granted in part and denied in part Optum's motion. *See* ECF No. 645.

corresponded on various other dates. While they were able to resolve some of Optum's objections to the list of topics, others remain. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II.     Summary of the Parties' Arguments

Optum asserts eight of the topics Class Plaintiffs include in their 30(b)(6) deposition notice are overbroad, seek irrelevant information, are vague and ambiguous, or seek information Optum should not be required to provide because Class Plaintiffs should obtain the requested information from Mylan. In addition, Optum contends Class Plaintiffs are obligated by this court's Deposition Guidelines to provide advance copies of documents the witness may be asked to review. Optum also wants Class Plaintiffs to pay the costs of responding to the subpoena. Finally, Optum wants to exclude certain counsel from the deposition.

Class Plaintiffs contend their topics are clear, unambiguous, and narrowly tailored, and fall within topics the Court already has found relevant in this action. They further contend they are under no obligation to provide Optum with copies of documents they may use in the deposition, nor should they be required to pay any share of Optum's cost of compliance. Class Plaintiffs deny Optum will be prejudiced by counsel whose appearance Optum challenges.

## III.    Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[2]  Non-parties responding to Rule 45

---

[2] Fed. R. Civ. P. 45(d)(1).

subpoenas generally receive heightened protection from discovery abuses.[3]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[4] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[5]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[6] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any

---

[3] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[4] Fed. R. Civ. P. 45(d)(3)(A).

[5] Fed. R. Civ. P. 45(d)(3)(B).

[6] *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

party's claim or defense.[7] Information still "need not be admissible in evidence to be discoverable."[8] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[10] Relevancy determinations are generally made on a case-by-case basis.[11]

Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[12] The decision to enter a protective order is within the court's broad discretion.[13] Despite this broad discretion, "a protective order is only warranted when the movant

---

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] Fed. R. Civ. P. 26(c)(1).

[13] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir.1995); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[14] In addition, the party seeking a protective order bears the burden of establishing good cause.[15] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[16] If in its discretion the court determines a protective order is warranted, the court has substantial latitude to devise an appropriate order after fairly weighing the parties' competing needs and interests.[17]

## IV. Analysis

Optum argues that eight of the deposition topics are impermissibly overbroad and/or vague and ambiguous, seek irrelevant information, or are not properly posed to a non-party. Optum further argues that Class Plaintiffs must provide in advance documents they may use at the deposition; and that Class Plaintiffs should bear the costs of Optum's compliance. In addition, Optum seeks to exclude from the deposition counsel whose presence Optum claims would be prejudicial. The Court considers each in turn.

### A. Topics

#### 1. Topic Nos. 1 and 2

Optum objects to these topics as facially overbroad because they use the phrase "including, but not limited to" in requesting information related to Optum's negotiations with

---

[14] *Herrera v. Easygates, LLC*, No. 11–CV–2558–EFM–GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan.2003)).

[15] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[16] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[17] *Seattle Times Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

Mylan and other EAI producers. Optum also alleges the examples of the sort of information Class Plaintiffs seek are vague, and contends that because Class Plaintiffs have the benefit of discovery from Mylan (including Optum's contracts with Mylan), Class Plaintiffs should be able to identify more precisely the information they seek. In addition, Optum asserts that "suggestions," "proposals," "terms," "other financial incentives," and "any other product" are vague and ambiguous.

Class Plaintiffs disagree that their use of the phrase "including, but not limited to" caused the requests to be overbroad. Interestingly, both sides cite the same case to support their opposing arguments regarding this phrase. Optum refers to a passage in *Heartland Surgical Specialty Hospital v. Midwest Division, Inc.*,[18] in which the court found a notice would be impermissibly overbroad "if the notice list[ed] topics, but then indicate[d] that the listed topics are not exclusive."[19] Class Plaintiffs point to the court's analysis of a challenged topic that uses the phrase in its request, "followed by an extensive example list of the records and reports for which information is sought by Defendants."[20] In this instance, Class Plaintiffs' use of the phrase is much closer to the second reference: it is the example list that is non-exclusive, and not the topic list. The Court finds the phrase "including, but not limited to" in Topic Nos. 1 and 2 is not overbroad.

Neither does the Court find the words and phrases quoted above are vague and ambiguous, nor is the request for "any" or "all" documents facially overbroad because those

---

[18] Case No. 05-2164-MWL-DWB, 2007 WL 1054279 (D. Kan. April 9, 2007).

[19] *Id.* at *3.

[20] *Id.* at *4.

requests are otherwise limited. With respect to Optum's objection that the request for testimony on contract negotiations with producers of other EAI devices is overbroad, Class Plaintiffs state they have adopted the relevant group of contracts as Optum defined them. Optum does not dispute this position in its reply.

The Court denies the motion insofar as it seeks to quash or modify subpoena Topic Nos. 1 and 2.

### 2. Topic Nos. 3-5

Optum objects that each of these topics seeks irrelevant information. Specifically, Optum contends Topic Nos. 3-5, which address formulary coverage decisions, should be limited to information about EAI devices. Additionally, in Topic No. 5 Optum urges the Court to find the word "prices" (in the phrase "effect of EpiPen prices increases") vague because different prices exist at various levels of the distribution chain, and argues it is overbroad in seeking information for regions outside the United States because all named Plaintiffs are American citizens whose claims turn on federal or state statutes.

Class Plaintiffs explain they are unable to limit their inquiry to particular points in the distribution chain because they seek to learn whether a price increase at any point was relevant to Optum's consideration for formulary placement. And with respect to their request for formulary decisions outside the United States, Class Plaintiffs note that Optum's international decision-making may have had an effect on decisions implicating distribution in the United States.

As the Court noted in its order ruling on Class Plaintiffs' motion to compel related to their document subpoena to Optum, the legal standard for review of Optum's objections based on relevancy is necessarily informed by the allegations in Class Plaintiffs' amended complaint.

> Construing relevancy broadly, as the standard directs, the Court finds Plaintiffs' document requests clearly encompass matters that bear on their claims in this case.

7

Plaintiffs allege Defendants created and exploited an EpiPen monopoly by providing aggressive rebates and incentives to pharmacy benefits managers (PBM), including Optum, to exclude EpiPen competitors from drug formularies. Plaintiffs describe PBMs as the gatekeepers between drug and medical supply manufacturers on the one hand, and health insurers and patients on the other. Plaintiffs allege Mylan paid to keep other epinephrine auto-injector (EAI) competitors out, with the result being harm to the competitive process to the detriment of both competitors and consumers.[21]

Keeping in mind that relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case,"[22] and consistent with the Court's order regarding Class Plaintiffs' document subpoena to Optum, the Court finds that Topic Nos. 3-5 seek relevant information. Accordingly, the Court denies the motion insofar as it seeks to quash or modify subpoena Topic Nos. 3, 4, and 5.

### 3. Topic Nos. 6 and 7

For each of these topics, Optum objects to the phrase "any feedback" it received from pharmacies, physicians, or consumers from Mylan's switch to EpiPen 2-Paks and regarding the availability or unavailability of any non-EpiPen EAI device. Optum asserts the phrase is overbroad because it has contractual relationships with more than 67,000 pharmacies and has served millions of physicians and consumers during the years 2012 to 2017. In response, Class Plaintiffs contend that merely stating numbers does not substantiate a claim that investigating the requested information would be unreasonable. The Court agrees. Optum has made no showing that its manner of tracking complaints or other feedback is made more cumbersome or difficult

---

[21] ECF No. 645 at 6.

[22] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

because Class Plaintiffs have not narrowed the source of the feedback. Accordingly, the Court denies the motion insofar as it seeks to quash or modify Topic Nos. 6 and 7.

### 4. Topic No. 8

In Topic No. 8, Class Plaintiffs address Optum's "knowledge of any federal, state, or local investigation into Mylan's rebates or practices, including but not limited to Mylan's $465 million settlement with the Department of Justice for alleged violations of the False Claims Act." Optum contends there is no reason it should provide such testimony because Class Plaintiffs can and should obtain the information from Mylan.

Plaintiffs argue that Optum's obligation to provide the information they seek, which is limited to Optum's knowledge, is not obviated by the speculative claim that a party may have relevant information. As the Court wrote in its order ruling on Class Plaintiffs' motion to compel Optum's production of documents, "Optum has no way of knowing whether documents in different entities' possession are identical, nor can it know what documents other entities possess."[23] Moreover, Mylan would not be capable of telling Class Plaintiffs what knowledge Optum has. Accordingly, the Court denies the motion insofar as it seeks to quash Topic No. 8.

### B. Advance Copies of Documents

Optum seeks an order requiring Class Plaintiffs to produce in advance copies of documents it intends to use at the 30(b)(6) deposition. Optum argues that, as a non-party, it is at an unfair advantage because it does not have access to the documents that have been produced to the parties. In addition, Optum points to the provision in this district's Deposition Guidelines which states that "[i]f the witness is going to be asked to review numerous or lengthy documents,

---

[23] ECF No. 645 at 8.

copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the witness to read them prior to the deposition."[24]  What is markedly absent from the argument, however, is a claim that such order is necessary to protect a deponent from "annoyance, embarrassment, oppression, or undue burden or expense."[25]

Class Plaintiffs oppose the request, pointing out that this district's Deposition Guidelines are permissive and not mandatory. Class Plaintiffs cite to a case from this district that discusses the issue, *In re Urethane Antitrust Litigation*, Case No. 04-MD-1616, 2011 WL 13074295 (D. Kan. Dec. 22, 2011). In that case, four non-party witnesses were to be deposed by certain defendants. The witnesses argued that common courtesy required advance production of documents to be used at the deposition, and doing so would avoid needless waste of time during the deposition. Defendants did not expect to show the witnesses lengthy or numerous documents, and expressed concern that if they disclosed the documents in advance, the witnesses could strategize with counsel to frame their responses. Magistrate Judge O'Hara found the movants had not met their burden to show the need for the "unorthodox approach" of a protective order, and he denied the motion.[26]

The Court likewise finds that Optum has not met – or even attempted to meet – its burden to demonstrate entitlement to a protective order on one of the enumerated grounds of Rule 26. In terms of proportionality, the Court notes it has not imposed this restriction for any other non-

---

[24] District of Kansas Deposition Guidelines 6(c), http://ksd.uscourts.gov/index.php/deposition-guidelines/.

[25] Fed. R. Civ. P. 26(c)(1).

[26] 2011 WL 13074295, at *1.

party deposition. However, having reminded and even admonished the parties to this action to be attentive to this district's Deposition Guidelines, the Court directs Class Plaintiffs to fully consider whether the deposition might be more efficiently conducted and disputes could be avoided by providing copies of numerous or lengthy documents in advance.

### C. Presence of Counsel Representing Plaintiffs in this and ERISA actions

Optum expresses its deep concern that a number of the law firms representing the Class Plaintiffs in this action are also representing the plaintiffs in the Minnesota ERISA litigation.[27] Optum seeks an order (1) prohibiting any counsel who represents plaintiffs in both actions from attending Optum's deposition, and (2) requiring counsel participating in or sitting in on the Optum deposition in this case to refrain from sharing any Confidential or Highly Confidential Information developed in the deposition with counsel in the Minnesota ERISA litigation. The grounds for Optum's request is that counsel will learn Confidential or Highly Confidential information in the deposition and "would later use or disclose that information in the Minnesota

---

[27] Optum is one of the PBM party Defendants the Minnesota ERISA action. The presiding District Judge provided the following description of the case in his Memorandum and Order granting in part and denying in part Defendants' Motions to Dismiss:

> Plaintiffs allege that Defendants' negotiations with Mylan caused Mylan to raise the price of EpiPens, while Defendants pocketed millions of dollars in rebates and other payments. Because the price Mylan charges for EpiPens directly affects the amount a plan's beneficiaries pay for the EpiPens, Mylan's price increases raised Plaintiffs' out-of-pocket costs dramatically. (Id. ¶ 7.) Plaintiffs assert that Defendants breached their fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a), and engaged in fiduciary self-dealing in violation of ERISA § 406(b), 29 U.S.C. § 1106(b).

*In re: EpiPen ERISA Litigation*, Civ. No. 17-1884 (PAM/HB), Doc. 281 (D. Minn. Oct. 26, 2018).

litigation (even if unwittingly)"[28] to "people or entities in the Minnesota ERISA Litigation who are not authorized to access this information under the protective order."[29] Optum relies on two cases that discuss restrictions on access to trade secrets or other competitively sensitive information whose disclosure could cause competitive harm.[30] Both cases articulate the burden on the party seeking protection. "The party seeking protection bears the burden of demonstrating that good cause exists for restricting the disclosure of the information at issue. Good cause is established by showing that the information is a trade secret or contains other confidential information and that 'specific prejudice or harm will result if no protective order is granted.'"[31]

Class Plaintiffs object to what they describe as Optum's attempt to restrict the practice of law "preemptively, based solely on speculation and without identifying any potential competitive harm."[32] The Court finds that Optum has not shown good cause for obtaining the protection it seeks. At this point, Optum cannot point to a trade secret or other confidential information it will disclose during the deposition, nor does it allege any specific prejudice or harm it will suffer if the Court enters no restriction. Moreover, the Court presumes adherence to applicable ethical rules by all counsel. As such, the Court denies the motion insofar as it seeks to preclude the attendance at the deposition(s) by counsel who represent plaintiffs in both this action and in the

---

[28] ECF No. 1228 at 2.

[29] ECF No. 1138 at 18.

[30] *Baldi Bros., Inc. v. United States*, No. 15-300, 2016 WL 5462448 (Fed. Cl. Sept. 27, 2016); *Digital Equip. Corp. v. Micro Tech. Inc.*, 142 F.R.D. 488 (D. Colo. 1992).

[31] *Baldi*, 2016 WL at *2; *Digital Equip.*, 142 F.R.D. at 491).

[32] ECF No. 1207 at 5.

Minnesota ERISA action.

      **D.**      **Costs**

Optum seeks to have Class Plaintiffs pay its reasonable costs for the deposition, asserting preparation will be a significant undertaking of time and effort. Class Plaintiffs oppose the request. The Court finds no basis for cost-shifting and denies the request.

      **E.**      **Deposition deadline and designee**

Optum requests, and Class Plaintiffs do not oppose, extending the deadline for Optum's deposition until November 30, 2018. The Court grants the request. In addition, the Court orders Optum to identify, within three business days of the date of this order, a designee or designees who will testify regarding the topics noticed in the deposition subpoena.

**IT IS HEREBY ORDERED** that Non-Party OptumRx, Inc.'s Motion Under Fed. R. Civ. P. 45(d)(3) to Quash Class Plaintiffs' Deposition Subpoena, or in the Alternative, for a Protective Order Under Fed. R. Civ. P. 26(c)(1) (ECF No. 1137) is denied.

**IT IS FURTHER ORDERED** that Optum shall identify, within three business days of the date of this order, a designee or designees who will testify regarding the topics noticed in the deposition subpoena.

**IT IS FURTHER ORDERED** that the deadline for the deposition is extended until November 30, 2018.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2018 in Kansas City, Kansas.

                                                                     Teresa J. James
                                                                       U. S. Magistrate Judge