IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to All Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Non-Party Prime Therapeutics LLC's Motion for Protective Order and to Modify or Quash Plaintiffs' Subpoena for a Rule 30(b)(6) Deposition (ECF No. 1139). Prime Therapeutics LLC primarily seeks an order quashing or modifying Class Plaintiffs' Rule 45(d)(3) deposition subpoena, along with an award of costs and expenses. Class Plaintiffs oppose the motion. As set forth below, the Court will deny Prime Therapeutic's motion.

### I.   Relevant Background

The Court briefly summarizes the events leading to this motion.[1] Class Plaintiffs first provided Prime with proposed 30(b)(6) topics on August 17, 2018. The parties met and conferred on August 31, September 19, and October 15, and corresponded on various other dates. While they were able to resolve some of Prime's objections to the list of topics, others

---

[1] The Court also notes that Class Plaintiffs moved to compel Prime Therapeutics to comply with its records subpoena. *See* ECF No. 926. The Court denied Class Plaintiffs' motion. *See* ECF No. 1102.

remain. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

**II.    Summary of the Parties' Arguments**

Prime contends Class Plaintiffs are obligated by this court's Deposition Guidelines to provide advance copies of documents the witness may be asked to review, argues certain of the topics Class Plaintiffs include in their 30(b)(6) deposition notice are overbroad and vague and must be narrowed or clarified, and seek to quash in toto two topics. In addition, Prime wants a delay in the deposition date and asks the Court to order Class Plaintiffs to pay its costs of responding to the subpoena.

Class Plaintiffs contend their topics are clear, unambiguous, and narrowly tailored, and fall within topics the Court already has found relevant in this action. Accordingly, Class Plaintiffs oppose narrowing or quashing their subpoena. They further contend they are under no obligation to provide Prime with copies of documents they may use in the deposition, nor should they be required to pay any share of Prime's cost of compliance. Class Plaintiffs have agreed an extension of the deposition deadline is necessary, although not to the length of the extension Prime requests.

**III.    Legal Standard**

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[2] Non-parties responding to Rule 45

---

[2] Fed. R. Civ. P. 45(d)(1).

subpoenas generally receive heightened protection from discovery abuses.[3]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[4] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[5]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[6] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any

---

[3] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[4] Fed. R. Civ. P. 45(d)(3)(A).

[5] Fed. R. Civ. P. 45(d)(3)(B).

[6] *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

party's claim or defense.[7] Information still "need not be admissible in evidence to be discoverable."[8] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[10] Relevancy determinations are generally made on a case-by-case basis.[11]

Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[12] The decision to enter a protective order is within the court's broad discretion.[13] Despite this broad discretion, "a protective order is only warranted when the movant

---

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] Fed. R. Civ. P. 26(c)(1).

[13] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir.1995); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[14] In addition, the party seeking a protective order bears the burden of establishing good cause.[15] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[16] If in its discretion the court determines a protective order is warranted, the court has substantial latitude to devise an appropriate order after fairly weighing the parties' competing needs and interests.[17]

**IV.     Analysis**

Prime argues that many of the deposition topics must be narrowed to preclude requests that are overbroad and/or unduly burdensome, two topics should be quashed, and it must be allowed more time to prepare its witness. Prime further argues that Class Plaintiffs must provide in advance documents they may use at the deposition and should bear the costs of Prime's compliance. The Court considers each in turn.

    **A.     Topics**

        **1.     Whether all topics are overbroad and unduly burdensome**

Prime contends all topics are overbroad because they are not restricted to a specific, reasonable time period. Prime argues the topics should be limited to 2013-2017 because: (1) in response to its document subpoena, Class Plaintiffs agreed that Prime could produce emails from

---

[14] *Herrera v. Easygates, LLC*, No. 11–CV–2558–EFM–GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan.2003)).

[15] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[16] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[17] *Seattle Times Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

2012 to the present, and (2) Class Plaintiffs limited the time period to 2013-2017 in a deposition subpoena to another non-party PBM. Class Plaintiffs are willing to limit the relevant time period covered by the notice to January 1, 2009 through December 31, 2017.

The Court agrees that a time frame is necessary, but finds that Prime has failed to provide a compelling basis for the Court to adopt its proposal. In ruling on a motion to compel regarding the same document request Class Plaintiffs served on Prime, the Court found reasonable the period January 1, 2007 to the present "as it is coextensive with when Mylan acquired and continues to hold the rights to EpiPen."[18] Prime offers no reason why the Court should view the deposition subpoena differently. Accordingly, the subpoena applies to the time period January 1, 2009 through December 31, 2017.

### 2. Formulary coverage decisions

Prime also objects to the inclusion of anything beyond its standard, national formularies in providing testimony on Topic Nos. 3-5 regarding its "formulary coverage decisions." Prime asserts it would be impossible for its representative to be prepared to address the formularies its clients have chosen to adopt during the relevant time period. However, Prime provides no affidavit or other evidentiary support for its assertion.

Prime has not provided sufficient facts to support a finding that it would suffer undue burden by complying with the subpoena as written for the topics that include "formulary coverage decisions." Not only is the support for what burden it would suffer insufficient, but neither does the description of its formulary development explain why it cannot offer testimony on the formulary coverage decision issues sought in those topics. Class Plaintiffs ask for the

---

[18] ECF No. 645 at 12.

internal deliberative process Prime employs (Topic No. 3), the factors Prime considers (Topic No.4), and Prime's own formulary coverage decisions (Topic No. 5). While the Court understands that Prime's clients can adapt a formulary to fit their own needs, Prime has offered no evidence to distinguish between the internal deliberative process it uses for its standard, national formulary and custom formularies. Accordingly, the Court denies the motion insofar as it seeks to modify Topic Nos. 3-5 regarding Prime's formulary coverage decisions relating to EAI devices.

### 3. Non-EpiPen device producers and drugs

In Topic Nos. 2-4, Class Plaintiffs seek information about contract negotiations with EAI device producers other than EpiPen (Topic No. 2), and about Prime's internal deliberative process and factors it considers when making formulary coverage decisions (Topic Nos. 3 and 4). Prime submits those topics encompass prescription drugs not at issue in this action, and in a boilerplate objection stated in conclusory fashion without explanation, contends its negotiations and services related to drugs other than EAI devices should be excluded from the scope of the subpoena as irrelevant.

Class Plaintiffs disagree and point to their months of negotiations with Prime over the confines and parameters of Prime's production pursuant to Class Plaintiffs' document subpoena. As Class Plaintiffs point out, Prime knows what documents it agreed to and did produce pursuant to the subpoena as relevant to contract negotiations. Regarding whether other drugs are within the scope of Topics 3 and 4 in a way that makes the topics overbroad, the Court finds Prime has failed to explain if and how its deliberative process or factors it considers when making formulary coverage decisions differs depending on what drug it is considering. Accordingly, the Court denies the motion insofar as it seeks to preclude other prescription drugs from the scope of

7

Topics 2-4.

####	4.	Including, but not limited to

Prime argues that Class Plaintiffs' use of the phrase "including, but not limited to" categorically makes a topic overbroad. Again, Prime makes a boilerplate objection by positing a conclusory statement without further explanation. Class Plaintiffs disagree, citing *Heartland Surgical Specialty Hospital v. Midwest Division, Inc.*,[19] in which the court found a notice would be impermissibly overbroad "if the notice list[ed] topics, but then indicate[d] that the listed topics are not exclusive."[20] Class Plaintiffs point to the court's analysis of a challenged topic that uses the phrase in its request, "followed by an extensive example list of the records and reports for which information is sought by Defendants."[21] In this instance, Class Plaintiffs' use of the phrase is much closer to the second reference: it is the example list that is non-exclusive, and not the topic list. The Court finds the phrase "including, but not limited to" as used in the subpoena is not overbroad.

####	5.	Whether certain words and phrases are vague and ambiguous

Prime challenges the following words and phrases as ambiguous because they are not defined or explained: "financial incentives," "suggestions," "formulary coverage decisions," and "feedback." The Court rejects Prime's boilerplate objection; the words and phrases are to be given their ordinary meaning. And inexplicably, Prime claims not to know if "you" refers to Prime Therapeutics, LLC, the entity to which the subpoena is addressed. Class Plaintiffs

---

[19] Case No. 05-2164-MWL-DWB, 2007 WL 1054279 (D. Kan. April 9, 2007).

[20] *Id.* at *3.

[21] *Id.* at *4.

confirm that it does.

Prime urges the Court to strike Topic 7 entirely as vague and ambiguous because it does not identify what "surveys," "feedback," or "complaints" or which "physicians" and "consumers" are intended to be within the topic's scope. The Court rejects the argument. The words and phrases are to be given their ordinary meaning, and the identity of each is within Prime's knowledge. These words and phrases are not ambiguous.

### 6. Topic No. 4

Prime reads Topic No. 4 as requiring it to speculate what physicians and consumers are willing and not willing to do. But as Class Plaintiffs explain, the topic seeks no such speculation. Instead, it asks about the factors Prime considers when making formulary coverage decisions. Prime does not specify what relief it seeks, and the Court declines to grant any.

### 7. Topic No. 8

In Topic No. 8, Class Plaintiffs address Prime's "knowledge of any federal, state, or local investigation into Mylan's rebates or practices, including but not limited to Mylan's $465 million settlement with the Department of Justice for alleged violations of the False Claims Act." Prime contends the topic is overbroad and that there is no reason it should provide such testimony because Class Plaintiffs can and should obtain the information from Mylan.

Class Plaintiffs assert the topic is to be narrowly construed, and that it clearly addresses the central issue of Mylan's alleged improper use of rebates. Class Plaintiffs also argue that Prime's obligation to provide the information they seek, which is limited to Prime's knowledge, is not obviated by the speculative claim that a party may have relevant information. As the Court wrote in its order ruling on Class Plaintiffs' motion to compel another non-party PBM's production of documents, "[the PBM] has no way of knowing whether documents in different

entities' possession are identical, nor can it know what documents other entities possess."[22] Moreover, Mylan would not be capable of telling Class Plaintiffs what knowledge Prime has. Accordingly, the Court denies the motion insofar as it seeks to quash Topic No. 8.

### B.  Advance Copies of Documents

Prime seeks an order requiring Class Plaintiffs to produce in advance copies of documents it intends to use at the 30(b)(6) deposition. Prime argues that, as a non-party, it is at an unfair advantage because it does not have access to the documents that have been produced to the parties. In addition, Prime points to the provision in this district's Deposition Guidelines which states that "[i]f the witness is going to be asked to review numerous or lengthy documents, copies of the documents should be sent to the witness sufficiently in advance of the deposition to enable the witness to read them prior to the deposition."[23] What is markedly absent from the argument, however, is a showing that such order is necessary to protect a deponent from "annoyance, embarrassment, oppression, or undue burden or expense."[24]

Class Plaintiffs oppose the request, pointing out that this district's Deposition Guidelines are permissive and not mandatory. Class Plaintiffs cite to a case from this district that discusses the issue, *In re Urethane Antitrust Litigation*, Case No. 04-MD-1616, 2011 WL 13074295 (D. Kan. Dec. 22, 2011). In that case, four non-party witnesses were to be deposed by certain defendants. The witnesses argued that common courtesy required advance production of

---

[22] ECF No. 645 at 8.

[23] District of Kansas Deposition Guidelines 6(c), http://ksd.uscourts.gov/index.php/deposition-guidelines/.

[24] Fed. R. Civ. P. 26(c)(1).

documents to be used at the deposition, and doing so would avoid needless waste of time during the deposition. Defendants did not expect to show the witnesses lengthy or numerous documents, and expressed concern that if they disclosed the documents in advance, the witnesses could strategize with counsel to frame their responses. Magistrate Judge O'Hara found the movants had not met their burden to show the need for the "unorthodox approach" of a protective order, and he denied the motion.[25]

The Court likewise finds that Prime has not met its burden to demonstrate entitlement to a protective order on one of the enumerated grounds of Rule 26. In terms of proportionality, the Court notes it has not imposed this restriction for any other non-party deposition. However, having reminded and even admonished the parties to this action to be attentive to this district's Deposition Guidelines, the Court directs Class Plaintiffs to fully consider whether the deposition might be more efficiently conducted and disputes could be avoided by providing copies of numerous or lengthy documents in advance.

### C.      Costs

Optum seeks to have Class Plaintiffs pay its reasonable costs for the deposition, asserting preparation will be a significant undertaking of time and effort. Class Plaintiffs oppose the request. The Court finds no basis for cost-shifting and denies the request.

### D.      Deposition deadline

Prime requests an extension of the deposition deadline until 45 days after the date of this order. The Court has stayed the deposition deadline,[26] and now extends it until November 30,

---

[25] 2011 WL 13074295, at *1.

[26] *See* ECF No. 1269.

2018.

**IT IS HEREBY ORDERED** Non-Party Prime Therapeutics LLC's Motion for Protective Order and to Modify or Quash Plaintiffs' Subpoena for a Rule 30(b)(6) Deposition (ECF No. 1139) is denied.

**IT IS FURTHER ORDERED** that the deadline for the deposition is extended until November 30, 2018.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2018 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge