**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

IN RE:  EpiPen (Epinephrine
        Injection, USP) Marketing,
        Sales Practices and Antitrust
        Litigation

MDL No:  2785

Case No. 17-md-2785-DDC-TJJ

(This Document Applies to All Cases)

## MEMORANDUM AND ORDER

**I.  Background**

This court's Deposition Guidelines couldn't be clearer. They explicitly mandate that counsel cooperate with one another. They also mandate that counsel treat deponents and opposing counsel courteously. *See* Deposition Guidelines[1] (§ 1, "Cooperation"). Likewise, the Guidelines forbid long-winded objections that suggest answers or otherwise coach a witness. *Id.* at § 5(a). These Guidelines aren't aspirational, adopted to inspire the bar to aim higher and do better—though one hopes they will. To the contrary, the Guidelines augment our local rules and provide ground rules for an integral piece of the modern federal court lawsuit.

Recently, the court learned that some counsel in this MDL proceeding have ignored the Guidelines. During one of the periodic Status Conferences, counsel provided several excerpts taken from an advance, rough draft of the transcript for defendant Heather Bresch's deposition. Ms. Bresch is Mylan's Chief Executive Officer. This sneak-peek wasn't flattering. Indeed, the

---

[1] Available at http://ksd.uscourts.gov/index.php/deposition-guidelines/.

conduct in the transcript excerpts concerned the court enough that it directed counsel to submit a full and final transcript of Ms. Bresch's deposition when available.

Counsel complied, submitting a soft copy of Ms. Bresch's transcript with a letter signed by counsel for the Mylan line of defendants, the Pfizer defendants, and the putative Class Plaintiffs. The court has read the entire transcript and it confirms the court's preliminary concerns. Here is an example why:

> 3 Q. **[CLASS COUNSEL]**[2] You didn't even register for
> 4 classes in the summer or fall of 1998, did
> 5 you?
>
> 6 **[MYLAN'S COUNSEL]**: [W]e're not
> 7 going to turn this into an examination
> 8 about the true [*sic*] or falsity of the
> 9 underlying West Virginia University
> 10 investigation.
> 11      You've asked her the question
> 12 whether she believes the report or
> 13 not, she gave you her response, and
> 14 I'm going to give you a short leash
> 15 here because we're not going to making
> 16 this sideshow about her West Virginia
> 17 executive MBA.
>
> 18 **QUESTIONS BY [CLASS COUNSEL]**:
> 19 **Q.** Go ahead, ma'am. He's just --
>
> 20 **[MYLAN'S COUNSEL]**: No, what he's doing
> 21 is he's making a very legit --
>
> 22 **[CLASS COUNSEL]**: Do not interrupt
> 23 me . . . When I am talking, do not
> 24 interrupt me. I did not interrupt
> 25 you. I expect the same deference from

---

[2] The court applies the same forgiving method that Judge O'Hara used in *Green v. Harbor Freight Tools USA, Inc.*, No. 09-2380-JAR, 2010 WL 11435113, *2 n.11 (D. Kan. June 18, 2010). Namely, it "mercifully" will allow counsel to "go nameless (at least in this order)." *Id.* For clarity's sake, the excerpts quoted in this Memorandum and Order refer to counsel for the putative class of plaintiffs in the consumer case as "CLASS COUNSEL." Likewise, the references to "MYLAN'S COUNSEL" refer to one of the attorneys defending Mylan in that putative class case.

1 you.

2 **[MYLAN'S COUNSEL]**: Two things.

3 **[CLASS COUNSEL]**: Now, in that
4 regard, ma'am --

5 **[MYLAN'S COUNSEL]**: Hold on, let me
6 respond.

7 **[CLASS COUNSEL]**: -- if he instructs
8 you not to answer, obviously you honor
9 his instructions. Otherwise, if you
10 can't keep track of my questions,
11 please ask me to repeat it.
12 If he's just trying to talk, it
13 doesn't mean anything to me, and I'll
14 just look to you to give answers to
15 the questions, please.
16 So can you answer my question?

17 **[MYLAN'S COUNSEL]**: Let me give a
18 response before you answer the
19 question. So, first of all . . .
20 please don't make
21 nonverbal cues to make fun of the way
22 that I'm objecting in the deposition.
23 I find that to be inappropriate under
24 this District's deposition guidelines.

25 **[CLASS COUNSEL]**: I did not do any
1 such thing.

2 **[MYLAN'S COUNSEL]**: Well, you actually
3 did. You put your hand up in the air
4 and made a symbol as if I was -- as I
5 was talking and you didn't appreciate
6 it.
7 Second, please don't point at
8 me with your finger and tell me what
9 to do. I'm defending the witness --

10 **[CLASS COUNSEL]**: I did not.

11 **[MYLAN'S COUNSEL]**: You did point at
12 me. Maybe we should have had the
13 third camera. It would have shown you
14 pointing at me.
15 Anyway, let's get back to this.

> 16 Here's the bottom line, this is a case
> 17 about the EpiPen. It is not a case
> 18 about her West Virginia eMBA. I told
> 19 you, I'm going to give you a short
> 20 leash --
>
> 21 **[CLASS COUNSEL]**: If you want to
> 22 make speeches for your client, let's
> 23 go off the record and you can go tell
> 24 her everything you want to tell her
> 25 and try to make yourself feel
> 1 valuable.
>
> 2 **[MYLAN'S COUNSEL]**: Right. So I can't
> 3 interrupt you but you can interrupt
> 4 me?
>
> 5 **[CLASS COUNSEL]**: Yeah.
>
> 6 **[MYLAN'S COUNSEL]**: Is that the way
> 7 this is going to work?
>
> 8 **[CLASS COUNSEL]**: I'm not taking
> 9 this time off my fours [*sic*] hours.
>
> 10 **[MYLAN'S COUNSEL]**: Great, we'll see
> 11 about that. I'm giving you a short
> 12 leash. It goes to credibility.
> 13 You've asked your questions. Go
> 14 ahead, answer this question again.
> 15 We're not spending 20 minutes on this
> 16 issue.

Heather Bresch Dep. at 29–32 (deposition taken Oct. 9, 2018).

This back-and-forth ended, but only when Sanofi's counsel interjected and redirected the combatants.

> 17 **[SANOFI'S COUNSEL]**: I just want to
> 18 make a very brief record that the
> 19 Kansas rules that you've just cited,
> 20 they are very clear, we're supposed to
> 21 be objecting to the form and nothing
> 22 else. Let's move along.
>
> 23 **[MYLAN'S COUNSEL]**: Well, that's
> 24 actually not true. If it's
> 25 irrelevant, I have a right to object

4

> 1 to that objection {sic}. If it's
> 2 harassing the witness, I have a right
> 3 to make that objection. I agree,
> 4 let's move on.
> 5 You probably should repeat the
> 6 question.

*Id.* at 32–33. Notably, Sanofi's interjection halted counsel's mindless bickering. *See Green*, 2010 WL 11435113, at *2 ("[C]ontrary to a deliberate rational, discussion about discovery matters, counsel instead simply bickered like children"). But more substantively, it manifested a general understanding among all counsel that the court's Deposition Guidelines control this proceeding's depositions.

The court can draw two conclusions from this deposition excerpt and, more broadly, from the first half of Ms. Bresch's deposition. First, counsel routinely violated Section 1 of the Deposition Guidelines. Indeed, Judge O'Hara's conclusion in *Green* applies equally here. "The transcript . . . does not reflect favorably on counsel for either side. Both attorneys . . . clearly violated the District of Kansas Deposition Guidelines." *Id.* Second, counsel's nonconforming behavior wasn't nonconforming because they didn't know any better. More than once, counsel referred to the Deposition Guidelines. *E.g.*, Bresch Depo. at 30 (line 24).

While counsel's disregard for the courtesy plank in Section 1 of the Deposition Guidelines is bad enough, the court finds other aspects of Ms. Bresch's transcript more troubling yet. Many times, Mylan's counsel ignored the Guidelines's provision forbidding verbose objections designed to coach the witness. Here's an example:

> 9 **Q. [BY CLASS COUNSEL]**: Ma'am, I'm just reading what
> 10 y'all filed with the government. Y'all filed
> 11 with the government a summary compensation
> 12 table that the law requires you to file,
> 13 which supposedly, according to y'all, sets
> 14 forth the cash and noncash compensation paid
> 15 to or earned by the nonexempt officers.

<sub>16</sub> Didn't y'all file this?

<sub>17</sub> **[MYLAN'S COUNSEL]**: So that's a speech,
<sub>18</sub> not a question.  But I'll just make my
<sub>19</sub> objection that you're actually not
<sub>20</sub> reading the whole table because the
<sub>21</sub> whole table has about five or six
<sub>22</sub> footnotes below it that you've
<sub>23</sub> ignored.
<sub>24</sub> You can answer it, if you can,
<sub>25</sub> Ms. Bresch.

Bresch Dep. at 52.  The witness's answer began where her counsel's suggestive objection had ended, *i.e.*, "A:  Yeah, what I was going to say is that the whole table does refer to a lot of clarifications about what the numbers represent." *Id.* at 53.

The court wouldn't tolerate a speaking objection like this one during a trial.  And the Federal Rules of Civil Procedure make it equally impermissible during a deposition.  *See AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2016 WL 141629, at *3 (D. Kan. Jan. 12, 2016) (quoting Rule 30(c)(2)'s requirement that an "objection must be stated concisely in a nonargumentative and nonsuggestive manner"); *Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012) ("Instructions to a witness that they may answer a question 'if they know' or 'if they understand the question' are raw, unmitigated coaching, and are *never* appropriate." (emphasis in original)).  Our Deposition Guidelines sharpen the point.  Section 5(a) of the Guidelines provides:

> (a) Objections.  Objections shall be concise and shall not suggest answers to or otherwise coach the deponent. Argumentative interruptions will not be permitted. The only objections that should be asserted are those involving privilege or work product protection or some matter that maybe remedied if presented at the time, such as an objection to the form of the question or the responsiveness of the answer.  Other objections shall be avoided unless the deposition is being taken for the express purpose of preserving testimony.

*Id*.

## II. What to do?

Now that it has notice of counsel's departure from the Federal Rules and the Deposition Guidelines, the question becomes, "What should the court do about it?" Looking the other way isn't an option. Long ago, our court established its commitment to enforce the Guidelines, imposing significant sanctions against those who violate them. For example, in *Ash Grove Cement Co. v. Wausau Insurance Co.*, Judge Rushfelt sanctioned defense counsel $500 for repeatedly violating the Guidelines. No. 05-2339-JWL-GLR, 2007 WL 689576, at *6 (D. Kan. Mar. 1, 2007). More recently, Judge Gale imposed substantive sanctions in *AKH Company, Inc.* In that case, the court permitted defendant to redepose two of plaintiff's witnesses after plaintiff's counsel had impeded their depositions with nonconforming conduct. Judge Gale also required the violating attorney—plaintiff's counsel—to reimburse defendant one-half the court reporters' cost for the two depositions and pay defendant one-half its attorney's fees incurred during the depositions. And Judge Gale awarded prospective relief: He required plaintiff's local counsel to attend all future depositions where the offending attorney—a lawyer admitted pro hac vice—planned to participate. 2016 WL 141629 at *4.

But to be fair, the court has imposed sanctions under the Guidelines only when asked to do so by one of the parties. And no one has filed a motion here. Indeed, most of the parties have asked the court to do nothing. When they submitted Ms. Bresch's deposition transcript, counsel provided a letter signed by all counsel except those representing Sanofi. It emphasizes—at some length—that no one is asking for sanctions.

> After Your Honors' comments at the status conference, counsel in the class cases conferred extensively regarding the Bresch deposition, certain other discovery matters, and how best to respond to the Court's request. As a result of those discussions, we believe it is important to provide the transcript requested by the Court in a

7

> joint submission, made in the spirit of working cooperatively and collaboratively and in accordance with the practice guidelines of this District. We take to heart the Court's directive for the parties to resolve disputes where possible and to act with courtesy and professionalism at all times.
>
> As the Court appreciates from the monthly status conferences and the docket, this is an important case to all involved. The parties and attorneys have devoted significant resources and efforts to meet the Court's Scheduling Order, to conduct the necessary discovery and satisfy their discovery obligations, and to abide by the applicable Rules and the Court's guidelines. There have been nearly 75 depositions in this case, and the parties have been civil and professional in their dealings with one another across matters, deponents, and cases. We are confident that will continue.
>
> The Parties' discussions after the status conference are reflective of these efforts. We wish to make clear to the Court that the parties have agreed that no party will be seeking any relief relating to Ms. Bresch's deposition. Notably, there were nine attorneys with nearly 200 years of attorney experience at the deposition, with others following on live stream. The deposition concluded within the allotted time, and no one at any time during the deposition suggested calling the Court regarding any conduct or issues. At the end of the deposition, counsel were cordial with each other and all shook hands. Going forward, the parties are committed to continued adherence to the applicable rules and guidelines, and will redouble their efforts in that regard.
>
> The discussions resulting from the Court's comments at the last status conference also spurred the Parties in the class cases to explore other discovery disputes to see if we could resolve those disputes in a cooperative fashion. As a result, Class Plaintiffs and Mylan have resolved their differences on two issues: Mylan and Pfizer will withdraw their motion to compel further discovery from named plaintiff Local 282 (ECF No. 976), and Class Plaintiffs will withdraw their motion for relief related to certain third-party document productions (ECF No. 1082), in exchange for various commitments from both sides.

Letter from Counsel dated October 23, 2018.

Reluctantly, the court has decided to forego a sanctions order but not because the parties have asked for that result. Instead, the court will forego a sanctions order because the letter from counsel reports that counsel, as a group, have mended their ways and redoubled their efforts,

8

going forward, to resolve discovery problems peaceably. Still, the court has decided to issue this Order in the hope that it will reinforce the resolve of all participants in this MDL.

The court is serious about the principles embedded in the Deposition Guidelines, and it expects counsel to adhere to them assiduously in every case. Counsel's letter to the court identified the very reason why: "[T]his is an important case to all involved." The important rights at stake here deserve procedures that are rule-based and capable of promoting evidence-based factfinding. This case will not be controlled by the lawyer who blusters the loudest or longest.

One final thought is in order. The court is not naïve. High-stakes cases pitting sophisticated lawyers against one another may produce an occasional dust-up. But any deviations should be the rare exception, not the rule. The second half of Ms. Bresch's deposition proves that the court's expectations aren't unrealistic ones. In that portion of the deposition, the transcript shows general compliance with the Federal Rules and the court's Deposition Guidelines. Time after time, counsel preserved objections appropriately. *See*, *e.g.*, Heather Bresch Dep. at 241:4–5 ("Objection. Foundation."), 242:12–13 ("Objection. Form. Compound."), 249:17 ("Objection. Form."), 250:14, 251:9–10, 254:8, 255:19, 257:9, & 258:24–25. And when a lawyer arguably deviated from the rules or the Guidelines, counsel resolved their differences quickly and courteously. *See id.* at 284–85.

Hoping to reinforce their resolve, the court orders all counsel who participate in depositions to read—or reread—the Deposition Guidelines. Also, the court orders counsel to follow them.

**IT IS SO ORDERED.**

**Dated this 14th day of December, 2018, at Kansas City, Kansas.**

               **s/ Daniel D. Crabtree**
               **Daniel D. Crabtree**
               **United States District Court**