# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

IN RE: EpiPen (Epinephrine
       Injection, USP) Marketing,
       Sales Practices and Antitrust
       Litigation

MDL No: 2785

Case No. 17-md-2785-DDC-TJJ

**(This Document Applies to the *Sanofi* case)**

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Sanofi-Aventis U.S. LLC's ("Sanofi") Motion for a Suggestion of Remand Pursuant to Rule 10.1(b) of Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407(a). Doc. 1248. Defendants Mylan Inc. and Mylan Specialty L.P. (collectively, "Mylan") oppose Sanofi's request for a suggestion of remand. Doc. 1322. After considering the parties' competing arguments, the court denies Sanofi's Motion for a Suggestion of Remand. It does so, of course, without prejudice to a refiled motion at a later stage in the MDL proceeding. The court explains how it reaches this decision, below.

    **I.**    **Factual Background**

On August 3, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") transferred four lawsuits to our court for coordinated and consolidated proceedings. *See In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 268 F. Supp. 3d 1356 (J.P.M.L. 2017); *see also* Doc. 1-1 (Schedule A).[1] The JPML determined that the lawsuits

---

[1]     Schedule A lists five lawsuits. One of the five already was pending in Kansas. *In re: EpiPen Auto-Injector Litig.*, No. 16-2711. Since that case already was pending here, the JPML did not need to

"involve common questions of fact" and that each action had "significant factual overlap with the other actions." *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 268 F. Supp. 3d at 1359. The JPML thus concluded that "centralization in the District of Kansas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" by "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings, including with respect to class certification; and conserv[ing] the resources of the parties, their counsel, and the judiciary." *Id.* And, under 28 U.S.C. § 1407, the JPML transferred the actions to the District of Kansas "for coordinated and consolidated pretrial proceedings." *Id.* at 1360; *see also* 28 U.S.C. § 1407 ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings . . . by the judicial panel on multidistrict litigation . . . .").

Individual consumers or third-party payors filed all but one of the lawsuits in this MDL. Those consumers or third-party payors allege they purchased EpiPens for use by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For convenience, the MDL's participants have called those actions "the consumer class cases," a convention the court uses in this Order. Among other things, the consumer class cases assert that defendants—sellers and manufacturers of the EpiPen—violated federal and state antitrust laws, the federal RICO Act, and various state consumer protection laws. Plaintiffs in the consumer class cases also seek certification of multiple classes.

The other case in this MDL differs from the consumer class cases. It is *Sanofi-Aventis U.S. LLC v. Mylan Inc. et al.*, No. 17-2452 ("the *Sanofi* case"). Sanofi filed this lawsuit in the

---

transfer that action for the MDL proceeding. Also, after the JPML's Transfer Order, the JPML transferred two more cases for consolidation with the MDL. *See* Docs. 5, 9.

District of New Jersey on April 24, 2017. Sanofi is a pharmaceutical company who says it competes with Mylan. In its case, Sanofi alleges that Mylan engaged in a variety of anticompetitive conduct designed to prevent Auvi-Q®—Sanofi's product that competed with the EpiPen—from gaining access to the epinephrine autoinjector market, and designed to prevent consumers from acquiring the Auvi-Q®. Sanofi asserts three Sherman Antitrust Act Section 2 claims against Mylan. These claims assert: (1) exclusive dealing; (2) deceptive conduct to further monopolization; and (3) monopolization. Complaint at 62–66, *Sanofi-Aventis US, LLC v. Mylan, Inc.*, No. 17-2452, (D. Kan. Apr. 24, 2017), ECF No. 1. Sanofi brings this action only for itself, and not on behalf of any other plaintiffs or putative class members. So, Sanofi's Complaint neither asserts class action allegations nor seeks certification of a class.

On September 14, 2017, the court determined that the differences between the consumer class cases and the *Sanofi* case warranted separate litigation tracks. Doc. 42 at 3. Thus, the court established two separate tracks for this MDL—*i.e.*, the consumer class cases and, distinct from them, the *Sanofi* case. *Id.* at 3, 5. Indeed, the JPML's Transfer Order envisioned that the court might use this approach:

> To the extent *Sanofi* presents unique factual and legal issues, the transferee judge has the discretion to address those issues through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice.

*See In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 268 F. Supp. 3d at 1359 (citing *In re: McCormick & Co., Pepper Prods. Mktg. & Sales Practices Litig.*, 148 F. Supp. 3d 1364, 1366 (J.P.M.L. 2015)). Also, the JPML recognized, the court "may recommend Section 1407 remand of *Sanofi* in advance of other actions *if he deems it appropriate*." *Id.* (emphasis added).

3

On October 19, 2017, the court entered Scheduling Order No. 2. Doc. 61. This Scheduling Order applies to both litigation tracks, and it established deadlines for coordinated fact discovery. Also, the Scheduling Order sets deadlines for non-coordinated proceedings in both the *Sanofi* case and the consumer class cases. Among other things, the Scheduling Order established an October 31, 2018, deadline for completing coordinated fact discovery and a November 30, 2018, deadline for filing a motion to remand the *Sanofi* case. *Id.* at 2. After Sanofi asked the court to accelerate the briefing schedule for the *Sanofi* remand motion, the court accelerated the deadline for a remand motion to November 1, 2018. *See* Doc. 1019 (Scheduling Order No. 3).

The parties completed coordinated fact discovery by the October 31, 2018, deadline.[2] On October 18, 2018, the court entered Scheduling Order No. 4. It established a schedule governing expert discovery for the *Sanofi* case only. Doc. 1146. Also, on November 26, 2018, the court entered Scheduling Order No. 6. It established deadlines for dispositive and *Daubert* motions for the *Sanofi* case only. Doc. 1298. Sanofi represents that the parties currently are engaged in non-coordinated discovery of experts in the *Sanofi* case. Doc. 1249 at 10. Meanwhile, the consumer class plaintiffs have filed their Motion for Class Certification. Doc. 1353. Defendants' response to that motion is due March 18, 2019, and the class plaintiffs' reply is due April 22, 2019. Doc. 1263 at 1 (Scheduling Order No. 5).

With its current motion, Sanofi asserts that the court now should follow the JPML's proposal and file a suggestion of remand of the *Sanofi* case, suggesting that the JPML should remand its case to its original district—the District of New Jersey. Sanofi argues that remand is

---

[2] The parties explain that the court allowed a limited extension of the coordinated fact deadline, allowing the parties to complete five depositions of non-parties. Doc. 1249 at 10 n.5; Doc. 1322 at 8. But, the parties represent, they completed all coordinated discovery among themselves by the October 31, 2018, deadline. Doc. 1249 at 10 n.5; Doc. 1322 at 8.

4

appropriate at this stage because the parties have completed all coordinated proceedings. And, Sanofi contends, "each of the [separate litigation tracks] have gone their separate ways." Doc. 1249 at 10. Thus, Sanofi asserts, its continued participation in the MDL will produce no additional efficiencies.

Mylan disagrees. Mylan argues that, consistent with Section 1407, the JPML transferred the MDL cases to our court "for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Mylan contends that the MDL's coordinated pretrial proceedings are not yet complete. And, Mylan argues, issues in the *Sanofi* case still overlap with issues in the consumer class cases. Thus, Mylan contends, remanding the *Sanofi* case is not yet appropriate because continued consolidation and coordination of all the MDL cases will maximize efficiencies, prevent duplication, and avoid inconsistent rulings.

The court considers the parties' competing arguments and applies the governing legal standard, below.

**II.    Legal Standard**

Under 28 U.S.C. § 1407(a), the JPML must remand an action transferred to an MDL proceeding to the district from which it was transferred "at or before the conclusion of" coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407(a). Under this statute, only the JPML possesses authority to remand a case to its original district. *Id.*; *see also In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1197–98 (D. Minn. 2012) ("The authority to [order remand] rests entirely with the JPML; this Court lacks the power to remand an action transferred to it under Section 1407."). But the JPML Rules of Procedure contemplate that "[t]ypically, the transferee judge recommends remand of an action, or a part of it, to the transferor court at any time by filing a suggestion of remand with the

5

Panel." Rule 10.1, Rules of Procedure of U.S. J.P.M.L.; *see also In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d 74, 76 (D. Me. 2011) ("In making [the remand] determination, the Manual for Complex Litigation notes that the JPML 'looks to the transferee court to suggest when remand should be ordered.'" (quoting Manual For Complex Litigation § 31.133 (3d ed. 1994))).

The JPML "consistently has given great weight to the transferee judge's informed determination that remand at a given point in time is appropriate." *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003). The JPML applies this standard because it recognizes that the transferee judge occupies a unique position to evaluate the remand considerations:

> After all, the transferee judge is charged with the day-to-day supervision of centralized pretrial proceedings and, accordingly, has special insight into the question of whether further coordinated or consolidated proceedings are likely to be useful. A transferee judge's suggestion of remand to the Panel is an obvious indication that he has concluded that the game is no longer worth the candle (and, therefore, that he perceives his role under section 1407 to have ended).

*Id.*

When deciding whether to suggest remand, courts follow the guidance of the JPML's standards for remand. *In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d at 77. "Whether Section 1407 remand is appropriate for actions or claims in any particular multidistrict docket is based upon the totality of circumstances involved in that docket." *In re Brand-Name Prescription Drugs Antitrust Litig.*, 170 F. Supp. 2d 1350, 1352 (J.P.M.L. 2001).

"Generally, the decision to remand turns on the question of 'whether the case will benefit from further coordinated proceedings as part of the MDL.'" *In re Baycol Prods. Litig.*, 265 F.R.D. 453, 455 (D. Minn. 2008) (first quoting *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001); then citing *In re Air Crash Disaster*, 461 F. Supp. 671, 672–73

(J.P.M.L. 1978)). "Remand is appropriate when the discrete function performed by the transferee court has been completed." *Id.* (citing *In re Richardson-Merrell, Inc. "Bendectin" Prods. Liab. Litig. (No. II)*, 606 F. Supp. 715, 716 (J.P.M.L. 1985)); *see also In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d at 77 ("The JPML 'has the discretion to remand a case when everything that remains to be done is case-specific.'" (quoting *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000))). Often, the JPML will order remand "where doing so '"will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation."'" *Id.* (quoting *In re Patenaude*, 210 F.3d at 145 (quoting *In re Air Crash Disaster*, 461 F. Supp. at 672)).

When a party seeks remand before coordinated or consolidated pretrial proceedings have completed, the JPML will remand an action "only upon a showing of good cause." *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 462 F. Supp. 388, 390 (J.P.M.L. 1978); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 14 Civ. 6228 (VSB), 2019 WL 117302, at *2 (S.D.N.Y. Jan. 7, 2019) ("Once a matter is transferred and consolidated or coordinated by order of the Panel, an action can be remanded to its court of origin prior to the completion of pretrial proceedings only upon a showing of good cause." (citations and internal quotation marks omitted)). "The party seeking remand bears the burden of establishing that remand is warranted." *In re MTBE Prods. Liab. Litig.*, 2019 WL 117302, at *2 (citation omitted).

**III. Analysis**

Sanofi asserts that the court should suggest remand of the *Sanofi* case to the District of New Jersey because the primary purpose of Sanofi's participation in this MDL has ended. Sanofi argues that the JPML transferred the *Sanofi* case to this court for coordinated fact

7

discovery with the other MDL cases because, the JPML concluded, the cases involve common questions of fact. But now that the parties have completed coordinated fact discovery and the court has ordered expert discovery and dispositive and *Daubert* motions to proceed on separate litigation tracks, Sanofi asserts that continued consolidation will produce no additional efficiencies.

Mylan has a different view. While coordinated fact discovery has ended, Mylan notes that other remaining pretrial proceedings still involve overlapping issues between the *Sanofi* case and the consumer class cases. So, Mylan contends, continued coordination of pretrial proceedings will promote efficiencies and produce benefits. And thus, the court should decline to suggest remand now. The court agrees with Mylan for several reasons.

*First*, although claims in the *Sanofi* case and the consumer class cases differ in some respects, the actions in both tracks assert that Mylan violated the Sherman Antitrust Act. And both sets of actions rely on the same core of factual allegations to support their federal antitrust claims. Both Sanofi and the consumer class plaintiffs allege that Mylan implemented an exclusionary rebate scheme that offered large rebates to third-party payors but conditioned those rebates on third-party payors granting the EpiPen an exclusive position in their formularies. And both sets of actions assert that Mylan's exclusionary conduct violated the Sherman Antitrust Act. Also, the *Sanofi* case and the consumer class cases both allege that Mylan violated the federal antitrust laws by engaging in misleading and deceptive conduct. The cases in both litigation tracks rely on the same allegedly deceptive conduct to support their Sherman Antitrust Act claims. Thus, the court concludes, overlapping factual and legal issues exist in both sets of cases. And those factual and legal issues remain at issue in the pretrial proceedings of this MDL. Thus, the court finds, continued consolidation and coordination of the *Sanofi* case as part of the

MDL docket will secure a shared efficiency: having one court evaluate the overlapping factual issues and decide the overlapping legal issues. Indeed, the Manual for Complex Litigation recognizes that if dispositive motions in an MDL "involve issues common to all the cases centralized before the MDL court . . . the transferee judge may be in the best position to rule" the motions. Manual for Complex Litigation § 22.36 (4th ed. 2004).

Sanofi acknowledges these overlapping issues, but argues that they are just a "subset" of the allegations at issue in both sets of cases. Doc. 1360 at 1. Instead, Sanofi contends, the two litigation tracks involve various case-specific issues warranting remand now. For example, in the *Sanofi* case, Mylan has asserted a Counterclaim against Sanofi that has no connection to the consumer class cases. Also, the claims asserted in Mylan's Counterclaim involve case-specific state law. But case-specific issues in the Counterclaim do not require remand when other overlapping issues still exist for the court to decide. As Mylan suggests, the court could continue to preside over this coordinated MDL proceeding involving cases with overlapping factual and legal issues, decide the overlapping claims in the MDL, and then suggest remand of any remaining case-specific issues. Doc. 1322 at 25 (citing *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 276 F.R.D. 336, 339–48 (W.D. Mo. 2011) (refusing to certify individual state-wide classes because the request was an issue that the transferor courts should decide but deciding the merits of plaintiff's motions for certification of multi-state class in the MDL)).

Also, Sanofi argues that expert issues in the *Sanofi* case will turn on case-specific questions. And thus, Sanofi contends, the District of New Jersey should decide those expert issues. But Mylan identifies several areas of expert opinion testimony that will overlap in both sets of cases because that testimony is relevant to overlapping federal antitrust claims. *See* Doc.

9

1322 at 14–15 ("This testimony will likely include opinions on numerous complex issues such as: (i) how the relevant market is defined; (ii) the prevalence of rebates in the pharmaceutical industry and the extent to which such rebates are conditioned on formulary placement; (iii) how drug manufacturers compete on price; (iv) whether rebates are driven by customer demand; (v) whether exclusion from commercial formularies is determined by competition on the merits; (vi) the extent to which single-product formularies and techniques designed to drive utilization to lower-cost products are driven or encouraged by PBMs and payors; and (vii) the procompetitive efficiencies of Mylan's alleged conduct."). And Mylan represents that it intends to use the same experts to address overlapping expert issues in both the *Sanofi* and consumer class cases. The court thus concludes that overlapping expert issues exist, and they augur against remand now.

*Second*, remanding the *Sanofi* case now would create risk that separate courts would make inconsistent rulings on overlapping issues. And, as Mylan argues, it makes little sense to require Mylan to argue the same issues—*i.e.*, whether it violated the Sherman Antitrust Act by engaging in an exclusionary rebate scheme or deceptive conduct—in two different courts. Indeed, promoting just and efficient litigation is a central purpose of consolidated MDL proceedings. Having one court decide overlapping issues will minimize the risk of inconsistent rulings and, simultaneously, promote efficiencies.

*Third*, remanding the *Sanofi* case likely would produce duplicative work. It's a waste of judicial resources for two different courts to learn, evaluate, and rule the overlapping issues when this court can address them once in the MDL. Indeed, as Mylan argues, the court's Order denying Mylan's Motion to Dismiss the consumer class cases demonstrates the efficiencies realized by consolidating these cases in the MDL. In that Order, the court incorporated its legal reasoning from an earlier Order denying in part Mylan's Motion to Dismiss in the *Sanofi* case.

And it applied that same reasoning to the overlapping claims asserted by the consumer class plaintiffs. *See* Doc. 896 at 25–29. In the court's judgment, it is more likely than not that overlapping issues will arise in the future. Given that conclusion, it is more efficient to have one judge resolve those overlapping issues, not two.

For all these reasons, the court agrees with Mylan that continued consolidation of the *Sanofi* case with the other cases in the MDL will produce efficiencies and thus promote the just and efficient conduct of the litigation. The court thus declines to issue a suggestion of remand currently.

A final word of caution is in order. In its Reply, Sanofi asserts that Mylan's strategy for opposing the request for remand is this: delay progress in the *Sanofi* case. Sanofi takes issue with Mylan's assertion that this court should resolve "both the Sanofi and class plaintiffs' summary judgment motions prior to remand to the transferor court." Doc. 1322 at 10. Sanofi expresses concern that it could take years for the court to resolve dispositive motions in the consumer class cases. Doc. 1360 at 18. And, Sanofi contends, it is not appropriate to delay remand for that long.

The court makes it explicit and, it hopes, clear: This Order concludes merely that a suggestion of remand is not appropriate now. The court is not deciding when remand of the *Sanofi* action will become appropriate. Delay also concerns the court. That is why it has ordered the cases to proceed on separate litigation tracks—so that the *Sanofi* case is not delayed while the parties litigate the class certification issues in the consumer class cases. Finally, while remand is not appropriate now, it will become appropriate at some point. Sanofi can renew its motion when circumstances change and after additional coordinated pretrial proceedings have concluded. Thus, this fair warning to Mylan: Any future argument that it's devoting energy and

11

attention to work in the consumer class cases is unlikely to justify postponement of work in the *Sanofi* case.

IV. **Conclusion**

For reasons explained, the court denies Sanofi's Motion for a Suggestion of Remand.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Sanofi-Aventis U.S. LLC's Motion for a Suggestion of Remand (Doc. 1248) is denied but without prejudice to refiling at a later stage in the litigation.

**IT IS SO ORDERED.**

**Dated this 23rd day of January, 2019, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**