IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: EpiPen (Epinephrine
    Injection, USP) Marketing,
    Sales Practices and Antitrust
    Litigation

MDL No: 2785

Case No. 17-md-2785-DDC-TJJ

(This Document Applies to the Class Cases)

# MEMORANDUM AND ORDER

This matter is before the Court on Mylan's Motion to Compel Compliance with Subpoena Directed to Non-Party The Segal Group, Inc. (ECF No. 1375). Mylan seeks an order requiring non-party The Segal Group, Inc. ("Segal") to identify custodians likely to have information relevant to Mylan's subpoena and to search for and produce email communications from those custodians. Segal opposes the motion. As set forth below, the Court will grant Mylan's motion.

## I.    Relevant Background

On October 10, 2018, Mylan served a document subpoena on Segal. Segal timely responded, posing objections to each of the fourteen requests but also agreeing to produce certain responsive documents. Since that time, the parties have engaged in email communication and met and conferred on November 6, November 27, and December 18, 2018. Asserting it has not provided services for the Local 282 Welfare Trust Fund related to EAI products, Segal has refused to search for or produce email communications from its employees regarding EAI

products. Mylan and Segal represent, and the Court finds, that they have complied with the requirements of D. Kan. R. 37.2.

## II.     Summary of the Parties' Arguments

Mylan argues Segal improperly refuses to identify custodians who possess or can identify documents responsive to the subpoena. Mylan asserts the email communications it seeks are relevant, Segal's boilerplate objections are invalid, and Segal has failed to meet its burden to show compliance would cause undue burden.

Segal insists the email communications Mylan seeks are irrelevant, as Mylan admits that Segal never provided advice to or services for the Local 282 Welfare Fund related in any way to EAI products, including EpiPen. Segal also asserts the subpoena is unreasonable and unduly burdensome because it seeks information Mylan has obtained from other sources and over an extended period, and has cost Segal time and money. Segal stands by its objections. If the Court grants Mylan's motion, Segal asks that any email search be limited to three of its employees it identifies as those most likely to have emails related to pharmacy benefits and the 2013 selection of CVS/Caremark as Local 282's PBM service provider, and for an award of costs.

## III.    Legal Standard

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[1] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[2]

---

[1] Fed. R. Civ. P. 45(d)(1).

[2] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party.[3] Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[4] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information."[5]

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[6] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[7] Information still "need not be admissible in evidence to be

---

[3] The Non-Parties have not filed a motion to quash the subpoena in this or any other federal district court.

[4] Fed. R. Civ. P. 45(d)(3)(A).

[5] Fed. R. Civ. P. 45(d)(3)(B).

[6] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

discoverable."[8]  When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[9]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[10]  Relevancy determinations are generally made on a case-by-case basis.[11]

## IV.     Relevancy

Mylan points out that Plaintiff Local 282 Welfare Trust Fund is the only Plaintiff health plan in this case, thereby making Local 282 the sole purported representative of a putative class that includes thousands of health plans and payors.  Accordingly, to fulfill its need to learn more about whether Local 282 suffered the harms Class Plaintiffs allege and its fitness to serve as an appropriate class representative,[12] Mylan is trying to inform its understanding of the communications between Local 282 and PBMs.  As the entity through which Local 282

---

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] Mylan describes the information responsive to its subpoena as "clearly relevant to, among other issues, whether Local 282 suffered any injury due to Mylan's actions, what a reasonable damages model may look like, whether Local 282 is adequate to serve as a class representative, and whether its claims are atypical of those of the rest of the class." ECF No. 1375 at 9.

communicates, negotiates, and contracts with PBMs, Mylan issued a subpoena to Segal to obtain documents relating to Segal's communications with Local 282 and with the PBMs. Segal maintains that because it has never provided services to Local 282 related to EAI products, which Mylan does not dispute, it could not possess emails that are "remotely relevant to this lawsuit."[13]

The Court finds the relevancy of the requested information is readily apparent. Segal does not dispute the testimony from Local 282 that identified Segal as the sole means through which Local 282 communicates, negotiates, and contracts with PBMs. As such, each of the thirteen requests at issue seeks information that bears on or could lead to other matter that could bear on Mylan's defenses.[14] Indeed, Segal has produced some documents responsive to the requests, drawing the line only at identifying ESI custodians and conducting searches of those custodians' emails.

In its response to Mylan's motion, Segal asks that if the Court requires it to conduct an email search, the search be limited to three Segal employees who primarily communicated with the PBMs regarding Local 282's 2013 selection of CVS/Caremark as its PBM, and to specifically exclude from its scope John Urbank, its lead individual on the Local 282 account.[15] In so doing, Segal seeks to substitute its views of relevancy for the applicable legal standard. The Court finds Mylan's request that Segal identify ESI custodians of the information requested

---

[13] ECF No. 1401 at 4.

[14] Mylan brings this motion only with respect to subpoena Request Nos. 2-14. *See* ECF No. 1375 n.2.

[15] *Id*. at 8. The employees are Matthew Ahearn, Ritu Malhota, and Lisa Kearney.

by the subpoena is appropriate as a means of obtaining information and documents relevant to Mylan's defenses.

V.      **Undue burden and other objections**

As the Court has noted, the scope of discovery under a subpoena is the same as party discovery permitted by Rule 26.[16] Thus, while the Court recognizes that "[c]ompliance with a subpoena inevitably involves some measure of burden to the producing party, . . . the court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[17] As with Rule 26 discovery, one objecting to a subpoena has the burden to show compliance would cause undue burden, typically by presenting an affidavit or other evidentiary proof of the time and expense involved in responding to the subpoena.[18]

Segal asserts that Mylan's request for emails is unduly burdensome because of the time and expense it would incur in conducting a search. Segal presents an affidavit from John Urbank, a Vice President and the primary point of contact for Segal's work with the Local 282 Welfare Fund, approximating he has 4,000 or more emails with that fund dated between January 1, 2009 and the present, and that attorney fees would cost $9,000 per 10,000 emails reviewed and a search and review process could take months.[19] Segal extrapolates those numbers to

---

[16] *In re Syngenta*, 2017 WL 1106257, at *16 (citing *Schneider,* 2014 WL 4749181, at *2).

[17] *Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 WL 566988, at *3 (D. Kan. Feb. 11, 2015) (citations omitted).

[18] *Id.*

[19] ECF No. 1401-1.

encompass searches of other custodians' emails and estimates a search would take two months or more and cost approximately $22,000.

Segal also argues that the date range Mylan proposes—January 1, 2009 to the present—is unduly burdensome because this Court did not require Express Scripts to produce documents prior to 2013.

The Court finds Mr. Urbank's affidavit speculative and lacking in evidentiary proof that identifying and collecting the subpoenaed emails would result in the costs it projects or take the length of time it estimates.

Regarding the time frame for the subpoena, the Court finds it of no consequence that Express Scripts was subject to different requirements in responding to a subpoena served on it in this case. Instead, the issue is whether the proposed time is appropriate for this subpoena, measured by relevance. Mylan is seeking information relevant to its defenses to Class Plaintiffs' claims. As Class Plaintiffs state in their Consolidated Class Action Complaint, they "seek to recover damages and overpayments from at least 2009 through the present."[20] In their class allegations, they define the proposed national class as "[a]ll persons or entities in the United States and its territories who purchased and/or paid for some or all of the purchase price for EpiPen(s), for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries, other than for resale,' and the class period as "January 1, 2009 through and until the anticompetitive effects of defendants' unlawful conduct cease."[21] These allegations provide sufficient justification for the temporal scope of the subpoena.

---

[20] ECF No. 60 ¶9.

[21] *Id.* ¶516.

Segal also objects to producing documents that Mylan can obtain from elsewhere. In addition to this being an improper objection to a subpoena, the Court rejects Segal's unsupported assertion that every email requested by the subpoena calls for discovery Mylan can otherwise obtain. Segal is not in a position to know what other parties will produce, nor whether a particular document may differ in version or have additions or omissions when coming from two different sources.

**VI.    Costs**

Segal asks the Court to order Mylan to pay the costs of compliance if the Court grants the motion to compel. Although Segal has not submitted an affidavit in support of its request, it states it has incurred more than $20,000 in legal fees responding to the subpoena. The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party. "[T]he court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[22] In this instance, the Court will hold in abeyance its ruling on costs until Segal submits an affidavit setting forth the time and expense it has incurred in responding to the subpoena.

**IT IS HEREBY ORDERED** that Mylan's Motion to Compel Compliance with Subpoena Directed to Non-Party The Segal Group, Inc. (ECF No. 1375) is granted. Within five business days of the date of this order, Mylan shall deliver to Segal a reasonable list of proposed search terms. Within five business days of its receipt of the list, Segal shall advise Mylan

---

[22] *Booth v. Davis,* No. 10-4010, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993)).

whether it agrees to the terms.  If it does not, Segal shall explain the reasons for its disagreement. If necessary, Mylan and Segal shall confer and, if they are unable to reach agreement, no later than **March 20, 2019**, Mylan shall advise the Court and the Court will convene a telephone conference to resolve the matter.

**IT IS FURTHER ORDERED** that following the resolution of search terms, The Segal Group, Inc. shall (1) search the emails of John Urbank, (2) identify which Segal employees served as the main points of contact with Local 282 and communicated with PBMs on Local 282's behalf, and (3) search and produce responsive materials from those custodians within a reasonable time.

**IT IS FURTHER ORDERED** that if The Segal Group, Inc. intends to pursue its request for costs in connection with responding to the subpoenas, it shall submit an appropriate affidavit with supporting documents no later than **10 business days** after it has fully complied with this order.

**IT IS SO ORDERED.**

Dated this 28th day of February, 2019 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge