17-md-2785   In re: EpiPen   3.8.19

```
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF KANSAS
 2

 3   IN RE:  EPIPEN                    Docket No. 17-md-2785
     (Epinephrine Injection, USP)
 4   Marketing, Sales Practices
     and Antitrust Litigation
 5                                     Kansas City, Kansas
                                       Date:  3/8/2019
 6
     .........................
 7
            TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
 8
                          BEFORE
 9
            THE HONORABLE DANIEL D. CRABTREE
10            UNITED STATES DISTRICT COURT JUDGE

11   APPEARANCES:

12   For the Class Plaintiffs:

13   Rex A. Sharp                 Warren Burns
     Rex A. Sharp, PA             Burns Charest, LLP
14   5301 W. 75th Street          900 Jackson Street
     Prairie Village, KS 66208    Suite 500
15                                Dallas, TX 75202

16   For the Mylan Defendants:

17   Brian C. Fries              Adam K. Levin
     Lathrop & Gage, L.C.        Justin W. Bernick
18   2345 Grand Boulevard        Hogan Lovells US LLP
     Suite 2800                  555 Thirteenth Street, NW
19   Kansas City, MO 64108       Washington, DC 20004

20   Philip A. Sechler
     Robbins, Russell, Englert, Orseck, Untereiner
21    & Sauber LLP
     1801 K Street, N.W.
22   Suite 411L
     Washington, D.C. 20006
23

24

25
```

17-md-2785   In re: EpiPen   3.8.19

1    APPEARANCES (continued):

2    For the King Pharmaceuticals, Inc., Meridian Medical
     Technologies, Inc. and Pfizer Defendants:

3
     Raj Gandesha
4    White & Case LLP
     1221 Avenue of the
5    Americas
     New York, NY 10020

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (Court called to order.)

2              THE COURT:  Good afternoon, everyone.  This

3    is Dan Crabtree.  We're on the record in Case

4    No. 17-2785, MDL No. 2785, known as *In re:  EpiPen*.

5              So I got who was on the line today.  First of

6    all, good afternoon to everyone.  Thanks for making time

7    and thanks for the submissions.  I do appreciate the

8    efforts that you all have devoted toward trying to work

9    toward an agreed schedule for disclosure.  I have -- and

10   I commend you for making those efforts.  They are useful

11   to me.  I hope your work cooperatively will continue.

12             I have three things on my agenda that I want to

13   take up today.  I'd like to talk about first the efforts

14   on the disclosures for class cert hearing and where we

15   go from here; secondly, I want to just briefly visit

16   about the subject that's raised in Mr. Fries' letter of

17   March 8th on the *Daubert* issue as it applies to class

18   cert experts; and, third, on the joint motion to amend

19   Document 1481.

20             So let's go straight to the disclosure --

21   structure of disclosures and schedules for class

22   certification hearing.  Here's the feedback I can give

23   you on a few topics, and then concluding with a schedule

24   for you all and the court to finish its work on this

25   front.

1       One of the things that I saw in the, I believe it

2   was -- yes, it was, it was in the plaintiffs' proposed

3   disclosure schedule was a reference to the proceedings,

4   including the content and testimony of the Phase I part

5   of it at least be confidential.  And I think I want to

6   have just a better understanding.

7       So, Mr. Sharp, knowing you're pinch-hitting for

8   Ryan today, I'll call on you by name, but hear who you

9   want from the class plaintiffs' side to just make sure I

10  understand what you meant by that.

11          MR. SHARP:  Your Honor, I'll field that

12  question.  This is Rex Sharp.  What I meant by that was

13  since this was intended to be an informal discussion to

14  educate the court, we didn't want to get into the issues

15  of having objections on the record and having a -- a

16  number of interruptions.  We didn't want to get outside

17  of what the reports were and the depositions in this

18  case as we prepare for class certification.

19      And then we just felt like this was an issue

20  where the court would be free to ask questions about

21  what it might be inquisitive about, regardless of

22  whether it was imperative for class certification or

23  not; otherwise, it ends up becoming an issue of here's

24  what we think the court ought to know.  The other side

25  wants to counter and get into almost a cross examination

1   by expert situation.  And then it all ends up on the

2   record and people begin to refer to what the expert said

3   during the -- the education of the court day.  And so we

4   just didn't want to get into that kind of a situation.

5        We also know that the experts are going to be

6   referring to confidential information and consequently

7   that presents its own problems.

8             THE COURT:  Well, let me -- let me give you

9   some feedback going forward.  I really do think that, I

10  guess, efforts to educate the court and enhance my

11  understanding about the industry and the way the

12  economics fit together or don't fit together and the

13  things that are on the table at the class cert stage, I

14  think those are commendable.

15       I don't know how it's appropriate to limit

16  whatever record is created at this hearing in the class

17  certification analysis.  It's going to be part of the

18  materials that are submitted in support of the class

19  certification decision that the court makes.  And so I

20  don't -- you know, maybe you can convince me that

21  there's authority that would limit the use of any

22  testimony that's given.

23       I didn't contemplate this being a full-blown

24  evidentiary hearing replete with cross examination

25  because I didn't think that was the way the standard at

1    the certification stage works.  But, in terms of

2    limiting someone's ability to use it in the future, I'll

3    just say this:  You'd have to persuade me that that's

4    something I can do.

5           I want to say a little bit about the idea of the

6    confidential information that, as you saw in the order I

7    think that went up Monday, I take the direction from

8    both the Supreme Court and the Circuit that closing

9    things from the view of the public is -- has to be a

10   narrowly tailored effort and exercise.  So the idea of

11   kind of closing the courtroom altogether for a phase of

12   the certification process is something that I would view

13   as a pretty steep hill to climb.  It won't sit well with

14   the public.  It won't sit well with any media that is

15   interested in this proceeding.  And, frankly, it won't

16   inspire much confidence in the way the court does its

17   business.

18          So if somebody thinks that we're going to face

19   those issues, you're going to have to convince me in

20   advance.  Because you're right about one thing, I do not

21   want this four hours that we've set aside for Phase I to

22   get bogged down in what I consider to be sort of

23   sideshow matters.

24          So I would expect you all to vet that out and

25   work to -- with me in advance of June 11th and 12th to

1    get anything of that nature resolved.

2         But, in terms of this -- the record that's made

3    of this testimony being unavailable for future use, at

4    least as it pertains to the certification effort, I

5    think that's difficult.  As for whether there should be

6    restraints placed on the use of this testimony for

7    impeachment purposes down the road, I'm not inclined to

8    order that in advance.  I just think the certification

9    decision, the stakes are too high at that stage to

10   impose that kind of restriction up front.  So that's my

11   thinking on that.

12        On the business of -- I know you all devoted --

13   just moving down to a separate topic -- you devoted some

14   effort about what the -- kind of the format of this four

15   hours' worth of work was going to look like.  I know

16   you've talked about whether it should include opening

17   statements, you know, what the presentation style would

18   be, whether it would be a direct, like, examination.  I

19   can help you with part of that.  I don't care.  I'm not

20   -- I'm not going to set any limits on how you use your

21   time.  You don't need that kind of help from me.  You're

22   -- you're pros at this work.

23        If you think an opening statement will help me

24   understand your side of the issue, then give one.  And

25   if you don't think it will, then don't.  But you get two

1   hours.  And if you want to use some of it in opening,

2   then that's your choice.  But the way it works is if you

3   -- when you're in control of the well of the courtroom,

4   that time comes off your clock.

5         And I guess this is a little bit of a repeat.

6   One of the things I read -- you know, there's obviously

7   some things that you all have agreed to keep talking

8   about.  I just want to emphasize what I'm really after

9   at this hearing is the chance to deepen, extend, and

10   sharpen my understanding of the issues that get joined

11   in the briefing.  You guys are living in this case every

12   day and if not every moment.  I'm not.  And so I need

13   you to use these hours that are set in both Phase I and

14   Phase II on things that really matter to the

15   decision-making.

16         And the extra curriculars of, well, this slice of

17   testimony shouldn't be something that should be talked

18   about in an open courtroom or even more tangential than

19   that, let me just say for you, "I haven't seen that

20   exhibit or that slide or that demonstrative before," I'm

21   expecting all that to -- you all, in your discussion,

22   should err on the side of disclosure.  Figure it out

23   because we can't be spending time on that on June 11

24   and 12.

25         I guess the last thing I'd say to you is on the

1   work that you continue to do as I -- and I -- and I

2   appreciate that you have other things going on, and so I

3   do want to set a deadline for you all to either get to

4   agreement on all these open issues or not.  I'm not

5   comfortable waiting until May 3rd because that will

6   leave relatively little time to comply with the

7   structure that gets adopted.  I want to advance that

8   significantly.

9        So I'm going to give you all a deadline of March

10   29th to submit, I guess, one of two things:  Either an

11   all agreed schedule of disclosures and procedures for

12   the hearing.  If you are not able to come to all

13   agreement, then each side should submit one.  And just

14   to encourage you to be reasonable, I'm likely to adopt

15   the proposal that, in my judgment, will make it make the

16   time that we've got set aside in Phase I and Phase II

17   best used for the purposes of understanding the

18   certification issues.  In other words, I'm not likely to

19   do a blend or a compromise.  I'm likely to go with one

20   or the other.

21        That's what I wanted to talk about on that first

22   topic, the disclosures, timing, and structure of the

23   hearing.  Before we leave that subject, I'll go around

24   the horn with you.  Mr. Sharp, anything we need to talk

25   about on that first hearing structure and schedule

1    disclosure before we leave that topic?

2              MR. SHARP:  Your Honor, I don't think so.

3    We appreciate your input and I think that will guide us

4    as we talk and see if we can't reach agreement between

5    now and the end of March.

6              THE COURT:  Thank you.  Mr. Sechler.

7              MR. SECHLER:  Good afternoon, Your Honor.

8    Thank you and we understood what Your Honor has said and

9    I don't think there are any further things that we need

10   to discuss on that first topic right now.

11             THE COURT:  Yeah, and I -- and I should have

12   said this, Phil, earlier, I don't know if you and

13   Mr. Levin, if you're in the same place or not in the

14   same location, but I get it, you're a liaison role.

15   You're not in the class case.  But if somebody wants to

16   speak up from the Mylan class team before we leave this

17   topic, is there anything else from -- from you,

18   Mr. Levin?

19             MR. LEVIN:  Good afternoon, Your Honor.  No,

20   thank you.  Phil and I are aligned perfectly as always

21   even though we're not same room right now.  We have

22   nothing further to add.

23             THE COURT:  Thanks very much.

24        Topic No. 2 from my list is the subjects raised

25   in Mr. Fries' letter of March 8th about a *Daubert*

17-md-2785   In re: EpiPen   3.8.19

1    overlay for the experts who, I guess, may appear or may

2    have testimony from depositions submitted in support or

3    in opposition of the class certification motion.  I want

4    to get this decided soon.  I recognize from the

5    plaintiffs' side, Mr. Sharp, that you all didn't care

6    for the way this was presented.  I read -- I read Ryan's

7    e-mail.

8         Here's what I want to do:  On the -- on the

9    defendant's side, Mr. Fries, can I ask you to take your

10   letter and file it as a motion on the docket so the

11   letter -- so the record will contain it.  You ought to

12   caption it as a motion to amend the scheduling order.  I

13   want to get something quickly from your side of the

14   fence.

15        Plaintiffs, can you get something on file

16   responding to that by March 13th, which I think is next

17   Wednesday?

18             MR. SHARP:  Your Honor, we have -- I know a

19   lot of the people are going to be out for spring break,

20   and can we have until the end of that week?

21             THE COURT:  You guys are taking spring

22   break?

23             MR. SHARP:  Some are.  It's because it's

24   been so cold in Kansas City, Your Honor.

25             THE COURT:  Why don't you take until Friday

1  and I'll look at what you submit and make a decision.  I

2  -- I'm interested -- I've not seen this issue before.  I

3  want to read the cases that are referenced in Brian's

4  letter and I want to see what you say.

5       I got -- I got to tell you -- and this comes up

6  sometimes in court-tried cases where the *Daubert*

7  gatekeeping role is invoked.  And I want to say, you

8  know, the gatekeeper and the finder of fact are the same

9  people.  So I'm not quite sure, but I do understand that

10 you may, for purposes of you shouldn't -- you shouldn't

11 consider this when making the decision, but there's a

12 little irony in the gatekeeper and finder of fact and

13 applier of law all being the same person.  But I'll look

14 at the cases that are cited there and also whatever you

15 send in, plaintiffs, and tell you what I think.

16      Let me just ask, on a point of clarity, and I

17 think this goes probably to the defendants' side of the

18 caption:  The schedule I saw that you suggested, it -- I

19 didn't view the *Daubert* overlay to be something that

20 needed to be decided before the hearing takes place, or

21 the Phase I-Phase II take place, on June 11th and 12th.

22 Am I apprehending it right?

23           MR. FRIES:  Your Honor, this is Brian Fries.

24 Yes, you are understanding that correctly that it would

25 not be fully addressed and decided prior to the hearing

 1   in June, but it would be wrapped up.  And the court said

 2   in the -- what -- the scheduling order that it was

 3   likely to take the class certification decision under

 4   advisement after that hearing, which we would expect.

 5   So the *Daubert* issue would be tied in with that as well

 6   to the extent it was necessary.

 7              THE COURT:  Okay.  Something you could -- I

 8   would just take -- I would take it with the motion.

 9              MR. FRIES:  Correct.

10              THE COURT:  Okay.  All right.  Well, that's

11   -- I just wanted to make sure we didn't have a timing

12   problem.  I don't think we do.  And I know -- and I say

13   that on the assumption that I conclude that *Daubert*

14   issues can be considered just for planning purposes.

15        All right.  My last item was the joint motion to

16   amend the scheduling order, Document 1481, that was

17   filed yesterday.  I didn't look at exactly what hour of

18   day it was filed, but I think it was after most normal

19   people have left work.  I looked at it briefly.  Given

20   what I had going on this morning, I couldn't spend as

21   much time with it as I would.

22        It looks like, to me, that this is roughly a

23   three-and-a-half to five or six months sort of pushback

24   on the schedule.  Am I -- am I understanding it

25   correctly?

1         MR. BURNS:  Well, Your Honor, this is Warren

2  Burns if I can be heard on it.

3         THE COURT:  Of course.

4         MR. BURNS:  Good to talk to you today,

5  judge.

6         THE COURT:  Nice to hear your voice.

7         MR. BURNS:  Thank you.  Your Honor, what we

8  found ourselves in the circumstance was that the merits

9  experts' reports were really jammed up against class

10  certification and really far in advance of the discovery

11  deadline which was kind of following in the summer.

12  And, you know, frankly, given all that's going on in the

13  case in the ongoing discovery on non-coordinated topics,

14  none of us are in a position to be able to complete

15  those reports to be able to pick them up at this stage.

16        There was an immediate need to kind of address

17  that issue in the -- in the existing schedule and it's

18  one we've been talking for -- about for a while but --

19  and I have made discussions with the defendants about

20  it.  We were all sort of waiting to see how issues with

21  Sanofi shook out and where we ended up after the class

22  cert.  So that's -- that's really the timing why it's

23  coming up now.

24        But really what we were trying to do is to make

25  sure there was enough time and space to give the parties

1   a chance to get those merits expert reports together and

2   get talking about it.  As we looked at the issue, we

3   were proposing that we hang it off the end of discovery

4   in the case.  I don't think that's going to be a lot of

5   delay between close of discovery and reports much.  But

6   from the plaintiffs' perspective that gives us time to

7   get all the evidence in, deal with some of the

8   non-coordinated topics that weren't dealt with last

9   year, and then be able to get to the full merits

10  reports.

11       There will be some overlap obviously with some of

12  the class certification issues that have gone on, but

13  there are other issues, especially involving the patent

14  allegations, that really are the subject of ongoing

15  discovery.

16       THE COURT:  From the -- I think I get -- I

17  mean, here was -- well, before I say more, Mr. Sechler,

18  from your side of the caption, anything you wanted to

19  say about the joint motion Warren didn't cover?

20       MR. SECHLER:  Your Honor, I think at this

21  point defendants are going to substitute a pinch-hitter.

22  I think Mr. Levin will address this.

23       THE COURT:  He was warming up in the

24  bullpen.  We'll get him in the game.

25       MR. LEVIN:  I'm taking the bullpen card in

1   early.  So, no, look, Warren and I have had a number of

2   good conversations about this, as he said, dating back a

3   few months.  The only other thing I'll add, Your Honor,

4   is the other reason we thought it made sense to move

5   these deadlines back is because we moved the rest of the

6   schedule back, in terms of class certification last

7   fall, but at that time did not make similar adjustments

8   to the summary judgment and experts deadlines that were

9   in the existing schedule.  And so the result of that was

10  class certification got bumped up to a time where really

11  it was bumping up against the merits experts and summary

12  judgment deadlines.

13       And so just like we bumped class certification

14  back, we thought it made sense to move the other

15  deadlines commensurate with that and wanted to be

16  mindful of getting everything wrapped up sufficiently in

17  advance of the court's summer 2020 trial date.  We took

18  all those factors into consideration and that's the

19  schedule we proposed.

20            THE COURT:  Thanks very much.  I guess where

21  you finished is the one -- and maybe I'm misreading

22  this, but I think -- I think you took some of my time

23  with this proposal because I think this shortens the

24  time between summary judgment being ripe and the trial

25  date from around eight months to about five months.  Am

1    I reading it right as you guys see the schedule?

2            MR. BURNS:  You are, Your Honor.  We didn't

3    want to presume there would be any change to the trial

4    date, but you are correct what we are suggesting

5    actually cuts a little off your time off.

6            THE COURT:  Yeah, I -- that is -- I will

7    tell you that is really, for a case of this size and

8    weight, that is a very short turn because -- here's what

9    I don't like to have in cases, and this one there's

10   probably going to be some of this no matter what timing

11   we create, but I really try to avoid imposing on the

12   litigants the cost of preparing for a trial that may or

13   may not happen.  And that's why we have a hard and fast

14   60-day rule in the district on the gap between summary

15   judgment ruling and trial.  I -- when I can't meet that

16   deadline, I've continued the trial on my own motion.

17           I think it's -- I want to think about this.  And

18   let me say, I'm all in favor of things that you guys

19   work through and agree to, so this is -- this is not at

20   all a kind of criticism.  I just need to think through

21   whether the -- the casualty of this joint motion is the

22   trial date.  Because I thought a lot about that time gap

23   between the close of dispositive motion briefing and

24   trial, and to start sacrificing it now I think is

25   something I need to think about.

1      So I'm not going to -- I'm not -- I'm going to

2  tell you today that you are very likely to get your

3  joint motion granted, but that may be the cost is that

4  the trial will bump some with it.  And if that makes you

5  reconsider and want to withdraw your joint motion, I

6  guess you can let me know, but that's where I'm going to

7  leave it today.

8            MR. BURNS:  I would just add, Your Honor,

9  from plaintiffs' perspective, I mean, if there's a way

10 you want us to tighten up some of those dates to

11 minimize that impact, we could certainly attempt to do

12 that.  You know, I -- we don't want to squeeze you, nor

13 either side in this -- in this exercise, but the reality

14 of getting those reports out and touching discovery are

15 weighing pretty heavily.

16            THE COURT:  I get it.  The case -- the case

17 is -- when you get into it, it's bigger and more

18 complicated, harder to get your hands around.  That's

19 fine.  I mean, we're not talking -- I don't want to get

20 into the habit of kicking the trial date down the road

21 because, once that starts, it's kind of a dangerous

22 precedent.  But an adjustment of a few months I can live

23 with.  If you all can't live with that, then I guess I

24 would say to you, you ought to renew your discussions

25 with one another and try to tighten it up because I do

1    think I need something approaching the gap that I just

2    talked about to do my job right.  There's too much on

3    the table in this case for that to be a hurried process.

4         So here's the deal:  I'm getting ready to leave

5    town myself.  It's not a spring break trip.  It is a

6    drive to look at colleges.  So I'm not going to act on

7    this before next Friday.  If you all want to take this

8    joint motion and rework it to tighten things up in

9    pursuit of trying to hang on to the trial date, you'll

10   have time to do that.  If I don't hear from you, if I

11   haven't heard from you by the time I get back at the end

12   of next week, then I'll assume you meant what you said

13   here and I'll probably either do something on the trial

14   date myself or conclude that I can live with this

15   timeline and leave it where it is.

16        MR. BURNS:  All right.  Thank you, Your

17   Honor.

18        THE COURT:  All right.  Counsel, that's my

19   list of three things I wanted to talk to you about.  We

20   haven't seen you in a while, which I assumed you were

21   busy or we'd have heard from you that you missed us.

22   But I'll just go around the horn quickly relying on

23   liaison counsel to manage the discussion from the two

24   sides of the caption.  Mr. Sharp, from your perspective

25   is there anything else we ought to reference today

1  before we close the record?

2         MR. SHARP:  Your Honor, we do miss you, but

3  we've been very busy and there's nothing further.

4         THE COURT:  I think you miss -- you miss

5  Judge James more, that's what I think's going on.  All

6  right.  Thanks for that.

7         And, Mr. Sechler, from the defendants, extended

8  defendants' side of the caption, anything else we ought

9  to take up before we finish the work today?

10        MR. SECHLER:  Yes, Your Honor, I think we

11 covered the issue on defendants' collective mind.  I

12 know that the defendants have collectively missed both

13 you and Judges James and Kansas City but, in any event,

14 we appreciate the opportunity to talk to you today.

15        THE COURT:  All right.  Thanks.  I'll tell

16 her you all missed her and just leave it -- I'll make it

17 a multiparty sort of pining, okay.  All right.  Thanks

18 very much.  I appreciate it.  For those who are

19 traveling, safe travels and we'll be in touch.  I'll

20 watch for your additional submissions if -- whatever

21 they are and then we'll try to get these issues put to

22 bed.

23        I probably won't have another hearing like

24 this -- phone hearing like this after the March 29th

25 submission.  I'll say it in the singular hoping for the

1   best.  If there's something -- if it becomes submissions

2   plural and there's something in it that bothers me and I

3   think I need more understanding, then we'll be in touch

4   with a proposed date.  All right.

5       Counsel, thanks very much.  Good to hear your

6   voices.  Go ahead and close the record and we'll be in

7   recess for this afternoon.

8           (Proceedings adjourned.)

9

10

11                   CERTIFICATE

12      I certify that the foregoing is a correct

13  transcript from the record of proceedings in the

14  above-entitled matter.

15      DATE:  March 8, 2019

16

17              /s/Kimberly R. Greiner
            KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
18          United States Court Reporter

19

20

21

22

23

24

25