IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Order Applies to Consumer Class Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter comes before the court on four motions to seal documents submitted in support of defendants' memoranda opposing class certification: (1) Mylan Defendants' Motion for Leave to Preliminarily File Documents Under Seal and for Approval of Sealing Process (Doc. 1503); (2) Pfizer Defendants' Motion for Leave to File Documents Preliminarily Under Seal and for Approval of Sealing Process (Doc. 1507); (3) Pfizer Defendants' Renewed Motion to File Under Seal Certain Exhibits in Support of its Opposition to Class Certification (Doc. 1526); and (4) Mylan Defendants' Renewed Motion for Leave to File Documents Under Seal (Doc. 1527). The court approves the process advanced in Documents 1503 and 1507 for presenting seal and redaction requests. And, the court grants the Pfizer defendants' renewed motion and grants in part and denies in part the Mylan defendants' renewed motion.

### I. Legal Standard Governing Seal Requests

As the court previously has discussed, the Supreme Court recognizes a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (citations omitted). This right stems from "the citizen's desire to keep a watchful eye on the workings of public agencies," *id.* at 598,

and it helps "preserv[e] the integrity of the law enforcement and judicial process," *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). As a result, "there is a 'strong presumption in favor of public access.'" *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)). That "strong presumption" is heightened when the information subject to a seal or redaction request (1) provides the basis for a court's adjudication of the merits of the litigation; or (2) is disclosed in another form or during a public proceeding. *Id.* at 1302, 1305; *see also Mann*, 477 F.3d at 1149 (concluding individual's privacy interest diminished where information previously disclosed in public court proceeding).

"The right of public access to judicial records, however, is 'not absolute' as '[e]very court has supervisory power over its own records and files.'" *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019) (quoting *Nixon*, 435 U.S. at 598). The party seeking to deny access must shoulder the burden to establish that a sufficiently significant interest "heavily outweighs the public interest in access." *Mann*, 477 F.3d at 1149 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). And, "any denial of public access to the record must be '*narrowly tailored* to serve the interest' being protected by sealing or restricting access to the records." *Walker*, 761 F. App'x at 835 (emphasis in original) (quoting *Press-Enter. Co. v. Superior Court of Cal.*, 478 U.S. 1, 12–13 (1986)).

"Once a court orders documents before it sealed, the court continues to have authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents." *Pickard*, 733 F.3d at 1300. And, even after a court orders documents sealed, the party advocating for sealing continues to bear the burden of justifying the decision to seal. *Id.* at 1302. Thus, to the extent the court grants the Pfizer defendants' and

2

Mylan defendants' renewed motions, the grant is subject to continued reexamination, particularly if any information sealed or redacted by this Order proves important to the court's resolution of plaintiffs' class certification motion or if the information is exposed to the public during the class certification hearing.

## II. Application of Standard to Motions

The court has reviewed each request to seal or redact an exhibit, and announces its conclusions as follows.

### A. The Pfizer Defendants' Renewed Motion (Doc. 1526)

In their renewed motion, the Pfizer defendants seek to seal three documents: (1) Document 1526-3; (2) Document 1526-6; and (3) Document 1526-8. The court sealed the first two of these documents when plaintiffs submitted them in support of their motion for class certification. *See* Doc. 1477 at 2 (sealing Exhibit 36, Document 1430-2). For the same reasons stated in Document 1477, the court grants the Pfizer defendants' request to seal Documents 1526-3 and 1526-6. Document 1526-8, meanwhile, is an internal sales forecast prepared by TEVA Pharmaceuticals. And, although the forecast is several years old, it contains information from which competitors might determine TEVA's methods for forecasting sales. At this juncture in the proceedings, the court grants the request to seal Document 1526-8 and grants the Pfizer Defendants' Renewed Motion to File Under Seal Certain Exhibits in Support of its Opposition to Class Certification (Doc. 1526).

### B. The Mylan Defendants' Renewed Motion (Doc. 1527)

The Mylan defendants' renewed motion seeks to seal or redact approximately 60 documents. The seal and redaction requests fall into three categories: (1) requests by the Mylan

defendants and by third parties; (2) requests by plaintiffs; and (3) requests by Sanofi.  The court considers each set of requests in turn.

### 1. Requests by Mylan Defendants and Third Parties

Mylan and the third parties seek to seal 18 documents.  The court grants the requests for Exhibits 18, 19, 20, 26, 39, 43, 48, 52, 54, 55, 56, 57, and 62.  These exhibits contain a combination of internal work product and confidential and proprietary information of a sensitive nature.  Several of the exhibits also reveal the competitive strategies employed by the party requesting each seal.  Disclosure of these documents to the public, including the requesting parties' competitors, may disadvantage the requesting parties' business interests unfairly.  The court thus concludes the requesting parties have advanced a private interest that overcomes the strong presumption favoring public access.

The court also grants in part the requests to seal Exhibit 27.  Most of the information presented in Exhibit 27 reveals potentially commercially sensitive information about Express Scripts's strategy and motivations during negotiations.  But, three passages—263–64, 271:1–272:6, and 287:1–288:2—speak in general terms or provide background information about pharmacy benefit management that would apply to any company operating in Express Scripts's industry.  Accordingly, while the court denies the request to seal the entirety of Exhibit 27, it grants the request to the extent that Mylan may submit a version of Exhibit 27 that redacts all but the cover page of the deposition, the three aforementioned passages, and the reporter's certificate.

Next, the court grants in part the request to seal Exhibit 44, which is a bid sheet distributed by CVS to pharmaceutical manufacturers, such as Sanofi-Aventis.  This bid sheet, by its very nature, is not kept within the confines of CVS.  Instead, CVS provided the bid sheet to

pharmaceutical companies with whom CVS sought to do business. And, it is not apparent from the record that anything prevented a pharmaceutical company from sharing information on CVS's bid sheet when negotiating with other pharmacy corporations. The court thus denies the request to seal Exhibit 44. But, the court will allow redaction of the "WAC Administrate Fee" percentage found on page four of the exhibit since this information represents a term of contracting with CVS.

The court further grants in part the request to seal Exhibit 72. Here, the passage at 271:1–15 contains potentially confidential and proprietary information about Magellan's practices and services. Magellan thus has sustained its burden as to this portion of the exhibit. But, 271:16–272:22 contains only general information about how health insurance companies seek the lowest price for prescription drugs. And, the information relayed in this passage already can be found in the public domain. Accordingly, while Mylan may redact lines 271:1–15, the remainder of Exhibit 72 must be made accessible to the public.

The court denies the request to seal Exhibit 49. Exhibit 49 contains what amounts to speculation between a Mylan employee and a CVS employee about drug pricing. And, the very fact that the information was shared between separate corporations undermines the assertion that the information is highly sensitive. The speculative nature of the e-mail conversation also defeats any argument that the e-mail chain reveals negotiation strategy. This is particularly true about the top two e-mails in the chain; neither one reveals anything of substance about Mylan or CVS.

The court also denies the Mylan defendants' request to seal Exhibit 101. In support of the request, the Mylan defendants assert that they received the information in this exhibit from third parties with the understanding that the information would remain sealed. Mylan also

argues that the document is marked "Highly Confidential." Doc. 1527-1 at 11. But, understandings and agreements between parties, including Mylan's promises to third parties, are insufficient to sustain the request to seal where the court has an independent duty to protect the public interest in inspecting judicial documents.

Also, Mylan and the third parties ask to redact information from nine additional Exhibits. The court grants the redaction requests as it applies to the highlighted portions of Exhibits 23, 24, and 71. These passages contain contractual and competitively sensitive information about the business practices of third parties. The proponents of the redaction requests could be placed at an unfair business disadvantage in future ventures if the highlighted passages were exposed to the public, including their competitors. Accordingly, the proponents of these requests have sustained their burdens and overcome the strong presumption favoring public access.

The court grants in part and denies in part the requests to redact highlighted passages in Exhibit 7. Exhibit 7 contains excerpts of the deposition of plaintiffs' expert Meredith B. Rosenthal, Ph.D. The exhibit largely contains Ms. Rosenthal's opinions and general information about the sources upon which she relied when forming her opinions. But, some of the opinions reference sensitive information provided by Mylan. For that reason, and in an effort to narrowly tailor the redactions, the court grants the request to redact (1) 133:13–25; (2) 179:1–7; and (3) 258:1–10. The request to redact the remaining highlighted passages—50:1–9, 51:14–25, 138:3–20, 171:6–15, and 261:14–20—is denied because these passages either discuss Mylan's sensitive information at a high level of generality or reveal, at most, that Mylan performed a sales forecast without explicitly stating the specifics of that sales forecast. That Mylan engaged in sales forecasting is hardly surprising, and disclosing that it did so is unlikely to harm Mylan.

The court also grants in part the request to redact Exhibit 21. Exhibit 21 contains excerpts of the deposition of Prime Therapeutics's Federal Rule of Civil Procedure 30(b)(6) witness. The court grants the request to redact 72:23–25 and 130:1–25 because both passages reveal specifics about negotiations in which Prime Therapeutics engaged. The court, however, denies the request to redact 72:10–22 as this testimony provides general details about the negotiation process that do not appear unique to Prime Therapeutics. The court also denies the request to redact 20:1–6 as the record does not establish that information identifying which one of Prime Therapeutics's employees negotiated with particular pharmaceutical companies is secret information.

The court also grants, in part, the request to redact Exhibit 25. Exhibit 25 contains excerpts of the deposition of Humana's Rule 30(b)(6) witness. The court grants the request to redact 18:1–13, 19:13–19, 217:8–24, and 284:10–285:25 as these passages reveal information unique to Humana or discuss Humana's negotiations at a high level of specificity. The court denies all other proposed redactions because they discuss general practices or information that is available publicly. *See* 294:16–25 (discussing methods individuals use to pay for prescription drugs).

The court also grants in part the request to redact four passages in Exhibit 16, which contain excerpts of OptumRx's Rule 30(b)(6) witness. The court denies the requests to redact 30:17–31:12, 36:17–21, and 37:12–25 because the deponent provided general responses that, on the record and arguments before the court, do not appear to be unique to OptumRx. But, the court grants the request to redact 282:1–25 because this passage reveals terms of a contract to which OptumRx is a party.

The court denies the request to redact passages in Exhibit 38. The passages merely contain Professor Einer Elhauge's opinions based on estimates he received and assumptions he made. And, the passages do not actually contain in-depth discussions of Mylan's strategy and process when formulating any estimates.

Finally, the court denies the request to redact information in Exhibit 97 because the information at issue does not reveal Mylan's method of calculation. Also, the projected data that Mylan seeks to redact appears stale where it predates the redaction request by many years.

### 2. Requests by Plaintiffs

Plaintiffs request that the court seal two exhibits and require Mylan to file redacted versions of an additional 32 exhibits. Plaintiffs generally fail to sustain their burden of demonstrating how the information they seek to shutter from public view is unique to a named plaintiff or is likely to be used against any named plaintiff absent redaction. Similarly, plaintiffs generally fail to narrowly tailor their requests. And, plaintiffs fail to consider what information already is exposed, explicitly or implicitly, to the public through unredacted portions of the exhibits.

On a more specific level, most of plaintiffs' requests fall into six categories: (1) information revealing that plaintiffs purchased EpiPens; (2) when plaintiffs purchased EpiPens; (3) how much plaintiffs paid for EpiPens and whether they relied on a specific health insurance provider or a health savings account to cover all or part of the cost of the purchase; (4) how many EpiPens plaintiffs purchased at once and where they stored the EpiPens; (5) information about the specific allergy from which they or their children suffered; and (6) the names and identifying information of plaintiffs' children and of their medical providers. The court denies

8

requests falling into categories one through four and grants requests falling into categories five and six.

On the first category, by bringing suit, the named plaintiffs revealed that they and/or their children need EpiPens and that they purchased EpiPens. Thus, while purchases of EpiPens reveal general medical information about the named plaintiffs—that they experience some type of severe allergic reaction—this already is publicly available knowledge given their participation in the action.

On the second category, plaintiffs fail to "articulate a real and substantial" interest for redacting the dates on which they purchased EpiPens. *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). And, where most of the purchases occurred several years ago, it is not apparent to the court how public knowledge of the purchase dates is likely to be used against any named plaintiff.

On the third category, the price plaintiffs paid for EpiPens and their out-of-pocket costs are central to the litigation, enhancing the strong presumption favoring public access. Additionally, plaintiffs do not specify how the amount paid for EpiPens is information likely to be used against plaintiffs. Likewise, plaintiffs provide no explanation why disclosing plaintiffs' health insurance companies or their use of health spending accounts to cover the cost of purchasing EpiPens is likely to be used against plaintiffs. And, the age of the information about plaintiffs' insurance carriers and health savings accounts further decreases any remote likelihood that the information might be used against any named plaintiff.

On the fourth category, it is not apparent to the court why the number of EpiPens a plaintiff purchased at once needs to be redacted. Furthermore, it is unsurprising that individuals

9

who need EpiPens would store them in their homes, on their persons, and at schools where their children spend much of the day. None of this information is unique to a given plaintiff, and the court sees no basis for redacting the information.

On the fifth category, specific information about when a given plaintiff experienced or sought treatment for an allergic reaction is appropriate material to keep out of the public's eye. This is especially so where a plaintiff's actual use of an EpiPen device is not central to the resolution of the claims advanced. And, a named plaintiff's personal interest is heightened when the medical information is about that named plaintiff's minor child.

On the sixth category, the names and identifying information of named plaintiffs' children and medical providers are highly personal. Furthermore, this information has no bearing on the merits of the litigation or the court's class certification analysis.

With these conclusions in mind, the court addresses each of the plaintiffs' seal and redaction requests:

- ∎ Exhibit 1 (Doc. 1503-4): The court denies the request. Page 49 of the document contains information only about the number of EpiPens certain named plaintiffs possessed and where the EpiPens were stored. But it does not contain any information about the named plaintiffs' medical conditions or any identifying information about the named plaintiffs' children. Further, while pages 140 and 144–46 contain some information specific to Local 282, it cannot be said that all or most of the information on those pages is worthy of sealing. But, plaintiffs fail to make any effort to narrowly tailor their seal request and the court will not undertake this effort in the first instance.
- ∎ Exhibit 4 (Doc. 1503-6): The court denies the request.

10

- Exhibit 5 (Doc. 1527-8): The court grants in part and denies in part the request. The exhibit mainly summarizes when named plaintiffs purchased EpiPens, what forms of insurance and payments they used to purchase the EpiPens, where they stored EpiPens, whether their children's schools maintained any EpiPens, and whether they recall any deceptive statements made by defendants when they advertised and marketed EpiPens. Information of this nature does not qualify for sealing. This is particularly true for the named plaintiffs who broadcasted their information on Facebook. *See, e.g.*, 1527-8 at 4, 8, 11, 21, 23. But, five excerpts of this exhibit contain information about plaintiffs' use of EpiPens and are appropriate for redaction: (1) the sentences following "Need for multiple doses" in Ms. Aggarwal's Table A summary, *id.* at 2; (2) the sentence following "Need for multiple doses" in Ms. Bowersock's Table A summary, *id.* at 3; (3) the last sentence of the Table A summary for Ms. Huelsman, *id.* at 5; (4) text up to "Ex. 94" in the section of Ms. Sutorik's Table A summary entitled "Received advice from a doctor that two doses of epinephrine may be needed," *id.* at 8; and (5) the last parenthetical sentence in Mr. Rippy's Table C summary, *id.* at 16.
- Exhibit 6 (Docs. 1527-9 through 1527-14): The court denies the request. This exhibit spans 1,000 pages and some of the information, such as whether named plaintiffs had insurance and how much they paid for EpiPens, does not meet the threshold for sealing. Further, plaintiffs make no effort to narrowly tailor their seal request. But, the court observes that Exhibit 6 contains personal identifiers, including social security numbers and dates of birth, that must be redacted. The exhibit also contains the names of plaintiffs' children and medical providers, which also are

appropriate for redaction. Accordingly, the court permits the parties ten days from the date of this Order to move to file a redacted version of Exhibit 6 that complies with the conclusion set forth in this Order.

- Exhibit 14 (Doc. 1527-16): The court grants the request to redact 105:4–6 because those lines reveal information about a minor. The court denies all other proposed redactions.

- Exhibit 15 (Doc. 1527-17): The court grants the request to redact 126:1–4, 172:18–20, and 187:12–18 because those lines reveal the names of medical providers. The court denies all other proposed redactions.

- Exhibit 31 (Doc. 1527-28): The court denies the request.

- Exhibit 32 (Doc. 1527-29): The court grants the request to redact 141:19–21 and further permits redaction of the name of Ms. Svites's doctor at 110:23. The court denies all other proposed redactions.

- Exhibit 33 (Doc. 1527-30): The court grants the request to redact 102:5–8 and Ms. Nordstrom's child's name at 174:3. The court denies all other redaction requests. The court observes that a plaintiff's place of employment, as well as a plaintiff's spouse's place of employment, frequently appear in deposition testimony and court records. Plaintiffs' requests to redact this material are frivolous. The court also observes that, in this deposition, plaintiffs did not seek to redact the price Ms. Nordstrom paid for EpiPens, *see* Doc. 1527-30 at 15 (Nordstrom Dep. 122:4–7), underscoring the rather inconsistent and arbitrary nature of many of plaintiffs' redaction requests.

- Exhibit 40 (Doc. 1527-33): The court grants the request to redact 121:19–25, 122:12–20, and 122:23–24. The court also permits redaction of: (1) the name of Ms. DeStefano's son's doctor at 118:4 and 118:7–8; (2) Ms. DeStefano's son's name at 121:9; and (3) Ms. DeStefano's son's grade level at 142:10 and 142:12. The court denies all other proposed redactions.
- Exhibit 41 (Doc. 1528-1): The court grants the request to redact 74:18–21 but denies all other proposed redactions.
- Exhibit 42 (Doc. 1528-2): The court grants the request to redact 80:5–82:25, 140:15–17, 150:1–7, 150:18–22, 151:3, and 152:9–10. The court, further permits redaction of Ms. Aggarwal's son's name at 111:15, 111:18, 114:20, and 114:22. The court denies all other proposed redactions.
- Exhibit 63 (Doc. 1528-13): The court grants the request to redact 143:4–11 and permits redaction of the names of Mr. Seltzer's son's doctors at 135:6, 135:10, 135:13, 135:16, 136:3, 136:10, 136:18, 142:19. The court denies all other proposed redactions.
- Exhibit 64 (Doc. 1528-14): The court permits redaction of the name of Mr. Beaulieu's doctor at 132:2 and 132:5 but denies all other proposed redactions.
- Exhibit 75 (Doc. 1528-17): The court grants the request in full.
- Exhibit 76 (Doc. 1528-18): The court grants the request to redact 61:22–25 and 126:11–25 but denies all other proposed redactions.
- Exhibit 77 (Doc. 1528-19): The court denies the request.
- Exhibit 78 (Doc. 1528-20): The court denies the request.
- Exhibit 79 (Doc. 1528-21): The court denies the request.

- Exhibit 80 (Doc. 1528-22): The court denies the request.

- Exhibit 81 (Doc. 1528-23): The court grants the request to redact 107:6–15 and 107:23–25. The court also permits redaction of Mr. Rippy's daughter's name, the name of her doctor, and the name of her school at 98:12, 98:13, 98:24, 111:11, 116:1, 116:5, and 116:7–8. The court denies all other proposed redactions.

- Exhibit 82 (Doc. 1528-24): The court grants the request to redact 92:2–3. The court further permits redaction of the name of Mr. Ipson's daughter and the name of her doctor at 79:21 and 79:24. The court denies all other proposed redactions.

- Exhibit 83 (Doc. 1528-25): The court permits redaction of the name of Ms. Krimmel's son's doctors at 132:18, 137:3, 137:4, and 137:8. The court denies all other proposed redactions.

- Exhibit 84 (Doc. 1528-26): The court denies the request.

- Exhibit 85 (Doc. 1528-27): The court grants the request to redact 98:12–13 and 98:20–22 as these passages discuss purchases of non-epinephrine prescriptions. The court denies all other proposed redactions.

- Exhibit 86 (Doc. 1528-28): The court permits redaction of Ms. Huelsman's doctor's name at 59:16 and 59:17. The court denies all other proposed redactions. The court observes that where a witness lacks memory on a subject, the witness's answer does not reveal any information about the witness, and requests to redact such testimony are frivolous.

- Exhibit 87 (Doc. 1528-29): The court grants the request to redact 146:3–11 and 160:16–22. The court also permits redaction of Ms. Shepard's son's name at 180:4 and 180:6 and the name of the street where Ms. Shepard's pharmacy is located (but

not the name of the pharmacy) at 180:25. The court denies all other proposed
redactions.

- Exhibit 88 (Doc. 1528-30): The court grants the request to redact 157:14–25 but denies the request to redact 152:14–22.

- Exhibit 89 (Doc. 1528-31): The court permits redaction of Ms. Clements's son's name at 83:19, 83:24, 105:15, 105:21, 106:4, 106:10, and 106:19. The court denies all other proposed redactions.

- Exhibit 92 (Doc. 1528-32): The court grants the request to redact 140:13–24, 147:11–13, the name of Ms. Johnston's doctor at 147:23, and the name of Ms. Johnston's daughter at 148:7. The court denies all other proposed redactions.

- Exhibit 93 (Doc. 1528-33): The court grants the request to redact 166:23–25. The court also permits redaction of the name of Ms. Sumner's son's doctor and information about when he visited the doctor, as discussed at 122:16, 122:20, 122:23, and 147:3. The court denies all other proposed redactions.

- Exhibit 94 (Doc. 1528-34): The court permits redaction of Ms. Sutorik's daughters' names at 109:18, 109:23, 113:12, 113:14, 133:19, 134:6, 134:20, 136:3, 136:24, 139:7, 148:13, and 148:23. The court also permits redaction of the names of Ms. Sutorik's daughters' doctors at 110:4, 113:16, 134:23, and 134:25. The court denies all other proposed redactions.

- Exhibit 95 (Doc. 1528-35): The court grants the request to redact 146:16 because it contains specific medical information about Ms. Walton's son. The court also permits redaction of the name of Ms. Walton's son's doctor at 154:2. The court denies all other proposed redactions.

- Exhibit 100 (Doc. 1528-37): The court denies the request.

### 3. Sanofi's Requests

Sanofi advances eight redaction requests. Doc. 1527-3 at 4–5. The first two requests involve portions of Exhibits 21 and 27 and are controlled by this court's earlier analysis of those exhibits. *Supra* at 4, 7. The remaining six requests involve documents not listed in the Mylan defendants' exhibit list. *See* 1527-7 (exhibit list for Mylan defendants' renewed motion); *see also* Doc. 1503-2 (exhibit list to Mylan defendants' initial motion to seal). The court thus is uncertain whether Mylan actually intends to rely on those exhibits in opposition to class certification. And, the exhibits do not appear within Documents 1527 or 1528 for the court to review the proposed redactions. The court denies these six requests without prejudice to the Mylan defendants or Sanofi renewing the request if the renewed request is accompanied by the exhibits in question.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the process for proposing seal and redaction requests in Pfizer Defendants' Motion for Leave to File Documents Preliminarily Under Seal and for Approval of Sealing Process (Doc. 1507) is approved.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Pfizer Defendants' Renewed Motion to File Under Seal Certain Exhibits in Support of its Opposition to Class Certification (Doc. 1526) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the process for proposing seal and redaction requests in Mylan Defendants' Motion for Leave to Preliminarily File Documents Under Seal and for Approval of Sealing Process (Doc. 1503) is approved.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Mylan Defendants' Renewed Motion for Leave to File Documents Under Seal (Doc. 1527) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties have **10 days** from the date of this Order to move to file a redacted version of Exhibit 6 that complies with the conclusions set forth in this Order.

**IT IS SO ORDERED.**

**Dated this 4th day of June, 2019, at Kansas City, Kansas.**

>                             **s/ Daniel D. Crabtree**
>                             **Daniel D. Crabtree**
>                             **United States District Judge**