UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION**<br><br>This Document Relates To:<br>**CONSUMER CLASS CASES** | Case No. 2:17-md-02785-DDC-TJJ<br>(MDL Docket No. 2785) |

# CLASS PLAINTIFFS' MOTION TO COMPEL THE MYLAN DEFENDANTS' RESPONSES TO THEIR NINTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Class Plaintiffs, individually and on behalf of the putative class, by and through their undersigned attorneys, hereby move the Court for an Order overruling Mylan's objections to Class Plaintiffs' Ninth Set of Requests for Production of Documents and compelling production of responsive documents, as narrowed by Class Plaintiffs during meet and confer.

## I.     INTRODUCTION

Class Plaintiffs' Ninth Set of Requests for Production (collectively, the "Requests" or "Ninth RFPs") seeks documents regarding two issues that are unique to non-coordinated discovery: *first,* Mylan's removal of the single EpiPen from the U.S. market and "hard switch" to the 2-pak exclusively, and *second*, Mylan's entry into anticompetitive "pay-for-delay" settlements to stall the entry of generic competition to the EpiPen. Class Plaintiffs seek these documents from individuals identified as having unique information or knowledge relating to these issues, whose files have not been previously searched. In other words, Class Plaintiffs' Ninth RFPs seek documents from specific individuals regarding narrow issues that are unique to non-coordinated discovery. Mylan does not dispute the relevance of the Requests. Class Plaintiffs do not seek to have these individuals added as ESI custodians generally; rather, we seek targeted documents relating to important non-coordinated discovery topics.

Class Plaintiffs have substantially narrowed the requests in several respects to address Mylan's concerns with burden. Unfortunately, as of the time of this filing, after over a month of discussion, Mylan has not indicated whether or not it will produce responsive documents. Nor has Mylan provided Class Plaintiffs with any specific information to substantiate a claim of burden. Accordingly, Class Plaintiffs respectfully request that Mylan be ordered to produce documents responsive to the narrowed Ninth RFPs.

## II.     BACKGROUND

On March 1, 2019, Class Plaintiffs served their Ninth Set of Requests for Production.[1] Those Requests sought documents relating to Class Plaintiffs' claims concerning Mylan's hard switch to the EpiPen 2-Pak exclusively and its pay-for-delay settlements from specific individuals identified during non-coordinated discovery.  As relevant to this Motion, these focused Requests seek the following:

- **RFP Nos. 1-2 and 4** seek documents from Ivona Kopajna, Lloyd Sanders, and Joseph Carrado regarding Mylan's elimination of the single EpiPen from the U.S. market and decision to sell the EpiPen exclusively as the 2-Pak.

- **RFP No. 6** seeks documents from Ray Wolf regarding the 2-Pak, his communications with Dr. Phillip Lieberman, and his communications with other Mylan advocacy partners or groups, including the NIAID.

- **RFPs Nos. 7-9** seek documents from Joseph Haggerty, Douglas Miner, and Andrea Tiglio regarding Mylan's pay-for-delay settlements.

- **RFP No. 10** seeks documents from Howard Martin regarding Nuvigil and Mylan's generic Armodafinil.[2]

On April 1, 2019, Mylan served its Responses and Objections to the Ninth RFPs.  Mylan stood on its objections, refusing to produce any documents.  Mylan's principal objection to the requests was that they constituted "an improper attempt to add [] new custodians."[3]  Mylan also

---

[1] Attached as Exhibit A to the Declaration of Alison E. Chase submitted herewith ("Chase Decl.").
[2] *Id.*
[3] Chase Decl. Exh. B at pp.2-3, Objections 1-3 (Mylan's Responses and Objections).

2

asserted a standard roster of boilerplate objections based on overbreadth, burden, disproportionality, and privilege.[4]

On April 11, 2019, Class Plaintiffs sent a letter to Mylan setting forth, in detail, the purpose of each of the Requests.[5] On April 15, 2019, the parties first met and conferred regarding the Requests.[6] During that conference, Mylan reiterated its objections. Class Plaintiffs proposed, as a method of resolving the dispute, to provide search terms and time periods tailored specifically to each of the Requests and sent those proposed search parameters to Mylan on April 29, 2019, for its consideration.[7]

The parties conferred again on May 2, 2019. Mylan did not make a counterproposal to the search parameters proposed by Class Plaintiffs. Instead, Mylan's counsel demanded that Class Plaintiffs narrow the Requests and the proposed searches further. Initially, Mylan asked Class Plaintiffs to eliminate certain of the Requests altogether, by reducing the number of individuals from whom documents were sought. According to Mylan, the bulk of the burden and expense in conducting the requested searches came with the number of individuals searched; that is, Mylan represented that the bulk of the expense was incurred in gathering a custodian's documents. In addition – and with respect to the proposed search parameters – Mylan asked that Class Plaintiffs further narrow both the timeframes of the requested searches and language of the requested searches.[8]

---

[4] *Id.*
[5] Chase Decl. Exh. C (Ltr. A. Chase to J. Bernick and D. Foster, April 11, 2019).
[6] *Id.* ¶6.
[7] Chase Decl. Exh. D (Ltr. A. Chase to K. Ali and C. DeLone, April 29, 2019 & attachment).
[8] Mylan asked, among other things, that Class Plaintiffs: (1) eliminate certain search terms; (2) remove "root expanders" from certain search terms; and (3) reduce the "proximity limiters" in certain search strings. *See, e.g.*, Chase Decl. ¶8 & Exh. E (Ltr. A. Chase letter to C. DeLone, May 6, 2019 & attachment).

Although Mylan had not made a concrete counter-proposal, Class Plaintiffs endeavored to further narrow and tailor their requested searches in an effort to resolve the parties' dispute. On May 6, 2019, Class Plaintiffs sent that revised search request to Mylan.[9] Most significantly – to address Mylan's representation that the bulk of the burden and expense in conducting the searches was incurred with the number of custodians – Class Plaintiffs reduced the number of individuals from whom documents were requested from 12 to 8. In effect, Class Plaintiffs agreed to forgo RFPs Nos. 3, 5, 11, and 12. In addition, Class Plaintiffs' revised search proposal: (1) further limited the timeframes for the requested searches, in most cases substantially; (2) narrowed the requested search terms and strings by, *inter alia*, removing root expanders and reducing proximity limiters; and (3) further tailored the requested searches to subject matter of each individual's specifically requested information.[10]

On May 9, 2019, Mylan acknowledged receipt of Class Plaintiffs' proposed compromise with respect to the Ninth RFPs and represented that it would provide a response "probably mid-week next week" (that is, the week of May 13, 2019).[11] After not receiving a response from Mylan, Class Plaintiffs sought an update.[12] On May 15, 2019, Mylan replied that "[w]e are in the process of running the searches that you proposed…we have not yet been able to get results so that we can confer with our client. We will get back to you as soon as possible[.]"[13] As of this filing, Mylan has not provided its response to Class Plaintiffs' proposed compromise.[14] Accordingly, Class Plaintiff must move to compel Mylan's compliance with its Requests.

---

[9] Chase Decl. Exh. E (Ltr. A. Chase to C. DeLone, May 6, 2019 & attachment).
[10] *Id.*
[11] Chase Decl. Exh. F (E-mail C. DeLone to A. Chase, May 9, 2019).
[12] Chase Decl. Exh. G (E-mail A. Chase to C. DeLone, May 15, 2019).
[13] Chase Decl. Exh. H (E-mail C. DeLone to A. Chase, May 15, 2019).
[14] On May 17, 2019, as Class Plaintiffs were preparing this filing, Mylan's counsel informed Class Plaintiffs that Mylan was still "in the process of running and evaluating plaintiffs' proposed search terms…" and proposed a further extension. In light of the passage of time, however, Class

**III. ARGUMENT**

    **A. Class Plaintiffs' Requests Are Narrowly Tailored and Relevant to the Issues in This Case.**

The Ninth RFPs seek documents from individuals who have knowledge regarding two important issues unique to non-coordinated discovery: (1) Mylan's hard-switch to the 2-Pak and removal of the single EpiPen from the U.S. market and (2) Mylan and Pfizer's pay-for-delay litigation settlements.

        **1. The 2-Pak Issue and Designated Custodians Are Central to Class Plaintiffs' Case**

The Complaint alleges that Mylan and Pfizer implemented a "hard switch" to the 2-Pak, eliminating the single EpiPen from the U.S., based upon a false pretext of medical necessity.[15] This allegation is a "substantial part of the EpiPen pricing scheme."[16] Discovery has confirmed that profits – not medicine – drove Mylan's hard switch to the EpiPen 2-Pak. In late 2010, Mylan's Bruce Foster ███████████████████████████[17] ███████████████████████████ ███████████[18] Lloyd Sanders, the chief operating officer ███████████████ ███████████████████████████ ███████████ Mylan aptly named the scheme ██████████ In short, Ms. Kopanja and Mr. Sanders were ███████████████████████████ ███████████████████████████████████[19]

---

Plaintiffs believe it is necessary to move forward with its Motion. Class Plaintiffs remain willing to continue conferring regarding the Requests.
[15] Compl. ¶¶325-347; *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2018 WL 3973153, at *7-8 (D. Kan. Aug. 20, 2018).
[16] ECF No. 1342 (Class Pls.' Memo. Law Supp. Mot. Class Cert.).
[17] *See* Chase Decl. Exh. I (MYEP00650326).
[18] *See* Chase Decl. Exh. J (MYEP00650327) (emphasis added).
[19] *See* Chase Decl. Exh. K (MYEP00723310 [Kopanja states in January 6, 2011 e-mail to Foster:

5

The ▮▮▮▮ team consisted of persons from various Mylan departments, ▮▮▮▮ ▮▮▮▮ who each handled aspects of the project related to their respective departments.[20] Discovery has shown that Sanders, Kopanja, Wolf, and Carrado were all heavily involved with ▮▮▮▮, yet none of their documents were searched.[21] Mylan should have identified and searched Sanders, Kopanja, Wolf, and Carrado's documents from the outset; at the very least, Mylan should now be required to produce all documents identified by Class Plaintiffs' proposed narrowed search terms during non-coordinated discovery.

### a.     Lloyd Sanders and Ivona Kopanja

As mentioned, ▮▮▮▮ ▮▮▮▮. Bruce Foster has testified that ▮▮▮▮ ▮▮▮▮.[22] Ms. Kopanja was the ▮▮▮▮ ▮▮▮▮. She ▮▮▮▮ ▮▮▮▮ Mylan's CEO Heather Bresch.[23] Regarding ESI custodians, Class Plaintiffs now know that Sanders and Kopanja ▮▮▮▮ ▮▮▮▮, and their documents should be searched

---

▮▮▮▮ (emphasis added)]).
[20] *See* Chase Decl. Exhs. L (MYEP01025544 at p.3) and M (MYEP00724515).
[21] *See* Chase Decl. Exhs. L (MYEP01025544 p.3) and M (MYEP00724515). Compare ▮▮▮▮ in MYEP01025544 and MYEP00724515 with Mylan's ESI custodians set forth in David Foster's March 14, 2018 e-mail to Judge James showing only Bruce Foster, Lauren Kashtan, and Mike Stout as ESI Custodians that were part of ▮▮▮▮. *Id.* at Exh. N (E-mail A. Levin to S. Davidson, *et al.*, January 29, 2018 & attachment).
[22] *See* Chase Decl. Exh. O (excerpts from Deposition of Bruce Foster at 420:7-15 [stating ▮▮▮▮ were the main people in ▮▮▮▮).
[23] *See, e.g.*, Chase Decl. Exhs. P (MYEP01207484), Q (MYEP00877965 [▮▮▮▮ ▮▮▮▮), R (MYEP01339093), and S (MYEP00437021).

6

according to the narrow terms and time periods proposed by Class Plaintiffs. None of the ESI custodians previously searched compare to Mr. Sanders and Ms. Kopanja's central and leading role in ▉▉▉▉.

### b.   Joseph Carrado

Mr. Carrado was Mylan's Vice President for Specialty Regulatory Affairs and part of ▉▉▉▉.[24] Based on discovery to date, Mr. Carrado had responsibility for the ▉▉▉▉ ▉▉▉▉ with CEO Heather Bresch and Pfizer employees ▉▉▉▉.[25] He also provided input and revisions for written ▉▉▉▉ ▉▉▉▉.[26] Importantly, Mylan has identified no other ESI custodian relating to ▉▉▉▉. Given that Mr. Carrado possessed unique knowledge relating to the ▉▉▉▉ ▉▉▉▉ and, given that Mylan has designed no custodian relating to those specific ▉▉▉▉ issues, Mr. Carrado's documents should be searched according to the narrow search parameters proposed by Class Plaintiffs.

### c.   Ray Wolf

Mr. Wolf was Mylan's Medical Director and assigned to ▉▉▉▉. He was ▉▉▉▉ ▉▉▉▉ ▉▉▉▉.[27] Indeed, Mylan's interactions with Mr. Lieberman were specifically pleaded in the Complaint and Mr. Wolf was ▉▉▉▉. Mr. Wolf was also responsible for

---

[24] Chase Decl. Exh. T (MYEP00724455 ▉▉▉▉ ▉▉▉▉.
[25] *See, e.g.*, Chase Decl. Exhs. U (MYEP00433151) and V (PFE_EPIPEN_AT00486005).
[26] *See, e.g.*, Chase Decl. Exhs. W (MYEP01275289) [Carrado ▉▉▉▉]) and X (MYEP01338696).
[27] *See* Chase Decl. Exhs. Y (MYEP01313598 at p.2) and Z (MYEP01339094).

responding to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[28] For these reasons, Mr. Wolf's documents should be searched. Indeed, given that he ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ for the hard switch in the U.S. market, Mr. Wolf should have been an ESI custodian from the outset.

### 2. The Pay-for-Delay Issue and Custodians Are Central to Class Plaintiffs' Case

Mylan and Pfizer's illegal pay-for-delay settlements, which they pursued and entered into to maintain their monopoly power in the EAI market, are a central allegation in Class Plaintiffs' Complaint.[29] The Court is aware of the background with respect to discovery on these custodians, as set forth in Class Plaintiffs' August 2, 2018 Status Report in anticipation of the August 9, 2018 Status Conference.[30] That is, Mylan initially deferred providing discovery regarding Class Plaintiffs' pay-for-delay allegations, seeking to delay this discovery until after the Court's order on the Defendants' Motions to Dismiss.[31]

Initially, Mylan searched only a single custodian relevant to Class Plaintiffs' pay-for-delay allegations: Ms. Mini Bhatt. Mylan insisted that Ms. Bhatt was the correct custodian for these searches. However, Ms. Bhatt's deposition revealed that she ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆,[32] *just* ▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[33] Mylan's original custodian list was thus plainly inadequate: Ms. Bhatt was the only custodian designated by Mylan on pay-for-delay issues and

---

[28] *See* Chase Decl. Exh. AA (MYEP00723829).
[29] Compl. at ¶¶236-324.
[30] Chase Decl. Exhs. BB (Class Plaintiffs' August 2, 2018 Status Conference Report), CC (Tr. Excerpt of August 9, 2018 Status Conference), DD (Class Plaintiffs' September 6, 2018 Status Report); ECF No. 872 (Order Memorializing Rules from August 9 Status Conference).
[31] *See* ECF No. 896 (Order on Motion to Dismiss).
[32] Chase Decl. Exh. EE (excerpt from Deposition of Mini Bhatt at 114:10-15).
[33] Chase Decl. Exh. FF (MYEP01361499 [▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆]).

yet possessed no knowledge of the settlements, ▮▮▮▮▮▮. Accordingly, Class Plaintiffs sought additional custodians. Mylan—eventually—agreed to search just two additional custodians' files for documents relevant to Class Plaintiffs' pay-for-delay allegations (Joseph Divinigracia and Jill Ondos). Significant gaps, however, remained in Mylan's search for documents relating to Class Plaintiffs' pay-for-delay allegations; a significant issue for and focus during non-coordinated discovery.

### a.  Joseph Haggerty, Douglas Miner, and Andrea Tiglio

Mr. Haggerty was Mylan's Senior Vice President and Global General Counsel in the relevant time frame. In Mylan's Amended Privilege Log, Mr. Haggerty ▮▮▮▮▮▮. In Mylan's Nuvigil-specific supplemental privilege log (or "Supplemental Privilege Log"), he ▮▮▮▮▮▮. Mr. Haggerty can also be found on ▮▮▮▮▮▮.[34] Mr. Haggerty is clearly a relevant custodian for Class Plaintiffs' pay-for-delay allegations regarding the Teva settlement.

Similarly, the documents of Mr. Douglas Miner and Ms. Andrea Tiglio should be searched for documents relating to Class Plaintiffs' pay-for-delay allegations. Ms. Tiglio was Mylan's Associate Litigation Counsel from May 2010-March 2012. She participated in key communications ▮▮▮▮▮▮.[35] She ▮▮▮▮▮▮

---

[34] Chase Decl. at Exhs. GG (PFE_EPIPEN_AT00740269 [April 2012 e-mail thread between ▮▮▮▮▮▮), HH (Teva_EPI_MDL00013750 [April 26, 2012 e-mail between ▮▮▮▮▮▮, and II (Teva_EPI_MDL00013751).
[35] *See* Chase Decl. Exh. JJ (MYEP0131365 [May 2012 e-mail thread regarding ▮▮▮▮▮▮).

9

███████████████████████████████████████████████

███████████████████████. Mr. Miner was Mylan's First VP and Associate Global General Counsel. ███████████████████████████████████████

███████████████████████.

To recap: notwithstanding the importance of Class Plaintiffs' pay-for-delay allegations, Mylan has designated only two custodians with relevant knowledge of the pertinent litigations and settlements. Given the inadequacy of Mylan's search for documents on this important non-coordinated discovery issue and the development of non-coordinated discovery, it is appropriate that the files of Mr. Haggerty, Mr. Miner, and Ms. Tiglio be searched.

### b. Howard Martin

Martin was Mylan's Director of New Product Portfolio Management from 2009-2014. To date, Mylan has not identified a single *business-side employee* relating to Class Plaintiffs' pay-for-delay allegations. As noted above, Mylan had designated only three custodians with respect to pay-for-delay issues and one of those, Mini Bhatt, lacked any knowledge of these issues, having joined Mylan ███████████████████████████████████. All of these custodians, in any event, are attorneys. Mylan has not identified any custodians on the business side with knowledge of Mylan's efforts to introduce a generic Armodafinil tablet to compete with Nuvigil.

Mylan's projections of its expected date of entry into the Nuvigil market and its projections for revenues, costs, and profits are all relevant to assessing the consideration and value exchanged in the Nuvigil-for-EpiPen trade. Mr. Martin no doubt has documents containing relevant, responsive information, and he should be added as a custodian.

### B. Mylan's Objections Lack Merit.

Following the close of coordinated discovery back in 2018, Class Plaintiffs began "focus[ing] on the issues unique to [its] own case." Mem. Order 5, Mar. 18, 2019 (ECF No. 1496). The Ninth RFPs, as narrowed, seek documents that are plainly relevant and appropriately requested

during the non-coordinated discovery period. Tellingly, Mylan does not challenge their relevance, and any potential burden has already been reduced by Class Plaintiffs' offer to narrow the Requests and limited search proposal.[36]

Mylan's objections to the Ninth RFPs are, by and large, inapplicable boilerplate. Mylan's principal objection to the Ninth RFPs is that the parties already agreed to a list of custodians, search terms, and string searches at the outset of the coordinated discovery period. Mylan's objection lacks merit for three principal reasons.

*First*, Class Plaintiffs seek focused searches. Class Plaintiffs do not seek to have the individuals identified herein added as custodians generally. As the Court will recall, the initially agreed-upon search terms were extensive and spanned a time period of several years.[37] Class Plaintiffs do not seek broad searches of Sanders, Kopajna, Wolf, Carrado, Haggerty, Tiglio, Miner, and Martin's documents. Rather, Class Plaintiffs seek – and have proposed – targeted searches of these individuals' documents. The proposed searches, moreover, are for narrowly targeted time periods.

*Second*, the initial search terms and custodians were agreed upon early in the coordinated discovery phase of this litigation. Discovery has progressed; recently the focus of that discovery has been non-coordinated matters. Through the course of discovery, it has become apparent that there are gaps in Mylan's initial custodian list. These gaps are the most glaring with respect to

---

[36] Mylan has no basis to dispute this direct connection between the Requested custodians and the Class Plaintiffs' claims, and therefore, it cannot meet its "burden to show the information does not come within the broad scope of relevance as defined by Fed. R. Civ. P. 26(b) or the potential harm outweighs the presumption in favor of broad disclosure." *Gilbert v. Rare Moon Media, LLC*, No. 15-mc-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) ("Relevance is broadly construed, and the court should permit a request for discovery unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.") (emphasis in original).

[37] *See* Chase Decl. Exh. N (E-mail A. Levin to S. Davidson, *et al.*, on January 29, 2018 & attachment).

11

two issues that are unique to Class Plaintiffs' Complaint and non-coordinated discovery: the 2-Pak and pay-for-delay.

With respect to the 2-Pak, Mylan failed to search the files of the two individuals in charge of " ▮▮▮▮▮▮▮" Lloyd Sanders and Ivona Kopajna.  It is only through discovery that Class Plaintiffs learned of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Through discovery, moreover, Class Plaintiffs learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mylan has designated no other custodians equivalent to Mr. Wolf or Mr. Carrado and this deficiency should be corrected.  With respect to Class Plaintiffs' pay-for-delay allegations, obtaining discovery from Mylan has been an ongoing process.  Mylan initially sought to defer the production of Nuvigil-related documents until the Court's ruling on its Motion to Dismiss.  Mylan then searched and produced a limited set of documents from a single, inadequate custodian, Mini Bhatt.  Although Mylan later agreed to search two additional attorney custodians, its search remains inadequate and, through the course of non-coordinated discovery, Class Plaintiffs have identified additional individuals whose documents should be searched to correct the ongoing inadequacy of Mylan's search for documents relating to these important issues.

*Third*, Class Plaintiffs' requests are in keeping with the cooperative, iterative approach to discovery that this District and other districts encourage.  The Kansas ESI Guidelines call the discovery process "cooperative."  D. Kan. Gen. Prac. Guidelines, Discovery of ESI, ¶ 2.  Courts in other districts have referred to the ESI process in particular as "iterative."  *See In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2018 WL 1146371, at *2 (N.D. Ill. Jan. 3, 2018) ("Developing efficient keyword search terms is an iterative process and will require transparent and cooperative efforts by both the producing and requesting Party"); *Walker v. N. Las Vegas*

*Police Dep't*, No. 214CV01475JADNJK, 2016 WL 8732300, at *3 (D. Nev. May 13, 2016) ("Where, as here, counsel are using keyword searches for retrieval of ESI, the parties must work together to implement an iterative process for finalizing the search terms.") (internal quotations and citation omitted).

A final note: Class Plaintiffs are mindful of the Court's advisement that it would not compel further ESI searches based on "mere[] suspicion[]." Each custodian has been selected based on specific documentation located within discovery, documents which demonstrate beyond a doubt the importance of the individual requested. Class Plaintiffs seek these documents based on clear evidence that these individuals are in possession of highly relevant, and often unique, knowledge relating to non-coordinated discovery matters. Further, and as noted above, Class Plaintiffs do not request that these individuals be added as ESI custodians generally. Rather, Class Plaintiffs propose very narrow searches, for narrow time periods. Despite meeting and conferring for weeks (if not months) regarding the Ninth RFPs, we note that Mylan has articulated no undue burden with respect to the searches requested by Class Plaintiffs.

## IV.    CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court order Mylan to produce responsive documents requested in Class Plaintiffs' Ninth Set of Requests for Production.

| | | |
|---|---|---|
| Dated: May 17, 2019 | By: | */s/ Lynn Lincoln Sarko* |

Lynn Lincoln Sarko
KELLER ROHRBACK, L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900; Fax: (206) 623-3884
lsarko@kellerrohrback.com

***Co-Lead Counsel for Class Plaintiffs***

14

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion to Compel the Mylan Defendants' Responses to Their Ninth Set of Requests for Production of Documents was served upon the following counsel by e-mail this 17th day of May 2019.

Philip Sechler
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP
1801 K Street NW, Suite 411L
Washington, DC 20006
psechler@robbinsrussell.com

*Liaison Counsel for Defendants*

Seattle, WA
Dated: May 17, 2019

*/s/ Lynn Lincoln Sarko*
Lynn Lincoln Sarko
