IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>**(This Order Applies to Consumer Class Cases)** | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter comes before the court on three motions: (1) "Class Plaintiffs' Motion for Leave to Preliminarily File Documents Under Seal and for Approval of Sealing Process" (Doc. 1554); (2) "Mylan Defendants' Motion to File Documents Under Seal in Connection with Class Plaintiffs' Class Certification Reply Brief" (Doc. 1568); and (3) non-party OptumRx's motion to seal two exhibits (Doc. 1591). The court grants plaintiffs' request to preliminarily file under seal the exhibits in support of their Reply. And, the court grants in part and denies in part the Mylan defendants' motion and OptumRx's motion.

### I. Legal Standard Governing Seal Requests

The court incorporates into this Order the legal standard governing seal requests set forth in the court's Memorandum and Order addressing the requests to seal exhibits attached to the Mylan and Pfizer defendants' responses to plaintiffs' class certification motion. Doc. 1608 at 1–3.

### II. Analysis

The Mylan defendants seek to seal two exhibits submitted in support of plaintiffs' Reply and seek redactions to five additional exhibits submitted in support of plaintiffs' Reply. Doc.

1568 at 1; *see also* Doc. 1568-1 (chart providing reasoning for seal and redaction requests). OptumRx seeks to seal one exhibit and to redact portions of a second exhibit. Docs. 1591, 1610. Both exhibits at issue in OptumRx's motion also are at issue in the Mylan defendants' motion, but OptumRx's motion asks the court to approve more extensive redactions. Plaintiffs oppose the seal and redaction requests. Docs. 1569, 1600. The court has analyzed each request and announces the following conclusions.

       A.      **Exhibit 97 (Docs. 1554-3/1568-3)**

Exhibit 97 is the reply expert report of Meredith Rosenthal, Ph.D. Mylan seeks redaction of twelve passages in the report. Parts 1–8, following, discuss each of the 12 requests.

              1.  **Figure 1**

Figure 1 on page 6 of the report contains sales, pricing, and market share data for epinephrine injectors. Doc. 1568-3 at 8. The court previously authorized redaction of this material in a nearly identical figure appearing in Ms. Rosenthal's initial expert report. *See* Doc. 1477 at 2 (court order); Doc. 1500-3 at 10–11 (redacted version of Ms. Rosenthal's initial expert report). The court thus grants Mylan's request to redact Figure 1. But, the court advises Mylan that should this information prove important to the court's resolution of the class certification issue, the court will revisit this redaction request.

              2.  **Figure 2**

Figure 2 on page 7 of the report depicts price-trend data. Doc. 1568-3 at 9. Although the court previously authorized redaction of this material, Figure 2 was presented by both plaintiffs and Mylan in open court during the class certification hearing. And, Mylan does not present an argument overcoming the heightened strong presumption in favor of public access where a

document already has been exposed to the public. The court thus denies the request to redact Figure 2 from the reply expert report.

### 3. Paragraph 17, Including Footnote 22

Paragraph 17 of the reply expert report discusses Mylan's forecast of sales if it withdrew the EpiPen single pack from the market. Doc. 1568-3 at 14. The passages subject to Mylan's redaction request reveal that Mylan performed a market review, as well as the results of that review. *Id.* But, the passages do not discuss Mylan's methods or processes when performing its review. And, where the analyses involve data from 2011 and 2012, the results of the analyses appear stale. Mylan has not established how public disclosure of this information is likely to disadvantage its business interests unfairly. The court denies the request to redact Paragraph 17, including Footnote 22.

### 4. Paragraph 28, Including Footnote 37

The court denies the request. While the highlighted passages refer to Mylan's forecasting, they do so at a high level of generality and without specifying Mylan's reasoning when performing the forecast. And, this forecast, as well Ms. Rosenthal's use of the forecast, were discussed in open court at the class certification hearing.

### 5. Footnote 44

One sentence in Footnote 44 alludes to a Mylan internal document. But, the sentence does not reveal anything about the methods Mylan used to reach its conclusions. And, other than stating that the information has been labeled as "Highly Confidential," Mylan provides no insight how the sentence, if exposed to the public, is likely to be used against Mylan's business interests unfairly. The court thus denies the request.

### 6. Footnote 60 and Paragraph 55

These two passages contain data about purchases of EpiPens, specifically what percent of customers refilled prescriptions annually and what percent of customers bought single EpiPens. The report discusses these figures as historical approximations. And, there is a likelihood that this data will prove important in the court's class certification decision. When balanced against Mylan's rather conclusory claim that the information is "Highly Confidential," Mylan has not met its burden or overcome the strong presumption favoring public access. The court thus denies the request.

### 7. Footnote 61

Footnote 61 is nothing more than a citation to a document. The citation reveals nothing about the substance of the document. The court denies the request as frivolous.

### 8. Attachments C, D, E, and F

The court previously authorized redaction of this material. *See* Doc. 1477 at 2 (court order); Doc. 1500-3 at 61–113 (redacted version of Ms. Rosenthal's initial report). With one exception, the court thus grants Mylan's request to redact Attachments C through F. Attachment C.6.a was, without objection from Mylan, exposed to the public during the class certification hearing. The court thus denies the request to redact Attachment C.6.a. The court further advises Mylan that should the redacted information in the other attachments prove important to the court's resolution of the class certification issue, the court will revisit this redaction request.

### B. Exhibit 98 (Docs. 1554-4/1568-4)

Exhibit 98 is the reply expert report of Einer Elhauge. Mylan requests to redact fourteen passages in the report. Parts 1–8, following, discuss each one of the 14 requests.

### 1. Paragraph 17, Including Figure 15

The court denies the request. It is true that the information in this paragraph is from Mylan's internal documents and that the court previously permitted redaction of the information. But the information appears relevant to the class certification determination, is several years old, and Mylan does not establish how the information is likely to reveal anything about Mylan's future business practices. Also, Mylan did not object to plaintiffs displaying Figure 15 in open court during the class certification hearing.

### 2. Paragraph 26

The court denies the request. One of plaintiffs' primary contentions argues that Mylan's profit margins increased, so it is of no surprise that plaintiffs' expert would point to purported evidence supporting that contention. Also, while statements suggesting that Mylan's EpiPen profit margins increased may damage Mylan's public reputation, it is not apparent how statements by one of plaintiffs' experts reveal information about Mylan's future business practices. And, Mylan's alleged increasing profits during this time period were discussed in open court during the class certification hearing.

### 3. Paragraph 34 and Footnote 45

The court grants the request in part. The highlighted text in Footnote 45 reveals specific terms of an agreement between Pfizer and Mylan, and is appropriate for redaction. But, the text in the body of Paragraph 34 is an obvious conclusion that follows from earlier sentences in the paragraph, which are not subject to a redaction request. And, Mr. Elhauge discussed the substance of the text in the body of Paragraph 34 while testifying at the class certification hearing.

### 4. Paragraph 37

Consistent with the court's reasoning in Document 1608 and because this figure was discussed in open court during the class certification hearing, the court denies the request.

### 5. Paragraph 38, Including Footnote 57

The court denies the request. Although the court previously approved redaction of this information, the information was submitted to two government agencies and was discussed almost verbatim in open court during the class certification hearing.

### 6. Paragraph 65, Including Parentheticals in Footnotes 120 and 121

The court grants the request in part. The footnote text delves into Mylan's business practices and could reveal sensitive information about its strategy to its competitors. The court thus grants the request to redact the parenthetical information in these footnotes. But, the text in the body of Paragraph 65 contains Mr. Elhauge's conclusions. These conclusions were discussed in open court during his testimony at the class certification hearing, so the court denies the remainder of this request.

### 7. Paragraph 96

The court denies the request. The information proposed for redaction is an expert's opinion and does not reveal anything about Mylan's ongoing business practices. In fact, Mylan contests the accuracy of the expert's regression model and, in turn, the accuracy of the results of his regression.

### 8. Pages 46–49, 51–54, 56–59, and 61–64

The court grants the request in part. The pages at issue, among other things, contain tables showing Mr. Elhauge's regression models. The court permits redaction of columns labeled "Mylan Quantity" and "Mylan Quantity Sold" because numbers in those columns come

from Mylan's internal documents and may reveal sensitive information to Mylan's competitors. But, in an effort to tailor the constraint on public access as narrowly as possible, the court denies all other redaction requests. The remaining columns of these tables are Mr. Elhauge's calculations, based on models that Mylan contends are inaccurate. And Mylan's motion to exclude Mr. Elhauge's expert opinion (Doc. 1588) requires the court to examine Mr. Elhauge's methodology such that the information in these tables likely is important to the resolution of a key issue in the class certification determination.

    **C.**    **Exhibit 100 (Docs. 1554-5/1568-5/1591-1)**

Exhibit 100 is an excerpt of the deposition testimony of OptumRx's Federal Rule of Civil Procedure 30(b)(6) witness. Mylan moves to redact three passages of the deposition—225:1–8, 225:21–23, and 226:1–227:25. OptumRx moves to redact all of pages 225–27 and 230–32.[1] *See* Doc. 1610 at 2 (OptumRx's Reply withdrawing request to redact pages 228–29). The court grants in part and denies in part the requests. The court denies the request to redact passages on page 225. The majority of page 225 features questions and objections from counsel, rather than substantive answers from the witness. And, because plaintiffs did not file page 224 of the deposition, nothing of substance can be gleaned from the text on page 225. The court grants the request to redact 226:1–227:25 of the deposition as this passage includes quoted language from a potentially sensitive communication between Mylan and OptumRx, as well as OptumRx's Rule 30(b)(6) witness's explanation of that communication. The court denies OptumRx's request as it applies to pages 230–32 of the deposition. Pages 230:1–231:23 discuss interactions that

---

[1] In its motion, OptumRx contends plaintiffs failed to meet and confer with OptumRx and did not follow the court-aproved procedures for filing documents marked "Confidential" and "Highly Confidential." As no documents submitted by plaintiffs in support of their reply brief on class certification were exposed to the public before OptumRx moved to seal documents, the court concludes OptumRx's argument on this front is moot for purposes of determining whether the documents should be filed under seal or with redactions.

7

OptumRx had or did not have with members of the public, primarily payers and patients. By their nature, any such communications were not confidential. And, the vast majority of the witness's answers suggest either a lack of knowledge by the deponent or that OptumRx did not even engage in the communications discussed in this line of questioning. This portion of the deposition testimony does not reveal information about actions actually taken by OptumRx. Finally, 231:24–232:25 contains information about the timing of the deposition and an attorney introducing himself to the witness. Neither type of information is remotely worthy of redaction.

### D. Exhibit 101 (Docs. 1554-6/1568-6/1591-2)[2]

Exhibit 101 is a rebate agreement that contains specific terms of a contract between RxSolutions, Inc. (OptumRx) and Dey Pharma L.P. Exposing these terms to the public, including the parties' competitors, might disadvantage OptumRx and Dey's business interests unfairly. And, previously the court has sealed agreements containing information of this general nature. *See* Doc. 1608 at 4 (granting request to seal Exhibits 18, 19, 20, and 62). The court thus grants the request to file Exhibit 101 under seal.

### E. Exhibit 102 (Docs. 1554-7/1568-7)

The court denies the request. Mylan's argument for redaction, which relies heavily on the designation of the document as "Highly Confidential," does not satisfy the threshold for sealing. Also, where plaintiffs claim that Mylan illegally raised EpiPen prices, the information in Exhibit 102 likely is central to the issues before the court. Finally, the public domain includes volumes of information about Mylan raising the price of EpiPens.

---

[2] Mylan and OptumRx move to seal this exhibit.

### F. Exhibit 103 (Docs. 1554-8/1568-8)

The court grants the request in part. Lines 148:4–13 and 149:11–25 reveal specific information from Mylan's forecast that a competitor might be able to use to determine Mylan's forecasting methods. These two passages are appropriate for redaction.

The court denies all other proposed redactions. First, 144:2–10, as well as the non-aforementioned passages comprising pages 146–49, speak about Mylan's forecast too generally to support the redaction request based on the argument and evidence presented by Mylan in support of the request. Second, the information discussed at 145:18 should come as no surprise to the public or Mylan's competitors. The court has every reason to believe the matter discussed here is a normal practice by any pharmaceutical company when performing a forecast. Third, it is not apparent how 158:6–8 reveals any pertinent information about Mylan's forecasting methods. Fourth, the argument Mylan presents for redacting 161:13–25—that Mylan told a third party that this information would remain sealed, *see* Doc. 1568-1 at 4 (Mylan's argument for redacting 161:12–25)—is insufficient to overcome the strong presumption in favor of public access.

### G. Exhibit 111 (Doc. 1554-12/1568-9)

The court denies the request. First, concerning 144:12–145:19, Mylan acknowledges the terms of its coupon offer were available to members of the public who used the coupons. And, while the information at 145:13–19 goes beyond the terms of the coupon offer, Mylan fails to explain how public disclosure of this subset of the redaction request could be used against Mylan's business interests. Second, the passages at 146:15–22 and 148:15–20 involve the expert's understanding of what Mylan did, rather than a statement of fact about Mylan's actions.

9

Third, the witness's answers in the passage spanning 150:5–151:17 generally are nonresponsive and do not shed any substantive light on Mylan's actions, business strategy, forecasting methods, or sensitive internal information.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' request for leave to preliminarily file under seal the exhibits in support of their Reply is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the "Mylan Defendants' Motion to File Documents Under Seal in Connection with Class Plaintiffs' Class Certification Reply Brief" (Doc. 1568) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** OptumRx's motion to seal two exhibits (Doc. 1591) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs shall file redacted versions of the exhibits offered in support of their reply brief on certification no earlier than 14 days from the date of this Order and no later than 30 days from the date of this Order. The 14-day delay in the filing of the redacted versions is intended to provide OptumRx adequate time to decide if it wishes to file an interlocutory appeal of the court's partial denial of its motion.

**IT IS SO ORDERED.**

**Dated this 14th day of June, 2019, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**