# Exhibit 10

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO. 2:17-MD-02785-DDC-TJJ (MDL No. 2785) |
| SANOFI-AVENTIS U.S., LLC, <br><br> Plaintiff, <br> v. <br> MYLAN INC., et al., <br><br> Defendants. <br><br> *This Document Relates to the* Sanofi *case.* | CASE NO. 2:17-CV-02452-DDC-TJJ |

## SUPPLEMENTAL EXPERT DISCLOSURE
## OF THOMAS R. VARNER, PH.D.

1. In my February 4, 2019 Expert Report, my April 18, 2019 Rebuttal Report, and my May 29, 2019 deposition, I described legal instructions I had received from Mylan's counsel regarding the parties' burdens under the Lanham Act.[1] Counsel had instructed me that, under the Lanham Act, Mylan could seek a recovery measured in several ways for its counterclaims against Sanofi, specifically, disgorgement of "defendant's profits," recovery of "any damages sustained by the plaintiff," and recovery of "the costs of the action."[2] (In the context of Mylan's counterclaims, "defendant" refers to Sanofi and "plaintiff" refers to Mylan.)

---

[1] *Varner Expert Report*, 2/4/19, ¶¶ 9, 11, 31, and 33; Exhibit 1, Note 2; Exhibit 1.1, Note 2; and Exhibit 6.3, Note 2. *Varner Expert Rebuttal Report*, 4/18/19, ¶¶ 6, 35, and 42.
[2] *Varner Expert Report*, 2/4/19, ¶ 9.

2.     Counsel had further instructed me that, with respect to Mylan's claim for "[Sanofi]'s profits," it was Mylan's burden to prove Sanofi's sales, and Sanofi's burden to "prove all elements of cost or deduction claimed."[3]  With respect to Mylan's claim for "damages sustained," I was given the same instruction, *i.e.*, to "assume that all Sanofi's Auvi-Q® sales were sold as a result of the alleged false and misleading representations made by Sanofi," and that under the Lanham Act "it is the burden of [Sanofi] to identify and apportion those sales that are attributable to the false and misleading representations."[4]  Although I testified that these instructions were consistent with my reading of the Lanham Act and practice in prior cases, I also testified that I was "not putting myself forward as an attorney or offering a legal opinion" on the correct interpretation of the Lanham Act; I was only describing my legal instruction from counsel.[5]

3.      Counsel has recently provided me with a revised legal instruction with respect to the claim for Mylan's "damages sustained." Counsel now instructs me that it is not the burden of Sanofi under the Lanham Act to apportion Mylan's lost profits. (Counsel's instruction with respect to Mylan's claim for "[Sanofi]'s profits" remains unchanged—namely, that it is Sanofi's burden to "prove all elements of cost or deduction claimed.")

4.     My calculation of "Mylan's lost profits" in *Varner Expert Report* does not change based on this revised legal instruction, remains a reliable methodology, and my opinion accurately represents "Mylan's lost profits" given the "assum[ption] that all Sanofi's Auvi-Q® sales were sold as a result of the alleged false and misleading representations made by Sanofi."[6]

---

[3] *Varner Expert Report*, 2/4/19, ¶ 11, 31.
[4] *Varner Expert Report*, 2/4/19, ¶ 33.
[5] Deposition of Thomas Varner, 5/29/19, pp. 70-75 and 112-113.
[6] *Varner Expert Report*, 2/4/19, ¶ 33.

5.  My calculation of "Mylan's lost profits" in *Varner Expert Report* provides a benchmark for the maximum potential recovery of Mylan's "damages sustained." A jury, relying on evidence presented by counsel through fact witnesses at trial, can determine for itself what percentage of Mylan's lost profits are attributable to Sanofi's conduct, and then multiply that percentage by the total measure of potential lost profits that I have calculated in *Varner Expert Report*. This is consistent with what I stated at my deposition, with respect to both "[Sanofi]'s profits" and Mylan's "damages sustained": "[I]t's probably not a hundred percent of their sales … that would not have occurred, but as I say in my second report, it's not zero percent either."[7] However, as I stated in my deposition, "I'm not quantifying the percentage" attributable to Sanofi's conduct.[8] "The full extent of the impact of [Sanofi's alleged wrongful] statements is ultimately a question for the jury to make . . . ."[9]

I declare under penalty of perjury that the forgoing is true and correct.

Executed on June 26, 2019, in Oakland, California.

*[signature]*

Thomas R. Varner, Ph.D.

---

[7] Deposition of Thomas Varner, 5/29/19, p. 105.
[8] Deposition of Thomas Varner, 5/29/19, p. 64.
[9] *Varner Expert Rebuttal Report*, 4/18/19, ¶¶ 6, 37.

3