**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO.: 2:17-MD-02785-DDC-TJJ<br><br>Hon. Daniel D. Crabtree<br><br>Hon. Teresa J. James |
| SANOFI-AVENTIS U.S. LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br><br> v.<br><br>MYLAN Inc., *et al.*,<br><br>    Defendants/Counterclaim Plaintiffs.<br><br>**This Document Relates to the *Sanofi* Case**. | CASE NO.: 2:17-CV-02452-DDC-TJJ<br><br>*Document Filed Electronically* |

**SANOFI-AVENTIS U.S. LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO MYLAN'S MOTION TO EXCLUDE OPINION TESTIMONY OF
MARY ANN MICHELIS, M.D.**

## **TABLE OF CONTENTS**

                                                                                                              **Page**

PRELIMINARY STATEMENT ...............................................................................................1

LEGAL STANDARD..................................................................................................................2

ARGUMENT .................................................................................................................................3

I.       Dr. Michelis is a Highly Qualified Allergist Who Will Help the Jury ................................3

II.     Dr. Michelis's Opinions Are Reliable and Mylan's Challenges All Fail ............................4

         A.       Dr. Michelis's Opinions on Prescribing Factors Are Grounded in Prominent Medical Journals, Medical Training, and 40 Years of Clinical Experience.......................................................................................................... 4

         B.       Mylan Incorrectly Calls Dr. Michelis's Opinions on the Impact of Insurance Coverage Unreliable.................................................................................... 8

         C.       Dr. Michelis's Opinion on Pharmaceutical Sales Representatives is Reliable and Admissible ........................................................................................ 9

         D.       Dr. Michelis's Rebuttal Opinions on EpiPen Recalls and Shortages are Proper................................................................................................................. 10

CONCLUSION............................................................................................................................11

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Blood Reagents Antitrust Litig.*,
    No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ........................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..................................................................................................................2

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*,
    388 F.3d 976 (6th Cir. 2004) ....................................................................................................6

*In re DVI, Inc. Sec. Litig.*,
    No. 03-5336, 2014 WL 4634301 (E.D. Pa. Sept. 16, 2014) ......................................................2

*Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*,
    No. 14-cv-1859, 2017 WL 3592775 (N.D. Ill. Aug. 21, 2017) ......................................5, 6, 10

*Forest Labs., Inc. v. Ivax Pharm., Inc.*,
    237 F.R.D. 106 (D. Del. 2006) .................................................................................................9

*Kieffer v. Weston Land, Inc.*,
    90 F.3d 1496 (10th Cir. 1996) ..................................................................................................2

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)..................................................................................................................6

*McCoy v. Whirlpool Corp.*,
    258 Fed. App'x 189 (10th Cir. Dec. 5, 2007) ...........................................................................8

*In re Namenda Direct Purchaser Antitrust Litig.*,
    331 F. Supp. 3d 152 (S.D.N.Y. 2018).......................................................................................2

*United States v. Nacchio*,
    555 F.3d 1234 (10th Cir. 2009) ................................................................................................3

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    No. 02-MD-1468-JWL, 2008 WL 4382141 (D. Kan. Sept. 26, 2008)......................................8

*In re Urethane Antitrust Litig.*,
    166 F. Supp. 3d 501 (D.N.J. 2016) .......................................................................................2, 7

*Util. Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*,
    267 F.R.D. 368 (D. Kan. 2010).................................................................................................2

**Other Authorities**

Federal Rule of Evidence 702........................................................................................................3

## PRELIMINARY STATEMENT

Dr. Mary Ann Michelis, a highly qualified allergist treating adults and children in New Jersey, provided three expert reports and testimony concerning the treatment of anaphylaxis – a life-threatening allergic reaction that affects millions of Americans. Her core opinions in this case describe the symptoms and severity of anaphylaxis, the treatment of anaphylaxis with epinephrine auto-injectors ("EAI devices"), and epinephrine products available to patients. None of these opinions are challenged by Mylan. There is no question that a jury will be aided by Dr. Michelis's opinions on these key aspects of this case.

Mylan also raises no questions about Dr. Michelis's qualifications. Her 40 years of practice in the field of allergy and immunology amply support her qualifications to testify. And, her leadership roles in both the allergy and pediatrics departments at the top-rated hospital in New Jersey provide her more than sufficient expertise in prescribing EAI devices to both children and adults.

Mylan simply disagrees with some of Dr. Michelis's opinions and has brought this partial motion to exclude her testimony as a venue to air its grievances. But a disagreement among experts is not a proper basis to exclude expert testimony. A jury is entitled to evaluate Dr. Michelis's opinions (and those of Mylan's medical expert, Dr. Blaiss), and to decide which ones are more persuasive. Moreover, the areas of testimony that Mylan challenges—such as the factors considered when prescribing EAI devices—are squarely within the wheelhouse of a skilled physician like Dr. Michelis and supported by the medical literature that she cites in her reports. Given that both parties agree that Dr. Michelis is qualified to testify, this court need not delineate which testimony is appropriate for trial and should, therefore, deny Mylan's partial motion to exclude Dr. Michelis's testimony.

## **LEGAL STANDARD**

Expert testimony is admissible if it is relevant and reliable.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  An expert's method need not be the "best" method.  Rather, "the test is whether the particular opinion is based on valid reasoning and reliable methodology." *In re Urethane Antitrust Litig.*, 166 F. Supp. 3d 501, 504 (D.N.J. 2016) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145–46 (3d Cir. 2000)).  *See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) ("An expert opinion must be based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required.") (alteration in original) (internal quotation marks omitted); *Util. Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*, 267 F.R.D. 368, 372 (D. Kan. 2010) (same); *In re DVI, Inc. Sec. Litig.*, No. 03-5336, 2014 WL 4634301, at *5 (E.D. Pa. Sept. 16, 2014) ("Proponents of expert testimony do not have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.").

Mylan's Motion "like so many such motions, is nothing more than a 'we do not agree with [an expert's] opinion so it is junk science' motion." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 174 (S.D.N.Y. 2018).  "[C]ross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of challenging admissible evidence.  *Daubert*, 509 U.S. at 596.  Questions regarding alleged "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211, at *14 (E.D. Pa. Oct. 19, 2015).

**ARGUMENT**

**I.     Dr. Michelis is a Highly Qualified Allergist Who Will Help the Jury**

Mylan does not—and cannot—dispute that Dr. Michelis is qualified to provide expert opinions in her capacity as an allergist. *See* Mem. in Supp. of Mot. to Exclude Opinion Testimony of Mary Ann Michelis, M.D., ECF No. 1678-1 ("Mem."). As the Chief of Allergy and Immunology for the Departments of Internal Medicine and Pediatrics at Hackensack University Medical Center ("Hackensack Hospital"), the No. 1 hospital in New Jersey, Dr. Michelis's credentials are incontrovertible. *See* Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 2; Hochstadt Decl. Ex. A (Awards and Accreditations for Hackensack Meridian Health). Nor does Mylan seek to challenge Dr. Michelis's testimony in its entirety. There is, therefore, no dispute that Dr. Michelis satisfies Fed. R. Evid. 702's requirement that the proffered expert be "qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

As the chair of two departments, Dr. Michelis is a rare crossover leader of the allergy practice in both internal medicine and pediatrics. Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) App'x A at 6. Dr. Michelis has treated children and adult allergy patients for 38 years and has practiced medicine for more than 40 years. *Id.* at App'x A at 1. In the last two years alone, Dr. Michelis has seen approximately 2,000 patients, some on multiple visits. *Id.* at ¶ 3. Her medical practice allows her to see patients in her office and in a hospital setting, where she consults with emergency room doctors and surgeons, who call on her expertise when allergic reactions occur in the hospital. *See* Hochstadt Decl. Ex. B (Michelis Dep. Tr. at 33:4-17; 124:10-125:12). She is board certified in Allergy and Immunology by the American Board of Allergy and Immunology and certified in Diagnostic Laboratory Immunology and Internal Medicine by the American Board of Internal Medicine. Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 2. Dr. Michelis is also an

3

active member of the American Academy of Allergy, Asthma & Immunology. *Id.* at ¶ 4.

Before she was recruited by Hackensack Hospital to pioneer an allergy and immunology laboratory in 1981, Dr. Michelis was an Allergy and Immunology fellow at Cornell University Medical Center and a post-doctoral fellow at Rockefeller University. *Id.* at ¶ 2. Dr. Michelis is therefore abundantly qualified to help the jury understand how doctors prescribe EAI devices, the importance of patient choice and the safety and efficacy of the devices, how insurance impacts prescribing decisions, how pharmaceutical sales representatives influence prescribing decisions, and the effect EpiPen shortages have had on anaphylaxis patients.

## II.  Dr. Michelis's Opinions Are Reliable and Mylan's Challenges All Fail

### A.  Dr. Michelis's Opinions on Prescribing Factors Are Grounded in Prominent Medical Journals, Medical Training, and 40 Years of Clinical Experience

Mylan argues that Dr. Michelis's opinions about patient preference, efficacy and safety of EAI devices, and prescribing factors are unreliable because they are only based on her "own observations." *See* Mem. at 5. That is neither true nor a cognizable basis to exclude expert testimony.

Mylan attempts to paint Dr. Michelis as an "occasional prescriber" of EAI devices and suggests that her practice is not "typical of other doctors." *Id.* at 1, 4. Nothing could be further from the truth. Mylan's own records show that Dr. Michelis was a regular prescriber of EAI devices. *See* Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 47 (citing Mylan's records tracking Dr. Michelis's EAI device prescriptions). During the time period between 2013 and 2016, Dr. Michelis prescribed over 650 EAI devices, which is particularly high given that EAI devices are prescribed infrequently and patients often go months or years without needing a new prescription. *Id.* at ¶ 47 n.56; *see also* Hochstadt Decl. Ex. C (Affidavit of Roger Graham in Support of Mylan's Motion for a Preliminary Injunction noting that "EpiPen® are used irregularly and have long shelf

4

lives.  As a consequence, it may be months or years before a person switched from EpiPen® returns to his or her medical provider for a new prescription.").  And, Dr. Michelis is a model of medical practice who teaches residents about anaphylaxis to prepare them for the American Board of Internal Medicine, treats 60-70 patients per week, and has been an allergist since before the EpiPen was introduced for clinical use.  Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶¶ 2-4.

Dr. Michelis's opinions are based on her extensive professional experience treating thousands of patients and are corroborated by medical journals, as well as the documents and fact testimony cited throughout her reports.  For example, Dr. Michelis cites multiple preference studies and Mylan documents to support her opinion that "many patients prefer Auvi-Q" due to its sleek shape and helpful voice instructions.  *See* Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 39 n.43-44.  Additionally, to support her opinion that the retractable needle "make[s] Auvi-Q a better choice for some patients" because it "reduces the opportunity for injuries," *id.* at ¶ 43, Dr. Michelis cites an article in the *Annals of Emergency Medicine* identifying severe skin lacerations that children, in particular, experienced while receiving an EpiPen injection.  *Id.* at ¶ 42 n.47.  Similarly, Dr. Michelis supports her opinion that doctors are trained to prescribe medication and often take a step-by-step approach to doing so, is supported by an article in the *American Family Physician* journal.  *See* Mem. Ex. 3 (Dr. Michelis Expert Report: Mar. 25, 2019) ¶ 10.

Mylan's reliance on *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14-cv-1859, 2017 WL 3592775 (N.D. Ill. Aug. 21, 2017) is misplaced.  Unlike *Elorac*, where plaintiff argued that a doctor "relied upon no research, studies or surveys of any kind to support his opinions," 2017 WL 3592775 at *22 (internal citations omitted), Dr. Michelis's opinions are amply supported by medical literature and her experience teaching and supervising other doctors.  Further, "no one denies that an expert might draw a conclusion from a set of observations based on extensive and

5

specialized experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999). Even the court in *Elorac* notes that it is "not inappropriate *per se* for an expert" to rely on professional experience. *See* 2017 WL 3592775 at *22; *see also Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 982 (6th Cir. 2004) (reversing district court's decision to exclude testimony of a cardiac thoracic surgeon, finding that his testimony was "supported by extensive relevant experience").

As Mylan itself argued in defense of its medical expert, Dr. Blaiss, in the related class action case, "the relevant inquiry [is] whether the expert's testimony is 'grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.'" Mem. of Law in Opp. to Class Pls.' Mot. to Strike the Partial Testimony of Dr. Michael Blaiss, ECF No. 1623 at 5 (citing Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). "Where an expert's 'factual basis, data, principles, methods or their application' are called into question, the court 'must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* at 6 (citing *Kumho*, 526 U.S. at 149). Mylan then proceeded to argue that Dr. Blaiss based his report "squarely [] on his extensive experience treating thousands of patients at risk of anaphylaxis and prescribing thousands of EAIs," and therefore he had the relevant expertise to opine on the interchangeability of EAI devices. *Id.* at 4, 6. The same result is warranted here. Like Dr. Blaiss's, Dr. Michelis's experience "could hardly be more relevant" to assessing medical factors at play, such as safety and efficacy, when prescribing an EAI device to her patients. *Id.* at 4. Additionally, the prescribing guidelines are within the accepted body of learning in her field and her opinions are grounded in medical journals. In fact, Dr. Blaiss relies on some of the exact same sources that Dr. Michelis cites. *See* Hochstadt Decl. Ex. D (Dr. Blaiss Expert Report: Mar. 25, 2019) at § 4.0 n.19 (citing Robert A.

6

Wood et al., *Anaphylaxis in America: The prevalence and characteristics of anaphylaxis in the United States,* 133 J. ALLERGY & CLIN. IMMUNOL., 461, 467 (2014)).  The fact that Dr. Blaiss employs a different approach to prescribing—not offering his patients the ability to participate in their own care—is not a valid reason to exclude Dr. Michelis's testimony on this issue.  *See* Hochstadt Decl. Ex. E (Blaiss Dep. Tr. at 201:14-202:5) (testifying that he did not let patients compare EAI devices side-by-side because "it was easier for me . . . to pick one.").

      Mylan's contention that Dr. Michelis must provide the percentage of patients who brought their EAI device to follow-up appointments misses the point.  *See* Mem. at 4.  Dr. Michelis's point is that many patients do not carry their EAI device regularly, which is documented by peer-reviewed journal articles that she cites and which she observes first-hand when she treats patients at follow-up appointments. Mem. Ex. 1 ¶ 22.  There is no prerequisite that she be able to quantify the exact number of patients who do not carry their devices regularly and, indeed, Mylan does not cite any legal authority supporting this made-up requirement.  Mem. at 4.  Rather, "the test is whether the particular opinion is based on valid reasoning and reliable methodology."  *In re Urethane Antitrust Litig.*, 166 F. Supp. 3d 501, 504 (D.N.J. 2016) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000)).  Dr. Michelis, a prominent allergist who has treated thousands of patients, has a reliable basis to testify that patient preference is a factor taken into account when prescribing EAI devices.  As Dr. Michelis states, because "EAI devices are life-saving products . . . the best EAI device for each patient is the one that he or she will carry."  Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 37.  Therefore, she opines that "[c]hoice increases the likelihood that my patients will carry their EAI device consistently and have it readily accessible in the event of an anaphylactic reaction."  *Id.*

### B. Mylan Incorrectly Calls Dr. Michelis's Opinions on the Impact of Insurance Coverage Unreliable

Mylan challenges Dr. Michelis's opinion that insurance coverage is a factor in a prescriber's decision making. As discussed above, Dr. Michelis's opinions on prescribing factors are rooted in scientific literature and prescribing guidelines that are accepted resources in her field of expertise. *See supra* II.A.

But Mylan's attack on Dr. Michelis is laughable in the face of its own theory of this case. Mylan's summary judgment briefing emphasizes the importance of insurance coverage, devoting 10 pages to describing the insurance landscape and touting "unrestricted coverage from leading health plans" as the key to the success of a product. *See* Mem. of Points and Authorities in Support of Mylan's Mot. for Sum. J., ECF No. 1673-1, at 1. Yet, Mylan hypocritically claims that Dr. Michelis's opinions on insurance coverage are "more prejudicial than probative," underscoring that Mylan's arguments are evidentiary issues, which are properly raised at trial. Mem. at 8.

Mylan essentially argues that Dr. Michelis's opinion is unreliable because *its* own medical expert disagrees with her. But Mylan cannot use this Court to usurp the jury's role as the arbiter of disputes between conflicting expert opinions. *See McCoy v. Whirlpool Corp.*, 258 Fed. App'x 189, 196 (10th Cir. Dec. 5, 2007) (expert testimony should not have been excluded for failure to address alternative arguments adequately; resolution of dispute between experts was properly within the province of the jury); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2008 WL 4382141, at *9 (D. Kan. Sept. 26, 2008) ("This dispute among the experts concerning whether other events caused over-recoveries of USF charges must be left for the jury."). Mylan's contention that Dr. Blaiss "did not have any issues with either Auvi-Q or EpiPen being covered by insurance" during the period that Sanofi sold Auvi-Q, Mem. at 8, is irrelevant and frankly, unsurprising given that Dr. Blaiss was not in practice seeing patients for the

8

majority of the time period when Sanofi marketed Auvi-Q. Hochstadt. Decl. Ex. E **(**Blaiss Dep Tr. at 70:4-71:1) ("Q. You were also the Director of Medical Affairs Allergen Immunotherapy at Merck from April 2014 to February 2016, right? A. Yes….[Q.] So you didn't see patients in this role, did you? A. No."). In contrast, Dr. Michelis has been a practicing physician treating allergy patients for over 40 years and, based on that experience, opines that "out of pocket cost to the patient" and insurance coverage is a factor she considers while prescribing EAI devices because if she prescribes a device that is too expensive or not covered "patients are less likely to fill the prescription." Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 44.

        C.     **Dr. Michelis's Opinion on Pharmaceutical Sales Representatives is Reliable and Admissible**

Mylan also argues that Dr. Michelis's opinion on messaging from pharmaceutical sales representatives is merely "late-disclosed fact testimony" and, therefore, inadmissible. Mem. at 9. But Mylan's insistence that Dr. Michelis cannot provide testimony "based on her experience" is wrong. *Id.* Courts allow physicians to testify about the impact of pharmaceutical marketing on their prescribing habits. *See Forest Labs., Inc. v. Ivax Pharm., Inc.*, 237 F.R.D. 106, 111-112 (D. Del. 2006). In *Forest Labs*, the court held that an expert physician's testimony that "drug marketing has an effect on physicians' prescribing habits" was admissible, reasoning that "a respected clinical psychiatrist with experience in writing prescriptions himself, as well as supervising others who write prescriptions," could be qualified to testify on "physicians' prescribing habits." *Id.* The court allowed the physician's testimony, finding that plaintiffs' challenge went to the weight to be afforded to testimony, and not to its admissibility. *Id.* Dr. Michelis's testimony is likewise based on her experience prescribing medications and many years of teaching and supervising other doctors' prescribing habits. A jury should have the opportunity to assess Dr. Michelis's testimony on the impact of pharmaceutical sales messages about EAI

9

devices and afford it the appropriate weight at trial.

Mylan's reliance on *Elorac* again is misplaced. In *Elorac*, a central factual issue was whether a pharmaceutical company's "efforts to commercialize the Product [had] been unsatisfactory" in breach of the parties' license agreement. *See* 2017 WL 3592775 at *2. There the court held that the physician's opinions on a company's "efforts to promote the Product" based on his "observations as a target of [the company's] salespeople" were inadmissible. *Id.* at 22. But here, Dr. Michelis is not offering opinions on whether marketing efforts were "commercially reasonable" in a contractual dispute. Rather, she is providing a physician's perspective on the impact of sales representatives' messages on prescribing habits. Such testimony is well within the ambit of a qualified physician and distinguishable from the testimony excluded in *Elorac.*

### D. Dr. Michelis's Rebuttal Opinions on EpiPen Recalls and Shortages are Proper

Though Mylan baldly asserts that Dr. Michelis's rebuttal testimony on EpiPen shortages due to manufacturing issues is not relevant, Mem. at 10-11, it has proffered the testimony of Dr. Blaiss, who devotes an entire section of his report to the impact of the Auvi-Q recall on prescribing habits. Hochstadt Decl. Ex. D (Dr. Michael Blaiss Report: Mar. 25, 2019) at § 8.0. Dr. Michelis is merely responding to Dr. Blaiss's opinions, and concluding that "[b]oth EpiPen and Auvi-Q have had recalls and come back to the market in this drug class." Mem. Ex. 2 (Dr. Michelis Report: Apr. 12, 2019) ¶ 20. Dr. Michelis should similarly have the opportunity to testify about the impact of ongoing EpiPen shortages and recalls, including the fact that the FDA issued a Warning Letter to the manufacturer of EpiPen stating that the company "failed to thoroughly investigate multiple serious component and product failures for [its] EpiPen products, including failures associated with patient deaths and severe illnesses." *Id* at ¶ 16 (quoting FDA Warning Letter, dated September 5, 2017); *see* Hochstadt Decl. Ex. F (FDA Warning Letter, dated September 5, 2017). As Dr. Michelis states in her report, this shortage has been a "significant issue in [her] practice"

and has left "some patients to do without their life-saving device." *Id.* at ¶¶ 16-17. According to Dr. Michelis, the EpiPen shortage also highlighted that it is "critically important" to have different options of "epinephrine auto-injectors available to combat a shortage." *Id.* at ¶ 18. Ultimately, having fewer options available only causes harm to patients, because, as explained in Dr. Michelis's initial expert report, "[c]hoice increases the likelihood that [] patients will carry their EAI device consistently and have it readily accessible in the event of anaphylactic reaction." Mem. Ex. 1 (Dr. Michelis Report: Feb. 2, 2019) ¶ 37. A jury should have the opportunity to assess both doctors' opinions about the impact of shortages or recalls on prescribing practices and afford each the appropriate weight.

## CONCLUSION

Dr. Michelis is a highly qualified, experienced allergist who has offered reliable opinions well within her medical expertise. Mylan's attempts to discredit her opinions by pointing to its own expert's contrary views, disputing that her experience is relevant, and ignoring the additional support she relies on are futile. For the foregoing reasons, Mylan's partial motion to exclude the opinion testimony of Dr. Mary Ann Michelis should be denied.

DATED: August 8, 2019

Respectfully submitted,

/*s*/ Eric S. Hochstadt

**WEIL, GOTSHAL & MANGES LLP**
Diane P. Sullivan
diane.sullivan@weil.com
17 Hulfish St., Suite 201
Princeton, NJ 08542
T: (609) 986-1120
F: (212) 310-8007

**WEIL, GOTSHAL & MANGES LLP**
Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
Eric S. Hochstadt
eric.hochstadt@weil.com
Randi Singer
randi.singer@weil.com
767 Fifth Avenue
New York, NY 10153
T: (212) 310-8000
F: (212) 310-8007

*Attorneys for Plaintiff and Counterclaim-Defendant Sanofi-Aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2019, the foregoing was filed via CM-ECF and by e-mail to all counsel of record.

/s/   *Eric S. Hochstadt*
Eric S. Hochstadt