IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation** | **CASE NO.: 2:17-MD-02785-DDC-TJJ**<br><br>Hon. Daniel D. Crabtree<br><br>Hon. Teresa J. James |
| **(This Document Applies to Consumer Class Cases)** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
OPINIONS AND PROPOSED TESTIMONY OF ANDREW K. TORRANCE**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION**............................................................................................................1 |
| **II.** | **LEGAL STANDARD** ....................................................................................................3 |
| **III.** | **ARGUMENT**..................................................................................................................4 |
| | A. | Professor Torrance's Testimony Would Not Be Helpful To the Court Because He Cannot Articulate a Basis for His Opinion That Teva Had an "Above 70%" Chance of Prevailing at Trial ...................................................................4 |
| | B. | Professor Torrance's Opinions Are Untethered to the Factual Record ..............6 |
| | C. | Professor Torrance Does Not Apply Accepted Methods and Principles for Analyzing Patent Validity....................................................................................9 |
| **IV.** | **CONCLUSION** ............................................................................................................11 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*BNSF Ry. Co. v. Lafarge Sw., Inc.*,
   No. 06-1076 MCA/LFG, 2009 U.S. Dist. LEXIS 117408
   (D.N.M. Feb. 15, 2009) ................................................................................................ 4, 6

*Chambers v. Fike*,
   No. 13-1410, 2015 U.S. Dist. LEXIS 10226 (D. Kan. Jan. 29, 2015) ................................ 8

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ........................................................................................... 9

*Conroy v. Vilsack*,
   707 F.3d 1163 (10th Cir. 2013) ......................................................................................... 6

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .............................................................................................. 1, 3, 4, 5

*Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*,
   43 F. 3d 1311 (9th Cir. 1995) ............................................................................................ 4

*Dodge v. Cotter Corp.*,
   328 F.3d 1212 (10th Cir. 2003) ......................................................................................... 3

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ....................................................................................................... 7, 9

*McCoy v. Whirlpool Corp.*,
   214 F.R.D. 646 (D. Kan. 2003) ......................................................................................... 3

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018) ............................................................................... 6

*OraLabs, Inc. v. Kind Grp. Ltd. Liab. Co.*,
   No. 13-cv-00170-PAB-KLM, 2015 U.S. Dist. LEXIS 103864
   (D. Colo. Aug. 7, 2015) ................................................................................................... 11

*State Farm Fire & Cas. Co. v. Bell*,
   30 F. Supp. 3d 1085 (D. Kan. 2014) .............................................................................. 8, 9

*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*,
   427 F. Supp. 2d 1022 (D. Kan. 2006) ............................................................................... 4

*United States v. Gabaldon*,
   389 F.3d 1090 (10th Cir. 2004) ......................................................................................... 3

*Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*,
    No. 09-2518-JAR, 2015 U.S. Dist. LEXIS 111609
    (D. Kan. Aug. 21, 2015) ........................................................................................................3

**STATUTES AND RULES**

Fed. R. Evid. 702 ...........................................................................................................1, 3, 4, 9

Professor Andrew K. Torrance, who has never been qualified as an expert witness,[1] opines on Teva Parenteral Medicines, Inc.'s ("Teva's") likelihood of success in a previous EpiPen® Auto-Injector ("EpiPen") related patent litigation, as well as the associated cost and duration of the litigation. The Court should exclude his opinion because it ignores the facts of the previous litigation, is not based on any reliable methodology, and will therefore not assist the trier of fact. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## I. INTRODUCTION

In 2009, Teva filed an Abbreviated New Drug Application ("ANDA") with the FDA seeking permission to sell a generic version of the EpiPen. In response, King Pharmaceuticals, Inc. (a subsidiary of Pfizer) filed a lawsuit against Teva regarding two of King's EpiPen patents, U.S. Patent Nos. 7,449,012 (the "'012 Patent") and 7,794,432 (the "'432 Patent").[2] Prior to trial, analysts suggested that "[t]he court's [claim constriction] decision . . . was favorable for [Pfizer] in its dispute with Teva."[3] During the four-day bench trial, Teva argued that it did not infringe the asserted claims and raised certain patent invalidity defenses. Relevant to the instant motion, Teva did not raise an inequitable conduct defense, an obviousness invalidity defense, or a prosecution history estoppel infringement defense. After trial, Judge Sleet encouraged the parties to continue settlement negotiations[4] and the parties settled the case before a judgment issued.

---

[1] Deposition of Andrew K. Torrance (March 5, 2019) ("Torrance Dep.") 31:25-33:4. Excerpts from this deposition are attached as Exhibit 1.

[2] *King Pharmaceuticals, Inc. v. Teva Parenteral Medicines, Inc.*, No. 1:09-cv-00652-GMS (D. Del.) ("Teva litigation"). The Teva litigation and a related litigation (*King Pharmaceuticals, Inc. v. Intelliject, Inc.*, No. 1:11-cv-00065-GMS (D. Del.) ("Intelliject litigation")) were consolidated (together, the "underlying patent litigation").

[3] PFE_EPIPEN_AT00516469, attached as Exhibit 2.

[4] Torrance Dep. 135:23-136:16.

1

In his report, Professor Torrance speculates that Teva had an "above 70%" chance of prevailing after trial.[5] Professor Einer Elhauge uses this "above 70%" opinion as part of the basis for his conclusion that Teva and Pfizer should have agreed to an earlier date for Teva's generic to enter the market. Thus, Professor Torrance's opinion is a critical component of Plaintiff's generic delay theory, and by extension, their Motion for Class Certification.

As explained by Defendants' expert, the Honorable David Folsom, the former Chief Judge of the U.S. District Court for the Eastern District of Texas, the opinions expressed in Professor Torrance's report and his subsequent deposition testimony are not the product of any reliable methodology, lack any support in the trial record, and fail to assist the trier of fact. *First*, Professor Torrance "analyzes [King]'s claims and Teva's defenses in a vacuum,"[6] wholly untethered to the trial record. Professor Torrance's opinion relies on several issues and defenses not included in the trial record: an inequitable conduct defense, an obviousness invalidity defense, a doctrine of equivalents infringement defense, the prosecution history of the patents, and the deposition testimony of one of King's witnesses. Further, even though Teva itself focused on non-infringement as its main defense at trial, Professor Torrance contradictorily concluded that Teva had a "relatively large probability of infringing."[7] In other words, Professor Torrance's opinion is that Teva would have *lost* on its primary defense of non-infringement but somehow would have *won* on defenses it *never raised at trial*.

*Second*, Professor Torrance is unable to provide any support for his opinions other than referring to "the totality of [his] experience," and "the totality of what [he] reviewed."[8] For

---

[5] Expert Report of Andrew K. Torrance (December 7, 2018) ("Torrance Rpt.") ¶¶ 2-4, 46-98.

[6] Expert Report of the Honorable David Folsom (March 18, 2019) ("Folsom Rpt.") ¶ 38. Plintiffs did not serve a reply report in response to Judge Folsom.

[7] Torrance Rpt. ¶ 76; *see also* Folsom Rpt. ¶¶ 66-69.

[8] *See* Torrance Rpt. ¶ 3(a); Torrance Dep. 199:11; 240:8-16; 277:4-17. Professor Torrance also opines that Intelliject had an "above 80%" chance of prevailing in the Intelliject litigation, that Intelliject's product did not infringe King's patents, and

2

example, Professor Torrance did not explain why he concluded that Judge Sleet's claim construction ruling was favorable to Teva. And for good reason: this claim construction conclusion contradicts Professor Torrance's ultimate conclusion regarding invalidity.[9] *Third*, Professor Torrance opines on the validity of the '432 patent, but fails to apply accepted patent validity legal principles. Indeed, despite the fact that Professor Torrance teaches his students to interpret the patent claim language and then compare the construed claims to the prior art, he did not do so here.

Opinions unsupported by a reliable methodology and untethered to the relevant facts do not pass muster under Fed. R. Evid. 702. Thus, the Court should exclude Professor Torrance's opinions and testimony.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 permits a party to offer expert testimony only if the expert's specialized knowledge will help "the trier of fact to understand the evidence or to determine a fact in issue" and "the testimony is the product of reliable principles and methods" that the "expert has reliably applied . . . to the facts of the case." Fed. R. Evid. 702. The Court serves as a gatekeeper regarding the admission of expert testimony, and must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004); *see also Daubert*, 509 U.S. at 597; *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 653 (D. Kan. 2003). An expert opinion "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation," and the "method employed by the expert in reaching the conclusion [must be] scientifically sound." *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, No. 09-2518-

---

that King's patents were likely invalid. Torrance Rpt. ¶¶ 91-93. Defendants move to exclude this testimony for the same reasons Torrance's Teva litigation opinions should be excluded.

[9] Folsom Rpt. ¶¶ 60-64.

3

JAR, 2015 U.S. Dist. LEXIS 111609, at *3-4 (D. Kan. Aug. 21, 2015) (internal citations omitted); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (same).  For expert testimony to help the trier of fact, the expert testimony offered must "fit" the facts and issues in dispute.  *Daubert*, 509 U.S. at 589, 591, 597.  The Court should exclude expert testimony that does not speak clearly and directly to an issue in dispute in the case, or that will mislead the factfinder.  *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F. 3d 1311, 1321 n.17 (9th Cir. 1995) (quotation omitted).

### III. ARGUMENT

#### A. Professor Torrance's Testimony Would Not Be Helpful To the Court Because He Cannot Articulate a Basis for His Opinion That Teva Had an "Above 70%" Chance of Prevailing at Trial

Professor Torrance cannot explain how he determined Teva's chance of success in the underlying patent litigation.  An expert's opinion is admissible only if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert,* 509 U.S. at 589-93; *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030 (D. Kan. 2006) ("The touchstone of admissibility is helpfulness to the trier of fact.").  Professor Torrance's baseless speculation will not help the Court determine whether settlement of the underlying patent litigation was reasonable.

Professor Torrance opines that Teva had an "above 70%" chance of success against King at trial, and testifies that this contention is "based on [his] experience."[10]  But when an expert "is relying solely or primarily on experience, [he] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

---

[10] Torrance Rpt. ¶ 73.  It is worth noting that Professor Torrance's "experience" is devoid of any viable patent litigation experience that would qualify him to opine on the likely outcome of the underlying patent litigation.  He admits that during his few years as a practicing attorney, he "did not play a role at trial," and never entered an appearance in any patent litigations.   Torrance Dep. 41:1-3; 48:16-22.

4

experience is reliably applied to the facts." *BNSF Ry. Co. v. Lafarge Sw., Inc.*, No. 06-1076 MCA/LFG, 2009 U.S. Dist. LEXIS 117408, at *24 (D.N.M. Feb. 15, 2009) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). Professor Torrance wholly fails in this regard. He cannot explain how his experience alone provides a proper methodology to reach his conclusions. He cannot explain how his *lack* of experience as a patent litigator permits him to opine on what a "reasonable, competent, and experienced patent attorney" might conclude. And his conclusion is noticeably divorced from any fact or formula.[11] Professor Torrance's "above 70%" is pure *ipse dixit*.

When asked how he arrived at his "above 70%" opinion, Professor Torrance asserted that his opinion is based on "the totality of what [he] reviewed."[12] When asked for further explanation as to how the totality of what he reviewed supported his opinion, Professor Torrance provided no direct answer but instead stated that "what I did is I drew on my experience . . . and all of the materials that I considered, and I came up with what I thought was an appropriate range . . . ."[13] Professor Torrance would not provide any clarity or specificity regarding his opinion, declining to admit that both "100%" and "90%" were values "above 70%," and declining to testify whether it was his opinion that it would be reasonable for an experienced patent litigator to believe that Teva had a *100%* chance of prevailing in the underlying patent litigation.[14]

Judge Folsom also noted Professor Torrance's lack of support for this opinion, and observed that Professor Torrance gave no consideration to the trial court's denial of Teva's pretrial motion for Judgment as a Matter of Law: "[T]he resolution of these types of motions is

---

[11]   Torrance Dep. 257:25-258:13; 285:24-286:5.

[12]   Torrance Dep. 240:8-16.

[13]   Torrance Dep. 257:8-258:18.

[14]   Torrance Dep. 245:23-248:2 (Q: What about 90 percent? . . . A: My opinion was not 90 percent . . . It's above 70 percent, so a number above 70 percent. Q: So it could be 100 percent . . .? A: What I said was that it was above 70 percent, though . . . which is very different than [sic] 100 percent.").

*critical* to an analysis of 'likelihood of success' in litigation . . . . [The denial of this motion is] a strong indication that the court believed this was a close case, with Teva's likelihood of success being much lower than the 70% [Professor] Torrance posits."[15]

Perhaps most ruinous to Professor Torrance's opinion is his conclusion that Teva had a "relatively large probability of infringing" the '432 patent.[16]  This statement is wholly incompatible with Teva having an "above 70%" chance of success in the patent litigation, because Teva's primary defense was *non-infringement*.[17]

For expert testimony to be the product of reliable principles and methods, it must be grounded in methods that are something beyond "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  Professor Torrance does not pass the test.  *See Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (an expert can be excluded when supporting evidence is in such a short supply that the methodology itself becomes questionable); *accord BNSF Ry. Co.*, 2009 U.S. Dist. LEXIS 117408, at *24 (excluding expert where no sufficient basis for opinion). Professor Torrance's "above 70%" opinion should be excluded as 100% unhelpful to the factfinder.

**B.    Professor Torrance's Opinions Are Untethered to the Factual Record**

Put simply, Professor Torrance's testimony does not "fit" the facts of this case.  The trial record for the Teva litigation was closed at the time the parties settled.  Any expert opinion that relies on evidence or arguments that were not raised at trial is irrelevant to the likelihood of success *at trial*—and far more likely to confuse than assist the trier of fact.  Here, the question is whether Teva—if King and Teva had not settled the patent litigation immediately after trial— would have ultimately prevailed and launched its generic EAI product earlier than June 2015.

---

[15]   Folsom Rpt. ¶¶ 52, 58 (emphasis added).
[16]   Torrance Rpt. ¶ 76; *see also* Folsom Rpt. ¶¶ 66-69.
[17]   *See infra* at B, pp. 7-8.

6

Any useful analysis, therefore, must focus on the issues in the underlying '432 patent case *as King and Teva presented them at trial*. The most relevant materials pertaining to these issues are from the patent litigation—specifically, four days of trial transcripts, and the parties' Agreed Pretrial Order.[18]  Professor Torrance ignores it all.

Professor Torrance did not cite to the trial transcript even once in his report—and instead focused on issues completely irrelevant to the litigation.  Professor Torrance discusses at length: 1) the '432 patent prosecution, despite the fact that it was never raised at trial; 2) unenforceability due to inequitable conduct, even though Teva never raised this as a defense; and 3) the "obviousness" defense to patent infringement, even though Teva did not raise this defense, either.  More specifically:

- Professor Torrance focuses heavily on the '432 patent prosecution, pointing to certain elements of Meridian's claimed invention that he says make it "highly likely that there exists prior art relevant to auto-injectors."[19]  He posits that the "simplicity of the ['432] claim elements," especially in light of the *KSR v. Teleflex*[20] decision, made it more likely that the '432 patent claims were invalid for obviousness.[21]  He further opines that Meridian's reliance on "lack of kickback" as an element in the invention made it easy to design around the patent, making it less likely that another auto-injector would infringe, but says that "the high likelihood that the [] '432 patent[] would be invalid makes any assessment of infringement much less relevant."[22]

- Professor Torrance raises inequitable conduct issues by suggesting that the inventors of the '012 and '432 patents breached their duty of candor to the USPTO.  He refers generally to "Meridian's failure to file an IDS on time" as suggestive of "carelessness" or "a desire to postpone consideration by the examiner of potentially damaging prior art," and says that this "reflects poorly on Meridian's patent prosecution practices."[23]  He also refers vaguely to the

---

[18]   Teva Litigation, ECF No. 142 (Jan. 24, 2012); ECF Nos. 150-154 (Feb. 16, Mar. 7-9, 2012).  *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 186, 189 (S.D.N.Y. 2018) (admitting testimony of patent litigation expert who "discussed in depth the legal claims and defenses raised," and where every issue raised by the expert could be "traced back to documentary evidence related to at least one of the [party's] defenses identified in its pretrial order").

[19]   Torrance Rpt. ¶¶ 58-65.

[20]   *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

[21]   Torrance Rpt. ¶ 65.

[22]   Torrance Rpt. ¶¶ 66, 76.

[23]   Torrance Rpt. ¶ 49.

7

testimony of John Wilmot, which he states "seems to suggest that some potentially relevant prior art was not submitted to the USPTO."[24] Professor Torrance does not cite the numerous prior art references disclosed in the '432 patent specification; nor does he mention the "clear and convincing" standard of proof required to establish inequitable conduct.

- Professor Torrance references the *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) case, stating that it "made it more difficult for applicants to show their patent claims are nonobvious."[25] He points to *KSR* and the '432 prosecution history to conclude that "the patent claims of the '432 patent [were] quite weak, and likely invalid."[26]

None of Professor Torrance's musings above have any support in the trial record, and thus none of them are relevant to "[w]hat a reasonable, competent, and experienced patent attorney" would assess as to Teva's likelihood of success at trial. First, as noted, the trial record makes clear that non-infringement—not invalidity—was Teva's primary defense.[27] Furthermore, the '432 prosecution history was only rarely mentioned at trial, indicating that both King and Teva "did not believe that prosecution history evidence was material to either parties' case."[28] As such, it bears little weight on the question of Teva's likelihood of success after trial. In addition, Professor Torrance ignores the fact that the PTO issued the '432 patent *after* the *KSR* decision. Thus, the PTO agreed the invention was patentable even under the *KSR* standard. Similarly, Teva never raised an "inequitable conduct" defense at trial. As such, that defense itself has no relevance to Teva's likelihood of success at trial.[29] Nor is an obviousness defense relevant because, as Judge Folsom notes in his rebuttal to Professor Torrance's testimony, "[t]he

---

[24] Torrance Rpt. ¶ 72.
[25] Torrance Rpt. ¶ 26.
[26] Torrance Rpt. ¶¶ 74, 92.
[27] Folsom Rpt. ¶ 67 (Teva's counsel told the court that "our primary position is non-infringement").
[28] Folsom Rpt. ¶ 24.
[29] Folsom Rpt. ¶ 79 ("[A]n analysis of an 'inequitable conduct' defense is simply irrelevant.").

8

trial record makes clear that Teva's counsel contemplated asserting an obviousness defense . . . but ultimately decided not to pursue that defense."[30]

As Judge Folsom observes, Professor Torrance analyzes King's claims and Teva's defenses "in a vacuum,"[31]—his opinion relies on arguments that were not raised at trial or that were waived over the course of the litigation.  Courts exclude as unreliable expert opinions that are so untethered from the facts.[32]  *See State Farm Fire & Cas. Co. v. Bell*, 30 F. Supp. 3d 1085, 1096 (D. Kan. 2014) (excluding an expert's opinion to the extent the expert relied on zoning ordinances that are not applicable to the location at issue); *accord Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (affirming exclusion of expert opinion that did not incorporate "all relevant circumstances" rendering "resulting conclusions were 'mere speculation'") (citation omitted).  So too here, Professor Torrance relies on issues that are "not applicable."  *State Farm*, 30 F. Supp. 3d at 1096.  Such revisionist history is irrelevant to this case.[33]

### C. Professor Torrance Does Not Apply Accepted Methods and Principles for Analyzing Patent Validity

Professor Torrance posits that the '432 patent is "quite weak, and likely invalid."[34]  But, even if the validity defense were relevant to Teva's forecasted likelihood of success (it is not), Professor Torrance's opinion is inadmissible because he does not employ the appropriate methods under prevailing law for analyzing patent validity.  *See KSR*, 550 U.S. at 406 ("[To conduct an obviousness analysis] [u]nder § 103, the scope and content of the prior art are to be

---

[30] Folsom Rpt. ¶ 27 n.7.

[31] Folsom Rpt. ¶ 38.

[32] Professor Torrance has so little regard for the trial record that he was "confused" when asked to consider the '432 patent claims separately from those of the '012 patent—even though the trial dealt with the '432 claims alone.  *See generally* Torrance Dep. 217:1-223:18.

[33] Professor Torrance's post-trial cost and duration estimates for the Teva litigation are equally divorced from the facts of the case.  He admits that he used publicly available averages, rather than the actual or forecasted data for Teva or King.  Torrance Dep. 320:8-324:4.

[34] Torrance Rpt. ¶ 74.

9

determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved."). Professor Torrance's report does not set forth any claim construction or prior art analysis, and thus is not supported by "reliable principles and methods." Fed. R. Evid. 702.

Professor Torrance acknowledged that one must construe the patent claims at issue and compare those claims to the prior art to conduct an obviousness analysis. In fact, this is exactly what he teaches his students.[35] Professor Torrance testified that if one of his students "looked at the claims" of a patent and concluded they were obvious without any analysis of the claims, then "that would be a terrible answer."[36] Similarly, Professor Torrance observed that if one of his students "totally ignored the pieces of prior art [given to them], [he] would question whether they were paying attention."[37]

If Professor Torrance's report were evaluated by his own criteria, he might fail his own class. Any claim construction analysis is shockingly absent from Torrance's report. Professor Torrance states that Judge Sleet's claim construction order is "particularly relevant" to his '432 invalidity analysis but not "necessarily the final interpretation of these claims,"[38] and concludes that "the claim constructions adopted by the judge would have disadvantaged King and Meridian more than [Teva]."[39] Crucially, he does not explain why he believes this is true or otherwise analyze the claim language. When asked where one might find *his* construction of the asserted

---

[35]  Torrance Dep. 74:25-75:25 (Q: "How do you undertake that [obviousness] analysis?  A: "[In Torrance's patent law class,] we would start by looking at the claim language itself . . .and trying to understand sort of the plain meaning, whether we can define what the heck it's about. . . . then we would look at the specification itself, the diagrams, the prior art that's cited within it . . ."); 77:21-79:11 (Q: It sounds to me that you have described a process of construing the claims, understanding what the scope of the claims is properly construed; is that fair?  A: That's part of what the exercise would accomplish, yeah. Q: Well, then what comes next after that?  A: So after you've understand what the claims mean, then you would start to consider products that were on the market, anything under Section 102, products on the market, previous patents, websites, prior art generally construed. . . . I'd try and get the students to match up pieces of prior art . . . .").

[36]  Torrance Dep. 82:25-83:16.

[37]  Torrance Dep. 86:15-87:1.

[38]  Torrance Dep. 227:22–237:8.

[39]  Torrance Rpt. ¶ 71.

patent claims, Professor Torrance asserted incomprehensibly that they are "throughout" his report and suggested that "[i]t's something that I think you can understand from the report."[40] But his report does not set forth a construction of the claims, and does not specify, on an element-by-element basis, his understanding of what the '432 patent claims mean.

Nor does Professor Torrance conduct a prior art analysis. He merely states that the "key elements" of the '432 patent—"lack of kickback and a second locked extended position of the needle cover"—are so "simple" that it is "highly likely that there exists prior art relevant to auto-injectors that discloses [them]."[41] In his deposition, Professor Torrance stated that he "ha[s] an appreciation for the volume of the relevant prior art,"[42] but in his report he did not cite or discuss the over 50 prior art references disclosed by Meridian during patent prosecution. He does not discuss any specific piece of prior art or compare the '432 patent claims to any prior art claims, opting instead to think of prior art "as a group."[43] This is an utterly insufficient basis for an invalidity opinion. *See OraLabs, Inc. v. Kind Grp. Ltd. Liab. Co.*, No. 13-cv-00170-PAB-KLM, 2015 U.S. Dist. LEXIS 103864, at *20-21 (D. Colo. Aug. 7, 2015) (a patent expert's "failure to support his opinion [about prior art] with facts or data or sufficiently explain how he arrived at his opinions by applying his experience with gestalt principles makes his opinions unreliable"). Professor Torrance's opinion and testimony regarding patent validity should be excluded.

## IV.   CONCLUSION

For the foregoing reasons, the Court should exclude Professor Torrance's report and testimony in their entirety.

---

[40]  Torrance Dep. 231:24-232:16, 235:13-18 ("Other times the way that I construe the claims is in a different format. It's not in a claim construction chart, but it's either, you know, implicit in some of the conclusions that you come to, or it's spread throughout the opinion in different places."); 236:10-237:24.

[41]  Torrance Rpt. ¶ 74.

[42]  Torrance Dep. 331:7-13.

[43]  Torrance Dep. 346:9-21.

11

Dated: May 21, 2019                              SHOOK, HARDY & BACON L.L.P.

                                                       By:   /s/ *Joseph Rebein*
                                                            Joseph Rebein, #25912
                                                            Ashley Harrison, D. Kan. #78667
                                                            2555 Grand Boulevard
                                                            Kansas City, MO 64108-2613
                                                            Telephone:   (816) 474-6550
                                                            Facsimile:   (816) 421-5547
                                                            jrebein@shb.com
                                                            aharrison@shb.com

                                                            AND

                                                           Dimitrios T. Drivas*
                                                           Robert A. Milne*
                                                           Raj S. Gandesha*
                                                           Edward Thrasher*
                                                           Kathryn Swisher*
                                                           WHITE & CASE LLP
                                                           1221 Avenue of the Americas
                                                           New York, NY 10020
                                                           Telephone: (212) 819-8200
                                                           Fax: (212) 354-8113
                                                           ddrivas@whitecase.com
                                                           rmilne@whitecase.com
                                                           rgandesha@whitecase.com
                                                           ethrasher@whitecase.com
                                                           kswisher@whitecase.com

                                                           **Admitted Pro Hac Vice*

                                                           ***COUNSEL FOR DEFENDANTS***
                                                           *Pfizer Inc., King Pharmaceuticals LLC,*
                                                           *and Meridian Medical Technologies, Inc.*

                                                           */s/ Adam K. Levin*

                                                           Adam K. Levin
                                                           David M. Foster
                                                           Benjamin F. Holt
                                                           Justin W. Bernick
                                                           Carolyn A. DeLone
                                                           Kathryn M. Ali
                                                           Katherine B. Wellington
                                                           HOGAN LOVELLS US LLP

555 13th Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
adam.levin@hoganlovells.com
david.foster@hoganlovells.com
benjamin.holt@hoganlovells.com
justin.bernick@hoganlovells.com
carolyn.delone@hoganlovells.com
kathryn.ali@hoganlovells.com
katherine.wellington@hoganlovells.com

Brian Fries (15889)
James Moloney (23786)
LATHROP GAGE LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Fax: (816) 292-2001
bfries@lathropgage.com
jmoloney@lathropgage.com

*Counsel for the Mylan Defendants*