# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO. 2:17-MD-02785-DDC-TJJ (MDL No. 2785) |

| | |
|---|---|
| SANOFI-AVENTIS U.S., LLC, | CASE NO. 2:17-CV-02452-DDC-TJJ |
| Plaintiff, | *Document Filed Electronically* |
| v. | |
| MYLAN INC., et al., | |
| Defendants. | |
| *This Document Relates to the* Sanofi *case.* | |

## REPLY IN SUPPORT OF MYLAN'S MOTION TO
## EXCLUDE OPINION TESTIMONY OF MARY ANN MICHELIS, M.D.

Philip A. Sechler
Roy T. Englert, Jr.
Kathryn S. Zecca
Lee Turner Friedman
Ralph C. Mayrell
Jessica Arden Ettinger
John B. Goerlich

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.     Dr. Michelis's Opinions Regarding Factors Considered When Prescribing Anaphylaxis Treatment, And Her Subsidiary Opinions About Those Factors, Should Be Excluded ........................................................................................ 2

II.    Dr. Michelis's Opinions Regarding Pharmaceutical Sales Forces Are Inadmissible ........................................................................................................ 4

III.   Dr. Michelis's Proffered Testimony Regarding EpiPen Shortages Is Not Opinion Testimony But Late-Disclosed And Irrelevant Fact Testimony ......................... 6

CONCLUSION ...................................................................................................................... 6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*,
  No. 14-cv-1859, 2017 WL 3592775 (N.D. Ill. Aug. 21, 2017) ....................................2, 3, 4, 5

*Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*,
  237 F.R.D. 106 (D. Del. 2006) ...............................................................................................5

*In re Diet Drugs*,
  MDL No. 1203, 2000 WL 876900 (E.D. Pa. June 20, 2000) ....................................................3

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)................................................................................................................1

**Rules**

Fed. R. Evid. 702 ............................................................................................................1, 6

## INTRODUCTION

To hear Sanofi tell it, an impressive resume is all that is required to satisfy the *Daubert* inquiry. Because Dr. Michelis has a long career as an allergist, Sanofi says "this court need not delineate which testimony is appropriate for trial." Sanofi's Opp. to Mylan's Mot. to Exclude Opinion Testimony of Mary Ann Michelis, M.D. ("Opp.") at 1, ECF No. 1794. Sanofi's position, however, is contrary to and ignores Federal Rule of Evidence 702 and the Supreme Court's holding in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 states that "[a] witness who is qualified as an expert … may testify in the form of an opinion or otherwise if"—and only if—the expert's testimony meets four criteria relating to reliability and relevance.[1] And in *Kumho Tire*, the Supreme Court affirmed the district court's exclusion of expert testimony that failed Rule 702's "reliability requirement," 526 U.S at 145, even though the district court "did not doubt" the expert's qualifications. *Id.* at 153.

These principles apply in full force here. Although Mylan does not challenge Dr. Michelis's qualifications, many of the opinions she offers are not reliable. There is no basis, other than Dr. Michelis's own say-so, for her opinions regarding the prescribing habits of doctors in general and the impact of sales representatives on doctors' prescribing habits. Indeed, Sanofi's Opposition does not address a single one of the many concessions Dr. Michelis made in her deposition that she does not know what doctors other than herself consider when prescribing treatment for anaphylaxis. Nor does Sanofi offer any persuasive rationale to permit Dr. Michelis

---

[1] In full, Rule 702 provides that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

to offer late-disclosed fact testimony. All of Dr. Michelis's challenged opinions should be excluded.

## ARGUMENT

**I.     Dr. Michelis's Opinions Regarding Factors Considered When Prescribing Anaphylaxis Treatment, And Her Subsidiary Opinions About Those Factors, Should Be Excluded**

Sanofi does not meaningfully dispute that Dr. Michelis's opinions regarding the factors doctors consider in prescribing anaphylaxis treatment—patient preference, safety and efficacy, and insurance—are based solely on her own experience. *See, e.g.*, Opp. 6 (stating opinions on safety based on experience "prescribing an EAI device to *her* patients) (emphasis added); *id.* at 7 (relying on Dr. Michelis's experience as sole basis for opinion that prescriptions are based on patient preference). Sanofi claims that her opinions on patient preference and safety are corroborated by record documents and medical journals, but none of the materials it cites discusses doctors' prescribing habits. So, for example, although Dr. Michelis does reference documents for her opinion that certain patients preferred Auvi-Q to EpiPen, those documents do not support her opinion that all doctors take a patient's preference into account when writing a prescription.[2] Dr. Michelis candidly admitted at her deposition that she does not know whether other doctors provide their patients with a choice of devices, Mot., Ex. 4, at 63-64, and her reports cite no basis other than her own experience for her opinion regarding doctors' prescribing practices, *see* Mot., Ex. 1 ¶¶ 41-46.

Accordingly, *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14-cv-1859, 2017 WL 3592775 (N.D. Ill. Aug. 21, 2017), is right on point. In that case, just as in this case, the testifying

---

[2] Moreover, as stated in Mylan's Mot. to Exclude Opinion Testimony of Mary Ann Michelis, M.D. ("Mot.") at 6-7, to the extent that Dr. Michelis is simply summarizing record evidence, her testimony should be excluded because it will not assist the trier of fact.

doctor conducted no "systematic review of medical records or other data that might have provided a scientifically reliable basis for an opinion on physicians' general prescribing practices." *Compare id.* at *22, *with*, *e.g.*, Mot., Ex. 4, at 73-74 (did not review patient records to determine percentage of patients who selected Auvi-Q versus EpiPen); *id.* at 85-86 (unaware of data evaluating ease of use of Auvi-Q versus EpiPen in patients suffering from anaphylaxis). And, as described above, Dr. Michelis's opinions about prescribing practices are *not* corroborated by any literature; Sanofi's attempt to distinguish *Elorac* on that basis is therefore unavailing. Moreover, Sanofi does not even address *In re Diet Drugs*, MDL No. 1203, 2000 WL 876900 (E.D. Pa. June 20, 2000), where the court held that although two testifying doctors were "highly qualified" in their fields, *id.* at *1, *3, those "qualifications do not qualify them to opine as experts about what all doctors generally consider in making prescription decisions," *id.* at *11.

Sanofi's attempt to compare Dr. Michelis's opinions to the opinions Mylan intends to offer through Dr. Michael Blaiss is inapposite. Opp. 6. Sanofi cites Dr. Blaiss's opinion on the interchangeability of EAI devices, an opinion that he is plainly qualified to offer as an allergist with over 35 years of experience and a key opinion leader in the field of anaphylaxis. Indeed, Mylan has not challenged similar opinions offered by Dr. Michelis, such as a neutral description of EAI devices and her opinion that patients do not always carry their EAI devices. *See* Mot. 2. But being qualified to opine on the mechanics and use of EAI devices does not translate to being qualified to testify about the factors that *all* doctors consider when prescribing those devices.[3]

Embedded in Dr. Michelis's opinions regarding the factors doctors consider in prescribing EAI devices are subsidiary opinions that Auvi-Q is superior to EpiPen with respect to certain of

---

[3] To the extent that Dr. Blaiss offers any opinions in rebuttal to the opinions by Dr. Michelis that Mylan is seeking to exclude, Dr. Blaiss's opinions should be treated in the same manner as Dr. Michelis's.

those factors. Mot. 4, 8 (discussing opinion that Auvi-Q is easier to carry and use than EpiPen); *id.* at 7 (discussing opinion that Auvi-Q poses less risk of lacerations than EpiPen). In deposition and her reports, Dr. Michelis made concession after concession demonstrating that there is no reliable basis for these opinions, but Sanofi fails to acknowledge, let alone reconcile, any of those concessions. For example, Sanofi does not address Mylan's challenge to Dr. Michelis's opinion that patient preference correlates with improved patient carriage rates of EAI devices, Mot. 4-5— and no wonder: Dr. Michelis admitted she is unaware of any studies or data showing that patient choice in EAI devices correlated with increased carriage of those devices. Mot., Ex. 4, at 65-66. Nor does Sanofi defend Dr. Michelis's opinion that Auvi-Q is easier to use, another unsurprising choice in light of her admissions that her testimony was based on anecdotal experience rather than data or studies of patients suffering from anaphylaxis. *Id.* at 84-85, 88. And, with respect to Dr. Michelis's opinion regarding the comparative risk of lacerations between Auvi-Q and EpiPen, Sanofi does not even address Dr. Michelis's admission that "there is no data comparing the safety of these two devices." Mot., Ex. 2 ¶ 9. *Elorac* is again directly on point in holding that "personal experience is not a sufficient basis for a scientifically reliable opinion on the clinical effectiveness" of a product. 2017 WL 3592775, at *21.

**II.     Dr. Michelis's Opinions Regarding Pharmaceutical Sales Forces Are Inadmissible**

Dr. Michelis repeatedly testified that she has no basis to testify about the conduct and messaging by pharmaceutical sales representatives in any office besides her own, or the impact of sales representatives on doctors other than herself. Dr. Michelis admitted that "I have no idea of what goes on with all physicians," Mot., Ex. 4, at 108-09, that she is "not aware [of] what goes on in other [doctors'] offices," *id.* at 130, and that "[y]ou know, I'm just telling you that, you know, how I would feel, as I felt as a practitioner. You know, would it be the same as other doctors? You know, I'm not going to, you know, say," *id.* at 135. Sanofi does not attempt to explain or reconcile

4

these admissions with her proffered opinions, instead insisting that she can testify to this topic because she "supervis[ed] other doctors' prescribing habits." Opp. 9. But Dr. Michelis did not testify to supervising other doctors' prescriptions. Rather, she testified only that pediatricians refer patients to her practice, and she conceded that she does not know the full range of information that pediatricians access when they write prescriptions. Opp., Ex. B, at 124-25. This distinguishes Dr. Michelis's opinions from those offered by the expert psychiatrist in *Forest Laboratories, Inc. v. Ivax Pharmaceuticals, Inc.*, 237 F.R.D. 106, 111-12 (D. Del. 2006), who supervised numerous clinical practices and other doctors who write prescriptions. And Sanofi does not address the multiple decisions cited in Mylan's moving papers, Mot. 10, excluding expert testimony on the impact of advertising and promotional practices on other doctors' prescribing habits.

Sanofi misses the mark regarding Mylan's challenge to Dr. Michelis's description of her personal interactions with Mylan and Sanofi sales representatives. That testimony is untethered to her (inadmissible) opinion regarding the impact of sales representatives on doctors outside her own practice; it is simply late-disclosed fact testimony that Sanofi hopes will advance its case. Sanofi attempts to distinguish the *Elorac* court's exclusion of fact testimony by an expert by arguing that the core issue in *Elorac* (product commercialization) is different from the core issues here, but the challenged expert *in Elorac* was proffered for the same purpose as Dr. Michelis: personal interactions with sales representatives promoting the product at issue. 2017 WL 3592775, at *21. Thus, *Elorac*'s holding applies with full force: Dr. Michelis's proffered testimony about interactions with Mylan and Sanofi sales representatives is nothing more than "fact testimony in the midst of expert testimony [that] could confuse and mislead the jury and cause prejudice." *Id.* at *22.

III.    **Dr. Michelis's Proffered Testimony Regarding EpiPen Shortages Is Not Opinion Testimony But Late-Disclosed And Irrelevant Fact Testimony**

Dr. Michelis's narration of EpiPen's shortages years after Sanofi recalled Auvi-Q from the market is nothing more than late-disclosed fact testimony. As Sanofi describes it, Dr. Michelis will testify that "[b]oth EpiPen and Auvi-Q have had recalls and come back to the market in this drug class." Opp. 10 (quoting Mot., Ex. 2 ¶ 20). These are basic facts that a jury needs no assistance in understanding, even if the testimony were relevant (it is not).[4] Fed. R. Evid. 702(a) (expert testimony must "help the trier of fact to understand the evidence"). This testimony should be excluded.

## CONCLUSION

For the reasons set out in Mylan's opening memorandum and here, Mylan respectfully requests that the Court exclude Dr. Michelis's opinions concerning (1) factors considered by physicians when prescribing anaphylaxis treatment, including patient choice, safety and efficacy, and insurance; (2) the role of the pharmaceutical sales force and its influence on physicians' prescribing habits; and (3) EpiPen shortages.

---

[4] Mylan intends to file a motion *in limine* in accordance with the schedule set by the Court to exclude evidence of EpiPen shortages post-dating Sanofi's marketing and sale of Auvi-Q. The Court need not reach the issue of relevance in deciding this motion, however, because Dr. Michelis's proffered testimony will not assist the trier of fact.

Dated: August 29, 2019                    Respectfully submitted,


                                          s/ *Philip A. Sechler*
                                          Philip A. Sechler

                                          Roy T. Englert, Jr.
                                          Kathryn S. Zecca
                                          Lee Turner Friedman
                                          Ralph C. Mayrell
                                          Jessica Arden Ettinger
                                          John B. Goerlich

                                          ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                          UNTEREINER & SAUBER LLP
                                          2000 K St. NW, 4th Floor
                                          Washington, DC 20006
                                          Telephone: (202) 775 4500
                                          Fax: (202) 775 4510
                                          psechler@robbinsrussell.com
                                          kzecca@robbinsrussell.com
                                          lfriedman@robbinsrussell.com
                                          rmayrell@robbinsrussell.com
                                          jettinger@robbinsrussell.com
                                          jgoerlich@robbinsrussell.com


                                          *Counsel for Defendant Mylan Inc. and*
                                          *Defendant/Counterclaim Plaintiff Mylan*
                                          *Specialty L.P.*

**CERTIFICATE OF SERVICE**

On this 29th day of August, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which provides a notice of such filing on each attorney registered for ECF notification to the counsel of record in this case.

Respectfully submitted,

s/ *Philip A. Sechler*
Philip A. Sechler

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4492
Fax: (202) 775 4510
psechler@robbinsrussell.com

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*