**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO. 2:17-MD-02785-DDC-TJJ (MDL No. 2785) |
| SANOFI-AVENTIS U.S., LLC,<br><br>Plaintiff,<br>v.<br>MYLAN INC., et al.,<br><br>Defendants.<br><br>*This Document Relates to the* Sanofi *case.* | CASE NO. 2:17-CV-02452-DDC-TJJ<br><br>*Document Filed Electronically* |

**REPLY IN SUPPORT OF MYLAN'S MOTION TO**
**EXCLUDE OPINION TESTIMONY OF EDUARDO SCHUR**

Philip A. Sechler
Roy T. Englert, Jr.
Kathryn S. Zecca
Lee Turner Friedman
Ralph C. Mayrell
Jessica Arden Ettinger
John B. Goerlich

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. Mr. Schur's Opinions About Mylan's Rebating Practices Are Inadmissible ........ 2

II. Mr. Schur Is Not Qualified To Provide Opinions Regarding The Auvi-Q Recall ........ 4

III. Mr. Schur Is Not Qualified To Opine On Whether Sanofi's Marketing Practices Complied With FDA Standards ........ 6

IV. Mr. Schur's Opinion That Sanofi Adequately Monitored Its Sales Representatives Lacks Foundation And Is Speculative ........ 8

V. Mr. Schur's Opinion About Auvi-Q Features Will Not Assist The Jury ........ 9

VI. Mr. Schur's Opinions Regarding Mylan's And Sanofi's Purported Intentions Are Outside The Scope Of Proper Expert Testimony ........ 9

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abrams v. Ciba Specialty Chemicals Corp.*,
No. 08-cv-0068, 2010 WL 779283 (S.D. Ala. Mar. 2, 2010)....................7

*Ambrosini v. Labarraque*,
101 F.3d 129 (D.C. Cir. 1996)....................9

*Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*,
94 F.3d 655, 1996 WL 466673 (10th Cir. 1996)....................5, 7

*Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*,
389 F. Supp. 2d 1145 (D. Alaska 2005)....................5

*Coal Resources, Inc. v. Gulf & Western Indus.*,
954 F.2d 1263 (6th Cir. 1992)....................7

*DiSalvatore v. Foretravel, Inc.*,
No. 9:14-cv-00150, 2016 WL 7742824 (E.D. Tex. July 20, 2016)....................4

*Discover Fin. Servs. v. Visa U.S.A., Inc.*,
582 F. Supp. 2d 501 (S.D.N.Y. 2008)....................4

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002)....................8

*ECD Inv'r Grp. v. Credit Suisse Int'l*,
No. 14-cv-8486, 2017 WL 3841872 (S.D.N.Y. Sept. 1, 2017)....................6

*Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*,
No. 14-cv-1859, 2017 WL 3592775 (N.D. Ill. Aug. 21, 2017)....................10

*FDIC v. Castetter*,
86 F.3d 1162, 1996 WL 292228 (9th Cir. June 3, 1996)....................9

*Fisher v. Werner Enterprises, Inc.*,
No. 1:04-cv-1317, 2005 WL 6001584 (S.D. Ind. Aug. 25, 2005)....................9

*Hein v. Deere & Co.*,
No. 11-cv-0113, 2013 WL 3816699 (N.D. Iowa July 22, 2013)....................5

*In re Diet Drugs*,
MDL No. 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001)....................1, 3

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016)....................7, 10

**TABLE OF AUTHORITIES —Continued**

**Page(s)**

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994)....................4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....................1, 2

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
874 F. Supp. 2d 169 (S.D.N.Y. 2012)....................9

*Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)....................5

*McCoy v. Whirlpool Corp.*,
258 F. App'x 189 (10th Cir. 2007)....................6

*McGreevy v. Stroup*,
No. 1:01-cv-1461, 2003 WL 27374140 (M.D. Pa. June 17, 2003)....................4

*Mooring Capital Fund, LLC v. Knight*,
388 F. App'x 814 (10th Cir. 2010)....................5, 7

*Pioneer Centres Holding Co. v. Alerus Fin., N.A.*,
858 F.3d 1324 (10th Cir. 2017)....................4, 6, 8, 10

*Ralston v. Smith & Nephew Richards, Inc.*,
275 F.3d 965 (10th Cir. 2001)....................3

*Robinson v. GEICO Gen. Ins. Co.*,
447 F.3d 1096 (8th Cir. 2006)....................4

*Talley v. Time, Inc.*,
No. 14-cv-853, 2018 WL 1101489 (W.D. Okla. Feb. 28, 2018)....................10

*TK-7 Corp. v. Estate of Barbouti*,
993 F.2d 722 (10th Cir. 1993)....................7

*United States ex rel. Dyer v. Raytheon Co.*,
No. 08-cv-10341, 2013 WL 5348571 (D. Mass. Sept. 23, 2013)....................10

*Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*,
No. SA-16-CA-00485, 2017 WL 1133506 (W.D. Tex. Mar. 24, 2017)....................4

*XY, LLC v Trans Ova Genetics, LC*,
No. 13-cv-0876, 2016 WL 97788 (D. Colo. Jan. 8, 2016)....................9, 10

**TABLE OF AUTHORITIES —Continued**

**Page(s)**

**Rules**

Fed. R. Evid. 702 ........................................................................................................... *passim*

**Other Authorities**

29 Charles A. Wright *et al*., Fed. Prac. & Proc. Evid. § 6264.2 (2d ed.)........................................3

Mr. Schur offers several opinions that go well-beyond the scope of his expertise, for which he admittedly had to rely on other experts. Sanofi ignores both Mr. Schur's admissions and binding cases that exclude opinions that, like Mr. Schur's, exceed the scope of an expert's qualifications. Certain of Mr. Schur's opinions also lack a foundation in, or are contradicted by, the record. Here, too, Sanofi ignores Mr. Schur's testimony admitting his lack of foundation and cites no evidence that his opinions are based in either the record or his expertise. Finally, Sanofi confirms that Mr. Schur intends to opine on the parties' intentions by summarizing the factual record, which would run afoul of prohibitions against both expert testimony on intent and expert summaries of documents. Mr. Schur's challenged opinions are inadmissible.

## ARGUMENT

Sanofi claims that Mr. Schur's "deep pharmaceutical industry experience" automatically renders him qualified to testify on all the subjects addressed in his opinions. Sanofi's Opp. to Mylan's Mot. to Exclude Opinion Testimony of Eduardo Schur ("Opp.") at 1-3, 10, ECF No. 1797. But for many of his opinions, Mr. Schur lacks the necessary "specialized knowledge" to offer an informed opinion. *In re Diet Drugs*, MDL No. 1203, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001). Furthermore, Sanofi's position that qualifications render an expert's testimony automatically admissible is at odds with Federal Rule of Evidence 702 and the Supreme Court's holding in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 states that "[a] witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if"—and only if—the expert's testimony meets four criteria relating to reliability and relevance.[1] And in *Kumho*

---

[1] In full, Rule 702 provides that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

*Tire*, the Supreme Court affirmed the district court's exclusion of expert testimony that failed Rule 702's "reliability requirement," 526 U.S at 145, even though the district court "did not doubt" the expert's qualifications. *Id.* at 153. Even for the opinions where Mylan does not dispute Mr. Schur's qualifications, his opinions fail other elements of Rule 702 because they are not "based on sufficient facts or data" or constitute impermissible factual summaries or intent testimony that is not "help[ful to] the trier of fact."

## I. Mr. Schur's Opinions About Mylan's Rebating Practices Are Inadmissible

Sanofi offers Mr. Schur to testify about whether Mylan's rebating practices were "consistent with common industry practices" and "exclusionary," even though he admitted at his deposition that he is not a "true expert in market access," and that he relies on other "true experts" in his regular consulting practice. Mylan's Mot. to Exclude Opinion Testimony of Eduardo Schur ("Mot.") at 4, ECF No. 1676-2. Sanofi claims that Mr. Schur is "responsible for the entire market access team at Navigant," Opp. 5, but that appears nowhere in the cited testimony, Mot., Ex. 3, at 32-33, 35. Sanofi also claims that Mr. Schur "regularly consults with clients on market access," Opp. 4-5, but he admitted that (i) he "usually do[esn't] provide … advice" about "what levels of rebates [his] clients should offer," (ii) he "rel[ies] on … a different team within Navigant that provides that type of advice," and (iii) he has never negotiated with a payor himself. Mot., Ex. 3, at 34-37, 41. Sanofi nowhere addresses these admissions. Indeed, nowhere in Sanofi's recitation of Mr. Schur's professional history does it identify any experience at all related to rebate negotiations. Although Sanofi vaguely refers to "foster[ing] and optimiz[ing] customer relationships with managed care organizations and hospitals," Opp. 3, it fails to provide any evidence that these unidentified customer relationships include advice on rebate negotiations.

Mr. Schur's unfamiliarity with payor negotiations shines through in his opinion that payors do not "pit competing pharmaceutical companies against one another to extract deep discounts and

rebates from them." Mot., Ex. 2 ¶ 31. Mr. Schur's opinion is directly contradicted by, for example, Sanofi's own expert economist, who admitted that "[b]y controlling the formularies, insurers and PBMs can extract rebates from manufacturers …. [including through] [t]he threat of exclusion," a characterization of the industry that Sanofi concedes is accurate.[2] Sanofi also admits that Mr. Schur has "not exhaustively reviewed thousands of pages of evidence from and relating to PBM and Payor contracting," Opp. 5—though in reality he admitted to not reviewing *any* PBM and Payor negotiations, which he called "irrelevant," Mot., Ex. 3, at 139-40. Given that Mr. Schur's understanding of payor negotiations is incomplete (by Sanofi's own admission) and incorrect (according to Sanofi's own expert), he is not qualified to testify about whether Mylan's rebate practices were "consistent with [those] industry practices" or were somehow uniquely "exclusionary." Mot., Ex. 2 ¶¶ 9, 30-32.

Sanofi argues the bar Mr. Schur must clear to be qualified to testify about rebates is "low." Opp. 4, 6. But as the Tenth Circuit explained in a case that Sanofi ignores, Mot. 4, experts with only "some marginal familiarity with general concepts in the relevant field" are not permitted to testify. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (10th Cir. 2001). "[C]ourts will prevent a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject." 29 Charles A. Wright *et al.*, Fed. Prac. & Proc. Evid. § 6264.2 (2d ed.); *see also Diet Drugs*, 2001 WL 454586, at *7 (same).

[2] *Compare* Mylan's Mot. for Summary Judgment ("MSJ"), Stmt. of Material Facts ¶¶ 29-30 (June 28, 2019) (quoting Mylan MSJ, Ex. 48 (Scott Morton, *An Orientation to the Acquisition and Reimbursement for Prescription Drugs*, Dec. 3, 2004) at 50-51; Mylan MSJ, Ex. 44 (Scott Morton, *Enabling Competition in Pharmaceutical Markets*, May 2017), at 19), *with* Sanofi's Opp. to Mylan's Mot. for Summary Judgment, Resp. to Stmt. of Material Facts ¶¶ 29-30 (Aug. 9, 2019) (not disputing how industry works, only its applicability to EAIs).

Sanofi's cases on this point are distinguishable as they address individuals with far greater specific expertise than Mr. Schur has here.[3]

Sanofi also tries to excuse Mr. Schur's unfamiliarity with the rebate practices here as going to the "weight or the sufficiency" of the evidence. Opp. 5. Yet the problem is not that Mr. Schur reviewed some, but not all, documents related to payor negotiations, or that he has a view of the industry consistent with only one party's understanding of the case, as in the cases Sanofi cites.[4] Unlike in Sanofi's cases, Mr. Schur knows *nothing* about the rebate practices here and his view of the industry is consistent with *neither* party's understanding of the industry in general. Thus, his opinion not only is not "based on sufficient facts or data," Fed. R. Evid. 702, but is clearly contradicted by the parties' own understanding of how the industry works. *Pioneer Centres Holding Co. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1341-42 (10th Cir. 2017) ("[W]hen indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict' and will be excluded.").

## II. Mr. Schur Is Not Qualified To Provide Opinions Regarding The Auvi-Q Recall

Mr. Schur admitted that he was "not sure [he was] aware of the definition of Class I recall." Mot. 5 (citing Mot., Ex. 3 at 176-78). Nonetheless, Sanofi asserts Mr. Schur is qualified to testify

---

[3] *Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*, No. SA-16-CA-00485, 2017 WL 1133506, at *1, *4 (W.D. Tex. Mar. 24, 2017) (resume "elaborate[d] … in great detail" how expert had role "supervising [independent marketing organizations]" and thus could opine as "expert on independent marketing organizations"); *DiSalvatore v. Foretravel, Inc.*, No. 9:14-cv-00150, 2016 WL 7742824, at *6, *10 (E.D. Tex. July 20, 2016) ("environmental toxicologist" qualified to testify about "mold contamination"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 753-54 (3d Cir. 1994) (dermatologist with "broad experience in the field of toxic substances" and "significant familiarity with the literature on PCBs" allowed to testify about effect of PCBs); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) (neurologist allowed to testify about pain related to nerves in shoulder).

[4] *Discover Fin. Servs. v. Visa U.S.A., Inc.*, 582 F. Supp. 2d 501, 507 (S.D.N.Y. 2008) (expert "considered the testimony of Defendants' experts and senior executives" that he was alleged to have ignored and had an explanation for not considering other evidence cited by defendant); *McGreevy v. Stroup*, No. 1:01-cv-1461, 2003 WL 27374140, at *5 (M.D. Pa. June 17, 2003) (overruling objection that expert "did not perform *as many* diagnostic tests as Defendants' expert" (emphasis added)).

about Sanofi's ability to return Auvi-Q to sale after Auvi-Q experienced a complete Class I safety recall. Sanofi points to his purported work on "voluntary Class I recall[s]" at Navigant and a previous employer, Opp. 5, even though the cited testimony does not indicate that those were Class I recalls since Mr. Schur did not know what a Class I recall is, *see* Mot., Ex. 3, at 175-77. Furthermore, Sanofi does not dispute that Mr. Schur's most recent experience with any recall was five to ten years ago and merely consisted of him working as a marketing consultant on a "template of how to reintroduce a product." Mot. 5. That is hardly the same as having actual, recent experience in relaunching products subject to complete Class I safety recalls, and courts have found such minimal and dated exposure to a subject is insufficient to qualify an expert.[5] Mr. Schur completely lacks substantive experience in the operational and manufacturing issues related to the return of a recalled device to market. Sanofi also does not dispute that Mr. Schur relied on his team, who "knew more about FDA compliance than he does," Mot. 6, *i.e.*, that he "merely parrot[ted] the opinions of other experts," which is not allowed under Tenth Circuit law that Sanofi ignores. *See Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, 94 F.3d 655, 1996 WL 466673, at *7 (10th Cir. 1996) (excluding expert damages opinion that "merely averag[ed]" two reports by a third-party); *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820-21 (10th Cir. 2010) (excluding expert opinion that "simply adopt[ed] and confirm[ed]" opinion of another expert).

---

[5] *See Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1154 (D. Alaska 2005) (excluding expert whose experience with underwriting such policies was "minimal, sporadic, and. . . non-existent"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) ("occasional use of statistics in his daily life simply does not qualify him as an expert on that complex subject"); *Hein v. Deere & Co.*, No. 11-cv-0113, 2013 WL 3816699, at *6 (N.D. Iowa July 22, 2013) ("having a degree in mechanical engineering and riding once in a combine does not qualify one to give an expert opinion about combine design").

Mr. Schur's opinion that Sanofi could have returned Auvi-Q to market more quickly than kaléo is also contradicted by Sanofi documents [redacted] [redacted]. Mot. 6. Sanofi again fails to acknowledge this evidence and cites no alternative factual evidence from the record that supports Mr. Schur's opinion. *See* Opp. 6. That concession means that the only factual evidence proffered on this point clearly contradicts Mr. Schur's opinion. *Pioneer Centres*, 858 F.3d at 1341-42.[6] And Mr. Schur's proffered explanation for a quick relaunch—that "Sanofi's preexisting Auvi-Q sales and marketing experience and resources" would expedite matters, Mot. Ex. 2 ¶ 40—is not sufficiently grounded in his experience to be reliable. Fed. R. Evid. 702, advisory committee notes to 2000 amendments ("The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."). Sanofi's cases do not excuse Mr. Schur's failure to provide such a "ground[ing]" for his opinion in the facts or his expertise because the experts in those cases had addressed the facts at issue.[7] Mr. Schur, by contrast, simply makes an assertion that is at odds with the record.

## III. Mr. Schur Is Not Qualified To Opine On Whether Sanofi's Marketing Practices Complied With FDA Standards

Sanofi does not dispute that Mr. Schur has neither worked at the FDA nor had responsibility for regulatory compliance in marketing. *See* Mot. 7. Instead, Sanofi discusses his general marketing experience, Opp. 7-8, which is not at all the same thing as regulatory experience. Sanofi also asks the Court to accept Mr. Schur's claim that he did not need the expertise of other

---

[6] Sanofi argues that another expert, Lawrence Stevens has the same opinion as Mr. Schur. But Mr. Schur did not cite Mr. Stevens for this point, *see* Mot., Ex. 2 ¶ 40, and this fact alone does not evidence a reliable methodology for *Mr. Schur* to have reached that opinion.

[7] *McCoy v. Whirlpool Corp.*, 258 F. App'x 189, 193 (10th Cir. 2007) (expert had responded to issues raised in opposing expert's report); *ECD Inv'r Grp. v. Credit Suisse Int'l*, No. 14-cv-8486, 2017 WL 3841872, at *12 (S.D.N.Y. Sept. 1, 2017) (expert had addressed evidence that allegedly contradicted his opinion).

consultants at his firm to evaluate Sanofi's marketing practices, Opp. 7, even though he admitted that he relied on those other experts to understand how Sanofi's "discussions [with the FDA] happened, *and what a robust process looks like*," Mot., Ex. 3, at 13-14 (emphasis added). Sanofi also emphasizes that Mr. Schur claimed to understand the general regulatory process, Opp. 7, but that high-level familiarity clearly was insufficient as he had to lean heavily on the other experts to understand the narrative of Sanofi's and the FDA's communications.

Sanofi also seeks to excuse Mr. Schur's lack of personal expertise by claiming he was allowed to rely on the assistance of other experts at his firm. Opp. 7-8. But the Tenth Circuit, has held that courts do not allow experts to merely "parrot" the opinions of the real expert who will not testify. *Beck's Office Furniture*, 94 F.3d 655, 1996 WL 466673, at *7. "An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert." *Mooring Capital*, 388 F. App'x at 820-21; *see also Coal Resources, Inc. v. Gulf & Western Indus.*, 954 F.2d 1263, 1269 (6th Cir. 1992) (holding that CEO was not allowed to testify as expert on subject for which he relied on support from company employees); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 465 (S.D.N.Y. 2016) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty."). Allowing Mr. Schur to testify here instead of the actual experts upon whom he relies would "preclude[] any assessment of the validity of [the opinions] through cross-examination of [the actual expert]." *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993).

Even Sanofi's own cases demonstrate that Mr. Schur's reliance on other regulatory experts is improper. Opp. 7. The expert in *Abrams v. Ciba Specialty Chemicals Corp.* was excluded because he was "acting as a mere conduit" for another expert's opinions, "passing off the opinions of that undisclosed expert as his own even though they admittedly are outside his ken." No. 08-

cv-0068, 2010 WL 779283, at *4 (S.D. Ala. Mar. 2, 2010). And in *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, an expert's opinions were excluded where he relied on staff to construct computer models that required their discretion, 285 F.3d 609, 615-16 (7th Cir. 2002), just as the regulatory experts' discretion was required here when they interpreted the communications between Sanofi and the FDA for Mr. Schur, Mot. 7. There is no indication in Sanofi's Opposition that the regulatory experts who supported Mr. Schur were "mere[] gofers or data gatherers," 285 F.3d at 613; rather, they were experts applying their specialized knowledge to Sanofi's interactions with the FDA because Mr. Schur did not himself possess the requisite expertise.

**IV. Mr. Schur's Opinion That Sanofi Adequately Monitored Its Sales Representatives Lacks Foundation And Is Speculative**

Sanofi defends Mr. Schur's opinion about Sanofi's monitoring of its sales force by focusing on his claim that his staff "looked into all [of] the materials" to reach that conclusion. Opp. 8. (quoting Mot., Ex. 3, at 274). Sanofi never acknowledges that in response to the very next question, "[d]id you see anything in the evidence reviewed that Sanofi took any measures to monitor compliance with its company policies?" Mot., Ex. 3, at 274-75, Mr. Schur admitted, "I don't remember seeing that particular document," *id.* at 275. And he agreed that he was "assuming that Sanofi" had such monitoring because "all the large pharmaceutical companies … will do that." *Id.* His staff may have seen a lot of documents, but there is no evidence that any of those documents actually informed his opinion. So Mr. Schur's opinion was not "based on actual knowledge," but instead comprises "mere subjective belief [and] unsupported speculation" about what Sanofi did to monitor its sales force. *Pioneer Centres*, 858 F.3d at 1341-42. This is distinguishable from the

cases cited by Sanofi, Opp. 8-9,[8] because unlike those experts, Mr. Schur does not have *any* basis for his opinion except his say-so.

## V. Mr. Schur's Opinion About Auvi-Q Features Will Not Assist The Jury

Sanofi admits that Mr. Schur intends to testify about what "Mylan documents" said "Mylan knew" about the EAI class, and what "Sanofi's and Mylan's market research" said about Auvi-Q's features. Opp. 9-10. That is consistent with Mr. Schur's testimony that he was really just repeating the contents of "customer surveys that [he] reviewed" and "market research" conducted by the parties. Mot. 8-9 (quoting Mot., Ex. 3, at 90-92. This is not expert opinion, just a factual narrative of documents that the jury could review for themselves, which is not "help[ful to] the trier of fact," Fed. R. Evid. 702, and not admissible because it "usurp[s] the jury's fact-finding function," *XY, LLC v Trans Ova Genetics, LC*, No. 13-cv-0876, 2016 WL 97788, at *1, *3 (D. Colo. Jan. 8, 2016); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 177 (S.D.N.Y. 2012). Sanofi does not address this issue, and instead cites inapposite cases allowing an expert to refer back to his report during a deposition, and to cases stating that an expert can rely on documents in support of his opinion, Opp. 9-10, neither of which addresses Mylan's objections. None of these cases permitted an expert merely to report on the contents of documents with no independent opinion, as Mr. Schur seeks to do here.

## VI. Mr. Schur's Opinions Regarding Mylan's And Sanofi's Purported Intentions Are Outside The Scope Of Proper Expert Testimony

Sanofi admits it plans to offer Mr. Schur to testify about Mylan's "inten[t] to block Auvi-Q from the market," Sanofi's "inten[t] to relaunch [Auvi-Q]," and Sanofi's lack of "inten[t] to

[8] *FDIC v. Castetter*, 86 F.3d 1162, 1996 WL 292228, at *1 (9th Cir. June 3, 1996) (expert sampled some loan files); *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) (expert reviewed some medical records and literature); *Fisher v. Werner Enterprises, Inc.*, No. 1:04-cv-1317, 2005 WL 6001584, at *2 (S.D. Ind. Aug. 25, 2005) (expert reviewed some medical records).

measure or incorporate comparative claims" in its physician surveys. Opp. 10-11. Sanofi does not respond to the cases that Mylan cites holding that '"read[ing] the mind' of [a party]" is "beyond the scope of any expert." *Pioneer Centres*, 858 F.3d at 1342; *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14-cv-1859, 2017 WL 3592775, at *20 (N.D. Ill. Aug. 21, 2017) (excluding Sanofi expert's opinion about "Sanofi's motivation" because experts "may not offer an expert opinion on a person's state of mind, which is a factual determination he is no better qualified to make than the jury"). Rather, Sanofi argues that it is acceptable for Mr. Schur to opine on the parties' intent because he will do this by "reviewing," and evidently summarizing, "the relevant documents." Opp. 10-11. But that does not respond to the objection, consistently upheld by courts, that an expert is no better qualified than a jury to determine a party's state of mind. For example, in *United States ex rel. Dyer v. Raytheon Co.*, the court found unpersuasive the expert's assurances that he would only "reference facts relating to [a party's] submission of the challenged bonuses" without an "interpretation" because "[s]uch testimony would invade the province of the jury as fact finders who are capable of evaluat[ing] knowledge without the benefit of expert testimony." No. 08-cv-10341, 2013 WL 5348571, at *13 (D. Mass. Sept. 23, 2013). Sanofi's argument also runs head-first into the prohibition against experts simply serving as vehicles for factual summaries. *See, e.g.*, *XY, LLC*, 2016 WL 97788, at *1, *3.

Sanofi's cases are not to the contrary. *In re Mirena IUD* prohibited an expert from testifying about "the concerns or motives" and about what the "FDA would have approved." 169 F. Supp. 3d at 479-80 & n.79.[9] As for Sanofi's other case, *Talley v. Time, Inc.*, that court prohibited the expert from testifying about whether "Defendants acted with 'actual malice,'" No. 14-cv-853,

[9] The *In re Mirena IUD* court allowed limited testimony about the intentions of the parties that were "clearly indicated" in documents without any interpretation of those documents by the expert, unlike what Sanofi proposes Mr. Schur do here. *Id.* at 478-80. That court also did not consider whether this testimony would be an improper summary of documents by an expert.

2018 WL 1101489, at *3 (W.D. Okla. Feb. 28, 2018), just as this Court should preclude Mr. Schur from opining on the parties' intentions and states of mind here.

**CONCLUSION**

For the reasons set out in Mylan's opening memorandum and above, the Court should exclude Mr. Schur's opinions about (i) Mylan's rebating practices, (ii) the Auvi-Q recall, (iii) Sanofi's compliance with marketing standards, (iv) Sanofi's monitoring of its sales force, (v) Auvi-Q's features, and (vi) Mylan's and Sanofi's purported intentions and states of mind.

Dated: August 30, 2019

Respectfully submitted,

s/ *Philip A. Sechler*
Philip A. Sechler

Roy T. Englert, Jr.
Kathryn S. Zecca
Lee Turner Friedman
Ralph C. Mayrell
Jessica Arden Ettinger
John B. Goerlich

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
psechler@robbinsrussell.com
kzecca@robbinsrussell.com
lfriedman@robbinsrussell.com
rmayrell@robbinsrussell.com
jettinger@robbinsrussell.com
jgoerlich@robbinsrussell.com

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*

**CERTIFICATE OF SERVICE**

On this 30th day of August, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which provides a notice of such filing on each attorney registered for ECF notification to the counsel of record in this case.

Respectfully submitted,

s/ *Philip A. Sechler*
Philip A. Sechler

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4492
Fax: (202) 775 4510
psechler@robbinsrussell.com

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*