# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO. 2:17-MD-02785-DDC-TJJ (MDL No. 2785) |
| SANOFI-AVENTIS U.S., LLC, <br><br> Plaintiff, <br> v. <br> MYLAN INC., et al., <br><br> Defendants. <br><br> *This Document Relates to the* Sanofi *case.* | CASE NO. 2:17-CV-02452-DDC-TJJ <br><br> *Document Filed Electronically* |

## REPLY IN SUPPORT OF MYLAN'S MOTION TO
## EXCLUDE OPINION TESTIMONY OF STEVEN N. WIGGINS, Ph.D.

Philip A. Sechler
Roy T. Englert, Jr.
Kathryn S. Zecca
Lee Turner Friedman
Ralph C. Mayrell
Jessica Arden Ettinger
John B. Goerlich

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510

*Counsel for Defendant Mylan Inc. and*
*Defendant/Counterclaim Plaintiff Mylan*
*Specialty L.P.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT .............................................................................................................. 2

I.   Dr. Wiggins's Opinion That Sanofi's Misleading Conduct Had No "Measurable Impact" On Auvi-Q's Sales Is Unreliable ......................................................... 2

    A.   As Sanofi Concedes, Dr. Wiggins Blindly Adopted The Forecasts And Health Plan Data That Form The Basis Of His Opinion ...................................... 2

    B.   Sanofi Concedes That Dr. Wiggins Did Not Control For Multiple Factors Impacting Auvi-Q Sales ..................................................................................... 4

    C.   Sanofi Concedes That Dr. Wiggins Added Two Third-Party Forecasts So That His Opinion Would Show Zero Damages To Mylan ..................................... 5

II.  Sanofi Confirms That Dr. Wiggins's Opinions About Auvi-Q's Features, EpiPen Supply Issues, And Patient Choice Are Improper Fact Summaries .................................. 7

CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ankuda v. R.N. Fish & Son, Inc.*,
    535 F. Supp. 2d 170 (D. Me. 2008) ...................................................................................8

*Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*,
    94 F.3d 655, 1996 WL 466673 (10th Cir. 1996) ............................................................3, 4

*Brill v. Marandola*,
    540 F. Supp. 2d 563 (E.D. Pa. 2008) ...............................................................................2

*Brown v. Wal-Mart Stores, Inc.*,
    402 F. Supp. 2d 303 (D. Me. 2005) ..................................................................................7

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ..........................................................................................5

*First Savings Bank, FSB v. U.S. Bancorp*,
    117 F. Supp. 2d 1078 (D. Kan. 2000) ...............................................................................5

*In re Aluminum Phosphide*,
    893 F. Supp. 1497 (D. Kan. 1995) ....................................................................................5

*In re Blood Reagents*,
    MDL No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ....................................2

*In re Rezulin*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...............................................................................8

*In re Universal Serv. Fund Tel. Billing Practices*,
    No. 02-md-1468, 2008 WL 4382141 (D. Kan. Sept. 26, 2008) .......................................5

*In re Urethane*,
    768 F.3d 1245 (10th Cir. 2014) .....................................................................................5, 6

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).......................................................................................................1, 2

*LeClercq v. The Lockformer Co.*,
    No. 00-cv-7164, 2005 WL 1162979 (N.D. Ill. Apr. 28, 2005)........................................7

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    874 F. Supp. 2d 169 (S.D.N.Y. 2012)...............................................................................7

*Margolies v. McCleary, Inc.*,
   447 F.3d 1115 (8th Cir. 2006) ....................................................................................2

*McAlester v. United Air Lines, Inc.*,
   851 F.2d 1249 (10th Cir. 1988) .................................................................................5

*McCoy v. Whirlpool Corp.*,
   258 F. App'x 189 (10th Cir. 2007) ............................................................................5

*Tagatz v. Marquette Univ.*,
   861 F.2d 1040 (7th Cir. 1988) ...................................................................................5

*TK-7 Corp. v. Estate of Barbouti*,
   993 F.2d 722 (10th Cir. 1993) ...................................................................................3

**Rules**

Fed. R. Civ. P. 26(a)(2) ...................................................................................................4

Fed. R. Evid. 702 .......................................................................................................1, 2

Sanofi argues that any well-qualified expert should be permitted to testify without regard to the reliability or fit of the expert's opinions. *See* Sanofi's Opp. to Mylan's Mot. to Exclude Opinion Testimony of Steven Wiggins, Ph.D. ("Opp.") at 2-4, ECF No. 1799. Of course, that is not the law. Under Rule 702 and *Daubert*, courts are required "to make certain that an expert … employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and, further, that the testimony is "tied to the facts of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 152 (1999). In performing that role, courts routinely exclude testimony of even qualified experts because their opinions are not reliable or relevant. *See, e.g.*, *id.* at 153-58.

Sanofi has failed to establish that Dr. Wiggins's opinions are the product of a reliable methodology and fit the facts of this case. Starting with Dr. Wiggins's benchmark analysis—the heart of his opinion that Sanofi's conduct did not injure Mylan—Dr. Wiggins admitted that he did no "independent evaluation" of the forecasts he relies on and "ha[s] not … independently verif[ied]" the choice of the health plan data he uses. Mylan's Mot. to Exclude Opinion Testimony of Steven Wiggins, Ph.D. ("Mot."), at 7-9, ECF No. 1679; Mot., Ex. 2, 63-67, 90. Moreover, Dr. Wiggins failed to adjust the forecasts in his benchmark analysis to account for multiple factors that affected Auvi-Q's real-world performance. Mot. 10-11. These failures, as well as his cherry-picking of other forecast data, Mot. 11-12, render his benchmark analysis unreliable and therefore inadmissible. As for his opinions about Auvi-Q's features, EpiPen supply issues, and patient choice, Mot. 12-15, Sanofi's Opposition confirms that Sanofi intends to funnel pure factual evidence through Dr. Wiggins. *See* Opp. 10-14. Dr. Wiggins's opinions should be excluded.[1]

---

[1] Sanofi's mischaracterization of Dr. Varner's opinions, Opp. 2, are addressed in Mylan's Opp. to Sanofi's Mot. to Exclude Expert Reports and Testimony of Expert Thomas Varner, ECF No. 1804.

**ARGUMENT**

**I.     Dr. Wiggins's Opinion That Sanofi's Misleading Conduct Had No "Measurable Impact" On Auvi-Q's Sales Is Unreliable**

Mylan has demonstrated that Dr. Wiggins's benchmark analysis is unreliable because he (i) relies on forecasts and data that he knows nothing about and has not validated, (ii) has failed to control for other factors that affected Auvi-Q's sales, and (iii) has engaged in cherry-picking of data. Sanofi falsely claims that Mylan is only "quibbl[ing]" with the factual bases of Dr. Wiggins's opinions, rather than challenging his methodology. Opp. 4. But Mylan's challenges to Dr. Wiggins's selection and validation of the forecasts and data at issue, and to his failure to control for other factors affecting Auvi-Q sales are, in fact, challenges to his methodology. Moreover, Sanofi ignores Rule 702's requirements that expert opinions be "based on sufficient facts or data" and that "the expert has reliably applied the principles and methods to the facts of the case." *See also Kumho Tire*, 526 U.S. at 150 ("the gatekeeping inquiry must be tied to the facts of a particular case.").[2]

**A.     As Sanofi Concedes, Dr. Wiggins Blindly Adopted The Forecasts And Health Plan Data That Form The Basis Of His Opinion**

Mylan challenges Dr. Wiggins's blind adoption of forecasts and data selected by Dr. Scott Morton. Mot. 7-9. In response, Sanofi insists Dr. Wiggins "was familiar with the data, and independently assessed and evaluated the data to determine that it was suitable for his analysis." Opp. 7. But the testimony Sanofi cites says exactly the opposite. With respect to the forecasts at

---

[2] The cases Sanofi cites, Opp. 3-4, confirm this requirement. *See Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1121 (8th Cir. 2006) ("We thus turn to [expert's] testimony and report to ascertain whether they were rooted in reason and factually sufficient."); *Brill v. Marandola*, 540 F. Supp. 2d 563, 568 (E.D. Pa. 2008) ("[A]n expert's testimony nonetheless must have some connection to existing facts, and expert testimony that ignores existing data and is based on speculation is inadmissible."); *In re Blood Reagents*, MDL No. 09-2081, 2015 WL 6123211, at *14 (E.D. Pa. Oct. 19, 2015) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record.").

issue—one prepared by Mylan, one by Sanofi—Dr. Wiggins admits that he was "relying on [Dr. Scott Morton's] conclusion" to select the forecasts; that his opinion was "a concurrence rather than an independent … conclusion" about the forecasts' reliability; and that he "would not think [his reasons] are sufficient reasons to reach an independent conclusion on [his] own" that the forecasts he relied on were reliable. Mot., Ex. 2, at 21-22. He also admits that he "do[es] not" "know [the] assumptions … that went into [the Mylan] forecast" or the "details of how the [Sanofi] forecast was done." *Id.* at 95, 113. With respect to the health plan data he uses, although Sanofi insists that Dr. Wiggins "believe[s] [the two health plans] were good examples," Opp. 5, Dr. Wiggins admits that he "didn't pick [the two health plans]"; that he "ha[s] not attempted to independently verify" they were appropriate; and that he has not "look[ed] for" other similar health plans. Mot., Ex. 2, at 55-57, 63-67. Sanofi never acknowledges or reconciles these admissions.

Under binding Tenth Circuit precedent, Dr. Wiggins's blind reliance on forecasts and data demands exclusion of his benchmark comparison as well as the damages opinions based on that comparison. *See Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, 94 F.3d 655, 1996 WL 466673, at *7 (10th Cir. 1996); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993); *see also* Mot. 5, 8-9. And Sanofi's attempts to distinguish those cases are unavailing. Just like the excluded expert in *TK-7 Corp.*, Dr. Wiggins "merely assumed that another expert's projections were valid and reliable and adopted them [as] his own opinion," "had no expertise with regard to those projections," and "knew nothing of the methods or reasoning the other expert used to arrive at the projections." Opp. 7 (citing *TK-7 Corp.*, 993 F.2d at 732). And in *Beck's Office Furniture & Supplies*, the issue was not—as Sanofi says, Opp. 6—that the expert in that case relied on reports that were "not themselves in the record." 1996 WL 466673, at *7. That expert's

3

testimony was excluded because he "did not provide an independent opinion" at all, *id.* at *7, but instead, like Dr. Wiggins, simply copied and averaged data from another expert.

Sanofi also suggests that Mylan expects Dr. Wiggins to "consider and rule out every conceivable alternative forecast," Opp. 5, but Mylan never made that argument. Mylan instead argued, as Dr. Wiggins testified, that Dr. Wiggins would "need to evaluate the context of the forecast and what it contained and how it was done and why it was done in order to answer th[e] question" of whether the forecast was reliable. Mot., Ex. 2, at 87-88. Dr. Wiggins admits to not doing that work. Sanofi also tries to redeem Dr. Wiggins's opinion by arguing that he exercises economic expertise in how he compares the selected forecasts and data. Opp. 4-5. But the fact remains that the method for selecting the forecasts and data he uses is unreliable and, therefore, any comparison that derives from that information is unreliable.[3]

### B.   Sanofi Concedes That Dr. Wiggins Did Not Control For Multiple Factors Impacting Auvi-Q Sales

Dr. Wiggins failed to control for multiple factors that impacted Auvi-Q's sales, including Auvi-Q's poorer than expected consumer awareness, sales force performance, and quality issues. Mot. 10-11 (citing Mylan's Mot. to Exclude Opinion Testimony of Fiona M. Scott Morton, Ph.D. ("Scott Morton Mot.") at 8-12, ECF No. 1680). For example, although Auvi-Q struggled with low consumer awareness and a sales force that was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Scott Morton Mot. 10-11, and although Dr. Wiggins acknowledged that marketing and promotion might affect sales, he admitted that he did not "get[] down into the weeds" to address

---

[3] Dr. Wiggins did not even originate this comparison; Dr. Scott Morton did. Even the graph that is the centerpiece of his analysis is a simplified version of one in Dr. Scott Morton's Main Report. *Compare* Ex. 1 (Scott Morton Rep.) at Figure 14, *with* Mot., Ex. 1, at Figure 1. And his statistical analysis was not timely disclosed as required under Rule 26(a)(2) of the Federal Rules of Civil Procedure. *See* Opp., Ex. A, at 28; Ex. 2.

those factors. *See* Mot., Ex. 2, at 75, 119. Nor did he address Auvi-Q's persistent quality issues that led to returns of its product even before the recall. *See* Scott Morton Mot. 11.

Sanofi does not dispute these factors exist, neither here nor in its Opposition to Mylan's *Daubert* motion to exclude Dr. Scott Morton. Sanofi argues, effectively, that because Dr. Wiggins controlled for some factors (namely, rebate contracts and Auvi-Q's features), he is excused from controlling for these other identified factors. But that is not the law. It is well-established that an expert opinion that fails control for significant identifiable factors should be excluded. Scott Morton Mot. 8-9 (collecting cases). Just like the expert in *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000), Dr. Wiggins has failed to ensure that his model "incorporate[s] all aspects of the economic reality of the [product]." *Id.* at 1057. And this Court, too, has excluded an expert for failing to account for "the presence of other factors that could be significant to [the damages] analysis." *First Savings Bank, FSB v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1084 (D. Kan. 2000); *In re Aluminum Phosphide*, 893 F. Supp. 1497, 1504 (D. Kan. 1995) (criticizing failure to use statistical methods to account for other factors affecting sales).[4] Dr. Wiggins's failure to control for all identified factors is fatal to his opinion.

### C.   Sanofi Concedes That Dr. Wiggins Added Two Third-Party Forecasts So That His Opinion Would Show Zero Damages To Mylan

Dr. Wiggins's reliance on two third-party forecasts only for the time period immediately after Auvi-Q launched in 2013 is unscientific cherry-picking. Mot. 11-12. Neither third-party forecast was discussed in Dr. Wiggins's report, which discussed only the Mylan and Sanofi

---

[4] Sanofi's cases are easily distinguished. Two cases pre-date *Daubert. See McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1259 (10th Cir. 1988); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1046 (7th Cir. 1988). In the remaining cases, the experts addressed all relevant factors at issue. *McCoy v. Whirlpool Corp.*, 258 F. App'x 189, 196 (10th Cir. 2007) (expert considered alternative cause of fire); *In re Universal Serv. Fund Tel. Billing Practices*, No. 02-md-1468, 2008 WL 4382141, at *9 (D. Kan. Sept. 26, 2008) (expert considered effect of forecasting error); *In re Urethane*, 768 F.3d 1245, 1261 (10th Cir. 2014) ("[expert] tested domestic demand variables").

forecasts that form the basis of most of his benchmark analysis. Mot., Ex. 2, at 47-48. Indeed, Dr. Wiggins disclosed his reliance on them for the first time at his deposition. *Id.* And Sanofi does not dispute that Dr. Wiggins used them to change certain damages figures in his model. Specifically, Auvi-Q's national share of EAI prescriptions, and its share at the two health plan comparators he uses, exceeded the Mylan and Sanofi forecasts in 2013. Under Dr. Wiggins's own theory, that means that Sanofi's conduct did injure Mylan. Mot. 11; Mot., Ex. 2, at 57-59; Opp. 9-10; *see also* Ex. 1 (Scott Morton Rep.) at Figure 14. By using the additional forecasts for only this 2013 time period, Dr. Wiggins is plainly cherry-picking data to avoid a finding of damages in 2013.

Sanofi calls Mylan's argument a "convoluted strawman," Opp. 9, although it offers no alternative explanation for Dr. Wiggins's decision to switch his methodology to include the two third-party forecasts. Sanofi also does not dispute that Dr. Wiggins does not know how these two third-party forecasts were made, Mot. 11-12, so his reliance on those forecasts is just as baseless as his reliance on the Mylan and Sanofi forecasts. *See supra* at pp. 2-4. Nor does Sanofi identify any basis for his opinion that the Sanofi and Mylan forecasts on which he relies for most of the time Auvi-Q was on the market "underestimated the speed of penetration" of Auvi-Q at launch other than Dr. Wiggins's *ipse dixit. See* Opp. 9-10.

Sanofi fails persuasively to distinguish Mylan's cited authorities excluding expert opinions that disregarded evidence without any basis in the scientific method. Mot. 12. And Sanofi's reliance on *In re Urethane*, 768 F.3d 1245, 1262 (10th Cir. 2014), is misplaced. In that case, the expert cited "test results" justifying his decision to exclude certain data (Dr. Wiggins cites nothing) and the expert there did not modify his theory after issuing his expert report (Dr. Wiggins did). *Id.* at 1263. Dr. Wiggins's "selective use of facts" to ensure a particular outcome "fails to satisfy the

scientific method and *Daubert*." *LeClercq v. The Lockformer Co.*, No. 00-cv-7164, 2005 WL 1162979, at *4 (N.D. Ill. Apr. 28, 2005).

**II.    Sanofi Confirms That Dr. Wiggins's Opinions About Auvi-Q's Features, EpiPen Supply Issues, And Patient Choice Are Improper Fact Summaries**

Sanofi inappropriately attempts to use Dr. Wiggins to "rehash a factual narrative and present counsels' theory of the case," *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 177 (S.D.N.Y. 2012), by seeking to have him testify that Auvi-Q's features made it "highly differentiated," that Meridian had production issues that would limit its capacity to supply additional devices, and that Sanofi's marketing to physicians was "highly unlikely to impact sales." Mot. 12-15 (quoting Mot., Ex. 1 ¶ 70). Sanofi's Opposition offers nothing that suggests Dr. Wiggins intends to do anything other than lend his weight as an expert to evidence that is inherently fact testimony. *See* Opp. 11-13 (expressing concern that "*evidence* of Auvi-Q's unique and innovative features" and "*evidence* of … EpiPen manufacturing and ongoing supply problems" be presented to jury (emphasis added)).

There is no expert opinion in Dr. Wiggins's proffered testimony. With respect to Dr. Wiggins's statement that Auvi-Q is a "highly differentiated" device—*i.e.,* that it has different features than EpiPen—Sanofi admits that Dr. Wiggins will testify only about what "Mylan and Sanofi expected," not any analysis he conducted. Opp. 11. In support of Dr. Wiggins's discussion of purported EpiPen supply issues, Sanofi's Opposition highlights the documents he reviewed, Opp. 12-13, but does not identify any analysis he conducted. And, with respect to Dr. Wiggins's statements regarding patient choice of EAI devices, Sanofi does not dispute that Dr. Wiggins did not reach this conclusion himself. *See* Opp. 13-14.

Dr. Wiggins's opinions do nothing more than "place an expert sheen on common sense." *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp. 2d 303, 309 (D. Me. 2005). They are "simple

inferences drawn from uncomplicated facts that serve only to buttress [Sanofi's] theory of the case." *In re Rezulin*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). Thus, Dr. Wiggins's testimony "does not assist … the [jury]" who "has no need for [his] opinion because it easily can be derived from common sense, common experience, the [jury's] own perceptions, or simple logic." *Ankuda v. R.N. Fish & Son, Inc.*, 535 F. Supp. 2d 170, 174 (D. Me. 2008).

## CONCLUSION

For the reasons stated above and in Mylan's opening memorandum, the Court should exclude Dr. Wiggins's (i) damages opinion, including his benchmark analysis and conclusion that Sanofi's conduct had no "measurable impact" on Auvi-Q's sales, (ii) opinion that Auvi-Q was a "highly differentiated" product, (iii) opinion about alleged EpiPen supply issues, and (iv) opinion that patients selected their EAI and thus marketing to physicians had no impact on Auvi-Q share.

Dated: August 30, 2019                          Respectfully submitted,

                                                s/  *Philip A. Sechler*
                                                Philip A. Sechler

                                                Roy T. Englert, Jr.
                                                Kathryn S. Zecca
                                                Lee Turner Friedman
                                                Ralph C. Mayrell
                                                Jessica Arden Ettinger
                                                John B. Goerlich

                                                ROBBINS, RUSSELL, ENGLERT, ORSECK,
                                                UNTEREINER & SAUBER LLP
                                                2000 K St. NW, 4th Floor
                                                Washington, DC 20006
                                                Telephone: (202) 775 4500
                                                Fax: (202) 775 4510
                                                psechler@robbinsrussell.com
                                                kzecca@robbinsrussell.com
                                                lfriedman@robbinsrussell.com
                                                rmayrell@robbinsrussell.com

jettinger@robbinsrussell.com
jgoerlich@robbinsrussell.com

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*

## CERTIFICATE OF SERVICE

On this 30th day of August, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which provides a notice of such filing on each attorney registered for ECF notification to the counsel of record in this case.

Respectfully submitted,

s/  *Philip A. Sechler*
Philip A. Sechler

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K St. NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775 4492
Fax: (202) 775 4510
psechler@robbinsrussell.com

*Counsel for Defendant Mylan Inc. and Defendant/Counterclaim Plaintiff Mylan Specialty L.P.*