IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to Consumer Class Cases) | MDL No:  2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter comes before the court on the class plaintiffs' Motion for an Order Implementing Stage One of Class Notice Plan (Doc. 2058).  The class plaintiffs move the court under Fed. R. Civ. P. 23(c)(2)(B) and 45 for an Order that:  (1) appoints A.B. Data, Ltd. as the Notice Administrator, and (2) authorizes them to issue subpoenas *duces tecum* to the six largest pharmacy benefit managers ("PBMs") and the 10 largest pharmacies seeking contact information and EpiPen purchase data for class members.  For reasons explained below, the court grants the Motion for an Order Implementing Stage One of Class Notice Plan (Doc. 2058).

### I.      Background

In this MDL, the class plaintiffs are endpayors in the United States who paid or reimbursed others for some or all of the purchase price of branded or authorized generic EpiPens (an epinephrine auto-injector ("EAI") used to treat anaphylaxis).  Generally, plaintiffs allege that defendants—who distribute and manufacture the EpiPen—devised an illegal scheme to maintain a monopoly over the EAI market that successfully forced EpiPen consumers to pay inflated prices for the product.

On February 27, 2020, the court certified a nationwide RICO class and a state law antitrust class under Fed. R. Civ. P. 23(b)(3). Doc. 2018-1 at 126–27, 129. The court's certification Order directed plaintiffs to submit to the court a proposed plan for notice to class members of the two certified classes by March 31, 2020, so that the parties could begin the process of giving class notice consistent with Rule 23(c)(2)(B). *Id.* at 128–29. After defendants filed a Petition with the Tenth Circuit asking to take an interlocutory appeal of the court's class certification order under Fed. R. Civ. P. 23(f), the court extended the deadline for submitting the proposed plan for class notice so that it was due 30 days after the Tenth Circuit resolved defendants' Rule 23(f) Petition or any resulting appeal. Doc. 2044 at 2.

On May 26, 2020, the Tenth Circuit denied defendants' Petition seeking permission to appeal the class certification Order. Doc. 2071. So, under the current Scheduling Order, plaintiffs must submit their proposed plan for notice to class members by June 25, 2020. The pending Motion for an Order Implementing Stage One of Class Notice Plan seeks permission to begin the process of issuing class notice by: (1) appointing a notice administrator, and (2) issuing subpoenas *duces tecum* to secure information about class members and EpiPen purchases. The court considers these two requests, below.

## II. Discussion

### A. Appointment of A.B. Data as Notice Administrator

The class plaintiffs ask the court to appoint A.B. Data, Ltd. ("A.B. Data") as the Notice Administrator. The class plaintiffs describe A.B. Data as "one of the leading class action notice providers in the United States, with decades of experience." Doc. 2058 at 3. The class plaintiffs, after soliciting proposals for class notice administration from five administration companies, selected A.B. Data because its bid was price competitive and because it has particular experience

handling notice and claims administration in pharmaceutical cases involving the collection and storage of protected health information ("PHI").  According to the class plaintiffs, A.B. Data already has developed working relationships with many of the PBMs and pharmacies who plaintiffs here wish to subpoena.  And, A.B. Data maintains a proprietary database of tens of thousands of third-party payors ("TPPs"), many of whom—plaintiffs assert—are class members in this action.  Previously, our court has appointed A.B. Data to serve as a class notice provider and settlement administrator in four class actions in the District of Kansas.[1]

Defendants' Opposition to the class plaintiffs' motion "reserve[s] the right to seek information about A.B. Data" because without certain information "[d]efendants are unable to assess the adequacy of A.B. Data as a claims administrator."  Doc. 2068 at 16 n.8.  Also, defendants "reserve all rights to object to the appointment of A.B. Data at an appropriate time." *Id.*  The appropriate time for defendants to object to the appointment of A.B. Data was when they filed their Opposition.  Defendants provide no reason that A.B. Data is not qualified to serve as the Notice Administrator.  To the contrary, the court finds that the information submitted by the class plaintiffs about A.B. Data shows that it has sufficient experience and is well-qualified to serve as the Notice Administrator in this class action.  The court thus grants the class plaintiffs' request to appoint A.B. Data as Notice Administrator.

### B.  Issuing Subpoenas *Duces Tecum*

Next, class plaintiffs ask the court for permission to issue subpoenas to six PBMs and 10 pharmacies.  The subpoenas seek information from the subpoenaed PBMs and pharmacies about their customers who purchased one or more EpiPens during the Class Periods.  The class

---

[1]     A.B. Data's Vice President Eric Schachter identifies the four cases:  (1) *Payson v. Capital One Home Loans, LLC*, No. 07-2282-JTM-DWB, (2) *Clayton v. Velociti, Inc.*, No. 08-2298-CM-GLR, (3) *In re: YRC Worldwide, Inc. ERISA Litigation*, No. 09-2593-JWL-JPO, and (4) *Smith v. Mill-Tel, Inc.*, No. 08-2016-JAR-JPO.  Doc. 2058-2 at 2 (Schachter Decl. ¶ 2).

plaintiffs assert that they need this information to provide notice to the class, as Rule 23 requires. *See* Fed. R. Civ. P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means.")

Plaintiffs assert that the class notice stage routinely involves the use of subpoenas to gather information, particularly in cases involving pharmaceuticals.  Doc. 2058 at 4 (first citing *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 73 (E.D. Pa. 2019) ("Post-discovery, post class-certification subpoenas are permissible to identify class members and issue notice of the class action."); then citing *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 64 (D. Mass. 2005) (explaining how "[t]he End Payors, with the approval of this Court, issued subpoenas to the ten largest providers of retail pharmacy services in the United States as well as the mail-order pharmacies associated with the five largest providers of pharmaceutical benefit management in the United States to obtain electronic files of the names and addresses of any consumers of Relafen/nabumetone as well as information concerning the consumer's expenditures during the Class period." (citation and internal quotation marks omitted)).

Here, plaintiffs propose to subpoena six PBMs who, plaintiffs allege, collectively handled 95% of all prescriptions filled in the United States in 2018.  Doc. 2058 at 5.  Also, they seek to subpoena 10 of the largest pharmacies who, plaintiffs contend, collectively filled 73.3% of all prescriptions in the United States in 2018.  *Id.* at 6.  Plaintiffs explain that PBMs and pharmacies use a standard industry format—the NCPDP format—to maintain data about each prescription

filled.  Plaintiffs believe that securing the EpiPen prescription information will allow them to provide individual notice to almost all individual EpiPen purchasers during the Class Periods.

Also, plaintiffs explain why they are seeking a court order to secure the information sought by subpoena.  The EpiPen prescription information is considered PHI under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations.  *See* 45 C.F.R. § 160.103 ("Protected health information means individually identifiable health information . . . that is:  (i) [t]ransmitted by electronic media; (ii) [m]aintained in electronic media; or (iii) [t]ransmitted or maintained in any other form or medium" and not within certain exclusions of the definition).  HIPAA and its implementing regulations generally prohibit a HIPAA-covered entity from disclosing an individual's PHI.  But, the HIPAA regulations allow a covered entity to disclose PHI "in the course of any judicial . . . proceeding . . . [i]n response to an order of a court . . . provided that the covered entity discloses only the protected health information expressly authorized by such order."  45 C.F.R. § 164.512(e)(1)(i). So, here, plaintiffs ask the court for an order allowing them to subpoena PHI from the HIPAA-covered entities so that any disclosures made in response to the subpoenas comply with HIPAA and its implementing regulations.[2]

Plaintiffs also describe two other ways to ensure that the PHI is safeguarded after disclosure.  First, a producing party can designate information produced in response to a subpoena as confidential under the Protective Order.  Doc. 556 at 3–4.  Second, the producing party will produce the information directly to A.B. Data—not Class Counsel.  Only A.B. Data will maintain the data after production.  According to plaintiffs, A.B. Data has significant

---

[2]     This Order does not deprive any recipient of the right to assert valid objections to the subpoena.

experience handling the receipt, processing, and protection of PHI.  Also, A.B. Data has robust systems and electronic safeguards in place to protect PHI.

Defendants respond that plaintiffs' request to issue subpoenas is not part of a proper class notice plan.  Instead, they argue, plaintiffs are trying to re-do third-party merits discovery in an effort to identify class members.  The court finds this argument unimpressive.  The information sought by the proposed subpoenas (Doc. 2058-3 at 10) is information that the Notice Administrator will use to provide notice to the class members, as Rule 23(c)(2)(B) requires.[3] The Supreme Court expressly has held that "Rule 23(d), which concerns the conduct of class actions, not the discovery rules, empowers the District Court to direct" the gathering of information to provide class notice.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 342 (1978); *see also id.* at 350 ("Although [plaintiffs'] request resembles discovery in that it seeks to obtain information, we are convinced that it more properly is handled under Rule 23(d).  The critical point is that the information is sought to facilitate the sending of notice rather than to define or clarify issues in the case.").

Also, as plaintiffs point out, they properly are seeking this information after the court issued its Order certifying the two classes.  Had plaintiffs tried to secure the EpiPen prescription information during discovery—before the court had issued its certification decision—defendants and the subpoenaed parties likely would have responded with relevance objections.  *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539–40 (9th Cir. 2020) (holding that the district court erred by ordering defendant to produce identifying information for putative class members because "discovery of the name of a class member . . . is not relevant within the meaning of

---

[3]      As plaintiffs explain in their Reply, Doc. 2069 at 9, the subpoena directs the subpoenaed entity to produce the information directly to A.B. Data.  Doc. 2058-3 at 6.  Thus, plaintiffs argue, the subpoenaed data won't be useful to them for discovery purposes since it's provided only to the Notice Administrator for purposes of providing class notice.

[Rule 26(b)(1)]" and explaining that *Oppenheimer*'s rationale didn't apply to the case at hand where "no class has been certified").

The Federal Rules of Civil Procedure direct the court to apply the rules in a way that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Accepting defendants' argument that plaintiffs should have sought the EpiPen prescription information earlier in discovery would require the court to find that its Scheduling Orders required plaintiffs to seek, collect, and process information that they might never need if the court declined to certify a class action. This conclusion is contrary to Rule 1 for two reasons. First, such an approach is wholly inefficient. Why should *putative* class plaintiffs have to collect mountains of data that they may never need? Second, and more importantly, it is potentially needless for the entities able to produce the targeted information. The court can't construe the Federal Rules to require third parties—who have no stake in the litigation's outcome—to collect and provide information the putative class plaintiffs might need someday, if certification is granted. The court rejects defendants' argument that plaintiffs should have secured the proposed subpoenaed information back in the merits-discovery phase of the case.

Also, defendants argue that the class plaintiffs' proposed plan risks violating the "one-way intervention" doctrine and due process. "'One-way intervention' occurs when judgment on the merits in favor of plaintiffs prior to class certification allows potential class members to 'await a resolution on the merits of the claim before deciding whether or not to join the lawsuit.'" *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, No. 08-1330-JTM-KMH, 2015 WL 790081, at *1 (D. Kan. Feb. 25, 2015) (quoting *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353 (7th Cir. 1975)). Defendants argue that plaintiffs' proposed notice plan prevents them from having "a meaningful opportunity to seek summary judgment" because it is nearly impossible for

class members to receive notice before the court decides dispositive motions or proceeds with trial. Doc. at 2068 at 14. The court disagrees with this argument too. The "one-way invention" rule requires that class members receive notice and an opportunity to opt out of the class before the court issues a dispositive ruling. It doesn't prevent the parties from briefing summary judgment. As plaintiffs explain, sufficient time remains for the court to decide summary judgment before the April 13, 2021 trial date but after class notice is complete and the opt-out period has expired. The court thus rejects defendants' argument that the "one-way intervention" rule prevents the court from allowing the class plaintiffs to proceed with Stage One of their Class Notice Plan.

## III.     Conclusion

For the reasons explained, the court grants the Motion for an Order Implementing Stage One of Class Notice Plan (Doc. 2058). With this Order, the court: (1) appoints A.B. Data, Ltd. as the Notice Administrator, and (2) allows the class plaintiffs to issue the requested subpoenas *duces tecum*.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the class plaintiffs' Motion for an Order Implementing Stage One of Class Notice Plan (Doc. 2058) is granted.

**IT IS SO ORDERED.**

**Dated this 1st day of June, 2020 at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
