UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | ) | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) |
| This Document Relates To: CONSUMER CLASS CASES. | ) | CLASS PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' SUMMARY JUDGMENT AND *DAUBERT* BRIEFS, OR, ALTERNATIVELY, TO ORDER REFILING IN COMPLIANCE WITH D. KAN. RULES 5.1(a) AND 56.1 |

Class Plaintiffs, by and through their undersigned Class Counsel, respectfully move the Court to strike Defendants' summary judgment and *Daubert* briefs, or, alternatively, to order Defendants to refile their briefs in compliance with D. Kan. Rules 5.1(a) and 56.1.[1] In support of their motion, Class Plaintiffs state the following:

1. On April 24, 2020, this Court entered an order granting the parties' joint motion to set page limits for the parties' briefing on motions for summary judgment. *See* ECF No. 2062. That order granted "each side" 125 pages for their opening summary judgment briefs, and 25 pages for opening *Daubert* briefs. *Id.* at 1.

2. On July 15, 2020, the Mylan and Pfizer Defendants filed one joint motion for summary judgment and a supporting memorandum of law of 110 pages (ECF Nos. 2141, 2142-1), and the Pfizer Defendants filed a separate motion for summary judgment and a supporting memorandum of law of 15 pages (ECF Nos. 2148, 2149-1). Together, these two briefs were at the 125-page limit. Defendants also filed numerous *Daubert* briefs (ECF Nos. 2133, 2134, 2135, 2136, 2137-1, 2137-2, 2137-3, 2137-4, 2151, 2153-1, 2156, 2158-1).

3. Upon reviewing Defendants' two summary judgment briefs and six *Daubert* briefs,[2] Class Plaintiffs noticed at least two violations of this Court's Local Rules.

4. ***First***, Defendants' summary judgment briefs fail to comply with D. Kan. Rule 56.1(a), which, as interpreted by this Court (and virtually every state and federal court summary

---

[1] Class Plaintiffs do not bring this motion to delay adjudication of Defendants' motions, but rather to ensure that adjudication on the merits of their claims can occur fairly and in a timely manner.

[2] Defendants filed two separate *Daubert* briefs as to Class Plaintiffs' expert Professor Andrew W. Torrance, and belatedly asked for "clarification" as to whether they could file two briefs on "different topics." *See* ECF No. 2154 at 1. The Court ordered Class Plaintiffs to respond to the motion for clarification by July 20, 2020. *See* ECF No. 2168.

judgment rules), require ***each*** fact to be ***separately numbered***. Defendants cobble together sometimes over a half-dozen purported facts in one paragraph, then citing (in 10-point font footnotes littered with arguments) several different pieces of "evidence" purportedly supporting each fact within that one paragraph.

5. As but one of many examples, paragraph six of Defendants' 110-page joint summary judgment brief states as follows:

> 6. **Schools.** When Mylan acquired Dey, most state laws barred schools from keeping EAIs not prescribed to a particular child. School personnel also were not generally permitted to administer an EAI in an emergency to a child who did not have a prescription. This had tragic and preventable consequences. For example, a Chicago seventh-grader died in 2010 from an allergic reaction to food served at a classroom party. She was not given an injection of epinephrine even though one was on hand because Illinois law only allowed schools to dispense a prescription medication if the student's physician prescribed it, her parents supplied it, and the student had a medical plan that listed it—requirements that a student who did not know she had a severe allergy could not meet. About a year later, a first-grader in Virginia died after suffering an allergic reaction at school. Her mother had tried to provide the school an EpiPen Auto-Injector, but the school refused to keep it.

ECF No. 2142-1 at 5. This one paragraph alone contains ***seven*** separate "facts," some of which do not even cite to the record or other admissible evidence.[3]

6. There are also seven separate "facts" in another single paragraph:

> 87. Also during this period, at least two additional EpiPen patents were awaiting approval by the U.S. Patent and Trademark Office ("USPTO"). The application for what would become U.S. Patent No. 8,870,827 (the "'827 Patent") was made publicly available in December 2010. The '827 Patent was issued by the USPTO in October 2014.186 Another EpiPen-related patent, U.S. Patent No. 8,048,035 ("'035 Patent"), was issued by the USPTO in November 2011. These patents differ from prior patents held by Pfizer on EpiPen Auto-Injector and more specifically cover its innovative sharps-protection. For example, the '827 Patent claims a specific hollow-body needle cover for an EAI device that eliminates the risk of user contact with the EAI needle after dispensation of the medication.

---

[3] The Pfizer Defendants' summary judgment brief "incorporates the Statement of Material Facts ("SMF") in Defendants' Memorandum In Support Of Defendants' Motion for Summary Judgment (July 15, 2020)." ECF No. 2149-1 at 1.

> Disputes relating to the ’827 and ’035 Patents, which do not expire until 2025, were not addressed in the EpiPen litigation. Thus, even had Teva won at trial, Teva could not have obtained a ruling that its device did not infringe the ’827 and ’035 Patents.

ECF No. 2142-1 at 25.

7. Giving Defendants the benefit of the doubt, Class Plaintiffs found that 126 out of Defendants’ 188 paragraphs (67%) allege multiple alleged “facts” in one paragraph. This tactic plainly violates D. Kan. Rule 56.1. So, too, does Defendants’ attempt to shoehorn myriad purported facts and argument regarding their 2-Pak scheme into one footnote citing to one exhibit to their brief (*see* ECF No. 2141-1 at 16-17 n.112 & Ex. 102), which jams an abundant amount of testimony from dozens of plaintiffs into twelve pages of single-spaced charts.[4]

8. Enforcing D. Kan. Rule 56.1, this District has repeatedly quashed attempts to combine numerous “facts” into a single paragraph. *See, e.g.*, *Hammad v. Bombardier Learjet, Inc.*, 192 F. Supp. 2d 1222, 1228 (D. Kan. 2002) (“Certain local rules further govern the presentation of facts and evidence. Local Rule 56.1 requires defendant to set forth a concise statement of material facts. ***Each fact*** must appear in a ***separately numbered paragraph*** and each paragraph must refer with particularity to the portion of the record upon which defendant relies. The opposing memorandum must contain a similar statement of facts.”) (internal citations omitted; emphasis added); *see also U.S. Transp., Inc. v. Torley*, No. CIV.A. 08-1403-MLB, 2011 WL 3704723, at *2 (D. Kan. Aug. 23, 2011) (same); *Barnes v. Genetic Techs., Inc.*, No. CV 05-1328-MLB, 2006 WL 8440231, at *2 (D. Kan. Aug. 14, 2006), *aff’d*, 224 F. App’x 842 (10th Cir. 2007) (same); *Strope v. Pettis*, No. CIV.A. 05-3059-MLB, 2006 WL 482915, at *2 (D. Kan. Feb. 28, 2006) (same); *Berroth v. Farm Bureau Mut. Ins. Co.*, 232 F. Supp. 2d 1244, 1246 n.4 (D. Kan.

[4] “Arguments made in a perfunctory manner, such as in a footnote, are waived.” *United States v. Judd*, 42 F. App'x 140, 144 (10th Cir. 2002).

2002) ("In this case, ***counsel for both parties have included multiple facts in single numbered paragraphs***. Moreover, plaintiff's counsel has presented additional facts in the same numbered paragraphs at which plaintiff responds to facts set forth in defendant's motion for summary judgment. ***Such disregard for the local rules of this court has hindered the court's efficient disposition of the pending motion***.") (emphasis added).

9. Adherence to this Local Rule is vital to the record and the summary judgment standard, especially in a complex matter such as this. Discrete facts serve both as an aid to the Court in determining which material facts are undisputed, and to give the opposing party a fair opportunity to clearly state in its opposing memorandum, as the Rule requires, whether a particular asserted fact is or is not disputed. For these reasons, this Court has stated that non-compliance with D. Kan. Rule 56.1 "could" permit the Court to "deny [a party's] summary judgment motion for this reason alone." *Neighbors v. Lawrence Police Dep't*, No. 15-CV-4921-DDC-KGS, 2016 WL 3685355, at *16 (D. Kan. July 12, 2016) (Crabtree, J.).

10. ***Second***, none of Defendants' briefs are "double-spaced" in compliance with D. Kan Rule 5.1(a). Instead, Defendants claim that they used "Exactly 24" line spacing, not double-spacing. Mylan's counsel confirmed this on July 16, 2020, stating that its joint brief with the Pfizer Defendants used "[E]xactly 24" line spacing. (*See* Ex. A (Email from C. DeLone to R. Hudson)).[5] This is not an academic problem. Spread across literally hundreds of pages of briefing, this change

[5] While Ms. DeLone represented that using "[E]xactly 24" is what they have "done in the past," Ex. A, that is not entirely true. Defendants' opposition to Class Plaintiffs' motion for class certification (ECF No. 1636), the Memorandum in Support of the Mylan Defendants' Motion to Compel Discovery From Plaintiffs (ECF No. 286), the Memorandum of Points and Authorities in Support of Mylan's Motion for Summary Judgment in the *Sanofi* case (ECF No. 1660-2), and most of Defendants' motions to exclude Class Plaintiffs' experts (not the memoranda) (ECF Nos. 2133, 2134, 2135, 2136), among others, were formatted using Microsoft Word's "double" line spacing setting.

had the effect of substantially increasing the number of pages of Defendants' summary judgment and *Daubert* briefing. (*See, e.g.*, Ex. B (Page 108 double-spaced)). For example, had Defendants used Microsoft Word's "double" spacing convention in their summary judgment briefs, their 125-pages of summary judgment briefing would have likely been in excess of 140 pages, which would violate this Court's April 24, 2020 order. Defendants' *Daubert* briefs would similarly be over-length.

11. In a telephone conference with Defendants on July 16, 2020, Defendants advised that, in their opinion, "Exactly 24" is "true" double-spacing, and that, had they used Word Perfect instead of Microsoft Word, their "Exactly 24" line spacing would have been "double-spacing" in that program.

12. These excuses are easily disposed of. Federal courts around the country have often rejected the use of "Exactly 24" as an end-run around page limitations. For example, in *CafeX Commcn's, Inc. v. Amazon Web Servs., Inc.*, Judge Marrero found that defendant's memorandum "was 24-point spaced, ***not double spaced***, and allowed [defendant] to submit a substantially longer memorandum than the 25 pages provided by this Court's Individual Rules." No. 17-cv-01349 (VM), ECF No. 43 at 1 (S.D.N.Y. Mar. 30, 2017) (emphasis added) (Ex. C). According to the court in *CafeX*, the "flouting" of the "Court's Individual Rules was a deliberate choice by counsel for [the defendant] to gain some slight advantage in this litigation." *Id.* Under these circumstances, the court ordered defendant to file a replacement memorandum and pay monetary sanctions. *Id.* at *1-2.

13. Similarly, in *Cristler v. United States through United States Dep't of Agric.*, No. CV-07-07-M-DWM, 2008 WL 11348475 (D. Mont. Aug. 26, 2008), Judge Molloy found that

> The Defendants' briefs violate the Local Rules because they are not in true double spacing. Local Rule 10.1(a) states in part, "All documents shall be typewritten or neatly handwritten and double-spaced, except for quoted material

> and footnotes, in at least 12–point font size without erasures or materially defacing interlineations. ***Spacing mechanisms such as 'Exactly 24' are not acceptable***." The Defendants' briefing ***contains as many as 28 lines per page***, *see* Defendants' Reply Brief, Doc. No. 227, p. 6, ***which exceeds the maximum number of double-spaced lines that can be placed within one-inch margins on an 8 1/2" by 11" page using 12–point font***. Local Rule 10.4 states that the Court may impose sanctions for a violation of any of the requirements of Local Rule 10.

*Id.* at *1 (emphasis added).[6]

14. Courts in the Tenth Circuit have also rejected gamesmanship on line spacing. *See Woodruff v. Herrera*, No. CV 09-449 JH/KBM, 2011 WL 13168988, at *2 (D.N.M. Mar. 31, 2011) ("In addition, Plaintiffs' motion is not double-spaced, as required by the Local Rules, but is perhaps 1.5 spaced. This is evident by the number of lines of text that Plaintiffs are able to squeeze onto a page . . . . These violations of the Local Rules indicate that if the Plaintiffs' motion were in compliance, it would be substantially longer than 81 pages–perhaps even more than 100 pages in length."); *Starr v. Astrue*, No. CV 10-1131 JCH/WPL, 2011 WL 13284758, at *1 n.1 (D.N.M. Nov. 28, 2011) ("Starr's motion and brief were clearly not double spaced. Appropriately spaced, it would have been well over the page limit. The Local Rules are not optional."); *Wright v. Liberty Mut. Fire Ins. Co.*, No. CIV.A. 06-CV-00351-WYD KLM, 2009 WL 2338058, at *1 (D. Colo. July 27, 2009) ("As a preliminary matter, the Motion and Reply, which are not double spaced, do not comply with D.C. Colo. L. Civ. R. 10.1(E) and are subject to denial on this basis alone."); *Found. Learning LLC v. Acad., Arts & Action Charter Acad.*, No. 17-CV-03182-RM-KLM, 2018 WL 3382933, at *3 (D. Colo. May 18, 2018) ("[A]lthough plaintiff initially filed a motion for

---

[6] *See also In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-02179-CJB-DPC, ECF No. 13393 at 2-3 n.4 (E.D. La. Sept. 15, 2014) (Finding that defendant's brief violated local rules governing format for briefs, noting that "Page 2 of BP's brief . . . provides a clear example. That page contains only text – no headings, footnotes, block quotes, double-returns, etc. ***There are 27 lines of text. A double-spaced page, with 12 point font and 1 inch margins should have only 23 lines***. Multiplied across 35 pages, BP granted itself approximately 140 extra lines of text, or 6 extra pages (140/23 = 6.09).") (emphasis added).

preliminary injunction on December 29, 2017, that motion was quickly denied without prejudice because it was not double-spaced, in violation of the Local Rules and this Court's Civil Practice Standards. In addition, although the Court specifically said plaintiff could re-file a motion for preliminary injunction, provided that it complied with the Local Rules and Civil Practice Standards.") (internal citations omitted).[7]

15. As a result of both combined Local Rule violations (which mutually reinforce each other),[8] Class Plaintiffs now must respond to (and eventually this Court must wrestle with) purportedly undisputed "facts" in Defendants' summary judgment briefs that are impossible to respond to, and Class Plaintiffs must respond to briefs that are likely in excess of the limits this Court ordered. The parties' stipulation with respect to page limits was the subject of extensive negotiations. In those negotiations, Defendants sought to file summary judgment briefs substantially longer than the parties' 125-page agreement. Yet, by violating D. Kan. Rule 56.1 and using a formatting trick, Defendants may have obtained the very page limits Class Plaintiffs made clear they would not agree to and the Court did not approve.

16. As to Defendants' violation of D. Kan. Rule 5.1(a) (line spacing), during a meet-and-confer conference on July 17, 2020, Defendants offered to let Class Plaintiffs use the same

---

7 *See also Johnson v. U.S. Bancorp*, No. C11-02010 RAJ, 2012 WL 6615507, at *1 (W.D. Wash. Dec. 18, 2012) ("Plaintiffs have failed to double space their brief as required by the Local Rules, have engaged in creative formatting to keep their response to less than 24 pages, and have not filed a motion to file an over-length brief. The court therefore declines to consider the additional 24 pages of the previously filed brief.") (internal citation omitted).

8 As noted above, Defendants compounded their Local Rule violations by littering their micro-font footnotes with legal argument. *See Steven Wayne Fish v. Kobach*, No. 16-2105-JAR, 2016 WL 6125029, at *3 (D. Kan. Oct. 20, 2016) ("As plaintiffs raised this argument 'in a perfunctory manner' and in a footnote, however, the court deems the argument waived.") (quoting *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (*en banc*); *Judd*, 42 F. App'x at 144; *Utahns for Better Transp. v. U.S. Dept. of Treasury*, 305 F.3d 1152, 1169 (10th Cir. 2002)).

line-spacing convention they did in their briefing. But two wrongs don't make a right, and Class Plaintiffs have no interest in extending the already voluminous briefing this Court must read to decide Defendants' summary judgment and *Daubert* motions, which already total 251 pages and nearly 400 exhibits.

17. As to Defendants' violation of D. Kan. Rule 56.1 (statement of facts), during a meet-and-confer conference on July 20, 2020, Defendants took the position that grouping multiple facts in a single paragraph was permitted in complex litigation, including in this District, and that they interpret D. Kan. Rule 56.1 differently than Class Plaintiffs.

18. Accordingly, Class Plaintiffs respectfully move to strike Defendants' summary judgment and *Daubert* briefs for lack of compliance with D. Kan Rules 5.1(a) and 56.1 or, alternatively, to order Defendants to refile proper briefs, and extend the time for Class Plaintiffs to respond to the same until 30 days from the date of re-filing.

19. Class Plaintiffs spoke with Defendants on July 16, 17, and 20, 2020, regarding the relief requested in this motion. Defendants take the position that they complied with the Rules.

DATED: July 20, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
BRADLEY M. BEALL

*s/ Stuart A Davidson*

STUART A. DAVIDSON

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
BRIAN O. O'MARA
ARTHUR L. SHINGLER III
LEA MALANI BAYS
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
bomara@rgrdlaw.com
ashingler@rgrdlaw.com
lbays@rgrdlaw.com

KELLER ROHRBACK L.L.P.
LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

BURNS CHAREST LLP
WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: 469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

PRITZKER LEVINE LLP
ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: 415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

SHARP LAW, LLP
REX A. SHARP
RYAN C. HUDSON
5301 West 75th Street
Prairie Village, KS 66208
Telephone: 913/901-0505
913/901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com

Co-Lead Counsel and Liaison Counsel for Class Plaintiffs

**CERTIFICATE OF SERVICE**

This is to certify that, on the 20th day of July, 2020, a true and correct copy of the foregoing CLASS PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' SUMMARY JUDGMENT AND *DAUBERT* BRIEFS, OR, ALTERNATIVELY, TO ORDER REFILING IN COMPLIANCE WITH D. KAN. RULES 5.1(a) AND 56.1 was served by filing the document electronically, which delivered a copy to all counsel of record.

*s/ Stuart A. Davidson*
STUART A. DAVIDSON

ROBBINS GELLER RUDMAN
& DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)