**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO.: 2:17-MD-02785-DDC-TJJ<br><br>Hon. Daniel D. Crabtree<br><br>Hon. Teresa J. James |

## REPLY IN SUPPORT OF MOTION TO CLARIFY ORDER SETTING PAGE LIMITS

There are no "tricks" involved in Defendants' Motion to Clarify ("Defendants' Motion"). Despite Plaintiffs' rhetoric, this is a very straight-forward request seeking clarification of the Court's April 24, 2020, Order (Doc. 2062) setting page limits for summary judgment and *Daubert* motions. As set forth in Defendants' Motion, that order provides that "briefing for <u>*each*</u> *Daubert* motion" is subject to certain page limits. Doc. 2062 at 1 (emphasis added). Defendants are in compliance with this Order because Plaintiffs decided to ask a single person to sit in the chairs of two very different experts, to write two different reports, and to be deposed twice concerning those distinct reports.

Plaintiffs are correct that "[t]his is a new one," Doc. 2171 ¶ 3, but it is only new because of Plaintiffs' decision to designate a single person to offer two different expert opinions, in two different reports—one affirmative and one rebuttal, on two completely different issues. Plaintiffs conceded that the subject matter of the reports do not overlap, and did not object to Defendants taking a separate deposition on each. Plaintiffs' state that "nothing in this Court's page-limit order permitted Defendants to file separate *Daubert* motions on separate issues." *Id*. ¶ 4. But they ignore that nothing in the Court's Order prohibited Defendants from doing so, and Defendants believe that—given the circumstances—doing so was appropriate. "Taken to its logical conclusion" a party could designate a single person to provide expert testimony on an

1

unlimited number of "different topics" or "separate issues," and file expert reports as to each. *Cf. id.* ¶¶ 3, 4. Under Plaintiffs' reading of the Order, the opposing party would be limited to a single *Daubert* motion for any number of non-overlapping expert reports—merely because they were submitted by the same individual. For example, Plaintiffs could also have had Professor Torrance issue a separate report on damages in this case, and another one defining the market for epinephrine auto-injectors. But there is no question that had they chosen a person having ordinary skill in the art ("POSITA") (in this case a mechanical engineer), Defendants would have been permitted to file a separate *Daubert* motion as to that expert. Defendants should thus not be precluded from doing so simply because Plaintiffs declined to find a qualified expert.

Plaintiffs concede that the issue of the '827 Patent, Mr. Clemens' technical comparison of that patent to the Teva device, and Professor Torrance's rebuttal to that comparison, is based on a "new"; i.e., different, argument. Doc. 2171 ¶ 7. But Plaintiffs' opposition mischaracterizes the distinct issues at play in Professor Torrance's two reports. Plaintiffs concede that Professor Torrance's affirmative report (which Defendants separately rebut with the opinion of David Folsom) addresses "Teva's likelihood of success in the Teva patent litigation." Doc. 2171 ¶ 6. An expert analysis on "likelihood of success" in the Teva litigation requires review of the trial record, and the ultimate opinion goes to whether the only economically rational explanation for the Teva settlement was a reverse payment. Doc. 2153-2 at 1-2. By contrast, the technical analysis performed by Mr. Clemens goes to whether Plaintiffs have met their burden on an entirely different issue: whether after a technical review of the blueprints and design drawings of Teva's proposed auto-injector device, that device would have infringed the '827 Patent. Doc. 2142-1 § I.A.1.d. In other words, the two pairs of experts—Professor Torrance and Mr. Folsom on the one hand, discussing the merits of a patent litigation, and Professor Torrance and Mr.

2

Clemens on the other, addressing infringement based on a technical comparison of the device to a non-litigated patent—opine on entirely separate issues that require different analyses and different types of opinion. The two *Daubert* motions accordingly raise different issues of both fact and law.

Finally, Plaintiffs will suffer no prejudice by responding to a second brief. Had Plaintiffs chosen their own POSITA expert to rebut Defendants' POSITA, Mr. Clemens, they would have been required to respond in kind to a second brief. Likewise, if Plaintiffs had sought to exclude Defendants' experts on these same topics, they would have been permitted to file two separate 25-page motions—one directed to Mr. Folsom and one directed to Mr. Clemens. Nothing is different here. Plaintiffs get the same 25 pages per brief to respond to each of Defendants' motions. Their loss of time argument is without merit; they did not know how many *Daubert* motions they would be required to respond to until July 15, 2020 when Defendants filed those motions. They are in the same situation they would have been had they properly chosen a POSITA for their rebuttal report to Mr. Clemens as they are now.[1]

## CONCLUSION

For the following reasons and the reasons set forth in Defendants' Motion, Defendants seek an Order clarifying that they may address in separate motions, each subject to the applicable page limitations, the affirmative and rebuttal opinions of Plaintiff's expert, Professor Andrew W. Torrance. In the alternative, Defendants seek leave to exceed those page limits by filing Exhibit A, a 17-page motion (and accompanying materials) addressing Professor Torrance's rebuttal opinions in addition to a 25-page motion addressing his affirmative opinions.

---

[1] In response to Plaintiffs' statement in paragraph 2 of their opposition to the motion to clarify, Defendants incorporate by reference Defendants' Opposition to Plaintiffs' Motion to Strike (July 22, 2020).

Dated: July 22, 2020     SHOOK, HARDY & BACON L.L.P.

By:   /s/ *Joseph Rebein*

Joseph Rebein, #25912
Zach Chaffee-McClure, #23479
Ashley Harrison, D. Kan. #78667
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone:   (816) 474-6550
Facsimile:     (816) 421-5547
jrebein@shb.com
zmcclure@shb.com
aharrison@shb.com

AND

Dimitrios T. Drivas
Robert A. Milne
Raj S. Gandesha
Edward Thrasher
Kathryn Swisher
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Fax: (212) 354-8113
ddrivas@whitecase.com
rmilne@whitecase.com
rgandesha@whitecase.com
edward.thrasher@whitecase.com
kathryn.swisher@whitecase.com

*Counsel for Defendants*
*Pfizer Inc., King Pharmaceuticals LLC, and*
*Meridian Medical Technologies, Inc.*

*/s/ Adam K. Levin*

Adam K. Levin
David M. Foster

4

Benjamin F. Holt
Justin W. Bernick
Carolyn A. DeLone
Kathryn M. Ali
Katherine B. Wellington
HOGAN LOVELLS US LLP
555 13th Street.NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
adam.levin@hoganlovells.com
david.foster@loganlovells.com
benjamin.holt@hoganlovells.com
justin.bernick@hoganlovells.com
carolyn.delone@hoganlovells.com
kathryn.ali@hoganlovells.com
katherine.wellington@hoganlovells.com

Brian Fries (15889)
James Moloney (23786)
LATHROP GPM
2345 Grand Boulevard, Suite. 2200
Kansas City, MO 64108-2618
Telephone: (816)292-2000
Fax: (816) 292-2001
bfries@lathropgpm.com
jmoloney@lathropgpm.com

*Counsel for the Mylan Defendants*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2020, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will serve electronic notice of same upon all attorneys of record.

By: _/s/ Joseph Rebein_

COUNSEL FOR DEFENDANTS
*Pfizer Inc., King Pharmaceuticals LLC, and Meridian Medical Technologies, Inc.*