## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: EpiPen (Epinephrine
      Injection, USP) Marketing,
      Sales Practices and Antitrust
      Litigation

(This Document Applies to
Consumer Class Cases)

MDL No:  2785

Case No. 17-md-2785-DDC-TJJ

## MEMORANDUM AND ORDER

This matter comes before the court on the class plaintiffs' Motion for an Order

Implementing Stage Two of Class Notice Plan (Doc. 2209).  The class plaintiffs move the court

under Fed. R. Civ. P. 23(c)(2)(B) for an Order that approves the proposed manner and forms of

notice that class plaintiffs hope to use to provide notice of pendency of the action to the certified

Class.  Defendants oppose the class plaintiffs' motion.  Doc. 2231.  And, the class plaintiffs have

submitted a Reply.  Doc. 2236.  For reasons explained below, the court grants the class plaintiffs'

Motion for an Order Implementing Stage Two of Class Notice Plan in part and denies it in part.

Specifically, the court denies the class plaintiffs' motion to the extent it seeks approval of

the short-form notice and long-form notice that the class plaintiffs propose sending to individual

class members.  The court instead directs the class plaintiffs to make one change to each form.

The court directs the class plaintiffs to amend the "Trial" section of the short-form notice to

inform class members that the court hasn't decided yet whether a trial is necessary in the matter.

Second, the court directs the class plaintiffs to amend the "Lawyers Representing You" section

of the long-form notice to inform class members that the lawyers represent the class members

and not one class member specifically.  But, in all other respects, the court grants the class

plaintiffs' motion.  The court explains its reasoning, below.

## I.  Background

In this MDL, class plaintiffs are endpayors in the United States who paid or reimbursed

others for some or all of the purchase price of branded or authorized generic EpiPens (an

epinephrine auto-injector ("EAI") used to treat anaphylaxis).  Generally, plaintiffs allege that

defendants—who distribute and manufacture the EpiPen—devised an illegal scheme to maintain

a monopoly over the EAI market that successfully forced EpiPen consumers to pay inflated

prices for the product.

On February 27, 2020, the court certified a nationwide RICO class and a state law

antitrust class under Fed. R. Civ. P. 23(b)(3).  Doc. 2018-1 at 126–27, 129.  The court's

certification Order directed plaintiffs to submit to the court a proposed plan for notice to class

members of the two certified classes, so that the parties could begin the process of giving class

notice consistent with Rule 23(c)(2)(B).  *Id.* at 128–29.  Class plaintiffs have submitted their

proposed notice plan in phases.  On June 1, 2020, the court granted class plaintiffs' Motion for

Order Implementing Stage One of the Class Notice Plan.  Doc. 2074.  With that Order, the court

granted class plaintiffs' requests that the court:  (1) appoint A.B. Data, Ltd. as the Notice

Administrator, and (2) allow class plaintiffs to issue subpoenas *duces tecum* to secure

information about class members and EpiPen purchases.  *Id.* at 8.

Now, class plaintiffs apply to the court for approval of Stage Two of the Class Notice

Plan.  Class plaintiffs ask the court to approve their proposed notice program and forms of notice

which, they contend, satisfy the requirements of Rule 23 and provide the certified classes with

the best notice practicable under the circumstances.  Doc. 2209 at 2.  Class plaintiffs' proposed

plan seeks to issue two types of notice:  individual notice and publication notice.  *First*, with individual notice, class plaintiffs propose providing notice to most third-party providers ("TPP") and individual class members by email or by first-class U.S. mail if no email address is available. *Second*, with publication notice, class plaintiffs will provide notice using a case-specific website and publication notice program to reach those class members who class plaintiffs cannot contact by email or first-class U.S. mail.  The Notice Administrator, A.B. Data, estimates that the proposed notice program will reach at least 85% of the two certified classes.  Doc. 2209-8 at 10 (A.B. Data Proposed Class Action Notice Plan).

Defendants oppose class plaintiffs' proposed notice plan, arguing that it is overbroad and prejudicial to them.  Defendants contend that the proposed notice plan is "an overreach that exceeds the requirements of Rule 23 and due process."  Doc. 2331 at 4.  So, defendants ask the court to deny class plaintiffs' Motion for an Order Implementing Stage Two of Class Notice Plan.

The court addresses the parties' argument for and against approving the class notice plan, below.

## II.    Legal Standard

Rule 23(c)(2)(B) requires that when, as here, the court certifies a class action under Fed. R. Civ. P. 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23 permits providing notice to the class members by "United States mail, electronic means, or other appropriate means."  *Id.*  The notice must "clearly and concisely state in plain, easily understood language":

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through an attorney if the member so desires;

(5) that the court will exclude from the class any member who requests exclusion;

(6) the time and manner for requesting exclusion; and

(7) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Rule 23(c)(2)(B)'s requirement that the court must direct the "the best notice that is practicable under the circumstances" is "essential" to "ensure that class members who desire to pursue their own claims individually have the opportunity to exercise their right to opt out of the class." *Gottlieb v. Wiles*, 11 F.3d 1004, 1012 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002).

"In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005) (citing U.S. Const. amend. V (other citations omitted)). "For due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Id.* at 944 (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *Id.*

The "best notice practicable" does not necessarily require actual notice, *e.g.*, mailed individual notice.  *Id.*  Instead, notice by publication can satisfy Rule 23 and due process when the identities of class members are unknown to the parties.  *Id.* (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 320 (1950)).  However, "[i]ndividual notice to identifiable class members is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'"  *Better v. YRC Worldwide, Inc.*, No. 11-2072-KHV, 2015 WL 566962, at *3 (D. Kan. Feb. 11, 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

### III.    Discussion

Class plaintiffs assert that their proposed class notice plan complies with Rule 23's requirements, as well as due process.  Class plaintiffs have submitted the form summary notice ("short-form notice") that they intend to provide to class members by email and first-class U.S. mail.  Doc. 2209-2 (short-form notice).  They contend, and the court agrees, that this short-form notice provides all the information that Rule 23 requires in plain, easily understood language.[1]  It also provides a link to the class notice website and to the long-form class notice, which provides more information about the action.  *See* Doc. 2209-3 (long-form notice).

 For the most part, defendants don't quibble with the content, form, and manner for class plaintiffs' proposed individual notice plan using the short and long-form notices.  Defendants'

---

[1]     Class plaintiffs also have shown that the short-form notice complies with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d–1320d-9.  It complies with this Act because (1) the notice doesn't disclose or connect any individual person's protected health information ("PHI") to the provision of healthcare or the payment of health services; instead, the notice is directed generically to all persons and entities in the United States who may have purchased a branded or authorized generic EpiPen, and (2) even if the notice did disclose PHI, the notice complies with HIPAA because it is issued in response to a court order, *see* 45 C.F.R. § 164.512(e)(1)(i) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order[.]").

objections to the proposed notice plan mainly focus on the proposed publication notice plan. Class plaintiffs propose providing publication notice using printed notice in magazines and electronic notice using social media platforms and banner advertisements on specific websites. Defendants oppose class plaintiffs' proposed notice plan with four arguments.

*First*, defendants assert that the proposed notice plan is overbroad and duplicative, ultimately intended to provide notice to 170 million individuals. Defendants argue that class plaintiffs earlier estimated that individual notice would reach more than 70% of the class members. So, defendants assert, class plaintiffs haven't established why publication notice even is necessary here in light of the extensive individual notice available in this case. But, calibrating the amount of notice provided to class members is not an exact science. And, defendants cite no case holding that a court violates Rule 23 or due process by providing *too much* notice. Instead, as discussed, Rule 23 requires "the best notice that is practicable under the circumstances . . . ." Fed. R. Civ. P. 23(c)(2)(B).

Here, assuming that the individual notice plan reaches 70% of two certified classes (as class plaintiffs have predicted), some 30% of the members of the two classes won't receive individual notice. Thus, the Notice Administrator, A.B. Data, has proposed the publication notice plan to supplement the individual notice and bridge that 30% gap. As the court previously has discussed, A.B. Data is experienced and well-qualified in the field of notice administration in class actions. Doc. 2074 at 3. As an expert in this field, A.B. Data has recommended the publication notice to reach those class members who won't receive individual notice. *See* Doc. 2236-1 at 4 (Schachter Decl. ¶ 8) (explaining that "since an exhaustive contact list of Class Members does not exist, and based on similar experience in other pharmaceutical class actions with a direct notice component, [A.B. Data recommends] a digital-based media plan . . . to

supplement direct notice efforts").  Defendants haven't come forward with their own expert to support their assertion—unjustified by evidence—that A.B. Data's recommendation gives more notice than needed.  Indeed, defendants haven't identified an expert to contradict any of A.B. Data's recommendation.  And, the court finds no reason to withhold approval simply because the publication notice reaches a large number of people.

Defendants also assert that the publication notice plan harms them and the classes. Defendants argue that the publication notice plan harms the classes because any benefit from the proposed electronic notice via social media and website publication is slight and is outweighed by the costs incurred for that publication.  But, as A.B. Data explains, the proposed "[d]igital advertising allows the viewer to click on a banner or newsfeed advertisement and instantly be directed to the case website in a very cost-efficient manner (as compared to more traditional media notice through newspapers or other print media)."  *See* Doc. 2236-1 at 4 (Schachter Decl. ¶ 8).  And, A.B. Data estimates, "the media portion of the proposed Notice Plan . . . only [will] account for approximately 10% of all notice costs."  *Id.*  With this information, the court rejects defendants' argument that the publication notice plan provides more harm than good to the certified classes.

Defendants argue that the publication notice will harm them because it will reach as many as 290 million people—many of whom are not class members—and it will leave these individuals with a negative impression about defendants.  The court disagrees.  With their Reply, class plaintiffs have submitted two examples of proposed digital media ads.  Doc. 2236-4 at 2–3. Each ad reads:  "If You Purchased an EpiPen and/or Its Generic Equivalent, A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS."  *Id.*  Then, each ad includes a clickable link, labeled "LEARN MORE HERE," that directs the viewer to the case-specific website.  *Id.*; *see*

*also* Doc. 2236-1 at 4 (Schachter Decl. ¶ 8) (explaining "[d]igital advertising allows the viewer to click on a banner or newsfeed advertisement and instantly be directed to the case website").

As A.B. Data explains, the digital media ads are "[s]imilar to the design of the Short-Form Notice and Long-Form Notice" and "are specifically designed incorporating guidance, where applicable, from the FJC Guidelines." *See* Doc. 2236-1 at 4 (Schachter Decl. ¶ 9). Each digital media ad was "specifically constructed with a very limited number of characters" because "digital media requires a more succinct notice form to capture the reader's attention and to comply with character limits on each platform." *Id.* And, each was "designed . . . to drive readers to the case-specific website for additional information . . . ." *Id.* A.B. Data further explains that it will draft "[t]he website content . . . using the specific language in the Short-Form Notice and Long-Form Notice approved by the [c]ourt." *Id.*

Each digital ad contains truthful and public information about this class action lawsuit. The court finds nothing in class plaintiffs' proposed publication notice plan that amounts to a "smear campaign" against defendants, as they suggest. Doc. 2231 at 18. Instead, the court finds that the proposed publication notice provides the required notice to class members "clearly and concisely" and "in plain, easily understood language," as Fed. R. Civ. P. 23(c)(2)(B) requires. The court thus finds that class plaintiffs' proposed notice plan that includes both individual notice and publication notice is "the best notice practicable under the circumstances" to direct notice to the class members. Fed. R. Civ. P. 23(c)(2)(B). And, it rejects defendants' argument that the court should deny class plaintiffs' motion seeking approval of Stage Two of their class notice plan as overbroad or duplicative.

*Second*, defendants argue that class plaintiffs' notice plan fails to provide a plan explaining when or how class exclusions will be made. Class plaintiffs respond that the short-

form notice specifically notes that the class definition contains "exceptions to Class membership" and explains that more information about the exclusions is found at the case-specific website. Doc. 2209-2 at 2. And, the long-form notice specifically lists all exclusions to class membership. Doc. 2209-3 at 4. Class plaintiffs argue that it need not apply the exclusions at this stage of the case for purposes of sending out the class notice. They contend that applying the exclusions now is an expensive and unnecessary process. And, no prejudice results from sending notice to individuals or entities who are not class members. The court agrees with them. And, the court finds, the better course to ensure due process is satisfied is for class plaintiffs to send notice to those who may qualify as class members, and then, determine later whether an exclusion to membership applies. The court thus rejects defendants' second argument against approving class plaintiffs' proposed notice plan.

*Third*, defendants assert that the proposed notice plan is missing critical information, including the content of the digital, print, and social media advertisements. With their Reply, plaintiffs have cleared up some of the confusion about the content of the proposed notice and the proposed digital, print, and social medial advertisements. As class plaintiffs explain, their notice plan proposes sending only the short-form notice to class members by email and U.S. mail. Doc. 2209-1 at 3 (Pritzker Decl. ¶ 5); *see also* Doc. 2236-1 at 3 (Schachter Decl. ¶¶ 6–7). And, class plaintiffs have provided an example of what short-form notice's appearance in email formatting. *See* Doc. 2236-2 at 2–3 (email with subject line: "Notice of Class Action Lawsuit—In re EpiPen Antitrust Litigation").

Also, class plaintiffs have provided the proposed content for the digital media advertisements. Doc. 2236-1 at 4 (Schachter Decl. ¶ 9); Doc. 2236-4. They have explained that the print ads will consist of the short-form notice. Doc. 2236-1 at 5 (Schachter Decl. ¶ 13). And,

they assert that the case specific website "content will be drafted using the specific language in the Short-Form Notice and Long-Form Notice approved by the [c]ourt." *Id.* at 4 (Schachter Decl. ¶ 9).

With these explanations, the court finds that class plaintiffs' notice plan doesn't omit critical information about the content of the notices. The content of each type of notice uses either the short-form notice or long-form notice, which the court finds satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B) and provides "the best notice practicable under the circumstances" to direct notice to class members. But, to the extent that class plaintiffs intend to supplement any of the class notice, for example, by adding an FAQ section to the website, they must meet and confer with defendants about the form and content of any notice that goes beyond or differs from the short-form notice and long-form notice that the court approves with this Order. The court expects the parties to meet and confer about the content of any additional notice language in good faith, and if necessary, they may apply to the court for relief if they cannot agree to the content of any supplemental notice.

*Last*, defendants argue that class plaintiffs' proposed short-form notice shouldn't include a "Trial" section or, in the alternative, the court should require class plaintiffs to modify the short-form notice to include information about summary judgment. Class plaintiffs respond that no good reason warrants omitting the trial date. They contend this information is factually accurate, informative, and a matter of public record. And, class plaintiffs object to including information about summary judgment. They argue that adding information about summary judgment just burdens the notice with unnecessary legal jargon that will confuse class members. The court agrees with class plaintiffs' argument in part. There's nothing prejudicial about including the trial date in the class notice. Class members may not need to know the exact date

when their case will be tried.  But the information will inform class members' understanding of the case's timeline.  And, the court shares class plaintiffs' concerns about inserting confusing legal jargon into the class notice.  Trying to explain the back-and-forth sequence mandated by Fed. R. Civ. P. 56 and D. Kan. 56.1 for summary judgment practice will lengthen the notice forms—and for no good reason.

But, in contrast, the court recognizes that the trial date is not a foregone conclusion. Indeed, if defendants prevail on their pending summary judgment motions, it will obviate the need for a trial.  The court thus directs class plaintiffs to amend the "Trial" portion of the notice to read:  "The court has not yet determined whether a trial is required in this case.  But, if the case proceeds to trial, the court has scheduled a trial to begin on April 13, 2021 . . . ."

The court also directs class plaintiffs to amend one portion of the long-form notice.  On page 4 of the long-form notice under the heading "The Lawyers Representing You," the second sentence reads:  "The Court has appointed lawyers to represent you and other Class members." Doc. 2209-3 at 5.  The court directs class plaintiffs to change this sentence to read:  "The Court has appointed lawyers to represent the members of the Class."

With those two changes, the court approves the content, form, and manner of notice proposed by class plaintiffs to provide individual and publication notice.  Considered collectively, the emailed or mailed notice, the class notice website, and the publication notice provides class members with the information that Fed. R. Civ. P. 23(c)(2)(B) requires, satisfies due process, and affords the "best notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 1205724, at *1 (D. Kan. Apr. 11, 2012) (concluding that individual, mailed notice to class members

combined with a website setting out additional information "satisfies the standards of due process and Rule 23").

## IV.     Conclusion

For the reasons explained by this Order, the court grants the Motion for an Order Implementing Stage Two of Class Notice Plan (Doc. 2209) in part and denies it in part.

With this Order, the court:

1.  Approves Stage Two of Class Plaintiffs' proposed Class Notice Plan, which provides for (i) direct notice of pendency to potential class members in the United States that fall within the class definitions by either electronic mail (email) or U.S. mail, and (ii) publication notice as described in the Declaration of Eric Schachter (Doc. 2209-7). The court finds that these notification methods provide "the best notice practicable under the circumstances" and therefore satisfy the notice requirements of Fed. R. Civ. P. 23(c)(2)(B);

2.  Except for the two changes the court orders above (*i.e.*, the change to the trial section on the short-form notice and the change to the lawyer representation section in the long-form notice), the court approves the forms of class notice attached as Exhibits 1 (Doc. 2209-2, short-form notice) and 2 (Doc. 2209-3, long-form notice) to the Declaration of Elizabeth C. Pritzker (Doc. 2209-1), finding that these notices similarly comply with the notice requirements of Fed. R. Civ. P. 23(c).  The court finds that the short-form notice and long-form notice appropriately convey in plain English language the nature of the action, the class definitions, and a summary of the class claims; provide that a class member may enter an appearance through an attorney; inform class members that the court will grant timely exclusion requests and

the time and procedure for requesting exclusion; and advise class members of the

binding effect of any final judgment entered in the action;

3. Orders that A.B. Data begin distributing class notice, and activate and maintain the

dedicated Class Notice website, within 30 days of the court's Order;

4. Orders that class members will have 75 days within which they may request

exclusion from the classes following the initial distribution of class notice; and

5. Orders that any third-party provider seeking to request exclusion from the classes for

a client for which it performs administrative services only shall submit a Proof of

Authority, substantially in the form attached as Exhibit 3 to the Pritzker Declaration

(Doc. 2209-4), indicating its proof of authority to exclude that client.

The court has reviewed the approved forms of class notice to ensure that personal health

information ("PHI") of individual class members is appropriately protected from unwarranted

disclosure as required by the Health Insurance Portability and Accountability Act of 1996

("HIPAA"), codified at 42 U.S.C. § 300gg, 29 U.S.C § 1181–1183, and 42 U.S.C. § 1320d–

1320d-9. The court finds that the approved forms of notice are generic in nature, in that they do

not themselves disclose or connect any individual class member's PHI in relation to the

provision of healthcare or the payment of healthcare services. The court further finds that the

non-party entities that produced the class member PHI inform their customers in their privacy

policies that customer PHI may be disclosed in response to a court order or subpoena without

seeking customer authorization. *See* Pritzker Declaration (Doc. 2209-1) at ¶ 4; *see also* 45

C.F.R. § 164.512(e)(1)(i) ("A covered entity may disclose protected health information in the

course of any judicial or administrative proceeding . . . [i]n response to an order of the court or

administrative tribunal, provided that the covered entity discloses only the protected health

information expressly authorized by such order."). Accordingly, the court concludes that this Order directing that an informative Notice of Pendency be delivered to class members in the forms herein approved and on the timeline set forth above minimally discloses (if at all) PHI in a manner that is consistent with each non-party's privacy policy and HIPAA's regulatory guidelines.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the class plaintiffs' Motion for an Order Implementing Stage Two of Class Notice Plan (Doc. 2209) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 13th day of October, 2020 at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
