# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

In re EPIPEN (EPINEPHRINE
INJECTION, USP) MARKETING, SALES
PRACTICES AND ANTITRUST
LITIGATION

CASE No. 2:17-md-2785
CASE No. 2:17-cv-2452

SANOFI-AVENTIS US, LLC,

    *Plaintiff*,

v.

MYLAN INC.; and
MYLAN SPECIALTY L.P.,

    *Defendants*.

**EXPERT REPORT OF**

**THOMAS R. VARNER, PH.D.**

**HIGHLY CONFIDENTIAL**

## I.      INTRODUCTION AND ASSIGNMENT

1.      I am an Executive Vice President in the Oakland office of Compass Lexecon, an economics consulting company with over 400 professionals and offices throughout the U.S., Europe, and Asia.  I am submitting this expert report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[1]

2.      I received a B.S. in Architecture from California Polytechnic State University, San Luis Obispo, California, in 1979, an M.S. in Civil Engineering (Structural Engineering and Structural Mechanics) from the University of California at Berkeley in 1980, an M.B.A. from the University of California at Berkeley in 1987, an M.S. in Engineering-Economic Systems from Stanford University in 1993, and a Ph.D. in Engineering-Economic Systems & Operations Research from Stanford University in 1997.

3.      I have taught microeconomics, econometrics, and financial economics courses in the Economics Department at the University of California at Davis.  I specialize in economic, financial, and statistical analysis.

4.      For over ten years, I have served as a consulting or testifying expert on legal matters including intellectual property, Lanham Act claims, antitrust, and general business litigation.  I have conducted extensive research into license agreements and have published articles in this and related areas.  I also have spoken at professional conferences and seminars on intellectual property and technology licensing.  I am a member of the American Economic

---

[1] Federal Rules of Civil Procedure (FRCP), Rule 26. Duty to Disclose; General Provisions Governing Discovery, (a) Required Disclosures, (2) Disclosure of Expert Testimony, (B) Witnesses Who Must Provide a Written Report.

**HIGHLY CONFIDENTIAL**

Association, the National Association of Business Economics, and the Licensing Executives Society.  My hourly rate is $825.  Details of my qualifications and prior testimony are in my curriculum vitae, Appendix A.

5.       Sanofi-Aventis U.S. LLC ("Sanofi" or "the Plaintiff") alleges that Mylan Inc. and Mylan Specialty L.P. (collectively, "Mylan" or "the Defendants") engaged in anticompetitive conduct related to the sale of its epinephrine auto-injector ("EAI") product EpiPen® Auto-Injector.[2]  Mylan denies those allegations and, in its capacity as "the Counterclaim Plaintiff," alleges, among other claims, that Sanofi ("the Counterclaim Defendant") made false and misleading representations in violation of the Lanham Act about its EAI product, Auvi-Q®, and Mylan's EpiPen® Auto-Injector, and that Sanofi engaged in common law unfair competition.[3]

6.       I have been retained by the law firm Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, counsel for Mylan, and have been asked for purposes of this report to analyze and offer an opinion as to the appropriate amount of damages assuming the Court finds that Sanofi made the false and misleading representations asserted by Mylan in violation of the Lanham Act.

7.       In reaching my opinions I reviewed legal pleadings, numerous documents produced by the parties, and publicly available documents.  Appendix B is a list of materials I

---

[2] *Complaint*, 4/24/17, ("*Sanofi Complaint*") ¶1, p. 1.

[3] *Answer, Affirmative Defenses, and Counterclaims of Mylan Inc. and Mylan Specialty L.P.*, 1/16/18, ("*Mylan's Counterclaim Complaint*") alleging: that Sanofi made false and misleading statements that Auvi Q is equivalent to the EpiPen Auto-Injector (pp. 40-41); that Sanofi made unsubstantiated and misleading claims designed to disparage the EpiPen Auto-Injector and harm its reputation (i. Misrepresentations that patients do not carry or know how to use their auto-injectors, ii. Misrepresentations about patient satisfaction with Auvi-Q, iii. Misleading claims regarding needlestick protection, and iv. Misleading statements regarding heat tolerance) (pp. 41-47); and that Sanofi engaged in other unfair and unlawful conduct (pp. 47-48)).

**HIGHLY CONFIDENTIAL**

have considered in this matter.  I also have spoken with Mr. Patrick Zinn, Mylan's Head of Commercial Finance for North America,[4] Mr. Chris Benson,[5] Mylan's Head of Supply Chain for Biologics and Respiratory Products, and Mr. Roger Graham, Mylan's Head of Health Management.[6]

8.      I have no opinion regarding the truth of Mylan's allegations that Sanofi made false and misleading representations about the EpiPen® Auto-Injector and Auvi-Q® products. However, I have been asked by counsel for Mylan to assume for purposes of my damages analysis that the Court finds these allegations to be true.

9.      I understand that if Sanofi is found to have violated the Lanham Act and common law fraud as Mylan alleges, Mylan is entitled, among other things, "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action…."[7]  I also understand that Mylan has the burden of demonstrating Sanofi's Auvi-Q® sales while it is the burden of Sanofi to identify sales attributable to Sanofi's alleged wrongful acts and to "prove all elements of cost or deduction claimed."[8]

---

[4] Phone interviews with Mr. Patrick Zinn, Mylan's Head of Commercial Finance, 1/18/19 and 1/28/19. See Deposition of Patrick Zinn, 8/22/18, Non-30(b)(6), p. 13, Mr. Zinn was previously Head of Commercial Finance for Mylan Specialty, then promoted to Head of Commercial Finance for North America.

[5] Phone interview with Mr. Chris Benson, Mylan's Head of Supply Chain for Biologics and Respiratory Products, 1/25/19.

[6] Phone interview with Mr. Roger Graham, currently Mylan's Head of Health Management and formerly President of Mylan Specialty L.P.

[7]  15 U.S.C. §1117 (Section 35 of the Lanham Act): Recovery for Violation of Rights.  §1117 refers to §1125(a), which relates to the claims made by the Counterclaim Plaintiff.

[8]  *Ibid.*

**HIGHLY CONFIDENTIAL**

10.     My opinions are based on the above materials and discussions, my analysis in this matter, and my professional experience.  This report reflects my opinions at the present time.  I may revise or supplement my opinions after I review other expert reports submitted in this matter, additional documents, testimony, or other information that comes to my attention.

## II.     SUMMARY OF OPINIONS

11.     The scope of this report addresses Mylan's allegations that Sanofi made false and misleading representations in relation to marketing of its Auvi-Q® auto-injector product.[9]  For purposes of my damages analysis, I have assumed that these allegations are found by the Court to be true.  I understand that Mylan has the burden of demonstrating Sanofi's Auvi-Q® sales and that it is the burden of Sanofi to identify sales attributable to Sanofi's alleged wrongful acts and to "prove all elements of cost or deduction claimed."[10]  Consequently, I present Sanofi's gross sales of its Auvi-Q® device from 2013 to 2015 and calculate Mylan's lost profit damages assuming Auvi-Q® is not sold over this period.

12.     Exhibit 1 summarizes unjust enrichment damages comprised of Sanofi's Auvi-Q® gross sales of ▇▇▇▇▇▇ from 2013 to 2015.  Exhibit 1 also summarizes Mylan's lost profit damages of ▇▇▇▇▇▇ on Auvi-Q® gross sales of ▇▇▇▇▇▇.

13.     Regarding additional damages for Mylan's legal costs permitted under the Lanham Act, since the case is ongoing, I will submit a summary of Mylan's costs related to Mylan's claims in this litigation when that information is available.

---

[9] *Mylan's Counter Complaint*, pp. 33-54.

[10] 15 U.S.C. §1117 (Section 35 of the Lanham Act): Recovery for Violation of Rights.  §1117 refers to §1125(a), which relates to the claims made by the Counterclaim Plaintiff.

**HIGHLY CONFIDENTIAL**

### III.     BACKGROUND

#### A.   Epinephrine Auto-Injector (EAI) Devices

14.     Epinephrine, also known as adrenaline, is approved by the U.S. Food and Drug Administration ("FDA") for use as an emergency treatment of allergic reactions, including anaphylaxis.[11]  Epinephrine can be administered with a syringe or an epinephrine auto-injector (EAI) device.  One of the earliest commercially available EAI device was the EpiPen® Auto-Injector.[12]  Mylan's EpiPen® Auto-Injector received FDA approval December 22, 1987 and is sold as EpiPen® Auto-Injector (0.30 mg dose) and EpiPen Jr.® Auto-Injector (0.15 mg dose).[13]

15.     The alleged wrongful conduct occurred when Sanofi's Auvi-Q® device was sold from 2013 to October 2015.  Sanofi's Auvi-Q® received FDA approval August 10, 2012,[14] was launched for sale the end of January 2013,[15] and was recalled on October 28, 2015.[16]

---

[11] https://www.fda.gov/downloads/Drugs/DrugSafety/PostmarketDrugSafetyInformationfor PatientsandProviders/UCM564405.pdf, accessed 1/25/19.

[12] https://www.fda.gov/downloads/drugs/informationondrugs/ucm520800.pdf, accessed 1/25/19.  From FDA Orange Book.  (The FDA Orange Book is the FDA's "The publication Approved Drug Products with Therapeutic Equivalence Evaluations (commonly known as the Orange Book) identifies drug products approved on the basis of safety and effectiveness by the Food and Drug Administration (FDA) under the Federal Food, Drug, and Cosmetic Act (the Act) and related patent and exclusivity information. See https://www.fda.gov/drugs/informationondrugs/ucm129662.htm.)

[13] Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, Product Details for NDA 019430, https://www.accessdata.fda.gov/scripts/Cder/ob/results_product.cfm? Appl_Type=N&Appl_No=019430#, accessed 1/30/19.

[14] Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, Product Details for NDA 201739, https://www.accessdata.fda.gov/scripts/Cder/ob/results_product.cfm? Appl_Type=N&Appl_No=201739#, accessed 1/30/19.

[15] Sanofi form 20-F for 2013, p. 32, submitted to the SEC 3/7/14.

[16] https://www.sanofi.us/en/products-and-resources/auvi-q-epinephrine-injection-usp-recall/, accessed 1/26/19.

**HIGHLY CONFIDENTIAL**

16.     There were other EAIs for sale between 2013 and 2015Amedra received FDA approval for its Adrenaclick® on November 25, 2009.[17]  The Adrenaclick® and Adrenaclick's authorized generic ("AG") were relaunched by Amedra and Lineage Therapeutics, Inc., June 14, 2013 (Amedra was acquired by Impax in 2015.[18])  Amedra Pharmaceuticals LLC's ("Amedra's") Twinject also received FDA approval May 2003 but it was withdrawn from sale in 2012.

17.     Mylan launched an authorized generic version of the EpiPen® Auto-Injector in mid-December 2016,[19] and in August 2018 the FDA approved a generic EAI device from Teva Pharmaceuticals.[20]

### B.  The Parties-in-Suit

#### i.  Mylan

18.     Mylan's 2017 annual report, submitted to the U.S. Securities and Exchange Commission ("SEC"), states that it is "a leading global pharmaceutical company, which develops, licenses, manufactures, markets and distributes generics, branded generics, brand name

---

[17] Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, Product Details for NDA 020800, https://www.accessdata.fda.gov/scripts/Cder/ob/results_product.cfm?Appl_Type=N&Appl_No=020800, accessed 1/30/19.

[18] Amedra Pharmaceuticals Markets Adrenaclick Auto-Injector, 6/14/2013 [MYEP00265212]; Linear Therapeutics Markets Authorized Generic Epinephrine Auto-Injector, 6/14/2013 [MYEP00742658]. Impax Laboratories, LLC, acquired Amedra Pharmaceuticals in March 2015.  See https://investors.impaxlabs.com/news/press-releases/press-release-details/2015/Impax-Completes-Acquisition-Of-Tower-Holdings-Inc-And-Lineage-Therapeutics-Inc/default.aspx

[19] "Mylan Launches the First Generic for EpiPen® (epinephrine injection, USP) Auto-Injector as an Authorized Generic," 12/16/16 [MYEP00001440-45].

[20] "FDA approves first generic version of EpiPen," 8/16/18, https://www.fda.gov/newsevents/newsroom/pressannouncements/ucm617173.htm, accessed 1/26/19.

HIGHLY CONFIDENTIAL

and over-the-counter ("OTC") products."[21]  Exhibit 9.2 is a summary of Mylan's Income

Statements from 2012 to 2017.

19.     The EpiPen® Auto-Injector has been sold since the 1980's[22] and is currently sold

through Mylan Specialty L.P., a subsidiary of Mylan.[23]  *Mylan's Counter Complaint* states that,

"In 2007, Mylan acquired the predecessor to Mylan Specialty, Dey Pharma L.P., which had the

rights to market EpiPen® Auto-Injectors."[24]  Meridian Medical Technologies, Inc. ("Meridian"),

a subsidiary of Pfizer Inc. ("Pfizer"),[25] manufacturers the EpiPen® Auto-Injector for Mylan.[26]

Pfizer owns the patents and technology know-how to the EpiPen® Auto-Injector and licenses

their use to Mylan.[27]  Exhibit 5.1 is a summary of the financial performance of Mylan's EpiPen®

Auto-Injector from 2010 to 2016.

---

[21] Mylan's form 10-K for 2017, p. 3, submitted to the SEC 3/1/18.

[22] Mylan's form 10-K for 2017, p. 6, submitted to the SEC 3/1/18.  Also see https://www.fda.gov/downloads/drugs/informationondrugs/ucm520800.pdf, accessed 1/25/19.

[23] *Mylan's Counter Complaint*, 1/16/18, pp. 3-4.

[24] *Mylan's Counter Complaint*, 1/16/18, p. 2.

[25] https://www.meridianmeds.com/about, accessed 1/26/19.

[26] *E.g.*, see *Supply Agreement* between Dey, L.P. and Meridian Medical Technologies, Inc., 1/1/01 [MYEP00047277-334], *Amended and Restated Supply Agreement* between Dey, L.P. and Meridian Medical Technologies, Inc., 5/21/10 [MYEP00047084-7156], and *Amendment No. 1 to Supply Agreement,* between Mylan Specialty L.P. and Meridian Medical Technologies, 7/31/13 [MYEP00047180-189].

[27] Mylan Specialty Presentation, slide 11 [MYEP00606646]; see *Supply Agreement* between Dey, L.P. and Meridian Medical Technologies, Inc., 1/1/01 [MYEP00047277-334], *Amended and Restated Supply Agreement* between Dey, L.P. and Meridian Medical Technologies, Inc., 5/21/10 [MYEP00047084-7156], and *Amendment No. 1 to Supply Agreement,* between Mylan Specialty L.P. and Meridian Medical Technologies, 7/31/13 [MYEP00047180-189].

**HIGHLY CONFIDENTIAL**

### ii.  Sanofi

20.     Sanofi's 2017 annual report submitted to the SEC states that it is "a leading global healthcare company, focused on patient needs and engaged in the research, development, manufacture and marketing of therapeutic solutions."[28]  Exhibit 9.1.1 and 9.1.2 are a summary of Sanofi's Income Statements from 2012 to 2017.

21.     Sanofi launched Auvi-Q® at the end of January 2013.[29]  Sanofi licensed the North American commercialization rights to Auvi-Q® from Intelliject, Inc. ("Intelliject") in 2009.[30] Sanofi entered into a *Contract Manufacturing Agreement* with Alliance Medical Products, Inc. ("AMP") in 2010 in which AMP agreed to manufacture the Auvi-Q® devices.[31]  Exhibit 3 is a summary of the financial performance of Sanofi's Auvi-Q® product.

22.     Sanofi issued a press release in October 2015 stating that, "As of October 26, 2015, Sanofi has received 26 reports of suspected device malfunctions in the U.S. and Canada," and that, "Sanofi US has voluntarily recalled all Auvi-Q® (epinephrine injection, USP) on the

---

[28] Sanofi form 20-F for 2017, p. 19, submitted to the SEC 3/7/18.

[29] Sanofi form 20-F for 2013, p. 32, submitted to the SEC 3/7/14.

[30] Sanofi form 20-F for 2013, p. 32, submitted to the SEC 3/7/14. Also see, *License and Development Agreement*, Intelliject, Inc. and Sanofi-Aventis U.S. LLC, 11/20/09, see pp. 34-35 for milestone payments and pp. 36-38 for royalties [KALEO-00042499-2630].  Mr. Patrick Barry, Sanofi's Vice President of Cardiovascular and Specialty Products, testified that ██████████████████████████████ ████████████████████████  See Deposition of Patrick Barry, 7/13/18, p. 49, ████████████████████████████████████████████████████████████ ████████████████████████████████████████

[31] "Amendment to Contract Manufacturing Agreement," 11/2010 [SAN-EPI-1166023032].  As an attachment to the Amendment, see "Contract Manufacturing Agreement," between Intelliject, LLC and Alliance Medical Products, Inc., 7/24/07 [SAN-EPI-1166033-060]

**HIGHLY CONFIDENTIAL**

market through October 28, 2015."[32]  Sanofi stated in its 2015 annual report filed that it recalled

Auvi-Q® in October 2015 because of concerns of "inaccurate dosage delivery."[33]  kalèo, Inc.

("kalèo"), formerly named Intelliject, currently sells Auvi-Q® devices in the U.S.[34]

### C.  EAI Supply Chain and Sales Data

23.     Both Mylan sells and Sanofi sold their EAI devices through similar channels.

Both sell and sold their EAI devices to wholesale distributors (or "wholesalers").  Over ████ of

Sanofi's and over ████ of Mylan's sales are to three wholesalers: AmerisourceBergen, Cardinal

Health, and McKesson Corporation over the period 2013 to October 2015 (see Exhibit 7.1).  The

price charged to wholesalers is referred to as the wholesale acquisition cost ("WAC"), which is

commonly referred to as the "list price."[35]  Wholesalers in turn sell to pharmacies, often at a

negotiated price in relation to the WAC.[36]

24.     Pharmacies who contract with Pharmacy Benefit Managers ("PBMs") submit

claims to the PBMs for prescriptions they dispense and are reimbursed under negotiated rates

---

[32] https://www.sanofi.us/en/products-and-resources/auvi-q-epinephrine-injection-usp-recall/, accessed 1/26/19.

[33] Sanofi form 20-F for 2015, p. 10, submitted to the SEC 3/4/16, "[W]e voluntary recalled all Auvi-Q (epinephrine injection, USP) marketed in the U.S. and Canada as the product has been found to potentially have inaccurate dosage delivery, which may include failure to deliver the drug. Sanofi has ultimately decided to return all U.S. and Canadian rights to the developer of Auvi-Q."

[34] https://kaleo.com/who-we-are/about/ and https://kaleo.com/what-we-do/pipeline, accessed 1/30/19. Intelliject Inc. changed its name to kalèo, Inc. in January 2014 (see https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapid=59080414, accessed 1/26/19).  Also see *Term Sheet for Settlement and Mutual Release*, Sanofi and kaléo, 12/16/15 (agreement to terminate the *License and Development Agreement*, 11/20/19) [Kaleo 101809-811].

[35] Deposition of Patrick Zinn, 8/22/18, Non-30(b)(6), p. 53, "Wholesale Acquisition Cost [is] the gross price of the product."

[36] PhRMA, "Follow the Dollar: Understanding How the Pharmaceutical Distribution and Payment System Shapes the Prices of Brand Medicines," November 2017, p. 3.

**HIGHLY CONFIDENTIAL**

often based on the discounts from the average wholesale price ("AWP").[37]  PBMs also can contract with pharmaceutical manufacturers to negotiate discounts and rebates on the products they purchase.[38]

25.     Mylan provides EAI devices free of charge to certain customers (referred to as "Grant and Donation Customers" in Mylan sales data).  These sales comprise ███ doses sold over the period January 2013 to October 2015.[39]  Mylan and Sanofi also sometimes provided coupons that further reduce the price of their devices.[40]

26.     Both Mylan and Sanofi provided gross sales data and net sales data reflecting the rebates, chargebacks, coupons, and other discounts of its EAI products.  These different sales amounts are indicated as "gross sales" and "net sales" in the exhibits to this report.

27.     A third-party data vendor, IMS Health,[41] provides sales data on a wide range of pharmaceutical products, including EAI devices, at different stages in the pharmaceutical supply

---

[37] *Ibid.*, p. 4.  Also see Deposition of Bryan Downey (Sanofi's Brand Lead for Auvi-Q) 30(b)(6), pp. 256-257, "…the financial discounts are your rebates, your customer advantages are in your co-pay cards, and other advantages you offer outside of that, and I believe commercial discounts would be things like prompt pay, you know, if you pay within 30 days, you get a 2 percent discount at the wholesaler, other incentives like that."

[38] *Ibid.*, p. 5.

[39] [MYEP01362498]

[40] *E.g.*, Sanofi Auvi-Q Savings Card Program Slide [SAN-EPI-0246125].

[41] IMS Health merged with Quintiles in 2016 to form QuintilesIMS.  QuintilesIMS was renamed "IQVIA" in 2017.  See https://www.businesswire.com/news/home/20171106005380/en/QuintilesIMS-IQVIA and https://ir.iqvia.com/investors/press-releases/press-release-details/2016/IMS-Health-and-Quintiles-to-Merge/default.aspx.

**HIGHLY CONFIDENTIAL**

chain.  I rely on IMS Health's National Prescription Audit ("NPA") to determine the number of

dispensed prescriptions for EAI products over the relevant time periods.[42]

### D.  Mylan's Counterclaim Allegations

28.     Mylan alleges that Sanofi made false and misleading representations about the

EpiPen® Auto-Injector and Auvi-Q® products including:

> (i) the EpiPen Auto-Injector is no longer on the market, Auvi-Q is the "new
> EpiPen," or Auvi-Q is replacing the EpiPen Auto-Injector; (ii) the EpiPen Auto-
> Injector and Auvi-Q are bioequivalent and/or therapeutically interchangeable; (iii)
> Auvi-Q is superior to and preferred by more physicians and patients than the EpiPen
> Auto-Injector; (iv) prior to Auvi-Q, patients did not carry and/or know how to use
> their epinephrine auto-injectors; (v) Auvi-Q is the only epinephrine auto-injector to
> have needlestick protection or that patients feared injection with the EpiPen Auto-
> Injector; and (vi) Auvi-Q can withstand higher temperatures than the EpiPen Auto-
> Injector.[43]

29.     Mylan also alleges that Sanofi disposed of EpiPen® Auto-Injector informational

and promotional materials distributed to physicians' offices and replaced them with Auvi-Q®

promotional materials.[44]  Mylan also alleges that Sanofi offered illegal kickbacks to physicians to

increase Auvi-Q® sales.[45]

30.     Sanofi denies Mylan's allegations; however, Sanofi admitted that the FDA

"assigned a 'BX' rating to Auvi-Q in the Orange Book," and that a BX rating is "insufficient to

---

[42] IMS presentation, "Appropriate Use of IMS Information," 11/12/09, p. 8, NPA database provides
"National estimates of prescriptions, or the rate at which drugs move out of the pharmacy and into the
hands of a consumer via formal dispensed prescriptions."

[43] *Mylan's Counter Complaint*, 1/16/18, ¶ 68, pp. 49-50.

[44] *Mylan's Counter Complaint*, 1/16/18, pp. 47-48.

[45] *Mylan's Counter Complaint*, 1/16/18, pp. 47-48.

**HIGHLY CONFIDENTIAL**

determine therapeutic equivalence."[46]  Sanofi denied "conducting head-to-head surveys comparing Auvi-Q and EpiPen to support a preference claim from the FDA for use in Auvi-Q promotional materials."[47, 48] Sanofi admitted "the EpiPen® has a needle cover to protect against accidental or unintended needle sticks since October 26, 2009,"[49] and Sanofi admitted it "lacks knowledge or information to form a belief as to EpiPen's ability to withstand high temperatures."[50]

---

[46] *Plaintiff/Counterclaim-Defendant Sanofi-Aventis U.S., LLC's Amended Response to Defendant Mylan Inc. and Defendant/Counterclaim-Plaintiff Mylan Specialty L.P.'s Requests for Admissions*, 11/30/18, Response to Request for Admission No. 110, p. 73, "Admit that Sanofi did not perform a study to establish Auvi-Q® as therapeutically equivalent to EpiPen®."  "Sanofi also admits that the Food & Drug Administration assigned a "BX" rating to Auvi-Q in the Orange Book.  As defined by the FDA, a "BX" rating is assigned to specific drug products for which data is insufficient to determine therapeutic equivalence."

[47] *Ibid.*, Response to Request for Admission No. 121, pp. 78-79, "Admit that Sanofi did not conduct a head-to-head study comparing physician preference for Auvi-Q® and EpiPen®. "Sanofi denies conducting head-to-head surveys comparing Auvi-Q and EpiPen to support a preference claim from the FDA for use in Auvi-Q promotional materials."

[48] *Ibid.*, Response to Request for Admission No. 123, pp. 79-80, "Admit that Sanofi did not conduct a head-to-head study comparing pharmacist preference for Auvi-Q® and EpiPen®. "However, Sanofi denies conducting head-to-head surveys comparing Auvi-Q and EpiPen to support a preference claim from the FDA for use in Auvi-Q promotional materials."

[49] *Ibid.*, Response to Request for Admission No. 135, p. 86, "Admit that EpiPen® has needlestick protection." "To the best of Sanofi's knowledge, Sanofi admits that the EpiPen® has a needle cover to protect against accidental or unintended needle sticks since October 26, 2009."

[50] *Ibid.*, Response to Request for Admission No. 138, pp. 87-88, "Admit that Sanofi has conducted no study that would support the claim that Auvi-Q® can withstand higher temperatures than EpiPen®." "Sanofi has never manufactured, sold, or marketed EpiPen and therefore lacks knowledge or information to form a belief as to EpiPen's ability to withstand high temperatures."

**HIGHLY CONFIDENTIAL**

## IV.    ANALYSIS AND OPINIONS

### A.  Introduction: Damages Methodologies and Analyses

31.    I have been asked by counsel for Mylan to calculate the economic damages to Mylan resulting from the claimed false and misleading representations made by Sanofi.  I understand that if the Court determines that Mylan's allegations about Sanofi's alleged false and misleading representations are true then Mylan is entitled, among other things, "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action…."[51]  I also understand that under the Lanham Act the Counterclaim Plaintiff (Mylan) is required to prove the Counterclaim Defendant's (Sanofi's) sales, and it is the burden of the Counterclaim Defendant to prove all elements of cost or deduction claimed.[52]  I also understand that it is the burden of the Counterclaim Defendant to determine the amount of sales attributable to the claimed false and misleading representations made by the Counterclaim Defendant.

### B.  Unjust Enrichment Damages

32.    Unjust enrichment damages are the amount of profits earned by the defendant due to the alleged false and misleading representations.  Sanofi provided sales data of its Auvi-Q® product covering the period January 18, 2013 to October 22, 2015.  Exhibit 2.1 is a summary of Sanofi's Auvi-Q® Auto-Injector sales to wholesalers of its 0.15 mg and 0.30 mg products.  I provide a summary of sales ($), units sold (the Auvi-Q® is sold in packages containing two EAI devices along with a trainer device), doses (consisting of one dose per EAI device), and

---

[51]  15 U.S.C. §1117 (Section 35 of the Lanham Act): Recovery for Violation of Rights.  §1117 refers to §1125(a), which relates to the claims made by the Counterclaim Plaintiffs.

[52]  *Ibid.*

**HIGHLY CONFIDENTIAL**

calculated average sales price per dose.  Exhibit 2.1 shows that there was a total of ███████

Auvi-Q® units sold, comprising ███████ doses with ███████ in gross sales.

### C.  Mylan's EpiPen® Auto-Injector Lost Profits from Sanofi's Wrongful Sales of Auvi-Q®

33.     In calculating Mylan's lost profits: (i) I assume that all Sanofi's Auvi-Q® sales were sold as a result of the alleged false and misleading representations made by Sanofi (I understand that under the Lanham Act it is the burden of the defendant to identify and apportion those sales that are attributable to the false and misleading representations); (ii) I calculate the percentage of those sales that Mylan would have made but-for the false and misleading representations; (iii) I determine how many of those sales Mylan had the capacity to make; (iv) I calculate Mylan's incremental profit margin on these sales; and (v) I calculate Mylan's lost profits on those lost sales.

#### 1.  Calculation of Sanofi's Auvi-Q® sales due to the alleged false and misleading representations

34.     In accordance with the provisions of the Lanham Act, I assume that all of Sanofi's Auvi-Q® sales are sold as a result of the false and misleading representations made by Sanofi. Sanofi had Auvi-Q® gross sales of ███████ over the damages period comprising ███████ doses.  Exhibit 1.1 summarizes the accused gross sales in dollars and doses.

#### 2.  Calculation of Mylan's percentage of Auvi-Q®'s sales

35.     The "but-for" scenario for my analysis is that Sanofi would not have made its Auvi-Q® sales if Sanofi had not made the alleged false and misleading representations.  Using Sanofi's contention, those Auvi-Q® sales that Sanofi would not have made in the but-for

**HIGHLY CONFIDENTIAL**

scenario would have been allocated to all remaining firms selling FDA approved EAI products over the period in which Sanofi made its Auvi-Q® sales.[53]

36.       I describe in Section III.A. above the different EAI products being sold in the U.S. over the period 2013 to 2015.  These products include the EpiPen® Auto-Injector, the Auvi-Q®, and the  Impax Generic (formerly Amedra's Adrenaclick® Generic).  Exhibits 6.1 and 6.2 are a summary of the EAI products sold in the U.S.  If Sanofi Auvi-Q® sales are reallocated to the other EAI manufacturers, then Mylan would have made the sales calculated in Exhibit 6.3. Exhibit 1.1 summarizes the amount of sales Mylan lost due to Sanofi's alleged false and misleading representations.  Exhibit 1.1 shows that Mylan would have made ▮▮▮▮▮▮ additional sales as measured by doses, that is, Mylan's lost sales due to Sanofi's alleged false and misleading representations was ▮▮▮▮▮ doses.

37.       Exhibit 8.1 is a summary of EpiPen® Auto-Injector and Auvi-Q net sales price per dose.  I note that Mylan's EpiPen® Auto-Injector net sales price per dose is ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮.

**3.  Analysis of Mylan's ability to make additional EpiPen® Auto-Injector sales**

38.       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮.[54] ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[53] *Sanofi Complaint*, 4/24/17, p. 56, ¶ 119.

[54] Phone interview with Mr. Chris Benson, 1/25/19.

**HIGHLY CONFIDENTIAL**



.[55]

39.     Exhibit 1.1 shows Mylan's lost sales in the but-for scenario of approximately ███████████████████████ doses in 2013, 2014, and 2015 respectively.  There are several indicators that Mylan had the ability to make these additional sales in the but-for scenario described above.  First, Mylan was able to increase its percentage of EAI sales after Auvi-Q® was abruptly recalled in October 2015.  Exhibit 6.2 shows that Mylan's EpiPen® Auto-Injector's percentage of EAI sales increased from 84.5% in the third quarter of 2015 to 92.9% in the fourth quarter of 2015.[56]

40.     Second, documents from Meridian, Mylan, Pfizer Joint Commercial Committee ("JCC")[57] presentations show manufacturing capacity of approximately ████████████████ ███████████████████████████████████████████.[58]  This compares to total shipments of ████████████ in 2013 and (forecasted) total shipments of ████████████ in 2014.[59]  I understand that by 2015 Meridian had demonstrated it had the ability to produce up to ███

---

[55] Phone interview with Mr. Chris Benson, 1/25/19. ████████████████████████████
████████████████████████████████████████████████████████████████

[56] Phone interview with Mr. Chris Benson, 1/25/19. ████████████████████████████
████████████████████████████████████████████████████████████████

[57] *Amended and Restated Supply Agreement,* 5/21/10, p. 4 [MYEP00047084-7156 at 7087].

[58] Presentation, "EpiPen® JCC," 12/11/13, p. 14 [MYEP00513817].

[59] Presentation, "EpiPen® JCC," 12/11/13, p. 13 [MYEP00513817].

**HIGHLY CONFIDENTIAL**



41.     And third, an analysis of Mylan's actual monthly sales show that it would have had the capacity to make the additional but-for sales.  Exhibit 10.1 is a summary of the monthly gross sales by dose for Mylan's EpiPen® Auto-Injector and Sanofi's Auvi-Q® product.  The maximum monthly sales of Mylan's EpiPen® Auto-Injectors in 2012 are ████ doses and in 2016 are ████ doses.  Exhibit 10.1 shows that the maximum combined monthly sales of Mylan's EpiPen® Auto-Injector and Sanofi's Auvi-Q® is ████ doses (in August 2015), or ████ more than ████ Exhibit 10.1 shows that the average monthly sales of EpiPen® Auto-Injectors is ████ The amount of ████ is only ██ of the average monthly sales of EpiPen® Auto-Injectors, or approximately one week of sales.  Recognizing that Mylan targets to ████████████, Mylan easily could have accommodated even this one-time monthly amount.

42.     Based on this analysis, I find that Meridian would have been able to supply Mylan with all the EpiPen® Auto-Injectors necessary to meet the additional sales in the but-for scenario, and that Mylan would have been able to sell these additional devices to its customers.

---

[60] Phone interview with Mr. Chris Benson, 1/25/19.

[61] Phone interview with Mr. Chris Benson, 1/25/19.  Also see ████████████████████

HIGHLY CONFIDENTIAL

#### 4.   Analysis of Mylan's incremental profit margin

43.      Exhibit 5.3 is an analysis of Mylan's incremental profit margin on additional sales of its EpiPen® Auto-Injector over the period 2010 to 2016.  I use statistical regression methodology to compare the costs and expenses in Mylan's financial statement for the EpiPen® Auto-Injector with its net sales.[62]  I find that Mylan's incremental profit margin is ███ of its net sales.  This margin does not account for research and development expenses (R&D expenses).  ████████████████████████████,[63] so I use Mylan's average firmwide R&D expenses as a percent of firmwide revenues over the years 2013 through 2015, ███ as an estimate of R&D expenses for EpiPen® Auto-Injector, to arrive at a total incremental profit margin of ███

#### 5.   Analysis of Mylan's lost profits from lost sales

44.      I calculate Mylan's lost profits from lost sales as the sales lost by Mylan due to Sanofi's alleged false and misleading representations multiplied by Mylan's incremental profit margin.  Exhibit 1.1 shows that Mylan suffered $138,563,317 in lost profits from lost sales due to Sanofi's alleged false and misleading representations.

### D.  Prejudgment Interest

45.      I understand from counsel that the Court may at its discretion award the Counterclaim Plaintiffs prejudgment interest on damages that have accrued over time.  If asked to do so I will provide such analysis using established methodologies.

---

[62] Statistical regression analysis is an established and widely accepted methodology to analyze trends in financial data.  *E.g.*, see *Reference Manual on Scientific Evidence*, Third Edition, Federal Judicial Center, "Reference Guide on Statistics," David H. Kaye and David A. Freedman.

[63] Phone interview with Mr. Patrick Zinn, 1/28/19.

**HIGHLY CONFIDENTIAL**

### E. Counterclaim Plaintiffs' Costs

46.     Regarding additional damages for Mylan's legal costs permitted under the Lanham Act, since the case is ongoing, I will submit a summary of the Mylan's costs related to its claims in this litigation when that information is available.

## V.     SIGNATURE

I declare under penalty of perjury that the forgoing is true and correct. Executed on February 4, 2019, in Oakland, California.

Thomas R. Varner, Ph.D.

**HIGHLY CONFIDENTIAL**

20



APPENDIX A
CURRICULUM VITAE

## Thomas R. Varner, Ph.D.

**OFFICE:**     Compass Lexecon
1111 Broadway, Suite 1500
Oakland, CA 94607
510.285.1218 direct, 510.285.1245 fax
E-mail: tvarner@compasslexecon.com

### EDUCATION

1992 – 1997, *M.S. in Engineering-Economic Systems* and *Ph.D. in Engineering-Economic Systems & Operations Research*, Stanford University, Stanford, CA

1980 & 1987, *M.S. in Civil Engineering* and *MBA,* University of California, Berkeley, CA

1975 – 1979, *B.S. in Architecture with Honors,* California Polytechnic State University, San Luis Obispo, CA

### PROFESSIONAL EXPERIENCE

January 2016 – Present, *Executive Vice President*, Compass Lexecon, Oakland, CA

April 2010 – January 2016, *Senior Vice President*, Economists Incorporated, San Francisco, CA

January 2002 – April 2010, *Principal*, Cornerstone Research, Inc., San Francisco, CA

January 2004 – March 2005, *Lecturer (Economics and Finance)*, Economics Department, University of California, Davis, CA

April 2001 – November 2001, *Manager* (Financial Advisory Services), PricewaterhouseCoopers LLP, San Francisco, CA

September 1997 – April 2001, *Managing Director*, Investment & Risk Analytics, Inc., Lafayette, CA

September 1994 – September 1997, *Consulting Researcher (Valuation of Financial Instruments)*, Prof. Darrell Duffie, Graduate School of Business, Stanford University, Palo Alto, CA

September 1993 – September 1997, *Teaching Assistant and Research Assistant*, Department of Engineering-Economic Systems, Stanford University, Stanford, CA

June 1989 – September 1993, *Engineering Manager*, Dames & Moore, San Francisco, CA

June 1980 – June 1989, *Project Manager*, Forell/Elsesser, Rutherford & Chekene and Paul F. Fratessa & Assoc., San Francisco, CA

TESTIMONY

2019: *Sanofi-Aventis US, LLC, v. Mylan Inc., et al.*, 2:17-cv-02452-TJJ, U.S. District Court, District of Kansas.  Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, DC.  Retained by Mylan as testifying expert on damages in a false advertising matter under the Lanham Act involving medical devices.

2018: Confidential, Arbitration.  O'Melveny & Myers, Los Angeles.  Retained by client in entertainment industry to provide economic analysis of royalty terms for renewal of trademark license agreement.

2018-2019: *Boltex Mfg. Co. and Weldbend Corp. v. Ulma Forja, S. Coop. a/k/a Ulma Piping and Ulma Piping USA Corp.*, 14:17-cv-1400, U.S. District Court, Southern District of Texas. Dechert LLP, New York, NY.  Retained by defendants and counterclaim plaintiffs as damages expert in false designation of origin and false representation matter under the Lanham Act involving domestic and foreign carbon steel flanges.

2018: *Desktop Metal, Inc. v. Markforged, Inc., et al.*, 1:18-cv-10524-WGY, U.S. District Court, District of Massachusetts.  Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA. Retained by defendant and counterclaim plaintiff as testifying economics expert in patent infringement and misappropriation of trade secrets matter involving 3-D metal printers.

2017-2018: *Optrics Inc., v. Barracuda Networks, Inc., et al.*, 17-cv-04977-RS, U.S. District Court, Northern District of California.  Law Offices of Herbert L. Terreri.  Retained by plaintiff as testifying damages expert in breach of contract and trademark infringement matter involving software.

2016-2019: *SS&C Technologies, Inc. v. Bradley Rossa and Clearwater Analytics, LLC*, 2015-CH-15891, Circuit Court of Cook County, Illinois, County Department, Chancery Division. Kirkland & Ellis LLP, Chicago, IL.  Retained by defendants as damages expert in case involving alleged misappropriation of trade secrets.

2016-2018: *In re: Lenovo Adware Litigation*, 5:15-md-02624-RMW, U.S. District Court, Northern District of California, K&L Gates LLP, Los Angeles, CA.  Economics expert on behalf of defendant in consumer class action matter involving alleged consumer fraud related to computers.

2016: *DNA Genotek Inc., v. Spectrum Solutions L.L.C., et al.*, 3:16-cv-01544-JLS-NLS, U.S. District Court, Southern District of California.  Simpson Thacher & Bartlett LLP, Palo Alto, CA. Retained by defendants as economics expert on patent infringement case involving medical devices.

2016: *Kaneka Corp. v. Zhejiang Medicine Co., Ltd., et al.*, CV 11-02389-MRP, U.S. District Court, Central District of California.  Mei and Mark, LLP, Washington, DC.  Retained by defendant as damages expert in patent infringement case involved pharmaceutical product.

2015-2016: *Alexander Stross v. Redfin Corp.*, 1:15-cv-223-SS, U.S. District Court, Western District of Texas.  Foster Pepper PLLC, Seattle, WA.  Retained by defendant as economics expert on copyright infringement case involving photographs on real estate broker website.

2

2015-2016: *DNA Genotek Inc., v. Ancestry.com DNA, LLC*, 15-0355-SLR, and *DNA Genotek Inc., v. Spectrum DNA*, et al., 15-cv-00661-SLR, U.S. District Court, District of Delaware. Fenwick & West, LLP, San Francisco, CA. Retained by defendant as economics expert on patent infringement case involving medical devices.

2015-2016: Confidential. Drinker Biddle & Reath LLP, Washington, DC. Expert witness services on economic analysis of copyright licensing terms.

2015: *Changzhou Kaidi Electrical Co, Ltd., et al., v. Okin America, Inc., et al.*, U.S. District Court, District of Maryland, 1:13-cv-1798. Mayer Brown LLP, Washington, DC. Provided expert report, deposition testimony, and testified at trial on behalf of accused infringer in patent infringement matter involving mechanical actuators.

2015: *The Cat Ball, LLC v. FurHaven Pet Products, Inc.*, U.S. District Court, Western District of Washington, 2:14-CV-00292-MJP. Foster Pepper PLLC, Seattle, CA. Damages expert on behalf of defendant in false advertising and unfair competition matter involving pet products.

2014-2015: *Matthew Burnett, et al., v. Robert Bosch LLC USA, et al.*, U.S. District Court, Middle District of Florida, 8:14-CV-01361. K&L Gates LLP, San Francisco, CA. Economics expert on behalf of defendant in class certification matter involving alleged misrepresentation of selected spark plugs.

2014-2015: *Michigan State University v. Medlen & Carroll, LLP, et al.*, U.S. District Court, Western District of Michigan, 1:14-cv-00039. Fraser Trebilcock Davis & Dunlap, P.C., Detroit, MI. Damages expert on legal malpractice mater involving alleged failure to file foreign patents related agricultural biotechnology.

2014-2015: *Isola USA Corp. v. Taiwan Union Technology Corp.*, U.S. District Court, District of Arizona, 2:12-cv-01361-SLG. K&L Gates, San Francisco, CA. Damages expert on alleged infringement of patents related to laminates for multilayer printed circuit boards.

2013-2014: *Nxegen, LLC et al. v. Sensus USA, Inc.*, U.S. District Court, District of Connecticut, 3:11-cv-01197-WGY. Mayer Brown LLP, New York, NY. Damages expert on reasonable royalties in matter involving smart meter technology for utilities.

2013-2014: *In the Matter of: Certain Crawler Cranes and Components Thereof*, U.S. International Trade Commission, No. 337-TA-887. Morris, Manning & Martin, LLP, Atlanta, GA. Expert analysis of existence of domestic market for crawler crane technology.

2013-2014: *JS Products, Inc. v. Kabo Tool Company, et al.*, U.S. District Court, District of Nevada, 2:11-cv-01856-RCJ-GWF. K&L Gates, LLP, San Francisco, CA. Damages expert in patent infringement suit involving tool industry technology.

2013: *Lodsys Group LLC v. Brother International Corp., et al.*, U.S. District Court, Eastern District of Texas, 2:11-cv-00090 (JRG). Fenwick & West, LLP, San Francisco, CA. Retained by co-defendant, Symantec Corp., as damages expert on patent infringement suit involving software technology.

2013: *Magnate International Ltd. v. Costco Wholesale Corp.*, U.S. District Court, Central District of California, 12-cv-09208-GW. Foster Pepper, PLLC, Seattle, WA. Damages expert in patent infringement suit involving pump technology.

3

2012-2015: *QS Wholesale, Inc. v. World Marketing Inc.*, U.S. District Court, Central District of California, 8:12-cv-00451-DOC-RNB. Covington & Burling LLP, Washington, DC. Provided expert report, deposition testimony, and testified at trial in trademark infringement suit involving trademark in apparel industry.

2012-2014: *Hart Scott Rodino IP Rulemaking*, Project No. P989316—Notice of Proposed Rulemaking Regarding Certain Licensing Transactions in Pharmaceutical Industry. Baker Botts L.L.P., Washington, DC. Submitted declaration addressing economic basis for proposed premerger notification rules related to exclusive patent licensing.

2012-2015: *TransUnion Intelligence LLC, et al. v. Search America, Inc.*, U.S. District Court, District of Minnesota, 0:11-cv-01075-PJS-LFN. Baker Hostetler, Costa Mesa, CA. Economics expert in patent infringement suit involving software technology.

2012-2013: *Light Guard Systems, Inc. v. Spot Devices, Inc.*, U.S. District Court, District of Nevada, 3:10-cv-00737-LRH-WGC. Alston & Bird LLP, Menlo Park, CA. Economics expert in patent infringement suit involving transportation technology.

2012: *Intellectual Ventures I LLC v. Check Point Software Technologies Ltd., et al.*, U.S. District Court, Delaware, 1:10-cv-01067-LPS. Durie Tangri, San Francisco, CA. Economics and damages expert in patent infringement suit involving Internet technology.

2011-2016: *Arkema Inc., et al. v. Honeywell International, Inc.*, U.S. District Court, Eastern District of Pennsylvania, 2:10-cv-02886-WY. Kirkland & Ellis LLP, Washington, DC. Economics expert in patent suit (declaratory judgment and counterclaim patent infringement suit) involving chemical product.

2009-2010: *Angela Bates, et al. v. KB Home*, Superior Court of California, County of Alameda, RG-08- 384954. K&L Gates LLP, San Francisco, CA. Provided declaration addressing the validity of sampling and statistical analysis of escrow instructions performed by plaintiffs related to class certification of a set of home buyers in California.

2009: *In re Patent of Hee Young Yun, et al.*, U.S. Patent and Trademark Office, 90/008, 143, 145, 146, and 150. McKenna Long & Aldridge LLP, Washington, DC. Provided declaration addressing economic issues related to claimed commercial success of patents for liquid crystal display (LCD) modules as part of patent reexamination process.

2007-2008: *Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.*, U.S. District Court, Eastern District of Virginia, 1:07-CV-00491. Crowell & Moring LLP, Washington, DC. Provided expert report, deposition testimony, and testified at trial on economic damages arising out of alleged infringement of copyrighted software.

2007: *Alvarado Hospital Medical Center, Inc. v. Alan Wittgrove, M.D.*, Superior Court of California, County of San Diego, GIC 827726. C. Matthew Didaleusky, Esq., Oakland, CA. Provided testimony at arbitration hearing on economic damages arising out of alleged breach of contract.

2007: *SCI California Funeral Services, Inc. v. Five Bridges Foundation*, Superior Court of California, County of San Mateo, CIV 432392. Shartsis Friese LLP, San Francisco, CA. Provided deposition testimony on economic issues related to valuation of provisions in real estate agreement.

2006-2007: *DVD Copy Control Association, Inc. v. Kaleidescape, Inc.*, Superior Court of California, County of Santa Clara, 104CV031929. White & Case LLP, Palo Alto, CA. Provided deposition testimony on economic damages arising out of alleged breach of contract by licensee of proprietary DVD technology.

2005: Confidential Real Estate Co. v. Confidential Law Firm, private arbitration. Nixon Peabody LLP, San Francisco, CA. Provided expert report, deposition testimony, and testified at arbitration on economic damages related to valuation of multiple appraisals for real estate leasehold contract.

2005: *Poway RHF Housing, Inc. v. Irwin Pancake Architects, et al.*, Superior Court of California, County of Orange, 04CC09795. Hinshaw & Culbertson LLP, San Francisco, CA. Designated expert on economic damages arising out of alleged breach of contract and professional negligence against architect, and resulting in delayed opening of senior assisted living facility.

2003: *Eco-Steel Fabrication, Inc. v. Markol Iron, et al.*, Superior Court of California, County of Orange. Miller, Brown & Dannis, San Francisco, CA. Provided expert report and testified at mediation on economic damages resulting from delayed construction of luxury car dealership in southern California.

## Non-Testifying Assignments

2018-2019: *BlueRadios, Inc. v. Kopin Corporation, Inc.* U.S. District Court for the District of Colorado, 16-cv-02052-JLK. Sheridan Ross P.C., Denver, CO. Economic damages analysis of breach of contract and misappropriation of trade secret claims regarding filing and use of patents.

2015: Confidential. Cravath, Swaine & Moore LLP, New York, NY. Pre-litigation consulting related economic analysis of technology licensing terms.

2011-2012: *Thermal Design, Inc. v. American Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc.* U.S. District Court, Eastern District of Wisconsin, 07-c-0765-WEC. Von Briesen & Roper, s.c., Milwaukee, WI. Economic analysis of competitive issues related to industry standards established for insulation used in non-residential, pre-engineered metal buildings.

2011-2012: *Warner Chilcott Laboratories Ireland, Ltd. et al. v. Mylan Pharmaceuticals Inc. et al.* U.S. District Court, District of New Jersey, 2:09-cv- 02073-WJM-MF. Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA. Analysis of economic issues related to the market for doxycycline hyclate delayed-release tablets and effects of proposed preliminary injunction.

2011-2012: *Abbott Laboratories et al. v. Impax Laboratories, Inc.* U.S. District Court, District of New Jersey, 210-cv-01322-DMC-JAD. Wilson, Sonsini, Goodrich & Rosati, San Diego, CA. Economic analysis of the commercial success of Abbott Laboratories' introduction and sale of TRILIPIX® (branded fenofibric acid delayed-release 45 mg and 135 mg capsules).

2011: Confidential. Hennigan Dorman LLP, Los Angeles, CA. Analyzed economic damages in patent infringement suit involving wireless communication technology.

2010: *Kenneth D. Klaas et al. v. Vestin Mortgage, Inc. et al.*, Eighth Judicial District Court In and For Clark County, State of Nevada, A528385. Gibson, Dunn & Crutcher LLP, Palo Alto, CA. Analyzed economic damages arising from merger of real estate investment funds into real estate investment trusts (REITs).

2010: *In Re: Outsidewall Tire*, U.S. District Court, Eastern District of Virginia, 1:09cv1217. Gilbert LLP, Washington, DC. Analyzed economic issues in misappropriate of trade secret, copyright infringement, and trademark infringement matter involving specialty tires.

2010: Confidential. Morgan, Lewis & Bockius LLP, Washington, DC. Retained on behalf of an international computer design firm to research and analyze Internet encryption technology license agreements.

2009-2010: Confidential, ICC International Court of Arbitration Proceeding. Morrison & Foerster LLP, San Francisco, CA. Analyzed fiduciary duties among co-investors in an Asia-based financial institution in relation to private equity industry customs and practices.

2009: *Jasmine Networks, Inc. v. Marvell Semiconductor, Inc., et al.*, Superior Court of California, County of Santa Clara, No. CV801411. Latham & Watkins LLP, San Francisco, CA. Analyzed economic damages arising out of alleged misappropriation of trade secrets, breach of fiduciary duty, and breach of contract.

2009: *Fujitsu Limited et al. v. Netgear, Inc.*, U.S. District Court, Western District of Wisconsin, 3:07-CV- 00710-BBC, O'Melveny & Myers LLP, San Francisco, CA. Provided economic and licensing analysis for patent infringement suit involving wireless Internet products.

2009: Confidential. Carmody & Torrance LLP, New Haven, CT. Retained by manufacturing company in printing industry to examine economic issues and damages arising out of patent infringement suits and antitrust counterclaims.

2009: Confidential. Retained by developer of risk analysis software to analyze damages arising out of alleged breach of contract involving joint development agreement.

2009: *Mosaic Systems, Inc. v. Cisco Systems, et al. & Mosaic Systems, Inc. v. Andreas Bechtolsheim, et al.*, Superior Court of California, County of Santa Clara, Nos. 104CV016867 &106CV072920. Morgan, Lewis & Bockius LLP, San Francisco, CA. Analyzed performance of board members' fiduciary duties in relation to customs and practices for board members of high-tech startup companies.

2008: Confidential. Retained by electronics firm to examine industry-wide licensing practices related to fees, royalties, and other licensing terms for discrete electronic components.

2008: *Rambus, Inc. v. Samsung Electronics Co., Ltd., et al.*, U.S. District Court, Northern District of California, No. C0502298 RMW. Munger, Tolles & Olson LLP. Analyzed economic issues related to structure of licensing terms among agreements for semiconductor technology.

2008: *Verizon Services Corp., et al. v. Cox Fibernet Virginia, Inc., et al.*, U.S. District Court, Eastern District of Virginia, No. 2:08 CV20-JBF/TEM. Kilpatrick Stockton LLP, Washington, DC. Analyzed economic damages from alleged infringement of patents related to Voice over Internet Protocol (VoIP) technology.

6

2008: *Beal Bank, S.S.B, et al. v. WestPoint International, Inc.*, Court of Chancery of the State of Delaware in and for New Castle County, Civil Action No. 2617- CC. Hennigan, Bennett & Dorman LLP, Los Angeles, CA. Analyzed financial and economic effects on the bondholders of a series of actions taken by defendants related to issuance of preferred shares and changes in corporate governance.

2008: *Stamps.Com Inc., vs. Endicia Inc. and PSI Systems, Inc.*, U.S. District Court Central District of California, No. CV06-07499 ABC (CTx). Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA. Analyzed economic damages from alleged infringement of patents related to automated postage systems.

2007-2008: *United States ex rel. J. Richard West et al. v. Timex Corp.,* U.S. District Court, District of Connecticut, No. 3:04-CV-212 (JBA). Carmody & Torrance LLP, New Haven, CT. Analyzed price of watch products sold to U.S. Service Exchanges in alleged violation of Civil False Claims Act.

2007-2008: *Ronald A. Katz Technology Licensing LP v. General Electric Capital Corp., et al.*, U.S. District Court, Eastern District of Texas, No. 9:06-CV-197- RHC. Hennigan, Bennett & Dorman LLP, Los Angeles, CA. Analyzed economic damages from alleged infringement of patent portfolio related to interactive call processing technology.

2007-2008: North Shore City Council, Auckland, New Zealand. Consulting engagement related to economic analysis of allocation between different constituencies of construction costs for capital expansion of public transportation system.

2007-2008: *BP Chemicals Ltd. v. Jiangsu SOPO Corporation (Group) Ltd., et al.*, United States District Court, Eastern District of Missouri, No. 4:99-CV-00323 CDP. Paul, Hastings, Janofsky & Walker LLP, San Francisco, CA. Analyzed economic damages from alleged misappropriation of trade secrets related to acetic acid manufacturing technology.

2007-2009: *Lawrence J. Torango v. Aristocrat Leisure Ltd., et al.*, U.S. District Court, District of Nevada, CV-N-03-0690-HDM-VPC. McDermott Will & Emery, Palo Alto, CA. Analyzed economic damages from alleged breach of contract, misappropriation of trade secrets and infringement of patent related to gaming machine technology.

2006-2007: *Asyst Technologies, Inc. v. Jenoptik AG, et al.*, U.S. District Court, Northern District of California, C98-20451 JF. Fenwick & West LLP, San Francisco, CA. Analyzed price erosion damages associated with alleged patent infringement of semiconductor manufacturing products and processes.

2006-2007: *In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, U.S. District Court, Southern District of New York, MDL 1358 (SAS) M21-88. Kirkland & Ellis LLP, Chicago, IL. Analyzed economic consequences to oil companies of switching from MTBE-based to Ethanol based oxygenated and reformulated gasoline over the period 1995 to 2003.

2006-2009: *MacSolutions, Inc. v. Apple Computer, Inc.*, Superior Court of California, County of Santa Clara, 1-06-CV-056547. Latham & Watkins LLP, San Francisco, CA. Analyzed economic damages related to alleged breach of contract and misappropriation of trade secrets, among other claims, between independent resellers of Apple products and Apple Computer.

2006: Fairchild Semiconductor, consulting engagement. Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA. Prepared opinion letter addressing potential damage award from pending patent infringement litigation related to the acquisition of a target company by Fairchild Semiconductor.

2006: *H&R Block Eastern Enterprises, Inc., et al. v. Intuit, Inc.*, U.S. District Court, Western District of Missouri, 06-0039-CV-W-SOW. Quinn Emanuel Urquhart Oliver & Hedges, LLP, Redwood City, CA. Analyzed economic damages in original claim and subsequent counterclaim from alleged trademark infringement, false advertising, and fraudulent and negligent misrepresentations related to tax preparation software advertisements.

2006: *In the Matter of: Certain Incremental Dental Positioning Adjustment Appliances and Methods of Producing Same*, U.S. International Trade Commission, 337-TA. Paul, Hastings, Janofsky & Walker LLP, Washington, DC. Analyzed existence of domestic market for clear orthodontic products on behalf of claimant under Section 337 of Tariff Act of 1930. Claimant alleged patent infringement and trade secret misappropriation.

2006: *Jinro Industries Co., Ltd., v. Obyan Beach Resorts Associates, L.P.*, Superior Court of California, County of San Mateo, CIV436382. Calvo & Clark LLP, San Francisco, CA. Analyzed economic damages from alleged breach of contract between partners in a resort in Saipan, CNMI.

2006: *CollegeNET, Inc. v. Xap Corp.*, U.S. District Court, District of Oregon, 03- 1229-BR. Fenwick & West LLP, Mountain View, CA. Analyzed economic damages from alleged infringement of patent related to on-line college application software.

2006: *The People of the State of California v. Union Bank of California, N.A.*, *et al.*, Superior Court of California, County of Sacramento, 04AS01296. Heller Ehrman LLP, San Francisco, CA. Analyzed economic damages from alleged submittal of false unclaimed property (escheatment) reports related to municipal bonds funds.

2005: *Trust Created Under the Will of Samuel Mills Damon, Deceased*, P. No. 6664 Equity No. 2816-A. John L. McDermott (attorney for Petitioner), Honolulu, HI. Evaluated strategic alternatives and disposition of California and Hawaii real estate assets of trust.

2005-2006: *TiVo, Inc. v. EchoStar Communications Corp.*, *et al.*, U.S. District Court, Eastern District of Texas, 2-04cv01 (DF). Morrison & Foerster LLP, San Francisco, CA. Analyzed economic damages from alleged infringement of patent related to digital video recorders.

2005-2006: *James and Lisa Camenson, et al., v. Milgard Manufacturing, Inc.*, *et al.*, Superior Court of California, County of Solano, FCS-021177. Sedgwick, Detert, Moran & Arnold LLP, and Heller Ehrman LLP, San Francisco, CA. Supported economics and marketing experts in opposition to class certification in alleged defective aluminum window litigation.

2005-2006: *LG. Philips LCD Co., Ltd. v. Tatung Co. of America, et al.*, U.S. District Court, Central District of California, 02-6775 CBM LTLx. Morgan, Lewis & Bockius LLP, Philadelphia, PA. Analyzed economic damages from alleged infringement of patents related to liquid crystal display panels.

8

2005: Consulting assignment for Perkins Coie LLP. Performed statistical analysis of patent case terminations in U.S. District Court, Eastern District of Texas.

2004-2005: *Medtronic Vascular, Inc., et al. v. Advanced Cardiovascular Systems, Inc., et al.*, U.S. District Court, District of Delaware, CIV 98-80-SLR. McDermott, Will & Emery, Irvine, CA. Analyzed economic damages from alleged theft of trade secrets and infringement of patents related to cardiovascular and peripheral stents.

2004-2005: *United States v. Arnold Bengis, et al.*, U.S. District Court, Southern District of New York, 03 Crim. 308 (LAK). Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY. Analyzed restitution damages to South African Government arising out of overcatches of South Coast and West Coast rock lobsters.

2004-2005: *Liveworld, Inc. v. SocialNet, Inc. and MatchNet PLC, et al.*, Superior Court of California, County of Santa Clara. Levy, Small & Lallas, Los Angeles, CA. Performed database valuation, domain name valuation, alter ego analysis, and lost profits analysis associated with breach of contract between two Internet dating companies.

2004: *Big West Oil Company, Travel Plaza LLC, and Flying J, Inc., v. ConocoPhillips Company, et al.*, American Arbitration Association, 77-198- 00303-03 VSS. Gibson, Dunn & Crutcher LLP, Denver, CO. Analyzed retail diesel fuel pricing strategies of truck plaza operators for company valuation.

2004: *United States v. Intangible Property Rights in 958 Acres (Yuma Mesa Irrigation and Drainage District)*, U.S. District Court, District of Arizona, CIV- 02-0560-PHX (SRB), U.S. Department of Justice, Washington, DC. Analyzed lost revenue from the federal government's acquisition of an irrigation district's land in Arizona.

2004: *Network Caching Technology, LLC v. Novell, Inc., et al.*, U.S. District Court, Northern District of California, CV-01-2079 (VRW). Jones Day, Los Angeles, CA. Analyzed economic damages due to alleged infringement of patent related to Internet caching network technology.

2004: *Software AG, et al. v. BEA Systems, Inc.*, U.S. District Court, District of Delaware. Morrison & Foerster LLP, San Francisco, CA. Analyzed economic damages due to alleged infringement of patent related to business integration software.

2003-2004: *MediaTek, Inc. v. Via Technologies, Inc., et al.*, U.S. District Court, Central District of California, 02-05016 DSF (RNBx). Fenwick & West LLP, Mountain View, CA. Analyzed economic damages due to alleged patent and copyright infringement, and misappropriation of trade secrets of technology related to optical disk drives.

2003-2004: *In re Cardizem CD Antitrust Litigation*, U.S. District Court, 6th Circuit. Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA. Analyzed economic damages due to alleged delayed market entry of generic pharmaceutical products.

2003: *Retail Services, Inc. and Freebie, Inc. v. Freebies Publishing, et al.*, U.S. District Court, Eastern District of Virginia, Civ. 02-1111-A. Gibson, Dunn & Crutcher LLP. Analyzed economic damages due to alleged infringement of trademark related to on-line and promotional literature.

2003: *MEIE Syndicate Analysis*, Australia Taxation Office and Owens Dixon, Sydney, NSW, Australia. Analyzed economic basis for series of licensing and funding agreements between investors of distributed multimedia computing technology.

2003: *In re Timex Industries, Inc., et al.* U.S. Bankruptcy Court, Central District of California, 03- 16833-MJ, Chapter 11 Proceeding. Levy, Small & Lallas (attorney for creditor), Los Angeles, CA. Analyzed financial viability of building products company in bankruptcy proceeding.

2003: *Dan Gill, et al. v. ExxonMobil Corporation, Inc., et al.*, County Court 4 of Nueces County Texas, 03-60079-4. ExxonMobil in-house counsel, Houston, TX. Analyzed wholesale, DTT, and retail gasoline prices in selected Texas cities in response to alleged breach of contract regarding dealer price rebates.

2003: *Sun Life Assurance Company of Canada v. Golden Eagle Insurance Corporation, et al.*, Private arbitration. Milbank, Tweed, Hadley & McCoy LLP, Los Angeles, CA. Analyzed statistical sampling methodology employed in review of reinsurance treaties associated with a portfolio of Workers' Compensation insurance claims.

2002-2003: *Lawrence J. Knapp and Nicer Technologies, L.P. v. Raymond M. Galas so and Thompson & Knight LLP*, District Court of Tarrant County, Texas, 153-191270-02. Shannon, Grace, Ratliff & Miller LLP, Fort Worth, TX. Analyzed economic damages due to alleged negligence in prosecution of a patent related to testing equipment used to calibrate semiconductor manufacturing devices.

2002: *Macpherson's Inc., et al. v. Windermere Real Estate Services Company, et al.*, U.S. District Court, Western District of Washington, C01-1885P. Demco Law Firm, P.S., Seattle, WA. Assessed validity of plaintiffs' antitrust claims against a franchisor of residential real estate brokerage businesses.

2002: *Raman Froze d.b.a. Wizen Software v. EarthLink Network, Inc., et al.*, Superior Court of the State of California, City and County of San Francisco, 11889-01. Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, San Francisco, CA. Analyzed economic damages due to alleged breach of contract and misappropriation of software programming code.

2001-2002: *Business Objects, S.A. v. Congas, Inc., et al.*, U.S. District Court, Northern District of California, C 20503. Fenwick & West LLP, Mountain View, CA. Analyzed economic damages due to alleged infringement of patent related to relational database software.

**PUBLICATIONS**

Varner, Thomas R. & Hnath, G. M., "Patent Valuation Analysis—Patent Forward Citations and Patent Quality," retrieved from https://mp.weixin.qq.com/s/ShSYr8pOmX8igQucVcYriA, 2018, September 3.

Hnath, Gary, Jing Zhang and Thomas R. Varner, "Patent Forward Citations and Patent Quality," *Asia IP & TMT: Quarterly Review*, Second Quarter 2018.

Varner, Thomas R., "Federal Circuit Again Scrutinizes Reasonable Royalties in Patent Damages in *VirnetX v. Cisco Systems and Apple,*" *The Economists Ink*, Winter 2015.

10

Varner, Thomas R., "Nash Bargaining May Not Be Right for Patent Damages," *Law360*, April 18, 2014.

Varner, Thomas R., "Empirical Data on 'Comparable Licenses' in Patent Infringement Suits," *The Economists Ink*, Fall 2012.

Varner, Thomas R., "An Economic Perspective on Patent Licensing Structure and Provisions," *Business Economics*, Vol. 46 (4), October 2011.

Varner, Thomas R., "*Uniloc* and the Demise of the 25 Percent Rule," *The Economists Ink*, Spring 2011.

Varner, Thomas R., "Technology Royalty Rates in SEC Filings," *les Nouvelles*, Journal of the Licensing Executives Society International, Vol. XLV, No. 3, September 2010, pp. 120-127.

Varner, Thomas R., "Reasonable Royalties and 'Comparable Licenses': Three Recent Court Rulings," *The Economists Ink*, Spring 2010.

## PROFESSIONAL AFFILIATIONS

Member, Licensing Executives Society, USA & Canada

Member, American Economics Association

Member, National Association of Business Economists

Member, American Society of Civil Engineers

Associate Member, American Bar Association (IP Law Section)

## OTHER

Speaker on economics, damages and technology licensing issues at Licensing Executives Society (LES), American Law Institute/American Bar Association (ALI/ABA) and Law Seminars International (LSI) seminars and conferences.

Licensed Civil Engineer and Licensed Structural Engineer (Inactive), State of California

Certificate in Hazardous Materials Management, University of California, Davis, 1990

Ph.D. Dissertation: *Strategic Investment Analysis: A Study of Indirect Effects in Optimal Portfolio Selection*, 1997

## Appendix B - List of Materials Considered
### Expert Report of Thomas R. Varner, Ph.D., February 4, 2019

| | Document Title / Bates Number | Date |
|---|---|---|
| **Legal** | | |
| | Complaint | 24-Apr-17 |
| | Answer, Affirmative Defenses, and Counterclaims of Mylan Inc. and Mylan Specialty L.P. (Parker Ex. 8) | 16-Jan-18 |
| | Sanofi's Responses and Objections to Mylan's Second Set of Interrogatories to Sanofi-Aventis U.S. LLC (Parker Ex. 7) | 12-Mar-18 |
| | Sanofi's Amended Responses and Objections to Mylan's Second Set of Interrogatories to Sanofi-Aventis U.S. LLC | 22-Jun-18 |
| | Plaintiff/Counterclaim-Defendant Sanofi-Aventis U.S., LLC's Amended Response to Defendant Mylan Inc. and Defendant/Counterclaim-Plaintiff Mylan Specialty L.P.'s Requests for Admission | 30-Nov-18 |
| | Notice to Deposition Witnesses (Harr Ex. 1) | 17-May-18 |
| | Notice of Rule 30(b)(6) Deposition of Plaintiff/Counterclaim-Defendant Sanofi-Aventis U.S. LLC (Barry 30(b)(6) Ex. 1, Downey Ex. 1, and Harr Ex. 37) | 5-Jun-18 |
| | | |
| **Depositions and Exhibits** | | |
| *30(b)(6)* | Barry, Patrick (Sanofi) | 13-Jul-18 |
| | Barry, Patrick (Sanofi) | 13-Jul-18 |
| *30(b)(6)* | Downey, Bryan (Sanofi) | 31-Jul-18 |
| | Downey, Bryan (Sanofi) | 1-Aug-18 |
| *30(b)(6)* | Harr, Lorine (Sanofi) | 15-Aug-18 |
| | Harr, Lorine (Sanofi) | 14-Aug-18 |
| *30(b)(6)* | Jan, Saira (Horizon Blue Cross Blue Shield of New Jersey) | 30-Nov-18 |
| | Parker, James (Sanofi) | 30-Oct-18 |
| *30(b)(6)* | York, Jay (Mylan) | 1-Aug-18 |
| | Zinn, Patrick (Mylan) | 22-Aug-18 |
| | | |
| **Other Legal Cases** | | |
| | Defendants Memorandum of Law in Support of Motion to Dismiss the Consolidated Amended Class Action Complaint (Counts 1–6), *In Re Insulin Pricing Litigation* (Barry Ex. 7) | 9-Mar-18 |
| | | |
| **Caselaw and Statutes** | | |
| | 15 U.S. Code § 1117 (Section 35 of the Lanham Act): Recovery for violation of rights | |
| | Federal Rules of Civil Procedure, Rule 26. Duty to Disclose | |
| | | |
| **Academic Texts and Articles** | | |
| | Reference Manual on Scientific Evidence, Third Edition, Federal Judicial Center, "Reference Guide on Statistics," David H. Kaye and David A. Freedman | |
| | | |
| **Industry Materials** | | |
| | IMS, "Appropriate Use of IMS Information: Financial Community Presentation," November 12, | |
| | PhRMA, "Follow the Dollar: Understanding How the Pharmaceutical Distribution and Payment System Shapes the Prices of Brand Medicines," November 2017 | |
| | | |
| **Public Documents** | | |
| | Mylan Inc., "Form 10-K," 2017 | |
| | Sanofi, "Form 20-F," 2013 | |

| | | |
|---|---|---|
| | Sanofi, "Form 20-F," 2015 | |
| | Sanofi, "Form 20-F," 2017 | |
| | | |
| **_Nonpublic Documents_** | | |
| | "Auvi-Q and Allerject Analysis," Sanofi, October 9, 2016 (Barry 30(b)(6) Ex. 4) | 9-Oct-16 |
| | "Auvi-Q: Drug/Device & Adequate Evidence," Sanofi, December 6, 2013 (Parker Ex. 9) | 6-Dec-13 |
| | Letter from Allison Gassaro (Sanofi) to Joseph Haggerty (Mylan), re: Mylan Communications Regarding Auvi-Q Epinephrine Auto-Injector, September 20, 2013 (Harr Ex. 39) | 20-Sep-13 |
| | | |
| **_Interviews_** | | |
| | Phone interview with Chris Benson (Mylan) | 25-Jan-19 |
| | Phone interview with Patrick Zinn (Mylan) | 18-Jan-19 |
| | Phone interview with Patrick Zinn (Mylan) | 28-Jan-19 |
| | Phone interview with Roger Graham (Mylan) | 28-Jan-19 |
| | | |
| **_Data_** | | |
| | "Burns 082918.xlsx" | |
| | "Highly Confidential_NSP_ Jan 2008 - July 2012.xlsx" | |
| | "ZWMH.TPRICE.CLIENT.OUTPUT.Y0809.CSV" (as provided in the expert report productions of Einer Elhauge and Meredith Rosenthal) | |
| | "ZWMH.TPRICE.CLIENT.OUTPUT.Y1011.CSV" (as provided in the expert report productions of Einer Elhauge and Meredith Rosenthal) | |
| | "ZWMH.TPRICE.CLIENT.OUTPUT.Y1213.CSV" (as provided in the expert report productions of Einer Elhauge and Meredith Rosenthal) | |
| | "ZWMH.TPRICE.CLIENT.OUTPUT.Y1415.CSV" (as provided in the expert report productions of Einer Elhauge and Meredith Rosenthal) | |
| | "ZWMH.TPRICE.CLIENT.OUTPUT.Y1617.CSV" (as provided in the expert report productions of Einer Elhauge and Meredith Rosenthal) | |
| | "ZWMH.TPRICE.CLIENT.OUTPUT.Y18.CSV" (as provided in the expert report productions of Einer Elhauge and Meredith Rosenthal) | |
| | MYEP01362495 | |
| | MYEP01362496 | |
| | MYEP01362497 | |
| | MYEP01362498 | |
| | SAN-EPI-1166400 | |
| | SAN-EPI-1201142 | |
| | SAN-EPI-1201143 | |
| | SAN-EPI-1201144 | |
| | SAN-EPI-1201145 | |
| | | |
| **_News, Press, and Websites_** | | |
| | "About Meridian," Meridian Medical Technologies, 2018, available at <https://www.meridianmeds.com/about>, accessed January 27, 2019 | |
| | "About," kaléo, 2019, available at <https://kaleo.com/who-we-are/about/>, accessed January 26, | |
| | "Approved Drug Products with Therapeutic Equivalence Evaluations (Orange Book)," FDA Orange Book, September 26, 2018, available at <https://www.fda.gov/drugs/informationondrugs/ucm129662.htm>, accessed January 25, 2019 | |

| | |
|---|---|
| "Auvi-Q (epinephrine injection, USP) Recall," Sanofi U.S., 2019, available at <https://www.sanofi.us/en/products-and-resources/Auvi-Q-epinephrine-injection-USP-Recall/>, accessed January 26, 2019 | |
| "FDA Approved Epinephrine Auto-Injectors," FDA Orange Book, June 15, 2017, available at <https://www.fda.gov/downloads/drugs/informationondrugs/ucm520800.pdf>, accessed January 25, 2019 | |
| "FDA approves first generic version of EpiPen," FDA News Release, August 16, 2018, available at <https://www.fda.gov/newsevents/newsroom/pressannouncements/ucm617173.htm>, accessed January 26, 2019 | |
| "FDA approves first generic version of EpiPen," FDA, August 16, 2018, available at <https://www.fda.gov/newsevents/newsroom/pressannouncements/ucm617173.htm>, accessed January 26, 2019 | |
| "Impax Completes Acquisition of Tower Holdings, Inc. and Lineage Therapeutics Inc.," Impax Laboratories, March 10, 2015, available at <https://investors.impaxlabs.com/news/press-releases/press-release-details/2015/Impax-Completes-Acquisition-Of-Tower-Holdings-Inc-And-Lineage-Therapeutics-Inc/default.aspx>, accessed February 1, 2019 | |
| "Important Prescribing Information - Subject: New Formulation of Adrenalin® (epinephrine) Injection 1-ml Single-use Vials: Withdrawal of Intraocular Surgery Indication," Par Pharmaceutical, 2016, available at <https://www.fda.gov/downloads/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsandProviders/UCM564405.pdf>, accessed January 25, 2019 | |
| "IMS Health and Quintiles to Merge," IQVIA, May 3, 2016, available at <https://ir.iqvia.com/investors/press-releases/press-release-details/2016/IMS-Health-and-Quintiles-to-Merge/default.aspx>, accessed February 1, 2019 | |
| "kaléo, Inc.: Private Company Information," Bloomberg, January 26, 2019, available at <https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapid=59080414>, accessed January 26, 2009 | |
| "Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, Product Details for NDA 019430," FDA Orange Book, available at <https://www.accessdata.fda.gov/scripts/Cder/ob/results_product.cfm?Appl_Type=N&Appl_No=019430#>, accessed January 30, 2019 | |
| "Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, Product Details for NDA 020800," FDA Orange Book, available at <https://www.accessdata.fda.gov/scripts/Cder/ob/results_product.cfm?Appl_Type=N&Appl_No=020800>, accessed January 30, 2019 | |
| "Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, Product Details for NDA 201739," FDA Orange Book, available at <https://www.accessdata.fda.gov/scripts/Cder/ob/results_product.cfm?Appl_Type=N&Appl_No=201739#>, accessed January 30, 2019 | |
| "Products and Pipeline," kaléo, 2019, available at <https://kaleo.com/who-we-are/about/>, accessed January 26, 2019 | |
| "QuintilesIMS is now IQVIA," Business Wire, November 6, 2017, available at <https://www.businesswire.com/news/home/20171106005380/en/QuintilesIMS-IQVIA>, accessed February 1, 2019 | |
| "Sanofi Sets Out Strategic Roadmap for Long-term Growth," Sanofi Press Release, November 6, 2015 (Barry 30(b)(6) Ex. 2) | |
| "Sanofi US to Return Auvi-Q (epinephrine injection, USP) Rights to kaléo," Sanofi Press Release, February 23, 2016 (Barry 30(b)(6) Ex. 7) | |
| | |

| *Bates Documents* | |
|---|---|
| AG00000799 (Downey Ex. 9) | |
| ANTH-EPI03662 | |
| CIGNA_00478 | |
| EAI 00027790 | |
| Horizon00009478 (Jan Ex. 5) | |
| Horizon00013404 (Jan Ex. 4) | |
| KALEO 101808 (Williamson Ex. 6) | |
| KALEO 101809 | |
| KALEO-00006989 (Parker Ex. 2) | |
| KALEO-00006994 (Parker Ex. 4) | |
| KALEO-00007001 (Parker Ex. 5) | |
| KALEO-00007551 (Parker Ex. 3) | |
| KALEO-00042499 (Williamson Ex. 14) | |
| KFHP-005893 | |
| MYEP00001440 | |
| MYEP00047063 | |
| MYEP00047072 | |
| MYEP00047084 | |
| MYEP00047157 | |
| MYEP00047170 | |
| MYEP00047180 | |
| MYEP00047204 | |
| MYEP00047233 | |
| MYEP00047250 | |
| MYEP00047269 | |
| MYEP00047277 | |
| MYEP00047335 | |
| MYEP000677384 | |
| MYEP00169934 | |
| MYEP00256469 | |
| MYEP00265212 | |
| MYEP00318158 | |
| MYEP00483111 | |
| MYEP00503600 | |
| MYEP00503757 | |
| MYEP00513817 | |
| MYEP00515665 | |
| MYEP00524939 | |
| MYEP00524984 | |
| MYEP00552533 | |
| MYEP00552536 | |
| MYEP00553451 | |
| MYEP00606646 | |
| MYEP00681772 | |
| MYEP00742658 | |
| MYEP00752542 | |
| MYEP00798486 | |
| MYEP00814343 | |

| | |
|---|---|
| MYEP00861934 | |
| MYEP00871098 | |
| MYEP01083145 | |
| MYEP01129563 | |
| MYEP01186100 | |
| MYEP01186102 | |
| MYEP01191202 | |
| MYEP01211794 | |
| MYEP01319592 | |
| MYEP01362498 | |
| PS0209703 | |
| SAN-EPI_A-0000837 (Barry Ex. 30) | |
| SAN-EPI_A-0000956 (Barry Ex. 28) | |
| SAN-EPI_A-0000957 (Downey Ex. 27) | |
| SAN-EPI_A-0011182 (Barry Ex. 5) | |
| SAN-EPI_A-0088536 (Harr Exs. 24 and 32) | |
| SAN-EPI-0002167 (Barry Ex. 20) | |
| SAN-EPI-0002355 | |
| SAN-EPI-0004239 (Barry Ex. 4) | |
| SAN-EPI-0004304 (Barry Ex. 3) | |
| SAN-EPI-0007054 (Barry Ex. 37) | |
| SAN-EPI-0007286 (Barry Ex. 36) | |
| SAN-EPI-0012158 (Barry Ex. 18) | |
| SAN-EPI-0013125 (Barry Ex. 17) | |
| SAN-EPI-0013431 (Downey Ex. 8) | |
| SAN-EPI-0027555 (Barry Ex. 35 and Harr Ex. 23) | |
| SAN-EPI-0031476 (Barry Ex. 27) | |
| SAN-EPI-0032713 | |
| SAN-EPI-0033571 (Barry Ex. 26) | |
| SAN-EPI-0041336 (Downey Ex. 16) | |
| SAN-EPI-0041465 (Downey Ex. 13) | |
| SAN-EPI-0053138 (Barry Ex. 40) | |
| SAN-EPI-0053374 (Barry Ex. 38) | |
| SAN-EPI-0057517 (Barry Ex. 29) | |
| SAN-EPI-0057924 (Barry Ex. 25) | |
| SAN-EPI-0058177 (Parker Ex. 10) | |
| SAN-EPI-0059445 (Barry Ex. 23) | |
| SAN-EPI-0062305 (Barry Ex. 10) | |
| SAN-EPI-0062330 (Downey Ex. 14) | |
| SAN-EPI-0064220 (Barry Ex. 2) | |
| SAN-EPI-0069127 | |
| SAN-EPI-0078858 | |
| SAN-EPI-0080307 (Harr Ex. 36) | |
| SAN-EPI-0080704 | |
| SAN-EPI-0081008 | |
| SAN-EPI-0082989 | |
| SAN-EPI-0083095 | |
| SAN-EPI-0083237 | |
| SAN-EPI-0083247 | |

| | | |
|---|---|---|
| SAN-EPI-0087111 | | |
| SAN-EPI-0087325 | | |
| SAN-EPI-0088510 | | |
| SAN-EPI-0091515 | | |
| SAN-EPI-0095078 | | |
| SAN-EPI-0096584 (Downey Ex. 29) | | |
| SAN-EPI-0098389 (Downey Ex. 10) | | |
| SAN-EPI-0102717 (Downey Ex. 7) | | |
| SAN-EPI-0102975 (Downey Ex. 6) | | |
| SAN-EPI-0110035 (Downey Ex. 20) | | |
| SAN-EPI-0138094 | | |
| SAN-EPI-0138103 (Downey Ex. 32) | | |
| SAN-EPI-0146381 | | |
| SAN-EPI-0148365 | | |
| SAN-EPI-0148375 | | |
| SAN-EPI-0153210 (Downey Ex. 30) | | |
| SAN-EPI-0158511 | | |
| SAN-EPI-0161780 (Barry Ex. 22) | | |
| SAN-EPI-0171340 (Downey Ex. 15) | | |
| SAN-EPI-0194007 | | |
| SAN-EPI-0194007 (Barry 30(b)(6) Ex. 6) | | |
| SAN-EPI-0194008 | | |
| SAN-EPI-0197629 | | |
| SAN-EPI-0198549 (Harr Ex. 31) | | |
| SAN-EPI-0199208 (Harr Ex. 27) | | |
| SAN-EPI-0200861 | | |
| SAN-EPI-0210261 (Harr Ex. 22) | | |
| SAN-EPI-0210391 | | |
| SAN-EPI-0211693 | | |
| SAN-EPI-0213952 | | |
| SAN-EPI-0218849 (Harr Ex. 35) | | |
| SAN-EPI-0219033 (Harr Ex. 34) | | |
| SAN-EPI-0219136 (Barry Ex. 39) | | |
| SAN-EPI-0222062 (Harr Ex. 21) | | |
| SAN-EPI-0224717 (Barry Ex. 34 and Harr Ex. 20) | | |
| SAN-EPI-0225642 (Barry Ex. 33 and Harr Ex. 19) | | |
| SAN-EPI-0227361 | | |
| SAN-EPI-0230381 (Harr Ex. 26) | | |
| SAN-EPI-0230556 | | |
| SAN-EPI-0232402 (Harr Ex. 25) | | |
| SAN-EPI-0235298 (Harr Ex. 13) | | |
| SAN-EPI-0238962 | | |
| SAN-EPI-0241051 | | |
| SAN-EPI-0241420 (Harr Ex. 10) | | |
| SAN-EPI-0243446 (Harr Ex. 11) | | |
| SAN-EPI-0243812 (Harr Ex. 8) | | |
| SAN-EPI-0243951 (Harr Ex. 9) | | |
| SAN-EPI-0246125 | | |
| SAN-EPI-0255974 (Harr Ex. 16) | | |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' AND EXPERTS' EYES ONLY

| | |
|---|---|
| SAN-EPI-0258725 (Harr Ex. 3) | |
| SAN-EPI-0259092 | |
| SAN-EPI-0260070 (Harr Ex. 2) | |
| SAN-EPI-0260555 (Harr Ex. 29) | |
| SAN-EPI-0263667 (Downey Ex. 22) | |
| SAN-EPI-0265085 | |
| SAN-EPI-0274664 (Harr Ex. 46) | |
| SAN-EPI-0277215 | |
| SAN-EPI-0279095 (Harr Ex. 41) | |
| SAN-EPI-0279100 (Harr Ex. 48) | |
| SAN-EPI-0279259 | |
| SAN-EPI-0281056 (Harr Ex. 40) | |
| SAN-EPI-0284970 (Barry Ex. 42) | |
| SAN-EPI-0285761 (Barry Ex. 21) | |
| SAN-EPI-0295845 (Harr Ex. 18) | |
| SAN-EPI-0295957 (Harr Ex. 15) | |
| SAN-EPI-0297235 (Harr Ex. 47) | |
| SAN-EPI-0302203 (Barry Ex. 12) | |
| SAN-EPI-0305836 | |
| SAN-EPI-0307057 (Harr Ex. 38) | |
| SAN-EPI-0309724 (Harr Ex. 17) | |
| SAN-EPI-0310632 (Harr Ex. 14) | |
| SAN-EPI-0326500 (Harr Ex. 43) | |
| SAN-EPI-0339842 (Harr Ex. 45) | |
| SAN-EPI-0339843 (Harr Ex. 44) | |
| SAN-EPI-0341835 (Harr Ex. 5) | |
| SAN-EPI-0377130 (Barry Ex. 13) | |
| SAN-EPI-0377528 (Barry Ex. 31) | |
| SAN-EPI-0377613 | |
| SAN-EPI-0381146 (Barry Ex. 11) | |
| SAN-EPI-0381161 (Barry Ex. 9) | |
| SAN-EPI-0381167 (Barry Ex. 8) | |
| SAN-EPI-0396662 (Harr Ex. 42) | |
| SAN-EPI-0421866 (Downey Ex. 28) | |
| SAN-EPI-0460986 (Harr Ex. 28) | |
| SAN-EPI-0465723 (Harr Ex. 33) | |
| SAN-EPI-0467641 | |
| SAN-EPI-0468116 (Barry Ex. 32) | |
| SAN-EPI-0468859 | |
| SAN-EPI-0474016 | |
| SAN-EPI-0475464 (Harr Ex. 12) | |
| SAN-EPI-0538121 (Downey Ex. 4) | |
| SAN-EPI-0591672 | |
| SAN-EPI-0591675 | |
| SAN-EPI-0604949 | |
| SAN-EPI-0686246 (Downey Ex. 24) | |
| SAN-EPI-0688814 | |
| SAN-EPI-0688816 | |
| SAN-EPI-0691534 (Parker Ex. 6) | |

| | | |
|---|---|---|
| | SAN-EPI-0699296 (Parker Ex. 1) | |
| | SAN-EPI-0705748 | |
| | SAN-EPI-0705750 | |
| | SAN-EPI-0788600 (Downey Ex. 33) | |
| | SAN-EPI-0788633 (Barry 30(b)(6) Ex. 3) | |
| | SAN-EPI-0789416 (Barry 30(b)(6) Ex. 5) | |
| | SAN-EPI-0792154 (Downey Ex. 23) | |
| | SAN-EPI-0797727 (Barry Ex. 24) | |
| | SAN-EPI-0803705 (Barry Ex. 14) | |
| | SAN-EPI-0806073 (Barry Ex. 1 and Downey Ex. 11) | |
| | SAN-EPI-0853374 (Downey Ex. 31) | |
| | SAN-EPI-0869032 (Downey Ex. 5) | |
| | SAN-EPI-0886659 (Harr Ex. 39) | |
| | SAN-EPI-0899809 (Downey Ex. 18) | |
| | SAN-EPI-0899830 (Downey Ex. 17) | |
| | SAN-EPI-0900347 (Barry Ex. 6 and Downey Ex. 12) | |
| | SAN-EPI-0919193 (Harr Ex. 30) | |
| | SAN-EPI-0928169 | |
| | SAN-EPI-0928170 | |
| | SAN-EPI-0929321 (Harr Ex. 7) | |
| | SAN-EPI-0930020 (Harr Ex. 6) | |
| | SAN-EPI-0932365 (Harr Ex. 4) | |
| | SAN-EPI-0942591 | |
| | SAN-EPI-0945848 (Barry Ex. 41) | |
| | SAN-EPI-0946468 (Barry Ex. 19) | |
| | SAN-EPI-0953622 (Barry Ex. 15) | |
| | SAN-EPI-0971640 (Downey Ex. 2) | |
| | SAN-EPI-0980887 (Downey Ex. 19) | |
| | SAN-EPI-1003658 (Downey Ex. 3) | |
| | SAN-EPI-1031769 | |
| | SAN-EPI-1031770 | |
| | SAN-EPI-1058488 (Barry Ex. 16) | |
| | SAN-EPI-1088824 (Downey Ex. 21) | |
| | SAN-EPI-1148855 (Downey Exs. 25 and 26) | |
| | SAN-EPI-1158291 | |
| | SAN-EPI-1166023 | |
| | SAN-EPI-1166033 | |
| | SAN-EPI-1207542 | |
| | SAN-EPI-1207543 | |
| | SAN-EPI-1207552 | |
| | SAN-EPI-1207556 | |
| | SAN-EPI-1207599 | |
| | SAN-EPI-1207600 | |
| | SAN-EPI-1209659 | |
| | SAN-EPI-1212218 | |

## Exhibit 1  Damages Summary

[1] Damages period

| Unjust enrichment damages | Ref. | Total |
|---|---|---|
| Sanofi Auvi-Q® gross sales ($) | Exh 1.1 | ████ |
| Auvi-Q® incremental profit margin | [2] | 100% |
| **Unjust enrichment damages** | | ████ |

| Mylan's lost profits damages | | |
|---|---|---|
| Sanofi Auvi-Q® gross sales ($) | Exh 1.1 | ███ |
| Sanofi Auvi-Q® gross sales (doses) | Exh 1.1 | |
| Mylan's % sales | Exh 1.1 | 96.8% |
| Mylan's lost sales (doses) | Exh 1.1 | |
| Mylan's average net sales price ($/dose) | Exh 1.1 | |
| Mylan's lost sales ($) | | |
| Mylan's incremental profit margin | Exh 5.3 | |
| **Mylan's lost profits damages** | | |

Notes:

[1]  Damages period from 2013 Q1 through October 2015.  Sanofi document SAN-EPI-1201145.xlsx shows first sale on 1/18/13 and last sale on 10/22/15.

[2]  I understand that it is the defendant's burden to deduct costs and apportion damages per Lanham Act § 1117 ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.") I present Sanofi incremental profit margin of 100% for purposes of this report.

HIGHLY CONFIDENTIAL

**Exhibit 1.1  Damages Summary by Year**

[1] Damages period

| Unjust enrichment damages | Ref. | 2013 | 2014 | 2015 Q1-Q3 | 2015 Oct. 1 - Oct. 22 | Total |
|---|---|---|---|---|---|---|
| Sanofi Auvi-Q® gross sales ($) | Exh 2.1 | ███ | ███ | ███ | ███ | ███ |
| Auvi-Q® incremental profit margin | [2] | 100% | 100% | 100% | 100% | 100% |
| **Unjust enrichment damages** | | ███ | ███ | ███ | ███ | ███ |
| | | | | | | |
| **Mylan's lost profits damages** | | | | | | |
| Sanofi Auvi-Q® gross sales ($) | Exh 2.1 | ███ | ███ | ███ | ███ | ███ |
| Sanofi Auvi-Q® gross sales (doses) | Exh 2.1 | ███ | ███ | ███ | ███ | ███ |
| Mylan's % sales | Exh 6.3 | 98.4% | 96.5% | 96.0% | 95.6% | 96.8% |
| Mylan's lost sales (Doses) | | ███ | ███ | ███ | ███ | ███ |
| Mylan's average net sales price ($/dose) | Exh 8.1 [3] | ███ | ███ | ███ | ███ | ███ |
| Mylan's lost sales ($) | | $61,154,994 | $72,901,385 | $103,041,057 | $1,109,053 | $238,206,489 |
| Mylan's incremental profit margin | Exh 5.3 | ███ | ███ | ███ | ███ | ███ |
| **Mylan's lost profits damages** | | ███ | ███ | ███ | ███ | ███ |

Notes:

[1]  Damages period from 2013 Q1 through October 2015.  Sanofi document SAN-EPI-1201145.xlsx shows first sale on 1/18/13 and last sale on 10/22/15.

[2]  I understand that it is the defendant's burden to deduct costs and apportion damages per Lanham Act § 1117 ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.")  I present Sanofi incremental profit margin of 100% for purposes of this report.

[3]  Mylan's net sales ($) available on quarterly basis.  Mylan's average net sales price for 2015 Oct. 1 to Oct. 22 taken as average net sales price for 2015 Q4.

HIGHLY CONFIDENTIAL

**Exhibit 2.1  Sanofi's Auvi-Q® Sales**

| Product | | 2013 | 2014 | 2015 Q1-Q3 | 2015 Oct. 1-Oct. 22 | Total 2013-Oct. 22, 2015 | 2015 Nov. - Dec. | 2015 | Total 2013-2015 |
|---|---|---|---|---|---|---|---|---|---|
| Auvi-Q® Auto-Injector 0.15MG 2FG + 1 Trainer | [1] | | | | | | | | |
| Gross sales ($) | | | | | | | | | |
| Units sold | | | | | | | | | |
| Doses sold | | | | | | | | | |
| Avg. sales $/dose | | | | | | | | | |
| Auvi-Q® Auto-Injector .3MG 2FG + 1 Trainer | [1] | | | | | | | | |
| Gross sales ($) | | | | | | | | | |
| Units sold | | | | | | | | | |
| Doses sold | | | | | | | | | |
| Avg. sales $/dose | | | | | | | | | |
| All Auvi-Q® Auto-Injector Sales | [1] | | | | | | | | |
| Gross sales ($) | [3] | | | | | | | | |
| Units sold | | | | | | | | | |
| Doses sold | | | | | | | | | |
| Avg. sales $/dose | | | | | | | | | |
| All Auvi-Q® Auto-Injector Sales | | | | | | | | | |
| Net sales ($) | [2] | | | | | | | | |



Notes:
[1] Source: SAN-EPI-1201145.xlsx.  Gross sales date taken as "Billing Doc. Date" in source document.
[2] Source: SAN-EPI-1148855.xlsx
[3]

**Exhibit 2.2  Sanofi's Auvi-Q® Sales Quarterly**

| Product | | 2013Q1 | 2013Q2 | 2013Q3 | 2013Q4 | 2014Q1 | 2014Q2 | 2014Q3 | 2014Q4 | 2015Q1 | 2015Q2 | 2015Q3 | 2015 Oct. 1-Oct. 22 | Total 2013-2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Auvi-Q® Auto-Injector .15MG 2FG + 1 Trainer | [1] | | | | | | | | | | | | | |
|    Gross sales ($) | | | | | | | | | | | | | | |
|    Units sold | | | | | | | | | | | | | | |
|    Doses sold | | | | | | | | | | | | | | |
|    Avg. sales $/dose | | | | | | | | | | | | | | |
| Auvi-Q® Auto-Injector .3MG 2FG + 1 Trainer | [1] | | | | | | | | | | | | | |
|    Gross sales ($) | | | | | | | | | | | | | | |
|    Units sold | | | | | | | | | | | | | | |
|    Doses sold | | | | | | | | | | | | | | |
|    Avg. sales $/dose | | | | | | | | | | | | | | |
| All Auvi-Q® Auto-Injector Sales | [1] | | | | | | | | | | | | | |
|    Gross sales ($) | | | | | | | | | | | | | | |
|    Units sold | | | | | | | | | | | | | | |
|    Doses sold | | | | | | | | | | | | | | |
|    Avg. sales $/dose | | | | | | | | | | | | | | |
| All Auvi-Q® Auto-Injector Sales | | | | | | | | | | | | | | |
|    Net Sales | [2] | | | | | | | | | | | | | |



Notes:
[1] Source: SAN-EPI-1201145.xlsx. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
[2] Source: SAN-EPI-1148855.xlsx
[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**Exhibit 3.1  Sanofi's Auvi-Q® Profit and Loss Statement**
Source: [1]

**Total Auvi-Q®**

|  | 2012 | 2013 | [2] | 2014 | [2] | 2015 Q1-Q3 | [2] | 2015 Q4 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|

Gross Sales
   Pharmaceutical Contribution Sales
   Sales Returns
   Customer Advantages
   Commercial Discounts
   Financial Discounts
Net Sales

Royalty Paid
Cost of Goods Sold
Gross Margin

Operating Costs
Research and Development
   Local Clinical Studies
Sales Force
   Internal sales force
Promotion Expense
   Medical Material advert / brochures
   Samples
   Press / Advertising expenses
   Specialized scientific information
Marketing Management
Other Current Operating Income
   Other Current Operating Inc.
Other Current Operating Expenses
Business Operating Income
[3]
GTN % (Gross Sales to Net Sales %)
GM % (Gross Margin to Net Sales%)
OpEx % of Net Sales
BOI % (Business Operating Income %)



Notes:
[1] Source: SAN-EPI-1148855.xlsx.  Account lines in source document with $0 entries in all years omitted from exhibit.  Source document also include notation: sapnl:sa-brand_pnl_09; Total Value Types with Upstreams; GMEM_NA_US; Total USA Entities by Legal/Mgmt; 16A/16F1/16F2
[2] Columns with precentages not in source document.  Rows with percentages are in source document, values calculated from $ values above.

HIGHLY CONFIDENTIAL

**Exhibit 4.1  Mylan EpiPen® Auto-Injector Sales**

Source: [1]

**Mylan Standard Order + Drop Ship Orders**

[2]

| Gross Sales Doses | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Q1-Q3 | 2015 Oct. 1- Oct. 22 | 2013 - 2015 Oct. 22 | 2015 Oct. 23- Dec. 31 | 2016 Jan. 1- Aug. 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EpiPen® 0.3 mg | | | | | | | | | | | |
| EpiPen® 0.3 mg, 2-Pak w/trainer | | | | | | | | | | | |
| EpiPen® Jr 0.15 mg | | | | | | | | | | | |
| EpiPen®  Jr 0.15 mg, 2-Pak w/trainer | | | | | | | | | | | |

| Gross Sales Amt | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EpiPen® 0.3 mg | | | | | | | | | | | |
| EpiPen® 0.3 mg, 2-Pak w/trainer | | | | | | | | | | | |
| EpiPen® Jr 0.15 mg | | | | | | | | | | | |
| EpiPen®  Jr 0.15 mg, 2-Pak w/trainer | | | | | | | | | | | |



Notes:

[1] Source: MYEP01362498.xlsx.  Sales date taken as "Date Value" in source document.  Returns included in sales and dose data.

[2]

**Exhibit 5.1  Mylan's EpiPen® Auto-Injector Commercial Brand Profit and Loss Statement**
Source: [1]

EpiPen® Auto-Injector Domestic
($ in Millions)

| | | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Q1-Q3 | 2013 to 2015 Q1-Q3 | 4Q'15A | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Third Party Net Sales | | | | | | | | | | | |
| Total Revenue | [a] | | | | | | | | | | |
| COGS @ Standard | | | | | | | | | | | |
| Other Period Costs | | | | | | | | | | | |
| Total COGS | | | | | | | | | | | |
| Gross Profit | | | | | | | | | | | |
| GM % | [2] | | | | | | | | | | |
| Operating Expenses | | | | | | | | | | | |
| Field Force | | | | | | | | | | | |
| Total Selling | | | | | | | | | | | |
| Marketing - Domestic | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | |
| G&A | | | | | | | | | | | |
| Total SG&A | | | | | | | | | | | |
| Adjusted operating Income (ex. R&D) | [b] | | | | | | | | | | |
| Operating Profit Margin | [c] = [b]/[a] | | | | | | | | | | |
| Allowance for R&D Expenses | Exh 9.2 | | | | | | | | | | |
| Operating Profit Margin (incl. R&D allowance) | | | | | | | | | | | |



Notes:
[1] Source: MYEP01362752.xlsx.  Account lines in source document with $0 entries in all years omitted from exhibit.
[2] Gross Margin (GM) percentages calculated from $ values above.

HIGHLY CONFIDENTIAL

**Exhibit 5.2  Mylan's EpiPen® Auto-Injector Net to Gross Sales**

($ in Millions)

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 Q1-Q3 | 2013 to 2015 Q1-Q3 | 2015 Q4 | 2015 | 2016 Jan - Aug |
|---|---|---|---|---|---|---|---|---|---|---|



HIGHLY CONFIDENTIAL

## Exhibit 5.3  Mylan's EpiPen® Auto-Injector Incremental Profit Analysis

See Exhibit 5.1 for Mylan EpiPen® Auto-Injector Commercial Brand P&L Statement

$ in millions

| Year | COGS | SG&A | COGS + SG&A | Net Revenues |
|------|------|------|-------------|--------------|
| 2010 | $122.1 | $54.5 | $176.6 | $280.5 |
| 2011 | $138.9 | $73.9 | $212.8 | $371.0 |
| 2012 | $195.0 | $146.0 | $341.0 | $622.0 |
| 2013 | $202.9 | $167.1 | $370.0 | $742.4 |
| 2014 | $227.5 | $190.9 | $418.4 | $933.2 |
| 2015 | $255.6 | $181.7 | $437.3 | $912.3 |
| 2016 | $254.8 | $160.6 | $415.4 | $1,035.1 |

### Results of Regressing
### COGS + SG&A on Net Sales

| | |
|---|---|
| Intercept | 94.720 |
| Slope | 0.3489 [2] |
| Std Err | 0.0385 |
| R-Squared | 0.9427 |
| Adj R-Squared | 0.9312 |

| | | |
|---|---|---|
| **Incremental costs and expenses:** | 34.9% | |
| **Incremental profit margin:** | 65.1% | |
| **R&D expense %:** | 6.9% | [3] |
| **Incremental profit margin w/R&D:** | 58.2% | |

Notes:
[1] Source: MYEP01362752.xlsx.
[2] ███████████████████████████████████████████████
[3] Average R&D expense as % of Total Revenues for 2013 - 2015.  See Exhibit 9.2

HIGHLY CONFIDENTIAL

**Exhibit 6.1  EAI Doses Sold--Annually 2012 to 2017**

Source: [1]

| | | 2012 | 2012 | 2013 | 2013 | 2014 | 2014 | 2015 | 2015 | 2016 | 2016 | 2017 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mylan | EpiPen® Auto-Injector | 70,294 | 1.1% | 17,793 | 0.2% | 333 | 0.0% | 246 | 0.0% | 107 | 0.0% | 92 | 0.0% |
| Mylan | EpiPen® Auto-Injector 2-Pak | 4,405,461 | 71.3% | 4,771,600 | 65.6% | 5,368,555 | 64.8% | 5,875,738 | 63.9% | 6,120,245 | 69.2% | 2,128,539 | 25.7% |
| Mylan | EpiPen® Jr. Auto-Injector | 25,022 | 0.41% | 4,648 | 0.06% | 141 | 0.00% | 103 | 0.00% | 66 | 0.00% | 985 | 0.01% |
| Mylan | EpiPen® Jr. Auto-Injector 2-Pak | 1,657,375 | 26.8% | 1,836,230 | 25.2% | 1,970,587 | 23.8% | 2,120,211 | 23.1% | 2,151,591 | 24.3% | 837,080 | 10.1% |
| Mylan | EpiPen® Auto-Injector Authorized Generic | | | | | | | | | 3,156 | 0.04% | 3,203,230 | 38.7% |
| Mylan | All EpiPen® Auto-Injector | 6,158,151 | 99.7% | 6,630,271 | 91.2% | 7,339,616 | 88.6% | 7,996,297 | 87.0% | 8,275,165 | 93.6% | 6,169,926 | 74.6% |
| Sanofi/Kaléo | Auvi-Q® | | | 534,399 | 7.35% | 682,523 | 8.24% | 862,033 | 9.38% | 710 | 0.01% | 63,950 | 0.77% |
| Hollister-Stier Labs. | Twinject® | 11,345 | 0.18% | 689 | 0.01% | 197 | 0.00% | 19 | 0.00% | 5 | 0.00% | | |
| Impax | Impax Generic | | | 106,330 | 1.5% | 263,675 | 3.2% | 334,879 | 3.6% | 560,540 | 6.3% | 2,034,722 | 24.6% |
| Amedra Pharm. | Adrenaclick® | 123 | 0.00% | 186 | 0.00% | 326 | 0.00% | 578 | 0.01% | 2,392 | 0.03% | 1,278 | 0.02% |
| Amedra Pharm. | Adrenaclick® Generic | 8,021 | 0.13% | 1,452 | 0.02% | 467 | 0.01% | 271 | 0.00% | 58 | 0.00% | 23 | 0.00% |
| Amedra Pharm. | All Adrenaclick® | 8,144 | 0.13% | 1,638 | 0.02% | 794 | 0.01% | 849 | 0.01% | 2,451 | 0.03% | 1,301 | 0.02% |
| Other | Other EAI Devices | | | | | 8 | 0.00% | 8 | 0.00% | 19 | 0.00% | 147 | 0.00% |
| | All EAI Devices | 6,177,640 | 100.0% | 7,273,327 | 100.0% | 8,286,813 | 100.0% | 9,194,084 | 100.0% | 8,838,890 | 100.0% | 8,270,045 | 100.0% |

Notes:

[1] Source: Xponent (IMS) National Prescription Audit (NPA) data.  From IMS, "Appropriate Use of IMS Information," 11/12/09: NPA data is "National estimates of prescriptions, or the rate at which drugs move out of the pharmacy and into the hands of a consumer via formal dispensed prescriptions."

HIGHLY CONFIDENTIAL

**Exhibit 6.2  Actual EAI Doses Sold--Quarterly 2013 to 2015**

Source: [1]

| | | 2013 Q1 | 2013 Q2 | 2013 Q3 | 2013 Q4 | 2014 Q1 | 2014 Q2 | 2014 Q3 | 2014 Q4 | 2015 Q1 | 2015 Q2 | 2015 Q3 | 2015 Q4 | 2013 | 2014 | 2015 Q1-Q3 | 2015 Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mylan | EpiPen® Auto-Injector | 7,135 | 6,925 | 3,593 | 140 | 95 | 95 | 71 | 72 | 51 | 78 | 72 | 45 | 17,793 | 333 | 201 | 24 |
| Mylan | EpiPen® Auto-Injector 2-Pak | 865,676 | 1,246,973 | 1,670,959 | 987,993 | 905,375 | 1,393,255 | 1,947,476 | 1,122,449 | 1,011,266 | 1,462,788 | 1,878,839 | 1,522,845 | 4,771,600 | 5,368,555 | 4,352,893 | 488,285 |
| Mylan | EpiPen® Jr. Auto-Injector | 1,951 | 1,508 | 1,092 | 96 | 30 | 43 | 49 | 20 | 20 | 20 | 36 | 27 | 4,648 | 141 | 76 | 8 |
| Mylan | EpiPen® Jr. Auto-Injector 2-Pak | 346,399 | 356,500 | 730,893 | 402,438 | 322,800 | 406,366 | 822,952 | 418,469 | 359,856 | 423,689 | 778,141 | 558,524 | 1,836,230 | 1,970,587 | 1,561,687 | 191,244 |
| Mylan | EpiPen® Auto-Injector Authorized Generic | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Mylan | All EpiPen® Auto-Injector | 1,221,161 | 1,611,905 | 2,406,537 | 1,390,667 | 1,228,300 | 1,799,759 | 2,770,548 | 1,541,009 | 1,371,193 | 1,886,575 | 2,657,088 | 2,081,440 | 6,630,271 | 7,339,616 | 5,914,856 | 679,561 |
| Sanofi/Kaléo | Auvi-Q® | 29,959 | 84,359 | 242,739 | 177,342 | 103,400 | 140,677 | 272,029 | 166,418 | 155,539 | 246,287 | 389,327 | 70,881 | 534,399 | 682,523 | 791,152 | 69,999 |
| Hollister-Stier | Twinject® | 226 | 203 | 183 | 77 | 55 | 52 | 57 | 33 | 6 | 2 | 7 | 3 | 689 | 197 | 15 | 0 |
| Impax | Impax Generic | 0 | 5,150 | 62,041 | 39,139 | 43,703 | 75,515 | 90,101 | 54,356 | 58,762 | 89,087 | 98,250 | 88,780 | 106,330 | 263,675 | 246,099 | 31,246 |
| Amedra Pharm. | Adrenaclick® | 19 | 35 | 67 | 66 | 125 | 83 | 100 | 18 | 11 | 21 | 240 | 306 | 186 | 326 | 272 | 124 |
| Amedra Pharm. | Adrenaclick® Generic | 458 | 534 | 360 | 100 | 104 | 129 | 138 | 96 | 161 | 66 | 19 | 25 | 1,452 | 467 | 246 | 16 |
| Amedra Pharm. | All Adrenaclick® | 477 | 569 | 426 | 166 | 229 | 212 | 238 | 114 | 172 | 87 | 259 | 331 | 1,638 | 794 | 518 | 140 |
| Other | Other EAI Devices | 0 | 0 | 0 | 0 | 0 | 4 | 4 | 0 | 2 | 6 | 0 | 0 | 0 | 8 | 8 | 0 |
| | All EAI Devices | 1,251,823 | 1,702,186 | 2,711,927 | 1,607,391 | 1,375,687 | 2,016,219 | 3,132,977 | 1,761,929 | 1,585,675 | 2,222,044 | 3,144,931 | 2,241,435 | 7,273,327 | 8,286,813 | 6,952,649 | 780,945 |
| Mylan | EpiPen® Auto-Injector | 0.57% | 0.41% | 0.13% | 0.01% | 0.01% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.24% | 0.00% | 0.00% | 0.00% |
| Mylan | EpiPen® Auto-Injector 2-Pak | 69.15% | 73.26% | 61.62% | 61.47% | 65.81% | 69.10% | 62.16% | 63.71% | 63.78% | 65.83% | 59.74% | 67.94% | 65.60% | 64.78% | 62.61% | 62.52% |
| Mylan | EpiPen® Jr. Auto-Injector | 0.16% | 0.09% | 0.04% | 0.01% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.06% | 0.00% | 0.00% | 0.00% |
| Mylan | EpiPen® Jr. Auto-Injector 2-Pak | 27.67% | 20.94% | 26.95% | 25.04% | 23.46% | 20.15% | 26.27% | 23.75% | 22.69% | 19.07% | 24.74% | 24.92% | 25.25% | 23.78% | 22.46% | 24.49% |
| Mylan | EpiPen® Auto-Injector Authorized Generic | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Mylan | All EpiPen® Auto-Injector | 97.6% | 94.7% | 88.7% | 86.5% | 89.3% | 89.3% | 88.4% | 87.5% | 86.5% | 84.9% | 84.5% | 92.9% | 91.2% | 88.6% | 85.1% | 87.0% |
| Sanofi/Kaléo | Auvi-Q® | 2.39% | 4.96% | 8.95% | 11.03% | 7.52% | 6.98% | 8.68% | 9.45% | 9.81% | 11.08% | 12.38% | 3.16% | 7.35% | 8.24% | 11.38% | 8.96% |
| Hollister-Stier | Twinject® | 0.02% | 0.01% | 0.01% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.01% | 0.00% | 0.00% | 0.00% |
| Impax | Impax Generic | 0.00% | 0.30% | 2.29% | 2.43% | 3.18% | 3.75% | 2.88% | 3.09% | 3.71% | 4.01% | 3.12% | 3.96% | 1.46% | 3.18% | 3.54% | 4.00% |
| Amedra Pharm. | Adrenaclick® | 0.00% | 0.00% | 0.00% | 0.00% | 0.01% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.01% | 0.01% | 0.00% | 0.00% | 0.00% | 0.02% |
| Amedra Pharm. | Adrenaclick® Generic | 0.04% | 0.03% | 0.01% | 0.01% | 0.01% | 0.01% | 0.00% | 0.01% | 0.01% | 0.00% | 0.00% | 0.00% | 0.02% | 0.01% | 0.00% | 0.00% |
| Amedra Pharm. | All Adrenaclick® | 0.04% | 0.03% | 0.02% | 0.01% | 0.02% | 0.01% | 0.01% | 0.01% | 0.01% | 0.00% | 0.01% | 0.01% | 0.02% | 0.01% | 0.01% | 0.02% |
| Other | Other EAI Devices | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| | All EAI Devices | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

Notes:
[1] Source: Xponent (IMS) National Prescription Audit (NPA) data.  From IMS, "Appropriate Use of IMS Information,"
11/12/09: NPA data is "National estimates of prescriptions, or the rate at which drugs move out of the pharmacy and into the
hands of a consumer via formal dispensed prescriptions."

**Exhibit 6.3  Apportioned EAI Sales**

Source: [1]

% Auvi-Q® sales due to false representation:  [2]  100%

| | | | 2013 Q1 | 2013 Q2 | 2013 Q3 | 2013 Q4 | 2014 Q1 | 2014 Q2 | 2014 Q3 | 2014 Q4 | 2015 Q1 | 2015 Q2 | 2015 Q3 | 2015 Q4 | | 2013 | 2014 | 2015 Q1-Q3 | 2015 Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mylan | All EpiPen® Auto-Injectors | | 99.94% | 99.63% | 97.46% | 97.25% | 96.54% | 95.96% | 96.84% | 96.58% | 95.88% | 95.49% | 96.42% | 95.89% | | 98.39% | 96.52% | 96.00% | 95.59% |
| Sanofi/Kaléo | Auvi-Q® | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | | 0.00% | 0.00% | 0.00% | 0.00% |
| Hollister-Stier | Twinject® | | 0.02% | 0.01% | 0.01% | 0.01% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | | 0.01% | 0.00% | 0.00% | 0.00% |
| Impax | Impax Generic | | 0.00% | 0.32% | 2.51% | 2.74% | 3.43% | 4.03% | 3.15% | 3.41% | 4.11% | 4.51% | 3.57% | 4.09% | | 1.58% | 3.47% | 3.99% | 4.39% |
| Amedra Pharm. | All Adrenaclick® | | 0.04% | 0.04% | 0.02% | 0.01% | 0.02% | 0.01% | 0.01% | 0.01% | 0.01% | 0.00% | 0.01% | 0.02% | | 0.02% | 0.01% | 0.01% | 0.02% |
| Other | Other EAI Devices | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | | 0.00% | 0.00% | 0.00% | 0.00% |
| | All EAI Devices | | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | | 100.00% | 100.00% | 100.00% | 100.00% |
| | Orig. Auvi-Q® % | | 2.39% | 4.96% | 8.95% | 11.03% | 7.52% | 6.98% | 8.68% | 9.45% | 9.81% | 11.08% | 12.38% | 3.16% | | 7.35% | 8.24% | 11.38% | 8.96% |
| | Allocated % | [2] | 2.39% | 4.96% | 8.95% | 11.03% | 7.52% | 6.98% | 8.68% | 9.45% | 9.81% | 11.08% | 12.38% | 3.16% | | 7.35% | 8.24% | 11.38% | 8.96% |
| | Total Remaining % | | 97.6% | 95.0% | 91.0% | 89.0% | 92.5% | 93.0% | 91.3% | 90.6% | 90.2% | 88.9% | 87.6% | 96.8% | | 92.7% | 91.8% | 88.6% | 91.0% |

Notes:

[1] See Exhibit 6.2 for actual sales before apportionment.  Percentages based on doses sold by prescription.

[2] I understand that it is the defendant's burden to deduct costs and apportion damages per Lanham Act § 1117 ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").  For purposes of my calculations in this exhibit I assume all Auvi-Q® sales are due to false representation.

**Exhibit 7.1  Customer Analysis**



| Mylan Epipen® Auto-Injector sales [1] | | | | Sanofi Auvi-Q sales [2] | | |
|---|---|---|---|---|---|---|
| Customer | Doses | % | | Customer | Doses | % |

Notes:
[1] Source: MYEP01362498.xlsx.  Sales date taken as "Date Value" in source document.  Doses calculated from Jan 18, 2013 to October 22, 2015.
[2] Source: SAN-EPI-1201145.xlsx.  Sales date taken as "Billing Doc. Date" in source document.

HIGHLY CONFIDENTIAL

**Exhibit 8.1  Gross and Net Price Analysis**



Notes:
[1] Source: MYEP01362498.xlsx
[2] Source: Mylan EpiPen P&L Statement (MYEP01362752.xlsx)
[3] Source: SAN-EPI-1201145.xlsx
[4] Source: Sanofi's Auvi-Q Profit and Loss Statement (SAN-EPI-1148855.xlsx)
[5] Net sales data avaialble for 2016 on quarterly basis, however, gross sales data for 2016 only covers Jan. 1 to Aug. 31.  So gross and net price analysis for 2016 covers Q1 and Q2.

## Exhibit 9.1.1  Sanofi Income Statement

**Sanofi Income Statement, 2012-2017, EUR**

| For the Fiscal Period Ending<br>Currency: EUR, millions | 12 months<br>12/31/2012[e] | 12 months<br>12/31/2013[e] | 12 months<br>12/31/2014[e] | 12 months<br>12/31/2015[e] | 12 months<br>12/31/2016[e] | 12 months<br>12/31/2017 |
|---|---|---|---|---|---|---|
| Revenue | 34,947.0 | 32,951.0 | 33,456.0 [d] | 34,060.0 [d] | 33,821.0 | 35,055.0 |
| Other Revenue | 1,010.0 | 355.0 | 653.0 [d] | 801.0 [d] | 887.0 | 1,149.0 |
| **Total Revenue** | **35,957.0** | **33,306.0** | **34,109.0** | **34,861.0** | **34,708.0** | **36,204.0** |
| Cost Of Goods Sold | 11,075.0 [a] | 10,983.0 [c] | 11,029.0 | 10,919.0 | 10,702.0 | 11,428.0 |
| **Gross Profit** | **24,882.0** | **22,323.0** | **23,080.0** | **23,942.0** | **24,006.0** | **24,776.0** |
| Selling General & Admin Exp. | 9,129.0 [abc] | 8,762.0 [c] | 9,249.0 | 9,496.0 | 9,600.0 | 10,150.0 |
| R & D Exp. | 4,905.0 [a] | 4,770.0 | 4,824.0 | 5,082.0 | 5,172.0 | 5,472.0 |
| Amort. of Goodwill and Intangibles | 3,291.0 | 2,914.0 | 2,482.0 | 2,137.0 | 1,692.0 | 1,866.0 |
| Other Operating Expense/(Income) | (414.0) [a] | (164.0) [ae] | (266.0) | (130.0) | 18.0 | (81.0) |
| **Other Operating Exp., Total** | **16,911.0** | **16,282.0** | **16,289.0** | **16,585.0** | **16,482.0** | **17,407.0** |
| **Operating Income** | **7,971.0** | **6,041.0** | **6,791.0** | **7,357.0** | **7,524.0** | **7,369.0** |
| Interest Expense | (417.0) | (366.0) | (361.0) | (331.0) | (274.0) | (277.0) |
| Interest and Invest. Income | 68.0 | 49.0 | 68.0 | 57.0 | 56.0 | 56.0 |
| **Net Interest Exp.** | **(349.0)** | **(317.0)** | **(293.0)** | **(274.0)** | **(218.0)** | **(221.0)** |
| Income/(Loss) from Affiliates | 393.0 | 35.0 | (51.0) | (22.0) | 134.0 | 104.0 |
| Currency Exchange Gains (Loss) | (58.0) | (59.0) | (100.0) | (338.0) | (269.0) | (101.0) |
| Other Non-Operating Inc. (Exp.) | (101.0) | (74.0) | (97.0) | (39.0) | (46.0) | 61.0 |
| **EBT Excl. Unusual Items** | **7,856.0** | **5,626.0** | **6,250.0** | **6,684.0** | **7,125.0** | **7,212.0** |
| Restructuring Charges | (1,141.0) | (300.0) | (411.0) | (795.0) | (879.0) | (731.0) |
| Merger & Related Restruct. Charges | (23.0) | (8.0) | | | (3.0) | (166.0) |
| Gain (Loss) On Sale Of Invest. | 7.0 | 42.0 | 83.0 | 46.0 | (246.0) | |
| Gain (Loss) On Sale of Assets | | 165.0 | | - | 40.0 | 90.0 |
| Asset Writedown | (117.0) | (1,387.0) | 26.0 | (767.0) | (192.0) | (397.0) |
| Legal Settlements | (225.0) | | | | 102.0 | |
| Other Unusual Items | (192.0) | 499.0 | (268.0) | 53.0 | (135.0) | (374.0) |
| **EBT Incl. Unusual Items** | **6,165.0** | **4,637.0** | **5,680.0** | **5,221.0** | **5,812.0** | **5,634.0** |
| Income Tax Expense | 1,108.0 [ac] | 763.0 | 1,171.0 | 709.0 | 1,326.0 | 1,722.0 |
| **Earnings from Cont. Ops.** | **5,057.0** | **3,874.0** | **4,509.0** | **4,512.0** | **4,486.0** | **3,912.0** |
| Earnings of Discontinued Ops. | | | | (124.0) | 314.0 | 4,643.0 |
| Extraord. Item & Account. Change | | | | | | |
| **Net Income to Company** | **5,057.0** | **3,874.0** | **4,509.0** | **4,388.0** | **4,800.0** | **8,555.0** |
| Minority Interest in Earnings | (169.0) | (158.0) | (119.0) | (101.0) | (91.0) | (121.0) |
| **Net Income** | **4,888.0** | **3,716.0** | **4,390.0** | **4,287.0** | **4,709.0** | **8,434.0** |

Notes:
Amounts are referenced from the company's original Form 20-F for a given year, unless otherwise noted.
a - Restated on March 7, 2014 due to the application of the revised IAS 19.
b - Restated on March 7, 2014 in connection with interest cost on the net defined-benefit plan liability.
c - Restated due to the application of IFRIC 21 on March 11, 2015.
d - Restated on March 3, 2017 due to a change in accounting presentation where VaxServe sales of non-Sanofi products are  included in Other Revenue from 2016 onwards.
e - Amounts do not account for subsequent reclassifications made due to a merger, acquisition, or other sales of assets or investments.

**Exhibit 9.1.2  Sanofi Income Statement**

Sanofi Income Statement, 2012-2017, USD

| For the Fiscal Period Ending<br>Currency: USD, millions | 12 months<br>12/31/2012[e] | 12 months<br>12/31/2013[e] | 12 months<br>12/31/2014[e] | 12 months<br>12/31/2015[e] | 12 months<br>12/31/2016[e] | 12 months<br>12/31/2017 |
|---|---|---|---|---|---|---|
| Revenue | 46,076.9 | 45,377.7 | 40,496.3 [d] | 36,991.6 [d] | 35,702.5 | 42,092.9 |
| Other Revenue | 1,331.7 | 488.9 | 790.4 [d] | 869.9 [d] | 936.3 | 1,379.7 |
| **Total Revenue** | **47,408.6** | **45,866.6** | **41,286.7** | **37,861.5** | **36,638.8** | **43,472.6** |
| Cost Of Goods Sold | 14,602.1 [a] | 15,125.0 [c] | 13,349.9 | 11,858.8 | 11,297.4 | 13,722.4 |
| **Gross Profit** | **32,806.5** | **30,741.6** | **27,936.8** | **26,002.7** | **25,341.4** | **29,750.2** |
| Selling General & Admin. Exp. | 12,036.4 [abc] | 12,066.4 [c] | 11,195.3 | 10,313.3 | 10,134.1 | 12,187.8 |
| R & D Exp. | 6,467.1 [a] | 6,568.9 | 5,839.1 | 5,519.4 | 5,459.7 | 6,570.6 |
| Amort. of Goodwill and Intangibles | 4,339.1 | 4,012.9 | 3,004.3 | 2,320.9 | 1,786.1 | 2,240.6 |
| Other Operating Expense/(Income) | (545.9) [a] | (225.8) [ac] | (322.0) | (141.2) | 19.0 | (97.3) |
| **Other Operating Exp., Total** | **22,296.7** | **22,422.4** | **19,716.7** | **18,012.4** | **17,398.9** | **20,901.7** |
| **Operating Income** | **10,509.8** | **8,319.2** | **8,220.1** | **7,990.3** | **7,942.5** | **8,848.5** |
| Interest Expense | (549.8) | (504.0) | (437.0) | (359.5) | (289.2) | (332.6) |
| Interest and Invest. Income | 89.7 | 67.5 | 82.3 | 61.9 | 59.1 | 67.2 |
| **Net Interest Exp.** | **(460.1)** | **(436.5)** | **(354.7)** | **(297.6)** | **(230.1)** | **(265.4)** |
| Income/(Loss) from Affiliates | 518.2 | 48.2 | (61.7) | (23.9) | 141.5 | 124.9 |
| Currency Exchange Gains (Loss) | (76.5) | (81.3) | (121.0) | (367.1) | (284.0) | (121.3) |
| Other Non-Operating Inc. (Exp.) | (133.2) | (101.9) | (117.4) | (42.4) | (48.6) | 73.2 |
| **EBT Excl. Unusual Items** | **10,358.2** | **7,747.7** | **7,565.3** | **7,259.3** | **7,521.3** | **8,659.9** |
| Restructuring Charges | (1,504.4) | (413.1) | (497.5) | (863.4) | (927.9) | (877.8) |
| Merger & Related Restruct. Charges | (30.3) | (11.0) | | | (3.2) | (199.3) |
| Gain (Loss) On Sale Of Invest. | 9.2 | 57.8 | 100.5 | 50.0 | (259.7) | |
| Gain (Loss) On Sale of Assets | | 227.2 | | | 42.2 | 108.1 |
| Asset Writedown | (154.3) | (1,910.1) | 31.5 | (833.0) | (202.7) | (476.7) |
| Legal Settlements | (296.7) | | | | 107.7 | |
| Other Unusual Items | (253.1) | 687.2 | (324.4) | 57.6 | (142.5) | (449.1) |
| **EBT Incl. Unusual Items** | **8,128.6** | **6,385.7** | **6,875.4** | **5,670.5** | **6,135.2** | **6,765.1** |
| Income Tax Expense | 1,460.9 [ac] | 1,050.7 | 1,417.4 | 770.0 | 1,399.8 | 2,067.7 |
| **Earnings from Cont. Ops.** | **6,667.7** | **5,335.0** | **5,458.0** | **4,900.5** | **4,735.4** | **4,697.4** |
| Earnings of Discontinued Ops. | | | | (134.7) | 331.5 | 5,575.2 |
| Extraord. Item & Account. Change | | | | | | |
| **Net Income to Company** | **6,667.7** | **5,335.0** | **5,458.0** | **4,765.8** | **5,066.9** | **10,272.6** |
| Minority Interest in Earnings | (222.8) | (217.6) | (144.0) | (109.7) | (96.1) | (145.3) |
| **Net Income** | **6,444.9** | **5,117.4** | **5,314.0** | **4,656.1** | **4,970.8** | **10,127.3** |

Notes:
Amounts are referenced from the company's original Form 20-F for a given year, unless otherwise noted.
a - Restated on March 7, 2014 due to the application of the revised IAS 19.
b - Restated on March 7, 2014 in connection with interest cost on the net defined-benefit plan liability.
c - Restated due to the application of IFRIC 21 on March 11, 2015.
d - Restated on March 3, 2017 due to a change in accounting presentation where VaxServe sales of non-Sanofi products are included in Other Revenue from 2016 onwards.
e - Amounts do not account for subsequent reclassifications made due to a merger, acquisition, or other sales of assets or investments.

## Exhibit 9.2  Mylan Income Statement

### Mylan Income Statement, 2012-2017

| For the Fiscal Period Ending<br>Currency: USD, millions | 12 months<br>12/31/2012 | 12 months<br>12/31/2013[a] | 12 months<br>12/31/2014[a] | 12 months<br>12/31/2015[a] | 12 months<br>12/31/2016[a] | 12 months<br>12/31/2017 |
|---|---|---|---|---|---|---|
| Revenue | 6,750.2 | 6,856.6 | 7,646.5 | 9,362.6 | 10,967.1 | 11,760.0 |
| Other Revenue | 45.9 | 52.5 | 73.1 | 66.7 | 109.8 | 147.7 |
| **Total Revenue** | **6,796.1** | **6,909.1** | **7,719.6** | **9,429.3** | **11,076.9** | **11,907.7** |
| | | | | | | |
| Cost Of Goods Sold | 3,780.5 | 3,801.5 | 4,050.2 | 5,047.1 | 6,064.1 | 6,931.5 |
| **Gross Profit** | **3,015.6** | **3,107.6** | **3,669.4** | **4,382.2** | **5,012.8** | **4,976.2** |
| | | | | | | |
| Selling General & Admin. Exp. | 1,287.8 | 1,301.0 | 1,558.8 | 1,905.0 | 2,241.4 | 2,428.5 |
| R & D Exp. | 388.9 | 456.2 | 563.9 | 651.6 | 697.8 | 657.2 |
| Amort. of Goodwill and Intangibles | | | | | | |
| Other Operating Expense/(Income) | | | | | | |
| **Other Operating Exp., Total** | **1,676.7** | **1,757.2** | **2,122.7** | **2,556.6** | **2,939.2** | **3,085.7** |
| | | | | | | |
| **Operating Income** | **1,338.9** | **1,350.4** | **1,546.7** | **1,825.6** | **2,073.6** | **1,890.5** |
| | | | | | | |
| Interest Expense | (308.7) | (314.2) | (333.2) | (339.4) | (454.8) | (534.6) |
| Interest and Invest. Income | | | | | 12.3 | 6.2 |
| **Net Interest Exp.** | **(308.7)** | **(314.2)** | **(333.2)** | **(339.4)** | **(442.5)** | **(528.4)** |
| | | | | | | |
| Income/(Loss) from Affiliates | (16.8) | (22.4) | (91.4) | (105.1) | (112.8) | (100.2) |
| Currency Exchange Gains (Loss) | 49.6 | 63.8 | 78.0 | 58.0 | 98.6 | 48.1 |
| Other Non-Operating Inc. (Exp.) | (30.1) | (16.7) | (24.1) | 3.4 | 9.7 | 18.0 |
| **EBT Excl. Unusual Items** | **1,032.9** | **1,060.9** | **1,176.0** | **1,442.5** | **1,626.6** | **1,328.0** |
| | | | | | | |
| Restructuring Charges | (182.3) | (196.7) | (119.0) | (112.1) | (149.7) | (188.0) |
| Merger & Related Restruct. Charges | | (37.0) | | (68.6) | (325.9) | (413.0) | (1.9) |
| Gain (Loss) On Sale Of Invest. | | (0.1) | | | | 42.2 |
| Gain (Loss) On Sale of Assets | | | | | | |
| Asset Writedown | (41.6) | (18.0) | (27.7) | (31.3) | (68.3) | (80.8) |
| Legal Settlements | 3.1 | 14.6 | (47.9) | 97.4 | (672.5) | 13.1 |
| Other Unusual Items | (8.0) | (76.4) | 61.7 | (155.2) | (201.4) | (209.6) |
| **EBT Incl. Unusual Items** | **804.1** | **747.3** | **974.5** | **915.4** | **121.7** | **903.0** |
| | | | | | | |
| Income Tax Expense | 161.1 | 120.8 | 41.4 | 67.7 | (358.3) | 207.0 |
| **Earnings from Cont. Ops.** | **643.0** | **626.5** | **933.1** | **847.7** | **480.0** | **696.0** |
| | | | | | | |
| Earnings of Discontinued Ops. | | | | | | |
| Extraord. Item & Account. Change | | | | | | |
| **Net Income to Company** | **643.0** | **626.5** | **933.1** | **847.7** | **480.0** | **696.0** |
| | | | | | | |
| Minority Interest in Earnings | (2.1) | (2.8) | (3.7) | (0.1) | | |
| | | | | | | |
| **Net Income** | **640.9** | **623.7** | **929.4** | **847.6** | **480.0** | **696.0** |

| | | | | | | | Avg. 2013-2015 |
|---|---|---|---|---|---|---|---|
| R&D Expenses as % of Total Revenues | 5.72% | 6.60% | 7.30% | 6.91% | 6.30% | 5.52% | 6.94% |

Notes:
Amounts are referenced from the company's original Form 10-K for a given year, unless otherwise noted.

a - Amounts do not account for subsequent reclassifications made due to a merger, acquisition, or other sales of assets or investments.

HIGHLY CONFIDENTIAL

**Exhibit 10.1 Mylan Capacity Analysis**

| Month | Monthly gross sales by dose | | Combined |
| | Mylan EpiPen | Sanofi Auvi-Q® | |
| | [1] | [2] | |
|---|---|---|---|
| Jul-12 | | | |
| Aug-12 | | | |
| Sep-12 | | | |
| Oct-12 | | | |
| Nov-12 | | | |
| Dec-12 | | | |
| Jan-13 | | | |
| Feb-13 | | | |
| Mar-13 | | | |
| Apr-13 | | | |
| May-13 | | | |
| Jun-13 | | | |
| Jul-13 | | | |
| Aug-13 | | | |
| Sep-13 | | | |
| Oct-13 | | | |
| Nov-13 | | | |
| Dec-13 | | | |
| Jan-14 | | | |
| Feb-14 | | | |
| Mar-14 | | | |
| Apr-14 | | | |
| May-14 | | | |
| Jun-14 | | | |
| Jul-14 | | | |
| Aug-14 | | | |
| Sep-14 | | | |
| Oct-14 | | | |
| Nov-14 | | | |
| Dec-14 | | | |
| Jan-15 | | | |
| Feb-15 | | | |
| Mar-15 | | | |
| Apr-15 | | | |
| May-15 | | | |
| Jun-15 | | | |
| Jul-15 | | | |
| Aug-15 | | | |
| Sep-15 | | | |
| Oct-15 | | | |
| Nov-15 | | | |
| Dec-15 | | | |
| Jan-16 | | | |
| Feb-16 | | | |
| Mar-16 | | | |
| Apr-16 | | | |
| May-16 | | | |
| Jun-16 | | | |
| Jul-16 | | | |
| Aug-16 | | | |
| Avg Mo. Sales 2013 Q1 to 2015 Q3 | | | |

Notes:
[1] Source: MYEP01362498.xlsx.  Sales date taken as "Date Value" in source document.
[2] Source: SAN-EPI-1201145.xlsx. █████████████████████████████████ .