UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No: 2785) |
| This Document Relates To:<br><br>CONSUMER CLASS CASES. | |

**CLASS PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ALLOW
LIVE TRIAL TESTIMONY VIA CONTEMPORANEOUS TRANSMISSION**

## TABLE OF CONTENTS

I.    A ruling on this motion is necessary now to allow Class Plaintiffs to prepare their case-in-chief efficiently. ...................................................................................................1

II.    Rules 43 and 45 allow this Court to subpoena individuals to testify within 100 miles of their home or business. ..........................................................................................3

III.    Class Plaintiffs have shown "compelling circumstances" to justify the remote, contemporaneous testimony of Defendants' current and former employees.......................4

        A.    Prejudice ....................................................................................................................6

        B.    Control Exerted by Defendants.................................................................................8

        C.    Flexibility and Complexity .......................................................................................9

IV.    Defendants do not dispute that the measures suggested would provide adequate safeguards. .........................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Actos (Pioglitazone) Prod. Liab. Litig.*,
  No. 12-CV-00064, 2014 WL 107153 (W.D. La. Jan. 8, 2014) .........................................2, 4, 7

*Aoki v. Gilbert*,
  No. 211CV02797TLNCKD, 2019 WL 1243719 (E.D. Cal. Mar. 18, 2019) ..........................11

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
  No. 3:11-MD-2244-K, 2016 WL 9776572 (N.D. Tex. Sept. 20, 2016) ...................................6

*Eller v. Trans Union, LLC*,
  739 F.3d 467 (10th Cir. 2013) .................................................................................................5

*Guardant Health, Inc. v. Found. Med., Inc.*,
  No. CV 17-1616-LPS-CJB, 2020 WL 6120186 (D. Del. Oct. 16, 2020) ................................7

*Hale v. Vietti*,
  No. 16-4183-DDC-KGG, 2019 WL 2869441 (D. Kan. July 3, 2019) .....................................5

*Hayes v. SkyWest Airlines, Inc.*,
  No. 15-CV-02015-REB-NYW, 2017 WL 11546040 (D. Colo. Sept. 6, 2017).........................5

*Hicks v. Les Schwab Tire Centers of Portland, Inc.*,
  No. 2:17-CV-00118-SB, 2019 WL 2245007 (D. Or. May 24, 2019).......................................5

*Mullins v. Ethicon, Inc.*,
  No. 2:12-CV-02952, 2015 WL 8275744 (S.D. W. Va. Dec. 7, 2015) .....................................7

*Neff v. Desta*,
  No. C18-1716-RSL, 2020 WL 5899008 (W.D. Wash. Apr. 29, 2020) ....................................5

*In re RFC & ResCap Liquidating Trust*,
  No. 013CV3451SRNHB, 2020 WL 1280931 (D. Minn. Mar. 13, 2020)................................7

*In re Vioxx Prod. Liab. Litig.*,
  439 F. Supp. 2d 640 (E.D. La. 2006).....................................................................................5, 8

*In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
  No. MDL 2592, 2017 WL 2311719 (E.D. La. May 26, 2017) ............................................4, 6

**Other Authorities**

9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
  PROCEDURE (3d ed. 1998, Oct. 2020 update) .....................................................................3, 5

Fed. R. Civ. P. 43 ........................................................................................................... 3, 4, 5, 10

Fed. R. Civ. P. 45 ................................................................................................................. 3, 4, 8

Case 2:17-md-02785-DDC-TJJ   Document 2307   Filed 01/22/21   Page 4 of 18

Class Plaintiffs intend to present their case (on behalf of millions of people and third-party payors around the country) in part through evidence from current and former employees of Defendants. These critical witnesses are not within Class Plaintiffs' control, and an order for remote video testimony is necessary to ensure the jury can hear their testimony live. There is no dispute here about the critical arguments:

- Live remote testimony is superior for jury credibility determinations and comprehension compared to canned deposition designations.

- The twelve listed current and former employees are critical witnesses to Class Plaintiffs' claims in this case; in fact, Defendants make no attempt to refute the good cause showing Class Plaintiffs detailed for each witness.

- The jury will be considering testimony about Defendants' conduct across the United States in this MDL trial, and its determination will affect millions of EpiPen purchasers throughout the United States.

- The ever-changing and unprecedented nature of the coronavirus pandemic requires all parties, witnesses, and the Court to work with more flexibility. At the same time it has caused remote video technology and familiarity with the technology to improve dramatically (rendering prior hesitations about remote testimony outdated).

- Adequate safeguards can be placed on remote testimony including through orders like Class Plaintiffs' suggested protocols.

It is vital to resolve this Motion now to allow focused and narrower pretrial submissions from Class Plaintiffs. And as set out in the text and commentary to the Federal Rules, this Court has the discretion to allow remote testimony and compel attendance through trial subpoenas. Because Defendants cannot dispute the substance of the Motion, they fabricate procedural hurdles. Their objections should be overruled, and the Motion should be granted.

## ARGUMENT

### I. A ruling on this motion is necessary now to allow Class Plaintiffs to prepare their case-in-chief efficiently.

Because Defendants cannot counter the importance of these named witnesses or the superiority of live remote testimony over stale depositions (and have waived their ability to refute

the individualized showings in the Motion), they instead seek to delay the Court's consideration of this Motion by labeling it premature. But the Pretrial Order answers this point directly: the Court has requested that Class Plaintiffs' witness list specify which witnesses Class Plaintiffs will produce "by live video feed." Doc. 2169, Pretrial Order 60. Presenting such testimony requires this Court's permission through a showing of compelling circumstances and appropriate safeguards, and this Motion seeks that permission before witness list disclosures are made. It is critical to have a ruling before the deadline for witness lists and deposition designations because how Class Plaintiffs decide to present their case at trial will depend on whether and in what manner they can secure the testimony of key witnesses.

Defendants suggest that Class Plaintiffs cannot seek permission for remote testimony for those witnesses who Class Plaintiffs will present in their case-in-chief until after Defendants submit their own witness lists. But conditioning relief to Class Plaintiffs based on who Defendants may list as live, in-person witnesses only encourages the gamesmanship discussed in Class Plaintiffs' Motion. Nor does Defendants' suggestion (that Class Plaintiffs simply wait until 90-days before trial to file individual motions) solve the need for clarity up-front on what type of remote testimony is possible and from whom. Finally, as the Court is well aware, the parties will already be submitting extensive pretrial filings for rulings in the months before trial. This dispute need not become part of that scramble or add to the Court's docket load given that Class Plaintiffs have already taken the time to provide the Court with the necessary information on the witnesses and compelling circumstances here, and Defendants raise no argument on the substance. Indeed, resolving this dispute now will not only allow Class Plaintiffs the ability to identify definitively how each witness will testify, it will promote efficiency by minimizing and streamlining deposition designations required for trial. *See In re Actos (Pioglitazone) Prod. Liab. Litig.*, No. 12-CV-00064, 2014 WL 107153, at *7 (W.D. La. Jan. 8, 2014) (finding "particularly at this stage of the

proceedings, allowing contemporaneous live transmission likely would be substantially less expensive, and faster, than use of video depositions when one considers not only the time and expense required to take the video depositions, but also the attorney time and expense inherent in identifying deposition excerpts, making objections to those excerpts, and the time required to make the necessary rulings by the Court on those objections, as well as the time and expense of editing by a videographer after the Rulings are made").

**II.     Rules 43 and 45 allow this Court to subpoena individuals to testify within 100 miles of their home or business.**

Defendants appear to contend that subpoenas for remote testimony can only compel attendance to places within 100 miles of the physical location of the trial—a contention expressly contradicted by the Rules commentary. While Defendants claim that the 2013 amendments to the Federal Rules of Civil Procedure "clarified" the scope of Rule 43, the rule change at that time clarified only ***when*** a Court could compel in-person testimony of a party or party officer. *See* Fed. R. Civ. P. 45 advisory committee's note, 2013 amendment ("These changes resolve a conflict that arose after the 1991 amendment about a court's authority to compel a party or party officer to travel long distances to testify at trial; such testimony may now be required only as specified in new Rule 45(c)."). The commentary on the rule change decisively rules out Defendants' interpretation of the 2013 changes. It explains: "When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from ***any place*** described in Rule 45(c)(1)." Fed. R. Civ. P. 45 advisory committee's note, 2013 amendment (emphasis added); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2461 Subpoena for Hearing or Trial (3d ed. 1998, Oct. 2020 update) (same). And Rule 45(c)(1) allows a subpoena to command a person to appear anywhere within 100 miles of where the person resides, is employed, or regularly transactions business in person.

Courts have routinely confirmed that Rules 43 and 45 must be read together—and that a subpoena under Rule 45 can be used to secure remote contemporaneously transmitted testimony if the location for the video testimony is within 100 miles of the witness's location. *See In re Actos*, 2014 WL 107153, at *8-10 (concluding that "the two Rules embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court" and the "subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance"); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 2311719, at *4 (E.D. La. May 26, 2017) (noting that a subpoena for contemporaneous video testimony falls within Rule 45(a) when the witness is asked to testify at a location within 100 miles of his home or place of business).[1] This reading is also logical. As the commentary makes clear, the committee contemplated using subpoenas to ensure Rule 43 remote testimony. But under Defendants' (flawed) reading, a party could only use subpoenas for remote testimony for individuals who are already subject to subpoenas for live, in-person testimony.

### III. Class Plaintiffs have shown "compelling circumstances" to justify the remote, contemporaneous testimony of Defendants' current and former employees.

Properly reading and applying Rules 43 and 45, this Motion is easily granted. Class Plaintiffs detailed, in over 15 pages, the prejudice that would result to them if the jury cannot hear live testimony from these key witnesses to their case and the unique circumstances of not only this massive class action trial but also the uncertainty given the coronavirus pandemic. Unlike the cases Defendants cite, it is not as if Class Plaintiffs are simply seeking the most convenient means to

---

[1] Indeed, as noted by Judge Fallon of the Eastern District of Louisiana at the recent Duke MDL class action conference, remote video testimony is now commonplace in federal MDLs.

testify for themselves or witnesses within their control.[2] Instead, these are hostile witnesses who are crucial to Class Plaintiffs' case, and the only way the jury will hear live testimony from these witnesses on the subjects critical to the elements of the class claims is through trial subpoenas and remote video testimony.[3]

Judge Fallon—one of the deans of the federal MDL process—provided factors to consider in weighing whether "compelling circumstances" exist in exactly this type of situation: an MDL trial where the plaintiffs seek live remote testimony of defendants' critical current or former employee. *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006). As Wright & Miller have observed, the factors enumerated by Judge Fallon "offer[] an interesting and helpful approach to Rule 43(a) by enumerating a series of issues that it would consider when deciding whether compelling circumstances existed to allow for contemporaneous transmission." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2414 Preference for Oral Testimony (3d ed. 1998, Oct. 2020 update). These factors—especially

---

[2] *See, e.g.*, *Hale v. Vietti*, No. 16-4183-DDC-KGG, 2019 WL 2869441, at *1 (D. Kan. July 3, 2019) (plaintiff requesting remote testimony for three or fewer of his witnesses for financial reasons); *Neff v. Desta*, No. C18-1716-RSL, 2020 WL 5899008, at *3 (W.D. Wash. Apr. 29, 2020) (plaintiff requesting remote testimony for his out-of-state lay witnesses and health care professionals reduce expense and travel time and to avoid scheduling issues); *Eller v. Trans Union, LLC*, 739 F.3d 467, 477 (10th Cir. 2013) (plaintiff requesting remote testimony of his former attorneys due to distance and scheduling conflicts); *Hayes v. SkyWest Airlines, Inc.*, No. 15-CV-02015-REB-NYW, 2017 WL 11546040, at *1 (D. Colo. Sept. 6, 2017) (defendant seeking remote testimony of a former employee who lived far from trial); *Hicks v. Les Schwab Tire Centers of Portland, Inc.*, No. 2:17-CV-00118-SB, 2019 WL 2245007 (D. Or. May 24, 2019) (plaintiff requesting remote testimony of her treating physician due to distance and scheduling).

[3] Another reason why Defendants' suggestion that this dispute wait until they commit to who they will bring live to trial is that their witness list only covers those individuals that may testify during their case. Defendants may narrow that testimony depending on what Class Plaintiffs can elicit in their case—or not even present any witnesses if they believe a directed verdict is appropriate. And for those witnesses whom they do call live, Class Plaintiffs will be restricted to cross examination within the scope of the direct examination.

considering the continued uncertainty of the coronavirus pandemic—weigh strongly in favor of Class Plaintiffs' proposed relief.

### A. Prejudice

Defendants assert that Class Plaintiffs have made no showing of prejudice from a denial of remote testimony from Defendants' current and former employees. Not true. Class Plaintiffs set out detailed descriptions, one by one, about how twelve current and former employees (Kopanja, Kashtan, Handel, Muma, Coury, Foster, Graham, Graybill, Jones, Korczynski, Rocheleau, and Willing) are crucial to Class Plaintiffs' case-in-chief both through expected testimony and the introduction of exhibits. Defendants make no attempt to refute the importance of these witnesses to the jury's task or to engage in any meaningful analysis.

Indeed, Defendants' only comments on these witnesses concern contradictory evidence about two of them—Kopanja and Coury. This conflicting evidence, however, demonstrates the importance of providing the jury with the best possible means for judging credibility. For example, in one part of her deposition, Ms. Kopanja testified that she did not recall a meeting with Pfizer; but later, when confronted with a document memorializing that meeting, she admitted that the meeting likely occurred but that she just didn't remember it. Kopanja Dep. 103:11-17 (Ex. A). One of the important questions for the jury will be the involvement of Pfizer. And they will be asked to do so by evaluating the credibility of current, self-serving testimony in contrast to contemporaneously authored documents and without a present motive to avoid liability.

Defendants also do not deny the repeated findings of courts that recent advances in video conferencing technology make remote testimony far superior to deposition designations in providing cues to make those important reliability and credibility determinations (as well as allowing more focused questions related to what the jury has heard from live witnesses). *See In re Xarelto*, 2017 WL 2311719; *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab.*

*Litig.*, No. 3:11-MD-2244-K, 2016 WL 9776572, at *2 (N.D. Tex. Sept. 20, 2016); *In re Actos*, 2014 WL 107153, at *7; *In re RFC & ResCap Liquidating Trust*, No. 013CV3451SRNHB, 2020 WL 1280931, at *1-3 (D. Minn. Mar. 13, 2020); *Mullins v. Ethicon, Inc.*, No. 2:12-CV-02952, 2015 WL 8275744, at *2 (S.D. W. Va. Dec. 7, 2015). This case law, from several years ago, was even before the recent advances in Zoom and other technologies and the rapid adoption of remote communication technology during the coronavirus pandemic.

Recent trial experiences by federal courts with both hybrid and fully remote trials have confirmed the utility of remote trial testimony by video. As one article on the experience of Judge Pechman in the Western District of Washington relayed:

> Maskless within the safe confines of Zoom, all witnesses appeared on screen in full speaker-view. In fact, no one wore a mask during the proceeding. Bloom found this to be a clear benefit over "hybrid" pandemic trials where only jury selection is remote, but the rest of trial is conducted in-person in large rooms with all participants masked and socially distanced. In this Zoom trial, the witnesses' cadence, tone, inflection, demeanor, delivery and facial expression were apparent to all. Testimony was dynamic, unlike pre-recorded video deposition testimony. Objections and rulings were contemporaneous and as functional as in-person trials. In the few instances when witness testimony appeared far-fetched or insincere, the verdict suggests jurors had no trouble weighing credibility and bias. . . . When Judge Pechman debriefed the jurors, she found them enthusiastic about their service on a remote civil jury trial. They found it easy to follow the testimony because they could clearly see, hear and evaluate each witness.

Beth Bloom, Patricia Anderson & Becky Roe, *Trial by Zoom: A Closer Look at the Retooled Civil Jury Trial in the Time of Pandemic*, KING CO. BAR BULLETIN (Jan. 1, 2021) (Ex. B); *see also Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 6120186, at *3 (D. Del. Oct. 16, 2020) (noting the Court's experience with remote "video" bench trials, determining that "the examinations provided the evidence necessary to assess credibility," and concluding that "the jury will be equally (if not better) able to do the same at this trial").

The only inconvenience Defendants posit is that these witnesses would have to provide testimony. Defendants do not show that appearing at a local federal courthouse (or at another agreed upon location) would present any inconvenience or undue expense to these witnesses. Indeed, the geographic limits set out in Rule 45 were designed for that very purpose: to prevent any undue expense and inconvenience to a witness arising from giving testimony. Being required to provide testimony in a case in which these current and former employees were key witnesses to the events in question does not amount to prejudice—it is instead critical to the jury's fact-finding mission and the path to justice.

This factor, too, weighs in favor of allowing remote trial testimony given "the lack of any true prejudice to the defendant." *Vioxx*, 439 F. Supp. 2d at 643.

### B.     Control Exerted by Defendants

In setting forth his factors, Judge Fallon distinguished between situations in which the plaintiff seeks to avoid in-person testimony (for herself or witnesses controlled by plaintiff) and cases in which the plaintiffs seek live testimony from witnesses controlled by Defendants. For obvious reasons, this factor weighs more strongly for the requesting party if the opposing party controls the witnesses. *Vioxx*, 439 F. Supp. 2d at 643 (noting that because the employee "possesses information highly-relevant to the plaintiff[s'] claims," the defendants likely prefer "to eliminate any unpredictability and limit [] trial testimony to [] 'canned' deposition testimony-a purely tactical reason").

Defendants do not deny that they have control of current employees. As to former employees, Defendants again try to suggest that Class Plaintiffs have not tried to make a showing of control. But Defendants concede the factual showing detailed in the Motion: for the six targeted former employees, Class Plaintiffs documented how Mylan exercised control of those witnesses during the deposition process through preparation, using Mylan attorneys to represent the witness

or paying for the witnesses' personal attorneys, and in one case even paying the witness an hourly rate for time spent testifying (giving an obvious reason for Defendants to prevent having that witness cross-examined on motive and bias at trial). Doc. 2249, at 7-12. As a result of their concessions, Defendants have waived any right to dispute these many indicia of control.

### C.     Flexibility and Complexity

Applying the final factors shows that this case is no ordinary civil jury trial for two distinct reasons: (1) it is an MDL trial for a certified class of millions of consumers and third-party payors across the nation, and (2) coronavirus precautions and uncertainty are unlikely to be eliminated even as this District (and others) resume civil jury trials. On the first point, Defendants do everything in their power to paint this case as an ordinary civil case and ask this Court to ignore case law from the mass-tort MDL experience. But this is an MDL of national importance that is, if anything, more complex and vital than mass tort MDLs, which generally try individual bellwether personal injury cases. The mass tort MDL case law applies here with even more force. While those product liability cases may have affected thousands, the cases consolidated here through the MDL now affect millions because of class certification. And unlike in the bellwether context, individual class members will not have another shot at their own trial elsewhere. This trial is it—it alone will resolve all of their claims.

On top of all this, the RICO schemes and antitrust violations did not occur only in one location where a central trial could have gathered all witnesses. The twelve identified employees were deposed in seven states (and only one was in Defendants' suggested New Jersey location), to say nothing of the named and unnamed plaintiffs across the country. The case is also complex as to the legal and factual claims. Without time limits, the parties suggested that this case would have witness testimony to fill four to six weeks. Providing more engaging and focused remote testimony would help relieve the burden on the jurors, parties, and the Court, especially as

compared to canned deposition designations requiring prior written objections, counters, and Court rulings. That deposition testimony also would not include all the facts in the case, including the recent development of the merger involving various Mylan entities and Pfizer subsidiary, Upjohn, culminating in the creation of Viatris. By using Rule 43 to allow remote trial testimony, the jury will be able to learn and evaluate the importance of these facts—and the complete picture.

As to the coronavirus, some flexibility will likely be needed as federal courts re-open. *See* Fed. R. Civ. P. 1 (the rules "should be … employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action"). That does not mean a trial cannot or should not happen during the timeframe selected by the Court (late summer or fall), but rather that this Court can and should use the tools available in its wide discretion to ensure meaningful and timely access to justice (and also the best possible methods of trial testimony for the jury given the circumstances). *See*, *e.g.*, Doc. 143, Order regarding Trial Date, *Kieffaber v. Ethicon, Inc.*, No. 6:20-cv-01177-KHV-JPO (D. Kan. Jan. 6, 2021) (setting an April 19, 2021 trial date and providing for the possibility that the trial will take place virtually over Zoom (in whole or in part)). As outlined in the Motion, multiple federal courts have used Rule 43 to permit remote video testimony through different stages of the pandemic and re-openings to ensure cases move to trial and avoid backlogs. Doc. 2249, at 17-19. Indeed, these courts concluded that the need to conduct and manage jury trials during the pandemic (along with timely access to justice without perpetual rescheduling of trials) on its own satisfies the compelling circumstances standard required under the language of Rule 43. And the combination in this case of (1) a nationwide class action MDL (2) during the coronavirus pandemic creates a natural limiting principle that will prevent every case filed in D. Kan. from claiming to clear the Rule 43 bar. Ultimately, it is better to have a jury trial with remote video testimony than to have no trial at all—which is the result when the trial must be continually delayed and rescheduled.

And, as outlined above, remote video testimony has proven highly effective in providing juries with clear views of witnesses' testimony and demeanor. With an order on the viability of remote testimony, all parties can work ahead of time to provide for contingencies if one of Defendants' expected in-person, live witnesses is no longer available because of the uncertainty of the pandemic and public health measures.

### IV. Defendants do not dispute that the measures suggested would provide adequate safeguards.

Finally, Defendants do not dispute that adequate safeguards can be provided for contemporaneous remote testimony. "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Aoki v. Gilbert*, No. 211CV02797TLNCKD, 2019 WL 1243719, at *1 (E.D. Cal. Mar. 18, 2019) (internal quotation omitted). Class Plaintiffs supplied examples of orders from other cases that have been used to ensure the appropriate safeguards exist to ensure fairness to all parties. The coronavirus pandemic has also increased the parties' (and likely also the Court's) familiarity with and ability to manage remote testimony, including the use of exhibits, ensuring no outside coaching or influence, and mechanisms for easy viewing by observers—yet another argument Defendants concede.

### CONCLUSION

For these reasons and those set forth in the Motion, Class Plaintiffs request that the Court grant their motion to allow live trial testimony via contemporaneous transmission from locations outside Kansas for current and former employees whom Defendants will not voluntarily produce in Kansas City, Kansas. Class Plaintiffs seek all other relief to which they may be entitled.

DATED:  January 22, 2021               Respectfully submitted,

/s/ *Rex A. Sharp*_____
SHARP LAW LLP
Rex A. Sharp
Ryan C. Hudson
5301 West 75th Street
Prairie Village, KS  66208
Telephone:  913/901-0505
913/901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com


ROBBINS GELLER RUDMAN
   & DOWD LLP
Paul Geller
Stuart Davidson
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

KELLER ROHRBACK L.L.P.
LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:  206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

BURNS CHAREST LLP
WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

PRITZKER LEVINE LLP
ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450
Emeryville, CA  94608
Telephone:  415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

Co-Lead Counsel and Liaison Counsel for Class Plaintiffs

THE LANIER LAW FIRM
W. MARK LANIER
RACHEL LANIER
CRISTINA DELISE
6810 FM 1960 West
Houston, TX  77069
Telephone:  713/659-5200
Mark.Lanier@LanierLawFirm.com
Rachel.Lanier@LanierLawFirm.com
Cristina.Delise@LanierLawFirm.com

Special Trial Counsel for Class Plaintiffs

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of this Reply in Support of Class Plaintiffs' Motion to Allow Live Trial Testimony via Contemporaneous Transmission for Witnesses that Defendants Will Not Voluntarily Produce in Person or Who Cannot Otherwise be Compelled to Attend Trial was served on the 22nd day of January, 2021, by filing the document electronically with the Court, which delivered a copy to all counsel of record.

/s/ *Rex A. Sharp*

Rex A. Sharp