UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No: 2785) |
| This Document Relates To:<br><br>     CONSUMER CLASS CASES. | |

**CLASS PLAINTIFFS' MOTION TO ALLOW LIVE TRIAL TESTIMONY VIA CONTEMPORANEOUS TRANSMISSION FOR HEATHER BRESCH AND LLOYD SANDERS, AND FOR TRIAL DEPOSITIONS OF ROBERT COURY, BRUCE FOSTER, RON GRAYBILL, AND JILL ONDOS;**

**REQUEST FOR EXPEDITED BRIEFING**

## <u>TABLE OF CONTENTS</u>

I.   There are "compelling circumstances" to justify the remote, contemporaneous testimony of Defendant Heather Bresch and Mylan's Chief Operating Officer Lloyd Sanders. ...................................................................................................2

   A.   Legal Standard .....................................................................................................3

   B.   Mylan may seek a tactical advantage by choosing to not have Ms. Bresch or Mr. Sanders appear live in Class Plaintiffs' case-in-chief..................................4

        1.   Ms. Bresch ................................................................................................6

        2.   Mr. Sanders ..............................................................................................7

   C.   Remote video testimony is necessary here given the complexity of the case and the flexibility required to manage it. ........................................................7

   D.   No true prejudice to Ms. Bresch or Mylan. .........................................................12

   E.   Contemporaneous transmission is supported here by "good cause in compelling circumstances and with appropriate safeguards.".............................13

   F.   Defendants Mylan and Ms. Bresch do not dispute that the measures suggested would provide adequate safeguards. ....................................................13

II.  There is good cause to permit trial depositions of six critical witnesses: Bresch, Sanders, Robert Coury, Bruce Foster, Ron Graybill, and Jill Ondos. ..............................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos (Pioglitazone) Prod. Liab. Litig.*,
  No. 12-CV-00064, 2014 WL 107153 (W.D. La. Jan. 8, 2014) ....................................4, 8, 10

*Aoki v. Gilbert*,
  No. 211CV02797TLNCKD, 2019 WL 1243719 (E.D. Cal. Mar. 18, 2019) .........................13

*Arnstein v. Porter*,
  154 F.2d 464 (2d Cir. 1946)......................................................................................................9

*Benedict v. United States*,
  No. 15-CV-10138, 2016 WL 6138599 (E.D. Mich. Oct. 21, 2016) .......................................16

*Charles v. Wade*,
  665 F.2d 661 (5th Cir. 1982) ..................................................................................................16

*Clay v. Bd. of Trustees of Neosho Cty. Cmty. Coll.*,
  No. CIV.A. 94-2282-EEO, 1995 WL 646817 (D. Kan. Sept. 26, 1995)................................15

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
  No. 3:11-MD-2244-K, 2016 WL 9776572 (N.D. Tex. Sept. 20, 2016) .........................8, 9, 12

*E.E.O.C. v. Beauty Enterprises, Inc.*,
  No. CIV. 3:01CV378 AHN, 2008 WL 3892203 (D. Conn. July 9, 2008) .............................15

*Eller v. Trans Union, LLC*,
  739 F.3d 467 (10th Cir. 2013) ..................................................................................................5

*Estenfelder v. Gates Corp.*,
  199 F.R.D. 351 (D. Colo. 2001) ..............................................................................................18

*Gil-Leyva v. Leslie*,
  780 F. App'x 580 (10th Cir. 2019) ...........................................................................................5

*Hale v. Vietti*,
  No. 16-4183-DDC-KGG, 2019 WL 2869441 (D. Kan. July 3, 2019) ......................................5

*Health, Inc. v. Found. Med., Inc.*,
  No. CV 17-1616-LPS-CJB, 2020 WL 6120186 (D. Del. Oct. 16, 2020)................................11

*Manley v. Ambase, Inc.*,
  337 F.3d 237 (2d Cir. 2003)....................................................................................................15

- ii -

*Mullins v. Ethicon, Inc.*,
    No. 2:12-CV-02952, 2015 WL 8275744 (S.D.W. Va. Dec. 7, 2015) ........................6, 7, 8, 10

*Rayco Mfg., Inc. v. Deutz Corp.*,
    No. 5:08 CV 00074, 2010 WL 183866 (N.D. Ohio Jan. 14, 2010) .........................................14

*In re RFC & ResCap Liquidating Trust*,
    No. 013CV3451SRNHB, 2020 WL 1280931 (D. Minn. Mar. 13, 2020)...............................10

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
    No. 01 CIV. 1290 (CSH), 2005 WL 578917 (S.D.N.Y. Mar. 11, 2005)................................15

*In re Vioxx Prod. Liab. Litig.*,
    439 F. Supp. 2d 640 (E.D. La. 2006)...............................................2, 3, 5, 6, 7, 8, 9, 10, 12, 13

*In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
    No. MDL 2592, 2017 WL 2311719 (E.D. La. May 26, 2017)........................................4, 8, 9

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure (3d ed. 1998, Oct. 2020 update) ........................................................................3, 4

Fed. R. Civ. P. 30(a)(2)(A) ................................................................................................14, 15

Fed. R. Civ. P. 43.......................................................................................3, 4, 5, 8, 9, 13, 14

Fed. R. Civ. P. 45.......................................................................................................3, 4, 12, 14

Manual for Complex Litig. (4th ed. 2020) .............................................................................8

In an important multidistrict litigation ("MDL") with a certified class of millions of defrauded class members across the United States, Defendants should not be able to seek tactical advantage by refusing to attend trial or bring their current or former employees for live testimony during Class Plaintiffs' case-in-chief. Class Plaintiffs intend to present their case (on behalf of millions of people and third-party payors around the country) in part through evidence from Mylan's current and former employees. Class Plaintiffs seek live testimony via contemporaneous transmission for two critical witnesses (Heather Bresch and Lloyd Sanders) and trial depositions for four additional instrumental witnesses (Robert Coury, Bruce Foster, Ron Graybill, and Jill Ondos) to ensure the jury has the most useful, relevant, and streamlined testimony in Class Plaintiffs' case-in-chief.

The most critical witnesses are Defendant Heather Bresch and Lloyd Sanders. Ms. Bresch, a named defendant, is obviously not within Class Plaintiffs' control, and an order for remote video testimony is necessary to ensure the jury can hear her testimony live in Class Plaintiffs' case-in-chief. Mr. Sanders remains under Mylan's control as high-level employees. Authorizing such testimony is justified under Federal Rules of Civil Procedure 43 and 45:

- Live remote testimony is superior for jury credibility determinations and comprehension compared to canned deposition designations.

- Ms. Bresch and Mr. Sanders were intimately involved in the EpiPen Pricing Schemes and are critical witnesses to Class Plaintiffs' claims in this case.

- The jury will be considering testimony about Mylan's conduct across the United States in this MDL trial, and its determination will affect millions of EpiPen purchasers throughout the United States.

- The ever-changing and unprecedented nature of the coronavirus pandemic requires all parties, witnesses, and the Court to work with more flexibility. At the same time, it has caused remote video technology and familiarity with the technology to improve dramatically (rendering prior hesitations about remote testimony outdated).

- Adequate safeguards can be placed on remote testimony including through orders like Class Plaintiffs' suggested protocols.

And as set out in the text and commentary to the Federal Rules, this Court has the discretion to allow remote testimony and compel attendance at remote locations through trial subpoenas.

As this Court recognized in permitting trial depositions as a means of presenting testimony, trial depositions are a common manner for presenting trial testimony (and are distinct under federal common law from discovery depositions). For the four witnesses identified, trial depositions will ensure relevant testimony from these critical witnesses who are outside the subpoena power of the Court during Class Plaintiffs' case-in-chief. If the Court declines to allow contemporaneously transmitted testimony for Bresch or Sanders, Class Plaintiffs also alternatively request trial depositions of these witnesses.[1]

## ARGUMENT

**I.     There are "compelling circumstances" to justify the remote, contemporaneous testimony of Defendant Heather Bresch and Mylan's Chief Operating Officer Lloyd Sanders.**

The factors outlined by Judge Fallon in *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006), which are discussed in turn below, combine to support an order permitting contemporaneous transmission. As a named defendant, Ms. Bresch is a hostile witness and is crucial to Class Plaintiffs' case. Mr. Sanders was instrumental in the decision-making around the EpiPen Pricing Scheme for Mylan. The only way to guarantee the jury will hear live testimony from these two on the subjects critical to the elements of the class claims in Class Plaintiffs' case-in-chief is with a trial subpoena and remote video testimony.[2]

---

[1]     In the attached Exhibit A, Class Plaintiffs provide the Court with a chart also submitted as a proposed order to quickly identify the granted relief by witness.

[2] Mylan's suggestion that it expects Ms. Bresch to appear live in its case-in-chief does not moot this motion. *See* Dkt. No. 2354. As an initial matter, as to Mr. Sanders, Mylan only suggests that it may bring him live. Second, Mylan may narrow that testimony depending on what Class Plaintiffs can elicit in their case—or decide not to bring these witnesses. Dkt. No. 2354 ("reserv[ing] all rights to . . . withdraw[] . . . witnesses"). And for those witnesses whom they do call live, Class Plaintiffs will be restricted to cross examination within the scope of the direct

A.      **Legal Standard**

Under the Federal Rules of Civil Procedure, this Court has the authority to issue trial subpoenas to individuals anywhere in the United States and have them testify at trial by contemporaneous transmission. Fed. R. Civ. P. 43 & 45. Contemporaneous transmission of testimony in open court is available when a party shows it is "for good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a). Judge Fallon—one of the deans of the federal MDL process—provided factors to consider in weighing whether "compelling circumstances" exist in exactly this type of situation: an MDL trial where the plaintiffs seek live remote testimony of defendants' critical current or former employee. *Vioxx*, 439 F. Supp. 2d at 643. Federal courts consider:

- the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily;

- the control exerted over the witness by the defendant;

- the complex, multi-party, multi-state nature of the litigation;

- the flexibility needed to manage a complex multi-district litigation; and,

- the lack of any true prejudice to the defendant.

As Wright & Miller have observed, the factors enumerated by Judge Fallon "offer[] an interesting and helpful approach to Rule 43(a) by enumerating a series of issues that it would consider when deciding whether compelling circumstances existed to allow for contemporaneous transmission." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2414 Preference for Oral Testimony (3d ed. 1998, Oct. 2020 update).

"When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from ***any place*** described in Rule 45(c)(1)." Fed. R. Civ. P. 45

---

examination. Finally, evidence only elicited in Mylan's case will not be available to meet Class Plaintiff's burden on a motion for directed verdict.

advisory committee's note, 2013 amendment (emphasis added); *see also* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2461 Subpoena for Hearing or Trial (3d ed. 1998, Oct. 2020 update) (same). And Rule 45(c)(1) allows a subpoena to command a person to appear anywhere within 100 miles of where the person resides, is employed, or regularly transactions business in person.

Courts have routinely confirmed that Rules 43 and 45 must be read together—and that a subpoena under Rule 45 can be used to secure remote contemporaneously transmitted testimony if the location for the video testimony is within 100 miles of the witness's location. *See In re Actos (Pioglitazone) Prod. Liab. Litig.*, No. 12-CV-00064, 2014 WL 107153, at *8-10 (W.D. La. Jan. 8, 2014) (concluding that "the two Rules embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court" and the "subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance"); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 2311719, at *4 (E.D. La. May 26, 2017) (noting that a subpoena for contemporaneous video testimony falls within Rule 45(a) when the witness is asked to testify at a location within 100 miles of his home or place of business).[3] This reading is also logical. As the commentary sets out, the committee contemplated using subpoenas to ensure Rule 43 remote testimony.

### B.    Mylan may seek a tactical advantage by choosing to not have Ms. Bresch or Mr. Sanders appear live in Class Plaintiffs' case-in-chief.

To assess compelling circumstances, the court looks to the "tactical advantage" that defendants might seek to gain by refusing to produce a witness, and "the control exerted over the

---

[3] Indeed, as noted by Judge Fallon of the Eastern District of Louisiana at the recent Duke MDL class action conference, remote video testimony is now commonplace in federal MDLs.

witness by the defendant." *Vioxx*, 439 F. Supp. 2d at 643. Both factors favor the requested order. The parties' summary judgment briefing demonstrates the tactical advantage Mylan may seek to gain by refusing to have Ms. Bresch or Mr. Sanders testify live at trial in Class Plaintiffs' case-in-chief.

Defendants Mylan and Bresch also are in complete control of whether the jury hears from Ms. Bresch and Mr. Sanders live during Class Plaintiffs' case-in-chief. In setting forth his factors, Judge Fallon distinguished between situations in which the plaintiff seeks to avoid in-person testimony (for herself or witnesses under her control) and cases in which the plaintiffs seek live testimony from witnesses controlled by the other party. For obvious reasons, this factor weighs more strongly for the requesting party if the opposing party controls the witnesses. *Vioxx*, 439 F. Supp. 2d at 643 (noting that because the employee "possesses information highly-relevant to the plaintiff[s'] claims," the defendants likely prefer "to eliminate any unpredictability and limit [] trial testimony to [] 'canned' deposition testimony-a purely tactical reason").[4] Ms. Bresch, as a named defendant, is completely in control of whether she appears in Kansas for trial or not. As to Mr. Sanders, Mylan retains significant control over these high-level employees. Remote trial testimony of these two Mylan executives allows the Court to ensure jurors hear from the most critical witnesses during Class Plaintiffs' case in an MDL trial affecting a class of millions nationwide.

---

[4] The requesting party's lack of control of the witnesses also makes this MDL situation distinguishable from other Rule 43 orders in this Circuit. *See, e.g.*, *Gil-Leyva v. Leslie*, 780 F. App'x 580 (10th Cir. 2019) (*pro se* plaintiff requested to testify remotely at an evidentiary hearing); *Eller v. Trans Union, LLC*, 739 F.3d 467, 477 (10th Cir. 2013) (plaintiff requesting remote testimony of his former attorneys due to distance and scheduling conflicts); *Hale v. Vietti*, No. 16-4183-DDC-KGG, 2019 WL 2869441, at *1 (D. Kan. July 3, 2019) (plaintiff requesting remote testimony for three or fewer of his witnesses for financial reasons).

### 1.    Ms. Bresch

Ms. Bresch, Mylan's President and CEO during the relevant time period, is a lynchpin figure in the fraud at the heart of this case. She was paid tens of millions of dollars for orchestrating the EpiPen Pricing Scheme, and she personally communicated in furtherance of the schemes to defraud. ECF No. 2190-1, Class Pls.' Summary Judgment Opp. ("MSJ Opp.") 119. Ms. Bresch was the moving force behind the EpiPen Pricing Scheme and she ***personally*** committed several RICO predicate acts, including:

- Ordered the removal of the single EpiPen, received numerous briefings on the status of Project X2, and closely monitored Pfizer's involvement in the scheme to ensure it was completed—all utilizing the wires to do so.

- Stated the false medical rationale in, reviewed, and approved the 2-Pak press release, which was disseminated over the wires.

- Made false and misleading statements to the public about EpiPen price increases.

- Lied to Congress under oath in September 2016, corrupting the proceeding.

- Approved the improper "pay-for-delay" generic settlements, personally negotiated the illegal agreements with Teva's Marth, and personally made false and misleading statements to the public about those settlements in press releases—all over the wires.

*Id.* at 118-0. Ms. Bresch's extensive control and involvement in all parts of the EpiPen Pricing Scheme demonstrate Defendants could try to gain a tactical advantage by making Ms. Bresch "unavailable" during Class Plaintiffs' case-in-chief.

Ms. Bresch is a named defendant and, as such, is in complete control of whether she appears to testify. In her capacity as Mylan's President and CEO during the relevant time, other federal courts have recognized that parties retain "significant control" of employees like Ms. Bresch. *Vioxx*, 439 F. Supp. 2d at 643 (upper-level executive); *Mullins v. Ethicon, Inc.*, No. 2:12-CV-02952, 2015 WL 8275744, at *2 (S.D.W. Va. Dec. 7, 2015) ("relatively important and knowledgeable employees").

### 2.    Mr. Sanders

Mr. Sanders was Dey's Chief Operating Officer during the relevant time. He ensured that Bruce Foster's idea of eliminating the single pack from the market—and thereby doubling certain revenue—occurred by tasking Ivona Kopanja to work with Mr. Foster and manage the project to make sure it gained momentum. MSJ Opp. 20. Mr. Sanders served as an intermediary between Ms. Bresch and the rest of the Project X2 team. MSJ Opp. 22, 25, 28. Mr. Sanders was told by multiple Mylan employees that the guidelines did not directly support eliminating the single EpiPen option. *Id.* Mr. Sanders also took charge of coordinating the elimination of the single EpiPen with Pfizer. *Id.* at 25. When the elimination of the single was complete, it was Mr. Sanders who encouraged Ms. Bresch to then quickly increase the EpiPen price because Project X2 had been pulled off without backlash or pushback. *Id.* at 28, 98.

As a high-level executive, Mylan retains significant control of Mr. Sanders. *Vioxx*, 439 F. Supp. 2d at 643 (upper-level executive); *Mullins*, 2015 WL 8275744, at *2 ("relatively important and knowledgeable employees").

### C.    Remote video testimony is necessary here given the complexity of the case and the flexibility required to manage it.

The next two factors—"the complex, multi-party, multi-state nature of the litigation" and the flexibility needed to manage such litigation—also favor permitting contemporaneous transmission of testimony. *Vioxx*, 439 F. Supp. 2d at 643.  The effects of Mylan's racketeering activity and antitrust violations reach into every one of the fifty states—and so too does this Court's power to compel Mylan's current and former employees to testify concerning Mylan's illicit behavior for the jury. Because of the differences between MDL and non-MDL civil cases, "the challenge for the Courts and parties engaged within a multidistrict litigation proceeding is to fashion the most efficient, judiciously sound and fair manner to perform the tasks assigned by Congress." *In re Actos (Pioglitazone) Prod. Liab. Litig.*, 2014 WL 107153, at *2. If Mylan will

not bring them live and in-person to trial in Class Plaintiffs' case-in-chief, the jury will be in the best position to evaluate the testimony of Ms. Bresch and Mr. Sanders if Class Plaintiffs are permitted to compel their trial testimony via remote live video.

In this certified class action in multidistrict litigation, the parties have agreed to have the Class claims tried in a single forum, the District of Kansas. *Cf. In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2016 WL 9776572, at *2 (N.D. Tex. Sept. 20, 2016) ("In fact, had this MDL been consolidated in another district, the witnesses at issue may have been within subpoena range."). The RICO schemes and antitrust violations did not occur only in one location where a central trial could have gathered all witnesses. Depositions of Defendants' current and former employees on Class Plaintiffs' witness list occurred in nine different states (including Washington D.C.), to say nothing of the named and unnamed plaintiffs across the country. The case is also complex as to the legal and factual claims. The jury will be asked to consider the billions of dollars in damages Mylan caused throughout the United States. The complex nature of this case as well as its impact on millions of Class members nationwide weighs in favor of allowing contemporaneous transmission of the testimony of Ms. Bresch and Mr. Sanders because Mylan has not agreed to make these witnesses available live during Class Plaintiffs' case-in-chief.

Rule 43 testimony has become "quite commonplace" in the multidistrict litigation context (even if it is less common for non-MDL civil cases). *In re Actos*, 2014 WL 107153, at *2; *see also Vioxx*, 439 F. Supp. 2d at 643; *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2016 WL 9776572, at *2; *In re Xarelto*, 2017 WL 2311719, at *4; *Mullins*, 2015 WL 8275744, at *2; *accord* MANUAL FOR COMPLEX LITIG. at 2 (4th ed. 2020) ("Practices and principles that served in the past may not be adequate, their adaptation may be difficult and controversial, and novel and innovative ways may have to be found."). Indeed, while those product liability cases

may have affected thousands, the cases consolidated here through the MDL now affect millions because of class certification. And unlike in the bellwether context, individual class members will not have another shot at their own trial elsewhere. This trial is it—and it alone will resolve all their claims.

Authorizing remote live video testimony of Ms. Bresch and Mr. Sanders is critical to provide the jury with the best possible testimony in this complex case. Mylan has much to gain tactically by denying Class Plaintiffs in-person testimony of these key witnesses. Because Ms. Bresch and Mr. Sanders "possess[] information highly-relevant to the plaintiff[s'] claims," Mylan likely prefers Class Plaintiffs having to use either "canned" deposition designations or no appearance at all in Class Plaintiffs' case. *Vioxx*, 439 F. Supp. 2d at 643. Canned deposition designations at the start of the case are no substitute for live testimony focused on the core issues being tried. *See In re Xarelto*, 2017 WL 2311719, at *4. And because Mr. Sanders was never deposed, the jury would be deprived of any testimony from him on events he was intimately involved in if this Court denies Class Plaintiffs' motion.

As Judge Fallon emphasized, contemporaneous transmission avoids the short-comings of deposition testimony while allowing for the benefits of in-person trial testimony including allowing "the jury to see the live witness along with 'his hesitations, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration.'" *Vioxx*, 439 F. Supp. 2d at 644 (quoting *Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir. 1946)). "Without this contemporaneous transmission to provide live testimony, the jury would be left with less reliable deposition transcripts and video. Class Plaintiffs' motion serves the inherent goal of Rule 43, which is to provide the jury with a more truthful witness." *Pinnacle Hip Implant*, 2016 WL 9776572, at *2. Advances in video conferencing technology make remote testimony far superior to deposition designations in providing cues to make those important reliability and credibility

determinations (as well as allowing more focused questions related to what the jury has heard from

live witnesses):

> [A]llowing contemporaneous live transmission likely would be substantially less expensive, and faster, than use of video depositions when one considers not only the time and expense required to take the video depositions, but also the attorney time and expense inherent in identifying deposition excerpts, making objections to those excerpts, and the time required to make the necessary rulings by the Court on those objections, as well as the time and expense of editing by a videographer after the Rulings are made.
>
> . . .
>
> [C]ontemporaneous transmission of live witness testimony will better allow the jury to more realistically "see" the live witness along with "his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration," without editing or the unavoidable esthetic distance created by a video deposition and, thus, more fully and better satisfy the goals of live, in-person testimony, while avoiding the short-comings of either written or video deposition testimony perhaps recorded weeks or months earlier, prior to whatever developments might have occurred between the time the deposition was recorded and the time the testimony by video deposition is presented at trial. Furthermore, a trial, itself, is a dynamic, ever evolving process and the use of contemporaneous transmission of live testimony better allows for the witness and counsel to be responsive to the inevitable, unexpected developments and shifts that always occur during trial. In so doing, the jury is better and not less served as the witnesses— with the employment of Rules 43 and 45—will be able to contemporaneously and most relevantly comment on the newest developments in real time and unedited watching and judging the witnesses as the trial unfolds—a possibility unavailable with previously recorded testimony or earlier more limited technology. Further, use of "live" contemporaneous transmission grants the trier of fact—here, the jury— the added advantage inherent in observing testimony in open court that is truly contemporaneous and part of the whole trial experience, thus, better reflects the fluid dynamic of the trial they are experiencing, and, better serves the goal of "truth telling."

*In re Actos*, 2014 WL 107153, at *7 (quoting *Vioxx*, 439 F. Supp. 2d at 644); *accord In re RFC &*

*ResCap Liquidating Trust*, No. 013CV3451SRNHB, 2020 WL 1280931, at *1-3 (D. Minn. Mar.

13, 2020) (observing that "the speed and clarity of modern videoconferencing technology" allows

this testimony to "satisf[y] the goals of live, in-person testimony and avoids the short-comings of

deposition testimony") (quoting *Vioxx*, 439 F. Supp. 2d at 644)); *Mullins*, 2015 WL 8275744, at

*2 ("Live video transmission will promote coherency, especially when the alternative is spliced, edited, and recompiled clips of depositions that took place over multiple days.").

Recent hybrid and fully remote trials have confirmed the utility of remote trial testimony by video. As one article on the experience of Judge Pechman in the Western District of Washington relayed:

> Maskless within the safe confines of Zoom, all witnesses appeared on screen in full speaker-view. In fact, no one wore a mask during the proceeding. Bloom found this to be a clear benefit over "hybrid" pandemic trials where only jury selection is remote, but the rest of trial is conducted in-person in large rooms with all participants masked and socially distanced. In this Zoom trial, the witnesses' cadence, tone, inflection, demeanor, delivery and facial expression were apparent to all. Testimony was dynamic, unlike pre-recorded video deposition testimony. Objections and rulings were contemporaneous and as functional as in-person trials. In the few instances when witness testimony appeared far-fetched or insincere, the verdict suggests jurors had no trouble weighing credibility and bias. . . . When Judge Pechman debriefed the jurors, she found them enthusiastic about their service on a remote civil jury trial. They found it easy to follow the testimony because they could clearly see, hear and evaluate each witness.

Beth Bloom, Patricia Anderson & Becky Roe, *Trial by Zoom: A Closer Look at the Retooled Civil Jury Trial in the Time of Pandemic*, King Co. Bar Bulletin (Jan. 1, 2021) (Ex. B); *see also Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 6120186, at *3 (D. Del. Oct. 16, 2020) (noting the Court's experience with remote "video" bench trials, determining that "the examinations provided the evidence necessary to assess credibility," and concluding that "the jury will be equally (if not better) able to do the same at this trial"). Whatever might be said about 2020, video testimony has become, in a matter of months, both radically better in quality and ever-present in quantity. Jurors will likewise be far more comfortable with video testimony after the necessity of video calls over the past year in every area of life.

### D.    No true prejudice to Ms. Bresch or Mylan.

Mylan and Ms. Bresch will not be prejudiced by the requested order. *Cf. Vioxx*, 439 F. Supp. 2d at 643 (citing as a factor for consideration "the lack of any true prejudice to the defendant"). The only real "burden" will be preparing these witnesses for cross examination—just as they would if the witness were testifying in person—and this does not amount to prejudice. *Pinnacle Hip Implant*, 2016 WL 9776572, at *2. Rather it is just the nature of a complex, multi-party trial. Mylan is a multi-billion-dollar pharmaceutical company who reaped even more billions from its fraud and antitrust violations; it can more than afford to pay for the preparation of its witnesses at trial. And as to Ms. Bresch, this "burden" is even less given that she has agreed to prepare and provide testimony live in Kansas during Mylan's case. Very little additional burden will come from also preparing to be called in Class Plaintiffs' case-in-chief by video transmission—indeed, it would be less of burden because it would not actually involve travel.[5]

The only inconvenience Mylan set out in their previous opposition to the more general motion was that these witnesses would have to provide testimony. Mylan does not show that appearing at a local federal courthouse (or at another agreed upon location) would present any inconvenience or undue expense to these witnesses. Indeed, the geographic limits set out in Rule 45 were designed for that very purpose: to prevent any undue expense and inconvenience to a witness arising from giving testimony. Being required to provide testimony in a case in which Ms. Bresch and Mr. Sanders were key witnesses to the events in question does not amount to prejudice—it is instead critical to the jury's fact-finding mission and the path to justice. This factor,

---

[5] Remote live testimony would not be necessary for Ms. Bresch and she could only testify once if Mylan either: (1) agreed to bring Ms. Bresch live during Class Plaintiffs' case-in-chief (Class Plaintiffs would allow Mylan to ask questions outside the scope of the initial hostile direct to accomplish this purpose), or (2) allowed Class Plaintiffs to wait to close their case until after Ms. Bresch is called live in Mylan's case and allow Class Plaintiffs to go beyond the scope of direct in their cross of Ms. Bresch.

too, weighs in favor of allowing remote trial testimony given "the lack of any true prejudice to the defendant." *Vioxx*, 439 F. Supp. 2d at 643.

### E. Contemporaneous transmission is supported here by "good cause in compelling circumstances and with appropriate safeguards."

As is demonstrated by the five-factor compelling circumstance test for MDLs, live testimony under Rule 43 is justified to ensure Ms. Bresch and Mr. Sanders testify in Class Plaintiffs' case-in-chief.

### F. Defendants Mylan and Ms. Bresch do not dispute that the measures suggested would provide adequate safeguards.

Adequate safeguards can be provided for contemporaneous remote testimony. "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Aoki v. Gilbert*, No. 211CV02797TLNCKD, 2019 WL 1243719, at *1 (E.D. Cal. Mar. 18, 2019) (internal quotation omitted). Trial counsel for Class Plaintiffs has successfully utilized contemporaneous transmission in multiple trials through rigorous protocols, including several MDLs.[6] Based on those proven experiences, the attached proposed order entered in *Ingham* provides demonstrated safeguards and best practices for successfully using contemporaneous transmission. These orders outline the safeguards anticipated by that MDL court and include:

1. Testimony via secure video conferencing in a federal courthouse or alternate transmitting location if safeguards and requirements are met.

2. The witness will always be visible to the jury while testifying via the witness screen. The witness can view the questioning attorney during her testimony via video feed.

3. The witness hears all objections unless instructed by the Court.

---

[6] Ex. A (Actos Supplemental Order/Case Management Order: Protocol for Contemporaneous Transmission of Live Testimony); Ex. B (Actos Order/Case Management Order: Protocol for Contemporaneous Transmission of Live Testimony); Ex. C (Ingham Order Granting Leave and Issuing Protocol for Contemporaneous Transmission).

4.     Whenever feasible, documents or evidence will be shown to the witness electronically as well as presented by paper copy handed to the witness by the court reporter at the Court or counsel's instruction.

5.     Other than a court reporter, spectators will not be allowed in the room where the witness testifies.

If this Court allows the use of contemporaneous transmission, Class Plaintiffs are hopeful the parties can reach agreements with Mylan and Ms. Bresch about acceptable protocols. If agreements are not reached, Class Plaintiffs intend to serve Rule 45 subpoenas on the witnesses who reside outside Kansas. These subpoenas will command attendance at a location meeting the requirements of Rule 45(c)(1) (that is, within the state, or within 100 miles, of where each such witness lives or works), and the live testimony will be transmitted from that location to the courtroom in Kansas City, Kansas during trial.[7]

### II.    There is good cause to permit trial depositions of six critical witnesses: Bresch, Sanders, Robert Coury, Bruce Foster, Ron Graybill, and Jill Ondos.

Class Plaintiffs also seek leave to take trial depositions (also known as *de bene esse* depositions) of four additional critical witnesses: Robert Coury, Bruce Foster, Ron Graybill, and Jill Ondos.[8] And, if this Court denies Rule 43 testimony for Ms. Bresch or Mr. Sanders, Class

---

[7]     A witness so subpoenaed would still have a right to file a motion to quash the subpoena; such a motion is filed in the so-called "compliance court" - the district where compliance is commanded. *See* Fed. R. Civ. P. 45(d)(3). But such motions may, in appropriate circumstances, be transferred to this Court.  *See* Fed. R. Civ. P. 45(f). As the Advisory Committee Notes explain, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion." Fed. R. Civ. P. 45, 2013 advisory committee notes. A subpoena issued to compel testimony already ordered by this Court would fall into this category. The advisory committee notes also state that consultation between the judge presiding over the case in the issuing court and the judge in the compliance district may be helpful. *Id.*

[8]     Class Plaintiffs seek leave out of an abundance of caution. It is not clear that trial depositions are subject to the limitations in Rule 30(a)(2)(A) on number of depositions per side and second depositions. Other federal district courts have concluded that trial depositions do not fall within the discovery deposition limits. *Rayco Mfg., Inc. v. Deutz Corp.*, No. 5:08 CV 00074,

Plaintiffs seek trial deposition as an alternative means of securing their trial testimony. *See RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01 CIV. 1290 (CSH), 2005 WL 578917, at *7 (S.D.N.Y. Mar. 11, 2005), *adhered to on reconsideration,* 464 F. Supp. 2d 206 (S.D.N.Y. 2006) (stating that "it is clear that Rules 43(a) and 32(a) are meant to compliment each other; and depending on the nature of the case and the circumstances involved, one procedure may be preferred over another"). This Court recognized in the Pretrial Order that trial depositions can be used to present testimony to the jury. Dkt. No. 2169, Pretrial Order 60 ("The parties' final witness lists shall specify which witnesses will be called live, called by live video feed, called via trial video deposition, or called by video or discovery deposition."). Each of these witnesses are critical fact witnesses to Class Plaintiffs' case and trial depositions can provide more targeted, relevant testimony than the discovery depositions coordinated with Sanofi.

Trial depositions of these four additional witnesses will ensure the jury has the most useful and relevant testimony from these witnesses during Class Plaintiffs' case-in-chief, all outside the subpoena power of the Court. Trial depositions are particularly useful in situations "when a witness is simply outside the subpoena power of the court and cannot be compelled to testify at trial." *E.E.O.C. v. Beauty Enterprises, Inc.*, No. CIV. 3:01CV378 AHN, 2008 WL 3892203, at *2 (D. Conn. July 9, 2008) (citing *Manley v. Ambase, Inc.*, 337 F.3d 237, 247–48 (2d Cir. 2003)). When witnesses are unavailable (including due to distance)—a "simple fact, known to all trial practitioners"—"*de bene esse* depositions taken shortly before trial are commonplace and are

---

2010 WL 183866, at *3 (N.D. Ohio Jan. 14, 2010) (noting that trial depositions "are not treated as part of the discovery process to which the Rule 30(a)(2)(A)(i) ten-per-side deposition limit applies"). In the one District of Kansas case, leave was sought and provided for a trial deposition if done at the requesting party's expense. *Clay v. Bd. of Trustees of Neosho Cty. Cmty. Coll.*, No. CIV.A. 94-2282-EEO, 1995 WL 646817, at *2 (D. Kan. Sept. 26, 1995).

properly understood as part of the trial proceedings, not discovery." *Benedict v. United States*, No. 15-CV-10138, 2016 WL 6138599, at *2 (E.D. Mich. Oct. 21, 2016) (internal quotation omitted).

These trial depositions are not for discovery purposes but rather as a means of introducing trial testimony. Class Plaintiffs are "entitled to present [their] witnesses" at trial. *Charles v. Wade*, 665 F.2d 661, 664 (5th Cir. 1982). Trial depositions are "not seeking to discover [the deponents'] testimony-[the requesting party] knew what [the deponents] had to say-but was seeking a means for introducing [the deponents'] testimony at trial. . . . The fact that the discovery period had closed had no bearing on [the requesting party's] need, or his right, to have the jury hear [the deponents'] testimony." *Id.* (holding that the district court clearly erred in denying appellant's motion for a trial deposition of a witness outside the subpoena power of the court). For critical witnesses who are unavailable for live, in-person testimony, trial depositions "ensure that the parties are able to present a full case" and "the fact-finder is reaching its decision on all relevant evidence." *Benedict*, 2016 WL 6138599, at *2.

The four additional witnesses for whom Class Plaintiffs seek trial depositions have critical testimony related to the claims at issue:

- ▪ ***Robert Coury***: Mr. Coury was Mylan's CEO before Ms. Bresch and became chair of the board. He, along with Ms. Bresch, directly approved the language in the exclusive 2-Pak press release. MSJ Opp. 27, 98. With respect to competitors like Auvi-Q, Mr. Coury instructed the contracting team while he was CEO to "pre-empt any new market entry" and "block competition." *Id.* at 32. Mr. Coury is now executive chairperson of Viatris, which absorbed Mylan.

- ▪ ***Bruce Foster***: Mr. Foster was Mylan's Senior Director, National Accounts during the time in question. Mr. Foster was central to at least two of the RICO schemes: (1) the elimination of the single EpiPen, and (2) using Mylan's market power to eliminate branded competition from Auvi-Q. On Nov. 24, 2010, Mr. Foster emailed Mylan executive Ron Graybill, proposing, for the first time, Mylan eliminate the single EpiPen for two reasons: (1) "[d]ouble the revenue" and (2) "[s]trong potential generic defense." He mentioned no medical guidelines or patient safety. MSJ Opp. 20. Mr. Foster then worked on Project X2 to implement the plan. Mylan's head of regulatory affairs emailed Mr. Foster and others and told them that, "we don't need to call/write FDA" because it "will raise more questions than we have answers." *Id.* at 26. Mr. Foster suggested to the sales team that the

elimination of the single EpiPen be "packaged" within a bigger program to camouflage the fraud. *Id.* at 26. Because of Mr. Foster's proposal—and the tens of millions that this maneuver delivered in inflated sales revenue and volume to Mylan and Pfizer—Mr. Foster was named Mylan's President's Circle Winner for 2011. *Id.* at 29.

- ▪ ***Ron Graybill, Jr.***: Mr. Graybill was the Vice President, Managed Markets at Mylan during the time in question. Mr. Graybill was involved in multiple schemes and supervised many of its primary participants. When Mr. Foster proposed the elimination of the single EpiPen, he took that proposal to Mr. Graybill who deemed it a great idea because it could "double" sales. MSJ Opp. 20. Mr. Graybill was part of the Project X2 team. He was also part of sending out training materials to sales representatives that deceptively and falsely listed the NIAID and WAO Guidelines as the "medical rationale" for the hard switch, and he encouraged employees to only raise this medical justification at the end of calls. *Id.* at 20, 27. Mylan's head of regulatory affairs emailed Mr. Graybill and others and told them that, "we don't need to call/write FDA" because it "will raise more questions than we have answers." *Id.* at 26. Mr. Graybill also completed the employment reviews for Mr. Foster that acknowledged Project X2 was Mr. Foster's idea and applauded the increase in sales of tens of millions of dollars every year due to the elimination of the single pack EpiPen in the United States market only. *Id.* at 29. Mr. Graybill was also part of the effort to implement a rebate scheme to push out Auvi-Q competition by seeking prior authorization and benefit exclusion. *Id.* at 32.

- ▪ ***Jill Ondos***: Ms. Ondos was a Mylan Deputy General Counsel during the time in question. Ms. Ondos was Mylan's primary lawyer in charge of both the EpiPen and Nuvigil litigations. MSJ. Opp. 123 n. 737. She was involved with the negotiations of both the EpiPen and Nuvigil settlements with Teva including receiving proposals from Teva on the swap of dates. *Id.* at 42. Ms. Ondos actively participated in the EpiPen settlement negotiations and litigation. *Id.* at 42-43, 69. And she provided input on the EpiPen settlement press release. *Id.* at 43.

Defendants have not agreed to provide any of these witnesses to testify during Class Plaintiffs' case-in-chief. And, given the current witness lists, it is possible that the jury may not hear any live testimony from several of these witnesses even in Defendants' case: Robert Coury (not on Defendants' witness lists), Ron Graybill (not on Defendants' witness lists), and Jill Ondos (listed by Defendants as may testify either by deposition or live). For all witnesses, Defendants have also noted they reserve their rights to take people off the list or change the manner of testimony. Dkt. No. 2354, Mylan Defendants' Final Witness List ("Mylan reserves all rights to amend or modify this list before trial and as trial preparations continue, including, but not limited to, by withdrawing

or adding witnesses or designated testimony, changing the manner of testimony, or revising Mylan's current Expects/May call designations.").

Trial depositions will also allow Class Plaintiffs to provide more streamlined deposition testimony focused on the issues being presented at trial. Discovery depositions in the case were often joint depositions with the Sanofi case. Additionally, since discovery depositions were taken, additional documents were produced and the case theory has developed as shown in the summary judgment motion and pretrial submissions. Trial depositions will provide the jury with shorter and more useful evidence on the claims before them:

> Lawyers use depositions during the discovery phase primarily to discover evidence. However, lawyers do not always know during the discovery phase which witnesses will actually be needed for trial, and whether the testimony of some of these witnesses will need to be presented at trial by means of depositions. Once those decisions are made by attorneys, courts cannot ignore a party's need to *preserve* testimony for trial, as opposed to the need to *discover* evidence, simply because the period for discovery has expired.

*Estenfelder v. Gates Corp.*, 199 F.R.D. 351, 355 (D. Colo. 2001). Because these trial depositions are about ensuring **trial** testimony (and not the discovery of evidence), Class Plaintiffs should be allowed leave (if indeed leave is necessary) for trial depositions of these limited witnesses.

## CONCLUSION

For these reasons, Class Plaintiffs request that the Court grant their motion to allow: (1) live trial testimony via contemporaneous transmission from locations outside Kansas for Heather Bresch and Lloyd Sanders, (2) trial depositions of Robert Coury, Bruce Foster, Ron Graybill, and Jill Ondos. If the Court denies live trial testimony via contemporaneous transmission for Ms. Bresch or Mr. Sanders, Class Plaintiffs alternatively request trial depositions of those witnesses. Finally, given the necessary arrangements for both types of testimony and impending trial deadlines, Class Plaintiffs request expedited briefing on this matter. Class Plaintiffs also seek all other relief to which they may be entitled.

DATED:  June 18, 2021                    Respectfully submitted,

/s/ *Rex A. Sharp*
SHARP LAW LLP
Rex A. Sharp, #12350
Ryan C. Hudson, #22986
4820 West 75th Street
Prairie Village, KS  66208
Telephone:  913/901-0505
913/901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com


ROBBINS GELLER RUDMAN
    & DOWD LLP
Paul Geller
Stuart Davidson
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

KELLER ROHRBACK L.L.P.
LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:  206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

BURNS CHAREST LLP
WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

PRITZKER LEVINE LLP
ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450
Emeryville, CA  94608
Telephone:  415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

Co-Lead Counsel and Liaison Counsel for Class
Plaintiffs

THE LANIER LAW FIRM
W. MARK LANIER
RACHEL LANIER
CRISTINA DELISE
6810 FM 1960 West
Houston, TX  77069
Telephone:  713/659-5200
Mark.Lanier@LanierLawFirm.com
Rachel.Lanier@LanierLawFirm.com
Cristina.Delise@LanierLawFirm.com

Special Trial Counsel for Class Plaintiffs

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of this CLASS PLAINTIFFS' MOTION TO ALLOW LIVE TRIAL TESTIMONY VIA CONTEMPORANEOUS TRANSMISSION FOR HEATHER BRESCH AND LLOYD SANDERS, AND FOR TRIAL DEPOSITIONS OF ROBERT COURY, BRUCE FOSTER, RON GRAYBILL, AND JILL ONDOS, AND REQUEST FOR EXPEDITED BRIEFING was served on the 18th day of June, 2021, by filing the document electronically with the Court, which delivered a copy to all counsel of record.

/s/ *Rex A. Sharp*
Rex A. Sharp