IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation<br><br>(This Document Applies to Consumer Class Cases) | MDL No: 2785<br><br>Case No. 17-md-2785-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Class Plaintiffs' Motion to Compel Mylan to Produce a Non-Privileged Document Improperly Clawed Back (ECF No. 2331). Class Plaintiffs seek an order requiring Mylan to produce a document Mylan claims it inadvertently disclosed. Pursuant to the Third Amended Stipulated Protective Order in this case,[1] Mylan clawed back a portion of the document it claims is protected by the attorney-client privilege. Mylan opposes the motion. As set forth below, the Court will deny the motion insofar as it seeks production of the document without redaction.

I.  **Relevant Background**

On April 24, 2018, Mylan produced the document at issue as part of its ninth document production. The document is an email dated July 29, 2013, sent by Bruce Foster, a Mylan Director of National Accounts, to his supervisor Robert Potter, Mylan's Senior Vice President of Sales and Marketing. No one is copied on the email,[2] and Mylan does not represent that either

---

[1] ECF No. 556.
[2] The Court will refer to the document as "the Foster email."

the sender or recipient are lawyers. The Foster email has not been an exhibit to any court filing or used in any deposition in this case, including that of Bruce Foster, nor have any of the experts considered the Foster email in forming their opinions.

On August 16, 2019, Mylan produced the same document in *In re Mylan N.V. Securities Litigation*, No. 16-cv-07926-JPO (S.D.N.Y.). In a deposition taken in that case on March 1, 2021, a party introduced the document as an exhibit. Mylan's counsel in the securities case asserted privilege and reserved Mylan's right to claw it back. Two days later, Mylan's counsel in this case sent a letter to Class Plaintiffs' counsel to initiate the claw-back process and provided a redacted version of the document. Class Plaintiffs' counsel responded to confirm Plaintiffs had destroyed copies of the document and to advise they would challenge Mylan's designation and claw back. On March 17, 2021, the parties met and conferred but were unable to reach agreement on Plaintiffs' challenge. This motion followed.[3] Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II.     Summary of the Parties' Arguments

Class Plaintiffs assert the document in question is not an attorney-client communication, but even if it is deemed privileged, Mylan has waived the privilege by putting the described sales conduct at issue. Finally, Class Plaintiffs contend Mylan's attempt to claw back the document is untimely.

---

[3] Class Plaintiffs requested oral argument on the motion. Our court's local rule provides as follows: "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative." D. Kan. Rule 7.2. The parties' written submissions have succinctly set forth their positions on the discreet issue raised in the motion. The Court has determined oral argument would not be helpful in deciding the motion and denies Plaintiffs' request.

Mylan acknowledges no lawyer is copied on the email, but argues the redacted content is legal advice for which the privilege is not destroyed when shared among Mylan employees. Mylan denies it has relied on the information contained in the document in a manner that would constitute waiver of the privilege, and asserts it timely clawed back the document.

**III.  Legal Standard**

Federal Rule of Evidence 501 provides that privileges in federal question cases are generally governed by the common law "as interpreted by United States courts in the light of reason and experience."[4] In contrast, in civil cases in which "state law supplies the rule of decision," state law also governs the privilege.[5] The parties do not directly address the issue, but cite cases applying both federal and state privilege law. No federal claim remains in this case,[6] but "[s]ince this is a multidistrict proceeding, the question arises as to what state's law of privilege the court should apply."[7] However, "no real conflict between Kansas and federal law regarding the attorney-client privilege [exists],"[8] and "the Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions."[9] Accordingly, the Court will apply federal law.[10]

Under federal common law, the essential elements of the attorney-client privilege are:

---

[4] Fed. R. Evid. 501.
[5] *Id.*
[6] *See* ECF No.2381 (dismissing RICO claims).
[7] *In re: Motor Fuel Temperature Sales Practices Litig.*, No. 07-md-1840-KHV, 2010 WL 11431875, at *2 (D. Kan. July 7, 2010) (quoting *In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D. Kan. 1985)).
[8] *In re: Motor Fuel Temperature Sales Practices Litig.*, 2010 WL 11431875, at *2 (quoting *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 526 n.3 (D. Kan. 2003)).
[9] *In re: Motor Fuel Temperature Sales Practices Litig.*, 2010 WL 114375, at *2 (quoting *In re A.H. Robins Co.*, 107 F.R.D. at 8).
[10] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *1 (D. Kan. June 13, 2017).

3

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the client's] instance permanently protected (7) from disclosure by [the client] or by the legal advisor, (8) except if the protection is waived.[11]

The party asserting the attorney-client privilege bears the burden to establish its applicability.[12] Moreover, a party must make a "clear showing" that the privilege applies.[13] The existence of the privilege is determined on a case-by-case basis.[14]

Attorney-client privilege may attach to documents transmitted between non-attorney employees of a corporate client if the communications are confidential and are for the purpose of obtaining legal advice from an attorney.[15] As a practical matter, "[o]rganizational clients and business entities often are personified by a number of employees. In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts."[16]

Although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.[17] The communication is protected from disclosure only if a

---

[11] *Id.* (citing *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009)).
[12] *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995).
[13] *Ali v. Douglas Cable Commc'n*, 890 F. Supp. 993, 994 (D. Kan. 1995).
[14] *Id.* at 396–97.
[15] *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012), on reconsideration in part, No. CIV.A. 09-2269-CM, 2012 WL 1580634 (D. Kan. May 4, 2012).
[16] *Id.* (citing *Williams v. Sprint/United Mgmt. Co.*, No. 03–2200–JWL–DJW, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006)).
[17] *IMC Chemicals, Inc. v. Niro, Inc.*, No. 98-2348, 2000 WL 1466495, at *8-9 (D. Kan. July 19, 2000).

connection exists between the subject of the communication and the rendering of legal advice.[18] If a communication contains both legal advice and business advice, legal advice "must predominate for the communication to be protected."[19] Legal advice that is incidental to business advice is not privileged.[20]

IV.     Analysis

Plaintiffs describe the Foster email as "the lay commentary of a non-attorney sales director to his non-attorney boss concerning Mylan's market share and exclusive-formulary contracting practices,"[21] and they seek to compel the production of the document in its entirety. Mylan has not clawed back the entire document, however, but has redacted three sentences "in an email between two Mylan employees in which the sender relays legal advice that the 'legal team at [Mylan] Specialty' had provided after reviewing certain contracting practices."[22] Characterizations aside, the relevant inquiry is whether the words in the redacted material are privileged under the legal standards set forth above.

Plaintiffs suggest Mylan is merely incanting the words "legal advice" rather than making the required showing "that the speaker made the communication for the purpose of obtaining or providing legal advice."[23] But this argument ignores the fact that the attorney-client privilege

---

[18] *Burton v. R.J. Reynolds Tobacco Co.,* 175 F.R.D. 321, 328 (D. Kan. 1997) ("*Burton II*").

[19] *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) ("*Burton I*").
[20] *Id.*
[21] ECF No. 2333-1 at 11.
[22] ECF No. 2336-1 at 5. Mylan submitted a copy of the redacted version of the Foster email which actually conceals four sentences. The Court presumes Mylan does not intend to redact the last of these sentences. In any event, the last sentence contains no legal advice and Mylan will not be permitted to redact it.
[23] ECF No. 2333-1 at 11, 12.

extends to communications made within a corporation between non-attorneys when the purpose of the communication is to secure legal advice.[24] "For a communication between non-attorney employees to be held privileged, it must be 'apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice' or the document itself must 'reflect the requests and directions of counsel.'"[25]

The material Mylan wishes to redact from the Foster email reflects the direction of counsel. Within the three sentences at issue, Mr. Foster (1) reports that Mylan's "legal team" performed an assessment of a particular issue and (2) states the conclusion the legal team reached. The legal analysis related to a business issue, but the redacted material cannot fairly be described as business advice. The character of the communication did not change from legal advice to business advice simply because Mr. Foster relayed it to his supervisor.

A similar situation arose in *Nalco Co., Inc. v. Baker Hughes Inc.*, 4:09-CV-1885, 2017 WL 3033997 (S.D. Tex. July 18, 2017). In *Nalco*, one corporate employee sent an email to a fellow employee telling him about a specific request he had made for legal advice concerning a company patent. No lawyer was copied on the email. Both employees were members of management. Because the sender communicated that he had sought legal advice from a lawyer, and both sender and recipient shared responsibility for the patent, the court concluded they "should be able to discuss legal advice rendered to them or that they sought as agents of the

---

[24] *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638-39 (D. Kan. 2006).
[25] *Adams v. Gateway, Inc.*, No. 2:02-CV-106 TS, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003) (quoting *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988)).

6

corporation."[26] Accordingly, the court found the company had satisfied its burden of proving the communication was privileged and allowed production of a redacted version of the email chain.[27]

The *Nalco* court's conclusion is practical, and reflects the reality that documents subject to privilege "may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately."[28] The Court concludes the redacted material is privileged.

Plaintiffs argue that even if the redacted material is privileged, Mylan has waived the privilege by engaging in "participatory waiver." Plaintiffs urge the Court to find Mylan is attempting to use the privilege as both a shield and a sword. According to Plaintiffs, Mylan has placed the propriety of its exclusive contracting practices squarely at issue by denying Plaintiffs' market share and market power allegations, and Mylan should not be allowed to prevent full disclosure and examination of the facts at issue. The Court rejects Plaintiffs' argument, which overreaches by equating the Foster email with other documents Mylan has produced which Plaintiffs claim discuss the same general subject matter. The comparison fails and the Court concludes Mylan has not waived its privilege.

Finally, Plaintiffs assert Mylan's claw back of the redacted material is untimely under Federal Rule of Evidence 502(b) and the Protective Order[29] because Mylan produced the document three years ago and has made no attempt to demonstrate its disclosure was inadvertent, that it took reasonable steps to prevent disclosure, or it promptly took reasonable steps to rectify

---

[26] *Nalco, Inc.*, 2017 WL 3033997, at *3.
[27] *Id*.
[28] *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993).
[29] ECF No. 556.

the disclosure.[30] The Protective Order requires a party who discovers an inadvertent disclosure to provide written notice to the recipient "within ten business days of the date it is discovered that an Inadvertent Disclosure was made."[31] Mylan discovered its inadvertent production on March 1, 2021, and provided written notice to Plaintiffs on March 3, 2021. As Mylan points out, the provisions of Rule 502(b) which define the scope of waiver do not supersede the Protective Order entered in this case.[32] Mylan's claw back is timely.

**IT IS THEREFORE ORDERED** that Class Plaintiffs' Motion to Compel Mylan to Produce a Non-Privileged Document Improperly Clawed Back (ECF No. 2331) is denied. Plaintiffs represent they have complied with Mylan's claw-back request and have destroyed all copies of the unredacted document Bates-labeled as MYEP00260131. Within five business days of the date of this order, Mylan shall produce to Class Plaintiffs the document Bates-labeled as MYEP00260131 with the third, fourth, and fifth sentences redacted.

**IT IS SO ORDERED.**

Dated this 8th day of July, 2021, in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[30] *See* Fed. R. Evid. 502(b).
[31] ECF No. 556 ¶12.
[32] *See* Fed. R. Evid. 502(d) ("A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court. . . .").