UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | ) ) ) ) | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) |
| This Document Relates To: | ) ) | |
| CONSUMER CLASS CASES. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH THE PFIZER DEFENDANTS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF THE ACTION .................................................................................3

III. TERMS OF THE SETTLEMENT ..............................................................................5

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................8

    A. The Court Should Grant Preliminary Approval of the Proposed Settlement ..........8

    B. Standards for Preliminary Approval of a Proposed Settlement ............................9

    C. The Settlement Satisfies the Rule 23(e)(2) Factors .............................................10

        1. Co-Lead Counsel Have Adequately Represented the Class ....................10

        2. The Proposed Settlement Was Negotiated at Arm's Length ...................12

        3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal ................................................................14

        4. Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt ....................................................................................14

        5. Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation ..............................16

        6. The Proposed Method for Distributing Relief Is Effective......................17

        7. Attorneys' Fees and Expenses ................................................................18

        8. The Settling Parties Have No Additional Agreement ..............................19

        9. Class Members Are Treated Equitably.....................................................19

    D. The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit ................................................................................................20

V. THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE .......................................................................................21

    A. The Court Should Preliminarily Approve the Proposed Notice of Settlement........................................................................................................21

    B. An Additional Settlement Opt-Out Is Neither Required By Due Process Nor Warranted Under Rule 23(e) .....................................................................22

C. Appointment of A.B. Data to Serve as the Settlement Administrator Is Proper ................................................................................................................26

D. Appointment of Huntington Bank as Escrow Agent Is Proper ...........................27

E. Proposed Schedule of Settlement Events ...........................................................27

VI. THE COURT SHOULD STAY PROCEEDINGS IN THE ACTION AS TO THE PFIZER DEFENDANTS ONLY ...................................................................................27

VII. CONCLUSION ...........................................................................................................28

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*In re (Epinephrine Injection, USP) EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
  336 F. Supp. 3d 1256 (D. Kan. 2018) ..................................................................................3

*Albrecht v. Oasis Power, LLC*,
  No. 1:18-cv-1061, 2019 U.S. Dist. LEXIS 162876 (N.D. Ill. Sep. 24, 2019) .......................28

*Amoco Prod. Co. v. Fed. Power Comm'n*,
  465 F.2d 1350 (10th Cir. 1972).............................................................................................8

*Ashley v. Reg'l Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension
  Fund Tr.*,
  No. 05-cv-01567-WYD-BNB, 2008 WL 384579 (D. Colo. Feb. 11, 2008) .........................12

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
  167 F. Supp. 2d 1216 (D. Colo. 2001) .................................................................................8

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
  No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020)........................*passim*

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...........................................................................................26

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014)................................................................................... 17, 20

*D'Amato v. Deutsch Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................................12

*Dare v. Knox Cnty.*,
  457 F. Supp. 2d 52 (D. Me. 2006) .....................................................................................26

*Davis v. Abercrombie*,
  No. 11-00144 LEK-BMK, 2017 WL 2234175 (D. Haw. May 22, 2017)............................26

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ................................................................................. 23, 25, 26

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) *aff'd in part, vacated in part on other
  grounds, remanded to Denney*, 443 F.3d 253......................................................................26

*Hapka v. CareCentrix, Inc.*,
  No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ...............................20

*Harris v. Chevron U.S.A., Inc.*,
   No. 6:19-cv-00355-SPS, 2020 WL 8187464 (E.D. Okla. Feb. 27, 2020)..............................11

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. Aug. 10, 1976)..........................................................................17

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ........................................................................23, 26

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) ...............................................................................23, 24, 25

*Lowery v. City of Albuquerque*,
   No. CIV 09-0457 JB/WDS, 2013 WL 1010384 (D.N.M. February 27, 2013) ..........23, 24, 26

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006)........................................................................ 8, 14, 16, 21

*Marcus v. Dep't of Revenue*,
   206 F.R.D. 509 (D. Kan. 2002)........................................................................................28

*Marcus v. State of Kansas Dept. of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) ...............................................................................20

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) .......................14, 15, 16

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010)..........................................................................24, 25

*In re Molycorp, Inc. Sec. Litig.*,
   No. 12-cv-00292-RM-KMT, 2017 WL 4333997 (D. Colo. Feb. 15, 2017)..........................13

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
   258 F.R.D. 671 (D. Kan. 2009)..................................................................................8, 9, 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .................................................................................................21, 23

*Nakamura v. Wells Fargo Bank, N.A.*,
   No. 17-4029-DDC-GEB, 2019 WL 2185081 (D. Kan. May 21, 2019)................................18

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................................19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*,
    768 F. App'x 651 (9th Cir. 2019) ........................................................................11

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) .............................................................................24

*O'Dowd v. Anthem, Inc*.,
    No. 14-cv-02787-KLM-NYW, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ........20

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................23, 26

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ........................................................................19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................22

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009) ...............................................................14

*In re SandRidge Energy, Inc. Sec. Litig*.,
    No. CIV-12-1341-G, 2019 WL 4752268 (W.D. Okla. Sept. 30, 2019)................11

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
    749 F.2d 1451 (10th Cir. 1984)............................................................................8

*In re Sony PS3 "Other OS" Litig.*,
    No. 10-cv-01811-YGR, 2017 WL 5598726 (N.D. Cal. Nov. 21, 2017)................28

*In re Syngenta AG. MIR 162 Corn Litig.*,
    No. 14-MD-2591-JWL, 2018 WL 1726345 (D. Kan. Apr. 10, 2018)
    (Lungstrum, J.)...........................................................................................*passim*

*Tardiff v. Knox Cnty.*,
    567 F. Supp. 2d 201 (D. Me. 2008)....................................................................26

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................12

*Tenille v. Western Union Co.*,
    785 F.3d 422 (10th Cir. 2015) .....................................................................15, 21

*Tennille v. W. Union Co.*,
    No. 09-cv-00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014),
    *appeal dismissed*, 809 F.3d 555 (10th Cir. 2015) ...................................15, 17, 21

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012)................................................................16

*Trujillo v. State of Colo.*,
   649 F.2d 823 (10th Cir. 1981) ........................................................................8

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
   No. 02-MD-1468-JWL, 2011 WL 1808038 (D. Kan. May 12, 2011) ...................18

*In re Urethane Antitrust Litig.*,
   No. 04-md-1616-JWL (D. Kan. June 13, 2006), ECF No. 380............................28

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................26

*In re Washington Mutual, Inc.*,
   2015 WL 12803633 (W.D. Wash. June 22, 2015)............................................25

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
   No. 1:08-WP-6500, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ...................19

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997)......................................................................12

*In re WorldCom, Inc. ERISA Litig.*,
   No. Civ. 02-4816 (DLC), 2004 WL 2338151 (S.D.N.Y. 2004) ...........................11

**Statutes**

15 U.S.C. §78u-4(a)(4)............................................................................................6, 7

**Other Authorities**

Bolch Jud. Inst., Guidelines and Best Practices: Implementing 2018 Amendments
   to Rule 23 Class Action Settlement Provisions 21 (2018) ....................................19

Fed. R. Civ. P. 23..................................................................................*passim*

*Manual for Complex Litigation*, §13.14 (4th ed. 2004) .........................................8, 23

4 William B. Rubenstein, *Newberg on Class Actions*, §13.10 (5th ed. 2021) ..............8

# I.    INTRODUCTION

After four years of vigorous litigation in this Action,[1] Plaintiff Class Representatives, on behalf of themselves and the certified Class (together "Class Plaintiffs" or "Plaintiffs") and the Pfizer Defendants[2] (together, the "Settling Parties") have reached an agreement that represents an outstanding recovery of $345 million for the certified Class in settlement of its claims against Pfizer. Litigation continues against the Mylan Defendants.[3]  The proposed Settlement is the result of well-informed and arm's-length negotiations between highly-experienced counsel who possess a thorough understanding of the strengths and weaknesses of the claims at issue due to extensive investigation, significant discovery, numerous rulings from the Court, and expert analysis. Additionally, the parties reached this Settlement after a comprehensive mediation process overseen by a neutral, experienced, and well-regarded mediator, retired U.S. District Judge Layn R. Phillips.

Considering the value of the proposed Settlement, in light of the costs and risks of further litigation, the Settlement provides an immediate and equitable result for the certified Class.  The Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and Tenth Circuit precedent.  Class Counsel's proposed form and method of providing notice of the Settlement to certified Class Members also satisfies the requirements of due process, as well as the conditions set forth in Rules 23(c) and (e).  Because Class Counsel's initial class certification notice program surpassed the requirements of due process and Rule 23(c) in adequacy of class notice, sufficiency and clarity of

---

[1]    All capitalized terms not otherwise defined herein shall have the meaning given to them in the July 14, 2021, Stipulation of Class Action Settlement ("Settlement Agreement"), a copy of which is attached hereto as Exhibit 1. All emphasis is added, and citations are omitted, unless otherwise noted.

[2]    Pfizer, Inc., Meridian Medical Technologies, Inc., and King Pharmaceuticals, Inc. (n/k/a King Pharmaceuticals LLC) (collectively, the "Pfizer Defendants").

[3]    Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., and Heather Bresch.

exclusion language and opportunity, and overall reasonableness (ECF No. 2240), no additional exclusion opportunity is required by due process, nor warranted under Rule 23(e).

Accordingly, Plaintiffs respectfully request that the Court enter the Settling Parties' agreed-upon Preliminary Approval Order, submitted to chambers in Word format pursuant to the Local Rules and attached as Exhibit A to the Settlement Agreement (Exhibit 1 hereto).  That Order will:

1.      Preliminarily approve the terms of the Settlement as set forth in the Settlement Agreement;

2.      Approve the form and content of the Notice of Proposed Settlement of Class Action ("Notice"), Proof of Claim Forms, and Summary Notice (also known as Short-Form Notice) attached as Exhibits B-D to the Settlement Agreement, as well as the appointment of A.B. Data Ltd. as Settlement Administrator;

3.      Find that the procedures for distribution and publication of the Notice and Summary Notice in the manner and form set forth in the Declaration of Eric Schachter of A.B. Data, Ltd. Regarding Notice and Claims Administration ("Schachter Decl."), attached as Exhibit 2 hereto, constitute the best practicable notice under the circumstances and comply with the notice requirements of due process and Rule 23;

4.      Set a Hearing on Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards ("Final Fairness Hearing") and associated deadlines in anticipation of that hearing; and

5.      Provide such other related relief as is necessary to carry out the Settlement, as set forth in the Preliminary Approval Order, including a stay of proceedings as to the Pfizer Defendants only pending a final determination as to whether the Settlement should be approved.

## II.     SUMMARY OF THE ACTION

In 2016, numerous putative class action lawsuits were filed against both the Mylan Defendants and the Pfizer Defendants "involv[ing] allegations of anticompetitive conduct or unfair methods of competition" with respect to the EpiPen, an epinephrine auto-injector used in the emergency treatment of anaphylaxis.  ECF No. 1 at 1.  These cases were transferred and/or centralized by the Judicial Panel on Multidistrict Litigation into MDL No. 2785, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, No. 17-md-2785, and transferred to the United States District Court in the District of Kansas before the Honorable Daniel D. Crabtree (referred to herein as the "Litigation") on August 4, 2017.  ECF No. 1.

On September 12, 2017, the Court appointed Co-Lead Counsel and approved Plaintiffs' proposed organizational structure, including Liaison Counsel and a Steering Committee.  ECF No. 40.  The Court has since substituted a member of the Steering Committee (ECF No. 2111) and added an additional Co-Lead Counsel (ECF No. 2018).

On October 17, 2017, Plaintiffs filed a Consolidated Class Action Complaint ("Complaint") stating claims for violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, certain state antitrust laws, and other causes of action.  Complaint  (ECF No. 60) & Pretrial Order (ECF No. 2169).  These claims arose from allegedly supracompetitive pricing of the EpiPen and related conduct.  *See In re (Epinephrine Injection, USP) EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1282 (D. Kan. 2018) (explaining that the Complaint alleged "a pricing scheme" that centered on raising "the price of the EpiPen from $100 to $600 by launching a campaign of false and misleading statements and actions").

Subsequently, Defendants filed Motions to Dismiss the Complaint, which the Court granted in part and denied in part on August 20, 2018.  ECF No. 896.  Plaintiffs then moved for class certification under Rule 23(b)(3).  On February 27, 2020, the Court granted in part and denied in

part Plaintiffs' motion for class certification and certified a nationwide RICO Class and a State Antitrust Class under Rule 23(b)(3).  ECF No. 2018.  The Court also appointed Warren T. Burns, Paul J. Geller, Elizabeth Pritzker, Lynn Lincoln Sarko, and Rex A. Sharp as Co-Lead Counsel for the certified Class.  Defendants then filed a Rule 23(f) petition for review of that decision with the Tenth Circuit on March 12, 2020, and the Tenth Circuit denied Rule 23(f) review on May 26, 2020. ECF Nos. 2035, 2071.  On October 13, 2020, the Court approved the appointment of A.B. Data, Ltd. to provide notice to the certified Class and approved the form and manner of that notice, which commenced on November 1, 2020, and ended on January 15, 2021.

During the pendency of the Litigation, Plaintiffs engaged in substantial discovery that involved the Defendants, Plaintiffs, and numerous third parties.  This discovery resulted in the production of over 1.75 million documents (totaling over 11 million pages) and 158 depositions, including those of Defendants, Plaintiffs, third parties, and experts.  Plaintiffs also engaged in substantial expert discovery, including consulting with and preparing expert witnesses, preparing expert reports, and vigorously defending many *Daubert* motions against their experts.  From October 2019 to February 2020, the parties served over one dozen additional expert reports on the merits of their respective claims and defenses in the Litigation.

On July 15, 2020, Defendants moved for summary judgment and filed *Daubert* motions to strike Plaintiffs' experts in whole or in part.  ECF Nos. 2133, 2134, 2135, 2136, 2141, 2148, 2151, 2156.  Trial in the Litigation was set to commence on September 7, 2021, based on the Pretrial Order dated July 17, 2020 (ECF No. 2169), later modified with a Trial Order entered on January 28, 2021 (ECF No. 2316).

Beginning in February 2021, as the trial date approached, Plaintiffs and the Pfizer Defendants engaged an experienced and neutral third-party mediator, the Honorable Layn R. Phillips (Ret.), and held pre-mediation and direct settlement discussions.  Plaintiffs and the Pfizer

Defendants made several presentations to the mediator via Zoom (out of precautions taken during the ongoing COVID-19 pandemic) between February 2021 and June 3, 2021.

On June 10, 2021, Plaintiffs and the Pfizer Defendants agreed to settle the claims against Pfizer in return for a cash payment of $345 million inclusive of all fees and costs, for the benefit of the certified Class.  On June 14, 2021, the Settling Parties informed the Court that, with the assistance of Judge Phillips, they had agreed to settle all claims asserted in the Litigation.

On June 23, 2021, after the Settling Parties signed a binding Term Sheet and informed the Court of the Settlement, the Court entered Memoranda and Orders resolving the pending motions for summary judgment and *Daubert* motions as to the Mylan Defendants.  The Court denied the Mylan Defendants' motion for summary judgment as to the Plaintiffs' generic delay claim, but granted the Mylan Defendants' motion for summary judgment as to Plaintiffs' branded exclusion and RICO claims.  The Court also granted in part and denied in part the Mylan Defendants' *Daubert* motions.  ECF Nos. 2380, 2381.

## III.     TERMS OF THE SETTLEMENT

The Settlement Agreement, attached as Exhibit 1 hereto, provides that the Pfizer Defendants will deposit $5 million of the Settlement Amount into an Escrow Account within 5 days from the District Court's order granting preliminary approval.  Settlement Agreement, ¶ 2.1.  The remainder of the Settlement Amount will be deposited by the later of August 24, 2021 or thirty (30) days before the date of the Fairness Hearing.  *Id.*  The cost of settlement administration, including the costs of notice to the Class, taxes, and tax expenses, will be funded by the Settlement Fund (*id.*, ¶¶ 2.7, 2.8), which consists of the Settlement Amount, plus all interest and accretions thereto.  *Id.*, ¶ 1.35.  The Settlement Agreement also provides for a Settlement Administrator.  *Id.*, ¶ 1.33.  Class Counsel propose that the Court appoint A.B. Data, Ltd. to serve as the Settlement Administrator.  The Court previously approved A.B. Data to provide notice to the Class.  A.B. Data has fulfilled

all of its responsibilities to date, has the requisite expertise, experience and capabilities, and is fully familiar with the facts of this case and the notice program that will be required here to comport with Rule 23 and due process.  The proposed notice plan is discussed below and in the accompanying Schachter Declaration. *See* Exhibit 2.

In summary, Plaintiffs and A.B. Data propose a notice program that will be substantially similar to the Court-approved notice program that was used successfully to provide notice of pendency of the Litigation to the certified Class.  Consistent with the Court's previous findings (ECF No. 2240), the proposed notice program also satisfies the requirements of Rule 23 and due process.  It includes: (i) individual notice by email or mail to all Class Members who can reasonably be located; (ii) publication notice in a national publication likely to be read by Class Members; (iii) digital media advertisements posted on websites likely to be viewed by Class Members; (iv) a press release to be widely disseminated; (v) a settlement website that will contain information about the Litigation and the Settlement, as well as all important Settlement documents; and (vi) a toll-free phone number and call center to field inquiries.  The Settlement website will allow Class Members to file their claims electronically. *See* Schachter Declaration, *passim*.

The Notice (Settlement Agreement, Exhibit B) explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim and pursuant to the proposed Plan of Allocation.  The Notice also advises Class Members of: (i) Class Counsel's application for an award of attorneys' fees and expenses, as well as Plaintiffs' application for an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the certified Class; (ii) the procedures for objecting to the Settlement, the Plan of Allocation, Class Counsel's request for attorneys' fees and expenses, and/or Plaintiffs' application for an award pursuant to 15 U.S.C. §78u-4(a)(4); and (iii) the date and time for the Fairness Hearing.  Notice (Settlement Agreement, Exhibit B) at 2, 4, 11-12, 14.

The Plan of Allocation, attached as Exhibit 3 hereto, will create two pools of funds from the Net Settlement Fund, one for individual consumers and one for third-party payors. The allocation of funds as between the two pools is based on the work done by Plaintiffs' experts and tracks, as a percentage, the relative damages suffered by individual consumers and third-party payors as calculated in the Merits Expert Report of Professor Meredith Rosenthal. Within each pool, funds will be distributed on a *pro rata* basis to all eligible Class Members who file a timely and valid Proof of Claim. Funds remaining in one pool will spill-over to the other pool in certain circumstances. Plaintiffs anticipate that all funds will be distributed to Class Members pursuant to the Plan of Allocation.[4] There is no right of reversion under the Settlement and under no circumstances will any portion of the Settlement Amount be returned to the Pfizer Defendants once the Settlement becomes final.

In exchange for the benefits provided under the Settlement Agreement, Class Members will release the Pfizer Defendants as provided for in Paragraphs 1.8, 4.1 & 4.2 of the Settlement Agreement. The Settling Parties have also agreed that Pfizer Defendants shall have the option to terminate the Settlement Agreement in the event that the Court permits a second opportunity to opt out of the Class and valid requests for exclusion from the Class exceed certain criteria. Settlement Agreement ¶ 8.2.

---

[4] Class Counsel anticipate that, under the Plan of Allocation's distribution terms, there will be no remaining funds for *cy pres* distribution. If there is any remaining balance in the Net Settlement Fund after the initial distribution—*e.g.* due to uncashed checks—the Settlement Administrator will reallocate such balance among Class Members pursuant to the terms of the Plan of Allocation. Any funds remaining for *cy pres* distribution should therefore be *de minimis*, existing only if a Class Member does not cash their check or otherwise deposit or accept their distribution after submitting a claim, *and* after additional distributions to qualifying claimants.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Court Should Grant Preliminary Approval of the Proposed Settlement

Settlement is strongly favored as a method for resolving disputes.  *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. State of Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972).  This is particularly true in large, complex class actions such as the current case.  *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Under Rule 23(e), the trial court must approve a class action settlement.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").  The procedure for review of a proposed class action settlement is a well-established two-step process.  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see Manual for Complex Litigation* ("*Manual*"), §13.14 (4th ed. 2004).  First, the court conducts a preliminary approval analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement.  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).  Second, after the court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard at a final fairness hearing where the court considers the merits of the settlement to determine if it should be finally approved.  *See In re Motor Fuel*, 258 F.R.D. at 675; *accord*, 4 William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*"), §13.10 (5th ed. 2021).

Through this Preliminary Approval Motion, Plaintiffs request the Court take the first step in this two-step process: granting preliminary approval.  Preliminary approval should be granted if "the proposed settlement was 'neither illegal nor collusive and is within the range of possible approval.'"  *Newberg*, §13.10; *In re Syngenta AG. MIR 162 Corn Litig.*, No. 14-MD-2591-JWL,

2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (Lungstrum, J.) (same).  Although "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be *preliminarily* approved.  *In re Motor Fuel*, 258 F.R.D. at 675-76, 680 ("While the Court will consider these factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.").

## B.   Standards for Preliminary Approval of a Proposed Settlement

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure the inquiry at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(2)(B).  Rule 23(e)(2) provides that a class action settlement may be approved by the court "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In deciding whether to approve a class action settlement, courts should consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, in deciding whether a settlement is "fair, reasonable, and adequate," courts in the Tenth Circuit traditionally consider whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*Syngenta*, 2018 WL 1726345, at *2 (citing *Tenille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).  Because the Tenth Circuit's additional factors "largely overlap" with the Rule 23(e)(2) factors, "with only the fourth factor not being subsumed" into it, courts in this District now "consider[] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's factors.  *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

As discussed below, the proposed Settlement for $345 million in cash easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors.  Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

### C.   The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1.   Co-Lead Counsel Have Adequately Represented the Class

Co-Lead Counsel have adequately represented the certified Class as required by Rule 23(e)(2)(A).  Prior to reaching the Settlement, Co-Lead Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with numerous experts.  Co-Lead Counsel vigorously prosecuted the Litigation by, among other activities: (i) investigating the relevant factual events; (ii) drafting the detailed, 400-page Complaint; (iii) successfully opposing Defendants' motions to dismiss; (iv) engaging in extensive document and written discovery, through both coordinated and non-coordinated phases, including reviewing over 11 million pages of documents produced by Defendants and third parties; (v) successfully moving for class certification supported by four expert reports; (vi) successfully opposing

Defendants' petition to appeal the same pursuant to Rule 23(f); (vii) vigorously opposing summary judgment; (vii) preparing for a month-long trial; and (viii) at the same time, preparing for and engaging in a lengthy mediation session with Judge Phillips, preceded by detailed mediation submissions.  As a result of these extensive efforts, spanning thousands of hours of work and several years, Co-Lead Counsel have achieved a significant all-cash Settlement of $345 million with the Pfizer Defendants, which will provide immediate relief to the certified Class.

Each of the Co-Lead Counsel (Elizabeth C. Pritzker of Pritzker Levine LLP, Paul J. Geller of Robbins Geller Rudman & Dowd LLP, Rex A. Sharp of Sharp Law LLP, Warren T. Burns of Burns Charest LLP, and Lynn Lincoln Sarko of Keller Rohrback L.L.P.) has significant experience prosecuting complex antitrust and RICO class actions.  Courts around the country and in this Circuit recognize the expertise and ability of Co-Lead Counsel to litigate effectively complex class actions.[5]

---

[5]     *See, e.g., Harris v. Chevron U.S.A., Inc.*, No. 6:19-cv-00355-SPS, 2020 WL 8187464, at *4 (E.D. Okla. Feb. 27, 2020) (noting that Sharp Law LLP is among the "[f]ew law firms [who] are willing to litigate cases requiring review of tens of thousands of pages of detailed contracts and accounting records, advance payment of hundreds of thousands of dollars in consultants and expert witness fees, and investment of substantial time, effort, and other expenses throughout an unknown number of years to prosecute a case with high risk, both at the trial and appellate levels"); *In re SandRidge Energy, Inc. Sec. Litig.*, No. CIV-12-1341-G, 2019 WL 4752268, at *9 (W.D. Okla. Sept. 30, 2019) ("the attorneys of Robbins Geller are experienced class-action litigators and are sufficiently committed to this litigation"); *In re WorldCom, Inc. ERISA Litig.*, No. Civ. 02-4816 (DLC), 2004 WL 2338151 at *10 (S.D.N.Y. 2004) (regarding Lynn Sarko's work as lead counsel, Judge Cote stated, "Lead Counsel has performed an important public service in this action and has done so efficiently and with integrity . . . .  [Keller Rohrback] has also worked creatively and diligently to obtain a settlement from WorldCom in the context of complex and difficult legal questions"); The Hon. H. Russel Holland, D. Alaska, Presentation to Alaska Chapter of the Federal Bar Association, Nov. 12, 2015 (regarding Lynn Sarko's administration of two court-supervised $1.128 billion *Exxon* settlement funds, Judge Holland observed: "[T]he money . . . . went into the Exxon Qualified Settlement Fund that was administered by Lynn Sarko and his law firm in Seattle. Those guys did a superb job. And it was a huge effort to notify all potential claimants, to get the claims documented, to evaluate the documentation, and then to apply the sharing concepts to the individual losses. . . . I can't imagine that they could possibly have done a better job."); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *10 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (noting that Pritzker Levine, as one of three firms representing the certified student-athlete class, is "among the

To support a finding of adequate representation, the parties must "[b]alanc[e] the entirety of the case with the ultimate resolution." *Chavez Rodriguez v. Hermes Landscaping, Inc*., 2020 WL 3288059, at *3 (D. Kan. June 18, 2020). Here, the collective tenacity and sophistication of Class Counsel was instrumental in achieving the substantial $345 million Settlement, which will now provide significant and immediate relief to the certified Class.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by courts in the Tenth Circuit and assesses whether "'the settlement was fairly and honestly negotiated.'" *Syngenta*, 2018 WL 1726345, at *2. Settlements are fairly and honestly negotiated when "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997); *see also Ashley v. Reg'l Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Tr.*, No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5-*6 (D. Colo. Feb. 11, 2008) (finding that the settlement was fairly and honestly negotiated when the parties engaged in formal settlement mediations over four months).

The use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to

_____

most well-respected class action litigation firms in the country, as this Court has witnessed in numerous cases. And the efficiency with which plaintiffs' counsel achieved such exceptional results is laudable because it benefits the classes." (footnote omitted)).

ensure that the proceedings were free of collusion and undue pressure"); *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017), report and recommendation adopted, No. 12-cv-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

Here, the Settlement is the product of arm's-length negotiations between the Settling Parties, advised by their sophisticated counsel, who possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.  During mediation, the relevant legal issues were fully presented, not only for the benefit of the mediator, but also for the Settling Parties to effectively evaluate liability and damages.  As a result, the Settling Parties were well prepared for the serious negotiations that led to the Settlement and were well-informed of the respective parties' arguments.  *See In re Motor Fuel*, 258 F.R.D. at 675-76.

Moreover, the settlement negotiations were conducted under the direct supervision of retired U.S. District Judge Layn R. Phillips, one of the most experienced and well-respected mediators in the country.  In the mediation process with Judge Phillips, Plaintiffs and the Pfizer Defendants delivered several detailed virtual presentations.  Throughout, the Pfizer Defendants maintained that Plaintiffs' claims were without merit and denied all allegations of wrongdoing whatsoever with respect to the subject matter of the Litigation.  The Settlement reached resulted from mediations supervised by Judge Phillips, whose involvement, skill, and experience ensured the parties engaged in fair, arm's-length negotiations.  "Accordingly, a presumption of fairness, adequacy, and reasonableness attaches to the Settlement achieved here."  *In re Molycorp*, 2017 WL 4333997, at *4; *accord Chavez Rodriguez*, 2020 WL 3288059, at *3 (determining that a settlement "negotiated

through a formal mediation" with a skilled mediator supported the conclusion that the settlement "is a product of an arm's length negotiation").

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should also balance the benefits afforded to the certified Class, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with the Litigation. *See* Rule 23(e)(2)(C)(i). This third factor is based on the premise that the Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008). This consideration largely overlaps with the second ("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt'") and third factors ("'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'") traditionally considered by courts in the Tenth Circuit. *Chavez Rodriguez*, 2020 WL 3288059, at *2-*3. Thus, courts consider these factors to be "subsumed under Rule 23's requirement." *Id*.

### 4. Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt

The presence of serious legal and factual questions concerning the outcome of the Litigation weighs heavily in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). "Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas*, 234 F.R.D. at 693-94. The

presence of questions of law and fact "tips the balance in favor of settlement because settlement, creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely, LLC*, 2008 WL 4816510, at *13; *see also Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation. . . uncertain and further litigation would have been costly").

The current proposed Settlement notwithstanding, there remain numerous factual and legal issues on which the Settling Parties still intensely disagree.  The Pfizer Defendants deny that they have engaged in any wrongdoing as alleged by Plaintiffs, deny any liability whatsoever for any of the claims alleged by Plaintiffs, and deny that Plaintiffs have suffered any injuries or damages. Conversely, Plaintiffs have advanced numerous complex legal and factual issues under federal and state antitrust and federal RICO statutes.  The issues on which the Settling Parties disagree are many, but include: (1) whether any of the Pfizer Defendants engaged in conduct that would give rise to any liability to Plaintiffs under the RICO statute or certain state antitrust laws; (2) whether the Pfizer Defendants have valid defenses to any such claims of liability; (3) the amount of damages Plaintiffs suffered by reason of the Pfizer Defendants' alleged wrongdoing, as well as the methodology for estimating any such damages; (4) whether the Court properly certified the Class; and (5) whether the Pfizer Defendants had other meritorious defenses to the alleged claims.  Had the parties not settled this Litigation, the Court or a jury would ultimately be required to decide these issues, placing the ultimate outcome in doubt. While Plaintiffs believe their claims would be borne out by the evidence presented at trial, they recognize that there are significant hurdles to proving liability or even proceeding to trial.[6]

---

[6]     Following the parties' agreement to the terms of the Settlement, the Court granted summary judgment to the Mylan Defendants on Plaintiffs' RICO and branded-competition antitrust claims. Notwithstanding Plaintiffs' view on whether these rulings will be reversed on either reconsideration

**5.**      **Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation**

Considering the risks associated with continued litigation, as discussed above, the immediate, substantial relief offered by the Settlement outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future." *Syngenta*, 2018 WL 1726345, at *2; *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1244 (D.N.M. 2012) ("'[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)).

Further, this Litigation has already been pending for over four years, and the Settling Parties and the Court would expend significant additional time, resources, costs to proceed to trial, and the inevitable appeals likely extending years into the future. *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial"); *Lucas*, 234 F.R.D. at 694 ("If this case were to be litigated, in all probability it would be many years before it was resolved."). Considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation, Plaintiffs could receive an amount significantly less than the Settlement Amount, or nothing at all for their claims against Pfizer.

"By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief" now. *Lucas*, 234 F.R.D. at 694; *see also McNeely*, 2008 WL 4816510, at *13 ("The class . . . is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."). "[The] immediate recovery in this case outweighs the time and costs inherent in complex securities

---

or appeal, these rulings demonstrate the significant hurdles—and likely protracted nature of the litigation—if a settlement had not been reached.

litigation, especially when the prospect is some recovery versus no recovery." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. Aug. 10, 1976) ("In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'"); *accord Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014), *appeal dismissed*, 809 F.3d 555 (10th Cir. 2015).  Thus, the $345 million immediate recovery, particularly when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 6.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the proposed notice program and claims administration process are effective.  The settlement notice plan involves individual notice by email or First-Class Mail to all Class Members who can be identified with reasonable effort, supplemented by various forms of internet and publication notice, targeted to reach likely EpiPen purchasers.  *See* Schachter Declaration, ¶¶ 7-18 & Exhibit B thereto (Notice Plan).  In addition, a case-designated website will be created where settlement-related and other key documents will be posted, including the Settlement Agreement, Notices, Proofs of Claim (Claim Forms), and Preliminary Approval Order. *Id.* ¶¶ 7, 19. The Settlement website will also allow for Proof of Claim forms to be filed electronically.

Plaintiffs propose a fair and orderly claims administration process in which Class Members who wish to participate in the Settlement will complete and submit Proofs of Claim in accordance with the instructions contained therein.  *See id.* ¶¶ 20-21; Plan of Allocation (Exhibit 3).  The Settlement Administrator will distribute the Net Settlement Fund to Authorized Claimants on a *pro rata* basis under a Court-approved Plan of Allocation.  *See* Plan of Allocation (Exhibit 3).  The Plan

of Allocation proposed here was prepared with information provided by Plaintiffs' experts and in
consultation with A.B. Data.

### 7.        Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,
including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Notice provides that Class
Counsel will apply to the Court for an award of attorneys' fees in an amount up to one-third of the
Settlement Amount, plus payment of Plaintiffs' counsel's expenses incurred in connection with this
Litigation, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.

Class Counsel's anticipated fee request is well within the range that other courts in this
District and the Tenth Circuit have approved in complex class actions.  *See*, *e.g.*, *Chavez Rodriguez*,
2020 WL 3288059, at *4 (awarding attorneys' fees of 33% of the settlement amount after costs);
*Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *1 (D. Kan.
May 21, 2019) (awarding attorneys' fees of 33% of the gross settlement fund); *In re Universal Serv.*
*Fund Tel. Billing Pracs. Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12,
2011) (finding a fee of one-third of the total amount of the settlement fund to be "a reasonable and
appropriate fee").

With respect to the timing of payment, the Settlement Agreement provides that any
Plaintiffs' attorneys' fees and expenses, as awarded by the Court, shall be paid to Class Counsel
within ten (10) days of the Court executing the Judgment and an order awarding such fees and
expenses, subject to Class Counsel's several obligation to make appropriate refunds or repayments
to the Settlement Fund plus interest thereon if, and when, as a result of any appeal and/or further
proceedings on remand, or successful collateral attack, the fee or expense award is lowered or the
Settlement is disapproved by a final order not subject to final review.  Settlement Agreement, ¶ 6.2;
*see Syngenta*, 2021 WL 102819, at *4 (D. Kan. Jan. 12, 2021) (approving immediate payment of

plaintiff counsel attorneys' fees and costs) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020)) (finding immediate payment provisions have generally been approved by federal courts); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998); *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) ("The quick-pay provision does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid."); *In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:08-WP-6500, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) ("[q]uick-pay clauses substantially reduce the leverage a professional objector can wield"); Bolch Jud. Inst., Guidelines and Best Practices: Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions 21 (2018), (suggesting that the parties' efforts to discourage bad-faith objectors "include a 'quick-pay clause'").[7]

### 8.    The Settling Parties Have No Additional Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements.  The Settling Parties have no additional agreements.

### 9.    Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether certified Class Members are treated equitably.  As reflected in the Plan of Allocation (Exhibit 3), Class Members are treated equitably here.  The Net Settlement Fund will be allocated based on estimated damages as calculated in the Merits Expert Report of Professor Meredith Rosenthal and then distributed on a *pro rata* basis to Class Members based on total amounts paid for EpiPens during the Class Period.  Two separate pools are established for TPPs and individual consumers because of their differing claim rates.  The

---

[7] *Available at:* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1003&context=bolch.

Plan of Allocation provides for a spill-over from one pool to the other if one pool exhausts but the other does not.  Therefore, all Class Members are treated alike in receiving their *pro rata* share of the Settlement.

### D.     The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit

The final, additional factor courts in the Tenth Circuit consider is "'the judgment of the parties that the settlement is fair and reasonable.'"  *Chavez Rodriguez*, 2020 WL 3288059, at *2.  In analyzing this factor, courts recognize that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'"  *O'Dowd v. Anthem, Inc*., No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019); *Hapka v. CareCentrix, Inc*., No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus v. State of Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."); *see also Crocs*, 306 F.R.D. at 690 (finding that, even without formal discovery, the parties were able to give adequate consideration to the strengths and weaknesses of their respective claims).

Class Counsel—all senior attorneys at law firms with considerable experience in complex antitrust and civil RICO class actions—only agreed to settle this Litigation after extensive investigation, written discovery, motion practice, deposition testimony, data analyses, and rigorous arm's-length negotiations.  Additionally, as noted above, Plaintiffs and their Counsel have compared the substantial recovery the certified Class will receive from the Settlement against the risks, delays, and uncertainties of continued litigation and appeals.  Plaintiffs and their Counsel believe the Settlement is fair, adequate, and reasonable and should be approved.  The Pfizer Defendants likewise believe the Settlement should be approved.  Because the above factors weigh in favor of the Settlement, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

V.    **THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE**

A.    **The Court Should Preliminarily Approve the Proposed Notice of Settlement**

Rule 23(c)(2)(B) requires that notice in a Rule 23(b)(3) class action constitute "the best notice . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also, e.g.*, *Fager*, 854 F.3d at 1170 (same); *Tennille*, 785 F.3d at 436 (same).  "'The hallmark of the notice inquiry . . . is reasonableness.'"  *Lucas*, 234 F.R.D. at 696.

Plaintiffs have submitted to the Court for approval the Notice and Summary Notice that will be provided to the certified Class. In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notice clearly describes: (i) the nature of the (proposed) Settlement and the (proposed) Plan of Allocation; (ii) the nature and extent of the release of claims; (iii) Class Counsel's intent to request attorneys' fees, and expenses; (iv) the method for submitting a Proof of Claim; (v) the procedure and timing for objecting to the Settlement; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement.  The Notices also provide Class Members with a toll-free telephone number, email address, and a Settlement website where Class Members may obtain additional information.  Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them a fair opportunity to object.  As such, the form and

manner of the proposed Notice meets the requirements of both Rule 23 and due process.  The Court should approve the Notices and the manner through which they will be delivered and communicated to the certified Class.

**B.      An Additional Settlement Opt-Out Is Neither Required By Due Process Nor Warranted Under Rule 23(e)**

The initial class notice in this Litigation met and surpassed the constitutional standards for due process and all the requirements of Rule 23, and there has been no change in information available to the certified Class since the first notice that warrants an additional, discretionary opt-out at settlement.  *See* ECF No. 2240 (order approving notice).  From start to finish of the class certification notice process, Class Counsel and A.B. Data administered a comprehensive notice program that included: acquiring expert input, using best practices recommended by the Federal Judicial Center, and, at every stage, coordinating the notice program with the United States District Court for the District of Kansas.

As required by due process and Rule 23(c)(2)(B), the initial class notice was "the best practicable [notice], 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Class Counsel made every reasonable effort to identify and deliver direct, individual notice to all Class Members.  *See* Fed. R. Civ. P. 23(c)(2)(B).  And to the greatest extent practicable under the circumstances, Class Counsel apprised all interested parties who could be contacted with reasonable effort of the impending Litigation, their rights to participate in or be excluded from the Litigation, and the legal effect(s) of either choice.

Not only did the exclusion language within the notice sufficiently inform Class Members of their right to be excluded from the Class (and the method and deadline for doing so in clear, concise, conspicuous, and plainly written language, so as to be easily understood by the average class

member) – it did so repeatedly throughout the notice.  *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1120 (9th Cir. 2018) (reviewing the sufficiency of previous class notice to satisfy due process related to class settlement); *see also Mullane*, 339 U.S. at 315 (holding that the measure for sufficiency of notice is reasonableness).  The explicit exclusion language clearly informed Class Members of the legal consequences of either remaining in or opting out of the Litigation and expressly stated the possible outcomes of the Litigation included trial or settlement.  *See* ECF No. 2209 (at 2209-2 (Short Form Notice) & 2209-3 (Notice)) & ECF No. 2240 (order approving notices).  Class Members were given reasonable opportunity to opt-out within seventy-five days of issuance of the notice, from November 1, 2020, until January 15, 2021.  *Manual*, §21.321 ("Courts usually establish a period of thirty to sixty days (or longer if appropriate) following mailing or publication of the notice for class members to opt out.").  Therefore, as part of the Settlement Agreement, the Settling Parties have expressly agreed not to provide a second opt-out opportunity.

Allowing an unnecessary second opt-out opportunity could disrupt the Settlement Agreement the parties have carefully negotiated, putting at risk the $345 million recovery for the Class.  Courts consistently find that fair settlements do not require a second opt-out provision.  *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 634-35 (9th Cir. 1982); *Low*, 881 F.3d at 1121-22; *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1306 (S.D. Cal. 2017) (concluding that the initial notice and exclusion opportunity "undoubtedly" met the due process requirements); *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *32 (D.N.M. February 27, 2013) (noting "the rule defers to the district court's discretion and does not proscribe that a fair settlement must allow class members the opportunity to opt out") (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009)).  "Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached."  *Denney v.*

*Deutsche Bank AG,* 443 F.3d 253, 271 (2d Cir. 2006); *see also, e.g., Low,* 881 F.3d at 1121 ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. . . . [Plaintiff's] rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.").

Additionally, there are no factors warranting a discretionary opt-out at settlement under Rule 23(e)(4).  The initial notice expressly conveyed to Class Members that possible outcomes of the Litigation included trial or settlement.  The only relevant change in information available to Class Members since prior notice is that Plaintiffs and the Pfizer Defendants have now agreed to a $345 million settlement, which, as noted, provides immediate and valuable relief to the Class. "Courts have rejected the suggestion that a second opt-out should be granted as a matter of course, even if the terms of the settlement change after the expiration of the initial opt-out period." 2 McLaughlin on Class Actions §6:21 (17th ed. 2020); *accord Lowery,* 2013 WL 1010384, at *42 (concluding that the change in circumstances of a more "significant recovery" at settlement than previously anticipated by the class weighed against providing an additional opt-out opportunity).

In rejecting the provision of a second opt-out period, multiple federal courts have noted that the Rule 23(c)(2) procedures for class certification provide absentee class members in a 23(b)(3) action with a choice: exclude themselves from the case or remain a party and be bound by the final judgment.  This procedure "requires each absentee member to take affirmative action at the outset of the suit if he or she wishes to be excluded from the class."  *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1104 (5th Cir. 1977); *accord In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 325, 345-46 (E.D.N.Y. 2010) (concluding that "[i]f any class members wished to control the prosecution or settlement of their own claims, they could have opted out or sought to intervene after notice of pendency was given") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*

396 F.3d 96, 114-115 (2d Cir. 2005)).  These courts almost uniformly note the high cost to the

settlement process at little benefit to objectors because the class members have had previous

opportunities to opt-out.  This was the court's reasoning in *In re MetLife Demutualization Litig.*

when it declined to offer a second exclusion opportunity at settlement:

> Where, as here, a class action has been certified and class members have had
> a previous opportunity to request exclusion by opting out of the class, the court may
> afford individual class members a new opportunity to request exclusion, but it is not
> required to do so.  In the present cases there shall not be provided a second
> opportunity for exclusion.  The administration of any new exclusion procedures
> would be expensive.  The number of policyholders who would opt out now, after
> failing to exclude themselves previously, is likely to be minimal to the vanishing
> point.

689 F. Supp. 2d at 325; *accord In re Washington Mutual, Inc.*, 2015 WL 12803633, at *1 (W.D.

Wash. June 22, 2015) (concluding that a second opt-out opportunity need not be provided "in light

of the extensive notice program undertaken in connection with the earlier settlements, the ample

opportunity provided to Class Members to request exclusion from the Class at that time, and the

fact that there would be no potential benefit to any Class Member who opts out").  As the Second

Circuit noted, the costs are potentially high for allowing objectors to demand additional opt-out

periods after settlement agreements whenever there is a change of information from the last notice

and opportunity for exclusion: "Requiring a second opt-out period as a blanket rule [on any changed

information] would disrupt settlement proceedings because no certification would be final until

after the final settlement terms had been reached." *Denney*, 443 F.3d at 271.

Where, as here, the prior class notice was adequate, the explicit exclusion language therein

was sufficient and reasonable, and the costs of providing an additional opt-out outweigh any

potential benefits, courts have overwhelmingly approved settlement agreements that do not provide

for an additional opt-out opportunity.[8]  Plaintiffs and Pfizer Defendants respectfully submit that no

---

[8]      *See, e.g.*, *Low*, 881 F.3d at 1120-22 (weighing the benefit and fairness of the settlement as
a whole and determining district court acted well within its discretion by approving the settlement

additional opt-out opportunity should be provided during notice to the Class for settlement purposes.

### C.   Appointment of A.B. Data to Serve as the Settlement Administrator Is Proper

Plaintiffs request that the Court appoint A.B. Data to serve as the Settlement Administrator with respect to the Settlement, which includes providing notice of the Settlement and administering the claims process and distribution of the Net Settlement Fund.  A.B. Data is a highly experienced and well-qualified notice administrator (*see* Schachter Declaration at Exhibit A), and was appointed by the Court and successfully administered the class certification-stage notice.  Class Counsel have

---

without a second opt-out period); *Denney*, 443 F.3d at 271 ("Neither due process nor Rule 23(e)[(4)] requires…a second opt-out period whenever the final terms [of a settlement] change after the initial opt-out period."); *Wal-Mart*, 396 F.3d at 114 (holding that a single opt-out at certification of a settlement class was sufficient to protect a party's interest in the proceedings and right to be excluded); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289-90 (9th Cir. 1992) (holding that because class members were given an opportunity to opt out, notice of the proposed settlement, and the opportunity to object, no additional opt-out would be provided); *Officers for Just.*, 688 F.2d at 635 (finding "no authority of any kind suggesting that due process requires members of a Rule 23(b)(3) be given a second chance to opt out"); *Davis v. Abercrombie*, No. 11-00144 LEK-BMK, 2017 WL 2234175, at *9 (D. Haw. May 22, 2017) (rejecting plaintiff's argument that a second opt-out period is necessary to protect class members' due process rights or warranted under its discretionary powers); *Low*, 246 F. Supp. 3d at 1306 (concluding that the initial notice and exclusion opportunity "undoubtedly" met the due process requirements); *Lowery*, 2013 WL 1010384, at *42 (concluding that the parties  arriving at more favorable terms in the final settlement than previously known or anticipated by class members *weighed against* the need for a late opt-out); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 344 (S.D.N.Y. 2005) *aff'd in part, vacated in part on other grounds, remanded to Denney*, 443 F.3d 253 (finding no further opt out opportunity was required when prior notice was "more than adequate, both procedurally and with respect to its content").  District courts have very rarely refused to approve a settlement agreement for lack of a second opt-out provision. Indeed, our research has only identified two such cases in the same federal district: the District of Maine.  That court did so twice and for similar reasons of fairness, due process, and the efficient administration of justice within the context of conditions affecting class members at settlement that were significantly different than those anticipated at the initial opt-out opportunity.  *See Dare v. Knox Cnty.*, 457 F. Supp. 2d 52 (D. Me. 2006); *see also Tardiff v. Knox Cnty.*, 567 F. Supp. 2d 201, 204, 206, 209-10 (D. Me. 2008) (applying the *Dare* Court's interpretation of liberal judicial discretion under Rule 23(e)(4)).

worked favorably with A.B. Data and are confident in the firm's ability to continue the successful administration of notice and the Settlement for this Litigation.

### D.     Appointment of Huntington Bank as Escrow Agent Is Proper

Plaintiffs request the Court appoint Huntington Bank as Escrow Agent. Huntington is a well-known and highly-respected global bank providing consumers, corporations, governments and institutions with a broad range of financial services.  Class Counsel in this case have worked favorably with Huntington in the past.  Based on Huntington's experience and familiarity with performing the services of an escrow agent, Class Counsel are confident Huntington will properly perform the duties of Escrow Agent as ordered by the Court.

### E.     Proposed Schedule of Settlement Events

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the following proposed procedural schedule:

| DATE | EVENT |
|---|---|
| July 14, 2021 | Plaintiffs file Motion for Preliminary Approval of Settlement |
| July 23, 2021 | Pfizer provides Class Action Fairness Act Notice to State Attorneys General |
| July 28, 2021 | Hearing on Preliminary Approval of Settlement [Date and Time TBD by Court] |
| August 4, 2021 | Settlement Notice Program Begins |
| September 10, 2021 | Plaintiffs file Motion for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| September 24, 2021 | Objection Deadline and Deadline for State Attorneys General to file Comments/Objections |
| October 15, 2021 | Plaintiffs file Response to Objections for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| October 25 or 26, 2021 | Hearing on Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards [Date and Time TBD by Court] |

## VI.   THE COURT SHOULD STAY PROCEEDINGS IN THE ACTION AS TO THE PFIZER DEFENDANTS ONLY

The Settling Parties further request that the Court stay all proceedings in the Action as to the Pfizer Defendants only pending a final determination as to whether the Settlement should be

approved, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement. Courts routinely stay proceedings pending final approval of settlement agreements in circumstances such as these. *See, e.g.*, Memorandum and Order at 19 (Lungstrum, J.), *Syngenta*, No. 14-md-2591-JWL (D. Kan. April 10, 2018), ECF No. 3531; Order Preliminarily Approving Settlement at 6 (Lungstrum, J.), *In re Urethane Antitrust Litig.*, No. 04-md-1616-JWL (D. Kan. June 13, 2006), ECF No. 380; *Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 514 (D. Kan. 2002) ("All further litigation of this proceeding is hereby stayed pending final determination of the acceptance of the settlement agreement at the fairness hearing."); *Albrecht v. Oasis Power, LLC*, No. 1:18-cv-1061, 2019 U.S. Dist. LEXIS 162876, at *19 (N.D. Ill. Sep. 24, 2019) ("Pending final determination of whether the Settlement should be approved, all discovery and all proceedings in the Litigation unrelated to the approval of the Settlement are stayed."); *In re Sony PS3 "Other OS" Litig.*, No. 10-cv-01811-YGR, 2017 WL 5598726, at *6 (N.D. Cal. Nov. 21, 2017) (same).

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' motion for preliminary approval and enter the agreed proposed Preliminary Approval Order, attached as Exhibit A to the Settlement Agreement and submitted in Word format herewith.

Respectfully submitted,

DATED: July 14, 2021             KELLER ROHRBACK L.L.P.

By: */s/ Lynn Lincoln Sarko*
LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:  206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

KELLER ROHRBACK L.L.P.
ALISON E. CHASE
801 Garden Street, Suite 301
Santa Barbara, CA  93101
Telephone:  805/456-1496
805/456-1497 (fax)
achase@kellerrohrback.com

SHARP LAW LLP
REX A. SHARP
RYAN C. HUDSON
4820 West 75th Street
Prairie Village, KS  66208
Telephone:  913/901-0505
913/901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com

ROBBINS GELLER RUDMAN
  & DOWD LLP PAUL J. GELLER
STUART A. DAVIDSON
BRADLEY M. BEALL
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN O. O'MARA
ARTHUR L. SHINGLER III
LEA MALANI BAYS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bomara@rgrdlaw.com
ashingler@rgrdlaw.com
lbays@rgrdlaw.com

PRITZKER LEVINE LLP

ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450
Emeryville, CA  94608
Telephone:  415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com


BURNS CHAREST LLP
WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

*Co-Lead Counsel and Liaison Counsel for Class Plaintiffs*

THE LANIER LAW FIRM
W. MARK LANIER
RACHEL LANIER
CRISTINA DELISE
10940 W. Sam Houston Parkway North, Suite 100
Houston, TX  77064
Telephone:  713/659-5200
713/659-2204 (fax)
mark.lanier@lanierlawlirm.com
rachel.lanier@lanierlawfirm.com
cristina.delise@lanierlawfirm.com

*Special Trial Counsel for Class Plaintiffs*

BOIES SCHILLER FLEXNER LLP
MATTHEW S. TRIPOLITSIOTIS
DUANE LOFT
333 Main Street
Armonk, NY 10504
Telephone:  914/749-8200
914/749-8300 (fax)
mtripolitsiotis@bsfllp.com
dloft@bsfllp.com

***Class Counsel***