# Exhibit 1

UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | ) ) ) | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) |
| | ) ) | STIPULATION OF CLASS ACTION SETTLEMENT |
| This Document Relates To: | ) ) | |
| CONSUMER CLASS CASES. | ) ) ) | |

This Stipulation of Class Action Settlement, including all exhibits attached hereto (collectively, the "Settlement Agreement") is entered into as of July 14, 2021, by and between the Plaintiff Class Representatives (or "Plaintiffs," as defined below in ¶ 1.24), on behalf of themselves and as representatives of the Class (as defined below in ¶ 1.7), and Defendants Pfizer Inc., Meridian Medical Technologies, Inc., and King Pharmaceuticals, Inc. (n/k/a King Pharmaceuticals LLC) (collectively, the "Pfizer Defendants").  Expressly not included in this Settlement Agreement are any and each of the following: Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., Viatris Inc., or Heather Bresch (collectively, the "Mylan Defendants" and with the Pfizer Defendants, "Defendants").  Together the Plaintiff Class Representatives, the Class, and the Pfizer Defendants are referred to for purposes of this Settlement Agreement as the "Settling Parties."

## I.      THE LITIGATION

In 2016, numerous putative class action lawsuits were filed against both the Mylan Defendants and the Pfizer Defendants "involving allegations of anticompetitive conduct or unfair methods of competition" with respect to the EpiPen, a spring-loaded injector that delivers a pre-measured and pre-loaded amount of epinephrine for the emergency treatment of anaphylaxis. ECF No. 1. These cases were transferred and/or centralized by the Judicial Panel on Multidistrict Litigation into MDL 2785, *In re EpiPen Marketing, Sales Practices, and Antitrust Litigation*, No. 17-md-2785, in the District of Kansas before the Honorable Daniel D. Crabtree (referred to herein as "*In re EpiPen* MDL" or the "Action") on August 4, 2017.  ECF No. 1. *In re EpiPen* MDL includes an end payor Class of consumer plaintiffs and third-party payors.

On September 12, 2017, the Court appointed Co-Lead Counsel for Plaintiffs, and approved Plaintiffs' proposed organizational structure, including Liaison Counsel and a Steering Committee. ECF No. 40.  Since that time, the Court has substituted a member of the Steering Committee (ECF No. 2111) and added an additional Co-Lead Counsel (ECF No. 2018).

On October 17, 2017, Plaintiffs filed a Consolidated Class Action Complaint ("Complaint") (ECF No. 60) raising claims for violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, certain state antitrust laws, and other causes of action as further identified and delineated in the Complaint and Pretrial Order (ECF No. 2169). All of these claims arose out of the alleged supracompetitive pricing of the EpiPen through alleged anticompetitive or other allegedly unlawful means. *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1282 (D. Kan. 2018).

Defendants filed Motions to Dismiss the Consolidated Class Action Complaint, which the parties amply briefed, and which the Court granted in part and denied in part on August 20, 2018. Plaintiffs then moved for class certification under Federal Rule of Civil Procedure 23(b)(3). On February 27, 2020, the Court granted in part and denied in part Plaintiffs' motion for class certification and certified a nationwide RICO Class and a State Antitrust Class under Fed. R. Civ. P. 23(b)(3). The Court also appointed Warren T. Burns, Paul J. Geller, Lynn Lincoln Sarko, Elizabeth C. Pritzker, and Rex A. Sharp as Co-Lead Counsel for the certified Class. Defendants then filed a Rule 23(f) petition for review of that decision with the Tenth Circuit on March 12, 2020, which was denied on May 26, 2020.

Defendants then moved for summary judgment on July 15, 2020, along with filing *Daubert* motions to strike Plaintiffs' experts in whole or in part. ECF Nos. 2133, 2134, 2135, 2136, 2148, 2141, 2151, 2156. On June 23, 2021, the Court entered a Memorandum and Order resolving the pending motions for summary judgment and *Daubert* motions as to the Mylan Defendants, denying the Mylan Defendants' motion for summary judgment as to Plaintiffs' generic delay claim, but granting summary judgment as to Plaintiffs' remaining claims, and granting in part and denying in part the Mylan Defendants' *Daubert* motions. ECF Nos. 2380, 2381.

Trial was set to commence on September 7, 2021, based on the Pretrial Order dated July 17, 2020 (ECF No. 2169), later modified with a Trial Order entered on January 28, 2021 (ECF No. 2316).

As trial in the Action approached, Plaintiffs and the Pfizer Defendants engaged an experienced and neutral third-party mediator, former United States District Court Judge for the Western District of Oklahoma, Layn R. Phillips, and held pre-mediation discussions and direct settlement discussions. On June 10, 2021, Plaintiffs agreed to settle the Action with the Pfizer Defendants in return for a cash payment of $345,000,000 for the benefit of the Class.

## II.      THE PFIZER DEFENDANTS DENY WRONGDOING AND LIABILITY

The Pfizer Defendants contend that the claims and allegations of wrongdoing or liability on their part, individually and collectively, by the Plaintiffs and the Class in the Action are without merit. The Pfizer Defendants deny all allegations of wrongdoing or liability. It is expressly agreed that neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or may be used as an admission by the Pfizer Defendants of any fault, wrongdoing or liability whatsoever with respect to the subject matter of the Action.

## III.     PLAINTIFFS' CLAIMS AND THE BENEFITS OF THE SETTLEMENT

The Settling Parties believe that further prosecution and defense of the Action would be protracted and expensive and, having taken into account the uncertainty and risks inherent in any such litigation, have determined that it is desirable to compromise and settle all claims against the Pfizer Defendants in the Action with respect to the Class described in this Settlement Agreement and to proceed to seek approval, implementation of and administration of this Settlement in the District of Kansas.

The Plaintiff Class Representatives, on behalf of themselves and as representatives of the Class, and the Pfizer Defendants have worked to resolve their differences, and have elected to settle those differences under the terms of this Settlement Agreement rather than continue litigating their respective positions to conclusion.

## IV.    TERMS OF AGREEMENT

NOW, THEREFORE, the Plaintiff Class Representatives, on behalf of themselves and as representatives of the Class, the Class, and the Pfizer Defendants, in consideration of the execution of this Settlement Agreement, the mutual promises contained herein, the benefits to be received hereunder and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all Settling Parties to this Settlement Agreement, hereby agree as follows:

### 1.    Definitions

The following terms and phrases shall have the following meanings under the provisions of this Settlement Agreement, whether used in the singular or plural, and whether in the possessive or non-possessive:

1.1    "Action" means *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) (D. Kan.).

1.2    "Attorneys' Fees and Expenses" means (a) payment to Class Counsel of attorneys' fees and litigation expenses and charges (including expert and consulting fees) in an amount to be determined by the Court; and (b) payment of Service Awards to Plaintiff Class Representatives, in an amount to be determined by the Court. Attorneys' Fees and Expenses shall be paid from the Settlement Fund.

1.3    "Class Counsel" means collectively, Co-Lead Counsel, Liaison Counsel, and members of the Steering Committee, as set forth in ECF Nos. 40, 2018, and 2111.

1.4     "Co-Lead Counsel" means collectively, Warren T. Burns of Burns Charest, LLP; Paul J. Geller of Robbins Geller Rudman & Dowd LLP; Lynn Lincoln Sarko of Keller Rohrback L.L.P.; Rex A. Sharp of Sharp Law LLP; and Elizabeth C. Pritzker of Pritzker Levine LLP.

1.5     "Class Member" means a person or entity who remains in the Class, *i.e.* a member of the Class who has not opted out.  For the avoidance of doubt, each Plaintiff Class Representative is a Class Member.

1.6     "Class Period" means from August 24, 2011 to November 1, 2020.

1.7     "Class" means the following certified classes:

All persons and entities in the United States who paid or provided reimbursement for some or all of the purchase price of Branded or authorized generic EpiPens for the purpose of consumption, and not resale, by themselves, their family member(s), insureds, plan participants, employees, or beneficiaries, at any time between August 24, 2011, and November 1, 2020; and

All persons and entities in the Antitrust States who paid or provided reimbursement for some or all of the purchase price of Branded EpiPens at any time between January 28, 2013, and November 1, 2020, for the purpose of consumption, and not resale, by themselves, their family member(s), insureds, plan participants, employees, or beneficiaries.

The "Antitrust States" are: Alabama, California, Florida, Hawaii, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New York, North Carolina, Tennessee, and Utah.

The following groups are excluded from Class:

     a.     Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

     b.     Government entities, other than government-funded employee benefit plans;

     c.     Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100% of the plan's reimbursement obligations to its members);

     d.     "Single flat co-pay" consumers who purchased EpiPens or generic EpiPens only via a fixed dollar co-payment that is the same for all covered devices, whether branded or generic (*e.g.*, $20 for all branded and generic devices);

e.      Consumers who purchased or received EpiPens or authorized generic equivalents only through a Medicaid program;

f.      All persons or entities who purchased branded or generic EpiPens directly from defendants;

g.      The judges in this case and members of their immediate families;

h.      All third-party payors who own or otherwise function as a Pharmacy Benefit Manager or control an entity who functions as a Pharmacy Benefit Manager; and

i.      Individual consumers whose only purchases of an EpiPen occurred before March 13, 2014 (the Generic Start Date).

1.8    "Defendants' Released Claims" means the Pfizer Defendants' release of Plaintiff Class Representatives and their attorneys, and all other members of the Class, of all claims, demands, actions, causes of action, allegations, rights, obligations, costs, losses, and damages arising in whole or in part from or in connection with the acts or omissions of any of the Plaintiffs' Released Persons of any and every kind or nature, whether in law or in equity, in tort or contract, or arising under any statute or regulation, whether known or unknown, based solely upon the institution, prosecution, or settlement of the claims asserted in the Action, except for claims relating to the enforcement of the Settlement.

1.9    "Distribution Amount" means an amount of money payable to a Class Member as the distribution of the Class Member's share of the Net Settlement Fund pursuant to the approved Plan of Allocation. The Settlement Administrator shall cause claims to be paid electronically, or issue and mail checks, to the Class Members as identified on the Summary Final Distribution Report in the amounts shown thereon.

1.10   "Distribution Date" means the date on which the Distribution Amounts are first sent or mailed to Class Members. Except as to any interim disbursements for class notice and settlement administration costs, no disbursements shall be made to Class Members until the Effective Date.

1.11    "Effective Date" means the date on which the Judgment becomes Final and Non-Appealable.

1.12    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which the Pfizer Defendants shall deposit or cause their insurance carriers to deposit the sum of $345,000,000 on behalf of the Pfizer Defendants.

1.13    "Escrow Agent" means Huntington Bank.

1.14    "Fairness Hearing" means the proceedings to be held before the Court to determine whether the Settlement should be approved as fair, reasonable and adequate pursuant to Rule 23(e)(2); whether the Judgment should be entered; and whether the motion for award of Attorneys' Fees and Expenses should be granted.

1.15    "Final and Non-Appealable" means that the Judgment approving this Settlement Agreement and the proposed class settlement contemplated under this Settlement Agreement, are "Final and Non-Appealable" when two days have passed after the date of entry of the Judgment without the filing in any court of: (i) any motion which would legally extend the time to appeal the Judgment, or which challenges or seeks reconsideration, modification or vacation of the Judgment; or (ii) an appeal.  If an appeal is filed, the Judgment becomes Final and Non-Appealable when the appellate court enters an order or judgment dismissing or overruling the relief requested and that order or judgment itself becomes final and no longer subject to further review in any court.

1.16    "Judgment" means the order of the District Court approving this Settlement in accordance with the terms of this Settlement Agreement, which Judgment shall be substantially in the form of Exhibit E hereto.

1.17    "Net Settlement Fund" means the Settlement Fund less any attorneys' fees and expenses, Service Awards to the Plaintiffs, Notice and Administration Expenses, Taxes, Tax Expenses, and other Court-approved deductions.

1.18    "Notice" means the Notice of Proposed Settlement of Class Action mailed or emailed to members of the Class and posted on the website EpiPenClassAction.com substantially in the form of Exhibit B hereto.  The Notice and the Summary Notice are collectively referred to herein as the "Notices."

1.19    "Notice and Administration Expenses" means the reasonable expenses incurred or charged in connection with the following:

(a)    Efforts to obtain current and accurate information regarding the identities and addresses of Class Members;

(b)    The reasonable costs associated with mailing, emailing, and publication of the Notice (including, but not limited to, the cost to print the Notices, mail or email the Notices, and publish the Notices, as well as making certain efforts to locate Class Members whose mailings are returned undelivered).

(c)    Maintenance of a dedicated Settlement website to facilitate communications with Class Members and to provide access to Settlement-related documents and information;

(d)    Responding to telephone and electronic inquiries regarding the Settlement by Class Members;

(e)    Implementation of the Plan of Allocation (including, but not limited to the cost of experts to calculate the allocation and distribution);

(f)    Costs of and fees associated with maintaining the Escrow Account;

(g)    Costs of preparing, sending, and/or mailing Distribution Amounts and tax documentation to members of the Class; and

(h)    Any other reasonable fees and expenses of the Settlement Administrator.

1.20    "Pfizer Defendants" means Pfizer Inc., Meridian Medical Technologies, Inc., and King Pharmaceuticals LLC (f/k/a King Pharmaceuticals, Inc.).

1.21    "Pfizer Defendants' Counsel" means White & Case, LLP, Shook, Hardy & Bacon, L.L.P., and Williams & Connolly, LLP.

1.22    "Pfizer Defendants' Related Parties" means the Pfizer Defendants' past, present and future parents, subsidiaries, divisions, sister companies, affiliates, related entities, stockholders, officers, directors, insurers, general or limited partners, principals, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing).  For the avoidance of doubt, expressly excluded from Pfizer Defendants' Related Parties are Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., Viatris Inc., or Heather Bresch, or any related entity.

1.23    "Pfizer Defendants' Released Persons" shall collectively refer to the Pfizer Defendants and the Pfizer Defendants' Related Parties.

1.24    "Plaintiff Class Representatives" or "Plaintiffs" means collectively : (1) Local 282 Welfare Trust Fund; and (2) individual consumers Rosetta Serrano, Lesley Huston, Kenneth Evans, Christopher Rippy, Nikitia Marshall, Elizabeth Huelsman, Stacee Svites, Raymond Buchta III, Lee Seltzer, Linda Wagner, Vishal Aggarwal, Joy Shepard, Lorraine Wight, Teia Amell, Todd Beaulieu, Anastasia Johnston, Annette Sutorik, Heather DeStefano, Elizabeth Williamson, Shannon Clements, Mark Kovarik, Laura Chapin, Michael Gill, Suzanne Harwood, Donna Wemple, Sonya North, Jennifer Walton, April Sumner, Meredith Krimmel, Landon Ipson, Kenneth Steinhauser, Donna Anne Dvorak, Angie Nordstrum, and Carly Bowersock.

1.25    "Plaintiffs' Related Parties" means Plaintiff Class Representatives' respective legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, in their capacities as such.

1.26    "Plaintiffs' Released Claims," unless otherwise specifically excluded herein, means all claims, demands, actions, causes of action, allegations, rights, obligations, costs, losses, and

damages arising in whole or in part from or in connection with acts or omissions of any of the Pfizer Defendants' Released Persons, of every kind or nature, whether known or unknown, suspected or unsuspected, asserted or unasserted, whether in law or in equity, in tort or contract, or arising under any statute or regulation, including without limitation any state or federal RICO statutes, state antitrust laws or any other federal or state or common law doctrine relating to antitrust or unfair competition, fraud, unjust enrichment, or consumer protection, relating to Class Member's purchases of or reimbursements for EpiPen or otherwise relating in any way to the causes of action described which were asserted or could have been asserted in the Action, except for claims relating to the enforcement of the Settlement.  However, nothing herein shall be construed to release any claims relating to personal injury or product liability.  The relevant Release Period is that specified in the certified Class definition.  In conjunction with final approval of the Settlement, dismissal of all claims asserted by Plaintiffs against the Pfizer Defendants is with prejudice.  For the avoidance of doubt, the Release does not extend to or include Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., Viatris Inc., or Heather Bresch. The Release shall be given by Plaintiffs and each member of the Class, on behalf of themselves and their respective legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, in their capacities as such.

1.27    "Plaintiffs' Released Persons" means the Plaintiff Class Representatives and Class Members and the Plaintiffs' Related Parties.

1.28    "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Fund to Class Members.

1.29    "Preliminary Approval Order" means the order (or orders) of the Court (a) preliminarily approving this Settlement Agreement, (b) approving the Settlement Administrator, (c) approving the form and manner of disseminating the Notice to Class Members,

and (d) scheduling a Fairness Hearing.  The Preliminary Approval Order shall also provide that if this Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason the Settling Parties shall be returned to the *status quo* that existed immediately prior to the date of execution of this Settlement Agreement.  The Preliminary Approval Order shall be substantially in the form of the order attached hereto as Exhibit A.

1.30    "Proof of Claim" means the proof of claim forms substantially similar to Exhibit C hereto.

1.31    "Released Period" means August 24, 2011 to November 1, 2020.

1.32    "Settlement" means the settlement between the Settling Parties in *In re EpiPen* MDL, No. 17-md-2785, in the United States District Court for the District of Kansas, on the terms and conditions set forth in this Settlement Agreement.

1.33    "Settlement Administrator" means the person or entity to be recommended by Class Counsel and approved by the Court to administer this Settlement Agreement and the Plan of Allocation.

1.34    "Settlement Amount" means Three Hundred Forty-Five Million Dollars ($345,000,000) in cash to be paid by wire transfer or check sent by overnight mail to the Escrow Agent pursuant to ¶ 2.1 of this Settlement Agreement.

1.35    "Settlement Fund" means the Settlement Amount, plus all interest and accretions thereto.

1.36    "Summary Final Distribution Report" means the summary chart prepared by Class Counsel or the Settlement Administrator to show the distribution of the Net Settlement Fund to each member of the Class for whom an address and amount of distribution can be determined.  The Pfizer Defendants will cooperate and provide non-privileged information, accessible to them in the ordinary course of business, reasonably requested by the Settlement Administrator or Class

Counsel but will not be responsible for or involved with the calculation of or distribution from the Summary Final Distribution Report.

1.37    "Summary Notice" means the Summary Notice published in a manner as determined by a notice expert and/or the Settlement Administrator substantially in the form of Exhibit D hereto.

1.38    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.39    "Uncashed Distribution Amounts" means any Distribution Amounts payable by check to a Class Member that is not endorsed and presented to the financial institution or trust company in which the Escrow Account is established by the "Void Date" shown on the Distribution Amount check.

1.40    "Undistributed Proceeds" means that portion of the Net Settlement Fund that remains after all distributions pursuant to the Plan of Allocation, are completed.  The settlement is non-reversionary.  Once the Settlement becomes Final and Non-Appealable, the Pfizer Defendants shall have no ability to get back any of the Settlement Amount, including any Undistributed Proceeds, subject to ¶ 1.16.

## 2.    The Settlement

### a.    The Settlement Amount

2.1    Payment by the Pfizer Defendants.  Within five (5) business days of the District Court's order granting preliminary approval of the Settlement, the Pfizer Defendants will deposit $5,000,000 of the Settlement Amount into the Escrow Account.  The remainder of the Settlement Amount shall be deposited by the later of August 24, 2021 or thirty (30) days before the date of the Fairness Hearing.  No disbursements shall be made to Class Members (except as provided in

¶ 2.7) until the Effective Date.  If this Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason: (a) the balance in the Settlement Fund, including interest accrued thereon and less Notice and Administration Expenses actually paid or incurred, Taxes and Tax Expenses, shall be promptly returned to the Pfizer Defendants; and (b) the Settling Parties shall otherwise be returned to the *status quo* that existed in the Action immediately prior to June 10, 2021.

2.2     The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of all Plaintiffs' Released Claims.  Once the above payments are made, the Pfizer Defendants shall have no further monetary obligations of any sort or kind to Plaintiffs, members of the Class, or any counsel for Plaintiffs under the terms and conditions of the Settlement.  The Settlement Amount paid by the Pfizer Defendants is their sole monetary responsibility under this Settlement Agreement, and Class Members who have not timely excluded themselves from the Class shall not look to any of the Pfizer Defendants' Released Persons for satisfaction of any and all Plaintiffs' Released Claims.  The Pfizer Defendants are not responsible for payment of Notice and Administration Expenses, or any out-of-pocket expenses, other than out of the Settlement Amount, as provided herein.

### a.     The Escrow Agent

2.3     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.  The Pfizer Defendants' Released Persons shall have no responsibility for, interest in, or liability whatsoever

with respect to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Settlement Agreement, by an order of the Court, or with the written agreement of Co-Lead Counsel and the Pfizer Defendants' Counsel.

2.5     Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Settlement Agreement.  Pfizer Defendants' Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

2.7     Notwithstanding the fact that the Effective Date has not yet occurred, Class Counsel may pay from the Settlement Fund up to $5 million in Notice and Administration Expenses.  In the event that the Settlement does not become Final, any money paid or incurred for the above purposes shall not be returned or repaid to the Pfizer Defendants.  After the Effective Date, Class Counsel may pay all further reasonable Notice and Administration Expenses, regardless of amount, without further order of the Court.  Subject to ¶ 2.9 below, the Pfizer Defendants are not responsible for, and shall not be liable for, any costs in connection with providing notice to the Class, locating Class Members, or administering and distributing the Settlement Fund.

**b.**  **Taxes**

2.8      (a)      The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.8, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)      For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  Class Counsel shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in ¶ 2.8(a) hereof) shall be consistent with this ¶ 2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.8(c) hereof.  Pfizer Defendants' Released Persons shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

(c)      All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs

incurred in connection with the operation and implementation of this ¶ 2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events Pfizer Defendants' Released Persons, the Settling Parties, and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Settlement Fund shall indemnify and hold each of the Released Persons and their counsel harmless for taxes and tax expenses (including, without limitation, taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Pfizer Defendants' Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.8.

### c.   Termination of Settlement

2.9   In the event that the Settlement Agreement is not approved or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶ 2.7 and 2.8 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from the Pfizer Defendants' Counsel.

### 3.        Preliminary Approval Order, CAFA Notice, and Fairness Hearing

3.1     Promptly after execution of the Settlement Agreement and no later than July 14, 2021, Class Counsel shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Settlement Agreement, and approval for the distribution of Notices, substantially in the form of Exhibit B and D attached hereto.  The Notices shall include the general terms of the Settlement set forth in the Settlement Agreement, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶ 6.1 hereof, and the date and location of the Fairness Hearing.

3.2     The Notice shall afford Class Members an opportunity to object to the Settlement Agreement, but given that Class Members have already had one opportunity to opt out in the usual course of the Action, the Notice shall not provide another opportunity to opt out of the certified Class unless expressly required by the Court. If the Settlement is finally approved, the Settlement process will be administered by the independent Settlement Administrator, and allocation will be conducted pursuant to the Plan of Allocation approved by the Court. Any monies left over after the initial and any subsequent distributions as may be necessary and appropriate, will be distributed *cy pres* on recommendation by Co-Lead Counsel and approved by the Court.

3.3     The Pfizer Defendants may be required to make reasonable efforts to assist or provide information to the Settlement Administrator, as set forth below in ¶ 5.7.

3.4     Class Counsel shall request that after notice is given, the Court hold the Fairness Hearing and approve the Settlement of the Action as set forth herein.  At or after the Fairness Hearing, Class Counsel also will request that the Court finally approve the proposed Plan of

Allocation and the Attorneys' Fee and Expense Application, including Plaintiff Class Representatives' request for Service Awards in connection with their representation of the Class.

3.5     Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, *et seq.* ("CAFA"), no later than ten (10) calendar days after this Settlement Agreement is filed with the Court, the Pfizer Defendants shall serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA.  The Pfizer Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

**4.     Releases and Dismissal**

4.1     Upon the Effective Date, Plaintiffs' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Plaintiffs' Released Claims against the Pfizer Defendants' Released Persons, whether or not such Class Member shares in the Settlement Fund.  Claims solely to enforce the terms of this Settlement Agreement are not released.

4.2     Upon the Effective Date, all Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Plaintiffs' Released Claims against any of the Pfizer Defendants' Released Persons.

4.3     Upon the Effective Date, each of the Pfizer Defendants' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Defendants' Released Claims against Plaintiffs' Released Persons, including Class Counsel.  Claims solely to enforce the terms of this Settlement Agreement are not released.

4.4     Upon the Effective Date, and in consideration of the promises set forth in this Settlement Agreement, including payment of the Settlement Fund, the Settling Parties and their counsel shall dismiss the Action with prejudice as to the Pfizer Defendants.

**5.     Administration and Distribution of the Settlement Fund**

5.1     The Settlement Administrator, subject to such supervision and direction of Class Counsel, and as may be necessary and appropriate or as circumstances may require, the Court, shall administer and calculate the Distribution Amounts paid to Class Members and shall oversee distribution of the Net Settlement Fund to Class Members.

5.2     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Expenses;

(b)     to pay the Taxes and Tax Expenses described in ¶ 2.8 hereof;

(c)     to pay Attorneys' Fees and Expenses to Class Counsel and to pay Service Awards to Plaintiff Class Representatives to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Class Members as allowed by the Settlement Agreement, the Plan of Allocation, or the Court.

5.3     Each Class Member who has not timely and properly elected to opt-out of this Action shall be a Class Member and shall be eligible to receive a distribution from the Net Settlement Amount according to the Plan of Allocation.

5.4     After the Effective Date, and in accordance with the terms of the Settlement Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members, subject to and in accordance with the following.

5.5     Any distribution of monies or funds to Class Members shall be in accordance with the Plan of Allocation approved by the Court.  The Pfizer Defendants shall not be responsible or

liable for any aspect of the allocation methodology set forth in the Plan of Allocation or the implementation of that methodology.

5.6     The Pfizer Defendants and the Plaintiff Class Representatives agree that the Net Settlement Fund shall be only for the benefit of the Class (subject to Attorneys' Fees and Expenses and the other distributions and dispositions provided for in this Settlement Agreement), which by definition does not include those who timely and properly opted-out of the Class.

5.7     The Pfizer Defendants and Class Counsel shall provide reasonable cooperation to the Settlement Administrator in connection with the information reasonably needed by them in order to perform the activities contemplated under this Settlement Agreement, including the dissemination of the Notice and the implementation of the Plan of Allocation.

5.8     The Net Settlement Fund shall be distributed to Class Members substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, the Settlement Administrator shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among those Class Members, who successfully received and deposited, cashed or otherwise accepted a Distribution Amount and who would receive a distribution of at least $5.00, in an equitable and economic fashion.  Thereafter, any *de minimis* balance which still remains in the Net Settlement Fund shall be donated in equal amounts to: (a) Allergy and Asthma Foundation of America; (b) Allergy and Asthma Network; and (c) Allison Rose Foundation, if approved by the Court.

5.9     This Settlement is a non-reversionary settlement and, if all conditions of the Settlement Agreement are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Pfizer Defendants.  The Pfizer Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution

of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No person shall have any claim of any kind against the Defendants or their Related Parties with respect to the matters set forth in ¶¶ 5.1-5.8 hereof.

5.10   No Person shall have any claim against Plaintiff Class Representatives, Class Counsel, the Pfizer Defendants, their Related Parties, the Settlement Administrator or other entity designated by Class Counsel based on distributions made substantially in accordance with the Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  This does not include any claim by any party for breach of this Settlement Agreement.

## 6.   Class Counsel's Attorneys' Fees and Expenses

6.1   Class Counsel may submit an application or applications for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Application").  In addition, Plaintiff Class Representatives may request Service Awards in connection with their representation of the Class.  Class Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2   The fees and expenses, as awarded by the Court, shall be paid to Class Counsel, as ordered, within ten (10) calendar days after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part hereof.

6.3   In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Settlement Agreement is

canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Class Counsel who received any portion of the Fee and Expense Award shall be obligated, within ten (10) calendar days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  Each such Class Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each severally liable and responsible for any required repayment.

6.4     Any attorneys' fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  The Pfizer Defendants and their Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Class Counsel or Plaintiff Class Representatives.

**7.     Failure to Obtain Approval of Settlement**

7.1     This Settlement Agreement will automatically terminate if the Court enters an order denying approval of the Settlement (without an opportunity to resubmit) or if an appellate court denies approval of the Settlement.

7.2     If this Settlement Agreement is terminated pursuant to the terms hereof, or fails to become effective for any reason, then (a) all orders of the Court preliminarily or otherwise approving the Settlement shall be vacated, (b) the Settling Parties shall be returned to the *status quo* that existed in the Action immediately prior to June 10, 2021 (subject to appropriate extensions

of deadlines to enable the Action to proceed) and (c) the Settling Parties shall retain all of their respective rights and defenses as of immediately prior to June 10, 2021.  The Settling Parties shall then proceed in all respects as if this Settlement Agreement and related orders had not been executed.

### 8.     Opt-Outs (if Permitted a Second Opportunity to Opt-Out) and Objections

8.1     The Pfizer Defendants and Class Counsel agree that there should not be a second opportunity for Class Members to opt-out of the Class.  Should the Court in its discretion permit another opportunity to opt out of the Class, the Notice shall provide that the opt-out period will be 60 days following commencement of dissemination of the Notice, and the opt-out shall be in writing and shall be signed by the member of the Class who is opting-out.  Further, in the event of any opt outs from the Class following preliminary approval of the Settlement, the Settlement Amount will be reduced in proportion to the opt-out Class Members' pro rata share of aggregate purchases of Class Members, all as determined under the Plan of Allocation.

8.2     Should the Court in its discretion permit another opportunity to opt out of the Class, the Pfizer Defendants shall have the option in their sole discretion to terminate the Settlement Agreement in the event that Class Members representing in the aggregate more than 8% of total EpiPen purchases opt out of the Class following the preliminary approval of the Settlement. The Settling Parties shall agree on an objective methodology for determining the value of any opt-out claims.

8.3     The Notice shall require that any objection to the Settlement, or any part of this Settlement Agreement, including Attorney's Fees and Expenses, and Plaintiff's Class Representatives' Service Awards, or to the Plan of Allocation be in writing and comply with all the requirements set forth herein and by the Court in the Preliminary Approval Order and Notice.

8.4     If the Court determines that the Settlement, including the Plan of Allocation, and the awards of Attorneys' Fees and Expenses, including Service Awards are fair, adequate and reasonable to the Class, Class Counsel shall represent the Class as a whole in all future proceedings in district court or on appeal, even if some Class Members have objected to the Settlement (or any part thereof).

8.5     The Notice shall require that any member of the Class who elects to object to this Settlement Agreement (or any part thereof) or to the motion for Attorneys' Fees and Expenses shall object in a writing signed by the member of the Class who is objecting, which objection shall be filed with the Court and served on counsel for the Settling Parties, a prescribed number of days before the Fairness Hearing as provided for in the Preliminary Approval Order and/or the Notice.

8.6     The written objection filed with the Court shall: (a) state the name, address, and telephone number of the objector and must be signed by the objector even if represented by counsel; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, the application for Attorneys' Fees and Expenses, and/or application for Service Awards to Plaintiffs; (c) state the objection(s) and the specific reasons for each objection, including any legal and evidentiary support the objector wishes to bring to the Court's attention; (d) state whether the objection applies only to the objector, to a subset of the Class, or to the entire Class; (e) identify all class actions to which the objector and his, her, or its counsel has previously objected; (f) include documents sufficient to prove the objector's membership in the Class, such as the number of EpiPens purchased, acquired, or paid for during the Class Period, as well as the dates and prices of each such purchase, acquisition, or payment; (g) state whether the objector intends to appear at the Fairness Hearing; (h) if the objector intends to appear at the Fairness Hearing through counsel, state the identity of all attorneys who will appear on the objector's behalf at the Fairness Hearing; and (i) state that the objector submits to the jurisdiction of the Court with respect to the objection

- 24 -

or request to be heard and the subject matter of the Settlement of the Action, including, but not limited to, enforcement of the terms of the Settlement.  Any Class Member who fails to timely file and serve such written statement and provide the required information will not be permitted to present any objections at the Fairness Hearing and such failure will render any such attempted objection untimely and of no effect, unless otherwise ordered by the Court.  All presentations of objections will be further limited by the information listed.  A Class Member's mere compliance with the foregoing requirements does not in any way guarantee a Class Member the ability to present evidence or testimony at the Fairness Hearing.  The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any and all presentations of objections at the Fairness Hearing, will be in the sole discretion of the Court.

### 9.        Appointment of Settlement Administrator

9.1        The Court shall appoint the Settlement Administrator pursuant to the Preliminary Approval Order.  The duties undertaken by the Settlement Administrator shall be as described in the Plan of Allocation and orders of the Court.  All reasonable fees and expenses, including the compensation of the Settlement Administrator, for Notice and Administration Expenses shall be paid from the Settlement Fund and in the manner set forth in ¶ 1.19 above.

### 10.       Miscellaneous

10.1        While retaining their right to deny liability, the Pfizer Defendants will agree that the Action is being settled voluntarily by the Pfizer Defendants after consultation with competent legal counsel.  The Settling Parties agree that throughout the course of the litigation of the Action, all Settling Parties and their counsel vigorously prosecuted their claims and/or defenses consistent with the applicable rules of procedure.

10.2        Class Counsel and the Pfizer Defendants agree that they will not, at any time, make public statements (which includes press releases, communication to the press or other media,

statements in the Internet, speeches, or other communications in public fora) concerning the Settlement, the Action, the litigation of the Action, or the Parties, witnesses, or counsel involved in the Action, apart from their agreed public relations statements, with the exceptions that (i) the Parties shall have the right to disclose the Settlement to comply with their financial, legal, reporting, and securities obligations, and (ii) the Parties shall have the right to take actions to enforce the Settlement to the extent necessary.

10.3     Plaintiff Class Representatives, the Class, and the Pfizer Defendants agree to settle the Released Claims and to execute this Settlement Agreement solely to compromise and settle protracted, complicated and expensive litigation.  Entering into or carrying out this Settlement Agreement, and any negotiations or proceedings related thereto, is not, shall not be construed as, or deemed to be evidence of, an admission or concession by any of the Settling Parties to this Settlement Agreement and shall not be offered or received in evidence in any action or proceeding by or against any Settling Party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, other than to enforce the provisions of the Settlement between the Pfizer Defendants and the Class, the provisions of this Settlement Agreement, or the provisions of any related agreement, order, judgment or release.  The Settlement Agreement shall not be offered as evidence in the continuing Action except upon Court order to show that the Settling Parties have settled, and for what amount.

10.4     Each Settling Party shall use its best efforts to cause this Settlement Agreement to be approved and consummated, and any dispute thereto may be submitted to mediator the Hon. Layn Phillips (ret.) for resolution.   The Pfizer Defendants, Class Counsel, and Class Representatives shall also promptly take such actions as may be reasonably required to obtain final approval by the Court of this Settlement Agreement, and to carry out the terms of this Settlement Agreement.

10.5    The Court shall retain its traditional equitable powers over the Action as those powers pertain to this Settlement Agreement until the monies and funds in the Escrow Account are fully and finally distributed.

10.6    This Settlement Agreement, including its exhibits, constitutes the entire agreement among the Settling Parties hereto related to the Action and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized in this Settlement Agreement.  The exhibits to this Settlement Agreement are:

Exhibit A       Form of Preliminary Approval Order
Exhibit B       Form of Notice of Proposed Settlement
Exhibit C       Forms of Consumer Claim Form and TPP Claim Form
Exhibit D       Form of Summary Notice
Exhibit E       Form of Judgment

10.7    The terms and provisions of this Settlement Agreement may not be altered, amended or modified except in writing signed by all Settling Parties.  To the extent there is a conflict between the provisions of this Settlement Agreement, the Preliminary Approval Order, the Judgment, and/or the Plan of Allocation, each such document shall have controlling effect in the following rank order: (1) the Judgment, (2) the Preliminary Approval Order, (3) this Settlement Agreement, and (4) the Plan of Allocation.

10.8    This Settlement Agreement may be executed in one or more counterparts, and may be exchanged by facsimile, pdf and/or other imaged signatures which shall be as effective as original signatures.  All executed counterparts taken together shall be deemed to be one and the same instrument.  Counsel for the Settling Parties to this Settlement Agreement shall exchange among themselves signed counterparts and a complete, assembled executed counterpart shall be filed with the Court.

10.9     The Settling Parties and their respective counsel have mutually contributed to the preparation of this Settlement Agreement.   Accordingly, no provision of this Settlement Agreement shall be construed against any Settling Party on the grounds that one of the Settling Parties or its counsel drafted the provision.   Except as otherwise provided herein, each Settling Party shall bear its own attorneys' fees and other litigation expenses and costs.

10.10   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

10.11   Each of the undersigned represents that he or she is fully authorized to execute this Settlement Agreement on behalf of the Settling Party for which he or she signs.

10.12   The Pfizer Defendants will reasonably cooperate with Class Counsel and the Settlement Administrator as they work to notify the members of the Class of this Settlement Agreement and to distribute the Net Settlement Fund to the Class Members and answer their questions or the questions of the Court.

10.13   This Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Kansas, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Kansas without giving effect to that State's choice-of-law principles.

10.14   If the provisions of this Settlement Agreement (or any portion thereof) are held unenforceable in any jurisdiction, then such provisions shall be severable, and the Settling Parties agree that the enforceability of the remaining provisions of this Settlement Agreement shall not in any way be affected or impaired thereby and shall continue in full force and effect.

10.15   The exclusive forum for any dispute arising under or related to this Settlement Agreement, or to enforce the terms of this Settlement Agreement, will be the United States District Court for the District of Kansas.

10.16   No delay or omission by any Settling Party in exercising any rights under this Settlement Agreement will operate as a waiver of that or any other right.   A waiver or consent given by a Settling Party on any one occasion is effective only in that instance and will not be construed as a bar or waiver of any right on any other occasion, unless otherwise agreed in writing.

10.17   After the Effective Date, dismissal of all claims asserted by Plaintiff Class Representatives against the Pfizer Defendants is with prejudice.

[Signature Pages Follow]

IN WITNESS WHEREOF, the Settling Parties hereto have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

DATED: July 14, 2021                    KELLER ROHRBACK L.L.P.

By: _____
LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

KELLER ROHRBACK L.L.P.
ALISON E. CHASE
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: 805/456-1496
805/456-1497 (fax)
achase@kellerrohrback.com

SHARP LAW LLP


By: _____
REX A. SHARP
RYAN C. HUDSON
4820 West 75th Street
Prairie Village, KS  66208
Telephone:  913/901-0505
913/901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com

ROBBINS GELLER RUDMAN
  & DOWD LLP


By: */s/ Paul J. Geller, with permission*
PAUL J. GELLER
STUART A. DAVIDSON
BRADLEY M. BEALL
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN O. O'MARA
ARTHUR L. SHINGLER III
LEA MALANI BAYS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bomara@rgrdlaw.com
ashingler@rgrdlaw.com
lbays@rgrdlaw.com

PRITZKER LEVINE LLP

By: _____
ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450
Emeryville, CA  94608
Telephone:  415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

BURNS CHAREST LLP


By: */s/ Warren T. Burns, with permission*
WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

***Co-Lead Counsel and Liaison Counsel for Class Plaintiffs***

THE LANIER LAW FIRM
W. MARK LANIER
RACHEL LANIER
CRISTINA DELISE
10940 W. Sam Houston Parkway North, Suite 100
Houston, TX  77064
Telephone:  713/659-5200
713/659-2204 (fax)
mark.lanier@lanierlawlirm.com
rachel.lanier@lanierlawfirm.com
cristina.delise@lanierlawfirm.com

*Special Trial Counsel for Class Plaintiffs*

BOIES SCHILLER FLEXNER LLP
MATTHEW S. TRIPOLITSIOTIS
DUANE LOFT
333 Main Street
Armonk, NY 10504
Telephone:  914/749-8200
914/749-8300 (fax)
mtripolitsiotis@bsfllp.com
dloft@bsfllp.com

*Class Counsel*

DATED: July 14, 2021

WHITE & CASE LLP

By: _____

DIMITRIOS T. DRIVAS
ROBERT A. MILNE
RAJ S. GANDESHA
EDWARD THRASHER
KATHRYN SWISHER
1221 Avenue of the Americas
New York, NY 10020
Telephone:  212/819-8200
212/354-8113 (fax)
ddrivas@whitecase.com
rmilne@whitecase.com
rgandesha@whitecase.com
edward.thrasher@whitecase.com
kathryn.swisher@whitecase.com

WILLIAMS & CONNOLLY LLP
HEIDI K. HUBBARD
PAUL B. GAFFNEY
AKHIL K. GOLA
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, DC  20005
Telephone:  202/434-5000
202/434-5029 (fax)
hhubbard@wc.com
pgaffney@wc.com
agola@wc.com

SHOOK, HARDY & BACON L.L.P.
JOSEPH REBEIN
ZACH CHAFFEE-MCCLURE
ASHLEY HARRISON
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone:  816/474-6550
816/421-5547 (fax)
jrebein@shb.com
zmcclure@shb.com
aharrison@shb.com

*Counsel for the Pfizer Defendants*