## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE:  EpiPen (Epinephrine
        Injection, USP) Marketing,
        Sales Practices and Antitrust
        Litigation

MDL No:  2785

Case No. 17-md-2785-DDC-TJJ

(This Document Applies to Consumer
Class Cases)

## MEMORANDUM AND ORDER

Plaintiffs have filed a Motion for Reconsideration (Doc. 2398).  It asks the court to reconsider two portions of its June 23, 2021 Memorandum and Order deciding the Mylan defendants' Motion for Summary Judgment:  (1) the portion that granted summary judgment against plaintiffs' RICO claim, and (2) the portion that dismissed four named plaintiffs who are not plaintiffs in any underlying case that the Judicial Panel on Multidistrict Litigation transferred to this MDL.  *See* Doc. 2381 at 160–63, 164–80.  The court denies plaintiffs' motion.[1]

### I.       Timeliness of Plaintiffs' Motion

The Mylan defendants argue that the court can deny plaintiffs' motion simply because it is untimely.  Plaintiffs' motion asks that the court reconsider just certain parts of its Order (Doc. 2381) granting in part and denying in part the Mylan defendants' Motion for Summary Judgment (Doc. 2141).  The Mylan defendants argue that because the court's Order granted just a partial

---

[1]       Plaintiffs also have filed a Motion for Oral Argument.  Doc. 2430.  It asks the court to conduct oral argument on this motion and plaintiffs' contemporaneously-filed Motion to Certify Orders for Interlocutory Appeal (Doc. 2414).  Our local rule, D. Kan. Rule 7.2, gives the court discretion to "set any motion for oral argument or hearing at the request of a party or on its own initiative."  The court denies the Motion for Oral Argument.  The parties' papers adequately argue the issues raised by plaintiffs' two motions.  Oral argument isn't necessary or consistent with Fed. R. Civ. P. 1.

summary judgment and didn't dispose of the case in its entirety, it is a non-dispositive order. The court's local rules require a party seeking reconsideration of a non-dispositive order to file the motion within 14 days.  D. Kan. Rule 7.3(b).  Here, the court entered the summary judgment Order on June 23, 2021.  Plaintiffs filed their Motion for Reconsideration on July 21, 2021—28 days after the court entered its June 23 Order.  Thus, because plaintiffs filed their motion more than 14 days after the court entered its Order, the Mylan defendants argue that plaintiffs' motion seeking reconsideration is untimely under D. Kan. Rule 7.3(b).

Plaintiffs say the Mylan defendants are wrong.  They argue that the court's June 23 Order wasn't a non-dispositive order.  Instead, plaintiffs contend that the June 23 Order was a dispositive order because it disposed of certain claims—in particular, it granted summary judgment against plaintiffs' RICO claim and it dismissed four named plaintiffs from the case. So, plaintiffs assert, the court's local rule governing motions to reconsider *dispositive* orders applies.  *See* D. Kan. Rule 7.3(a) ("Dispositive Orders and Judgments").  This local rule requires that parties "seeking reconsideration of dispositive orders or judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60."  *Id.*  The Federal Rules require a party to file a motion under Rule 59(e) "no later than 28 days after the entry of judgment" and a motion under Rule 60(b) "within a reasonable time—and for reasons [under Rule 60(b)](1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 59(e) & 60(c)(1).  Thus, plaintiffs argue, their motion is timely under D. Kan. Rule 7.3(a).

Our court has recognized that "[s]ome uncertainty exists" under our court's local rules "whether orders disposing of some but not all claims are dispositive or non-dispositive[.]" *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059-KHV, 2013 WL 139750, at *1 (D. Kan. Jan. 10, 2013) (citations omitted); *see also Coffeyville Res. Refin. & Mktg., LLC v.*

*Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (explaining "[t]here is some uncertainty whether orders disposing of some but not all claims . . . are considered dispositive under the local rule").

Some judges have considered an order that disposes of some, but not all, claims as a non-dispositive order to which D. Kan. Rule 7.3(b) applies and requires filing a motion to reconsider within 14 days. *See Jordan v. Sprint Nextel Corp.*, 3 F. Supp. 3d 917, 935 (D. Kan. 2014) (concluding that plaintiff's motion to reconsider "fail[ed] procedurally" because plaintiff filed it more than 14 days after the court's order dismissing all but one of plaintiff's claims and one of two defendants, and thus, "the Order was not dispositive" and plaintiff "should have filed a motion to reconsider pursuant to D. Kan. Rule 7.3(b) within fourteen days of the Court's order"); *see also Seyler v. Burlington N. Santa Fe Corp.*, 121 F. Supp. 2d 1352, 1355 (D. Kan. 2000) (explaining that the court's "rulings . . . were non-dispositive, in that they did not fully resolve the case and could be challenged by a timely motion under Rule 7.3(b)"). Other judges have concluded that such an order is a dispositive order because it disposes—at least partially—of a litigant's claims. *See Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 14-1136-JAR, 2016 WL 1715453, at *1 (D. Kan. Apr. 29, 2016) (concluding that the court's "partial grant of summary judgment was a dispositive order, as it was a decision on the merits that resolved some of Plaintiff's claims in the case"); *see also Johnson v. Simonton Bldg. Props., Inc.*, No. 08-2198, 2009 WL 902409, at *2 (D. Kan. Mar. 31, 2009) (finding that D. Kan. Rule 7.3(b), which "only applies to non-dispositive orders[,]" didn't apply to "the court's order" which "was dispositive because it terminated some of Plaintiffs' claims" but concluding that "it is well within the court's discretion to revise an interlocutory order at any time prior to the entry of final

judgment" under Fed. R. Civ. P. 54(b) and applying the Rule 59(e) and D. Kan. Rule 7.3(b)

"legal standards" to the motion "which are essentially identical").

Here, the court concludes that it doesn't matter whether it treats plaintiffs' motion as one

asking for reconsideration of a dispositive order or a non-dispositive order.  Even if plaintiff's

motion is untimely under D. Kan. Rule 7.3(b), as explained below, it also fails on the merits

under either Rule 59(e)'s standard or D. Kan. Rule 7.3(b)'s test which "are essentially identical."

*Johnson*, 2009 WL 902409, at \*2; *see also Sperry v. Roberts*, No. 5:18-cv-03120-HLT-GEB,

2021 WL 3668387, at \*2 (D. Kan. July 13, 2021) (applying "the legal standards applicable to a

Rule 59(e) motion to alter or amend and/or a motion to reconsider a non-dispositive order under

Local Rule 7.3, which are essentially identical"); *Stohr v. Scharer*, No. 17-1018-JWB, 2019 WL

3034845, at \*1 (D. Kan. July 11, 2019) (concluding that the "court need not resolve" whether D.

Kan. Rule 7.3(a) or 7.3(b) applied to motion to reconsider because the motion at issue "invoke[d]

a standard of review common to both types of motions" that "permits motions to reconsider

based on:  (1) an intervening change in the controlling law; (2) the availability of new evidence;

or (3) the need to correct clear error or prevent manifest injustice").

Thus, the court proceeds to analyze plaintiffs' Motion for Reconsideration under the

governing legal standard.

## II.     Legal Standard

The grounds "warranting a motion to reconsider include (1) an intervening change in the

controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error

or prevent manifest injustice."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.

2000) (discussing Fed. R. Civ. P. 59(e)'s requirements); *see also* D. Kan. Rule 7.3(b) (explaining

reconsideration of non-dispositive orders must be based on "(1) an intervening change in

controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice").  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted).  But, it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citation omitted); *see also Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (explaining that, on a Rule 59(e) motion, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued").

A district court has discretion to grant or deny a motion to reconsider. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).  When reviewing a district court's decision to deny a motion to reconsider under the abuse of discretion standard, the Tenth Circuit has described a "clear error of judgment" to mean a district court's decision that was "arbitrary, capricious, whimsical, or manifestly unreasonable . . . ." *Wright ex rel. Tr. Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235–36 (10th Cir. 2001) (citation and internal quotation marks omitted).  The Tenth Circuit has not defined "manifest injustice" in the Rule 59(e) context, but our court "has described the term to mean 'direct, obvious, and observable error.'" *Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017) (quoting *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011)).

### III.    Analysis

Plaintiffs assert five arguments supporting their Motion for Reconsideration.  The court addresses each one, below.  None of them provide a reason to reconsider the June 23 Order.

## A. The Court Didn't Clearly Err When Considering the Alleged Mail and Wire Fraud.

Plaintiffs argue the court got both the law and the facts wrong about the mail and wire fraud plaintiffs alleged as the predicate acts to support their RICO claim. The court disagrees.

*First*, plaintiffs contend the court misapplied the Tenth Circuit standard governing mail and wire fraud. Specifically, plaintiffs argue, the Mylan defendants misquoted a Tenth Circuit case, and thus misled the court to apply the wrong legal standard. Plaintiffs already made this argument in their summary judgment briefing. Doc. 2190-1 at 113 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.) ("Defendants misquote *Bacchus*, which actually states that a RICO plaintiff must allege 'the existence of a scheme or artifice to defraud **or** obtain money or property by false pretense, representations, or promises.'" (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991))). And, it's not proper for plaintiffs to revisit this argument on a motion to reconsider. *See Castanon v. Cathey*, 976 F.3d 1136, 1141 (10th Cir. 2020) (explaining that a Rule 59(e) motion "may not be used to relitigate old matters" or "simply rehash[ ]" arguments already asserted (citations and internal quotation marks omitted)).

But, even if plaintiffs' argument were a new one, it provides no reason for the court to reconsider its summary judgment Order. The court didn't rely on *Bacchus* to decide plaintiffs' RICO claims. In fact, the summary judgment Order doesn't even cite that case. *See generally* Doc. 2381.

Also, the court never held—as plaintiffs contend—that it could "only consider false, public mailings or wires directedly received by Plaintiffs." Doc. 2398 at 10. Plaintiffs assert that the mail/wire fraud statute has two subsidiary clauses permitting a plaintiff to assert a mail/wire fraud claim based on either: "(1) a scheme to defraud or (2) a scheme to obtain money by false pretenses[.]" *See, e.g.*, *United States v. Zar*, 790 F.3d 1036, 1049–50 (10th Cir. 2015);

*see also United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008) (listing the elements of wire fraud as:  "(1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) . . . use of interstate wire or radio communications to execute the scheme" and explaining that the first element's reference to a "scheme to defraud focuses on the intended end result and affirmative misrepresentations are not essential" while "a scheme to obtain money by false pretenses, representations or promises focuses instead on the means by which the money is obtained and particular false pretenses, representations or promises must be proved" (citations and internal quotation marks omitted)).

The court's summary judgment Order explicitly recognized that plaintiffs had alleged "RICO predicate offenses" based on the "use of the mail and wires to further defendants' EpiPen pricing scheme[.]"  Doc. 2381 at 171 (citing Doc. 2169 at 42 (Pretrial Order ¶ 4.a.)).  Thus, it considered plaintiffs' mail and wire fraud allegations as ones premised on a "scheme to defraud" theory.  Also, the court cited Tenth Circuit case law—as well as cases from other courts— explaining that a RICO predicate act does not require "'that the mailings or the wire communications themselves were fraudulent[,]'" but instead, only requires "'they were "incident to an essential part" of a fraudulent scheme[.]'"  *Id.* at 169–70 (quoting *Sorensen v. Polukoff*, 784 F. App'x 572, 578 (10th Cir. 2019) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008))).  But, the court explained, "the governing legal standard" requires "plaintiffs [to] identify a genuine issue for trial *whether defendants' use of the mail and wires to further the EpiPen pricing scheme* . . . was the 'but for' cause of plaintiffs' injuries—*i.e.*, paying inflated prices for EpiPen."  *Id.* at 171 (emphasis added).  Because the court found that plaintiffs hadn't discharged their burden to present a triable issue that use of the mail and wires in furtherance of

7

defendants' alleged scheme was the "but-for" cause of plaintiffs' injuries, it granted summary judgment against plaintiffs' RICO claim. *Id.* at 171; *see also id.* at 167–75.

*Second*, plaintiffs contend the court didn't consider the vast majority of the predicate acts of mail and wire fraud. Instead, plaintiffs assert, the court only considered "two press releases, failing to analyze hundreds of other uses of the mails and wires in furtherance of Mylan's generic-pay-for delay and 2-Pak hard-switch schemes." Doc. 2398 at 8. This is just wrong. When they assert this argument, plaintiffs conflate the court's reliance analysis—where it considered the two press releases because that was the only summary judgment evidence of alleged mail and wire fraud that was distributed publicly, and thus could have caused someone to rely on it, Doc. 2381 at 176–77, 179–80—with the court's analysis of but-for causation where it referred generally to the mail and wire fraud as the "underlying RICO predicate acts" or defendants' "use of the mail and wires to further defendants' EpiPen pricing scheme[,]" *id.* at 168, 171; *see also id.* at 171 (describing the alleged predicate acts supporting plaintiffs' 2-Pak theory as "defendants' use of the mail and wires to disseminate misleading information about the reasons for the withdrawal of single EpiPens and the switch to selling the EpiPen exclusively in a 2-Pak").

Plaintiffs even provide a chart purportedly showing summary judgment exhibits containing evidence of defendants' use of the mails or wires that—plaintiffs contend—the court failed to "[c]onsider in [its] SJ [a]nalysis[.]" Doc. 2398-1. The chart lists 63 exhibits that, according to plaintiffs, the court's summary judgment Order never analyzed. Again, plaintiffs are just wrong. *Id.* at 2–7. The court's summary judgment Order explicitly referenced the large majority of the 63 exhibits that—according to plaintiffs' chart—the court never considered. *See* Doc. 2381 at 12–13, 15–17, 19–26, 35, 41, 53–54, 56, 117–18 (citing Pls.' Exs. 12, 13, 15, 17,

45, 94, 95, 96, 97, 99, 102, 103, 121, 124, 125, 126, 129, 130, 131, 133, 134, 135, 136, 137, 138, 139, 140, 144, 146, 269, 270, 271, 272, 273, 278, 279, 293,[2] 294, 304, 360).  And, the few exhibits cited by plaintiffs that the summary judgment Order didn't reference are communications that merely duplicate communications that the summary judgment did discuss. *See* Pls.' Exs. 104–108, 112, 120, 122, 123, 127, 132, 141, 206, 258 (internal emails discussing Project X2—the working group that came up with the recommendation to remove single EpiPens from the market and begin selling the EpiPen exclusively in a 2-Pak—and the medical rationale that Mylan used to support that decision); *see also* Pls.' Exs. 268, 281, 284–90 (internal emails between Mylan, Pfizer, and Teva discussing EpiPen/Teva settlement).

Although these references appear in the uncontroverted facts section of the court's Order, the court thoroughly reviewed plaintiffs' submitted summary judgment evidence and accepted as true the facts asserted in those exhibits in the light most favorable to plaintiffs on summary judgment.  Plaintiffs are right that the court didn't refer—explicitly—to all 63 exhibits in the analysis section of the RICO claim where it discussed plaintiffs' allegations about defendants' use of the mail and wires to further their alleged EpiPen pricing scheme.  But the court's general references to the "underlying RICO predicate acts" or defendants' "use of the mail and wires to further defendants' EpiPen pricing scheme" conveyed that the court had considered that evidence.  *Id.* at 168, 171.  And, the problem with plaintiffs' RICO claim wasn't that plaintiffs had failed to present evidence showing a triable issue of *the existence* of alleged predicate acts in the form of mail or wire fraud.  Instead, the dispositive problem stemmed from plaintiffs' failure to show a triable issue that the predicate acts—the use of the mails and wires to further the alleged EpiPen pricing scheme—were the *"but-for" cause* of plaintiffs' injuries.  And that is

---

[2]     Pls.' Ex. 293 is identical to Defs.' Ex. 168.  The court's Order cited defendants' exhibit number when referring to this exhibit.  *See* Doc. 2381 at 54.

why the court granted summary judgment against plaintiffs' RICO claim. Plaintiffs haven't shown that the court's analysis clearly erred.

### B. The Court Didn't Misapprehend the Law and Plaintiffs' Position About RICO Causation.

Plaintiffs argue that the court misapprehended the law and their position on RICO causation in three ways.

*First*, plaintiffs assert that the court "reversed" its earlier legal rulings on RICO causation, violating the law of the case doctrine. Specifically, plaintiffs cite passages from the court's Order denying defendants' Motion to Dismiss and certifying in part plaintiffs' Motion for Class Certification. Plaintiffs made this argument about the Class Certification Order in their summary judgment briefing. Doc. 2190-1 at 120, 122 n.634 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.). And, in response to that argument, the court's summary judgment Order explained that the court, at class certification, accepted plaintiffs' allegations as true and determined whether plaintiffs had shown they were capable of proving their claims on a classwide basis. Doc. 2381 at 170 n.70. That is, when deciding certification, the court found that plaintiffs had shown that they had a method for proving causation on a classwide basis. But, the court never held that plaintiffs had shouldered their summary judgment burden to identify a triable issue of RICO causation. Instead, as the court's summary judgment Order explained, the court previously hadn't considered the merits of the "but for" causation requirement necessary to support the RICO claim. *Id.* Plaintiffs' Motion to Reconsider this issue "is not appropriate" because such a motion is not a vehicle "to revisit issues already addressed[.]" *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted).

Also, plaintiffs' argument about the law of the case doctrine doesn't demonstrate summary judgment error. Plaintiffs correctly formulate the law of the case doctrine—it

"preclud[es] the relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016). But, the law of the case doctrine doesn't apply to motions that "do not raise the 'same issues.'" *Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006), *rev'd on other grounds*, *Wilkie v. Robbins*, 551 U.S. 537 (2007), *and vacated on other grounds*, *Robbins v. Wilkie*, 497 F.3d 1122 (10th Cir. 2007). On the Motion to Dismiss, the Motion for Class Certification, and the Mylan Defendants' Motion for Summary Judgment, "[d]ifferent 'legally relevant factors' [were] under consideration[.]" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)); *see also id.* (explaining that on "a motion to dismiss, a court examines the conduct alleged in the complaint to determine if plaintiff has alleged a violation of clearly established law, whereas, on a motion for summary judgment, a court examines the evidence gathered during discovery"). Thus, when the court decided the summary judgment issues, it couldn't have relied on its rulings on the Motion to Dismiss or the Motion for Class Certification as the "law of the case." *Id.* at 764–65. To do so "would be erroneous." *Id.*

*Second*, plaintiffs argue that the court misapplied the case law when it required RICO causation to flow from the underlying predicate acts instead of simply the alleged fraudulent scheme.[3] Once again, plaintiffs made this argument in their summary judgment papers, and the

---

[3]     Plaintiffs also mischaracterize the summary judgment Order as "requiring Plaintiffs to tie 'but-for' causation to a specific use of the mail and wires" and erroneously "[l]ooking at individual wires or mails in isolation to determine whether Plaintiffs would have sustained their injury but-for the statements in a particular mail/wire[.]" Doc. 2398 at 18. The court disagrees with the way plaintiffs characterize the summary judgment Order. The court explicitly understood that plaintiffs' "alleged RICO predicate offenses are use of the mail and wires to further defendants' EpiPen pricing scheme[.]" Doc. 2381 at 171. And, the court explained, the "governing legal standard" required plaintiffs to "identify a genuine issue for trial whether defendants' use of the mail and wires to further the EpiPen pricing scheme" was "the 'but for' cause of plaintiffs' injuries—*i.e.*, paying inflated prices for EpiPen." *Id.* The court explained that plaintiffs hadn't "discharged this burden[,]" and that the summary judgment facts just didn't support plaintiffs' argument that defendants' use of the mail and wires was "integral" to their scheme, or that it provided the necessary "cover" for their scheme such that they had shown a triable issue whether the

court considered—and rejected—the argument in its summary judgment Order.  *See* Doc. 2381 at 169 ("Plaintiffs urge the court to ignore these requirements for establishing 'but for' causation [*i.e.*, the requirement that the RICO predicate acts must cause plaintiffs' injuries].  Instead, they contend, on summary judgment the court only 'considers evidence of the entire "fraudulent scheme"—not merely the use of the mails or wires, which don't have to be fraudulent and only have to further the scheme in some way.'" (quoting Doc. 2190-1 at 122 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.))).  So, yet again, plaintiffs improperly are using their Motion to Reconsider "to relitigate old matters" and "rehash[ ]" arguments previously asserted in their summary judgment briefing.  *See Castanon*, 976 F.3d at 1141.

Also, plaintiffs fail to show that the court clearly erred by applying the law governing "but-for" RICO causation.  Plaintiffs argue that RICO causation only requires them to show a "link . . . between the wrongful conduct and the plaintiffs' injury."  Doc. 2398 at 18 (emphasis omitted).[4]  But, that's not a precise description of the causation requirement.  Instead, the governing case law requires a RICO plaintiff to establish causation by showing that defendants' *predicate acts*—not simply the alleged fraudulent scheme—caused plaintiffs' injuries.  *See* Doc. 2381 at 168–69 (first citing *Hemi Grp., LLC v. City of N.Y.C.*, 559 U.S. 1, 9 (2010) ("[T]he

---

predicate acts of mail and wire fraud were the "but-for" cause of plaintiffs' alleged injuries.  *Id.* at 171, 173.

[4]      Plaintiffs also argue that the law doesn't impose a "burden [on them] to affirmatively disprove all other possible causes" of their injuries.  Doc. 2398 at 19 (citing *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 757 (7th Cir. 2011)); *see also id.* at 14 (asserting that the court "impermissibly shifted to Plaintiffs the burden to *disprove* potential intervening causes").  But, plaintiffs never cite any portion of the summary judgment Order where the court purportedly held summary judgment was warranted because plaintiffs hadn't disproved certain intervening causes of their alleged injuries.  Indeed, the court's Order never even used the word "intervening" in its causation analysis of plaintiffs' RICO claims.  *See generally* Doc. 2381 at 164–180.  Instead, the court explained, the summary judgment facts showed that plaintiffs' alleged injuries flowed from defendants' actions removing single EpiPens from the market and from entering the alleged unlawful pay-for-delay settlement.  But, the summary judgment facts never presented a triable issue whether the alleged RICO predicate acts—*i.e.*, the unlawful use of the mail and wires—were the "but for" cause of plaintiffs' alleged injuries.

plaintiff is required to show that a *RICO predicate offense* not only was a but for cause of his injury, but was the proximate cause as well." (emphasis added) (citation and internal quotation marks omitted)); then citing *Bridge*, 553 U.S. at 658–59 (recognizing if the Cook County, Illinois Treasurer's Office "had not accepted petitioners' false attestations of compliance with the [County's] Single, Simultaneous Bidder Rule," prohibiting simultaneous bidding at public tax lien actions—*i.e.*, the alleged RICO predicate acts—"and as a result had not permitted petitioners to participate in the auction, respondents' injury would never have materialized"); then citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) ("The Court has indicated the compensable injury flowing from a violation of that [RICO] provision necessarily is *the harm caused by predicate acts* sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." (emphasis added) (citation and internal quotation marks omitted)); then citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (explaining plaintiff must show "the defendant's [RICO] *violation* not only was a 'but for' cause of his injury, but was the proximate cause as well" (emphasis added))).

Even the cases plaintiffs cite in their Motion for Reconsideration say as much. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985) (explaining that "'racketeering activity' consists of no more and no less than commission of a predicate act[,]" and to bring a RICO claim, plaintiff must show that "defendant engage[d] *in a pattern of racketeering activity in a manner forbidden by* [the RICO statute], and *the racketeering activities* injure[d] the plaintiff in his business or property" (emphasis added)); *see also In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 12 (1st Cir. 2019) ("[A] RICO plaintiff must prove that *the defendant's racketeering conduct* caused her injury." (emphasis added)); *RWB Servs., LLC v.*

*Hartford Comput. Grp., Inc.*, 539 F.3d 681, 687 (7th Cir. 2008) (explaining that a plaintiff pleads causation if "*a predicate act* was sufficient to cause the plaintiff's injury and that predicate act was part of the entire violation of" the RICO statute (emphasis added) (internal quotation marks omitted)).

Also, plaintiffs criticize the court for relying on "non-binding Fourth Circuit authority" because it cited *Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) in its summary judgment analysis of plaintiffs' RICO claim. Doc. 2398 at 20. But this dust up is old news. Defendants cited *Walters* in their opening summary judgment brief. Doc. 2142-1 at 114. Plaintiffs responded in their Opposition to summary judgment, arguing that plaintiffs' RICO allegations are "[u]nlike . . . the cases Defendants cite" and explaining that *Walters* differs from this case's facts. Doc. 2190-1 at 123–24 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.). So, plaintiffs' argument now is just another improper attempt to relitigate issues the court already has addressed. *See Castanon*, 976 F.3d at 1141; *see also Servants of the Paraclete*, 204 F.3d at 1012.

Even so, the court didn't commit clear error by considering persuasive authority from the Fourth Circuit and concluding that—like the *Walters* plaintiffs—plaintiffs here had failed to establish a triable issue of RICO causation because plaintiffs presented no triable issue whether *the predicate acts*—*i.e.*, the alleged mail and wire fraud—were the "but for" cause of plaintiffs' injuries. Instead, as the court explained, the summary judgment evidence showed that plaintiffs sustained their alleged injuries from defendants withdrawing single EpiPens from the market and entering the alleged pay-for-delay settlement with Teva—not from defendants' alleged unlawful use of the mails and wires. *See* Doc. 2381 at 172 (explaining that "the elimination of the single pack—not defendants' statements—caused the alleged harm" and rejecting plaintiffs' argument

that defendants' use of the mail and wires to come up with a "false medical rationale" was "essential to the EpiPen pricing scheme because it provided a 'smokescreen' and avoided market 'backlash' from the decision to remove single EpiPens from the market"); *see also id.* at 173–74 (agreeing with the Mylan defendants' argument that "plaintiffs would have sustained the same purported damages with or without defendants' press release announcing the EpiPen patent litigation settlement" and rejecting plaintiffs' argument that "the false press release about the EpiPen settlement was 'integral' to defendants' fraudulent pricing scheme because it provided the 'essential cover for their scheme to stifle competition'" simply based on the fact that defendants "devoted time and resources to crafting and disseminating it over the wires" because the summary judgment facts failed to support a triable issue that the alleged mail and wire fraud—as opposed to the actual settlement agreement—caused plaintiffs' alleged injuries).

*Last*, plaintiffs contend that the court erred because its ruling made reliance an independent causal showing and impermissibly weighed the evidence against the non-moving parties on the reliance question.  Plaintiffs' argument starts with the complaint that the court misapplied the Supreme Court's holding in *Bridge* because "under *Bridge*, '[t]he necessity of individual reliance is no longer an aspect of a civil RICO claim predicated on fraud.'"  Doc. 2398 at 23 (quoting *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1093 n.10 (10th Cir. 2014) (discussing *Bridge*, 553 U.S. 657–58)).  Plaintiffs' description of the governing legal standard is consistent with the way the summary judgment Order recited the reliance requirement.

The court's summary judgment Order explicitly recognized that a RICO claim doesn't require individual reliance.  *See* Doc. 2381 at 175 ("The Supreme Court has explained that a RICO plaintiff need not establish 'first-party reliance' to satisfy the causation requirement."

(quoting *Bridge*, 553 U.S. 639)).  But, the court continued, recognizing that "[n]evertheless, 'a RICO plaintiff who alleges injury "by reason of" a pattern of mail fraud' likely can't 'prevail without showing that *someone* relied on the defendant's misrepresentations.'"  *Id.* (quoting *Bridge*, 553 U.S. at 658).  And, "in 'most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.'"  *Id.* (quoting *Bridge*, 553 U.S. at 658).

Also, plaintiffs argue that the court erred by relying on cases involving fraudulent misrepresentations instead of "omissions, concealment, and half-truths" as plaintiffs have alleged in this case.  Doc. 2398 at 23.  But, that's just not accurate.  The court's summary judgment Order cited *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceuticals Co.*, 943 F.3d 1243 (9th Cir. 2019), which recognized that "RICO plaintiffs must prove, at a minimum, indirect reliance 'because, logically, a plaintiff cannot even establish but-for causation if *no one* relied on the defendant's alleged misrepresentation[.]'"  Doc. 2381 at 175 (quoting *Painters*, 943 F.3d at 1259).  *Painters* not only involved allegations of misrepresentations but also alleged omissions.  *Painters*, 943 F.3d at 1247–48, 1257–60.  And, *Painters* considered whether plaintiffs had alleged "that *someone* in the chain of causation relied on Defendants' alleged misrepresentations *and omissions*" about the safety of a drug product sufficient to state a plausible RICO claim under Rule 12(b)(6).  *Id.* at 1260 (second emphasis added).  Thus, the reliance question applies equally to alleged fraudulent representations and fraudulent omissions.  *See id.*; *see also CGC Holding Co.*, 773 F.3d at 1081 (explaining that "plaintiffs' payment of up-front fees allows for a reasonable inference that the class members relied on lenders' promises, which later turned out to be misrepresentations *or omissions* of financial wherewithal" (emphasis added)).  And, the court's summary judgment Order explicitly

16

considered plaintiffs' allegations about omissions when it determined that "plaintiffs present[ed] no evidence that anyone . . . relied on defendants' alleged misstatements *or omissions* about the 2-Pak switch, the EpiPen patent litigation settlement, or Mylan's use of exclusive rebate contracts."  Doc. 2381 at 176–77 (emphasis added); *see also id.* at 177 (concluding plaintiffs "present[ed] no triable issue whether anyone relied on defendants' alleged misstatements *or omissions* sufficient to support the 'but for' causation element of their RICO claims" (emphasis added)).

To the extent plaintiffs now argue that the summary judgment Order made reliance a "separate element" of a RICO claim, plaintiffs misread the court's summary judgment Order. The court noted that plaintiffs' failure to present a triable issue of reliance provides a "second and independent" reason to grant summary judgment.  Doc. 2381 at 175.  As our Circuit has explained, "[a]lthough reliance is not an explicit element of a civil RICO claim, it frequently serves as a proxy for both legal and factual causation."  *CGC Holding Co., LLC*, 773 F.3d at 1088.  Because plaintiffs had failed to present a triable issue of reliance, this shortcoming provided another reason to conclude that plaintiffs hadn't adduced evidence to support the RICO causation requirement, as their summary judgment burden required.  But, the court never said it was treating reliance as a separate element of a RICO claim.

Plaintiffs also argue that the court improperly required direct evidence of reliance and ignored circumstantial and statistical evidence that plaintiffs had submitted as evidence of reliance.[5]  Once again, plaintiffs are rehashing arguments that they asserted in their summary

---

[5]    This portion of plaintiffs' motion begins by discussing "direct" evidence of reliance and then transitions into discussing "direct testimony of first-party reliance."  Doc. 2398 at 24.  Plaintiffs assert that the court "faulted Plaintiffs for not having any direct testimony of first-party reliance" but "first party reliance is neither an element of a RICO claim nor necessary to show causation."  *Id.*  Plaintiffs' language on this point confuses the issues.

judgment briefing and the court rejected in its summary judgment analysis. *See* Doc. 2190-1 at 124–128 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.); *see also* Doc. 2381 at 175–80 (Mem. & Order). So, like many of plaintiffs' other reconsideration arguments, plaintiffs' arguments here—yet again—are improper fodder for a motion to reconsider. *See Castanon*, 976 F.3d at 1141 (explaining that a motion to reconsider is "'not appropriate to revisit issues already addressed'" (quoting *Servants of the Paraclete*, 204 F.3d at 1012)).

Also, plaintiffs don't show that the court clearly erred in its analysis of the reliance question. Plaintiffs argue that they offered "circumstantial evidence" showing "how TPPs, consumers, doctors, and pharmacists were targeted by the 2-Pak marketing campaign, and how regulators and courts were targeted with misinformation about the legitimacy of the EpiPen-Nuvigil settlements." Doc. 2398 at 24. But plaintiffs' "targeting" evidence merely cites internal emails. Plaintiffs don't provide any evidence capable of supporting a finding or inference that anyone ever received or relied on any misrepresentations or omissions about the 2-Pak switch or the alleged pay-for-delay settlement.

Plaintiffs assert that other courts have "credited" such "circumstantial evidence" on summary judgment, finding it "sufficient evidence of causation and reliance[.]" *Id.* But, the court's summary judgment Order already addressed this argument explicitly. The court explained why these cases differed from the facts here. Doc. 2381 at 176. Instead, in each of

---

The court never required plaintiffs to come forward with evidence of *first party* reliance. The summary judgment Order explicitly stated that's not required under RICO. Doc. 2381 at 175. The court noted that none of the named plaintiffs testified that they had relied on any of defendants' statements (which necessarily would include any alleged misrepresentations or omissions contained in such statements). *Id.* at 177. It did so only to note that no direct evidence existed of any first-party reliance. But the court also explained that plaintiffs had presented no direct evidence that *anyone* had relied on defendants' statements. *Id.* at 176–77. That's one reason why the court concluded summary judgment was warranted—*i.e.*, the summary judgment facts didn't include any evidence of direct reliance by anyone—whether a first party or some other party. *Id.* at 177.

plaintiffs' cited cases, the record included evidence of "reliance by *someone*—even if it wasn't plaintiffs who had relied directly on the alleged misrepresentations." *Id.* (citing *In re Neurontin Mktg. & Sales Pracs. Litig. (Kaiser)*, 712 F.3d 21, 40–41 (1st Cir. 2013) (holding plaintiff presented "ample evidence" of reliance where summary judgment facts showed plaintiff "received [defendant's] misrepresentations through [defendant's] contacts" with plaintiffs' Drug Information Service ("DIS") "which disseminated information throughout [plaintiff's] organization" and that plaintiffs' "physicians received and acted upon [defendant's] misrepresentations, both through information sent through the DIS and information provided to them at [defendant's] events"); then citing *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 13 (1st Cir. 2019) (concluding that plaintiff presented sufficient evidence of RICO causation to survive summary judgment where defendant's off-label marketing to physicians caused, according to plaintiff's experts, "76% and 54% of all pediatric prescriptions of Celexa and Lexapro, respectively" and defendant's "sales representatives called or visited at least two physicians who subsequently ordered pediatric prescriptions of Celexa and Lexapro")).

The same is true for the new cases that plaintiffs cite in the Motion to Reconsider. Plaintiffs cite three cases where, they argue, courts found "circumstantial evidence" sufficient to preclude summary judgment on the causation element. But in each one of the cases, the evidence supported a finding that someone actually had received and relied on the alleged misrepresentations or omissions, thus permitting a triable issue of causation. *See, e.g.*, *In re Neurontin Mktg. & Sales Pracs. Litig. (Aetna)*, 712 F.3d 51, 56–58 (1st Cir. 2013) (discussing plaintiffs' statistical analysis that "demonstrated that defendants' marketing of [a drug product] caused" an increase in prescriptions of the drug product and finding that plaintiff's "evidence of but-for causation included not only aggregate statistical evidence, but circumstantial evidence,

such as the increase in off-label prescriptions of [a drug product] following the initiation of

[defendant's] alleged fraudulent marketing efforts"); *In re Neurontin Mktg. & Sales Pracs. Litig.*

*(Harden)*, 712 F.3d 60, 68–69 (1st Cir. 2013) (explaining that plaintiffs had presented sufficient

evidence of reliance including "through [their expert] Dr. Rosenthal's regression analysis—that

[defendant's] misinformation had a significant influence on thousands of other prescribing

decisions").[6] In these two cases, the First Circuit concluded that the statistical evidence showing

an increase in prescriptions after defendants implemented a fraudulent marketing campaign

sufficed to present a genuine issue of causation. In contrast, the statistical evidence that

plaintiffs offered here doesn't connect EpiPen purchases to any misrepresentations or omissions

(such as a fraudulent marketing campaign). Instead, Prof. Rosenthal analyzed plaintiffs' alleged

damages flowing from elimination of single EpiPens from the market and from alleged pay-for-

delay settlements that prevented consumers from having the option to purchase a lower-price

generic. *See* Doc. 2381 at 171–72 (discussing Prof. Rosenthal's analysis in the RICO causation

analysis on summary judgment and explaining that Prof. Rosenthal calculated "damages 'due to

the withdrawal of the single-pen packaging' and not alleged misstatements about the 2-Pak

switch" (quoting Doc. 2164-4 at 31–32 (Defs.' Ex. 325) (Rosenthal Expert Report ¶ 72))); *see*

*also id.* at 173 (explaining that Prof. Rosenthal hadn't calculated plaintiffs' damages stemming

from any misrepresentations or omissions about the patent litigation settlements but instead

---

[6]     The third case plaintiffs cite doesn't even discuss reliance, and, as plaintiffs explain, the facts
involved defendants submitting allegedly misleading submissions to a county treasurer when bidding on
tax liens. *See BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 757–58 (7th Cir. 2011). So, the case
involved evidence supporting a finding that someone actually received and relied on the alleged
misrepresentations. *Id.* That is nothing like the summary judgment facts here. Plaintiffs failed to come
forward with evidence that anyone received, read, or relied on defendants' statements about the 2-Pak
switch, the alleged pay-for-delay settlement, or the use of exclusive rebate contracts. As a result,
plaintiffs haven't shown a triable issue of reliance on any alleged misrepresentations or omissions. *See*
Doc. 2381 at 177 (discussing the absence of testimony about reliance).

calculated "plaintiffs' damages based on the 'but for' date that a generic competitor would have entered the market absent the pay-for-delay settlement" (citing Doc. 2164-4 at 27–31 (Defs.' Ex. 325) (Rosenthal Expert Report ¶¶ 61–71))).  As the court discussed in the summary judgment Order, Prof. Rosenthal's analysis here doesn't tie the alleged injuries to any of the RICO predicate acts.  *See id.* at 171–73.  Thus, her analysis can't present a triable issue of reliance when it didn't analyze the harm flowing from any of the RICO predicate acts.

The court's summary judgment Order explained, in contrast to cases where plaintiffs had marshaled evidence that at least *someone* had relied on alleged misrepresentations or omissions, plaintiffs in this case "present[ed] no evidence that anyone—not plaintiffs, not physicians, not third-payor payors, nor anyone else in the supply chain—relied on defendants' alleged misstatements or omissions about the 2-Pak switch, the EpiPen patent litigation settlement, or Mylan's use of exclusive rebate contracts." Doc. 2381 at 176–77.  Thus, the court explained, "the undisputed summary judgment facts here differ materially from those in" plaintiffs' cited cases and "present[ed] no triable issue whether anyone relied on defendants' alleged misstatements or omissions sufficient to support the 'but for' causation element of their RICO claims." *Id.* at 177.

Plaintiffs make one last point about reliance.  They argue that the court can infer reliance in cases, like this one, involving group coercion.  Doc. 2398 at 25 (citing *Menocal v. Geo Grp., Inc.*, 882 F.3d 905, 922 n.13 (10th Cir. 2018)).  Plaintiffs made this very same argument in their summary judgment papers.  Doc. 2190-1 at 125 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.).  So, plaintiffs again use their Motion to Reconsider to revisit an argument that they previously asserted.  But still, their citation to this Tenth Circuit case doesn't show any clear error.  As defendants correctly assert, *Menocal* didn't involve RICO or fraud claims. *See*

*generally Menocal*, 882 F.3d 905.  *Menocal* asserted in a footnote that the "alleged group coercion" in that case allowed "for a class-wide inference of causation" on class certification.  *Id.* at 922 n.13.  But, the Circuit took "no position on whether the class would ultimately succeed on such proof at trial."  *Id.* at 922.  And, even if the court could apply *Menocal*'s footnote to the RICO causation analysis in this case, plaintiffs would need to come forward with some evidence of "group coercion" caused by the RICO predicate acts—*i.e.*, the alleged unlawful use of the mail and wires—and not just evidence of "group coercion" caused by the switch to the 2-Pak or the alleged pay-for-delay settlement (which do not qualify as underlying predicate acts).  Plaintiffs failed that burden because the summary judgment facts presented no triable issue that anyone ever relied on any misrepresentations or omissions about the 2-Pak switch or the alleged pay-for-delay settlement.

In sum, plaintiffs haven't shown that the court clearly erred in its conclusion that the summary judgment record presented no triable issue of reliance.

### C.  The Court Didn't Weigh the Evidence Against the Non-Moving Plaintiffs.

*Next*, plaintiffs assert that the court improperly weighed the summary judgment evidence against them as the non-moving parties.  This section of plaintiffs' motion asserts four arguments.

*First*, plaintiffs argue that the court erred by failing to accept circumstantial evidence of causation and reliance, like the courts did in *In re Celexa*, *Aetna*, and *Harden*.  Doc. 2398 at 26–27.  As already discussed in the previous subsection, these cases differ from the facts here because they included evidence that *someone* had relied on the underlying predicate acts thereby producing the alleged injuries.  In contrast, here, plaintiffs presented no triable issue whether

anyone relied on defendants' alleged statements or omissions about the 2-Pak switch, the alleged pay-for-delay settlement, or the exclusive rebate contracts.

*Second*, plaintiffs argue that the court resolved material fact questions instead of letting a jury decide them. Plaintiffs' Motion to Reconsider and Reply run through the summary judgment evidence that, plaintiffs argue, permits a jury to infer that the Mylan defendants' use of the mail and wires caused plaintiffs' injuries in the form of paying higher prices for EpiPen. Doc. 2398 at 27–32; Doc. 2416 at 13–21. As already discussed, the court addressed the vast majority of plaintiffs' cited summary judgment evidence in its summary judgment Order. Plaintiffs argued on summary judgment that this evidence presented a triable issue of causation because the alleged predicate acts were "essential" or "integral" to their pricing scheme. Doc. 2381 at 172–74. The court disagreed with plaintiffs, explaining that none of the evidence could support a reasonable finding or inference that "but for" plaintiffs' use of the mail and wires, defendants wouldn't have succeeded in their alleged pricing scheme that produced plaintiffs' alleged injuries. *Id.* The court explained that plaintiffs' RICO claim failed because it hadn't come forward with evidence presenting a triable issue whether the *underlying predicate acts— i.e.*, the alleged mail and wire fraud—caused plaintiffs' injuries as opposed to Mylan's elimination of the single EpiPen or the alleged pay-for-delay settlement. Plaintiffs' Motion to Reconsider doesn't demonstrate any error in this conclusion.

*Third*, plaintiffs argue that the court misapprehended Prof. Rosenthal's expert report and improperly usurped the jury's role to consider this evidence of causation. Plaintiffs quibble with how the court described her analysis in a few instances. But, plaintiffs never explain how Prof. Rosenthal's report presented a triable issue of RICO causation when, as already discussed, her

statistical analysis didn't analyze whether *the alleged RICO predicate acts*—as opposed to withdrawal of the single EpiPen or the alleged generic delay—caused the alleged injuries.

*Last*, plaintiffs argue that the court improperly weighed the named plaintiffs' deposition testimony against the statistical and circumstance evidence showing but-for causation.  There are many problems with this last argument.  First, as discussed, plaintiffs' purported statistical and circumstantial evidence of causation did not present a triable issue of RICO causation because the evidence doesn't connect the alleged RICO predicate acts to the alleged harm.  Thus, the court never weighed the deposition testimony against the purported statistical and circumstantial evidence because there was nothing for the court to weigh.  Second, the court discussed some of the named plaintiffs' uncontroverted testimony to explain why it didn't support an inference of reliance.  Doc. 2381 at 178–79.  Plaintiffs argued on summary judgment that the named plaintiffs' deposition testimony presented issues of fact for the jury to weigh against common evidence of causation.  Doc. 2381 at 179.  The court rejected this argument, explaining that plaintiffs hadn't come forward with sufficient evidence to allow an inference of causation based either on the uncontroverted deposition testimony or Prof. Rosenthal's analysis.  *Id.* at 178–79.  The court didn't weigh the evidence.  Instead, it explained why the evidence couldn't furnish a triable issue of reliance sufficient to support RICO causation.  In sum, plaintiffs fail to show that the court clearly erred in its analysis of the summary judgment evidence on plaintiffs' RICO claim.

### D.  The Court Didn't Fail to Include TPP in its Analysis.

*Next*, plaintiffs assert that the court failed to include third-party payors ("TPPs") in its summary judgment analysis.  Plaintiffs argue that the court, when analyzing plaintiffs' antitrust claims, found that plaintiffs had come forward with evidence sufficient to present a triable issue

of causation on their generic delay theory because the alleged generic delay forced TPPs to pay higher prices for branded EpiPens for their insureds. This argument confuses the distinct burdens required to survive summary judgment on an antitrust claim and a RICO claim. As already discussed, to survive summary judgment on the RICO claim, plaintiffs had to come forward with evidence presenting a triable issue that the *alleged predicate RICO acts—i.e.*, the unlawful use of the mails and the wires—caused plaintiffs' injuries. Plaintiffs can't show causation by pointing to the alleged pay-for-delay settlement that resulted in the generic delay because the settlement itself doesn't qualify as an underlying RICO predicate act.

Plaintiffs make the same argument about their 2-Pak theory. They argue that they presented evidence of a causal link between elimination of the EpiPen single pack and plaintiffs' injuries of paying more for the EpiPen. But, again, the switch to the 2-Pak is not an underlying RICO predicate act that can support a viable RICO claim. Plaintiffs also argue that the court ignored "defendants' own documents" that purport to show that "communications targeting TPPs were critical to Defendants' ability to make the switch to the 2-Pak[.]" Doc. 2398 at 36. The court's summary judgment Order specifically discussed these documents in its analysis of RICO causation. *See* Doc. 2381 at 172 (noting that "plaintiffs cite an email sent several weeks after the 2-Pak switch stating that Mylan had implemented the 2-Pak switch without 'ANY issues' and received 'no backlash' from payors"). But, as the court explained on summary judgment, neither of these documents "connects Mylan's public statements about the 2-Pak switch to Mylan's purported success avoiding scrutiny or objection to the 2-Pak switch" such that they could support a triable issue of RICO causation. *Id.* Plaintiffs' RICO claim failed on summary judgment because the summary judgment facts presented no triable issue whether the underlying predicate acts—*i.e.*, the mail and wire fraud—caused plaintiffs' alleged 2-Pak injuries.

In sum, plaintiffs fail to show that the court ignored TPPs in its analysis of the RICO claims.  As a consequence, plaintiffs haven't shown that the court clearly erred in its summary judgment Order.

### E.  The Court Didn't Clearly Err by Dismissing Four Named Plaintiffs Who Never Filed Claims in a Transferor Court.

*Last*, plaintiffs argue the court erred by dismissing four named plaintiffs from the MDL for lack of subject matter jurisdiction because these plaintiffs never filed an underlying case in a transferor court that the Judicial Panel on Multidistrict Litigation transferred to this court under 28 U.S.C. § 1407.  Doc. 2381 at 163.  Plaintiffs argue that the court's subject matter jurisdiction doesn't flow from § 1407—*i.e.*, the MDL statute—but from the "federal RICO statute, federal question jurisdiction, and CAFA [the Class Action Fairness Act]" and that the "exercise of supplemental jurisdiction" over the additional plaintiffs' claims "was proper."  Doc. 2398 at 37. Plaintiffs previously raised this argument in the summary judgment briefing.  Doc. 2190-1 at 105 n.549 (Class Pls.' Mem. in Opp'n to Defs.' Mots. for Summ. J.).  The court's summary judgment Order rejected it, and explained why.  Doc. 2381 at 162–63 (explaining that the added named plaintiff's "claims don't properly 'arise out of supplemental jurisdiction' because she 'never filed a suit of [her] own nor had any suit pending[,]' thus the court can't 'consolidate [her] suit with the multidistrict litigation' and 'this transferee court "does not have subject matter jurisdiction to adjudicate an action that is lacking in original federal jurisdiction"'" (quoting *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No. MD-09-02119-PHX-JAT, 2016 WL 3931820, at *8 (D. Ariz. July 21, 2016) (quoting *Dorsey v. Mfrs. Life Ins. Co.*, No. Civ. A. 97-2389, 1997 WL 703354, at *3 (E.D. La. Nov. 10, 1997)))).

Plaintiffs' argument here simply rehashes their earlier arguments, and that's not a proper basis for seeking reconsideration.  *See Servants of the Paraclete*, 204 F.3d at 1012 (explaining

that a motion to reconsider "is not appropriate to revisit issues already addressed" (citation omitted)); *Skepnek v. Roper & Twardowsky, LLC*, No. 11-4102-KHV, 2012 WL 5907461, at *1 (D. Kan. Nov. 26, 2012) ("A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed.").

Also, plaintiffs fail to show that the court clearly erred when it dismissed the four named plaintiffs from the lawsuit. Plaintiffs' Motion to Reconsider argues that the court erred by "relying on unpublished case law from Michigan district courts" to conclude that the four named plaintiffs had not properly joined this MDL. Doc. 2398 at 37. But, to decide the issue, the court relied on more than just federal Michigan case law. *See* Doc. 2381 at 160–63 (collecting cases from MDLs in the Michigan, Arizona, Oregon, and Louisiana federal district courts and discussing supplemental jurisdiction principles under federal statutes and Supreme Court and Tenth Circuit case law). Instead, as defendants correctly argue, "[e]very MDL transferee court to consider the question has followed the same rule: MDL proceedings cannot spawn fresh actions by new plaintiffs[,]" and here, plaintiffs "have identified no contrary authority" permitting the addition of plaintiffs to an MDL who haven't filed an underlying case in a transferor court. Doc. 2408 at 8.

Alternatively, plaintiffs assert—but just now, for the first time—that the court should have "severed" these four named plaintiffs under Fed. R. Civ. P. 21. A motion to reconsider is not a vehicle to "advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012. But, even if plaintiffs had raised this argument in their summary judgment briefing, the court would have rejected it. As discussed, these four plaintiffs never properly filed an underlying lawsuit in a transferor court. Thus, the JPML never has

transferred these plaintiffs' claims into this MDL under §1407.  As a consequence, these four

plaintiffs have no case that's properly within the MDL that the court could sever.  Thus, the court

didn't commit clear error when it dismissed these four plaintiffs from this MDL based on a lack

of subject matter jurisdiction.

## IV.      Conclusion

None of plaintiffs' five arguments warrant reconsideration of the court's summary

judgment Order.  Thus, the court denies plaintiffs' Motion to Reconsider.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for

Reconsideration of the June 23, 2021, Memorandum and Order on the Mylan Defendants'

Motion for Summary Judgment (Doc. 2398) is denied.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Oral Argument on Pending

Motions (Doc. 2430) is denied.

**IT IS SO ORDERED.**

**Dated this 25th day of October, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**