**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:  **EpiPen (Epinephrine**
        **Injection, USP) Marketing,**
        **Sales Practices and Antitrust**
        **Litigation**

**(This Document Applies to Consumer**
**Class Cases)**

**MDL No:  2785**

**Case No. 17-md-2785-DDC-TJJ**

**ORDER GRANTING FINAL APPROVAL OF THE SETTLEMENT, AWARDING**
**ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS,**
**AND APPROVING PLAN OF ALLOCATION**

This matter comes before the court on Plaintiff Class Representatives' motion seeking

final approval of the Settlement, asking for awards of attorneys' fees, expenses, and service

awards, and seeking approval of the Plan of Allocation of the Settlement proceeds (together the

"Motion") set forth in the combined Class Plaintiffs' Motion for Final Approval of Settlement,

Approval of Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Service Awards

(Doc. 2434).  The Pfizer Defendants[1] have not opposed the Motion and no Class Member has

filed a valid objection to the Motion.  The court, after considering all papers filed and

proceedings conducted herein, and after finding that the Settlement of this Litigation against the

Pfizer Defendants is fair, reasonable, and adequate, and otherwise fully informed about this

action, grants the Motion.

      **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

---

[1]     The "Pfizer Defendants" include Pfizer Inc., Meridian Medical Technologies, Inc., and King
Pharmaceuticals LLC (f/k/a King Pharmaceuticals, Inc.).

1.      Class Plaintiffs seek final approval of the Settlement.[2]  Rule 23(e) permits the parties to settle the claims of a certified class action, but "only with the court's approval."  And, the court may approve a settlement only after conducting "a hearing" and finding that the settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  Also, the Rule includes several factors that courts should consider when deciding whether the settlement is "fair, reasonable, and adequate[.]"  *Id.*  These factors include whether:

(A)     the class representatives and class counsel have adequately represented the class;
(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)     the proposal treats class members equitably relative to each other.

*Id.*  Also, the Tenth Circuit has noted four factors that a district court must consider when assessing whether a proposed settlement is "fair, reasonable, and adequate":

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  The court previously granted preliminary approval of the Settlement, finding it "fair, reasonable, and adequate" as Fed. R. Civ. P. 23(e) requires.  Doc. 2401 at 3.  Now, the court grants final approval

---

[2]     This Order incorporates by reference the definitions in the Stipulation of Class Action Settlement dated as of July 14, 2021 (Doc. 2393-2) (the "Settlement Agreement"), and all capitalized terms used, but not defined herein, shall have the same meanings used in the Settlement Agreement.

of the Settlement under this Rule because Class Plaintiffs have shown that each one of the Rule 23(e)(2) and Tenth Circuit factors is met here.

The Settlement satisfies each of the Rule 23(e)(2) factors.  *First*, the court finds that Class Plaintiffs and Co-Lead Counsel have represented the class adequately.  Plaintiff Class Representatives share the same interests and the same types of alleged injuries as the other Class Members.  They have participated in extensive discovery, and they have adequately represented the interests of the class.  Also, Co-Lead Counsel has represented the certified Class adequately by prosecuting their claims.  Their work has involved investigating the claims, drafting the Complaint, defeating Motions to Dismiss, engaging and reviewing written discovery, taking and defending hundreds of depositions, consulting with experts, successfully moving for class certification, opposing dispositive and *Daubert* motions, preparing for trial, and mediating the case to resolution.  Counsel's prosecution of the case has produced substantial relief to the certified Class through the negotiated Settlement.  In sum, the court concludes that Co-Lead Counsel has represented the Class adequately.  Thus, this first Rule 23(e)(2) factor favors approving the Settlement.

*Second*, the Settlement is the product of an arm's length negotiation.  The parties engaged an experienced and skilled mediator who conducted mediation sessions with the Settling Parties and their counsel.  Through that mediation process, the parties successfully negotiated the Settlement that Class Plaintiffs ask the court to approve.  The court finds that the second Rule 23(e)(2) factor favors approval.

*Third*, the court finds that the relief provided to the Class through the Settlement is adequate.  Continued litigation of the matter involves incurring additional costs, presents risk that Class Members might secure an unfavorable outcome, and guarantees that trial and appeal of

the case will delay any recovery that Class Members may achieve in the future.  As discussed in more detail below, the court finds that the proposed Plan of Allocation and the requested attorneys' fees award is fair and adequate.  And, Class Plaintiffs represent that the Settling Parties have no other agreements that the court must consider under Rule 23(e)(2)(C)(iv).  Thus, the court finds that the third Rule 23(e)(2) factor favors approving the Settlement.

*Fourth*, and as discussed more fully below, the court finds that the Settlement and the Plan of Allocation treat class members equitably relative to one another.  So, this fourth Rule 23(e)(2) factor also favors approval.  In sum, all four Rule 23(e)(2) factors favor the court granting final approval of the Settlement.

Also, the court finds that the Settlement satisfies the Tenth Circuit's test for assessing whether a proposed settlement is fair, reasonable, and adequate.  *First*, and as just discussed, the court finds that the Settlement "was fairly and honestly negotiated[.]"  *Rutter*, 314 F.3d at 1188.  *Second*, the litigation involves "serious questions of law and fact" that place "the ultimate outcome of the litigation in doubt[.]"  *Id.*  The parties strongly have disputed issues of liability and damages, and those contests would continue into the case's trial and, in all likelihood, an appeal.  The Pfizer Defendants continue to contest any liability on plaintiffs' antitrust and RICO claims.  Also, the Pfizer Defendants deny that Class Plaintiffs have sustained damage or injury. These contested issues were subjects of the Class Plaintiffs' class certification motion and Pfizer Defendants' summary judgment motion.  The issues presented difficult—and, in some cases, novel—questions of law that are subject to appeal.  And, as a consequence, these serious questions of law and fact place the ultimate outcome of the litigation in doubt.  *Third*, "the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation[.]"  *Id.*  The Settlement here provides the Class Members with immediate

recovery for claimed injuries allegedly derived from purchases of EpiPens. And this immediate recovery is more valuable than "the mere possibility" that Class Members might achieve a more favorable outcome "after protracted and expensive litigation" that may well last "many years in the future." *See In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) ("[I]t is reasonable to believe that the immediate recovery of such a substantial sum is more valuable than the mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future."). *Last*, the Settling Parties ask the court to approve the Settlement, which suggests that "the judgment of the parties" is "that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188. Thus, all of the Tenth Circuit's factors favor approval of the Settlement.

Also, as the court discussed in the contemporaneously-filed Final Judgment and Order of Dismissal (Doc. 2507), the court finds that no Class Member has submitted any valid or meritorious objection to the Settlement. Thus, the court overrules the objections to the Settlement. As a consequence, none of the submissions preclude the court from finding the Settlement is fair, reasonable, and adequate.

For all the reasons discussed, the court finds that the Settlement is fair, reasonable, and adequate. It thus grants final approval of the Settlement under Fed. R. Civ. P. 23(e).

2.      The Notice given to the Class stated that Class Counsel would move the court for an award of attorneys' fees not to exceed one-third of the Settlement Amount, an award of their expenses, an award of service awards for the Plaintiff Class Representatives, and for approval of the proposed Plan of Allocation. The Notice fairly and adequately notified Class Members of their right to object to the requests for attorneys' fees, expenses, service awards, and approval of

the proposed Plan of Allocation, and a full and fair opportunity was accorded to all persons and entities who are Class Members to be heard with respect to these matters.

3.     The Motion requests an award of attorneys' fees of one-third of the Settlement Amount, an award of Plaintiffs' counsel's expenses in the amount of $9,661,379.25, payment of $3,232,990.56 to the Notice Administrator for implementation of the Class notice plan, an award of service awards of $5,000 to each of the 35 Plaintiff Class Representatives, and approval of the proposed Plan of Allocation.  No Class Member has objected validly to these requested awards nor the Plan of Allocation.  As set forth in this Order, the court grants the Motion in part and it also denies it in part.  As explained below, the court grants the request for service awards to the Plaintiff Class Representatives and others, but it denies the request to award $5,000 to each of the 35 individuals.  Instead, as discussed below, the court adjusts the amount of the service award based on the time that each individual devoted to the case.  Also, the court grants the requests for an award of attorneys' fees, an award of expenses, and the payment to the Notice Administrator.  And, the court finds the Plan of Allocation appropriate, and it approves that Plan of Allocation.

## AWARD OF ATTORNEYS' FEES

4.     Plaintiff Class Representatives and Co-Lead Counsel request an award of attorneys' fees of one-third of the $345 million Settlement Amount, which amounts to $115 million, together with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid.

5.     Under Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The attorneys' fees requested and

awarded here are authorized under the common fund doctrine, *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."), and by the parties' Settlement Agreement (which the court has approved by separate order).  It expressly provides for an award of attorneys' fees and expenses to be paid from the Settlement Fund to Class Counsel for work performed for the benefit of the Class Members.  *See* Doc. 2393-2 at 23–24 (Settlement Agreement at ¶¶ 6.1, 6.4).

6.      The Tenth Circuit prefers the percentage-of-the-fund method when determining the award of attorneys' fees in common fund cases, *see Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458–59 (10th Cir. 2017), which calculates the fee as a reasonable percentage of the value obtained for the benefit of the class, *see Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1998).  The Tenth Circuit also has instructed that a court making a percentage fee award in a common fund case should analyze the reasonableness of the fee award under the *Johnson* factors.  *See id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).  The weight given to each *Johnson* factor varies from case to case, and each factor may not always apply.  *See id.* at 456 (finding that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation").

7.      The court finds that the request for and an award of attorneys' fees in the amount of one-third of the Settlement Amount is reasonable and supported by the *Johnson* factors.  The court addresses each applicable factor, in order of importance.

8.      **Results Obtained (Factor 8).**  The court finds that the result-obtained factor here deserves greater weight than the other *Johnson* factors.  *See id.* at 456 (holding a court may give

this factor greater weight when "the recovery was highly contingent" and "the efforts of counsel were instrumental in realizing recovery on behalf of the class"); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." (citation and internal quotation marks omitted)).  The amount involved was disputed, both in liability and damages, and hotly contested by Defendants. The result obtained is a $345 million cash recovery, which is substantial, guaranteed, non-reversionary, and only partial resolves the case because the certified Class still is pursuing the joint and several recovery of their damages against the Mylan Defendants.  The Net Settlement Funds will be distributed to the Class with no funds reverting to the Pfizer Defendants.  The court finds that the result obtained heavily favors awarding the one-third fee award.

       9.      **Customary Fee (Factor 5) and Awards in Similar Cases (Factor 12).**  Class actions "typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel."  *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (citation omitted).  Our court consistently has recognized that a "one-third fee is customary in contingent-fee cases (factor 5)," *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113–14 (D. Kan. 2018), and "well within the range typically awarded in class actions[,]" *Nieberding*, 129 F. Supp. 3d at 1250.  In fact, in cases with increased complexity and risk, the fee awards often are higher than one-third of the common fund obtained.  *See Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *2–3 (D. Kan. May 21, 2019) (citing fee awards in the Tenth Circuit based on 40% of the common fund).  And in our court, an attorneys' fee award of one-third is consistent with fees awarded in comparably high-risk, high potential damage, complex class actions resulting in creation of a common fund, such as the one here.  *See* Doc. 2435-6, Table 1 (listing nine fee

awards of 33.33% or greater within the District of Kansas for class recoveries ranging from
$16.9 million to $1.51 billion).  The court concludes that the requested fee of one-third is
customary and consistent with awards in similar cases, and thus supports a fee award in the
amount of one-third of the Settlement Amount.

10.    **Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10).**  The
court recognizes the significant risk Class Counsel has assumed in prosecuting this complex
antitrust and RICO case on a wholly contingent basis.  They necessarily and reasonably
expended a large amount of time (more than four years and tens of millions of dollars in attorney
time) and money (more than nine million dollars in expenses) with a "substantial risk of no
recovery[.]"  *In re Syngenta*, 357 F. Supp. 3d at 1114; *see also* Doc. 2435-2 at 22, 26–27 (Joint
Decl. ¶¶ 63, 68).  And, there was "no parallel government proceeding against the [Pfizer
Defendants] on which plaintiffs could rely for investigation, discovery, or simple reassurance in
the merits of the claims."  *In re Syngenta*, 357 F. Supp. 3d at 1114.  The court finds that the risk
of huge expenditures on a contingent basis, with no parallel government proceeding and a
substantial risk of no recovery, favors the requested one-third fee award.  *See id.* ("[N]o parallel
government proceeding" and "risk [of] huge expenditures on a contingent basis, with a
substantial risk of no recovery" "made the case less than desirable (factor 10).").

11.    **Novelty and Difficulty (Factor 2); Skill (Factor 3); and Experience (Factor 9).**
Class actions have "a well deserved reputation as being most complex[,]" *Cotton v. Hinton*, 559
F.2d 1326, 1331 (5th Cir. 1977), and "[a]n antitrust class action is arguably the most complex
action to prosecute[,]" *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337
(N.D. Ga. 2000).  The antitrust and RICO claims asserted in this nationwide MDL class action
involved complex and closely contested issues of class certification and substantive law requiring

highly skilled and experienced attorneys.  The case has required argument and rulings on several issues of first impression in this Circuit.  Co-Lead Counsel litigated these issues vigorously for more than four years against highly skilled, competitive, and well-funded defense counsel.  These efforts required Co-Lead Counsel to engage in extensive document and deposition discovery, as well as significant motion practice and trial preparation.  The court has observed the skill and zeal which Co-Lead Counsel has applied to prosecute this case, and it finds that they are experienced, have good reputations, and have performed exceptional legal work on behalf of their clients and the Class.  These factors strongly support the requested fee.

12.    **Time and Labor (Factor 1).**  This factor guides the lodestar analysis in a statutory fee-shifting case, but has minimal importance in a percentage of the common fund case.  *See Nakamura*, 2019 WL 2185081, at *3.  In fact, a lodestar analysis (or crosscheck) is neither required nor needed to assess reasonableness in a percentage of the fund determination.  *See id.* (first citing *Brown*, 838 F.2d at 456; then citing *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); then citing *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *15 n.10 (N.D. Okla. Dec. 2, 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.")).

Still, this was not a case that settled before counsel completed significant work in prosecuting the claims.  To the contrary, as shown in the Joint Declaration of Co-Lead Counsel, this litigation has required a significant amount of time and labor by Class Counsel.  Doc. 2435-2 at 22 (Joint Decl. ¶ 63).  Also, counsel has assured the court that Co-Lead Counsel properly vetted the time recorded and submitted by all counsel.  And, Co-Lead Counsel represents that the time

records comprising the lodestar calculation comply with directives for keeping time and expense records that the court imposed at the case's outset.  *See* Doc. 40 at 7 (Order Appointing Counsel) (requiring Co-Lead Counsel to "manage and approve any time and expenses for which plaintiffs may at any time seek to receive compensation or reimbursement[;]" ordering "all plaintiffs' counsel" to "keep contemporaneous records of their time and expenses devoted to this matter" and "submit [their] billing records for the preceding month in summary form by the end of each month to plaintiffs' liaison counsel[;]" and warning that failing "to comply with this rule [for keeping time and expenses] may render the expenses non-reimbursable").  Thus, the court finds that the time and labor factor, to the extent this factor is relevant in a percentage-of-the-fund case, favors awarding a one-third fee.

13.   **Preclusion of Other Employment (Factor 4).**  When "an attorney is spending time on one case, he is not spending the same time on another case." *Wiggins v. Roberts*, 551 F. Supp. 57, 61 (N.D. Ala. 1982).  Co-Lead Counsel have represented that prosecuting this litigation has precluded other employment opportunities for them.  Doc. 2435-2 at 24 (Joint Decl. ¶ 67(4)). The court has little difficulty concluding that the commitment of time and resources required to litigate this case, over more than four years of its pendency, likely limited Class Counsel's ability to pursue other engagements. *See Nakamura*, 2019 WL 2185081, at *4.  This factor also supports the requested one-third fee.

14.   The other two *Johnson* factors—time limitations imposed by the client or circumstances (Factor 7) and nature and length of the professional relationship with the client (Factor 11)—are of no or nominal importance in this class action, percentage-of-the-fund fee award.  The court thus doesn't address them.

15.     For all these reasons, the court concludes that the *Johnson* factors strongly support and warrant an award of attorneys' fees in the amount of one-third of the $345 million Settlement Amount.  Accordingly, the court awards attorneys' fees from the Settlement Fund of $115 million, together with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid.

## AWARD OF LITIGATION EXPENSES

16.     Rule 23(h) authorizes courts to reimburse counsel for "nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Also, the Settlement Agreement authorizes Co-Lead Counsel to seek "an award of . . . expenses or charges in connection with prosecuting the Action," Doc. 2393-2 at 23 (Settlement Agreement ¶ 6.1), and provides that "expenses awarded by the Court shall be paid solely from the Settlement Fund[,]" *id.* at 24 (Settlement Agreement ¶ 6.4).

17.     As of June 30, 2021, Class Counsel have incurred expenses and charges ("expenses") in prosecuting this case in the amount of $9,661,379.25.  *See* Doc. 2435-2 at 26–27 (Joint Decl. ¶ 68).  No Class Member has validly objected to counsel's request for an award of these expenses from the Settlement Fund.  The court finds these expenses are reasonable and were necessary to conclude this case successfully against the Pfizer Defendants.  Thus, the court awards expenses to Co-Lead Counsel in the amount of $9,661,379.25, with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid.

18.     The Motion also requests the court approve and order payment from the Settlement Fund of $3,232,990.56 to the Notice and Settlement Administrator, A.B. Data., Inc., for implementing the Class notice plan commenced on November 1, 2020, as directed by the court's October 13, 2020 Order (Doc. 2240).  The court finds that the requested payment is a

reasonable and necessary case expense, and it orders payment from the Settlement Fund to A.B. Data, Inc. in the amount of $3,232,990.56.

19.     At the final approval hearing, Co-Lead Counsel advised the court that their Motion inadvertently failed to request payment of a case expense incurred by Plaintiff Class Representative Local 282 Welfare Trust Fund ("Local 282") in the amount of $13,891.50 and related to Defendants' Rule 30(b)(6) deposition of and subpoena to Local 282's employee benefits consulting and actuarial firm, The Segal Group, Inc.  This case expense is attested to and explained in Local 282's declaration submitted in support of the Motion.  *See* Doc. 2435-2 at 107 (Ex. A-19 ¶ 5).  The court finds that the requested expense is a reasonable and necessary case expense, and it orders payment from the Settlement Fund to Local 282 in the amount of $13,891.50.

## AWARD OF SERVICE AWARDS

20.     "At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class."  5 Newberg on Class Actions § 17:1 (5th ed. 2021).  "Service payments induce individuals to become class representatives and reward them for time sacrificed and personal risk incurred on behalf of the class."  *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 WL 2568044, at *7 (D. Kan. June 4, 2018) (citing *UFCW Loc. 880-Retail Food Emp. Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009)).  "Empirical evidence shows that incentive awards are now paid in most class suits and average between $10–$15,000 per class representative."  *See* Newberg § 17:1; *see also Harlow*, 2018 WL 2568044, at *7 (citing Newberg § 17:1).

21.     Co-Lead Counsel have requested that the court award $5,000 to each of the 35 Plaintiff Class Representatives as service awards for the time they spent and personal risk they

incurred representing the Class.  Together this amounts to $175,000.00, which is .05% of the $345 million Settlement Amount.  Class Plaintiffs argue, and the court recognizes, this percentage is small compared to service awards approved by our court in similar cases.  *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 6839380, at *16 (D. Kan. Dec. 31, 2018) (approving $2,782,500 in service awards, which represented 0.18% of $1.51 billion in settlement funds); *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *12 (D. Kan. Oct. 26, 2012) (awarding 0.1% of $54 million settlement as service award); Order Approving Settlement Agreement at 15, *Eatinger v. BP Am. Prod. Co.*, No. 07-1266-EFM (D. Kan. Sept. 17, 2012) (awarding 0.5% of $19 million settlement as service award); *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2008 WL 696244, at *1 (D. Kan. Mar. 13, 2008) (awarding 0.091% of the $33 million settlement as service awards).

But, our Circuit rejects the use of percentage-based awards.  *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017).  *Chieftain Royalty* criticized a district court for granting "a ½% incentive award of $ 260,000" when "the weight of authority apparently disfavors percentage-based awards."  *Id.* (citing Newberg on Class Actions § 17:16 (5th ed. 2016) ("Percentage-based incentive awards are disfavored, if not altogether forbidden.")).  The cited passage from the Newberg treatise provides five reasons, but the Circuit identified one of them as the most important:  "'[S]caling those rewards according to the size of the common fund is at best a rough proxy in that the services and risks are not necessarily directly related to the size of the settlement.'"  *Id.* (quoting Newberg § 17:16).  *Chieftain Royalty* concluded—again quoting Professor Newberg—with this observation:  "If a percentage calculation is to be made at all, it should be made only to 'check a flat award for excessiveness by reference to the percentage of the fund it represents.'"  *Id.* at 469.  After

rejecting the percentage-based approach, *Chieftain Royalty* "examine[d] whether the award to [the class representative] can be justified as payment at a reasonable rate for reasonable time expended on services rendered that were helpful to the litigation and did not duplicate what could be performed less expensively by counsel." *Id.* To evaluate the proposed award for the Plaintiff Class Representatives, the court applies the same analysis here.

22. All the Plaintiff Class Representatives searched for and provided documents and other information in response to Defendants' discovery requests, had their depositions taken (many traveled to Kansas City for their depositions), stayed informed of developments in the case, and reviewed and approved the Settlement Agreement. *See* Doc. 2435-2 at 28 (Joint Decl. ¶ 73); *id.* at 51–161 (Pl. Class Rep. Decls. Exs. A-2–A-36). Based on the Plaintiff Class Representatives' Declarations, they collectively contributed an average of 63 hours to the case, which amounts to about $79 per hour for a $5,000 award. *See id.* at 51–161 (Pl. Class Rep. Declarations); Doc. 2436 at 20 (Gensler Decl. ¶ 64). Class Plaintiffs ask the court to find that this $5,000 service award amount is reasonable. Although the $79 hourly rate is higher than the ones our court has approved in the past, the court finds here that $79 per hour is reasonable based on the extensive nature of the discovery conducted and the travel involved in this nation-wide class action. *See Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 6318660, at *11 (D. Kan. Oct. 28, 2020) (explaining that our court "has consistently found that $20 per hour is a reasonable incentive fee in similar FLSA cases"); *see also Nakamura*, 2019 WL 2185081, at *3 (awarding class representative plaintiff a service award that "represent[ed] $50 per hour").

But the court can't find that applying this rate to each Plaintiff Class Representative produces a reasonable service award for each one of them. Each of the Plaintiff Class Representatives' Declarations estimate the number of hours that each individual spent working on

the case.  These estimates range from 20 to 200 hours.  If the court awards each Plaintiff Class Representative the requested $5,000 service award, it would grant a windfall to those Plaintiff Class Representatives who devoted a lower number of hours of work compared to other Plaintiff Class Representatives.  For example, awarding a $5,000 service award to the Plaintiff Class Representative who reported spending 20 hours of time on the case produces an award that amounts to $250 per hour spent on the case.  And that $250 hourly amount isn't a reasonable one. So, the court denies the request for a $5,000 service award to each Plaintiff Class Representative.

Instead, the court approves a service award that is calculated using the number of hours the Plaintiff Class Representative spent working on the case.  For any Plaintiff Class Representative who spent 60 or more hours working on the case, the court awards a $5,000 service award to that Plaintiff Class Representative.  For any Plaintiff Class Representative who devoted fewer than 60 hours working on the case, the court awards a service award that is calculated using the number of hours that the Plaintiff Class Representative worked on the case multiplied by the $79 hourly rate. The court finds that using this formula to calculate service awards produces a sum that rewards Plaintiff Class Representatives for the number of hours they devoted to the case.  Also, it is more faithful to *Chieftain Royalty*'s guidance for granting service award requests.

23.      Also, the court finds that a service award—calculated using the formula described in the above paragraph—is reasonable considering the risk Plaintiff Class Representatives undertook in challenging the Defendants here for the past four-plus years, the substantial benefits their efforts helped achieve for the Class, the fact that there would be no recovery for the Class without the representatives coming forward and taking on the fiduciary duties and responsibilities as class representatives, and no Class Member has objected validly to the requested service awards.

24.     Thus, the court orders that each of the thirty-five (35) Plaintiff Class Representatives is awarded a service award for the time spent related to his or her representation of the Class.  The amount of the service award for each Plaintiff Class Representative is calculated this way:  (1) Plaintiff Class Representatives who spent 60 or more hours working on the case are awarded a $5,000 service award, and (2) Plaintiff Class Representatives who devoted fewer than 60 hours working on the case are awarded a service award that is calculated using the number of hours that the Plaintiff Class Representative worked on the case multiplied by the $79 hourly rate.  The court authorizes the Claims Administrator to pay these awards from the Settlement Fund, in accordance with the Settlement Agreement.

25.     Of the 35 requested service awards, four requests come from four individuals who—at one time—were named plaintiffs in the case.  They are Michael Gill, April Sumner, Landon Ipson, and Donna Dvorak.  But, on June 23, 2021, the court dismissed these four individuals from the case because they never had filed an underlying case transferred to this MDL.  Doc. 2381 at 163 ("dismissing "Ms. Sumner's claims because the court lacks subject matter jurisdiction over them[,]" and for "the same reasons" dismissing "the claims asserted by Donna Anne Dvorak, Michael Gill, and Landon Ipson").  The court has questioned whether it can grant service awards to individuals who no longer are class representatives.  *See* Doc. 2502 at 3 (first citing *See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. 09-2067-NMG, 2014 WL 4446464, at *10 (D. Mass. Sept. 8, 2014) (declining a plaintiff's request for an incentive award because that plaintiff was not a class representative and she "invoke[d] no authority for her request for an incentive award to a plaintiff who is not a class representative"); then citing *Acevedo v. City of Los Angeles*, No. CV 14-5661-GHK (PJWx), 2016 WL 11525322, at *9 (C.D. Cal. Dec. 2, 2016) (holding that because an objector was "not a class representative,

he is not entitled to an incentive award")).  Thus, the court ordered Class Plaintiffs to show cause

why the court shouldn't deny the service awards requested for these four individuals.  *Id.*

Class Plaintiffs have responded to the court's show cause Order (Doc. 2503).  And, they

have explained adequately why service awards to these four individuals are warranted here.

*First*, Class Plaintiffs explain, the parties reached a binding agreement to settle their claims on

June 10, 2021.  Doc. 2435-2 at 9 (Joint Decl. ¶ 20).  This occurred almost two weeks before the

court issued its summary judgment Order that dismissed the four individuals from the case.  So,

as of June 10, 2021, when the parties reached the binding agreement to settle, the four

individuals still were named plaintiffs and serving as Plaintiff Class Representatives.  *Second*,

Class Plaintiffs have directed the court to persuasive legal authority permitting service awards to

class members who have provided significant contributions to the prosecution of a case,

including sitting for a deposition, even if those class members aren't named as class

representatives.  *See* Doc. 2503 at 2–3 (first citing *In re Bank of Am. Wage & Hour Emp. Litig.*,

No. 10-MD-2138-JWL, 2013 WL 6670602, at *4 (D. Kan. Dec. 18, 2013) (approving service

awards where parties proposed that "named plaintiffs receive $3000; plaintiffs who provided a

deposition receive $1000; plaintiffs who responded to interrogatories receive $500; and plaintiffs

who provided a declaration or responded to document requests receive $300.00[,]" and finding

that proposed service awards were "justified and reasonable, based upon the level of assistance

provided" because "recipients of these payments have expended time and effort protecting the

interests of the class and, at least for current employees, some element of risk was involved");

then citing *In re Tyson Foods, Inc.*, No. RDB-08-1982, 2010 WL 1924012, at *4 (D. Md. May

11, 2010) (awarding service awards of "$2,500 for each of the four named Plaintiffs and four

other class members who were deposed . . . for their contribution to the process of the

litigation"); then citing *Equal Rts. Ctr. v. Washington Metro. Area Transit Auth.*, 573 F. Supp. 2d

205, 214 n.10 (D.D.C. 2008) ("The incentive awards of $5,000 and $1,000 granted to named

plaintiffs *and deposed class members* are not uncommon in class action litigation." (emphasis

added)); then citing *Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 215 (D. Me. 2005) (finding the

service award to "each class member who was deposed" was "fair, reasonable and adequate to

compensate the class representatives and deponents for their valuable efforts on behalf of the

class")).  *Third*, Class Plaintiffs have explained adequately why the legal authority the court cited

in its show cause Order differs from the facts here.  *See* Doc. 2503 at 3 (explaining that *In re*

*Celexa & Lexapro Mktg. & Sales Pracs. Litig.* involved a request for a service award by an

objector and *Acevedo* involved a plaintiff who brought an individual FLSA action after

decertification).

   The four individuals here each devoted 40 or more hours working on the case, including

testifying at a deposition.  *See* Doc. 2435-2 at 81 (Gill Decl. ¶¶ 4–5 ) (identifying Mr. Gill as "a

named plaintiff and Class Representative in this case," and estimating that he "expended greater

than 50 hours participating in and helping to oversee this litigation on behalf of the Class"); Doc.

2435-2 at 135 (Sumner Decl. ¶¶ 4–5 ) (identifying Ms. Sumner as "a named plaintiff and Class

Representative in this case," and estimating that she "expended greater than 60 hours

participating in and helping to oversee this litigation on behalf of the Class"); Doc. 2435-2 at

160–61 (Ipson Decl. ¶¶ 3–4 ) (identifying Mr. Ipson as "a named plaintiff and Class

Representative in this case," and estimating that he "expended greater than 40 hours participating

in and helping to oversee this litigation on behalf of the Class"); Doc. 2435-2 at 74 (Dvorak

Decl. ¶¶ 4–5 ) (identifying Ms. Dvorak as "a named plaintiff and Class Representative in this

case," and estimating that she "expended greater than 100 hours participating in and helping to

oversee this litigation on behalf of the Class").  Thus, the court finds service awards to Michael

Gill, April Sumner, Landon Ipson, and Donna Anne Dvorak are appropriate based on their time

and contributions to the prosecution of this litigation.  Thus, the court includes these four

individuals in its approval of the requested service awards for the thirty-five (35) individuals for

whom Class Plaintiffs seek service awards, using the formula discussed above for determining

the amount of each service awards.

## APPROVAL OF PLAN OF ALLOCATION

26.     The court finds and concludes that the formula for the calculation of Class

Members' claims that is set forth in the Plan of Allocation (Doc. 2393-9) and described in the

Notice disseminated to Class Members provides a fair, reasonable, and adequate basis upon

which to allocate the proceeds of the Net Settlement Fund established by the Settlement

Agreement among the Class Members, with due consideration for administrative convenience

and necessity.

27.     Class Plaintiffs have explained adequately the basis for allocating the Settlement

Funds into two pools—one pool allocating 80% of the Net Settlement Fund for third-party

payors and 20% of the Net Settlement Fund for consumers.  The court notes that no Class

Member has objected to the 80/20 allocation between the two pools.  And, Class Plaintiffs

provided a reasonable basis for this allocation—one that is grounded in the rebuttal merits expert

report of Professor Meredith Rosenthal.  Doc. 2501 at 1–2 (citing Doc. 2216-22 (Rebuttal Merits

Expert Report of Dr. Meredith Rosenthal)).

28.     Also, at the hearing on the Class Plaintiffs' Motion seeking approval of the

Settlement, the court questioned counsel about how funds are allocated when there are two

certified classes at issue—one for antitrust claims and the other for RICO claims.  Co-Lead

Counsel explained adequately that, because this MDL involves a nationwide RICO class action, no one is excluded from recovering under the Settlement based on the class definitions. The certified RICO class defines class members as anyone who paid "some or all of the purchase price of Branded or authorized generic EpiPens . . . between August 24, 2011" and November 1, 2020. Doc. 2018-1 at 126; *see also* EpiPen Long Form Notice at 1, https://epipenclassaction.com/documents/EpiPen%20Long%20Form%20Notice%20-%20FINAL.pdf. The RICO class definition spans a larger geographical area and includes more types of EpiPens purchased over a longer time period than does the antitrust class definition. So, the two class definitions and the differences between them don't pose any problems to allocating the Settlement Fund equitably among Class Members. And, as Co-Lead Counsel explained, the two class definitions won't preclude any Class Member from recovering from the Net Settlement Fund.

29.     The court also questioned Co-Lead Counsel at the hearing about how the Claims Administrator will decide to pay out claims and how the "spill over" from one pool to another will occur. Co-Lead Counsel explained at the hearing and in a post-brief submission that "it is unlikely based on the claims already filed that there will be any spill over from one pool to the other." Doc. 2501 at 3. Co-Lead Counsel also explained how the Plan of Allocation distributes funds to Eligible Claimants on a *pro rata* basis. *Id.* And, Co-Lead Counsel explained at the hearing that the Settlement Administrator, who has significant experience administering settlement funds in large class action cases like this one, is prepared and capable of resolving any discrepancies in the claims and deciding how to pay those claims. Although Class Plaintiffs could have provided more detail about how the Settlement Administrator will perform this gate-keeping function for submitted claims, the court takes comfort in the fact that Class Members,

who are dissatisfied with any conclusion reached by the Settlement Administrator, can ask the court to review that decision, and the court retains jurisdiction "to allow, disallow, or adjust the claim of any Class Member on equitable grounds."  *See* Long Form Notice at 8–9, https://www.epipenclassaction.com/documents/EpiPen%20LF%20Notice%20(004)%20FINAL.pdf (explaining to Class Members:  "If you are dissatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Class Members and the claims administration process, to decide the issue by submitting a written request[.]").

30.     The court thus finds that "competent and experienced class counsel" have formulated the Plan of Allocation, and they have provided a "reasonable, rational basis" for that Plan of Allocation.  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006). Thus, the court finds that the Plan of Allocation, as set forth in Doc. 2393-9 and the Notice, is in all respects, fair, reasonable, and adequate and hereby approves the Plan of Allocation.

## **CONCLUSION**

31.     The attorneys' fees and expenses herein awarded shall be allocated and distributed among counsel working for the Class by Co-Lead Counsel using their judgment to compensate each counsel fairly based on their contribution to the institution, prosecution, and resolution of the Litigation against the Pfizer Defendants.

32.     The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Class Counsel within ten (10) days of the court's execution of the Final Judgment and Order of Dismissal with Prejudice against Pfizer Defendants Only (the "Judgment") and this Order and subject to the terms, conditions, and obligations of the Settlement Agreement, and in particular, Section 6.2 thereof, which terms, conditions, and obligations are incorporated into this Order.

33.     Any appeal or any challenge affecting this court's approval of the Motion addressed by this Order shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

34.     In the event that the Settlement is terminated or does not become Final and Non-Appealable or the Effective Date does not occur in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void to the extent provided in the Settlement Agreement and shall be vacated in accordance with the Settlement Agreement.

35.     The court retains jurisdiction over matters that are the subject of this Order until after full disbursement of the Settlement, and as necessary to effectuate the terms of the Settlement Agreement relating to attorneys' fees, expenses, service awards, and Plan of Allocation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Class Plaintiffs' Motion for Final Approval of Settlement, Approval of Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Service Awards (Doc. 2434) is granted in part and denied in part, consistent with this Order.

**IT IS SO ORDERED.**

**Dated this 17th day of November 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
