# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No: 2785) |
| This Document Relates To:<br><br>CONSUMER CLASS CASES. | PLAINTIFFS' OPPOSITION TO MYLAN'S BRIEF ON THREE THRESHHOLD ISSUES FOR TRIAL |

I.   **Mylan's focus on dismissed claims ignores the relevant question: whether and what <u>evidence</u> is relevant to Plaintiffs' generic delay claims.**

Mylan sweepingly argues that Plaintiffs should be prohibited from referencing dismissed <u>claims</u>, but the actual issue before the Court is this: whether certain <u>evidence</u>—that is, documents and testimony—is relevant to Plaintiffs' generic delay claims.  As this Court has emphasized: "to the extent that such evidence is relevant to and/or provides useful context for the remaining claims, such evidence is admissible." *Hibu, Inc. v. Peck*, No. 16-1055-JTM, 2018 WL 372437, at *2 (D. Kan. Jan. 11, 2018). The case law cited by Mylan does not support its argument; those cases stand only for the uncontroversial proposition that evidence relating <u>only</u> to a dismissed claim should be excluded,[1] but when evidence relating to a dismissed claim <u>also</u> has relevance to a live claim, the evidence is admissible. *See, e.g.*, *SEC v. Goldstone*, 2016 WL 3625405, at *1 (D.N.M. June 13, 2016) ("The Court concludes that the evidence supporting dismissed claims is relevant to remaining claims, and therefore the Court will allow Plaintiff … to introduce evidence that supports both dismissed claims and remaining claims."); *Medecor Pharma v. Fleming Pharms.*, 2014 WL 3867548, at *1 (M.D. La. Aug. 6, 2014) ("[T]his does not prohibit the introduction of evidence that, while connected to this previously-dismissed claim, is relevant to the remaining issues for trial . . . .").

Mylan's argument that Plaintiffs should be prohibited from referencing dismissed claims is a classic strawman. Plaintiffs do not intend to relitigate their RICO or Auvi-Q foreclosure claims. But that is a wholly different issue than whether individual exhibits and testimony have relevance to the generic delay claims that <u>are</u> at issue. Mylan's argument cuts too broadly: just because evidence is relevant to a dismissed claim does not mean that it is not also relevant to Plaintiffs' generic delay claim. Mylan's categorical request to bar admission of relevant evidence should be denied; it overreaches and sweeps too broadly without attention to the specifics of the evidence.

---

[1] Mylan Br. at 2, n.3 (citing cases considering "dismissed claims").

## II.    The evidence at issue is relevant.

The evidence in this case often cuts across, and is relevant to, many claims. But Mylan seeks to exclude evidence based not on specifics, but broad-brush categorizations that do not necessarily fit the evidence. As stated in Plaintiffs' affirmative brief,[2] certain evidence and argument that relates to EpiPen WAC price increases, the 2-Pak switch, and Provigil is also relevant to the central issues for trial. Under Rule 401, evidence is "relevant" if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible under Rule 402.

**2-Pak-related evidence.** Mylan asserts that the "two-pack claims Plaintiffs alleged" were either abandoned or dismissed. Mylan Br. at 5-6. Plaintiffs agree that no tying or RICO claims remain to be tried.[3] But even in the absence of RICO or tying claims, the fact remains that certain exhibits and testimony relating to the 2-Pak are relevant to Mylan's antitrust liability, including: (a) market power, (b) willful maintenance of monopoly power, and (c) specific intent to monopolize. Indeed, when Bruce Foster proposed in November 2010 that Mylan eliminate the single pen, he stressed a "[s]trong potential generic defense," *see* ECF No. 2381, SJ Order at 15, as one of the two primary rationales for the 2-Pak hard switch. Thus, Mylan conceived of the exclusive 2-Pak as a mechanism to stifle generic competition, and it is relevant to both willful maintenance of monopoly power and Mylan's specific intent to monopolize. Mylan's claim of unfair surprise falls flat. Plaintiffs not only raised the 2-Pak as part of its factual contentions and damages in the PTO, Doc. 2169, at 10 & 25, but also in the Consolidated Complaint, Doc. 60, at ¶¶ 563-64.

**WAC Pricing**. Mylan argues that WAC price increases "bear[] no relevance to trial," while simultaneously acknowledging that WAC prices are "relevant to Plaintiffs' damages calculations."

---

[2] ECF No. 2651-1.
[3] The Court's summary judgment ruling related to RICO causation, not whether Defendants engaged in a 2-Pak scheme.

Mylan Br. at 2, 6. It cannot be seriously disputed that the WAC prices and EpiPen pricing are directly relevant to antitrust impact, Class Plaintiffs' injuries, overcharges, and damages.[4]

      **Provigil**. Mylan argues that Plaintiffs should be forbidden from presenting Provigil-related exhibits at trial, citing case law that "claims, issues, defenses, or theories of damages" are waived if not included in a Pre-Trial Order. *See Koch v. Koch Indus., Inc.*, 179 F.R.D. 606, 608 (D. Kan. 1998), *aff'd*, 203 F.3d 1202 (10th Cir. 2000). Once again, Mylan mislabels a general category of evidence as a claim. There is no Provigil "claim." Provigil-related documents and testimony instead are relevant evidence demonstrating that, before the EpiPen-Nuvigil *quid pro quo* at issue in this case, Mylan entered a similar pay-for-delay scheme with the same counterparty, Cephalon (the entity that sued Mylan over Nuvigil and was later acquired by Teva), concerning the drug Provigil. And Mylan's reliance on *Koch* is misplaced because parties are not required to list each piece of potential evidence (what would have been thousands of exhibits) in the PTO. Neither party did so in this case. Thus, Plaintiffs did not "waive" the right to present Provigil-related evidence (or any other evidence not specifically identified by name) that bears relevance to the generic delay claim.[5]

---

[4] Mylan's suggestion in a footnote that evidence of price increases dated before the class period begin date is irrelevant should be rejected. Mylan's argument assumes that prices are relevant only to damages when they are not. *See* Pls.' Br. at 1 (pricing relevant to market & monopoly power, willful maintenance, and specific intent). Nor can it be seriously disputed that pre-class period evidence can be relevant to Plaintiffs' claims.

[5] A note on "intent" evidence: In addressing evidence relevant to Mylan's motive or intent behind the pay-for-delay agreements, Mylan misstates the law on a § 2 monopolization claim. Mylan implies that Plaintiffs must prove that Mylan forwent short term profits (e.g., by pricing below cost) to increase profits in the long term after the conduct harmed competition. While that may be true in predatory pricing or refusal-to-deal cases, Mylan cites no authority, and indeed there is none, suggesting that market allocation agreements, generally, or pay-for-delay claims, specifically, require short term losses. In fact, the opposite is inherently obvious in a pay-for-delay case, in which the brand owner provides compensation to a generic competitor to maintain monopoly profits *now* while forestalling the generic's entry to the market.

### III.    The "maximum reasonable probative force" of the contested evidence far outweighs its "minimum reasonable prejudicial value."

Exclusion of relevant evidence under Rule 403 is an "extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010). "[I]n an antitrust case the trial court has a wide discretion in the admission or exclusion of cumulative or collateral evidence." *Standard Indus., Inc. v. Mobil Oil Corp.*, 475 F.2d 220, 228 (10th Cir. 1973). In "performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000). Such an extraordinary remedy should be invoked only upon seeing the evidence offered by a party in context at trial.

Mylan repeats the mistake of conflating allegations with evidence when it argues that it would be unduly prejudicial to allow the jury to "consider <u>allegations</u> for which Plaintiffs cannot recover . . . ." Mylan Br. at 8-9. Again, however, the proper question is what evidence and exhibits may be presented to the jury as relevant or useful context—not what allegations or claims are to be argued.

Mylan contends that pricing evidence would be unduly prejudicial. But this is an antitrust case, brought for the specific purpose of recovering <u>overcharges</u> from supracompetitive monopoly <u>pricing</u> made possible only as a result of Mylan's EpiPen-for-Nuvigil product market allocation agreement with Teva. Mylan cites five cases in support of its flawed argument, but only two of them are antitrust cases. *See* Mylan Br. at 9 (citing *Nye* (breach of contract), *Milwaukee Elec. Tool Corp.* (patent), and *Dyson Tech.* (patent infringement and false advertising)).

And the two cited antitrust cases support Plaintiffs, not Mylan. In *City of Long Beach*, 46 F.3d 929 (9th Cir. 1995), the Court excluded pricing evidence from a different market (Alaska), but <u>admitted</u> pricing evidence from the market at issue (California). *Id.* at 938 ("[T]he jury had heard all about the pricing scheme in California; it did not need to hear about the pricing scheme in Alaska"). Mylan's reliance on *In re Electronic Books Antitrust Litigation*, 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014), is also

misplaced; that case excluded expert testimony on the grounds that the expert's opinion was unreliable, not because it included information about prices. *Id.* at *4. In fact, the court in *Elec. Books* explained in detail that trial evidence on prices was critically important. *Id.* at *8 (describing trial evidence, including evidence concerning implications of price increases).

Ultimately, evidence is not unfairly prejudicial merely because it harms a party's case. *See United States v. Caraway*, 534 F.3d at 1301; *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003). Moreover, the Rule 403 analysis is case-specific. The cases Mylan cites are off-target as the evidence in those cases was excluded primarily because it was irrelevant, not because it was overly prejudicial. *See, e.g.*, *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369 (9th Cir. 1989) (excluding evidence that was relevant only to claims that had been dismissed and that had no relevance to remaining claims).

To exclude evidence under Rule 403, the proponent of such exclusion must identify the *specific* item to be excluded, and it must be considered in the *context* in which it will be raised. *See Land v. Midwest Off. Tech., Inc.*, 125 F. Supp. 2d 433, 436 (D. Kan. 2000) ("Rule 403 determinations are most appropriately made at trial."). Mylan's brief describes neither one. If Mylan is concerned about potential prejudice, then—as Mylan's lead case provides—"the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of that evidence may mitigate potential prejudice from such evidence and allow it to be admitted." *Scott v. City of Sioux City*, 96 F. Supp. 3d 876, 883-84 (N. D. Iowa 2015); *see also Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1084 (10th Cir. 2010) ("The disputed evidence was relevant to the [plaintiffs'] claims, and the court gave appropriate limiting instructions to the jury").

Dated: December 2, 2021

Respectfully submitted,

BURNS CHAREST LLP

By: /s/ *Warren T. Burns*

Warren T. Burns
900 Jackson Street, Suite 500
Dallas, TX  75201
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com

KELLER ROHRBACK L.L.P.
Lynn L. Sarko
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:  206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com

SHARP LAW LLP
Rex A. Sharp
Ryan C. Hudson
4820 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rex@midwest-law.com
ryan@midwest-law.com

ROBBINS GELLER RUDMAN & DOWD
LLP Paul J. Geller
120 East Palmetto Park Road,
Suite 500 Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com

PRITZKER LEVINE LLP
Elizabeth C. Pritzker
1900 Powell Street, Suite 450
Emeryville, California 94608
Telephone: 415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com

**Co-Lead Counsel for Class Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that notice of the foregoing was served on December 2, 2021 on counsel of record by electronically filing the document with the clerk of the court using CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Warren T. Burns*
Warren T. Burns