## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: EpiPen (Epinephrine
       Injection, USP) Marketing,
       Sales Practices and Antitrust
       Litigation


(This Document Applies to Consumer
Class Cases)

MDL No:  2785

Case No. 17-md-2785-DDC-TJJ

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on the parties' Motions in Limine.  The court plans to convene a jury trial beginning on February 22, 2022, to try plaintiffs' state law antitrust claims against defendants.[1]  Plaintiff has filed a Motion in Limine (Doc. 2520, Doc. 2521-1 (filed under seal)) that seeks an order excluding arguments or evidence about 17 topics.  Defendants have followed a similar path, filing a Motion in Limine (Doc. 2539, Doc. 2522-1 (filed under seal)) that asks the court to exclude argument or evidence about 14 topics.

---

[1]  The Pretrial Order invokes the court's subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332(d) (Class Action Fairness Act), 28 U.S.C. § 1337 (jurisdiction for civil actions "arising under any Act of Congress" regulating commerce or antitrust violations when the amount in controversy exceeds $10,000), 28 U.S.C. § 1367 (supplemental jurisdiction), and 18 U.S.C. § 1964(c) (RICO statute).  Doc. 2169 at 2.  Although the court has dismissed all federal claims from this lawsuit, it still has original subject matter jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million and "is a class action" where "any member of a class of plaintiffs is a citizen of a state different from any defendant[.]"  28 U.S.C. § 1332(d)(A).  Also, even if the case fails to satisfy the diversity and amount in controversy requirements of 28 U.S.C. § 1332(d), the court exercises supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law antitrust claims because it serves the values of judicial economy, convenience, and fairness.  See 28 U.S.C. § 1367(a) (conferring supplemental jurisdiction over "all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution"); see also Wittner v. Banner Health, 720 F.3d 770, 781 (10th Cir. 2013) ("[T]he [district] court should consider retaining state law claims when, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." (citation and internal quotation marks omitted)).

On January 10, 2022, the court held a hearing on the parties Motions in Limine.  During that hearing, the court provided oral rulings on most of the arguments raised by the parties' Motions in Limine.  This Order memorializes those rulings, and decides the four topics that it took under advisement.

## I.      Legal Standard Governing Motions in Limine

The court applies the following standard to the parties' Motions in Limine:

> The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground.  The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.  At trial, the court may alter its limine ruling based on developments at trial or on its sound judicial discretion.  Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial only means that the court cannot decide admissibility outside the context of trial.  A ruling in limine does not relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial.

*First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000) (citations and internal quotation marks omitted).

## II.      Analysis

The court addresses each of the parties' Motions in Limine, below.  The court begins with plaintiffs' Motion in Limine, and then turns to defendants' motion.

### A.  Plaintiffs' Motion in Limine

Plaintiffs' Motion in Limine seeks an order excluding argument or evidence about 17 topics.  The following analysis addresses those 17 topics in the same order presented by plaintiffs' motion.

#### 1.      The Collateral Source Rule

Plaintiffs ask the court to bar defendants from presenting argument or evidence that a consumer's insurance paid some amount of a consumer's overcharge because, plaintiffs argue,

the collateral source rule bars such evidence and argument. Defendants respond that the collateral source rule shouldn't apply where, as here, the class consists of individual consumers and third party payors (TPPs). Defendants argue they deserve the opportunity to establish that some members of the class have no Article III standing because they never paid any overcharges, and thus, aren't injured.[2]

The court denies this part of the motion in limine. Plaintiffs are asking the court to bar defendants from contending that plaintiffs who used insurance to help pay for EpiPens aren't injured. But, defendants assert that the evidence fails to establish that all plaintiffs are injured. As a consequence, the parties sharply disagree whether the class includes uninjured members. Because plaintiffs have built their theory of damages around facts that involve health insurance arrangements, the court finds that defendants deserve some room to challenge plaintiffs' damages model with evidence. So, the court won't preclude defendants from introducing evidence about insurance coverage or arguing that certain class members haven't sustained an injury because their insurance providers paid the alleged EpiPen overcharges.

But, this ruling doesn't leave defendants a completely open field to introduce this evidence and make arguments about it. Our Circuit has explained that the collateral source rule prohibits defendants from arguing that "[p]ayments made to or benefits conferred on the injured party from other sources" are "credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1059 (10th Cir. 2013)); *see also Quinones v. Penn. Gen. Ins. Co.*, 804 F.2d 1167,

---

[2]    Also, defendants argue that plaintiffs have waived this argument because they didn't include it in the Pretrial Order. The court disagrees. Our Circuit has instructed that "claims, issues, defenses, or theories of damages not included in the pretrial order are waived[.]" *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). Here, the court doesn't consider the collateral source argument a claim, issue, defense, or theory of damages that the rules required plaintiffs to specify in the Pretrial Order. Instead, this is an evidentiary doctrine that the court properly may consider on a motion in limine.

1171 (10th Cir. 1986) ("The collateral source rule removes the disincentive otherwise faced by potential victims to insure against harm or to accept gratuitous compensation from sources other than the tortfeasor for fear that the tortfeasor will not then be required to pay.").  So, defendants may not argue or suggest that the jury should credit insurance payments against any liability found by the jury.  But, the court won't prohibit defendants from introducing evidence about insurance payments altogether because that evidence is relevant to the question whether each class member has sustained injury, and thus, has "Article III standing in order to recover individual damages" in this case.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

## 2.     Defendants' (Including Pfizer Entities) Internal Assessments about Patent Strength

Plaintiffs' second topic argues that the court should prevent defendants from using the attorney-client privilege as a shield in discovery, thereby preventing plaintiffs from discovering evidence about defendants' internal assessments of patent strength, but then using those assessments as a sword to support Mylan's expert testimony and attack plaintiffs' expert testimony from Prof. Elhauge.  So, plaintiffs ask the court to preclude defendants, in limine, from (1) introducing evidence or making argument about defendants' own internal assessment of patent strength or their likelihood of success in patent litigation, and (2) arguing that plaintiffs' expert failed to consider defendants' internal assessment of patent strength when forming his opinion.

Defendants respond, but slightly modify the issue when they do.  They report that they don't plan to offer any *privileged* material discussing patent strength or litigation probabilities.  But, defendants assert, they are entitled to, and do intend to introduce *non-privileged* material on these topics.

4

The court grants part of the relief sought by this motion but denies the remainder.  The cases[3] plaintiffs rely on to support their argument prohibit a party from asserting the privilege or work product doctrine as a shield over certain evidence but then using that same, privileged evidence as a sword to support a claim or defense at trial.  *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998) ("[A] litigant cannot use the work product doctrine as both a sword and shield *by selectively using the privileged documents to prove a point* but then invoking the privilege to prevent an opponent from challenging the assertion." (emphasis added)); *see also In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 WL 4191612, at *2 (N.D. Cal. Aug. 9, 2016) (concluding that plaintiffs had shown "defendants actually relied on attorney advice in reaching their subjective beliefs," and thus, precluding defendants "from relying on specific subjective beliefs" about certain topics "unless they choose to waive the privilege as to communications and information regarding the same" ); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936(KMW), 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011) (recognizing it's unfair to allow "a party asserting contentions [of good faith] to

---

[3]        Fed. R. Evid. 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  The parties never specify which state's law the court should apply here to this privileged-related question.  Plaintiffs' cases apply either federal or state laws governing privilege, depending on the claims at issue in the case.  *See Frontier Refining*, 136 F.3d at 699 (applying Wyoming privilege principles to an equitable implied indemnity claim relying on Wyoming law); *see also In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *2 (applying federal privilege law to lawsuit involving federal antitrust claims under the Sherman Antitrust Act); *Arista Records*, 2011 WL 1642434, at *2–3 (applying federal law governing privilege in an action asserting claims under the federal copyright laws).  Mylan doesn't sharpen the point.  It relies on a mixture of cases—some applying federal privilege principles to claims arising under federal law and others applying state privilege principles to claims arising under state law.  *Compare United States ex rel. Derrick v. Roche Diagnositcis Corp.*, No. 14 CV 04601, 2019 WL 1789883, at *4 (N.D. Ill. Apr. 24, 2019) (applying federal principles to decide privilege questions arising from claim under federal False Claims Act) *with Frontier Refining*, 136 F.3d at 699 (applying Wyoming privilege principles to case involving claim arising under state law).  Because the parties here don't argue which state's law to apply to this privilege question and consistently cite federal cases applying federal privilege principles, the court relies on the parties' cited authority as governing the question presented by this topic.

then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions" (citation and internal quotation marks omitted)).

Defendants respond, asserting that they don't intend to do that. To the contrary, defendants assert that they won't introduce or otherwise rely on any privileged material to support their defenses to the antitrust claims. And, at the motions hearing, defendants' counsel asserted that defendants don't intend to present any privileged evidence of internal subjective assessments of patent strength or the likely outcome of patent lawsuits. Doc. 2561 at 70. So, the court can grant this first aspect of the motion since defendants don't intend to introduce any of the privileged evidence that plaintiffs seek to exclude.

In the second aspect of this topic, defendants argue that Prof. Elhauge's model depends on the parties' subjective beliefs about patent strength. And, defendants assert, they deserve the opportunity to challenge Prof. Elhauge's assumptions about the parties' beliefs when they settled the patent litigation. This includes, defendants contend, presenting argument that Prof. Elhauge's opinion doesn't comport with actual facts about the underlying patent settlement. The court agrees with defendants, but just in part.

The court won't prohibit defendants from challenging Prof. Elhauge's underlying assumptions about the parties' subjective beliefs when they settled the patent litigation. For example, counsel represented at the hearing that fact witnesses testified in depositions about "general points about the strength of patent holders" and "the heavy burden to overturn a patent on invalidity grounds." Doc. 2561 at 70. Prof. Elhauge could have accessed and considered that testimony and, to the extent defendants want to ask him about that testimony, they can. But, the court precludes defendants from arguing that Prof. Elhauge's opinion is flawed because he never analyzed any *privileged* internal assessments of patent strength. To allow that argument is

6

patently unfair to plaintiffs who never had access to defendants' internal assessments because defendants shielded those assessments with privilege claims.

In sum, the court rules as follows:

- The court excludes any assessments of patent strength that are protected by defendants' attorney-client privilege or the attorney work product doctrine. This ruling extends to any materials within the privilege owned by the Pfizer entities.

- The court excludes any cross-examination of Prof. Elhauge that inquires whether he considered *privileged* subjective assessments. Mylan (and Pfizer) deprived him of any opportunity to consider privileged assessments—as was their right— but they can't attack his opinions because he didn't.

- The court does not exclude any cross-examination of Prof. Elhauge that asks about his underlying assumptions when forming his opinions and inquires whether he considered non-privileged evidence when making those assumptions.

### 3.    Adverse Effect of a Verdict on Defendants' Businesses

Plaintiffs argue that the court should preclude defendants from presenting any argument or evidence about the adverse effects that a jury verdict may have on defendants, including lay-offs and their ability to compete in the market. Defendants respond that they don't object to a limine order barring argument or evidence about the effect a jury verdict might have on defendants' businesses, financial condition, revenues, or profitability. But, defendants contend, plaintiffs' motion, as drafted, is too broad and would permit plaintiffs to argue that Mylan is a big company that could afford to pay a large judgment. Arguments like that have no place in this trial.

The court thus grants this aspect of the motion in limine in large measure.  The court bars the parties from arguing or suggesting that a jury verdict might have adverse effects on defendants' businesses, financial condition, revenues, and profitability.  At the same time, the court prohibits any party from arguing that Mylan (or any other defendant) is a big or wealthy company who can pay a large judgment.

### 4.    No Government or Regulatory Action

Plaintiffs ask the court to prohibit defendants from making any reference to the fact that the government hasn't taken any action against defendants based on the allegations in this lawsuit.  Plaintiffs argue that government inaction isn't relevant to the antitrust claims at issue for trial.  Also, plaintiffs contend, different standards and burdens apply to government actions, and explaining those differences will serve only to confuse and mislead the jury.  Defendants respond, arguing that plaintiffs' request here is too broad.  Instead, defendants ask the court to wait and see what the evidence is and why a party is offering it.  Defendants argue that evidence of government inaction might become relevant to rebut certain arguments—for example, plaintiffs' allegations about defendants' role in the Congressional investigation, or presenting the settlements to the FTC.

The court grants this part of the motion in limine.  The fact that the government hasn't taken action based on the conduct alleged in this lawsuit is not a "fact of consequence in determining" the issues in this action.  Fed. R. Evid. 401.  Thus, the evidence is not relevant, *id.*, and it's inadmissible, Fed. R. Evid. 402.  But, even if admissible, the court excludes the evidence under Fed. R. Evid. 403 because any "probative value is substantially outweighed by a danger of . . . undue delay" and "wasting time[.]"  Fed. R. Evid. 403.  Finally, and as the court explained at the hearing on this motion, plaintiffs could reopen the door to this evidence.  If defendants

contend plaintiffs have done so, defendant may raise the issue again outside the hearing of the jury.

### 5.   The Fact that Defendants Factor Lawsuits into Costs of Pharmaceuticals

Plaintiffs ask the court to bar evidence that defendants factor the costs of litigation into the costs of pharmaceuticals because it's not relevant and it's prejudicial.  Defendants don't oppose this aspect of the motion in limine.

The court grants the motion and excludes evidence and argument on this topic.  The court agrees with plaintiffs.  This evidence isn't relevant, and it's thus inadmissible under Fed. R. Evid. 402.  And, even if admissible, the court excludes the evidence under Fed. R. Evid. 403 because any probative value "is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403.

### 6.   Defendants' Philanthropy or Good Deeds

Plaintiffs ask the court to exclude evidence about defendants' good deeds—such as making EpiPens more available to the public or donating them to schools.  Defendants respond that this evidence is relevant and admissible.  Defendants argue that this evidence shows what Mylan actually was doing in the market and why.  And, defendants contend, this evidence rebuts plaintiffs' arguments that defendants were engaged in a conspiracy to reduce competition and increase prices.

The court denies this part of the motion in limine, but without prejudice.  At trial, the court is likely to sustain an objection to evidence or argument about defendants' philanthropy or good deeds.  But also, the court can imagine how evidence of good deeds in the market might qualify as relevant and admissible evidence.  So, the court will deny the motion for now.  But,

the court notes that if defendants offer this type of evidence simply to ingratiate themselves with the jury, the court will exclude it.

### 7.    Pfizer's COVID-19 Vaccine and Defendants' Involvement in Pandemic-Response Assistance

Plaintiffs ask the court to bar evidence about Pfizer's COVID-19 vaccine or defendants' response to the pandemic because that evidence isn't relevant to the issues in the EpiPen case. And, plaintiffs contend, the evidence will prejudice plaintiffs.  Defendants respond that plaintiffs' request to exclude this evidence is too sweeping.  And, defendants argue that other courts have allowed parties to explain to juries what they do, including work related to the pandemic.  Defendants contend this evidence is relevant here because it describes who Mylan is as a company.

The court denies the motion for the same reasons discussed for Topic No. 6, above. Whether the court will allow evidence of this type is a question of scale.  As long as the evidence is brief and offered only to provide background, the court will allow some reference to defendants' work involving COVID-19.  But, the court prohibits defendants from arguing that their response to the pandemic is relevant to how the jury should decide the issues in this case. Also, plaintiffs retain the right to request a limiting instruction.

### 8.    The Parties' Fee and Expense Agreements With Counsel

Plaintiffs argue that evidence of the parties' fee and expense arrangements with counsel isn't relevant to the issue in the case.  Also, they contend, even if relevant, that kind of evidence is prejudicial.  Defendants respond, arguing that plaintiffs' request is too broad.  Instead, defendants argue, courts routinely allow evidence of a class representative's fee arrangement because such evidence goes to issues of bias and shows the motivation for filing suit.

The court denies this part of the motion in limine, but it does so without prejudice.  The court declines to enter a blanket order banning any evidence about fee arrangements.  The court ruling here follows the guidance of other courts, who have refused to order a "categorical exclusion" of evidence about "class representatives' relationships with counsel, involvement in previous litigation[,] and fee agreements with class counsel" because that "may be admissible for the purpose of impeachment[.]"  *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 781960, at *2 (N.D. Cal. Mar. 13, 2007); *see also Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) (holding trial court erred by prohibiting cross-examination about a contingent fee agreement and concluding cross-examination on that topic was appropriate because it amounted to "classic evidence of bias, which is routinely permitted on cross-examination").  At the motions hearing, the court cautioned defendants, however, to tread carefully.  The court can envision how questioning about fee arrangements on cross-examination might open the door on redirect to evidence and argument that defendants would rather avoid.

**9.     Circumstances of Plaintiffs' Hiring of Counsel and Any Referral Agreements between Plaintiffs' Counsel and Other Counsel**

Similar to the above request, plaintiffs seek an order barring evidence about plaintiffs' engagement of counsel or referral agreements.  Mylan responds with the same arguments that this evidence is relevant to show plaintiffs' motivation for bringing suit, and also, it raises issues of bias.

The court grants the motion in part.  The court precludes defendants from introducing argument or evidence about attorney advertisements and referral agreements.  But the court won't enter a blanket prohibition against argument or evidence about fee arrangements.  As already discussed in Topic No. 8, fee arrangements may go to bias.  So, the court won't prohibit counsel from asking briefly about the particular terms of a party's engagement of counsel.  But

the other topics—attorney advertising and referral agreements—don't go to bias.  Thus, that kind of evidence isn't relevant evidence under Fed. R. Evid. 401.  Thus, it's inadmissible under Fed. R. Evid. 402.  But, even if admissible, the court excludes argument or evidence about attorney advertising and referral arrangements under Fed. R. Evid. 403 because any probative value that evidence has "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury [and] wasting time[.]"  Fed. R. Evid. 403.  Thus, the court excludes argument or evidence about referral agreements or how a particular plaintiff may have formed an attorney-client relationship with counsel through advertising.

### 10. Experts Who Should Be Precluded Based on Prior Court Rulings, Not Testifying in this Litigation, or Retained in Other Cases

Plaintiffs argue that the court should limit the testimony of Mylan's expert, Dr. Steven Weisman.  Plaintiffs assert that he is not qualified to testify about technical and manufacturing issues that Teva experienced with its EAI for the same reasons that the court concluded on summary judgment that plaintiff's expert—James Bruno—wasn't qualified to offer expert testimony.  Also, plaintiffs ask the court to preclude the parties from referring to experts who are not testifying in this litigation or experts retained in other cases because that information isn't relevant.  And, plaintiffs contend, even if it is, this evidence would confuse and prejudice the jury.

Defendants respond that plaintiffs' request here is an untimely *Daubert* motion that the court should deny.  But also, defendants explain why Dr. Weisman is qualified to opine about Teva's manufacturing issues.  Defendants agree with plaintiffs' request to preclude references to other experts to the extent it is intended to limit the experts who may testify at trial only to those experts who properly were disclosed in this case.

The court denies the first aspect of this motion in limine topic. It's untimely. Plaintiffs are making, in substance, a *Daubert* gate-keeper motion that challenges Dr. Weisman's qualification to testify. The deadline for raising such a pretrial challenge passed long ago. Plaintiff may renew the substance of this motion at trial, but if they do, they must raise the issue outside the presence of the jury.

The court grants the second aspect of the motion. The court precludes the parties from referring to experts who were not disclosed in this case, and thus, aren't testifying as experts in this trial.

### 11.    "Lawyer-Driven" Lawsuit

Plaintiffs asks the court to prohibit defendants from arguing that this case is a "lawyer-driven" lawsuit. They assert that Judge Vratil granted a similar request in *Gust v. Wireless Vision, LLC*, No. 15-2646-KHV, 2017 WL 4236636, at *7 (D. Kan. Sept. 25, 2017). Defendants say the court should deny this request. Defendants argue that evidence that counsel drove the filing of the lawsuit is relevant to the representative plaintiffs' motives and credibility.

Also, defendants assert that Judge Lungstrum has denied a similar request. *See Marshall v. BNSF Ry. Co.*, No. 18-2385-JWL, 2020 WL 128054, at *5 (D. Kan. Jan. 10, 2020) (permitting defendant to "elicit testimony and present evidence challenging plaintiff's veracity and credibility regarding plaintiff's bias and motive regarding this lawsuit" because "evidence concerning the integrity, motivations and conduct of plaintiff may be relevant and admissible so long as that evidence is tied to an issue in this case and is not a mere attack on character" and thus denying the motion "without prejudice" and ordering plaintiff to "raise a contemporaneous objection at trial). And, defendants correctly explain that Judge Vratil granted the motion

13

addressed in *Gust* because defendant did "not oppose the motion[,]" and so Judge Vratil "sustain[ed] plaintiff's motion on this ground." *Gust*, 2017 WL 4236636, at *7.

The court denies this motion in limine topic. The court agrees with Judge Lungstrum's reasoning in *Marshall v. BNSF Railway, Co*. Evidence about the integrity, motivation, and conduct of *plaintiffs* may have relevance so long as that evidence is tied to an issue in the case—including bias—and not merely a generalized attack on character. So, the court denies this topic but without prejudice to plaintiffs reasserting it at trial.

### 12.    Any Plaintiff's Criminal History

Plaintiffs ask the court to bar evidence about any plaintiff's criminal history. Plaintiffs argue that the evidence is not relevant, and thus, inadmissible under Fed. R. Evid. 402. And, even if relevant, plaintiffs say the court should exclude it under Fed. R. Evid. 403 because it is unduly prejudicial. Plaintiffs assert that at least four named plaintiffs have a criminal history. But, plaintiffs argue that none of the charges qualify as impeachment evidence under Fed. R. Evid. 609.

Defendants respond that they can't discern whether Fed. R. Evid. 609 applies to the vague descriptions plaintiffs provide. Instead, defendants ask the court to defer ruling this motion until trial when the court will have sufficient evidence to determine whether Fed. R. Evid. 609's requirements are satisfied to allow introducing impeachment evidence.

The court denies this motion in limine topic without prejudice. The court will defer ruling whether evidence of criminal history is admissible. But, the court directs defendants to raise the issue to the court, outside the jury's presence, before seeking to introduce evidence of criminal history.

### 13.   Defendants' Expert Charles E. Clemens and '827 and '035 Patents

Plaintiffs ask the court to prohibit defendants' expert, Charles E. Clemens, from testifying that the Teva generic infringed the '827 patent or that the Teva EAI couldn't have launched without infringing the EpiPen patents.  Plaintiffs argue that this evidence isn't relevant because it doesn't account for the but-for scenario.  Also, plaintiffs say such testimony will confuse the jury.  Defendants respond that this testimony goes to several relevant issues the jury must consider, including causation and injury, the but-for generic entry date, and the procompetitive benefits of the settlement.  The court denies this aspect of the motion for two, independent reasons.

*First*, Prof. Elhauge has expressed an opinion about the but-for world.  The court has concluded that he's qualified to express that opinion, and plaintiffs can do their best to persuade the jury that his analysis identifies the but-for world correctly.  But nothing permits the court to conclude that Prof. Elhauge's view is the only correct view of the but-for world.  So, the court won't deprive defendants of an opportunity to persuade the jury that Prof. Elhauge's view is incorrect because their expert has a different view.

*Second*, defendants argue that the settlement was procompetitive because it allowed Teva to enter the market earlier than it otherwise would have without the settlement.  Whether the evidence supports that assertion is a fact issue for the jury to decide.  So, the court won't bar evidence relevant to that issue which would include Mr. Clemens's opinions about the '827 and '035 Patents.

### 14.   Plaintiffs' Alleged Failure to Mitigate Damages

Plaintiffs ask the court to bar evidence of plaintiffs' failure to mitigate.  Plaintiffs say that mitigation doesn't apply in an antitrust price-fixing case, and also, it shouldn't apply to the

antitrust claims at issue here.  And, plaintiffs argue, defendants never have disclosed any evidence in discovery supporting a mitigation defense.

The court denies this motion in limine topic.  It's an untimely dispositive motion against one of defendants' asserted defenses.  Plaintiffs concede that defendants have preserved this defense.  And they didn't move for summary judgment against it.  The court won't allow plaintiffs to move to assert an untimely dispositive motion, which is what plaintiffs' current motion tries to do.

### 15.    Plaintiffs' Choice of Insurance

Plaintiffs argue that a consumer's choice of insurance isn't relevant to the issues remaining for trial.  Also, plaintiffs contend that the court should exclude this evidence because any probative value it may have is outweighed by danger of unfair prejudice.  Defendants respond that this evidence is highly probative, and thus relevant to showing whether a plaintiff was injured—*i.e.*, whether a plaintiff paid an overcharge or the insurer paid it.

The court denies the motion for the same reason it denies Topic No. 14, above.  The parties' briefing connects the request to the mitigation issue.  And, the court won't allow plaintiffs to seek to exclude this mitigation evidence well after the deadline for dispositive motions.  Also, the court finds that this evidence might become relevant to plaintiffs' damages model.  Thus, on this record, the court can't find that the evidence is irrelevant, and thus, inadmissible under Fed. R. Evid. 402.  Also, the court doesn't find on the current record that the evidence poses a danger of unfair prejudice that might warrant excluding it under Fed. R. Evid. 403.

### 16.   Referring to Mylan's Expert, Former Judge David Folsom, as "Judge" or "Your Honor"

Plaintiffs ask the court to prohibit defendants from referring to their expert, David Folsom, who is a retired U.S. District Judge for the Eastern District of Texas, as "Judge" or "Your Honor." Plaintiffs argue that referring to the expert as a judge is improper and violates ethical rules. Plaintiffs also ask the court to bar any mention of this expert's former service as a federal judge.

Defendants don't object to this motion to the extent the limine ruling prohibits referring to the expert as "Your Honor" or "Judge." But, defendants assert, they are entitled to provide Mr. Folsom's background and experience to the jury so that the jury can assess his qualifications and consider his opinions in light of his background and experience. Defendants explain that background and experience necessarily includes Mr. Folsom's service as a federal judge.

The court grants this aspect of the motion in part and denies it part. The court grants the request to preclude referring to Mr. Folsom as "Judge" or "Your Honor." The parties agree that the ethical rules governing former federal judges prohibit using those titles to refer to a retired federal judge. And, defendants agree they won't refer to Mr. Folsom by these titles. So, the court can grant this part of the motion.

But, the court denies the request to preclude any mention of Mr. Folsom's service as a federal district judge. After the motions hearing, plaintiffs submitted additional authority to support their position that referring to Mr. Folsom's service as a judge violates ethical rules. Doc. 2564. The court has reviewed that submission, and it finds that none of plaintiffs' cited authority prohibits a retired judge, who is testifying as an expert witness, from referring to his or her judicial service as background information.

One of plaintiffs' cited cases involved expert testimony by a retired judge who continued to serve as a judicial officer by assignment, and thus, still served as a sitting judge. *See, e.g.*, *Joachim v. Chambers*, 815 S.W.2d 234, 235, 239 (Tex. 1991) (considering "whether a retired district judge *who continues to serve as a judicial officer by assignment* may testify as an expert witness" and concluding that the Texas ethical rules prohibited the expert testimony because, among other reasons, the judge's expert testimony "confers his very considerable prestige *as a judicial officer* in support of defendants' position" (emphasis added)). Those aren't the facts here. Mr. Folsom no longer holds a judicial office because he has retired from his position as a federal district judge.

Plaintiffs also cite various rules governing judges, but none of those apply to Mr. Folsom's expert testimony in this case. Indeed, some of plaintiffs' sources explicitly reject the positions they take. *See* Doc. 2564 at 4 (first citing N.J. Guidelines on the Practice of Law by Retired Judges, Guideline 8 (Doc. 2564-1 at 4) (reciting that it "is improper for a retired [New Jersey] judge to appear in a New Jersey court as an expert witness (such as to testify as to reasonableness of attorney fees) or in any court as a character witness" but containing no prohibition against a retired *federal district judge* testifying as an expert witness *in federal court*); then citing Sup. Ct. of Ohio Bd. of Comm'rs on Grievances & Discipline, Op. 2013-3, at 12–13 (June 6, 2013) (Doc. 2564-2 at 13–14) (concluding that the Ohio Code of Judicial Conduct prohibits former judges from using judicial titles but noting "former judges should be able to reference and describe their judicial service and experience" and also "may appear before current judges as lawyers, parties, or witnesses")).

Also, plaintiffs cite a provision in the Code of Conduct for United States Judges that provides:  "A judge should [not] lend the prestige of the judicial office to advance the private

interests of the judge or others[.]"  Code of Conduct for United States Judges Canon 2B (Jud. Conf. Mar. 12, 2019),

https://www.uscourts.gov/sites/default/files/code_of_conduct_for_united_states_judges_effective_march_12_2019.pdf.  The parties dispute whether this Code applies to Mr. Folsom, who no longer holds judicial office.[4]  In any event, plaintiffs cite no authority stating that a retired judge inappropriately lends the prestige of judicial office by providing background information about his former service as a federal judge while testifying as an expert witness.

To the contrary, defendants correctly assert that other courts have permitted retired federal judges to testify as expert witnesses and provide as background a description of their service as a federal judge.  Doc. 2565 at 2 (first citing *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2019 WL 6242128, at *12 (S.D.N.Y. Aug. 2, 2019) (prohibiting references to expert witness as "Judge" or "The Honorable" because he no longer was a judge but permitting the "jurors [to] know that he was once a judge" because his "experience on the bench will be apparent from his explanation of his credentials"); then citing *Downing v. Goldman Phipps PLLC*, No. 4:13 CV 206 CDP, 2017 WL 1047375, at *1 n.1 (E.D. Mo. Mar. 20, 2017) (prohibiting parties from referring to expert witness as "Judge" but finding that plaintiffs were "of course, entitled to have him explain his qualifications, including that he is a retired judge")).  Defendants' cases are persuasive.  And, it follows them here.  The court prohibits the

---

[4]   Defendants argue that the Code of Conduct for United States Judges does not apply to Mr. Folsom as a former federal judge who has taken full retirement and relinquished his judicial commission. They cite a provision of the Code of Conduct that requires compliance by "[a]nyone who is an officer of the federal judicial system authorized to perform juridical functions[.]"  Code of Conduct for United States Judges, Compliance with the Code of Conduct (Jud. Conf. Mar. 12, 2019), https://www.uscourts.gov/sites/default/files/code_of_conduct_for_united_states_judges_effective_march_12_2019.pdf, at 19.  But, that section continues and includes a section governing retired judges. *See id.* at 20 ("A judge who is retired under 28 U.S.C. § 371(b) or § 372(a) (applicable to Article III judges), or who is subject to recall under § 178(d) (applicable to judges on the Court of Federal Claims), or who is recalled to judicial service, should comply with all the provisions of this Code[.]").

parties from referring to Mr. Folsom as "Judge" or "Your Honor" but it won't preclude Mr.

Folsom from testifying about his former work as a federal judge in the context of providing his

background and experience to the jury.

>    **17.   Expert Testimony on the Absence of an Agreement or Conspiracy (*i.e.*, an "ultimate issue")**

Plaintiffs assert that defendants' expert, Jonathan Orszag, plans to testify that there is

"'no . . . factual evidence' of a *quid pro quo* agreement between Mylan and Teva to exchange

delayed generic entries in the EpiPen and Nuvigil markets." Doc. 2521-1 at 28 (citing Orszag

Expert Report ¶ 14).   Plaintiffs argue that this testimony goes to the ultimate issue that the jury

must decide, and they argue that an expert can't provide testimony on this factual issue.

Defendants respond, arguing that plaintiffs' request here is another untimely *Daubert* motion.

Also, defendants assert that an expert's opinion may embrace an ultimate issue so long as the

testimony is based on ultimate facts.  Defendants argue that Mr. Orszag's testimony here is based

on his economic analysis that concludes there is no evidence of a *quid pro quo* agreement.

The court grants this aspect of the motion.  Mr. Orszag's opinion that there is no "factual

evidence" of an agreement goes too far.  His opinion tells the jury what decision to make.  Such

opinion testimony is prohibited under Fed. R. Evid. 704's advisory committee notes.  *See* Fed. R.

Evid. 704 advisory committee's note to 1972 Proposed Rules (explaining that the "abolition of

the ultimate issue rule does not lower the bars so as to admit all opinions[,]" instead expert

opinion still must qualify as admissible evidence under Fed. R. Evid 701, 702 and 403 which

"afford ample assurances against the admission of opinions which would merely tell the jury

what result to reach"); *see also Anderson v. Suiters*, 499 F.3d 1228, 1237–38 (10th Cir. 2007)

(holding that expert opinion didn't create a genuine dispute of material fact because it

"impermissibly addresses the ultimate legal question"); *Specht v. Jensen*, 853 F.2d 805, 808–09

(10th Cir. 1988) (holding that trial court erred by admitting expert testimony that embraced the ultimate issue). Here, Mr. Orszag's opinion about which facts do or do not exist won't assist the factfinder's work in deciding the issues. That task—deciding whether evidence exists—is assigned to the jury. And Mr. Orszag isn't more experienced or skilled in factual assessments than the members of the jury.

But, the court's ruling on this topic doesn't exclude Mr. Orszag's opinion that there is no *economic* evidence of a *quid pro quo* agreement to delay generic entry. Mr. Orszag is qualified to opine about economics and the economic characteristics of that transaction. And, his opinion may prove helpful to the jury to decide the ultimate issue. So, Fed. R. Evid. 704 doesn't preclude that testimony.

Last, the court addresses plaintiffs' argument that Mr. Orszag impermissibly testified that certain factual evidence wasn't "reliable." Doc. 2521-1 at 28. To the extent plaintiffs' motion asks the court to exclude this testimony, the court denies that request. The court doesn't read Mr. Orszag's deposition testimony on this topic as one invading the court's role as gatekeeper for experts or otherwise impermissibly assessing an expert's reliability.

### B.  Defendants' Motion in Limine

Now, the court turns to defendants' Motion in Limine. Defendants' motion asks the court to exclude argument and evidence about 14 topics. The court addresses each of those 14 topics in the order that defendants have presented them, below.

### 1.    Dismissed or Abandoned Claims and Theories

Defendants argue that the court should exclude evidence pertaining to dismissed or abandoned claims. They argue such evidence includes: (a) Heather Bresch's testimony to Congress in 2016; (b) Auvi-Q competition; and (c) expert testimony about dismissed claims.

Plaintiffs respond, arguing that each of these topics is relevant to antitrust issues that still remain in the case, including market power and abuse of monopoly power. Thus, plaintiffs argue, the court shouldn't exclude this evidence categorically.

For the first topic—(a) Ms. Bresch's Congressional testimony—the court denies the motion. The court is skeptical that all of the statements in Ms. Bresch's submissions to Congress are relevant, but the court can't currently find that none of her statements are relevant. But, defendants may re-raise this issue at trial once the parties have developed this issue with more acuity. And, the court directs plaintiffs to identify any statements that they intend to introduce and raise them with the court outside the jury's presence.

For the second topic—(b) Auvi-Q competitive efforts—the court grants the motion in part. The claims involving Auvi-Q exclusion are out of the case. Thus, the court bars plaintiffs from introducing evidence or argument about those claims. However, this ruling doesn't exclude statements that manifest an intent to monopolize. The court emphasizes, though, to qualify as admissible, the evidence must show an intent to *monopolize* the relevant market, and not simply "intent to harm a rival, protect and maximize profits, or do all the business if they can" because, as our Circuit has instructed, that kind of conduct "is neither actionable nor sanctioned by the antitrust laws." *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 969 (10th Cir. 1994) (citation and internal quotation marks omitted); *see also A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989) ("Intent does not help to separate competition from attempted monopolization and invites juries to penalize hard competition.").

For the third topic—(c) expert testimony about dismissed claims—the court grants the motion, but only in part. The court agrees that evidence about the EpiPen 2-Pak isn't relevant to the claims remaining for trial. So, the court won't permit defendant's expert, Dr. Portney, to

testify about the 2-Pak.  But, the court doesn't exclude Dr. Potney's testimony in its entirety.
The court will permit him to testify about other topics relevant as background information, *e.g.*,
anaphylaxis, its treatment, and products available in the EAI market.

### 2.     Prof. Rosenthal's Theories

Defendants move to exclude Prof. Rosenthal's damage opinions for certain states arguing
that she miscalculated the damages.  Also, defendants ask the court to exclude Prof. Rosenthal's
new brand loyalist theory as untimely, prejudicial, and flawed.  Plaintiffs respond that defendants
are asserting an untimely *Daubert* challenge to Prof. Rosenthal's opinions.  And, even if timely,
plaintiffs explain why her theories are sound.

The court already addressed some of defendants' arguments in its Order ruling
defendants' Motion to Decertify.  Doc. 2531 at 2, 26–27 (granting Mylan's motion to decertify
the portion of the state law antitrust class action asserting claims under the laws of Nevada and
North Carolina); *see also id.* at 13–24 (refusing to exclude Prof. Rosenthal's new brand loyalist
theory as untimely or unreliable).  So, for this motion in limine topic, that just leaves defendants'
argument about Prof. Rosenthal's calculation of New Hampshire antitrust damages.  *See* Doc.
2532-1 at 14 (asserting that the court's order on the Motion to Decertify "leaves only one issue
remaining").

Defendants ask the court to exclude Prof. Rosenthal's damage calculation for New
Hampshire plaintiffs because, they argue, she has miscalculated damages by using the statutory
standard for *consumer protection claims* instead of the standard for *antitrust* claims.  Prof.
Rosenthal's Rebuttal Report (Doc. 2183-4, Attach. C.6.d.) states that "New Hampshire antitrust
overcharges [are] the greater of actual damages per Rx and $1000 per Rx."  Doc. 2183-4 at 69

(dated Feb. 7, 2020).[5]  Defendants say this approach is legally wrong because the $1,000

statutory penalty comes from New Hampshire's consumer protection statute, N.H. Rev. Stat.

Ann. § 358-A:10.[6]  But the New Hampshire antitrust statute contains no such penalty provision.

Instead, the New Hampshire antitrust statute only provides for the recovery of "actual damages"

and includes no statutory penalty.  *See* N.H. Rev. Stat. Ann. § 356:11 (permitting recovering of

"the actual damages sustained, and as determined by the court, the costs of the suit and

reasonable attorney's fees").[7]

    Plaintiffs respond, arguing that the New Hampshire consumer protection statute expressly

applies to antitrust conduct.  *See* N.H. Rev. Stat. Ann. § 358-A:2(XIV) (prohibiting "use [of] any

unfair method of competition or any unfair or deceptive act or practice in the conduct of any

trade or commerce" including "[p]ricing of goods or services in a manner that tends to create or

---

[5]     Plaintiffs argue that defendants' motion is untimely.  Plaintiffs disclosed this part of Prof. Rosenthal's Reports before summary judgment.  And, this Report was part of the *Daubert* and summary judgment briefing seeking to exclude Prof. Rosenthal's opinion on other grounds.  However, the court won't deny defendants' argument here as an untimely *Daubert* motion.  Instead, the court views defendants' argument as an evidentiary challenge to the evidence offered by Prof. Rosenthal which, as the court concludes, impermissibly includes a statutory damages penalty that is not grounded in New Hampshire's antitrust statute.

[6]     The first sentence of that statute provides:  "Any person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper.  If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $1,000, whichever is greater."  N.H. Rev. Stat. Ann. § 358-A:10.

[7]     Defendants cite N.H. Rev. Stat. Ann. § 356:4-c as the applicable New Hampshire statute.  Doc. 2522-1 at 9.  The text of this statute provides:  "*The state, a political subdivision thereof, or any public agency* injured in its business or property by reason of a violation of this chapter may recover the actual damages sustained and the costs of the suit including reasonable attorney's fees."  N.H. Rev. Stat. Ann. § 356:4-c (emphasis added).  A separate statute provides for private enforcement of New Hampshire's antitrust laws.  N.H. Rev. Stat. Ann. § 356:11 ("*Any person injured in his business or property* by reason of a violation of this chapter may recover the actual damages sustained, and as determined by the court, the costs of the suit and reasonable attorney's fees regardless of whether that person dealt directly or indirectly with the defendant.  If the trier of facts finds that the violation is willful or flagrant, they may increase damages to an amount not in excess of 3 times the actual damages sustained." (emphasis added)).

maintain a monopoly, or otherwise harm competition, including the pricing of generic prescription drugs").  So, plaintiffs argue, Prof. Rosenthal correctly calculated damages using the consumer protection statute.  The court disagrees.

Plaintiffs no longer can assert a claim under the New Hampshire Consumer Protection Act.  They abandoned their consumer protection act claims in the Pretrial Order.  Doc. 2169 at 43 (stating that plaintiffs have abandoned six claims including "Count VIII, Violation of Consumer Protection Laws").  And, plaintiffs only allege state antitrust claims under "N.H. Rev. Stat. Ann. §§ 356:1, *et. seq.*"  Doc. 2169 at 44–45 (Pretrial Order ¶ 4.d.).  Importantly, the Pretrial Order doesn't assert any claims under N.H. Rev. Stat. Ann. §§ 358:A1–13 (the consumer protection statute).  So, the court finds, defendants are correct that Prof. Rosenthal can't calculate damages using the $1,000 statutory penalty from New Hampshire's consumer protection statute.

But, plaintiffs assert, Prof. Rosenthal's damages model is capable of calculating both statutory damages and antitrust overcharge damages.  They explain that her "overcharge damages calculation is readily available by using the Excel version of Attachments C.6.d and C.7.d" and that "one can delete the '1000' in the formula . . . and, then, return pure overcharge damages."  Doc. 2532-1 at 15.  To the extent plaintiffs accurately describe the content and capability of Prof. Rosenthal's model, the court will allow Prof. Rosenthal to testify about her damages model using an "actual damages" calculation for the New Hampshire antitrust overcharge damages to perform her damages analysis.  But, the court prohibits her from using the $1,000 statutory damages figure because that comes from the New Hampshire consumer protection statute and plaintiffs don't bring antitrust claims under that law.  Instead, plaintiffs only can recover "actual damages" for antitrust violations under N.H. Rev. Stat. Ann. § 356:11.

Thus, the court grants in part this portion of defendants' motion in limine and also denies it in part.

### 3.    Other Lawsuits, Investigations, and Matters

Defendants seek to exclude evidence about other lawsuits or matters unrelated to EpiPen. Defendants argue that the court should exclude such evidence under Fed. R. Evid. 401, 402, 403, and 404 because the evidence is irrelevant to the antitrust issues in this lawsuit and also prejudicial.  Plaintiffs' response and the parties' arguments at the motions hearing focused this dispute on two matters:  (1) the Intelliject settlement, and (2) Pfizer's divestiture of the Adrenaclick AG.  So, the court just addresses those two matters, below.

And, as a consequence, the court grants defendants' motion to exclude the other matters raised in its motion in limine because plaintiffs didn't respond to defendants' request to exclude those matters.  Also, the court agrees with defendants that these matters aren't relevant to the antitrust claims remaining for trial.  These matters include:  (1) the litigation brought by direct purchasers of the EpiPen, (2) securities litigation involving EpiPen, (3) a lawsuit plaintiffs filed in March 2020, and later dismissed, about EpiPen expiration dates, (4) the 2017 FDA warning letter sent to Meridian about EpiPen and a related recall, (5) the "birthday party" advertisement, and (6) related state-AG investigations.  *See* Doc. 2522-1 at 13–14.

In contrast, the court denies defendants' request to exclude evidence about the Intelliject settlement.  Plaintiffs argue that the Intelliject settlement is probative evidence of the weaknesses of the EpiPen patents—the patents at issue in both the Intelliject litigation and the Teva litigation at issue here.  And, plaintiffs represent that they intend to offer evidence of the Intelliject settlement through their patent expert who analyzed the Intelliject settlement and used it to form opinions about the likelihood of success in the Teva litigation.  The court will permit this

testimony from plaintiffs' expert.  The court finds that it is relevant to the jury's consideration of whether a reverse payment settlement occurred.  But, plaintiffs also represent that they "do not intend to litigate the Intelliject litigation in any way, shape, or form" and that introducing the Intelliject evidence won't produce "a trial within a trial."  Doc. 2561 at 90.  The court will hold plaintiffs to that assurance.  And, the court will revisit this ruling if the Intelliject evidence threatens to inject confusion or undue delay of the trial.

But the court grants defendants' request to exclude evidence about Pfizer's divestiture of Adrenaclick AG.  Plaintiffs argue that this evidence is relevant to the issues of market definition, market power, and an intent to monopolize.  The court disagrees.  As defendants asserted at the motions hearing, they don't contest market definition.  Also, they don't object to plaintiffs showing market power by introducing evidence of market share.  The court agrees with defendants that plaintiffs can present that kind of market share evidence without getting deep into the weeds provided by facts about the Adrenaclick AG divestiture.

Also, the court disagrees with plaintiffs that the Adrenaclick AG divestiture is probative evidence of defendants' intent to monopolize.  To the contrary, Pfizer's divestiture of this product allowed another company to enter the market to sell a competing product against the EpiPen.  The court agrees with defendants:  evidence about Pfizer's divestiture of the Adrenaclick AG is not probative of the generic delay antitrust issues remaining for trial.  Thus, it is not relevant evidence under Fed. R. Evid. 401.  As a consequence, the court excludes evidence about the Adrenaclick AG's divesture under Fed. R. Evid. 402 because it's irrelevant.

### 4.      Prejudicial, Inflammatory, or Inaccurate Language

Defendants seek an order precluding the use of prejudicial or inflammatory language to describe defendants and their alleged conduct.  Defendants provide examples such as "bribe," "coerce," "corrupt," "kickback," and "pay off."  Also, defendants ask the court to exclude inflammatory language about the pharmaceutical industry.  Plaintiffs argue that this request is too broad.  And, plaintiffs argue, in some instances, the evidence might support using the terms to which defendants object.

The court denies this aspect of defendants' motion in limine.  The court declines to police language used at the trial.  But, the ruling doesn't permit plaintiffs to argue that defendants are liable for the claims asserted simply because they are big or wealthy corporations.  It also doesn't permit plaintiffs to use language describing them as poor.

### 5.      Executive Compensation and Corporate Profits

Defendants assert that the court should exclude evidence about executive compensation and corporate profits because it isn't relevant to the antitrust issues in the case.  Also, defendants argue, such evidence is prejudicial.

Plaintiffs respond, arguing that the evidence is highly probative to showing what Mylan did with the profits from its EpiPen overcharges and to rebut any contention by Mylan that it reinvested profits into its products.  Also, plaintiffs argue, under the Rule 403 balancing test, the probative value of this evidence outweighs any prejudice to defendants.

The court grants the motion in part.  The court prohibits plaintiffs from offering evidence or argument, generally, about a party's wealth.  Our Circuit expressly prohibits "[r]eference to the wealth or poverty of either party, or reflection on financial disparity" because it is "improper

argument." *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983). So, the court won't allow that type of argument or evidence.

But, the court agrees with plaintiffs that evidence about compensation may go to issues of motive. So, the court won't impose a blanket prohibition on evidence about compensation. But, to qualify as admissible evidence, plaintiffs must provide a sufficient foundation linking compensation to motive, thereby showing that the evidence is relevant to the issues at trial.

Also, the court recognizes that evidence of defendants' profits might become relevant "on the theory that persistent excess profits are inconsistent with the competitive model and attributable to the possession of monopoly power." *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 976 (N.D. Cal. 1979); *see also TransWeb, LLC v. 3M Innovative Props. Co.*, 16 F. Supp. 3d 385, 410 (D.N.J. 2014) (concluding that a jury could find from an expert's testimony that "there are barriers to entry, as demonstrated by [defendant's] current high market share and extremely high profit margins"). So, the court can't impose a categorical exclusion of evidence about profits. But, again, the court won't permit plaintiffs to introduce evidence of profits unless they lay a sufficient foundation connecting the evidence to a relevant issue in the case.

In sum, the court grants in part this aspect of the motion in limine and denies it in part.

## 6. Ms. Bresch's MBA Degree and Familial Connections

Defendants seek an order prohibiting plaintiffs from introducing evidence about (1) Heather Bresch's MBA from West Virginia, (2) the fact she is Senator Joe Manchin's daughter, and (3) her mother, Gayle Manchin's, role in encouraging states to buy EpiPens when she served as President of the National Association of State Boards of Education.

The court grants this part of the motion in limine.  Plaintiffs haven't identified the relevance of any of the three topics.  Thus, the evidence is inadmissible under Fed. R. Evid. 402.  But, even if admissible, the court excludes it under Fed. R. Evid. 403 because the probative value of the evidence is outweighed by a danger of unfair prejudice, undue delay, and wasting time.

### 7.    Inappropriate arguments by counsel

Defendants seek an order prohibiting counsel from:  (1) invoking the "golden rule," (2) discussing personal opinions, (3) referring to personal background, (4) claiming to have knowledge of prior witness testimony, and (5) commenting about defendants' corporate representatives.  Defendants say all of these arguments are improper, and thus, the court should exclude them.

*First*, plaintiffs agree that their counsel won't invoke the "golden rule."  So, the court grants this aspect of the motion.

*Second*, the court grants the request to forbid discussing personal opinions.  The court prohibits all counsel from expressing a personal opinion about the witnesses, evidence, or anything else of that nature.

*Third*, the court denies in part the request to prohibit counsel from referring to personal background.  The court permits the lawyers to use background information to develop rapport with the jurors.  But, the court won't allow a lawyer to try to bolster himself or herself with statements about religion or the role that an attorney (or any other person) might occupy in a church.  So, the court prohibits references on that subject.

*Fourth*, the court denies the request to exclude references to prior witness testimony.  The court can't rule the request in advance.  The court can imagine a time when prior testimony by a witness might become relevant.  So, the court won't impose a blanket exclusion at this stage.

*Fifth*, and last, the court denies the request to prohibit comment about defendants' corporate representatives.  The court recognizes that there are times when it is proper to refer to a corporate representative.  So, the court won't enter an order categorically excluding references to corporate representatives.

In sum, the court grants in part the requests made by defendants' Topic No. 7 and also denies them in part, as described.

### 8.      Inflammatory Drawings and Other Handwritten Exhibits Created by Plaintiffs' Counsel

Defendants seek an order prohibiting counsel from creating or introducing hand-drawn exhibits at trial.  Defendants assert that plaintiffs' trial counsel has a history of making his own hand-drawn exhibits that are improper testimony as well as inflammatory and misleading. Plaintiffs respond, arguing that defendants are making a blanket request to prohibit the use of demonstratives which isn't proper or warranted.

The court grants in part this motion.  The court will not allow counsel to show a cartoon to the jury, like the one presented in Exhibit D attached to defendants' motion.  *See* Doc. 2523-4. But, the court declines to enter a blanket order prohibiting use of all demonstratives or flip charts.  The court directs counsel, though, that all demonstratives, including flip charts, must reflect witness testimony accurately, and not merely display an attorney's words.  And, the witness must confirm the accuracy of the words reflected on the flip chart so that there is no dispute later about what a witness said or didn't say during testimony.  Also, the court will require an explicit foundation before it will allow counsel to create a demonstrative by writing something on a flip chart.  Any other practice poses a danger for counsel to start testifying in a way that the Federal Rules of Evidence don't permit.

Last, the court reserves ruling whether plaintiffs' Trial Exhibit 185 is admissible. Defendants represent that plaintiffs' Trial Exhibit 185 is counsel's purported summary of a deponent's testimony created during her deposition. But, defendants argue, it's not an accurate summary of the testimony, and instead, includes misleading and inflammatory notes and drawings. The court will permit plaintiffs to lay the foundation to support the exhibit's admission at trial. And, the court won't admit the exhibit at trial without that proper foundation. But, the court declines to rule the exhibit's admissibility before trial.

> 9. **Newspaper Articles, Media Reporting, and Non-Scientific Publications Regarding Mylan, Other Pharmaceutical Companies, or the Pharmaceutical Industry**

Defendants move to exclude various media articles that contain, they say, inflammatory or incorrect information about Mylan. Defendants argue that the evidence is hearsay, and thus, it is inadmissible. Also, defendants argue, these articles aren't relevant, and even if they are, they are unduly prejudicial under Fed. R. Evid. 403. Plaintiffs respond, arguing that defendants' request is too broad. And, they argue that some exhibits fall within certain hearsay exceptions such as admissions by a party opponent or evidence of intent.

The court denies the motion but without prejudice. The court will enforce the Federal Rules of Evidence at trial. And, if plaintiffs want to introduce these articles into evidence, they will have to show that they are admissible under one of those rules. The court directs the parties that they must approach the bench before they refer to a statement contained in a news article. Ideally, counsel would raise the issue at the beginning or end of the trial day so that the court can provide a ruling on the evidence's admissibility without delaying the evidence.

### 10.  Plaintiffs' Settlement with Pfizer

Defendants seek an order excluding evidence about Pfizer's pretrial settlement discussions and agreements with plaintiffs under Fed. R. Evid. 408.  Also, defendants argue that the evidence is prejudicial, and thus, the court should exclude it under Fed. R. Evid. 403. Plaintiffs respond, arguing that the Rules of Evidence don't bar the *fact* of the settlement.  And, plaintiffs assert, evidence of that fact may be necessary to prevent juror confusion and speculation.

The court grants the motion.  The court agrees that Fed. R. Evid. 408 allows room for use of settlement evidence in some instances—including to explain the absence of one or more defendants.  But here, Pfizer's absence isn't a conspicuous one requiring an explanation to the jury.  The court will allow plaintiffs to re-raise the issue at trial—outside the jury's hearing—if necessary.  But, for now, the court grants this aspect of the motion in limine.

### 11.  Arguments Based on Any Party or Non-Party's Invocation of Privilege or Privilege Log

Defendants ask the court to prohibit plaintiffs from presenting any evidence or argument about defendants' privilege log.  Defendants assert that it's inappropriate for plaintiffs to draw negative inferences about a party's decision to invoke the attorney-client privilege.  Plaintiffs respond, contending that the privilege logs are relevant to showing timing and circumstances of Mylan's involvement in the Teva settlement.  Also, plaintiffs argue that they may seek to use the privilege logs to refresh a witness's recollection or for impeachment.

The court grants this motion.  The court sees this motion as raising two issues:  (1) whether the privilege logs are admissible evidence, and (2) whether the court will require a witness to invoke the privilege in front of the jury.

For the *first* issue, the court grants the motion to exclude the privilege logs because plaintiffs have not made any showing at this stage that the privilege logs are relevant. So, the privilege logs are inadmissible under Fed. R. Evid. 402. But, even if admissible, the court precludes their admission under Fed. R. Evid. 403 because any probative value of a privilege log is outweighed by the danger of unfair prejudice. This ruling does not prohibit, of course, the parties from using a privilege log to refresh a witness's recollection. But, based on the current record, the court won't allow the privilege logs into evidence.

For the *second* issue, the court agrees with Judge Lungstrum's sound reasoning in *Williams v. Sprint/United Management Co.*, 464 F. Supp. 2d 1100, 1108 (D. Kan. 2006). There, Judge Lungstrum held that it was "inappropriate to . . . force defendant to either invoke the privilege in the jury's presence (creating the negative inference desired by plaintiffs) or waive the privilege by responding to the question." *Id.* (citing *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 225–26 (2d Cir. 1999) ("[W]e know of no precedent supporting [an adverse] inference based on the invocation of the attorney-client privilege."), *overruled on other  sub nom. Moseley v. Secret Catalogue*, 537 U.S. 418 (2003)); *see also In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 8130449, at *3 (S.D.N.Y. Dec. 3, 2015) (granting motion in limine "to preclude any evidence or argument concerning [defendant's] invocations of the attorney-client privilege (or related protections, such as the work product doctrine), in this litigation or elsewhere"). The court agrees with Judge Lungstrum. Requiring a witness to invoke the privilege in the jury's presence has harmful consequences that penalize the party for invoking a right provided by our laws. So, the court grants this second aspect of the motion in limine and precludes plaintiffs from asking questions that are designed to require defendants to invoke the attorney-client privilege.

### 12.    Effect of Price Increases on Insurance Premiums

Defendants ask the court to prohibit plaintiffs from introducing evidence about any alleged effect that EpiPen price increases had on insurance premiums.  Defendants argue that plaintiffs asserted this claim in the Complaint but never pursued this theory, and thus, have abandoned it.

Plaintiffs argue that evidence about insurance premiums provides important contextual and background information.  And, plaintiffs argue, this evidence shows what motivated some class members to make certain purchases.

The court grants this aspect of the motion in limine.  The court prohibits plaintiffs from making this argument without a qualified witness or evidence to support it.  And, even if plaintiffs can proffer such a witness or evidence, the court still excludes this evidence because plaintiffs haven't asserted a claim in the case about an alleged increase on insurance premiums.  Also, plaintiffs don't seek to recover increased insurance premiums as a form of damages.  The court is concerned that introducing this evidence would cause the jury to decide the case on something other than its merits.  So, the court precludes this evidence.  Naturally, if defendants open the door to this topic at trial, plaintiffs may re-raise the issue but they must do so outside of the jury's presence.

### 13.    Mylan's Corporate Transactions Unrelated to the Claims and Time Period at Issue

Defendants seek to exclude evidence about (1) the creation of Mylan, N.V. in 2015, and (2) the 2020 combination of Mylan N.V. and Pfizer's Upjohn business.  Defendants argue that these two corporate transactions are irrelevant to the claims at issue for trial.

Plaintiffs argue that this evidence provides important background information and will explain to the jury why certain employees now work for a company called Viatris.  Plaintiffs say

that the court should not issue a blanket ruling on this topic.  Instead, plaintiffs ask the court to wait until the evidence is presented at trial.

The court denies the motion.  Plaintiffs have provided sufficient explanation for why such information might provide appropriate background information.  But, the court notes, this trial isn't about whether Mylan has sought to avoid paying taxes by entering certain corporate transactions.  So, the court prohibits plaintiffs from offering argument or evidence about tax issues or the tax reasons for the transactions, if any.

### 14.   International Sales

Defendants ask the court to exclude evidence about pricing or packaging of EpiPens in other countries.  Defendants argue that this evidence is irrelevant because other countries have different regulatory systems that control drug prices.  Also, defendants assert, even if relevant, this evidence is unfairly prejudicial.

The court denies the motion.  The court can't determine from the current record that all evidence about international sales is irrelevant to the issues remaining for trial.  So, the court declines to enter a blanket order excluding all evidence of international sales.  But, this ruling doesn't change the court's threshold ruling on the 2-Pak evidence.  *See* Doc. 2545.  The court's ruling stands that plaintiffs can't introduce evidence on that topic because, as the court already has determined, that topic isn't relevant to plaintiffs' antitrust claims.  *See id.* at 1–5.

### III.   Motions for Leave to File Under Seal

Both sides of the caption have moved to file under seal certain portions of their Motions in Limine and supporting briefs, as well as some exhibits attached to those motions.  *See* Docs. 2521, 2522, 2532, 2534, 2537, 2558, & 2559.  The court rules those motions in the following fashion, after reciting the governing legal standard.

### A.  Legal Standard

The Supreme Court recognizes a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S 589, 597 (1978) (citations omitted).  Nevertheless, a party may rebut the presumption of access to judicial records by demonstrating that "countervailing interests heavily outweigh the public interests in access." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citation and internal quotation marks omitted).  The party seeking to deny access must shoulder the burden to establish a sufficiently significant interest outweighing the presumption of access. *Id.*; *see also United States v. Bacon*, 950 F.3d 1286, 1293 (10th Cir. 2020) ("[T]he party seeking to keep records sealed bears the burden of justifying that secrecy," and it must "articulate a sufficiently significant interest that will justify continuing to override the presumption of public access[.]" (citation and internal quotation marks omitted)).  The decision whether a judicial record qualifies for sealing under this governing standard "is a matter left to the sound discretion of the district court." *Mann*, 477 F.3d at 1149 (citing *Nixon*, 435 U.S. at 599).

### B.  Plaintiffs' Motions for Leave to File Under Seal

*First*, plaintiffs filed an "Unopposed Motion for Leave to Provisionally File Under Seal the Memorandum of Law in Support of Omnibus Motions in Limine."  Doc. 2521.  The motion seeks leave to file provisionally under seal:  (1) plaintiffs' Memorandum of Law in Support of Omnibus Motions in Limine; and (2) supporting Exhibits A–F.  *Id.* at 2.  Later, after conferring with defendants and relevant third parties about information in these documents that they believe qualifies for sealing, plaintiffs filed a "Renewed Motion to File Under Seal Their Memorandum of Law in Support of Omnibus Motions in Limine."  Doc. 2534.  Plaintiffs' renewed motion seeks leave to file under seal Exhibit D (Expert Report of Jonathan M. Orszag) and to file

publicly a redacted version of Exhibit D consistent with the court's previous ruling on a motion for leave to file this same document under seal. *See* Doc. 2452 at 7. Also, plaintiffs seek leave to file under seal certain portions of its Memorandum of Law and certain portions of Exhibit E (deposition transcript of Dr. Steven Weisman) because, Teva asserts, certain excerpts in these documents contain confidential information about the specific reasons that caused the delay of Teva's ADNA. Mylan doesn't ask the court for leave to file the Memorandum of Law and Exhibit E under seal, and plaintiff objects to filing these documents under seal.

The court denies as moot the preliminary motion seeking leave to file under seal (Doc. 2521). And, the court grants in part the renewed motion seeking leave to file under seal (Doc. 2534), but also denies it in part. The court grants the request to file a redacted version of Exhibit D, consistent with the court's previous rulings on the parties' sealing requests. The court denies the request (by Teva) for leave to file under seal certain portions of the Memorandum of Law and Exhibit E because, the court finds, references to Teva manufacturing issues don't qualify for sealing for at least two reasons. *First*, the information is so old that any content is stale by now. *Second*, the court already referred to similar information about Teva manufacturing and mechanical issues in its publicly-filed Memoranda and Orders ruling the parties' *Daubert* and summary judgment motions. *See* Docs. 2380 & 2381. So, the court denies the request for leave to file under seal certain portions of the Memorandum of Law and Exhibit E.

**The court thus orders plaintiffs to file publicly: (1) Their Memorandum of Law in Support of Omnibus Motions in Limine; (2) Exhibits A, B, C, E, & F; and (3) a redacted version of Exhibit D, consistent with the court's previous ruling on the parties' sealing requests. And, the court grants plaintiffs leave to file under seal an unredacted version of Exhibit D.**

*Next*, plaintiffs filed an "Unopposed Motion for Leave to Provisionally File Under Seal Their Memorandum of Law in Opposition to the Mylan Defendants' Omnibus Motions in Limine." Doc. 2532. The motion seeks leave to file provisionally under seal: (1) plaintiffs' Memorandum of Law in Opposition to the Mylan Defendants' Omnibus Motions in Limine; and (2) supporting Exhibits G–N & S–U. After conferring with plaintiffs and relevant third parties about the information they believe qualifies for sealing in these documents, plaintiffs filed a "Renewed Unopposed Motion to File Under Seal Exhibit G to Their Memorandum of Law in Opposition to the Mylan Defendants' Omnibus Motions in Limine." Doc. 2558. Plaintiffs' renewed motion seeks leave to file under seal certain portions of Exhibit G (Second Supplemental Expert Report of Dr. Meredith Rosenthal) because Mylan asserts that these portions contain confidential and commercially sensitive pricing and rebating data.

The court denies as moot the preliminary motion seeking leave to file under seal (Doc. 2532). And, the court grants the renewed motion seeking leave to file under seal portions of Exhibit G (Doc. 2558). Mylan asks the court to preclude public access to limited portions of Dr. Rosenthal's Expert Report. Mylan has shouldered its burden, explaining adequately that these limited portions qualify for sealing because they contain commercially sensitive pricing and rebating information that, if disclosed, could harm Mylan's proper commercial interests. *See* Doc. 2558-1. Thus, the court grants plaintiffs leave to file publicly a redacted version of Exhibit G and to file under seal an unredacted version of Exhibit G.

**Thus, the court directs plaintiffs to file publicly: (1) plaintiffs' Memorandum of Law in Opposition to the Mylan Defendants' Omnibus Motions in Limine; (2) supporting Exhibits H–N & S–U; and (3) a redacted version of Exhibit G. Also, the court grants plaintiffs leave to file under seal an unredacted version of Exhibit G.**

## C.  Defendants' Motions for Leave to File Under Seal

Now, the court turns to defendants' Motions for Leave to File Under Seal.  *First*, defendants filed a "Motion for Leave to Preliminary File Under Seal [the] Omnibus Motions in Limine."  Doc. 2522.  It seeks leave to file under seal preliminarily defendants' Omnibus Motions in Limine and Exhibit B.  *Id.*  Defendants never filed a renewed motion to seal.  Instead, 15 days after filing their preliminary motion, defendants filed publicly their Omnibus Motions in Limine and Exhibit B.  Doc. 2539.  Thus, the court surmises that defendants determined that none of the filings attached to the preliminary motion qualify for sealing.  And, the court can— and does—deny as moot defendants' preliminary motion (Doc. 2522).

*Next*, defendants filed a "Motion for Leave to Preliminarily File Under Seal [the] Response to Class Plaintiffs' Omnibus Motions in Limine."  Doc. 2537.  This motion seeks leave to file preliminarily under seal:  (1) Mylan's Response to Class Plaintiffs' Omnibus Motions in Limine, and (2) all attached exhibits to the Response.  *Id.* at 1.  Later, defendants filed a "Renewed Motion for Leave to File Under Seal [the] Response to Class Plaintiffs' Omnibus Motions in Limine."  Doc. 2559.  This renewed motion seeks leave to file under seal certain portions of the Response and Exhibit C (the deposition transcript of Dr. Steven Weisman).  *Id.* at 1.  Defendants make this request on behalf of Teva, who asserts that certain portions of the Response and Exhibit C discuss non-public information about the reasons for Teva's delay in securing approval of its ADNA.

The court denies as moot the preliminary motion seeking leave to file under seal (Doc. 2537).  And, for the same reasons already discussed, the court denies the renewed motion seeking leave to file under seal portions of defendants' Response and Exhibit C (Doc. 2559).  As discussed, the information that Teva asks the court to seal doesn't qualify for sealed treatment

because (1) it's stale, and (2) the court discussed some of the same information in its publicly-filed Memoranda and Orders deciding the parties' *Daubert* and summary judgment motions. Thus, the court denies defendants' renewed motion for leave to file under seal.

**Thus, the court directs defendants to file publicly: (1) its Response to Class Plaintiffs' Omnibus Motions in Limine: and (2) supporting Exhibits A–D.**

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion in Limine (Doc. 2520) is granted in part and denied in part, consistent with this Order.

**IT IS FURTHER ORDERED THAT** defendants' Motion in Limine (Doc. 2539) is granted in part and denied in part, consistent with this Order.

**IT IS FURTHER ORDERED THAT** plaintiffs' Unopposed Motion for Leave to Provisionally File Under Seal the Memorandum of Law in Support of Omnibus Motions in Limine (Doc. 2521) is denied as moot.

**IT IS FURTHER ORDERED THAT** plaintiffs' Renewed Motion to File Under Seal Their Memorandum of Law in Support of Omnibus Motions in Limine (Doc. 2534) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiffs' Unopposed Motion for Leave to Provisionally File Under Seal Their Memorandum of Law in Opposition to the Mylan Defendants' Omnibus Motions in Limine  (Doc. 2532) is denied as moot.

**IT IS FURTHER ORDERED THAT** plaintiffs' Renewed Unopposed Motion to File Under Seal Exhibit G to Their Memorandum of Law in Opposition to the Mylan Defendants' Omnibus Motions in Limine (Doc. 2558) is granted.

**IT IS FURTHER ORDERED THAT** defendants' "Motion for Leave to Preliminary File Under Seal [the] Omnibus Motions in Limine" (Doc. 2522) is denied as moot.

41

**IT IS FURTHER ORDERED THAT** defendants' "Motion for Leave to Preliminarily File Under Seal [the] Response to Class Plaintiffs' Omnibus Motions in Limine" (Doc. 2537) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendants' "Renewed Motion for Leave to File Under Seal [the] Response to Class Plaintiffs' Omnibus Motions in Limine" (Doc. 2559) is denied.

**IT IS SO ORDERED.**

**Dated this 26th day of January, 2022, at Kansas City, Kansas.**

                                       **s/ Daniel D. Crabtree**
                                       **Daniel D. Crabtree**
                                       **United States District Judge**