UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | ) ) ) ) | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) |
| This Document Relates To: | ) ) ) | |
| CONSUMER CLASS CASES. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH THE MYLAN DEFENDANTS**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF THE ACTION.............................................................................4

III. TERMS OF THE SETTLEMENT .........................................................................6

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..................9

   A.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT. ..................................................................................................9

   B.   STANDARDS FOR PRELIMINARY APPROVAL OF A PROPOSED SETTLEMENT.........................10

   C.   THE SETTLEMENT SATISFIES THE RULE 23(E)(2) FACTORS. ...............................12

      1.   Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class. .............12

      2.   The Proposed Settlement Was Negotiated at Arm's Length. ...................................14

      3.   The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal. .....................................................................................15

      4.   Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt. ......................................................................................................................16

      5.   Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation. ...................................................17

      6.   The Proposed Method for Distributing Relief Is Effective. ....................................18

      7.   Attorneys' Fees and Expenses. ...............................................................................19

      8.   The Settling Parties Have No Additional Agreement. .............................................21

      9.   Class Members Are Treated Equitably......................................................................21

   D.   THE SETTLEMENT SATISFIES THE REMAINING FACTOR CONSIDERED BY COURTS IN THE TENTH CIRCUIT. ...............................................................................................21

V.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE..........................................................................22

   A.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED NOTICE OF SETTLEMENT. ................................................................................................................22

   B.   AN ADDITIONAL SETTLEMENT OPT-OUT IS NEITHER REQUIRED BY DUE PROCESS NOR WARRANTED UNDER RULE 23(E)..........................................................................23

   C.   APPOINTMENT OF A.B. DATA TO SERVE AS THE SETTLEMENT ADMINISTRATOR IS PROPER. ....................................................................................................................28

   D.   APPOINTMENT OF HUNTINGTON BANK AS ESCROW AGENT IS PROPER. .............................29

   E.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS...............................................................29

VI.  THE COURT SHOULD STAY PROCEEDINGS IN THE ACTION..................................29

VII. CONCLUSION .....................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrecht v. Oasis Power, LLC*,
　No. 1:18-cv-1061, 2019 U.S. Dist. LEXIS 162876 (N.D. Ill. Sep. 24, 2019) ......................... 30

*Amoco Prod. Co. v. Fed. Power Comm'n*,
　465 F.2d 1350 (10th Cir. 1972)................................................................................................. 9

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
　167 F. Supp. 2d 1216 (D. Colo. 2001) ...................................................................................... 9

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
　No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020)........................... *passim*

*Class Plaintiffs v. City of Seattle*,
　955 F.2d 1268 (9th Cir. 1992)................................................................................................. 27

*Dare v. Knox Cnty.*,
　457 F. Supp. 2d 52 (D. Me. 2006)........................................................................................... 27

*Davis v. Abercrombie*,
　No. 11-00144 LEK-BMK, 2017 WL 2234175 (D. Haw. May 22, 2017)................................. 27

*Denney v. Deutsche Bank AG*,
　443 F.3d 253 (2d Cir. 2006)............................................................................................. 25, 27

*Denney v. Jenkens & Gilchrist*,
　230 F.R.D. 317 (S.D.N.Y. 2005)............................................................................................. 27

*Fager v. CenturyLink Commc'ns, LLC*,
　854 F.3d 1167, 1170 (10th Cir. 2016)..................................................................................... 23

*Hapka v. CareCentrix, Inc.*,
　No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018)................................... 22

*Harris v. Chevron U.S.A., Inc.*,
　No. 6:19-cv-00355-SPS, 2020 WL 8187464 (E.D. Okla. Feb. 27, 2020) ............................... 13

*In re (Epinephrine Injection, USP) EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
　336 F. Supp. 3d 1256 (D. Kan. 2018) ........................................................................................ 4

*In re (Epinephrine Injection, USP) EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
　No. 17-md-2785-DDC-TJJ, 2021 WL 5369798 (D. Kan. Nov. 17, 2021) ....................... *passim*

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) .......................................................................................... 18, 22

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. Aug. 10, 1976) ............................................................................. 18

*In re Linerboard Antitrust Litig.*,
   No. CIV. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ............................................... 15

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and
   Prods. Liab. Litig.*,
   952 F.3d 471 (4th Cir. 2020) ................................................................................................. 20

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................................... 26, 27

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
   258 F.R.D. 671 (D. Kan. 2009) ........................................................................................ 10, 15

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
   271 F.R.D. 221 (D. Kan. 2010) ............................................................................................. 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................... 20

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..................................... 13

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................................... 26

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d 1133 (D. Colo. 2009) .................................................................................... 16

*In re SandRidge Energy, Inc. Sec. Litig.*,
   No. CIV-12-1341-G, 2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) ..................................... 13

*In re Sony PS3 "Other OS" Litig.*,
   No. 10-cv-01811-YGR, 2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) ................................... 30

*In re Syngenta AG MIR 162 Corn Litig.*,
   No. 14-md-2591-JWL, 2018 WL 1726345 (D. Kan. Apr. 10, 2018) ............................... *passim*

*In re Syngenta AG MIR 162 Corn Litig.*,
   No. 14-md-2591-JWL, 2021 WL 102819 (D. Kan. Jan. 12, 2021) .......................................... 20

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    912 F. Supp. 2d 1178 (D.N.M. 2012) ..................................................... 17

*In re Washington Mutual, Inc.*,
    No. 2:08-md-1919 MJP, 2015 WL 12803633 (W.D. Wash. June 22, 2015)........................... 27

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
    No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ..................................... 20

*In re WorldCom, Inc. ERISA Litig.*,
    No. 02 Civ. 4816(DLC), 2004 WL 2338151 (S.D.N.Y. 2004)................................................. 13

*Kjessler v. Zaappaaz, Inc.*,
    No. 4:18-cv-430, 2018 WL 8755737 (S.D. Tex. Aug. 31, 2018) ............................................ 14

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................... 25, 27

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018)..................................................................... 24, 25, 27

*Lowery v. City of Albuquerque*,
    No. CIV 09–0457 JB/WDS, 2013 WL 1010384 (D.N.M. February 27, 2013) ............ 25, 26, 27

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006)............................................................ 10, 16, 18, 23

*Marcus v. Kansas Dep't of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002)................................................................................. 30

*Marcus v. Kansas Dep't of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002) ................................................................. 14, 22

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ......................... 15, 16, 18

*Moulton v. U.S. Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009)................................................................................... 25

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ......................................................................................... 23, 25

*O'Dowd v. Anthem, Inc.*,
    No. 14-cv-02787-KLM-NYW, 2019 WL 4279123 (D. Colo. Sept. 9, 2019).......................... 22

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) .............................................................................. 25, 27

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ............................................................................ 20

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................. 24

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ................................................................................... 17

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
    749 F.2d 1451 (10th Cir. 1984) .................................................................................. 9

*Tardiff v. Knox Cnty.*,
    567 F. Supp. 2d 201 (D. Me. 2008) ......................................................................... 27

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ................................................................... 11, 16, 23

*Tennille v. W. Union Co.*,
    No. 09-cv-00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014) ............ 18

*Trujillo v. State of Colo.*,
    649 F.2d 823 (10th Cir. 1981) .................................................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................ 26, 27

## Rules

Fed. R. Civ. P. 23(e) .......................................................................................... 9, 24, 27

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................... 10, 14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..................................................................................... 19

Fed. R. Civ. P. 54(b) ...................................................................................................... 6

Rule 23 ................................................................................................ 16, 20, 23, 24

Rule 23(b)(3) ........................................................................................... 22, 25, 27

Rule 23(c)(2) ................................................................................................................ 26

Rule 23(c)(2)(B) ....................................................................................... 22, 23, 24

Rule 23(e)(1) of the Federal Rules of Civil Procedure ............................................... 10

Rule 23(e)(2)(A) ........................................................................................................ 12

Rule 23(e)(2)(C)(i) .................................................................................................... 15

Rule 23(e)(2)(C)(iv) .................................................................................................. 21

Rule 23(e)(2)(D) ....................................................................................................... 21

Rule 23(e)(2); and (ii) ................................................................................... 10, 11, 12

Rule 23(e)(3) ............................................................................................................. 11

Rule 23(e)(4) ....................................................................................................... 26, 27

Rule 23(f); (vii) ......................................................................................................... 13

## Other Authorities

Bolch Jud. Inst., Guidelines and Best Practices: Implementing 2018 Amendments
to Rule 23 Class Action Settlement Provisions 21 (2018) ....................................20

*Manual for Complex Litigation*, §13.14 (4th ed. 2004) ........................................ 10, 25

2 McLaughlin on Class Actions §6:21 (17th ed. 2020) ............................................... 26

4 William B. Rubenstein, *Newberg on Class Actions*, §13.10 (5th ed. 2021) .............................. 10

## I.     INTRODUCTION

More than fifteen EpiPen-related lawsuits were filed in late 2016 and 2017 against Mylan;[1] these cases were then centralized or transferred into an MDL before this Court. After nearly five years of vigorous, often contentious litigation in this Action,[2] and shortly before trial was scheduled to commence on February 22, 2022, Class Plaintiffs[3] and the Mylan Defendants (together, the "Settling Parties") have reached a Settlement that resolves the Class Plaintiffs' claims in the Action and Other Actions[4] against the Mylan Defendants and creates an additional non-reversionary common fund of $264 million for the certified Class. Combined with the prior $345 million Pfizer Settlement, the Mylan Settlement brings the total recovery to $609 million—an extraordinary

---

[1]     "Mylan" refers collectively to Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., and Heather Bresch. "Mylan Defendants" refers collectively to Mylan  and Viatris Inc.

[2]     All capitalized terms not otherwise defined herein shall have the meaning given to them in the February 27, 2022, Stipulation of Class Action Settlement ("Settlement Agreement"), a copy of which is attached hereto as Exhibit 1. All emphasis is added, and citations are omitted, unless otherwise noted.

[3]     "Class Plaintiffs" or "Plaintiffs" refers collectively to the appointed representatives of the certified Class: Shannon Clements; Lesley Huston; Rosetta Serrano; Kenneth Evans; Elizabeth Williamson; Vishal Aggarwal; Teia Amell; Todd Beaulieu; Carly Bowerstock; Raymond Butcha III; Laura Chapin; Heather Destefano; Donna Anne Dvorak; Michael Gill; Suzanne Harwood; Elizabeth Huelsman; Landon Ipson; Anastasia Johnston; Mark Kovarik; Meredith Krimmel; Nikitia Marshall; Angie Nordstrum; Sonya North; Christopher Rippy; Lee Seltzer; Joy Shepard; Kenneth Steinhauser; April Sumner; Annette Sutorik; Stacee Svites; Linda Wagner; Jennifer Walton; Donna Wemple; Lorraine Wright; and Local 282 Welfare Trust Fund.

[4]     As defined in the Settlement Agreement, the "Other Actions" include additional actions pending before this Court, entitled *Ipson v. Viatris Inc.*, No. 2:21-cv-02556-DDC-TJJ (D. Kan.); *Gill v. Viatris Inc.*, No. 2:21-cv-02534-DDC-TJJ (D. Kan.); *Dvorak v. Viatris Inc.*, No. 2:21-cv-02561-DDC-TJJ (D. Kan.); and *Sumner v. Viatris Inc.*, No. 2:21-cv-02555-DDC-TJJ (D. Kan.). Although settlement of the Other Actions is not subject to court approval, the Settling Parties have agreed that Plaintiffs will dismiss the Other Actions with prejudice as a condition of the Settlement.

success for the Class. And, as the Court is aware, the work and persistence of Class Plaintiffs and their counsel achieved these results.

The Mylan Settlement is substantially similar to the court-approved Pfizer Settlement. In many respects, the arguments supporting preliminary approval here echo those in Plaintiffs' papers seeking approval of the Pfizer Settlement. The Mylan Settlement satisfies the standards for preliminary approval under Rule 23 for the same reasons as with the Pfizer Settlement.

The Mylan Settlement is the result of well-informed, arm's-length negotiations between highly-experienced counsel possessing a thorough understanding of the strengths and weaknesses of the claims at issue due to extensive investigation, significant discovery, numerous rulings from the Court, and expert analysis. Considering the value of the proposed Settlement, in light of the costs and risks of further litigation, trial, and appeal, the Settlement provides an immediate and equitable result for the certified Class. The Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and Tenth Circuit precedent. Class Counsel's proposed form and method of providing notice of the Settlement to certified Class Members builds on the success of the notice program the Court approved in the Pfizer Settlement, with additional information clarifying that any Class Member who already submitted a claim pursuant to the Pfizer Settlement will automatically be eligible to receive a payment from the Mylan Settlement without the need to file an additional claim form. Here, too, the notice program satisfies the requirements of due process, as well as the conditions set forth in Rules 23(c) and (e). And just as in the Pfizer Settlement, because Class Counsel's initial class certification notice program surpassed the requirements of due process and Rule 23(c) in adequacy of class notice, sufficiency and clarity of exclusion language and opportunity, and overall reasonableness (ECF No. 2240), no additional exclusion opportunity is required by due process, nor warranted under Rule 23(e).

Accordingly, Plaintiffs respectfully request that the Court enter the Settling Parties' agreed-upon Preliminary Approval Order, submitted to chambers in Word format pursuant to the Local Rules and attached as Exhibit A to the Settlement Agreement (Exhibit 1 hereto). That Order will:

1.     Preliminarily approve the terms of the Settlement as set forth in the Settlement Agreement;

2.     Approve the form and content of the Notice of Proposed Settlement of Class Action ("Notice"), Proof of Claim Forms, and Summary Notice (also known as Short-Form Notice) attached as Exhibits B-D to the Settlement Agreement, as well as the appointment of A.B. Data Ltd. as Settlement Administrator;

3.     Find that the procedures for distribution and publication of the Notice and Summary Notice in the manner and form set forth in the Declaration of Eric Schachter of A.B. Data, Ltd. in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement with the Mylan Defendants ("Schachter Decl."), attached as Exhibit 2 hereto, constitute the best practicable notice under the circumstances and comply with the notice requirements of due process and Rule 23;

4.     Set a Hearing on Final Approval of Settlement, Plan of Allocation, Attorneys' Fees, Expenses, and Service Awards ("Final Fairness Hearing") and associated deadlines in anticipation of that hearing; and

5.     Provide such other related relief as is necessary to carry out the Settlement, as set forth in the Preliminary Approval Order, including a stay of proceedings pending a final determination as to whether the Settlement should be approved.

## II.      SUMMARY OF THE ACTION

In 2016, various putative class action lawsuits were filed against both Mylan and Pfizer[5] "involv[ing] allegations of anticompetitive conduct or unfair methods of competition" with respect to the EpiPen, an epinephrine auto-injector used in the emergency treatment of anaphylaxis. ECF No. 1 at 1. These cases were transferred and/or centralized by the Judicial Panel on Multidistrict Litigation into MDL No. 2785, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, No. 17-md-2785, and transferred to the United States District Court in the District of Kansas before the Honorable Daniel D. Crabtree (referred to herein as the "Litigation") on August 4, 2017.  ECF No. 1.

On September 12, 2017, the Court appointed Co-Lead Counsel and approved Plaintiffs' proposed organizational structure, including Liaison Counsel and a Steering Committee. ECF No. 40. The Court has since substituted a member of the Steering Committee (ECF No. 2111) and added an additional Co-Lead Counsel (ECF No. 2018).

On October 17, 2017, Plaintiffs filed a Consolidated Class Action Complaint ("Complaint") stating claims for violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, certain federal and state antitrust laws, and other causes of action. Complaint  (ECF No. 60) & Pretrial Order (ECF No. 2169). These claims arose from allegedly supracompetitive pricing of the EpiPen and related conduct. *See In re (Epinephrine Injection, USP) EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1282 (D. Kan. 2018) (explaining that the Complaint alleged "a pricing scheme" that centered on EpiPen price increases).

---

[5]      Pfizer, Inc., Meridian Medical Technologies, Inc., and King Pharmaceuticals, Inc. (n/k/a King Pharmaceuticals LLC) (collectively, "Pfizer"or the "Pfizer Defendants" and together with Mylan, the "Defendants").

Subsequently, Defendants filed Motions to Dismiss the Complaint, which the Court granted in part and denied in part on August 20, 2018. ECF No. 896. Defendants answered the Complaint, denying all remaining allegations. Plaintiffs then moved for class certification under Rule 23(b)(3). On February 27, 2020, the Court granted in part and denied in part Plaintiffs' motion for class certification and certified a nationwide RICO Class and a State Antitrust Class under Rule 23(b)(3). ECF No. 2018. The Court also appointed Warren T. Burns, Paul J. Geller, Elizabeth Pritzker, Lynn Lincoln Sarko, and Rex A. Sharp as Co-Lead Counsel for the certified Class. Defendants then filed a Rule 23(f) petition for review of that decision with the Tenth Circuit on March 12, 2020, and the Tenth Circuit denied Rule 23(f) review on May 26, 2020.  ECF Nos. 2035, 2071. On October 13, 2020, the Court approved the appointment of A.B. Data, Ltd. to provide notice to the certified Class and approved the form and manner of that notice, which commenced on November 1, 2020, and ended on January 15, 2021.

During the pendency of the Action, Plaintiffs engaged in substantial discovery that involved the Defendants, Plaintiffs, and numerous third parties. This discovery resulted in the production of over 1.75 million documents (totaling over 11 million pages) and 158 depositions, including those of Defendants, Plaintiffs, third parties, and experts. Plaintiffs also engaged in substantial expert discovery, including consulting with and preparing expert witnesses, preparing class certification and merits expert reports, and vigorously defending many *Daubert* motions that challenged their experts at both the class certification and merits stages. From October 2019 to February 2020, the parties served over one dozen expert reports on the merits of their respective claims and defenses in the Action.

On July 15, 2020, Defendants moved for summary judgment and filed *Daubert* motions to strike Plaintiffs' experts in whole or in part. ECF Nos. 2133, 2134, 2135, 2136, 2141, 2148, 2151, 2156. On June 10, 2021, while Defendants' motions for summary judgment were pending, Plaintiffs

and the Pfizer Defendants agreed to settle the claims against Pfizer in the Action (the "Pfizer Settlement"). On November 17, 2021, the Court granted final approval of the Pfizer Settlement and entered a Final Judgment and Order of Dismissal with Prejudice Under Fed. R. Civ. P. 54(b) for the Pfizer Defendants Only (ECF No. 2507).

On June 23, 2021, the Court entered Memoranda and Orders resolving the motions for summary judgment and *Daubert* motions as to Mylan. The Court denied Mylan's motion for summary judgment as to the Plaintiffs' generic delay state antitrust claims, but granted Mylan's motion for summary judgment as to Plaintiffs' branded exclusion antitrust claims and RICO claims. The Court also granted in part and denied in part Mylan's *Daubert* motions.  ECF Nos. 2380, 2381. The summary judgment order dismissed the claims of plaintiffs Landon Ipson, Michael Gill, Donna Dvorak, and April Sumner, who then subsequently sued the Mylan Defendants in the Other Actions for violations of certain state antitrust laws and other federal and state laws, as delineated in their respective complaints, which were centralized into *In re EpiPen* MDL. *See* ECF Nos. 2504, 2505.

Trial in this Action was rescheduled multiple times due to COVID-19-related and other concerns. Most recently, trial was set to commence on February 22, 2022, based on the Pretrial Order dated July 17, 2020 (ECF No. 2169), later modified with a Trial Order entered on January 12, 2022 (ECF No. 2562).

As the trial date approached, Plaintiffs and the Mylan Defendants engaged in settlement negotiations. Plaintiffs subsequently agreed to settle all claims brought in or related to the Action and Other Actions against the Mylan Defendants under the terms memorialized in the Settlement Agreement.

## III.   TERMS OF THE SETTLEMENT

The Settlement Agreement, attached as Exhibit 1 hereto, provides that the Mylan Defendants will deposit $5 million of the Settlement Amount into an Escrow Account within five

business days from the District Court's order granting preliminary approval. Settlement Agreement, ¶ 2.1.  The remainder of the Settlement Amount will be deposited by the later of July 1, 2022 or five calendar days before the date of the Fairness Hearing. *Id.*  The cost of settlement administration, including the costs of notice to the Class, taxes, and tax expenses, will be funded by the Settlement Fund (*id.*, ¶¶ 2.7, 2.8), which consists of the Settlement Amount, plus all interest and accretions thereto. *Id.*, ¶ 1.38.  The Settlement Agreement also provides for a Settlement Administrator. *Id.*, ¶ 1.36. Class Counsel propose that the Court appoint A.B. Data, Ltd. to serve as the Settlement Administrator.  The Court previously approved A.B. Data to provide notice to the Class following class certification and appointed it as the settlement administrator for the Pfizer Settlement. A.B. Data has fulfilled its responsibilities to date, has the requisite expertise, experience and capabilities, and is fully familiar with the facts of this case and the notice program that will be required here to comport with Rule 23 and due process. The proposed notice plan is discussed below and in the accompanying Schachter Declaration. *See* Exhibit 2.

In summary, Plaintiffs and A.B. Data propose a notice program that is substantially similar to the Court-approved notice programs used successfully to provide notice of pendency of the Action and the Pfizer Settlement to the certified Class. Consistent with the Court's previous findings (ECF Nos. 2240, 2401, 2506), the proposed notice program also satisfies the requirements of Rule 23 and due process. It includes: (i) individual notice by email or mail to all Class Members who can reasonably be located; (ii) publication notice in a national publication likely to be read by Class Members; (iii) digital media advertisements posted on websites likely to be viewed by Class Members; (iv) a press release to be widely disseminated; (v) a settlement website that will contain information about the Litigation and the Settlement, as well as all important Settlement documents; and (vi) a toll-free phone number and call center to field inquiries. The Settlement website will allow Class Members to file their claims electronically. *See* Schachter Declaration, *passim*.

The Notice (Settlement Agreement, Exhibit B) explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim and pursuant to the proposed Plan of Allocation. The Notice explains that any Class Member who already submitted a claim pursuant to the Pfizer Settlement will automatically be eligible to receive a payment from the Mylan Settlement without the need to file an additional claim form. The Notice also advises Class Members of: (i) Class Counsel's application for an award of attorneys' fees and expenses, as well as Plaintiffs' application for a service award in connection with their representation of the certified Class; (ii) the procedures for objecting to the Settlement, the Plan of Allocation, Class Counsel's request for attorneys' fees and expenses, and/or Plaintiffs' application for a service award; and (iii) the date and time for the Fairness Hearing. Notice (Settlement Agreement, Exhibit B) at 4, 5, 12-13, 15-16.

The Plan of Allocation, attached as Exhibit 3 hereto, and that is substantially similar to the Plan of Allocation the Court approved in the Pfizer Settlement, will create two pools of funds from the Net Settlement Fund, one for individual consumers and one for third-party payors. The allocation of funds as between the two pools is based on the work done by Plaintiffs' experts and tracks, as a percentage, the relative damages allegedly suffered by individual consumers and third-party payors as calculated in the Rebuttal Merits Expert Report of Professor Meredith Rosenthal (ECF No. 2216-2). Within each pool, funds will be distributed on a *pro rata* basis to all eligible Class Members who file a timely and valid Proof of Claim. Funds remaining in one pool will spill-over to the other pool in certain circumstances. Plaintiffs anticipate that all funds will be distributed to Class Members pursuant to the Plan of Allocation.[6] There is no right of reversion under the

---

[6]     Class Counsel anticipate that, under the Plan of Allocation's distribution terms, there will be no remaining funds for *cy pres* distribution.  If there is any remaining balance in the Net Settlement Fund after the initial distribution—*e.g.* due to uncashed checks—the Settlement

Settlement and under no circumstances will any portion of the Settlement Amount be returned to the Mylan Defendants once the Settlement becomes final.

Under the terms of the Settlement, the Mylan Defendants expressly disclaim and deny any wrongdoing or liability whatsoever.  In exchange for the benefits provided under the Settlement Agreement, Class Members will release the Mylan Defendants as provided for in Paragraphs 1.28, 4.1 & 4.2 of the Settlement Agreement. The Settling Parties have also agreed that, in the event that the Court permits a second opportunity to opt out of the Class, the Parties will meet and confer to determine mutually-agreeable terms to govern the second opt out. Settlement Agreement ¶ 8.1; *see also id.* ¶ 2.10(c).

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Court Should Grant Preliminary Approval of the Proposed Settlement.

Settlement is strongly favored as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. State of Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972).  This is particularly true in large, complex class actions such as the current case. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Under Rule 23(e), the trial court must approve a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). The procedure for review of a

---

Administrator will reallocate such balance among Class Members pursuant to the terms of the Plan of Allocation. Any funds remaining for *cy pres* distribution should therefore be *de minimis*, existing only if a Class Member does not cash their check or otherwise deposit or accept their distribution after submitting a claim, *and* after additional distributions to qualifying claimants.

proposed class action settlement is a well-established two-step process. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see Manual for Complex Litigation* ("*Manual*"), §13.14 (4th ed. 2004). First, the court conducts a preliminary approval analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). Second, after the court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard at a final fairness hearing where the court considers the merits of the settlement to determine if it should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675; *accord*, 4 William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*"), §13.10 (5th ed. 2021).

Through this Preliminary Approval Motion, Plaintiffs request the Court take the first step in this two-step process: granting preliminary approval. Preliminary approval should be granted if "the proposed settlement was 'neither illegal nor collusive and is within the range of possible approval.'" *Newberg*, §13.10; *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (Lungstrum, J.) (same). Although "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be *preliminarily* approved. *In re Motor Fuel*, 258 F.R.D. at 675-76, 680 ("While the Court will consider these factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.").

## B.   Standards for Preliminary Approval of a Proposed Settlement.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure the inquiry at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(2)(B). Rule 23(e)(2) provides that a class action settlement may be approved by the court "only after a

hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In

deciding whether to approve a class action settlement, courts should consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Also, in deciding whether a settlement is "fair, reasonable, and adequate," courts in the

Tenth Circuit traditionally consider whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*In re (Epinephrine Injection, USP) EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-

DDC, 2021 WL 5369798, at *1 (D. Kan. Nov. 17, 2021); *Syngenta*, 2018 WL 1726345, at *2 (citing

*Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)). Because the Tenth Circuit's

additional factors "largely overlap" with the Rule 23(e)(2) factors, "with only the fourth factor not

being subsumed" into it, courts in this District now "consider[] the Rule 23(e)(2) factors as the main

tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's factors.

*Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

As discussed below, the proposed Settlement for $264 million in cash easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

### C.     The Settlement Satisfies the Rule 23(e)(2) Factors.

####       1.     Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class.

The adequacy of representation requirement is met when the representative plaintiffs' "interests do not conflict with those of the class members" and the representatives and their counsel "prosecute the action vigorously." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221, 231 (D. Kan. 2010) (citations omitted). As the Court found in its order granting final approval of the Pfizer Settlement, Class Plaintiffs share the same interests and types of alleged injuries as the absent Class Members. *In re EpiPen*, 2021 WL 5369798 at *2. Class Plaintiffs have participated in extensive discovery and adequately represented and protected the interests of the Class. *Id.*

Co-Lead Counsel also have adequately represented the certified Class as required by Rule 23(e)(2)(A). Prior to reaching the Settlement, Co-Lead Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with numerous experts. Co-Lead Counsel vigorously prosecuted the Action by, among other activities: (i) investigating the relevant factual events; (ii) drafting the detailed, 400-page Complaint; (iii) successfully in part opposing Defendants' motions to dismiss; (iv) engaging in extensive document and written discovery, through both coordinated and non-coordinated phases, including reviewing over 11 million pages of documents produced by Defendants and third parties; (v) successfully in part moving for class certification supported by four expert reports; (vi) successfully

opposing Defendants' petition to appeal the same pursuant to Rule 23(f); (vii) vigorously opposing summary judgment and *Daubert* motions, and achieving partial victories; (vii) preparing for a month-long trial; and (viii) at the same time, engaging in settlement negotiations with the Mylan Defendants' counsel. As a result of these extensive efforts, spanning thousands of hours of work and several years, Co-Lead Counsel have achieved a significant all-cash Settlement of $264 million with the Mylan Defendants, which will provide immediate relief to the certified Class.

Each of the Co-Lead Counsel (Elizabeth C. Pritzker of Pritzker Levine LLP, Paul J. Geller of Robbins Geller Rudman & Dowd LLP, Rex A. Sharp of Sharp Law LLP, Warren T. Burns of Burns Charest LLP, and Lynn Lincoln Sarko of Keller Rohrback L.L.P.) has significant experience prosecuting complex antitrust and RICO class actions.  This Court, *see In re EpiPen*, 2021 WL 5369798 at *5, and courts around the country have recognized the expertise and ability of Co-Lead Counsel to litigate effectively complex class actions.[7]

---

[7]      *See, e.g.*, *Harris v. Chevron U.S.A., Inc.*, No. 6:19-cv-00355-SPS, 2020 WL 8187464, at *4 (E.D. Okla. Feb. 27, 2020) (noting that Sharp Law LLP is among the "[f]ew law firms [who] are willing to litigate cases requiring review of tens of thousands of pages of detailed contracts and accounting records, advance payment of hundreds of thousands of dollars in consultants and expert witness fees, and investment of substantial time, effort, and other expenses throughout an unknown number of years to prosecute a case with high risk, both at the trial and appellate levels"); *In re SandRidge Energy, Inc. Sec. Litig.*, No. CIV-12-1341-G, 2019 WL 4752268, at *9 (W.D. Okla. Sept. 30, 2019) ("the attorneys of Robbins Geller are experienced class-action litigators and are sufficiently committed to this litigation"); *In re WorldCom, Inc. ERISA Litig.*, No. Civ. 02-4816 (DLC), 2004 WL 2338151 at *10 (S.D.N.Y. 2004) (regarding Lynn Sarko's work as lead counsel, Judge Cote stated, "Lead Counsel has performed an important public service in this action and has done so efficiently and with integrity . . . . [Keller Rohrback] has also worked creatively and diligently to obtain a settlement from WorldCom in the context of complex and difficult legal questions"); The Hon. H. Russel Holland, D. Alaska, Presentation to Alaska Chapter of the Federal Bar Association, Nov. 12, 2015 (regarding Lynn Sarko's administration of two court-supervised $1.128 billion *Exxon* settlement funds, Judge Holland observed: "[T]he money . . . . went into the Exxon Qualified Settlement Fund that was administered by Lynn Sarko and his law firm in Seattle. Those guys did a superb job. And it was a huge effort to notify all potential claimants, to get the claims documented, to evaluate the documentation, and then to apply the sharing concepts to the individual losses. . . . I can't imagine that they could possibly have done a better job."); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017

To support a finding of adequate representation, the parties must "[b]alanc[e] the entirety of the case with the ultimate resolution." *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020). Here, the collective tenacity and sophistication of Plaintiffs and Class Counsel were instrumental in achieving the substantial $264 million Settlement, which will provide significant and immediate relief to the certified Class.

### 2. The Proposed Settlement Was Negotiated at Arm's Length.

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by courts in the Tenth Circuit and assesses whether "'the settlement was fairly and honestly negotiated.'" *Syngenta*, 2018 WL 1726345, at *2. A settlement is considered to be fairly and honestly negotiated when reached after arm's-length negotiations by experienced counsel. *See In re Urethane Antitrust Litig.*, No. 04-1616-JWL, ECF No. 3274, at 2 (D. Kan. July 29, 2016) (settlement is "fairly and honestly negotiated" when it results from "negotiations which were undertaken in good faith by counsel with significant experience litigating antitrust class actions"); *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (finding this factor satisfied where the settlement was reached "by experienced counsel for the class").

Here, the Settlement is the product of vigorous negotiations between the Settling Parties, advised by their sophisticated counsel, who possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective

---

WL 6040065, at *10 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (noting that Pritzker Levine, as one of three firms representing the certified student-athlete class, is "among the most well-respected class action litigation firms in the country, as this Court has witnessed in numerous cases. And the efficiency with which plaintiffs' counsel achieved such exceptional results is laudable because it benefits the classes.") (footnote omitted); *Kjessler v. Zaappaaz, Inc.*, No. 4:18-cv-430, 2018 WL 8755737, at *5–6 (S.D. Tex. Aug. 31, 2018) (appointing Burns Charest as sole interim lead class counsel based on the firm's "significant experience" in class action litigation).

cases. Counsel participated in numerous meetings and phone calls where they exchanged their respective, opposing views regarding the merits of Plaintiffs' claims, issues for appeal, and the terms of the Settlement. The relevant legal and factual issues were fully developed and ready for trial. Additionally, Plaintiffs had previously worked with a mediator to settle similar claims with the Pfizer Defendants, which provided valuable insight into the value of the claims as well as the strengths and weaknesses of their case. As a result, the Settling Parties were well prepared for the serious negotiations that led to the Settlement and were well-informed of the respective parties' arguments. *See In re Motor Fuel*, 258 F.R.D. at 675-76. And the $264 million settlement amount ($609 million total when combined with the $345 million Pfizer Settlement), by any measure, is an outstanding result. Antitrust class action settlements reached prior to trial typically settle for a fraction of the alleged damages. *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. CIV. 98-5055, 2004 WL 1221350, at *4 (E.D. Pa. June 2, 2004) (collecting cases in which courts have approved settlements of 5.35% to 28% of potential damages).

In sum, the parties' negotiations and the Settlement's terms demonstrate that the Settlement was fairly and honestly negotiated.

### 3.   The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal.

In assessing the Settlement, the Court should also balance the benefits afforded to the certified Class, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with the Action. *See* Rule 23(e)(2)(C)(i). This third factor is based on the premise that the Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008). This consideration largely overlaps with the second

("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt'") and third factors ("'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'") traditionally considered by courts in the Tenth Circuit. *Chavez Rodriguez*, 2020 WL 3288059, at \*2-\*3. Thus, courts consider these factors to be "subsumed under Rule 23's requirement." *Id.*

### 4.   Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt.

The presence of serious legal and factual questions concerning the outcome of the Litigation weighs heavily in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). "Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas*, 234 F.R.D. at 693-94. The presence of questions of law and fact "tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely, LLC*, 2008 WL 4816510, at \*13; *see also Tennille*, 785 F.3d at 435 (affirming final approval of settlement where "serious disputed legal issues" rendered "the outcome of th[e] litigation . . . uncertain and further litigation would have been costly").

The current proposed Settlement notwithstanding, there remain numerous factual and legal issues on which the Settling Parties still intensely disagree. The Mylan Defendants deny that they have engaged in any wrongdoing as alleged by Plaintiffs, deny any liability whatsoever for any of the claims alleged by Plaintiffs, and deny that Plaintiffs have suffered any injuries or damages.

Conversely, Plaintiffs have advanced numerous complex legal and factual issues under federal and state antitrust laws, federal RICO statutes, and other causes of action, with certain state antirust claims proceeding to trial and the other claims preserved for appeal. The issues on which the Settling Parties disagree are many, but include: (1) whether any of the Mylan Defendants engaged in conduct that would give rise to any liability to Plaintiffs under the RICO statute or certain state antitrust laws; (2) whether the Mylan Defendants have valid defenses to any such claims of liability; (3) whether any conduct by the Mylan Defendants caused Plaintiffs any injuries; (4) the amount of damages, if any, that Plaintiffs suffered by reason of the Mylan Defendants' alleged wrongdoing, as well as the methodology for estimating any such damages; and (5) whether the Court properly certified the Class. Had the parties not settled this Action and the Other Actions, the Court and/or a jury would ultimately be required to decide these issues, placing the ultimate outcome in doubt. While Plaintiffs believe their claims would be borne out by the evidence presented at trial, they recognize that there are significant hurdles to proving liability and damages in trial and prevailing in any appeals.

### 5.    Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation.

Considering the risks associated with continued litigation, as discussed above, the immediate, substantial relief offered by the Settlement outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future." *Syngenta*, 2018 WL 1726345, at *2; *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1244 (D.N.M. 2012) ("'[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)).

Further, this Action has already been pending for nearly five years in this Court, and the Settling Parties and the Court would expend significant additional time, resources, and costs to

proceed to trial, and the inevitable appeals likely extending years into the future. *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial"); *Lucas*, 234 F.R.D. at 694 ("If this case were to be litigated, in all probability it would be many years before it was resolved."). Considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation, Plaintiffs could receive an amount significantly less than the Settlement Amount, or nothing at all, for their claims against Mylan.

"By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief" now. *Lucas*, 234 F.R.D. at 694; *see also McNeely*, 2008 WL 4816510, at *13 ("The class . . . is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."). "[The] immediate recovery in this case outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. Aug. 10, 1976) ("In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'"); *accord Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014), *appeal dismissed*, 809 F.3d 555 (10th Cir. 2015). Thus, the $264 million immediate recovery, particularly when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 6.   The Proposed Method for Distributing Relief Is Effective.

As demonstrated below, the proposed notice program and claims administration process are effective and were previously approved by the Court for the Pfizer Settlement. The settlement notice plan involves individual notice by email or First-Class Mail to all Class Members who can be

identified with reasonable effort, supplemented by various forms of internet and publication notice, targeted to reach likely EpiPen purchasers. *See* Schachter Declaration, ¶¶ 7-18 & Exhibit B thereto (Notice Plan). In addition, a case-designated website has been created where settlement-related and other key documents will be posted, including the Settlement Agreement, Notices, Proofs of Claim (Claim Forms), and Preliminary Approval Order. *Id.* ¶¶ 7, 19. The Settlement website will allow for Proof of Claim forms to be filed electronically. The claims process will be streamlined even further because Class Members who already submitted claims pursuant to the Pfizer Settlement will automatically be eligible to receive payments from the Mylan Settlement without the need to file an additional claim form.

Plaintiffs propose a fair and orderly claims administration process in which Class Members who wish to participate in the Settlement will complete and submit Proofs of Claim in accordance with the instructions contained therein. *See id.* ¶¶ 20-21; Plan of Allocation (Exhibit 3). The Settlement Administrator will distribute the Net Settlement Fund to Authorized Claimants on a *pro rata* basis under a Court-approved Plan of Allocation. *See* Plan of Allocation (Exhibit 3). The Plan of Allocation proposed here was prepared with information provided by Plaintiffs' experts and in consultation with A.B. Data.

### 7.    Attorneys' Fees and Expenses.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Notice provides that Class Counsel will apply to the Court for an award of attorneys' fees in an amount up to one-third of the Settlement Amount, plus payment of Plaintiffs' counsel's expenses incurred in connection with this Litigation, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.

Class Counsel's anticipated fee request is the same percentage as the fee the Court approved in the Pfizer Settlement and well within the range that other courts in this District have approved in

complex class actions. *See In re EpiPen,* 2021 WL 5369798, at *4; ECF No. 2435-6, Table 1 (listing nine fee awards of one third or greater within the District of Kansas for class recoveries ranging from $16.9 million to $1.51 billion).

With respect to the timing of payment, the Settlement Agreement provides that any Plaintiffs' attorneys' fees and expenses, as awarded by the Court, shall be paid to Class Counsel within ten (10) days of the Court executing the Judgment and an order awarding such fees and expenses, subject to Class Counsel's several obligations to make appropriate refunds or repayments to the Settlement Fund plus interest thereon if, and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or expense award is lowered or the Settlement is disapproved by a final order not subject to final review. Settlement Agreement, ¶¶ 6.1-6.3; *see Syngenta*, 2021 WL 102819, at *4 (D. Kan. Jan. 12, 2021) (approving immediate payment of plaintiff counsel attorneys' fees and costs) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020)) (finding immediate payment provisions have generally been approved by federal courts); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998); *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) ("The quick-pay provision does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid."); *In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:08-WP-6500, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) ("[q]uick-pay clauses substantially reduce the leverage a professional objector can wield"); Bolch Jud. Inst., Guidelines and Best Practices: Implementing 2018 Amendments to Rule

23 Class Action Settlement Provisions 21 (2018), (suggesting that the parties' efforts to discourage bad-faith objectors "include a 'quick-pay clause'").[8]

### 8.    The Settling Parties Have No Additional Agreement.

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements.  The Settling Parties have no additional agreements.

### 9.    Class Members Are Treated Equitably.

The final factor, Rule 23(e)(2)(D), looks at whether certified Class Members are treated equitably. The proposed Plan of Allocation (Exhibit 3) is substantively the same as the one approved by the Court in the Pfizer Settlement. As the Court found, this Plan of Allocation treats Class Members equitably.  *In re EpiPen*, 2021 WL 5369798, at *10-11. The Net Settlement Fund will be allocated based on estimated damages as alleged and calculated in the Rebuttal Merits Expert Report of Professor Meredith Rosenthal (ECF No. 2216-2) and then distributed on a *pro rata* basis to Class Members based on total amounts paid for EpiPens during the Class Period. Two separate pools are established for TPPs and individual consumers because of their differing claim rates. The Plan of Allocation provides for a spill-over from one pool to the other if one pool exhausts but the other does not. Therefore, all Class Members are treated alike in receiving their *pro rata* share of the Settlement.

### D.    The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit.

The final, additional factor courts in the Tenth Circuit consider is "'the judgment of the parties that the settlement is fair and reasonable.'" *Chavez Rodriguez*, 2020 WL 3288059, at *2.  In analyzing this factor, courts recognize that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'" *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-

---

[8] *Available at:* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1003&context=bolch.

NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019); *Hapka v. CareCentrix, Inc*., No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."); *see also Crocs*, 306 F.R.D. at 690 (finding that, even without formal discovery, the parties were able to give adequate consideration to the strengths and weaknesses of their respective claims).

Class Counsel—all senior attorneys at law firms with considerable experience in complex antitrust and civil RICO class actions—only agreed to settle this Litigation after extensive investigation, written discovery, motion practice, deposition testimony, data analyses, substantial trial preparation, and rigorous arm's-length negotiations. Additionally, as noted above, Plaintiffs and their Counsel have compared the recovery the certified Class will receive from the Settlement against the risks, delays, and uncertainties of continued litigation and appeals. Plaintiffs and their Counsel believe the Settlement is fair, adequate, and reasonable and should be approved.  The Mylan Defendants likewise believe the Settlement should be approved. Because the above factors weigh in favor of the Settlement, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## V.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

### A.   The Court Should Preliminarily Approve the Proposed Notice of Settlement.

Rule 23(c)(2)(B) requires that notice in a Rule 23(b)(3) class action constitute "the best notice . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also, Fager*, 854 F.3d 1167, 1170 (10th Cir. 2016) (same); *Tennille*, 785 F.3d at 436 (same). "'The hallmark of the notice inquiry . . . is reasonableness.'" *Lucas*, 234 F.R.D. at 696.

Plaintiffs have submitted to the Court for approval the Notice and Summary Notice that will be provided to the certified Class and are substantially similar to those the Court approved in the Pfizer Settlement. In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Class Members about the Action, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notice clearly describes: (i) the nature of the (proposed) Settlement and the (proposed) Plan of Allocation; (ii) the nature and extent of the release of claims; (iii) Class Counsel's intent to request attorneys' fees and expenses; (iv) the method for submitting a Proof of Claim; (v) the procedure and timing for objecting to the Settlement; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a toll-free telephone number, email address, and a Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them a fair opportunity to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. As in the Pfizer Settlement, the Court should approve the Notices and the manner through which they will be delivered and communicated to the certified Class.

**B.     An Additional Settlement Opt-Out Is Neither Required By Due Process Nor Warranted Under Rule 23(e).**

The initial class notice in this Litigation met and surpassed the constitutional standards for due process and all the requirements of Rule 23, and there has been no change in information

available to the certified Class since the first notice that warrants an additional, discretionary opt-out at settlement. *See* ECF No. 2240 (order approving notice). From start to finish of the class certification notice process, Class Counsel and A.B. Data administered a comprehensive notice program that included: acquiring expert input, using best practices recommended by the Federal Judicial Center, and, at every stage, coordinating the notice program with the United States District Court for the District of Kansas.

As required by due process and Rule 23(c)(2)(B), the initial class notice was "the best practicable [notice], 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class Counsel made every reasonable effort to identify and deliver direct, individual notice to all Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). And to the greatest extent practicable under the circumstances, Class Counsel apprised all interested parties who could be contacted with reasonable effort of the impending Litigation, their rights to participate in or be excluded from the Action, and the legal effect(s) of either choice.

Not only did the exclusion language within the notice sufficiently inform Class Members of their right to be excluded from the Class (and the method and deadline for doing so in clear, concise, conspicuous, and plainly written language, so as to be easily understood by the average class member) – it did so repeatedly throughout the notice. *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1120 (9th Cir. 2018) (reviewing the sufficiency of previous class notice to satisfy due process related to class settlement); *see also Mullane*, 339 U.S. at 315 (holding that the measure for sufficiency of notice is reasonableness). The explicit exclusion language clearly informed Class Members of the legal consequences of either remaining in or opting out of the Action and expressly stated the possible outcomes of the Action included trial or settlement. *See* ECF No. 2209 (at 2209-

2 (Short Form Notice) & 2209-3 (Notice)) & ECF No. 2240 (order approving notices). Class Members were given reasonable opportunity to opt-out within seventy-five days of issuance of the notice, from November 1, 2020, until January 15, 2021. *Manual*, §21.321 ("Courts usually establish a period of thirty to sixty days (or longer if appropriate) following mailing or publication of the notice for class members to opt out."). Therefore, as part of the Settlement Agreement, the Settling Parties have expressly agreed not to provide a second opt-out opportunity.

Allowing an unnecessary second opt-out opportunity could disrupt the Settlement Agreement the parties have carefully negotiated, putting at risk the $264 million recovery for the Class. Courts consistently find that fair settlements do not require a second opt-out provision. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 634-35 (9th Cir. 1982); *Low*, 881 F.3d at 1121-22; *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1306 (S.D. Cal. 2017) (concluding that the initial notice and exclusion opportunity "undoubtedly" met the due process requirements); *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *32 (D.N.M. February 27, 2013) (noting "the rule defers to the district court's discretion and does not proscribe that a fair settlement must allow class members the opportunity to opt out") (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009)). "Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006); *see also, e.g.*, *Low*, 881 F.3d at 1121 ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. . . . [Plaintiff's] rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.").

Additionally, there are no factors warranting a discretionary opt-out at settlement under Rule 23(e)(4). The initial notice expressly conveyed to Class Members that possible outcomes of the Litigation included trial or settlement. The only relevant change in information available to Class Members since prior notice is that Plaintiffs and the Mylan Defendants have now agreed to a $264 million settlement, which, as noted, provides immediate and valuable relief to the Class. "Courts have rejected the suggestion that a second opt-out should be granted as a matter of course, even if the terms of the settlement change after the expiration of the initial opt-out period." 2 McLaughlin on Class Actions §6:21 (17th ed. 2020); *accord Lowery*, 2013 WL 1010384, at *42 (concluding that the change in circumstances of a more "significant recovery" at settlement than previously anticipated by the class weighed against providing an additional opt-out opportunity).

In rejecting the provision of a second opt-out period, multiple federal courts have noted that the Rule 23(c)(2) procedures for class certification provide absentee class members in a 23(b)(3) action with a choice: exclude themselves from the case or remain a party and be bound by the final judgment. This procedure "requires each absentee member to take affirmative action at the outset of the suit if he or she wishes to be excluded from the class." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977); *accord In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 325, 345-46 (E.D.N.Y. 2010) (concluding that "[i]f any class members wished to control the prosecution or settlement of their own claims, they could have opted out or sought to intervene after notice of pendency was given") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-115 (2d Cir. 2005)). These courts almost uniformly note the high cost to the settlement process at little benefit to objectors because the class members have had previous opportunities to opt-out. This was the court's reasoning in *In re MetLife Demutualization Litig.* when it declined to offer a second exclusion opportunity at settlement:

> Where, as here, a class action has been certified and class members have had a previous opportunity to request exclusion by opting out of the class, the court may afford individual class members a new opportunity to request exclusion, but it is not required to do so.   In the present cases there shall not be provided a second opportunity for exclusion.   The administration of any new exclusion procedures would be expensive.   The number of policyholders who would opt out now, after failing to exclude themselves previously, is likely to be minimal to the vanishing point.

689 F. Supp. 2d at 325; *accord In re Washington Mutual, Inc.*, No. 2:08-md-1919 MJP, 2015 WL 12803633, at *1 (W.D. Wash. June 22, 2015) (concluding that a second opt-out opportunity need not be provided "in light of the extensive notice program undertaken in connection with the earlier settlements, the ample opportunity provided to Class Members to request exclusion from the Class at that time, and the fact that there would be no potential benefit to any Class Member who opts out"). As the Second Circuit noted, the costs are potentially high for allowing objectors to demand additional opt-out periods after settlement agreements whenever there is a change of information from the last notice and opportunity for exclusion: "Requiring a second opt-out period as a blanket rule [on any changed information] would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached." *Denney*, 443 F.3d at 271.

Where, as here and in the Pfizer Settlement, the prior class notice was adequate, the explicit exclusion language therein was sufficient and reasonable, and the costs of providing an additional opt-out outweigh any potential benefits, courts have overwhelmingly approved settlement agreements that do not provide for an additional opt-out opportunity.[9] Plaintiffs and the Mylan

---

[9]    *See, e.g.*, *Low*, 881 F.3d at 1120-22 (weighing the benefit and fairness of the settlement as a whole and determining district court acted well within its discretion by approving the settlement without a second opt-out period); *Denney*, 443 F.3d at 271 ("Neither due process nor Rule 23(e)[(4)] requires…a second opt-out period whenever the final terms [of a settlement] change after the initial opt-out period."); *Wal-Mart*, 396 F.3d at 114 (holding that a single opt-out at certification of a settlement class was sufficient to protect a party's interest in the proceedings and right to be excluded); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289-90 (9th Cir. 1992) (holding that because class members were given an opportunity to opt out, notice of the proposed settlement, and

Defendants respectfully submit that no additional opt-out opportunity should be provided during notice to the Class for settlement purposes.

### C.   Appointment of A.B. Data to Serve as the Settlement Administrator Is Proper.

As with the Pfizer Settlement, Plaintiffs request that the Court appoint A.B. Data to serve as the Settlement Administrator with respect to the Settlement, which includes providing notice of the Settlement and administering the claims process and distribution of the Net Settlement Fund. A.B. Data is a highly experienced and well-qualified notice administrator (*see* Schachter Declaration at Exhibit A), and was appointed by the Court and successfully administered the class certification-stage notice, the Pfizer Settlement notice, and is currently administering the Pfizer Settlement. Class Counsel have worked favorably with A.B. Data and are confident in the firm's ability to continue the successful administration of notice and this Settlement, as well as the Pfizer Settlement.

---

the opportunity to object, no additional opt-out would be provided); *Officers for Just.*, 688 F.2d at 635 (finding "no authority of any kind suggesting that due process requires members of a Rule 23(b)(3) be given a second chance to opt out"); *Davis v. Abercrombie*, No. 11-00144 LEK-BMK, 2017 WL 2234175, at *9 (D. Haw. May 22, 2017) (rejecting plaintiff's argument that a second opt-out period is necessary to protect class members' due process rights or warranted under its discretionary powers); *Low*, 246 F. Supp. 3d at 1306 (concluding that the initial notice and exclusion opportunity "undoubtedly" met the due process requirements); *Lowery*, 2013 WL 1010384, at *42 (concluding that the parties arriving at more favorable terms in the final settlement than previously known or anticipated by class members *weighed against* the need for a late opt-out); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 344 (S.D.N.Y. 2005) *aff'd in part, vacated in part on other grounds, remanded to Denney*, 443 F.3d 253 (finding no further opt out opportunity was required when prior notice was "more than adequate, both procedurally and with respect to its content"). District courts have very rarely refused to approve a settlement agreement for lack of a second opt-out provision. Indeed, our research has only identified two such cases in the same federal district: the District of Maine. That court did so twice and for similar reasons of fairness, due process, and the efficient administration of justice within the context of conditions affecting class members at settlement that were significantly different than those anticipated at the initial opt-out opportunity. *See Dare v. Knox Cnty.*, 457 F. Supp. 2d 52 (D. Me. 2006); *see also Tardiff v. Knox Cnty.*, 567 F. Supp. 2d 201, 204, 206, 209-10 (D. Me. 2008) (applying the *Dare* Court's interpretation of liberal judicial discretion under Rule 23(e)(4)).

**D.  Appointment of Huntington Bank as Escrow Agent Is Proper.**

Plaintiffs request the Court appoint Huntington Bank ("Huntington") as Escrow Agent. Huntington is a well-known and highly-respected global bank providing consumers, corporations, governments and institutions with a broad range of financial services. Class Counsel in this case have worked favorably with Huntington for the Pfizer Settlement and in the past.  Based on Huntington's experience and familiarity with performing the services of an escrow agent, Class Counsel are confident Huntington will properly perform the duties of Escrow Agent as ordered by the Court.

**E.  Proposed Schedule of Settlement Events**

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the following proposed procedural schedule:

| DATE | EVENT |
|---|---|
| March 10, 2022 | Mylan provides Class Action Fairness Act Notice |
| March 11, 2022 at 9:30 am | Hearing on Preliminary Approval of Settlement |
| Five business days after entry of Preliminary Approval Order | Settlement Notice Program Begins |
| May 20, 2022 | Plaintiffs file Motion for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| June 8, 2022 | Deadline to file Comments/Objections |
| June 27, 2022 | Plaintiffs file Response to Objections for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| July 6, 2022 at 9:30 am | Hearing on Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |

**VI.  THE COURT SHOULD STAY PROCEEDINGS IN THE ACTION**

The Settling Parties further request that the Court stay all proceedings in the Action and Other Actions pending a final determination as to whether the Settlement should be approved, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement. Courts routinely stay proceedings pending final approval of settlement agreements in circumstances such as these. *See, e.g.*, Memorandum and Order at 19 (Lungstrum, J.), *Syngenta*,

No. 14-md-2591-JWL (D. Kan. April 10, 2018), ECF No. 3531; Order Preliminarily Approving Settlement at 6 (Lungstrum, J.), *In re Urethane Antitrust Litig.*, No. 04-md-1616-JWL (D. Kan. June 13, 2006), ECF No. 380; *Marcus v. Kansas Dep't of Revenue*, 206 F.R.D. 509, 514 (D. Kan. 2002) ("All further litigation of this proceeding is hereby stayed pending final determination of the acceptance of the settlement agreement at the fairness hearing."); *Albrecht v. Oasis Power, LLC*, No. 1:18-cv-1061, 2019 U.S. Dist. LEXIS 162876, at *19 (N.D. Ill. Sep. 24, 2019) ("Pending final determination of whether the Settlement should be approved, all discovery and all proceedings in the Litigation unrelated to the approval of the Settlement are stayed."); *In re Sony PS3 "Other OS" Litig.*, No. 10-cv-01811-YGR, 2017 WL 5598726, at *6 (N.D. Cal. Nov. 21, 2017) (same).

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' motion for preliminary approval and enter the agreed proposed Preliminary Approval Order, attached as Exhibit A to the Settlement Agreement and submitted in Word format herewith.

Respectfully submitted,

DATED: February 28, 2022                    SHARP LAW LLP

By: */s/ Rex A. Sharp*
REX A. SHARP
RYAN C. HUDSON
W. GREG WRIGHT
4820 West 75th Street
Prairie Village, KS  66208
Telephone:  913/901-0505
913/901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com
gwright@midwest-law.com

KELLER ROHRBACK L.L.P.
LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:  206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

KELLER ROHRBACK L.L.P.
ALISON E. CHASE
801 Garden Street, Suite 301
Santa Barbara, CA  93101
Telephone:  805/456-1496
805/456-1497 (fax)
achase@kellerrohrback.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
BRADLEY M. BEALL
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
bbeall@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN O. O'MARA
ARTHUR L. SHINGLER III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bomara@rgrdlaw.com
ashingler@rgrdlaw.com

PRITZKER LEVINE LLP
ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450
Emeryville, CA  94608
Telephone:  415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

BURNS CHAREST LLP
WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

*Co-Lead Counsel and Liaison Counsel for Class Plaintiffs*