# Exhibit 1

UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | ) ) ) ) | Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) |
| | ) | STIPULATION OF CLASS ACTION SETTLEMENT |
| This Document Relates To: | ) ) | |
| CONSUMER CLASS CASES. | ) ) ) | |

This Stipulation of Class Action Settlement, including all exhibits attached hereto (collectively, the "Settlement Agreement") is entered into as of February 27, 2022, by and between the Plaintiff Class Representatives (or "Plaintiffs," as defined below in ¶ 1.26), on behalf of themselves and as representatives of the Class (as defined below in ¶ 1.7), and Defendants Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., and Heather Bresch  (collectively, "Mylan"), and Viatris Inc., (collectively with Mylan, the "Mylan Defendants"). Together the Plaintiff Class Representatives, the Class, and the Mylan Defendants are referred to for purposes of this Settlement Agreement as the "Settling Parties."

## I.    THE LITIGATION

In 2016, numerous putative class action lawsuits were filed against both Mylan and the Pfizer Defendants[1] "involv[ing] allegations of anticompetitive conduct or unfair methods of competition" with respect to EpiPen Auto-Injector,[2] a spring-loaded injector that delivers a pre-measured and pre-loaded amount of epinephrine for the emergency treatment of anaphylaxis. ECF No. 1. These cases were transferred and/or centralized by the Judicial Panel on Multidistrict Litigation into MDL 2785, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices, and Antitrust Litigation*, No. 17-md-2785, in the District of Kansas before the Honorable Daniel D. Crabtree (referred to herein as "*In re EpiPen* MDL" or the "Action") on August 4, 2017. ECF No. 1. *In re EpiPen* MDL includes an end payor Class of consumer plaintiffs and third-party payors.

On September 12, 2017, the Court appointed Co-Lead Counsel for Plaintiffs, and approved an organizational structure, including Liaison Counsel and a Steering Committee. ECF No. 40.

---

[1]  Pfizer Inc., Meridian  Medical Technologies, Inc., and King Pharmaceuticals, Inc. (n/k/a King Pharmaceuticals LLC) (collectively, the "Pfizer Defendants" and with Mylan, "Defendants").

[2]   As used herein, "EpiPen" refers collectively to the EpiPen® Auto-Injector, EpiPen Jr® Auto-Injector, and the authorized generic versions of those products.

Since that time, the Court has substituted a member of the Steering Committee (ECF No. 2111) and added an additional Co-Lead Counsel (ECF No. 2018).

On October 17, 2017, Plaintiffs filed a Consolidated Class Action Complaint ("Complaint") (ECF No. 60) raising claims for violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, certain state and federal antitrust laws, and other causes of action as further identified and delineated in the Complaint and Pretrial Order (ECF No. 2169). All of these claims arose out of the alleged supracompetitive pricing of EpiPen products through alleged anticompetitive or other allegedly unlawful means. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1282 (D. Kan. 2018).

Defendants filed Motions to Dismiss the Consolidated Class Action Complaint, which the parties briefed, and which the Court granted in part and denied in part on August 20, 2018. Plaintiffs then moved for class certification under Federal Rule of Civil Procedure 23(b)(3). On February 27, 2020, the Court granted in part and denied in part Plaintiffs' motion for class certification and certified a nationwide RICO Class and a State Antitrust Class under Fed. R. Civ. P. 23(b)(3). The Court also appointed Warren T. Burns, Paul J. Geller, Lynn Lincoln Sarko, Elizabeth C. Pritzker, and Rex A. Sharp as Co-Lead Counsel for the certified Class. Defendants then filed a Rule 23(f) petition for review of that decision with the Tenth Circuit on March 12, 2020, which was denied on May 26, 2020.

Defendants moved for summary judgment on July 15, 2020, along with filing *Daubert* motions to strike Plaintiffs' experts in whole or in part. ECF Nos. 2133, 2134, 2135, 2136, 2148, 2141, 2151, 2156. On June 23, 2021, the Court entered a Memorandum and Order resolving the pending motions for summary judgment and *Daubert* motions, denying Mylan's motion for

summary judgment as to Plaintiffs' generic delay state antitrust claims, but granting Mylan's motion for summary judgment as to Plaintiffs' remaining claims, and granting in part and denying in part Mylan's *Daubert* motions. ECF Nos. 2380, 2381. The summary judgment order dismissed the claims of plaintiffs Landon Ipson, Michael Gill, Donna Dvorak, and April Sumner, who then subsequently sued the Mylan Defendants for violations of certain state antitrust laws and other federal and state laws, as further delineated in their respective complaints, which were centralized into *In re EpiPen* MDL, *see Ipson v. Viatris Inc.*, No. 2:21-cv-02556-DDC-TJJ (D. Kan.); *Gill v. Viatris Inc.*, No. 2:21-cv-02534-DDC-TJJ (D. Kan.); *Dvorak v. Viatris Inc.*, No. 2:21-cv-02561-DDC-TJJ (D. Kan.); *Sumner v. Viatris Inc.*, No. 2:21-cv-02555-DDC-TJJ (D. Kan.) (collectively, "Other Actions"); *see also* ECF Nos. 2504, 2505.

On November 17, 2021, the Court granted final approval to Plaintiff Class Representatives' settlement of the Action with the Pfizer Defendants, and entered a Final Judgment and Order of Dismissal with Prejudice Under Fed. R. Civ. P. 54(b) for the Pfizer Defendants only (ECF No. 2507).

Trial was set to commence in the Action against Mylan on February 22, 2022, based on the Pretrial Order dated July 17, 2020 (ECF No. 2169), later modified with a Trial Order entered on January 12, 2022 (ECF No. 2562).

The Plaintiffs subsequently agreed to settle the Action and Other Actions with the Mylan Defendants on the terms memorialized herein.

## II.     THE MYLAN DEFENDANTS DENY WRONGDOING AND LIABILITY

The Mylan Defendants expressly disclaim and deny any wrongdoing or liability whatsoever. The Mylan Defendants contend that the claims and allegations of wrongdoing or liability on their part, individually and collectively, by the Plaintiffs and the Class in the Action and Other Actions are without merit. The Mylan Defendants are settling the Action and Other

Actions solely to avoid the burden and expense of further litigation. It is expressly agreed that neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, is, may be construed as, or may be used as an admission by the Mylan Defendants of any fault, wrongdoing or liability whatsoever with respect to the subject matter of the Action and Other Actions.

## III.  PLAINTIFFS' CLAIMS AND THE BENEFITS OF THE SETTLEMENT

The Settling Parties believe that further prosecution and defense of the Action and Other Actions would be protracted and expensive and, having taken into account the uncertainty and risks inherent in any such litigation, have determined that it is desirable to compromise and settle all claims against the Mylan Defendants in the Action and Other Actions with respect to the Class described in this Settlement Agreement and to proceed to seek approval, implementation of, and administration of this Settlement in the District of Kansas.

The Plaintiff Class Representatives, on behalf of themselves and as representatives of the Class, and the Mylan Defendants have agreed to the terms of this Settlement Agreement rather than continue litigating their respective positions to conclusion.

## IV.  TERMS OF AGREEMENT

NOW, THEREFORE, the Plaintiff Class Representatives, on behalf of themselves and as representatives of the Class, the Class, and the Mylan Defendants, in consideration of the execution of this Settlement Agreement, the mutual promises contained herein, the benefits to be received hereunder and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all Settling Parties to this Settlement Agreement, hereby agree as follows:

### 1.  Definitions

The following terms and phrases shall have the following meanings under the provisions of this Settlement Agreement, whether used in the singular or plural, and whether in the possessive

or non-possessive:

1.1     "Action" means *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) (D. Kan.).

1.2     "Attorneys' Fees and Expenses" means (a) payment to Class Counsel of attorneys' fees and litigation expenses and charges (including expert and consulting fees) in an amount to be determined by the Court; and (b) payment of Service Awards to Plaintiff Class Representatives, in an amount to be determined by the Court. Attorneys' Fees and Expenses shall be paid exclusively from the Settlement Fund.

1.3     "Class Counsel" means collectively, Co-Lead Counsel, Liaison Counsel, and members of the Steering Committee, as set forth in ECF Nos. 40, 2018, and 2111.

1.4     "Co-Lead Counsel" means collectively, Warren T. Burns of Burns Charest, LLP; Paul J. Geller of Robbins Geller Rudman & Dowd LLP; Lynn Lincoln Sarko of Keller Rohrback L.L.P.; Rex A. Sharp of Sharp Law LLP; and Elizabeth C. Pritzker of Pritzker Levine LLP.

1.5     "Class Member" (or, when used collectively, "Class Members") means a person or entity who remains in the Class, *i.e.*, a member of the Class who has not timely and properly opted out. For the avoidance of doubt, each Plaintiff Class Representative is a Class Member.

1.6     "Class Period" means from August 24, 2011 to November 1, 2020.

1.7     "Class" means the following certified classes:

All persons and entities in the United States who paid or provided reimbursement for some or all of the purchase price of Branded or authorized generic EpiPens for the purpose of consumption, and not resale, by themselves, their family member(s), insureds, plan participants, employees, or beneficiaries, at any time between August 24, 2011, and November 1, 2020; and

All persons and entities in the Antitrust States who paid or provided reimbursement for some or all of the purchase price of Branded EpiPens at any time between

January 28, 2013, and November 1, 2020, for the purpose of consumption, and not resale, by themselves, their family member(s), insureds, plan participants, employees, or beneficiaries.

The "Antitrust States" are: Alabama, California, Florida, Hawaii, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New York, North Carolina, Tennessee, and Utah.

The following groups are excluded from Class:

   a.   Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

   b.   Government entities, other than government-funded employee benefit plans;

   c.   Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100% of the plan's reimbursement obligations to its members);

   d.   "Single flat co-pay" consumers who purchased EpiPens or generic EpiPens only via a fixed dollar co-payment that is the same for all covered devices, whether branded or generic (*e.g.*, $20 for all branded and generic devices);

   e.   Consumers who purchased or received EpiPens or authorized generic equivalents only through a Medicaid program;

   f.   All persons or entities who purchased branded or generic EpiPens directly from defendants;

   g.   The judges in this case and members of their immediate families;

   h.   All third-party payors who own or otherwise function as a Pharmacy Benefit Manager or control an entity who functions as a Pharmacy Benefit Manager; and

   i.   Individual consumers whose only purchases of an EpiPen occurred before March 13, 2014 (the Generic Start Date).

   1.8   "Defendants' Released Claims" means the Mylan Defendants' release of Plaintiff Class Representatives and their attorneys, and all other members of the Class, of all claims, demands, actions, causes of action, allegations, rights, obligations, costs, losses, and damages arising in whole or in part from or in connection with the acts or omissions of any of the Plaintiffs'

Released Persons of any and every kind or nature, whether in law or in equity, in tort or contract, or arising under any statute or regulation, whether known or unknown, based solely upon the institution, prosecution, or settlement of the claims asserted in the Action and Other Actions, except for claims relating to the enforcement of the Settlement.

1.9    "Distribution Amount" means an amount of money payable to a Class Member as the distribution of the Class Member's share of the Net Settlement Fund pursuant to the approved Plan of Allocation. The Settlement Administrator shall cause claims to be paid electronically, or issue and mail checks, to the Class Members as identified on the Summary Final Distribution Report in the amounts shown thereon. Class Members who previously submitted a claim in connection with the settlement with the Pfizer Defendants in this Action shall not be required to submit a new claim in this Settlement, and the Distribution Amount for any Class Member's share of the Net Settlement Fund from this Settlement shall be combined with the Distribution Amount, if any, from the settlement with the Pfizer Defendants such that the Settlement Administrator may make one payment to each Class Member who submitted a timely and valid claim. Class Members who did not previously submit a claim in connection with the settlement with the Pfizer Defendants in this Action shall only receive a payment for this Settlement.

1.10    "Distribution Date" means the date on which the Distribution Amounts are first sent or mailed to Class Members. Except as to any interim disbursements for class notice and settlement administration costs, no disbursements shall be made to Class Members until the Effective Date.

1.11    "Effective Date" means the date on which the Judgment becomes Final and Non-Appealable.

1.12    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which the Mylan Defendants shall deposit or cause their insurance carriers to deposit

the sum of $264,000,000 on behalf of the Mylan Defendants.

1.13    "Escrow Agent" means Huntington Bank.

1.14    "Fairness Hearing" means the proceedings to be held before the Court to determine whether the Settlement should be approved as fair, reasonable, and adequate pursuant to Rule 23(e)(2); whether the Judgment should be entered; and whether the motion for award of Attorneys' Fees and Expenses should be granted.  The Parties agree to request that the Fairness Hearing be scheduled on or after July 6, 2022, subject to applicable legal requirements (*e.g.*, the CAFA notice period), the Court's preferences, and availability.

1.15    "Final and Non-Appealable" means (a) if no appeal is filed, the first business day after the last date on which any appeal from the Judgment approving this Settlement Agreement can be timely filed or noticed under the corresponding rules or orders of the applicable court or legislation for filing or noticing appeals; or (b) if an appeal is filed, the first business day after an appellate court enters an order or judgment affirming the Judgment, or dismissing or overruling the relief requested, and that appellate order or judgment itself becomes final and no longer subject to further review in any court.  Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to any application for attorneys' fees, costs, or expenses shall not in any way delay or preclude the Judgment from becoming Final and Non-Appealable.

1.16    "Judgment" means the order of the District Court approving this Settlement in accordance with the terms of this Settlement Agreement, which Judgment shall be substantially in the form of Exhibit E hereto.

1.17    "Net Settlement Fund" means the Settlement Fund less Attorneys' Fees and Expenses, Notice and Administration Expenses, Taxes, Tax Expenses, and other Court-approved

deductions.

1.18    "Notice" means the Notice of Proposed Settlement of Class Action mailed or emailed to members of the Class and posted on the website EpiPenClassAction.com substantially in the form of Exhibit B hereto. The Notice and the Summary Notice are collectively referred to herein as the "Notices."

1.19    "Notice and Administration Expenses" means the reasonable expenses incurred or charged in connection with the following:

(a)    Efforts to obtain current and accurate information regarding the identities and addresses of Class Members;

(b)    The reasonable costs associated with mailing, emailing, and publication of the Notice (including, but not limited to, the cost to print the Notices, mail or email the Notices, and publish the Notices, as well as making certain efforts to locate Class Members whose mailings are returned undelivered).

(c)    Maintenance of a dedicated Settlement website to facilitate communications with Class Members and to provide access to Settlement-related documents and information;

(d)    Responding to telephone and electronic inquiries regarding the Settlement by Class Members;

(e)    Implementation of the Plan of Allocation (including, but not limited to the cost of experts to calculate the allocation and distribution);

(f)    Costs of and fees associated with maintaining the Escrow Account;

(g)    Costs of preparing, sending, and/or mailing Distribution Amounts and tax documentation to members of the Class; and

(h)    Any other reasonable fees and expenses of the Settlement Administrator.

1.20   "Mylan" means Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., and Heather Bresch.

1.21   "Mylan Defendants" means Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., Viatris Inc., and Heather Bresch.

1.22   "Mylan Defendants' Counsel" means Hogan Lovells US LLP; Robbins, Russell, Englert, Orseck & Untereiner LLP; and Lathrop GPM LLP.

1.23   "Mylan Defendants' Related Parties" means any of the Mylan Defendants' past, present and future direct or indirect parents, subsidiaries, divisions, sister companies, affiliates, related entities, holding companies, unincorporated business units, vendors, independent contractors, stockholders, officers, directors, insurers, general or limited partners, principals, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing).

1.24   "Mylan Defendants' Released Parties" shall collectively refer to the Mylan Defendants and the Mylan Defendants' Related Parties.

1.25   "Other Actions" means, collectively, *Ipson v. Viatris Inc.*, No. 2:21-cv-02556-DDC-TJJ (D. Kan.); *Gill v. Viatris Inc.*, No. 2:21-cv-02534-DDC-TJJ (D. Kan.); *Dvorak v. Viatris Inc.*, No. 2:21-cv-02561-DDC-TJJ (D. Kan.); *Sumner v. Viatris Inc.*, No. 2:21-cv-02555-DDC-TJJ (D. Kan.).

1.26   "Plaintiff Class Representatives" or "Plaintiffs" means collectively: (1) Local 282 Welfare Trust Fund; and (2) individual consumers Rosetta Serrano, Lesley Huston, Kenneth Evans, Christopher Rippy, Nikitia Marshall, Elizabeth Huelsman, Stacee Svites, Raymond Buchta III, Lee Seltzer, Linda Wagner, Vishal Aggarwal, Joy Shepard, Lorraine Wight, Teia Amell, Todd Beaulieu, Anastasia Johnston, Annette Sutorik, Heather DeStefano, Elizabeth Williamson,

Shannon Clements, Mark Kovarik, Laura Chapin, Michael Gill, Suzanne Harwood, Donna Wemple, Sonya North, Jennifer Walton, April Sumner, Meredith Krimmel, Landon Ipson, Kenneth Steinhauser, Donna Anne Dvorak, Angie Nordstrum, and Carly Bowersock.

1.27    "Plaintiffs' Related Parties" means Plaintiff Class Representatives' respective spouses, associates, principals, trustees, agents, attorneys, partners, assigns, respective legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, in their capacities as such.

1.28    "Plaintiffs' Released Claims," unless otherwise specifically excluded herein, means all claims, duties, demands, actions, causes of action, suits, allegations, rights, obligations, costs, losses, attorneys' fees and costs, liabilities and damages arising in whole or in part from or in connection with acts or omissions of any of the Mylan Defendants' Released Parties, of every kind or nature, whether known or unknown, suspected or unsuspected, asserted or unasserted, whether in law or in equity, in tort or contract, or arising under any statute or regulation, including without limitation any state or federal RICO statutes, state or federal antitrust laws, or any other federal or state or local or common law doctrine relating to antitrust or unfair competition, fraud, unjust enrichment, or consumer protection, based upon, arising out of, or relating in any way to Class Member's purchases of, payments for, or reimbursements for EpiPen products or otherwise relating in any way to the causes of action described which were asserted or could have been asserted in the Action or Other Actions, except for claims relating to the enforcement of the Settlement. However, nothing herein shall be construed to release any claims relating to physical injury related to the EpiPen. The relevant Release Dates are defined below. This Release shall extend to the Mylan Defendants' Released Parties. The Release shall be given by Plaintiffs and each member of the Class, on behalf of themselves and their spouses, associates, principals,

trustees, agents, attorneys, partners, assigns, respective legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, in their capacities as such.  For the avoidance of doubt, the Plaintiffs' Released Claims do not include claims brought by direct purchasers in *KPH Healthcare Services, Inc. v. Mylan N.V.*, No. 2:20-cv-DDC-TJJ (D. Kan.) or *In re: EpiPen Direct Purchaser Litigation,* No. 0:20-cv-00827-ECT-JFD (D. Minn.).

       1.29    "Plaintiffs' Released Persons" means the Plaintiff Class Representatives and Class Members and the Plaintiffs' Related Parties.

       1.30    "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Fund to Class Members.

       1.31    "Preliminary Approval Order" means the order (or orders) of the Court preliminarily approving this Settlement Agreement, (b) approving the Settlement Administrator, (c) approving the form and manner of disseminating the Notice to Class Members, and (d) scheduling a Fairness Hearing. The Preliminary Approval Order shall also provide that if this Settlement Agreement is not approved, is voided, terminated, or fails to become effective for any reason the Settling Parties shall be returned to the *status quo* that existed immediately prior to the date of execution of this Settlement Agreement. The Preliminary Approval Order shall be substantially in the form of the order attached hereto as Exhibit A.

       1.32    "Proof of Claim" means the proof of claim forms substantially similar to Exhibit C hereto.

       1.33    "Release Dates" means August 24, 2011 to November 1, 2020.

       1.34    "Released Persons" shall collectively refer to "Mylan Defendants' Released Parties" and "Plaintiffs' Released Persons."

       1.35    "Settlement" means the settlement between the Settling Parties in *In re EpiPen*

MDL, No. 17-md-2785, in the United States District Court for the District of Kansas, on the terms and conditions set forth in this Settlement Agreement.

1.36    "Settlement Administrator" means the person or entity to be recommended by Class Counsel and approved by the Court to administer this Settlement Agreement and the Plan of Allocation.

1.37    "Settlement Amount" means Two Hundred Sixty-Four Million Dollars ($264,000,000) in cash to be paid by wire transfer or check sent by overnight mail to the Escrow Agent pursuant to ¶ 2.1 of this Settlement Agreement.

1.38    "Settlement Fund" means the Settlement Amount, plus all interest and accretions thereto.  The Settlement Fund is intended to be a separate taxable entity and is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time.

1.39    "Summary Final Distribution Report" means the summary chart prepared by Class Counsel or the Settlement Administrator to show the distribution of the Net Settlement Fund to each member of the Class for whom an address and amount of distribution can be determined. The Mylan Defendants will cooperate and provide non-privileged information, accessible to them in the ordinary course of business, reasonably requested by the Settlement Administrator or Class Counsel but will not be responsible for or involved with the calculation of or distribution from the Summary Final Distribution Report.

1.40    "Summary Notice" means the Summary Notice published in a manner as determined by a notice expert and/or the Settlement Administrator substantially in the form of Exhibit D hereto.

1.41    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.42    "Uncashed Distribution Amounts" means any Distribution Amounts payable by check to a Class Member that is not endorsed and presented to the financial institution or trust company in which the Escrow Account is established by the "Void Date" shown on the Distribution Amount check.

1.43    "Undistributed Proceeds" means that portion of the Net Settlement Fund that remains after all distributions pursuant to the Plan of Allocation are completed. The settlement is non-reversionary. Once the Settlement becomes Final and Non-Appealable, the Mylan Defendants shall have no ability to get back any of the Settlement Amount, including any Undistributed Proceeds, subject to ¶ 1.15.

## 2.    The Settlement

### a.    The Settlement Amount

2.1    Within five (5) business days of the District Court's order granting preliminary approval of the Settlement, the Mylan Defendants will deposit $5,000,000 of the Settlement Amount into the Escrow Account. The remainder of the Settlement Amount shall be deposited five (5) calendar days before the date of the Fairness Hearing, but no earlier than July 1, 2022. No disbursements shall be made to Class Members until the Effective Date. If this Settlement Agreement is not approved, is voided, terminated (including through Withdrawal pursuant to ¶ 2.10), or fails to become effective for any reason: (a) the balance in the Settlement Fund, including interest accrued thereon and less Notice and Administration Expenses actually paid or incurred and Taxes and Tax Expenses, shall be promptly returned to the Mylan Defendants within 15

calendar days; and (b) the Settling Parties shall otherwise be returned to the *status quo* that existed in the Action immediately prior to the date of execution of this Settlement Agreement. The payments made, and to be made, to the Escrow Account are compensatory only and not payments made to satisfy any fines, penalties, punitive damages, or prejudgment interest. None of the Class Members are governmental entities or deemed to be governmental entities pursuant to Internal Revenue Code Section 162(f)(4) and 162(f)(5).

2.2     The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of all Plaintiffs' Released Claims. Once the above payments are made, the Mylan Defendants shall have no further monetary obligations of any sort or kind to Plaintiffs, members of the Class, or any counsel for Plaintiffs under the terms and conditions of the Settlement. This shall include, without limitation, that the Mylan Defendants are not responsible for payment of Attorneys' Fees and Expenses, Notice and Administration Expenses, or any out-of-pocket expenses, other than out of the Settlement Amount, as provided herein. The Settlement Amount paid by the Mylan Defendants is their sole monetary responsibility under this Settlement Agreement, and Class Members who have not timely excluded themselves from the Class shall not look to any of the Mylan Defendants' Released Parties for satisfaction of any and all Plaintiffs' Released Claims.

### b.     The Escrow Agent

2.3     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund. The Mylan

Defendants' Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Settlement Agreement, or by an order of the Court.

2.5     Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Settlement Agreement. Mylan Defendants' Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

2.7     Notwithstanding the fact that the Effective Date has not yet occurred, Class Counsel may pay from the Settlement Fund up to $5 million in Notice and Administration Expenses. In the event that the Settlement does not become Final, any money paid up to the above limit for the above purposes shall not be returned or repaid to the Mylan Defendants. After the Effective Date, Class Counsel may pay all further reasonable Notice and Administration Expenses, regardless of amount, without further order of the Court. Subject to ¶ 2.9 below, the Mylan Defendants are not responsible for, and shall not be liable for, any costs in connection with providing notice to the Class, locating Class Members, or administering and distributing the Settlement Fund.

**c.      Taxes**

2.8      (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent and as required, the Settling Parties shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.8, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. Class Counsel shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Escrow Account (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶ 2.8(a) hereof) shall be consistent with this ¶ 2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.8(c) hereof. Mylan Defendants' Released Parties shall have no responsibility or liability for the Escrow Account's tax returns or other filings.

(c)     The Escrow Account is intended to be a separate taxpaying entity for purposes of federal and state tax law. All Taxes and Tax Expenses arising from the operation and income of the Escrow Account shall be paid out of the Escrow Account.

(d)      All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events Mylan Defendants' Released Parties, the Settling Parties, and their counsel make no representation regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund, and shall have no liability or responsibility for the Taxes or the Tax Expenses. The Settlement Fund shall indemnify and hold each of the Released Persons and their counsel harmless for taxes and tax expenses (including, without limitation, taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Mylan Defendants' Released Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.8.

### d.       Termination of Settlement

2.9     In the event that the Settlement Agreement is not approved or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶ 2.7 and 2.8 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from the Mylan Defendants' Counsel.

2.10.   Withdrawal. If any of the conditions set forth within this paragraph occurs and Plaintiffs or the Mylan Defendants give written notice that they wish to withdraw from the Settlement Agreement (subject to the terms below and herein), then this Settlement Agreement shall terminate and be null and void, and the Parties will be returned to the *status quo* that existed immediately prior to the date of execution of this Settlement Agreement:

(a)     Any objections to the proposed Settlement are sustained, which results in changes to the Settlement that both Parties agree or the Court determines are material (*e.g.*, because they increase the cost of Settlement, narrow the scope of the release, or otherwise deprive the withdrawing Party of a benefit of the Settlement);

(b)     Obtaining final approval of the Settlement results in changes that both Parties agree or the Court determines are material (*e.g.*, because they increase the cost of Settlement, narrow the scope of the release, or otherwise deprive the withdrawing Party of a benefit of the Settlement);

(c)     The Court requires a second opportunity to opt out and the parties are unable to determine mutually-agreeable terms for that opt out process as set forth below;

(d)     The final approval of the Settlement is: (i) substantially modified by an appellate court and both Parties agree or the Court determines is material (*e.g.*, because it increases the cost of Settlement, narrows the scope of the release, or otherwise deprives the withdrawing Party of a benefit of the Settlement); or (ii) reversed by an appellate court.

### 3.        Preliminary Approval Order, CAFA Notice, and Fairness Hearing

3.1    On February 28, 2022, Class Counsel shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Settlement Agreement, and approval for the distribution of Notices, substantially in the form of Exhibits B and D attached hereto. The Notices shall include the general terms of the Settlement set forth in the Settlement Agreement, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶ 6.1 hereof, and the date and location of the Fairness Hearing.

3.2    The Notice shall afford Class Members an opportunity to object to the Settlement Agreement, but given that Class Members have already had one opportunity to opt out in the usual course of the Action, the Notice shall not provide another opportunity to opt out of the certified Class unless expressly required by the Court. If the Settlement is finally approved, the Settlement process will be administered by the independent Settlement Administrator, and allocation will be conducted pursuant to the Plan of Allocation approved by the Court. Any monies left over after the initial and any subsequent distributions as may be necessary and appropriate, will be distributed *cy pres* as set forth in ¶ 5.8.

3.3    The Mylan Defendants may be required to make reasonable efforts to assist or provide information to the Settlement Administrator, as set forth below in ¶ 5.7.

3.4    Class Counsel shall request that after notice is given, the Court hold the Fairness Hearing and approve the Settlement of the Action as set forth herein. At or after the Fairness Hearing, Class Counsel also will request that the Court finally approve the proposed Plan of Allocation and the Attorneys' Fee and Expense Application, including Plaintiff Class Representatives' request for Service Awards in connection with their representation of the Class.

3.5     Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, *et seq.* ("CAFA"), no later than ten (10) calendar days after this Settlement Agreement is filed with the Court, the Mylan Defendants shall serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA. The Mylan Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

### 4.     Releases and Dismissal

4.1     Upon the Effective Date, Plaintiffs' Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Plaintiffs' Released Claims against the Mylan Defendants' Released Parties, whether or not such person or Class Member shares in the Settlement Fund. Claims solely to enforce the terms of this Settlement Agreement are not released.

4.2     Upon the Effective Date, all Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or administrative forum, asserting the Plaintiffs' Released Claims against any of the Mylan Defendants' Released Parties.

4.3     Upon the Effective Date, each of the Mylan Defendants' Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Defendants' Released Claims against Plaintiffs' Released Persons, including Class Counsel. Claims solely to enforce the terms of this Settlement Agreement are not released.

4.4     Upon entry of the Judgment approving this Settlement, and in consideration of the promises set forth in this Settlement Agreement, including payment of the Settlement Fund, the Settling Parties and their counsel shall dismiss the Action and Other Actions with prejudice as to

the Mylan Defendants.

**5.      Administration and Distribution of the Settlement Fund**

5.1      The Settlement Administrator, subject to such supervision and direction of Class Counsel, and as may be necessary and appropriate or as circumstances may require, the Court, shall administer and calculate the Distribution Amounts paid to Class Members and shall oversee distribution of the Net Settlement Fund to Class Members.

5.2      The Settlement Fund shall be applied as follows:

(a)      to pay all Notice and Administration Expenses;

(b)      to pay the Taxes and Tax Expenses described in ¶ 2.8 hereof;

(c)      to pay Attorneys' Fees and Expenses, including any Service Awards to Plaintiff Class Representatives to the extent allowed by the Court; and

(d)      after the Effective Date, to distribute the Net Settlement Fund to Class Members as allowed by the Settlement Agreement, the Plan of Allocation, or the Court.

5.3      Each Class Member who has not timely and properly elected to opt-out of this Action shall be a Class Member and shall be eligible to receive a distribution from the Net Settlement Amount according to the Plan of Allocation.

5.4      After the Effective Date, and in accordance with the terms of the Settlement Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members, subject to and in accordance with the following.

5.5      Any distribution of monies or funds to Class Members shall be in accordance with the Plan of Allocation approved by the Court.  The Mylan Defendants shall not be responsible or liable for any aspect of the allocation methodology set forth in the Plan of Allocation or the implementation of that methodology.

5.6     The Mylan Defendants and the Plaintiff Class Representatives agree that the Net Settlement Fund shall be only for the benefit of the Class (subject to Attorneys' Fees and Expenses and the other distributions and dispositions provided for in this Settlement Agreement), which by definition does not include those who timely and properly opted-out of the Class.

5.7     The Mylan Defendants and Class Counsel shall provide reasonable cooperation to the Settlement Administrator in connection with the information reasonably needed by them in order to perform the activities contemplated under this Settlement Agreement, including the dissemination of the Notice and the implementation of the Plan of Allocation.

5.8     The Net Settlement Fund shall be distributed to Class Members substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, the Settlement Administrator shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among those Class Members, who successfully received and deposited, cashed or otherwise accepted a Distribution Amount and who would receive a distribution of at least $5.00, in an equitable and economic fashion. Thereafter, any *de minimis* balance which still remains in the Net Settlement Fund shall be donated in equal amounts to the: (a) Allergy and Asthma Foundation of America; (b) Allergy and Asthma Network; (c) Allison Rose Foundation; and (d) Food Allergy & Anaphylaxis Connection Team, if approved by the Court.

5.9     This Settlement is a non-reversionary settlement and, if all conditions of the Settlement Agreement are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Mylan Defendants. The Mylan Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or

calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No person shall have any claim of any kind against the Mylan Defendants or their Related Parties with respect to the matters set forth in ¶¶ 5.1-5.8 hereof.

5.10     No Person shall have any claim against Plaintiff Class Representatives, Class Counsel, the Mylan Defendants, their Related Parties, the Settlement Administrator or other entity designated by Class Counsel based on distributions made substantially in accordance with the Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Settlement Agreement.

**6.     Class Counsel's Attorneys' Fees and Expenses**

6.1     Class Counsel may submit an application or applications for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Action or the Other Actions; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Application"). In addition, Plaintiff Class Representatives may request Service Awards in connection with their representation of the Class. Plaintiff Class Representatives' support for the Settlement is not in any way conditioned on their right to request, or receipt of, Service Awards. Class Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2     The fees and expenses, as awarded by the Court, shall be paid to Co-Lead Counsel, as ordered, within ten (10) calendar days after the Court executes the Judgment and an order awarding Plaintiffs' counsel fees and expenses is entered, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part hereof. The fees and expenses awarded by the Court shall be allocated and

distributed among counsel working for the Class by Co-Lead Counsel using their judgment to compensate each counsel fairly based on their contribution to the institution, prosecution, and resolution of the Action and the Other Actions.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Settlement Agreement is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Co-Lead Counsel who received any portion of the Fee and Expense Award shall be obligated, within ten (10) calendar days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification. Each such Co-Lead Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each severally liable and responsible for any required repayment.

6.4     Any attorneys' fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. The Mylan Defendants and their Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Class Counsel or Plaintiff Class Representatives.

## 7.     Failure to Obtain Approval of Settlement

7.1     This Settlement Agreement will automatically terminate if the Court enters an order denying approval of the Settlement (without an opportunity to resubmit) or if an appellate court

denies approval of the Settlement.

7.2     If this Settlement Agreement is terminated pursuant to the terms hereof, or fails to become effective for any reason, then (a) all orders of the Court preliminarily or otherwise approving the Settlement shall be vacated, (b) the Settling Parties shall be returned to the *status quo* that existed immediately prior to the date of execution of this Settlement Agreement (subject to appropriate extensions of deadlines to enable the Action and Other Actions to proceed) and (c) the Settling Parties shall retain all of their respective rights and defenses as of immediately prior to the date of execution of this Settlement Agreement. The Settling Parties shall then proceed in all respects as if this Settlement Agreement and related orders had not been executed.

## 8.     Opt-Outs (if Permitted a Second Opportunity to Opt-Out) and Objections

8.1     The Mylan Defendants and Class Counsel agree that there should not be a second opportunity for Class Members to opt-out of the Class. Should the Court nevertheless permit another opportunity to opt out of the Class, the Settling Parties agree that they will meet and confer to determine mutually-agreeable terms to govern the second opt out (*see, e.g.*, Plaintiffs' and Pfizer's Stipulation of Class Action Settlement, *see* ECF No. 2393-2).

8.2     The Notice shall require that any objection to the Settlement, or any part of this Settlement Agreement, including Attorney's Fees and Expenses, and Plaintiff's Class Representatives' Service Awards, or to the Plan of Allocation be in writing and comply with all the requirements set forth herein and by the Court in the Preliminary Approval Order and Notice.

8.3     If the Court determines that the Settlement, including the Plan of Allocation, and the awards of Attorneys' Fees and Expenses, including Service Awards are fair, adequate and reasonable to the Class, Class Counsel shall represent the Class as a whole in all future proceedings in district court or on appeal, even if some Class Members have objected to the Settlement (or any part thereof).

8.4     The Notice shall require that any member of the Class who elects to object to this Settlement Agreement (or any part thereof) or to the motion for Attorneys' Fees and Expenses shall object in a writing signed by the member of the Class who is objecting, which objection shall be filed with the Court and served on counsel for the Settling Parties, a prescribed number of days before the Fairness Hearing as provided for in the Preliminary Approval Order and/or the Notice.

8.5     The written objection filed with the Court shall: (a) state the name, address, and telephone number of the objector and must be signed by the objector even if represented by counsel; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, the application for Attorneys' Fees and Expenses, and/or application for Service Awards to Plaintiffs; (c) state the objection(s) and the specific reasons for each objection, including any legal and evidentiary support the objector wishes to bring to the Court's attention; (d) state whether the objection applies only to the objector, to a subset of the Class, or to the entire Class; (e) identify all class actions to which the objector and his, her, or its counsel has previously objected; (f) include documents sufficient to prove the objector's membership in the Class, such as the number of EpiPens purchased, acquired, or paid for during the Class Period, as well as the dates and prices of each such purchase, acquisition, or payment; (g) state whether the objector intends to appear at the Fairness Hearing; (h) if the objector intends to appear at the Fairness Hearing through counsel, state the identity of all attorneys who will appear on the objector's behalf at the Fairness Hearing; and (i) state that the objector submits to the jurisdiction of the Court with respect to the objection or request to be heard and the subject matter of the Settlement of the Action, including, but not limited to, enforcement of the terms of the Settlement. Any Class Member who does not object in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement Agreement, to the Plan of Allocation, or to the award of fees, charges, and expenses to Class Counsel, or any

27

incentive awards to Plaintiff Class Representatives, unless otherwise ordered by the Court. All presentations of objections will be further limited by the information listed. A Class Member's mere compliance with the foregoing requirements does not in any way guarantee a Class Member the ability to present evidence or testimony at the Fairness Hearing. The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any and all presentations of objections at the Fairness Hearing, will be in the sole discretion of the Court.

### 9.    Appointment of Settlement Administrator

9.1    The Court shall appoint the Settlement Administrator pursuant to the Preliminary Approval Order. The duties undertaken by the Settlement Administrator shall be as described in the Plan of Allocation and orders of the Court. All reasonable fees and expenses, including the compensation of the Settlement Administrator, for Notice and Administration Expenses shall be paid from the Settlement Fund and in the manner set forth in ¶ 1.19 above.

### 10.    Miscellaneous

10.1    This Settlement Agreement is for settlement purposes only, and to the fullest extent permitted by law, neither the fact of, nor any provision contained in this Settlement Agreement, nor any actions taken hereunder, shall constitute, be construed as, or used as, or be admissible in evidence as, an admission of the validity of any claim or any fact alleged by Plaintiffs in this Action or the Other Actions or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of laws, or liability of any kind on the part of the Mylan Defendants, or admission by any of the Settling Parties of the validity, or lack thereof, of any claim, allegation or defense asserted in this Action or Other Actions. In particular, the Mylan Defendants deny any improper conduct or violation of the federal RICO statute, state or federal antitrust laws, or any other laws or regulations, or that any actions taken by them caused any injuries to the Class. While retaining their right to deny liability, the Mylan Defendants will agree that the Action and Other Actions are

28

being settled voluntarily by the Mylan Defendants after consultation with competent legal counsel. The Settling Parties agree that throughout the course of the litigation of the Action and Other Actions, all Settling Parties and their counsel vigorously prosecuted their claims and/or defenses consistent with the applicable rules of procedure, including Rule 11 of the Federal Rules of Civil Procedure.

10.2    With the exception of any submissions or filings with the Court to effectuate the Settlement, Class Counsel and Plaintiffs agree that they will not, at any time, make public statements (which includes press releases, communication to the press or other media, statements in the Internet, speeches, or other communications in public fora) concerning the Settlement, the Action or Other Actions, the litigation of the Action or Other Actions, or the Parties, witnesses, or counsel involved in the Action or Other Actions, apart from agreed-upon media, social media, and public relations statements and responses, and biographical information concerning counsel's involvement in the matter, with the exceptions that (i) Class Counsel and Plaintiffs shall have the right to disclose the Settlement to comply with their financial, legal, reporting, and securities obligations, and (ii) Class Counsel and Plaintiffs shall have the right to take actions to enforce the Settlement to the extent necessary.

10.3    Notwithstanding the Settlement or the termination of the Action or the Other Actions, the Settling Parties acknowledge and reaffirm that the Third Amended Stipulated Protective Order ("Protective Order") [Doc. No. 556], including without limitation Section 3 thereto, shall continue to be binding on the Settling Parties, Class Counsel and Mylan Defendants' Counsel, and all persons who were required to execute acknowledgement forms pursuant to the Protective Order, and agree to continue complying with the terms of the Protective Order in all respects. Class Counsel shall instruct all experts and consultants retained by Plaintiffs in connection with the Action or the Other Actions concerning their continuing obligations under the

29

Protective Order. Plaintiffs further agree that they and their counsel shall not disclose non-public information obtained in the Action or Other Actions.

10.4     The Settling Parties agree not to make any statements, written or verbal, or to cause or encourage any other person to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Settling Parties, the Mylan Defendants' Released Parties, Plaintiffs' Released Persons, and their respective counsel concerning all Released Claims, as well as the litigation of this Action and the Other Actions, the Settlement, and any discussions, interactions, or negotiations of the Settlement by the Parties and their counsel; provided, however, that nothing herein shall preclude any Settling Party or its agents, representatives, or counsel from any good faith response to any inquires under oath or in response to a government inquiry or from making statements in the course of legal proceedings, or from non-public privileged communications with regard to the Settlement.

10.5     Plaintiff Class Representatives, the Class, and the Mylan Defendants agree to settle the Released Claims and to execute this Settlement Agreement solely to compromise and settle protracted, complicated and expensive litigation. Entering into or carrying out this Settlement Agreement, and any negotiations or proceedings related thereto, is not, shall not be construed as, or deemed to be evidence of, an admission or concession by any of the Settling Parties and shall not be offered or received in evidence in any action or proceeding by or against any Settling Party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, other than to enforce the provisions of the Settlement between the Mylan Defendants and the Class, the provisions of this Settlement Agreement, or the provisions of any related agreement, order, judgment or release. The Settlement Agreement shall not be offered as evidence in the continuing Action or Other Actions except upon Court order to show that the Settling Parties have settled, and for what amount.  Provided, however, that in order to support a defense or counterclaim based on

principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, the Mylan Defendants and the Mylan Defendants' Related Parties may file the Settlement Agreement and/or the judgment in any action or proceeding that may be brought against them.

10.6    Each Settling Party shall use its best efforts and work together in good faith to cause this Settlement Agreement to be approved and consummated. The Mylan Defendants, Class Counsel, and Class Representatives shall also promptly take such actions as may be reasonably required and work together in good faith to obtain final approval by the Court of this Settlement Agreement, and to carry out the terms of this Settlement Agreement.

10.7    The Court shall retain its traditional equitable powers over the Action and Other Actions as those powers pertain to this Settlement Agreement until the monies and funds in the Escrow Account are fully and finally distributed.

10.8    This Settlement Agreement, including its exhibits, constitutes the entire agreement among the Settling Parties hereto related to the Action and Other Actions and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized in this Settlement Agreement.  The exhibits to this Settlement Agreement are:

Exhibit A      Form of Preliminary Approval Order
Exhibit B      Form of Notice of Proposed Settlement
Exhibit C      Forms of Consumer Claim Form and TPP Claim Form
Exhibit D      Form of Summary Notice
Exhibit E      Form of Judgment

10.9    Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Settlement Agreement.  In the event of a dispute concerning the terms and conditions of this Settlement Agreement, the headings shall be disregarded.

10.10   The terms and provisions of this Settlement Agreement may not be altered, amended or modified except in writing signed by all Settling Parties. To the extent there is a conflict between the provisions of this Settlement Agreement, the Preliminary Approval Order, the Judgment, and/or the Plan of Allocation, each such document shall have controlling effect in the following rank order: (1) the Judgment, (2) the Preliminary Approval Order, (3) this Settlement Agreement, and (4) the Plan of Allocation.

10.11   This Settlement Agreement may be executed in one or more counterparts, and may be exchanged by facsimile, pdf and/or other imaged signatures which shall be as effective as original signatures. All executed counterparts taken together shall be deemed to be one and the same instrument. Counsel for the Settling Parties to this Settlement Agreement shall exchange among themselves signed counterparts and a complete, assembled executed counterpart shall be filed with the Court.

10.12   The Settling Parties and their respective counsel have mutually contributed to the preparation of this Settlement Agreement. Accordingly, no provision of this Settlement Agreement shall be construed against any Settling Party on the grounds that one of the Settling Parties or its counsel drafted the provision. Except as otherwise provided herein, each Settling Party shall bear its own attorneys' fees and other litigation expenses and costs.

10.13   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

10.14   Each of the undersigned represents that he or she is fully authorized to execute this Settlement Agreement on behalf of the Settling Party for which he or she signs.

10.15   This Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Kansas, and the

rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Kansas without giving effect to that State's choice-of-law principles.

10.16   If the provisions of this Settlement Agreement (or any portion thereof) are held unenforceable in any jurisdiction, then such provisions shall be severable, and the Settling Parties agree that the enforceability of the remaining provisions of this Settlement Agreement shall not in any way be affected or impaired thereby and shall continue in full force and effect.

10.17   The exclusive forum for any dispute arising under or related to this Settlement Agreement, or to enforce the terms of this Settlement Agreement, will be the United States District Court for the District of Kansas.

10.18   No delay or omission by any Settling Party in exercising any rights under this Settlement Agreement will operate as a waiver of that or any other right. A waiver or consent given by a Settling Party on any one occasion is effective only in that instance and will not be construed as a bar or waiver of any right on any other occasion, unless otherwise agreed in writing.

10.19   After the entry of the Judgment approving this Settlement, dismissal of all claims asserted by Plaintiff Class Representatives against the Mylan Defendants is with prejudice.

[Signature Pages Follow]

IN WITNESS WHEREOF, the Settling Parties hereto have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: February 27, 2022

SHARP LAW LLP

By: /s/
REX A. SHARP
RYAN C. HUDSON
W. GREG WRIGHT
4820 W. 75th Street
Prairie Village, KS 66208
Telephone: 913/901-0505
Fax: 913/901-0419
rsharp@midwest-law.com
rhudson@midwest-law.com
gwright@midwest-law.com

and

ROBBINS GELLER RUDMAN
   & DOWD LLP

By: /s/
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
BRIAN O. O'MARA
ARTHUR L. SHINGLER III
655 West Broadway, Suite 1900
San Diego, CA 92101 Telephone:
619/231-1058 619/231-7423 (fax)
bomara@rgrdlaw.com
ashingler@rgrdlaw.com

IN WITNESS WHEREOF, the Settling Parties hereto have executed this Settlement Agreement in several counterpart originals on the date set forth opposite their names.

Dated: February 27, 2022

SHARP LAW LLP

By: /s/ _____
REX A. SHARP
RYAN C. HUDSON
W. GREG WRIGHT
4820 W. 75th Street
Prairie Village, KS 66208
Telephone: 913/901-0505
Fax: 913/901-0419
rsharp@midwest-law.com
rhudson@midwest-law.com
gwright@midwest-law.com

and

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP

By: /s/ _____
PAUL J. GELLER
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
BRIAN O. O'MARA
ARTHUR L. SHINGLER III
655 West Broadway, Suite 1900
San Diego, CA 92101 Telephone:
619/231-1058 619/231-7423 (fax)
bomara@rgrdlaw.com
ashingler@rgrdlaw.com

and

KELLER ROHRBACK L.L.P.

By: /s/

LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

ALISON E. CHASE
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: 805/456-1496
805/456-1497 (fax)
achase@kellerrohrback.com

and

BURNS CHAREST LLP

By: /s/

WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: 469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

and

PRITZKER LEVINE LLP

By: /s/

ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450

and

KELLER ROHRBACK L.L.P.

By: /s/

LYNN LINCOLN SARKO
GRETCHEN FREEMAN CAPPIO
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:  206/623-1900
206/623-3384 (fax)
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com

ALISON E. CHASE
801 Garden Street, Suite 301
Santa Barbara, CA  93101
Telephone:  805/456-1496
805/456-1497 (fax)
achase@kellerrohrback.com

and

BURNS CHAREST LLP


By: /s/

WARREN T. BURNS
SPENCER COX
900 Jackson Street, Suite 500
Dallas, TX  75202
Telephone:  469/904-4550
469/444-5002 (fax)
wburns@burnscharest.com
scox@burnscharest.com

and

PRITZKER LEVINE LLP

By: /s/

ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
1900 Powell Street, Suite 450

Emeryville, CA  94608
Telephone:  415/692-0772
415/366-6110 (fax)
ecp@pritzkerlevine.com
jkl@pritzkerlevine.com

***Co-Lead Counsel and Liaison Counsel for Class
Plaintiffs***

Dated: February 27, 2022

HOGAN LOVELLS US LLP

By: */s/*
Adam K. Levin
David M. Foster
Carolyn A. DeLone
Kathryn M. Ali
555 13th Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
adam.levin@hoganlovells.com

and

LATHROP GPM LLP

By: */s/*
Brian C. Fries
James Moloney
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Telecopier: (816) 292-2001
bfries@lathropgpm.com
jmoloney@lathropgpm.com

***Counsel and Liaison Counsel for the Mylan
Defendants***