## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE:  **EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation**

**(This Document Applies to Consumer Class Cases)**

**MDL No:  2785**

**Case No. 17-md-2785-DDC-TJJ**

### MEMORANDUM AND ORDER GRANTING FINAL APPROVAL OF THE SETTLEMENT, AWARDING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS, AND APPROVING PLAN OF ALLOCATION

This matter comes before the court on Plaintiff Class Representatives' motion seeking: final approval of the Settlement; awards of attorneys' fees, expenses, and service awards; and approval of the Plan of Allocation of the Settlement proceeds (together the "Motion") set forth in the combined Class Plaintiffs' Motion for Final Approval of Settlement, Approval of Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Service Awards (Doc. 2612).  The Mylan Defendants[1] have not opposed the Motion and no Class Member has filed a valid objection to the Motion.  The court, after considering all papers filed and proceedings conducted herein, and after finding that the Settlement of this Action and the Other Actions[2] against the Mylan Defendants is fair, reasonable, and adequate, grants the Motion.

---

[1]      "Mylan" refers collectively to Mylan N.V., Mylan Specialty L.P., Mylan Pharmaceuticals Inc., and Heather Bresch.  "Mylan Defendants" refers collectively to Mylan and Viatris Inc.

[2]      As defined in the Settlement Agreement, the "Other Actions" include additional actions pending before this Court, namely:  *Ipson v. Viatris Inc.*, No. 2:21-cv-02556-DDC-TJJ (D. Kan.); *Gill v. Viatris Inc.*, No. 2:21-cv-02534-DDC-TJJ (D. Kan.); *Dvorak v. Viatris Inc.*, No. 2:21-cv-02561-DDC-TJJ (D. Kan.); and *Sumner v. Viatris Inc.*, No. 2:21-cv-02555-DDC-TJJ (D. Kan.).  Doc. 2590-2 at 12 (Settlement Agreement ¶ IV.1.1.25.).  Although settlement of the Other Actions is not subject to court approval, the

1.      Class Plaintiffs seek final approval of the Settlement.[3]  Rule 23(e) permits the parties to settle the claims of a certified class action, but "only with the court's approval."  And, the court may approve a settlement only after conducting "a hearing" and finding that the settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  Also, the Rule includes several factors that courts should consider when deciding whether the settlement is "fair, reasonable, and adequate[.]"  *Id.*  These factors include whether:

(A)      the class representatives and class counsel have adequately represented the class;

(B)      the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account:

      (i)      the costs, risks, and delay of trial and appeal;

      (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)      the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)      any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

*Id.*  Also, the Tenth Circuit has identified four overlapping factors that a district court must consider when assessing whether a proposed settlement is "fair, reasonable, and adequate":

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  The court previously granted preliminary approval of the Settlement, finding it "fair, reasonable, and

---

Settling Parties agreed that Plaintiffs will dismiss the Other Actions with prejudice as a condition of the Settlement.

[3]      This Order incorporates by reference the definitions in the Stipulation of Class Action Settlement dated as of February 27, 2022 (Doc. 2590-2) (the "Settlement Agreement"), and all capitalized terms used, but not defined in this Order, shall have the same meanings used in the Settlement Agreement.

adequate" as Fed. R. Civ. P. 23(e) requires.  Doc. 2594 at 3.  Now, the court grants final approval of the Settlement under this Rule because Class Plaintiffs have shown that the Settlement comports with each factor specific by Rule 23(e)(2) and our Circuit.

*First*, the court finds that Class Plaintiffs and Co-Lead Counsel have represented the class adequately.  They have participated in extensive discovery, and they have represented the interests of the class adequately.  Also, Co-Lead Counsel has represented the certified Class adequately by prosecuting their claims vigorously.  Their work has involved investigating the claims, drafting the Complaint, surviving Motions to Dismiss (in part), engaging in and reviewing written discovery, taking and defending hundreds of depositions, consulting with experts, successfully moving for class certification (in part), successfully opposing (in part) dispositive and *Daubert* motions, successfully opposing Mylan's motion to decertify the Class (in part), preparing for trial, and negotiating the case to resolution.  Counsel's prosecution of the case has produced substantial relief for the certified Class through the negotiated Settlement.  In sum, the court concludes that Co-Lead Counsel has represented the Class adequately.  Thus, this first Rule 23(e)(2) factor favors approving the Settlement.

*Second*, the Settlement is the product of an arm's length negotiation.  After preparing the case for trial, the parties engaged in settlement negotiations.  The parties were well-informed about the factual and legal issues involved and their respective arguments, which provided valuable insight into the claims' value and their strengths and weaknesses.  Through the negotiation process, the parties successfully negotiated the Settlement that Class Plaintiffs ask the court to approve.  The court finds that the second Rule 23(e)(2) factor favors approval.

*Third*, the court finds that the relief provided to the Class through the Settlement is adequate.  Continued litigation of the matter would have involved additional costs, presented risk

that Class Members might secure an unfavorable outcome or even no recovery at all, and guaranteed that trial and appeal would delay any recovery that Class Members might achieve in the future.  As discussed in more detail below, the court finds that the proposed Plan of Allocation and the requested attorneys' fees award is fair and adequate.  And, Class Plaintiffs represent that the Settling Parties have no other agreements that the court must consider under Rule 23(e)(2)(C)(iv).  Thus, the court finds that the third Rule 23(e)(2) factor favors approving the Settlement.

*Fourth*, and as discussed more fully below, the court finds that the Settlement and the Plan of Allocation treat class members equitably relative to one another.  So, this fourth Rule 23(e)(2) factor also favors approval.  In sum, all four Rule 23(e)(2) factors favor the court granting final approval of the Settlement.

Also, the court finds, the Settlement satisfies the Tenth Circuit's test for assessing whether a proposed settlement is fair, reasonable, and adequate.  *First*, and as just discussed, the court finds that the Settlement "was fairly and honestly negotiated[.]"  *Rutter*, 314 F.3d at 1188.  *Second*, the litigation involves "serious questions of law and fact" that place "the ultimate outcome of the litigation in doubt[.]"  *Id.*  The parties have disputed issues of liability and damages enthusiastically, and those contests would have extended through the case's trial and, in all likelihood, an appeal would have followed.  The Mylan Defendants continue to contest any liability on plaintiffs' claims.  Also, the Mylan Defendants deny that Class Plaintiffs have sustained damage or injury.  These contested issues were subjects of the Class Plaintiffs' class certification motion and Mylan's summary judgment motion and motion for decertification of the class.  The issues presented difficult, substantial, and—in some cases—novel questions of law that are subject to appeal.  And, as a consequence, these serious questions of law and fact

place the litigation's ultimate outcome in doubt.  *Third*, "the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation[.]"  *Id.* The Settlement here provides the Class Members with immediate recovery for claimed injuries allegedly derived from purchases of EpiPen products.  And this immediate recovery is more valuable than "the mere possibility" that Class Members might achieve a more favorable outcome "after protracted and expensive litigation" that may well last "many years in the future." *See In re Syngenta Ag MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) ("[I]t is reasonable to believe that the immediate recovery of such a substantial sum is more valuable than the mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future.").  *Last*, the Settling Parties ask the court to approve the Settlement, which suggests "the judgment of the parties" has concluded "that the settlement is fair and reasonable."  *Rutter*, 314 F.3d at 1188.  Thus, all of the Tenth Circuit's factors favor approving the Settlement as well.

Also, as the court discussed in the contemporaneously-filed Final Judgment and Order of Dismissal (Doc. 2623), the court finds that no Class Member has submitted any valid or meritorious objection to the Settlement.  Thus, the court overrules the objections to the Settlement.  As a consequence, none of the submissions preclude the court from finding the Settlement is fair, reasonable, and adequate.

For all the reasons discussed, the court finds that the Settlement is fair, reasonable, and adequate.  It thus grants final approval of the Settlement under Fed. R. Civ. P. 23(e).

2.      The Notice given to the Class provided that Class Counsel would move the court for an award of attorneys' fees not to exceed one-third of the Settlement Amount, an award of their expenses, an award of service awards for the Plaintiff Class Representatives, and for

approval of the proposed Plan of Allocation.  The Notice fairly and adequately notified Class

Members of their right to object to the requests for attorneys' fees, expenses, service awards, and

approval of the proposed Plan of Allocation, and a full and fair opportunity was accorded to all

persons and entities who are Class Members to be heard with respect to these matters.

3.      The Motion requests an award of attorneys' fees of one-third of the Settlement

Amount, an award of Plaintiffs' counsel's expenses in the amount of $1,426,642.93, an award of

service awards between $3,160 and $5,000 for each of the 35 Plaintiff Class Representatives, and

approval of the proposed Plan of Allocation.  No Class Member has objected validly to these

requested awards nor the Plan of Allocation.  As set forth in this Order, the court grants the

Motion, awards the requested attorneys' fees, expenses, and service awards, finds the Plan of

Allocation appropriate, and approves that Plan of Allocation.

## <u>AWARD OF ATTORNEYS' FEES</u>

4.      Plaintiff Class Representatives and Co-Lead Counsel request an award of

attorneys' fees of one-third of the $264 million Settlement Amount, which amounts to $88

million, together with interest earned on that amount for the same period and at the same rate

earned on the Settlement Fund until paid.

5.      Under Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n a certified class

action, the court may award reasonable attorney's fees and nontaxable costs that are authorized

by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The attorneys' fees requested and

awarded here are authorized under the common fund doctrine, *see Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980) (explaining that "a litigant or a lawyer who recovers a common fund

for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

from the fund as a whole"), and by the parties' Settlement Agreement (which the court has

approved by separate order).  The Settlement Agreement expressly provides for an award of attorneys' fees and expenses paid from the Settlement Fund to Class Counsel for work performed for the benefit of the Class Members.  *See* Doc. 2590-2 at 26–27 (Settlement Agreement ¶¶ 6.1, 6.4).

6.      The Circuit prefers the percentage-of-the-fund method when determining the award of attorneys' fees in common fund cases, *see Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458–59 (10th Cir. 2017), which calculates the fee as a reasonable percentage of the value secured for the benefit of the class, *see Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1998).  The Tenth Circuit also has instructed that a court making a percentage fee award in a common fund case should analyze the fee award's reasonableness under the *Johnson* factors.  *See id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).  The weight given to each *Johnson* factor varies from case to case, and each factor may not always apply.  *See id.* at 456 (finding that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation").

7.      The court finds that the request for and an award of attorneys' fees in the amount of one-third of the Settlement Amount is reasonable and supported by the balance of the *Johnson* factors.  The court addresses each applicable factor, in order of importance, below.

8.      **<u>Results Obtained (Factor 8)</u>**.  The court finds that the result-obtained factor here deserves greater weight than the other *Johnson* factors.  *See id.* at 456 (holding a court may give this factor greater weight when "the recovery was highly contingent" and "the efforts of counsel were instrumental in realizing recovery on behalf of the class"); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee

award is the degree of success obtained." (citation and internal quotation marks omitted)).  Here, the amount involved was disputed, both in liability and damages, and hotly contested by Defendants.  The result consists of a $264 million cash recovery, which is substantial, guaranteed, non-reversionary, and provides a total recovery for the Class in the amount of $609 million when added to the $345 million Pfizer Settlement.  The Net Settlement Funds will be distributed to the Class with no funds reverting to the Mylan Defendants.  The court finds the result obtained heavily favors awarding the one-third fee award.

9.      **Customary Fee (Factor 5) and Awards in Similar Cases (Factor 12).**  Class actions "typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel." *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (citation omitted).  Our court consistently has recognized that a "one-third fee is customary in contingent-fee cases (factor 5)," *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113–14 (D. Kan. 2018), and "well within the range typically awarded in class actions[,]" *Nieberding*, 129 F. Supp. 3d at 1250.  In fact, in cases with increased complexity and risk, the fee awards often exceed one-third of the common fund secured. *See Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *2–3 (D. Kan. May 21, 2019) (citing fee awards in the Tenth Circuit based on 40% of the common fund).  And in our court, an attorneys' fee award of one-third is consistent with fees awarded in comparably high-risk, high potential damage, complex class actions resulting in creation of a common fund, such as here.  *See* Doc. 2613-4 at 2 (Table 1) (listing nine fee awards of 33.33% or greater within the District of Kansas for class recoveries ranging from $16.9 million to $1.51 billion).  The court thus concludes that the requested fee of one-third is customary and consistent

with awards in similar cases, and thus supports a fee award in the amount of one-third of the

Settlement Amount.

10. **Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10)**. The

court recognizes the significant risk Class Counsel has assumed in prosecuting this complex case

on a wholly contingent basis. They necessarily and reasonably devoted a large amount of time

(more than five years and tens of millions of dollars in attorney time) and money (more than $1.4

million in additional expenses advanced since the Pfizer settlement) with a "substantial risk of no

recovery[.]" *In re Syngenta*, 357 F. Supp. 3d at 1114; *see also* Doc. 2613-2 at 20, 24 (Joint Decl.

¶¶ 61, 66). And, there was "no parallel government proceeding against the [Mylan Defendants]

on which plaintiffs could rely for investigation, discovery, or simple reassurance in the merits of

the claims." *In re Syngenta*, 357 F. Supp. 3d at 1114. The court finds that bearing the risk of

huge expenditures on a contingent basis, with no parallel government proceeding and a

substantial risk of no recovery, favors the requested one-third fee award. *See id.* ("[N]o parallel

government proceeding" and "risk [of] huge expenditures on a contingent basis, with a

substantial risk of no recovery" "made the case less than desirable (factor 10).").

11. **Novelty and Difficulty (Factor 2); Skill (Factor 3); and Experience (Factor 9)**.

Class actions have "a well deserved reputation as being most complex[,]" *Cotton v. Hinton*, 559

F.2d 1326, 1331 (5th Cir. 1977), and "[a]n antitrust class action is arguably the most complex

action to prosecute[,]" *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337

(N.D. Ga. 2000). The antitrust and RICO claims asserted in this nationwide MDL class action

involved complex and closely contested class certification and substantive issues requiring highly

skilled and experienced attorneys (including additional claims that the court did not certify for the

class to assert). The case has required argument and rulings on several issues of first impression in

this Circuit.  Co-Lead Counsel litigated these issues vigorously for more than four years against highly skilled, tenacious, experienced, and talented defense counsel.  These efforts required Co-Lead Counsel to engage in extensive document and deposition discovery, as well as significant motion practice and trial preparation.  The court has observed the skill and zeal that Co-Lead Counsel has applied to prosecute this case, and it finds that they are experienced, have earned good reputations, and have performed exceptional legal work on behalf of their clients and the Class. These factors strongly support the requested fee.

12.    **Time and Labor (Factor 1).**  This factor guides the lodestar analysis in a statutory fee-shifting case, but has minimal importance in a percentage of the common fund case.  *See Nakamura*, 2019 WL 2185081, at *3.  In fact, a lodestar analysis (or crosscheck) is neither required nor needed to assess reasonableness in a percentage of the fund determination.  *See id.* (first citing *Brown*, 838 F.2d at 456; then citing *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); and then citing *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *15 n.10 (N.D. Okla. Dec. 2, 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.")).

Still, this was not a case that settled before counsel completed significant work prosecuting the claims.  To the contrary, as shown in the Joint Declaration of Co-Lead Counsel, this litigation has required a significant amount of time and labor by Class Counsel.  Doc. 2613-2 at 20 (Joint Decl. ¶ 61).  Also, counsel has assured the court that Co-Lead Counsel properly vetted the time recorded and submitted by all counsel.  And, Co-Lead Counsel represents that the time records comprising the lodestar calculation comply with directives for keeping time and expense records

10

that the court imposed at the case's outset.  *See* Doc. 40 at 7–8 (Order Appointing Counsel) (requiring Co-Lead Counsel to "manage and approve any time and expenses for which plaintiffs may at any time seek to receive compensation or reimbursement[;]" ordering "all plaintiffs' counsel" to "keep contemporaneous records of their time and expenses devoted to this matter" and "submit [their billing] records for the preceding month in summary form by the end of each month to plaintiffs' liaison counsel[;]" and warning that failing "to comply with this rule [for keeping time and expenses] may render the expenses non-reimbursable").  Thus, the court finds that the time and labor factor, to the extent this factor applies to a percentage-of-the-fund case, favors awarding a one-third fee.

13.     **Preclusion of Other Employment (Factor 4).**  When "an attorney is spending time on one case, he is not spending the same time on another case."  *Wiggins v. Roberts*, 551 F. Supp. 57, 61 (N.D. Ala. 1982).  Co-Lead Counsel have represented that prosecuting this litigation has precluded other employment opportunities for them.  Doc. 2613-2 at 22 (Joint Decl. ¶ 65(4)). The court has little difficulty concluding that the commitment of time and resources required to litigate this case, over more than five years of its pendency, likely limited Class Counsel's ability to pursue other engagements.  *See Nakamura*, 2019 WL 2185081, at *4.  This factor also supports the requested one-third fee.

14.     The other two *Johnson* factors—time limitations imposed by the client or circumstances (Factor 7) and nature and length of the professional relationship with the client (Factor 11)—are of no or nominal importance in this class action, percentage-of-the-fund fee award.  The court thus doesn't address them.

15.     For these reasons, the court concludes that the *Johnson* factors strongly warrant an award of attorneys' fees in the amount of one-third of the $264 million Settlement Amount.

Accordingly, the court awards attorneys' fees from the Settlement Fund of $88 million, together with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid, subject to the Settlement terms.

## **AWARD OF LITIGATION EXPENSES**

16.     Rule 23(h) authorizes courts to reimburse counsel for "nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Also, the Settlement Agreement authorizes Co-Lead Counsel to seek "an award of . . . expenses or charges in connection with prosecuting the Action," Doc. 2590-2 at 26 (Settlement Agreement ¶ 6.1), and provides that "expenses awarded by the Court shall be paid solely from the Settlement Fund[,]" *id.* at 27 (Settlement Agreement ¶ 6.4).

17.     Class Counsel have incurred an additional $1,426,642.93 in expenses and charges ("expenses") in prosecuting this case since the Pfizer Settlement.  *See* Doc. 2613-2 at 24 (Joint Decl. ¶ 66).  No Class Member validly has objected to counsel's request for an award of these expenses from the Settlement Fund.  The court finds these expenses are reasonable and necessary to conclude this case against the Mylan Defendants successfully.  Thus, the court awards expenses to Co-Lead Counsel in the amount of $1,426,642.93, with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid, subject to the Settlement terms.

## **AWARD OF SERVICE AWARDS**

18.     "At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class."  5 Newberg on Class Actions § 17:1 (6th ed. 2021).  "Service payments induce individuals to become class representatives and reward them for time sacrificed and personal risk incurred on behalf of the class."  *Harlow v.*

*Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 WL 2568044, at *7 (D. Kan. June 4, 2018) (citing

*UFCW Loc. 880-Retail Food Emp. Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x

232, 235 (10th Cir. 2009)).  "Empirical evidence shows that incentive awards are now paid in

most class suits and average between $10,000 to $15,000 per class representative."  *See* Newberg

§ 17:1; *see also Harlow*, 2018 WL 2568044, at *7 (citing Newberg § 17:1).

19.     Co-Lead Counsel have requested that the court award between $3,160 and $5,000

to each of the 35 Plaintiff Class Representatives as service awards based on the time they

devoted and personal risk they incurred representing the Class.  Together this amounts to

$151,584.00, which is .06% of the $264 million Settlement Amount.  Class Plaintiffs argue, and

the court recognizes, this percentage is small compared to service awards approved by our court

in similar cases.  *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018

WL 6839380, at *16 (D. Kan. Dec. 31, 2018) (approving $2,782,500 in service awards, which

represented 0.18% of $1.51 billion in settlement funds); *Hershey v. ExxonMobil Oil Corp.*, No.

07-1300-JTM, 2012 WL 5306260, at *12 (D. Kan. Oct. 26, 2012) (awarding 0.1% of $54 million

settlement as service award); Order Approving Settlement Agreement at 15, *Eatinger v. BP Am.*

*Prod. Co.*, No. 07-1266-EFM (D. Kan. Sept. 17, 2012), ECF No. 375 (awarding 0.5% of $19

million settlement as service award); *In re Urethane Antitrust Litig.*, No. 04-md-1616-JWL-

DJW, 2008 WL 696244, at *1 (D. Kan. Mar. 13, 2008) (awarding 0.091% of the $33 million

settlement as service awards).

20.     All the Plaintiff Class Representatives searched for and provided documents and

other information in response to Defendants' discovery requests, had their depositions taken

(many traveled to Kansas City for their depositions), stayed current on the developments in the

case, and reviewed and approved the Settlement Agreement.  *See* Doc. 2613-2 at 26–27 (Joint

Decl. ¶ 73); *id.* at 52–161 (Pl. Class Representatives Decls. Exs. A-2–A-36).

21.     By authorizing service awards for the Class Representatives in the Pfizer

Settlement, the court used the following formula to determine the amount for each Class

Representative:  (1) Class Representatives who spent 60 or more hours working on the case were

awarded a $5,000 service award, and (2) Class Representatives who devoted fewer than 60 hours

working on the case were awarded a service award calculated using the number of hours that the

Class Representative devoted to the case multiplied by $79 per hour.  Doc. 2506 at 17 (Order ¶

24); *see also id.* at 15 (Order ¶ 22) (finding $79 per hour reasonable based on extensive nature of

discovery and required travel).  Co-Lead Counsel request the court award service awards for each

Class Representative based on this same formula and attach a table to their Joint Declaration that

sets forth each Class Representative's attested hours on the case and the amount of requested

service award for each based on this formula.  *See* Doc. 2613-5.

22.     For the same reasons as in the Pfizer Settlement, the court approves a service

award for each Class Representative based on the formula set out above that results in the

amounts set forth in the table submitted by Co-Lead Counsel (Doc. 2613-5).  The court finds that

using this formula to calculate service awards produces a sum that rewards Plaintiff Class

Representatives for the number of hours they devoted to the case.

23.     Also, the court finds that a service award—calculated using the formula described

above—is reasonable.  This conclusion weighs the risk Plaintiff Class Representatives assumed

when they decided to litigate against the Mylan Defendants for the past five-plus years, the

substantial benefits their efforts helped achieve for the Class, the fact that there would be no

recovery for the Class without the representatives coming forward and taking on the fiduciary

duties and responsibilities as class representatives.  And no Class Member has objected (at least not validly) to the requested service awards.

24.     Thus, the court orders that each of the thirty-five (35) Plaintiff Class Representatives is awarded a service award for the time devoted to the Representatives' representation of the Class.  The amount of the service award for each Plaintiff Class Representative is calculated this way:  (1) Plaintiff Class Representatives who devoted 60 or more hours working on the case are awarded a $5,000 service award, and (2) Plaintiff Class Representatives who devoted fewer than 60 hours working on the case are awarded a service award that is calculated using the number of hours that the Plaintiff Class Representative worked on the case multiplied by the $79 hourly rate.  The court authorizes the Claims Administrator to pay these awards from the Settlement Fund, in accordance with the Settlement Agreement.

25.     Of the 35 requested service awards, five requests come from individuals who—at one time—were named plaintiffs in the case.  They are Michael Gill, April Sumner, Landon Ipson, Donna Dvorak, and Anastasia Johnson.  On June 23, 2021, the court dismissed Mr. Gill, Ms. Sumner, Mr. Ipson, and Ms. Dvorak from the case because they never had filed an underlying case that was transferred to this MDL.  Doc. 2381 at 163 (dismissing "Ms. Sumner's claims because the court lacks subject matter jurisdiction over them[,]" and for "the same reasons" dismissing "the claims asserted by Donna Anne Dvorak, Michael Gill, and Landon Ipson").  And, more recently, on December 15, 2021, the court granted the Mylan Defendants' unopposed motion to dismiss Ms. Johnson.  Doc. 2531 at 2.  Since their dismissal, Mr. Gill, Ms. Sumner,

Mr. Ipson, and Ms. Dvorak have filed the Other Actions, which were transferred to this MDL and are settled as part of the Mylan Settlement. Doc. 2613-2 at 26 (Joint Decl. ¶ 72).

As the court found in its ruling considering the Pfizer Settlement, the persuasive legal authority permits "service awards to class members who have provided significant contributions to the prosecution of a case, including sitting for a deposition, even if those class members aren't named as class representatives." Doc. 2506 at 18 (Order ¶ 25) (collecting cases). Even though these five individuals no longer served as class representatives when the parties reached this Settlement, they meaningfully advanced the litigation, and each devoted 45 hours or more contributing to the case, participated in discovery, and sat for deposition. Doc. 2613-2 at 26 (Joint Decl. ¶ 72). The court finds service awards to Michael Gill, April Sumner, Landon Ipson, Donna Anne Dvorak, and Anastasia Johnson are appropriate based on their time and contributions to the prosecution of this litigation. Thus, the court includes these five individuals in its approval of the requested service awards for the thirty-five (35) individuals for whom Class Plaintiffs seek service awards, using the formula discussed above for determining the amount of each service award.

## APPROVAL OF PLAN OF ALLOCATION

26.    The court finds and concludes that the formula for the calculation of Class Members' claims that is set forth in the Plan of Allocation (Doc. 2590-9) and described in the Notice disseminated to Class Members provides a fair, reasonable, and adequate basis upon which to allocate the proceeds of the Net Settlement Fund established by the Settlement

Agreement among the Class Members, with due consideration for administrative convenience and necessity.

27.     The court approved the same Plan of Allocation in the Pfizer Settlement.  During the proceedings to approve the Pfizer Settlement, Class Plaintiffs explained adequately the basis for allocating the Settlement Funds into two pools—one pool allocating 80% of the Net Settlement Fund for third-party payors and 20% of the Net Settlement Fund for consumers.  The court notes, just as with the Pfizer Settlement, that no Class Member has objected to the 80/20 allocation between the two pools.  And, Class Plaintiffs provided a reasonable basis for this allocation—one that is grounded in the rebuttal merits expert report of Professor Meredith Rosenthal.  Doc. 2501 at 1–2 (citing Doc. 2216-22 (Rebuttal Merits Expert Report of Dr. Meredith Rosenthal)).

28.     The court thus finds that "competent and experienced class counsel" have formulated the Plan of Allocation, and they have provided a "reasonable, rational basis" for that Plan of Allocation.  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006).  Thus, the Plan of Allocation, as set forth in Doc. 2590-9 and the Notice, represents, in all respects, a fair, reasonable, and adequate method of allocating the Settlement.  The court hereby approves the Plan of Allocation.

## <u>CONCLUSION</u>

29.     The attorneys' fees and expenses awarded by this Order shall be allocated and distributed among counsel working for the Class by Co-Lead Counsel using their judgment to compensate each counsel fairly based on their contribution to the institution, prosecution, and resolution of the Litigation against the Mylan Defendants.

30.     The awarded attorneys' fees and expenses, and interest earned on it, shall be paid to Class Counsel within ten (10) days of the court's execution of the Final Judgment and Order of Dismissal with Prejudice against the Mylan Defendants (the "Judgment") and this Order and subject to the terms, conditions, and obligations of the Settlement Agreement, and in particular, Section 6.2 thereof, which terms, conditions, and obligations are incorporated into this Order.

31.     Any appeal or any challenge affecting this court's approval of the Motion addressed by this Order shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

32.     In the event that the Settlement is terminated or does not become Final and Non-Appealable or the Effective Date does not occur in accordance with the terms of the Settlement Agreement, this Order will be rendered null and void to the extent provided in the Settlement Agreement and will be vacated in accordance with the Settlement Agreement.

33.     The court retains jurisdiction over matters that are the subject of this Order until the full disbursement of the Settlement, and as necessary to effectuate the terms of the Settlement Agreement governing attorneys' fees, expenses, service awards, and Plan of Allocation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Class Plaintiffs' Motion for Final Approval of Settlement, Approval of Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Service Awards (Doc. 2612) is granted, consistent with the specific terms expressed in this Order.

**IT IS SO ORDERED.**

**Dated this 11th day of July, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
