# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO. 2:17-MD-02785-DDC-TJJ |
| SANOFI-AVENTIS U.S., LLC, <br><br> Plaintiff, <br><br> *v.* <br><br> MYLAN INC., et al., <br><br> Defendants. <br><br> *This Document Relates to the* Sanofi *case.* | CASE NO. 2:17-CV-02452-DDC-TJJ <br><br><br> *Document Filed Electronically* |

## PLAINTIFF SANOFI-AVENTIS U.S. LLC'S
## <u>RESPONSE TO DEFENDANT'S BILL OF COSTS</u>

Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
Eric S. Hochstadt
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
212.310.8000
212.310.8007 (Fax)

*Attorneys for Plaintiff and Counterclaim Defendant
Sanofi-Aventis U.S. LLC*

## PRELIMINARY STATEMENT

Mylan has asked this Court to tax Sanofi for over three-quarters of a million dollars, but the overwhelming majority of these claimed costs are entirely improper, and many don't even have anything to do with the case against Sanofi that Mylan won. Mylan has not met its burden to show that it is entitled to these claimed costs, and this Court should deny the vast majority of them.

*First*, Mylan seeks numerous costs related only to Mylan's *unsuccessful counterclaims* against Sanofi. These counterclaims were based on entirely different alleged conduct than the conduct giving rise to Sanofi's claims, which as this Court knows related to Mylan's pricing of its EpiPen product and exclusive dealing with third-party payors. By contrast, Mylan's unsuccessful counterclaims were only asserted after Mylan's Rule 12(b)(6) motion was denied and were unrelated non-antitrust claims based on Sanofi's statements about the efficacy and preferences for its competing Auvi-Q product. This Court dismissed Mylan's counterclaims on summary judgment. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 507 F. Supp. 3d 1289 (D. Kan. 2020). And Mylan did not appeal that ruling. Courts routinely reject costs associated with such unsuccessful claims, even when the party seeking such costs was successful on other, unrelated claims. Here, there is no question that Mylan seeks costs directly associated only with its counterclaims, as it seeks costs for four expert depositions and one fact witness deposition primarily associated with its counterclaims.

*Second*, Mylan also seeks costs associated with the class case in the multidistrict litigation (the "Consumer Class Action"). As a threshold matter, Mylan acknowledges that some of the costs it initially sought from Sanofi were related to legal claims that had nothing to do with the Sanofi Case, but only proposes a 5% reduction for e-discovery costs in response. Because two of the three theories in the Consumer Class Action were entirely separate from Sanofi's case, a reduction should be applied to all of Mylan's costs. The remaining theory—that Mylan monopolized the

epinephrine auto-injector market—overlapped significantly with the case brought by Sanofi. After coordinated fact discovery, Mylan settled that case on a class-wide basis, sought and obtained approval from this Court, including based on the express agreement that each party would *"**bear its own . . . litigation expenses and costs**."* Stipulation of Class Action Settlement ¶ 10.12, *In re EpiPen*, No. 17-md-2785-DDC-TJJ, ECF No. 2590-2 (D. Kan. Feb. 28, 2022) (emphasis added). Sanofi cannot be taxed for costs associated only with the Consumer Class Action. For instance, Mylan seeks numerous costs where the only law firm invoiced was Hogan Lovells, a firm that represented Mylan in the Consumer Class Action but exited the Sanofi Case after Sanofi raised a conflict. Nor can Sanofi be taxed the full costs of coordinated discovery that would have been incurred for the Consumer Class Action as much as the Sanofi Case. Because Mylan has not met its burden to differentiate costs incurred in the Consumer Class Action and the Sanofi Case, a global reduction to Mylan's costs, consistent with precedent, is appropriate.

*Third*, the physical copying costs Mylan seeks must be substantially reduced. To start, Mylan's descriptions for the majority of its copying costs are generic and vague, which makes it impossible for the Court to determine if the copies were properly obtained for use in the case. In addition, Mylan provides *no* justification for its countless color copies, which warrants a reduction to the lower black-and-white copying cost rate. Overall, Mylan's overly general descriptions and lack of documentation fail to show that these copying costs were incurred for anything other than its own convenience. Mylan does not meet its burden to show it is entitled to these copying costs.

*Fourth*, many components of the deposition costs Mylan seeks are not recoverable. Mylan has made no showing as to why expedited discovery deposition transcripts were needed when fact depositions lasted eight months and expert depositions spanned three months. This was *not* an expedited proceeding seeking preliminary relief. Likewise, Mylan seeks costs for video

depositions in addition to typical transcripts, but many of the witnesses for which Mylan seeks video deposition costs would have been available for trial, so videos were not necessary. Similarly, costs for real-time transcription are only taxable when counsel shows that real-time transcripts were necessary, and not simply for the convenience of counsel. Put simply, Mylan can make no showing for many of its deposition cost categories.

*Finally*, the remaining deposition costs Mylan seeks, such as "Exhibits," "Exhibits - Color," "Rough Draft," "Early AM/Evening Pages," "Exhibit Package/Lit Support Package," "Processing, Handling & Archiving," "Delivery & Handling; Additional Charges (Transcript)," "Shipping and Handling," and "Reporter Appearance Fee," are unrecoverable under binding case law.

At bottom, since the vast majority of the costs Mylan seeks are improper, Mylan should be awarded at most $92,230.01.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) grants courts the discretionary power to tax costs that fall within the discrete categories set forth in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440–42 (1987). "The allowance or disallowance of costs to a prevailing party is within the sound discretion of the district court," *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 722 (10th Cir. 2000), but courts have "no discretion to award items as costs that are not set out in section 1920," *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990). By statute and case law, taxable costs "are limited . . . and are modest in scope." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

The burden of proving that requested costs are taxable under the strict confines of 28 U.S.C. § 1920 lies with the party seeking costs. *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1248–49 (10th Cir. 2002); *Green Constr. Co. v. Kan. Power & Light Co.*, 153 F.R.D. 670, 675 (D. Kan.

3

1994). That party "also must show that the costs it asks to recover are reasonable." *AgJunction LLC v. Agrian Inc.*, No. 14-CV-2069-DDC-KGS, 2016 WL 3031088, at *2 (D. Kan. May 27, 2016) (citing *In re Williams Sec. Litig.- WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009)). Further, it bears the burden of "establish[ing] the amount of compensable costs . . . and assumes the risk of failing to meet that burden." *Allison*, 289 F.3d at 1248–49.

"Items proposed by prevailing parties 'as costs should always be given careful scrutiny.'" *In re Williams*, 558 F.3d at 1147 (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231–32 (10th Cir. 1996)). Even if the court "find[s] that a requested cost is statutorily authorized," the "amount of such cost . . . still must be carefully scrutinized to ensure that it is reasonable." *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 1417, 1426 (D. Kan. 1995), *aff'd*, 76 F.3d 1178 (Fed. Cir. 1996).

## ARGUMENT

### I.   Mylan's Claimed Costs Should Be Reduced to Account for Mylan's Failed Counterclaims Where Mylan Was Not The Prevailing Party

As Mylan acknowledged in its brief, this Court's summary judgment ruling dismissed Mylan's counterclaims against Sanofi, Mylan Br. 3 n.1, ECF No. 83,[1] which, as Mylan knows, sought significant damages. Mylan's counterclaims asserted that Sanofi engaged in certain allegedly unlawful promotional messaging for the Auvi-Q device. *See* Mylan's Answer, Affirmative Defenses & Counterclaims, *In re EpiPen*, No. 17-md-2785-DDC-TJJ, ECF No. 112 (D. Kan. Jan. 16, 2018). These counterclaims were based on allegations entirely unrelated to Sanofi's Sherman Act Section 2 claims against Mylan. Yet even though Mylan lost these

---

[1] Unless otherwise indicated, citations with ECF numbers refer to the docket for *Sanofi-Aventis U.S., LLC v. Mylan Inc.*, No. 17-CV-02452-DDC-TJJ (D. Kan.) (the "Sanofi Case").

counterclaims, it now improperly seeks costs related to them. Courts have held that costs associated with the claims the prevailing party lost are not taxable. *See, e.g.*, *Debord v. Mercy Health Sys. of Kan., Inc.*, No. 10-4055-SAC, 2014 WL 1689288, at *2 (D. Kan. Apr. 29, 2014). Even in cases where courts grant costs to a prevailing party who was only partially successful, courts nonetheless "disallow costs . . . necessarily incurred . . . [by] prosecuting claims upon which [the prevailing party] was ultimately unsuccessful." *Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1075 (D. Kan. 2005).

"Reducing the size of the prevailing party's award to reflect its partial success is a common practice in the Tenth Circuit." *Debord*, 2014 WL 1689288, at *2. "Although only one party may be classified as the prevailing party, the Tenth Circuit has identified several alternatives in which district courts may apportion costs when neither party fully prevails on all claims." *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 237 F.R.D. 659, 662 (D. Kan. 2005); *see Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 659–60 (10th Cir. 2013). Courts have "broad discretion" to "deny costs to either side," "apportion costs among two partially successful parties," or "reduce the size of the prevailing party's award to reflect the partial success." *Aerotech*, 237 F.R.D. at 662–63 (holding because the "plaintiff prevailed on one claim, while defendants prevailed on three other, wholly separate, claims," it was appropriate award costs to both parties, effectively "reducing" the prevailing party's costs); *see, e.g.*, *Relational Design & Tech., Inc. v. Data Team Corp.*, No. CIV. A. 91-2452-EEO, 1994 WL 242667, at *1 (D. Kan. May 18, 1994) (denying costs to prevailing party because the "case involved several complicated factual and legal disputes, including numerous counterclaims by defendants against plaintiffs on which defendants did not prevail").

Here, Mylan seeks costs that would not have been incurred had it not brought the counterclaims. For example, Mylan seeks costs for depositions that related primarily to the

counterclaims it lost, including the depositions of Steven Wiggins and Thomas Varner (counterclaims damages experts), Eduardo Schur and Gary Zieziula (counterclaims merits experts), and Jay York (Mylan's corporate representative for topics related to its counterclaims). Cuthbertson Decl. Ex. 8 at 8–9, 70–71, 74–75, 151–54, ECF No. 86-3 (Deposition Invoices) ("Ex. 8").[2]   In addition, Mylan seeks costs attributable to depositions in which the witness testified significantly on topics related to Mylan's failed counterclaims, including Mary Ann Michelis, Michael Blaiss (medical experts), and James Parker (Sanofi witness testifying about regulatory review of Sanofi advertisements).[3] *See, e.g.*, *In re EpiPen*, 507 F. Supp. 3d at 1321 (citing Blaiss Deposition transcript in connection with Mylan's counterclaims; Ex. 8 at 60–61, 68–69, 131–32, 155–56.   In addition, many of the other witnesses gave testimony that was relevant to Mylan's counterclaims even if not the direct focus of the testimony. Similarly, Mylan seeks copying costs that, based on the description in Mylan's documentation, clearly relate entirely to its failed counterclaims. Those costs are the $310.79 copying costs for "Hogan Jay York.zip," dated July 26, 2018,[4] *see* Ex. 1 at 30; Ex. 4 at 2, the $405.28 for another "Hogan Jay York.zip," dated July 30, 2018, *see* Ex. 1 at 33; Ex. 4 at 2, and the $54.72 for "Mylan and Counterclaim J. York Documents.zip," dated July 30, 2018, *see* Ex. 1 at 34; Ex. 4 at 2.

Mylan "fail[s] to differentiate the costs" incurred prosecuting its unsuccessful counterclaims from costs it incurred defending against Sanofi's claims, and as such, fails to satisfy

---

[2] Because these witnesses testified primarily about Mylan's counterclaims, their deposition costs should be entirely excluded from Mylan's claimed costs, amounting to $33,999.07.

[3] Because these witnesses testified in part on topics related to Mylan's counterclaims and in part on other topics, Sanofi proposes a reduction proportionate to the number of pages of testimony on the counterclaim topics for these witnesses, amounting to $1,425.11.

[4] The chart Mylan created, Brodis Decl. Ex. 4 at 2, ECF No. 85-3 (DigiSource Costs) ("Ex. 4"), shows the date of the invoice as July 29, 2018, but the underlying invoice is dated July 26, 2018, Sechler Decl. Ex. 1 at 30, ECF No. 74-1 (DigiSource Invoices) ("Ex. 1").

its burden to show that all of its claimed costs are taxable. *Burton*, 395 F. Supp. 2d at 1075. The law is clear: this Court must "disallow costs where the record reveals that [Mylan] necessarily incurred those costs prosecuting claims upon which [it] was ultimately unsuccessful." *Id.* (citing *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001)). In *Debord*, at least some of the depositions "included substantial testimony relative to the failed counterclaim." 2014 WL 1689288, at *2. Additionally, "[s]ummary judgment motions included extensive briefing" of a counterclaim issue "and the counterclaim was decided at summary judgment based on [an] element of . . . an issue not relevant to" Sanofi's claims. *Id.* The court held:

> Absent the counterclaim, numerous deposition transcripts would have been significantly shorter and fewer exhibits would have been reproduced, and it is possible that the depositions of some witnesses . . . would have been unnecessary. Given these circumstances, the Court finds a reduction of costs to be warranted to account for the Defendant's overall degree of success and failure in the lawsuit.

*Id.*

The same is true here: The counterclaims Mylan asserted related to Sanofi's allegedly deceptive advertising, and were wholly unrelated to Sanofi's Sherman Act Section 2 claims against Mylan. Mylan's Answer, Affirmative Defenses & Counterclaims, *In re EpiPen*, No. 17-md-2785-DDC-TJJ, ECF No. 112. None of the conduct Mylan alleged in its counterclaims was at all related to Mylan's commercial practices relating to EpiPen, which gave rise to Sanofi's claims. *Debord*, 2014 WL 1689288, at *2 (finding "a reduction of costs to be warranted to account for the [the prevailing party]'s overall degree of success and failure" where the prevailing party "would [not] have incurred the same costs even absent the counterclaim").

In a footnote, Mylan cites *Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 967 (10th Cir. 2009), arguing that "Mylan is entitled to recover all taxable costs." Mylan Br. 3 n.1. But Mylan's reliance on that case is misplaced. *Haynes* only addressed whether

a prevailing party whose "counterclaims . . . failed" could be entitled to recover costs *at all*. *See* 573 F.3d at 967. Although the court found "no abuse of discretion in deeming [counterclaimant] a prevailing party" and entitled to some recovery, it did not address *which* costs were recoverable. *Id*. Nor did it address whether those costs awarded to the prevailing party should be reduced or apportioned to account for those costs attributable partially or wholly to the unsuccessful counterclaims. Thus, although Mylan may be entitled to recover *some* costs, this Court nonetheless has discretion to adjust the award appropriately. *See Debord*, 2014 WL 1689288, at *2.

In sum, $35,424.18 of Mylan's claimed deposition costs of $383,876.84—or 9% of Mylan's claimed deposition costs—relate to depositions that were primarily focused on Mylan's failed counterclaims.[5] This does not include testimony from additional witnesses who answered questions concerning Mylan's counterclaims in the context of other testimony. Since Mylan failed to segregate costs related to its unsuccessful counterclaims, a 10% reduction to its deposition costs, physical copying costs, and electronic copying costs across-the-board is appropriate, to reflect that document and deposition discovery included work for counterclaims that Mylan lost.

## II. Mylan's Costs Should Be Reduced By More than 50% to Account for Costs Related to the Coordinated and Court-Approved Class Action Settlement

Mylan reduced its e-discovery costs by only 5% to account for the Consumer Class Action, yet—without explanation—did not apply any corresponding reduction to its deposition or physical copying costs at all. Mylan's reduction only takes into account the fact that the Consumer Class Action advanced two legal theories that were entirely separate from Sanofi's claims, involving allegations of "pay-for-delay" with respect to patent infringement settlements and alleged racketeering violations with respect to third-party payors, involving different plaintiffs, additional defendants, different claims, and different lawyers. There is no question that Sanofi should not be

---

[5] *See supra* notes 1 and 2.

taxed with costs for discovery taken in connection with *non-overlapping* discovery that pertained only to a separate lawsuit based on legal theories that had nothing to do with its case.

But Mylan's 5% reduction, even if applied across the board, is insufficient. Mylan also fails to account for the fact that discovery in the Sanofi Case was coordinated with the Consumer Class Action. As a result, the vast majority of discovery issues—specifically everything other than the 5% that Mylan agrees pertained to the Consumer Class Action only—was common to both cases. Therefore, an overall reduction to Mylan's costs is warranted, to account for that significant overlap. But Mylan made no effort to segregate and exclude charges that were incurred for the Consumer Class Action, including charges that were incurred by Hogan Lovells, who exited the Sanofi Case after Sanofi raised a conflict, and appeared only in the Consumer Class Action.

Where a party has settled one portion of a consolidated case and agreed to bear its own costs in the settlement, courts routinely apportion costs between the settled and non-settled claims. *See, e.g., Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*, No. 13–cv–00079, 2017 WL 4163352, at *4 (D. Colo. Sept. 19, 2017) (finding costs apportionable where dismissal stipulation specified that parties would bear its own costs); *Underwood v. Bd. of Cnty. Comm'rs*, No. CIV–07–668, 2011 WL 806715, at *2 (W.D. Okla. Mar. 2, 2011) (reducing costs by one half where the depositions, though all used on summary judgment, consisted of substantial testimony only relevant to a separate, settled claim). "Where litigation costs are incurred in connection with more than one proceeding, the district court should allocate the costs." *Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 411 (8th Cir. 2014). The "risk of impermissible double recovery" is particularly acute in cases involving joint discovery in cases in different districts. *Ortho-McNeil Pharm. v. Mylan Lab'ys, Inc.*, 569 F.3d 1353, 1357–58 (Fed. Cir. 2009).

Sanofi's case overlapped significantly with the Consumer Class Action. Indeed, at the

beginning of case, Mylan argued that "separate tracks" for discovery and pre-trial briefing "will produce inefficiencies because the Sanofi Case raises the same legal issues raised by the consumer class cases." Order Designating Separate Track & Setting Briefing Schedule at 2, 17-md-2785-DDC-TJJ, ECF No. 42 (D. Kan. Sept. 14, 2017). While this Court established separate tracks for motion practice at the pleading stage, it "decline[d] to establish separate tracks for discovery," *id.* at 4, and fact discovery proceeded on a coordinated basis.

When Mylan settled the Consumer Class Action claims—and sought and obtained approval from this Court—it explicitly agreed to "bear its own . . . litigation expenses and costs." Stipulation of Class Action Settlement ¶ 10.12, *In re EpiPen*, No. 17-md-2785-DDC-TJJ, ECF No. 2590-2 (D. Kan. Feb. 28, 2022). If the Consumer Class Action plaintiffs or the Court knew that Mylan was not, in fact, going to bear its own costs, Mylan would have had to pay more to settle that case. Sanofi should not have to foot the bill for the costs that Mylan agreed to bear. Tellingly, as Mylan stated in a similar case, "[s]uch double recovery, particularly when the cases were consolidated for purposes of discovery (the balance of benefit grossly favoring [the prevailing party]), is perverse." Reply Brief of Defendants-Appellants at 20, *Ortho-McNeil Pharm. v. Mylan Lab'ys, Inc.*, 569 F.3d 1353 (Fed. Cir. 2009) (No. 2008-1600), 2009 WL 462629.

Mylan claims there is no risk of double recovery here because "Mylan cannot be said to have *recovered* any costs from the Consumer Class." Mylan Br. 27 n.18. But the fact that Mylan settled with the Class Plaintiffs does not eliminate the risk of double recovery. *See Ortho-McNeil*, 569 F.3d at 1358 (explaining "the same costs could not be awarded in" multiple cases with joint discovery, and there is "no basis for treating a settlement situation differently"). Contrary to Mylan's contention, Mylan "has in effect already recovered some amount of costs through its settlement agreement" with the Consumer Class, even though it "did not actually pay costs … in

cash," because "the taxable costs in the [class] action (including deposition costs) were unquestionably taken into account" in the settlement. *Id*. "Having recovered the value of those costs in the form of the foregone appeal, [Mylan] cannot now recover more than its total entitlement by obtaining those same costs again from [Sanofi]." *Id.*

Mylan has not made a sufficient effort to segregate costs associated with the Consumer Class Action and instead, Mylan only applied a 5% reduction to its e-discovery costs. The reasoning behind Mylan's 5% reduction for costs associated with the Consumer Class Action is fatally flawed. Mylan calculates the volume of data that would have been "more closely related to issues presented ***solely*** by the Consumer Class Action" and finds that this amounts to 5% of the total data costs. Mylan Br. 23 (emphasis added). This proposed reduction is necessary but insufficient. Mylan's 5% reduction only excludes costs "***solely***" associated with the Consumer Class Action–i.e. it only excludes costs that would not have been incurred but for the Consumer Class Action. That reduction should be applied to the remainder of the case to account for the fact that non-overlapping Consumer Class Action discovery proceeded simultaneously to the Sanofi case. But even Mylan's 5% reduction fails to account for the significant overlap between the cases. Indeed, the remaining search terms, for which Mylan offers no reduction, were applied to Mylan's data in response to coordinated requests served by Sanofi and Consumer Class Plaintiffs jointly. So on top of Mylan's 5% reduction, a 50% reduction to the remaining costs would be justified to account for the fact that Mylan processed the remaining data in connection with both cases.

The additional 50% reduction is necessary to address costs attributable to the *overlap* in discovery between the Consumer Class Action and the Sanofi Case. For example, Mylan makes no reduction to deposition costs, the majority of which were cross noticed in the Consumer Class Action and the Sanofi Case. Indeed, invoices totaling $203,002.86 submitted in support of its bill

of costs for deposition costs were billed to Hogan Lovells, who ceased representing Mylan in the Sanofi Case after Sanofi raised a conflict, which amounts to almost 60% of Mylan's deposition costs after excluding costs associated with Mylan's failed counterclaims. Ex. 8. And, based on the number of deposition transcript pages for examinations by counsel for a party in the Consumer Class Action only, Mylan's deposition costs related to the Consumer Class Action amounted to $77,778.55, which represents 22% of Mylan's deposition costs after excluding costs associated with Mylan's failed counterclaims. Nor did Mylan make any effort to segregate copying costs associated with the Consumer Class Action: Mylan requests $6,175.23 in copying costs charged by Transperfect, even though every single invoice was requested by, and billed to, Hogan Lovells. *See* Cuthbertson Decl. Ex. 14, ECF No. 86-9 (Transperfect Invoices) ("Ex. 14").

These amounts show that Mylan's proposed 5% reduction to e-discovery costs should be applied across the board and should be combined with an additional 50% reduction to account for the remaining discovery costs which were incurred in overlapping coordinated discovery.

## III. Mylan Fails to Prove the Reasonable Necessity of Its Transcription and Copying Costs

28 U.S.C. § 1920 provides, inter alia, that a judge or clerk of any court of the United States may tax costs for transcripts and copies "necessarily obtained for use in the case." 28 U.S.C. § 1920(2) & (4). "The 'necessarily obtained for use in the case' standard does not allow a prevailing party to recover costs for materials that merely 'add to the convenience of counsel' or the district court." *In re Williams*, 558 F.3d at 1147–48 (quoting *U.S. Indus.*, 854 F.2d at 1245). Instead, "[t]o be recoverable, a prevailing party's transcription and copy costs must be 'reasonably necessary to the litigation of the case.'" *Id.* (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1204 (10th Cir. 2000)).

A. **Mylan's Inadequate Documentation Belies the Physical Copying Costs That Were Reasonably Obtained for Use in The Sanofi Case**

Mylan fails to provide sufficient support to show that its physical copying costs were "necessarily obtained" in this case. "Section 1920(4) does not authorize taxation of every copy made, but only those necessarily obtained for use in the case." *Manildra*, 878 F. Supp. at 1428. "A copy is 'necessarily obtained' within the meaning of section 1920(4) only where the court believes that its procurement was reasonably necessary to the prevailing party's preparation of its case." *Battenfeld of Am. Holding Co. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613, 617 (D. Kan. 2000) (citing *Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 407–08 (D. Kan. 2000)). "Materials are not 'necessarily obtained' when they merely add to the convenience of the parties." *Odessa Ford, LLC v. T.E.N. Invs., Inc.*, No. 07-2161-KHV, 2009 WL 1631850, at *5 (D. Kan. June 10, 2009) (citing *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998)).

The prevailing party "shoulders the burden to establish that the costs were 'necessarily obtained for use in the case' . . . . [T]he Court cannot conclude that costs are reasonably necessary unless the prevailing party provides some detail to justify the necessity of the costs." *AgJunction*, 2016 WL 3031088, at *6. The Tenth Circuit has stated that even in complex cases, where it could "burden[] litigants," there is no "exception to the general rule that a party seeking costs must establish their necessity for trial." *Allison*, 289 F.3d at 1249. Thus, in a case of any scope or scale, "the Court cannot conclude that costs are reasonably necessary unless the prevailing party provides some detail to justify the necessity of the costs." *AgJunction*, 2016 WL 3031088, at *6; *see Green Constr.*, 153 F.R.D. at 682–83 (denying costs where prevailing party submitted a copy of a check with the notion "for copying expense" without any information identifying the use of the copied materials). The prevailing party also must show that copies "were necessarily obtained for use in the case as opposed to being made to respond to discovery requests." *Burton*, 395 F. Supp. 2d at

1085–86 (noting absence of "meaningful explanation" as to the necessity of "copies of medical records, deposition related costs, litigation copy costs, copies of exhibits for testifying experts, and copies from the clerk"); *see McCauley v. Raytheon Travel Air Co.*, No. 00–2017–JWL, 2001 WL 1464781, at *1 (D. Kan. Oct. 19, 2001) ("As a general rule, prevailing parties are not entitled to recover costs incurred in responding to discovery or for copies of pleadings and documents filed with the court . . . .").

A party seeking an award of copying costs must describe those copying costs in sufficient detail. This Court has found that photocopying costs described as "emails" or "copies for trial," for example, "are far too generic for the Court to make a reasonableness determination." *AgJunction*, 2016 WL 3031088, at *6. Moreover, costs described merely as "prep docs" or "[p]rinting from Summation, Concordance or Relativity," "[w]ithout more detail," appear to have been incurred "merely for [the prevailing party's] own convenience as they prepared their case." *Id.* at *7 (rejecting the argument that "the swift timeline made electronic culling of the documents impossible"); *see also In re Williams Sec. Litig.*, No. 02-CV-72-SPF-FHM, 2008 WL 11432102, at *9 (N.D. Okla. June 10, 2008) (denying the following costs based on failure to sufficiently identify and establish necessity of use: "Copies of third-party subpoenaed documents," "Underwriter production," "Copies of underwriter document production," and "Copies of underwriters production"), *aff'd sub nom. In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144 (10th Cir. 2009).

Mylan's descriptions of its copying costs are far too conclusory, generic, and vague for Mylan to recover them. For instance, on Mylan's first invoice of $609.11 from January 17, 2018, the "Project Description" in Mylan's summary chart is entitled simply "Copy x1." Ex. 4 at 2. The invoice provides no further detail. *See* Ex. 1 at 2. Similarly, another invoice of $1,701.43 from

May 3, 2018 states only that it was for printing "Files.zip", without any additional detail. *Id.* at 6; Ex. 4 at 2. As another example, the "Project Description" for Mylan's June 25, 2018 invoice of $367.59 simply reads "6.23.18 Training Materials.zip," Ex. 4 at 2, and the accompanying invoice provides a nearly identical description, *see* Ex. 1 at 15. Furthermore, Mylan's July 23, 2018 invoice of $723.33 states they are "R. Mayrell Documents." *See id.* at 27. Mr. Mayrell is a former attorney for Mylan, suggesting that these copies were simply for Mr. Mayrell's convenience. *See id.*; Ex. 4 at 2. As these illustrative examples show, absent further explanation, Mylan has not met its burden to show that these copies were not merely for counsel's convenience.

Additionally, according to the invoices Mylan submitted, a substantial portion of the requested copying costs include the cost of large amounts of color printing. *See, e.g.*, Ex. 1 at 2, 4, 5–12, 16, 19–22, 24–27, 29–62, 64–66, 71–81.  The additional cost of color printing is not recoverable here, where Mylan has in no way "justif[ied] the need for color copies." *Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, No. 21-6019, 2021 U.S. App. LEXIS 32371, at *3–4 (10th Cir. Oct. 29, 2021) (affirming cost award that included reduced copying costs to reflect the lower rate for black-and-white printing where color copies were not justified); *see also Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2015 WL 4776501, at *4 (E.D. Tex. Aug. 13, 2015) (denying costs for color copies of deposition exhibits); *Coach, Inc. v. Siskiyou Buckle Co.*, No. 3:11-cv-486-HZ, 2012 U.S. Dist. LEXIS 204921, at *4–5 (D. Or. Oct. 30, 2012) (denying costs for color copies of exhibits where party did not show they were necessarily obtained for use in the case). Reducing Mylan's claimed color copying costs to the lower black-and-white rate reduces its over $120,000 in claimed copying costs to $29,667.73.[6]

---

[6] In the vast majority of invoices, Mylan paid $0.75 for color copies and $0.08 for black and white copies to DigiSource, *see* Ex. 1, and $0.70 for color copies and $0.12 for black and white copies to Transperfect, *see* Ex. 14. While there are a few variations in the costs for black and white copies

Moreover, Mylan has not sufficiently explained why or how its copying costs were necessarily obtained in this case. *See Manildra*, 878 F. Supp. at 1428 (stating the "critical inquiry" is "whether the copies were necessarily obtained," which requires sufficient showing of "the nature of the documents copies or how they were necessary"). Mylan's request for copying costs relies on the assertion that "a comparison of the dates for the requested copying charges with the dates of depositions . . . provid[es] a natural explanation for why those copies were made." Mylan Br. 11. However, "copying charges [that] occurred within the period immediately preceding expert depositions" could just as easily have been for convenience of counsel, *id.* at 12, and copying costs incurred "merely for [counsel's] own convenience as they prepared their case" are not recoverable, *AgJunction*, 2016 WL 3031088, at *7. In fact, Mylan's request includes costs whose descriptions indicate they were for convenience of counsel, even though they may have been incurred around the same time as a deposition. *See, e.g.*, Ex. 1 at 27 (July 23, 2018 invoice for "R. Mayrell Documents," where Mr. Mayrell is a former attorney for Mylan). Thus, showing general proximity between copying charges and depositions does not satisfy Mylan's "burden to show facts" sufficient to enable this Court to "conclude that the copies were reasonably necessary." *Birch v. Schnuck Mkts., Inc.*, CIV. A. 95-2370-GLR, 1998 WL 13336, at *3 (D. Kan. Jan. 5, 1998) (finding itemization that revealed the dates on which copying expenses were incurred did not "suffice[]" to show necessity).

---

and color copies in both invoices, the vast majority of charges are consistent throughout the two invoices, so Sanofi used those prices for all its conversions from color to black and white. In addition, the Transperfect invoices do not specify that the lower $0.12 copying costs are for black and white copies throughout. However, there is one example in the Transperfect invoices that specifies black and white copying costs at $0.12, Ex. 14 at 25, which is consistent with the lower copying costs throughout the invoices. Thus, Sanofi used $0.12 as the costs for black and white copying costs for purposes of conversion from the color copying costs to black and white copying costs on the Transperfect invoices.

Where "documentation and explanation" are "deficient," costs should not be awarded. *See Odessa Ford*, 2009 WL 1631850, at *6 ("Counsel's invoice and reply do not identify the per-page printing or copying rate, however, and the lack of itemization makes it impossible for the Court to ascertain whether non-taxable items were included."). Alternatively, in the absence of sufficient detail, the court also "has discretion to reduce counsel's stated costs." *AgJunction*, 2016 WL 3031088, at *7 (quoting *Seyler v. Burlington N. Santa Fe Corp.*, No. 99–2342, 2006 WL 3772312, at *5 (D. Kan. Dec. 20, 2006)). In *Seyler*, the court found that based on "the extent of discovery, the number of pages filed by plaintiff, the pretrial order, motions in limine and the number of trial exhibits, . . . roughly 75 per cent of counsel's internal copying cost was for counsel's convenience." 2006 WL 3772312, at *5. For similar reasons, the court awarded only 30% of plaintiff's requested third-party copying costs. *Id.* at *6; *see Cohen-Esrey Real Est. Servs., Inc. v. Twin City Fire Ins. Co.*, No. CIV.A. 08-2527-KHV, 2011 WL 3608671, at *3–4 (D. Kan. Aug. 12, 2011) (denying 75% of internal copying costs as disallowed discovery production costs or for the convenience of counsel); *AgJunction*, 2016 WL 3031088, at *7 (reducing copying costs by 50%).

Such a reduction is warranted here. This Court should reduce Mylan's claimed color copying expenses to the lower black-and-white rate and reduce the remaining physical copying costs by at least 50% due to the lack of sufficient detail provided by Mylan before taking into account a reduction for Mylan's failed counterclaims and the Consumer Class Action. Accordingly, this Court should award at most $14,833.87 for Mylan's copying costs prior to the overall percentage reduction for the Consumer Class Action and Mylan's failed counterclaims.

## B.  Mylan Requests Deposition Costs That Are Not Recoverable Under Section 1920

Mylan seeks not only its claimed costs for deposition transcripts, but also additional deposition-related costs that the Tenth Circuit and the District of Kansas have deemed

unrecoverable. Mylan has not shown that these additional deposition costs were reasonably necessary in this case—rather than that they were incurred for the convenience of counsel. Therefore, this Court should deny these claimed deposition costs.

### 1. Expedited Transcripts

Mylan is not entitled to expedited deposition transcript costs. This was not an expedited proceeding. Expedited deposition transcripts that are "for the convenience of the defendant" are not taxable. *Whitaker v. Trans Union Corp.*, No. 03–2551, 2006 WL 2574185, at *2 (D. Kan. Aug. 8, 2006). While circumstances in some cases may necessitate expedited deposition transcripts, *see AgJunction*, 2016 WL 3031088, at *5, that is not the case here.

Courts often deny expedited deposition transcript costs as purely for "convenience." *See, e.g.*, *Whitaker*, 2006 WL 2574185, at *2 (denying expedited deposition transcript costs and FedEx shipping costs because both were "for the convenience of [the] defendant"); *Tomlinson v. El Paso Corp.*, No. 04–cv–02686, 2011 WL 2297661, at *2 (D. Colo. June 9, 2011) (denying expedited deposition transcript costs where defendant claimed it was necessary because "the depositions were held consecutively and counsel needed the transcripts to prepare for other deponents," because this was for convenience "rather than a cost that had to be incurred to prepare the case"); *Birch*, 1998 WL 13336, at *4 (denying costs for expedited deposition transcripts because they "were incurred for the convenience of counsel").

Mylan claims "[e]xpedited transcripts were needed to timely prepare for many depositions taken in such close succession, and to prepare for briefing as soon as possible after the expert depositions." Mylan Br. 10. But the timeline in this case was quite different from cases in which expedited deposition transcripts have been allowed. Notably, Mylan cites only one example of a

case where expedited deposition transcripts were found reasonably necessary. *See id.* at 8–9.[7] That

case involved depositions taken during an expedited emergency relief proceeding. *See AgJunction*,

2016 WL 3031088, at *5. The defendants "required expedited transcripts to prepare for (1) other

depositions in the case [thirteen total], (2) the scheduled preliminary injunction hearing, and (3)

their Opposition to plaintiff's Motion for Preliminary Injunction," because "[a]ll of these events

occurred *in a little over a month's time*." *Id.* (emphasis added). By contrast, depositions in this

case spanned an entire year, averaging fewer than seven per month. *See* Cuthbertson Decl. Ex. 7,

ECF No. 86-2 (Deposition Summary) (listing depositions dated May 31, 2018 through May 31,

2019). Moreover, parties in this case had nearly seven months between the scheduling order and

the deadline for dispositive motions. *See* Mylan Br. 10; *Three RP LP v. Dick's Sporting Goods,

Inc.*, CV-18-3-RAW, 2019 WL 7708940, at *2 n.2 (E.D. Okla. Apr. 2, 2019) (rejecting "attempts

to justify the recovery of [expedited or rush] fees on the basis that the summary judgment briefing

schedule required an expedited transcription process," because the "nearly seven-month period

[that] existed between the court's entry of its initial scheduling order . . . and the final dispositive

motion deadline" "indicate[d] otherwise"). Because they were merely for the convenience of

counsel, Mylan's request for recovery of expedited deposition transcript costs should be denied.

### 2. Video Deposition Costs

Mylan is not entitled to any video deposition costs, because it has failed to show that both

video and stenographic transcripts were reasonably necessary in this case. Moreover, there are a

---

[7] Mylan also cites *Colonial Chevrolet Co. v. United States*, 161 Fed. Cl. 132, 145 (2022), stating "extra costs associated with real-time transcription services or expedited delivery can be necessary in complex litigation." Mylan Br. 8–9. However, this finding applied to trial transcripts, not depositions, and was based on "the length of the trial, the complexity of these cases, and the need for counsel to determine whether exhibits had been properly admitted with the court each day." *Colonial Chevrolet*, 161 Fed. Cl. at 145. In fact, the "court recognize[d] that other judges of this court have disallowed real-time services in the context of deposition testimony." *Id.*

number of depositions for which there could be no basis to find that video was reasonably necessary at the time. Video deposition costs are not categorically taxable; in order for video costs to be awarded, the prevailing party must show reasonable necessity. *See Holick v. Burkhart*, No. 16-1188-JWB, 2020 WL 4673153, at *3 (D. Kan. Aug. 12, 2020) ("[A]lthough the court has discretion to tax costs for both the costs of a transcribed deposition and a video deposition, Defendant has made no persuasive showing of reasonable necessity for obtaining both transcript and video depositions in this particular case."); *see also Thorne Rsch., Inc. v. Xymogen, Inc.*, No. 2:13-CV-784, 2020 WL 4732123, at *2 (D. Utah Aug. 14, 2020) ("A prevailing party may recover the costs of both videotaping and transcribing depositions, so long as each version had a legitimate use independent from the other.").

Mylan bears the "burden of showing the necessity for both transcripts and videotaped depositions" of each witness. *Holick*, 2020 WL 4673153, at *3. However, Mylan fails to explain why video depositions were necessary in this case, beyond conclusory statements and generalized assertions that video costs are taxable. *See* Mylan Br. 7–8. Nor has Mylan explained why the additional cost for "synchronization" was necessary. *See id.* Because Mylan has failed to meet its burden, none of the video-related costs, including synchronization, should be awarded.

At a minimum, Mylan is not entitled to any video costs for deponents who were reasonably likely to be available at trial. First, it was reasonable to assume that any deponents that were also listed on Mylan's witness list for the Consumer Class Action as potential live witnesses would be available for trial, which would make their video deposition unnecessary. *See* Mylan Defs.' Am. Final Witness List 3–4, ECF No. 2530-1 (listing as potential live witnesses Heather Bresch, Roger Graham, Scott Sussman, Ron Graybill, Tom Handel, and Patrick Zinn); *see also Holick*, 2020 WL 4673153, at *3. Second, it was reasonable to assume that all experts in the case would have been

20

available for trial, which again would obviate the need for deposition video. Finally, trial in this case would have occurred in New Jersey. Therefore, any deponent who lived, worked, or regularly conducted business within 100 miles of the New Jersey courthouse could have been subpoenaed to testify at trial, making their videotaped deposition unnecessary. *See, e.g.*, Opp'n to Mylan's Mot. for Summ. J., Ex. 239 at 162:5–165:18, *In re EpiPen*, No. 17-md-2785-DDC-TJJ, ECF No. 2275-63 (D. Kan. Jan. 15, 2021) (Mr. Coury regularly conducted business in New York).

Mylan seeks costs for duplicative forms of depositions without providing sufficient justification, and the facts surrounding the case belie any argument that video depositions were necessary for all deponents. Thus, Sanofi objects to all video and synchronization costs.

### 3. Real-Time Transcription

Mylan is not entitled to the cost of real-time transcription for the mere convenience of counsel. Mylan's brief makes passing mention of its request for the costs for "real time transcription services," Mylan Br. 8–9, but does little to explain why those costs were necessary in this case. *See Seyler*, 2006 WL 3772312, at *3 ("Plaintiff has not explained why the additional charge for 'real time' reporting was necessary in this case."). Here, "the primary benefit of 'Real Time' transcription was the convenience it provided to Defendants' counsel; it was not somehow a matter of necessity." *Anderson v. Van Pelt*, No. 09–cv–00704, 2013 WL 856508, at *9 (D. Colo. Mar. 7, 2013) (citing *Touche Ross*, 854 F.2d at 1248). There is no reason real-time was necessary for depositions in this case, especially as they were taken over the course of many months. *See Seyler*, 2006 WL 3772312, at *3 ("Plaintiff has not explained why the additional charge for 'real time' reporting was necessary in this case. Accordingly, to the extent that the invoices reflect an additional charge for real time reporting, the Court disallows such expenses."); *Anderson*, 2013 WL 856508, at *9 (denying real-time deposition costs, rejecting attorneys' argument that "[r]eal time allows an attorney to accurately follow testimony or to cross examine a witness" and holding

that the primary benefit was convenience); *Thorne Rsch.*, 2020 WL 4732123, at *2 (denying real-time, rough draft, appearance fees, and other deposition charges because the defendant failed to show they were "both taxable and necessarily incurred").

Real-time costs are not recoverable unless shown to be reasonably necessary, and Mylan makes no such showing here. *See Holick*, 2020 WL 4673153, at *3. Mylan cites only one case from the Court of Federal Claims to suggest real-time costs might be taxable "in complex litigation." Mylan Br. 8–9 (citing *Colonial Chevrolet*, 161 Fed. Cl. at 145). This case is inapposite, as it addressed costs of real-time used "during the trial," rather than depositions. *Colonial Chevrolet*, 161 Fed. Cl. at 145. Moreover, the court there expressly "recognize[d] that other judges . . . have disallowed real-time services in the context of deposition testimony." *Id.*

Thus, Mylan is not entitled to recover real-time transcription costs, because it only incurred those costs for its own counsel's convenience.

### 4. Additional Deposition Costs

Mylan's bill of costs includes charges for a number of additional deposition-related services. In addition to costs for "videography and expedited processing" and real-time, Mylan requests costs for "Exhibits," "Exhibits - Color," "Rough Draft," "Early AM/Evening Pages," "Exhibit Package/Lit Support Package," "Processing, Handling & Archiving," "Delivery & Handling; Additional Charges (Transcript)," "Shipping and Handling," "Reporter Appearance Fee," and "Extras." Mylan Br. 7; Cuthbertson Decl. Ex. 6, ECF No. 86-1 (Detailed Deposition Appendix) ("Ex. 6"). Mylan has failed to meet its burden of showing why these costs are recoverable under section 1920, because Mylan provides no explanation in its brief, *see Allison*, 289 F.3d at 1248-49, and because courts have consistently held these costs are not taxable. *See Cohen-Esrey*, 2011 WL 3608671, at *2 (denying costs for deposition exhibits and "shipping, archiving, and jurat preparation"); *Burton*, 395 F. Supp. 2d at 1080-81 (disallowing charges for

deposition exhibits, postage, and delivery); *Hansen v. Sea Ray Boats, Inc.*, 160 F.R.D. 166, 167 (D. Utah 1995) (reporter fee); *Orient Min. Co. v. Bank of China*, No. 2:98–CV–238BSJ, 2010 WL 624868, at *4 (D. Utah Feb. 19, 2010) (stating additional fees for appearance "are not generally taxable as transcript costs under § 1920(2)"), *aff'd*, 416 F. App'x 721 (10th Cir. 2011). Additionally, to the extent "Original w/ Cert. Transcript or Mini Charge" includes an additional cost for minuscript, that cost is not recoverable. *See Burton*, 395 F. Supp. 2d at 1080–81. Because Mylan has not and cannot show that these costs are taxable, Sanofi objects to all these additional deposition-related costs.

In sum, Mylan's requested deposition costs should be reduced by the amounts attributable to (1) expedited deposition transcripts ($128,994.74), (2) videography and synchronization ($90,917.00), (3) real-time ($57,335.70), and (4) other deposition-related charges ($75,861.55). *See* Ex. 6. Accordingly, this Court should award at most $30,767.85 for Mylan's deposition costs prior to the overall percentage reduction for the Consumer Class Action and Mylan's failed counterclaims.

### C.   Mylan Requests E-Discovery Costs That Are Not Recoverable Under Section 1920

Mylan seeks certain e-discovery costs that are not recoverable. Specifically, Mylan seeks costs for Bates labeling and storing or hostage, neither of which fall within the scope of Section 1920. While some e-discovery activities "amount to taxable 'copying' charges under § 1920(4)," "costs incurred in *preparing* to copy are not recoverable." *AgJunction*, 2016 WL 3031088, at *10 (quoting *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1330 (Fed. Cir. 2013)). It "is not enough that the costs are . . . necessary to the production of copies . . . . Neither is it sufficient that these services may have promoted efficiency and economy in the discovery process, or that the expansiveness of the opposing party's discovery requests may have contributed to the

need for them. The language of the statute is narrow and controlling." *Medina v. Cath. Health Initiatives*, No. 113CV01249REBKLM, 2017 WL 219314, at *2 (D. Colo. Jan. 17, 2017). Because neither bates labeling nor storage or hosting amount to taxable "copying" costs under Section 1920(4), these costs should be denied.[8] At the very least, Mylan's claimed e-discovery costs should be reduced, since Mylan admits that the database on which these costs are based contained data that has nothing to do with the EpiPen MDL. *See* Cuthbertson Decl. at 5-6; Ramsey Decl. at 2.

### 1. Bates Labeling

Numerous courts within the Tenth Circuit have held that Bates labeling is not a taxable cost. *See Phillip M. Adams & Assocs., LLC v. Sony Elecs. Inc.*, No. 1:05-CV-64 TS, 2013 WL 5964288, at *4–5 (D. Utah Nov. 7, 2013); *M.D. Mark, Inc. v. Kerr-McGee Corp.*, No. CIVA 01-CV-00413 JLK, 2008 WL 162990, at *5 (D. Colo. Jan. 15, 2008) (denying costs "associated with binders, index tabs, *bates-labeling* and other photocopying related costs" (emphasis added)); *Advantageous Cmty. Servs., LLC v. King*, No. 1:17-cv-00525-LF-KK, 2020 U.S. Dist. LEXIS 26415, at *7 (D.N.M. Feb. 14, 2020) (stating that the costs for Bates stamping discovery by paralegals is "obviously" not recoverable under Section 1920); *Bd. of Cnty. Comm'rs of La Plata v. Brown Grp. Retail, Inc.*, No. 08-cv-00855-LTB-KMT, 2012 U.S. Dist. LEXIS 22652, at *5 (D. Colo. Feb. 22, 2012) (holding that movant did not meet burden of establishing that Bates numbering and scanning of documents so that they could be provided in electronic format was

---

[8] Mylan "voluntarily excludes" project management and production database costs from its request, arguing that "the magnitude of those charges supports the overall reasonableness of Mylan's request for e-discovery costs" and "provide[s] additional context for why the Court should not apply any further reduction." Mylan Br. 24–26. But the overall amount Mylan expended during the course of this litigation has no bearing on whether the costs requested here are recoverable under Section 1920. *See Obeslo v. Great-W. Cap. Mgmt., LLC*, No. 16-CV-00230-CMA-SKC, 2021 WL 3773647, at *2 (D. Colo. Aug. 25, 2021) ("'Absent specific statutory authorization,' discovery costs are not recoverable – regardless of how 'viscerally compelling' a party's contrary arguments may be."). The question is whether the costs fall within the limited scope of Section 1920. *See Taniguchi*, 566 U.S. at 573.

reasonably necessary rather than for the convenience of counsel); *Browder v. City of Moab*, No. 2:99-CV-807 BSJ, 2008 U.S. Dist. LEXIS 19554, at *47–48 (D. Utah Mar. 12, 2008) (suggesting that Bates labeling might not be taxable and determining that a significant reduction should be applied to the amount awarded for outside copies because the billing description did not make clear whether the amounts incurred were "because actual copies were made or because some other service was provided, such as the bates-stamping of documents").

Moreover, Mylan fails to explain why its claimed Bates labeling costs were "necessarily obtained for use in the case." *AgJunction*, 2016 WL 3031088, at *9. Mylan merely states that it produced bates-labeled documents during coordinated discovery. Mylan Br. 19–20. Because Bates labeling is not "copying" under Section 1920(4) and Mylan has not met its burden to show the costs were reasonably necessary for use in this case, *see Allison*, 289 F.3d at 1248, this Court should deny Mylan's claimed Bates labeling costs.

### 2. Storage/Hosting

Any e-discovery costs that are akin to preparation, rather than "copying," are not taxable. *AgJunction*, 2016 WL 3031088, at *10. Several courts have determined that storage costs fall into the category of preparation costs. *See Murphy v. Precision Castparts Corp.*, No. 3:16-CV-00521-SB, 2021 WL 4524153, at *6–7 (D. Or. Oct. 4, 2021); *see also U.S. Indus.*, 854 F.2d at 1246–47 (denying costs for "services of a professional information management consultant to design, establish and maintain the computerized data base"). Other courts have categorized them simply as not copying costs. *See Med. Mut. of Ohio v. Air Evac EMS, Inc.*, No. 1:16 CV 80, 2020 WL 13454002, at *6 (N.D. Ohio Sept. 1, 2020) (excluding costs for data housing because it does not relate to copying); *Obeslo*, 2021 WL 3773647, at *2–3 (denying costs for "External Hard Drive" and reaffirming that taxable e-discovery costs are generally limited to the costs of making copies, including the cost of initially uploading data and converting native files to other formats). Mylan's

reliance on *Charbonneau v. Mortgage Lenders of America L.L.C.*, No. 2:18-cv-02062-HLT, 2021 WL 4772939 (D. Kan. Oct. 13, 2021) is misplaced. While the court did allow ESI hosting costs, it did so not because of the merits but rather because neither party did "an exceptional job briefing" the issue and the court was "not inclined to undertake this rigorous analysis" on its own. *Id.* at *8 (awarding ESI hosting costs "on this record"—where defendants "fail[ed] to cite a single case" supporting their opposition to those costs). Thus, Mylan's storage and hosting costs are not taxable.

In sum, Mylan's claimed e-discovery costs should be reduced by the amounts attributable to Bates labeling and to storage and hosting. Thus, this Court should award at most $169,558.21 for Mylan's e-discovery costs prior to the overall percentage reductions.

## CONCLUSION

For the foregoing reasons, this Court should award Mylan costs of no more than $92,230.01, with the following amounts per-taxable category:

| Cost Category | Proper and Documented Taxable Amount | Taxable Amount After Applying 10% Reduction for Counterclaims | Taxable Amount After Applying 5% Reduction for Allegedly Non-Overlapping Consumer Class Action Costs | Total Taxable Amount After Applying 50% Reduction for Overlapping Consumer Class Action Costs |
|---|---|---|---|---|
| Physical Copying | $14,833.87 | $13,350.48 | $12,682.96 | $6,341.48 |
| Deposition Costs | $30,767.85 | $27,691.07 | $26,306.52 | $13,153.26 |
| Electronic Copying | $169,558.21 | $152,602.39 | $144,972.27 | $72,486.14 |
| Total | $215,742.72 | $194,168.45 | $184,460.03 | **$92,230.01** |

DATED:  June 28, 2023

Respectfully submitted,

                                        /s/ *Yehudah L. Buchweitz*

                                        Yehudah L. Buchweitz
                                        yehudah.buchweitz@weil.com
                                        Eric S. Hochstadt
                                        eric.hochstadt@weil.com
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, NY 10153
                                        212.310.8000
                                        212.310.8007 (Fax)

                                        *Attorneys for Plaintiff and Counterclaim*
                                        *Defendant Sanofi-Aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

On this the 28th day of June, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which provides a notice of such filing on each attorney registered for ECF notification to the counsel of record in this case.


 /s/ *Yehudah L. Buchweitz*

Yehudah L. Buchweitz