| | |
|---|---|
| IN RE: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation | CASE NO. 2:17-MD-02785-DDC-TJJ |
| SANOFI-AVENTIS U.S., LLC,<br><br>                      Plaintiff,<br><br>             v.<br><br>MYLAN INC., et al.,<br><br>                      Defendants.<br><br>*This Document Relates to the* Sanofi *case.* | CASE NO. 2:17-CV-02452-DDC-TJJ<br><br>*Document Filed Electronically* |

# PLAINTIFF SANOFI-AVENTIS U.S. LLC'S OPPOSITION TO MYLAN'S MOTION FOR JUDICIAL REVIEW OF CLERK'S ACTION TAXING COSTS

Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
Eric S. Hochstadt
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
212.310.8000
212.310.8007 (Fax)

*Attorneys for Plaintiff and Counterclaim Defendant Sanofi-Aventis U.S. LLC*

**PRELIMINARY STATEMENT**

In its Motion for Judicial Review of Clerk's Action Taxing Costs against Sanofi,[1] Mylan asks this Court to review the costs that the Clerk taxed against Sanofi, and to award Mylan a windfall of over three-quarters of a million dollars in claimed costs. As the Clerk properly concluded, the majority of Mylan's claimed costs are not taxable, and Mylan's Motion does not show otherwise.

Mylan claims numerous categories of costs that were not reasonably necessary and are not authorized under 28 U.S.C. § 1920. *First*, the Clerk properly rejected $181,400 in deposition-related costs that included real-time, rough drafts, early pages, exhibits, litigation support, and other related costs because they were merely for convenience. *Second*, the Clerk properly rejected $120,556.32 in physical copying costs due to Mylan's insufficient documentation and failure to show reasonable necessity. *Finally*, the Clerk properly rejected $227,041.02 in e-discovery costs that are not taxable under § 1920(4) because they are not copying costs. Mylan's Motion should be denied.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(d)(1) grants courts the discretionary power to tax costs but only for the discrete categories set forth in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440–42 (1987). "The allowance or disallowance of costs to a prevailing party is within the sound discretion of the district court," *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 722 (10th Cir. 2000), **but** courts have "no discretion to award items as costs that are not set out in section 1920." *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990). By statute and case law, taxable costs "are limited . . . and are modest in scope." *Taniguchi v. Kan Pac.*

---

[1] ECF No. 96 (the "Motion").

*Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

The burden of proving that requested costs are taxable under the strict confines of 28 U.S.C. § 1920 lies with the party seeking costs. *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1248–49 (10th Cir. 2002); *Green Constr. Co. v. Kan. Power & Light Co.*, 153 F.R.D. 670, 675 (D. Kan. 1994). In addition to showing that the requested costs fall within the limited set of categories, the party "also must show that the costs it asks to recover are reasonable." *AgJunction LLC v. Agrian Inc.*, No. 14-CV-2069-DDC-KGS, 2016 WL 3031088, at *2 (D. Kan. May 27, 2016) (citation omitted). Further, it bears the burden of "establish[ing] the amount of compensable costs . . . and assumes the risk of failing to meet that burden." *Allison*, 289 F.3d at 1248–49.

"[I]tems proposed by winning parties as costs should always be given careful scrutiny." *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998) (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231–32 (10th Cir. 1996)). Even if the court "find[s] that a requested cost is statutorily authorized," the "amount of such cost . . . still must be carefully scrutinized to ensure that it is reasonable." *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 1417, 1426 (D. Kan. 1995), *aff'd*, 76 F.3d 1178 (Fed. Cir. 1996).

## ARGUMENT

Mylan claims that the Clerk was wrong to rely on this Court's Bill of Costs Handbook because that handbook is "out of step on significant developments in the law" that have supposedly transpired since the handbook was updated in 2013. *See* Mot. at 1. However, Mylan does not and cannot identify any supposed "developments in the law" that are binding on this Court. Instead, Mylan relies almost entirely on pre-2013 cases, a 2008 amendment to 28 U.S.C. § 1920, and non-binding authorities from other jurisdictions.

## I. The Clerk Properly Rejected $181,400 in Deposition-Related Costs

The Clerk properly disallowed Mylan's costs for "exhibits, real time, rough drafts, early a.m. pages, litigation support package, process handling, etc." because those items were merely for the convenience of counsel and not specifically allowable under § 1920(2). *See* Mot., Ex. A (ECF No. 96-1) at 1. Although Mylan seeks the entire amount for court reporters in this case, the law is clear that "[c]ourt reporters' invoices for depositions are typically only partially recoverable as costs because they generally include numerous convenience items that are not allowable as costs." *Treaster v. HealthSouth Corp.*, 505 F. Supp. 2d 898, 904 (D. Kan. 2007). Here, Mylan seeks costs for convenience items including real-time, expedited transcripts, exhibits, and other similar fees, but has failed to show that they were necessary in this case or recoverable under the statute. Such convenience costs were even disallowed in a case that Mylan itself cited. *See Three RP Ltd. P'ship v. Dick's Sporting Goods, Inc.*, No. CV-18-3-RAW, 2019 WL 7708940, at *2 (E.D. Okla. Apr. 2, 2019) (disallowing certain convenience costs, including expedited transcript costs). The Clerk properly denied these costs in this case, for at least the following reasons:

*First*, contrary to Mylan's assertion, real-time was not "needed to timely prepare for many depositions taken in close succession," or "to prepare for briefing as soon as possible after the expert depositions." Mot. at 5 n.4. The case law is clear that the "primary benefit" of real-time transcription is the "convenience it provide[s] to … counsel," and it is "not … a matter of necessity." *Anderson v. Van Pelt*, No. 09-CV-00704-CMA-KMT, 2013 WL 856508, at *9 (D. Colo. Mar. 7, 2013). Accordingly, courts in this District and others routinely refuse to tax real-time transcription costs. *See e.g.*, *Holick v. Burkhart*, No. 16-1188-JWB, 2020 WL 4673153, at *3 (D. Kan. Aug. 12, 2020) (finding plaintiff did not "bear[] responsibility for any real-time transcript obligations"); *Seyler v. Burlington N. Santa Fe Corp.*, No. 99–2342, 2006 WL 3772312, at *3 (D. Kan. Dec. 20, 2006) ("Plaintiff has not explained why the additional charge for 'real time'

3

reporting was necessary . . . [thus] the Court disallows such expenses."); *Thorne Rsch., Inc. v. Xymogen, Inc.*, No. 2:13-CV-784, 2020 WL 4732123, at *2 (D. Utah Aug. 14, 2020) ("Defendant has failed to demonstrate that its remaining requested costs [including real-time] were both taxable and necessarily incurred."); *Anderson*, 2013 WL 856508, at *9. Mylan does not cite a *single case* from this Circuit to support its claim that its real-time costs are taxable. *See* Mot. at 4-5.

*Second*, Mylan is not entitled to costs for expedited transcripts, rough drafts, early morning pages, or other similar requests. Expedited deposition transcripts are typically "incurred for the convenience of counsel" and thus not taxable. *Birch v. Schnuck Mkts., Inc.*, No. CIV. A. 95-2370-GLR, 1998 WL 13336, at *4 (D. Kan. Jan. 5, 1998). Courts in this District and others routinely deny such costs for expedited and rough drafts. *See, e.g.*, *Whitaker v. Trans Union Corp.*, No. 03–2551, 2006 WL 2574185, at *2 (D. Kan. Aug. 8, 2006) (denying expedited deposition transcript and FedEx shipping costs); *Thorne Rsch.*, 2020 WL 4732123, at *2 ("Defendant has failed to demonstrate that its remaining requested costs [including rough draft costs] were both taxable and necessarily incurred."); *Tomlinson v. El Paso Corp.*, No. 04–cv–02686, 2011 WL 2297661, at *2 (D. Colo. June 9, 2011) (denying "expedited rough draft[]" costs as convenience costs despite fact that "depositions were held consecutively and counsel [claimed it] needed the transcripts to prepare for other deponents"); *Perry v. Taser Intern. Corp.*, No. 07-cv-00901, 2008 WL 4829850, at *2 (D. Colo. Nov. 4, 2008) (holding "costs of a rough draft or 'e-transcript' of the deposition [are not] recoverable, as defendant has made no showing that these items were anything more than a convenience for counsel").[2]

---

[2] The two cases Mylan cites in support of its argument are unavailing. *See* Mot. at 4-5. *Best Buy Co. v. AU Optronics Corp. (In re TFT-LCD Flat Panel Antitrust Litigation)*, No. M:07-cv-01827-si, 2014 U.S. Dist. LEXIS 32207 (N.D. Cal. Feb. 3, 2014) is a special master's report from a California case that is not binding on this Court and contradicts the established case law from this District and Circuit. Tellingly, the special master in that outlier decision did not cite a single

4

While circumstances in some cases may necessitate expedited deposition transcripts, *see AgJunction*, 2016 WL 3031088, at *5 (depositions taken during expedited emergency relief proceeding), that is not the case here. This was far from an expedited proceeding. The defendants in *AgJunction* required expedited transcripts to prepare for "(1) other depositions in the case [thirteen total], (2) the scheduled preliminary injunction hearing, and (3) their Opposition to plaintiff's Motion for Preliminary Injunction," because "[a]ll of these events occurred in a little over **a month's time**." *Id.* (emphasis added). By contrast, depositions in this case spanned an **entire year**, *see* Cuthbertson Decl. Ex. 7, ECF No. 86-2 (Deposition Summary) (listing depositions dated May 31, 2018 through May 31, 2019), and parties had nearly seven months between the scheduling order and the deadline for dispositive motions. *See* Mot. at 4-5 n.4; *Three RP LP*, 2019 WL 7708940, at *2 n.2 (rejecting "attempts to justify the recovery of [expedited or rush] fees on the basis that the summary judgment briefing schedule required an expedited transcription process," because the "nearly seven-month period [that] existed between the court's entry of its initial scheduling order . . . and the final dispositive motion deadline" "indicate[d] otherwise"). As this Court knows, there was no preliminary injunction or expedited proceeding necessitating rush transcripts or rough drafts. Mylan incurred these costs merely for its own convenience, and the Clerk properly excluded those costs.

---

authority for his dubious pronouncement that awards for "enhanced deposition costs" are "normal and necessary features of complex, multi-party litigation." 2014 U.S. Dist. LEXIS 32207, at *74. Mylan's reliance on *In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, 1149 (10th Cir. 2009) is also misplaced. That case was a securities class action where plaintiffs sued dozens of defendants, *see* Dkt. 159, No. 4:02-cv-00072-SPF-fhm (N.D. Ok.), and the court noted that "Plaintiffs' litigation choices[,] including the number of defendants," resulted in high defense costs. Nothing in that case suggests that the single defendant that Sanofi sued should be awarded deposition-related costs that it incurred merely for its own counsel's convenience.

*Third*, Mylan is not entitled to the other deposition costs the Clerk properly excluded, including exhibits, litigation support, and process handling. *See* Mot. Ex. A (ECF No. 96-1) at 1. Mylan's claimed costs include "Exhibits," "Exhibits - Color," "Exhibit Package/Lit Support Package," "Processing, Handling & Archiving," "Delivery & Handling; Additional Charges (Transcript)," "Shipping and Handling," "Reporter Appearance Fee," and "Extras." Mylan Br. 7; Cuthbertson Decl. Ex. 6, ECF No. 86-1 (Detailed Deposition Appendix). Courts routinely deny these costs as not taxable. *See Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, No. CIV.A. 08-2527-KHV, 2011 WL 3608671, at *2 (D. Kan. Aug. 12, 2011) (denying costs for deposition exhibits and "shipping, archiving, and jurat preparation"); *Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1080-81 (D. Kan. 2005) (disallowing charges for deposition exhibits, postage, and delivery); *Orient Min. Co. v. Bank of China*, No. 2:98–CV–238BSJ, 2010 WL 624868, at *4 (D. Utah Feb. 19, 2010) (stating additional fees for appearance "are not generally taxable as transcript costs under § 1920(2)"), *aff'd*, 416 F. App'x 721 (10th Cir. 2011); *Hansen v. Sea Ray Boats, Inc.*, 160 F.R.D. 166, 167 (D. Utah 1995) (reporter fee). Mylan's cited cases from other jurisdictions are unavailing because they are not binding on this Court and contradict established case law in this District. *See* Mot. at 5-6. *Compare Johnson v. Holway*, 522 F. Supp. 2d 12, 19 (D.D.C. 2007) (finding exhibits are "recoverable as part of the cost of the deposition") *with Burton*, 395 F. Supp. 2d at 1080 (disallowing charges for minuscripts, keyword indices, ASCII disks, exhibits, and delivery charges) (collecting cases); *Cohen-Esrey*, 2011 WL 3608671, at *2 ("declin[ing] to tax . . . shipping, archiving, and jurat preparation costs and exhibits") (citing *Burton*, 395 F. Supp. 2d at 1080).

In sum, the Clerk properly disallowed Mylan's costs for real-time, rough drafts, exhibits, and other deposition-related costs.

## II. The Clerk Properly Disallowed $120,556.32 in Physical Copying Costs

Mylan fails to show that its physical copying costs were "necessarily obtained" in this case, as they must under Section 1920, because those costs were either insufficiently itemized or incurred merely for convenience of counsel.

Mylan is wrong that the Clerk "imposed too high a standard on Mylan to itemize each copy it made." Mot. at 6. In fact, the Clerk merely held Mylan to the same standard that courts in this District routinely require in complex cases such as this one, and Mylan fell well short of it. The Clerk properly denied Mylan's claimed physical copying costs "for itemization lacking specific purpose details, responding to discovery requests … or convenience of counsel items such as additional copies of transcripts, case filings, expert materials, printing off digital files, etc." Mot. Ex. A (ECF No. 96-1) at 2.

The Tenth Circuit has held that there is no "exception to the general rule that a party seeking costs must establish their necessity for trial." *Allison*, 289 F.3d at 1249. Thus, notwithstanding the size or complex nature of this case, "the Court cannot conclude that costs are reasonably necessary unless the prevailing party provides some detail to justify the necessity of the costs." *AgJunction*, 2016 WL 3031088, at *6; *see also Green Constr.*, 153 F.R.D. at 682–83 (denying costs where prevailing party submitted a copy of a check with the notion "for copying expense" without any information identifying the use of the copied materials). Mylan is also not relieved of its burden to show that copies "were necessarily obtained for use in the case as opposed to being made to respond to discovery requests." *Burton*, 395 F. Supp. 2d at 1085–86 (noting absence of "meaningful explanation" as to the necessity of "copies of medical records, deposition related costs, litigation copy costs, copies of exhibits for testifying experts, and copies from the clerk"); *see also McCauley v. Raytheon Travel Air Co.*, No. 00–2017–JWL, 2001 WL 1464781, at *1 (D.

Kan. Oct. 19, 2001) ("As a general rule, prevailing parties are not entitled to recover costs incurred in responding to discovery or for copies of pleadings and documents filed with the court . . . .").

This Court has found that descriptions such as "emails" or "copies for trial," for example, "are far too generic for the Court to make a reasonableness determination." *AgJunction*, 2016 WL 3031088, at *6. Moreover, costs described as "prep docs" or "[p]rinting from Summation, Concordance or Relativity," "[w]ithout more detail," have been found to have been incurred "merely for [the prevailing party's] own convenience." *Id.* at *7 (rejecting argument that "the swift timeline made electronic culling of the documents impossible"); *see also Cohen-Esrey*, 2011 WL 3608671, at *3–4 (rejecting majority of copying costs as disallowed discovery or "for counsel's convenience" where billing entries were dated and "include[d] generic descriptors such as 'deposition' and documents'"); *Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colo. v. Brown Grp. Retail, Inc.*, No. 08-CV-00855-LTB-KMT, 2012 WL 592775, at *2 (D. Colo. Feb. 22, 2012) (finding the descriptions "making working copies of . . . disclosures that were provided in electronic format" and "copying subpoenaed expert files" themselves "indicate[d] that these costs were primarily incurred for the convenience of counsel").

Here, Mylan's descriptions of its copying costs are far too conclusory, generic, and vague to be recoverable. *See* Sanofi Opposition to Mylan's Bill of Costs (ECF No. 91) ("Sanofi Bill of Costs Opp.") at 14-15; Brodis Decl. Ex. 4 (ECF No. 85-3) at 2 (listing "Project Descriptions" including "Copy x1," "Files.zip," and "6.23.18 Training Materials.zip"). Other descriptions that Mylan included show that it made copies purely for the convenience of its counsel. *See* Sanofi Bill of Costs Opp. at 16; Sechler Decl. Ex. 1 (ECF No. 74-1) at 27 (July 23, 2018 invoice for "R. Mayrell Documents," where Mr. Mayrell is a former attorney for Mylan). These representative examples show that Mylan has not met its burden to itemize and explain the necessity of its claimed

copying costs. *See Manildra*, 878 F. Supp. at 1428 (noting the "critical inquiry" is "whether the copies were necessarily obtained," which requires sufficient showing of "the nature of the documents copies or how they were necessary"). In its Motion, Mylan does not provide any further details as to why these claimed copying costs were necessary, and instead relies on the claim that "juxtaposition with major events in the litigation" proves the necessity of its costs. Mot. at 7. But the fact that certain copies may have been "made in close proximity to" depositions, *id.*, does not make them necessary, and copying costs incurred for the convenience of counsel are not recoverable, regardless of when the copies were made. *See AgJunction*, 2016 WL 3031088, at *7; *Birch* , 1998 WL 13336, at *3 (itemization indicating the dates copying expenses were incurred did not suffice).

Furthermore, a substantial portion of Mylan's claimed copying costs include large amounts of color printing, which Mylan has not justified. *See* Sanofi Bill of Costs Opp. at 15-17; *Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, No. 21-6019, 2021 U.S. App. LEXIS 32371, at *3–4 (10th Cir. Oct. 29, 2021) (affirming cost award that reduced copying costs to reflect the lower rate for black-and-white printing where color copies were not justified); *see also Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2015 WL 4776501, at *4 (E.D. Tex. Aug. 13, 2015) (denying costs for color copies of deposition exhibits); *Coach, Inc. v. Siskiyou Buckle Co.*, No. 3:11-cv-486-HZ, 2012 U.S. Dist. LEXIS 204921, at *4–5 (D. Or. Oct. 30, 2012) (denying costs for color copies of exhibits where party did not show they were necessarily obtained for use in the case). Thus, any color copying costs the Clerk did award should at the very least be reduced to the black and white rate. *See* Sanofi Bill of Costs Opp. at 15-16 n.6.

Finally, the Clerk's reduction of Mylan's physical copying costs was not "excessive," as Mylan claims. Mot. at 7. Rather, the Clerk's cost reduction was proper and necessary because

Mylan claimed many costs that are not taxable. In the absence of sufficient detail and justification, courts have "discretion to reduce counsel's stated costs," *AgJunction*, 2016 WL 3031088, at *7 (quoting *Seyler*, 2006 WL 3772312, at *5), or to disallow costs entirely. *See Odessa Ford, LLC v. T.E.N. Invs., Inc.*, No. 07–2161–KHV., 2009 WL 1631850, at *6 (D. Kan. June 10, 2009) (finding "the lack of itemization makes it impossible for the Court to ascertain whether non-taxable items were included"). This holds true even if the court's reduction or disallowance amounts to a significant percentage of the claimed costs. *See, e.g.*, *Seyler*, 2006 WL 3772312, at *5 (denying roughly 75% of internal copying costs); *Cohen-Esrey*, 2011 WL 3608671, at *3–4 (denying 75% of internal copying costs as disallowed discovery production costs or for the convenience of counsel); *AgJunction*, 2016 WL 3031088, at *7 (reducing copying costs by 50%).

Accordingly, the Clerk properly disallowed Mylan's requested physical copying costs.

## III. Mylan's 5% Reduction to Its Electronic Copying Costs Is Insufficient

Mylan asks this Court to reduce the costs the Clerk taxed by 5% to account for data that relates solely to the Consumer Class Action. Mot. at 15. Mylan is correct that the Clerk should have reduced the costs it taxed to account for these data costs and other costs that have nothing to do with the case against Sanofi that Mylan won. However, the 5% reduction that Mylan asks for is woefully insufficient. For the reasons set forth in Sanofi's Motion to Retax Costs, this Court should apply a 10% reduction for the counterclaims Mylan lost, a 5% reduction for non-overlapping Consumer Class Action costs, and a 50% reduction for overlapping Consumer Class Action costs. *See* Sanofi Motion to Retax Costs (ECF No. 98).

## IV. The Clerk Properly Disallowed $227,041.02 in Electronic Copying Costs

The Clerk recognized that many categories of Mylan's claimed e-discovery costs were not recoverable and properly declined to tax them. Specifically, the Clerk properly disallowed the following categories of Mylan's claimed e-discovery costs:

**A. Bates Labeling**

Numerous courts within the Tenth Circuit have held that Bates labeling is not a taxable cost. *See Phillip M. Adams & Assocs., LLC v. Sony Elecs. Inc.*, No. 1:05-CV-64 TS, 2013 WL 5964288, at *4–5 (D. Utah Nov. 7, 2013); *M.D. Mark, Inc. v. Kerr-McGee Corp.*, No. CIVA 01-CV-00413 JLK, 2008 WL 162990, at *5 (D. Colo. Jan. 15, 2008) (denying costs "associated with binders, index tabs, *bates-labeling* and other photocopying related costs" (emphasis added)); *Advantageous Cmty. Servs., LLC v. King*, No. 1:17-cv-00525-LF-KK, 2020 U.S. Dist. LEXIS 26415, at *7 (D.N.M. Feb. 14, 2020) (stating that the costs for Bates stamping discovery by paralegals is "obviously" not recoverable under Section 1920); *Bd. of Cnty. Comm'rs of La Plata v. Brown Grp. Retail, Inc.*, No. 08-cv-00855-LTB-KMT, 2012 U.S. Dist. LEXIS 22652, at *5 (D. Colo. Feb. 22, 2012) (holding that movant did not meet burden of establishing that Bates numbering and scanning of documents so that they could be provided in electronic format was reasonably necessary rather than for the convenience of counsel); *Browder v. City of Moab*, No. 2:99-CV-807 BSJ, 2008 U.S. Dist. LEXIS 19554, at *47–48 (D. Utah Mar. 12, 2008) (suggesting that Bates labeling might not be taxable and determining that a significant reduction should be applied to the amount awarded for outside copies because the billing description did not make clear whether the amounts incurred were "because actual copies were made or because some other service was provided, such as the bates-stamping of documents").

Moreover, Mylan fails to explain why its claimed Bates labeling costs were "necessarily obtained for use in the case." *AgJunction*, 2016 WL 3031088, at *9. Mylan merely states that it produced bates-labeled documents during coordinated discovery. Mot. at 12-13. Because Bates labeling is not "copying" under Section 1920(4) and Mylan has not met its burden to show the

11

costs were reasonably necessary for use in this case, *see Allison*, 289 F.3d at 1248, the Clerk properly denied Mylan's claimed Bates labeling costs.

**B. Storage and Hosting**

Any e-discovery costs that are akin to preparation, rather than "copying," are not taxable.[3] *AgJunction*, 2016 WL 3031088, at *10. Several courts have determined that storage costs fall into the category of preparation costs. *See Murphy v. Precision Castparts Corp.*, No. 3:16-CV-00521-SB, 2021 WL 4524153, at *6–7 (D. Or. Oct. 4, 2021); *see also U.S. Indus.*, 854 F.2d at 1246–47 (denying costs for "services of a professional information management consultant to design, establish and maintain the computerized data base"). Other courts have categorized them simply as not copying costs. *See Med. Mut. of Ohio v. Air Evac EMS, Inc.*, No. 1:16 CV 80, 2020 WL 13454002, at *6 (N.D. Ohio Sept. 1, 2020) (excluding costs for data housing because it does not relate to copying); *Obeslo v. Great-W. Capital Mgmt., LLC*, No. 16-cv-00230-CMA-SKC, 2021 WL 3773647, at *2–3 (D. Colo. Aug. 25, 2021) (denying costs for "External Hard Drive" and reaffirming that taxable e-discovery costs are generally limited to the costs of making copies, including the cost of initially uploading data and converting native files to other formats). Mylan's

---

[3] Indeed, even in *In re Online DVD-Rental Antitrust Litig.*, a Ninth Circuit case Mylan cited in its Motion, the court held, "To the extent the invoiced [e-discovery] tasks exceeded … activities essential to the making of copies necessary to the case, they are not taxable." 779 F.3d 914, 931–32 (9th Cir. 2015).

reliance on *Charbonneau v. Mortgage Lenders of America L.L.C.*, No. 2:18-cv-02062-HLT, 2021 WL 4772939 (D. Kan. Oct. 13, 2021) is misplaced. While the court in that case did allow ESI hosting costs, it did so only because neither party did "an exceptional job briefing" the issue and the court was "not inclined to undertake this rigorous analysis" on its own. *Id.* at *8 (awarding ESI hosting costs "on this record"—where defendants "fail[ed] to cite a single case" supporting their opposition to those costs). Furthermore, *Charbonneau* was a case brought under the FLSA, which separately authorizes costs, and the court in that case rested its decision in part on its finding that the costs it awarded were recoverable under the FLSA. *Id*. Here, Mylan's storage and hosting costs are not taxable.

### C. Processing, Promoting, and Production of Natives

Courts in this District and elsewhere in the Tenth Circuit have held that Section 1920(4) only allows costs to be taxed for a narrow set of e-discovery activities that qualify as "making copies" under the statute. *See Vehicle Mkt. Rsch., Inc. v. Mitchell Int'l, Inc.*, No. 09-2518-JAR, 2017 WL 2734588, at *5 (D. Kan. June 26, 2017) (noting § 1920 is interpreted "narrowly" with respect to e-discovery costs in the Tenth Circuit). Mylan has not shown that these remaining categories of costs are akin to copying costs, and they are therefore not taxable. *See AgJunction*, 2016 WL 3031088, at *10. To support its argument, Mylan relies heavily on the provisions of the Stipulated ESI Protocol, and out-of-circuit cases where a court has considered a party's obligation to produce documents in a particular format when taxing costs. *See* Mot. at 9-12 (citing *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 931). However, case law in the Tenth Circuit is clear that notwithstanding the requirements of an ESI protocol, prevailing parties can recover "only those ESI costs which actually constitute the making of copies." *See Medina v. Cath. Health Initiatives*,

No. 1:13–cv–01249–REB–KLM, 2017 WL 219314, at *2-3 (D. Colo. Jan. 17, 2017). The Court should not tax these claimed e-discovery costs.

**D. Sales Tax**

Mylan relies on two Colorado cases to argue that it is entitled to sales tax on its claimed costs. *See* Mot. at 14-15 (citing *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2020 WL 3978756, at *6 (D. Colo. May 20, 2020), *rev'd*, 15 F.4th 1033 (10th Cir. 2021); *Johns Manville Corp. v. Knauf Insulation, LLC*, No. 15-CV-00531-RBJ-KLM, 2018 WL 2388556, at *3 (D. Colo. May 25, 2018)). Even if Mylan could show that that it is entitled to recover certain sales tax it paid, Mylan would at most be entitled to sales tax it paid on items that are themselves properly taxable. Mylan is therefore not entitled to sales tax on the categories of e-discovery costs that the Clerk properly disallowed, for the reasons explained above.

Finally, contrary to Mylan's assertion, Sanofi did not "concede[]" that Mylan had identified certain "proper and documented taxable" electronic copying costs. *See* Mot. at 2, 8. Rather, the amount Mylan claims Sanofi "conceded" was the amount Sanofi argued this Court should award "at most," and "no more than" that amount. *See* Sanofi Bill of Costs Opp. at 26. As Mylan acknowledges, Mot. at 8 n.6, Sanofi further argued that this amount should be reduced to account for costs associated with the counterclaims that Mylan lost, costs associated with the Consumer Class Action that were unrelated to Sanofi's case, and costs associated with the other data contained in Mylan's database that had nothing to do with this case. *See* Sanofi Bill of Costs Opp. at 24-26. Sanofi also raised this argument in its Motion to Retax Costs. As explained in that motion, in the Consumer Class Action settlement agreement that this Court approved, Mylan expressly agreed to "bear its own . . . litigation expenses and costs" associated with the Consumer Class

14

Action. *See* ECF No. 98 at 3-4; Stipulation of Class Action Settlement (ECF No. 2590-2) ¶ 10.12, *In re EpiPen*, No. 17-md-2785-DDC-TJJ (D. Kan. Feb. 28, 2022).

## CONCLUSION

For the foregoing reasons, Mylan's Motion for Judicial Review of Clerk's Action Taxing Costs should be denied. Prior to Mylan filing its Motion, Sanofi had offered to accept the amount taxed by the Clerk ($247,183.75) if the parties agreed to not challenge the Clerk's decision, but Mylan declined. As such, and for the foregoing reasons as well as those set out in Sanofi's Motion to Retax Costs, this Court should retax costs in an amount no greater than $41,238.36.

DATED: October 10, 2023

Respectfully submitted,

/s/ *Yehudah L. Buchweitz*

Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
Eric S. Hochstadt
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
212.310.8000
212.310.8007 (Fax)

*Attorneys for Plaintiff and Counterclaim Defendant Sanofi-Aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

On this the 10th day of October, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which provides a notice of such filing on each attorney registered for ECF notification to the counsel of record in this case.

/s/ *Yehudah L. Buchweitz*

Yehudah L. Buchweitz
yehudah.buchweitz@weil.com
Eric S. Hochstadt
eric.hochstadt@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
212.310.8000
212.310.8007 (Fax)

*Attorneys for Plaintiff and Counterclaim Defendant Sanofi-Aventis U.S. LLC*