# EXHIBIT 3



Rex A. Sharp
Manager, Sharp Law, LLP
4820 W. 75th Street
Prairie Village, KS 66208
Ph: (913) 901-0505
Fx: (913) 261-7564
rsharp@midwest-law.com

September 25, 2024

The Honorable Daniel D. Crabtree
United States District Judge
United States District Court
500 State Avenue
Kansas City, KS 66101

      Re: *In re EpiPen Marketing, Sales Practices, and Antitrust Litigation*, Case No. 2:17-md-02785-DDC-TJJ

Dear Judge Crabtree,

      I write on behalf of Plaintiffs' Co-Lead Counsel and Settlement Administrator A.B. Data to respond to the Court's inquiry concerning the claims filed by Mr. Denny Randall in connection with the two settlements reached in the EpiPen litigation. This letter addresses four topics: (i) the claims process the Court ordered and A.B. Data faithfully implemented; (ii) the two claims Mr. Randall filed; (iii) the reasons why Co-Lead Counsel and A.B. Data ultimately determined that Mr. Randall's claims should be denied; and (iv) Co-Lead Counsel's proposal to resolve Mr. Randall's dispute concerning his claims. Should the Court have any questions, Co-Lead Counsel and A.B. Data will make themselves available at the Court's discretion.

1.    <u>The Claims Process</u>

      The Court preliminarily approved the Pfizer Settlement on July 23, 2021 (Doc. 2401) and the Mylan Settlement on March 11, 2022 (Doc. 2594). The preliminary approval orders provided for, among other things, the appointment of A.B. Data as settlement administrator, a notice program to provide notice of the settlements to potential class members, a proposed plan of allocation for the settlement funds, and the issuance of claim forms for potential class members to participate in the distribution of settlement funds.

      The settlement notices the Court approved and A.B. Data issued provided deadlines for the filing of claims, explained how settlement proceeds would be allocated by A.B. Data, and provided contact information for A.B. Data and the settlement website to obtain more information about the case and the settlement process. *See* Pfizer Notice (Doc. 2393-4) and Mylan Notice (Doc. 2590-4).

The proof of claim forms the Court approved and A.B. Data issued provided deadlines for the filing of claims, required contact information for the claimant to allow A.B. Data to contact the claimant, if necessary, if a claim was deemed insufficient for one reason or another, and required summary EpiPen purchase information and the names of insurers (if applicable). *See* Pfizer Claim Form (Doc. 2393-5) and Mylan Claim Form (Doc. 2590-5). The claim forms informed claimants that they did not need to provide any documentation when a claim form was submitted, but that A.B. Data might ask for additional information supporting a claim. The claim forms set forth what types of information would be acceptable in this regard, including receipts, cancelled checks, credit card statements, benefits statements from insurers, pharmacy records showing EpiPen payments, or copies of EpiPen prescription records. *Id.* The claim forms required each claimant to certify, among other things, that they agreed to provide documentary backup supporting a filed claim if requested by A.B. Data. *Id.*

The plans of allocation, summarized in the settlement notices and available to claimants on the EpiPen settlement website, informed claimants that A.B. Data would determine the validity of claim forms and that all determinations as to how settlement funds would be allocated under each plan of allocation would be made by A.B. Data, subject to review by Plaintiffs' Co-Lead Counsel and approval by the Court. *See* Pfizer Plan of Allocation (Doc. 2393-9) and Mylan Plan of Allocation (Doc. 2590-9).

2. Mr. Randall's Claims

In connection with the Pfizer settlement, Mr. Randall timely filed a claim form (no. ▮▮▮▮▮▮▮) through the online filing portal on the settlement website on August 11, 2021. The claim was for $675,000, based on 101 EpiPen purchases and unidentified out-of-pocket expenses. The claim identified two insurers, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The contact email address Mr. Randall provided to A.B. Data in his claim form, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, is the same address that Mr. Randall subsequently has used to communicate with A.B. Data, Co-Lead Counsel, and the Court.

The Mylan settlement notice and proof of claim form both informed claimants that if they already had filed a proof of claim in connection with the Pfizer settlement, they did not have to file another proof of claim in connection with the Mylan settlement. Nonetheless, in connection with the Mylan settlement, Mr. Randall timely filed another claim form (no. ▮▮▮▮▮▮▮) through the online filing portal on May 16, 2022. Mr. Randall's second claim was for $9,500, based on 19 EpiPen purchases and unidentified out-of-pocket expenses. No insurers were identified. Mr. Randall provided the same contact email address as in the first claim form.

3. The Denial of Mr. Randall's Claims

A.B. Data selected Mr. Randall's claims for audit for several reasons. First, the amounts claimed by Mr. Randall were extraordinarily high in comparison to the vast majority of other consumer claimants. Second, the differences between the two claims raised concerns about their validity. While both claims were for the same class period, one claim was for $675,000, covered

2

101 EpiPens[1] and identified two insurers, while the other claim was for $9,500, covered 19 EpiPens and identified no insurers. Third, Mr. Randall was identified by A.B. Data as a potentially fraudulent claimant based on his history of filing high-dollar claims in five other pharmaceutical class actions administered by A.B. Data (ranging from $4,500 to $84,000) and then failing to provide any documentation in response to audit letters sent by A.B. Data. In all of those other cases, Mr. Randall's claims were denied.

On January 25, 2023, A.B. Data sent Mr. Randall an email to the email address provided in his claim forms informing Mr. Randall that his first claim, for $675,000 (nearly nine times the cost of 101 EpiPens at their highest-ever price), was going to be denied. The email informed Mr. Randall that if he disagreed with this determination, he needed to so advise A.B. Data in writing within 30 days <u>and</u> provide documentation supporting his claim. Mr. Randall did not respond to this email, and his first claim was denied as a result. Mr. Randall has not appealed the denial of his first claim.

On January 26, 2023, A.B. Data sent Mr. Randall another email to the same email address concerning his second claim. In that email, A.B. Data requested that Mr. Randall provide some proof of payments for purchases of at least two EpiPens during the class period. The audit notice sent by A.B. Data listed several kinds of documentation that would be acceptable and specifically notified Mr. Randall that "**Failure to respond to this request with the required information identified below by the Response Deadline will result in the disallowance of your Claim.**" (bold in original). Mr. Randall did not respond to A.B. Data's email, and his second claim was denied as a result.

On June 16, 2023, Mr. Randall, using the same email address, inquired about the status of his second claim. On June 19, 2023, A.B. Data responded, informing Mr. Randall again that his claim had been denied. Even though the time to cure had long since passed, in that email, A.B. Data again invited Mr. Randal to submit documentation supporting his second claim if he wished to have the denial reconsidered.

Mr. Randall appealed the denial of his second claim on June 19, 2023. In his appeal, Mr. Randall claimed that he never received any notifications from A.B. Data that his claim was being denied, even though Mr. Randall was using the same email address that he provided to A.B. Data and that A.B. Data then used in all of its communications with Mr. Randall. Mr. Randall also claimed that he could not provide the documentation requested by A.B. Data because his pharmacy had purportedly been bought and resold multiple times. Mr. Randall did however, for the first time, provide a photo of what appeared to be a filled prescription in his name for the purchase of two EpiPens at a Rite Aid pharmacy in Galax, Virginia. A true and correct copy of the photo as attached to this letter as Exhibit A.

The photo Mr. Randall provided raised more questions than it answered for A.B. Data. Contrary to Mr. Randall's claim that he could not obtain documentation of his EpiPen purchases

---

[1] For reference, the average cost of an EpiPen in the U.S.—without insurance—has never reached above $800, and during the class period in this case, plaintiffs alleged that defendants hiked the price of EpiPen from below $100 to $600 between 2007 and 2016.

3

because his pharmacy had been bought and resold, the Rite Aid in Galax, Virginia continues in operation to this day. Mr. Randall's doctor named on the prescription, ▮▮▮▮▮▮▮▮, also continues to practice in ▮▮▮▮, Virginia and presumably also could have readily provided Mr. Randall with documentation to support his claim. It is also unclear whether Mr. Randall actually paid out of pocket for the two EpiPens in the photo. The prescription label in the photo has been folded over to obscure a part of the label, so it is unclear what amount Mr. Randall is claiming or entitled to. Finally, as part of the class notice program in the case, plaintiffs subpoenaed the largest PBMs and pharmacy chains in the U.S., including Rite Aid (and its parent Walgreen), for records of EpiPen purchases during the class period. This data was sent to A.B. Data, then the notice administrator, to allow it to provide notice to potential class members. Mr. Randall's name does not appear as an EpiPen purchaser in any of the records produced by any of the large PBMs or pharmacy chains, including Rite Aid.

In light of all of these facts, A.B. Data and Plaintiffs' Co-Lead Counsel conferred and agreed that Mr. Randall's request to reconsider the denial of his second claim should be denied and that the claim should remain rejected.

4. <u>Co-Lead Counsel's Recommendation re Mr. Randall's Claim</u>

Plaintiffs' Co-Lead Counsel recommend that the Court deny Mr. Randall's second claim for all of the reasons stated above. Alternatively, if the Court believes that Mr. Randall has submitted documentation sufficient to evidence the purchase of two EpiPens during the class period based solely on the photo he provided after his claim was denied, Co-Lead Counsel have no objection to instructing A.B. Data to allow Mr. Randall's claim, but limited to the two EpiPens in the photo. There are sufficient funds remaining to pay the claim if allowed by the Court.

Respectfully submitted,

Rex A. Sharp
Plaintiffs' Co-Lead Counsel

Cc: Plaintiffs' Co-Lead Counsel
Brian Fries, Liaison Counsel for Defendants