# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| In re EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | ) ) ) )  Civil Action No. 2:17-md-02785-DDC-TJJ (MDL No. 2785) |

In re EPIPEN (EPINEPHRINE INJECTION,   )   Civil Action No. 2:17-md-02785-DDC-TJJ
USP) MARKETING, SALES PRACTICES        )   (MDL No. 2785)
AND ANTITRUST LITIGATION               )
                                       )
―――――――――――――――――――――                   )
                                       )
This Document Relates To:              )
                                       )
     CONSUMER CLASS CASES              )
                                       )
―――――――――――――――――――――                   )

**DECLARATION OF ERIC J. MILLER**

I, Eric J. Miller, declare as follows:

1.     I am a Senior Vice President with A.B. Data, Ltd. ("A.B. Data"). I am fully familiar with the facts contained herein based upon my personal knowledge, and if called as a witness, could and would testify competently thereto.

2.     The Court appointed A.B. Data to supervise and administer the notice procedure, processing of claims, and distribution of the Settlement Funds.

3.     I submit this declaration at the request of Class Counsel to provide an update on the distribution of the Net Settlement Funds to eligible Class Members in this case, to address the Court's February 23, 2026 Order relating to a letter sent to the Court from Class member Catherin Harris, and, although not requested, to provide some information to the Court on A.B. Data's handling of the claim by Dan Poole, whose Motion to Compel the Court denied on February 27, 2026.

**A.B. Data's Claims Process**

4.     The Court-approved deadline to submit a Claim Form to be eligible to receive a payment from the Net Settlement Fund was July 25, 2022.  A total of approximately 765,000 Claim

Forms were submitted by potential Class Members.  Upon the completion of claims processing and auditing to verify the validity of each claim, including the identification of duplicates or claims from non-Class Members, a total of approximately 300,000 claims were determined to be eligible to receive a payment from the Net Settlement Fund. The other 465,000 claims were determined to be ineligible largely because they were identified as being submitted by non-Class Members, known suspicious actors, bots, or computer-driven scripts. For context, this rate of accepted claims is typical in our experience as A.B. Data has witnessed an increase of attempted fraudulent and bot-driven filings in the past few years, including hundreds of claims coming from the same email address or IP address, and claims submitted from email domains in foreign countries. As a result, throughout the claims administration process, A.B. Data monitored claims that exhibited certain indicia of fraud. Such indicia include claims submitted by known fraudulent filers, unrealistic claim amounts, and the submission of multiple claims. A.B. Data sent a request to claimants for further information where the claim presented one or more indicia of fraud. Where claimants provided the requested information, A.B. Data determined their claim to be eligible and included it within the distribution populous. Where claimants failed to provide the requested information (or did not respond at all), the claim was rejected.

5.    Beginning on May 25, 2023, A.B. Data commenced the initial distribution of the Net Settlement Fund. Consumer claimants who were to receive more than $1,000 or supplied an invalid email address were mailed checks containing their *pro rata* share of the Net Settlement Fund.  Third-party payor claimants were either paid by check or a wire transfer. A total of approximately 18,000 checks and wires were issued.  Approximately 285,000 eligible consumer claimants were sent their payments digitally via email.

6.    As in other settlements it has administered, A.B. Data reissued and re-mailed distribution checks to multiple claimants in this matter because: (a) the original check was returned to A.B. Data by the United States Postal Service ("USPS") with a forwarding address; (b) the original check was returned to A.B. Data by the USPS without a forwarding address, but A.B. Data was able to obtain an updated address for the claimant; or (c) the original check was stale-dated, lost, or damaged, and the claimant requested that a new check be issued. Any digital payments not redeemed by consumer claimants were canceled and a paper check issued to the claimant at the address provided in his or her claim.

7.    As of the date of this declaration, approximately 294,000 have successfully cashed or redeemed their payment totaling $369.7 million in payments.

8.    Beginning on January 15, 2026, in accordance with the Plans of Allocation, A.B. Data commenced the second distribution of payments to eligible claimants from the funds remaining as a result of uncashed checks, tax refunds, and unused reserves. These remaining funds were reallocated to eligible claimants who successfully received and deposited, cashed, or otherwise accepted their payment from the initial distribution and who would receive a second distribution of at least $5.00.

9.    In all, the second distribution resulted in A.B. Data issuing 2,465 payments to third-party payor claimants totaling $3,119,734.43, and 266,600 payments to consumer claimants totaling $21,400,999.28. As of the date of this declaration, over $16.9 million in payments from the second distribution have been cashed or redeemed. Consumers and third-party payor claimants continue to accept payments on a daily basis.

**Correspondence from Catherin Harris**

10.      Catherine Harris submitted correspondence to the Court stating that A.B. Data previously notified her on August 10, 2024 that a settlement check issued to her in the amount of $3,578.43 remained uncashed. On August 27, 2024, Ms. Harris contacted A.B. Data and requested that the payment be reissued.

11.      Consistent with Ms. Harris's request, A.B. Data reissued the settlement check on September 30, 2024. The reissued check carried a void date of November 12, 2025, as reflected in the image from A.B. Data's internal records below. The check was mailed to Ms. Harris at the address Ms. Harris provided to A.B. Data and was not returned by the USPS as undeliverable; however, the check was not negotiated prior to the void date.



| | Claim Number | Transaction_D... | Check_Num | Payee | Payment | Cleared | Status | Void Date | S |
|---|---|---|---|---|---|---|---|---|---|
| ▸ | 126145813 | 6/9/2023 | 60463855 | CATHERIN HARRIS | $3,578.43 | ☐ | Void | 9/7/2023 | 1 |
| | 126145813 | 9/30/2024 | 63687854 | CATHERIN HARRIS | $3,578.43 | ☐ | Void | 11/29/2024 | 3 |

12.      Pursuant to the Court-approved Plan of Allocation, settlement checks that remain uncashed after the applicable void date are treated as unclaimed funds. Accordingly, the funds associated with Ms. Harris's uncashed payment reverted to the Net Settlement Fund and were included in the amount available for reallocation in a subsequent distribution to eligible claimants who timely cashed or otherwise negotiated their initial settlement payments.

13.      Over one year later, on January 31, 2026, Ms. Harris contacted A.B. Data requesting that the initial payment be reissued to her. After consultation with Class Counsel, A.B. Data arranged for the expedited issuance of a replacement check. The replacement payment was

issued on March 12, 2026 and sent via UPS so that the delivery could be tracked. A.B. Data received confirmation of delivery of the check to Ms. Harris on March 16, 2026.

**Correspondence from Dan Poole**

14.    Although the Court has denied Dan Poole's Motion to Compel, A.B. Data would nevertheless like to provide additional information to the Court about Mr. Poole's situation

15.    In response to correspondence submitted to the Court by Dan Poole, A.B. Data was contacted by Mr. Poole requesting that the address associated with his claim be updated to a location outside of the United States.

16.    The Claim Form for this Settlement provides that, in order to be eligible to file a claim and receive a cash distribution, a claimant must be a person or entity in the United States who paid or provided reimbursement for some or all of the purchase price of branded EpiPen® or EpiPen Jr® devices, or authorized generic versions of EpiPen devices, for the purpose of consumption, and not resale, by the claimant or the claimant's family member(s) at any time between August 24, 2011 and November 1, 2020.

17.    Due to the significant volume of fraudulent filings that are often submitted from outside of the United States in connection with class action settlements, A.B. Data applies enhanced scrutiny to claims involving international addresses in order to ensure that settlement funds are not distributed to ineligible or fraudulent filers. In certain instances, fraudulent claimants attempt to circumvent the Settlement's eligibility requirements by submitting a claim using an address within the United States and subsequently requesting that the payment be reissued to an address located in another country.

18.    The Claim Form further provides that claimants agree to supplement their Proof of Claim by furnishing documentary support for the information provided therein upon request of the

Settlement Administrator. Consistent with this provision, and as Mr. Poole's Declaration attests to, when Mr. Poole requested that A.B. Data send his distribution payment to his new address in Costa Rica, A.B. Data requested that Mr. Poole provide identification to verify his identity prior to reissuing the payment to an address outside of the United States.[1] To date, A.B. Data has never received any form of identification from Mr. Poole to verify his identity.

19.    Upon receipt and verification of the requested identification, A.B. Data will proceed with reissuing the payment to Mr. Poole, or otherwise act in accordance with any direction provided by the Court.

I hereby declare under penalty of perjury under the laws of the United States that the statements set forth herein are, to the best of my knowledge, true and correct.

Executed this 23rd day of March, 2026.

_____
Eric J. Miller
Senior Vice President, A.B. Data, Ltd.

---

[1]    *See* Dan Poole's Declaration in Support at ¶10 (ECF 2664) ("on August 27, 2024 AB Data finally responded and said that due to security reasons and because of a large number of fraudulent requests to send checks out of the country, I would not be allowed to use the mailing address that I had provided and would have to provide a regular street address and would have to provide a copy of my ID, and following that it might take them 90 days to review and then finally reissue my settlement check.").